**COMPLAINT**

**IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

FILED
CLERK, U.S. DISTRICT COURT
SEP 19 2025
CENTRAL DISTRICT OF CALIFORNIA
BY PD DEPUTY

**JEFFREY GU,**

2332 N Clay St Apt 3,

Denver, CO 80211,

**Plaintiff, Pro Se,**

PAID

V.

CASE NO: 8:25-CV-02134-SB-MAR

**CITY OF IRVINE,**

1 Civic Center Plaza,

Irvine, CA 92606,

**JESSICA SANDERS,**

18575 Jamboree Rd 9th Floor,

Irvine, CA 92612,

**JEFFREY MELCHING,**

18575 Jamboree Rd 9th Floor,

Irvine, CA 92612,

**TRINITY PHAM,**

1 Civic Center Plaza,

Irvine, CA 92606,

**WILLIAM GO,**

1 Civic Center Plaza,

Irvine, CA 92606,

**IRVINE POLICE DEPARTMENT,**

1 Civic Center Plaza,

Irvine, CA 92606,

**Officers Jane & John Doe (1-10)**

1 Civic Center Plaza,

Irvine, CA 92606,

**THE NEW HOME COMPANY INC.,**

18300 Von Karman Ave., Suite 1000,

Irvine, CA 92612,

**THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC,**

18300 Von Karman Ave., Suite 1000,

Irvine, CA 92612,

**TNHC REALTY AND CONSTRUCTION INC.,**

18300 Von Karman Ave., Suite 1000,

Irvine, CA 92612,

**BERT L. HOWE & ASSOCIATES, INC.,**

5415 E. La Palma Avenue,

Anaheim Hills, CA 92807,

**Defendants.**

**CIVIL ACTION NO. _______________**

**JURY TRIAL DEMANDED**

**COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS**

**(First Amendment Retaliation, Fourteenth Amendment Due Process, and Related State Law Claims)**

## Table of Contents

I. INTRODUCTION
II. JURISDICTION
III. PARTIES
IV. FACTUAL ALLEGATIONS
V. CAUSES OF ACTION
COUNT I: VIOLATION OF 42 U.S.C. § 1983 – FIRST AMENDMENT (Freedom to Petition the Government)
COUNT II: VIOLATION OF 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT (Procedural Due Process)
COUNT III: VIOLATION OF THE BANE ACT (CALIFORNIA CIVIL CODE § 52.1)
VI. PRAYER FOR RELIEF
VII. DEMAND FOR JURY TRIAL

## I. INTRODUCTION

This civil rights action arises out of a pattern of unlawful retaliation and coordinated suppression targeting a private citizen over a property in Irvine, California, who exercised his First and Fourteenth Amendment rights in connection with serious construction, permitting, and licensing concerns. Rather than responding appropriately to documented complaints involving construction defects, building code violations, permitting irregularities, and building department employee qualifications, the City of Irvine, municipal officials, local law enforcement, The New Home Company Inc, and its subsidiary companies and vendors engaged in a series of coercive actions aimed at silencing and intimidating the Plaintiff.

The Plaintiff acted lawfully at all times, seeking only transparency, code compliance, and accountability. In return, the Plaintiff was met with legal threats, baseless cease and desist letters, and restrictions on his ability to petition the government—all while public agencies failed to enforce clear violations of state law. This case is about safeguarding constitutional rights and

affirming that neither public officials nor private developers are above the law. The conduct described herein reflects a breakdown in both regulatory enforcement and constitutional compliance. The Plaintiff brings this action under 42 U.S.C. § 1983 and related state law claims to remedy the harm caused and deter future abuses.

## II. JURISDICTION

1. **Subject Matter Jurisdiction:** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. The Court also has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy under Article III of the United States Constitution.

2. **Personal Jurisdiction:** This Court has personal jurisdiction over Defendants because they reside in and/or conduct business in this District, and the acts and omissions giving rise to the claims occurred within this District. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## III. PARTIES

### A. Plaintiff:

**Jeffrey Gu**

Residence: 2332 N Clay St Apt 3, Denver, CO 80211

State of Domicile: Colorado

### B. Defendants:

**City of Irvine**

Principal Place of Business: 1 Civic Center Plaza, Irvine, CA 92606

**Jessica Sanders,** in her official capacity as public-facing representative of the City Attorney of the City of Irvine, Associate at Rutan & Tucker

Business Address: 18575 Jamboree Rd 9th Floor, Irvine, CA 92612

State of Domicile: California

**Jeffrey Melching,** in his official capacity as public-facing representative of the City Attorney of the City of Irvine, Partner at Rutan & Tucker

Business Address: 18575 Jamboree Rd 9th Floor, Irvine, CA 92612

State of Domicile: California

**Trinity Pham,** in her official capacity as Supervising Principal Council Executive Assistant for the City of Irvine

Business Address: 1 Civic Center Plaza, Irvine, CA 92606

State of Domicile: California

**William Go**, in his official capacity as City Councilmember for the City of Irvine

Business Address: 1 Civic Center Plaza, Irvine, CA 92606

State of Domicile: California

**Irvine Police Department**

Principal Place of Business: 1 Civic Center Plaza, Irvine, CA 92606

**Officers Jane & John Doe 1-10**

Principal Place of Business: 1 Civic Center Plaza, Irvine, CA 92606

**The New Home Company Inc.**

Principal Place of Business: 18300 Von Karman Ave., Suite 1000, Irvine, CA 92612

State of Incorporation: Delaware

Principal Place of Business: California

**The New Home Company Southern California LLC**

Principal Place of Business: 18300 Von Karman Ave., Suite 1000, Irvine, CA 92612

State of Incorporation: Delaware

Principal Place of Business: California

**TNHC Realty and Construction Inc.**

Principal Place of Business: 18300 Von Karman Ave., Suite 1000, Irvine, CA 92612

State of Incorporation: Delaware

Principal Place of Business: California

**Bert L. Howe & Associates, Inc.**

Principal Place of Business: 5415 E. La Palma Avenue, Anaheim Hills, CA 92807

State of Incorporation: California

Principal Place of Business: California

## IV. FACTUAL ALLEGATIONS

*All noted exhibits will be provided on request or electronically once online access has been provided.*

