# EXHIBIT 151



Surety Group
801 South Figueroa Street, Suite 700
Los Angeles, CA 90017
Tel: 310-649-0990  Fax: 213-652-1982

**VIA U.S. MAIL & EMAIL jeffwgu@gmail.com**

June 9, 2025

Di Lan Ge
129 Oakstone Ln
Irvine CA 92618

| Re: | Principal | : | **Turnstyle** |
|---|---|---|---|
| | Surety | : | **American Contractors Indemnity Company** |
| | Bond No. | : | **230820 - Contractor's License Bond** |
| | License No. | : | **556018** |
| | Claim No. | : | **AC74633-1** |
| | Claimant | : | **Di Lan Ge** |

Dear Di Lan Ge:

I write on behalf of American Contractors Indemnity Company ("ACIC"). We acknowledge receiving the claim you filed against the above-referenced contractor's license bond of Turnstyle ("bond principal").

We have conducted a preliminary review of your claim. We understand you entered into a construction contract with the bond principal for stair and handrail work. You allege the bond principal departed from accepted trade standards for good and workmanlike construction and deviated from building codes. As such, you are seeking payment from the bond.

Contractors' license bonds are issued pursuant to Division 3, Chapter 9, of the California Business and Professions Code ("B&P"), commonly referred to as the Contractor's License Law ("CLL"). The conditions for the recovery of damages from a contractor's license bond are set forth in Section 7071.5(a) of the CLL, which states in relevant part as follows:

> The contractor's bond shall be for the benefit of the following:
>
> (a)  A homeowner contracting for home improvement upon the homeowner's personal family residence damaged as a result of a violation of this chapter by the licensee.

The statutory Contractors' License Bond on which you have made a claim upon is not a cash, payment or performance bond, nor is it an insurance policy. ACIC's liability under the bond is limited by the above-referenced statutes. In other words, you must provide sufficient evidence to allow the Surety to conclude, with reasonable certainty, that the bond principal has violated any of the Sections of the CLL. You are then required to provide evidence that you have suffered damages due to that violation.

Damages recoverable from a contractor's license bond are calculated based on the cost to correct/complete the project, less any amount left unpaid on the contract. In this regard, we refer you to California Civil Code Section 3358, which states:

> Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides.



The sections within Chapter 9 of the B&P most applicable to your claim are Sections 7109, 7110, and 7113.

Section 7109 states:

> (a) A willful departure in any material respect from accepted trade standards for good and workmanlike construction constitutes a cause for disciplinary action, unless the departure was in accordance with plans and specifications prepared by or under the direct supervision of an architect.
> (b) A willful departure from or disregard of plans or specifications in any material respect, which is prejudicial to another, without the consent of the owner or his or her duly authorized representative and without the consent of the person entitled to have the particular construction project or operation completed in accordance with such plans or specifications, constitutes a cause for disciplinary action.

Section 7110 states:

> Willful or deliberate disregard and violation of the building laws of the state, or of any political subdivision thereof, or of any of the following references to or provisions of law, constitutes a cause for disciplinary action against a licensee:
> (a) Section 8550 or 8556.
> (b) Sections 1689.5 to 1689.15, inclusive, of the Civil Code.
> (c) The safety laws or labor laws or compensation insurance laws or Unemployment Insurance Code of the state.
> (d) The Subletting and Subcontracting Fair Practices Act (Chapter 4 (commencing with Section 4100) of Part 1 of Division 2 of the Public Contract Code).
> (e) Any provision of the Health and Safety Code or Water Code, relating to the digging, boring, or drilling of water wells.
> (f) Any provision of Article 2 (commencing with Section 4216) of Chapter 3.1 of Division 5 of Title 1 of the Government Code.
> (g) Section 374.3 of the Penal Code or any substantially similar law or ordinance that is promulgated by a local government agency as defined in Section 82041 of the Government Code.
> (h) Any state or local law relating to the issuance of building permits.

Section 7113 states:

> Failure in a material respect on the part of a licensee to complete any construction project or operation for the price stated in the contract for such construction project or operation or in any modification of such contract constitutes a cause for disciplinary action.

Please provide a copy of the contract, the bond principal's start and cease dates, front and back copies of checks paid to the bond principal, photos of the issues, and an estimate from another licensed contractor to correct/complete the work. The detailed evaluation must state how the bond principal's work departed from accepted trade standards for good and workmanlike construction and deviated from building codes. Your claim documentation has been forwarded to the bond principal for review and response. We will advise you if we receive a written response from the bond principal.

B&P Section 7071.11(c), which establishes the statute of limitations, states as follows:



Except for claims covered by subdivision (d), any action against a bond required under this article, excluding the judgment bond specified under Section 7071.17, shall be brought in accordance with the following:

(1) Within two years after the expiration of the license period during which the act or omission occurred. The provisions of this paragraph shall be applicable only if the license has not been inactivated, canceled, or revoked during the license period for which the bond was posted and accepted by the registrar as specified under Section 7071.7.
(2) If the license has been inactivated, canceled, or revoked, an action shall be brought within two years of the date the license of the active licensee would have expired had the license not been inactivated, canceled, or revoked. For the provisions of this paragraph to be applicable, the act or omission for which the action is filed must have occurred prior to the date the license was inactivated, canceled, or revoked.

For the statute of limitations, license periods run in two-year increments. For violations of the licensing law that occurred during the two-year license period of February 28, 2025, to February 28, 2027, the statute of limitations will run on February 28, 2029. The statute of limitations may differ if the date of loss differs. You may seek legal advice if you need assistance calculating the statute of limitations.

We reserve all our rights and defenses under the bond, the law, or otherwise.

Sincerely,

*Jerome Tenorio*

Jerome Tenorio, Bond Claims Supervisor
On behalf of American Contractors Indemnity Company
Tokio Marine HCC-Surety Group
Direct Line: (310) 242-6263
Email: jtenorio@tmhcc.com

Cc: Turnstyle

# EXHIBIT 152

Ref #2021005031, Date: 1/13/2021 1:40 PM, Pages: 1 of 1 ,REC: $13.00
Electronically Recorded Douglas County, CO. Merlin Klotz, Clerk and Recorder

## STATEMENT OF AUTHORITY

1.  This Statement of Authority relates to an entity named
    **Toll Southwest LLC, a Delaware limited liability company**
    And is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2.  The type of entity is a:
    - ☐ Corporation
    - ☐ Nonprofit Corporation
    - ✓ Limited Liability Company
    - ☐ General Partnership
    - ☐ Limited Partnership
    - ☐
    - ☐ Registered Limited Liability Partnership
    - ☐ Registered Limited Liability Limited Partnership
    - ☐ Limited Partnership Association
    - ☐ Government or Governmental Subdivision or Agency
    - ☐ Trust

3.  The entity is formed under the law of the   **State of Delaware**

4.  The mailing address for the entity is   1140 Virginia Drive, Fort Washington, PA 19034

5.  The name and position of each person authorized to execute instruments conveying, encumbering or otherwise affecting title to real property on behalf of the entity is:
    Mark Bailey – Group President

6.  The authority of the foregoing person(s) to bind the entity is   XX   not limited   ☐   limited as follows:

7.  Other matters concerning the manner in which the entity deals with interests in real property:

8   The Statement of Authority is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

9.  This Statement of Authority amends and supersedes in all respects any prior Statement of Authority executed on behalf of the entity.

Executed on  this ___8___ day of January, 2021.

**TOLL SOUTHWEST LLC,**
**a Delaware limited liability company**

By: _____
    **Mark Bailey, Group President**

State of   Colorado
                            } ss
County of   Arapahoe

The foregoing instrument was acknowledged before me this ___8___ day of January, 2021 by Mark Bailey as Group President on behalf of Toll Southwest LLC, a Delaware limited liability company.

Witness my hand and official seal

┌─────────────────────────────┐
│      **ANGELA SMITH**       │
│       Notary Public         │
│     State of Colorado       │
│   Notary ID # 20194032740   │
│ My Commission Expires 08-16-2022 │
└─────────────────────────────┘

_____
Notary Public
My commission expires: __8/16/22__

Statement of Authority – Commercial
ComStOfA (DSI Rev. 08/09/17)

Printed:  1/6/2021 12:06 PM by JY
Escrow No.:  N0023727-020-JY

Page 1 Recording Requested by:
FNTG-NCS Colorado

RECEPTION #20220012398, 2/24/2022 12:39:33 PM, 1 of 1, SB0.00, Electronically Recorded
Angela Myers, Clerk & Recorder, Larimer County, CO

## STATEMENT OF AUTHORITY

1. This Statement of Authority relates to an entity named TOLL SOUTHWEST LLC. and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172. C.R.S.

2. The type of entity is a:

   ☐ corporation                    ☐ registered limited liability partnership
   ☐ nonprofit corporation          ☐ registered limited liability limited partnership
   ☒ limited liability company      ☐ limited partnership association
   ☐ general partnership            ☐ government or governmental subdivision or agency
   ☐ limited partnership            ☐ trust (Section 38-30-108.5, C.R.S.)
   ☐ other: _____

3. The entity is formed under the laws of: Delaware.

4. The mailing address for the entity is: 1140 Virginia Drive, Fort Washington, PA 19034

5. The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is:

   Mark G. Bailey, Group President
   Reginald (Reggie) E. Carveth, Division President
   Matt Foran, Vice President
   Kenneth (Ken) J. Greenspan, Vice President
   Stacey A. Rothaus, Vice President

6. The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7. Other matters concerning the manner in which the entity deals with interests in real property: N/A.

Executed this 17ᵗʰ day of February, 2022.

                                   TOLL SOUTHWEST LLC.
                                   a Delaware limited liability company

                                   By: _____
                                   Name:  Ken Greenspan
                                   Title:   Vice President


STATE OF Pennsylvania )
                      ) ss.
COUNTY OF Montgomery  )

     The foregoing instrument was acknowledged before me this 17ᵗʰ day of February, 2022, by Kenneth Greenspan as Vice President of TOLL SOUTHWEST LLC, a Delaware limited liability company.

Witness my hand and official seal.

My commission expires: 9/8/2023        _____
                                        Notary Public

Commonwealth of Pennsylvania – Notary Seal
ELIZABETH P. STEIN, Notary Public
Montgomery County
My Commission Expires September 8, 2023
Commission Number 1159840

RECEPTION #20190056595, 9/19/2019 10:15:43 AM, 1 of 2, $13.00 Electronically Recorded
Angela Myers, Clerk & Recorder, Larimer County, CO

WHEN RECORDED   **TOLL SOUTHWEST LLC**
RETURN TO:      **250 GIBRALTAR RD**
                **HORSHAM, PA 19044**



## STATEMENT OF AUTHORITY
(§38-30-172, C.R.S.)

1. This Statement of Authority relates to an entity[1] named
   **TOLL SOUTHWEST LLC, A DELAWARE LIMITED LIABILITY COMPANY**

2. The type of entity is a:
   ☐ Corporation                      ☐ Registered Limited Liability Partnership
   ☐ Nonprofit Corporation            ☐ Registered Limited Liability Limited Partnership
   ☒ Limited Liability Company        ☐ Limited Partnership Association
   ☐ General Partnership              ☐ Government or Governmental Subdivision or Agency
   ☐ Limited Partnership              ☐ Trust
   ☐

3. The entity is formed under the laws of **Delaware**

4. The mailing address for the entity is **250 GIBRALTAR ROAD, HORSHAM, PA 19044**

5. The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering or otherwise affecting title to
   real property on behalf of the entity is **MARK G. BAILEY, DIVISION PRESIDENT OR CHRISTOPHER STULL, DIVISION VICE
   PRESIDENT**

6. The authority of the foregoing person(s) to bind the entity:  ☒ is[2] not limited ☐ is limited as follows :

7. Other matters concerning the manner in which the entity deals with interests in real property:

8. This Statement of Authority is executed on behalf of the entity pursuant to the provisions of §38-30-172, C.R.S. [3]

9. This Statement of Authority amends and supersedes in all respects any and all prior dated Statements of Authority executed on
   behalf of the entity.

Executed this day of September 18th, 2019

**TOLL SOUTHWEST LLC, A DELAWARE LIMITED
LIABILITY COMPANY**

By: _____

Print Name:  MARK BAILEY

Title:  DIVISION PRESIDENT

State of  Colorado            )
                             )ss.
County of  Arapahoe          )

The foregoing instrument was acknowledged before me on
this day of **September 18th, 2019** by  Mark Bailey

Witness my hand and official seal

My Commission expires:  8-16-22        _____
                                       Notary Public

```
          ANGELA SMITH
          Notary Public
        State of Colorado
      Notary ID # 20184032749
    My Commission Expires 08-16-2022
```

[1]This form should not be used unless the entity is capable of holding title to real property.

Form 884   closing/recordings/soa.html          25167883
                                                 (24080356)

RECEPTION #20190056595,  9/19/2019 10:15:43 AM, 2 of 2, $13.00 Electronically Recorded
Angela Myers, Clerk & Recorder, Larimer County, CO

[2] The absence of any limitation shall be prima facie evidence that no such limitation exists.

[3] The statement of authority must be recorded to obtain the benefits of the statute.

Ref #2019033591, Date: 6/12/2019 2:34 PM, Pages: 1 of 1 ,RECORDING $13.00 0
Electronically Recorded Douglas County, CO. Merlin Klotz, Clerk and Recorder

## STATEMENT OF AUTHORITY

1. This Statement of Authority relates to an entity named TOLL SOUTHWEST LLC, and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2. The type of entity is a:

   ☐ corporation                    ☐ registered limited liability partnership
   ☐ nonprofit corporation          ☐ registered limited liability limited partnership
   ☒ limited liability company      ☐ limited partnership association
   ☐ general partnership            ☐ government or governmental subdivision or agency
   ☐ limited partnership            ☐ trust (Section 38-30-108.5, C.R.S.)
   ☐ other: _____

3. The entity is formed under the laws of: Delaware.

4. The mailing address for the entity is: 10 Inverness Drive East, #125, Englewood, CO 80112.

5. The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is: Mark Bailey, as Division President, acting alone and without the need for multiple signatures.

6. The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7. Other matters concerning the manner in which the entity deals with interests in real property: N/A.

Executed this _____ day of _____ 2019.

                              TOLL SOUTHWEST LLC,
                              a Delaware limited liability company

                              By: _____

                              Name:  Mark Bailey
                              Title:   Division President

STATE OF COLORADO            )
                             )   ss.
COUNTY OF  Arapahoe          )

        The foregoing instrument was acknowledged before me this 10 day of June 2019, by Mark Bailey as Division President of TOLL SOUTHWEST LLC, a Delaware limited liability company.

Witness my hand and official seal.

My commission expires:

┌─────────────────────────────────┐
│     ANGELA SMITH                │
│     Notary Public               │
│     State of Colorado           │      _____
│     Notary ID # 20184032749     │      Notary Public
│  My Commission Expires 08-16-2022 │
└─────────────────────────────────┘

First American Title Insurance
National Commercial Services
NCS- 952137-PH1 -CO

03766886    02/19/2020 01:20 PM
RF: $18.00    DF: $0.00    Page: 1 of 2
Electronically recorded in Boulder County Colorado. Recorded as received.

WHEN RECORDED
RETURN TO:



## STATEMENT OF AUTHORITY
(§38-30-172, C.R.S.)

1. This Statement of Authority relates to an entity[1] named
   **TOLL SOUTHWEST LLC, A DELAWARE LIMITED LIABILITY COMPANY**

2. The type of entity is a:
   - ☐ Corporation
   - ☐ Nonprofit Corporation
   - ☒ Limited Liability Company
   - ☐ General Partnership
   - ☐ Limited Partnership
   - ☐
   - ☐ Registered Limited Liability Partnership
   - ☐ Registered Limited Liability Limited Partnership
   - ☐ Limited Partnership Association
   - ☐ Government or Governmental Subdivision or Agency
   - ☐ Trust

3. The entity is formed under the laws of **Delaware**

4. The mailing address for the entity is **10 INVERNESS DRIVE EAST, SUITE 125, ENGLEWOOD, CO 80112**

5. The ☐ name ☒ position of each person authorized to execute instruments conveying, encumbering or otherwise affecting title to real property on behalf of the entity is _GROUP PRESIDENT_

6. The authority of the foregoing person(s) to bind the entity: ☐ is[2] not limited ☐ is limited as follows:

7. Other matters concerning the manner in which the entity deals with interests in real property:

8. This Statement of Authority is executed on behalf of the entity pursuant to the provisions of §38-30-172, C.R.S. [3]

9. This Statement of Authority amends and supersedes in all respects any and all prior dated Statements of Authority executed on behalf of the entity.

Executed this day of _2/18/2020_

(SEE ATTACHED "SIGNATURE PAGE")

---

[1] This form should not be used unless the entity is capable of holding title to real property.
[2] The absence of any limitation shall be prima facie evidence that no such limitation exists.
[3] The statement of authority must be recorded to obtain the benefits of the statute.

Form 884    closing/recordings/soa.html          70568072
                                                  (26987038)



Statement of Authority - Buyer/Borrower

SIGNATURE PAGE

TOLL SOUTHWEST LLC, A DELAWARE LIMITED
LIABILITY COMPANY

By: _____

Print Name: MARK BAILEY

Title: GROUP PRESIDENT

State of Colorado                )
County of Arapahoe               )ss.
                                 )

The foregoing instrument was acknowledged before me on this day of February 17, 2021 by
Mark Bailey AS Group President OF TOLL SOUTHWEST LLC, A DELAWARE LIMITED
LIABILITY COMPANY

Witness my hand and official seal

My Commission expires: 8-16-2022          _____
                                          Notary Public

```
ANGELA SMITH
Notary Public
State of Colorado
Notary ID # 20184032748
My Commission Expires 08-16-2022
```

0562622    07/10/2018 08:22 AM
RF: $13.00    DF: $0.00    Page: 1 of 1
Electronically recorded in Boulder County Colorado. Recorded as received.

## STATEMENT OF AUTHORITY

1. This Statement of Authority relates to an entity named
   **Toll Southwest LLC (the General Partner of Toll CO, L.P.)**
   And is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2. The type of entity is a:
   - ☐ Corporation
   - ☐ Nonprofit Corporation
   - ☑ Limited Liability Company
   - ☐ General Partnership
   - ☐ Limited Partnership
   - ☐
   - ☐ Registered Limited Liability Partnership
   - ☐ Registered Limited Liability Limited Partnership
   - ☐ Limited Partnership Association
   - ☐ Government or Governmental Subdivision or Agency
   - ☐ Trust

3. The entity is formed under the law of the   **State of Delaware and qualified to do business in Colorado**

4. The mailing address for the entity is   **250 Gibraltar Road, Horsham, PA 19044**

5. The name and position of each person authorized to execute instruments conveying, encumbering or otherwise affecting title to real property on behalf of the entity is:
   Mark Bailey, Division President

6. The authority of the foregoing person(s) to bind the entity is   ☐   not limited   ☐   limited
   as follows:   NOT limited

7. Other matters concerning the manner in which the entity deals with interests in real property:
   N/A

8. The Statement of Authority is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

9. This Statement of Authority amends and supersedes in all respects any prior Statement of Authority executed on behalf of the entity.

Executed on  6/29/18

**Toll Southwest LLC**

By: Mark Bailey
**Title: Division President**

State of  Colorado
County of  Arapahoe  } ss

The foregoing instrument was acknowledged before me this 25 day of June, 2018 by Mark Bailey as Division President of Toll Southwest LLC.

Witness my hand and official seal

Joyce M. Bish
Notary Public

My commission expires: Nov 30, 2021

JOYCE M. BISH
Notary Public – State of Colorado
Notary ID 20174049148
My Commission Expires Nov 30, 2021

Ref #2017086968, Date: 12/27/2017 4:00 PM, Pages: 1 of 2 ,RECORDING $18.00  0
Electronically Recorded Douglas County, CO.  Merlin Klotz, Clerk and Recorder



## STATEMENT OF AUTHORITY
### (§38-30-172, C.R.S.)

1.  This Statement of Authority relates to an entity[1] named

    **TOLL SOUTHWEST LLC, A COLORADO LIMITED LIABILITY COMPANY**

2.  The type of entity is a:

    | | | | |
    |---|---|---|---|
    | ☐ | Corporation | ☐ | Registered Limited Liability Partnership |
    | ☐ | Nonprofit Corporation | ☐ | Registered Limited Liability Limited Partnership |
    | X | Limited Liability Company | ☐ | Limited Partnership Association |
    | ☐ | General Partnership | ☐ | Government or Governmental Subdivision or Agency |
    | ☐ | Limited Partnership | ☐ | Trust |

3.  The entity is formed under the laws of **COLORADO**

4.  The mailing address for the entity is **250 GIBRALTAR ROAD, HORSHAM, PA 19044**

5.  The  X  name  X  position of each person authorized to execute instruments conveying, encumbering or otherwise affecting title to real property on behalf of the entity is **TOLL BROS., INC., ITS SOLE MEMBER**

6.  The authority of the foregoing person(s) to bind the entity:  X  is[2] not limited  ____  is limited as follows:

7.  Other matters concerning the manner in which the entity deals with interests in real property:

8.  This Statement of Authority is executed on behalf of the entity pursuant to the provisions of §38-30-172, C.R.S.[3]

9.  This Statement of Authority amends and supersedes in all respects any and all prior dated Statements of Authority executed on behalf of the entity.

*(Signature and Notary Acknowledgment on Second Page)*

---

[1] This form should not be used unless the entity is capable of holding title to real property.
[2] The absence of any limitation shall be prima facie evidence that no such limitation exists.
[3] The statement of authority must be recorded to obtain the benefits of the statute.

Ref # 2017086968,  Pages: 2 of 2

Executed this _____ day of _____, 2017

TOLL SOUTHWEST LLC, A COLORADO LIMITED
LIABILITY COMPANY

BY: TOLL BROS., INC., ITS SOLE MEMBER

_____
~~MARK BAILEY, DIVISION PRESIDENT~~
REGGIE CARNETH, V.P.

_____

_____

State of **COLORADO**                    )
                                         )ss
County of  Douglas                       )

The foregoing instrument was acknowledged before me this _26_ day of _December_ _____, 2017
by ~~MARK BAILEY AS DIVISION PRESIDENT~~ OF TOLL BROS., INC. AS SOLE MEMBER OF TOLL SOUTHWEST LLC,
A COLORADO LIMITED LIABILITY COMPANY ◁ REGGIE CARNETH, V.P.

Witness my hand and official seal.
My commission expires: ___July 12, 2020___

_____
Notary Public

WHEN RECORDED RETURN TO:    BETSY STEIN
                            TOLL SOUTHWEST LLC
                            250 GIBRALTAR ROAD
                            HORSHAM, PA 19044

VENUS J HEAPS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20164026402
MY COMMISSION EXPIRES JULY 12, 2020

2020099887          8/13/2020 2:29 PM
PGS  2              $18.00      DF $0.00
Electronically Recorded Jefferson County, CO
George P Stern, Clerk and Recorder          TD1000  N

## STATEMENT OF AUTHORITY

1.  This Statement of Authority relates to an entity[1] Toll Southwest LLC, a Delaware limited liability company, and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2.  This entity is a:

☐ corporation                          ☐ registered limited liability partnership
☐ nonprofit corporation                ☐ registered limited liability limited
                                         partnership
☒ limited liability company            ☐ limited partnership association
☐ general partnership                  ☐ government or governmental subdivision
                                         or agency
☐ limited partnership                  ☐ trust (Section 38-30-108.5, C.R.S.)
☐ other:

3.  The entity is formed under the laws of:  Pennsylvania

4.  The mailing address for the entity is:  250 Gibraltar Road, Horsham, PA 19044

5.  The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is:

Mark G. Bailey, Division President

Reginald E. Carveth, Division Vice President

Matt Foran, Division Vice President

Christopher Stull, Division Vice President

Stacey A. Rothaus, Vice President

6.  The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7.  Other matters concerning the manner in which the entity deals with interests in real property:

[1] This form should not be used unless the entity is capable of holding title to real property.

[2] The absence of any limitation shall be prima facie evidence that no such limitation exists.

[3] The statement of authority must be recorded to obtain the benefits of the statute.

Executed this 10th day of August, 2020.

Toll Southwest LLC, a Delaware limited liability company

BY: _Matt Foran_____

Matt Foran, Division Vice President

STATE OF COLORADO

COUNTY OF ADAMS

The foregoing instrument was acknowledged before me this August 10, 2020, by Matt Foran, Division Vice President of Toll Southwest LLC, a Delaware limited liability company.

Notary Public
My Commission Expires: 01-27-2024

```
CYNTHIA ROXANA DA SILVA
Notary Public
State of Colorado
Notary ID # 20164003505
My Commission Expires 01-27-2024
```

No. 1112.  Rev. 8-01.  STATEMENT OF AUTHORITY    (Page 2 of 2)

2019051691    6/21/2019 12:21 PM
PGS    1    $13.00    DF $0.00
Electronically Recorded Jefferson County, CO
George P Stern, Clerk and Recorder    TD1000  N

# STATEMENT OF AUTHORITY

1.  This Statement of Authority relates to an entity[1] named the Toll Southwest LLC, a Delaware limited liability company and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2.  This entity is a:

| | |
|---|---|
| ☐  corporation | ☐  registered limited liability partnership |
| ☐  nonprofit corporation | ☐  registered limited liability limited partnership |
| ☒  limited liability company | ☐  limited partnership association |
| ☐  general partnership | ☐  government or governmental subdivision or agency |
| ☐  limited partnership | ☐  trust (Section 38-30-108.5, C.R.S.) |
| ☐  other: | |

3.  The entity is formed under the laws of:  Pennsylvania

4.  The mailing address for the entity is:  250 Gibraltar Road, Horsham, PA 19044

5.  The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is:

Barry A. Depew, Regional President or
Mark G. Bailey, Division President or
Michael I. Snyder, Senior Vice President & Secretary or
Kathryn L. Gaffney, Vice President or
Christopher Stull, Division Vice President or
Reginald E. Carveth, Division Vice President

6.[2] The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7.   Other matters concerning the manner in which the entity deals with interests in real property: Construction and Development

Executed this 20th[h] day of June, 2019.

Toll Southwest LLC, a Delaware limited liability company

BY: _____

Christopher Stull, Division Vice President

STATE OF COLORADO

COUNTY OF LARIMER

The foregoing instrument was acknowledged before me this June 20th, 2019, by Christopher Stull, Division Vice President, Division President, of Toll Southwest LLC, a Delaware limited liability company

DIANE L BLAKEY
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19964001088
MY COMMISSION EXPIRES NOVEMBER 23, 2020

_____
Notary Public
My Commission Expires: 11.23.20

03863693    03/03/2021 07:54 AM
RF: $18.00    DF: $0.00    Page: 1 of 2
Electronically recorded in Boulder County Colorado. Recorded as received.

## STATEMENT OF AUTHORITY

1.  This Statement of Authority relates to an entity[1] Toll Southwest LLC, a Delaware limited liability company, and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2.  This entity is a:

☐ corporation                          ☐ registered limited liability partnership
☐ nonprofit corporation                ☐ registered limited liability limited
                                         partnership
☒ limited liability company            ☐ limited partnership association
☐ general partnership                  ☐ government or governmental subdivision
                                         or agency
☐ limited partnership                  ☐ trust (Section 38-30-108.5, C.R.S.)
☐ other:

3. The entity is formed under the laws of:  Pennsylvania

4.    The mailing address for the entity is:  1140 Virginia Drive, Fort Washington, PA 19034

5. The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is:

Mark G. Bailey, Group President

Reginald E. Carveth, Division Vice President

Matt Foran, Division Vice President

Christopher Stull, Division Vice President

Stacey A. Rothaus, Vice President

6.    The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7. Other matters concerning the manner in which the entity deals with interests in real property:

---

[1] This form should not be used unless the entity is capable of holding title to real property.

[2] The absence of any limitation shall be prima facie evidence that no such limitation exists.

[3] The statement of authority must be recorded to obtain the benefits of the statute.

No. 1112.   Rev. 8-01.   STATEMENT OF AUTHORITY    (Page 1 of 1)

Executed this 24th day of February, 2021.

Toll Southwest LLC, a Delaware limited liability company

BY: _____

Mark Bailey, Group President

STATE OF COLORADO

COUNTY OF ARAPAHOE

The foregoing instrument was acknowledged before me this February 24, 2021, by Mark Bailey, Group President of Toll Southwest LLC, a Delaware limited liability company

_____

Notary Public

My Commission Expires:

> ANGELA BLEVINS
> Notary Public
> State of Colorado
> Notary ID # 20184032749
> My Commission Expires 08-16-2022

No. 1112.   Rev. 8-01.   STATEMENT OF AUTHORITY   (Page 2 of 2)

03640558    02/13/2018 02:02 PM
RF: $13.00    DF: $0.00    Page: 1 of 1
Electronically recorded in Boulder County Colorado. Recorded as received.

## STATEMENT OF AUTHORITY

1.  This Statement of Authority relates to an entity[1] named Toll Southwest LLC, a Delaware limited liability company and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2.  This entity is a:

☐ corporation                      ☐ registered limited liability partnership
☐ nonprofit corporation            ☐ registered limited liability limited partnership
☒ limited liability company        ☐ limited partnership association
☐ general partnership              ☐ government or governmental subdivision or
                                        agency
☐ limited partnership              ☐ trust (Section 38-30-108.5, C.R.S.)
☐ other:

3.  The entity is formed under the laws of:  Pennsylvania

4.  The mailing address for the entity is:  250 Gibraltar Road, Horsham, PA 19044

5.  The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is:

Barry A. Depew, Regional President or
Mark G. Bailey, Division President or
Michael I. Snyder, Senior Vice President & Secretary or
Kathryn L. Gaffney, Vice President or
Christopher Stull, Division Vice President or
Reginald E. Carveth, Division Vice President

6.[2] The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7.  Other matters concerning the manner in which the entity deals with interests in real property: Construction and Development

Executed this 5th day of February, 2018.

Toll Southwest LLC, a Delaware limited liability company

BY: _____
Mark G. Bailey, Division President

STATE OF COLORADO

COUNTY OF ARAPAHOE

The foregoing instrument was acknowledged before me this February 5, 2018, by Mark G. Bailey, Division President of Toll Southwest LLC, a Delaware limited liability company.

_____
Notary Public
My Commission Expires: 11.30.2021

JOYCE M. BISH
Notary Public – State of Colorado
Notary ID 20174049148
My Commission Expires Nov 30, 2021

03781941        05/04/2020 02:15 PM
RF: $18.00    DF: $0.00        Page: 1 of 2
Electronically recorded in Boulder County Colorado. Recorded as received.

## STATEMENT OF AUTHORITY

1.   This Statement of Authority relates to an entity[1] Toll Southwest LLC, a Delaware limited liability company, and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2.  This entity is a:

| | |
|---|---|
| ☐  corporation | ☐  registered limited liability partnership |
| ☐  nonprofit corporation | ☐  registered limited liability limited partnership |
| ☒  limited liability company | ☐  limited partnership association |
| ☐  general partnership | ☐  government or governmental subdivision or agency |
| ☐  limited partnership | ☐  trust (Section 38-30-108.5, C.R.S.) |
| ☐  other: | |

3.  The entity is formed under the laws of:  Pennsylvania

4.  The mailing address for the entity is:  250 Gibraltar Road, Horsham, PA 19044

5.  The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is:

Mark G. Bailey, Division President

Reginald E. Carveth, Division Vice President

Matt Foran, Division Vice President

Christopher Stull, Division Vice President

Kathryn L. Gaffney, Vice President

6.    The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7. Other matters concerning the manner in which the entity deals with interests in real property:

---

[1] This form should not be used unless the entity is capable of holding title to real property.

[2] The absence of any limitation shall be prima facie evidence that no such limitation exists.

[3] The statement of authority must be recorded to obtain the benefits of the statute.

No. 1112.  Rev. 8-01.  STATEMENT OF AUTHORITY    (Page 1 of 1)

Executed this 10th day of April, 2020.

Toll Southwest LLC, a Delaware limited liability company

BY: TOLL SOUTHWEST LLC, a Delaware limited liability company
General Partner

By: _____
Name: Mark Bailey
Title: Division President

STATE OF COLORADO

COUNTY OF ARAPAHOE

The foregoing instrument was acknowledged before me this April 10, 2020, by
Mark Bailey as Division President of TOLL SOUTHWEST LLC, a Delaware
limited liability company General Partner.

_____
Notary Public
My Commission Expires:

ANGELA SMITH
Notary Public
State of Colorado
Notary ID # 20184032749
My Commission Expires 08-16-2022

No. 1112.  Rev. 8-01.  STATEMENT OF AUTHORITY     (Page 2 of 2)

03963942    12/07/2021 10:17 AM
RF: $18.00    DF: $0.00    Page: 1 of 2
Electronically recorded in Boulder County Colorado. Recorded as received.

## STATEMENT OF AUTHORITY

1.  This Statement of Authority relates to an entity[1] Toll Southwest LLC, a Delaware limited liability company, and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2.  This entity is a:

☐ corporation      ☐ registered limited liability partnership
☐ nonprofit corporation      ☐ registered limited liability limited partnership
☒ limited liability company      ☐ limited partnership association
☐ general partnership      ☐ government or governmental subdivision or agency
☐ limited partnership      ☐ trust (Section 38-30-108.5, C.R.S.)
☐ other:

3.  The entity is formed under the laws of:  Pennsylvania

4.  The mailing address for the entity is:  1140 Virginia Drive, Fort Washington, PA 19034

5.  The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is:

Mark G. Bailey, Group President

Reginald E. Carveth, Division Vice President

Matt Foran, Division Vice President

Stacey A. Rothaus, Vice President

6.  The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7.  Other matters concerning the manner in which the entity deals with interests in real property:

---

[1]This form should not be used unless the entity is capable of holding title to real property.

[2]The absence of any limitation shall be prima facie evidence that no such limitation exists.

[3]The statement of authority must be recorded to obtain the benefits of the statute.

No. 1112.  Rev. 8-01.  STATEMENT OF AUTHORITY    (Page 1 of 1)

Executed this 7th day of October, 2021.

Toll Southwest LLC, a Delaware limited liability company

BY: _____

Mark Bailey, Group President

STATE OF COLORADO

COUNTY OF ARAPAHOE

The foregoing instrument was acknowledged before me this October 7, 2021, by Mark Bailey, Group President of Toll Southwest LLC, a Delaware limited liability company

_____
Notary Public
My Commission Expires:

> ANGELA BLEVINS
> Notary Public
> State of Colorado
> Notary ID # 20184032749
> My Commission Expires 08-16-2022

03688658        11/30/2018 01:40 PM
RF: $13.00    DF: $0.00        Page: 1 of 1
Electronically recorded in Boulder County Colorado. Recorded as received.

# STATEMENT OF AUTHORITY

1.  This Statement of Authority relates to an entity[1] named the Toll Southwest LLC, a Delaware limited liability company and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2.  This entity is a:

| | |
|---|---|
| ☐ corporation | ☐ registered limited liability partnership |
| ☐ nonprofit corporation | ☐ registered limited liability limited partnership |
| ☒ limited liability company | ☐ limited partnership association |
| ☐ general partnership | ☐ government or governmental subdivision or agency |
| ☐ limited partnership | ☐ trust (Section 38-30-108.5, C.R.S.) |
| ☐ other: | |

3.  The entity is formed under the laws of:  Pennsylvania

4.  The mailing address for the entity is:  250 Gibraltar Road, Horsham, PA 19044

5.  The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is:

Barry A. Depew, Regional President or
Mark G. Bailey, Division President or
Michael I. Snyder, Senior Vice President & Secretary or
Kathryn L. Gaffney, Vice President or
Christopher Stull, Division Vice President or
Reginald E. Carveth, Division Vice President

6.[2] The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7.  Other matters concerning the manner in which the entity deals with interests in real property:
Construction and Development

Executed this 28th[th]  day of November, 2018.

Toll Southwest LLC, a Delaware limited liability company

BY: _____

Mark G. Bailey, Division President

STATE OF COLORADO

COUNTY OF ARAPAHOE

The foregoing instrument was acknowledged before me this November 28th, 2018, by Mark G. Bailey, Division President, of Toll Southwest LLC, a Delaware limited liability company

Notary Public
My Commission Expires:

ANGELA SMITH
Notary Public
State of Colorado
Notary ID # 20184032749
My Commission Expires 08-16-2022

3181361    09/23/2020 08:11 AM
RF: $18.00    DF: $0.00    Page: 1 of 2
Electronically recorded in Boulder County Colorado. Recorded as received.

## STATEMENT OF AUTHORITY

1.  This Statement of Authority relates to an entity[1] Toll Southwest LLC, a Delaware limited liability company, and is executed on behalf of the entity pursuant to the provisions of Section 38-30-172, C.R.S.

2.  This entity is a:

    ☐ corporation             ☐ registered limited liability partnership
    ☐ nonprofit corporation    ☐ registered limited liability limited partnership
    ☒ limited liability company   ☐ limited partnership association
    ☐ general partnership      ☐ government or governmental subdivision or agency
    ☐ limited partnership      ☐ trust (Section 38-30-108.5, C.R.S.)
    ☐ other:

3.  The entity is formed under the laws of:  Pennsylvania

4.  The mailing address for the entity is:  1140 Virginia Drive, Fort Washington, PA 19034

5.  The ☒ name ☒ position of each person authorized to execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity is:

    Mark G. Bailey, Division President

    Reginald E. Carveth, Division Vice President

    Matt Foran, Division Vice President

    Christopher Stull, Division Vice President

    Stacey A. Rothaus, Vice President

6.  The authority of the foregoing person(s) to bind the entity is ☒ not limited ☐ limited as follows:

7.  Other matters concerning the manner in which the entity deals with interests in real property:

---

[1]This form should not be used unless the entity is capable of holding title to real property.

[2]The absence of any limitation shall be prima facie evidence that no such limitation exists.

[3]The statement of authority must be recorded to obtain the benefits of the statute.

No. 1112.   Rev. 8-01.   STATEMENT OF AUTHORITY   (Page 1 of 1)

Executed this 17th day of September, 2020.


Toll Southwest LLC, a Delaware limited liability company


BY: _Matt Foran_____

Matt Foran, Division Vice President




STATE OF COLORADO

COUNTY OF JEFFERSON

The foregoing instrument was acknowledged before me this September 17, 2020, by  Matt Foran, Division Vice President  of Toll Southwest LLC, a Delaware limited liability company

_____

Notary Public
My Commission Expires: 01-27-2024

```
CYNTHIA ROXANA DA SILVA
        Notary Public
       State of Colorado
   Notary ID # 20164003605
My Commission Expires 01-27-2024
```

# EXHIBIT 153

        

| | | | | | | |
|---|---|---|---|---|---|---|
| Home | My Network | Jobs | Messaging | Notifications | Me ▾ | For Business ▾ | Try Premium for $0 |



## Ken Greenspan

Attorney at Toll Brothers

- Toll Brothers
- William & Mary Law School

Chalfont, Pennsylvania, United States · Contact info

197 connections

Message 

### Activity

198 followers

Ken hasn't posted yet
Recent posts Ken shares will be displayed here.

Show all activity →

### Experience

 Attorney
Toll Brothers

### Education

 William & Mary Law School
1997, Law
1994 - 1997

Cornell University
1990 - 1994

### Interests

Companies   Groups   Schools

 Cornell University
725,875 followers




Toll Brothers
168,549 followers

Show all companies →

Invest Tokyo                                    Promoted  ···

Invest Tokyo

Ready to accelerate your business
growth in Tokyo?
Unlock Tokyo's market with Tokyo Metropolitan
Government's support

More profiles for you

Jessica Domiciano  ✓ · 3rd+
Real Estate Transactional Counsel

Christina L. Congdon  · 3rd+
AVP & Transactional Counsel at Toll Brothers

Joe DeSanto  ✓ · 3rd+
Senior VP at Toll Brothers, Inc.

Yolanda Rodriguez  ✓ · 3rd+
Chief Transactional Counsel at Toll Brothers

laurie wilson  · 3rd+
--

Show all

Explore Premium profiles

Crystal Hansen  in · 3rd+
Event Specialist at WeDo Designs

Manjot Dabb  in · 3rd+
--



Shauna P. · 3rd+
Bartender at Fraternal Order of Eagles with psychology background.

Brit Prescott · 3rd+
Independent Distributor

People you may know

David Medrano
Plumber at Ocean Park Mechanical Inc

 Raul Repreza
Industrial, Commercial, Residential Service Plumber.

 Joshua Kuskie
--Journeyman Plumber
Project manager  …

 Francisco Acevedo
Experienced and versatile plumber

 William Cortes
Technical Support Specialist
Plumber…

Show all

You might like
Newsletters for you

 Business Insider Today
Get the inside scoop on today's biggest stories in business, from Wall Street to Silicon Valley. …
Published daily
 Business Insider

 The Atlas
Trusted by 3M+ readers for AI updates. Subscribe now.
Published biweekly
Generative AI



Promoted ···

Secure your spot today!
Global ARC Boston 2025: Register now and save with early bird rates!

Save Thousands On Returns
Free returns and exchanges software plus more to streamline your operations

# EXHIBIT 154

Arizona Corporation Commission - RECEIVED: 4/7/2023
Arizona Corporation Commission - FILED: 4/7/2023

AGE: 002 OF 007

23040709320495

---

DO NOT WRITE ABOVE THIS LINE; RESERVED FOR ACC USE ONLY.

# ARTICLES OF AMENDMENT
# TO FOREIGN REGISTRATION STATEMENT

*Read the Instructions L017i*

1. **ENTITY NAME –** give the exact name of the LLC as currently shown in A.C.C. records:

   Toll Southwest LLC

   _____

### *CHECK THE BOX NEXT TO EACH CHANGE BEING MADE AND COMPLETE THE REQUESTED INFORMATION FOR THAT CHANGE.*

2. ☐ **LLC NAME CHANGE – NAME IN STATE OR COUNTRY OF FORMATION** (Foreign Name) – type or print the exact NEW name:

   _____

3. ☐ **LLC NAME CHANGE – NAME USED IN ARIZONA** (Entity Name) – type or print the exact NEW name. NOTE: If you are a Foreign Series LLC, the new name must have "series" in it:

   _____

4. ☐ **ENTITY TYPE CHANGE –** check one and follow instructions:
   NOTE: you may not change to or from a Foreign Series LLC.

   ☐ Changing to a PROFESSIONAL LLC – number 6 must also be completed.

   ☐ Changing to a NON-PROFESSIONAL LLC (professional LLC becoming a regular LLC).

5. ☐ **PROFESSIONAL SERVICES CHANGE –** list the NEW type of professional services the professional LLC will render:

   _____

6. ☐ **FOREIGN DOMICILE CHANGE –** list the NEW domicile state or country:

   _____

23040709320495

DocuSign Envelope ID: D8287284-CB2E-46A3-9DBB-915B5E5B726C

7. ☐ **PURPOSE / CHARACTER OF BUSINESS CHANGE** – state the NEW purpose or character of business:

_____

8. ☑ **MEMBERS CHANGE (CHANGE IN MEMBERS)** – _see Instructions L017i_ – if a change is being made with respect to one or more members, complete and attach the Amendment Attachment for Members form L044. *The filing will be rejected if it is submitted without the attachment.*

9. ☑ **MANAGERS CHANGE (CHANGE IN MANAGERS)** – _see Instructions L017i_ – if a change is being made with respect to one or more managers, complete and attach the Amendment Attachment for Managers form L043. *The filing will be rejected if it is submitted without the attachment.*

10. ☐ **MANAGEMENT STRUCTURE CHANGE** – _see Instructions L017i_ – check only one box below and follow instructions (all persons will be listed on the appropriate attachment form):

   ☐ CHANGING TO *MANAGER*-MANAGED LLC – complete and attach the Manager Structure Attachment form L040. *The filing will be rejected if it is submitted without the attachment.*

   ☐ CHANGING TO *MEMBER*-MANAGED LLC – complete and attach the Member Structure Attachment form L041. *The filing will be rejected if it is submitted without the attachment.*

---

**11.** ☐ **STATUTORY AGENT CHANGE – NEW AGENT APPOINTED** – _see Instructions L017i:_

| 11.1 REQUIRED – give the **name** (can be an individual or an entity) and *physical or street address* (not a P.O. Box) in Arizona of the NEW statutory agent: | 11.2 REQUIRED - Mailing address in Arizona of NEW Statutory Agent, if different from street address (can be a P.O. Box): ☐ Check box if same as street address. |
|---|---|
| Statutory Agent Name | |
| Attention (optional) | Attention (optional) |
| Address 1 | Address 1 |
| Address 2 (optional) | Address 2 (optional) |
| City   State   Zip | City   State   Zip |

**11.3  REQUIRED** – the Statutory Agent Acceptance form M002 must be submitted along with these Articles of Amendment

---

**12.** ☐ **STATUTORY AGENT CHANGE – ADDRESS OF EXISTING STATUTORY AGENT** – complete 12.1 and 12.2:

| 12.1 **NEW physical or street address** (not a P.O. Box) in Arizona of the existing statutory agent: | 12.2 **NEW mailing address** in Arizona of the existing statutory agent (can be a P.O. Box): |
|---|---|
| Attention (optional) | Attention (optional) |
| Address 1 | Address 1 |
| Address 2 (optional) | Address 2 (optional) |
| City   State   Zip | City   State   Zip |

4/7/2023 9:05 AM  FROM: Fax   TO: 4-602-542-0900   PAGE: 004 OF 007                    23040709320495

DocuSign Envelope ID: D8287284-CB2E-46A3-9DBB-915B5E5B726C

**13.** ☑ **PRINCIPAL ADDRESS CHANGE** – list the NEW address:

| 8767 E. Via de Ventura, #390 | | |
|---|---|---|
| Attention (optional) | | |
| | | |
| Address 1 | | |
| Address 2 (optional) | | |
| Scottsdale | AZ | 85258 |
| City | State or Province | Zip |
| Country | UNITED STATES ▾ | |

**14.** ☒ **JURISDICTION OF FORMATION INFORMATION:**

**14.1**  List the NEW Foreign LLC street address in jurisdiction of formation:

| | | |
|---|---|---|
| Attention (optional) | | |
| 3411 SILVERSIDE ROAD TATNALL BUILDING #104 | | |
| Address 1 | | |
| Address 2 (optional) | | |
| WILMINGTON | DE | 19810 |
| City | State or Province | Zip |
| Country ▾ | | |

United States

**14.2**  List the NEW statutory agent in the jurisdiction of formation and the statutory agent's NEW street and mailing addresses.

Statutory agent name:     UNITED AGENT GROUP INC.

Street address in jurisdiction of formation:

| | | |
|---|---|---|
| Attention (optional) | | |
| 3411 SILVERSIDE ROAD TATNALL BUILDING #104 | | |
| Address 1 | | |
| Address 2 (optional) | | |
| WILMINGTON | DE | 19810 |
| City | State or Province | Zip |
| Country | United States ▾ | |

4/7/2023 9:05 AM  FROM: Fax   TO: 4-602-542-0900   PAGE: 005 OF 007

23040709320495

DocuSign Envelope ID: D8287284-CB2E-46A3-9DBB-915B5E5B726C

Mailing address in jurisdiction of formation:

| | | |
|---|---|---|
| Attention (optional) | | |
| 3411 SILVERSIDE ROAD TATNALL BUILDING #104 | | |
| Address 1 | | |
| | | |
| Address 2 (optional) | | |
| WILMINGTON | DE | 19810 |
| City | State or Province | Zip |
| Country    United States ▼ | | |

**15.** ☐ **AMENDMENT IN FOREIGN JURISDICTION** - if this amendment to the Foreign Registration Statement was due to an amendment or restatement of the LLC's Articles in the foreign domicile, you must attach a certified copy of that foreign amendment, and it must be dated not more than 60 days prior to its delivery to the Arizona Corporation Commission.

**SIGNATURE:** By checking the box marked "I accept" below, I acknowledge *under penalty of law* that this document together with any attachments is submitted in compliance with Arizona law.

☑ I ACCEPT

| | | |
|---|---|---|
| *[signature]* | Kenneth J. Greenspan | 4/06/2023 |
| Signature | Printed Name | Date |

**REQUIRED –** check only one and fill in the corresponding blank if signing for an entity:

| ☑ I am an **individual** authorized to sign this document. | ☐ I am signing on behalf of an **entity** that is authorized to sign this document. |
|---|---|
| | |

**Expedited or Same Day/Next Day services are available for an additional fee – see Instructions or Cover sheet for prices.**

| Filing Fee:  $25.00 (regular processing)<br>All fees are nonrefundable - see Instructions. | Mail:    Arizona Corporation Commission - Examination Section<br>1300 W. Washington St., Phoenix, Arizona  85007<br>Fax (for Regular or Expedite Service ONLY): 602-542-4100<br>Fax (for Same Day/Next Day Service ONLY): 602-542-0900 |
|---|---|

Please be advised that A.C.C. forms reflect only the **minimum** provisions required by statute.  You should seek private legal counsel for those matters that may pertain to the individual needs of your business.  All documents filed with the Arizona Corporation Commission are **public** record and are open for public inspection. If you have questions after reading the Instructions, please call 602-542-3026 or (within Arizona only) 800-345-5819.

L017.006<br>Rev: 1/2021

Arizona Corporation Commission - Corporations Division<br>Page 4 of 4

4/7/2023 9:05 AM  FROM: Fax  TO: 4-602-542-0900  PAGE: 006 OF 007

23040709320495

DocuSign Envelope ID: D8287284-CB2E-46A3-9DBB-915B5E5B726C

| Clear Form | | Print Form |

DO NOT WRITE ABOVE THIS LINE; RESERVED FOR ACC USE ONLY.

## AMENDMENT ATTACHMENT FOR MEMBERS

1. **ENTITY NAME** – give the exact name of the LLC as currently shown in A.C.C. records:

   Toll Southwest LLC

2. **Check one box only to indicate what document the Attachment goes with:**

   ☐ Articles of Amendment    ■ Articles of Amendment to Foreign Registration Statement

3. **MEMBERS CHANGE (CHANGE IN MEMBERS) - Use one block per person:**
   To REMOVE a member - list the name only of the member being removed and check "Remove member."
   To ADD a member - list the name and address of the member being added and check "Add member."
   To CHANGE ADDRESS only - list the name and NEW address and check "Address change."
   To CHANGE NAME of existing member - list the current name, then the NEW name, and check "Name change."
   If more space is needed, complete and attach the Amendment Attachment for Members.

| Toll Bros., Inc. | | | | |
|---|---|---|---|---|
| Name currently shown in ACC records | | | Name currently shown in ACC records | |
| NEW Name | | | NEW Name | |
| 1140 Virginia Drive | | | | |
| Address 1 | | | Address 1 | |
| Address 2 (optional) | | | Address 2 (optional) | |
| Fort Washington | PA | 19034 | | |
| City          State or Province    Zip | | | City          State or Province    Zip | |
| UNITED STATES | | | | |
| Country | | | Country | |
| ■ Address change    ☐ Add member | | | ☐ Address change    ☐ Add member | |
| ☐ Name change    ☐ Remove member | | | ☐ Name change    ☐ Remove member | |

| | | | |
|---|---|---|---|
| Name currently shown in ACC records | | Name currently shown in ACC records | |
| NEW Name | | NEW Name | |
| Address 1 | | Address 1 | |
| Address 2 (optional) | | Address 2 (optional) | |
| City          State or Province    Zip | | City          State or Province    Zip | |
| Country | | Country | |
| ☐ Address change    ☐ Add member | | ☐ Address change    ☐ Add member | |
| ☐ Name change    ☐ Remove member | | ☐ Name change    ☐ Remove member | |

L044.004
Rev: 4/2020

Arizona Corporation Commission - Corporations Division
Page 1 of 1

4/7/2023 9:05 AM  FROM: Fax   TO: 4-602-542-0900   PAGE: 007 OF 007                    23040709320495

DocuSign Envelope ID: D8287284-CB2E-46A3-9DBB-915B5E5B726C

Clear Form                                                                                      Print Form

DO NOT WRITE ABOVE THIS LINE; RESERVED FOR ACC USE ONLY.

# AMENDMENT ATTACHMENT FOR MANAGERS

**1. ENTITY NAME** – give the exact name of the LLC as currently shown in A.C.C. records:

Toll Southwest LLC

**2. Check one box only to indicate what document the Attachment goes with:**

☐ Articles of Amendment      ■ Articles of Amendment to Foreign Registration Statement

**3. MANAGERS CHANGE (CHANGE IN MANAGERS) – Use one block per person ·**

To REMOVE a manager - list the name only of the manager being removed and check "Remove manager."
To ADD a manager - list the name and address of the manager being added and check "Add as manager."
To CHANGE ADDRESS only - list the name and NEW address and check "Address change."
To CHANGE NAME of existing manager - list the current name, then the NEW name, and check "Name change."
If more space is needed, complete and attach the Amendment Attachment for Managers.

| Richard T. Hartman | | | Robert Parahus | | |
|---|---|---|---|---|---|
| Name currently shown in ACC records | | | Name currently shown in ACC records | | |
| NEW Name | | | NEW Name 1140 Virginia Drive | | |
| Address 1 | | | Address 1 | | |
| Address 2 (optional) | | | Address 2 (optional) Fort Washington | PA | 19034 |
| City | State or Province | Zip | City UNITED STATES | State or Province | Zip |
| Country | | | Country | | |
| ☐ Address change  ☐ Add as manager | | | ☐ Address change  ■ Add as manager | | |
| ☐ Name change  ☒ Remove manager | | | ☐ Name change  ☐ Remove manager | | |
| Douglas C. Yearley, Jr. | | | Martin P. Connor | | |
| Name currently shown in ACC records | | | Name currently shown in ACC records | | |
| NEW Name 1140 Virginia Drive | | | NEW Name 1140 Virginia Drive | | |
| Address 1 | | | Address 1 | | |
| Address 2 (optional) Fort Washington | PA | 19034 | Address 2 (optional) Fort Washington | PA | 19034 |
| City UNITED STATES | State or Province | Zip | City UNITED STATES | State or Province | Zip |
| Country | | | Country | | |
| ■ Address change  ☐ Add as manager | | | ■ Address change  ☐ Add as manager | | |
| ☐ Name change  ☐ Remove manager | | | ☐ Name change  ☐ Remove manager | | |

BA20221182947

B1282-7770 11/30/2022 7:47 AM Received by California Secretary of State




STATE OF CALIFORNIA
Office of the Secretary of State
**STATEMENT OF INFORMATION
LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: BA20221182947

Date Filed: 11/30/2022

| Entity Details | |
|---|---|
| Limited Liability Company Name | TOLL SOUTHWEST LLC |
| Entity No. | 201931910127 |
| Formed In | DELAWARE |

| Street Address of Principal Office of LLC | |
|---|---|
| Principal Address | 1140 VIRGINIA DRIVE<br>FORT WASHINGTON, PA 19034 |

| Mailing Address of LLC | |
|---|---|
| Mailing Address | 1140 VIRGINIA DRIVE<br>FORT WASHINGTON, PA 19034 |
| Attention | |

| Street Address of California Office of LLC | |
|---|---|
| Street Address of California Office | None |

**Manager(s) or Member(s)**

| Manager or Member Name | Manager or Member Address |
|---|---|
| Douglas C. Yearley, Jr. | 1140 Virginia Drive<br>Fort Washington, PA 19034 |
| Robert Parahus | 1140 Virginia Drive<br>Fort Washington, PA 19034 |
| Martin P. Connor | 1140 Virginia Drive<br>Fort Washington, PA 19034 |

| Agent for Service of Process | |
|---|---|
| California Registered Corporate Agent (1505) | UNITED AGENT GROUP INC.<br>Registered Corporate 1505 Agent |

| Type of Business | |
|---|---|
| Type of Business | SERVE AS GENERAL PARTNER OF LP |

| Email Notifications | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Chief Executive Officer (CEO)**

| CEO Name | CEO Address |
|---|---|
| Douglas C. Yearley, Jr. | 1140 Virginia Drive<br>Fort Washington, PA 19034 |

**Labor Judgment**

No Manager or Member of this Limited Liability Company has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

KENNETH J GREENSPAN

11/30/2022

Signature

Date

B1282-7771 11/30/2022 7:47 AM Received by California Secretary of State

Arizona Corporation Commission - RECEIVED: 1/2/2025                    25010212149641
Arizona Corporation Commission - FILED: 1/2/2025

# 2025 ANNUAL REPORT

## ENTITY INFORMATION

**ENTITY NAME:** TOLL BROTHERS REAL ESTATE, INC.
**ENTITY ID:** F08284728
**ENTITY TYPE:** Foreign For-Profit (Business) Corporation
**CHARACTER OF BUSINESS:** Other - Other - Other - REAL ESTATE
**AUTHORIZED SHARES:** Share Class: COMMON Share Series: N/A Share Total: 1000

**ISSUED SHARES:** Share Class: Common Share Series: N/A Share Total: 1000

## STATUTORY AGENT INFORMATION

**STATUTORY AGENT NAME:** UNITED AGENT GROUP INC.
**PHYSICAL ADDRESS:** 3260 N HAYDEN RD #210 , SCOTTSDALE, AZ 85251
**MAILING ADDRESS:**

## KNOWN PLACE OF BUSINESS

8767 E. Via de Ventura, #390, SCOTTSDALE, AZ 85258

## PRINCIPAL OFFICE ADDRESS

1140 Virginia Drive, FORT WASHINGTON, PA 19034

## PRINCIPAL INFORMATION

CEO (Chief Executive Officer): Douglas C. Yearley, Jr. - 1140 VIRGINIA DRIVE, FORT WASHINGTON, PA, 19034, USA - - Date of Taking Office: 06/16/2010

CFO (Chief Financial Officer): MARTIN P CONNOR - 1140 VIRGINIA DRIVE, FORT WASHINGTON, PA, 19034, USA - - Date of Taking Office:

COO (Chief Operating Officer): ROBERT PARAHUS - 1140 Virginia Drive, FORT WASHINGTON, PA, 19034, USA - - Date of Taking Office:

Director: DOUGLAS C YEARLEY JR - 1140 VIRGINIA DRIVE, FORT WASHINGTON, PA, 19034, USA - - Date of Taking Office: 06/16/2010

Director: MARTIN P CONNOR - 1140 VIRGINIA DRIVE, FORT WASHINGTON, PA, 19034, USA - - Date of Taking Office: 09/22/2010

Director: ROBERT PARAHUS - 1140 Virginia Drive, FORT WASHINGTON, PA, 19034, USA - - Date of Taking Office:

Other Officer: JOSEPH R DESANTO - 2966 COMMERCE PARK DRIVE, SUITE 100, ORLANDO, FL, 32819, USA - - Date of Taking Office:

Other Officer: KEVIN M ELLSWORTH - 8767 E VIA DE VENTURA #390, SCOTTSDALE, AZ, 85258, USA - - Date of Taking Office:

Other Officer: MICHAEL J GRUBB - 1140 Virginia Drive, FORT WASHINGTON, PA, 19034, USA - - Date of Taking Office:

Other Officer: TIMOTHY J HOBAN - 1140 Virginia Drive, FORT WASHINGTON, PA, 19034, USA - - Date of

25010212149641

Taking Office:

President: ROBERT PARAHUS - 1140 Virginia Drive, FORT WASHINGTON, PA, 19034, USA - - Date of Taking
Office:

Secretary: KEVIN J COEN - 1140 Virginia Drive, FORT WASHINGTON, PA, 19034, USA - - Date of Taking
Office:

Shareholder: TOLL HOLDINGS INC - 1140 VIRGINIA DRIVE, FORT WASHINGTON, PA, 19034, USA - - Date of
Taking Office:

Treasurer: GREGG L ZIEGLER - 1140 Virginia Drive, FORT WASHINGTON, PA, 19034, USA - - Date of Taking
Office:

Vice-President: KENNETH J GREENSPAN - 1140 VIRGINIA DRIVE, FORT WASHINGTON, PA, 19034, USA - -
Date of Taking Office: 07/15/2015

Vice-President: KEVIN J COEN - 1140 Virginia Drive, FORT WASHINGTON, PA, 19034, USA - - Date of Taking
Office:

## SIGNATURE

Vice-President: KENNETH J GREENSPAN - 01/02/2025

## 2025  FOREIGN PROFIT CORPORATION ANNUAL REPORT

DOCUMENT# F09000004088

**Entity Name:** TOLL HOLDINGS, INC.

**FILED**
**Apr 27, 2025**
**Secretary of State**
**7265609134CC**

**Current Principal  Place of Business:**

1140 VIRGINIA DRIVE
FORT WASHINGTON,  PA  19034

**Current Mailing Address:**

1140 VIRGINIA DRIVE
ATTN: LEGAL DEPT.
FORT WASHINGTON,  PA  19034  US

**FEI Number: 23-2569047**                                    **Certi+cate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

UNITED AGENT GROUP INC.
801 US HIGHWAY 1
NORTH PALM BEACH, FL  33408  US

The above named entity submits this statement for the purpose of changing its registered ofce or registered agent, or both, in the State of Florida.

SIGNATURE: _____

　　　　　　　Electronic Signature of Registered Agent                                                          Date

**Of+cer/Director Detail :**

| | | | | |
|---|---|---|---|---|
| Title | DIRECTOR & PRESIDENT | | Title | SENIOR VICE PRESIDENT & SECRETARY |
| Name | PARAHUS, ROBERT | | Name | COEN, KEVIN J. |
| Address | 1140 VIRGINIA DRIVE | | Address | 1140 VIRGINIA DRIVE |
| City-State-Zip: | FORT WASHINGTON  PA  19034 | | City-State-Zip: | FORT WASHINGTON  PA  19034 |
| Title | DIRECTOR, SR. VP, CFO AND ASSISTANT SECRETARY | | Title | DIRECTOR & CEO |
| Name | CONNOR, MARTIN P | | Name | YEARLEY, JR., DOUGLAS C |
| Address | 1140 VIRGINIA DRIVE | | Address | 1140 VIRGINIA DRIVE |
| City-State-Zip: | FORT WASHINGTON  PA  19034 | | City-State-Zip: | FORT WASHINGTON  PA  19034 |
| Title | VP & ASSISTANT SECRETARY | | Title | SENIOR VICE PRESIDENT AND TREASURER |
| Name | GREENSPAN, KENNETH J | | Name | ZIEGLER, GREGG |
| Address | 1140 VIRGINIA DRIVE | | Address | 1140 VIRGINIA DRIVE |
| City-State-Zip: | FORT WASHINGTON  PA  19034 | | City-State-Zip: | FORT WASHINGTON  PA  19034 |
| Title | SENIOR VP, CAO & ASSISTANT SECRETARY | | | |
| Name | GRUBB, MICHAEL J. | | | |
| Address | 1140 VIRGINIA DRIVE | | | |
| City-State-Zip: | FORT WASHINGTON  PA  19034 | | | |

I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an ofcer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.

SIGNATURE: KENNETH J. GREENSPAN                    VICE PRESIDENT &            04/27/2025
　　　　　　　　　　　　　　　　　　　　　　　　　　SECRETARY

　　　　　　Electronic Signature of Signing Of0cer/Director Detail                                         Date

SOSID: 3036271
Date Filed: 11/3/2017 8:21:00 AM
Elaine F. Marshall
North Carolina Secretary of State
C2017 307 00026

*State of North Carolina*
*Department of the Secretary of State*

## ARTICLES OF MERGER

Pursuant to North Carolina General Statute Sections 55-11-05(a), 55A-11-09(d), 55A-11-04, 57D-9-42, 59-73.32(a) and 59-1072(a), as applicable, the undersigned entity does hereby submit the following Articles of Merger as the surviving business entity in a merger between two or more business entities.

1. The name of the surviving entity is Toll Holdings, Inc. _____, a *(check one)*
   ☒ corporation, ☐ nonprofit corporation, ☐ professional corporation, ☐ limited liability company, ☐ limited partnership, ☐ partnership, ☐ limited liability partnership organized under the laws of

   Delaware _____ *(state or country)*.

2. The address of the surviving entity is:

   Street Address 250 Gibraltar Road _____ City Horsham _____

   State PA _____ Zip Code 19044 _____ County Montgomery _____

   (a) *(Complete only if the surviving business entity is a foreign business entity that is not authorized to transact business or conduct affairs in North Carolina.)* The mailing address of the surviving foreign business entity is:

   Street Address 250 Gibraltar Road _____ City Horsham _____

   State PA _____ Zip Code 19044 _____ County Mongtomery _____

   The Surviving foreign business entity will file a statement of any subsequent change in its mailing address with the North Carolina Secretary of State.

3. For <u>each</u> merging entity: *(if more than one, complete on separate sheet and attach.)*

   The name of the merged entity is Toll Bros. of North Carolina III, Inc. _____, a *(check one)*
   ☒ corporation, ☐ nonprofit corporation, ☐ professional corporation, ☐ limited liability company, ☐ limited partnership, ☐ partnership, ☐ limited liability partnership organized under the laws of

   North Carolina _____ *(state or country)*.

   The mailing address of each merging entity is: *(if more than one, complete on separate sheet and attach)*
   Street Address 250 Gibraltar Road _____ City Horsham _____

   State PA _____ Zip Code 19044 _____ County Montgomery _____

4. If the surviving business entity is a <u>domestic</u> business entity, the text of each amendment, if any, to the Articles of Incorporation, Articles of Organization, or Certificate of Limited Partnership within the Plan of Merger is attached.

5.  A Plan of Merger has been duly approved in the manner required by law by each of the business entities participating in the merger.

6.  These articles will be effective upon filing unless a delayed date and/or time is specified _____.

This the 31ˢᵗ day of October_____, 2017_____.

Toll Holdings, Inc.
_____
Name of Entity

_____
Signature
Kenneth J. Greenspan, Vice President
_____
Type or Print Name and Title

**NOTES:**
1.  Filing fee is $50 for For-profit entities.
2.  Filing fee is $25 for Non-profit entities.
3.  This document must be filed with the Secretary of State. Certificate(s) of Merger must be registered pursuant to the requirements of N.C.G.S. Section 47-18.1

CORPORATIONS DIVISION          P. O. BOX 29622          RALEIGH, NC 27626-0622
*(Revised January 2014)*                                                    *(Form BE-15)*

NC015 - 12/01/2013 Wolters Kluwer Online

# EXHIBIT 155

# Corporate Information

## Board of Directors and Executive Officers
**Robert I. Toll*** — Chairman of the Board and Chief Executive Officer
**Bruce E. Toll** — Vice Chairman of the Board
**Zvi Barzilay*** — President and Chief Operating Officer
**Robert S. Blank** — Partner - Whitcom Partners
**Richard J. Braemer** — Partner - Ballard, Spahr, Andrews & Ingersoll, LLP, Attorneys at Law
**Roger S. Hillas** — Retired Chairman - Meritor Savings Bank
**Carl B. Marbach** — President - Internetwork Publishing Corp.
**Joel H. Rassman*** — Senior Vice President, Treasurer and Chief Financial Officer
**Paul E. Shapiro** — Chief Administrative Officer - Sunbeam Corp.

*Executive Officer of the Company

## Officers
**Wayne S. Patterson** — Senior Vice President
**Kenneth J. Gary** — Vice President and General Counsel

### Vice Presidents - Operations
**Thomas Anhut**
**Thomas A. Argyris, Jr.**
**James W. Boyd**
**Barry A. Depew**
**Cory DeSpain**
**Michael J. Donnelly**
**Kevin D. Duermit**
**John P. Elcano**
**William J. Gilligan**
**Richard T. Hartman**

**Douglas C. Heppe**
**Webb A. Koschene**
**John G. Mangano**
**Richard C. McCormick**
**Walter A. Music**
**Robert Paratus**
**Douglas C. Shipe**
**James A. Smith**
**Edward D. Weber**
**Douglas C. Yearley, Jr.**

### Vice Presidents - Administration
**Bernard P. Anderson** — Westminster Mortgage
**Frederick N. Cooper** — Finance
**Jonathan C. Downs** — Human Resources
**Evan G. Ernest** — Taxation
**Kevin F. McAndrews** — Commercial Development
**Kira McCarron** — Marketing
**Robert N. McCarron** — Land Development
**Kevin J. McMaster** — Controller
**Joseph J. Palka** — Eastern States Engineering
**Joseph R. Sicree** — Chief Accounting Officer
**Michael I. Snyder** — Corporate Planning and Corporate Secretary
**Werner Thiessen** — Acquisitions
**Steven A. Turbyfill** — Product Development

## Subsidiary Operations
**Wayne S. Patterson** — President, Westminster Security Company
**Thomas M. Coleman** — President, Coleman-Toll Limited Partnership
**Charles E. Moscony** — President, Westminster Abstract Company
**Donald L. Salmon** — President, Westminster Mortgage Corporation
**Gilbert Silverman** — President, Silverman-Toll Limited Partnership

Listings as of 11/1/99.

## Employees
As of October 31, 1999, the Company employed 2,208 full-time persons.

## Shareholders
As of October 31, 1999, the Company had 741 shareholders of record.

## Stock Listing
The common stock of Toll Brothers, Inc. is traded on the New York Stock Exchange and Pacific Exchange (symbol "TOL").

## Information Requests
The Form 10-K Annual Report, filed with the SEC, the Company's quarterly reports to stockholders, Forms 10-Q and other Company information are available upon request from Frederick N. Cooper or Joseph R. Sicree, Co-Directors of Investor Relations, at the Corporate Office.

## Corporate Office
Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, Pennsylvania 19006
(215) 938-8000
Internet address: www.tollbrothers.com

## Transfer Agent & Registrar
Chase Mellon Shareholder Services, L.L.C.
Ridgefield Park, New Jersey

## Independent Auditors
Ernst & Young LLP
Philadelphia, Pennsylvania

## Securities Counsel
Wolf, Block, Schorr and Solis-Cohen LLP
Philadelphia, Pennsylvania

## Common Stock Price Range – New York Stock Exchange

Quarter Ended

| 1999 | High | Low |
| --- | --- | --- |
| October 31 | $21 1/2 | $15 3/4 |
| July 31 | $23 3/16 | $19 9/16 |
| April 30 | $23 3/4 | $17 3/4 |
| January 31 | $25 7/8 | $21 3/8 |

| 1998 | High | Low |
| --- | --- | --- |
| October 31 | $30 1/2 | $17 7/8 |
| July 31 | $30 1/4 | $23 3/4 |
| April 30 | $31 5/8 | $26 7/16 |
| January 31 | $29 | $22 3/8 |

## Statement on Forward-Looking Information
Certain information included herein and in other Company reports and SEC filings is forward-looking within the meaning of the Private Litigation Reform Act of 1995, including, but not limited to, statements concerning the Company's anticipated operating results, financial resources,increases in revenues, increased profitability, interest expense, growth and expansion, ability to acquire land, ability to sell homes and properties, ability to deliver homes from backlog, ability to secure materials and subcontractors and Year 2000 readiness, and the effect on the Company if the Company or significant third parties are not Year 2000 compliant. Such forward-looking information involves important risks and uncertainties that could significantly affect actual results and cause them to differ materially from expectations expressed herein and in other Company reports and SEC filings. These risks and uncertainties include local, regional and national economic conditions, the effect of governmental regulation, the competitive environment in which the Company operates, fluctuations in interest rates, changes in home prices, the availability and cost of land for future growth, the availability of capital, the availability and cost of labor and materials, and weather conditions.

**Demographic data:** The sources for the demographic data included in this annual report are the U.S. Census Bureau, the Joint Center for Housing Studies of Harvard University and Claritas.

**Photography:**James B. Abbott, Mark Boisclair, Robert Brantley, Rob Meier, Robb Miller, Opulence Studios, Kim Sargent, Evan Schiller, Peter Tata, Bill Taylor, Greg Wilson

Copyright 1999 by TOLL BROTHERS, INC.

# CORPORATE INFORMATION

## Board of Directors and Executive Officers

Robert I. Toll* — Chairman of the Board and Chief Executive Officer
Bruce E. Toll* — Vice Chairman of the Board
Zvi Barzilay* — President and Chief Operating Officer
Robert S. Blank — Partner - Whitcom Partners
Edward G. Boehne — Retired President - Federal Reserve Bank of Philadelphia
Richard J. Braemer — Partner - Ballard, Spahr, Andrews & Ingersoll, LLP, Attorneys at Law
Roger S. Hillas — Retired Chairman - Meritor Savings Bank
Carl B. Marbach — President - Internetwork Publishing Corp.
Joel H. Rassman* — Senior Vice President, Treasurer and Chief Financial Officer
Paul E. Shapiro — Chief Administrative Officer - Sunbeam Corp
*Executive Officer of the Company

## Officers

### Senior Vice President
Wayne S. Patterson

### Vice President and General Counsel
Kenneth J. Gary

### Vice Presidents - Operations
Thomas Amuti
Thomas A. Argyris, Jr.
William P. Berry
Charles W. Bowie
James W. Boyd
Roger A. Brush
Thomas Camaghi
Barry A. Depew
Cory DeSpain

Michael J. Donnelly
Kevin D. Duermit
John P. Elcano
Raymond P. Gamble
William J. Gilligan
Daniel Grosswald
Richard T. Hartman
Douglas C. Heppe

Benjamin D. Jogodnick
Gregory Kamedulski
Webb A. Kreschene
B. Mitchell Kotler
John G. Mangano
Gary M. Mayo
Mark F. McAlpine
Richard C. McCormick
Thomas J. Murray

Walter A. Music
Robert Parahus
Douglas C. Shipe
James A. Smith
James E. Tackett
Steven W. Walker
Edward D. Weber
Douglas C. Yearley, Jr.

### Vice Presidents - Administration
Frederick N. Cooper — Finance
Jonathan C. Downs — Human Resources
Evan G. Ernest — Taxation
Manfred P. Marotta — Toll Integrated Systems
Kevin F. McAndrews — Commercial Development
Kira McCarron — Marketing
Robert M. McCarron — Land Development
Kevin J. McMaster — Controller
Charles E. Moscony — Westminster Title

Joseph J. Palka — Eastern States Engineering
Steven Robinson — Land Development
Joseph R. Sicree — Chief Accounting Officer
Michael I. Snyder — Corporate Planning and Corporate Secretary
Ronald E. Snyder — Land Development
Werner Thiessen — Acquisitions
Steven A. Turbyfill — Product Development
Philip M. Turner — Land Development

### Subsidiary Operations
Wayne S. Patterson — President, Westminster Security Company
Charles E. Moscony — President, Westminster Title Company
Donald L. Salmon — President, Westminster Mortgage Corporation
Michael J. Zammit — Managing Director, Advanced Broadband

Listings are as of 11/1/00.

## Employees
As of October 31, 2000, the Company had 2,479 full-time employees.

## Shareholders
As of October 31, 2000, the Company had 694 shareholders of record.

## Stock Listing
The common stock of Toll Brothers, Inc. is traded on the New York Stock Exchange and Pacific Exchange (symbol "TOL").

## Investor Relations - Information Requests
The Company's Form 10-K Annual Report, Form 10-Q Quarterly Reports and other Company information are available upon request from Frederick N. Cooper (fcooper @ tollbrothersinc.com) or Joseph R. Sicree (jsicree @ tollbrothersinc.com), Co-Directors of Investor Relations, at the Corporate Office.

### Corporate Office
Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, Pennsylvania 19006
(215) 938-8000
www.tollbrothers.com

### Transfer Agent & Registrar
Mellon Investor Services, L.L.C.
Ridgefield Park, New Jersey

### Independent Auditors
Ernst & Young LLP
Philadelphia, Pennsylvania

### Securities Counsel
Wolf, Block, Schorr and Solis-Cohen LLP
Philadelphia, Pennsylvania

### Common Stock Price Range - New York Stock Exchange

| Quarter Ended | 2000 High | 2000 Low | 1999 High | 1999 Low |
|---|---|---|---|---|
| October 31 | $35 | $23 1/2 | $21 1/2 | $15 5/8 |
| July 31 | $24 5/8 | $18 7/8 | $23 7/8 | $19 9/16 |
| April 30 | $23 9/16 | $16 | $23 1/4 | $17 1/2 |
| January 31 | $19 3/4 | $16 3/8 | $25 7/8 | $21 1/2 |

## Statement on Forward-Looking Information
Certain information included herein and in other Company reports, SEC filings, statements and presentations is forward-looking within the meaning of the Private Securities Litigation Reform Act of 1995, including, but not limited to, statements concerning the Company's anticipated operating results, resources, increases in revenues, increased profitability, interest expense, growth and expansion, ability to acquire land, ability to sell homes and properties, ability to deliver homes from backlog, ability to secure materials and subcontractors, ability to produce the liquidity and capital necessary to expand and take advantage of opportunities in the future, and stock market valuations. Such forward-looking information involves important risks and uncertainties that could significantly affect actual results and cause them to differ materially from expectations expressed herein and in other Company reports, SEC filings, statements and presentations. These risks and uncertainties include local, regional and national economic conditions, the effect of governmental regulation, the competitive environment in which the Company operates, fluctuations in interest rates, changes in home prices, the availability and cost of land for future growth, the availability of capital, the availability and cost of labor and materials, and weather conditions.

Demographic data: The sources for the demographic data included in this annual report are the Census Bureau, the Joint Center for Housing Studies of Harvard University and Claritas.

Photography: James B. Abbott, Mark Boisclair, Tim Buchman, Alan Goldstein, Barry Grossman, Rob Ikeler, Eric Kieley, Robb Miller, Kirk Argent, Bert Singer, Bill Taylor

Copyright 2000 by TOLL BROTHERS, INC.

# Corporate Information

## Board of Directors and Executive Officers

**Robert I. Toll\*** Chairman of the Board and Chief Executive Officer
**Bruce E. Toll\*** Vice Chairman of the Board
**Zvi Barzilay\*** President and Chief Operating Officer
**Robert S. Blank** Partner - Whitcom Partners
**Edward G. Boehne** Retired President - Federal Reserve Bank of Philadelphia
**Richard J. Braemer** Partner - Ballard, Spahr, Andrews & Ingersol, LLP, Attorneys at Law
**Roger S. Hillas** Retired Chairman - Meritor Savings Bank
**Carl B. Marbach** President - Internetwork Publishing Corp.
**Joel H. Rassman\*** Senior Vice President, Treasurer and Chief Financial Officer
**Paul E. Shapiro** Executive Vice President and Chief Administrative Officer - Revlon, Inc.
*\*Executive Officer of the Company*

## Officers

**Senior Vice President**
Wayne S. Patterson

**Vice President and General Counsel**
Kenneth J. Gary

### Vice Presidents - Operations

| | | |
|---|---|---|
| Peter Alles | Barry A. Depew | Gregory Kamedulski | Walter A. Music |
| Thomas J. Anhut | G. Cory DeSpain | Gregory S. Kelleher | Robert Parabus |
| Thomas A. Argyris, Jr. | Michael J. Donnelly | Webb A. Koschene | Ralph E. Reinert |
| William P. Berry | Kevin D. Duermit | B. Mitchell Kotler | Douglas C. Shipe |
| Ronald Blum | John P. Elcano | James Majewski, Jr. | James A. Smith |
| Charles W. Bowie | Raymond P. Gamble | John G. Mangano | W. Stephen Walker |
| James W. Boyd | William J. Gilligan | Gary M. Mayo | Edward D. Weber |
| Daniel Brouillette | Daniel Grosswald | Marc F. McAlpine | Douglas C. Yearley, Jr. |
| Roger A. Brush | Richard T. Hartman | Richard C. McCormick | |
| Thomas Carnaghi | Douglas C. Heppe | Robert D. McLaughlin | |
| Scott L. Coleman | Benjamin D. Jogodnik | Thomas J. Murray | |

### Vice Presidents - Administration

| | |
|---|---|
| Paul Brukardt | Acquisitions |
| Frederick N. Cooper | Finance |
| Jonathan C. Downs | Human Resources |
| Evan G. Ernest | Taxation |
| Allen R. Irwin | Country Club/Golf Course Operations |
| Manfred P. Marotta | Toll Integrated Systems |
| Kevin F. McAndrews | Commercial Development |
| Kira McCarron | Marketing |
| Robert N. McCarron | Land Development |
| Kevin J. McMaster | Controller |
| Charles E. Moscony | Westminster Title |
| Joseph J. Palka | Eastern States Engineering |
| Joseph R. Sicree | Chief Accounting Officer |
| Michael I. Snyder | Corporate Planning and Corporate Secretary |
| Ronnie E. Snyder | Land Development |
| Michael J. Soskinski | Eastern States Engineering |
| Werner Thiessen | Acquisitions |
| Steven A. Turbyfill | Product Development |
| Phillip M. Turner | Land Development |

*Listings as of 1/11/01.*

### Subsidiary Operations

| | |
|---|---|
| Wayne S. Patterson | President, Westminster Security Company |
| Charles E. Moscony | President, Westminster Title Company |
| Donald L. Salmon | President, Westminster Mortgage Corporation |
| Michael J. Zammit | Managing Director, Advanced Broadband |

## Employees

As of October 31, 2001, the Company had 2,725 full-time employees.

## Shareholders

As of October 31, 2001, the Company had 681 shareholders of record.

## Stock Listing

The Common Stock of Toll Brothers, Inc. is traded on the New York Stock Exchange and Pacific Exchange (symbol "TOL").

## Investor Relations - Information Requests

The Company's Form 10-K Annual Report, Form 10-Q Quarterly Reports and other Company information are available upon request from Frederick N. Cooper (fcooper@tollbrothersinc.com) or Joseph R. Sicree (jsicree@tollbrothersinc.com), Co-Directors of Investor Relations, at the Corporate Office.

## Corporate Office

Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, Pennsylvania 19006
(215) 938-8000
www.tollbrothers.com

## Transfer Agent & Registrar

Mellon Investor Services, L.L.C.
Ridgefield Park, New Jersey

## Independent Auditors

Ernst & Young LLP
Philadelphia, Pennsylvania

## Securities Counsel

Wolf, Block, Schorr and Solis-Cohen LLP
Philadelphia, Pennsylvania

## Common Stock Price Range - New York Stock Exchange

| Quarter Ended | 2001 | | 2000 | |
|---|---|---|---|---|
| | High | Low | High | Low |
| October 31 | $40.24 | $29.86 | $35.00 | $23.50 |
| July 31 | $44.14 | $30.40 | $24.63 | $18.44 |
| April 30 | $39.70 | $32.40 | $23.06 | $16.00 |
| January 31 | $45.25 | $31.19 | $19.75 | $16.73 |

## Statement on Forward-Looking Information

Certain information included herein and in other Company reports, SEC filings, statements and presentations is forward looking within the meaning of the Private Securities Litigation Reform Act of 1995, including, but not limited to, statements concerning the Company's anticipated operating results, financial resources, increases in revenues, increased profitability, interest expense, growth and expansion, ability to acquire land, ability to sell homes and properties, ability to deliver homes from backlog, and ability to secure materials and subcontractors. Such forward-looking information involves important risks and uncertainties that could significantly affect actual results and cause them to differ materially from expectations expressed herein and in other Company reports, SEC filings, statements and presentations.  These risks and uncertainties include local, regional and national economic and political conditions, consequences of any future terrorist attacks such as those that occurred on September 11, 2001, the effect of governmental regulation, the competitive environment in which the Company operates, fluctuations in interest rates, changes in home prices, the availability and cost of land for future growth, the availability of capital, the availability and cost of labor and materials, and weather conditions.

**Demographic data:** sources for the demographic data included in this annual report are the U.S. Census Bureau, the Joint Center for Housing Studies of Harvard University and Claritas.

**Photography:** James B. Abbott, Mark Bosclair, Author Coleman, Jeff Fadellin, John Henebry, Rob Ikeler, Chris John, Steve Lakatos, Robb Miller, Rob Muir, Tim Proctor, Kim Sargent, Beth Singer, Peter Tata, Bill Taylor

**Cover photo:** Edgebrook, New York
**Back cover photo:** backyard view from Cimmaron Ridge, Arizona

Copyright 2001 by TOLL BROTHERS, INC.


TOL
LISTED
NYSE

## Corporate Information

### Board of Directors and Executive Officers

| | |
|---|---|
| Robert I. Toll* | Chairman of the Board and Chief Executive Officer |
| Bruce E. Toll | Vice Chairman of the Board |
| Zvi Barzilay* | President and Chief Operating Officer |
| Robert S. Blank | Partner - Whitcom Partners, a media company |
| Edward G. Boehne | Retired President - Federal Reserve Bank of Philadelphia |
| Richard J. Braemer | Partner - Ballard, Spahr, Andrews & Ingersoll, LLP, Attorneys at Law |
| Roger S. Hillas | Retired Chairman - Meritor Savings Bank |
| Carl B. Marbach | President - Internetwork Publishing Corp., an electronic publisher |
| Stephen A. Novick | Vice Chairman and Chief Creative Officer - Grey Global Group, an advertising agency |
| Joel H. Rassman | Executive Vice President, Treasurer and Chief Financial Officer |
| Paul E. Shapiro | Executive Vice President and Chief Administrative Officer - Revlon, Inc. |

*Executive Officer of the Company

### Officers

#### First Senior Vice President
Wayne S. Patterson

#### Senior Vice President and General Counsel
Kenneth J. Gary

#### Senior Vice Presidents

| | | |
|---|---|---|
| Thomas Argyris, Jr. | G. Cory DeSpain | Edward D. Weber |
| James W. Boyd | Richard J. Hartman | Douglas C. Yearley, Jr. |
| Barry A. Depew | Werner Thiessen | |

#### Vice Presidents - Operations

| | | |
|---|---|---|
| Peter Ikes | Augustine P. Flores | Gary M. Mayo |
| Keith A. Anderson | Raymond G. Camile | Mac F. McAlpine |
| Thomas Anhut | William J. Gilligan | Richard O. McCormick |
| William J. Besint | John D. Harris | Thomas Murray |
| Ronald Blum | Douglas C. Heppe | Daniel J. O'Brien |
| Charles W. Bowie | Benjamin D. Jogodnik | Robert Parahus |
| Roger A. Brush | Gregory Kamedulski | Jon Paynter |
| Scott L. Coleman | Gregory S. Kelleher | William D. Perry |
| Perry J. Devlin | Webb A. Koshenne | William C. Reilly |
| Michael J. Donrilley | B. Mitchell Kolter | Ralph E. Reinert |
| Kevin D. Duernin | Gary Lemon | Douglas C. Stipe |
| John Falcano | James Majewski, Jr. | James A. Smith |
| Alan E. Euvrard | John G. Mangano | |

#### Vice Presidents - Administration

| | | | | |
|---|---|---|---|---|
| Paul Brukardt | Acquisitions | Charles E. Morrisony | Westminster Title |
| Frederick N. Cooper | Finance | Joseph L. Palka | Land Development |
| Jonathan A. Downs | Human Resources | Joseph R. Scree | Chief Accounting Officer |
| Evan C. Ernest | Taxation | | |
| Eric Finkelberg | Land Acquisitions | Michael I. Snyder | Corporate Planning and Corporate Secretary |
| Robert B. Filler | Land Approvals | | |
| Bette Jo Heiner | Information Systems | Ronie E. Snyder | Land Development |
| Allan R. Irwin | Country Club/Golf Course Operations | Michael J. Sosinski | Eastern States Engineering |
| Manfred R. Marotta | Toll Integrated Systems | Steven A. Turbyfill | Product Development |
| Kira McCarron | Marketing | Phillip M. Turner | Land Development |
| Robert McCarron | Land Development | Mark J. Warshauer | Counsel |
| Kevin J. McMaster | Controller | | |

#### Subsidiary Operations

| | |
|---|---|
| Wayne S. Patterson | President, Westminster Security Company |
| Charles E. Morrisony | President, Westminster Title Company |
| Donald L. Salmon | President, Westminster Mortgage Corporation |
| Michael J. Zarnith | Managing Director, Advanced Broadband |

Employee listings are as of 11/1/02.

### Employees
As of October 31, 2002, the Company had 2,960 full-time employees.

### Shareholders
As of October 31, 2002, the Company had 744 shareholders of record.

### Stock Listing
The Common Stock of Toll Brothers, Inc. is traded on the New York Stock Exchange and Pacific Exchange (symbol "TOL").

### Investor Relations - Information Requests
The Company's Form 10-K Annual Report, Form 10-Q Quarterly Reports and other Company information are available on our Web site, www.tollbrothers.com, or upon request from Frederick N. Cooper (fcooper@tollbrothersinc.com) or Joseph R. Sicree (jsicree@tollbrothersinc.com), Co-Directors of Investor Relations, at the Corporate Office.

### Common Stock Price Range - New York Stock Exchange
(adjusted for 2-for-1 stock split in March 2002)
Quarter Ended

| 2002 | High | Low | 2001 | High | Low |
|---|---|---|---|---|---|
| October 31 | $27.20 | $17.76 | October 31 | $20.12 | $12.93 |
| July 31 | $31.80 | $20.81 | July 31 | $22.07 | $15.20 |
| April 30 | $30.20 | $20.93 | April 30 | $19.85 | $16.20 |
| January 31 | $23.20 | $15.42 | January 31 | $22.63 | $15.60 |

### Corporate Office
Toll Brothers, Inc.
3103 Philmont Avenue
Huntington Valley, Pennsylvania 19006
(215) 938-8000
www.tollbrothers.com

### Transfer Agent and Registrar
American Stock Transfer and Trust Company
New York, New York
1-800-937-5449
www.amstock.com

### Independent Auditors
Ernst & Young LLP
Philadelphia, Pennsylvania

### Securities Counsel
Wolf, Block, Schorr and Solis-Cohen LLP
Philadelphia, Pennsylvania

### Demographic Data:
The sources for the demographic data included in this annual report are Claritas; International Strategy & Investment Group; The Joint Center for Housing Studies of Harvard University; Merrill Lynch; National Association of Home Builders; National Association of Realtors; Raymond James & Associates, Inc.; U.S. Census Bureau; U.S. Department of Labor; and U.S. Immigration and Naturalization Service

### Photography:
James B. Abbott, Jeffrey Aron, Mark Boisclair, Rob Brown, Chris Burkhalter, Mert Carpenter, Greg Cava, Craig Cozart, Barry Grossman, Rob Ikeler, Barry Kinsella, Robb Miller, Vic Moss, Rob Muir, Kim Sargent, Bob Shimer, Bill Taylor, George Wilkins, Jim Wilson

### Photos:
Cover photo: The Mirador, Gilbert, AZ
Inside front cover: The Grande Clubhouse at Mizner Country Club, Boca Raton area, FL
Pg. 3: The Columbia, Lexington, Novi, MI
Pg. 4: The Sienna, Palm Springs, CA
Pg. 8: The Vasari backyard, Las Vegas, NV
Pg. 14: The Monterey, Las Colinas, TX
Center Spread: (clockwise from top left) The Menlo Manor, San Ramon, CA; The Carlsbad foyer, Yorba Linda, CA; The Capistrano backyard, Yorba Linda, CA; The Malvern Heritage, Novi, MI; The Turnberry living room, Monroe Township, NJ; The Langley Federal, Ashburn, VA; The Hampton Georgian, Raleigh, NC; The Segovia master bath, Boca Raton area, FL; The Strathmore Mediterranean, San Antonio, TX; The Chatsworth backyard, Las Vegas, NV; View of the Austin from the 3rd hole, Castle Rock, CO
Pg. 26 The Columbia, Buckingham, PA
Pg. 27 The Hampton, Raleigh, NC
Pg. 28 The Stratford Heritage, Ann Arbor, MI
Pg. 29 The Casa del Sol, Palm Beach Gardens, FL
Pg. 31 The Terraza, Gilbert, AZ
Pg. 34 The Grande Clubhouse at Naples Lakes Country Club, Naples, FL
Back cover photo: The Viana, Palm City, FL

### Quote Sources:
Inside front cover: U.S. Census Bureau - Money Income in the United States: 2001-Report P60-218, issued Sept. 2002
Pg. 2 Newsweek, Aug. 26, 2002, "Real Estate" - Betting Against a Housing Bust by Daniel McGinn
Pg. 8 Time, Aug. 5, 2002, "Economy & Business", What Housing Bubble? by Daniel Kadlec
Pg. 10 Dr. Susan Wachter, Nov. 19, 2002, "Nationwide Trends and the American Luxury Home Market"
Pg. 12 Fortune, Oct. 28, 2002, "Is Real Estate Next?" by Shawn Tully
Pg. 14 Joint Center for Housing Studies of Harvard University, The State of the Nation's Housing 2002

Designed by Sean Bornemann. Copyright 2002 by TOLL BROTHERS, INC.


TOLL
LISTED
NYSE

# Corporate Information

## Board of Directors and Executive Officers

**Robert I. Toll**
Chairman of the Board and Chief Executive Officer

**Bruce E. Toll**
Vice Chairman of the Board

**Zvi Barzilay**
President and Chief Operating Officer

**Robert S. Blank**
Partner - Whitcom Partners, a media company

**Edward G. Boehne**
Retired President - Federal Reserve Bank of Philadelphia

**Richard J. Braemer**
Partner - Ballard, Spahr, Andrews & Ingersoll, LLP, Attorneys at Law

**Roger S. Hillas**
Retired Chairman - Meritor Savings Bank

**Carl B. Marbach**
President - Internetwork Publishing Corp., an electronic publisher

**Stephen A. Novick**
Vice Chairman and Chief Creative Officer - Grey Global Group, a marketing company

**Joel H. Rassman***
Executive Vice President, Treasurer and Chief Financial Officer

**Paul E. Shapiro**
Senior Vice President - MacAndrews & Forbes Holdings, Inc.

*Executive Officer and Director of the Company

## Officers

### First Senior Vice President
**Wayne S. Patterson**

### Vice President
**Thomas A. Argyris, Jr.**
**James W. Boyd**

### Senior Vice President and General Counsel
**Barry A. Depew**
**G. Cory DeSpain**

### First Vice President and Secretary
**Richard T. Hartman**
**Werner Thiessen**

### Senior Vice Presidents
**Kenneth J. Gary**

**Michael I. Snyder**

## Vice Presidents - Operations

| | | |
|---|---|---|
| Peter Alles | John P. Elcano | Webb A. Koschenne |
| Keith L. Anderson | Alan E. Euvrard | Jon Paynter |
| Thomas J. Anhut | Augustine P. Flores | Gary Lemon | Michael J. Palmer |
| William J. Bastnit | Christopher G. Gaffney | James Majewski, Jr. | William D. Perry |
| Ronald Blum | William J. Gilligan | John G. Mangano | William C. Reilly |
| Charles W. Bowie | John D. Harris | Gary M. Mayo | Ralph E. Reinert |
| Roger A. Brush | John Jakomnich | Marc F. McAlpine | David K. Sadler |
| Scott L. Coleman | Benjamin D. Jogodnik | Richard C. McCormick | Douglas C. Shipe |
| Perry J. Devlin | Robert A. Johnson | Thomas J. Murray | James A. Smith |
| Michael J. Donnelly | Gregory E. Kamedulski | Walt I. Nowak | |
| Kevin D. Duermit | Gregory S. Kelleher | Robert Parahus | |

## Vice Presidents - Administration

| | | |
|---|---|---|
| Paul Brukardt | Tracy Graves | Charles E. Moscony | Steven A. Turbyfill |
| Frederick N. Cooper | Bette-Jo Hellner | George W. Nelson | Phillip M. Turner |
| Jonathan C. Downs | Daniel J. Kennedy | Joseph J. Palka | Christopher S. Utschig |
| Evan G. Ernest | Manfred P. Marotta | David H. Richey | Mark J. Warshauer |
| Robert B. Fuller | Kira McCarron | Joseph R. Sicree | |
| Patrick Galligan | Robert N. McCarron | Ronnie E. Snyder | |
| Jed Gibson | Kevin J. McMaster | Michael J. Sosinski | |

## Vice Presidents - City Living by Toll Brothers
**Sanford Weiss**
**Joseph Caulfield**
**Dennis Devino**

## Subsidiary Operations

**Kenneth J. Gary**, President, Westminster Security Company
**Charles E. Moscony**, President, Westminster Title Company
**Donald L. Salmon**, President, Westminster Mortgage Corporation
**Richard R. Dostie**, President, Toll-Jacksonville, LP
**Michael J. Zammit**, Managing Director, Advanced Broadband

### Affiliate Operations
**James M. Steuterman**
Senior Vice President, Toll Brothers Realty Trust

---

## Employees
As of October 31, 2003, the Company had 3,416 full-time employees.

## Shareholders
As of October 31, 2003, the Company had 649 shareholders of record.

## Stock Listing
The Common Stock of Toll Brothers, Inc. is traded on the New York Stock Exchange and Pacific Exchange (symbol "TOL").

## Corporate Office
Toll Brothers, Inc.
3103 Philmont Avenue
Huntingdon Valley, Pennsylvania 19006
1-800-937-5449
www.tollbrothers.com

## Transfer Agent and Registrar
American Stock Transfer and Trust Company
59 Maiden Lane
New York, New York 10038
(215) 938-8000
www.amstock.com

## Investor Relations - Information Requests
The Company's Annual Report on Form 10-K, Quarterly Reports on Form 10-Q and other Company information are available on or through our Web site, www.tollbrothers.com, or upon request from Frederick N. Cooper, Vice President-Finance (fcooper@tollbrothersinc.com) or Joseph R. Sicree, Vice President-Chief Accounting Officer (jsicree@tollbrothersinc.com), Co-Directors of Investor Relations, at the Corporate Office.

## Independent Auditors
Ernst & Young LLP
Philadelphia, Pennsylvania

## Securities Counsel
Wolf, Block, Schorr and Solis-Cohen LLP
Philadelphia, Pennsylvania

## Common Stock Price Range - New York Stock Exchange
(adjusted for 2-for-1 stock split in March 2002)

| 2003 Quarter Ended | High | Low | 2002 Quarter Ended | High | Low |
|---|---|---|---|---|---|
| October 31 | $37.02 | $25.67 | October 31 | $31.20 | $17.76 |
| July 31 | $32.64 | $22.64 | July 31 | $31.80 | $20.81 |
| April 30 | $23.65 | $17.63 | April 30 | $30.20 | $20.93 |
| January 31 | $21.92 | $18.85 | January 31 | $23.20 | $15.42 |

### Quote Sources:
Pg. 26 Barron's, Feb. 10, 2003 - Gimme Shelter by Andrew Bary
Demographic data: Pg. 30 Harvard University, the State of the Nation's Housing 2003

### Demographic data:
The sources for the demographic data included in this annual report are: American Demographics; Bloomberg L.P.; Citigroup Salomon Smith Barney; Claritas; The Conference Board; Credit Suisse First Boston; International Strategy & Investment Group; The Joint Center for Housing Studies of Harvard University; Merrill Lynch; UBS; U.S. Census Bureau; U.S. Department of Labor; U.S. Immigration and Naturalization Service; Wachovia Securities

### Photography:
James B. Abbott, Mark Boisclair, Rob Brown, Chris Burkhalter, Mert Carpenter, Greg Cava, Barry Grossman, Levi Ellyson, Jeff Ryous, Omar Salinas, Evan Schiller, Frank Short, Walt Stoneham, Bill Taylor

### Photos:
**Cover:** Magdalena at Frenchman's Reserve, Palm Beach Gardens, FL; (right) Chamberlain at Trotters Gate, Powell, Ohio; **Back cover:** Milano at Toscana, Las Vegas, NV

---

Employee listings are as of 11/1/03.

Designed by Sean Bornemann   Copyright 2003 by TOLL BROTHERS, INC.


TOL
NYSE

# Corporate Information

## Board Of Directors And Executive Officers

**Zvi Barzilay\*** — President and Chief Operating Officer
**Bruce E. Toll** — Vice Chairman of the Board - President, BET Investments, an office and commercial real estate company
**Robert I. Toll\*** — Chairman of the Board and Chief Executive Officer
**Robert S. Blank** — Partner - Whitcom Partners, a media company
**Edward G. Boehne** — Retired President - Federal Reserve Bank of Philadelphia
**Richard J. Braemer** — Partner - Ballard, Spahr, Andrews & Ingersoll, LLP, Attorneys at Law
**Roger S. Hillas** — Retired Chairman - Meritor Savings Bank
**Carl B. Marrach** — President - Greater Marrach Airlines, Inc., and Florida Professional Aviation, Inc., aviation services and consulting companies
**Stephen A. Novick** — Vice Chairman and Chief Creative Officer - Grey Global Group, a marketing company
**Joel H. Rassman\*** — Executive Vice President, Treasurer and Chief Financial Officer
**Paul E. Shapiro** — Chairman - Q Capital Strategies, LLC, a life settlement company

*\*Executive Officer and Director of the Company*

## Officers

### SENIOR VICE PRESIDENTS | OPERATIONS
Wayne S. Patterson — First Senior Vice President
Thomas A. Argyris, Jr.
James W. Boyd

### SENIOR VICE PRESIDENTS | OPERATIONS
Barry A. Depew
G. Cory DeSpain

### SENIOR VICE PRESIDENTS | ADMINISTRATION
Richard T. Hartman
Edward S. Weber
Douglas C. Yearley, Jr.

### SENIOR VICE PRESIDENTS | Finance/Investor Relations
Kenneth J. Gary — General Counsel

### ADMINISTRATION
Michael L. Snyder — Secretary
Werner Thiessen — Acquisitions

### VICE PRESIDENTS | OPERATIONS
Peter Alles
Keith L. Anderson
Thomas J. Annut
William J. Bestmint
Ronald Blum
Charles W. Bowie
Roger A. Brush
Anthony E. Casapulla
Joseph Caulfield
Scott L. Coleman
Michael Davenport
Ronald Davis
Dennis M. Devino
J. Michael Donnelly
Kevin D. Duermit

John P. Elcano
Alan E. Edward
Christopher G. Gaffney
William J. Gilligan
Michael D. Glenn
P. Scott Hare
John D. Harris
Gordon Ivascu
Robert D. Jaegar
John Jakiomicich
Benjamin D. Jagdonik
Robert A. Johnson
Gregory F. Kamedulski
Gregory S. Keileher
Webb A. Koschene

B. Mitchell Kotler
Gary Lemon
Bruce A. Lingerfelt
James Majewski, Jr.
John G. Mangano
Gary M. Mayo
Marc F. McAlpine
Richard C. McCormick
Jeff Meyer
Thomas J. Murray
Richard M. Nelson
Walt I. Nowak
Michael J. Palmer
Robert Parahus
H. Jon Paynter

Joseph J. Pease
William D. Perry
Charles B. Raddatz
William C. Reilly
Ralph E. Reinert
Anthony J. Rocco
C. J. Rogers
David K. Sadler
Douglas C. Shipe
Beverly A. Smith
James A. Smith
Andrew M. Stern
Edward L. Zaborowski

### VICE PRESIDENTS | ADMINISTRATION
Suzanne Baretto
Paul Brukardt
Joseph DeSanto
Jonathan C. Downs
Evan G. Ernest
Robert B. Fuller
Patrick Galligan
Jed Gibson

Tracy Graves
Linda M. Hart
Daniel J. Kennedy
Manfred P. Marotta
Kira McCarron
Robert N. McCarron
Kevin J. McMaster
James L. Meeks

George W. Nelson
Michael T. Noles
Joseph J. Palka
David H. Richey
Byron W. Rimmer
Christopher S. Uschig
Mark J. Warshauer

Michael J. Sosinski
Steven A. Turbyfill
Phillip M. Turner

## Transfer Agent & Registrar
American Stock Transfer and Trust Company, 59 Maiden Lane, New York, New York 10038
1-800-937-5449 • www.amstock.com

## Independent Auditors
Ernst & Young LLP — Philadelphia, Pennsylvania

## Securities Counsel
Wolf, Block, Schorr and Solis-Cohen LLP — Philadelphia, Pennsylvania

## Employees
As of October 31, 2004, the Company had 4,655 full-time employees.

## Shareholders
As of October 31, 2004, the Company had 1,013 shareholders of record.

## Stock Listing
The Common Stock of Toll Brothers, Inc. is traded on the New York Stock Exchange and Pacific Exchange (symbol "TOL").

## Certifications
The Company's Chief Executive Officer and Chief Financial Officer have filed their certifications as required by the SEC regarding the quality of the Company's public disclosure for each of the periods ended during the Company's fiscal year ended October 31, 2004. Further, the Company's Chief Executive Officer has certified to the New York Stock Exchange ("NYSE") that he is not aware of any violation by the Company of NYSE corporate governance listing standards, as required by Section 303A.12(a) of the NYSE Corporate Governance Rules.

## Investor Relations | Information Requests
The Company's Annual Report on Form 10-K, Quarterly Reports on Form 10-Q and other Company information are available on or through our Web site, tollbrothers.com or upon request from Frederick N. Cooper, Senior Vice President-Finance (fcooper@tollbrothersinc.com) or Joseph R. Sicree, Vice President-Chief Accounting Officer (jsicree@tollbrothersinc.com), Co-Directors of Investor Relations, at the Corporate Office.

## Subsidiary Operations
Richard R. Dostie — President, Toll-Jacksonville, LP
Kenneth J. Gary — President, Westminster Security Company
Donald L. Salmon — President, Westminster Mortgage Corporation
William T. Unkel — President, Westminster Title Company
Michael J. Zammit — Managing Director, Advanced Broadband

## Affiliate Operations
James M. Steuterman — Senior Vice President, Toll Brothers Realty Trust

# Corporate Information

## Board of Directors and Executive Officers

**Robert I. Toll***
Chairman of the Board and Chief Executive Officer

**Bruce E. Toll**
Vice Chairman of the Board
President - BET Investments, an office and commercial real estate company

**Zvi Barzilay***
President and Chief Operating Officer

**Robert S. Blank**
Co-Chairman & Co-CEO - Whitney Communications Company and Senior Partner - Whitcom Partners, media companies

**Edward G. Boehne**
Retired President - Federal Reserve Bank of Philadelphia

**Richard J. Braemer**
Partner - Ballard, Spahr, Andrews & Ingersoll, LLP, Attorneys at Law

**Roger S. Hillas**
Retired Chairman - Meritor Savings Bank

**Carl B. Marbach**
President - Greater Marbach Airlines, Inc., and Florida Professional Aviation, Inc., aviation services and consulting companies

**Stephen A. Novick**
Senior Advisor - The Andrea and Charles Bronfman Philanthropies

**Joel H. Rassman***
Executive Vice President, Treasurer and Chief Financial Officer

**Paul E. Shapiro**
Chairman - Q Capital Strategies, LLC, a life settlement company

*Executive Officer and Director of the Company

## Corporate Administration

### Senior Vice Presidents

Frederick N. Cooper
Finance & Investor Relations

Don H. Liu
General Counsel
Chief Compliance Officer

Michael I. Snyder
Corporate Planning & Secretary

Werner Thiessen
Acquisitions

### Vice Presidents

| | |
|---|---|
| Suzanne Barletto | James L. Meeks |
| Donald Barnes | William Morrison Jr. |
| Paul Brukardt | George W. Nelson |
| Joseph DeSanto | Michael T. Noles |
| Jonathan C. Downs | Edward Oliu |
| Evan G. Ernest | John Pagenkopf |
| Robert B. Fuller | Joseph J. Palka |
| Patrick Galligan | Russel Powell |
| Jed Gibson | David H. Richey |
| Charles M. Hare | Byron W. Rimmer |
| James Harrington, Jr. | Joseph R. Sicree |
| Linda M. Hart | Mark Simms |
| Terry Hodge | Michael Smith |
| Daniel J. Kennedy | Ronnie E. Snyder |
| Michael LaPat | Michael J. Sosinski |
| Manfred P. Marotta | Stephen A. Turbyfill |
| Kira McCarron | Christopher S. Utschig |
| Robert N. McCarron | Mark J. Warshauer |
| Kevin J. McMaster | |

## Home Building Operations

### Regional Presidents

| | |
|---|---|
| Thomas A. Argyris, Jr. | Richard T. Hartman |
| James W. Boyd | Wayne S. Patterson |
| Barry A. Depew | Edward D. Weber |
| G. Cory DeSpain | Douglas C. Yearley, Jr. |

### Group Presidents

| | |
|---|---|
| Roger A. Brush | Gary M. Mayo |
| Kevin D. Duermit | Robert Parahus |
| John P. Elcano | H. Jon Paynter |
| William J. Gilligan | Douglas C. Shipe |
| John G. Mangano | James A. Smith |

### Division Presidents

| | |
|---|---|
| Keith L. Anderson | Richard C. McCormick |
| Thomas J. Anhut | William Morrisey |
| Charles W. Bowie | Thomas Mulvey |
| J. Michael Donnelly | Thomas J. Murray |
| Richard R. Dostie | Chris Myers |
| Christopher G. Gaffney | John Noonan |
| John Jakominich | Walt I. Nowak |
| Gregory E. Kamedulski | Ralph E. Reinert |
| Gregory S. Kelleher | C. J. Rogers |
| Gary Lemon | John Vitella |
| Dan L. Martin | |

### Division Senior Vice Presidents

| | |
|---|---|
| Peter Alles | Michael J. Palmer |
| Benjamin D. Jogodnik | William C. Reilly |
| James A. Majewski, Jr. | |

### Division Vice Presidents

| | |
|---|---|
| Jeffrey Bartos | Robert A. Johnson |
| William J. Bestimt | Bruce A. Lingerfelt |
| Ronald Blum | Marc F. McAlpine |
| Anthony E. Casapulla | Sheila McGuire |
| Joseph Caulfield | Brad H. Nelson |
| Scott L. Coleman | Richard M. Nelson |
| Robert L. Craig | William D. Perry |
| Michael Davenport | Charles B. Raddatz |
| Mark O. Davis | Anthony J. Rocco |
| Dennis M. Devino | David K. Sadler |
| Alan E. Euvrard | Jeffrey Schnurr |
| Michael D. Glenn | Beverly A. Smith |
| P. Scott Hare | Andrew M. Stern |
| John D. Harris | John P. Szakats |
| Thomas Hausle | Kenneth S. Thirtyacre |
| William Holmes | Alan R. Truitt |
| Gordon Ivascu | Daniel C. Zalinsky |

## Subsidiary Operations

| | |
|---|---|
| Felicia Ratka | President - Westminster Security Company |
| Donald L. Salmon | President - TBI Mortgage Company |
| William T. Unkel | President - Westminster Title Company |
| Michael J. Zammit | Managing Director - Advanced Broadband |

## Affiliate Operations

| | |
|---|---|
| James M. Steuterman | Senior Vice President - Toll Brothers Realty Trust |

Employee listings are as of 11/1/05.

# Corporate Officers

## Board of Directors and Executive Officers

Robert I. Toll*
Chairman of the Board and Chief Executive Officer

Bruce E. Toll
Vice Chairman of the Board
President - BET Investments, an office and commercial real estate company

Zvi Barzilay*
President and Chief Operating Officer

Robert S. Blank
Co-Chairman & Co-CEO - Whitney Communications Company and Senior Partner - Whitcom Partners, media companies

Edward G. Boehne
Retired President - Federal Reserve Bank of Philadelphia

*Executive Officer and Director of the Company

Richard J. Braemer
Partner - Ballard, Spahr, Andrews & Ingersoll, LL P, Attorneys at Law

Roger S. Hillas
Retired Chairman - Meritor Savings Bank

Carl B. Marbach
President - Greater Marbach Airlines, Inc., and Florida Professional Aviation, Inc., aviation services and consulting companies

Stephen A. Novick
Senior Advisor - The Andrea and Charles Bronfman Philanthropies

Joel H. Rassman*
Executive Vice President, Treasurer and Chief Financial Officer

Paul E. Shapiro
Chairman - Q Capital Strategies, LL C, a life settlement company

## Corporate Administration

### Senior Vice Presidents

| | |
|---|---|
| Frederick N. Cooper | Finance & Investor Relations |
| Jonathan C. Downs | Human Resources |
| Don H. Liu | General Counsel & Chief Compliance Officer |
| Kira McCarron | Chief Marketing Officer |
| Kevin J. McMaster | Controller |
| George W. Nelson | Chief Information Officer |
| Joseph R. Sicree | Chief Accounting Officer |
| Michael I. Snyder | Secretary & Corporate Planning |
| Werner Thiessen | Acquisitions |

### Vice Presidents

| | | |
|---|---|---|
| Suzanne Barletto | Linda M. Hart | Michael Smith |
| Sandy Colden | Daniel J. Kennedy | Stephen A. Turbyfill |
| Joseph DeSanto | Michael LaPat | Mark J. Warshauer |
| Evan G. Ernest | Mitchell Laskowitz | Michele Wolfe |
| Patrick Galligan | Manfred P. Marotta | Kathryn L. Yates |
| Robert Girvin | John K. McDonald | |
| Michael J. Grubb | David H. Richey | |

## Home Building Operations

### Regional Presidents

Thomas A. Argyris, Jr.
James W. Boyd
Barry A. Depew
William J. Gilligan
Richard T. Hartman
Robert Parahus
Edward D. Weber
Douglas C. Yearley, Jr.

### Group Presidents

Roger A. Brush
Kevin D. Duermit
John P. Elcano
John G. Mangano
Gary M. Mayo
H. Jon Paynter
Douglas C. Shipe
James A. Smith

### Division Presidents

| | | |
|---|---|---|
| Salem Al-Shatti | John Jakominich | Chris Myers |
| Keith L. Anderson | Gregory E. Kamedulski | Richard M. Nelson |
| Thomas J. Anhut | Bruce A. Lingerfelt | John Noonan |
| Ronald J. Boshaw | David Lopez | Walt I. Nowak |
| Charles W. Bowie | Dan L. Martin | Michael J. Palmer |
| Anthony E. Casapulla | Richard C. McCormick | Charles B. Raddatz |
| J. Michael Donnelly | Thomas Mulvey | Ralph E. Reinert |
| Christopher G. Gaffney | Thomas J. Murray | John Vitella |

### Division Senior Vice Presidents

Peter Alles
Robert D. Frakes
Benjamin D. Jogodnik
James A. Majewski, Jr.
William C. Reilly
Jeffrey Schnurr
Andrew M. Stern
Kenneth S. Thirtyacre
Daniel C. Zalinsky

### Division Vice Presidents

| | | | |
|---|---|---|---|
| David B. Anderson | Mark O. Davis | Robert J. Kardos | David K. Sadler |
| Eric Anderson | Dennis M. Devino | Gregory J. LaGreca | William Schmidt |
| Jeffrey Bartos | Alan E. Euvrard | Brian F. Loftus | Richard N. Schoonmaker |
| William J. Bestimt | Robert L. Flaherty | Shella McGuire | Kevin Stine |
| Ronald Blum | Michael D. Glenn | Lloyd Miller | John P. Szakats |
| Charles T. Breder | Robert M. Hodak | Cynthia Morse | David Torres |
| Joseph Caulfield | P. Scott Hare | Brad H. Nelson | Alan R. Truitt |
| John Christensen | John D. Harris | Scott Nodland | David Von Spreckelsen |
| Gregory Cole | Thomas Hausle | Mark Nosal | Ryan D. Walter |
| Scott L. Coleman | William Holmes | Robert Paul | Adam Wilson |
| Charles M. Connors | Gordon Ivascu | William D. Perry | |
| Robert L. Craig | Robert A. Johnson | Anthony J. Rocco | |

## Land Acquisition and Land Development

### Senior Vice Presidents

James L. Meek
Joseph J. Palka

### Vice Presidents

| | | |
|---|---|---|
| Donald Barnes | James Harrington, Jr. | William Morrison, Jr. | Mark Simms |
| Paul Brukardt | Terry Hodge | Michael T. Noles | Ronnie E. Snyder |
| Robert B. Fuller | James Manners | Edward Oliu | Christopher S. Utschig |
| Charles M. Hare | Robert N. McCarron | Russel Powell | |

## Subsidiary and Affiliate Operations

| | |
|---|---|
| Eastern States Engineering, Inc. | Christopher Stocke - Vice President |
| TBI Mortgage Company | Donald L. Salmon - President |
| Toll Architecture, Inc. | Jed Gibson - President |
| Toll Brothers Realty Trust | James M. Steuterman - Senior Vice President |

| | |
|---|---|
| Toll Landscape, L.L.C. | Mark Culichia - Vice President |
| Westminster Security Company | Felicia Ratka - President |
| Westminster Title Company, Inc. | William T. Unkel - President |

Employee listings are as of 11/1/06.

# Corporate Officers

## BOARD OF DIRECTORS AND EXECUTIVE OFFICERS

**Robert I. Toll**
Chairman of the Board & Chief Executive Officer

**Bruce E. Toll**
Vice Chairman of the Board
President - BET Investments, an office and commercial real estate company, and
Chairman - Philadelphia Media Holdings, LLC, parent company of the Philadelphia Inquirer and Philadelphia Daily News

**Zvi Barzilay***
President and Chief Operating Officer

**Robert S. Blank**
Co-Chairman & Co-CEO - Whitney Communications Company, and
Senior Partner - Whitcom Partners, media companies

**Edward G. Boehne**
Retired President - Federal Reserve Bank of Philadelphia

**Richard J. Braemer**
Senior Advisor - Ballard, Spahr, Andrews & Ingersoll, LLP, Attorneys at Law

**Roger S. Hillas**
Retired Chairman - Meritor Savings Bank

**Carl B. Marbach**
President - Greater Marbach Airlines, Inc., and
Florida Professional Aviation, Inc., aviation services and consulting companies

**Stephen A. Novick**
Senior Advisor - The Andrea and Charles Bronfman Philanthropies

**Paul E. Shapiro**
Executive Vice President, Treasurer and Chief Financial Officer
Chairman - Q Capital Strategies, LLC, a life settlement company

*Executive Officer and Director of the Company

## CORPORATE ADMINISTRATION

### Senior Vice Presidents

Frederick N. Cooperman & Investor Relations
Jonathan C. Downs Human Resources
Mark W. Kessler  General Counsel &
Chief Accounting Officer
Kira McCarron  Chief Marketing Officer

### Vice Presidents

Kevin J. McMaster Controller
George W. Nelson Chief Information Officer
Joseph R. Sicree  Chief Accounting Officer
Michael J. Snyder  Secretary & Chief Planning Officer
Werner Thiessen  Acquisitions

Suzanne Barletto
Gerald L. Belfiglio
Linda B. Cohen
Bandy Coldren
Joseph R. DeSanto

Evan G. Ernest
Patrick Galligan
Robert J. Girvin
Michael J. Grubb
Daniel J. Kennedy

Michael L. LaPat
Manfred P. Marotta
John K. McDonald
Michael Smith
Stephen A. Turbyfill

Mark J. Warshauer
Michele Wolfe
Kathryn L. Yates

## HOME BUILDING OPERATIONS

| Regional Presidents | Group Presidents | Division Presidents | Division Senior Vice Presidents | Division Vice Presidents | |
|---|---|---|---|---|---|
| Thomas A. Argyris, Jr. | Keith L. Anderson | Thomas J. Arhut | Peter Alles | David B. Anderson | Robert A. Johnson |
| James W. Boyd | Roger A. Brush | Jeffrey A. Bartos | Robert D. Frakes | Eric C. Anderson | Robert J. Kardos |
| Barry A. Depew | Kevin D. Duermit | Charles W. Bowie | Benjamin D. Jogodnik | Ronald Blum | Gregory J. LaGreca |
| William J. Gilligan | John F. Elcano | H. Jon Paynter | Richard M. Nelson | Charles I. Breder | Brian F. Lothus |
| Richard T. Hartman | Christopher G. Gaffney | Anthony E. Casapulla | Walt I. Novak | Sheila M. McGuire | Lloyd S. Miller |
| Robert Parahus | John G. Mangano | Ralph E. Reinert | Robert G. Paul | William H. Bye | Cynthia L. Morse |
| Edward D. Weber | Douglas C. Shipe | J. Michael Donnelly | Anthony J. Rocco | James C. Carraway | Brad H. Nelson |
| Douglas C. Yearley, Jr. | | James H. Harrison | Jeffrey Schnurr | Joseph Caulfield | Scott S. Nodland |
| | | Gregory E. Kamedulski | Andrew M. Stern | John Christensen | Mark J. Nosal |
| | | Dan L. Martin | Kenneth S. Thirtyacre | Scott L. Coleman | William D. Perry |
| | | | Daniel C. Zalinsky | Charles M. Connors | David K. Sadler |
| | | | | Robert L. Craig | William N. Schmidt |
| | | | | Mark O. Davis | Richard N. Schoonmaker |
| | | | | Alan E. Euvrard | John P. Szakats |
| | | | | Robert L. Flaherty | Michael D. Glenn |
| | | | | Thomas G. Gestite | Charles W. Templeton |
| | | | | Michael D. Glenn | David E. Torres |
| | | | | John D. Harris | Alan R. Trutt |
| | | | | Thomas E. Hausle | David Von Spreckelsen |
| | | | | Robert M. Hodak | Ryan D. Walter |
| | | | | William M. Holmes | |
| | | | | Gordon Ivascu | |

## LAND ACQUISITION, LAND DEVELOPMENT, AND COUNTRY CLUB OPERATIONS

### Executive

**Vice President**
Joseph J. Palka

### Senior Vice Presidents

Robert N. McCarron
David H. Richey

### Vice Presidents

Donald R. Barnes
Paul Brukardt
Robert B. Fuller
Charles M. Hare

James H. Harrington, Jr.
Terry R. Hodge
John Jakominich
Mitchell P. Laskowitz

James Manners
William Morrison, Jr.
Michael T. Noles
Edward Oliu

Russel V. Powell
Mark D. Simms
Ronnie E. Snyder
Christopher S. Utschig

## SUBSIDIARY AND AFFILIATE OPERATIONS

**Eastern States Engineering, Inc.** Christopher E. Stoke - Vice President
**TBI Mortgage Company**
**Toll Architecture, Inc.**
**Toll Brothers Realty Trust**

Donald L. Salmon - President
Jed Gibson - President
James M. Steudeman - Sr. Vice President

**Toll Integrated Systems**
Christopher E. Stoke - Vice President
**Westminster Security Company** Felicia Ratka - President
**Westminster Title Company, Inc.** William T. Unkel - President

**Mark Culchia** - Vice President

Employee listings are as of 11/1/07

# corporate officers

## boaR o IRectoR

### a eecutive o IceR

**Robert I. toll**
Chairman of the  oard

**bruce e. toll**
ice Chairman of the  oard

**resident –  Investments**
Chairman –  hiladelphia
 edia Holdings, LLC,
parent company of the
 hiladelphia Inquirer
and  hiladelphia  aily
 ews

**Zvi barzilay**
resident and Chief Operating Ocer

**Robert .  blan**
Co-Chairman   Co-C O –  hitney
Communications Company, and
 enior  artner –  hitcom  artners,
 investments

**edard .  boene**
Retired  resident –  ederal Reserve  ank
of  hiladelphia

**Ricard .  braeer**
artner –  allard  pahr,  ndrews    Ingersoll, LL ,
 ttorneys at Law

**Roger .  illas**
Retired Chairman –  illas

**carl b.  arbac**
resident –  reater  arbach  irines, Inc., and
 lorida  rofessional  viation, Inc.,
aviation services and consulting companies

**oel .  Rassan**
xecutive  ice  resident,  reasurer and
Chief  inancial Ocer

**teen a.  ovic**
enior  divisor –  he  ndrea and Charles  ronfman
 hilanthropies

**aul e.  airo**
Chairman –  Capital  trategies, LLC,
a life settlement company

*Executive Ocer and Director of the Company

| | dRoetS YEARS of SERvicE |
|---|---|
| frederick n. cooper | 15 |
| Jonathan c. downs | 16 |
| mark k. kessler | 1 |
| kira mccarron | 23 |

## coRoRate a   IltRatio

| senior vice presidents | | dRoetS YEARS of SERvicE |
|---|---|---|
| **inance  Investor Relations** | kevin J. mcmaster | 25 |
| | George w. nelson | 5 |
| **Human Resources** | Jeffrey A. Bartos | 8 |
| **eneral Counsel** | Joseph F. Sicree | 16 |
| **Chief Compliance Ocer** | michael J. Snyder | 28 |
| Chief  arketing Ocer | werner thiessen | 18 |

| | dRoetS YEARS of SERvicE |
|---|---|
| Controller | |
| Chief Information Ocer | |
| Chief  ccounting Ocer | |
| ecretary  Chief  lanning Ocer | |
| cquisitions | |

## oe bull    I o eRatio

| regional presidents | | dRoetS YEARS of SERvicE |
|---|---|---|
| thomas A. Argyris, Jr. | 22 | |
| James w. Boyd | 15 | |
| Barry A. depew | 25 | |
| william J. Gilligan | 16 | |
| richard t. hartman | 29 | |
| robert parahus | 22 | |
| Edward d. weber | 29 | |
| douglas c. Yearley, Jr. | 18 | |

| group presidents | | dRoetS YEARS of SERvicE |
|---|---|---|
| keith L. Anderson | 11 | |
| roger A. Brush | 15 | |
| kevin d. diactrnit | 21 | |
| John p. Elcano | 16 | |
| christopher G. Gaffney | 12 | |
| John G. manguno | 21 | |
| Glen h. martin | 2 | |
| Gary m. mayo | 11 | |
| thomas J. murray | 14 | |
| ralph F. reinert | 16 | |
| douglas c. Shipe | 14 | |

| division presidents | | dRoetS YEARS of SERvicE |
|---|---|---|
| thomas J. Anhut | 14 | |
| charles w. Bowie | 12 | |
| John G. Bunting | 11 | |
| Anthony F. casapulla | 14 | |
| J. michael donnelly | 17 | |
| James h. harrison | 2 | |
| Gregory E. kamadulski | 16 | |
| dan L. martin | 11 | |
| richard c. mccormick | 30 | |
| thomas r. mulvey | 4 | |

| | dRoetS YEARS of SERvicE |
|---|---|
| chris myers | 14 |
| richard m. nelson | 10 |
| walt c. nowak | 14 |
| robert G. paul | 7 |
| charles R. nadratz | 11 |
| william c. reilly | 16 |
| kenneth S. thirtyacre | 11 |
| John p. vitchla | 10 |

## la eveloet a cou IRy club o eRatio

| executive vice president | | dRoetS YEARS of SERvicE |
|---|---|---|
| Joseph J. putia | 15 |

| senior vice presidents | | dRoetS YEARS of SERvicE |
|---|---|---|
| robert h. mccarron | 16 | |
| david h. richey | 6 | |

## ubIIaRy a a    Illate o eRatio

| | | dRoetS YEARS of SERvicE |
|---|---|---|
| **eastern  tates engineering Inc.** | | ice  resident |
| **tbi  ortgage co  any** | christopher E. Stocke | 2 |
| **toll architecture Inc.** | donald L. Salmon | 9 |
| **toll broters Realty trust** | Jed Gibson | 15 |
| **toll landscae L.I.C.** | James m. Steuterman | 6 |
| **estinster  quarty coany** | mark culichia | 11 |
| **estinster title coany Inc.** | felicia ratka | 8 |
| | william I. unkel | 4 |

resident
resident
ice  resident
ice  resident
resident
resident
resident

*Employee listings are as of 11/1/08*

# CORPORATE OFFICERS

## BOARD OF DIRECTORS

**Robert I. Toll***
Chairman of the Board & Chief Executive Officer

**Bruce E. Toll**
Vice Chairman of the Board;
President - BET Investments;
an office and commercial real estate company

**Zvi Barzilay***
President and Chief Operating Officer

**Robert S. Blank**
Co-Chairman & Co-CEO - Whitney
Communications Company, and
Senior Partner - Whitcom Partners,
Investments

**Edward G. Boehne**
Retired President - Federal Reserve Bank
of Philadelphia

**Richard J. Braemer**
Senior Counsel - Ballard, Spahr, Andrews & Ingersoll,
LLP; Attorneys at Law

**Christine N. Garvey**
Retired Global Head of Corporate Real Estate
Services - Deutsche Bank AG

**Roger S. Hillas**
Retired Chairman - Mentor Savings Bank

**Carl B. Marbach**
President - Greater Marbach Airlines, Inc. and
Florida Professional Aviation, Inc.;
aviation services and consulting companies

**Stephen A. Novick**
Senior Advisor - The Andrea and Charles Bronfman
Philanthropies

**Joel H. Rassman***
Executive Vice President, Treasurer and
Chief Financial Officer

**Paul E. Shapiro**
Chairman - Q Capital Strategies, LLC.
a life settlement company

## EXECUTIVE VICE PRESIDENT (NOTES YEARS OF SERVICE)

Douglas C. Yearley, Jr.[17]

## SENIOR VICE PRESIDENTS (NOTES YEARS OF SERVICE)

Martin P. Connor[6] — Assistant Chief Financial Officer
Frederick N. Cooper[16] — Finance & Investor Relations
Joseph R. DeSanto[6] — Tax
Jonathan C. Downs[6] — Human Resources
Mark K. Kessler[9] — General Counsel &
Kira McCarron[21] — Chief Marketing Officer — Chief Compliance Officer

Werner Thiessen[11] — Acquisitions
John K. McDonald[3] — Deputy General Counsel
Kevin J. McMaster[6] — Controller
George W. Nelson[8] — Chief Information Officer
Joseph R. Sicree[19] — Chief Accounting Officer
Michael I. Snyder[7] — Secretary & Chief Planning Officer

## HOME BUILDING OPERATIONS (NOTES YEARS OF SERVICE)

**Regional Presidents**
Thomas A. Argyris, Jr.[23]
James W. Boyd[7]
Barry A. Depew[16]
William J. Gilligan[19]
Richard T. Hartman[26]
Robert Parahus[16]
Edward D. Weber[9]

**Group Presidents**
Keith L. Anderson[22]
Roger A. Brush[19]
Kevin D. Duermit[15]
John P. Elcano[10]
Christopher G. Gaffney[15]
John G. Mangano[17]
Gary M. Mayo[27]
Thomas J. Murray[8]
Ralph E. Reiner[8]
Douglas C. Shipe[5]

**Division Presidents**
Thomas J. Anhut[7]
Jeffrey A. Bartos[10]
Charles W. Bowie[8]
John D. Bunting[16]
Thomas G. Gestte[14]
Robert M. Hodak[26]
Gregory E. Kamedulski[7]
Richard C. McCormick[10]
Thomas R. Mulvey[10]
Chris Myers[15]
Richard M. Nelson[7]
Walt I. Nowak[6]
Robert G. Paul[3]
Charles B. Raddatz[2]
Walter R. Schwartz[8]
Kenneth S. Thirtyacre[10]
John F. Vitelli[15]

## LAND DEVELOPMENT AND COUNTRY CLUB OPERATIONS (NOTES YEARS OF SERVICE)

**Executive**
Vice President
Joseph J. Palka[6]

**Senior**
Vice Presidents
Robert N. McCarron[8]
David H. Richey[5]

## SUBSIDIARY AND AFFILIATE OPERATIONS (NOTES YEARS OF SERVICE)

| | | |
|---|---|---|
| Eastern States Engineering, Inc. | Christopher E. Stocke | Vice President |
| TBI Mortgage® Company | Donald L. Salmon | President |
| Toll Architecture, Inc. | Jed Gibson | President |
| Toll Brothers Realty Trust | James M. Steuterman | President |
| Toll Landscape, L.L.C. | Mark Culicha | Sr. Vice President |
| Westminster Security Company | Felicia Ratka | Vice President |
| Westminster Title Company, Inc. | William T. Unkel | President |

*Executive Officer of the Company
Director and employee listings are as of 1/20/09.

# CORPORATE DIRECTORS AND OFFICERS

## Board of Directors

**Robert I. Toll**[*]
Executive Chairman of the Board

**Douglas C. Yearley, Jr.**[*]
Chief Executive Officer

**Bruce E. Toll**
Vice Chairman of the Board
President - BET Investments,
an office and commercial real estate company

**Zvi Barzilay**[*]
President and Chief Operating Officer

**Robert S. Blank**
Co-Chairman & Co-CEO - Whitney
Communications Company, and
Senior Partner - Whitcom Partners,
investments

**Edward G. Boehne**
Retired President - Federal Reserve Bank
of Philadelphia

**Richard J. Braemer**
Senior Counsel - Ballard, Spahr, Andrews & Ingersoll,
LLP, Attorneys at Law

**Christine N. Garvey**
Retired Global Head of Corporate Real Estate
Services - Deutsche Bank AG

**Carl B. Marbach**
President - Greater Marbach Airlines, Inc., and
Florida Professional Aviation, Inc.,
aviation services and consulting companies

**Stephen A. Novick**
Senior Advisor - The Andrea and Charles Bronfman
Philanthropies

**Paul E. Shapiro**
Chairman - Q Capital Strategies, LLC,
a life settlement company

## Chief Financial Officer and Treasurer

Martin P. Connor[*] 2 (Denotes years of service)

## Senior Vice Presidents

Frederick N. Cooper 17    Finance, International Development
and Investor Relations

Joseph R. DeSantis 7    Tax

Jonathan C. Downs 16    Human Resources

John K. McDonald 8    General Counsel
and Chief Compliance Officer

Kevin J. McMaster 27    Controller

George W. Nelson 7    Chief Information Officer

Joseph R. Sicree 18    Chief Accounting Officer

Michael I. Snyder 30    Secretary and Chief Planning Officer

Kira Sterling 25    Chief Marketing Officer

Werner Thiessen 20    Acquisitions

## Home Building Operations

### Regional Presidents

James W. Boyd 17
Barry A. Depew 27
William J. Gilligan 16
Richard T. Hartman 24
Robert Parahus 24
Edward D. Weber 31

### Group Presidents

Keith L. Anderson 13
Thomas J. Antrim 16
Kevin H. Dacmbi 25
John P. Elcano 18
Christopher G. Gaffney 14
John G. Mangano 23
Gary M. Mayo 13
Thomas J. Murray 16
Ralph E. Reinert 18
Douglas C. Shipe 16

### Division Presidents

Charles W. Bowie 14
Thomas G. Gestie 21
Gregory F. Kamedulski 18
Thomas R. Mulvey 6
Chris Myers 16
Richard M. Nelson 12
Robert G. Pau 9
Charles B. Raskutz 15
Anthony J. Rocco 13

Robert A. Schooley 12
Walter R. Schwartz 8
Kenneth S. Thirtyacre 13
Daniel C. Zalinsky 17

## Gibraltar Capital and Asset Management, LLC

Roger A. Brush 47    President
Michael L. LaFia 11    Chief Financial Officer and Senior Vice President

## Country Club Operations

David H. Richey 8    President
Mitchell P. Laskowitz 6    Senior Vice President

## Land Development

Joseph P. Palka 17    Executive Vice President
Robert N. McCarron 18    Senior Vice President

## Subsidiary and Affiliate Operations

**Eastern States Engineering, Inc.**
Christopher E. Stocke 4    Vice President

**TBI Mortgage® Company**
Donald L. Salmon 11    President

**Toll Architecture, Inc.**
Jed Gibson 17    President

**Toll Brothers Realty Trust**
George P. Kruse 1    Managing Director

**Toll Landscape, L.L.C.**
George P. Kruse 1    Vice President

**Westminster Security Company**
Mark Gulicksha[?] 4    President

**Westminster Title Company, Inc.**
Felicia Ratka 10    President
William T. Unkel 8    President

[*] Executive Officer of the Company.

Director and employee listings are as of 11/15/10.

# Corporate Directors and Officers

## Board of Directors

**Robert I. Toll***
Executive Chairman of the Board

**Bruce E. Toll**
Vice Chairman of the Board
President – BET Investments,
an office and commercial real estate company

**Douglas C. Yearley, Jr.[21]**
Chief Executive Officer

**Robert S. Blank**
Co-Chairman & Co-CEO – Whitney Communications
Company, and Senior Partner – Whitcom Partners,
investments

**Edward G. Boehne**
Retired President – Federal Reserve Bank
of Philadelphia

**Richard J. Braemer**
Senior Counsel – Ballard, Spahr, Andrews & Ingersoll, LLP,
Attorneys at Law

**Christine N. Garvey**
Retired Global Head of Corporate Real Estate
Services – Deutsche Bank AG

**Carl B. Marbach**
President – Greater Marbach Airlines, Inc., and
Florida Professional Aviation, Inc.,
aviation services and consulting companies

**Stephen A. Novick**
Senior Advisor – The Andrea and Charles
Bronfman Philanthropies

**Paul E. Shapiro**
Chairman – Q Capital Strategies, LLC,
a life settlement company

## Chief Operating Officer and Executive Vice President

**Richard T. Hartman[32]**

### Senior Vice Presidents

**Frederick N. Cooper[18]**
Finance, International
Development and
Investor Relations

**Joseph R. DeSanto[8]**
Tax

**Jonathan C. Downs[19]**
Human Resources

**Daniel J. Kennedy[17]**
Internal Audit

**John K. McDonald[9]**
General Counsel and
Chief Compliance Officer

**Michael I. Snyder[31]**
Secretary and
Chief Planning Officer

**Kevin J. McMaster[28]**
Controller

## Chief Financial Officer and Treasurer

**Martin P. Connor[3]**

**George W. Nelson[8]**
Chief Information Officer

**Joseph R. Sicree[19]**
Chief Accounting Officer

**Gregg L. Ziegler[8]**
Treasury

**Kira Sterling[26]**
Chief Marketing Officer

**Werner Thiessen[21]**
Acquisitions

## Home Building Operations

### Regional Presidents
James W. Boyd (18)
Barry A. Depew (28)
William J. Gilligan (17)
John G. Mangano (24)
Robert Parahus (25)
Edward D. Weber (32)

### Group Presidents
Keith A. Anderson (14)
Thomas J. Anhut (17)
Kevin D. Duermit (24)
John P. Elcano (19)
Christopher G. Gaffney (15)
Gary M. Mayo (14)
Thomas R. Mulvey (7)
Thomas J. Murray (17)
Douglas C. Shipe (17)

### Division Presidents
Charles W. Bowie (15)
Charles T. Breder (11)
Eric H. Campbell (14)
Thomas G. Gestite (22)
Gregory E. Kamedulski (19)
Robert I. Kardos (13)
James A. McDade (7)
Richard M. Nelson (13)

### Division Presidents
Robert G. Paul (10)
Charles B. Raddatz (14)
Anthony J. Rocco (14)
Walter R. Schwarz (9)
Andrew L. Semon (9)
Kenneth S. Thirtyacre (14)
David H. Van Spreckelsen (8)
Daniel C. Zalinsky (18)

## Golf and Country Club Operations

**David H. Richey[9]**
President

**Mitchell P. Laskowitz[7]**
Senior Vice President

## Land Development Operations

**Joseph J. Palka[18]**
Executive Vice President

**Robert N. McCarron[19]**
Senior Vice President

## Subsidiary and Affiliate Operations

**Gibraltar Capital and Asset Management, LLC**
Roger A. Brush[18]
President

Michael L. LaPat[21]
Chief Financial Officer and
Senior Vice President

**ESE Consultants, Inc.**
Christopher E. Stocke[5]
President

**TBI Mortgage® Company**
Donald L. Salmon[12]
President

**Toll Architecture, Inc.**
Jed Gibson[18]
President

**Toll Integrated Systems**
Keith Fell[3]
Director of Manufacturing

**Toll Brothers Realty Trust**
Charles L. Elliott
Managing Director

**Toll Landscape, LLC[4]**
Mark Culchita[14]
President

**Westminster Security Company**
Felicia Ratka[11]
President

**Westminster Title Company, Inc.**
William T. Unkel[7]
President

*Executive Officer of the Company.
Director and employee listing as of 1/1/12.
( ) Years of service with Toll Brothers.

## Board of Directors

**Robert I. Toll**
*Executive Chairman of the Board*

**Bruce E. Toll**
*Vice Chairman of the Board
President — BET Investments,
an office and commercial real estate company*

**Douglas C. Yearley, Jr.** *(22)*
*Chief Executive Officer*

**Robert S. Blank**
*Co-Chairman & Co-CEO — Whitney Communications
Company, and
Senior Partner — Whitcom Partners,
Investments*

**Edward G. Boehne**
*Retired President — Federal Reserve Bank
of Philadelphia*

**Richard J. Braemer**
*Senior Counsel — Ballard, Spahr,
Andrews & Ingersoll, LLP, Attorneys at Law*

**Christine N. Garvey**
*Retired Global Head of Corporate Real Estate
Services — Deutsche Bank AG*

**Carl B. Marbach**
*President — Greater Marbach Airlines, Inc., and
Florida Professional Aviation, Inc.,
aviation services and consulting companies*

**Stephen A. Novick**
*Senior Advisor — The Andrea and Charles
Bronfman Philanthropies*

**Paul E. Shapiro**
*Chairman — Q Capital Strategies, LLC,
a life settlement company*

\*Executive Officer of the Company
Director and employee since ( ) dates
( ) Years of service with Toll Brothers.

## President and
## Chief Operating Officer

**Richard T. Hartman** *(33)*

## Senior Vice Presidents

**Frederick N. Cooper** *(19)*
*Finance, International Development
and Investor Relations*

**Joseph R. DeSanto** *(9)*
*General Counsel and
Chief Compliance Officer
Tax*

**Jonathan C. Downs** *(20)*
*Human Resources*

**Daniel J. Kennedy** *(18)*
*Internal Audit*

**John K. McDonald** *(10)*
*Chief Accounting Officer*

**Michael I. Snyder** *(32)*
*Secretary and*

**Kevin J. McMaster** *(29)*
*Controller*

### Home Building Operations

**Regional Presidents**

**James W. Boyd** *(19)*
**Barry A. Depew** *(29)*
**William J. Gilligan** *(18)*
**John G. Mangano** *(25)*
**Robert Parahus** *(26)*
**Edward D. Weber** *(33)*

**Group Presidents**

**Keith L. Anderson** *(15)*
**Kevin D. Duermit** *(25)*
**Charles T. Brecker** *(12)*
**John P. Elcano** *(20)*
**Christopher G. Gaffney** *(16)*
**Gregory E. Kamedulski** *(20)*
**Gary M. Mayo** *(15)*
**Thomas R. Mulvey** *(8)*
**Thomas J. Murray** *(18)*
**Douglas G. Shipe** *(18)*

**Division Presidents**

**Eric C. Anderson** *(16)*
**Charles W. Bowie** *(16)*
**Charles T. Brecker** *(12)*
**Eric H. Campbell** *(11)*
**Robert L. Flaherty** *(15)*
**Thomas G. Gestle** *(23)*
**Robert J. Kardos** *(14)*
**David C. Kelly** *(8)*
**James A. McDade** *(8)*

### Golf and Country Club Operations

**David H. Richey** *(10)*
*President*

**Mitchell P. Laskowitz** *(8)*
*Senior Vice President*

### Subsidiary and Affiliate Operations

### Gibraltar Capital and Asset Management, LLC

**Roger A. Brush** *(19)*
*President*

**ESE Consultants, Inc.**
**Christopher E. Stocke** *(6)*
*President*

**TBI Mortgage® Company**
**Donald L. Salmon** *(13)*
*President*

**Michael L. LaPat** *(13)*
*Chief Financial Officer and
Senior Vice President*

**Toll Architecture, Inc.**
**Jed Gibson** *(19)*
*President*

**Toll Brothers Realty Trust**
**Charles L. Elliott** *(1)*
*Managing Director*

## Chief Financial Officer
## and Treasurer

**Martin P. Connor\*** *(4)*

**George W. Nelson** *(9)*
*Chief Information Officer*

**Joseph R. Sicree** *(20)*
*Chief Accounting Officer*

**Werner Thiessen** *(22)*
*Acquisitions*

**Gregg L. Ziegler** *(10)*
*Treasury*

**Kira Sterling** *(27)*
*Chief Marketing Officer*

**Michael J. Grubb** *(32)*
*Chief Planning Officer*

### Land Development Operations

**Joseph J. Palka** *(19)*
*Executive Vice President*

**Robert N. McCarron** *(20)*
*Senior Vice President*

**Division Presidents**

**Karl Mistry** *(8)*
**Robert M. Nelson** *(14)*
**Robert G. Paul** *(11)*
**Anthony J. Rocco** *(15)*
**Andrew J. Semon** *(10)*
**Kenneth S. Thirgore** *(15)*
**David H. Von Spreckelsen** *(9)*
**Daniel C. Zalnsky** *(19)*

**Toll Integrated Systems**
**Keith Fell** *(4)*
*Director of Manufacturing*

**Westminster Security Company**
**Felicia Ratka** *(12)*
*President*

**Toll Landscape, LLC**
**Mark Curichia** *(15)*
*President*

**Westminster Title Company, Inc.**
**William T. Unkel** *(8)*
*President*

# CORPORATE DIRECTORS AND OFFICERS

## Board of Directors

**Robert I. Toll**[*]
Executive Chairman of the Board

**Bruce E. Toll**
Vice Chairman of the Board
Principal — BRT Investments,
an office and commercial real estate company

**Douglas C. Yearley, Jr.**[*] (23)
Chief Executive Officer

**Robert S. Blank**
Co-Chairman & Co-CEO — Whitney
Communications Company, and
Senior Partner — Whitcom Partners, investments

**Edward G. Boehne**
Retired President — Federal Reserve Bank
of Philadelphia

**Richard J. Braemer**
Senior Counsel — Ballard, Spahr,
Andrews & Ingersoll, LLP, Attorneys at Law

**Christine N. Garvey**
Retired Global Head of Corporate Real Estate
Services — Deutsche Bank AG

**Carl B. Marbach**
President — Greater Marbach Airlines, Inc., and
Florida Professional Aviation, Inc.,
aviation services and consulting companies

**Stephen A. Novick**
Senior Advisor — The Andrea and Charles
Bronfman Philanthropies

**Paul E. Shapiro**
Chairman — Q Capital Strategies, LLC,
a life settlement company

[*]Executive Officer of the Company.
Director and employee as long as of 1/17/14.
( ) Years of service with Toll Brothers.

## President and Chief Operating Officer

**Richard T. Hartman**[*]    (34)

## Senior Vice Presidents

**Frederick N. Cooper** (20)
Finance, International Development
and Investor Relations

**John K. McDonald** (11)
General Counsel and
Chief Compliance Officer

**Joseph R. DeSanto** (10)
Tax

**Jonathan C. Downs** (21)
Human Resources

### Home Building Operations

#### Regional Presidents
James W. Boyd (20)
Barry A. Depew (30)
William J. Gilligan (19)
John G. Morgan (26)
Robert Parahus (27)
Edward D. Weber (34)

**Thomas R. Mulvey** (9)
President

## Subsidiary and Affiliate Operations

### Toll Brothers Apartment Living®
**Charles L. Elliott** (2)
Managing Director

### Golf and Country Club Operations
**David H. Richey** (11)
President

### Land Development Operations
**Robert N. McCarron** (27)
Executive Vice President

**Joseph J. Palka** (20)
Executive Vice President

## Chief Financial Officer

**Martin P. Connor**[*]    (6)

### Senior Vice Presidents

**Daniel J. Kennedy** (19)
Internal Audit

**John K. McDonald** (11)
General Counsel and
Chief Compliance Officer

**Kevin J. McAllister** (30)
Controller

#### Group Presidents
Keith L. Anderson (16)
John P. Elcano (21)
Christopher G. Gaffney (17)
Gary M. Kanedaisiki (21)
Gary M. Mayo (16)
Thomas J. Murray (19)
Douglas C. Shipe (19)

### ESE Consultants, Inc.
**Mark S. Mayhew**
Managing Director

### TBI Mortgage® Company
**Donald L. Salmon** (14)
President

### Toll Architecture, Inc.
**Jed Gibson** (20)
President

**George W. Nelson** (10)
Chief Information Officer

**Joseph R. Sicree** (21)
Chief Accounting Officer

**Michael I. Snyder** (33)
Secretary and
Chief Planning Officer

**Kira Sterling** (28)
Chief Marketing Officer

**Werner Thiessen** (23)
Acquisitions

**Gregg L. Ziegler** (11)
Treasurer

#### Division Presidents
Eric C. Anderson (17)
David Bauer (9)
Charles W. Bowie (9)
Charles T. Broder (13)
Eric H. Campbell (2)
Robert L. Flaherty (16)
Thomas G. Gastle (24)
David E. Kelly (9)
Kenneth S. Thirtyacre (16)
John S. Lannamann (12)
Jake P. Lucero (13)
James A. McDade (9)

## Gibraltar Capital and Asset Management, LLC
**Michael L. LaPat** (14)
Chief Financial Officer

### Toll Integrated Systems
**Roger A. Brush** (20)
President

**Keith Fell** (5)
Director of Manufacturing

### Toll Landscape, LLC
**Mark Culchia** (16)
President

#### Division Presidents
Karl McIsty (9)
Richard M. Nelson (15)
Gregory S. Netro (13)
Gregory G. Paul (12)
Seth J. Ring (10)
Anthony J. Rocco (16)
Andrew J. Semon (11)
David H. Von Spreckelsen (10)
David R. Straub (10)
Daniel C. Zalinsky  (20)

### Westminster Security Company
**Felicia Ratka** (13)
President

### Westminster Title Company, Inc.
**William T. Unkel** (9)
President

# CORPORATE DIRECTORS AND OFFICERS

## Board of Directors

**Robert I. Toll***
Executive Chairman of the Board

**Bruce E. Toll**
Vice Chairman of the Board
Principal — BET Investments,
an office and commercial real estate company

**Douglas C. Yearley, Jr.* (24)**
Chief Executive Officer

**Robert S. Blank**
Co-Chairman & Co-CEO — Whitney
Communications Company, and
Senior Partner — Whitcom Partners, investments

**Edward G. Boehne**
Retired President — Federal Reserve Bank
of Philadelphia

**Richard J. Braemer**
Senior Counsel — Ballard Spahr
LLP, Attorneys at Law

**Christine N. Garvey**
Retired Global Head of Corporate Real Estate
Services — Deutsche Bank AG

**Carl B. Marbach**
President — Greater Marbach Airlines, Inc. and
Florida Professional Aviation, Inc.,
aviation services and consulting companies

**Stephen A. Novick**
Senior Advisor — The Andrea and Charles
Bronfman Philanthropies

**Paul E. Shapiro**
Chairman — Q Capital Strategies, LLC,
a life settlement company

## President and Chief Operating Officer

**Richard T. Hartman* (35)**

## Senior Vice Presidents

**Frederick N. Cooper (21)**
Finance, International Development
and Investor Relations

**Daniel J. Kennedy (20)**
Internal Audit

**John Critikos (1)**
Tax

**John K. McDonald (12)**
Chief Information Officer

**Joseph R. DeSanto (11)**

## Subsidiary and Affiliate Operations

### Toll Brothers Apartment Living

**Charles L. Elliott (3)**
Managing Director

### Golf and Country Club Operations

**David H. Richey (12)**
President

### Land Development Operations

**Robert N. McCarron (22)**
Executive Vice President

**Joseph J. Palka (21)**
Executive Vice President

## Chief Financial Officer

**Martin P. Connor* (6)**

### Kevin J. McMaster (31)**
Controller

**Joseph R. Sicree (22)**
Chief Accounting Officer

**Michael J. Snyder (34)**
Secretary and
Chief Compliance Officer

## Home Building Operations

### Regional Presidents

**James W. Boyd (21)**
**Barry A. Depew (31)**
**William J. Gilligan (20)**
**John G. Mangano (27)**
**Robert Parahus (28)**

### Toll Brothers City Living®

**Thomas R. Mulvey (10)**
President

### Group Presidents

**Keith L. Anderson (17)**
**Mark G. Bailey (14)**
**John P. Elcano (22)**
**Christopher G. Gaffney (18)**
**Gregory C. Kamedulski (22)**
**Gary M. Mayo (17)**
**Thomas J. Murray (20)**

### Jonathan C. Downs (22)**
Human Resources

**Kira Sterling (28)**
Chief Marketing Officer

**Werner Thiessen (24)**
Acquisitions

**Gregg L. Ziegler (12)**
Treasurer

### Division Presidents

**Eric C. Anderson (18)**
**David Bauer (10)**
**Charles T. Breder (14)**
**James Fitzpatrick (13)**
**Robert L. Flaherty (17)**
**David E. Kelly (10)**
**John S. Lammerman (10)**
**Joel F. Lucero (14)**
**Karl Mistry (10)**
**Kelley Molstad (3)**

**Division Presidents**

**Robert D. Moore (1)**
**Richard M. Nelson (16)**
**Gregory S. Nistro (14)**
**Mark J. Nosal (13)**
**Robert G. Paul (13)**
**Seth J. Ring (11)**
**Anthony J. Rocco (17)**
**Andrew J. Semon (12)**
**David R. Straub (14)**
**Kenneth S. Thirlyahre (17)**
**David H. Von Spreckelsen (11)**

### ESE Consultants, Inc.

**Mark S. Mayhew (1)**
Managing Director

### TBI Mortgage® Company

**Donald L. Salmon (15)**
President

### Toll Architecture, Inc.

**Jed Gibson (21)**
President

### Gibraltar Capital and Asset Management, LLC

**Roger A. Brush (21)**
President

### Toll Integrated Systems

**Keith Fell (1)**
Director of Manufacturing

### Toll Landscape, LLC

**Mark Culchia (17)**
President

### Westminster Security Company

**Michael L. LaPat (15)**
Chief Financial Officer

### Westminster Title Company, Inc.

**Felicia Ratka (14)**
President

**William T. Unkel (10)**
President

*Executive Officer of the Company.
Director and employee listing as of 1/1/15.
(  ) Years of service with Toll Brothers.

# CORPORATE DIRECTORS AND OFFICERS

## Board of Directors

**Robert I. Toll**
Executive Chairman of the Board

**Bruce E. Toll**
Vice Chairman of the Board
Principal — BET Investments,
an office and commercial real estate company

**Douglas C. Yearley, Jr.** (25)
Chief Executive Officer

**Robert S. Blank**
Co-Chairman & Co-CEO — Whitney
Communications Company, and
Senior Partner — Whitcom Partners

**Edward G. Boehne**
Retired President — Federal Reserve Bank
of Philadelphia

**Richard J. Braemer**
Senior Counsel — Ballard Spahr
LLP, Attorneys at Law

**Christine N. Garvey**
Retired Global Head of Corporate Real Estate
Services — Deutsche Bank AG

**Carl B. Marbach**
President — Greater Marbach Airlines, Inc.,
an aviation services and consulting company

**Stephen A. Novick**
Senior Advisor — The Andrea and Charles
Bronfman Philanthropies

**Paul E. Shapiro**
Chairman — Q Capital Holdings, LLC,
a life settlement company

*Executive Officer of the Company
Director and employee starting as of 11/16.
( ) Years of service with Toll Brothers.

## Senior Vice Presidents

### President and Chief Operating Officer

**Richard T. Hartman*** (36)

**Frederick N. Cooper** (22)
Finance, International Development
and Investor Relations

**John Critikos** (3)
Chief Information Officer

**Joseph R. DeSanto** (12)
Tax

### Regional Presidents

James W. Boyd (22)
Barry A. Depew (32)
Kevin D. Duermit (28)
William J. Gilligan (21)
John G. Marigano (28)
Robert Parahus (29)

## Subsidiary and Affiliate Operations

### Golf and Country Club Operations

**David H. Richey** (13)
President

### Land Development Operations

**Robert N. McCarron** (23)
Executive Vice President

**Joseph J. Palka** (22)
Executive Vice President

### Toll Brothers Campus Living

**Charles L. Elliott** (4)
Managing Director

### Toll Brothers Apartment Living

### Toll Brothers City Living®

**Thomas R. Mulvey** (11)
President

**Jonathan C. Downs** (23)
Human Resources

**Daniel J. Kennedy** (21)
Chief Audit Officer

**John K. McDonald** (13)
General Counsel and
Chief Compliance Officer

### Group Presidents

Keith L. Anderson (18)
John P. Elcano   (23)
Christopher G. Gaffney (19)
Gregory E. Kamedulski (23)
Gary M. Mayo (18)
Thomas J. Murray (21)

**ESE Consultants, Inc.**
**Mark S. Mayhew** (2)
Managing Director

**TBI Mortgage® Company**
**Donald L. Salmon** (16)
President

**Toll Architecture, Inc.**
**Jed Gibson** (22)
President

### Chief Financial Officer

**Martin P. Connor*** (7)

**Kevin J. McMaster** (32)
Controller

**Joseph R. Sicree** (23)
Chief Accounting Officer

**Michael I. Snyder** (35)
Secretary and
Chief Planning Officer

### Division Presidents

Eric C. Anderson (19)
Mark G. Bailey (15)
David Bauer (11)
Charles T. Breder (15)
James Fitzpatrick (14)
Robert L. Flaherty (18)
David E. Kelly (11)
John S. Lammerman (14)
Karl Mistry (11)
Kelley Moldstad (4)
Robert D. Moore (2)

**Toll Integrated Systems**
**Roger A. Brush** (22)
President

**Toll Landscape, LLC**
**Mark Culicha** (18)
President

### Gibraltar Capital and Asset Management, LLC

**Michael L. LaPat** (16)
Chief Financial Officer

**Keith Fell** (7)
Director of Manufacturing

**Kira Sterling** (30)
Chief Marketing Officer

**Werner Thiessen** (25)
Acquisitions

**Gregg L. Ziegler** (13)
Treasurer

### Division Presidents

Richard M. Nelson (17)
Gregory S. Netro (15)
Mark L. Nosall (14)
Robert G. Paul (14)
Seth L. Ring (12)
Anthony J. Rocco (18)
Andrew J. Semon (13)
David R. Straub (15)
Kenneth S. Thelyance (18)
John R. Tolbert (16)
David H. Von Spreckelsen (12)

**Westminster Security Company**
**Felicia Ratka** (15)
President

**Westminster Title Company, Inc.**
**William T. Unkel** (11)
President

## Home Building Operations

## Senior Vice Presidents

# CORPORATE DIRECTORS AND OFFICERS

## Board of Directors

**Robert I. Toll\***
Executive Chairman of the Board

**Douglas C. Yearley, Jr.\*** (28)
Chief Executive Officer

**Edward G. Boehne**
Retired President — Federal Reserve Bank
of Philadelphia

**Richard J. Braemer**
Senior Counsel — Ballard Spahr
LLP, Attorneys at Law

**Christine N. Garvey**
Retired Global Head of Corporate Real Estate
Services — Deutsche Bank AG

**Carl B. Marbach**
President — Greater Marbach Airlines, Inc.,
an aviation services and consulting company

**John A. McLean**
Chief Executive Officer and Distribution
Principal — Hartford Funds Distributors

**Stephen A. Novick**
Senior Advisor — Chiratrio Investments

**Paul E. Shapiro**
Chairman — Q Capital Holdings, LLC,
a life settlement company

*\*Executive Officer of the Company
Director and employee listing as of 1/1/17.
( ) Years of service with Toll Brothers.*

## Senior Vice Presidents

**Richard T. Hartman\*** (37)

**Frederick N. Cooper** (23)
Finance, International Development
and Investor Relations

**John Critikos** (3)
Chief Information Officer

**Joseph R. DeSanto** (13)
Tax

---

## Home Building Operations

### Regional Presidents

**James W. Boyd** (23)
**Barry A. Depew** (33)
**Kevin D. Duermit** (29)
**John G. Marigano** (29)
**Robert Parahas** (30)

**Toll Brothers City Living®**
**Thomas R. Mulvey** (12)
President

---

## Subsidiary and Affiliate Operations

**Toll Brothers Apartment Living**
**Toll Brothers Campus Living**
**Charles L. Elliott** (5)
SR VP/Managing Director

**Golf and Country Club Operations**
**Maurice Darbyshire** (11)
President

**Land Development Operations**
**Robert N. McCarron** (24)
Executive Vice President

**Joseph J. Palka** (23)
Executive Vice President

---

## President and Chief Operating Officer

**Richard T. Hartman\*** (37)

**Benjamin D. Jogodnik** (21)
Mergers & Acquisitions

**Daniel J. Kennedy** (22)
Chief Audit Officer

**John K. McDonald** (14)
General Counsel and
Chief Compliance Officer

### Group Presidents

**Keith L. Anderson** (19)
**Christopher G. Gaffney** (20)
**Gregory E. Kamedulski** (24)
**Gary M. Mayo** (19)
**Karl Mistry** (12)
**Robert D. Moore** (3)
**Thomas J. Murray** (22)
**Seth J. Ring** (13)

### Division Presidents

**Eric C. Anderson** (20)
**David S. Assid** (16)
**Mark G. Baxley** (16)
**David Bauer** (12)
**Charles T. Breder** (16)
**Thomas M. Coleman, Jr.**
**Andrew J. Rocco** (19)
**David R. Straub** (16)
**James Fitzpatrick** (15)
**Robert L. Flaherty** (19)
**David E. Kelly** (12)
**John S. Lamnamann** (15)
**Kelley Matsdal** (5)

**ESE Consultants, Inc.**
**Mark S. Mayhew** (3)
SR VP/Managing Director

**TBI Mortgage® Company**
**Donald L. Salmon** (17)
President

**TBI Smart Home Solutions**
**Felicia Ratka** (16)
President

---

## Chief Financial Officer

**Martin P. Connor\*** (8)

**Kevin J. McMaster** (33)
Controller

**Joseph R. Sicree** (24)
Chief Accounting Officer

**Michael I. Snyder** (36)
Secretary and
Chief Planning Officer

**Kira Sterling** (31)
Chief Marketing Officer

**Gregg L. Ziegler** (14)
Treasurer

### Division Presidents

**Richard M. Nelson** (18)
**Gregory S. Nebro** (16)
**Mark J. Nosal** (15)
**Robert G. Paul** (15)
**Anthony J. Rocco** (19)
**Andrew J. Semon** (14)
**David R. Straub** (16)
**Kenneth S. Thiriyatre** (19)
**John R. Tobbert** (17)
**David H. Von Spreckelsen** (13)

---

## Gibraltar Capital and Asset Management, LLC

**Roger A. Brush** (23)
President

**Michael L. LaPat** (17)
Chief Financial Officer

**Toll Architecture, Inc.**
**Jed Gibson** (23)
President

**Toll Integrated Systems**
**Keith Fell** (6)
Director of Manufacturing

**Toll Landscape, LLC**
**Mark Cuticha** (19)
President

**Westminster Title Company, Inc.**
**William T. Unkel** (12)
President

# STOCK PRICES

# RECONCILIATION OF NON-GAAP MEASURES

# STOCKHOLDER RETURN PERFORMANCE GRAPH



# DIVIDENDS

# CORPORATE DIRECTORS AND OFFICERS





# CORPORATE DIRECTORS AND OFFICERS

## Board of Directors

**Robert I. Toll**
Chairman Emeritus of the Board

**Douglas C. Yearley, Jr.*** (28)
Chairman of the Board and Chief Executive Officer

**Edward G. Boehne**
Retired President — Federal Reserve Bank of Philadelphia

**Richard J. Braemer**
Senior Counsel — Ballard Spahr LLP, Attorneys at Law

**Christine N. Garvey**
Retired Global Head of Corporate Real Estate Services — Deutsche Bank AG

**Carl B. Marbach**
President — Greater Marbach Airlines, Inc., an aviation services and consulting company

**John A. McLean**
Senior Managing Director — New York Life Investment Management

**Stephen A. Novick**
Senior Advisor — Chiastro Investments

**Wendell E. Pritchett**
Provost, Presidential Professor of Law and Education — University of Pennsylvania

**Paul E. Shapiro**
Chairman — Q Capital Holdings LLC, a life settlement company

## Senior Leadership

**President and Chief Operating Officer**
**Richard T. Hartman*** (39)

**Frederick N. Cooper** (28)
Finance, International Development and Investor Relations

**Benjamin D. Jogodnik** (23)
Mergers & Acquisitions

**John Critikos** (5)
Chief Information Officer

**Daniel J. Kennedy** (24)
Chief Audit Officer

**Joseph R. DeSanto** (15)
Tax

**John K. McDonald** (16)
General Counsel and Chief Compliance Officer

**Michael J. Grubb** (15)
Chief Accounting Officer

**John Jakomimich** (21)
Land Acquisitions

**Joy N. Roman** (2)
Chief Human Resources Officer

**Michael J. Snyder** (38)
Secretary and Chief Planning Officer

**Kevin J. McMaster** (35)
Controller

**Jennifer Olsen** (17)
National Sales

**Chief Financial Officer**
**Martin P. Connor*** (10)

**Kira Sterling** (33)
Chief Marketing Officer

**Gregg L. Ziegler** (16)
Treasurer

## Home Building Operations

**Regional Presidents**
James W. Boyd (25)
Barry A. Depew (35)
Kevin D. Duermit (31)
John G. Mangano (31)
Robert Parshas (32)

**Toll Brothers City Living®**
Thomas R. Mulvey (14)
President

**Group Presidents**
Christopher G. Gaffney (22)
Gary M. Mayo (21)
Karl Mistry (14)
Robert D. Moore (5)
Thomas J. Murray (24)
Gregory S. Nitro (16)
Seth J. Ring (15)

**Division Presidents**
Eric C. Anderson (24)
David S. Assad (18)
Mark G. Bailey (18)
David Blauer (14)
Craig Cherry (20)
Thomas M. Coleman, Jr. (2)
John Dean (7)
James Fitzpatrick (17)
Robert L. Flaherty (21)
Scott James (1)
David E. Kelly (14)

**Division Presidents**
John S. Lanmamann (17)
Steven R. Merten (14)
Kelley Mickfstal (7)
Richard H. Nelson (20)
Mark I. Nosal (17)
Robert G. Paul (17)
Jaime Pou (1)
Andrew J. Salmon (16)
John R. Tolbert (19)
David H. Von Spreckelsen (15)

## Subsidiary and Affiliate Operations

**Toll Brothers Apartment Living**
**Toll Brothers Campus Living®**
Charles L. Elliott (7)
President

**Toll Brothers Hospitality Group**
John J. DePaul (1)
President

**Golf and Country Club Operations**
Maurice Darbyshire (13)
President

**Land Development Operations**
Robert N. McCarron (26)
Executive Vice President

**ESE Consultants, Inc.**
Mark S. Mayhew (5)
SR. VP/Managing Director

**TBI Mortgage® Company**
Donald L. Salmon (19)
CEO
Steve Audet (2)
President

**TBI Smart Home Solutions**
Felicia Ratka (18)
President

**Toll Architecture, Inc.**
Jed Gibson (26)
President

**Toll Integrated Systems**
Keith Feil (10)
Director of Manufacturing

**Toll Landscape, LLC**
Mark Culicha (21)
President

**Westminster Title Company, Inc.**
William T. Unkel (14)
President

**Gibraltar Real Estate Capital**
Roger A. Brush (25)
President
Michael L. LaPat (19)
Chief Financial Officer

*Executive Officer of the Company
Director and employee listing as of 1/1/19
( ) Years of service with Toll Brothers.

# CORPORATE DIRECTORS AND OFFICERS

## Board of Directors

**Robert I. Toll**
*Chairman Emeritus of the Board*

**Douglas C. Yearley, Jr.** *(29)*
*Chairman of the Board*
*and Chief Executive Officer*

**Edward G. Boehne**
*Retired President — Federal Reserve Bank*
*of Philadelphia*

**Richard J. Braemer**
*Senior Counsel — Ballard Spahr*
*LLP, Attorneys at Law*

**Christine N. Garvey**
*Retired Global Head of Corporate Real Estate*
*Services — Deutsche Bank AG*

**Karen H. Grimes**
*Retired Partner, Senior Managing Director,*
*and Equity Portfolio Manager — Wellington*
*Management Company*

**Carl B. Marbach**
*Retired President — Greater Marbach Airlines,*
*Inc. an aviation services and consulting company*

**John A. McLean**
*Senior Managing Director — New York Life*
*Investment Management*

**Stephen A. Novick**
*Senior Advisor — Chastao Investments*

**Wendell E. Pritchett**
*Provost, Presidential Professor of Law and*
*Education — University of Pennsylvania*

**Paul E. Shapiro**
*Chairman — Q Capital Holdings LLC,*
*a life settlement company*

## Executive Vice Presidents and Co-Chief Operating Officers

**James W. Boyd*** *(26)*

### Senior Vice Presidents

**Todd Callahan** *(7)*
*Land Acquisitions*

**Frederick N. Cooper** *(26)*
*Finance, International Development*
*and Investor Relations*

**John Critikos** *(6)*
*Chief Information Officer*

**Joseph R. DeSanto** *(16)*
*Tax*

**David Ernst** *(7)*
*Land Acquisitions*

**Michael J. Grubb** *(16)*
*Chief Accounting Officer*

**Robert Parahus*** *(33)*

**John Jakominich** *(22)*
*Land Acquisitions*

**Benjamin D. Jogodnik** *(24)*
*Mergers & Acquisitions*

**Daniel J. Kennedy** *(26)*
*Chief Audit Officer*

### Chief Financial Officer

**Martin P. Connor*** *(11)*

**Wendy Marlett** *(1)*
*Chief Marketing Officer*

**Joy N. Roman** *(3)*
*Chief Human Resources Officer*

**Gregg L. Ziegler** *(17)*
*Treasurer*

## Subsidiary and Affiliate Operations

### Home Building Operations

**Regional Presidents**
Kevin D. Daemit *(32)*
John G. Mangano *(32)*
Karl Mistry *(15)*
Thomas J. Murray *(26)*
Seth J. Ring *(16)*

**Toll Brothers City Living®**
**Thomas R. Mulvey** *(15)*
*President*
**David H. Von Spreckelsen** *(16)*
*Group President*

**Group Presidents**
Eric C. Anderson *(23)*
Mark G. Bailey *(19)*
Robert L. Flaherty *(22)*
Christopher G. Gaffney *(23)*
Gary M. Mayo *(22)*
Kelley Modstad *(8)*
Robert D. Moore *(6)*
Gregory S. Netro *(19)*
Robert G. Paul *(18)*

**Division Presidents**
David S. Assid *(19)*
David Bauer *(15)*
Kevin Brown *(11)*
Craig Cherry *(21)*
Brandon Cooper *(16)*
John Dean *(8)*
Brock Fanning *(11)*
James Fitzpatrick *(18)*
Brad Hare *(16)*
Jaime Pou *(2)*
Christopher Ryan *(1)*
Andrew J. Semon *(17)*
Thomas Sharp *(1)*
Susan Stanley *(3)*

**Division Presidents**
John S. Lannamann *(18)*
Alexander Martin *(9)*
Steven R. Merten *(15)*
Richard M. Nelson *(21)*
Nicholas Norvilas *(8)*
Fredrick Pfister *(14)*
Jeremiah Portlock *(8)*

### Toll Brothers Apartment Living
**Toll Brothers Campus Living®**
**Charles L. Elliott** *(8)*
*President*

### Toll Brothers Hospitality Group
**John J. DePaul** *(2)*
*President*

### Land Development Operations
**Robert N. McCarron** *(27)*
*Executive Vice President*

### TBI Mortgage® Company
**Steve Audet** *(3)*
*President*

### TBI Smart Home Solutions
**Felicia Ratka** *(19)*
*President*

### ESE Consultants, Inc.
**Mark S. Mayhew** *(6)*
*SR. VP/Managing Director*

### Toll Integrated Systems
**Keith Fell** *(11)*
*Director of Manufacturing*

### Toll Architecture, Inc.
**Jed Gibson** *(26)*
*President*

### Toll Landscape, LLC
**Mark Culichia** *(22)*
*President*

### Gibraltar Real Estate Capital
**Roger A. Brush** *(26)*
*President*
**Michael L. LaPat** *(20)*
*Chief Financial Officer*

### Westminster Title Company, Inc.
**William T. Unkel** *(15)*
*President*

*Executive Officer of the Company*
*Director and employee listing as of 1/1/20.*
*( ) Years of service with Toll Brothers.*

TOLL BROTHERS 2019

77

# CORPORATE DIRECTORS AND OFFICERS

## Board of Directors

**Robert I. Toll**
Chairman Emeritus of the Board

**Douglas C. Yearley, Jr.* (30)**
Chairman of the Board, President,
& Chief Executive Officer

**Edward G. Boehne**
Lead Independent Director
Retired President — Federal Reserve
Bank of Philadelphia

**Richard J. Braemer**
Senior Counsel — Ballard Spahr LLP,
Attorneys at Law

**Stephen F. East**
Retired Managing Director —
Wells Fargo & Company

**Christine N. Garvey**
Retired Global Head of Corporate Real
Estate Services — Deutsche Bank AG

**Karen H. Grimes**
Retired Partner, Senior Managing Director,
and Equity Portfolio Manager — Wellington
Management Company

**Carl B. Marbach**
President and Chief Executive Officer of Shared
Charter, Inc., a peer-to-peer private airplane
chartering service provider

**John A. McLean**
Senior Managing Director — New York Life
Investment Management

**Stephen A. Novick**
Senior Advisor — Chisalto Investments

**Wendell E. Pritchett**
Provost, Presidential Professor of Law
& Education — University of Pennsylvania

**Paul E. Shapiro**
Chairman — Q Capital Holdings LLC,
a life settlement company

**Kevin J. Coen (2)**
Corporate Secretary

*Executive Officer of the Company
Director and employee listing as of 1/1/21.
( ) Years of service with Toll Brothers.

## Senior Vice Presidents

**Frederick N. Cooper (27)**
Finance, International Development
& Investor Relations

**John Critikos (7)**
Chief Information Officer

**Timothy J. Hoban (15)**
Chief Compliance Officer
General Counsel

**Joseph R. DeSanto (17)**
Tax

**David Ernst (8)**
Land Acquisitions

## Home Building Operations

### REGIONAL PRESIDENTS
Kevin D. Duermit (33)
Christopher G. Gaffney (24)
Karl Mistry (16)
Thomas J. Murray (26)
Seth J. Ring (17)

### TOLL BROTHERS CITY LIVING®
Thomas R. Mulvey (16)
President

David H. Von Spreckelsen (17)
Group President

### TOLL BROTHERS APARTMENT LIVING
Charles L. Elliott (9)
President

### TOLL BROTHERS CAMPUS LIVING®
President

### Executive Vice Presidents and Co-Chief Operating Officers

**James W. Boyd* (27)**

**Robert Parahus* (34)**

**Patrick Galligan (27)**
Homebuilding Controller

**Michael J. Grubb (17)**
Chief Accounting Officer

**Andrew C. Lawhorn (13)**
Acquisition Finance

**John Jakormiech (23)**
Land Acquisitions

### GROUP PRESIDENTS
Eric C. Anderson (24)
Mark G. Bailey (20)
Robert L. Flaherty (23)
Gary M. Mayo (23)
Kelley Mickstad (9)
Gregory S. Netro (20)
Robert G. Paul (19)

### DIVISION PRESIDENTS
David S. Assid (20)
David Bauer (16)
Todd Callahan (8)
Craig Cherry (22)
Brandon Cooper (17)
John Dean (9)
Brock Fanning (12)
James Fitzpatrick (19)
Brad Hare (17)
R. Matthew Jones (2)
David A. Kelly (16)

Alexander Martin (10)
Steven R. Merten (16)
Richard M. Nelson (8)
Nicholas Norvilas (9)
Donna M. O'Connell (5)
Fredrick Pfister (15)
Jeremiah Portlock (9)
Jaime Pou (3)
Christopher A. Rudd (1)
Christopher Ryan (2)
Andrew J. Semon (18)
Susan Stanley (4)
Eric E. White (1)

### Chief Financial Officer

**Martin P. Connor* (12)**

**Benjamin D. Jogodnik (25)**
Mergers & Acquisitions

**Daniel J. Kennedy (26)**
Chief Audit Officer

**Joy N. Roman (4)**
Chief Human Resources Officer

**Corey K. Tendler (3)**
Chief Diversity &
Engagement Officer

**Gregg L. Ziegler (18)**
Treasurer

**Wendy Marlett (2)**
Chief Marketing Officer

## Subsidiary and Affiliate Operations

### ESE CONSULTANTS, INC.
Eric A. Anderson (24)
President

### TBI MORTGAGE® COMPANY
Steve Audet (4)
President

### TBI SMART HOME SOLUTIONS
John J. DePaul (3)
President

### TOLL BROTHERS
HOSPITALITY GROUP
Felicia Ratka (20)
President

### LAND DEVELOPMENT OPERATIONS
Robert N. McCarron (28)
Executive Vice President

### TOLL ARCHITECTURE, INC.
Mark S. Mayhew (7)
SR. VP/Managing Director

### TOLL INTEGRATED SYSTEMS
Keith Fell (12)
Director of Manufacturing

### TOLL LANDSCAPE, LLC
Mark Culichia (23)
President

### WESTMINSTER TITLE COMPANY, INC.
Jed Gibson (27)
President

William T. Unkel (16)
President

### GIBRALTAR REAL ESTATE CAPITAL
Roger A. Brush (27)
President

Michael L. LaPat (21)
Chief Financial Officer

A3CE ;;;

;E7   (6;C75E CD7I75FE;G7          88;57CD365CA C3E7 9 G7C357

JYV W]]h   XeRS]V T]fUVd WcRe   heYcVdaVTe R]] aVcdddVcg XRdViVTfe gVWWTVcdRdWeYV UReXdc ,(
A$c'     eYV TRdW'Cc)8 jU'RdWETe SVc.,'--,%)7]] ViVTfe gV    WWTVcddVcgV Re eYV aWRdfRcUW:cVTe  cd)

| DR V | | 7XV | | Fde   d |
|---|---|---|---|---|
| :fX]Rd9)OVRc]Vj'c) | | 1, | | 9YR cR   WeYV 8 RcUR U9YVW;iVTfe gV EWWTVc |
| R VdM)8 jU | | 10 | | cVc;iVTfe gV LTV FcVdUV e R U9 (9YVWEaVcRXeEWWTVc |
| H SVce FRcRYfd | | 03 | | FcVdUV e R U9YVWEaVcXeEWWTVc |
| CRce F)9   c | | 02 | IV | cLTV FcVdUV e R U9YVW R T R] EWWTVc |

:fX]Rd9)OVRc]Vj'c)[   VUfd ,44RdRdddeR e eeYV 9YVW;iVTfe gV EWWTVcheYcVdadS] ejWc]R URTbfded]
  V YRdSVVR WWTVcdTV ,44/"Y]U   XeYV ade   WIV  cLTV FcVdUV e Wc R fRcj--fe ] DgV    SVc-0'eYV
ade    WHVX R] FcVdUV e Wc DgV SVc-0fe ] DgV    SVc-4'R UeV ade   W;iVTfe gV LTV FcVdUV e Wc
DgV   SVc-4fe ]   fV -,'hYV    YV hRdac eVUe  9YVW;iVTfe gV EWWTVc)EDgVSVc,'-,3YV hRdRaa   eVU
e eYV ade    W9YR cR WeYV 8 RcUR U9YVW;iVTfe gV EWWTVc)Cc)OVRc]VjhRdV]VTeVUR :cW Te,)

  R VdM)8 jU   e R]]j[   VUfd ,43.R UcV   R VUfe ] ,430'hYV   YV ]RfTYVUYdh   UVaV UV e UVgW]e
T   aV j'SVWcV cV[  XeYV 9 aR j ,44.e  dVcgV gRc fdade   d' T]fU XHVX  R] FcVdUV e Wc -0eYcfXY
ETeSVc.,'-,4)V hRdRaa    eVUeeYV ade   W;iVTfe gV LTV FcVdUV e R U9 (9YVWEaVcXeeWVcVcVWWVTe gV
DgV   SVc.,'-4'heYcVdadS] ejWceYV 9    aR jtdhVdeVccVX )Fc  ce YdRaa   e V e ;iVTfe gV LTV FcVdUV e
R U9 (9YVWEaReXEWWTVc'Cc)8 jUgVcdRheYV 9 aR jtdYV Sf]U    XaVcRe  d  9R] WcR'DVgRUR R UURY)
;WWVTe gV DgSVc,'--,'Cc)8 jUcVdXVUWc Ydc]V Rd;iVTfe gV LTV FcVdUV e R U9 (9YVWEaVcRe   XEWWTVcR U
h]] cVe cV Wc R]] ade   dheYeYV 9   aR j:VTV    SVc.,'--,)

H SVce FRcRYfd[VUfd  ,431R UdVcgVU gRc fdade    dheYfd'  T]fU XHVX  R] FcVdUV e Wc -1eYcfXY
ETe SVc.,'-,4):fc    XeYde  cV'VcdcRheYeVYV 9 aR jtdYV Sf]U    XaVcRe  d  dVcgV d  DVhVcdVj Sf]U
9    VTe Tfe'CRddVed'R UYR R V Ud)heY'R UYR RdY]V ejWcJ ]]  eVXcReVVUljdeVWeV 9 aR jtdSf]U    X
T   aV e   R fWRTefcXaVcXe gSe V g'SDg,V,'4'heYeVdadS] ejWceVYV 9    aR jtdVRdeVVccVX );WWVTe gV Dg'SVc,'--,'Cc)
FRcRYfdhRdac eVUe FcVdUV e R U9YVWEaVcXeEWWTVc)

CRce F)9    c[  VUfdRdLTV FcVdUV e R U7dddeR e 9YVWWR T R] EWWTV.VTi SVc.-3R UhRdaa    eVVUR   eVUR
IV  cLTV FcVdUV e :VTV    SVc.-4Cc)9     chRdRaa   eVUeYdTfccV ade   WIV  cLTV FcVdUV e R U9YVW
R T R] EWWTVW:VaeV SVc.,)c] fV -3e     :VTV    SVc.-3'Cc)9     chRdFcVdUV e eWcVRCTeT 7UgdcdBB9'
R WR TV R URTT fe XT   dfe XWc eYRe YV WfdUV]c ETe SVc.-1e    fV -3'Cc)9    chRd9YVW R T R] EWWT
EWWTVcVR U:cVUe FVcfce e dWcEtDV ]] FcaVce gV Vf WV UgY Vc]cVe R] cVR] VdeReV dWVhXcVY YV VY CU(7e]R e T
RcVR)Fcce ETeSVc.-1'YV daV e    gVc-jVRcd Re ;cde " OfXBBFRdR     7fUe R U7Ugdcj8fd     VddIVcgTVdVRefc'c
cVdadS]V WceYV cVR] VdReV acRTe TV Wc;cde " OfXBBYVV FY]RUV]aYRRcVea]RTV):fc XeYV aVcUVc, ,443e
-0'YV dVcgUVaUeVYV V J ]] 8ceYVcVd'T)RfUe V XRRX    V e)

JYV eYVc WcRe      cVbfcVUSjeVYdeV h]] SV    T]fUVU eYV q;]Ve     W:cVTecdr R Uq9 cacReV gVcR TVr
dVTe dWfcFciijeReVV      V e WceV --- 7fR] CVVVe    XWle T ']UVcd$eYVc q--- FciijeReVV V er%)

5[PQ [R7 TUO

MV YRgV RUaeVUR 9 UW;eYTdWceeVYVV FcT aR] ;iVTfe gV EWWTVcVR UIVc R T T R] EWWTVVcd$q9 U]W;eYTdr%eYRe
Raa] Vde fcac   T aR] ViVTfe gV gVWWTVc'ac aR] WR T R] WWTVc'ac aR] RTT fe XWWTVc'T ec]]V cV'R UaVcdd
aVcWc Xd   ]RcWffTe   dUVVdXReVUljfc8 RcUW:cVTe   cd)JYV 9 UW;eYTddRgR] ]RS]V fceVVe hVSdeV Re
hhh]e ]]SceVVcd)T UYcq     gVdecHV]Re do9 cacReV   gVc R TV)r WhV hVcV eR V UchR gV R jacgd    Wfc
9 UV W;eYTd'hV eVU Ue dRe dWjfcUdT]dfceV S] XRe dheYcUdaVaTe     eR jdfTYYhR gVccR    V UV Sjade   XdfTY
   WcRe      fceVVcVe hVSdeV dVe WceYRSgV WceVcRYSRe gV cReV VdqgR W     XR R   c 3(A)

;PQYURUOMU[[R6U QO [ MPRRUOQ

Efc9Vce WTReWV'WT cacRe      R U8j]RhdacgfUV Wc    UV   WTRe    WfcUcVVTe cdR UWWWTVc%cd)MV YRgV R]dV cVcVU
   e   UgUfR]    UV   WTReR RXcVVVV edheYYVYRTRYWfcUcVUecd)

# EXHIBIT 156

☐ 100% ☐          ☐  ☐  ☐  ☐                    Search the website  ☐

I need to...  ☐

**FOR ATTORNEYS FO R   TH E PU BL IC  CASES NEWS & ME DI A ABOUT**

Quick Links

☐ Back to Search

# Gary, Kenneth J.

**BROWSE  RULES**

Browse the Rules that govern attorneys.

**FILE A COMPLAINT**

File a complaint against an attorney.

**LO OK  UP  AN ATTORNEY**

View an attorney's contact information and disciplinary history.

**SEARCH OPINIONS**

Search Supreme Court and Disciplinary Board Opinions.

**R ECE NT  CAS ES**

Search Supreme Court and

## Public Information

**Pending Proceedings**          **History**

Disciplinary Board
Actions.

**Attorney ID:**          45967

**Current Status:**       Retired

**Date of Admission:**    5/27/1986

**Employer**              N/A

**Address:**              1245 STUART RDG
                          ALPHARETTA, GEORGIA
                          30022-6364

**Country:**              UNITED STATES

**Telephone:**            (404) 693-1066

**Fax:**                  N/A

**County:**               OUT OF STATE

**District:**             Out of State

**Professional Liability Insurance:**

I do not maintain professional liability insurance because I do not have private clients and have no possible exposure to malpractice actions (e.g. retired, full-time in-house counsel, prosecutor, full-time government counsel, etc.)



Pennsylvania Judicial Center
601 Commonwealth Ave, Suite 5600
P.O. Box 62625
Harrisburg, PA 17106-2625

Phone: 717.231.3380
Fax: 717.231.3381

**FOR ATTORNEYS**

Rules

Forms

Attorney Registration

Reinstatement

Pro Bono

Attorney Gateway

Update My Information

Successorship

Lawyer Well-Being

FAQs & Resources

**FOR THE PUBLIC**

File a Complaint

Look Up Attorney

FAQs & Resources

**CASES**

Pending Cases

Recent Cases

Conservatorships

Search Opinions

Case Research Collection

Upcoming Public Proceedings

**NEWS & MEDIA**

Newsletter Archives

**ABOUT**

Our Structure

The Discipline Process

The Reinstatement Process

Annual Report

Leadership

Contact Us

News le tt e r Sign-up

Please enter your email address to sign up for the newsletter

**Email**

**SIGN UP!**

Follow us on Facebook

Follow us on LinkedIn

Follow us on YouTube

Follow us on Bluesky

©2007-2025 The Disciplinary Board of the Supreme Court of Pennsylvania.

Disclaimer  |  ADA Policy

# EXHIBIT 157



**FinanceCharts**

☐ Screeners ☐    ☐ Discuss

## Toll Brothers (TOL) IPO Date

Stocks / TOL Stock / Summary / IPO Date ▾

🔍 Compare     Follow

| ☐ Overview | ☐ Discuss | ☐ Charts | ☐ Performance | ☐ News | ☐ Dividends | ☐ Financials | ☐ Metrics | ☐ DCF |

Toll Brothers (TOL)'s inital public offering was on Wednesday, July 16 1986.

### TOL Competitors' IPO Date

| NAME | MARKET CAP | CLOSE PRICE | PRICE CHANGE | IPO DATE |
|------|-----------|-------------|--------------|----------|
| + Toll Brothers (TOL) | $13.252B | $137.20 | +0.45% | Jul 16, 1986 |
| + DR Horton (DHI) | $49.974B | $167.45 | +0.71% | Jun 05, 1992 |
| + Lennar (LEN) | $32.452B | $125.69 | +1.98% | Jul 27, 1972 |
| + Pultegroup (PHM) | $25.843B | $130.90 | +0.65% | Jun 29, 1983 |
| + NVR (NVR) | $22.993B | $8,036.63 | +0.71% | Jun 25, 1987 |
| + TopBuild (BLD) | $11.073B | $393.46 | -1.17% | Jun 17, 2015 |
| + Installed Building.. (IBP) | $6.986B | $254.80 | -0.94% | Feb 13, 2014 |
| + Taylor Morrison Home (TMHC) | $6.571B | $66.40 | +0.64% | Apr 10, 2013 |
| + Meritage Homes (MTH) | $5.213B | $73.02 | +0.03% | Jul 21, 1988 |
| + Cavco Industries (CVCO) | $4.442B | $562.89 | -1.65% | Jun 20, 2003 |

Last Updated: Wednesday, September 24 2025

**FinanceCharts.com**

Your trusted source for comprehensive financial data, stock research, and market analysis. We're 100% FREE.

☐    ☐

**QUICK LINKS**

Login

Discuss

Stock Screeners

Definitions

**COMPANY**

About Us

Contact

Help Center

**JOIN OUR COMMUNITY**

Connect with thousands of investors. Share insights, discuss strategies, and learn from the community.

☐    Join the Discussion

© 2025 FinanceCharts.com. All rights reserved.

Terms of Service    Privacy Policy    Do Not Sell My Personal Information

**IMPORTANT DISCLAIMERS**

FinanceCharts.com is not operated by a broker, a dealer, or a registered investment adviser. Under no circumstances does any information posted on FinanceCharts.com represent a recommendation to buy or sell a security. The information on this site is not intended to be, nor does it constitute, investment advice or recommendations. In no event shall FinanceCharts.com be liable to anyone using this site for any damages of any kind arising out of the use of any content or other material published or available on FinanceCharts.com, or relating to the use of, or inability to use, FinanceCharts.com or any content, including, without limitation, any investment losses, lost profits, lost opportunity, special, incidental, indirect, consequential or punitive damages. Past performance is a poor indicator of future performance. The information on this site is in no way guaranteed for completeness, accuracy, timeliness or in any other way. Company logos are owned by their respective copyright holders and are displayed for editorial purposes only. Prices are not displayed in real time.

# EXHIBIT 158

   Home   My Network   Jobs   Messaging   Notifications   Me ▾  For Business ▾  Try Premium for $0



## Ken Gary

General Counsel

University of Pennsylvania Carey Law School

Alpharetta, Georgia, United States · Contact info

201 connections

Message

## Activity

202 followers

Ken hasn't posted yet

Recent posts Ken shares will be displayed here.

Show all activity →

## Experience

General Counsel
Pure Med Spa
2008 - 2009 · 1 yr

 Executive VP and General Counsel
Beazer Homes
2005 - 2007 · 2 yrs

 Senior VP and General Counsel
Toll Brothers,Inc.
Mar 1990 - Mar 2005 · 15 yrs 1 mo

## Education

 University of Pennsylvania Carey Law School
J.D., Law
1980 - 1983

 Brown University
B.A., Political Science
1976 - 1980



**Interests**

Companies    Schools

Brown University
211,932 followers

University of Pennsylvania Carey Law School
37,180 followers

Promoted ···

cTrader by Spotware

Henry, keep up with the latest insights from cTrader by Spotware

Learn more about cTrader Premium Trading Platform

More profiles for you

South Cobb Arts Alliance, Inc.   · 3rd+
--

Marla Hoppenfeld   · 3rd+
Business Owner @ Hoppenfeld Consulting | Consultant, Non-Profit

Angie Kim   · 3rd+
President & CEO at Center for Cultural Innovation | Leader in Disruptive & Equity Focused Funding   …

Kira Sterling   · 3rd+
Retired CMO/ Senior Vice President at Toll Brothers

Michael LaPat   · 3rd+
Managing Director

Show all



Explore Premium profiles

Crystal Hansen · 3rd+
Event Specialist at WeDo Designs

Manjot Dabb · 3rd+
--

Shauna P. · 3rd+
Bartender at Fraternal Order of Eagles with psychology background.

Brit Prescott · 3rd+
Independent Distributor



People you may know

David Medrano
Plumber at Ocean Park Mechanical Inc

Raul Repreza
Industrial, Commercial, Residential Service Plumber.

Joshua Kuskie
--Journeyman Plumber
Project manager …

Francisco Acevedo
Experienced and versatile plumber

William Cortes
Technical Support Specialist
Plumber…

Show all



# EXHIBIT 159

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C.  20549

---

# FORM 8-K

### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d) OF
### THE SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported): **March 14, 2005**

# BEAZER HOMES USA, INC.
### (Exact name of registrant as specified in its charter)

| | | |
|---|---|---|
| **DELAWARE** | **001-12822** | **54-2086934** |
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**1000 Abernathy Road, Suite 1200**
**Atlanta Georgia 30328**
(Address of Principal
Executive Offices)

**(770) 829-3700**
(Registrant's telephone number, including area code)

**None**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligations of the registrant under any of the following provisions:

o  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

o  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

o  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

o  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

---

Item 1.01  Entry into a Material Definitive Agreement.

On March 14, 2005, Beazer Homes USA, Inc. (the "Company") entered into an employment agreement with Kenneth J. Gary (the "Executive") in connection with the Executive's appointment as Executive Vice President, General Counsel and Corporate Secretary.

The employment agreement provides for the Executive to initially receive an annual salary of $375,000 (subject to review each year for increase).  The Executive is eligible to participate in the Company's bonus and stock incentive plans and all welfare benefit, incentive, savings and retirement plans.  The initial term of the agreement is two (2) years, with a provision for extension for successive one year periods unless written notice is provided by Mr. Gary or the Company stating a desire not to extend the agreement sixty (60) days prior to the scheduled expiration.

This summary of the material terms of the employment agreement described above is qualified by reference to the provisions of the agreement, which is attached as Exhibit 10.01.

Additionally, on March 14, 2005, Beazer Homes USA, Inc. (the "Company") entered into a supplemental employment agreement (the "Supplemental Employment Agreement") with Mr. Gary.

The Supplemental Employment Agreement supersedes the terms and provisions of the Employment Agreement in the event of a Change of Control (as defined in the Supplemental Employment Agreement) of the Company.  The Supplemental Employment Agreement automatically renews every year for a

successive two-year period unless earlier terminated by the Company and the Executive or otherwise terminated in accordance with the respective terms of the Supplemental Employment Agreement.

Pursuant to the Supplemental Employment Agreement, the Company will continue to employ the Executive for a period of two years from the date the Change of Control occurs (the "Effective Date").  During this two-year period, the Executive will be entitled to receive an amount approximating his most recent annual base salary ("Annual Base Salary").  In addition, the Executive shall be awarded an annual bonus at least equal to the arithmetic average of the Executive's bonuses for the last three years ("Annual Bonus").

Subsequent to a Change of Control, if the Executive's employment is terminated by the Company for cause, the Executive will be entitled to receive an amount equal to the portion of his Annual Base Salary accrued through the effective date of termination and any compensation previously deferred and all other payments to which the Executive may be entitled under his Supplemental Employment Agreement.

Subsequent to a Change of Control, if the Executive's employment is terminated by Beazer Homes as a result of the Executive's death or disability, or by the Executive for a reason other than a Good Reason (as defined in the Supplemental Employment Agreement), the Executive will be entitled to receive an amount equal to the portion of his Annual Base Salary and Annual Bonus accrued through the effective date of termination and any compensation previously

---

2

---

deferred (the "Accrued Obligations") and all other amounts to which the Executive may be entitled under his Supplemental Employment Agreement.

Subsequent to a Change of Control, if the Executive's employment is terminated by the Company for any reason other than for cause or as a result of the Executive's death or disability, or by the Executive for Good Reason, the Executive shall be entitled to receive an amount equal to the sum of (i) the Accrued Obligations; (ii) the product of (A) a multiple of 2.0 and (B) the sum of his Annual Base Salary and Average Annual Bonus; and (iii) all other amounts to which the Executive may be entitled under his Supplemental Employment Agreement.  In addition, the Company must provide the Executive and his family certain benefits for a period of two years following the effective date of termination.

This summary of the material terms of the Supplemental Employment Agreement is qualified by reference to the provisions of the agreement, which is attached as Exhibit 10.02.

Item 5.02 Departure of Directors or Principal Officers; Election of Directors; Appointment of Principal Officers

On March 14, 2005, Kenneth J. Gary, age 46, was appointed Executive Vice President, General Counsel and Corporate Secretary.

Mr. Gary joined Beazer Homes USA, Inc. from Toll Brothers, Inc. where he most recently served as Senior Vice President and General Counsel as well as heading that company's mortgage and title insurance subsidiaries.  Prior to joining Toll Brothers as its General Counsel in 1990, Mr. Gary served as corporate counsel to Bell Atlantic Properties, the real estate subsidiary of Bell Atlantic Corporation and practiced real estate and corporate law with two major law firms for several years.  He is a graduate of University of Pennsylvania Law School and Brown University.

Item 9.01 Financial Statements and Exhibits.

(c)  Exhibits

10.01        Agreement by and between Beazer Homes USA, Inc. and Kenneth J. Gary dated as of March 14, 2005
10.02        Supplemental Employment Agreement by and between Beazer Homes USA, Inc. and Kenneth J. Gary dated as of March 14, 2005

---

3

---

SIGNATURES


        Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.


                        BEAZER HOMES USA, INC.


Date: March 18, 2005                        By:   /s/ Ian McCarthy
                                            Ian McCarthy
                                            President and Chief Executive Officer

---

4

Exhibit 10.1

<u>EMPLOYMENT AGREEMENT</u>

THIS EMPLOYMENT AGREEMENT (this "Agreement") is made effective as of the 14th day of March, 2005 (the "Effective Date") by and between BEAZER HOMES USA, INC., a Delaware corporation (the "Company"), and Kenneth J. Gary, an individual resident of the State of Georgia ("Executive").

WITNESSETH:

WHEREAS, the Company wishes to employ the Executive, and the Executive wishes to accept employment with the Company, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, the Company and Executive hereby agree as follows:

1.    **Employment and Duties**.

(a)    The Company hereby agrees to employ Executive for the Term (as hereinafter defined) as its Executive Vice President, General Counsel and Corporate Secretary. If requested by the Board of Directors of the Company (the "Board"), Executive shall also serve on the Board without additional compensation.  Executive shall also serve, if requested by the Board, as an executive officer and/or director of any subsidiaries and/or affiliated companies and shall comply with the policy of the Compensation Committee of the Board (the "Compensation Committee") with regard to retention or forfeiture of any director's fees. As used in this Agreement, the term "affiliated companies" shall include any company controlled by, controlling or under common control with the Company.

(b)    The Executive shall have such management and oversight responsibilities and authority as are necessary to efficiently administer the affairs of the Company and as are customary of an Executive Vice President, General Counsel and Corporate Secretary.  All powers herein granted to the Executive are subject to supervisory approval of the Board and of the President and Chief Executive Officer of the Company (the "CEO"), and the Executive may be given such further reasonably related supervisory duties, powers and prerogatives as may be delegated to him from time to time by said Board and/or the CEO.  The Executive shall report exclusively to the CEO and the Board and further shall render such advice to the CEO and Board as said CEO and/or Board may from time to time request.

(c)    During the Term, and excluding any periods of vacation and sick leave to which the Executive is entitled, Executive shall devote substantially all of his business time and efforts to the business and affairs of the Company and, to the extent necessary to discharge the responsibilities assigned to the Executive hereunder, use the Executive's reasonable best efforts to perform faithfully such responsibilities. In performing such duties hereunder, Executive shall comply with the policies and procedures as adopted from time to time by the Board, shall give the Company the benefit of his special knowledge, skills, contacts and business experience, shall perform his duties and carry out his responsibilities hereunder in a diligent manner.

(d)    During the Employment Term, it shall not be a violation of this Agreement for the Executive to (i) with the prior approval of the Board in each case, serve on corporate, civic or charitable boards or committees, (ii) with the prior approval of the Board in each case, deliver lectures, fulfill speaking engagements or teach at educational institutions, and (iii) manage personal investments, so long as such activities do not significantly interfere or constitute a conflict of interest with the performance of the Executive's responsibilities as an employee of the Company in accordance with this Agreement.

(e)    The principal location for performance of Executive's services hereunder shall be at the offices of Beazer Homes USA, Inc. in Atlanta, Georgia, subject to reasonable travel

1

requirements during the course of such performance. Executive shall not be required, without his consent, to regularly report to any office of the Company which is located more than thirty-five (35) miles from the Company's current office location, provided Executive will be expected to travel to the extent reasonably necessary to fulfill his responsibilities.

2.    **Employment Term.**    The term of Executive's employment hereunder (the "Term") shall commence effective as of the date hereof and shall end on March 13, 2007, unless sooner terminated as provided herein; provided, however; that the Term shall automatically be extended for successive one year periods unless: (i) this Agreement is terminated as otherwise provided herein; or (ii) Executive or the Company provides written notice to the other of such party's desire not to extend the Term at least sixty (60) days prior to the scheduled expiration of the Term as then in effect.

3.    **Compensation and Benefits**

(a)    **Base Salary**.  During the Term, the Executive shall receive an annual base salary ("Annual Base Salary") in the amount of $375,000, payable in accordance with the Company's normal payroll practices (but not less frequently than monthly). During the Term, the Annual Base Salary shall be reviewed by the Compensation Committee (for purposes of increase only) at least annually. Any increase in Annual Base Salary shall not serve to limit or reduce any other obligation to the Executive under this Agreement. Annual Base Salary shall not be reduced after any such increase and the term Annual Base Salary as utilized in this Agreement shall refer to Annual Base Salary as so increased. Notwithstanding anything contained herein to the contrary, in the event that the Company shall implement a Company-wide reduction in executive base compensation, then, solely for such purpose and only during the continuation of such Company-wide reduction, the Company shall have the right to reduce the Annual Base Salary then payable hereunder in a manner that is consistent with said Company-wide reduction.

(b)    **Bonuses; Stock Incentive Plans**. Executive will be eligible to and shall participate in the Company's bonus and stock incentive plans at the discretion of the Compensation Committee of the Board. The amount and terms of, and the targets, conditions and restrictions applicable to each bonus or other incentive award shall be subject to the provisions of any such plan and of the applicable award letter duly executed and delivered by the Company.

(c)    **Incentive, Savings and Retirement Plans**. During the Term, the Executive shall be entitled to participate in all incentive, savings and retirement plans, practices, policies and programs applicable generally to other most senior executives of the Company and its affiliated companies.

(d)    **Welfare Benefit Plans**. During the Term, the Executive and/or the Executive's family, as the case may be, shall be eligible for participation in and shall receive all benefits under welfare benefit plans, practices, policies and programs provided by the Company and its affiliated companies (including, without limitation, medical, prescription, dental, disability, employee life, group life, accidental death and travel accident insurance plans and programs) to the extent applicable generally to other most senior executives of the Company and its affiliated companies.

(e)    **Expenses**. The Company will pay or reimburse Executive for all reasonable and necessary out-of-pocket expenses incurred by him in the performance of his duties under this Agreement. Executive shall keep detailed and accurate records of expenses incurred in connection with the performance of his duties hereunder and reimbursement therefore shall be in accordance with policies and procedures to be established from time to time by the Board.

(f)    **Office and Support Staff**.  During the Term, the Executive shall be entitled to an office or offices of a size and with furnishings and other appointments, and to secretarial and other assistance, consistent with the Executive's position and title.

(g)    **Vacation**.  During the Term, Executive shall be entitled to twenty (20) working days of compensated vacation in each fiscal year, to be taken at times which do not unreasonably interfere with the performance of Executive's duties hereunder. Any unused vacation time from any fiscal year shall be subject to accumulation or forfeiture in accordance with Company policy as in effect from time to time.

4.    **Termination of Employment**.

(a)    **Death or Disability**. The Executive's employment shall terminate automatically upon the Executive's death during the Term. If the Disability of the Executive occurs during the Term (pursuant to the definition of Disability set forth below), the Company may give to the Executive written notice in accordance with Section 10(c) of this Agreement of its intention to terminate the Executive's employment. In such event, the Executive's employment with the Company shall terminate effective on the 30th day after receipt of such notice by the Executive (the "Disability Effective Date"), provided that, within the 30 days after such receipt, the Executive shall not have returned to full-time performance of the Executive's duties. For purposes of this Agreement, "Disability" shall mean the absence of the Executive from the Executive's duties with the Company on a full-time basis for 120 consecutive business days as a result of incapacity due to mental or physical illness which is determined to be total and permanent by a physician selected by the Company or its insurers and acceptable to the Executive or the Executive's legal representative.

(b)    **Cause**. The Company may terminate the Executive's employment for Cause. For purposes of this Agreement, "Cause" shall mean:

(i)    any act or failure to act by Executive done with the intent to harm in any material respect the financial interests or reputation of the Company or any affiliated companies;

(ii)    Executive being convicted of (or entering a plea of guilty or nolo contendere to) a felony (other than a felony involving a motor vehicle);

(iii)    Executive's dishonesty, misappropriation or fraud with regard to the Company or any affiliated companies (other than good faith expense account disputes);

(iv)    a grossly negligent act or failure to act by Executive which has a material adverse affect on the Company or any affiliated companies;

(v)    the material breach by Executive of his agreements or obligations under this Agreement which has a material adverse effect on the Company, which breach, if curable, is not cured by Executive within fifteen (15) days after written notice from the Company which specifically identifies the material breach which the Company believes that Executive has committed; or

(vi)    the continued refusal to follow the directives of the CEO or the Board or their designees which are consistent with Executive's duties and responsibilities identified in Section 1 hereof; provided that the foregoing refusal shall not be "cause" if Executive in good faith believes that such direction is illegal, unethical or immoral and promptly so notifies the CEO or Board, as the case may be, in writing.

(c)    **Notice of Termination**.  Any termination by the Company for Cause shall be communicated by Notice of Termination to the Executive given in accordance with Section 10(c)

of this Agreement. For purposes of this Agreement, a "Notice of Termination" means a written notice which (i) indicates the specific termination provision in this Agreement relied upon, (ii) to the extent applicable, sets forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of the Executive's employment under the provision so indicated and (iii) if the Date of Termination (as defined below) is other than the date of receipt of such notice, specifies the termination date (which date shall be not more than thirty days after the giving of such notice). The failure by the Company to set forth in the Notice of Termination any fact or circumstance which contributes to a showing of Cause shall not waive any right of the Company hereunder or preclude the Company from asserting such fact or circumstance in enforcing the Company's rights hereunder.

(d)    **Date of Termination**. "Date of Termination" means (i) if the Executive's employment is terminated by the Company for Cause, the date of receipt of the Notice of Termination or, subject to applicable cure periods, any later date specified therein, as the case may be, (ii) if the Executive's employment is terminated by the Company other than for Cause or Disability, the Date of Termination shall be the date on which the Company notifies the Executive of such termination and (iii) if the Executive's employment is terminated by reason of death or Disability, the Date of Termination shall be the date of death of the Executive or the Disability Effective Date, as the case may be.

6.    **Obligations of the Company upon Termination**.

(a)      **Other Than for Cause**. If, during the Term, the Company shall terminate the Executive's employment other than for Cause:

(i)      the Company shall pay to the Executive in a lump sum in cash within 30 days after the Date of Termination the aggregate of the following amounts: (1) the Executive's Annual Base Salary through the Date of Termination to the extent not theretofore paid, (2) any accrued but unpaid annual bonus ("Annual Bonus") respecting any completed fiscal year ending prior to the Date of Termination, (3) the product of (x) the Average Annual Bonus (hereinafter defined) and (y) a fraction, the numerator of which is the number of days in the current fiscal year through the Date of Termination, and the denominator of which is 365 and (4) any compensation previously deferred by the Executive (together with any accrued interest or earnings thereon) and any accrued vacation pay, in each case to the extent not theretofore paid (the sum of the amounts described in clauses (1), (2), (3) and (4) shall be hereinafter referred to as the "Accrued Obligations"). The timing of payment by the Company of any deferred compensation shall remain subject to any payment election previously made by the Executive.  The term "Average Annual Bonus" shall mean the arithmetic average of the Executive's bonuses (whether paid or deferred) under the Company's annual incentive plans during the last three full fiscal years prior to the Date of Termination or for such lesser period as the Executive has been employed by the Company (annualized in the event that the Executive was not employed by the Company for the whole of any such fiscal year).  Without limiting the generality of the foregoing definition, the "Average Annual Bonus" shall include the following components, if any, pursuant to the Company's EVCIP Rules (or any successor incentive plan, for so long as any of same shall exist):

(a)   Cash payouts from VC and IVC awards and the "Bank" payout, subject to the Payout Cap, all at full face value;

(b)   Any excess in the Bank discounted at 75% of face value (which shall, for purposes hereof, be deemed to be fully vested);

4

(c)   10% of the Bank contributed to the Deferred Compensation Plan, at full face value (which shall, for purposes hereof, be deemed to be fully vested); and

(d)   Any deferred bonus under the EVCIP which is invested in stock under the Company's Corporate Management Stock Purchase Program, at full face value of said bonus (which shall, for purposes hereof, be deemed to be fully vested);

(i)      so long as the Executive is and remains in compliance in all material respects with his obligations under Section 7 below, the Company shall pay to the Executive an amount equal to the sum of (1) Executive's Annual Base Salary (at the rate in effect on the Date of Termination), and (2) the Average Annual Bonus for a period of two years from the Date of Termination, (the "Severance Period"), at the same time that payments of Annual Base Salary would otherwise have become due and payable during said period in the absence of such termination;

(iii)     so long as the Executive is and remains in compliance in all material respects with his obligations under Section 7 below, during the Severance Period, or such longer period as may be provided by the terms of the appropriate plan, program, practice or policy, the Company shall continue benefits to the Executive and/or the Executive's family at least equal to those which would have been provided to them in accordance with the plans, programs, practices and policies described in Section 3(d) of this Agreement if the Executive's employment had not been terminated, provided, however, that if the Executive becomes reemployed with another employer and receives medical or other welfare benefits under another employer provided plan, the medical and other welfare benefits described herein shall cease; and

(iv)     to the extent not theretofore paid or provided, the Company shall timely pay or provide to the Executive any other amounts or benefits required to be paid or provided or which the Executive is eligible to receive under any plan, program, policy or practice or contract or agreement of the Company and its affiliated companies (such other amounts and benefits shall be hereinafter referred to as the "Other Benefits").

(b)      **Death**. If the Executive's employment is terminated by reason of the Executive's death, this Agreement shall terminate without obligations to the Executive's legal representatives under this Agreement, other than for payment of Accrued Obligations and the timely payment or provision of Other Benefits. Accrued Obligations shall be paid to the Executive's estate or beneficiary, as applicable, in a lump sum in cash within 30 days of the Date of Termination.

(c)      **Disability**. If the Executive's employment is terminated by reason of the Executive's Disability, this Agreement shall terminate without further obligations to the Executive, other than for payment of Accrued Obligations and the timely payment or provision of Other Benefits. Accrued Obligations shall be paid to the Executive or the Executive's legal representative in a lump sum in cash within 30 days of the Date of Termination.

(d)      **Cause**. If the Executive's employment shall be terminated for Cause, this Agreement shall terminate without further obligations to the Executive other than the obligation to pay to the Executive (x) his Annual Base Salary through the Date of Termination, (y) the amount of any compensation previously deferred by the Executive, and (z) Other Benefits, in each case to the extent theretofore unpaid. If the Executive voluntarily terminates employment during the

5

Term, this Agreement shall terminate without further obligations to the Executive, other than for Accrued Obligations and the timely payment or provision of Other Benefits. In such case, all Accrued Obligations shall be paid to the Executive in a lump sum in cash within 30 days of the Date of Termination.

(e)      **Election Not to Extend**.  In the event that the Company elects, pursuant to Section 2 above, not to extend the Term, then, such election shall be treated for all purposes hereof the same as the termination by the Company of Executive's employment for other than Cause, and, in such case, commencing upon the date of the expiration of the Term, Executive shall be entitled to receive from the Company the same payments and benefits as Executive would be entitled to receive pursuant to Section 6(a) above; provided, however, and notwithstanding anything contained in Section 6(a) above to

the contrary, in connection with an election by the Company not to renew the Term, the applicable "Severance Period" shall not extend beyond the date that the Executive reaches the age of sixty-five (65).

7.      **Employment Covenants**.

(a)      **Covenant Not to Compete**. Executive recognizes and acknowledges that the Company is placing its confidence and trust in Executive. Executive, therefore, covenants and agrees that during the Applicable Non-Compete Period (as defined below) Executive shall not, either directly or indirectly, without the prior written consent of the Board (which may be withheld in the sole and absolute discretion of the Board):

(i)      Engage in or carry on any business or in any way become associated with any business in the Restricted Area (as hereinafter defined) which is similar to or is in competition with the Business of the Company (as hereinafter defined). As used in this Section 7(a), the term (1) "Business of the Company" shall mean and include all business activities in which the Company and/or any affiliated companies have engaged (or have prepared written plans to engage) at any time during the Term, including but not limited to, the purchase of land (or options therefor) for development and the construction of residential homes for resale to consumers, and (2) "Restricted Area" shall mean and include anywhere in the United States of America or in any foreign country in which the Company or any affiliated companies then engage (or have within the preceding three years engaged) in business;

(ii)      in connection with any business which is similar to or is in competition with the Business of the Company in the Restricted Area, solicit the business of any person or entity, on behalf of himself or any other person or entity, which is or has been at any time during the Term a customer or supplier of the Company including, but not limited to, former or present customers or suppliers with whom Executive has had personal contact during, or by reason of, his relationship with the Company;

(iii)      Be or become an employee, agent, consultant, representative, director or officer of, or be otherwise in any manner associated with, any person, firm, corporation, association or other entity which is engaged in or is carrying on any business which is similar to or in competition with the Business of the Company in the Restricted Area;

(iv)      Solicit for employment or employ any person employed by the Company at any time during the twelve (12) month period immediately preceding such solicitation or employment; or

(v)      Be or become a shareholder, joint venturer, owner (in whole or in part), or partner, or be or become associated with or have any proprietary or financial

6

interest in or of any firm, corporation, association or other entity which is engaged in or is carrying on any business which is similar to or in competition with the Business of the Company in the Restricted Area. Notwithstanding the preceding sentence, passive equity investments by Executive of $25,000 or less in any entity or affiliated group of any entity which is engaged in or is carrying on any business which is similar to or in competition with the Business of the Company shall not be deemed to violate this Section 7(a).

For purposes of identifying the Restricted Area, Executive hereby recognizes and acknowledges that the existing Business of the Company currently extends throughout the States of Georgia, Tennessee, South Carolina, North Carolina, California, Arizona, Nevada, Florida, New Jersey, Delaware, Maryland, Virginia, West Virginia, Texas, New York, Colorado, Mississippi, Indiana, Kentucky, Ohio, Pennsylvania, Washington, D.C., West Virginia and New Mexico. Executive further warrants and represents that, because of his varied skill and abilities, he does not need to compete with the Business of the Company and that this Agreement will not prevent him from earning a livelihood and acknowledges that the restrictions contained in this Section 7 constitute reasonable protections for the Company.

As used in this Section 7, "Applicable Non-Compete Period" shall mean the following:

(A)      at all times that the Executive is employed by the Company; and

(B)      for a period of time after the Executive's employment under this Agreement is terminated for any reason equal to the greater of

(i)      180 days; or

(ii)      such longer period of time that the Executive is entitled to receive payments under Sections 6(a)(ii) or (iii) above.

(b)      **Confidential Information**. Executive agrees that all Confidential Information shall be the sole property of the Company, and Executive agrees that he shall not during the Term nor thereafter, use for his benefit or the benefit of others or disclose at any time Confidential Information or take with him upon termination of this Agreement any records, papers, reports, lists, computer tapes or disks or any other materials of any nature that contain any Confidential Information. "Confidential Information" shall mean all information other than General Knowledge (defined below) relating to the Company's: (i) business or existing projects including all those in various stages of research and development including all unpublished plans for new products or services; (ii) financial information, internal business procedures and other information which relate to the way the Company conducts its business and which are not publicly available; (iii) data written by the Company's employees or others, including source codes, object codes, marketing and development plans, budgets, forecasts, forecast assumptions and future plans and potential strategies of the Company which have been or are being discussed; (iv) unpublished pricing data; (v) identity, buying habits and practices of the Company, its suppliers and customers to the extent not publicly available; (vi) information regarding the skills or compensation of employees of the Company; (vii) the Intellectual Property of the Company and any information pertaining thereto; (viii) materials and information supplied by customers or clients to the Company that contain data regarding any research, products, procedures or the like; and (ix) any other information deemed confidential by the Company by marking such information with the word "Confidential" or similar word; by orally advising the Executive that the information is confidential or by treating the information in such a manner that the Executive should reasonably believe it to be deemed confidential by the Company. "General Knowledge" shall mean (i) general skills or experience gained during Executive's employment with, consultation for or work for the Company; and (ii) information and data publicly available.

7

(c)    **Records**. All files, records, memoranda and other documents regarding former, existing or prospective customers of the Company or relating in any manner whatsoever to Confidential Information or the Business of the Company (collectively, "Records"), whether prepared by Executive or otherwise coming into his possession, shall be the exclusive property of the Company. All Records shall be immediately placed in the physical possession of the Company upon the termination of Executive's employment with the Company, or at any other time specified by the Board. The retention and use by Executive of duplicates in any form of Records is prohibited after the termination of Executive's employment with the Company.

(d)    **Breach**. Executive hereby recognizes and acknowledges that irreparable injury or damage shall result to the Company in the event of a breach or threatened breach by Executive of any of the terms or provisions of this Section 7, and Executive therefore agrees that the Company shall be entitled to an injunction restraining Executive from engaging in any activity constituting such breach or threatened breach. Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available to the Company at law or in equity for such breach or threatened breach, including but not limited to, the recovery of damages from Executive and, if Executive is an employee of the Company, the termination of his employment with the Company in accordance with the terms and provisions of this Agreement.

(e)    **Survival**.  Notwithstanding the termination of the employment of Executive or the termination of this Agreement, the provisions of this Section 7 shall survive and be binding upon Executive unless a written agreement which specifically refers to the termination of the obligations and covenants of this Section 7 is executed by the Company.  Notwithstanding the foregoing, this Section 7 shall not survive the termination of this Agreement as the result of the Change Of Control Agreement (hereinafter defined) becoming effective.

(f)    **Blue-Penciling**. Should any court or other legally constituted authority determine that for any such agreement or covenant to be effective it must be modified to limit its duration or scope, the parties hereto shall consider such agreement or covenant to be amended or modified with respect to duration and/or scope so as to comply with the orders of any such court or other legally constituted authority, and as to all other portions of such agreement or covenants they shall remain in full force and effect as originally written.

8.    **No Mitigation**. In no event shall the Executive be obligated to seek other employment or take any other action by way of mitigation of the amounts payable to the Executive under any of the provisions of this Agreement and such amounts shall not be reduced whether or not the Executive obtains other employment. The Company agrees to pay as incurred, to the full extent permitted by law, all legal fees and expenses which the Executive may reasonably incur as a result of any contest by (i) the Company, provided that the Executive prevails in at least one material issue, (ii) the Executive or (iii) others, of the validity or enforceability of, or liability under, any provision of this Agreement or any guarantee of performance thereof (including, without limitation, as a result of any contest by the Executive about the amount of any payment pursuant to this Agreement), plus in each case interest on any delayed payment at the applicable Federal rate provided for in Section 7872(f) (2) (A) of the Internal Revenue Code of 1986, as amended (the "Code").

9.    **Successors**.

(a)    This Agreement is personal to the Executive and without the prior written consent of the Company shall not be assignable by the Executive otherwise than by will or the laws of descent and distribution. This Agreement shall inure to the benefit of and be enforceable by the Executive's legal representatives.

(b)    This Agreement shall inure to the benefit of and be binding upon the Company and its successors and assigns.

10.    **Miscellaneous**.

(a)    This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without reference to principles of conflict of laws. Any legal action, suit or proceeding arising out of or relating to this Agreement shall be instituted in the state or federal courts in the State of Delaware and the parties agree not to assert, in any action, suit or proceeding by way of motion, as a defense or otherwise, any claim that either party is not personally subject to the jurisdiction of such court, or that such action, suit or proceeding is brought in an inconvenient forum, or that the venue is improper or that the subject matter hereof cannot be enforced in such court.  The parties hereby irrevocably submit to the jurisdiction of any such court in any such action, suit or proceeding and agree that service of all process in any such action, suit or proceeding in any such court may be made by registered or certified mail, return receipt requested, to its address set forth in this Agreement, such service being hereby acknowledged by such party to be sufficient for personal jurisdiction in any action against such party in any such court and to be otherwise effective and binding service in every respect.

(b)    The captions of this Agreement are not part of the provisions hereof and shall have no force or effect. This Agreement may not be amended or modified otherwise than by a written agreement executed by the parties hereto or their respective successors and legal representatives.

(c)    All notices and other communications hereunder shall be in writing and shall be given by hand delivery to the other party, by UPS or other commercial overnight courier or by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

> If to the Executive:
>
> 1000 Abernathy Road
> Suite 1200
> Atlanta, Georgia 30328
>
> If to the Company:
>
> 1000 Abernathy Road
> Suite 1200
> Atlanta, Georgia 30328
> Attention: President and Chief Executive Officer

or to such other address as either party shall have furnished to the other in writing in accordance herewith. Notice and communications shall be effective when actually received by the addressee.

(d)      The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

(e)      The Company may withhold from any amounts payable under this Agreement such Federal, state, local or foreign taxes as shall be required to be withheld pursuant to any applicable law or regulation.

(f)      The Company's failure to insist upon strict compliance with any provision of this Agreement or the failure to assert any right the Company may have hereunder shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

(g)      This Agreement supersedes any and all other prior or contemporaneous agreements, either oral or in writing, between the parties hereto with respect to the subject matter hereof, and this Agreement contains all of the covenants and agreements between the parties with respect to employment of Executive by the Company.

9

---

Reference is hereby made to that certain Employment Agreement dated as of March 14, 2005 (the "Change of Control Agreement") by and between the Company and the Executive.  Notwithstanding anything contained herein to the contrary, (i) this Agreement shall not supersede the Change of Control Agreement, and (ii) upon the "Effective Date" occurring under the Change of Control Agreement, this Agreement shall be superseded by the Change of Control Agreement.

(h)      This Agreement may be executed via facsimile transmission signature and in counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties hereto have executed this **EMPLOYMENT AGREEMENT** effective as of the date first written above.

**BEAZER HOMES USA, INC.**

By:   /s/ Ian J. McCarthy
Name: Ian J. McCarthy
Title: President and Chief Executive Officer

**EXECUTIVE**

/s/ Kenneth J. Gary
Kenneth J. Gary

10

---

**EMPLOYMENT AGREEMENT**

AGREEMENT by and between Beazer Homes USA, Inc., a Delaware corporation (the "Company") and Kenneth J. Gary (the "Executive"), dated as of the 14th day of March, 2005.

The Board of Directors of the Company (the "Board"), has determined that it is in the best interests of the Company and its shareholders to assure that the Company will have the continued dedication of the Executive, notwithstanding the possibility, threat or occurrence of a Change of Control (as defined below) of the Company. The Board believes it is imperative to diminish the inevitable distraction of the Executive by virtue of the personal uncertainties and risks created by a pending or threatened Change of Control and to encourage the Executive's full attention and dedication to the Company currently and in the event of any threatened or pending Change of Control, and to provide the Executive with compensation and benefits arrangements upon a Change of Control which ensure that the compensation and benefits expectations of the Executive will be satisfied and which are competitive with those of other corporations. Therefore, in order to accomplish these objectives, the Board has caused the Company to enter into this Agreement.

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1.    <u>Certain Definitions</u>.

(a)    The "Effective Date" shall mean the first date during the Change of Control Period (as defined in Section 1(b)) on which a Change of Control (as defined in Section 2) occurs. Anything in this Agreement to the contrary notwithstanding, if a Change of Control occurs and if the Executive's employment with the Company is terminated prior to the date on which the Change of Control occurs, and if it is reasonably demonstrated by the Executive that such termination of employment (i) was at the request of a third party who has taken steps reasonably calculated to effect a Change of Control or (ii) otherwise arose in connection with or in anticipation of a Change of Control, then for all purposes of this Agreement the "Effective Date" shall mean the date immediately prior to the date of such termination of employment.

(b)    The "Change of Control Period" shall mean the period commencing on the date hereof and ending on the second anniversary of the date hereof; provided, however, that commencing on the date one year after the date hereof, and on each annual anniversary of such date (such date and each annual anniversary thereof shall be hereinafter referred to as the "Renewal Date"), unless previously terminated, the Change of Control Period shall be automatically extended so as to terminate two years from such Renewal Date, unless at least 60 days prior to the Renewal Date the Company shall give notice to the Executive that the Change of Control Period shall not be so extended.

2.    <u>Change of Control</u>. For the purpose of this Agreement, a "Change of Control" shall mean:

(a)    The acquisition by any individual, entity or group (within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) (a "Person") of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Exchange Act) of 25% or more of either (i) the then outstanding shares of common stock of the Company (the "Outstanding Company Common Stock") or (ii) the combined voting power of the then outstanding voting securities of the Company entitled to vote generally in the election of directors (the "Outstanding Company Voting Securities"); provided, however, that for purposes of this subsection (a), the following acquisitions shall not constitute a Change of Control: (i) any acquisition directly from the Company, (ii) any acquisition by the Company, (iii) any acquisition by any employee benefit plan (or related trust) sponsored or maintained by the Company or any corporation controlled by the Company or (iv) any acquisition by any corporation pursuant to a transaction which complies with clauses (i), (ii) and (iii) of subsection (c) of this Section 2; or

1

(b)    Individuals who, as of the date hereof, constitute the Board (the "Incumbent Board") cease for any reason to constitute at least a majority of the Board; provided, however, that any individual becoming a director subsequent to the date hereof whose election, or nomination for election by the Company's shareholders, was approved by a vote of at least a majority of the directors then comprising the Incumbent Board shall be considered as though such individual were a member of the Incumbent Board, but excluding, for this purpose, any such individual whose initial assumption of office occurs as a result of an actual or threatened election contest with respect to the election or removal of directors or other actual or threatened solicitation of proxies or consents by or on behalf of a Person other than the Board; or

(c)    Consummation of a reorganization, merger or consolidation or sale or other disposition of all or substantially all of the assets of the Company (a "Business Combination"), in each case, unless, following such Business Combination, (i) all or substantially all of the individuals and entities who were the beneficial owners, respectively, of the Outstanding Company Common Stock and Outstanding Company Voting Securities immediately prior to such Business Combination beneficially own, directly or indirectly, more than 50% of, respectively, the then outstanding shares of common stock and the combined voting power of the then outstanding voting securities entitled to vote generally in the election of directors, as the case may be, of the corporation resulting from such Business Combination (including, without limitation, a corporation which as a result of such transaction owns the Company or all or substantially all of the Company's assets either directly or through one or more subsidiaries) in substantially the same proportions as their ownership, immediately prior to such Business Combination of the Outstanding Company Common Stock and Outstanding Company Voting Securities, as the case may be, (ii) no Person (excluding any corporation resulting from such Business Combination or any employee benefit plan (or related trust) of the Company or such corporation resulting from such Business Combination) beneficially owns, directly or indirectly, 20% or more of, respectively, the then outstanding shares of common stock of the corporation resulting from such Business Combination or the combined voting power of the then outstanding voting securities of such corporation except to the extent that such ownership existed prior to the Business Combination and (iii) at least a majority of the members of the board of directors of the corporation resulting from such Business Combination were members of the Incumbent Board at the time of the execution of the initial agreement, or of the action of the Board, providing for such Business Combination; or

(d)    Approval by the shareholders of the Company of a complete liquidation or dissolution of the Company.

3.    <u>Employment Period</u>. The Company hereby agrees to continue the Executive in its employ, and the Executive hereby agrees to remain in the employ of the Company, subject to the terms and conditions of this Agreement, for the period commencing on the Effective Date and ending on the second anniversary of such date (the "Employment Period").

4.    <u>Terms of Employment</u>.

(a)     Position and Duties.

(i)  During the Employment Period, (A) the Executive's position (including status, offices, titles and reporting requirements), authority, duties and responsibilities shall be at least commensurate in all material respects with the most significant of those held, exercised and assigned at any time during the 120 day period immediately preceding the Effective Date and (B) the Executive's services shall be performed at the location where the Executive was employed immediately preceding the Effective Date or any office or location less than 35 miles from such location.

2

(ii) During the Employment Period, and excluding any periods of vacation and sick leave to which the Executive is entitled, the Executive agrees to devote reasonable attention and time during normal business hours to the business and affairs of the Company and, to the extent necessary to discharge the responsibilities assigned to the Executive hereunder, to use the Executive's reasonable best efforts to perform faithfully such responsibilities. During the Employment Period it shall not be a violation of this Agreement for the Executive to (A) serve on corporate, civic or charitable boards or committees, (B) deliver lectures, fulfill speaking engagements or teach at educational institutions and (C) manage personal investments, so long as such activities do not significantly interfere with the performance of the Executive's responsibilities as an employee of the Company in accordance with this Agreement. It is expressly understood and agreed that to the extent that any such activities have been conducted by the Executive prior to the Effective Date, the continued conduct of such activities (or the conduct of activities similar in nature and scope thereto) subsequent to the Effective Date shall not thereafter be deemed to interfere with the performance of the Executive's responsibilities to the Company.

(b)     Compensation.

(i)     Base Salary. During the Employment Period, the Executive shall receive an annual base salary ("Annual Base Salary"), which shall be paid at a monthly rate, at least equal to twelve times the highest monthly base salary paid or payable, including any base salary which has been earned but deferred, to the Executive by the Company and its affiliated companies in respect of the twelve month period immediately preceding the month in which the Effective Date occurs. Annual Base Salary shall be payable in accordance with the Company's normal payroll practices (but not less frequently than monthly). During the Employment Period, the Annual Base Salary shall be reviewed (for purposes of increase only) no more than 12 months after the last salary increase awarded to the Executive prior to the Effective Date and thereafter at least annually. Any increase in Annual Base Salary shall not serve to limit or reduce any other obligation to the Executive under this Agreement. Annual Base Salary shall not be reduced after any such increase and the term Annual Base Salary as utilized in this Agreement shall refer to Annual Base Salary as so increased. As used in this Agreement, the term "affiliated companies" shall include any company controlled by, controlling or under common control with the Company.

(ii)     Annual Bonus. In addition to Annual Base Salary, the Executive shall be awarded, for each fiscal year ending during the Employment Period, an annual bonus (the "Annual Bonus") in cash at least equal to the arithmetic average of the Executive's bonuses (whether paid or deferred) under the Company's or its predecessor's annual incentive plans during the last three full fiscal years prior to the Effective Date or for such lesser period as the Executive has been employed by the Company or its predecessor (annualized in the event that the Executive was not employed by the Company for the whole of any such fiscal year), (the "Average Annual Bonus"). Each such Annual Bonus shall be paid no later than the end of the third month of the fiscal year next following the fiscal year for which the Annual Bonus is awarded, unless the Executive shall elect to defer the receipt of such Annual Bonus. Without limiting the generality of the foregoing definition, the "Average Annual Bonus" shall include the following components, if any, pursuant to the Company's EVCIP Rules (or any successor incentive plan, for so long as any of same shall exist):

(a)     Cash payouts from VC and IVC awards and the "Bank" payout, subject to the Payout Cap, all at full face value;

3

(b)     Any excess in the Bank discounted at 75% of face value (which shall, for purposes hereof, be deemed to be fully vested);

(c)     10% of the Bank contributed to the Deferred Compensation Plan, at full face value (which shall, for purposes hereof, be deemed to be fully vested); and

(d)     Any deferred bonus under the EVCIP which is invested in stock under the Company's Corporate Management Stock Purchase Program, at full face value of said bonus (which shall, for purposes hereof, be deemed to be fully vested);

(iii)     Incentive, Savings and Retirement Plans. During the Employment Period, the Executive shall be entitled to participate in all incentive, savings and retirement plans, practices, policies and programs applicable generally to other most senior executives of the Company and its affiliated companies, but in no event shall such plans, practices, policies and programs provide the Executive with incentive opportunities (measured with respect to both regular and special incentive opportunities, to the extent, if any, that such distinction is applicable), savings opportunities and retirement benefit opportunities, in each case, less favorable, in the aggregate, than the most favorable of those provided by the Company and its affiliated companies for the Executive under such plans, practices, policies and programs as in effect at any time during the 120-day period immediately preceding the Effective Date or if more favorable to the Executive, those provided generally at any other time after the Effective Date to other peer executives of the Company and its affiliated companies.

(iv)     Welfare Benefit Plans. During the Employment Period, the Executive and/or the Executive's family, as the case may be, shall be eligible for participation in and shall receive all benefits under welfare benefit plans, practices, policies and programs provided by the Company and its affiliated companies (including, without limitation, medical, prescription, dental, disability, employee life, group life, accidental death and travel accident insurance plans and programs) to the extent applicable generally to other most senior executives of the Company and its affiliated companies, but in no event shall such plans, practices, policies and programs provide the Executive with benefits

which are less favorable, in the aggregate, than the most favorable of such plans, practices, policies and programs in effect for the Executive at any time during the 120 day period immediately preceding the Effective Date or, if more favorable to the Executive, those provided generally at any time after the Effective Date to other peer executives of the Company and its affiliated companies.

(v)    Expenses. During the Employment Period, the Executive shall be entitled to receive prompt reimbursement for all reasonable expenses incurred by the Executive in accordance with the most favorable policies, practices and procedures of the Company and its affiliated companies in effect for the Executive at any time during the 120 day period immediately preceding the Effective Date or, if more favorable to the Executive, as in effect generally at any time thereafter with respect to other peer executives of the Company and its affiliated companies.

(vi)    Fringe Benefits. During the Employment Period, the Executive shall be entitled to fringe benefits, including, without limitation, tax and financial planning services, payment of club dues, and, if applicable, use of an automobile and payment of related expenses, in accordance with the most favorable plans,

4

practices, programs and policies of the Company and its affiliated companies in effect for the Executive at any time during the 120 day period immediately preceding the Effective Date or, if more favorable to the Executive, as in effect generally at any time thereafter with respect to other peer executives of the Company and its affiliated companies.

(vii)    Office and Support Staff. During the Employment Period, the Executive shall be entitled to an office or offices of a size and with furnishings and other appointments, and to exclusive personal secretarial and other assistance, at least equal to the most favorable of the foregoing provided to the Executive by the Company and its affiliated companies at any time during the 120 day period immediately preceding the Effective Date or, if more favorable to the Executive, as provided generally at any time thereafter with respect to other peer executives of the Company and its affiliated companies.

(viii)    Vacation. During the Employment Period, the Executive shall be entitled to paid vacation in accordance with the most favorable plans, policies, programs and practices of the Company and its affiliated companies as in effect for the Executive at any time during the 120 day period immediately preceding the Effective Date or, if more favorable to the Executive, as in effect generally at any time thereafter with respect to other peer executives of the Company and its affiliated companies.

5.    Termination of Employment.

(a)    Death or Disability. The Executive's employment shall terminate automatically upon the Executive's death during the Employment Period. If the Disability of the Executive occurs during the Employment Period (pursuant to the definition of Disability set forth below), the Company may give to the Executive written notice in accordance with Section 12(c) of this Agreement of its intention to terminate the Executive's employment. In such event, the Executive's employment with the Company shall terminate effective on the 30th day after receipt of such notice by the Executive (the "Disability Effective Date"), provided that, within the 30 days after such receipt, the Executive shall not have returned to full-time performance of the Executive's duties. For purposes of this Agreement, "Disability" shall mean the absence of the Executive from the Executive's duties with the Company on a full-time basis for 180 consecutive business days as a result of incapacity due to mental or physical illness which is determined to be total and permanent by a physician selected by the Company or its insurers and acceptable to the Executive or the Executive's legal representative.

(b)    Cause. The Company may terminate the Executive's employment for Cause. For purposes of this Agreement, "Cause" shall mean:

(i)    the willful and continued failure of the Executive to perform substantially the Executive's duties with the Company or one of its affiliates (other than any such failure resulting from incapacity due to physical or mental illness), for more than 15 days after a written demand for substantial performance is delivered to the Executive by the Board or the Chief Executive Officer of the Company which specifically identifies the manner in which the Board or Chief Executive Officer believes that the Executive has not substantially performed the Executive's duties, or

(ii)    the willful engaging by the Executive in illegal conduct or gross misconduct which is materially and demonstrably injurious to the Company.

For purposes of this provision, no act or failure to act, on the part of the Executive, shall be considered "willful" unless it is done, or omitted to be done, by the Executive in bad faith or

5

without reasonable belief that the Executive's action or omission was in the best interests of the Company. Any act, or failure to act, based upon authority given pursuant to a resolution duly adopted by the Board or upon the instructions of the President and Chief Executive Officer of the Company or based upon the advice of counsel for the Company shall be conclusively presumed to be done, or omitted to be done, by the Executive in good faith and in the best interests of the Company. The cessation of employment of the Executive shall not be deemed to be for Cause unless and until there shall have been delivered to the Executive a copy of a resolution duly adopted by the affirmative vote of not less than three-quarters of the entire membership of the Board at a meeting of the Board called and held for such purpose (after reasonable notice is provided to the Executive and the Executive is given an opportunity, together with counsel, to be heard before the Board), finding that, in the good faith opinion of the Board, the Executive is guilty of the conduct described in subparagraph (i) or (ii) above, and specifying the particulars thereof in detail.

(c)    Good Reason. The Executive's employment may be terminated by the Executive for Good Reason. For purposes of this Agreement, "Good Reason" shall mean:

(i)        the assignment to the Executive of any duties inconsistent in any respect with the Executive's position (including status, offices, titles and reporting requirements), authority, duties or responsibilities as contemplated by Section 4(a) of this Agreement, or any other action by the Company which results in a diminution in such position, authority, duties or responsibilities, excluding for this purpose an isolated, insubstantial and inadvertent action not taken in bad faith and which is remedied by the Company within 15 days after receipt of notice thereof given by the Executive;

(ii)        any failure by the Company to comply with any of the provisions of Section 4(b) of this Agreement, other than an isolated, insubstantial and inadvertent failure not occurring in bad faith and which is remedied by the Company within 15 days after receipt of notice thereof given by the Executive;

(iii)        the Company's requiring the Executive to be based at any office or location other than as provided in Section 4(a)(i)(B) hereof or the Company's requiring the Executive to travel on Company business to a substantially greater extent than required immediately prior to the Effective Date, which is not remedied by the Company within 15 days after receipt of notice thereof given by the Executive;

(iv)        any purported termination by the Company of the Executive's employment otherwise than as expressly permitted by this Agreement; or

(v)        any failure by the Company to comply with and satisfy Section 11(c) of this Agreement, which is not remedied by the Company within 15 days after receipt of notice thereof given by the Executive.

Anything in this Agreement to the contrary notwithstanding, a termination by the Executive for any reason during the 30 day period immediately following the first anniversary of the Effective Date shall be deemed to be a termination for Good Reason for all purposes of this Agreement.

(d)        Notice of Termination.  Any termination of the Executive's employment by the Company or by the Executive shall be communicated by Notice of Termination to the other party hereto given in accordance with Section 12(c) of this Agreement. For purposes of this Agreement, a "Notice of Termination" means a written notice which (i) indicates the specific termination provision in this Agreement relied upon, (ii) to the extent applicable, sets forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of the Executive's employment under the provision so indicated and (iii) if the Date of Termination (as defined

below) is other than the date of receipt of such notice, specifies the termination date (which date shall be not more than thirty days after the giving of such notice). The failure by the Executive or the Company to set forth in the Notice of Termination any fact or circumstance which contributes to a showing of Good Reason or Cause shall not waive any right of the Executive or the Company, respectively, hereunder or preclude the Executive or the Company, respectively, from asserting such fact or circumstance in enforcing the Executive's or the Company's rights hereunder.

(e)        Date of Termination.  "Date of Termination" means (i) if the Executive's employment is terminated by the Company for Cause, or by the Executive for Good Reason, the date of receipt of the Notice of Termination or, subject to applicable cure periods, any later date specified therein, as the case may be, (ii) if the Executive's employment is terminated by the Company other than for Cause or Disability, the Date of Termination shall be the date on which the Company notifies the Executive of such termination and (iii) if the Executive's employment is terminated by reason of death or Disability, the Date of Termination shall be the date of death of the Executive or the Disability Effective Date, as the case may be.

6.        Obligations of the Company upon Termination.

(a)        Good Reason; Other Than for Cause. If, during the Employment Period, the Company shall terminate the Executive's employment other than for Cause or the Executive shall terminate employment for Good Reason:

(i)        the Company shall pay to the Executive in a lump sum in cash within 30 days after the Date of Termination the aggregate of the following amounts:

A. the sum of (1) the Executive's Annual Base Salary through the Date of Termination to the extent not theretofore paid, (2) any accrued but unpaid Annual Bonus respecting any completed fiscal year ending prior to the Date of Termination, (3) the product of (x) the Average Annual Bonus and (y) a fraction, the numerator of which is the number of days in the current fiscal year through the Date of Termination, and the denominator of which is 365 and (4) any compensation previously deferred by the Executive (together with any accrued interest or earnings thereon) and any accrued vacation pay, in each case to the extent not theretofore paid (the sum of the amounts described in clauses (1), (2), (3) and (4) shall be hereinafter referred to as the "Accrued Obligations").  The timing of payment by the Company of any deferred compensation shall remain subject to any payment election previously made by the Executive; and

B.        the amount equal to the product of (1) two (2), and (2) the sum of (x) the Executive's Annual Base Salary and (y) the Average Annual Bonus; and

(ii)        for two (2) years after the Executive's Date of Termination, or such longer period as may be provided by the terms of the appropriate plan, program, practice or policy, the Company shall continue benefits to the Executive and/or the Executive's family at least equal to those which would have been provided to them in accordance with the plans, programs, practices and policies described in Section 4(b)(iv) of this Agreement if the Executive's employment had not been terminated or, if more favorable to the Executive, as in effect generally at any time thereafter with respect to other peer executives of the Company and its affiliated companies and their families, provided, however, that if the Executive becomes reemployed with another employer and is eligible to receive medical or other welfare benefits under another employer provided plan, the medical and other welfare benefits described herein shall be secondary to those provided under such other plan during such applicable period of eligibility. For purposes of determining eligibility (but not the time of commencement of benefits) of the

Executive for retiree benefits pursuant to such plans, practices, programs and policies, the Executive shall be considered to have remained employed two (2) years after the Date of Termination and to have retired on the last day of such period;

(iii)     the Company shall, at its sole expense as incurred, provide the Executive with outplacement services in accordance with the Company's policies with regard to outplacement then in effect; and

(iv)     to the extent not theretofore paid or provided, the Company shall timely pay or provide to the Executive any other amounts or benefits required to be paid or provided or which the Executive is eligible to receive under any plan, program, policy or practice or contract or agreement of the Company and its affiliated companies (such other amounts and benefits shall be hereinafter referred to as the "Other Benefits").

(b)     Death. If the Executive's employment is terminated by reason of the Executive's death during the Employment Period, this Agreement shall terminate without further obligations to the Executive's legal representatives under this Agreement, other than for payment of Accrued Obligations and the timely payment or provision of Other Benefits. Accrued Obligations shall be paid to the Executive's estate or beneficiary, as applicable, in a lump sum in cash within 30 days of the Date of Termination. With respect to the provision of Other Benefits, the term Other Benefits as utilized in this Section 6(b) shall include, without limitation, and the Executive's estate and/or beneficiaries shall be entitled to receive, benefits at least equal to the most favorable benefits provided by the Company and affiliated companies to the estates and beneficiaries of the most senior executives of the Company and such affiliated companies under such plans, programs, practices and policies relating to death benefits, if any, as in effect with respect to other most senior executives and their beneficiaries at any time during the 120 day period immediately preceding the Effective Date or, if more favorable to the Executive's estate and/or the Executive's beneficiaries, as in effect on the date of the Executive's death with respect to other [most senior] executives of the Company and its affiliated companies and their beneficiaries.

(c)     Disability. If the Executive's employment is terminated by reason of the Executive's Disability during the Employment Period, this Agreement shall terminate without further obligations to the Executive, other than for payment of Accrued Obligations and the timely payment or provision of Other Benefits. Accrued Obligations shall be paid to the Executive or the Executive's legal representative in a lump sum in cash within 30 days of the Date of Termination. With respect to the provision of Other Benefits, the term Other Benefits as utilized in this Section 6(c) shall include, and the Executive shall be entitled after the Disability Effective Date to receive, disability and other benefits at least equal to the most favorable of those generally provided by the Company and its affiliated companies to disabled executives and/or their families in accordance with such plans, programs, practices and policies relating to disability, if any, as in effect generally with respect to other peer executives and their families at any time during the 120 day period immediately preceding the Effective Date or, if more favorable to the Executive and/or the Executive's family, as in effect at any time thereafter generally with respect to other peer executives of the Company and its affiliated companies and their families.

(d)     Cause; Other than for Good Reason. If the Executive's employment shall be terminated for Cause during the Employment Period, this Agreement shall terminate without further obligations to the Executive other than the obligation to pay to the Executive (x) his Annual Base Salary through the Date of Termination, (y) the amount of any compensation previously deferred by the Executive, and (z) Other Benefits, in each case to the extent theretofore unpaid. If the Executive voluntarily terminates employment during the Employment Period, excluding a termination for Good Reason, this Agreement shall terminate without further obligations to the Executive, other than for Accrued Obligations and the timely payment or provision of Other

8

Benefits. In such case, all Accrued Obligations shall be paid to the Executive in a lump sum in cash within 30 days of the Date of Termination.

7.     Non-exclusivity of Rights. Nothing in this Agreement shall prevent or limit the Executive's continuing or future participation in any plan, program, policy or practice provided by the Company or any of its affiliated companies and for which the Executive may qualify, nor, subject to Section 12(f), shall anything herein limit or otherwise affect such rights as the Executive may have under any contract or agreement with the Company or any of its affiliated companies. Amounts which are vested benefits or which the Executive is otherwise entitled to receive under any plan, policy, practice or program of or any contract or agreement with the Company or any of its affiliated companies at or subsequent to the Date of Termination shall be payable in accordance with such plan, policy, practice or program or contract or agreement except as explicitly modified by this Agreement.

8.     Full Settlement. The Company's obligation to make the payments provided for in this Agreement and otherwise to perform its obligations hereunder shall not be affected by any set-off, counterclaim, recoupment, defense or other claim, right or action which the Company may have against the Executive or others. Each and every payment made hereunder by the Company shall be final, and the Company shall not seek to recover all or any part of such payment from the Executive or from whomsoever may be entitled thereto, for any reasons whatsoever. In no event shall the Executive be obligated to seek other employment or take any other action by way of mitigation of the amounts payable to the Executive under any of the provisions of this Agreement and such amounts shall not be reduced whether or not the Executive obtains other employment. The Company agrees to pay as incurred, to the full extent permitted by law, all legal fees and expenses which the Executive may reasonably incur as a result of any contest by (i) the Company provided that the Executive prevails in at least one material issue, (ii) the Executive or (iii) others, of the validity or enforceability of, or liability under, any provision of this Agreement or any guarantee of performance thereof (including, without limitation, as a result of any contest by the Executive about the amount of any payment pursuant to this Agreement), plus in each case interest on any delayed payment at the applicable Federal rate provided for in Section 7872(f) (2) (A) of the Internal Revenue Code of 1986, as amended (the "Code").

9.     Certain Additional Payments by the Company.

(a)     Anything in this Agreement to the contrary notwithstanding and except as set forth below, in the event it shall be determined that any payment or distribution by the Company to or for the benefit of the Executive (whether paid or payable or distributed or distributable pursuant to the terms of this Agreement or otherwise, but determined without regard to any additional payments required under this Section 9) (a "Payment") would be subject to the excise tax imposed by Section 4999 of the Code or any interest or penalties are incurred by the Executive with respect to such excise tax (such excise tax, together with any such interest and penalties, are hereinafter collectively referred to as the "Excise Tax"), then the Executive shall be entitled to receive an additional payment (a "Gross-Up Payment") in an amount such that after payment by the Executive of all taxes (including any interest or penalties imposed with respect to such taxes), including, without limitation, any income taxes (and any interest and penalties imposed with respect thereto) and Excise Tax imposed upon the Gross-Up Payment, the Executive retains an amount of the Gross-Up Payment equal to the Excise Tax imposed upon the Payments.

Notwithstanding the foregoing provisions of this Section 9(a), if it shall be determined that the Executive is entitled to a Gross-Up Payment, but that the Payments do not exceed 110% of the greatest amount (the "Reduced Amount") that could be paid to the Executive such that the receipt of Payments would not give rise to any Excise Tax, then no Gross-Up Payment shall be made to the Executive and the Payments, in the aggregate, shall be reduced to the Reduced Amount.

(b)      Subject to the provisions of Section 9(c), all determinations required to be made under this Section 9, including whether and when a Gross-Up Payment is required and the

amount of such Gross-Up Payment and the assumptions to be utilized in arriving at such determination, shall be made by such certified public accounting firm as may be designated by the Company (the "Accounting Firm") which shall provide detailed supporting calculations both to the Company and the Executive within 15 business days of the receipt of notice from the Executive that there has been a Payment, or such earlier time as is requested by the Company. In the event that the Accounting Firm is serving as accountant or auditor for the individual, entity or group effecting the Change of Control, the Company shall appoint another nationally recognized accounting firm to make the determinations required hereunder (which accounting firm shall then be referred to as the Accounting Firm hereunder). All fees and expenses of the Accounting Firm shall be borne solely by the Company. Any Gross-Up Payment, as determined pursuant to this Section 9, shall be paid by the Company to the Executive within five days of the receipt of the Accounting Firm's determination. Any determination by the Accounting Firm shall be binding upon the Company and the Executive. As a result of the uncertainty in the application of Section 4999 of the Code at the time of the initial determination by the Accounting Firm hereunder, it is possible that Gross-Up Payments which will not have been made by the Company should have been made ("Underpayment"), consistent with the calculations required to be made hereunder. In the event that the Company exhausts its remedies pursuant to Section 9(c) and the Executive thereafter is required to make a payment of any Excise Tax, the Accounting Firm shall determine the amount of the Underpayment that has occurred and any such Underpayment shall be promptly paid by the Company to or for the benefit of the Executive.

(c)      The Executive shall notify the Company in writing of any claim by the Internal Revenue Service that, if successful, would require the payment by the Company of the Gross-Up Payment. Such notification shall be given as soon as practicable but no later than ten business days after the Executive is informed in writing of such claim and shall apprise the Company of the nature of such claim and the date on which such claim is requested to be paid. The Executive shall not pay such claim prior to the expiration of the 30-day period following the date on which it gives such notice to the Company (or such shorter period ending on the date that any payment of taxes with respect to such claim is due). If the Company notifies the Executive in writing prior to the expiration of such period that it desires to contest such claim, the Executive shall:

(i)      give the Company any information reasonably requested by the Company relating to such claim,

(ii)      take such action in connection with contesting such claim as the Company shall reasonably request in writing from time to time, including, without limitation, accepting legal representation with respect to such claim by an attorney reasonably selected by the Company,

(iii)      cooperate with the Company in good faith in order effectively to contest such claim, and

(iv)      permit the Company to participate in any proceedings relating to such claim;

provided, however, that the Company shall bear and pay directly all costs and expenses (including additional interest and penalties) incurred in connection with such contest and shall indemnify and hold the Executive harmless, on an after-tax basis, for any Excise Tax or income tax (including interest and penalties with respect thereto) imposed as a result of such representation and payment of costs and expenses. Without limitation on the foregoing provisions of this Section 9(c), the Company shall control all proceedings taken in connection with such contest and, at its sole option, may pursue or forgo any and all administrative appeals, proceedings, hearings and conferences with the taxing authority in respect of such claim and may, at its sole option, either direct the Executive to pay the tax claimed and sue for a refund or contest the claim in any permissible manner, and the Executive agrees to prosecute such contest to a determination before any administrative tribunal, in a court of initial jurisdiction and in one or

more appellate courts, as the Company shall determine; provided, however, that if the Company directs the Executive to pay such claim and sue for a refund, the Company shall advance the amount of such payment to the Executive, on an interest-free basis and shall indemnify and hold the Executive harmless, on an after-tax basis, from any Excise Tax or income tax (including interest or penalties with respect thereto) imposed with respect to such advance or with respect to any imputed income with respect to such advance; and further provided that any extension of the statute of limitations relating to payment of taxes for the taxable year of the Executive with respect to which such contested amount is claimed to be due is limited solely to such contested amount. Furthermore, the Company's control of the contest shall be limited to issues with respect to which a Gross-Up Payment would be payable hereunder and the Executive shall be entitled to settle or contest, as the case may be, any other issue raised by the Internal Revenue Service or any other taxing authority.

(d)      If, after the receipt by the Executive of an amount advanced by the Company pursuant to Section 9(c), the Executive becomes entitled to receive any refund with respect to such claim, the Executive shall (subject to the Company's complying with the requirements of Section 9(c)) promptly pay to the Company the amount of such refund (together with any interest paid or credited thereon after taxes applicable thereto). If, after the receipt by the Executive of an amount advanced by the Company pursuant to Section 9(c), a determination is made that the Executive shall not be entitled to any refund with respect to such claim and the Company does not notify the Executive in writing of its intent to contest such denial of refund prior to the expiration of 30 days after such determination, then such advance shall be forgiven and shall not be required to be repaid and the amount of such advance shall offset, to the extent thereof, the amount of Gross-Up Payment required to be paid.

10.      Confidential Information. The Executive shall hold in a fiduciary capacity for the benefit of the Company all secret or confidential information, knowledge or data relating to the Company or any of its affiliated companies, and their respective businesses, which shall have been obtained by the Executive during the Executive's employment by the Company or any of its affiliated companies and which shall not be or become public knowledge (other than by acts by the Executive or representatives of the Executive in violation of this Agreement). After termination of the Executive's employment with

the Company, the Executive shall not, without the prior written consent of the Company or as may otherwise be required by law or legal process, communicate or divulge any such information, knowledge or data to anyone other than the Company and those designated by it. In no event shall an asserted violation of the provisions of this Section 10 constitute a basis for deferring or withholding any amounts otherwise payable to the Executive under this Agreement.

11.     Successors.

(a)     This Agreement is personal to the Executive and without the prior written consent of the Company shall not be assignable by the Executive otherwise than by will or the laws of descent and distribution. This Agreement shall inure to the benefit of and be enforceable by the Executive's legal representatives.

(b)     This Agreement shall inure to the benefit of and be binding upon the Company and its successors and assigns.

(c)     The Company will require any successor (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business and/or assets of the Company to assume expressly and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform it if no such succession had taken place. As used in this Agreement, "Company" shall mean the Company as hereinbefore defined and any successor to its business and/or assets as aforesaid which assumes and agrees to perform this Agreement by operation of law, or otherwise.

11

12.     Miscellaneous.

(a)     This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without reference to principles of conflict of laws. Any legal action, suit or proceeding arising out of or relating to this Agreement shall be instituted in the state or federal courts in the State of Delaware and the parties agree not to assert, in any action, suit or proceeding by way of motion, as a defense or otherwise, any claim that either party is not personally subject to the jurisdiction of such court, or that such action, suit or proceeding is brought in an inconvenient forum, or that the venue is improper or that the subject matter hereof cannot be enforced in such court.  The parties hereby irrevocably submit to the jurisdiction of any such court in any such action, suit or proceeding.

(b)     The captions of this Agreement are not part of the provisions hereof and shall have no force or effect. This Agreement may not be amended or modified otherwise than by a written agreement executed by the parties hereto or their respective successors and legal representatives.

(c)     All notices and other communications hereunder shall be in writing and shall be given by hand delivery to the other party, by FedEx or other commercial overnight courier or by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

If to the Executive:

1000 Abernathy Road
Suite 1200
Atlanta, Georgia 30328

If to the Company:

1000 Abernathy Road
Suite 1200
Atlanta, Georgia 30328
   Attention:  President and Chief Executive Officer

or to such other address as either party shall have furnished to the other in writing in accordance herewith. Notice and communications shall be effective when actually received by the addressee.

(d)     The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

(e)     The Company may withhold from any amounts payable under this Agreement such Federal, state, local or foreign taxes as shall be required to be withheld pursuant to any applicable law or regulation.

(f)     The Executive's or the Company's failure to insist upon strict compliance with any provision of this Agreement or the failure to assert any right the Executive or the Company may have hereunder, including, without limitation, the right of the Executive to terminate employment for Good Reason pursuant to Section 5(c)(i) through (v) of this Agreement, shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

(g)     Except as may otherwise be provided under any other written agreement between the Executive and the Company, the Executive and the Company acknowledge that the employment of the Executive by the Company is "at will" and, subject to Section 1 hereof, prior to the Effective Date, the Executive's employment and/or this Agreement may be terminated by either the Executive or the Company at any time prior to the Effective Date, in which case the Executive shall have no further rights under this Agreement. From and after the Effective Date,

12

this Agreement shall supersede any other agreement between the parties with respect to the subject matter hereof and, upon the Effective Date, any such other agreement shall be null, void and of no further force or effect.

IN WITNESS WHEREOF, the Executive has hereunto set the Executive's hand and, pursuant to the authorization from its Board of Directors, the Company has caused these presents to be executed in its name on its behalf, all as of the day and year first above written.

/s/ Kenneth J. Gary
Kenneth J. Gary

BEAZER HOMES USA, INC.

By    /s/ Ian J. McCarthy
      Ian J. McCarthy
      President and Chief Executive Officer

13

# EXHIBIT 160

Exclusive news, data and analytics for financial market professionals 

**Reuters**    World ⌄    Business ⌄        My News    🔍    [ Sign In ]    Register

Markets ⌄    Sustainability ⌄

# Beazer Homes says fires general counsel

Legal ⌄    More ⌄

By Reuters

August 9, 2007 5:10 PM GMT-4 ·
Updated February 14, 2007

 

NEW YORK, Feb 14 (Reuters) - Beazer Homes USA Inc. , one of the largest U.S. homebuilders, on Wednesday said it fired Kenneth Gary, its executive vice president and general counsel, for what it called "a pattern of personal conduct which includes violations of company policies."

The Atlanta-based company said that effective Feb. 12, Gary was "terminated for cause," under the terms of his employment agreement. As a result, Beazer said, Gary's employment agreement dated March 14, 2005 has also been terminated.

Get a look at the day ahead in U.S. and global markets with the Morning Bid U.S. newsletter. Sign up here.

Advertisement · Scroll to continue

Beazer disclosed the firing in a U.S. Securities and Exchange Commission filing. The company did not immediately return calls and an e-mail seeking further comment. Attempts to reach Gary were not immediately successful.

The company builds homes largely for first-time buyers.

According to a 2005 SEC filing, Gary joined Beazer in March 2005, when he was 46, as executive vice president, general counsel and corporate secretary.

He joined Beazer from luxury homebuilder Toll Brothers Inc. , where he was a senior vice president and general counsel, and led the mortgage and title insurance units, the 2005 filing said. He had joined Toll as general counsel in 1990, the filing said.

Advertisement · Scroll to continue

Beazer shares closed on Wednesday up 82 cents at $41.54 on the New York Stock Exchange. The shares have fallen 36 percent in the last year. Beazer disclosed Gary's termination after U.S. markets closed.



Our Standards: The Thomson Reuters Trust
Principles. 

Suggested Topics: U.S. Markets

     Purchase Licensing Rights

## Read Next

 

Mexican state oil firm
Pemex's financial debt
poised to drop to $80
billion at end-Q3, minister
says

Argentine economic
activity rises 2.9% in July

## Sponsored Content

**Advertise Here**

## Markets >

World

Bank of Japan keeps

World

Fed's September

Bank of Japan keeps
interest rates steady,
decides to start
selling ETFs - as it
happened

September 19, 2025

Fed's September
rate cut, as it
happened

September 17, 2025

# What the Fed's rate cut means for your money

U.S. Markets · September 19, 2025

This was originally published in the On
The Money newsletter, where we share
U.S. personal finance tips and insights
every other week. Sign up here to receive
it for free.

U.S. Markets

Trump's stealth
corporate 'tax' hike
could be what the
US needs

September 16, 2025

U.S. Markets

US economy braces
for twin housing,
labor market
headwinds

September 15, 2025

# EXHIBIT 161

**9.A.** <u>CERTIFICATE OF DISCLOSURE</u> (A.R.S. §10-128)

Has any person serving either by election or appointment as officers, directors, trustees, incorporators and persons controlling or holding more than 10% of the issued and outstanding common shares or 10% of any other proprietary, beneficial or membership interest in the corporation:

1. Been convicted of a felony involving a transaction in securities, consumer fraud or antitrust in any state or federal jurisdiction within the seven year period immediately preceding the execution of this certificate;

2. Been convicted of a felony, the essential elements of which consisted of fraud, misrepresentation, theft by false pretenses or restraint of trade or monopoly in any state or federal jurisdiction within the seven year period immediately preceding execution of this certificate;

3. Been or are subject to an injunction, judgment, decree or permanent order of any state or federal court entered within the seven year period immediately preceding execution of this certificate where such injunction, judgment, decree or permanent order:

    (a) involved the violation of fraud or registration provisions of the securities laws of that jurisdiction, or
    (b) involved the violation of the consumer fraud laws of that jurisdiction, or
    (c) involved the violation of the antitrust or restraint of trade laws of that jurisdiction?

        YES_____                       NO__X__

If "YES", the following information must be submitted as an attachment to this report for each person subject to one or more of the actions stated in Items 1. through 3. above.

| | | | |
|---|---|---|---|
| 1. | Full name and prior names used. | 5. | Date and location of birth. |
| 2. | Full birth name. | 6. | Social Security Number |
| 3. | Present home address. | 7. | The nature and description of each conviction or judicial action; the date and location; the court and public agency involved, and the file or cause number of the case. |
| 4. | Prior addresses (for immediate preceding 7 year period). | | |

**9.B.** <u>STATEMENT OF BANKRUPTCY</u> (A.R.S. §10-128.01)

Are you currently in federal bankruptcy proceedings, and if so, under which chapter of federal bankruptcy law is the action filed and on what date?

    Yes ____ Chapter _____ Date Filed _____ Case Number _____ No __X__

10.    This report must be executed by the corporation and attested by it's president, a vice-president, secretary, assistant secretary or treasurer. (If the corporation is in the hands of a receiver or trustee, it shall be executed on behalf of the corporation.)

I DECLARE, UNDER PENALTY OF LAW, THAT ALL CORPORATE INCOME TAX RETURNS REQUIRED BY TITLE 43 OF THE ARIZONA REVISED STATUTES HAVE BEEN FILED WITH THE ARIZONA DEPARTMENT OF REVENUE.

I further declare under penalty of law that I (we) have examined this report and the certificate, including any attachments, and to the best of my (our) knowledge and belief they are true, correct and complete.

By _____ Date 1/13/97  By _____ Date 1/13/97

Title  Kenneth J. Gary, Vice President     Title  Robert N. Dale, Assistant Secretary

-4-

0 - 0340044

**FILED**
9:00 AM

State of North Carolina

**FEB 2 3 1994**

Department of the Secretary of State

EFFECTIVE _____
RUFUS L EDMISTEN
ARTICLES OF INCORPORATION SECRETARY OF STATE
NORTH CAROLINA

94  055  9004

Pursuant to §55-2-02 of the General Statutes of North Carolina, the undersigned does hereby submit these Articles of Incorporation for the purpose of forming a business corporation.

1.  The name of the corporation is:  Toll NC GP Corp.

2.  The corporation is authorized to issue 1,000 shares.  These shares shall be: *(check a or b)*
    a. X  all of one class, designated as common stock; or
    b. ___ divided into classes or series within a class as provided in the attached schedule, in accordance with NCGS §55-6-01.

3.  The street address and county of the initial registered office of the corporation is:
    Number and Street  225 Hillsborough Street
    City, State, Zip Code  Raleigh, North Carolina  27603        County  Wake

4.  The mailing address if different from the street address of the initial registered office is:

5.  The name of the initial registered agent is:  C T CORPORATION SYSTEM

6.  Any other provisions which the corporation elects to include are attached.

7.  The name and address of each incorporator is as follows:

    Kenneth J. Gary
    3103 Philmont Avenue
    Huntingdon Valley, PA  19006

8.  These articles will be effective upon filing, unless a date and/or time is specified: upon filing date

This the 22nd day of _____ February _____, 19 94

TOLL NC GP CORP.

_____
Signature

Kenneth J. Gary, Vice President
Type or Print Name and Title

**NOTES:**
1.  Filing fee is $100.  One executed original and one exact or conformed copy of these articles must be filed with the Secretary of State.



# STATE OF ARIZONA
## CORPORATION COMMISSION
### CORPORATION ANNUAL REPORT
### & CERTIFICATE OF DISCLOSURE



**DUE ON OR BEFORE** 06/02/1998          **FILING FEE** $45.00

The following information is required by A.R.S. §10-1622 & §10-2501 for all corporations organized pursuant to Arizona Revised Statutes, Title 10. The Commission's authority to prescribe this form is A.R.S. §10-121.A. & §10-2545.A. YOUR REPORT MUST BE SUBMITTED ON THIS ORIGINAL FORM. Make changes or corrections where necessary. See instructions for proper format. REFER TO THE INSTRUCTIONS ON PAGE 4.

**RECEIVED**

1.   TOLL BROS. OF ARIZONA, INC.
     % C T CORPORATION SYSTEM
     3225 N CENTRAL AVE
     PHOENIX, AZ 85012

MAY 04 1998

ARIZONA CORP. COMMISSION
CORPORATIONS DIVISION

(215) 938-8000

Business Phone: _____          Corporation File Number:          -0804037-0
                                     (Business phone is optional)

State of Domicile: ARIZONA          Type of Corporation:  BUSINESS

2.   Arizona Statutory Agent:  C T CORPORATION SYSTEM
          Street Address:  3225 N CENTRAL AVE
          (NOT P.O. BOX)
          City, State, Zip:  PHOENIX          AZ 85012-

**ACC USE ONLY**

| | | |
|---|---|---|
| Fee | $ | 46 |
| Penalty | $ | |
| Reinstate | $ | PAID |
| Expedite | $ | |
| Total | $ | 46 |

FY97-98

*If appointing a new statutory agent, the new agent MUST consent to that appointment by signing below:*

*I, (individual) or We, (corporation or limited liability company) having been designated the new Statutory Agent, do hereby consent to this appointment until my removal or resignation pursuant to law.*

_____
Signature

3.   Secondary Address:
     (Foreign Corporations are REQUIRED to complete this section:)

4.   Check the one category below which best describes the CHARACTER OF BUSINESS of your corporation.

**BUSINESS CORPORATIONS**

| | |
|---|---|
| ___ 1. Accounting | ___ 20. Manufacturing |
| ___ 2. Advertising | ___ 21. Mining |
| ___ 3. Aerospace | ___ 22. News Media |
| ___ 4. Agriculture | ___ 23. Pharmaceutical |
| ___ 5. Architecture | ___ 24. Publishing/Printing |
| ___ 6. Banking/Finance | ___ 25. Ranching/Livestock |
| ___ 7. Barbers/Cosmetology | ___ 26. Real Estate |
| ☒ 8. Construction | ___ 27. Restaurant/Bar |
| ___ 9. Contractor | ___ 28. Retail Sales |
| ___ 10. Credit/Collection | ___ 29. Science/Research |
| ___ 11. Education | ___ 30. Sports/Sporting Events |
| ___ 12. Engineering | ___ 31. Technology(Computers) |
| ___ 13. Entertainment | ___ 32. Technology(General) |
| ___ 14. General Consulting | ___ 33. Television/Radio |
| ___ 15. Health Care | ___ 34. Tourism/Convention Services |
| ___ 16. Hotel/Motel | ___ 35. Transportation |
| ___ 17. Import/Export | ___ 36. Utilities |
| ___ 18. Insurance | ___ 37. Veterinary Medicine/Animal Care |
| ___ 19. Legal Services | ___ 38. Other _____ |

**NON-PROFIT CORPORATIONS**

| |
|---|
| 1. ___ Charitable |
| 2. ___ Benevolent |
| 3. ___ Educational |
| 4. ___ Civic |
| 5. ___ Political |
| 6. ___ Religious |
| 7. ___ Social |
| 8. ___ Literary |
| 9. ___ Cultural |
| 10. ___ Athletic |
| 11. ___ Science/Research |
| 12. ___ Hospital/Health Care |
| 13. ___ Agricultural |
| 14. ___ Animal Husbandry |
| 15. ___ Homeowner's Association |
| 16. ___ Professional, commercial industrial or trade association |
| 17. ___ Other _____ |

Page 2

**5. CAPITALIZATION:** (Business Corporations and Business Trusts are **REQUIRED** to complete this section.)
Business trusts must indicate the number of transferable certificates held by trustees evidencing their beneficial interest in the trust estate.

| Number of Shares/Certificates Authorized | Class | Series Within Class (if any) |
|---|---|---|
| 1,000 | Common | |

| Number of Shares/Certificates Issued | Class | Series Within Class (if any) |
|---|---|---|
| 1,000 | common | |

**6. SHAREHOLDERS:** (Business Corporations and Business Trusts are **REQUIRED** to complete this section.)
List shareholders holding more than 20% of any class of shares issued by the corporation, or having more than a 20% beneficial interest in the corporation.

Name: Sole Shareholder: Toll Holdings, Inc., a Delaware    Name: corporation.

NONE ☐    Name: _____    Name: _____

**7. OFFICERS**    (Attach additional sheets if necessary.)

Name: Bruce Toll
Title: President & Secretary
Address: 3103 Philmont Ave
Huntingdon Valley, PA 19006
Date taking office: 4/97

Name: Kenneth Gary
Title: Vice President
Address: 3103 Philmont Ave.
Huntingdon Vlly PA 19006
Date taking office: 4/97

Name: Joel Rassman
Title: Vice President & Treasurer
Address: 3103 Philmont Ave.
Huntingdon Valley PA 19006
Date taking office: 4/97

Name: Robert Dale
Title: Assistant Secretary
Address: 3103 Philmont Ave
Huntingdon Valley PA
Date taking office: 4/97    19006

**8. DIRECTORS** (If no changes since last report, check here X and go on to Section 9.)

Name: ROBERT I TOLL
Address: 3103 PHILMONT AVE
HUNTINGDON VALLEY, PA 19006-
Date taking office: 04-02-97

Name: BRUCE E TOLL
Address: 3103 PHILMONT AVE
HUNTINGDON VALLEY, PA 19006-
Date taking office: 04-02-97

Name: JOEL H RASSMAN
Address: 3103 PHILMONT AVE
HUNTINGDON VALLEY, PA 19006-
Date taking office: 04-02-97

Name: _____
Address: _____
_____
Date taking office: _____

Please Enter Corporation Name: _0B04037-0_____     Page 3

**9. FINANCIAL DISCLOSURE (A.R.S. §§10-1622.B & 10-2501.A.6)**
Only corporations that meet one or more of the following criteria must **attach** a financial statement (balance sheet including assets, liabilities and equity). The corporation is: 1) a **public service corporation** (e.g., public utility) as defined in Article XV, Section 2, Constitution of Arizona. 2) offers its stock for sale in transactions that are not exempt from A.R.S. §§44-1841 and 44-1842 as prescribed in §44-1844.A.1 (e.g., publicly traded). 3) **a nonprofit corporation.** All other forms of corporations are exempt from filing a financial disclosure.

_not required_

**10. CERTIFICATE OF DISCLOSURE (A.R.S. §§10-1622.A.8 & 10-2505.A)**
Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and person controlling or holding more than 10% of the issued and outstanding common shares or 10% of any other proprietary, beneficial or membership interest in the corporation been:

1.  Convicted of a felony involving a transaction in securities, consumer fraud or antitrust in any state or federal jurisdiction within the seven year period immediately preceding the execution of this certificate?
2.  Convicted of a felony, the essential elements of which consisted of fraud, misrepresentation, theft by false pretenses or restraint of trade or monopoly in any state or federal jurisdiction within the seven year period immediately preceding execution of this certificate?
3.  Or are subject to an injunction, judgment, decree or permanent order of any state or federal court entered within the seven year period immediately preceding execution of this certificate where such injunction, judgment, decree or permanent order involved the violation of:

    (a) fraud or registration provisions of the securities laws of that jurisdiction, or
    (b) the consumer fraud laws of that jurisdiction, or
    (c) the antitrust or restraint of trade laws of that jurisdiction?

**One box must be marked:**     **YES ☐**     **NO ☒**

If "YES", the following information must be submitted as an attachment to this report for each person subject to one or more of the actions stated in Items 1. through 3. above.

1.  Full name and prior names used.
2.  Full birth name.
3.  Present home address.
4.  Prior addresses (for immediate preceding 7 year period).
5.  Date and location of birth.
6.  Social Security Number
7.  The nature and description of each conviction or judicial action; the date and location; the court and public agency involved, and the file or cause number of the case.

**11. STATEMENT OF BANKRUPTCY (A.R.S. §10-202.D.2)**
Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and person controlling or holding more than 20% of the issued and outstanding common shares or 20% of any other proprietary, beneficial or membership interest in the corporation served in such capacity or held a 20% interest in any other corporation during the bankruptcy, receivership, or charter revocation of the other corporation?

**One box must be marked:**     **YES ☐**     **NO ☒**

If YES, enter the following:     Chapter _____     Date Filed _____     Case Number _____

If "YES", the following information must be submitted as an attachment to this report for each person subject to the statement above; 1) The names and addresses of each corporation and the person or persons involved. 2) The state in which each corporation was a) incorporated b) transacted business. 3) The dates of corporate operation.

**12.     CAUTION:** Signature requirements vary according to the type of corporation. **See the instruction sheet** for specific rules. Annual Reports submitted with incorrect signatures will be rejected.

I DECLARE, UNDER PENALTY OF LAW, THAT ALL CORPORATE INCOME TAX RETURNS REQUIRED BY TITLE 43 OF THE ARIZONA REVISED STATUTES HAVE BEEN FILED WITH THE ARIZONA DEPARTMENT OF REVENUE.

I further declare under penalty of law that I (we) have examined this report and the certificate, including any attachments, and to the best of my (our) knowledge and belief they are true, correct and complete.

Name _Kenneth Gary_____ Date _4/20/98_ Name _Robert Dale_____ Date _4/20/07_

Signature _K Day_____ Signature _R Mole_____

Title _Vice President_____ Title _Assistant Secretary___

(Signator(s) must be duly authorized corporate officer(s) listed in section 7 of this report.)



# STATE OF ARIZONA
# CORPORATION COMMISSION
## CORPORATION ANNUAL REPORT
## & CERTIFICATE OF DISCLOSURE



RECEIVED
OCT 2 6 1998

**DUE ON OR BEFORE** 01/02/1999

**FILING FEE** $45.00

The following information is required by A.R.S. §10-1622 & §10-2501 for all corporations organized pursuant to Arizona Revised Statutes, Title 10. The Commission's authority to prescribe this form is A.R.S. §10-121.A. & §10-2545.A. YOUR REPORT MUST BE SUBMITTED ON THIS ORIGINAL FORM. Make changes or corrections where necessary. Information for the report should reflect the current status of the corporation. See instructions for proper format. **REFER TO THE INSTRUCTIONS ON PAGE 4.**

1.
   MV REAL ESTATE, INC. (FN)
   8700 E DEVENTURA
   SCOTTSDALE, AZ 85258

   Business Phone: (215) 938-8000    (Business phone is optional.)
   State of Domicile: PENNSYLVANIA

   **Corporation File Number:**     F-0828472-8
   Type of Corporation:  BUSINESS    F-0828472-8

2. Arizona Statutory Agent:  C T CORPORATION SYSTEM
   Street Address:  3225 N CENTRAL AVE
   (NOT P.O. BOX)
   City, State, Zip:  PHOENIX          AZ 85012-

   | ACC USE ONLY |
   | Fee $ |
   | Penalty $ |
   | Reinstate $ |
   | Expedite $ |
   | Total $ |
   | FY98-99 |

   *Use this box only if appointing a new Statutory Agent*

   If appointing a new statutory agent, the new agent MUST consent to that appointment by signing below.

   I, (individual) or We, (corporation or limited liability company) having been designated the new Statutory Agent, do hereby consent to this appointment until my removal or resignation pursuant to law.

   _____
   Signature of new Statutory Agent

   3103 PHILMONT AVE
   HUNTINGDON VALLEY, PA 19006

3. Secondary Address:
   (Foreign Corporations are
   REQUIRED to complete
   this section.)

4. Check the one category below which best describes the CHARACTER OF BUSINESS of your corporation.

| BUSINESS CORPORATIONS | | NON-PROFIT CORPORATIONS |
|---|---|---|
| ___ 1. Accounting | ___ 20. Manufacturing | 1. ___ Charitable |
| ___ 2. Advertising | ___ 21. Mining | 2. ___ Benevolent |
| ___ 3. Aerospace | ___ 22. News Media | 3. ___ Educational |
| ___ 4. Agriculture | ___ 23. Pharmaceutical | 4. ___ Civic |
| ___ 5. Architecture | ___ 24. Publishing/Printing | 5. ___ Political |
| ___ 6. Banking/Finance | ___ 25. Ranching/Livestock | 6. ___ Religious |
| ___ 7. Barbers/Cosmetology | ___ 26. Real Estate | 7. ___ Social |
| X 8. Construction | ___ 27. Restaurant/Bar | 8. ___ Literary |
| ___ 9. Contractor | ___ 28. Retail Sales | 9. ___ Cultural |
| ___ 10. Credit/Collection | ___ 29. Science/Research | 10. ___ Athletic |
| ___ 11. Education | ___ 30. Sports/Sporting Events | 11. ___ Science/Research |
| ___ 12. Engineering | ___ 31. Technology(Computers) | 12. ___ Hospital/Health Care |
| ___ 13. Entertainment | ___ 32. Technology(General) | 13. ___ Agricultural |
| ___ 14. General Consulting | ___ 33. Television/Radio | 14. ___ Animal Husbandry |
| ___ 15. Health Care | ___ 34. Tourism/Convention Services | 15. ___ Homeowner's Association |
| ___ 16. Hotel/Motel | ___ 35. Transportation | 16. ___ Professional, commercial |
| ___ 17. Import/Export | ___ 36. Utilities | Industrial or trade association |
| ___ 18. Insurance | ___ 37. Veterinary Medicine/Animal Care | 17. ___ Other _____ |
| ___ 19. Legal Services | ___ 38. Other _____ | |

RECEIVED
DEC 1 0 1998
ARIZONA CORP. COMMISSION
CORPORATIONS DIVISION

Page 2

**5. CAPITALIZATION:** (Business Corporations and Business Trusts are **REQUIRED** to complete this section.) Business trusts must indicate the number of transferable certificates held by trustees evidencing their beneficial interest in the trust estate.

| Number of Shares/Certificates Authorized | Class | Series Within Class (if any) |
|---|---|---|
| 1,000 | Common | ---- |

| Number of Shares/Certificates Issued | Class | Series Within Class (if any) |
|---|---|---|
| 1,000 | Common | ---- |

**6. SHAREHOLDERS:** (Business Corporations and Business Trusts are **REQUIRED** to complete this section.) List shareholders holding more than 20% of any class of shares issued by the corporation, or having more than a 20% beneficial interest in the corporation.

NONE ☐

**Name:** Toll Holdings, Inc.
(sole shareholder)

**Name:** _____

**Name:** _____

**Name:** _____

**7. OFFICERS** (If no changes since last report, check here __ and go on to Section 8.)

| | | | |
|---|---|---|---|
| **Name:** | ~~BRUCE E TOLL~~ Zvi Barzilay | **Name:** | JOEL H RASSMAN |
| **Title:** | PRESIDENT/~~CEO~~ | **Title:** | VICE-PRESIDENT and Treasurer |
| **Address:** | 3103 PHILMONT AVE | **Address:** | 3103 PHILMONT AVE |
| | HUNTINGDON VALLEY, PA 19006- | | HUNTINGDON VALLEY, PA 19006- |

Date taking office: ~~01-02-98~~ 10/31/98

Date taking office: 01-02-98

| | | | |
|---|---|---|---|
| **Name:** | ~~BRUCE E TOLL~~ Zvi Barzilay | **Name:** | ~~JOEL H RASSMAN~~ Robert I. Toll |
| **Title:** | SECRETARY | **Title:** | ~~TREASURER~~ CEO |
| **Address:** | 3103 PHILMONT AVE | **Address:** | 3103 PHILMONT AVE |
| | HUNTINGDON VALLEY, PA 19006- | | HUNTINGDON VALLEY, PA 19006- |

Date taking office: ~~01-02-98~~ 10/31/98

Date taking office: 01-02-98

(ADDITIONAL OFFICER)
Kenneth J. Gary
Vice President, same address as above. Took office 01-02-98

**8. DIRECTORS** (If no changes since last report, check here __ and go on to Section 9.)

| | | | |
|---|---|---|---|
| **Name:** | JOEL H RASSMAN | **Name:** | ~~BRUCE E TOLL~~ Zvi Barzilay |
| **Address:** | 3103 PHILMONT AVE | **Address:** | 3103 PHILMONT AVE |
| | HUNTINGDON VALLEY, PA 19006- | | HUNTINGDON VALLEY, PA 19006- |

Date taking office: 01-02-98

Date taking office: ~~01-02-98~~ 6/01/98

| | | | |
|---|---|---|---|
| **Name:** | Robert I. Toll | **Name:** | |
| **Address:** | 3103 Philmont Avenue | **Address:** | |
| | Huntigndon Valley, PA 19006 | | |

Date taking office: 1-02-98

Date taking office: _____

Please Enter Corporation Name: __MV Real Estate, Inc. (FN)__    Page 3

F-08284728

## 9. FINANCIAL DISCLOSURE (A.R.S. §§10-1622.B & 10-2501.A.6)
Only nonprofit corporations must **attach** a financial statement (balance sheet including assets, liabilities and equity). All other forms of corporations are exempt from filing a financial disclosure.

## 10. CERTIFICATE OF DISCLOSURE (A.R.S. §§10-1622.A.8 & 10-2505.A)
Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and person controlling or holding more than 10% of the issued and outstanding common shares or 10% of any other proprietary, beneficial or membership interest in the corporation been:

1. Convicted of a felony involving a transaction in securities, consumer fraud or antitrust in any state or federal jurisdiction within the seven year period immediately preceding the execution of this certificate?
2. Convicted of a felony, the essential elements of which consisted of fraud, misrepresentation, theft by false pretenses or restraint of trade or monopoly in any state or federal jurisdiction within the seven year period immediately preceding execution of this certificate?
3. Or are subject to an injunction, judgment, decree or permanent order of any state or federal court entered within the seven year period immediately preceding execution of this certificate where such injunction, judgment, decree or permanent order involved the violation of:

      (a) fraud or registration provisions of the securities laws of that jurisdiction, or
      (b) the consumer fraud laws of that jurisdiction, or
      (c) the antitrust or restraint of trade laws of that jurisdiction?

One box must be marked:     **YES ☐**       **NO ☒**

If "YES", the following information must be submitted as an attachment to this report for each person subject to one or more of the actions stated in Items 1. through 3. above.

| | | | |
|---|---|---|---|
| 1. | Full name and prior names used. | 5. | Date and location of birth. |
| 2. | Full birth name. | 6. | Social Security Number |
| 3. | Present home address. | 7. | The nature and description of each conviction or judicial action; the |
| 4. | Prior addresses (for immediate | | date and location; the court and public agency involved, and the file |
| | preceding 7 year period). | | or cause number of the case. |

## 11. STATEMENT OF BANKRUPTCY (A.R.S. §10-202.D.2)
Has ANY person serving either by election or appointment as an officer, director, trustee, incorporator and person controlling or holding more than 20% of the issued and outstanding common shares or 20% of any other proprietary, beneficial or membership interest in the corporation served in such capacity or held a 20% interest in any other corporation during the bankruptcy, receivership, or charter revocation of the other corporation?

One box must be marked:     **YES ☐**       **NO ☒**

If YES, enter the following:     Chapter _____    Date Filed _____    Case Number _____

If "YES", the following information must be submitted as an attachment to this report for each person subject to the statement above: 1) The names and addresses of each corporation and the person or persons involved. 2) The state in which each corporation was a) incorporated b) transacted business. 3) The dates of corporate operation.

## 12. SIGNATURES

CAUTION: Signature requirements vary according to the type of corporation. **See the instruction sheet for specific rules.** Annual Reports submitted with incorrect signatures will be rejected.

I DECLARE, UNDER PENALTY OF LAW, THAT ALL CORPORATE INCOME TAX RETURNS REQUIRED BY TITLE 43 OF THE ARIZONA REVISED STATUTES HAVE BEEN FILED WITH THE ARIZONA DEPARTMENT OF REVENUE.

I further declare under penalty of law that I (we) have examined this report and the certificate, including any attachments, and to the best of my (our) knowledge and belief they are true, correct and complete.

Name_____ Date 12/9/09 Name_____ Date_____

Signature_____ Signature_____

Title __Kenneth J. Gary, Vice President___    Title _____
(Signator(s) must be duly authorized corporate officer(s) listed in section 7 of this report.)

# EXHIBIT 162

sothebysrealty.com/atlantafinehomessir/eng/associate/753-a-913-4025698/ken-gary

TOP   MY STORY   PROPERTIES   CONNECT WITH ME

# Local Expertise. Global Connections.

Ken Gary is a licensed broker and real estate attorney who brings over 30 years of diverse real estate experience and business savvy to the Gary Group. Ken has served as both Real Estate Counsel and business savvy to the Gary three different Fortune 500 companies, including Verizon, Beazer Homes and TollBrothers, Inc., where he also served as the company's lead real estate broker of record. Ken also founded and served as CEO of both a national mortgage company and a title insurance company. He has significant experience in 'non-traditional' real estate transactions such as mortgage foreclosures, short sales and bankruptcies. With this comprehensive and diverse experience in the real estate industry, Ken brings a unique and unmatched perspective to your real estate transaction. Ken's wife, Christine, is an accomplished professional since 1990 with over 15 years as an award winning, top producing real estate professional. They are married for more than 30 years, have lived in 5 major cities a child. They have enjoyed the life-style that Country Club of the most prestigious gated, golf course communities in metro Atlanta, has to

**LANGUAGES**
English

**DESIGNATIONS**
· Certified Real Estate Brokerage Manager

**ASSOCIATION**
Atlanta Fine Homes
Sotheby's International Realty

**LEARN ABOUT OFFICE** →



Ken Gary
SEND MESSAGE
...

# EXHIBIT 163

 

 Home  My Network  Jobs  Messaging  Notifications  Me ▾    For Business ▾    Try Premium for $0



## Maryann Heatherby, PHR, SHRM-CP

Senior Manager, Employee Relations at Toll Brothers


Toll Brothers


Commonwealth University-Bloomsburg

North Wales, Pennsylvania, United States  · Contact info

500+ connections

Message

### About

A unique Human Resources business partner with a depth of talent – from strategic workforce planning, employee relations, performance management, change management, HR administration, compensation, benefits, organizational communication to staff motivation. This experience is complemented by workin  …

### Activity

1,035 followers

Maryann Heatherby, PHR, SHRM-CP reposted this • 5mo

  Are you ready to stand out and make your mark at one of the most renowned luxury home builders in the country?
…                                                            …show more

 54

Show all posts  ➔

### Experience

Toll Brothers
8 yrs 1 mo
Horsham, PA

Senior Manager, Employee Relations
Full-time
Dec 2018 - Present · 6 yrs 10 mos

Human Resources Manager
Sep 2017 - Dec 2018 · 1 yr 4 mos

Senior Manager, Human Resources

Catherines Stores Corporation, division of Ascena Retail Group
Sep 2014 - Sep 2017 · 3 yrs 1 mo
Bensalem, PA



Catherines Stores Corporation a division of ascena retail group
8 yrs 7 mos
Bensalem, PA

Human Resources Manager
Apr 2011 - Sep 2017 · 6 yrs 6 mos

Human Resources Generalist
Mar 2009 - Apr 2011 · 2 yrs 2 mos



Human Resources Generalist
Accu-Sort Systems
Aug 2006 - Oct 2008 · 2 yrs 3 mos
Telford, PA

## Education



Commonwealth University-Bloomsburg
BA, Organizational Communication Studies
2001 - 2005

Activities and societies: President – National Communication
Association Student Chapter, Lambda Pi Eta, Communication Studies  …

Outstanding Student in Communication Studies Award Recipient

## Licenses & certifications



Professional in Human Resources (PHR) Certification
HRCI
Issued Jan 2011 · Expired Jun 2020



SHRM-Certified Professional
SHRM
Issued Dec 2015 · Expired Jun 2019

███████████

## Skills

Onboarding

  Endorsed by Christine Welsh, PHR, SHRM-CP and 1 other who is highly
skilled at this  …

Endorsed by 3 colleagues at Catherines

28 endorsements

Human Resources

  Endorsed by Melissa Lord Illsley and 3 others who are highly skilled at this

Endorsed by 3 colleagues at Catherines

21 endorsements

# EXHIBIT 164

 

Home  My Network  Jobs  Messaging  Notifications  Me ▼  For Business ▼  Try Premium for $0



## Crystal Vecchione ✔
Employee Relations Manager at Toll Brothers


Toll Brothers

Kutztown University of Pennsylvania

Ambler, Pennsylvania, United States  · Contact info

500+ connections

Message

---

## About

Self-motivated and focused Human Resources Professional with over nine years of experience and a strong desire, drive and skills to succeed in a demanding and supportive Human Resources environment. Possess' excellent communication skills with the ability to multitask, problem solve and prioritize.  …

---

## Activity
590 followers

Posts


Crystal Vecchione posted this • 11mo

This week at Toll Brothers, we had the incredible opportunity to celebrate Diwali, the Festival of Lights. It was a wonderful experience to learn about this meaningful tradition and a reminder of how …show more

 76                          3 comments · 2 reposts

Show all posts  →

---

## Experience

Toll Brothers
13 yrs 3 mos

Employee Relations Manager
Full-time
Dec 2022 - Present · 2 yrs 10 mos
Fort Washington, Pennsylvania, United States

Employee Relations Specialist
Full-time
Dec 2019 - Dec 2022 · 3 yrs 1 mo

Dec 2019 - Dec 2022 · 3 yrs 1 mo
Horsham, PA

Sr. Human Resources Coordinator
Full-time
Apr 2017 - Dec 2019 · 2 yrs 9 mos

Show all 5 experiences →



Human Resources Coordinator
Kimmel Center, Inc.
Oct 2007 - Jan 2010 · 2 yrs 4 mos
Philadelphia, Pennsylvania

Human Resources Assistant
Nazareth Hospital
Oct 2004 - Oct 2007 · 3 yrs 1 mo
Philadelphia, Pennsylvania



Princeton University
6 yrs 2 mos

Human Resources Assistant
Feb 2001 - Oct 2004 · 3 yrs 9 mos

Senior Bibliographic Specialist / Bibliographic Specialist /
Library Secretary Specialist
Sep 1998 - Feb 2001 · 2 yrs 6 mos
Princeton, New Jersey

## Education



Kutztown University of Pennsylvania
BA, Speech Communication
1994 - 1998

Activities and societies: Member of Alpha Sigma Tau, Gamma Lambda
Chapter …

## Recommendations

Received    Given

Nothing to see for now
Recommendations that Crystal receives will appear here.

## Interests

Companies    Newsletters    Schools



SHRM
1,059,842 followers

████████

Kutztown University of Pennsylvania
59,026 followers

# EXHIBIT 165

# Employees' Employer

**Crystal Vecchione** <CVECCHIONE@tollbrothers.com>                    Sun, Jun 29, 2025 at 11:29 AM
To: "Jeffrey Gu" <jeffreygu@proffer.info>

Thank you for your email. I am currently out of the office until Tuesday, July 1st with no access to my emails.

If you have a HR need/question, please reach out to HR Services via email at hrservices@tollbrothers.com or via phone at 1-866-9HR-Dept.

 • Payroll: payroll_dept@tollbrothers.com or (215) 938-8050

• Benefits: Benefits@tollbrothers.com

If you have an urgent matter that requires immediate assistance, please contact Maryann Heatherby at mheatherby@tollbrothers.com.

Best regards,

# EXHIBIT 166

Jeffrey Gu <jeffreygu@proffer.info>

---

# Employees' Employer

---

**Jeffrey Gu**<jeffreygu@proffer.info>                    Sun, Jun 29, 2025 at 11:30 AM
To: "mheatherby@tollbrothers.com" <mheatherby@tollbrothers.com>

Hello Ms. Heatherby,

I hope this message finds you well

I've contacted several employees, and I've received somewhat confusing information about who they work for, and I was hoping you could help clarify since you are the Director of Human Resources at Toll Brothers, Inc.

Would you be able to clarify what company directly employs these employees? Are they directly employed by Toll Brothers, Inc.?

- Nadia Bakho

- Nathaniel Emery

- Christopher Ferguson

- Peter Hemphill

- Nicole Jorgensen

- Karen Lake

- Joyce Lee

- Eric Lehman

- Jonathan Margolis

- Kristine Smith

- Michael Villani

Any assistance you can provide in clarifying this matter would be sincerely appreciated.

Jeffrey Gu

Partner, Proffer LLC
720-593-1548

# EXHIBIT 167

# Employees' Employer

**Jeffrey Gu**<jeffreygu@proffer.info>                                    Sun, Jun 29, 2025 at 11:29 AM
To: "cvecchione@tollbrothers.com" <cvecchione@tollbrothers.com>

Hello Ms. Vecchione,

I hope this message finds you well

I've contacted several employees, and I've received somewhat confusing information about who they work for, and I was hoping you could help clarify since you are the Director of Human Resources at Toll Brothers, Inc.

Would you be able to clarify what company directly employs these employees? Are they directly employed by Toll Brothers, Inc.?

- Nadia Bakho

- Nathaniel Emery

- Christopher Ferguson

- Peter Hemphill

- Nicole Jorgensen

- Karen Lake

- Joyce Lee

- Eric Lehman

- Jonathan Margolis

- Kristine Smith

- Michael Villani

Any assistance you can provide in clarifying this matter would be sincerely appreciated.


Jeffrey Gu

Partner, Proffer LLC
720-593-1548

# EXHIBIT 168



<span style="color:gray">Jeffrey Gu &lt;jeffwgu@gmail.com&gt;</span>

## 5131 Vivian St structural diagrams

**Jeffrey Gu** &lt;jeffwgu@gmail.com&gt;                                    Mon, Jun 30, 2025 at 6:05 PM
To: Nicole Jorgensen &lt;njorgensen@tollbrothers.com&gt;

Hi Nicole,

Is there someone who could better answer this question?

-Jeffrey

On Sat, Jun 28, 2025 at 5:38 PM Jeffrey Gu &lt;jeffwgu@gmail.com&gt; wrote:
I understand, maybe you could clarify something else for me. Do you specifically work for "Toll Brothers, Inc."?

On Sat, Jun 28, 2025 at 4:56 PM Nicole Jorgensen &lt;njorgensen@tollbrothers.com&gt; wrote:

Hi Jeffrey,


Summer has been great! I hope you've been having a nice summer as well.  I'm so sorry but I don't have a contact for the HR department :/



**Nicole Jorgensen**
**Sales Consultant, Colorado**
Toll Brothers
10851 E.  Hinsdale Cir, Centennial, CO 80112
Office: (720) 828-8821  |  Cell: (989) 277-7321



The information provided herein is for informational purposes only. Nothing contained herein is intended to obligate or bind Seller, its affiliates, parents, subsidiaries, or related entities unless signed by all parties in an Agreement of Sale.

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Saturday, June 28, 2025 10:03 AM
**To:** Nicole Jorgensen <njorgensen@tollbrothers.com>
**Subject:** Re: 5131 Vivian St structural diagrams

Hi Nicole, I hope your summer has been good so far. I'm trying to clarify something, would you be able to give me the contact of someone in HR at Toll Brothers? -Jeffrey On Mon, Jan 22, 2024 at 3:28 PM Dez Kolar <DKOLAR@tollbrothers.com>

Hi Nicole,

I hope your summer has been good so far. I'm trying to clarify something, would you be able to give me the contact of Toll Brothers?

-Jeffrey

On Mon, Jan 22, 2024 at 3:28 PM Dez Kolar <DKOLAR@tollbrothers.com> wrote:

I'm sorry, Jeffrey-

Unfortunately, Toll Brother blueprints are proprietary, so we are not able to provide these. The only item were are able to give out are the general floor plan renderings. I hope this is helpful. Thank you,

**Dez Kolar**
**Sr. Sales**
**Consultant, The**
**Ridge at Ward**
**Station**
Toll Brothers
5129 Vivian St,
Wheat Ridge, CO
80033
Office: (720) 640-
9393 | Cell: (970)
708-9017

Days OFF: Thursday
& Friday



The information provided herein is for informational purposes only. Nothing contained herein is intended to obligate or bind Seller, its affiliates, parents, subsidiaries, or related entities unless signed by all parties in an Agreement of Sale.

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Monday, January 22, 2024 12:05 PM
**To:** Dez Kolar <DKOLAR@tollbrothers.com>; Nicole Jorgensen <njorgensen@tollbrothers.com>
**Subject:** 5131 Vivian St structural diagrams

Hi Dez and Nicole, Would it be possible to send me structural diagrams for 5131 Vivian? Nate and the team encountered some problems with the 2nd floor floor, and I would like a copy of this if possible. -Jeffrey

Hi Dez and Nicole,


Would it be possible to send me structural diagrams for 5131 Vivian? Nate and the team encountered some problems with the 2nd floor floor, and I would like a copy of this if possible.


-Jeffrey

# EXHIBIT 169



Jeffrey Gu <jeffwgu@gmail.com>

---

## Request for notary contact information approved

---

**Colorado Department of State** <notary@coloradosos.gov>
To: jeffwgu@gmail.com

Mon, Jul 14, 2025 at 9:36 AM



**Colorado Secretary of State**

**Jena Griswold**

www.coloradosos.gov

Your request for notary contact information has been approved.

{external_note}

You requested contact information for:

Name: PATRICIA RICE
Notary ID: 20074011318
Commission expiration date:
Additional information:

Reason for request: Confirm employer name

**Contact information found in our records**
If you are receiving information for more than one notary, it's because the information you provided matches multiple notaries in our database.

**Full legal name:** PATRICIA RENEE RICE

**Commission**

Notary ID: 20074011318

Status: Active

Commission start date: 03/19/2023

Commission expiration date: 03/19/2027

**Contact**

Email: price@tollbrothers.com

Home phone: 719-380-8748

Work phone: 719-388-2333

Home address: 7930 Topeka Ave, Cascade, CO, 80809, United States

Work address: 536 Chapel Hills Drive, Suite 150, Colorado Springs, CO, 80920, United States

# EXHIBIT 170

July 8: Called Patricia for 4 minutes. I asked her to name who she works for, Toll Brothers Inc, Toll Bros Inc, or Toll Southwest LLC. She refused to answer. I also asked her about Chris Ferguson, and she could not or would not answer.



July 8: Called Liz Stein, my first call missed the first time and then she called back. I asked her about Kenneth Greenspan, Statement of Authority, and his relationship to Toll Southwest LLC. I asked her "What company does he work for?" and "Does he have the authority to sign on behalf of Toll Southwest?"

She ended up escalating to the CEO instantly and accused me of intruding. She was seemingly panicking to a degree when talking to me, as I noticed my adrenaline increased also while talking to her.

She did say at one point that all employees of Toll Brothers are automatically employees of the other company or something along those lines. But she did not explicitly outline how this mechanism worked or really describe if it actually exists.



July 10: received a call from Chris Ferguson. He was cordial and offered to understand what my problem is. I instead asked who does he works for again, continuing the email chain I had with him from a few weeks ago. He again declined to tell me which specific entity he works for despite my telling him that looking on his W-2 form would be a very easy way of confirming this. He accused me of going in circles, but I told him he was the one going in circles because he refused to answer a direct question. We amicably ended the phone call.



# EXHIBIT 171



<< Back to Search Results

New Search

Searching By Name: Stein, Elizabeth

| Name & Commission Details | Business Name & Address | Phone |
|---|---|---|
| Stein, Elizabeth, P<br>Commission ID: 1159840<br>Current Status: Commissioned<br>ENotary Status: No | Toll Brothers<br><br>1140 Virginia Drive<br>Fort Washington, PA 19034<br>MONTGOMERY COUNTY | (215) 938-8123 |

**Commission History**

| Status | Received Date | Effective Date | Expiration Date |
|---|---|---|---|
| Commissioned | 7/13/2023 | 9/8/2023 | 9/8/2027 |
| Expired | 7/11/2019 | 9/8/2019 | 9/8/2023 |
| Expired | 6/23/2015 | 9/8/2015 | 9/8/2019 |
| Expired | 5/23/2011 | 9/8/2011 | 9/8/2015 |
| Expired | 7/2/2007 | 9/8/2007 | 9/8/2011 |
| Expired | 8/25/2003 | 9/8/2003 | 9/8/2007 |
| Expired | 8/31/1999 | 9/8/1999 | 9/8/2003 |
| Expired | 1/25/1988 | 2/3/1988 | 2/3/1992 |

# EXHIBIT 172



## Employer Information

**Jeffrey Gu** <jeffwgu@gmail.com>                                    Thu, Jul 31, 2025 at 12:09 PM
To: dchristensen@newhomeco.com

Hi Dave,

Just noting for my records and yours that you have not responded within 2 business days.

-Jeffrey

-Jeffrey

On Wed, Jul 30, 2025 at 12:00 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:
> Hi Dave,
>
> As a licensed realtor, I believe you should be able to give this information to me in a straightforward manner. Could you please provide me with the company that you have an employment relationship with?
>
> -Jeffrey
>
> On Tue, Jul 29, 2025 at 12:26 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:
>> Hi Dave,
>>
>> Could you please send me information about who your employer is? One way of figuring this out is looking at your W2, if this is what the employer provides to you.
>>
>> -Jeffrey

# EXHIBIT 173

 **Gmail**

Jeffrey Gu <jeffwgu@gmail.com>

## Employment Information

**Jeffrey Gu** <jeffwgu@gmail.com>                                    Thu, Jul 31, 2025 at 12:09 PM
To: Olivewood <Olivewood@newhomeco.com>

Hi Gilma,

Just noting for my records and yours that you have not responded within 2 business days.

-Jeffrey

On Wed, Jul 30, 2025 at 12:00 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:
> Hi Gilma,
>
> As a licensed realtor, I believe you should be able to give this information to me in a straightforward manner. Could you please provide me with the company that you have an employment relationship with?
>
> -Jeffrey
>
> On Tue, Jul 29, 2025 at 12:27 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:
> > Hi Gilma,
> >
> > Could you please send me information about who your employer is? One way of figuring this out is looking at your W2, if this is what the employer provides to you.
> >
> > -Jeffrey

# EXHIBIT 174

# STATE OF CALIFORNIA
# DEPARTMENT OF REAL ESTATE

In reviewing a licensee's information, please be aware that license discipline information may have been removed from a licensee's record pursuant to Business & Professions Code Section 10083.2 (c). However, discipline information may be available from the California Department of Real Estate upon submittal of a request, or by calling the Department's public information line at 1-877-373-4542.

The license information shown below represents public information. It will not reflect pending licensing changes which are being reviewed for subsequent updating. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.

Some historical disciplinary action documents may not be in compliance with certain accessibility functions. For assistance with these documents, please contact the Department's Licensing Flag Section.

License information taken from records of the Department of Real Estate on 9/25/2025 7:43:20 AM

| | |
|---|---|
| **License Type:** | CORPORATION |
| **Name:** | TNHC Realty and Construction Inc |
| **Mailing Address:** | 18300 VON KARMAN AVE<br>SUITE 1000<br>IRVINE, CA 92612 |
| **License ID:** | 01870227 |
| **Expiration Date:** | 05/29/27 |
| **License Status:** | LICENSED |
| **Corporation License Issued:** | 08/27/09 |
| **Former Name(s):** | NO FORMER NAMES |
| **Main Office:** | 18300 VON KARMAN AVE<br>SUITE 1000<br>IRVINE, CA 92612 |
| **Licensed Officer(s):** | DESIGNATED OFFICER<br>02196303 - Expiration Date: 05/29/27<br>Harbur, Miek |
| | 01203925 - Expiration Date: 08/26/25<br>Battaglia, Michael Charles |
| | 01029053 - Expiration Date: 08/26/25<br>Alkon, Jose Alejandro<br>OFFICER CANCELED AS OF 03/04/22 |
| | 00874521 - Expiration Date: 08/26/13<br>Stelmar, Wayne James<br>OFFICER CANCELED AS OF 06/11/12 |
| | 01913435 - Expiration Date: 08/26/21<br>Webb, Joan Marcus<br>OFFICER LICENSE EXPIRED AS OF 08/27/21 |
| **DBA** | Bedford South Corona |

ACTIVE AS OF 09/12/2016

The Cannery
ACTIVE AS OF 09/12/2016

McKinley Village
ACTIVE AS OF 09/12/2016

New Home
ACTIVE AS OF 09/12/2016

New Home Co.
ACTIVE AS OF 09/12/2016

The New Home Company
ACTIVE AS OF 07/29/2016

NWHM
ACTIVE AS OF 09/12/2016

Russell Ranch
ACTIVE AS OF 09/12/2016

TNHC
ACTIVE AS OF 09/12/2016

**Branches:**    11515 GROVEDALE
WHITTIER, CA 90604

1314 W CEDAR HAVEN
ONTARIO, CA 91762

14873 RUSTIC RIDGE CIR
FOLSOM, CA 95630

14973 PRAIRIE GOLD CIR
FOLSOM, CA 95630

1508 EUREKA ROAD
SUITE 290
ROSEVILLE, CA 95661

15218 JANINE DRIVE UNIT 1
WHITTIER, CA 90605

1610 LAKESIDE DR
LATHROP, CA 95330

16556 FOREST LANE
FONTANA, CA 92336

207 MISTWATER
IRVINE, CA 92618

215 PINNACLE
IRVINE, CA 92602

2461 E. HYDE PASEO
ONTARIO, CA 91764

2731 MULHOLLAND DR
LATHROP, CA 95330

2767 MULHOLLAND DR
LATHROP, CA 95330

2896 KNIGHTSBRIDGE LANE
ROSEVILLE, CA 95747

309 FORTIFY COURT
ROSEVILLE, CA 95747

3194 BEATTY DRIVE
EL DORADO HILLS, CA 95762

4002 SPRING LANE
CORONA, CA 92883

4002 SPRING LN
CORONA, CA 92883

4065 E. LILIANA PASEO
ONTARIO, CA 91764

4113 MONTEREY GROVE DR
GRANITE BAY, CA 95746

4119 MONTEREY GROVE DR
GRANITE BAY, CA 95746

4160 CAVITT STALLMAN
GRANITE BAY, CA 95746

4575 GREENBRAE RD
ROCKLIN, CA 95677

5500 CANNES WAY
FAIR OAKS, CA 95628

6065 WATERTON DRIVE
EASTVALE, CA 92880

8444 COTTONSEED WAY
ELK GROVE, CA 95624

8827 EUREKA CIRCLE
GRANITE BAY, CA 95746

8835 EUREKA GROVE CIRCLE
GRANITE BAY, CA 95746

9690 AIRE PL
RANCHO CUCAMONGA, CA 91730

W 11TH STREET AND N CENTRAL AVE
UPLAND, CA 91786

**Broker Associates:**        01489204 - Gailey, Jennifer Maureen
License Expiration Date: 12/20/2027

01456355 - Nguyen, Katrina Thi Thanh Thuy
License Expiration Date: 08/28/2028

01264261 - Stickelman, Laura Kay
License Expiration Date: 03/27/2027

**Salespersons:**        01309415 - Andrews, Cynthia Renee
License Expiration Date: 04/29/2029

01078922 - Aquino, Demetrio F Jr
License Expiration Date: 07/14/2026

01396712 - Beeks, Twanda Renea
License Expiration Date: 08/21/2027

02001832 - Burgman, Ryan Benjamin
License Expiration Date: 03/14/2028

00978873 - Cheshire, Malia K
License Expiration Date: 07/05/2028

01389799 - Christensen, David John
License Expiration Date: 06/20/2027

01403623 - Coffey, Joanne Susan
License Expiration Date: 01/29/2028

01951180 - Coleman, Kristin Aldene
License Expiration Date: 05/28/2026

02032402 - Demartino, Kyle K
License Expiration Date: 04/20/2029

01380132 - Drummy, Gilma A
License Expiration Date: 05/08/2027

01433597 - Dwyer, Steven George
License Expiration Date: 02/28/2026

02047063 - Earl, Unique Melanie
License Expiration Date: 09/13/2026

02039009 - Greyshock, Jennifer Lauren
License Expiration Date: 11/28/2025

01402197 - Hobiera, Gregory Lee
License Expiration Date: 01/15/2028

01452389 - Korczynski, Justyna
          License Expiration Date: 09/03/2028

01719501 - Krehbiel, Ashley Elizabeth
          License Expiration Date: 11/18/2029

00861436 - Mac Millan, Terri De Anne
          License Expiration Date: 04/14/2028

01722723 - Marez, Angelita
          License Expiration Date: 02/08/2026

01219192 - Michel, Lori Denise
          License Expiration Date: 01/29/2029

02140781 - Rakela, Nicolas Reve
          License Expiration Date: 05/27/2029

01263776 - Rivers, Rene Michele
          License Expiration Date: 07/23/2027

01985079 - Tsai, William Wei-Lun
          License Expiration Date: 08/30/2027

01296475 - Villery, Roderick Lorne
          License Expiration Date: 09/17/2028

02011480 - Yarberry, Jennifer Sue
          License Expiration Date: 12/14/2028

**Comment**:                     NO DISCIPLINARY ACTION

                                 NO OTHER PUBLIC COMMENTS

                                 >>>> Public information request complete <<<<

# EXHIBIT 175



Jeffrey Gu <jeffwgu@gmail.com>

## Current for sale homes

**Jeffrey Gu** <jeffwgu@gmail.com>                                          Fri, May 16, 2025 at 12:30 PM
To: Olivewood <Olivewood@newhomeco.com>

Thank you, Gilma. Yes, ready to start the summer.

On Fri, May 16, 2025 at 9:19 AM Olivewood <Olivewood@newhomeco.com> wrote:

Jeffrey,

Attached is our current availability and pricing.

Hope you and your family are doing well!

Gilma



**Olivewood**
New Home Co.
207 Mistwater
Irvine, CA 92618
Office: (949) 508-2064
NewHomeCo.com

This message contains confidential information and is intended only for the intended recipients. If you are not an intended recipient you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.



**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Wednesday, May 14, 2025 8:21 AM
**To:** Olivewood <Olivewood@newhomeco.com>
**Subject:** Current for sale homes

[EXTERNAL]

Hi Gilma,


Would it be possible to send me a price list of the current new homes for sale?


-Jeffrey

# EXHIBIT 176

8/24/25, 1:40 PM                                    Division of Corporations - Filing

Delaware.gov                         Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

HOME

Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

File Number:          **4684280**        Incorporation Date /    **6/25/2009**
                                          Formation Date:        (mm/dd/yyyy)

Entity Name:          **THE NEW HOME COMPANY INC.**

Entity Kind:          **Corporation**        Entity Type:    **General**

Residency:            **Domestic**           State:          **DELAWARE**

**REGISTERED AGENT INFORMATION**

Name:                 **REGISTERED AGENT SOLUTIONS, INC.**

Address:              **838 WALKER ROAD SUITE 21-2**

City:                 **DOVER**              County:         **Kent**

State:                **DE**                 Postal Code:    **19904**

Phone:                **888-716-7274**

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or
more detailed information including current franchise tax assessment, current filing history
and more for a fee of $20.00.

Would you like ○ Status  ○ Status,Tax & History Information

[ Submit ]

[ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

# EXHIBIT 177

8/24/25, 1:40 PM

Division of Corporations - Filing

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

HOME

Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | **4703252** | Incorporation Date / Formation Date: | **6/25/2009** (mm/dd/yyyy) |
| Entity Name: | **THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **REGISTERED AGENT SOLUTIONS, INC.** | | |
| Address: | **838 WALKER ROAD SUITE 21-2** | | |
| City: | **DOVER** | County: | Kent |
| State: | **DE** | Postal Code: | **19904** |
| Phone: | **888-716-7274** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

Submit

New Entity Search

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

# EXHIBIT 178



**Department of State: Division of Corporations**

<u>Allowable Characters</u>

**HOME**

Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| <u>File Number:</u> | 4703250 | <u>Incorporation Date / Formation Date:</u> | **6/25/2009** (mm/dd/yyyy) |
| <u>Entity Name:</u> | **TNHC REALTY AND CONSTRUCTION INC.** | | |
| <u>Entity Kind:</u> | Corporation | <u>Entity Type:</u> | General |
| <u>Residency:</u> | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **REGISTERED AGENT SOLUTIONS, INC.** | | |
| Address: | **838 WALKER ROAD SUITE 21-2** | | |
| City: | **DOVER** | County: | **Kent** |
| State: | **DE** | Postal Code: | **19904** |
| Phone: | **888-716-7274** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

Submit

New Entity Search

For help on a particular field click on the Field Tag to take you to the help area.

# EXHIBIT 179

 

      



## Larry Webb
Very Happy

· 

The Webb Group
Newport Beach, California, United States  ·  Contact info
215 connections

Message   [ ]   [ ]

## Activity
258 followers

Posts   [ ]



Larry Webb posted this · 4mo

https://gofund.me/8be56c8c

Donate to Support Dick and Karen in Their Time of Need, organi …
gofundme.com

👍❤️ 3                                          1 comment

Show all posts →

## Experience

**Advisor to Real Estate Executives**
The Webb Group · Full-time
Oct 2021 - Present · 4 yrs
Corona del Mar, California, United States

**Executive Chairman**
The New Home Company · Full-time
Aug 2019 - Sep 2022 · 3 yrs 2 mos
Orange County, California, United States

 **CEO**
The New Home Company Inc. · Full-time



The New Home Company Inc. · Full-time
Aug 2009 - Aug 2019 · 10 yrs 1 mo

**Chief Restructuring Officer**
Landsource · Full-time
Jun 2008 - Jul 2009 · 1 yr 2 mos
Orange County, California, United States

**Chief Executive Officer**
John Laing Homes · Full-time
May 1995 - May 2008 · 13 yrs 1 mo
Orange County, California, United States

## Interests

**Top Voices**     Companies     Groups     Schools

Kevin O'Leary 🔗
Chairman, O'Leary Ventures and Beanstox
4,466,127 followers

████████



Promoted  ···

Henry, explore relevant opportunities
with Consensus Cloud Solutions

Get the latest jobs and industry news

████████████



More profiles for you

**A.J. Jarvis** · 3rd+
Real Estate Development and Homebuilding

████████

**Megan Eltringham** 🔗 · 3rd+
Senior Vice President of Marketing & Design at The New Home
Company Inc. ...

████████

**John Stephens** · 3rd+
Chief Financial Officer (Public & Private) | Real Estate, Homebuilding &
Financial Services | Capital Raising, Business & Financial  Planning, M& ...

████████

**Matthew Zaist** ☑ · 3rd+
Chief Executive Officer at The New Home Company Inc.

Message



Carissa R. Paez [in] · 3rd+
Landscape Architect/Construction Professional with a Focus on
Creating an Exceptional Customer Experience …

Show all

Explore Premium profiles

Nick Cuneo [in] · 3rd+
Service Manager

Chris Farina [in] · 3rd+
Electrical Inspector at State Wide Inspection Services

Danny cook [in] · 3rd+
Millwright Superintendent @ Advanced Constructors Corp | Ensuring
Safety and Efficiency …

Kory Lombard Jr. [in] · 3rd+
Barista @ CHAGEE | Customer Service, Beverage Preparation



People you may know
From Larry's industry

Rafael Rodriguez
Maintenance Technician / Plumber

Billy Rosenberg
President at Infinity Residential Inc.

Ben Howard
Master Plumber at Infinity Property Assist

Erik Avila ⊘
Infinity Global Capital Partners

Show all

# EXHIBIT 180

# BUILDER

Newsletter    Login |    Register

Search

News & Analysis          Builder 100          Events

**BUILDER 100 LEADERSHIP**                                    SHARE

## New Home CIO Wayne Stelmar to Retire

COO Tom Redwitz to assume post; Leonard Miller, formerly of
Richmond American, to join company as COO.

*1 MIN READ*

February 16, 2017

The New Home Company (NYSE:NWHM), Aliso Viejo, Cal., Thursday afternoon
announced the retirement of Wayne Stelmar, a co-founder of the company and
its chief investment officer, on Feb. 17. He will continue in a consulting role with
the company and continue as a member of the company's board and its
Executive Committee

Succeeding Stelmar is Tom Redwitz, also a co-founder and the company's
current COO. Redwitz will lead the company's growth initiatives and land
strategies while continuing his management in overseeing architecture and
product design.

Leonard Miller will join the company as its chief operating officer effective March
13, 2017. Miller was most recently California Regional President for Richmond
American Homes, a subsidiary of M.D.C. Holdings, Inc., where he has served since
2004.

Larry Webb, the company's Chairman and CEO, stated, "I am extremely thankful
for Wayne's contributions, as he has been an integral part of The New Home
Company and its culture since its formation. Wayne has been a partner, chief
strategist and, most importantly, a friend for over twenty years. All of us will
continue to benefit from his insight and expertise in his new role as a consultant
and his ongoing service as a board member."

Stelmar commented, "As a co-founder, I am extremely proud of the
accomplishments of The New Home Company since its formation in 2009. I look
forward to contributing to the strategic growth of the company through my new
role and my continued participation on the board."

RELATED TOPICS                                    SHARE

**SUBJECT**

Management

### Upcoming Events

**Sep 16, 2025**
Vancouver
Dealmakers
Fairmont Waterfront
Register Now

**Sep 16, 2025**
Building Future-
ready Communities
for Less
Live Webinar
Register for Free

**Sep 29 - Oct 1, 2025**
Builder Connections
Arlington, TX
Register Now

All Events

## More from Builder Magazine







Hancock Builders Names Kelly Whiteley CEO

*2 MIN READ*

Incentive Wars: Which Builder is Offering the Biggest Deal in America this Autumn?

*7 MIN READ*

Land Tejas Co-Founder and Owner Al Brende Passes Away at 80

*2 MIN READ*

[Digital Edition](#)

Builder Magazine Q3 2025

[Subscribe](#)

[Magazine Archives](#)

Explore Our Sites

**MFE** | Multifamily Executive

**AHF** | Affordable Housing Finance

**JLC** | The Journal of Light Construction

**ARCHITECT**

**PSN** | Pool and Spa News

**AQUATICS** INTERNATIONAL

Builder Magazine is part of Zonda Media, a Delaware corporation | © 2025 All rights reserved

About    Advertise    Contact Us    Privacy Policy    Accessibility Statement

Powered by **Zonda**

# EXHIBIT 181

For assistance with TSDR, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

STATUS    DOCUMENTS    MAINTENANCE                          Back to Search          Print

| | |
|---|---|
| **Generated on:** | This page was generated by TSDR on 2025-08-26 10:27:50 EDT |
| **Mark:** | JOHN LAING HOMES |

![John Laing Homes]

| | | | |
|---|---|---|---|
| **US Serial Number:** | 76187021 | **Application Filing Date:** | Dec. 27, 2000 |
| **US Registration Number:** | 2653451 | **Registration Date:** | Nov. 26, 2002 |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |

| | | |
|---|---|---|
| **TM5 Common Status Descriptor:** |  | DEAD/REGISTRATION/Cancelled/Invalidated<br><br>The trademark application was registered, but subsequently it was cancelled or invalidated and removed from the registry. |
| **Status:** | | Registration cancelled because registrant did not file an acceptable declaration under Section 8. To view all documents in this file, click on the Trademark Document Retrieval link at the top of this page. |
| **Status Date:** | | Jul. 04, 2009 |
| **Publication Date:** | | Sep. 03, 2002 |
| **Date Cancelled:** | | Jul. 04, 2009 |

## Mark Information

## Goods and Services

## Basis Information (Case Level)

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | W L HOMES LLC |
| **Owner Address:** | 895 Dove Street, Suite 200<br>Newport Beach, CALIFORNIA UNITED STATES 92660 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY |
| **State or Country Where Organized:** | DELAWARE |

## Attorney/Correspondence Information

## Prosecution History

## TM Staff and Location Information

## Assignment Abstract Of Title Information - Click to Load

## Proceedings - Click to Load

Feedback

# EXHIBIT 182



# State of California
# Bill Jones
## Secretary of State

LLC-5

## LIMITED LIABILITY COMPANY
## APPLICATION FOR REGISTRATION

**IMPORTANT** - Read the instructions before completing the form.
**This document is presented for filing pursuant to Section 17451 of the California Corporations Code.**

1. Name under which the foreign limited liability company proposes to transact business in California:
   (End the name with LLC, L.L.C, Limited Liability Company or Ltd. Liability Co.)

   WL Homes LLC

2. Name of the foreign limited liability company, if different from that entered above:

3. State (or other jurisdiction) and date of formation of the foreign limited liability company:

   Jurisdiction: Delaware                    Date of formation: 2-26-98

4. Enter the name and address of the agent for service of process and check the appropriate provision below:

   H. Lawrence Webb _____, which is

   [ x ]   an individual residing in California.

   [  ]    a corporation which has filed a certificate pursuant to Section 1505 of the California Corporations Code.
           Skip Item 5 and proceed to Item 6.

5. If the agent for service of process is an individual, enter a complete business or residential street address:

   Street address: 19600 Fairchild Rd., Suite 150

   City:  Irvine                    State: CA                    Zip Code: 92612

6. The Secretary of State of California is hereby appointed as the agent for service of process on the foreign limited liability
   company if the designated agent has resigned and has not been replaced or cannot be found and served with the
   exercise of reasonable diligence.

7. Address of the principal executive office:

   Address:19600 Fairchild Rd., Suite 150

   City: Irvine        State: CA   Zip Code: 92612

8. Address of the principal office in California, if any:

   Address: 19600 Fairchild Rd., Suite 150

   City: Irvine        State: CA   Zip Code: 92612

9. Describe type of business of the Limited Liability Company.

10. It is hereby declared that I am the person who executed this instrument, which execution is my act and deed.

    _Signature of authorized person_

    H. Lawrence Webb, CEO
    _Type or print name and title_

    Date: ____March 26,____ , 19 _98_

**For Secretary of State Use**

File No.  101998090064

**FILED**
**In the office of the Secretary of State**
**of the State of California**

**MAR 3 1 1998**

**BILL JONES, Secretary of State**

SEC/STATE (REV. 7/97)       FORM LLC-5 – FILING FEE: $70.00
                            Approved By Secretary Of State

*State of Delaware*    PAGE  1

## *Office of the Secretary of State*

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "WL HOMES LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE FOURTH DAY OF MARCH, A.D. 1998.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE NOT BEEN ASSESSED TO DATE.



*Edward J. Freel, Secretary of State*    10199809000064

2864707   8300

981082832

AUTHENTICATION:   8951799

DATE:

03-04-98

# EXHIBIT 183

07-669816



# State of California
## Secretary of State

**S**

### STATEMENT OF INFORMATION
(Domestic Stock Corporation)



**FEES (Filing and Disclosure): $25.00. If amendment, see instructions.**

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. **CORPORATE NAME** (Please do not alter if name is preprinted.)

   John Laing Homes (California), Inc.
   C1877784

**FILED**
In the office of the Secretary of State
of the State of California

**MAR 2 6 2007**

A. Lee
This Space For Filing Use Only

**DUE DATE:**

**CALIFORNIA CORPORATE DISCLOSURE ACT** (Corporations Code section 1502.1)

A publicly traded corporation must file with the Secretary of State a Corporate Disclosure Statement (**Form SI-PT**) annually, within 150 days after the end of its fiscal year. Please see reverse for additional information regarding publicly traded corporations.

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 2 and 3 cannot be P.O. Boxes.)

| 2 STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | | ZIP CODE |
|---|---|---|---|
| 895 Dove Street, Suite 200 | Newport Beach, CA | | 92660 |

| 3. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 895 Dove Street, Suite 200 | Newport Beach | CA | 92660 |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 4 CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| H. Lawrence Webb | 895 Dove Street, Suite 200 | Newport Beach, CA | 92660 |
| 5 SECRETARY/ | ADDRESS | CITY AND STATE | ZIP CODE |
| Ronald V. Rosequist | 1999 Harrison St., Suite 2400 | Oakland, CA | 94612 |
| 6. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
| Wayne J. Stelmar | 895 Dove Street, Suite 200 | Newport Beach, CA | 92660 |

**NAMES AND COMPLETE ADDRESSES OF ALL DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS** (The corporation must have at least one director. Attach additional pages, if necessary.)

| 7 NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| H. Lawrence Webb | 895 Dove Street, Suite 200 | Newport Beach, CA | 92660 |
| 8 NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | |
| 9. NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | |

10. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 12 must be completed with a California address. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 12 must be left blank.)

| 11. NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| David Martucci |

| 12. ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 895 Dove Street, Suite 200 | Newport Beach | CA | 92660 |

**TYPE OF BUSINESS**

| 13 DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION |
|---|
| Real estate development |

14. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| Wayne J. Stelmar | | CFO | 3/19/07 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

SI-200 C (REV 07/2006) · APPROVED BY SECRETARY OF STATE

# EXHIBIT 184



**State of California**
**Secretary of State**



09-229052

**FILED**
In the office of the Secretary of State
of the State of California

MAY 1 9 2009

EC     This Space For Filing Use Only

**STATEMENT OF INFORMATION**
(Domestic Stock and Agricultural Cooperative Corporations)
FEES (Filing and Disclosure): $25.00. If amendment, see instructions. 38
**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

| 1 | CORPORATE NAME (Please do not alter if name is preprinted.) | | | | S |
|---|---|---|---|---|---|

JLH Realty & Construction, Inc.
C1843033

**DUE DATE:**

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 2 and 3 cannot be P.O. Boxes.)

| | | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 2. | STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | | |
| | 19520 Jamboree Road, Suite 500 | | Irvine | CA | 92612 |
| 3. | STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | CITY | STATE | ZIP CODE |
| | 19520 Jamboree Road, Suite 500 | | Irvine | CA | 92612 |
| 4. | MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 2 | | CITY | STATE | ZIP CODE |
| | Same | | | | |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 5. | CHIEF EXECUTIVE OFFICER/ | | | | |
| | Steve Kabel | 19520 Jamboree Road, Suite 500 | Irvine | CA | 92612 |
| 6. | SECRETARY/ | ADDRESS | CITY | STATE | ZIP CODE |
| | Kim Forbes | 19520 Jamboree Road, Suite 500 | Irvine | CA | 92612 |
| 7. | CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
| | Kim Forbes | 19520 Jamboree Road, Suite 500 | Irvine | CA | 92612 |

**NAMES AND COMPLETE ADDRESSES OF ALL DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 8. | NAME | | | | |
| | Robert Booth | 19520 Jamboree Road, Suite 500 | Irvine | CA | 92612 |
| 9. | NAME | ADDRESS | CITY | STATE | ZIP CODE |
| | | | | | |
| 10. | NAME | ADDRESS | CITY | STATE | ZIP CODE |
| | | | | | |

11. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California street address (a P.O. Box address is not acceptable). If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 13 must be left blank.)

| 12. | NAME OF AGENT FOR SERVICE OF PROCESS | | | | |
|---|---|---|---|---|---|
| | Thomas L. Vincent | | | | |

| 13. | STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| | 4 Park Plaza, Suite 1100 | Irvine | CA | 92614 |

**TYPE OF BUSINESS**

14. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

Real estate service company

15. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 4-27-09 | Steve Kabel | President | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

SI-200 C (REV 01/2008)                                                                    APPROVED BY SECRETARY OF STATE

# EXHIBIT 185



Home | Online Services | License Details

# CONTRACTORS STATE LICENSE BOARD

☐ *Contractor's License Detail for License # 687596*

**DISCLAIMER: A license status check provides information taken from the CSLB license database. Before relying on this information, you should be aware of the following limitations.**

☐  CSLB complaint disclosure is restricted by law ( B&P 7124.6 ) If this entity is subject to public complaint disclosure click on link that will appear below for more information. Click  here  for a definition of disclosable actions.

☐  Only construction related civil judgments reported to CSLB are disclosed ( B&P 7071.17 ).

☐  Arbitrations are not listed unless the contractor fails to comply with the terms.

☐  Due to workload, there may be relevant information that has not yet been entered into the board's license database.

Data current as of 8/24/2025 9:25:43 AM

*Business Information*

J L H REALTY & CONSTRUCTION INC
dba JOHN LAING HOMES

19520 JAMBOREE RD SUITE 500
IRVINE, CA 92612
Business Phone Number:(949) 732-0800

| | |
|---|---|
| **Entity** | Corporation |
| **Issue Date** | 04/14/1994 |
| **Expire Date** | 04/30/2010 |

*License Status*

**This license is expired and not able to contract at this time.**

*Classifications*

A - GENERAL ENGINEERING

*Bonding Information*

Contractor's Bond

This license filed a Contractor's Bond with  SWISS RE CORPORATE SOLUTIONS PREMIER INSURANCE CORPORATION  .

**Bond Number:** S9042721
**Bond Amount:** $12,500
**E!ective Date:** 01/01/2007
**Cancellation Date:** 01/01/2010
Contractor's Bond History

*Workers' Compensation*

This license has workers compensation insurance with the  STATE COMPENSATION INSURANCE FUND

**Policy Number:**1917626
**E!ective Date:** 05/15/2009
**Cancellation Date:** 06/05/2009
Workers' Compensation History

*Other*

☐  Personnel listed on this license (current or disassociated) are listed on other licenses.

Copyright © 2025 State of California

# EXHIBIT 186



Jess Sanders
E-mail: jsanders@rutan.com

September 3, 2025

<u>**VIA E-MAIL**</u>

Jeffrey Gu
jeffwgu@gmail.com
jeffreygu@proffer.info

Re:    <u>Public Records Act Request Received August 24, 2025</u>

Dear Mr. Gu,

As you know, this office serves in the capacity of City Attorney for the City of Irvine ("City"). This letter is being sent in response to the above-referenced request under the California Public Records Act, Gov. Code, § 7920.000 et seq. (CPRA), which seeks the following:

Permits and declarations for this following addresses:
31 ICEBERG ROSE
23 Highfield
45 Nightshade.

All non-exempt disclosable records that the City deems to fall within the scope of your request are attached to this correspondence. This completes the City's review and processing of the above-indicated request.

Very truly yours,

RUTAN & TUCKER, LLP



Jess Sanders

JS:js
cc:    City Clerk (via e-mail only)

Rutan & Tucker, LLP | 18575 Jamboree Road, 9th Floor
Irvine, CA 92612 | 714-641-5100 | Fax 714-546-9035
Orange County | Palo Alto | San Francisco | www.rutan.com

2905/048170-0301
22647394.1 a09/03/25

# RESIDENTIAL BUILDING PERMIT 188762 RBP

**DESCRIPTION OF WORK**
SFD-PRODUCTION

**City of Irvine**
Building & Safety Division
Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: 724-6300  For Inspections: 724-6500



| | | |
|---|---|---|
| ADDRESS: | 23 HIGHFIELD GLEN | |
| LOCATION: | | |
| TRACT 15044 | LOT 31 | APN |
| | PLANNING AREA | ORANGETREE |

PROPOSED USE:

**CONTRACTOR**

| | |
|---|---|
| OWNER: | JOHN LAING HOMES |
| ADDRESS: | 895 DOVE STREET #110 |
| CITY, ST ZIP: | NEWPORT BEACH, CA 92660 |
| PHONE: | 949-265-6856 |

TOT SQ.FT.: 2,462   STORIES: 2   NO. UNITS: 1
CODE YR.: 94   CONST. TYPE: V-N
VALUATION: 141,600.00
OCC TYPE: 83   SO.FT.: 2041
     U   441

**OWNER-BUILDER**

| | |
|---|---|
| APPLICANT: | NUNSAKEE & ASSOC. |
| ADDRESS: | 3 HUGHES |
| CITY, ST ZIP: | IRVINE, CA 92618 |
| CONTACT: | BILL PATTERSON |
| PHONE: | 949-583-1010 |

PLANNING APPROVAL    CIVIC SOLUTIONS   01/09/01
PLN CK APPROVAL: DORMAESH, TONY   11/03/94

**WORKER'S COMPENSATION**

| | |
|---|---|
| CONTRACTOR: | |
| ADDRESS: | |
| CITY, ST ZIP: | |
| CONTR.LIC EXP: | |
| RIV BUS LIC: | PROFESSIONAL |

EXP DATE:

PERMIT ISSUED BY:   KAYE ARROUES
PROJECT 37257
PLAN CHECK 48113-CC
BUILDING PERMIT 188759-RBP

REMARKS:
OWNER-BUILDER

**LENDER**

---

### SUMMARY OF FEES   RECEIPT #:208677

| | | |
|---|---|---|
| NEW RES SFD > 1K | 2482 | 616.76 |
| AUTOMATION FEE | 616.76 | 30.85 |
| ENERGY/DISABLED ENFORCE INSP | 2482 | 90.00 |
| STATE SEISMIC FEE 1-3 STORIE 143608 | | 14.40 |
| PERMIT ISSUANCE FEE | 1 | 35.00 |
| SYSTEMS DEVELOPMENT CHARGE | 143608 | 1,436.00 |
| SLURRY SEAL- SFD | 2482 | 50.00 |
| | | |
| TOTAL FEES: | 2,273.09 | |

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in **180** days or if work is suspended for 180 days or more. Residential permit expiration: addition - 18 months, all others 6 months from date of permit.

**OFFICE**

---

**CONSTRUCTION WORKING HOURS**
Weekdays:  7 AM –7 PM
Saturdays:  9 AM –6 PM
Sundays/Holidays: PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number_____
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

---

FORM #41-12 4/00

LICENSED CONTRACTORS DECLARATION
I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect

License Class _____ Lic. No. _____
Date _____ Contractor _____

OWNER-BUILDER DECLARATION
I hereby affirm under penalty of perjury that I am exempt from the Contractors License Law for the following reason:
☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale
☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.
☒ I am exempt under Sec. _____, B&PC, for this
Reason _____
Date 2/13/01 Owner _____

WORKERS COMPENSATION DECLARATION
I hereby affirm under penalty of perjury one of the following declarations:
☐ I have and will maintain a certificate of consent to self-insure for workers compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued
☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:
Carrier _____
Policy # _____
☐ I certify that in the performance of the work for which this permit is issued I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.
Date _____ Applicant _____
WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

CONSTRUCTION LENDING AGENCY
I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec 3097, Civ. C.)
Lender's Name _____
Lender's Address _____

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.



inspection on ___ 8-21 ___ of 20 01 Must made a final inspection ___ and were
issuing permit types and from this inspection it appears that the building or
is ready for occupancy. By **Al Keller**            Date **8-22-01**
                                    Inspector

## INDIVIDUAL APPROVAL

Plumbing By _____            Date _____

Mechanical By _____ *Al Keller* _____       Date _____ *8-21-01* _____

Electrical By _____           Date _____

Fire Sprinkler By _____           Date _____

Swimming Pool By _____           Date _____

Building By _____ *Al Keller* _____          Date _____ *8-21-01* _____

Grading By _____ *T.J. Anderson* _____         Date _____ *8/20/01* _____

Encroachment By _____           Date _____

Landscaping By _____           Date _____

Construction Permit By _____          Date _____

OTHER _____ By _____          Date _____

### UTILITY RELEASES

Electrical By _____          Date _____

Gas By _____ *Jonetta Kaan* _____          Date _____ *9/21/01* _____

### BOND RELEASE

Bond Release By _____           Date _____

**City of Irvine**
**Building & Safety Division**
**Community Development Dept.**
**One Civic Center Plaza**
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6301

**Misc Commercial Permit**

ADDRESS: 31 ICEBERG ROSE
TRACT: 16676                          LOT: 15
API#:
PLANNING AREA: 09

**00441352-MISC**

DESCRIPTION OF WORK:
BRICK PILASTERS (2) FOR COMMON AREA IN CONDO
COMPLEX

For inspections: (949) 724-6501

---

**CONTRACTOR**

Date: 3/28/07        Contractor
License Class:              Lic No

LICENSED CONTRACTORS DECLARATION
I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect

OWNER: JOHN LAING HOMES
ADDRESS: 3121 MICHELSON 200
CITY, ST ZIP: IRVINE CA 92612
PHONE: (949) 265-6857

**PERMIT FEES**
Automation Fee Comm                    10.00
Issuance Fee Inspection                35.00
Misc Comm Insp                        200.00
State Seismic Com                       0.50

---

**OWNER-BUILDER**

☐ I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Laws for the following reason.
☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale
☑ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project
Reason:                                   B&PC, for the
Date: X _____ Owner

APPLICANT: JOHN LAING HOMES
ADDRESS: 3121 MICHELSON 200
CITY, ST ZIP: IRVINE CA 92612
CONTACT KEVIN EADS 9492656959
PHONE: (949) 265-6857

---

**WORKERS' COMPENSATION**

WORKERS' COMPENSATION DECLARATION
I hereby affirm under penalty of perjury one of the following declarations
☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued
☑ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are
Carrier                         Policy #

CONTRACTOR:
ADDRESS:
CITY, ST ZIP:
CONTR LIC EXP
IRV BUS LIC:                    EXP DATE:

---

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST AND ATTORNEY'S FEES

I certify that as the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions

Date: _____ Applicant

VALUATION:  $ 0
STORIES: 0                    NO. UNITS: 1
CODE YR: 2001                 TOT SQ FT: 16

USE                OCC        CONST TYPE        SQ FT
OVERHEAD STRUCTURE  U-2        Masonry B-nch       16

**Total Permit Fees: $245.50**

---

**OWNER-BUILDER**

CONSTRUCTION LENDING AGENCY
I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec 3097, Civ C )

Lender's Name
Lender's Address

Receipt#              00034581
TCA Receipt:                   TCA:

PLAN CHECK #    00440730-CTIS
PLANNING APPROVAL: LYNNAE GUZMAN  3/8/2007
BUILDING APPROVAL: LI CHEN  3/8/2007
PERMIT ISSUED BY: KAYE ARROUES  3/28/2007

---

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of the city to enter upon the above-mentioned property for inspection purposes.

Signature of Applicant or Agent        Date
Print Applicant's/Agent's Name

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more  Residential permit expiration  addition - 18 months, all others 6 months from date of permit

**INSPECTION**

---

NOTICE:
Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed
1  UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I D  Number _____
2  The applicant agrees to contact and obtain an inquiry I D  Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation

## CERTIFICATION OF COMPLETION

I certify that under date _____ of _____ that I made a final inspection of all work
under the following permit types and from this inspection it appears that the Building or
Facility is now ready for occupancy.  By _____  Date _____

## INDIVIDUAL APPROVAL

Plumbing By _____          Date _____

Mechanical By _____          Date _____

Electrical By _____          Date _____

Fire Sprinkler By _____          Date _____

Swimming Pool By _____          Date _____

Building By _____          Date  7-1-10

Grading By _____          Date _____

Encroachment By _____          Date _____

Landscaping By _____          Date _____

Construction Permit By _____          Date _____

OTHER_____ By _____          Date _____

## UTILITY RELEASES

Electrical By _____          Date _____

Gas By _____          Date _____

## BOND RELEASE

Bond Released By                                        Date

# Misc Commercial Permit

**City of Irvine**
**Building & Safety Division**
**Community Development Dept.**
**One Civic Center Plaza**
**PO Box 19575 Irvine, CA 92623-9575**
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501



ADDRESS: 31 ICEBERG ROSE
TRACT: 16676                                   LOT: 15
APN:
PLANNING AREA: 09

DESCRIPTION OF WORK:
METAL OVERHEAD STRUCTURES (20) IN COMMON AREA

**00441353-MISC**

---

## CONTRACTOR

OWNER: JOHN LAING HOMES
ADDRESS: 3121 MICHELSON 200
CITY, ST ZIP: IRVINE CA 92612
PHONE: (949) 265-6657

APPLICANT: JOHN LAING HOMES
ADDRESS: 3121 MICHELSON 200
CITY, ST ZIP: IRVINE CA 92612
CONTACT KEVIN EADS 9492256959
PHONE: (949) 265-6657

CONTRACTOR:
ADDRESS:
CITY, ST ZIP:
CONTR LIC EXP
IRV BUS LIC:                           EXP DATE:

## PERMIT FEES

| | |
|---|---|
| Automation Fee Inspection | 10.00 |
| Issuance Fee Comm | 35.00 |
| Misc Comm Insp | 200.00 |
| State Seismic Com | 0.50 |

VALUATION:        $ 6,000
STORIES: 0                    NO. UNITS: 1
CODE YR: 2001                 TOT SQFT: 80

USE                    OCC        CONST TYPE        SQ FT
OVERHEAD STRUCTURE                Miscellaneous       80

**Total Permit Fees: $245.50**

Receipt#                       **00034581**
TCA Receipt:                        TCA:

PLAN CHECK #    00440730-CTIS
PLANNING APPROVAL: LYNNAE GUZMAN  3/8/2007
BUILDING APPROVAL: LI CHEN  3/8/2007
PERMIT ISSUED BY: KAYE ARROUES 3/28/2007

---

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more. Residential permit expiration addition - 18 months, all others 6 months from date of permit

## INSPECTION

---

**CONSTRUCTION WORKING HOURS**
Weekdays: 7 AM – 7 PM
Saturday    9 AM – 6 PM
Sunday/Holiday PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed
1  UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I D  Number
2  The applicant agrees to contact and obtain an inquiry I D  Number from UNDERGROUND SERVICE ALERT
   (1-800-422-4133) at least 2 working days prior to commencing excavation

## CERTIFICATION OF COMPLETION

I certify that under date _____ of _____ that I made a final inspection of all work under the following permit types and from this inspection it appears that the Building or Facility is now ready for occupancy. By _____ Date _____

## INDIVIDUAL APPROVAL

Plumbing By _____          Date _____

Mechanical By _____          Date _____

Electrical By _____          Date _____

Fire Sprinkler By _____          Date _____

Swimming Pool By _____          Date _____

Building By _Holder_____          Date _7-1-10_____

Grading By _____          Date _____

Encroachment By _____          Date _____

Landscaping By _____          Date _____

Construction Permit By _____          Date _____

OTHER_____ By _____          Date _____

## UTILITY RELEASES

Electrical By _____          Date _____

Gas By _____          Date _____

## BOND RELEASE

Bond Released By                    Date

**City of Irvine**
**Building & Safety Division**
**Community Development Dept.**
**One Civic Center Plaza**
**PO Box 19575 Irvine, CA 92623-9575**
For Permit Info: (949) 724-6361 For Inspections: (949) 724-6981

# New Residential Construction Permit

**00410794-RBP**

**ADDRESS: 31 ICEBERG ROSE**

**TRACT: 16676**     **LOT: 15**

**APN:**

**PLANNING AREA: 09**

**DESCRIPTION OF WORK:**
ONE 4 PLEX MFD CONDO BLDG. Units 161-164
Bldg 2, 31,33,35,37 Iceberg Rose
Four Quartets Models Woodbury

**OWNER:** < JOHN LANG HOMES
**ADDRESS:** 3121 MICHELSON 200
**CITY, ST ZIP:** IRVINE CA 92612
**PHONE:** (949) 476-9090

| PERMIT FEES | |
|---|---|
| Automation Fee Inspection | 76.96 |
| Microfilm | 192.75 |
| Energy Surcharge Insp | 176.00 |
| Issuance Fee Comm | 35.00 |
| Apl/Attached Condo Insp | 1,539.20 |
| State Seismic Res | 59.50 |
| System Dev Charge Circ | 2,970.25 |
| System Dev Charge Non-Circ | 2,970.25 |
| SlurySeal New MFD Res Max | 200.00 |

**APPLICANT:** < JOHN LANG HOMES
**ADDRESS:** 3121 MICHELSON 200
**CITY, ST ZIP:** IRVINE CA 92612
**CONTACT** KEVIN EADS 949-285-6846
**PHONE:** (949) 476-9090

**CONTRACTOR:** J L H REALTY & CONSTRUCTION
**ADDRESS:** 895 DOVE ST 200
**CITY, ST ZIP:** NEWPORT BEACH CA 92660
**CONTR LIC EXP** 4/30/2006
**IRV BUS LIC: NEW**          **EXP DATE:** 10/31/2006

**VALUATION:** $ 594,050
**STORIES:** 2                    **NO. UNITS:** 4
**CODE YR:** 2001                **TOT SQFT:** 7,695

| USE | OCC | CONST TYPE | SQ FT |
|---|---|---|---|
| RES. CONDO | R-3 | Type V-1-Hr | 5,754 |
| GARAGE | U-1 | Type V-1-Hr | 1,776 |
| Fire Sprinkler System | | NFPA 13R | |
| Air Condition | | RESIDENTIAL | |
| DECK | R-3 | Wood Patio Covers | 165 |

**Total Permit Fees: $8,219.91**

**Receipt#**                    **00020616**
**TCA Receipt: 2300**          **TCA:**

**PLAN CHECK #**    00387638-RNC
**PLANNING APPROVAL:** DEREK WYSS  1/9/2006
**BUILDING APPROVAL:** LI CHEN  1/9/2006
**PERMIT ISSUED BY:** SHERRY JANAKAPAJAN 2/6/2006

---

### CONTRACTOR

License Class _____ B _____    Lic No. _897596_

Date 2/9/06    Contractor J L H REALTY & CONSTRUCTION

**LICENSED CONTRACTORS DECLARATION**

I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect

### OWNER-BUILDER

Date 2/9/06                                    Owner

Reason _____

□ I am exempt under Sec _____ B&PC, for this

**OWNER-BUILDER DECLARATION**

I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason

□ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale

□ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.

### WORKERS' COMPENSATION

Policy # _2000 943-2005_

Carrier _00380_

Date 2/9/06    Applicant _[signature]_

**WORKERS' COMPENSATION DECLARATION**

I hereby affirm under penalty of perjury one of the following declarations

□ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued

☑ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:

□ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions

**WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES**

### LENDER

Lender's Name

Lender's Address

**CONSTRUCTION LENDING AGENCY**

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec 3097, Civ. C.)

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

_[signature]_    2/9/06
Signature of Applicant or Agent    Date

_[signature]_
Print Applicant Signer's Name

---

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more. Residential permit expiration addition - 18 months, all others 6 months from date of permit

**INSPECTION**

**CONTRACTOR WORKING HOURS**
Weekdays  7 AM - 7 PM
Saturday   9 AM - 6 PM
Sunday/Holiday  PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed
1 UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I D Number _____
2 The applicant agrees to contact and obtain an inquiry I D Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation

**CERTIFICATION OF COMPLETION**

I certify that under date ___8-4___ of ___2006___ that I made a final inspection of all work under the following permit types and from this inspection it appears that the Building or Facility is now ready for occupancy  By _M. UEZ_____  Date _8-4-06_____

**INDIVIDUAL APPROVAL**

Plumbing By _____          Date _____

Mechanical By _____          Date _____

Electrical By _____          Date _____

Fire Sprinkler By _____          Date _____

Swimming Pool By _____          Date _____

Building By _M. UEZ_____          Date ___8-4-06_____

Grading By _____          Date _____

Encroachment By _____          Date _____

Landscaping By _____          Date _____

Construction Permit By _____          Date _____

OTHER_____ By _____          Date _____

**UTILITY RELEASES**

Electrical By _____          Date _____

Gas By _____          Date _____

**BOND RELEASE**

Bond Released By          Date

City of Irvine
Building & Safety Division
Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For inspections: (949) 724-6501



# Misc Commercial Permit

**ADDRESS:** 31 ICEBERG ROSE
**TRACT:** 16676          **LOT:** 15

## 00441351-MISC

**DESCRIPTION OF WORK:**
BUILT IN BENCH IN COMMON AREA

**APN:**
**PLANNING AREA:** 09

---

### CONTRACTOR

☐ **LICENSED CONTRACTORS DECLARATION**
I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

License Class: ____ Lic No ____
Date: 3/28/07          Contractor: ____

### OWNER-BUILDER

☐ **OWNER-BUILDER DECLARATION**
I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason

☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale

☒ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project

Reason _____ B&PC, for the

Date X ____ Owner X ____

### WORKERS' COMPENSATION

☐ **WORKERS' COMPENSATION DECLARATION**
I hereby affirm under penalty of perjury of the following declarations

☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued

☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are

Carrier _____ Policy # _____

☒ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date 3/28/07 ____ Applicant ____

**WARNING:** FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES

### LENDER

**CONSTRUCTION LENDING AGENCY**
I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec 3097, Civ C.)

Lender's Name _____
Lender's Address _____

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Signature of Applicant or Agent _____ Date 3/28/07
Print Applicant's/Agent's Name _____ CAPS _____

---

**OWNER:** JOHN LAING HOMES
**ADDRESS:** 3121 MICHELSON 200
**CITY, ST ZIP:** IRVINE CA 92612
**PHONE:** (949) 265-8657

**APPLICANT:** JOHN LAING HOMES
**ADDRESS:** 3121 MICHELSON 200
**CITY, ST ZIP:** IRVINE CA 92612
**CONTACT** KEVIN DADS 949265-8959
**PHONE:** (949) 265-8657

**CONTRACTOR:**
**ADDRESS:**
**CITY, ST ZIP:**
**CONTR LIC EXP**
**IRV BUS LIC:**          EXP DATE:

VALUATION:     $ 922
STORIES: 0          NO. UNITS: 1
CODE YR: 2001          TOT SQFT: 80

USE     OCC     CONST TYPE     SQ FT
BENCH ACT AS RETAINING WU-2     Retaining Walls     80

square footage fence     80

---

## PERMIT FEES

| | |
|---|---|
| Automation Fee Inspection | 10 00 |
| Microfilm | 6 75 |
| Issuance Fee Comm | 35 00 |
| Fence Insp Mnt Com | 200 00 |
| State Seismic Com | 0 50 |

**Total Permit Fees: $252.25**

**Receipt#** 00034581

**TCA Receipt:**          TCA:

**PLAN CHECK #** 00440730-CTIS
**PLANNING APPROVAL:** LYNNAE GUZMAN 3/8/2007
**BUILDING APPROVAL:** LI CHEN 3/8/2007
**PERMIT ISSUED BY:** KAYE ARROUES 3/29/2007

---

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more. Residential permit expiration addition - 18 months, all others 6 months from date of permit

**INSPECTION**

---

**CONSTRUCTION WORKING HOURS**
Weekdays: 7 AM – 7 PM
Saturday: 9 AM – 6 PM
Sunday/Holiday: PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed
1 UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I D Number _____
2 The applicant agrees to contact and obtain an inquiry I D Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation

c:ladexreports\permits.rp

## CERTIFICATION OF COMPLETION

I certify that under date _____ of _____ that I made a final inspection of all work
under the following permit types and from this inspection it appears that the Building or
Facility is now ready for occupancy. By _____ Date _____

## INDIVIDUAL APPROVAL

Plumbing By _____    Date _____

Mechanical By _____    Date _____

Electrical By _____    Date _____

Fire Sprinkler By _____    Date _____

Swimming Pool By _____    Date _____

Building By _Butler_____    Date _7 - 1 - 10_____

Grading By _____    Date _____

Encroachment By _____    Date _____

Landscaping By _____    Date _____

Construction Permit By _____    Date _____

OTHER_____ By _____    Date _____

## UTILITY RELEASES

Electrical By _____    Date _____

Gas By _____    Date _____

## BOND RELEASE

Bond Released By                                    Date

# City of Irvine
## Building & Safety Division
Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6941

# New Residential Construction Permit

**ADDRESS: 33 NIGHTSHADE**
**TRACT: 16258**          **LOT: 1**
**APN:**
**PLANNING AREA:**

**DESCRIPTION OF WORK:**
1 8 plex model condo building
Plan 2 Bldg 28   33,35,37,39,41,43,45,47 NIGHTSHADE.
PA 17 West Village

**00313313-RBP**

---

**OWNER:** IRVINE COMMUNITY DEVELOPMENT
ADDRESS: 550 NEWPORT CTR DR
CITY, ST ZIP: NEWPORT BEACH CA 92660
PHONE: (949) 720-2547

**APPLICANT:** JOHN LAING HOMES
ADDRESS: 19600 FAIRCHILD 150
CITY, ST ZIP: IRVINE CA 92612
CONTACT: Debra Pember 714-993-4500
PHONE: 949-476-9090

**CONTRACTOR:**
ADDRESS:
CITY, ST ZIP:
CONTR LIC LIC:
IRV BUS LIC:          EXP DATE:

| | |
|---|---|
| Condo Insp Model > 15K SF | 3,851.10 |
| System Dev Charge Non-Circ | 5,024.60 |
| State Seismic Res | 10.00 |
| Energy Surcharge Insp | 256.00 |
| Issuance Fee Comm | 35.00 |
| Automation Fee Inspection | 192.55 |
| System Dev Charge Circ | 5,024.60 |
| Slurry/Seal New NFD Res Max | 400.00 |

**Total Permit Fees: $14,883.36**

**Receipt#: 222339**

**TCA Receipt: 04939**

**PLAN CHECK #:** 00307627-RNC
**PLANNING APPROVAL:** STACY TRAN 4/4/2002
**BUILDING APPROVAL:** TONY DORMANESH 4/3/2002
**PERMIT ISSUED BY:** VASQUEZ 4/10/2002

**VALUATION:** $ 1,004,919
**STORIES:** 1
**CODE YR:** 1998

**NO. UNITS:** 8
**TOT SQFT:** 18,690

**USE**          **OCC**          **CONST TYPE**          **SO FT**

| USE | OCC | CONST TYPE | SQ FT |
|---|---|---|---|
| patios | U-1 | Roof-Wood Patio Covers | 1,985 |
| residences | R-1 | Air Conditioning Res | 12,827 |
| @ | R-1 | Type V - 1-Hour Wood | 12,827 |
| garages | U-1 | e V-1-Hr. Wood | 3,976 |
| sprinkler | R-1 | F.S. SY5-NFPA 5R | 18,656 |

---

**LENDER**

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)

Lender's Name: _____
Lender's Address: _____

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Signature of Applicant or Agent _____   Date 4/10/02
First Applicant's/Agent's Name   DEBRA PEMBER

**WORKERS' COMPENSATION**

**WORKERS' COMPENSATION DECLARATION**

☐ I hereby affirm under penalty of perjury one of the following declarations:
☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.
☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:

Carrier _____
Policy # _____

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date _____   Applicant _____

**WARNING:** FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

**CONSTRUCTION LENDING AGENCY**

**OWNER-BUILDER**

**OWNER-BUILDER DECLARATION**

I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:

☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale.
☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.

Reason _____

Date 4/10/02   Owner _____   B&PC, for the

I am exempt under Sec. _____, B&PC, for this reason _____

**CONTRACTOR**

**LICENSED CONTRACTORS DECLARATION**

I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

License Class _____   Lic.No. _____
Date _____   Contractor _____

---

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more. Residential permit expiration: addition - 18 months, all others 6 months from date of permit.

**INSPECTION**

---

**CONTRACTOR WORKING HOURS**
Weekdays:  7 AM – 7 PM
Saturday:  9 AM – 6 PM
Sunday/Holiday: PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

## CERTIFICATION OF COMPLETION

I certify that under date __18th__ of __Nov.__ that I made a final inspection of all work under the following permit types and from this inspection it appears that the Building or Facility is now ready for occupancy. By _____ Date __11/18/02__

## INDIVIDUAL APPROVAL

Plumbing By _____          Date _____

Mechanical By _____          Date _____

Electrical By _____          Date _____

Fire Sprinkler By _____          Date _____

Swimming Pool By _____          Date _____

Building By _____          Date _____

Grading By _____          Date _____

Encroachment By _T. J. Anderson_          Date __11/21/02__

Landscaping By _____          Date _____

Construction Permit By _____          Date _____

OTHER_____ By _____          Date _____

## UTILITY RELEASES

Electrical By _____          Date _____

Gas By _____          Date __11/21/02__

## BOND RELEASE

Bond Released By          Date

# Fire Sprinkler New Construction Permit

**City of Irvine**
Building & Safety Division
Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit info: (949) 724-6310 For inspections: (949) 724-6301



**DESCRIPTION OF WORK:** 00320697-FSIN
NEW FIRE SPRINKLERS; BUILDING #28: UNITS 142 - 149
35,37,39,41,43,45,47 NIGHTSHADE

**ADDRESS:** 33 NIGHTSHADE
**TRACT:** 16258           **LOT:** 1
**APN:**
**PLANNING AREA:**

CIP #

FS  Piping Install Head Count          145.36
    Issuance Fee Comm                   35.00
    Automation Fee Inspection            7.27

---

**CONTRACTOR**

Date _7-30-02_  Contractor _AUTOMATIC FIRE SPRINKLERS INC_

License Class _C16_   Lic.No. _513781_

LICENSED CONTRACTORS DECLARATION
I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

**OWNER-BUILDER**

☐ I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:
☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale.
☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.
☐ I am exempt under Sec. _____ B&PC, for this

Reason: _____ Owner

Date _____ Owner

**WORKERS' COMPENSATION**

**WORKERS' COMPENSATION DECLARATION**
I hereby affirm under penalty of perjury one of the following declarations:
☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.
☑ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:

Carrier _State Comp Ins fund_
Policy # _162393201_

Applicant _Laila Assad_

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date _7-30-02_  Applicant _Laila Assad_

**WARNING:** FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

**LENDER**

CONSTRUCTION LENDING AGENCY
I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. Code).

Lender's Name _____
Lender's Address _____

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

_Laila Assad_
Signature of Applicant or Agent                    Date _7-30-02_

_Laila Assad_
Print Applicant's/Agent's Name

---

**OWNER:** JOHN LAING HOMES
**ADDRESS:** 895 DOVE ST 110
**CITY, ST ZIP:** NEWPORT BEACH CA 92660
**PHONE:** (949) 265-6857

**APPLICANT:** AUTOMATIC FIRE SPRINKLERS
**ADDRESS:** 7272 MARS DR
**CITY, ST ZIP:** HUNTINGTON BEACH CA 92647
**CONTACT:** Laura Asadi 714-941-2066
**PHONE:** 714-941-2066

**CONTRACTOR:** AUTOMATIC FIRE SPRINKLERS INC
**ADDRESS:** 7272 MARS DR
**CITY, ST ZIP:** HUNTINGTON BEACH  CA 92647
**CONTR LIC EXP:** 7/31/2003
**IRV BUS LIC:** 24173        **EXP DATE:** 8/31/2002

---

**VALUATION:**
**STORIES:** 0        **NO. UNITS:**
**CODE YR:**          **TOT SQFT:** 0
**USE**       **OCC**       **CONST. TYPE**      **SQ FT**

**Total Permit Fees: $187.63**
**Receipt# 227217**
**TCA Receipt:**

**PLAN CHECK #:**  0031/7132-RNFS
**PLANNING APPROVAL:**
**BUILDING APPROVAL:**
**PERMIT ISSUED BY:** VASQUEZ  7/30/2002      **TCA:**

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more. Residential permit expiration: addition - 18 months, all others 6 months from date of permit.

---

**INSPECTION**

---

**CONTRACTOR WORKING HOURS**
Weekdays: 7 AM – 7 PM
Saturday:  9 AM – 6 PM
Sunday/Holiday: PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number _____
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

## CERTIFICATION OF COMPLETION

I certify that under date _____ of _____ that I made a final inspection of all work under the following permit types and from this inspection it appears that the Building or Facility is now ready for occupancy.  By _____ Date _____

## INDIVIDUAL APPROVAL

Plumbing By _____          Date _____

Mechanical By _____          Date _____

Electrical By _____          Date _____

Fire Sprinkler By _*signature*_          Date 1/6/05

Swimming Pool By _____          Date _____

Building By _____          Date _____

Grading By _____          Date _____

Encroachment By _____          Date _____

Landscaping By _____          Date _____

Construction Permit By _____          Date _____

OTHER_____ By _____          Date _____

## UTILITY RELEASES

Electrical By _____          Date _____

Gas By _____          Date _____

## BOND RELEASE

Bond Released By _____          Date _____

# Fire Sprinkler Alteration/Addition Permit

**City of Irvine**
**Building & Safety Division**
**Community Development Dept.**
**One Civic Center Plaza**
**PO Box 19575 Irvine, CA 92623-9575**
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6561



**DESCRIPTION OF WORK:**
LOCATION: CASALON AT QUAIL HILL
REVISION #1 FOR MODELS: BUILDING #28
ADD 2 HEADS

**00322550-FSI**

ADDRESS: 33 NIGHTSHADE
TRACT: 16258                    LOT: 1
APN:
PLANNING AREA:

OWNER:  JOHN LAING HOMES
ADDRESS: 895 DOVE ST 110
CITY, ST ZIP: NEWPORT BEACH CA 92660
PHONE: (949) 265-6857

APPLICANT:  AUTOMATIC FIRE SPRINKLERS
ADDRESS: 7272 MARS DR
CITY, ST ZIP: HUNTINGTON BEACH  CA 92647
PHONE: 714-841-2066

CONTRACT: Laura Asadi 714-841-2066

CONTRACTOR: AUTOMATIC FIRE SPRINKLERS INC
ADDRESS: 7272 MARS DR
CITY, ST ZIP: HUNTINGTON BEACH  CA 92647
CONTR LIC EXP: 7/31/2003
IRV BUS LIC: 24173          EXP DATE: 8/31/2002

CIP #

Automation Fee Inspection
FS Minimum Insp Fee
Issuance Fee Comm
Microfilm

2.40
48.00
35.00
10.50

**CONTRACTOR**

License Class    C16        Lic no.  513781

Date 8.21.02  Contractor AUTOMATIC FIRE SPRINKLERS INC

## LICENSED CONTRACTORS DECLARATION
I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

## OWNER-BUILDER

### OWNER-BUILDER DECLARATION
I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason.
☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale.
☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.
☐ I am exempt under Sec. _____ , B&PC, for the
Reason: _____
Date _____                           Owner _____

## WORKERS' COMPENSATION

### WORKERS' COMPENSATION DECLARATION
I hereby affirm under penalty of perjury one of the following declarations:
☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.
☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:

Carrier _____ State Fund Comp
Policy # X 1627996 01

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date 8.21.02  Applicant X _____

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

## LENDER

### CONSTRUCTION LENDING AGENCY
I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)

Lender's Name _____
Lender's Address _____

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of the city to enter upon the above-mentioned property for inspection purposes.

X _____
Signature of Applicant or Agent        Date 8.26.02
Print Applicant's/Agent's Name   Laura Asadi

VALUATION:
STORIES: 0
CODE YR:

USE

NO. UNITS:
TOT SQFT: 0

OCC

STORIES:

CONST. TYPE

SQ FT

**Total Permit Fees: $95.90**

**Receipt# 231094**

**TCA Receipt:**

PLAN CHECK #:    00317132-RNFS
PLANNING APPROVAL:
BUILDING APPROVAL:
PERMIT ISSUED BY: BILL MOORE  8/27/2002

TCA:

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more.  Residential permit expiration: addition - 18 months, all others 6 months from date of permit.

**INSPECTION**

**CONTRACTOR WORKING HOURS**
Weekdays:  7 AM – 7 PM
Saturday:  9 AM – 6 PM
Sunday/Holiday: PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number _____
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

## CERTIFICATION OF COMPLETION

I certify that under date _____ of _____ that I made a final inspection of all work under the following permit types and from this inspection it appears that the Building or Facility is now ready for occupancy.  By _____  Date _____

## INDIVIDUAL APPROVAL

Plumbing By _____          Date _____

Mechanical By _____          Date _____

Electrical By _____          Date _____

Fire Sprinkler By _____          Date  *11-18-02*

Swimming Pool By _____          Date _____

Building By _____          Date _____

Grading By  *T. Anderson*          Date  *11/21/02*

Encroachment By _____          Date _____

Landscaping By _____          Date _____

Construction Permit By _____          Date _____

OTHER_____ By _____          Date _____

## UTILITY RELEASES

Electrical By _____          Date _____

Gas By _____          Date _____

## BOND RELEASE

Bond Released By                                    Date

# EXHIBIT 187

# STATE OF CALIFORNIA
# DEPARTMENT OF REAL ESTATE

In reviewing a licensee's information, please be aware that license discipline information may have been removed from a licensee's record pursuant to Business & Professions Code Section 10083.2 (c). However, discipline information may be available from the California Department of Real Estate upon submittal of a request, or by calling the Department's public information line at 1-877-373-4542.

The license information shown below represents public information. It will not reflect pending licensing changes which are being reviewed for subsequent updating. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.

Some historical disciplinary action documents may not be in compliance with certain accessibility functions. For assistance with these documents, please contact the Department's Licensing Flag Section.

License information taken from records of the Department of Real Estate on 8/24/2025 9:26:53 AM

| | |
|---|---|
| **License Type:** | CORPORATION |
| **Name:** | JLH Realty & Construction Inc |
| **Mailing Address:** | 19520 JAMBOREE RD STE 500 <br> IRVINE, CA 92612 |
| **License ID:** | 01176549 |
| **Expiration Date:** | 03/15/10 |
| **License Status:** | EXPIRED |
| **Corporation License Issued:** | 03/16/94 (Unofficial -- taken from secondary records) |
| **Former Name(s):** | Watt Residential Construction Inc |
| **Main Office:** | NO CURRENT MAIN OFFICE ADDRESS ON FILE |
| **Licensed Officer(s):** | DESIGNATED OFFICER <br> 01783617 - Expiration Date: 03/15/10 <br> Mamet, Linda Helen <br> OFFICER LICENSE EXPIRED AS OF 03/16/10 <br><br> 00874521 - Expiration Date: 03/15/10 <br> Stelmar, Wayne James <br> OFFICER LICENSE EXPIRED AS OF 03/16/10 |
| **DBA** | NO CURRENT DBAS |
| **Branches:** | NO CURRENT BRANCHES |
| **Comment:** | NO DISCIPLINARY ACTION |
| | NO OTHER PUBLIC COMMENTS |
| | >>>> Public information request complete <<<< |

# EXHIBIT 188



Search

News & Analysis    Builder 100    Events

# Webb Steps Down as CEO of John Laing Homes

*1 MIN READ*

By [Sarah Yaussi, Big Builder Magazine](#)

April 30, 2008

The official release has yet to come out, but last week John Laing Homes CEO Larry Webb notified employees and trade partners that he was leaving the company. The move was a surprise to many stakeholders; Webb had contracted to stay on as CEO for five years when United Arab Emirates-based Emaar Properties purchased John Laing Homes for $1.05 billion in 2006. Robert Booth, managing director for Emaar Canada, will succeed Webb as chief executive.

Webb, a 20-plus-year industry veteran, got his start at John Laing as a division president in 1995. His fiery and magnetic personality quickly moved him into greater leadership roles in both the company and industry. Webb plans to use his newly found free time to relax and enjoy more time with his family.

The passing of the torch from Webb to Booth will take place over the next four weeks.

With a background in large-scale, master planned development, Booth has been a key player in Emaar's international expansion since joining the company in 2001. Booth spent five years in Dubai before moving to Canada, where he supervised Emaar's projects in North America. Based in Vancouver, he was heavily involved in the integration of John Laing Homes into the Emaar corporate fabric. Post acquisition, Booth helped oversee the company's land strategy as a participant in the executive land committee, playing a role in identifying expansion opportunities beyond the company's footprint in California and Colorado.

## About the Author

[Sarah Yaussi, Big Builder Magazine](#)

**RELATED TOPICS**                                                    SHARE

**SUBJECT**

Business    Development    Leadership

Big Builder

**PEOPLE**

Larry Webb    Robert Booth

**ORGANIZATION**

John Laing Homes

## Upcoming Events

**Aug 26, 2025**

Dispelling Myths and Maximizing Value: Unlock the Potential of Open Web Floor Trusses

Live Webinar

[Register for Free](#)

**Sep 9, 2025**

Zonda's Mortgage Playbook Webinar

Webinar

[Register Now](#)

**Sep 16, 2025**

Zonda's Market Expansion Opportunities Webinar

Webinar

[Register Now](#)

[All Events](#)

John Laing Homes

## More from Builder Magazine



**Resilience of Customer Base Contributes to Strong Q3 for Toll Brothers**

*3 MIN READ*



**Lowe's Acquires Distributor Foundation Building Materials for $8.8 Billion**

*3 MIN READ*



**Single-Family Starts Inch Higher as Builder Outlook Remains Pessimistic**

*3 MIN READ*

## Digital Edition

Builder Magazine Q3 2025

Subscribe

Magazine Archives

### Explore Our Sites

**MFE** | Multifamily Executive

**AHF** | Affordable Housing Finance

**JLC** | The Journal of Light Construction

**ARCHITECT**

**PSN** | Pool & Spa News

**AQUATICS** INTERNATIONAL

Builder Magazine is part of Zonda Media, a Delaware corporation | © 2025 All rights reserved

About     Advertise     Contact Us     Privacy Policy     Accessibility Statement

Powered by **Zonda**

# EXHIBIT 189

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| WL HOMES, LLC, <u>et al.</u>, | ) | Case No. 09-10571 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| —————————————— | ) | |
| | ) | |
| WACHOVIA BANK, NATIONAL | ) | Adv. No. 09-50514 |
| ASSOCIATION, a national banking | ) | |
| association, | ) | |
| | ) | Related to Docket Nos. 61, 62, 70, 71, |
| Plaintiff, | ) | and 72 |
| | ) | |
| v. | ) | |
| | ) | |
| WL HOMES, LLC (Debtor), a Delaware | ) | |
| Limited Liability Company; | ) | |
| JLH INSURANCE CORPORATION, an | ) | |
| Arizona Corporation; and | ) | |
| DOES 1 through 100, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————— | ) | |

Thomas M. Horan
Francis A. Monaco, Jr.
Womble Carlyle Sandridge & Rice
PLLC
222 Delaware Avenue, 15<sup>th</sup> Floor
Wilmington, DE 19801

Gregory A. Bray
Linda Dakin-Grimm
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

James D. Whooley
Milbank, Tweed, Hadley & McCloy LLP
601 S. Figueroa Street, 30<sup>th</sup> Floor
Los Angeles, CA 90017

Carl D. Neff
Daniel K. Astin
John D. McLaughlin, Jr.
Joseph J. McMahon, Jr.
Ciardi Ciardi & Astin
919 Market Street, Suite 700
Wilmington, DE 19801

Albert A. Ciardi, III
Carl E. Singley
William Baldini
Ciardi Ciardi & Astin
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103

Mark H. Ralston
Ciardi Ciardi & Astin
2603 Oak Lawn Avenue, Suite 200
Dallas, TX 75219

Rick Steinberg
Ciardi Ciardi & Astin
100 Church Street, 8th Floor
New York, NY 10007

Counsel for Plaintiff Wachovia Bank          Counsel for Defendants George L. Miller,
                                             Trustee for the Debtors' Estates and JLH
                                             Corporation

## OPINION [1]

Before the Court are cross-motions for summary judgment filed by Wachovia Bank,

National Association ("Wachovia"), and George L. Miller, Chapter 7 Trustee for the Estate of

WL Homes, LLC (the "Trustee"), respectfully.  For the following reasons, the Court will grant

the motion for summary judgment filed by Wachovia, and deny the motion for summary

judgment filed by the Trustee.

## I.  INTRODUCTION

This adversary proceeding is about the ability of a parent company to grant a security

interest in an asset of its subsidiary and the extent to which a third party may enforce such a

security interest.  The resolution of this issue turns on the legal significance that should be

accorded to the actions of an agent of both the parent and the subsidiary, wearing multiple hats

and presumptively acting on behalf of both entities.  The Court concludes that the fact that an

agent may represent more than one principal does not alter the well-established doctrine that an

---

[1]    Pursuant to Federal Rule of Bankruptcy Procedure 7052, this Opinion constitutes the
Court's findings of fact and conclusions of law.

agent with authority is capable of binding its principal. Accordingly, the Court finds that a security interest in the subsidiary's asset granted by the parent's agent to a third party is enforceable if it otherwise satisfies the requirements set forth in Article 9 of the Uniform Commercial Code ("U.C.C.").

## II. <u>BACKGROUND</u>

On February 19, 2009 (the "Petition Date"), WL Homes, LLC ("WL Homes") and various of its affiliates (collectively with WL Homes, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Shortly thereafter, the Debtors' chapter 11 bankruptcy cases were converted to cases under chapter 7 and George L. Miller was appointed the chapter 7 trustee for the purpose of administering the Debtors' estates.

Prior to the Petition Date, WL Homes had formed JLH Insurance Corporation ("JLH") under the Arizona Department of Insurance as a captive and wholly owned insurance company for the express purpose of paying claims against WL Homes arising out of its business activities. WL Homes capitalized JLH by depositing $10 million into a bank account (the "JLH Account"). JLH remains a non-debtor affiliate, but as a wholly owned subsidiary of WL Homes, it is under the control of the Trustee.

In 2007, WL Homes entered into a line of credit loan agreement (the "Loan Agreement") with Wachovia Bank. To induce the Loan Agreement and to secure WL Homes' repayment obligation, the Loan Agreement includes a provision (the "Security Interest Provision") pursuant to which WL Homes granted a security interest to Wachovia in the JLH Account and two other

deposit accounts held at Wachovia (the "Laing Luxury Accounts").  The Security Interest

Provision states, in relevant part:

> [WL Homes] shall maintain its . . . JLH Account . . . with
> [Wachovia].  The funds on deposit in the JLH Account shall at no
> time be less than $10,000,000.00.  [WL Homes] shall also maintain
> its Laing Luxury Accounts . . . with [Wachovia].  The JLH
> Account and the Laing Luxury Accounts are collectively referred
> to as the Deposit Accounts.  [WL Homes] grants to [Wachovia] a
> security interest in the Deposit Accounts.

Loan Agreement ¶ 6.5.

In 2008, WL Homes reaffirmed all of its obligations under the Loan Agreement to

Wachovia pursuant to two loan agreement letters (collectively, the "Loan Letters"), dated June

23, 2008 and July 31, 2008, respectively.  The Loan Letters were executed by Wayne Stelmar,

who at all relevant times was the CFO of WL Homes and the president of JLH.

On March 20, 2009, Wachovia commenced this adversary proceeding, seeking, inter alia,

a declaration that it holds a perfected security interest in the JLH Account and may enforce its

security interest to satisfy WL Homes' debt obligation to Wachovia under the Loan Agreement.

As of September 21, 2010, Wachovia contends that it is owed the principal amount of $10

million plus accrued interest in the amount of $1,105,486.

The parties have engaged in discovery.  Wachovia now moves for summary judgment,

seeking an order of the Court that it has an enforceable security interest in the JLH Account. [2]  In

---

[2]    The Court notes that Wachovia also seeks summary judgment as to the enforceability of
its security interest in the Laing Luxury Accounts.  However, this Opinion is limited to a
discussion of the enforceability of Wachovia's alleged security interest in the JLH Account.  The
Trustee does not dispute Wachovia's security interest in the Laing Luxury Accounts.  Although
the Trustee stated during oral argument his intention to file a fraudulent transfer action against
Wachovia with respect to the Laing Luxury Accounts, an examination of the Court's docket
reveals that no such action has been commenced, and under 11 U.S.C. § 546(a)(1), the deadline
to commence any avoidance actions passed on February 19, 2011.  The Court further notes that

response, the Trustee opposes summary judgment in favor of Wachovia, and cross-moves for summary judgment, seeking a declaration that the JLH Account could not have been legally pledged, and that JLH has neither authorized nor ratified the pledge by WL Homes of the JLH Account.

This matter has been fully briefed and argued, and it is now ripe for decision.

## III.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (K).

## IV.  DISCUSSION

### A.    Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  F ED. R. CIV. P. 56(a).[3]  The Supreme Court

---

the Trustee's Answer [Adv. Docket No. 24] to Wachovia's Complaint [Adv. Docket No. 1] includes three counterclaims, among them a fraudulent transfer cause of action by JLH against Wachovia.  That counterclaim, however, concerns only the JLH Account and does not implicate the Laing Luxury Accounts.  Whereas the existence of an action by the Trustee with respect to the Laing Luxury Accounts would permit the Court to reserve judgment on the enforceability of Wachovia's security interest in these accounts, the absence of such action and the absence of any dispute as to the Laing Luxury Accounts requires the Court to conclude that Wachovia has an enforceable security interest in the Laing Luxury Accounts and thereby dispose of this issue. The remainder of the Opinion focuses entirely on the enforceability of Wachovia's asserted security interest in the JLH Account.

[3]    Federal Rule of Civil Procedure 56 was amended as of December 1, 2010.  Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c).  F ED. R. CIV. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward

has explained that an issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Supreme Court further explained that materiality is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment may be properly granted "as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways."  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (5th Cir. 1991), cert. denied, 504 U.S. 985 (1992).

The movant bears the burden of establishing the absence of a genuine dispute as to a material fact.  Celotex, 477 U.S. at 322-23 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (citing FED. R. CIV. P. 56).

After the movant has made the requisite showing, the burden shifts to the non-movant to establish that summary judgment is not warranted.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Federal Rule of Civil Procedure 56(c) requires that a party "asserting that a fact cannot be or is genuinely disputed" has to support such an allegation

---

the summary-judgment standard expressed in former subdivision (c), changing only one word— genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").

by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." F ED. R. CIV. P. 56(c). Thus, a party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and instead must produce specific facts that establish the existence of a genuine dispute. Id. at 587. Without factual corroboration, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

In deciding a motion for summary judgment, the court must view all facts in the light most favorable to the non-movant to determine whether the movant is nonetheless entitled to judgment as a matter of law. Anderson, 477 U.S. at 261 n.2; Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 680 (2003) (citation omitted). Moreover, the court must draw all inferences in favor of the non-movant and "where the non-moving party's evidence contradicts the movant's . . . the non-movant's must be taken as true." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994) (internal quotation marks omitted) (citation omitted). See also Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976) ("Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The non-movant's

allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.").

In accordance with these standards, a motion for summary judgment may only be denied "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita, 475 U.S. at 587 (citation omitted). Therefore, the Third Circuit has held that "in all cases summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." Petruzzi's IGA Supermarkets v. Darling-Del. Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

Finally, the standard for summary judgment remains unaffected where the parties have filed cross-motions for summary judgment. In deciding cross-motions for summary judgment, the court must consider each party's motion separately and independently. Panhandle E. Pipe Line Co. v. Utilicorp United Inc., 928 F. Supp. 466, 470 (D. Del. 1996) (citing Williams v. Phila. Hous. Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994)).

**B.      Wachovia's Motion for Summary Judgment**

Wachovia seeks summary judgment in its favor on the issue of whether it has an enforceable security interest in the JLH Account. Wachovia asserts that it has established all elements necessary to show that it has an enforceable security interest in this account. Article 9 of the U.C.C., adopted in all relevant respects in California, provides that a security interest attaches to collateral when it becomes enforceable against the debtor. Cal. Com. Code § 9203(a). Specifically with respect to deposit accounts, U.C.C. § 9-203 provides that a security

8

interest becomes enforceable when the following three conditions are satisfied: (1) value has been given; (2) there is a valid security agreement and the collateral is a deposit account over which the secured party has control; and (3) the debtor has rights in the collateral or the power to transfer rights in the collateral.  CAL. COM. CODE §§ 9203(b), 9104(a)(1).

The Trustee does not dispute that value has been given or that Wachovia has control over the JLH Account.  The Trustee does dispute, however, that WL Homes has rights in the JLH Account sufficient to effectuate a pledge of this account as security to Wachovia.  To prevail on its motion, Wachovia has the burden to provide sufficient factual support in defense of each of the elements of an enforceable security interest.  The Court addresses each element in turn.

### 1.    <u>Value Given</u>

Wachovia asserts that value has been given as required by U.C.C. § 9-203.  It is well established that the extension of credit constitutes value.  CAL. COM. CODE § 1204 ("[A] person gives value for rights if the person acquires them . . . in return for a binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon and whether or not a chargeback is provided for in the event of difficulties in collection . . . .").

Here, the Loan Agreement between Wachovia and WL Homes establishes that Wachovia has given value to WL Homes in exchange for its security interest in the JLH Account.  The Trustee does not dispute Wachovia's assertion that value has been given or the validity of the Loan Agreement.  Accordingly, the Court finds that value has been given, such that the first prong of an enforceable security interest in the JLH Account has been established.

9

**2.    Valid Security Agreement and Wachovia's Control over the JLH Account**

Wachovia also asserts that there is a valid security agreement and that Wachovia has the requite control over the JLH Account.  The Loan Agreement containing the Security Interest Provision is a security agreement whose validity is uncontested.  Thus the Court concludes a valid security agreement exists.

The U.C.C. provides that a secured party has control over a deposit account if the secured party is the bank in which the account is maintained.  CAL. COM. CODE § 9014.  Here, Wachovia asserts that it has control over the JLH Account by virtue of being the banking institution at which this account is maintained.  To support its contention, Wachovia has submitted an account statement along with the depository authorization and agreement certificate (the "Depository Certificate") pursuant to which the JLH Account was opened.  Again, the Trustee disputes neither that the JLH Account is a deposit account maintained at Wachovia, nor that Wachovia has control over this account by virtue of its banking relationship.  Accordingly, the Court finds that Wachovia has the requisite control over the JLH Account, such that the second prong of an enforceable security interest in the JLH Account has been established.

**3.    WL Homes' Rights in the JLH Account**

Finally, Wachovia asserts that WL Homes has sufficient rights in the JLH Account to satisfy the U.C.C. requirements for attachment of its security interest in this account.  Wachovia relies upon four independent legal theories to show that WL Homes has rights in the JLH Account.  First, Wachovia asserts that WL Homes exerts sufficient control over the JLH Account to give rise to the requisite rights in this account to grant the security interest.  Second, Wachovia asserts that JLH consented and impliedly gave WL Homes permission to use the JLH Account as

10

collateral.  Third, Wachovia alleges that JLH should be estopped from denying the validity of

Wachovia's security interest in the JLH Account.  Finally, Wachovia invokes the alter ego

doctrine to allege the propriety of enforcing its security interest against JLH.  The Trustee

disputes Wachovia's assertion that WL Homes has sufficient rights in the JLH Account to

effectuate attachment.

The Court finds that WL Homes has sufficient rights in the JLH Account for two

independent reasons: (1) WL Homes' use and control of the JLH Account, and (2) JLH's consent

and permission to use the JLH Account as collateral.  Because each of these theories

independently establishes that WL Homes has sufficient rights in the JLH Account for the

purpose of granting a security interest in the account, the Court does not reach WL Homes'

estoppel and alter ego arguments.

### a.    Use and Control

Under the U.C.C., a debtor need not have title to collateral in order to grant a security

interest in such collateral.  The Third Circuit has held that "[Article 9 of the U.C.C.] does not

specify the quantum of 'rights' which a debtor must have in collateral to support a security

interest: evidently less than full 'legal title' will do . . . ."  In re Ferandos, 402 F.3d 147, 156 (3d

Cir. 2005).  Case law teaches that "control over the collateral, rather than record ownership, is

the key factor in determining a debtor's rights in collateral" for the purpose of granting a security

interest.  First Nat'l Bank of Omaha v. Pleasant Hollow Farm, Inc., 532 N.W.2d 60, 63 (S.D.

1995).  The Courts of Appeal in the Eleventh Circuit and the Ninth Circuit have both held that

while mere possession of collateral is not sufficient to establish that a debtor has rights in such

collateral, any right beyond mere possession, including the right to use and control the collateral,

11

suffices to establish the debtor's rights for the purpose of attachment of a security interest in such collateral.  Foothill Capital Corp. v. Clare's Food Market, Inc. (In re Coupon Clearing Serv., Inc.), 113 F.3d 1091, 1103 (9th Cir. 1997) ("While section 9203(1)(c) does not require that a debtor own or hold title to the collateral, mere possession of collateral by a debtor is not sufficient to constitute 'rights in the collateral' under section 9203.  Where a debtor has rights to collateral beyond naked possession, a security interest may attach to such rights.") (citations omitted); Merchants Bank v. Atchison (In re Atchison), 832 F.2d 1236, 1239 (11th Cir. 1987) ("[A] debtor's rights in the collateral may be found from any rights going beyond mere possession, such as the right to use and control the collateral.") (citations omitted).  The court in Atchison, for example, determined that the debtor retained use and control of certain equipment that was pledged as collateral "because the equipment was in everyday use at the [debtor's] lumberyard."  Atchinson, 832 F.2d at 1240.

Here, Wachovia asserts that WL Homes has sufficient rights in the JLH Account to grant a security interest in this account because WL Homes has the right to use and control this account.  In support of its assertion, Wachovia directs the Court's attention to the Depository Certificate, pursuant to which five of the seven signers who are authorized to manage the JLH Account are exclusively WL Homes officers.  The other two signers—Wayne J. Stelmar and Kimberly Forbes—are officers of both WL Homes and JLH.

As additional support for Wachovia's allegation that WL Homes controls the JLH Account, Wachovia cites to the deposition testimonies of James Chang, the Controller at WL Homes, and Kimberly Wack of Aon, the manager of JLH that WL Homes employed.  Mr. Chang stated that "if anybody [from JLH] needed to transfer [money out of the JLH Account at

12

Wachovia], they would have to contact [him]." Whooley Declaration, Ex. 6 at 50:13-19. In response to a question about whether "the wrong people were identified as authorized representatives" with respect to the JLH Account, Ms. Wack testified that "[a]s long as they're all WL Homes employees, [she] would not see anything wrong with that." Whooley Declaration, Ex. 5 at 112:2-6. Based on these factual allegations, it appears that the JLH Account has been exclusively controlled by WL Homes.

The Trustee has not come forward with any evidence that contradicts Wachovia's allegations concerning WL Homes' use and control of the JLH Account. Without factual support, the Trustee's mere contention that "WL Homes had no legal rights in the [JLH Account]" is insufficient to withstand a properly supported motion for summary judgment on this issue. Accordingly, the Court accepts Wachovia's uncontroverted evidence that WL Homes has the right to use and control the JLH Account and therefore has had sufficient rights in the JLH Account to give rise to Wachovia's security interest in it.

### b.    Consent and Permission

The established case law is clear that a debtor may grant a security interest in collateral that the debtor does not actually own if the owner of such collateral consents to such an arrangement, because "all of the courts that have considered the question have ruled that an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest." Atchison, 832 F.2d at 1239 (citations omitted); see also K.N.C. Wholesale, Inc. v. Awmco, Inc., 128 Cal. Rptr. 345, 349 (Cal. Ct. App. 1976) ("[A] debtor who does not own collateral may nonetheless use the collateral for security, thereby obtaining 'rights

13

in the collateral,' when authorized to do so by the actual owner of the collateral.") (citations omitted).

A court may infer from the circumstances that an owner has granted permission to a debtor to use its property as collateral or has otherwise consented to the debtor's use of the owner's property as collateral.  In <u>Atchinson,</u> for instance, the owner of certain equipment signed a mortgage on behalf of a corporation of which he was an officer and shareholder, pursuant to which he pledged his equipment as security for the repayment of the mortgage.  The <u>Atchinson</u> court held that the owner of the collateral at issue had "himself signed the mortgage on behalf of the corporation; even if he did own the [collateral], his signature for [the corporation] was sufficient to infer his consent to its use as collateral."  <u>Atchison,</u> 832 F.2d at 1239.  Similarly, the court in <u>K.N.C. Wholesale</u> inferred that a subsidiary had impliedly consented to the pledge of its equipment by its parent for the purpose of securing a loan by a lender to the parent, on the condition that the parent obtain a liability release for the same loan from the lender in favor of the subsidiary.  <u>K.N.C. Wholesale,</u> 128 Cal. Rptr. at 348.

Here, based upon Wachovia's proffered evidence, the Court concludes that JLH has consented to WL Homes' pledge of the JLH Account as collateral for the Loan Agreement.  Pursuant to the Loan Agreement and the Security Interest Provision therein, WL Homes pledged to maintain the JLH Account with Wachovia and granted a security interest in this account to Wachovia to secure WL Homes' obligation under the Loan Agreement.  Mr. Stelmar subsequently signed the Loan Letters, pursuant to which WL Homes reaffirmed all of its obligations to Wachovia under the Loan Agreement.

14

Even though Mr. Stelmar signed the Loan Letters on behalf of WL Homes, his concurrent position as president of JLH cannot be overlooked.  Courts have held that "[i]f the president, vice-president or director of a corporation has knowledge or notice of a fact, knowledge or notice of that fact is generally imputed to the corporation."  In re Pubs, Inc. of Champaign, 618 F.2d 432, 438 (7th Cir. 1980) (citations omitted).  See also Buchanan v. Reliance Ins. Co. (In re Color Tile Inc.), 475 F.3d 508, 513 (3d Cir. 2007) ("Where an agent receives notice, that notice is imputed to the principal.") (citing Am. Sur. Co. v. Pauly, 170 U.S. 133, 153 (1898)).  Therefore, Mr. Stelmar's knowledge of WL Homes' pledge of the JLH Account as security to Wachovia may be properly imputed to JLH, such that JLH is chargeable with Mr. Stelmar's knowledge as of such pledge.[4]

Moreover, as in Atchison, Mr. Stelmar's signature on behalf of WL Homes is further evidence of his consent to such an arrangement on behalf of JLH.  Under the doctrine of apparent authority, Wachovia was entitled to believe that Mr. Stelmar had the requisite authority to consent to and reaffirm WL Homes' pledge of the JLH Account on behalf of JLH.  The Third Circuit has cautioned that "[a]pparent authority can exist only to the extent that it is reasonable

---

[4]     The Trustee asserts, and refers to deposition testimony in support his assertion, that WL Homes and JLH were unaware of the Security Interest Provision in the Loan Agreement, pursuant to which WL Homes granted Wachovia a security interest in the JLH Account and the Laing Luxury Accounts.  However, "[i]t has long been the common law rule that signing a document authenticates and adopts the words it contains, even if there was a lack of subjective understanding of the words or their legal effect.  In essence, people are presumed to be bound by what they sign."  In re Schwalb, 347 B.R. 726, 743 (Bankr. D. Nev. 2006) (citations omitted).  Therefore, whether Mr. Stelmar was subjectively aware of the pledge of the JLH Account is of no moment because he is charged with notice of the contents of the Loan Letters, and to the extent that they referred to and reaffirmed WL Homes' obligations in the Loan Agreement, Mr. Stelmar is thereby also charged with notice of the contents of the Loan Agreement.  Accordingly, through Mr. Stelmar, JLH is chargeable with the knowledge of Wachovia's security interest in the JLH Account.

15

for the third party dealing with the agent to believe the agent is authorized."  Burtch v. Ganz (In re Mushroom Transp. Co.), 382 F.3d 325, 345 (3d Cir. 2004) (internal quotation marks omitted) (citation omitted).  See also Universal Computer Sys., Inc. v. Med. Servs. Ass'n of Pa., 628 F.2d 820, 823 (3d Cir. 1980) ("The test for determining whether an agent possesses apparent authority is whether 'a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise.'") (citation omitted).

Here, in light of Mr. Stelmar's position as the president of JLH, Wachovia was entitled to rely on the presumption that Mr. Stelmar had sufficient authority to consent to the Security Interest Provision in the Loan Agreement, which was subsequently affirmed pursuant to the Loan Letters.  The fact that Mr. Stelmar did not contest the explicit acknowledgement of the obligations, including those in the Security Interest Provision, provides a sufficient basis for the Court to infer that he consented to them.  The Court concludes that Mr. Stelmar's signature on the Loan Letters is sufficient evidence of both JLH's awareness of Wachovia's security interest and JLH's consent and implicit permission to use the JLH Account for such purpose.

Wachovia has carried its burden of establishing that WL Homes has the requisite rights in the JLH Account, both by virtue of its use and control of the JLH Account and by virtue of JLH's implied consent.  Accordingly, Wachovia is entitled to summary judgment on the issue that it has an enforceable security interest in the JLH Account.

16

**C.**    **The Trustee's Motion for Summary Judgment**

The Trustee has cross-moved for summary judgment, seeking a declaratory judgment of the Court that (1) JLH was legally prohibited from pledging the JLH as security, and (2) JLH neither authorized nor ratified WL Homes' pledge of the JLH Account as security to Wachovia.

**1.**    **Arizona Insurance Law**

The Trustee argues that the pledge of the JHL Account violates Arizona law and is therefore invalid on the ground of illegality.  Specifically, the Trustee cites to five Arizona statutory provisions in support of his argument.

First, the Trustee argues that pledging the JLH Account would have violated the requirement that a captive insurer "possess[] and thereafter maintain[] minimum unimpaired paid-in capital and surplus."  ARIZ. REV. STAT. ANN. § 20-1098.03(A) (West).  In the case of a pure captive insurer, a categorization that indisputably applies to JLH,  the minimum statutory amount is $250,000.  Id. § 20-1098.03(A)(1).  The Trustee argues that the security interest in the JLH Account would have caused JLH's capital and surplus to drop below the required minimum.  However, Wachovia has proffered evidence in the form of a bank statement that could lead the Court to conclude that a security interest in the JLH Account would not cause JLH to drop below the minimum statutory amount.  Viewing the facts in the light most favorable to Wachovia, the Court cannot summarily find that this provision has been violated.

Second, the Trustee alleges that JLH could have pledged its assets only with the approval of the Arizona Department of Insurance (the "DOI").  Under Arizona insurance law, a "captive insurer may pledge, with the approval of [DOI], any additional prescribed capital and surplus, whether in the form of cash, another allowable asset or any irrevocable and unconditional letter

of credit that contains an evergreen clause." Id. § 20-1098.03(C).  The Trustee avers the absence

of such approval, and Wachovia has not alleged otherwise.  However, as discussed earlier, it is

WL Homes, and not JLH, that has pledged the JLH Account as collateral for the Loan

Agreement.  Thus, it appears that JLH has not violated this provision.  However, to the extent

that JLH may be found to have violated this provision, the only consequence of such a violation

would be the revocation of JLH's license or the refusal of the DOI to renew such license.  See id.

§ 20-1098.03(A).

Third, the Trustee argues that pledging the JLH Account would have threatened JLH's

solvency and would therefore not be permitted by the DOI.  Based upon the relevant statute, "a

pure captive insurer is not subject to restrictions on allowable investments, except that [the DOI]

may prohibit or limit any investment that threatens the solvency or liquidity of the pure captive

insurer."  Id. § 20-1098.10(B).  This provision does not appear to apply to the facts at bar

because there is no contention that JLH has made any "investments."  Moreover, as noted above,

the financial impact of the pledge of the JLH Account is disputed, and the Court must view the

facts in the light most favorable to Wachovia.  Finally, this provision empowers the DOI to

restrict JLH's investments but does not actually prohibit, restrict, or penalize such investments.

Thus, the Court cannot find that JLH has violated this provision.

Fourth, the Trustee asserts that the pledge of the JLH Account would have violated the

restrictions placed on a captive insurer with respect to loans.  Under Arizona law, "[o]nly a pure

captive insurer may make loans to its affiliates."  Id. § 20-1098.10(C).  Such a loan must be

evidenced by a note, and "[b]efore making any such loan, the pure captive insurer shall obtain

the [DOI's] written approval to make the loan and approval for the form of the note."  Id.  The

18

evidence is undisputed that JLH and WL Homes did not execute a note or loan agreement, with or without DOI approval.  However, there is no allegation that JLH actually made a "loan" to WL Homes and thereby violated this provision.  Moreover, there is no corollary provision that would invalidate a pledge of JLH's assets, even in the event that such a pledge is deemed to be a "loan" under such provision.

Lastly, the Trustee argues that the pledge of the JLH Account would have violated the requirement that a captive insurer obtain DOI approval "before implementing any material change in its plan of operations."  Id. § 20-1098.22.  The Trustee asserts, without any factual allegations in support thereof, that a pledge of the JLH Account "would no doubt have a material change in [JLH's] plan of operations."  In rebuttal, Wachovia contends that, following the grant of the security interest, JLH "continued its operations normally during 2008 and even realized a net profit during that year."  Neither party has proffered any evidence to corroborate their respective positions.  Accordingly, the Court finds that the Trustee has not carried its burden of establishing that the pledge of the JLH Account constitutes a "material change in its operation."

Accordingly, the Court finds that the Trustee is not entitled to summary judgment in its favor on the issue of whether the pledge of the JLH Account has violated applicable Arizona insurance law.[5]

---

[5]    Furthermore, the Court finds that to the extent that any provisions of Arizona insurance law may have been violated on account of the pledge of the JLH Account, such violations, if any, would not invalidate an otherwise valid security interest held by Wachovia.  Under California law, "a borrower cannot avoid payment on his loan on the ground that the loan was made in violation of statutory provisions regulating the maximum amount of loans which a lending institution may make," Coronet Credit Corp. v. West Thrift Co., 53 Cal. Rptr. 433, 443 (Cal. Ct. App. 1966), because such a result could inequitably reward the party who committed such a violation.  At most, JLH's violation would be redressed through statutory penalties and fines.

**2.**    **JLH's Authorization and/or Ratification**

The Trustee also requests summary judgment that JLH is not a party to the Loan Agreement pursuant to which Wachovia asserts its security interest in the JLH Account.  The Court notes that there is no factual dispute on the issue of whether JLH is a party to the Loan Agreement, and the Loan Agreement itself makes it abundantly clear that WL Homes and Wachovia are the only parties to this agreement.  Accordingly, the Court must grant summary judgment in the Trustee's favor on this issue.  However, the Court notes that whether JLH is a party to the Loan Agreement is immaterial to the issue of whether Wachovia has an enforceable security interest in the JLH Account.  Similarly, whether JLH has authorized and/or ratified the Loan Agreement and/or the pledge of the JLH Account as collateral is equally immaterial, so long as WL Homes has sufficient rights in the JLH Account to grant the security interest, and for the reasons articulated above, the Court has already found that WL Homes has the requisite rights to effectuate an enforceable security interest in favor of Wachovia in the JLH Account.

20

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the motion for summary judgment filed by

Wachovia.[6]  The Court will deny the motion for summary judgment filed by the Trustee to the

extent that it seeks a declaration that Wachovia's security interest is invalid.  An appropriate

Order follows.

BY THE COURT:

Dated:        Wilmington, Delaware
              May 25, 2011                    _____
                                              Brendan Linehan Shannon
                                              United States Bankruptcy Judge

---

[6]        The Court notes that, with respect to the JLH Account, WL Homes and JLH have
asserted counterclaims against Wachovia for conversion, turnover pursuant to 11 U.S.C. § 542,
and fraudulent transfer.  Adv. Docket No. 24, ¶¶ 136-59.  These counterclaims and causes of
action are not presently before the Court in the context of the cross-motions for summary
judgment at bar.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| WL HOMES, LLC, <u>et al.</u>, | ) | Case No. 09-10571 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| —————————————— | ) | |
| | ) | |
| WACHOVIA BANK, NATIONAL | ) | Adv. No. 09-50514 |
| ASSOCIATION, a national banking | ) | |
| association, | ) | |
| | ) | Related to Docket Nos. 61, 62, 70, 71, |
| Plaintiff, | ) | and 72 |
| | ) | |
| v. | ) | |
| | ) | |
| WL HOMES, LLC (Debtor), a Delaware | ) | |
| Limited Liability Company; | ) | |
| JLH INSURANCE CORPORATION, an | ) | |
| Arizona Corporation; and | ) | |
| DOES 1 through 100, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————— | ) | |

## <u>ORDER</u>

Upon consideration of the motion for summary judgment (the "Motion for Summary

Judgment") [Adv. Docket No. 61] filed by Wachovia Bank, National Association ("Wachovia");

the response to the Motion for Summary Judgment and the cross-motion for summary judgment

(the "Cross-Motion for Summary Judgment") [Adv. Docket No. 70] filed by George L. Miller,

Chapter 7 Trustee for the Estate of WL Homes, LLC (the "Trustee"); and the reply thereto [Adv.

Docket No. 72]; and the Court having conducted a hearing on this matter; and for the reasons set

forth in the accompanying Opinion, it is hereby

**ORDERED**, that the Motion for Summary Judgment filed by Wachovia is **GRANTED**;
and it is further

**ORDERED**, that the Cross-Motion for Summary Judgment filed by the Trustee is
**DENIED**.

BY THE COURT:

Dated:    Wilmington, Delaware
          May 25, 2011                    Brendan Linehan Shannon
                                          United States Bankruptcy Judge

2

# EXHIBIT 190

# Home builder John Laing files for bankruptcy

By Reuters

February 20, 2009 4:35 PM GMT-4 ·
Updated February 20, 2009

 

Summary

Files for Chapter 11 protection

Lists assets of $1.4 bln and liabilities of $937 mln

Exiting Colorado, Arizona and Texas operations

(Changes throughout, adds background)

By Santosh Nadgir and Emily Chasan

Get a look at the day ahead in U.S. and global markets with the Morning Bid U.S. newsletter. Sign up here.

BANGALORE/NEW YORK, Feb 20 (Reuters) - The U.S. home builder known as John Laing Homes, a unit of Dubai builder Emaar Properties , sought Chapter 11 bankruptcy protection on Thursday, citing a sharp decline in new home sales.

The company, which was acquired by Emaar for $1.05 billion in June 2006, filed its bankruptcy petition in the U.S. Bankruptcy Court in Delaware under the name WL Homes LLC, but said it does business as John Laing Homes.

Advertisement · Scroll to continue

It listed assets of about $1.4 billion and liabilities of about $937 million. Five U.S. affiliates of the

Exclusive news, data and analytics for financial market professionals 

Reuters   World ⌄     My News  🔍     Sign In     Subscribe - $1/wk

Business ⌄

Markets ⌄

Sustainability ⌄

Legal ⌄     More ⌄

estates.

The company is exiting operations in Colorado,
Texas and Arizona and plans to focus on its
flagship homebuilding and luxury units in
Southern California, according to court papers.

The luxury unit builds homes for high-end buyers
with sale prices approaching $10 million per home,
it said.

Advertisement · Scroll to continue

After the 2006 acquisition, Emaar planned to
expand the John Laing Homes brand to a national

homebuilding platform, the company said in court papers.

In connection with these plans, John Laing Homes had built an Emaar Design Studio division and expanded to other projects, but now the company said it was "in the process of analyzing which, if any, of the Emaar-related projects will continue."

Emaar took a 750 million dirham goodwill writedown related to John Laing Homes in October last year.

In documents filed with the court, John Laing Homes said it sold about 560 homes and posted revenue of $287 million between January and November last year. It was a sharp decline from 2007 when it sold 1,371 homes and posted revenue of $948 million.

John Laing Homes said its origins dated back to 1848 in Great Britain when James Laing built his first home in the English countryside. It entered the U.S. market in 1984.

AD  00:00   Coming up:  Dow notches re

The case is In re: WL Homes LLC, U.S. Bankruptcy Court, District of Delaware, No. 09-10571.

## Sponsored Content



Editing by Himani Sarkar

Our Standards: The Thomson Reuters Trust Principles. ↗

Suggested Topics    Markets

        Purchase Licensing Rights

## Read Next     

ECB rate cut talk may resume after September pause, sources say

Business

Wall St Week Ahead Investors zero in on Nvidia results as US tech stocks waver

## Sponsored Content

Advertise Here

Markets >

Markets

Cool it with the credit ratings critiques. We need them more than ever

August 22, 2025

Business

Asia's imports of US LNG to surge, but likely not enough for Trump

August 21, 2025

# Latest updates: Wall Street rallies after Powell hints at possible Fed rate cut

World · August 22, 2025 · 19 hours ago

As Fed Chairman Jerome Powell spoke at the annual conference in Wyoming, U.S. President Donald Trump threatened to fire Fed Governor Lisa Cook.

Markets

Washington's chip stakes look like industrial policy on overdrive

August 21, 2025

U.S. Markets

Fed's dilemma between AI and housing

August 20, 2025

Latest          Browse              Media               About Reuters

Home            World            🎥 Videos              About Reuters ⬈

Authors         Business         📷 Pictures            Advertise with Us ⬈

Topic Sitemap   Markets          📊 Graphics            Careers ⬈

Archive         Sustainability   🎧 Podcasts            Reuters News Agency ⬈

Article Sitemap Legal                                  Brand Attribution Guidelines ⬈

                Breakingviews                          Reuters and AI ⬈

                Technology                             Reuters Leadership ⬈

                Investigations                         Reuters Fact Check

                Sports                                 Reuters Diversity Report ⬈

                Science                                Commercial Disclosure (Japan) ⬈

                Lifestyle
                                                       Stay Informed

                                                       Download the App (iOS) ⬈

                                                       Download the App (Android) ⬈

                                                       Newsletters

                                                       Subscribe

---

## Information you can trust

Reuters, the news and media division of
Thomson Reuters, is the world's largest
multimedia news provider, reaching billions
of people worldwide every day. Reuters
provides business, financial, national and
international news to professionals via
desktop terminals, the world's media
organizations, industry events and directly
to consumers.

## Follow Us

    

## LSEG Products

### Workspace⎘

Access unmatched financial data, news and content in a highly-customised workflow experience on desktop, web and mobile.

### Data Catalogue⎘

Browse an unrivalled portfolio of real-time and historical market data and insights from worldwide sources and experts.

### World-Check⎘

Screen for heightened risk individual and entities globally to help uncover hidden risks in business relationships and human networks.

**Advertise With Us**⎘  **Cookies**⎘  **Terms & Conditions**  **Privacy**⎘  **Digital Accessibility**⎘**Corrections**
**Advertising Guidelines**                                                                                      **Site Feedback**⎘
**Purchase Licensing Rights**⎘  **Do Not Sell or Share My Personal Information and Limit the Use of My Sensitive Personal Information**

All quotes delayed a minimum of 15 minutes. See here for a complete list of exchanges and delays.

© 2025 Reuters. All rights reserved