A. Pre-purchase

1. On December 29, 2023, a US Bank employee named Justin Pope emailed **JG**'s email with preapproval instructions and a link to a marketing page about Olivewood in Portola Springs. (See *Gmail - US Bank Preapproval Instructions.pdf*)

2. This email was directed towards Jeffrey Gu ("**JG**") and **JG**'s parents, Xian Feng Gu ("**XFG**") and Di Lan Ge ("**DLG**").

3. **XFG**, born in October 1957, was over 65 at the time of this contact.

4. **DLG**, born in April 1959, was over 65 at the time of signing the closing documents.

5. The email provided a link to this URL: https://www.newhomeco.com/region/orange-county/olivewood-portola-springs

6. The current content for the linked marketing page for Olivewood was copywritten by **The New Home Company Inc** in 2025. (See *Sep 2025 Olivewood Webpage.pdf*)

7. The past content for the linked marketing page for Olivewood was copywritten by **The New Home Company Inc.** in 2023. (See *October 2023 Olivewood Webpage.pdf*)

B. Purchase Agreement

8. On March 15, 2024, **DLG** and **XFG** signed a **Purchase Agreement** as Buyers for Lot No. 0088 on Tract No. 19176. (See *Purchase Agreement Final.pdf*)

9. This **Purchase Agreement** was for a property located at 129 Oakstone, in the City of Irvine, State of California.

10. The purchase price in this Purchase Agreement is $3,699,990

11. Employees and/or agents of **The New Home Company Southern California LLC** were signatories to this **Purchase Agreement**.

12. **Key Fact: The New Home Company Southern California LLC** is the named Seller in this Purchase Agreement.

13. This **Purchase Agreement** contains the text 'on the terms and conditions set forth below in the Basic Provisions and General Provisions, any Addenda attached hereto and the "Limited Warranty" defined below (collectively "Sales Terms"), all of which are incorporated herein by this reference. All references herein to this "Agreement" include the Sales Terms, and the Parties hereby agree to be bound by same.', and we can refer to the entire bundle of documents as the **Agreement**.

14. **The New Home Company Southern California LLC** is referred to as the Seller and/or merchant builder in the **Agreement**.

15. **Key Fact:** The **Agreement** contains the text "Seller shall cause construction and completion of the Residence and appurtenant improvements on the Property."

16. The **Agreement** contains the text "BUYER ACKNOWLEDGES THAT SELLER IS RELYING ON THIS REPRESENTATION AND WARRANTY IN ACCEPTING THIS AGREEMENT AND INCURRING EXPENSES IN CONNECTION WITH THE SALE OF THE PROPERTY AND SELLER'S COMPLETION OF THE CONSTRUCTION AND DEVELOPMENT OF THE PROPERTY."

17. The **Agreement** contains the text "Seller may, from time to time, in its sole discretion send Buyer progress reports regarding construction of the Residence."

18. The **Agreement** contains the text "Seller shall complete construction of the Property, including the Residence and all other improvements thereon"

19. The **Agreement** contains the text "If Seller fails to complete construction of the Property and close Escrow within two (2) years after the Acceptance Date…"

20. The **Agreement** contains the text "Seller shall use commercially reasonable efforts to complete installation of the Design Studio Options".

21. **The New Home Company Inc** is only named 1 time in the **Agreement**, in the document titled "RELEASE AND INDEMNITY."

22. **TNHC Realty and Construction Inc** is not named in the **Agreement**.

23. **Key Fact: The New Home Company Southern California LLC** is the named "Developer (Contact)" in the Agreement document titled "2007 NEW HOME UNIVERSAL DESIGN OPTION CHECKLIST (AB 1400)"

24. **The New Home Company Southern California LLC** is a direct subsidiary of **The New Home Company Inc.**

25. **The New Home Company Southern California LLC** is 100% owned by **The New Home Company Inc.**

26. **Key Fact: The New Home Company Inc** did not have a CSLB license number at the time of the signing of the **Agreement**.

27. **Key Fact: The New Home Company Inc** still does not have a CSLB license number as of September 9, 2025.

28. **Key Fact: The New Home Company Southern California LLC** also did not have a CSLB license number at the time of the signing of the **Agreement**.

29. **Key Fact: The New Home Company Southern California LLC** also still does not have a CSLB license number as of September 9, 2025.

30. **The New Home Company Southern California LLC** did not have a **City of Irvine** ("**COI**") Business License at the time of the signing of the **Agreement**.

31. **The New Home Company Southern California LLC** still does not have a **COI** Business License as of September 9, 2025.

32. **Key Fact:** In the "Definitions" section of this warranty, one definition states that "Builder means The New Home Company Southern California LLC, a Delaware limited liability company."

C. Closing

33. On June 24, 2024, **XFG** and **DLG** signed closing documents.

34. **Key Fact:** The Homebuyer Limited Warranty was part of these closing documents. (See *Closing Warranty.pdf*)

35. **Key Fact:** On the grant deed submitted to Orange County for Lot 88 of Tract No. 19176, **The New Home Company Southern California LLC** grants the property. (See *129 Oakstone Grant Deed.pdf*)

36. The property was granted to the Trustees **XFG** and **DLG** of The Xian Feng Gu and Di Lan Ge Revocable Trust.

37. On the Closing Disclosure for the property, **The New Home Company Southern California LLC** is the listed name for Real Estate Broker (S). (See *Signed CD.pdf*)

38. The listed DRE license number for this field on the Closing Disclosure is 01870227.

39. 01870227 is the DRE license number belonging to **TNHC Realty and Construction Inc.** (See *TNHC DRE License*)

40. **TNHC Realty and Construction Inc** is a direct subsidiary of **The New Home Company Inc**.

41. **TNHC Realty and Construction Inc** is 100% owned by **The New Home Company Inc.**

42. This combination between the named Real Estate Broker (S) and the DRE License Number is in every Closing Disclosure for the whole neighborhood.

43. **The New Home Company Southern California LLC** is not a DRE licensed real estate broker.

44. **Key Fact:** On the same closing disclosure, **The New Home Company Southern California LLC** is listed as the seller.

45. **Key Fact:** On the Buyer Statement provided by the Settlement Agent, the Seller is listed as **The New Home Company Southern California LLC**. (See *Buyer Statement.pdf*)

46. The statement lists $3,867,154 as the "Total Consideration."

D. Post-Closing

47. On July 2, 2024, the first item on the Homeowner Central warranty portal was marked "Completed" for 129 Oakstone. (See *Final Warranty List.xls*)

48. This warranty item pertained to hot water not being delivered properly in the kitchen.

49. The listed Builder in the Contacts section on the warranty portal is **The New Home Company Southern California LLC**. (See *Warranty Portal Contact Page.png*)

50. On February 1, 2025, **XFG**, **DLG**, and **JG** signed an agreement for **JG** to handle house matters at 129 Oakstone. (*See Owner's Representative and Claims Support Agreement.pdf*)

51. On February 16, 2025, **JG** arrived at the residence and began documenting construction defects and worksite violations. (See *Home Defects* and *Worksite Violations folders*)

52. Also from this date onward, **JG** took photos of construction vehicles parked in publicly used thoroughfares.

53. **JG** also took photos of lack of safety signage and cones in public thoroughfares near large vehicles.

54. **JG** also took photos of the absence of safety gear on workers .

55. On April 21, 2025, **JG** submitted a complaint to the California DRE against **TNHC Realty and Construction Inc.** (See *DRE Complaint Number.png*)

E. SB800

56. Also on April 21, 2025, **JG** received an SB800 letter from **TNHC** via PHLK LLP requesting inspection. (See *SB800 Initial Letter.pdf*)

57. The letter also had a Certificate of Liability Insurance attached.

58. Named Insureds on this Certificate of Liability Insurance are **The New Home Company Inc** and **TNHC Realty and Construction Inc.**

59. **Key Fact: The New Home Company Southern California LLC** is not a Named Insured on this Certificate of Liability Insurance.

60. On April 22, 2025, certain subcontractors and construction consulting company **Bert L Howe and Associates** inspected the home, as stated in the aforementioned SB800 letter.

61. **Bert L Howe and Associates** did not have a CSLB license number at the time of inspection.

62. **Bert L Howe and Associates** still does not have a CSLB license number as of September 9, 2025.

63. **Bert L Howe and Associates** did not have an Irvine business license number at the time of inspection.

64. **Bert L Howe and Associates** still does not have an Irvine business license number as of September 9, 2025.

65. **Key Fact:** On May 15, 2025, the last item on the Homeowner Central warranty portal was marked "Completed." (See *Final Warranty List.xls*)

66. This warranty item pertained to a window having a large scratch.

67. On May 22, 2025, PHLK sent an SB800 response letter. (See *SB800 Final Letter.pdf*)

68. This letter was a response to the inspections performed on April 22, 2025.

69. This letter denied all claims sent in the previous SB800 notices related to those inspections.

F. Post-SB800

70. On May 23, 2025, **JG** sent complaint evidence to the CSLB, issued litigation hold notices to **The New Home Company Inc** and its law firm, and sent bond-related letters to surety companies.

71. **Key Fact:** On May 27, 2025, **TNHC** via PHLK sent its first cease-and-desist letter to **JG**. (*Cease and Desist 1.pdf*)

72. The letter alleges trespass of company property by **JG**.

73. The letter alleges harassment of company contractors by **JG**.

74. The letter alleges that **JG's** conduct was "illegal, dangerous, and disruptive."

75. In the letter, the company reserves "the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties."

76. Photos displayed in the letter were taken by an individual who was a subcontractor of the company.

77. This individual protested at the time that **JG** was taking photos of the worksite.

78. The individual who took the photos of **JG** was wearing a tan or brown shirt at the time. (See *IMG_8225.jpeg*)

79. The license plate number of the vehicle of the individual who took the photos was CA 20637B1. (See *IMG_8223.jpeg*)

80. The vehicle did not have a CSLB license number written on the driver side door.

81. The vehicle did not have a company name written on the driver side door.

82. The individual transferred their photos of **JG** to **The New Home Company Inc** or subsidiary.

83. **The New Home Company Inc** or subsidiary transferred the photos to PHLK LLP.

84. The photos were taken by the individual on May 20, 2025.

85. The employees in the photos taken by the individual were employees of Solara.

86. The employees were wearing neon yellow hoodies. (See *IMG_8228.jpeg*)

87. Solara has a CSLB License number of 1103958. (See *IMG_8230.jpeg*)

88. The employee interacting with **JG** in the photos was wearing sunglasses and had a hood over their head.

89. The employee interacting with **JG** in the photos had their hands down by their waist.

90. The employee interacting with **JG** in the photos appeared to be relaxed.

91. The license plate number of the Solara vehicle in the photo is CA 16073C4. (See *IMG_8229.jpeg*)

92. On June 2, 2025, **JG** flew from Irvine to Denver on Southwest Airlines. (See *SNA to DEN.pdf*)

93. On June 9, 2025, **Tokio Marine** sent 2 bond claim denial letters, letter one and letter two. (See *Tokio Marine ACIC Turnstyle Rejection Letter.pdf and Tokio Marine ACIC Aliso Air Inc Rejection Letter.pdf*)

94. On June 10, 2025, **IAT/Harco** sent a bond claim denial letter. (See *IAT Harco Glass Fence Bond Claim Denial.pdf*)

95. On June 13, 2025, **JG** sent a litigation hold notice to **COI**.

96. On June 23, 2025, **The New Home Company Inc** issued its second cease-and-desist letter to **JG**. (See *Cease and Desist 2.pdf*)

97. The letter alleges continued "abusive and harassing behavior" after the date of the first cease and desist letter, which was on May 27, 2025.

98. The letter further asserts that **JG** has "again intentionally and illegally trespassed on **The New Home Company Inc's** construction site and harassed the construction workers."

99. By June 27, 2025, the author of the letter, PHLK attorney **Melanie Woodfin**, was unable to produce evidence of further trespass by **JG**, despite repeated emails for evidence. (See *Melanie Woodfin produces no trespassing evidence.pdf*)

100. On June 24, 2025, **JG** flew from Denver to Milwaukee on Southwest Airlines. (See *DEN to MKE.pdf*)

101. On June 25, 2025, Ms. Woodfin wrote a response letter to Harco National Insurance Company regarding a bond claim **JG** initiated with Harco. (See *Melanie Woodfin Response to IAT - Harco Stair Railing Bond Claim.pdf*)

102. This letter claims that "We previously outlined such behavior which includes trespassing on TNHC's active construction site and 16 separate SB 800 Notices, two claims against the Bond which are duplicative of the Notices, and a letter threatening a lawsuit" and notes that "Mr. Gu has responded with bad faith conduct including repeated conduct intended to harass and annoy TNHC."

103. On July 9, 2025, **IAT/Harco** sent a 2nd bond claim denial letter. (See *IAT Harco Door Trim Bond Claim Denial.pdf*)

104. On July 29, 2025, **Tokio Marine/PIC** sent a bond claim denial letter. (See *Tokio Marine PIIC July 29 Rejection Letter.pdf*)

G. Irvine Interactions

105. On July 30, 2025, **JG** obtained the New Residential Construction Permit for 129 Oakstone from **COI** Building and Safety Department Employee Cheryl Charters via email. (See *129 Oakstone Construction Permit.pdf*)

106. This permit has a number 00920236-RBP.

107. Permit 00920236-RBP is the permit for the property at 129 Oakstone, 92618.

108. **Key Fact:** This permit shows "NEW HOME COMPANY" as the owner under the "OWNER-BUILDER DECLARATION" section.

109. In the middle section of the permit, "NEW HOME COMPANY" is also listed as "OWNER."

110. According to the Orange County Recorder Department Fictitious Business Name Search tool, “NEW HOME COMPANY” was an FBN for **TNHC REALTY AND CONSTRUCTION INC**. (See *New Home Company FBN.png*)

111. **TNHC REALTY AND CONSTRUCTION INC.** had 7 total FBN registrations under file number 20216607747 with filing date of June 11, 2021: THE NEW HOME COMPANY, NWHM, NEW HOME, NEW HOME COMPANY, TNHC, NEW HOME CO., RUSSELL RANCH. (See *New Home FBN 2021 folder*)

112. **Key Fact: TNHC REALTY AND CONSTRUCTION INC** was not the deeded owner of the property at 129 Oakstone at the time of applying for the permit.

113. **Key Fact: TNHC REALTY AND CONSTRUCTION INC** was not the deeded owner of the land on Tract 19176.

114. Tract 19176 constitutes the land on which the Olivewood neighborhood was built.

115. Lot 88 of Tract 19176 constitutes the land on which 129 Oakstone is now designated.

116. **TNHC REALTY AND CONSTRUCTION INC** has a CSLB license number of 938080 with classification “B - GENERAL BUILDING." (See *TNHC CSLB License*)

117. **Key Fact: TNHC REALTY AND CONSTRUCTION INC** is not listed as the “Contractor” on the New Residential Construction Permit for 129 Oakstone.

118. **Key Fact:** The CSLB license number for **TNHC REALTY AND CONSTRUCTION INC** is not listed under “Lic. No.” on the New Residential Construction Permit for 129 Oakstone.

119. **Key Fact:** The CSLB classification for **TNHC REALTY AND CONSTRUCTION INC** is not listed under “License Class” on the New Residential Construction Permit for 129 Oakstone.

120. **Key Fact: TNHC REALTY AND CONSTRUCTION INC** CSLB license information is not listed on the New Residential Construction Permit of any home in the Olivewood neighborhood.

121. Kristi Blanchard of KB Processing was the applicant and signatory for the permit.

H. Irvine Responses

122. **Key Fact:** On July 30, 2025 at 4:01pm PT, **JG** called Councilman **William Go**'s office. (See *Irvine Police Phone Call Details.pdf*)

123. **JG** called with the number 920-273-9064.

124. Instead of reaching **Mr. Go**, **JG** talked to **Trinity Pham**.

125. At the time, **Ms. Pham** only introduced her first name, "Trinity."

126. **JG** discussed the permitting failures, code violations, and lack of qualifications of certain employees with **Ms. Pham** while talking to her.

127. The phone call lasted approximately 7 minutes.

128. **Key Fact: JG** did not attempt to reach **Ms. Pham** ever again after this phone call.

129. **Key Fact:** On July 30, 2025 at 8:47pm PT, **JG** received a phone call from an unknown number. (See *Irvine Police Phone Call Details.pdf*)

130. The phone number called was 720-593-1548.

131. This phone number is not the same number used to call **Mr. Go** when he spoke with **Ms. Pham**.

132. The caller claimed to be a police officer from the Irvine Police Department.

133. The caller had a female voice.

134. The caller said this was about the call made earlier to Mr. Go's office, the conversation with **Ms. Pham**.

135. The caller asked JG if he said "someone should hurt themselves."

136. **JG** said he did not remember saying this.

137. **JG** asked "could you please be more specific?"

138. The officer said she was "already being specific."

139. **JG** said "thank you for the intimidation."

140. The call ended shortly after that.

141. The call lasted approximately 2 minutes.

142. On July 31, 2025, **JG** contacted **COI** Human Resources Department and asked for **Ms. Pham's** full name, title, and department.

143. **Key Fact: JG** did not ask **Ms. Pham's** private information during this or any other call to HR.

144. The HR employee answered that **Ms. Pham's** title was "Supervising Principal Council Executive Assistant."

145. **Ms. Pham's** LinkedIn lists "Marketing Communications Manager" as her title, as of July 31, 2025. (See *Trinity Pham | LinkedIn.pdf*)

146. On July 31, **JG** also called **COI's** Communications and Engagement Department but reached a voicemail.

147. An employee named Alyssa called **JG** back.

148. Alyssa said Trinity Pham is not part of the Communications and Engagement Department.

149. The Communications and Engagement Department is essentially **COI's** marketing department.

150. Also on July 31, **JG** emailed City Attorneys **Jeffrey Melching** and **Jessica Sanders** asking for information about the July 30 police phone call. (See *Irvine PD July 30 Phone Call.pdf*)

151. The attorneys ignored answering the single question in the email, as of September 9, 2025.

152. On August 1, 2025, **JG** again contacted **COI** HR department to confirm the title of another staffer, Kalvin Alvarez.

153. A male HR employee informed **JG** that such information could no longer be shared with him.

154. On August 4, 2025, **JG** received the Permit Declaration and related documents from **COI** employee Cheryl Charters via email for all the houses in the Olivewood tract. (See *129 Oakstone Declaration Docs.pdf*)

155. The Permit Declaration and related documents for "Lots 87-89, 96-98 126-131 Oakstone" portray "New Home Co." as the Property Owner or builder, depending on the document.

156. "New Home Co." was an FBN for **TNHC Realty and Construction Inc**. (See *New Home Co FBN.png*)

157. Kristi Blanchard of KB Processing is the applicant and signatory for the Permit Declaration and related documents.

158. **Key Fact:** On August 5, 2025, **COI**, via attorney Jessica Sanders of Rutan & Tucker, issued a cease-and-desist letter via email to **JG**. (See *COI Cease and Desist.pdf*)

159. The letter demands that **JG** "immediately cease all direct contact with City staff and offices."

160. The letter also claims that **JG's** "repeated calls and attempts to contact Ms. Pham, and requests for her personal contact information are inappropriate and not related to any legitimate request for service or information from the City. It has become necessary for the City and the Irvine Police Department (IPD) to take precautionary matters to preserve Ms. Pham's safety and wellbeing."

161. Also on August 5, 2025, **TNHC** issued its 3rd cease-and-desist letter. (See *Cease and Desist 3.pdf*)

162. This letter alleges further harassment of **TNHC** vendors by **JG**.

163. **JG** creates a call log of his interactions with **COI** up until that point. (See *Call Logs folder*)

164. The log shows only 2 hours and 13 minutes of phone calls made over the previous 5 months to **COI**, with most being unanswered.

165. On August 7, 2025, **JG** submitted a Letter of Concern to the Orange County Grand Jury regarding misconduct by **COI**.

166. On August 8, 2025, **JG** submitted a Claim for Damages against **COI** in the amount of $5.7 million. (See *Claim for Damages Full.pdf*)

167. On August 11, 2025, the **COI's** third-party administrator, George Hills, called **JG** to acknowledge receipt of the Claim for Damages.

168. Also on August 11, 2025, **Bert L. Howe & Associates** issued a cease-and-desist letter to **JG**. (See *BHA Cease and Desist.pdf*)

169. The letter alleges "The Company is working with local authorities, having filed a police report, and is working through our office to obtain a restraining order."

170. It also states that **JG** has "engaged in months of harassing and inappropriate conduct toward BHA, as well as its employees."

171. It also states "the Company forewarns that you not respond to the instant letter by making any disparaging and defamatory statements about the Company and its business practices to any third party, including the Company's customers, bonding companies, or state licensing boards. Should you do so, a civil action seeking all available relief, including monetary damages and injunctive relief, will be filed against you."

172. On August 13, 2025, **COI** rejected **JG's** Claim for Damages with a letter. (See *Irvine Claim Denial Letter Aug 13.png*)

173. On August 20, 2025, **JG** sent an email to **Mayor Larry Agran** and **City Manager Sean Crumby** noting First Amendment harms. (See *Gmail - Agran and Crumby No Response.pdf*)

174. By August 22, 2025, **Mayor Agran** and **City Manager Crumby** did not answer the email about these concerns.

175. On August 14, 2025, **IAT/Harco** sent a 3rd bond claim denial letter. (See *IAT Harco Door Trim Bond Claim Denial.pdf*)

176. On August 21, 2025, **JG** sent an email to the HOA General Manager of Portola Springs, Ellis Calvillo. (See *Gmail - HOA Builder at Olivewood.pdf*)

177. Mr. Calvillo stated that the legal name for the builder on record according to the HOA is "**The New Home Company Southern California LLC**."

178. Also on August 22, 2025, **The New Home Company Inc** issued its 4th cease-and-desist letter. (See *Cease and Desist 4.pdf*)

179. The letter states that "TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties."

180. On August 22, 2025, **Tokio Marine/PIC** sent a Department of Insurance Response Letter. (See *Tokio Marine PIIC CDI Response.pdf*)

181. On August 25, 2025, **COI** issued its second cease-and-desist letter to **JG**. (See *COI Cease and Desist 2.pdf*)

182. This letter claims that **JG's** "behavior is disruptive and threatening."

183. This letter emphasizes that the **City Attorneys Sanders** and **Melching** "will transmit public comments and questions to the relevant City parties as necessary and appropriate."

184. This letter also states that **JG** "may correspond with myself and Attorney Melching via email only."

185. This letter also states that "Failure to comply with these directives will leave us with no choice but to consider further action to protect the City's interests, including instituting legal action against you."

186. Also on August 25, 2025, **JG** sent another email to **Mayor Agran** and **City Manager Crumby**, this time about this second cease-and-desist letter. (See *Gmail - Agran and Crumby No Response 2.pdf*)

187. They also did not respond to this email, as of September 9, 2025.

188. On August 28, **COI** responded to a CPRA request for documents they used to prove ownership for the owner-builder exemption. (See *Olivewood proof of ownership.pdf*)

189. These documents point to an entity called "New Home Company".

I. The New Home Company History

190. **The New Home Company Inc** incorporated in Delaware on June 25, 2009. (See *The New Home Company Inc.pdf*)

191. **The New Home Company Southern California LLC** incorporated in Delaware on June 25, 2009. (See *The New Home Company Southern California LLC.pdf*)

192. **TNHC Realty and Construction Inc** incorporated in Delaware on June 25, 2009. (See *TNHC Realty and Construction Inc.pdf*)

193. These 3 companies were all incorporated in Delaware on the same day.

194. H Lawrence Webb was CEO of The New Home Company Inc from 2009 - 2019. (See *Larry Webb | LinkedIn.pdf*)

195. H Lawrence Webb was Executive Chairman of **The New Home Company Inc** from 2019 - 2022.

196. Wayne Stelmar was CIO of The New Home Company Inc until 2017. (See *New Home CIO Wayne Stelmar to Retire.pdf*)

J. John Laing Homes Company History

197. **WL Homes LLC** was more commonly known as "John Laing Homes."

198. **WL Homes LLC** owned the trademark for "John Laing Homes." (See *WL Homes LLC Trademark.pdf*)

199. **WL Homes LLC** was registered in California. (See *JLH Realty and Construction Inc.pdf*)

200. **John Laing Homes (California), Inc** was a separate entity from **WL Homes LLC** in California. (See *JLH Realty and Construction Inc.pdf*)

201. **JLH Realty & Construction, Inc.** was a separate entity from **WL Homes LLC** and **John Laing Homes (California), Inc** in California. (See *JLH Realty and Construction Inc.pdf*)

202. **JLH Realty & Construction, Inc** had a CSLB license number of 687596. (See *JLH CSLB License.pdf*)

203. **JLH Realty & Construction, Inc** had a DRE license number of 01176549. (See *JLH DRE License.pdf*)

204. Neither **John Laing Homes (California), Inc** nor **WL Homes LLC** ever had a CSLB license number.

205. Neither **John Laing Homes (California), Inc** nor **WL Homes LLC** ever had a DRE license number.

206. "John Laing Homes" was listed as the owner-builder on a permit from 3/28/2007 for the Irvine address 31 Iceberg Rose. (See *John Laing Homes Permits and Declarations.pdf*)

207. "John Laing Homes" had no FBN registration in Orange County at that time.

208. **WL Homes LLC**'s CEO was **H Lawrence Webb** through March of 2008. (See *Webb Steps Down as CEO of John Laing Homes 2008.pdf*)

209. **WL Homes LLC's** executive **Wayne Stelmar** signed documents for WL Homes LLC in July of 2008. (See *Wachovia v JLH.pdf*).

210. **WL Homes LLC** filed for bankruptcy in Delaware in February of 2009. (See *Home builder John Laing files for bankruptcy | Reuters.pdf*)

K. The New Home Company Disclosures

211. **Miek Harbur** and/or other employees submitted Form SI-PT for The New Home Company Inc between 2015-2021 to the California Secretary of State. (See *SOS SI-PT Disclosures files*)

212. In each form where this individual was present, "NO" was checked beside **Mr. Webb** under BANKRUPTCY.

213. In each form where this individual was present, "NO" was checked beside **Mr. Stelmar** under BANKRUPTCY.

214. State instructions for this question state "Check YES or NO to indicate whether or not an order for relief has been entered in a bankruptcy case during the 10 years preceding the date of this statement with respect to each director." (See *Form SI-PT Info.pdf*)

215. **Ms. Harbur** is currently the General Counsel for **The New Home Company Inc**, as of September 9, 2025. (See *Miek Harbur | LinkedIn.pdf*)

216. **Ms. Harbur** has been the General Counsel since 2016.

217. On January 30, 2014, **TNHC** made an SEC filing disclosing information for an IPO. (See *New Home Co IPO Form 424B4 2019 Speaks sparingly of bankruptcy.pdf*)

218. This filing did not disclose **Mr. Webb's** relationship to the bankruptcy of **WL Homes LLC.**

219. This filing did not disclose **Mr. Stelmar's** relationship to the bankruptcy of **WL Homes LLC.**

L. Irvine Building & Safety Department

220. **Jesse Cardoza** is the CBO of COI Building and Safety Department as of September 9, 2025.

221. **Mr. Cardoza** has been in this position since 2021.

222. **Mr. Cardoza** provides engineering opinions in his role as CBO.

223. **Mr. Cardoza** uses his engineering expertise in his role as CBO.

224. **Mr. Cardoza** uses his engineering experience in his role as CBO.

225. No employee or agent of **COI** has submitted a Notice of Department Designation form to the California BPELSG naming **Mr. Cardoza** as a being in responsible charge as stipulated in the form.

226. **Mr. Cardoza** has listed "Jesse Cardoza, PE, CASp" in his email signature for the email jcardoza@cityofirvine.org in the past.

227. **Mr. Cardoza** has listed "Jesse Cardoza, PE, CASp" in his email signature for the email jcardoza@cityofirvine.org frequently in the past.

228. **Mr. Cardoza's** email response to comment on the handrail code differs materially from **California Building Standard Commission Executive Director Stoyan Bumbalov's** guidance. (See *Gmail - Cardoza Contradicting Bumbalov.pdf*)

229. California has not formally adopted International Building Code A101.1.

230. However, the provision remains a widely recognized international benchmark for the ethical and professional qualifications of code enforcement personnel.

231. **Mr. Cardoza's** LinkedIn and resume shows less than 10 years of building department experience before ascending for the CBO position. (See *Jesse Cardoza Resume and LinkedIn.pdf*)

232. The documents only show 9 years and 1 month of experience.

233. **Mr. Cardoza's** total professional work experience relating to the role is less than the stated minimum of 10 years stated by International Building Code A101.1. (See *A101.1.png*)

234. **Mr. Cardoza's** LinkedIn and resume show 5 years and 10 months as a Senior Plan Check Engineer.

235. In the above role, **Mr. Cardoza's** resume only lists these supervisory activities: 1) Provide leadership and technical oversight to junior staff with respect to customer service, department policy, code interpretation, and plan review procedures. 2) Provide assistance with the supervision of plan check staff and activities, including budget development/monitoring and employee performance assessment.

## V. CAUSES OF ACTION

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 – FIRST AMENDMENT (Freedom to Petition the Government)

Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

At all relevant times, Defendants City of Irvine, Jessica Sanders, Jeffrey Melching, William Go, Trinity Pham, and the Irvine Police Department were acting under color of state law.

Defendants, acting individually and in concert, deprived Plaintiff of his First Amendment right to petition the government for redress of grievances. Specifically, Defendants issued a cease-and-desist letter on August 5, 2025, demanding that Plaintiff "immediately cease all direct contact with City staff and offices," and subsequently reaffirmed this directive in a second letter dated August 25, 2025. (See ¶¶ 158–160, 181–185.)

These directives chilled, burdened, and effectively prohibited Plaintiff from lawfully communicating with elected officials and public employees about matters involving permitting irregularities and building code violations in hundreds of homes. Plaintiff's repeated outreach by

email to Mayor Larry Agran and City Manager Sean Crumby was met with silence, evidencing institutional endorsement of this unconstitutional restriction at the highest levels of city government. (See ¶¶ 173–174, 186–187.)

The stated justifications for the cease-and-desist order—including "concerns regarding the safety and wellbeing of City staff" and allegations of "repeated calls and attempts to contact Ms. Pham, and requests for her personal contact information"—were wholly pretextual and unsupported by any specific, credible evidence of misconduct (see 160). These allegations were raised only *after* Plaintiff's protected activity became inconvenient or politically sensitive, further underscoring that the true motive was to suppress criticism and avoid accountability.

Defendants' actions and omissions had both the purpose and effect of silencing Plaintiff's protected expression and participation in democratic processes. These included, but were not limited to: communicating with city officials, requesting public records, and raising complaints about municipal conduct—all of which are activities protected by the First Amendment.

The unconstitutional conduct described above was undertaken pursuant to an official policy, longstanding custom, or widespread practice of the City of Irvine. Accordingly, the City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as the policy or practice was the moving force behind the violation of Plaintiff's constitutional rights.

The conduct of Defendants was willful, malicious, and in reckless disregard of Plaintiff's federally protected rights.

As a direct and proximate result, Plaintiff suffered emotional distress, reputational harm, loss of civic standing, and other compensable injuries.

**COUNT II: VIOLATION OF 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT**

**(Procedural Due Process)**

Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

At all relevant times, Defendants City of Irvine, Jessica Sanders, Jeffrey Melching, William Go, Trinity Pham, and the Irvine Police Department were acting under color of state law.

Defendants violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment by depriving him of freedom from arbitrary government intimidation or implied criminal sanction without providing adequate notice, explanation, or an opportunity to be heard.

**1. Initiation of Police Contact Without Notice or Process**

On July 30, 2025, Defendants facilitated a phone call from the Irvine Police Department to Plaintiff, allegedly concerning the call with City employee Trinity Pham from just hours earlier. The communication appeared to carry implicit threats of legal or criminal consequences. Plaintiff was never notified in advance of any complaint, nor given a meaningful opportunity to understand, contest, or respond to the allegations. This absence of process violated Plaintiff's right to be free from arbitrary and stigmatizing government interference with his liberty interests. (See ¶¶ 129–141.)

**2. Imposition of Gag Directive Without Due Process**

On August 5 and 25, 2025, Defendants issued cease-and-desist letters instructing Plaintiff to cease all direct contact with City staff and offices. No warning, notice, or opportunity to contest the directive was provided. This sweeping restriction chilled Plaintiff's rights and imposed reputational and civic consequences without any formal procedure or hearing. (See ¶¶ 158–160, 181–185.)

**3. Systematic Refusal to Explain or Process Plaintiff's Grievances**

Following both the police phone call and gag directive, Plaintiff repeatedly requested clarification and explanation from Defendants, including from the City Manager and Mayor. These requests were ignored. The City's refusal to provide even a minimal post-deprivation process, or to identify what policies governed these actions, further compounded the constitutional harm. (See ¶¶ 150-151, 173–174, 186–187.)

Defendants' actions were arbitrary, capricious, and undertaken with reckless disregard for Plaintiff's right to fair process under the Fourteenth Amendment.

The unconstitutional conduct described above was undertaken pursuant to an official policy, longstanding custom, or widespread practice of the City of Irvine. Accordingly, the City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as the policy or practice was the moving force behind the violation of Plaintiff's constitutional rights.

As a direct and proximate result, Plaintiff suffered emotional distress, reputational harm, loss of civic standing, and other compensable injuries.

**COUNT III: VIOLATION OF THE BANE ACT (CALIFORNIA CIVIL CODE § 52.1)**

Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

Defendants The New Home Company Inc., TNHC Realty and Construction Inc., The New Home Company Southern California LLC, Bert L. Howe and Associates, the City of Irvine, and the Irvine Police Department, through their officers, employees, and authorized agents, interfered with or attempted to interfere with Plaintiff's exercise and enjoyment of rights secured by the

Constitution and laws of the United States and California, through threats, intimidation, or coercion, in violation of California Civil Code § 52.1.

Specifically, Defendants issued or orchestrated false and retaliatory accusations, including claims of trespass and harassment, which culminated in at least seven cease-and-desist letters between May 27 and August 25, 2025. (See ¶¶ 71, 96, 158, 161, 168, 178, 181.) These letters were intended to, and did, interfere with Plaintiff's lawful rights to inspect and document construction conditions, request licensing information, report violations to state agencies, and petition government officials for redress of grievances.

Defendants' actions were not only unlawful but also undertaken with the specific intent to chill, burden, or prevent Plaintiff's exercise of protected rights. The pattern of escalation, official involvement, and refusal to engage in reasonable dialogue reflects coercion and intimidation intended to silence Plaintiff's oversight, criticism, and legal participation.

As a direct and proximate result, Plaintiff suffered emotional distress, reputational harm, loss of civic standing, and other compensable injuries.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

1) **Injunctive Relief**

Issue appropriate injunctive orders restraining Defendants from further retaliation, unlawful

restriction of speech or petitioning, or interference with Plaintiff's statutory and constitutional rights.

2) **Compensatory Damages**

Award compensatory damages for emotional distress, reputational harm, and other non-economic and economic injuries resulting from the violations of Plaintiff's rights.

3) **Statutory Damages**

Award statutory damages pursuant to California Civil Code § 52.1, including for each proven act of interference with Plaintiff's protected rights.

4) **Punitive Damages**

Award punitive damages against individual Defendants in their personal capacities, in an amount sufficient to punish and deter willful, malicious, or reckless violations of law.

5) **Attorneys' Fees and Costs**

Award reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988 and California Civil Code § 52.1(h), including expert witness fees, deposition costs, and related expenses.

6) **Additional Legal or Equitable Relief**

Grant such other and further relief—legal or equitable—as the Court deems just and proper, including declaratory relief and any additional orders necessary to prevent ongoing or future violations of Plaintiff's rights.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

____________________ September 16, 2025

Jeffrey Gu, Plaintiff, Pro Se

PRESS FIRMLY TO SEAL

FSC MIX Board FSC® C118918

PAPER POUCH how2recycle.info

PRESS FIRMLY TO SEAL

RECEIVED
CLERK, U.S. DISTRICT COURT
SEP 19 2025
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION BY DEPUTY

FOND DU LAC, WI 54935
SEP 16, 2025
92701
$31.40
S2324W500862-16
RDC 07

# PRIORITY MAIL EXPRESS®

## FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

13

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PS10001000006

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL EXPRESS®

EI 959 458 793 US

PROC

CUSTOMER USE ONLY

FROM: (PLEASE PRINT) PHONE (720)593 1548

Jeffrey Gu
2332 N Clay St.
Apt. 3
Denver, CO 80211

DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT) PHONE (714 338 4750

United States Courthouse
411 W. 4th St. Room 1053
Santa Ana, CA 92701-4516

ZIP + 4® (U.S. ADDRESSES ONLY)
92701-4516

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

PEEL FROM THIS CORNER

PAYMENT BY ACCOUNT (if applicable)
Federal Agency Acct. No. or Postal Service™ Acct. No.

ORIGIN (POSTAL SERVICE USE ONLY)

☐ 1-Day ☐ 2-Day ☐ Military ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage | |
|---|---|---|---|
| 54935 | 9/19/25 | $ 31.40 | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 9/16/25 | ☒ 6:00 PM | $ | $ |
| Time Accepted ☐ AM ☒ PM | | Return Receipt Fee | Live Animal Transportation Fee |
| 3:41 | | $ | $ |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| $ | $ | | |
| Weight ☒ Flat Rate lbs. ozs. | Acceptance Employee Initials JH | $ 31.40 | |

DELIVERY (POSTAL SERVICE USE ONLY)

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| | ☐ AM ☐ PM | |

LABEL 11-B, NOVEMBER 2023 PSN 7690-02-000-9996

EP13F October 2023
OD: 12 1/2 x 9 1/2

PAPER POUCH how2recycle.info

UNITED STATES POSTAL SERVICE®

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; October 2023; All rights reserved.

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL EXPRESS®

EMS

# FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

PS10001000006

EP13F October 2023
OD: 12 1/2 x 9 1/2

GUARANTEED* ▪ TRACKED ▪ INSURED

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.