**Exhibit 201**

| | | | |
|---|---|---|---|
| Mortgage Payments to Date | $149,946.54 | $172,991.78 | Interest |
| Down Payment | $80,867.45 | $107,634.58 | |
| Permanent Fixtures (non-transferable improvements): | $58,275.73 | $77,565.00 | |
| Other Incidentals (fees, inspections, alternative lodging, travel, etc.) | $19,590.20 | $22,601.01 | |
| | | | |
| | | | |
| Total | $308,679.92 | $380,792.37 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Renter Conditional Mitigation Costs | $45,056.29 | $51,980.98 | |

| | |
|---|---|
| Cleaning Fees 2023 | $4,300.00 |
| Cleaning Fees 2024 | $4,450.00 |
| Cleaning Fees 2025 | $2,225.00 |
| HOA Fee 2023 | $1,045.00 |
| Insurance 2023 | $1,946.00 |
| HOA Fee 2024 | $1,045.00 |
| Insurance 2024 | $1,417.10 |
| HOA Fee 2025 | $1,045.00 |
| Insurance 2025 | $1,417.10 |
| Engineer Inspection 1 | $350.00 |
| Engineer Inspection 2 | $350.00 |
| | |
| | |
| | |
| Total | $19,590.20 |

| | |
|---|---|
| Earnest Money | $48,388.00 |
| Closing payment | $32,479.45 |
| | |
| Total | $80,867.45 |

| | |
|---|---|
| Solar | $21,114.74 |
| Interior Design Fee 1 | $1,400.00 |
| Hunter Douglas Blinds | $20,340.28 |
| Norman Roller Shades | $2,795.84 |
| Lights and Fixtures | $2,985.05 |
| Interior Design Fee 2 | $2,145.00 |
| ZLINE Fridge | $5,357.04 |
| LG Washtower | $2,137.78 |
| | |
| | |
| | |
| | |
| | |
| Total | $58,275.73 |

| UWM | | Mr. Cooper | | 2024 |
|---|---|---|---|---|
| 03/01/2023 | $4,511.12 | | | |
| 04/03/2023 | $4,511.12 | 10/01/2025 | $4,918.16 | |
| 05/01/2023 | $4,511.12 | 09/01/2025 | $4,918.16 | |
| 06/01/2023 | $4,511.12 | 08/01/2025 | $4,918.16 | |
| 07/03/2023 | $4,511.12 | 07/01/2025 | $4,918.16 | |
| 08/01/2023 | $4,511.12 | 06/01/2025 | $4,918.16 | |
| 09/01/2023 | $4,511.12 | 05/01/2025 | $4,918.16 | |
| 10/02/2023 | $4,511.12 | 04/01/2025 | $4,819.82 | |
| 11/01/2023 | $4,511.12 | 03/01/2025 | $4,819.82 | |
| 12/01/2023 | $4,511.12 | 02/01/2025 | $4,679.76 | |
| 01/02/2024 | $4,511.12 | 01/01/2025 | $4,679.76 | |
| 02/01/2024 | $4,511.12 | 12/01/2024 | $4,679.76 | |
| 03/01/2024 | $4,679.76 | 11/01/2024 | $4,679.76 | |
| | | 10/01/2024 | $4,679.76 | |
| | | 09/01/2024 | $4,679.76 | |
| | | 08/01/2024 | $4,679.76 | |
| | | 07/01/2024 | $4,679.76 | |
| | | 06/01/2024 | $4,679.76 | |
| | | 05/01/2024 | $4,679.76 | |
| | | 04/08/2024 | $4,679.76 | |
| | | 04/01/2024 | $507.38 | |
| | | | | |
| | | | | |
| | | | | Grand Total |
| Total | $58,813.20 | | $91,133.34 | $149,946.54 |

| Date | Type | | Description | Status | Amount |
|---|---|---|---|---|---|
| 10/01/2025 | RENT | | 5131 Vivian St Room 1 - Coy | UNPAID | $1,050.00 |
| 10/01/2025 | RENT | | 5131 Vivian St Room 2 | UNPAID | $1,150.00 |
| 10/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | UNPAID | $1,250.00 |
| 09/01/2025 | RENT | | 5131 Vivian St Room 1 - Coy | PAID | $1,050.00 |
| 09/01/2025 | RENT | | 5131 Vivian St Room 2 | PAID | $1,150.00 |
| 09/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 08/01/2025 | RENT | | 5131 Vivian St Room 1 - Coy | PAID | $1,050.00 |
| 08/01/2025 | RENT | | 5131 Vivian St Room 2 | PAID | $1,150.00 |
| 08/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 07/28/2025 | SECURITY_DEPOSIT | | 5131 Vivian St Room 1 - Coy | PAID | $525.00 |
| 07/28/2025 | RENT | Initial Prorated Rent | 5131 Vivian St Room 1 - Coy | PAID | $203.22 |
| 07/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 07/01/2025 | RENT | | 5131 Vivian St Room 2 | PAID | $1,150.00 |
| 06/24/2025 | SECURITY_DEPOSIT | | 5131 Vivian St Room 2 | PAID | $575.00 |
| 06/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 06/01/2025 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 05/06/2025 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 05/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 05/01/2025 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 04/06/2025 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 04/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 04/01/2025 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 03/06/2025 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 03/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 03/01/2025 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 02/06/2025 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 02/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 02/01/2025 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 01/06/2025 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 01/01/2025 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 01/01/2025 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 12/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |

| 12/01/2024 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 12/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 11/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 11/01/2024 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 11/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 10/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 10/01/2024 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 10/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 09/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 09/01/2024 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 09/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 08/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 08/01/2024 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 08/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 07/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 07/01/2024 | RENT | Base Rent | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $1,250.00 |
| 07/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,100.00 |
| 06/07/2024 | RENT | Prorated Rent for first month | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $583.33 |
| 06/07/2024 | SECURITY_DEPOSIT | | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $475.00 |
| 06/07/2024 | SECURITY_DEPOSIT | Cleaning Deposit | 5131 Vivian St, Room 3, Room 3 - May 2024 | PAID | $150.00 |
| 06/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 06/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,050.00 |
| 05/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 05/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,050.00 |
| 04/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 04/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,150.00 |
| 03/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 03/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,050.00 |
| 02/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 02/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,050.00 |
| 01/06/2024 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |

| Date | Type | Note | Property | Status | Amount |
|---|---|---|---|---|---|
| 01/01/2024 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,050.00 |
| 12/01/2023 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,050.00 |
| 12/01/2023 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 11/01/2023 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,050.00 |
| 11/01/2023 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 10/01/2023 | RENT | | 5131 Vivian St Room 1 - Jeong | PAID | $1,050.00 |
| 10/01/2023 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 09/01/2023 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 09/01/2023 | RENT | First month rent | 5131 Vivian St Room 1 - Jeong | PAID | $700.00 |
| 08/25/2023 | SECURITY_DEPOSIT | | 5131 Vivian St Room 1 - Jeong | PAID | $525.00 |
| 08/01/2023 | RENT | | 5131 Vivian St Room 2 - Yang | PAID | $1,050.00 |
| 08/01/2023 | RENT | | 5131 Vivian St Room 1 - Chelius | PAID | $950.00 |
| 07/01/2023 | RENT | 1st month prorated rent | 5131 Vivian St Room 2 - Yang | PAID | $440.32 |
| 07/01/2023 | SECURITY_DEPOSIT | | 5131 Vivian St Room 2 - Yang | PAID | $525.00 |
| 07/01/2023 | RENT | | 5131 Vivian St Room 1 - Chelius | PAID | $950.00 |
| 06/01/2023 | RENT | | 5131 Vivian St Room 2 - Carrillo | PAID | $1,050.00 |
| 06/01/2023 | RENT | | 5131 Vivian St Room 1 - Chelius | PAID | $950.00 |
| 05/01/2023 | RENT | | 5131 Vivian St Room 2 - Carrillo | PAID | $1,050.00 |
| 05/01/2023 | RENT | | 5131 Vivian St Room 1 - Chelius | PAID | $950.00 |
| 04/01/2023 | RENT | | 5131 Vivian St Room 2 - Carrillo | PAID | $1,050.00 |
| 04/01/2023 | RENT | | 5131 Vivian St Room 1 - Chelius | PAID | $950.00 |
| 03/01/2023 | RENT | | 5131 Vivian St Room 2 - Carrillo | PAID | $1,050.00 |
| 03/01/2023 | RENT | | 5131 Vivian St Room 1 - Chelius | PAID | $950.00 |
| 02/21/2023 | RENT | Prorated for Feb | 5131 Vivian St Room 2 - Carrillo | PAID | $300.00 |
| 02/11/2023 | RENT | Prorated for Feb | 5131 Vivian St Room 1 - Chelius | PAID | $610.71 |
| 02/10/2023 | SECURITY_DEPOSIT | Sec + Cleaning fee | 5131 Vivian St Room 2 - Carrillo | PAID | $525.00 |
| 02/03/2023 | SECURITY_DEPOSIT | Security deposit + cleaning fee | 5131 Vivian St Room 1 - Chelius | PAID | $475.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | Total | $90,112.58 |

# Exhibit 202



**Surety Group**
801 South Figueroa Street, Suite 700
Los Angeles, CA 90017
Tel: 310-649-0990  Fax: 213-652-1982

**VIA U.S. MAIL & EMAIL jeffwgu@gmail.com**

June 9, 2025

Di Lan Ge
129 Oakstone Ln
Irvine CA 92618

| Re: | Principal | : | **Aliso Air Inc** |
|---|---|---|---|
| | **Surety** | : | **American Contractors Indemnity Company** |
| | **Bond No.** | : | **SC8005011 - Contractor's License Bond** |
| | **License No.** | : | **526420** |
| | **Claim No.** | : | **AC44081-2** |
| | **Claimant** | : | **Di Lan Ge** |

Dear Di Lan Ge:

I write on behalf of American Contractors Indemnity Company ("ACIC"). We acknowledge receiving the claim you filed against the above-referenced contractor's license bond of Aliso Air Inc ("bond principal").

We have conducted a preliminary review of your claim. We understand you entered into a construction contract with the bond principal for HVAC installation. You allege the bond principal departed from accepted trade standards for good and workmanlike construction and deviated from building codes. As such, you are seeking payment from the bond.

Contractors' license bonds are issued pursuant to Division 3, Chapter 9, of the California Business and Professions Code ("B&P"), commonly referred to as the Contractor's License Law ("CLL"). The conditions for the recovery of damages from a contractor's license bond are set forth in Section 7071.5(a) of the CLL, which states in relevant part as follows:

> The contractor's bond shall be for the benefit of the following:
>
> (a)  A homeowner contracting for home improvement upon the homeowner's personal family residence damaged as a result of a violation of this chapter by the licensee.

The statutory Contractors' License Bond on which you have made a claim upon is not a cash, payment or performance bond, nor is it an insurance policy. ACIC's liability under the bond is limited by the above-referenced statutes. In other words, you must provide sufficient evidence to allow the Surety to conclude, with reasonable certainty, that the bond principal has violated any of the Sections of the CLL. You are then required to provide evidence that you have suffered damages due to that violation.

Damages recoverable from a contractor's license bond are calculated based on the cost to correct/complete the project, less any amount left unpaid on the contract. In this regard, we refer you to California Civil Code Section 3358, which states:

> Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides.

A member of the Tokio Marine HCC group of companies



The sections within Chapter 9 of the B&P most applicable to your claim are Sections 7109, 7110, and 7113.

Section 7109 states:

> (a) A willful departure in any material respect from accepted trade standards for good and workmanlike construction constitutes a cause for disciplinary action, unless the departure was in accordance with plans and specifications prepared by or under the direct supervision of an architect.
> (b) A willful departure from or disregard of plans or specifications in any material respect, which is prejudicial to another, without the consent of the owner or his or her duly authorized representative and without the consent of the person entitled to have the particular construction project or operation completed in accordance with such plans or specifications, constitutes a cause for disciplinary action.

Section 7110 states:

> Willful or deliberate disregard and violation of the building laws of the state, or of any political subdivision thereof, or of any of the following references to or provisions of law, constitutes a cause for disciplinary action against a licensee:
> (a) Section 8550 or 8556.
> (b) Sections 1689.5 to 1689.15, inclusive, of the Civil Code.
> (c) The safety laws or labor laws or compensation insurance laws or Unemployment Insurance Code of the state.
> (d) The Subletting and Subcontracting Fair Practices Act (Chapter 4 (commencing with Section 4100) of Part 1 of Division 2 of the Public Contract Code).
> (e) Any provision of the Health and Safety Code or Water Code, relating to the digging, boring, or drilling of water wells.
> (f) Any provision of Article 2 (commencing with Section 4216) of Chapter 3.1 of Division 5 of Title 1 of the Government Code.
> (g) Section 374.3 of the Penal Code or any substantially similar law or ordinance that is promulgated by a local government agency as defined in Section 82041 of the Government Code.
> (h) Any state or local law relating to the issuance of building permits.

Section 7113 states:

> Failure in a material respect on the part of a licensee to complete any construction project or operation for the price stated in the contract for such construction project or operation or in any modification of such contract constitutes a cause for disciplinary action.

Please provide a copy of the contract, the bond principal's start and cease dates, front and back copies of checks paid to the bond principal, photos of the issues, and an estimate from another licensed contractor to correct/complete the work. The detailed evaluation must state how the bond principal's work departed from accepted trade standards for good and workmanlike construction and deviated from building codes. Please also provide the complete Triton Air report.

Your claim documentation has been forwarded to the bond principal for review and response. We will advise you if we receive a written response from the bond principal.

B&P Section 7071.11(c), which establishes the statute of limitations, states as follows:



Except for claims covered by subdivision (d), any action against a bond required under this article, excluding the judgment bond specified under Section 7071.17, shall be brought in accordance with the following:

(1) Within two years after the expiration of the license period during which the act or omission occurred. The provisions of this paragraph shall be applicable only if the license has not been inactivated, canceled, or revoked during the license period for which the bond was posted and accepted by the registrar as specified under Section 7071.7.
(2) If the license has been inactivated, canceled, or revoked, an action shall be brought within two years of the date the license of the active licensee would have expired had the license not been inactivated, canceled, or revoked. For the provisions of this paragraph to be applicable, the act or omission for which the action is filed must have occurred prior to the date the license was inactivated, canceled, or revoked.

For the statute of limitations, license periods run in two-year increments. For violations of the licensing law that occurred during the two-year license period of March 31, 2024, to March 31, 2026, the statute of limitations will run on March 31, 2028. The statute of limitations may differ if the date of loss differs. You may seek legal advice if you need assistance calculating the statute of limitations.

We reserve all our rights and defenses under the bond, the law, or otherwise.

Sincerely,

*Jerome Tenorio*

Jerome Tenorio, Bond Claims Supervisor
On behalf of American Contractors Indemnity Company
Tokio Marine HCC-Surety Group
Direct Line: (310) 242-6263
Email: jtenorio@tmhcc.com

Cc: Aliso Air Inc

A member of the Tokio Marine HCC group of companies

# Exhibit 203



Jeffrey Gu <jeffwgu@gmail.com>

---

## TNHC 0507551 Proof of Claim, Glass Fence

---

**Carrie Hoffmann** <Carrie.Hoffmann@iatinsurance.com>                    Tue, Jun 10, 2025 at 1:47 PM
To: Jeffrey Gu <jeffwgu@gmail.com>

June 10, 2025


Via email to jeffwgu@gmail.com


Re:      Surety:           Harco National Insurance Company

         Principal:        TNHC Realty and Construction ("TNHC")

         Bond No.:         CAHNSU0507551

         Obligee:          CALIFORNIA CONTRACTORS LICENSE

         Claimant:         Di Lan Ge

         Claim No.:        39498-2


Dear Mr. Gu:


Harco National Insurance Company ("HARCO") has made the following determination with respect to your claim under the referenced Bond.


The proof of claim dated May 28, 2025 alleges that TNHC installed defective, visibly scratched glass fencing at Di Lan Ge's home located at 129 Oakstone, Irvine, CA. Ms. Le has provided a copy of an estimate from Elite Railings to replace the entire glass fence.


On June 5th, I received a response to the claim from TNHC's attorney setting forth its position to the referenced claim. TNHC disputes the entire claim and states that the scratches on the glass were not identified in the Final Walk Through forms and presumes that they were caused by the homeowner.


It appears that TNHC has established a good faith dispute as to the amounts claimed. Harco is not required to act as a trier of fact.


Sometimes the evidence received in the independent investigation shows that both sides have plausible stories. The surety is not a judge or jury. The surety is not obligated to rule for one side or another. It is permissible for a surety, upon completing its independent investigation, to notify the parties of its findings and defer to a trier of fact. See The

Law of Payment Bonds, by Kevin L. Lybeck & Bruce Shreves. See also Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc. 971 F. 2d (1992).

Based upon the foregoing reasons, Harco must deny your claim.

With regard to your inquiry on Bert L. Howe Associates, Harco did not bond that entity and has no knowledge of its business. Since you have made a complaint to the CSLB, we assume your concerns will be reviewed and addressed by the CSLB as necessary.

California law requires that we advise you that if you disagree with the disposition of the claim, you may request that the matter be reviewed by the California Department of Insurance; Claims Service Bureau, 1[th] Floor, 300 South Spring Street, Los Angeles, California 90012; Telephone: 1-800-927-HELP.

This letter is sent without prejudice to the rights of HARCO and its principal and it shall not constitute a waiver or release of their rights, defenses, claims or setoffs.

Thank you,

Carrie Hoffmann, Senior Bond Claims Specialist

IAT Surety

847 S. Randall Road, #402

Elgin, IL 60123

Phone 630-696-4478

Fax 973-623-8006

www.iatinsurance.com







**CONFIDENTIALITY STATEMENT**

**This e-mail, including attachments, is intended for the person(s) or company named and may contain confidential and/or legally**

privileged information. Unauthorized disclosure, copying or use of this information may be unlawful and is prohibited. If you are not the intended recipient or you have received this communication in error, please notify the sender immediately by telephone, return the original message to us by mail, and delete this message.

 Think green - please don't unnecessarily print this e-mail.

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Tuesday, June 10, 2025 1:18 PM
**To:** Carrie Hoffmann <Carrie.Hoffmann@iatinsurance.com>
**Cc:** IAT Surety Claims <IATSuretyClaims@iatinsurance.com>
**Subject:** Re: [EXTERNAL] TNHC 0507551 Proof of Claim, Glass Fence

Hi Carrie,

Could I please have an update? I have called twice in the last day and sent 2 emails.

-Jeffrey

On Mon, Jun 9, 2025 at 11:01 AM Jeffrey Gu <jeffwgu@gmail.com> wrote:

> Hi Carrie,
>
> Could please get an update on the 2 matters I referenced in my last email?
>
> -Jeffrey
>
> On Thu, Jun 5, 2025 at 3:07 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:
>
>> I understand, thank you Carrie. How long do they have from a statutory standpoint to respond to you, and when did that timer start?
>>
>> I'd also like to note that the Bert Howe employee matter is related, and I have created a complaint with the CSLB and the CDI regarding them. I would appreciate it if your company's underwriters looked into whether or not they also see evidence of license lending, and alert the CSLB accordingly if so.
>>
>> On Thu, Jun 5, 2025 at 3:03 PM Carrie Hoffmann <Carrie.Hoffmann@iatinsurance.com> wrote:
>>
>>> [google.com]
>>>
>>> We are waiting for a response from TNHC. Upon receipt, we will review the claim and let you know if we need any additional information or provide you with a determination on the claim.

Thank you,

Carrie Hoffmann, Senior Bond Claims Specialist

IAT Surety

847 S. Randall Road, #402 [google.com]

[Quoted text hidden]
[Quoted text hidden]

---

**2025.0605 Hoffmann_IAT Surety (Bond)_Supp.pdf**
2324K

# Exhibit 204



Jeffrey Gu <jeffwgu@gmail.com>

---

## Gu, Jeffrey v. The New Home Company; PHLK File No.: 0066-2818

---

**Jeffrey Gu** <jeffwgu@gmail.com>                                      Fri, Jun 27, 2025 at 11:04 AM
To: Melanie Woodfin <mwoodfin@phlklaw.com>
Cc: Samuel Plante <splante@phlklaw.com>, Janelle Launi <Jlauni@phlklaw.com>, Carie Howard <choward@phlklaw.com>

Hi Melanie,

You and your team have been unable to produce anything on this matter for a whole week. Just noting this for your records and mine.

-Jeffrey

On Wed, Jun 25, 2025 at 5:21 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:

Hi Melanie,

Was this information not available to you before writing the letter?

-Jeffrey

On Wed, Jun 25, 2025 at 5:18 PM Melanie Woodfin <mwoodfin@phlklaw.com> wrote:

Mr. Gu,

I received your emails and will respond when I'm able.  Thank you,



**Melanie S. Woodfin,** Partner

**PLANTE HUGUENIN LEBOVIC KAHN LLP**

18100 Von Karman Ave., Suite 700

Irvine, CA 92612

Office   (949) 271-8700

Mobile (310) 482-7869

mwoodfin@phlklaw.com

www.phlklaw.com

*Licensed in Arizona, California, and Washington*

Please consider the environment before printing this e-mail.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such, is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify Melanie Woodfin immediately by e-mail, at mwoodfin@phlklaw.com, and delete the original message.

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Wednesday, June 25, 2025 3:16 PM
**To:** Melanie Woodfin <mwoodfin@phlklaw.com>; Samuel Plante <splante@phlklaw.com>
**Cc:** Janelle Launi <Jlauni@phlklaw.com>; Carie Howard <choward@phlklaw.com>
**Subject:** Re: Gu, Jeffrey v. The New Home Company; PHLK File No.: 0066-2818

⚠️ External Message

Hi Melanie,

Have you been able to obtain the information related to the above?

-Jeffrey

On Tue, Jun 24, 2025 at 4:50 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:

Hi Melanie and Sam,

Any update on the entries that occurred since last time?

-Jeffrey

On Mon, Jun 23, 2025 at 6:29 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:

Hi Melanie,

Could you please tell me what construction site entrances you are referring to?

-Jeffrey

On Mon, Jun 23, 2025 at 4:05 PM Carie Howard <choward@phlklaw.com> wrote:

Good afternoon,

With respect to the above-referenced matter, attached is attorney Melanie Woodfin's letter dated June 23, 2025.  U.S. Mail copy will follow.

Thank you.



**Carie Howard**

**Plante Huguenin Lebovic Kahn LLP**

18100 Von Karman Ave., Suite 700

Irvine, CA 92612

P – (949) 271-8700

F – (949) 627-2611

choward@phlklaw.com

www.phlklaw.com

**PLEASE NOTE OUR NEW FIRM NAME AND EMAIL ADDRESS**

# Exhibit 205



18100 Von Karman Ave., Suite 700
Irvine, California 92612
p (949) 271-8700
f (949) 627-2611
www.phlklaw.com

Melanie S. Woodfin, Partner
mwoodfin@phlklaw.com

June 23, 2025

**CEASE AND DESIST**

**VIA E-MAIL AND U.S. MAIL**
Jeffrey Gu
129 Oakstone
Irvine, CA  92618
jeffwgu@gmail.com

Re:    **Gu, Jeffrey v. The New Home Company**
PHLK File No.:         0066-2818

Dear Mr. Gu:

As you are aware of based on our letter dated April 16, 2025, as well as all subsequent letters from our office, Plante Huguenin Lebovic Kahn LLP has been retained to represent The New Home Company ("TNHC") in connection with your construction defect claims.  It has come to our attention that you have been contacting TNHC directly.  As we previously advised, all further communication must be directed to our office, and not TNHC.  Accordingly, we again request that all communication go through our office.  Thank you for your cooperation.

Further, as stated in our letter dated May 27, 2025, TNHC demands that you immediately cease and desist all harassing conduct.  TNHC has attempted to address your claims in good faith and in response you have engaged in a pattern of bad faith conduct designed and intended to annoy, harass and offend TNHC, and is illegal, dangerous, and disruptive.  If this behavior continues, TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.  Your harassing conduct includes abuse of the SB800 prelitigation process, improper and duplicative bond claims, improper demands, and illegal and dangerous trespassing on THNC's construction sites.

As stated in our May 27, 2025 letter, you served 16 separate notices of claims ("Notices"), numerous of which contain identical claims or claims already being addressed through warranty and/or included in prior Notices, you filed a claim with THNC's bond company for the same claims as in the Notices, you made multiple demands for documents and information after we repeatedly advised that the documents and information requested are not required of TNHC, and you have intentionally trespassed on TNHC's construction site and harassed its construction workers.  Despite our demand that you cease and desist this abusive and harassing behavior, it continues.



Page 2

Subsequent to the cease and desist letter dated May 27, 2025, you have continued with harassing conduct.  You submitted an additional bond claim on June 12, 2025 relating to the stair railing, which is a claim included in one of your 16 Notices.  In addition, you have contacted TNHC directly, despite our request that all communication go through our office as TNHC is represented by counsel, and requested documents which are irrelevant to your Notices and not required under SB800.  Finally, you have again intentionally and illegally trespassed on TNHC's construction site and harassed the construction workers.  This intentional trespass not only interferes with the work being performed, but is also extremely dangerous to both you and TNHC contractors.

**TNHC demands that all communication go through my office and that you <u>immediately cease and desist</u> all harassing activities against TNHC and its contractors and from unlawfully entering TNHC's construction site at the Olivewood community.**  TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.

Sincerely,

Melanie S. Woodfin

MSW

cc:    Sam C. Plante, Esq.
       Janelle Launi, Paralegal

# Exhibit 206

 Jeffrey Gu <jeffwgu@gmail.com>

---

**Get ready! Your trip is almost here**
1 message

---

**Chase Travel** <donotreply@chasetravel.com>                    Tue, Jun 17, 2025 at 7:32 AM
Reply-To: Donotreply <donotreply@rewardsengage.com>
To: jeffwgu@gmail.com



# Get ready!

Your trip is almost here.

## Trip ID: 1001703249    [See trip]

Hi JEFFREY,

Your trip is coming up in a few days! To see more details, or to make changes to your trip, sign in and navigate to the My Trips page.

# Flight

**Airline confirmation: 2FVZH2**

**Denver (DEN)**  **Milwaukee (MKE)**

**Depart:** Tue, Jun 24, 2025

 **06:00 pm**  **09:25 pm**
DEN                                              MKE

2h 25m

## Southwest Airlines

**WN 2625** Boeing 737 MAX 8
operated by SOUTHWEST AIRLINES

Seats: Not chosen for some travelers          Choose seats

---

**Traveler 1:** JEFFREY GU

# Add to your trip

 **Book a stay**

Choose from thousands of hotels
worldwide

 **Book a car**

Compare options from major car
rental companies



 **Book an activity**

Find activities, attractions or tours to
enhance your stay

## Rules, policies, and cancellations

### DEN ■ MKE

Tue, Jun 24, 2025 - Tue, Jun 24, 2025

- Seat assignments not available until after check-in
- Refunds and ticket changes are not permitted
- Same-day confirmed and same-day standby travel changes are not permitted
- Priority Boarding not available for purchase
- If flight credit from a waiver is being used to book this trip, any unused credit value will be forfeited and the airline waiver conditions may supersede some information that is in this document.
- If flight credit from a waiver is being used to book this trip, the waiver conditions may supersede some information that is in this document. Carry-on baggage restrictions will apply. The selected airline's baggage fees will apply. Click here for details.
- If this is an international flight, this reservation requires proof of citizenship. Please contact the consulate destination for current VISA/Passport entry requirements.
- The Transportation Security Administration requires specific information for each passenger such as full name, date of birth and gender to be provided to the airline at least 72 hours prior to departure. If this information was not provided for each passenger at the time of booking, it is the passenger's responsibility to ensure this information is provided to the airline to prevent additional screening, travel delays or denied transport. For more information, refer to TSA's website at TSA.
- Important Notice Regarding Airline Fees: Airlines may charge additional fees for miscellaneous services including baggage. Fees vary by airline so you must contact the airline directly or check their website for up-to-date information and pricing details.
- Your personal data will be processed in accordance with the applicable carrier's privacy policy and, if your booking is made via a reservation system provider ("GDS"), with its privacy policy. These are available at https://www.iatatravelcentre.com/privacy.htm or from the carrier or GDS directly. You should read this documentation, which applies to your booking and specifies, for example, how your personal data is collected, stored, used, disclosed and transferred.
- Please refer to the Terms and Conditions for more information.
- Cancellations may incur a cancellation fee up to the full amount of the ticket.
- Changes may incur a change fee up to the full amount of the ticket plus any difference in the applicable fare.
- This ticket is non-refundable.
- Some non-refundable tickets can be applied (for a limited time) toward future travel, upon the collection of a change fee up to the full amount of the ticket plus any difference in the applicable fare.
- Changes to your itinerary are generally permitted upon the collection of a change fee up to the full amount of the ticket plus any difference in the applicable fare. Some tickets do not allow changes.



## Questions?

If you need more immediate assistance, call a Chase Travel Specialist at 1-855-234-2542 or +1-504-324-2345 (international number, charges may apply) and have your **Trip ID 1001703249** ready.

Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-234-2542.

## Email security information

Email intended for: JEFFREY GU

If you have concerns about the authenticity of this message, please visit chase.com/CustomerService for options on how to contact us.

## Terms & conditions

Third-party merchants: The listed merchant(s) are in no way affiliated with Chase, nor are the listed merchant(s) considered sponsors or co-sponsors of this program. All trademarks are the property of their respective owner(s).

## Seller of travel

Loyalty Travel Agency LLC ("LTA") is an affiliate of cxLoyalty, Inc., acting only as agent for travel service suppliers, makes the travel arrangements for you on behalf of Chase Travel and complies with the laws in the states that require registration in order for an agency to sell Chase Travel.

These states and LTA's registration number in such states are:
California* 2146860-50
Florida ST38239
Hawaii TAR-6750
Iowa 987
Washington 602 868 200

cxLoyalty
77 N. Water Street
Norwalk, CT 06853

Registration as a seller of travel does not constitute approval by the State of California. LTA is not a participant in the California Travel Consumer

Restitution Fund.

For residents in Washington (state): Upon cancellation of the transportation through no fault of the passenger, all sums paid to the seller of travel for services not performed in accordance with the contract between the seller of travel and the passenger will be, unless the passenger otherwise advises the travel promoter in writing, promptly refunded by the seller of travel to the passenger or the party who contracted on behalf of the passenger. Cancellation and change penalties apply to these arrangements. Details will be provided upon request.

## About this message

You received this email to give you updates and information about your Chase relationship.

This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options about how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations, P. O. Box 734007, Dallas, TX 75373-4007.

JPMorgan Chase Bank, N.A. Member FDIC

© 2025 JPMorgan Chase & Co.

# Exhibit 207



18100 Von Karman Ave., Suite 700
Irvine, California 92612
p (949) 271-8700
f (949) 627-2611
www.phlklaw.com

Melanie S. Woodfin, Partner
mwoodfin@phlklaw.com

June 25, 2025

**VIA E-MAIL AND U.S. MAIL**

Carrie Hoffmann, Sr. Bond Claims Specialist
IAT Surety
847 S. Randall Road, Suite 402
Elgin, IL  60123
carrie.hoffmann@iatinsurance.com

|     |     |     |
| --- | --- | --- |
| Re: | **Gu, Jeffrey v. TNHC Realty and Construction Inc.** | |
|     | Surety: | Harco National Insurance Company |
|     | Bond No.: | CAHNSU0507551 |
|     | Claim No.: | 39498-2 |
|     | PHLK File No.: | 0066-2818 |

Dear Ms. Hoffmann:

As you know, we are outside counsel for TNHC Realty and Construction Inc. ("TNHC") and have been asked to provide a response to Mr. Jeffrey Gu's claim against Bond No. 0507551 ("Bond") dated June 12, 2025 pertaining to the stair railings at the home located at 129 Oakstone, Irvine California 92618 (the "Home") ("Second Bond Complaint").

Pursuant to the Second Bond Complaint, Mr. Gu seeks payment under the Bond in the amount of $14,900 for the cost to repair the stair railing at the Home.  No estimates were provided which identify the basis for the amount sought.  Mr. Gu claims that the stair railing system is "dimensionally noncompliant and physically unstable."  He further claims that it does not meet the applicable code requirements for handrail size and graspability.  Mr. Gu does not identify any building standard violations set forth in Civil Code section 896 ("SB800").  Rather, he identifies California Business and Professions Code sections 7109, 7113, and 7110.  However, SB800 is Mr. Gu's exclusive remedy for construction defects at the Home.  Mr. Gu's claim does not constitute a construction defect under California law.  Specifically, handrail size and graspability are not violations of the SB800 building standards and, as discussed below, there is no evidence of instability of the handrailing or posts.

Further, the City of Irvine's Building and Safety Division approved the structural plans for the stair railing and posts and inspected the Home prior to issuing a Certificate of Occupancy ("COO").  A copy of the approved plans are attached.  The City of Irvine completed the final inspection of the Home and the COO was issued.  Accordingly, the size of the handrail and the

---



Page 2

design and construction of the stair railing and posts were approved and inspected by the City of Irvine prior to Mr. Gu's occupancy.

In addition, as provided in TNHC's initial response letter, the parties proceeded under the SB 800 procedures under 16 separate Notices of Claim. During that process, Mr. Gu provided an SB800 Notice dated April 2, 2025 that identifies the same issue; namely, that he observed the following issues with respect to the stair railing system: (1) loose wooden newel posts and iron balusters; and (2) noticeable flexing or movement when light force is applied. A copy of the SB800 Notice was provided in Exhibit "A" of our May 28, 2025 response letter and attached to Mr. Gu's Second Bond Complaint.

TNHC hired a construction consultant to inspect this alleged condition. The consultant inspected the stair railing and did not observe the condition alleged by Mr. Gu. TNHC, however, did offer to paint an area with unfinished paint application on the guardrail post as a courtesy. A copy of TNHC's response letter to Mr. Gu was attached to our May 28, 2025 letter as Exhibit "B" and attached to Mr. Gu's Second Bond Complaint.

Even if this condition were observed, it is not covered under the Limited Warranty. There is no line item in the Limited Warranty relating to loose railings. If these issues were from original construction, Mr. Gu was required to identify it in the New Homeowner Orientation form or the House to Home Walk form which he signed at the time of his final walk-throughs before taking possession of the Home. He did not identify a loose railing or "graspability" issues at the time of the final walk-through. See Exhibits "A" and "B" to our June 5, 2025 letter. Further, under the Limited Warranty,

> A Condition will only be a Covered Claim under this Fit and Finish Warranty if the condition is the result of a Component or function not being in compliance with the Fit and Finish Standards.

(See Page 6 of the Limited Warranty, attached as Exhibit "C" to our June 5, 2025 letter.) Moreover, ordinary wear and tear, misuse, and abuse is not covered. (See Section 5, page 16, paragraph 6 to the Limited Warranty.)

Moreover, Mr. Gu executed an Individual Dispute Resolution Agreement ("IDRA") which contains the parties' agreement to complete certain alternative dispute resolution procedures. A copy of the IDRA is attached as Exhibit "A." Specifically, it provides that any construction issues must first be submitted to customer care, then through SB 800, and if not resolved through these pre-litigation procedures, to binding arbitration. (See Exhibit "A," pages 6-10, Sections 5.1, 5.2 and 5.3.) Instead of complying with the parties' agreement, he has filed two claims against the Bond.

TNHC has been and continues to act in good faith to resolve Mr. Gu's concerns, both under TNHC's customer care procedures, and through the SB800 process. However, Mr. Gu has responded with bad faith conduct including repeated conduct intended to harass and annoy TNHC. We previously outlined such behavior which includes trespassing on TNHC's active construction site and 16 separate SB 800 Notices, two claims against the Bond which are



Page 3

duplicative of the Notices, and a letter threatening a lawsuit (a copy of which is attached as Exhibit "B").

Should you wish to discuss this matter further, please feel free to contact me.

Sincerely,

Melanie S. Woodfin

MSW
Enclosures

cc:    Sam C. Plante, Esq.
       Janelle Launi, Paralegal

Exhibit "A"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

166.00

* S R 0 0 1 5 0 1 0 1 1 5 $ *

**2024000156494 8:00 am 06/25/24**

491 CR-SC06 A12    54

0.00 0.00 0.00 0.00 159.00 0.00 0.000.000.00 0.00

**RECORDED AT THE REQUEST OF:**

Recording Requested By:
First American Title Company
Homebuilder Services Division

**WHEN RECORDED RETURN TO:**

The New Home Company
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618
Attn: Lori Michel

6923749

# INDIVIDUAL DISPUTE RESOLUTION AGREEMENT

## FOR

## OLIVEWOOD

Exempt from fee per GC 27388.1 (a)(2): recorded concurrently "in connection with"
a transfer subject to the imposition of documentary transfer tax (DTT)

## TABLE OF CONTENTS

Page

*ARTICLE I* APPLICABILITY ...............................................................................................1

    1.1.    PROPERTY SUBJECT TO INDIVIDUAL DISPUTE RESOLUTION
           AGREEMENT .....................................................................................................1
    1.2.    PURPOSE ............................................................................................................1

*ARTICLE II* DEFINITIONS ..................................................................................................1

    2.1.    BUSINESS DAYS ..............................................................................................1
    2.2.    CLAIM PROCESS .............................................................................................1
    2.3.    COUNTY ............................................................................................................2
    2.4.    DISPUTE DECLARATION ...............................................................................2
    2.5.    HOMEOWNER MANUAL ................................................................................2
    2.6.    INDIVIDUAL DISPUTE RESOLUTION AGREEMENT .................................2
    2.7.    ISSUES ...............................................................................................................2
    2.8.    LIMITED WARRANTY .....................................................................................2
    2.9.    MAINTENANCE GUIDELINES .......................................................................2
    2.10.   MASTER ASSOCIATION .................................................................................2
    2.11.   MASTER DECLARATION .................................................................................2
    2.12.   MASTER DEVELOPER ......................................................................................2
    2.13.   MERCHANT BUILDER .....................................................................................2
    2.14.   MERCHANT BUILDER DISPUTE ...................................................................2
    2.15.   MERCHANT BUILDER PARTIES ....................................................................3
    2.16.   OWNER ..............................................................................................................3

               2.16.1  INITIAL OWNER ..........................................................................3

               2.16.2  SUCCESSOR OWNER ...................................................................3

    2.17.   PROJECT ............................................................................................................3
    2.18.   PROPERTY ........................................................................................................3
    2.19.   RESIDENCE .......................................................................................................3
    2.20.   SUBSEQUENTLY RECORDED DOCUMENT ................................................4
    2.21.   SUPPLEMENTAL DECLARATION ................................................................4
    2.22.   TITLE 7 ..............................................................................................................4
    2.23.   TITLE 7 CLAIM .................................................................................................4

*ARTICLE III* OWNER ACKNOWLEDGMENT OF NOTICES .........................................4

    3.1.    STATUTORY STANDARDS ............................................................................4
    3.2.    CLAIM PROCESS .............................................................................................4
    3.3.    AGENT ...............................................................................................................5

*ARTICLE IV* WARRANTIES AND MAINTENANCE .......................................................5

    4.1.    LIMITED WARRANTY .....................................................................................5
    4.2.    MANUFACTURED PRODUCTS........................................................................5

4.3.    HOMEOWNER MANUAL ................................................................6
4.4.    DUTY TO MAINTAIN ..................................................................6

*ARTICLE V* CLAIM PROCESSES AND DISPUTE RESOLUTION PROCEDURES ......................6

5.1.    CUSTOMER SERVICE ................................................................6
5.2.    CLAIM PROCESS OR MEDIATION: .............................................6
        5.2.1    TITLE 7 CLAIM ...........................................................6
        5.2.2    OTHER CLAIM ............................................................6
        **5.2.3    MEDIATION FAILS TO SETTLE CLAIM** ...................8
5.3.    MANDATORY BINDING ARBITRATION ..................................8
5.4.    JUDICIAL REFERENCE ..............................................................11
5.5.    DISPUTES EXEMPT FROM THIS INDIVIDUAL DISPUTE RESOLUTION
        AGREEMENT ...............................................................................12
5.6.    DISPUTES TO BE RESOLVED INDEPENDENTLY ...................12

*ARTICLE VI* AMENDMENT AND ENFORCEMENT .................................13

6.1.    AMENDMENTS ..........................................................................13
6.2.    ENFORCEMENT .........................................................................13
6.3.    THIRD PARTY BENEFICIARIES .................................................13

*ARTICLE VII* MISCELLANEOUS PROVISIONS .....................................13

7.1.    BINDING ....................................................................................13
7.2.    CONFLICT ..................................................................................13
7.3.    CONSTRUCTION OF PROVISIONS ...........................................14
7.4.    EXHIBITS ...................................................................................14
7.5.    MORTGAGE PROTECTION ........................................................14
7.6.    REDISTRIBUTION OF DOCUMENTS ........................................14
7.7.    SEVERABILITY OF PROVISIONS .............................................14
7.8.    SUCCESSOR STATUTES ............................................................14
7.9.    TERM ..........................................................................................14

## INDIVIDUAL DISPUTE RESOLUTION AGREEMENT
## FOR
## OLIVEWOOD

THIS INDIVIDUAL DISPUTE RESOLUTION AGREEMENT FOR OLIVEWOOD (*"Individual Dispute Resolution Agreement"*) is entered into by and between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (*"Merchant Builder"*), and Xian Feng Gu, Trustee and Di Lan Ge, Trustee (*"Initial Owner"*) as part of the purchase of the Residence by Initial Owner from Merchant Builder. Merchant Builder and Owner are collectively referred to as the *"parties"* and individually as a *"party."*

---

### ARTICLE I
### APPLICABILITY

---

1.1. **PROPERTY SUBJECT TO INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**: Merchant Builder has agreed to transfer or has conveyed to Initial Owner the following described real property (*"Property"*) situated in the City of Irvine, County of Orange, State of California, described as follows:

> Lot 88 of Tract No. 19176 as shown on a map recorded in Book 1000, Pages 27 through 37, inclusive, of the Miscellaneous Maps of Orange County, California.

1.2. **PURPOSE**: This Individual Dispute Resolution Agreement establishes covenants and agreements between Merchant Builder and (a) Initial Owner and (b) each Successor Owner of the Property. It is the intention of the parties to record this document against the Property at close of escrow for the transfer of title from Merchant Builder to Initial Owner. This Individual Dispute Resolution Agreement is provided to Initial Owner in compliance with the Dispute Declaration, a copy of which has been provided by Merchant Builder to Initial Owner. This Individual Dispute Resolution Agreement is part of the consideration for the bargained-for purchase of the Property by Initial Owner from Merchant Builder. The Property shall be held, conveyed, hypothecated, encumbered, leased, rented, used, occupied and improved subject to the terms of this Individual Dispute Resolution Agreement. All of the agreements, notices and obligations stated in this Individual Dispute Resolution Agreement shall run with the Property and shall inure to the benefit of and be binding on each and every Successor Owner of the Property.

---

### ARTICLE II
### DEFINITIONS

---

Unless otherwise defined or unless the context clearly requires a different meaning, the terms used in this Individual Dispute Resolution Agreement shall have the meanings specified in this Article. All capitalized terms in this Individual Dispute Resolution Agreement which are not defined in this Article or elsewhere in this Individual Dispute Resolution Agreement shall have the same meanings given them in the Dispute Declaration or the Master Declaration.

2.1. **BUSINESS DAYS**: The term *"Business Days"* shall mean Monday through Friday, except for Federal or State holidays.

2.2. **CLAIM PROCESS**: The term *"Claim Process"* shall mean those non adversarial

procedures set forth in Chapter 4 of Title 7.

2.3. **COUNTY**: The term *"County"* shall mean Orange County, California.

2.4. **DISPUTE DECLARATION**: The term *"Dispute Declaration"* shall mean the Declaration of Dispute Resolution Procedures for Olivewood recorded against the Property on March 14, 2024, as Instrument No. 2024000056633, in the Official Records of the County, and any Subsequently Recorded Document which amends or supplements the Dispute Declaration.

2.5. **HOMEOWNER MANUAL**: The term *"Homeowner Manual"* shall mean the Homeowner Manual provided to Owner by Merchant Builder or the other Merchant Builder Parties which includes important information regarding the Property, including guidelines for maintenance, care and use of the Property.

2.6. **INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**: The term *"Individual Dispute Resolution Agreement"* shall mean this Individual Dispute Resolution Agreement and any Subsequently Recorded Document which amends this Individual Dispute Resolution Agreement.

2.7. **ISSUES**: The term *"Issues"* shall mean alleged deficiencies in construction, design, specifications, surveying, planning, supervision, testing, or observation of construction or any substandard condition related in any way to the Residence, the Property or the Project.

2.8. **LIMITED WARRANTY**: The term *"Limited Warranty"* shall mean the Limited Warranty applicable to the Residence attached to this Individual Dispute Resolution Agreement as **Exhibit "A"**.

2.9. **MAINTENANCE GUIDELINES**: The term *"Maintenance Guidelines"* shall mean all maintenance obligations, guidelines, schedules and practices communicated to Owner in writing by Merchant Builder or the other Merchant Builder Parties, including, without limitation all product manufacturers' use, maintenance and care instructions provided to Owner by Merchant Builder or the other Merchant Builder Parties, as well as commonly accepted maintenance practices. Such commonly accepted maintenance practices include, but are not limited to, those set forth in the Homeowner Manual and those established by product manufacturers.

2.10. **MASTER ASSOCIATION**: The term *"Master Association"* shall mean Portola Springs Community Association, a California nonprofit mutual benefit corporation, established pursuant to the Master Declaration.

2.11. **MASTER DECLARATION**: The term *"Master Declaration"* shall mean the document entitled "Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs," recorded in the Official Records of the County, as amended or restated from time to time.

2.12. **MASTER DEVELOPER**: The term *"Master Declaration"* shall mean the "Declarant" defined in the Master Declaration.

2.13. **MERCHANT BUILDER**: The term *"Merchant Builder"* shall mean The New Home Company Southern California LLC, a Delaware limited liability company, and its successors and assigns.

2.14. **MERCHANT BUILDER DISPUTE**: The term *"Merchant Builder Dispute"* shall mean any claim, issue or controversy that arises from or is related in any way to (i) the Project, (ii) the Property, (iii) the Residence or (iv) the relationship between Initial Owner and Merchant Builder, whether

contractual, statutory or in tort, including without limitation, claims, issues or controversies that arise from or are related to the purchase, sale, condition, design, construction or materials used in construction of any portion of the Project, the Property or the Residence, the agreement between Merchant Builder and Owner to purchase the Residence or any related agreement, a Limited Warranty, disclosures, or Issues, including without limitation the following:  (a) a Title 7 Claim; (b) any disagreement as to whether conditions that are the subject of a Title 7 Claim have been properly repaired; (c) any disagreement as to the value of repairing damages which are the subject of a Title 7 Claim; (d) the cost of repairing damage caused by the repair efforts, the cost to remove or replace an improper repair, and any alleged relocation expenses, storage expenses, lost business income, investigation costs and all other fees and costs recoverable by contract or statute as a result of a Title 7 Claim; and (e) any disagreement concerning the timeliness of Merchant Builder's performance or Owner's notification under a Limited Warranty or the Claim Process.  Notwithstanding anything to the contrary in this Individual Dispute Resolution Agreement, any and all Disputes (as defined in Section 14 of Article V of the Master Declaration) between or among the Master Association, Owner and/or any of the Developer Parties (including the Master Developer) that (i) arises out of, or relates to, or in any way is connected with the Master Association Documents or the Community, (ii) involves a claim for damage to the Master Association Property or Maintenance Area or damage to the Property integrally related to any damage to the Master Association Property and/or Maintenance Area, or (iii) involves the Master Developer, the Master Association, the Master Association Property and/or a Maintenance Area (collectively, the *"Master Disputes"*) shall be resolved solely in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration, and not the alternative dispute resolution procedures set forth herein.

2.15.  **MERCHANT BUILDER PARTIES**:  The term *"Merchant Builder Parties"* shall mean Merchant Builder and its partners, members or other principals and their respective officers, agents, employees, affiliated parent and subsidiary companies, successors and assigns, design centers, subcontractors, design professionals, engineers, inspectors and material suppliers who provided labor, services or materials to any portion of the Project.

2.16.  **OWNER**:  The term *"Owner"* shall mean the person or entity that holds record fee title to the Property after the initial conveyance of the Property by Merchant Builder, including the Initial Owner and any Successor Owner.  The term "Owner" shall include a contract purchaser (vendee) under an installment land contract but shall exclude any person having an interest in the Property merely as security for performance of an obligation.

2.16.1  **INITIAL OWNER**:  The term *"Initial Owner"* shall mean the undersigned Owner who initially acquires or acquired title to the Property from Merchant Builder.

2.16.2  **SUCCESSOR OWNER**:  The term *"Successor Owner"* shall mean any person or entity who acquires title to the Property from an Initial Owner or from a Successor Owner.

2.17.  **PROJECT**:  The term *"Project"* shall mean the residential development in which the Property is located.  The Project is located within the master community of Portola Springs (*"Community"*).

2.18.  **PROPERTY**:  The term *"Property"* shall mean the real property described in Section 1.1 above.

2.19.  **RESIDENCE**:  The term *"Residence"* shall mean the single family residential dwelling situated on the Property and all Improvements on the Property, excluding any Improvements which are required to be maintained by the Master Association in accordance with the Master Declaration or a document annexing real property to the Master Declaration.

2.20.   **SUBSEQUENTLY RECORDED DOCUMENT**:  The term *"Subsequently Recorded Document"* shall mean each of the following documents which is recorded in the Official Records of the County:  (i) an amendment to the Dispute Declaration, (ii) an amendment to an Individual Dispute Resolution Agreement, (iii) a Supplemental Declaration or (iv) an amendment to a Supplemental Declaration.

2.21.   **SUPPLEMENTAL DECLARATION**:  The term *"Supplemental Declaration"* shall mean any instrument recorded in the County which extends the provisions of the Dispute Declaration to other real property and any Subsequently Recorded Document which amends a Supplemental Declaration.

2.22.   **TITLE 7**:  The term *"Title 7"* shall mean Title 7, Part 2 of Division 2 of the California Civil Code (Section 895 et seq.) as amended from time to time.

2.23.   **TITLE 7 CLAIM**:  The term *"Title 7 Claim"* shall mean any claim, issue or controversy that arises from or is related in any way to any alleged violation of the standards set forth in California Civil Code Sections 895 through 897.

---

### *ARTICLE III*
### OWNER ACKNOWLEDGMENT OF NOTICES

---

## NOTICES

**NOTICE:  Merchant Builder has elected to be subject to Chapter 2 of Title 7 ("*Title 7*"), Part 2 of Division 2 of the California Civil Code (Section 896 et seq.).  See Section 3.1.**

**NOTICE:  Merchant Builder intends to utilize the non adversarial procedures set forth in Chapter 4 of Title 7 (California Civil Code Sections 910 et seq.).  See Section 3.2.**

**NOTICE:  The name and address of the agent Merchant Builder has designated for service of notice of claims pursuant to Title 7 is set forth in Section 3.3 below.**

**Initial Owner's Initials** *PG X G*

---

3.1.   **STATUTORY STANDARDS**:   Chapter 2 of Title 7 provides standards for the installation, construction, design, specifications, surveying, planning, supervision, testing, or observation of construction of the Residence.  A complete copy of Chapter 2 of Title 7 is attached to the Dispute Declaration as **Exhibit "B-2."**

3.2.   **CLAIM PROCESS**:  Chapter 4 of Title 7 establishes non adversarial procedures to address claims for damages arising from or relating to Issues.  California Civil Code Section 914 provides that builders must notify buyers whether they intend to engage in the non adversarial procedures set forth in Chapter 4 of Title 7 or to enforce alternative non adversarial procedures.  Merchant Builder hereby notifies Owner that it intends to utilize the non adversarial procedures set forth in Chapter 4 of Title 7 (referred to in this Individual Dispute Resolution Agreement as the *"Claim Process"*).  The Claim Process impacts the legal rights of Owner.

**By initialing below Initial Owner acknowledges (a) the existence of Chapter 4 of Title 7, (b) that Initial Owner has received a copy of Chapter 4 of Title 7 which is attached to the Dispute Declaration as Exhibit "B-4," and a copy of all of Title 7 which is attached to the Dispute Declaration as Exhibit "B" and (c) that the Claim Process impacts the legal rights of Initial Owner**

and Successor Owners. By initialing in the space below, Initial Owner is giving up its judicial rights to discovery and appeal, and if Initial Owner refuses to submit to arbitration after entering into this Individual Dispute Resolution Agreement, Initial Owner may be compelled to arbitrate under the Federal Arbitration Act and the California Arbitration Act, to the extent the California Arbitration Act is consistent with the Federal Arbitration Act.

Sales Representative's Initials ____    Initial Owner's Initials ____

3.3.    **AGENT**: Merchant Builder hereby notifies Owner that Merchant Builder's agent for notice (*"Merchant Builder's Agent for Notice"*) is:

The New Home Company
15231 Laguna Canyon Rd., Suite 250
Irvine, CA  92618
Attn:  Miek Harbur

Owner may commence the Claim Process by filing a claim with Merchant Builder's Agent for Notice at the address set forth above via certified mail, overnight mail or personal delivery to Merchant Builder's Agent for Notice.  If Merchant Builder changes the identity or address of Merchant Builder's Agent for Notice in the future, Merchant Builder will notify the Secretary of State of the State of California (or the governmental agency then responsible for monitoring agents for service of process) of any such change and Owner may obtain the identity and address of Merchant Builder's Agent for Notice by inquiry to the Secretary of State of the State of California (or the governmental agency then responsible for monitoring agents for service of process).

By initialing below Initial Owner and Merchant Builder's Sales Representative acknowledge the name and address of Merchant Builder's Agent for Notice:

Sales Representative's Initials ____    Initial Owner's Initials ____

| ARTICLE IV |
| :---: |
| WARRANTIES AND MAINTENANCE |

4.1.    **LIMITED WARRANTY**:  Merchant Builder has provided Initial Owner with the Limited Warranty applicable to the Residence, in the form attached hereto as **Exhibit "A"**.  The Limited Warranty shall, unless previously released, fully transfer to each Successor Owner of the Residence, including any mortgagee in possession, for the remainder of the applicable warranty term as set forth in the Limited Warranty.

4.2.    **MANUFACTURED PRODUCTS**:  Merchant Builder has made available for Initial Owner's review maintenance procedures, maintenance schedules, maintenance recommendations, and manufacturer limited warranty information (*"Product Information"*) for Manufactured Products (as defined below) applicable to the Residence.  *For purposes of this Section, a "Manufactured Product" means a product that is completely manufactured off site, all appliances, pieces of equipment, or other items installed in the Residence that are consumer products for the purposes of the Magnuson Moss Warranty Act (15 U.S.C. Section 2301 et. seq.) and solar energy systems, including inverters.*  The Product Information will be delivered to Initial Owner at the close of escrow.  The Product Information available for review by Initial Owner before the close of escrow may be in sample form or otherwise different than the Product Information actually provided to Initial Owner at the close of escrow.  The actual Product Information provided at the close of escrow shall control.  The Product Information for the Manufactured Products has been created by the manufacturers or suppliers of the Manufactured Products

and not by Merchant Builder. Merchant Builder has not reviewed or approved and does not endorse, warrant or guaranty the Product Information or the Manufactured Products to which the Product Information applies. In order to assure that the Manufactured Products function properly throughout their useful life, and in order to maintain any warranty provided by the manufacturer for the Manufactured Products, Owner must comply with the recommendations and requirements included in the Product Information. Owner shall provide the Product Information to its Successor Owner.

**TO THE FULLEST EXTENT PERMITTED BY LAW, MERCHANT BUILDER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO MANUFACTURED PRODUCTS (INCLUDING CONSUMER PRODUCTS) INSTALLED IN OR AROUND THE RESIDENCE. DEFECTS IN MANUFACTURED PRODUCTS ARE NOT COVERED UNDER MERCHANT BUILDER'S LIMITED WARRANTY AND OWNER'S SOLE AND EXCLUSIVE REMEDY FOR DEFECTS IN MANUFACTURED PRODUCTS IS AGAINST THE PRODUCT MANUFACTURER.**

     4.3.   <u>**HOMEOWNER MANUAL**</u>: Merchant Builder has provided Owner with a Homeowner Manual which includes maintenance guidelines for the Property. Owner must perform all required and recommended inspection and maintenance procedures set forth in the Homeowner Manual and must provide a copy of the Homeowner Manual to its Successor Owner.

     4.4.   <u>**DUTY TO MAINTAIN**</u>: Owner agrees to maintain Owner's Residence in accordance with the Homeowner Manual and all Maintenance Guidelines.

---

### ARTICLE V
### CLAIM PROCESSES AND DISPUTE RESOLUTION PROCEDURES

     5.1.   <u>**CUSTOMER SERVICE**</u>: Merchant Builder has established a Customer Service Department for all Owners. The procedures for processing a request for service (*"Service Request"*) through the Customer Service Department are set forth in the Limited Warranty and are available online at CustomerCareNHC.com (or by following the links at Merchant Builder's general website for "service", "customer care" or "warranty"). Owners should also consider the Customer Service Department a resource both for general information and to answer specific questions regarding construction of the Owner's Residence. **A Service Request is not a claim pursuant to the Claim Process.** If Owner's claim is not resolved under the Limited Warranty and Owner wishes to initiate a claim, Owner must follow the steps set forth in Section 5.2.

     5.2.   <u>**CLAIM PROCESS OR MEDIATION:**</u>

        5.2.1   <u>**TITLE 7 CLAIM**</u>: If the customer service process does not resolve a Title 7 Claim to the satisfaction of Owner, Owner shall file a written Notice of Claim in accordance with the provisions of California Civil Code Section 910 with Merchant Builder's Agent for Notice at the address provided in Section 3.3 above. The Notice of Claim must (i) provide Owner's name, address and telephone number (or the information necessary to use an alternative method of contact such as facsimile or e-mail) and (ii) describe the Title 7 Claim in sufficient detail to enable Merchant Builder to determine the location, nature and extent of the Title 7 Claim and what area or components of the Residence are involved.

        5.2.2   <u>**OTHER CLAIM**</u>: If a Merchant Builder Dispute does not involve a Title 7 Claim (*"Other Claim"*) and is not resolved to the satisfaction of Owner, Owner shall file a written Notice of Claim with Merchant Builder's Agent for Notice at the address provided by Section 3.3 above. The Notice of Claim must (i) provide Owner's name, address and telephone number (or the information

necessary to use an alternative method of contact such as facsimile or e-mail), (ii) describe the Other Claim in sufficient detail to enable Merchant Builder to determine the location, nature and extent of the Other Claim, and (iii) include a request for mediation. Merchant Builder and Owner shall, in good faith, attempt to resolve the Other Claim by mediation in accordance with this Section.

(a)    **Mediator**. The mediation shall be conducted by a single neutral and impartial mediator employed by Judicial Arbitration and Mediation Services, Inc. (*"JAMS"*) or the American Arbitration Association, in accordance with the rules established by the selected service (*"Mediation Provider"*). Merchant Builder shall have the right to select the mediator by notifying Owner in writing within ten (10) Business Days following the date of service of the Notice of Claim. If Merchant Builder selects the mediator, Merchant Builder shall pay any filing fees required by the Mediation Provider and the first four (4) hours of the mediator's fees. If the mediation lasts more than four (4) hours, any additional fees shall be split equally between Owner and Merchant Builder. At Owner's sole option, Owner may agree to share the filing fees required by the Mediation Provider and the fees of the mediator, including the first four (4) hours, equally with Merchant Builder. If Owner so agrees, then Owner and Merchant Builder shall jointly select the mediator. If the parties cannot agree on a mediator within fourteen (14) days following the date of service of the Notice of Claim, the Mediation Provider shall select the mediator. No person with any financial or personal interest in the mediation's result shall serve as a mediator, except by the written consent of the parties. Prior to accepting any appointment, the prospective mediator shall disclose any circumstances likely to create a presumption of bias or prevent a prompt commencement of the mediation process.

(b)    **Location of Mediation**. The mediation shall be held in the County or such other place as is mutually acceptable to the parties.

(c)    **Additional Parties**. Merchant Builder shall have the right to include other persons or entities in the mediation, including any of its subcontractors, material suppliers, design professionals, individual product manufacturers, warranty company representative and insurance carrier representatives.

(d)    **Refusal to Participate**. If either party refuses to participate in the mediation, then the other party may initiate arbitration proceedings as provided in Section 5.3.

(e)    **Mediation Session(s)**. The mediation session(s) shall be commenced as quickly as reasonably practical in the discretion and judgment of the mediator but not later than thirty (30) days following the date of service of the Notice of Claim. The parties shall cooperate in good faith with each other and with the mediator and shall provide all documents reasonably required by the mediator to be provided. Without mutual agreement of Owner and Merchant Builder, the mediation shall not exceed four (4) hours.

(f)    **No Attorneys' Fees**. The parties shall be solely responsible for their own attorneys' fees and no party shall be entitled to an award of its attorneys' fees. Nothing herein shall be construed to modify or abrogate any duty to defend and/or indemnify another party pursuant to the terms of a contract between any such parties.

(g)    **Confidentiality**. The entire mediation proceedings shall be maintained in the strictest confidence and documentary or demonstrative evidence or testimony introduced or revealed to the mediator or other party during the mediation shall be inadmissible in any subsequent proceeding including litigation, arbitration and judicial reference. The provisions of California Evidence Code Section 1115 et seq. shall be applicable to the mediation.

**5.2.3    MEDIATION FAILS TO SETTLE CLAIM**:  If the mediation process provided in Section 5.2.2 fails to settle the Other Claim, either party may initiate arbitration proceedings as provided in Section 5.3.

**5.3.    MANDATORY BINDING ARBITRATION**:  Before Owner institutes arbitration proceedings as provided in this Section 5.3 involving a Title 7 Claim, Owner must first commence the Claim Process and proceed, in good faith, to resolve the claim using the Claim Process.  Before Owner or Merchant Builder institutes arbitration proceedings which do not involve a Title 7 Claim, Owner or Merchant Builder shall, in good faith, attempt to resolve the Other Claim by mediation in accordance with the mediation procedures set forth in Section 5.2.2 above.  The mandatory arbitration procedures below shall apply to all post-closing Merchant Builder Disputes between Merchant Builder and Initial Owner and all Merchant Builder Disputes between Merchant Builder and Successor Owners.  If negotiations, mediation or other non-binding dispute resolution procedures, including the Claim Process, fail to resolve any Merchant Builder Dispute between Owner and Merchant Builder Parties, then the Merchant Builder Dispute shall be resolved by neutral, binding arbitration as follows:

**5.3.1    Mandatory Binding Arbitration.**  Any Merchant Builder Dispute between Owner and any of the Merchant Builder Parties which is not resolved by negotiations, mediation or other non-binding dispute resolution procedures as set forth herein, including the Claim Process, shall be resolved by neutral, binding arbitration governed by the Federal Arbitration Act (9 U.S.C. §§1-16) ("*Federal Act*") and not by any court action except as provided for judicial review of arbitration proceedings under the Federal Act.  A demand for arbitration shall be delivered in accordance with the notice provision provided herein by the party desiring to arbitrate such Merchant Builder Dispute to the other party within thirty (30) days after the conclusion of either the Title 7 Claim or mediation of an Other Claim, as applicable.

**5.3.2    Federal Arbitration Act.**  The construction of the Residences and the Project involved interstate commerce and therefore the arbitration procedures specified in this Section 5.3 are to be interpreted and enforced as authorized by the Federal Act, which is designed to encourage use of alternative methods of dispute resolution that avoid costly and potentially lengthy court proceedings.  The Residences and the Project were constructed with materials and products manufactured throughout the United States which have been shipped to the Project for installation and involved communications by interstate mail and telephone with out-of-state manufacturers, design professionals, contractors and their employees.  The shipment of such materials and products across state lines cause the products and materials to enter into the stream of interstate commerce and become subject to the Interstate Commerce Clause (Article I, Section VIII of the United States Constitution) and ensuing federal laws.  Interpretation and application of the procedures set forth in this Section 5.3 shall conform to any applicable federal court rules and decisions interpreting and applying the Federal Act.  The arbitration proceedings shall be conducted pursuant to the Federal Act and, to the extent not inconsistent, the procedures set forth in this Section 5.3.  In addition, except as set forth herein, and to the extent it is not inconsistent with the Federal Act, the arbitration shall be conducted pursuant to Title 9 of the California Code of Civil Procedure (Section 1280 et seq.).  References to California procedural law are for guidance only and shall not be construed as a waiver of any rights or duties of the parties under the Federal Act or the right of the parties to have the procedures set forth in this Section 5.3 interpreted and enforced under the Federal Act.  If any party seeks review by a court of the enforceability of any of the procedures set forth or referenced herein (notwithstanding the provisions herein making that issue one to be resolved by the arbitrator), the exclusive jurisdiction and venue for any such review shall be the Superior Court for the County.

**5.3.3    Other Parties.**  Merchant Builder and the other Merchant Builder Parties have the sole and absolute right, in their discretion, to join any person or entity who is not a party to the arbitration proceedings if the presence of such person or entity is required or is necessary for complete relief to be accorded in the arbitration proceedings or if the interest or responsibility of such person or

entity in the Merchant Builder Dispute is not insubstantial; provided, however, that if the Master Developer and/or the Master Association is a party to any Merchant Builder Dispute under this Individual Dispute Resolution Agreement, such Merchant Builder Dispute shall be resolved in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration. The parties shall cooperate in good faith and shall diligently perform such acts as may be necessary to ensure that all necessary and appropriate parties are included in the arbitration proceedings.

      5.3.4   **Administration of Proceedings**. The arbitration proceedings shall be conducted by and in accordance with the commercial arbitration rules of JAMS, or if JAMS is unable to conduct the arbitration it shall be conducted by and in accordance with the commercial arbitration rules of the American Arbitration Association (*"Service"*).

      5.3.5   **Statutes of Limitation**. Except for procedural issues, and to the extent not inconsistent with the Federal Act, the arbitration proceedings, the ultimate decisions of the arbitrator, and the arbitrator shall be subject to and bound by existing California case and statutory law including, but not limited to, applicable statutes of limitation established in Title 7. Arbitration must be initiated prior to the expiration of the applicable statutes of limitation.

      5.3.6   **Selection of Arbitrator**. The arbitration proceedings shall be conducted by one (1) qualified neutral and impartial arbitrator who shall be selected in accordance with the rules of the Service no later than thirty (30) days following the date one party delivers to the other party a demand for arbitration. The term *"qualified"* for purposes of this Paragraph shall mean a retired judge who has experience with the laws governing residential real estate development and construction or an attorney who has actively practiced law in California for at least fifteen (15) years and who has experience with the laws governing residential real estate development and construction.

      5.3.7   **Authority of Arbitrator**. The arbitrator shall have the power to hear and dispose of motions, including motions relating to provisional remedies, demurrers, motions to dismiss, motions for judgment on the pleadings and summary judgment and/or adjudication motions, in the same manner as a trial court judge. In addition, the arbitrator shall have the power to summarily adjudicate issues of fact or law, including the availability of remedies, even if the issue adjudicated does not dispose of an entire cause of action or defense. The arbitrator shall have the power to grant provisional remedies including preliminary injunctive relief. Prior to the selection of the arbitrator, any party shall have the right, but not the obligation, to petition the Superior Court of the County for any necessary provisional remedies. However, after obtaining any provisional remedies (pending selection of the arbitrator) the entire matter shall be referred to the Service for all purposes and the Superior Court shall have no further jurisdiction to monitor or enforce the provisional remedies or to make further determinations or awards or to issue additional provisional remedies. The Service shall have the sole power to enforce, extend, modify or vacate any such provisional remedies.

      5.3.8   **Discovery**. All discovery shall be permitted by the arbitrator at the arbitrator's reasonable discretion upon a showing of good cause or based on the agreement of the parties. The arbitrator shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge. At a minimum, the parties will exchange all documents in their possession, custody or control which are either relevant or reasonably calculated to lead to the discovery of admissible evidence and each party shall be entitled to at least two percipient witness depositions and the depositions of all designated experts.

      5.3.9   **Full Disclosure**. Each party shall make, in good faith, a full disclosure of all issues and evidence to each other party prior to the hearing. Any evidence or information that the arbitrator determines was unreasonably withheld shall be inadmissible by the party who withheld it. The initiating party shall be the first to disclose all of the following, in writing, to each other party and to the

arbitrator: (i) an outline of the issues and its position on each such issue; (ii) a list of all witnesses the party intends to call; and (iii) copies of all written reports and other documentary evidence, whether written or not or contributed to by its retained experts (collectively "*Outline*"). The initiating party shall submit its Outline to each other party and the arbitrator within thirty (30) days of the final selection of the arbitrator. Each responding party shall submit its written response as directed by the arbitrator. If the Merchant Builder Dispute involves a Title 7 Claim, then Owner shall be the first party to submit its written Outline, list of witnesses, and reports/documents and shall include a detailed description of the nature and scope of the alleged violation(s), its proposal for repair or restoration, all repairs made to date and an estimate of the cost of repair/restoration together with the calculations used to derive the estimate.

      5.3.10  **Title 7 Claim and Measure of Damages.**  If the Merchant Builder Dispute involves a Title 7 Claim, the arbitrator shall determine whether a violation exists and whether any Merchant Builder Parties are responsible for the violation. If the arbitrator finds that Merchant Builder Parties are responsible for a Title 7 Claim, the arbitrator shall determine the scope of any repair and the reasonable value of repairing the nonconformity, based on evidence presented to him by the parties and their experts. The reasonable value of repairing any nonconformity shall be limited to the lesser of (i) the repair costs, or (ii) the diminution in current value of the real property caused by the nonconformity, subject to the personal use exception as developed under common law. For all Title 7 Claims, Owner is only entitled to damages for the reasonable value of repairing the nonconformity, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure to meet the applicable standards, the reasonable cost of removing and replacing any improper repair by Merchant Builder, reasonable relocation and storage expenses, lost business income if Owner's Residence or the Property was used as a principal place of business licensed to be operated within the Residence or the Property, reasonable and necessary investigative costs for each established violation, and all other costs or fees recoverable by contract or statute. If any of the damages described above are awarded to Owner in any other cause of action, the damages awarded pursuant to this Section 5.3.10 shall be reduced by the amounts recovered in such other causes of action. Merchant Builder Parties shall not be responsible for, and shall be excused from, any obligation, damage, loss or liability to the extent that Merchant Builder Parties can demonstrate any of the affirmative defenses set forth in California Civil Code Section 945.5.

      5.3.11  **Hearing.**  The arbitration shall be held in the County. The arbitration shall be conducted as promptly as possible after giving due consideration to the complexity of the issues, the number of parties and necessary discovery and other relevant matters. The arbitration shall be conducted as informally as possible. California Evidence Code Section 1152 *et seq.* shall apply for the purpose of excluding offers, compromises, and settlement proposals from evidence, unless there is agreement by all parties as to admissibility. The arbitrator shall be the sole judge of the admissibility of and the probative value of all evidence offered and is authorized to provide all legally recognized remedies whether in law or equity, except as otherwise limited in this Section 5.3. The cost of an interpreter shall be borne by the party requiring the services of the interpreter in order to be understood by the arbitrator and the expenses of witnesses shall be borne by the party producing such witnesses.

      5.3.12  **Decision.**  The decision of the arbitrator shall be binding on the parties and may be entered as a judgment in any court of the State of California that has jurisdiction and venue. The arbitrator shall (i) cause a complete record of all arbitration proceedings to be prepared similar to those kept in the Superior Court, (ii) try all issues of both fact and law, and (iii) issue a written statement of decision consistent with that described in California Code of Civil Procedure Section 643 which shall specify the facts and law relied upon in reaching the arbitrator's decision within twenty (20) days after the close of testimony.

      5.3.13  **Fees and Costs.**  Merchant Builder Parties shall advance any fee required by the Service to initiate the arbitration proceedings. Without limiting the generality of the foregoing, the total

cost of the arbitration proceedings, including the fee of the arbitrator, the initiation fee advanced by Merchant Builder Parties and other fees of the Service and any related costs and fees incurred by the Service (such as experts and consultants retained by it), shall be borne one-half by Owner and one-half by Merchant Builder Parties, regardless of the outcome. The arbitrator shall not award attorneys' fees to any party and the parties shall each be solely responsible for their own attorneys' fees. Nothing herein shall be construed to modify or abrogate any duty to defend and/or indemnify a third party pursuant to the terms of a contract between any such parties. A stenographic record of the hearing shall be made which shall remain confidential except as may be necessary for post-hearing motions and appeals. The cost of the record shall be borne one-half by Owner and one-half by Merchant Builder Parties, regardless of the outcome. Should any party refuse or fail to pay its pro-rata share, the remaining parties may pay such share, and the party or parties which pay such extra share shall be awarded such extra costs by the arbitrator in the arbitrator's decision. Notwithstanding the foregoing, under all circumstances the parties shall be responsible for their own attorneys' fees and expert witness costs, subject only to reallocation by any applicable statutory cost-shifting mechanisms. This provision does not modify any provision of any contract between Merchant Builder Parties and any third party requiring indemnification or establishing a different allocation of costs between Merchant Builder Parties and such third party.

5.4.   **JUDICIAL REFERENCE**:  If, and only if, for any reason arbitration cannot be legally used to resolve a Merchant Builder Dispute between Owner and Merchant Builder under Section 5.3, or the arbitration provisions provided for in Section 5.3 above are held not to apply or determined to be invalid, void or unenforceable in whole or material part for any reason preventing their use, then the Merchant Builder Dispute shall be submitted for resolution to general judicial reference within thirty (30) days of judicial determination that the arbitration provision is invalid, void or unenforceable, as set forth below:

5.4.1   **Judicial Reference**.  Merchant Builder Disputes submitted to general judicial reference pursuant to California Code of Civil Procedure Sections 638 through 645.1, inclusive, or any successor statutes thereto, shall be subject to the following terms and conditions:

5.4.1.1   **Cooperation**.  The parties shall cooperate in good faith to ensure that all necessary and appropriate parties are included in the judicial reference proceedings.

5.4.1.2   **Fees and Costs**.  All fees and costs of the judicial reference proceedings shall be borne in the same manner as arbitration.

5.4.1.3   **Referee**.  The general referee shall be chosen from the panel of referees provided by Judicial Arbitration and Mediation Services, Inc. (*"JAMS"* as previously defined) and shall have the authority to try all issues, whether of fact or law, and to report a statement of decision to the court.

5.4.1.4   **Proceedings**.  The parties shall use the procedures adopted by JAMS for judicial reference (or any other entity offering judicial reference dispute resolution procedures as may be mutually acceptable to the parties), provided that the following rules and procedures shall apply in all cases unless the parties agree otherwise:

(a)   The judicial reference proceedings shall be heard in the County.

(b)   The referee must be a neutral and impartial retired judge or a licensed attorney with substantial experience in relevant real estate matters.

(c)     Any dispute regarding the selection of the referee shall be resolved by JAMS or the entity providing the reference services, or, if no entity is involved, by the court with appropriate jurisdiction.

(d)     The referee may require one or more pre-hearing conferences.

(e)     The parties shall be entitled to discovery in accordance with the Code of Civil Procedure, and the referee shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge.

(f)     A stenographic record of the reference trial shall be made, provided that the record shall remain confidential except as may be necessary for post-hearing motions and any appeals.

(g)     The referee's statement of decision shall contain findings of fact and conclusions of law to the extent applicable and shall be issued within twenty (20) days after the hearing has been concluded.

(h)     The referee shall have the authority to rule on all post-hearing motions in the same manner as a trial judge.

(i)     The statement of decision of the referee upon all of the issues considered by the referee is binding upon the parties, and upon filing of the statement of decision with the clerk of the court, or with the judge where there is no clerk, judgment may be entered thereon.  The decision of the referee shall be appealable as if rendered by the court.  This provision shall in no way be construed to limit any valid cause of action which may be brought by any of the parties.

(j)     The participation by any party in any judicial proceedings concerning this Section or any Merchant Builder Dispute shall not be deemed a waiver of the right to enforce this Section notwithstanding any provision of law to the contrary, shall not be asserted or accepted as a reason to delay, to refuse to participate in, or to refuse to enforce this judicial reference provision.

5.5.     **DISPUTES EXEMPT FROM THIS INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**.  Notwithstanding any other provision of this Individual Dispute Resolution Agreement to the contrary, any and all Master Disputes shall be resolved solely in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration.

5.6.     **DISPUTES TO BE RESOLVED INDEPENDENTLY**:  Notwithstanding anything to the contrary herein, Merchant Builder and Owner agree that it is in the best interest of the parties that the dispute resolution procedures set forth in this Individual Dispute Resolution Agreement be utilized independently of any actions (including actions brought pursuant to alternative dispute resolution procedures) involving Merchant Builder Disputes between Merchant Builder Parties and other claimants. Accordingly, Owner knowingly waives any right to participate in any form of "class", "joint" or "representative" litigation (including in any "private attorney general capacity") or dispute resolution procedures against Merchant Builder Parties.  Merchant Builder and Owner agree to this Section 5.5 on the grounds that they wish to assure, in advance, that any Merchant Builder Disputes by or between Owner and any of the Merchant Builder Parties will not be combined with any Merchant Builder Disputes by or between any Merchant Builder Parties and any other claimant.  Merchant Builder and Owner include this provision on the additional grounds that:  (i) the Property is unique from other properties in the Project, and any potential problems it may suffer will not necessarily be common to other properties; (ii) it may provide Owner increased ability to control any Merchant Builder Dispute involving the Property; (iii) Owner's interests will not be subordinated to the interests of other parties who might otherwise become involved in these dispute resolution procedures; (iv) this approach is likely to foster

faster resolution of most Merchant Builder Disputes that may arise; (v) it will help to avoid conflicts of interest among Merchant Builder's and Owner's representatives; and (vi) it is intended to foster better communication between Owner and Merchant Builder focused on resolving the actual issues that may arise in any Merchant Builder Dispute between them. Notwithstanding the foregoing, the restrictions of this Section shall not apply to actions (including actions brought pursuant to alternative dispute resolution procedures) for damages in the amount of one thousand dollars ($1000.00) or less per action (including actions brought pursuant to alternative dispute resolution procedures); provided however, that Owner shall be required to meet any legal requirements for any "class", "joint" or "representative" litigation or dispute resolution procedures with respect to such actions.

---

## ARTICLE VI
## AMENDMENT AND ENFORCEMENT

6.1.    **AMENDMENTS**:  This Individual Dispute Resolution Agreement may be amended by Merchant Builder and Owner by recording an amendment in the Official Records of the County of an instrument setting forth the terms of the amendment executed by Merchant Builder and Owner.

6.2.    **ENFORCEMENT**:  Merchant Builder Parties and Owner shall have the right to enforce any and all of the provisions of this Individual Dispute Resolution Agreement in the manner provided in this Individual Dispute Resolution Agreement.  The failure to enforce the provisions of any agreement, notice or obligation contained in this Individual Dispute Resolution Agreement will not constitute a waiver of any right to enforce any such provisions or any other provisions of this Individual Dispute Resolution Agreement.

6.3.    **THIRD PARTY BENEFICIARIES**:    The Master Developer and the Master Association are each an intended third party beneficiary and have the right to enforce the provisions of Section 5.4 of this Individual Dispute Resolution Agreement.

---

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

7.1.    **BINDING**:  Under California Civil Code Section 945, the provisions, standards, rights, and obligations set forth in this Individual Dispute Resolution Agreement are binding upon Initial Owner and Successor Owners.  This Individual Dispute Resolution Agreement is for the benefit of and binding upon Merchant Builder and Owner and their respective heirs, legatees, devisees, executors, administrators, guardians, conservators, members, successors, purchasers, tenants, encumbrancers, donees, grantees, mortgagees, lien holders and assigns.  The provisions of this Individual Dispute Resolution Agreement are equitable servitudes and covenants running with the land, enforceable by Merchant Builder and Owner.  All covenants, conditions, restrictions and agreements in this Individual Dispute Resolution Agreement shall run with and burden the Property and be binding on and for the benefit of the Property and all real property subject to the Dispute Declaration and/or any Supplemental Declaration recorded pursuant to the provisions of Section 5.2 of the Dispute Declaration and all Successor Owners acquiring any interest in the Property.

7.2.    **CONFLICT**:  Section 5.1 of the Dispute Declaration provides that an Individual Dispute Resolution Agreement may amend, supplement, replace or repeal any of the Exhibits attached to the Dispute Declaration.  Any exhibit attached to this Individual Dispute Resolution Agreement shall be deemed to supersede and replace, in full, the corresponding exhibit in the Dispute Declaration as to the Residence covered by this Individual Dispute Resolution Agreement.  The provisions of Section 5.3 and Section 5.4 of this Individual Dispute Resolution Agreement are separate and independent of the Dispute

Declaration; however, it is intended that the dispute resolution provisions of Section 4.3 of the Dispute Declaration be identical to the provisions of Section 5.3 of this Individual Dispute Resolution Agreement. If there is a conflict between this Individual Dispute Resolution Agreement and the Dispute Declaration, to the maximum extent allowed by law, this Individual Dispute Resolution Agreement shall be construed so as to be consistent with the Dispute Declaration; provided, however, if there is an irreconcilable conflict between this Individual Dispute Resolution Agreement and the Dispute Declaration or a Supplemental Declaration or for any reason the provisions of the Dispute Declaration are not enforceable, then the provisions of this Individual Dispute Resolution Agreement shall control.

7.3.    **CONSTRUCTION OF PROVISIONS**:    The provisions of this Individual Dispute Resolution Agreement are to be liberally construed to effect its purpose.

7.4.    **EXHIBITS**:  Any exhibits attached to this Individual Dispute Resolution Agreement are incorporated by this reference as though fully set forth herein.

7.5.    **MORTGAGE PROTECTION**:  Owner may encumber the Property with a mortgage or deed of trust.  A breach of any of the conditions contained in this Individual Dispute Resolution Agreement shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value as to the Property; provided, however, that the agreements, notices and obligations contained in this Individual Dispute Resolution Agreement shall be binding upon and effective against Owner notwithstanding whether the Property is acquired by foreclosure, trustee's sale or otherwise.

7.6.    **REDISTRIBUTION OF DOCUMENTS**:  Upon the resale of the Property by Initial Owner, Initial Owner must deliver to its Successor Owner a copy of the Dispute Declaration, this Individual Dispute Resolution Agreement and all documents provided to Initial Owner in conjunction with the original sale of the Property.  Upon each resale of the Property, Owner must supply to its Successor Owner a copy of the Dispute Declaration, this Individual Dispute Resolution Agreement and all other documents provided to that Owner by the previous Owner.

7.7.    **SEVERABILITY OF PROVISIONS**:    All provisions of this Individual Dispute Resolution Agreement shall be deemed independent and severable.  If one provision of this Individual Dispute Resolution Agreement is deemed to be invalid or unenforceable to any degree and for any reason, such invalidity or unenforceability will not affect the validity or enforceability of any other provision of this Individual Dispute Resolution Agreement (*"Enforceable Provisions"*).  It is therefore the intent of the parties that any court or arbitrator shall interpret and enforce all Enforceable Provisions of this Individual Dispute Resolution Agreement as binding contractual obligations of the parties.

7.8.    **SUCCESSOR STATUTES**:  Any reference in this Individual Dispute Resolution Agreement to a statute will be deemed a reference to any amended or successor statute.

7.9.    **TERM**:  This Individual Dispute Resolution Agreement shall be effective as of the date of its recordation and shall continue in full force and effect so long as the Dispute Declaration is effective, but in no event shall it terminate within twenty (20) years from its effective date.

*[SIGNATURES ON FOLLOWING PAGE]*

This Individual Dispute Resolution Agreement is executed on this 15th day of May, 2024.

MERCHANT BUILDER:

THE NEW HOME COMPANY SOUTHERN
CALIFORNIA LLC, a Delaware limited
liability company

By: _____

    Name:   Lori Michel

    Title:    Authorized Person

INITIAL OWNER:

Di Lan Ge, trustee

Xian Feng Gu, trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF ORANGE )

On May 15, 2024 before me, Sherry Ivery, a Notary Public, personally appeared Lori Michel, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SHERRY IVERY
Notary Public - California
Orange County
Commission # 2403177
My Comm. Expires May 4, 2026

Notary Public                                    (SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF ___Orange___ )

On __June 24, 2024__, before me, __Leakimna Choeum__, a Notary Public, personally appeared __Di Lan Ge & Xian Feng Gu__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

LEAKIMNA CHOEUM
Notary Public - California
Orange County
Commission # 2367605
My Comm. Expires Jul 24, 2025

Notary Public                                    (SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )
COUNTY OF _____  )


On _____, before me, _____, a Notary Public, personally
appeared _____, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.



_____
Notary Public                                      (SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )
COUNTY OF _____  )


On _____, before me, _____, a Notary Public, personally
appeared _____, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.



_____
Notary Public                                      (SEAL)

EXHIBIT "A"

<u>LIMITED WARRANTY</u>



# HOMEBUYER LIMITED WARRANTY

# TABLE OF CONTENTS

**SECTION 1 –** Introduction .................................................................................... 2

**SECTION 2 –** Definitions ..................................................................................... 3

**SECTION 3 –** One Year Fit and Finish Warranty .................................................. 6

**SECTION 4 –** Extended Limited Warranty for Performance Standards .................. 8

**SECTION 5 –** Exclusions .................................................................................... 14

**SECTION 6 –** Manufacturer's Warranties – Disclaimer ....................................... 17

**SECTION 7 –** Other Conditions and Limitations .................................................. 18

**SECTION 8 –** Time Limit for Making Warranty Claims ......................................... 19

**SECTION 9 –** Right to Repair Act ....................................................................... 20

**SECTION 10 –** Warranty Claim Procedure .......................................................... 21

**SECTION 11 –** Reporting an Emergency Claim .................................................... 23

**SECTION 12 –** Your Obligations ......................................................................... 25

**SECTION 13 –** Builder Obligations Under this Limited Warranty ........................... 27

**SECTION 14 –** Dispute Resolution Procedure ..................................................... 29

**SECTION 15 –** Claims Under Individual Dispute Resolution Agreement ................ 30

**SECTION 16 –** Effect on Future Owners of the Home ........................................... 31

# SECTION 1

## INTRODUCTION

Congratulations on purchasing Your Home!  Your purchase includes this Homebuyer Warranty which relates to original construction defects or deficiencies in materials and workmanship as more fully set forth below (*"Limited Warranty"*).  All capitalized words and phrases used in this Limited Warranty shall have the meanings given them in Section 2 below or as otherwise defined herein.  This Limited Warranty contains important terms, exclusions, conditions, policies and procedures. Therefore, You should carefully read and become familiar with this Limited Warranty.  By signing this Limited Warranty, You agree to all terms, exclusions, conditions, policies and procedures of this Limited Warranty.

This Limited Warranty establishes (a) an agreed upon method for determining whether a construction defect or deficiency in materials and workmanship exists, and is therefore a *"Covered Claim"* as defined in Section 2 (rather than a minor imperfection that can reasonably be expected in the Home or conditions resulting from normal wear and tear or reasonable maintenance responsibilities) and (b) the Builder's responsibility for resolving any such Covered Claim.

This Limited Warranty contains the procedures You must use and follow to notify Builder of a Condition in the Home which You believe constitutes a Covered Claim.  If You believe that a Condition is a Covered Claim, You must submit a request for service under this Limited Warranty.  Based upon the information You provide, and the Builder's investigation/inspection and/or testing of the Home, the Builder will determine whether it agrees that the Condition constitutes a Covered Claim.  If the Builder determines that the Condition is a Covered Claim, it will provide the repair, replacement or other response to such Condition required of the Builder under this Limited Warranty.  If the Builder determines that a Condition does not constitute a Covered Claim, it may deny Your request for service under this Limited Warranty.  If You disagree with the Builder's determination, You have the right to pursue a claim against the Builder in accordance with the Individual Dispute Resolution Agreement (as defined below).

To the fullest extent permitted by law, all express or implied warranties other than this Limited Warranty, including any oral or written statement or representation made by Builder or any of the Builder Parties or any other person, and any implied warranty of habitability, merchantability or fitness, are hereby disclaimed by the Builder and are waived by You.  If any provision or portion of any provision of this Limited Warranty is determined to be unenforceable for any reason, such determination will not in any way affect the remaining provisions.

The issue of enforceability, as well as all other issues related to this Limited Warranty, will be determined by binding arbitration/judicial reference as provided for in the Individual Dispute Resolution Agreement.

2

## SECTION 2

## DEFINITIONS

The following words and phrases used in this Limited Warranty have the meanings set forth below.

**Actual Moisture Barrier** means any Component or material, actually installed, that serves to any degree as a barrier against moisture, whether or not intended as a barrier against moisture.

**Association** means any neighborhood association or master homeowner association applicable to the Project.

**Association Property** means any and all real property and improvements at the Project for which the Association owns or has the obligation to maintain and repair pursuant to the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements and any other governing documents for the Project.

**Builder** means The New Home Company Southern California LLC, a Delaware limited liability company.

**Builder Parties** means (i) Builder and its partners, members or other principals and their respective officers, agents, employees, affiliated, parent and subsidiary companies, successors and assigns, and design centers, and (ii) any subcontractors, design professionals, engineers, inspectors, material suppliers and/or consultants who provided labor, services or materials to any portion of the Home.

**Component** means an item that was incorporated into the construction of your Home by Builder, other than items specifically excluded by this Limited Warranty. The term does not include items added by you or anyone other than Builder or Builder Parties, or added to the home after the Effective Date of Warranty, such as improvements to the Home or furniture.

**Condition** means any circumstance and/or condition in the Home that You believe may be a Covered Claim.

**Covered Claim** is the failure of any workmanship, materials, and systems of any Component to meet the Fit and Finish Performance Standards or Performance Standards, as applicable.

**Designed Moisture Barrier** means an installed moisture barrier specified in the plans and specifications, contract documents, or manufacturer's recommendations.

**Effective Date of Warranty** means the date on which You close escrow for the purchase of the Home. Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend the ten (10) year statute of repose for

3

construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such ten (10) year statute of repose expressly applies to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

**Emergency Condition** means any Condition that would cause an unsafe living condition affecting the health and safety of persons residing in the Home.

**Extended Limited Warranty** means the warranty provided under Section 4 of this Limited Warranty.

**Federal Act** means the Federal Arbitration Act (9 U.S.C. §§1-16).

**Fit and Finish Standards** means the construction and performance standards set forth in Section 3 subject to the tolerances and exclusions set forth in this Limited Warranty.

**Fit and Finish Warranty** means the one (1) year warranty described in Section 3.

**Fit and Finish Warranty Term** means the period which is (1) year following the Effective Date of Warranty.

**Home** means the residence You purchased from the Builder as described on the signature page of this Limited Warranty and all appurtenant improvements.

**Homeowner** means You and any successive owner of the Home.

**Homeowner Manual** means the Homeowner Manual provided to You by the Builder which includes important information regarding Your Home, including guidelines for the maintenance, care and use of Your Home.

**Individual Dispute Resolution Agreement** means the Individual Dispute Resolution Agreement entered into between You and the Builder in connection with the purchase of the Home that is or shall be recorded against the Home.

**Manufactured Products** means a product that is completely manufactured off-site, including without limitation all flooring, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, appliances, pieces of equipment, or other items installed in the Home that are consumer products for purposes of the Magnuson-Moss Warranty Act (15 U.S.C. Section 2301, et. seq.) and solar energy systems including inverters.

**Maintenance Guidelines** means all maintenance obligations, guidelines, schedules and practices communicated to You in writing by Builder, including, without limitation all product manufacturers' use, maintenance and care instructions provided to You by Builder, as well as commonly accepted maintenance practices. Such commonly

4

accepted maintenance practices include, but are not limited to, those set forth in Your Homeowner Manual and those established by product manufacturers.

**Owner Party or Parties** means You and/or Your agents, family (including minor children), tenants, guests, invitees and or representatives.

**Performance Standards** means the construction and performance standards set forth in Section 4 of this Limited Warranty subject to the tolerances and exclusions set forth in this Limited Warranty.

**Project** means the residential development in which the Home is located.

**Right to Repair Act** means Title 7, Part 2 of Division 2 of the California Civil Code commencing with Section 895.

**Service Request** means a complete, detailed description of a Condition properly submitted by You as set forth in Section 10 of this Limited Warranty.

**Structure** means any residential building, other building, or improvement located within the Project.

**Unintended Water** means water that passes beyond, around, or through a Component or the material that is designed to prevent that passage.

**Warranty Term** means, as to each system or Component covered by this Limited Warranty, the period beginning on the Effective Date of Warranty and expiring on the date for each such Component specified in Section 3 or 4 of this Limited Warranty, as applicable.

**You or Your** means the homeowner to whom this Limited Warranty is provided.

## SECTION 3

## ONE YEAR FIT AND FINISH WARRANTY

Subject to the terms, limitations, conditions and exclusions of this Limited Warranty, Builder warrants that during the period which is one (1) year following the Effective Date of Warranty (the Fit and Finish Warranty Term) the following Components of the Home will satisfy the Fit and Finish Standards within an acceptable tolerance. Builder will correct any noncompliance with the Fit and Finish Standards that are reported to Builder in writing in accordance with this Limited Warranty during the Fit and Finish Warranty Term. Any noncompliance with the Fit and Finish Standards not so reported to Builder within the Fit and Finish Warranty Term shall be Your responsibility. A Condition will only be a Covered Claim under this Fit and Finish Warranty if the Condition is the result of a Component or function not being in compliance with the Fit and Finish Standards. Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through are presumed to have been caused by Homeowner. Such damages caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| Cabinets | Cabinet doors shall align. | Cabinet doors that are out of alignment in excess of 1/8 of an inch when closed are a deficiency. | |
| Cabinets | Cabinet doors shall not contain significant warps. | Cabinet door warping of more than 3/16 of an inch is a deficiency. | |
| Cabinets | Cabinets shall be installed level and flush to walls and ceilings. | Deviations greater than 3/8 of an inch in cabinet level in a 6 foot span is a deficiency. Deviations greater than 3/16 of an inch to walls and ceilings is a deficiency. | |
| Carpet | Carpet seams shall be butted tightly. | | Visible seams and seam separations after close of escrow are not covered. |
| Countertops | Countertops shall be installed flat and level. | Deviations greater than 3/8 of an inch in countertop level is a deficiency. | |
| Exterior Decks/Patios | Decks and patios shall drain properly. | Water ponding in excess of 3/8 of an inch 24 hours after last rain is a deficiency. | |
| Exterior Doors | Doors shall not contain significant warps. | Exterior door warping of more than 1/8 of an inch is a deficiency. | |
| Exterior Trim | Wood trim, siding, and false beam details shall not contain significant separations. | Separations exceeding 3/8 of an inch in width are a deficiency. | Maintenance of Components, including, without limitation, caulking at joints, is not covered. |
| Grout | Grout shall not contain significant cracks. | Cracks in excess of 1/32 of an inch are a deficiency. | |
| Hardwood Flooring | Finish flooring shall be installed level. | Variance in the level of hardwood flooring that exceeds 1/4 of an inch in 8 feet is a deficiency. | |

6

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| HVAC | Heating, if any, shall be installed so as to be capable of maintaining a room temperature of 70 degrees Fahrenheit at a point three feet above the floor in any living space. | | |
| HVAC | Living space air-conditioning, if any, shall be provided in a manner consistent with the size and efficiency design criteria specified in Title 24 of the California Code of Regulations or its successor. | | |
| Interior Doors | Doors shall not contain significant warps. | Interior door warping of more than 1/4 of an inch is a deficiency. | |
| Interior Trim | Trim shall not contain significant separations. | Separations at miter joints exceeding 1/16 of an inch in width are a deficiency. Gaps between trim and adjacent trim or other materials exceeding 1/8 of an inch are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant bows or crowns. | Bows exceeding 1/4 of an inch in a 32 inch horizontal or vertical measurement or 1/2 of an inch in an 8 foot measurement are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant cracks or separations. | Cracks and separations exceeding 1/8 of an inch in width are a deficiency. | |
| Landscaping/Irrigation | Irrigation systems and drainage shall operate properly so as not to damage landscaping or other external improvements. | | Landscaping installed, modified, or damaged after close of escrow is not covered. |
| Landscaping/Irrigation | The landscaping systems shall be installed in such a manner so as to survive for not less than one year. | | |
| Manufactured Products | To the extent not otherwise covered by these standards, manufactured products (products completely manufactured offsite), including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any. Useful life shall mean one year or the term of the manufacturer's warranty, whichever is greater, but no more than 10 years. | | Claims relating solely to a defect in a manufactured product are not covered. |
| Subfloor | Wood subfloors shall be installed level. | Variance in the level of wood subfloors that exceeds 1/2 of an inch in 20 feet is a deficiency. | Squeaks from subfloors are not covered. |

# SECTION 4

## EXTENDED LIMITED WARRANTY FOR PERFORMANCE STANDARDS

Subject to the terms, conditions and exclusions of this Limited Warranty, Builder warrants that during the applicable Warranty Term the following Components of the Home will satisfy the Performance Standards identified below within an acceptable tolerance. A Condition will only be a Covered Claim under the Extended Limited Warranty if the Condition is the result of a Component or function not being in compliance with the Performance Standards described in this Section. Conditions caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Noise | Attached structures shall be constructed to comply with inter-unit noise transmission standards set by the applicable government building codes, ordinances, or regulations in effect at the time of the original construction. | | If there is no applicable code, ordinance or regulation, this standard does not apply. | 1 Year from original occupancy of the adjacent unit |
| Paint | Paint and stains shall be applied in such a manner so as not to cause deterioration of the building surfaces for the length of time specified by the paint or stain manufacturers' representations, if any. | | | No more than 5 Years |
| Electrical | Electrical systems shall operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | Alterations made after close of escrow that change or increase the electrical load on the system void this coverage. | 4 Years |
| Exterior Flatwork | Concrete driveway and garage slab shall not be significantly offset. | Vertical offset that exceeds 1/2 of an inch is a deficiency. | Offsets exceeding 1/2 of an inch that are intentionally created during original installation are not covered. | 4 Years |
| Exterior Flatwork | Exterior pathways, driveways, hardscape, sidewalls, sidewalks, and patios installed by the original builder shall not contain cracks that display significant vertical displacement or that are excessive. | Cracks exceeding 1/4 of an inch in width or vertical displacement are a deficiency. Cracks in control joints that exceed 1 inch in width or 1/4 of an inch in vertical displacement are a deficiency. | Minor cracking is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Damage to builder-installed flatwork caused by flatwork or other additions installed after close of escrow are not covered. | 4 Years |
| Fences | Untreated steel fences and adjacent Components shall be installed so as to prevent unreasonable corrosion. | | | 4 Years |
| Plumbing and Sewer | Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | | 4 Years |

8

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Fences | Untreated wood posts shall not be installed in contact with soil so as to cause unreasonable decay to the wood based upon the finish grade at the time of original construction. | | | 2 Years |
| Mechanical | Dryer ducts shall be installed and terminated pursuant to manufacturer installation requirements. | | | 2 Years |
| Exterior Finishes | Stucco, exterior siding, and other exterior wall finishes and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall not contain significant cracks or separations. | Cracks exceeding 1/8 of an inch in width are a deficiency. Separations between dissimilar materials exceeding 3/8 of an inch in width are a deficiency. Separations at butt joints or miter joints of trim pieces that exceed 1/4 of an inch are a deficiency. | Minor cracking and separations is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Maintenance of caulking between dissimilar materials is not covered. Efflorescence is considered acceptable and is not covered. | 10 Years |
| Fire Protection | Electrical and mechanical systems shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire. | Original construction that causes an unreasonable risk of fire is a deficiency. | | 10 Years |
| Fire Protection | Fireplaces, chimneys, chimney structures, and chimney termination caps shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire outside the fireplace enclosure or chimney. | Original construction that causes an unreasonable risk of fire outside the fireplace enclosure is a deficiency. | | 10 Years |
| Fire Protection | The Structure shall be constructed so as to materially comply with the design criteria of the applicable government building codes, regulations, and ordinances for fire protection of the occupants in effect at the time of the original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Public Health Hazard | Structures shall be constructed in such a manner so as not to impair the occupants' safety because they contain public health hazards as determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction. | | | 10 Years |
| Roof | Roofing materials shall be installed so as to avoid materials falling from the roof. | | Damage caused after close of escrow is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, damage to the Structure built upon the soil or engineered retaining wall. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, the Structure to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |

9

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Soil | Soils shall not cause, in whole or in part, the land upon which no structure is built to become unusable for the purpose represented at the time of original sale by the builder or for the purpose for which that land is commonly used. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | Deficiencies caused, in whole or in part, by modifications to the soil or the surrounding areas after close of escrow are not covered. Damage caused by failure to maintain drainage swales is not covered. | 10 Years |
| Structural | Foundations, load bearing Components and slabs shall not cause the Structure, in whole or in part, to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |
| Structural | Foundations, load bearing Components, and slabs shall not contain significant cracks or significant vertical displacement. | Cracks exceeding 3/16 of an inch in width or 1/8 of an inch in vertical displacement are a deficiency. | Cracks in a control joint are not covered. | 10 Years |
| Structural | Foundations, load bearing Components, and slabs, and underlying soils shall be constructed so as to materially comply with the design criteria set by applicable government building codes, regulations, and ordinances for chemical deterioration or corrosion resistance in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Structural | The Structure shall be constructed so as to materially comply with the design criteria for earthquake and wind load resistance, as set forth in the applicable government building codes, regulations, and ordinances in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Tile | Ceramic tile and tile backing shall be installed in such a manner that the tile does not detach. | | | 10 Years |
| Water Intrusion - Doors | A door shall not allow Unintended Water to pass beyond, around, or through the door or its Designed or Actual Moisture Barriers, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |
| Water Intrusion - Doors/Windows | Windows, patio doors, deck doors, and their systems shall not allow water to pass beyond, around, or through the window, patio door, or deck door or its Designed or Actual Moisture Barriers, including, without limitation, internal barriers within the systems themselves. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Leaks caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |

10

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Drainage | Hardscape, including paths and patios, irrigation systems, landscaping systems, and drainage systems, that are installed as part of the original construction, shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the hardscape or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Water Intrusion - Enclosures | Shower and bath enclosures shall not leak water into the interior of walls, flooring systems, or the interior of other Components. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, grout, caulking, or weatherstripping, are not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, and exterior walls shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage from condensation entering the Structure caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, to maintain proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, exterior walls, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those Components and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall be installed in such a way so as not to allow Unintended Water to pass into the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers of the system, including any internal barriers located within the system itself. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking, are not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow Unintended Water to pass within the systems themselves and cause damage to the systems. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Damage caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, is not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow water to pass into the adjacent Structure. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, are not covered. | 10 Years |

11

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Exterior Systems | Windows, patio doors, deck doors and their glazing shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Damage to another Component from excessive condensation entering the Structure from the outside as a result of original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. | | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to limit the installation of the type of flooring materials typically used for the particular application. | Damage to the original flooring caused by water or vapor transmission through the foundation system and slab is a deficiency. | Preparation required for installation of a flooring material that differs from that originally installed by Builder is not covered. | 10 Years |
| Water Intrusion - Roof | Roofs, roofing systems, chimney caps, and ventilation Components shall not allow water to enter the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers, including, without limitation, internal barriers, located within the systems themselves. For purposes of this standard, systems include, without limitation, framing, substrate, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, their roof, are not covered. | 10 Years |
| Water Intrusion - Tile | Ceramic tile and tile countertops shall not allow water into the interior of walls, flooring systems, or other Components so as to cause damage. | Leaks caused by original construction are a deficiency. | Damage caused by water tracked or introduced into areas outside of showers or bathtubs is not covered. | 10 Years |
| Water Intrusion - Utilities | Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems. | Corrosion that impedes the useful life of the system is a deficiency. | | 10 Years |
| Water Intrusion - Utilities | Sewer systems shall be installed in such a way as to allow the designated amount of sewage to flow through the system. | Original installation by the Builder that impedes the designated amount of sewage from flowing through the system is a deficiency. | Impediments caused by modifications or damage caused after close of escrow are not covered. Flushing of hygiene products that create a blockage are not covered. | 10 Years |
| Water Intrusion - Utilities | The lines and Components of the plumbing system, sewer system, and utility systems shall not leak. | Leaks caused by original construction are a deficiency. | Leaks caused by modifications or damage to Components after close of escrow are not covered. | 10 Years |
| Water Intrusion - Walls | Retaining and site walls and their associated drainage systems shall not allow Unintended Water to pass beyond, around, or through its Designed or Actual Moisture Barriers including, without limitation, any internal barriers, so as to cause damage. This standard does not apply to those portions of any wall or drainage system that are designed to have water flow beyond, around, or through them. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

12

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Walls | Retaining walls and site walls, and their associated drainage systems, shall only allow water to flow beyond, around, or through the areas designated by design. | Water intrusion caused by original construction is a deficiency. | Water intrusion caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

## SECTION 5

## EXCLUSIONS

A.      In addition to the items specifically addressed in Sections 3 and 4, this Limited Warranty also does not provide any coverage for the following, which are specifically excluded and shall not be Covered Claims:

1.    Damage to any property that was not included as part of the original construction of Your Home by Builder.

2.    Any condition which has not resulted in actual physical damage to Your Home.

3.    Failure to maintain Your Home in accordance with the Maintenance Guidelines.

4.    Any loss or damage that is caused or made worse by any of the following causes, whether acting alone or in sequence or concurrence with any other cause or causes whatsoever, including without limitation:

(a)    negligence, improper maintenance, defective material or work supplied by, or improper operation by, anyone other than Builder or any Builder Parties, including failure to comply with the warranty requirements of manufacturers of appliances, equipment or fixtures;

(b)    Your failure to give prompt and proper notice to Builder of any Covered Claim in accordance with the terms of this Limited Warranty;

(c)    changes in grading that do not comply with accepted grading practices, or failure to maintain the original grade created by Builder;

(d)    riot or civil commotion, war, vandalism, hurricane, tornado or other wind storm, fire, explosion, blasting, smoke, water, flood, hail, snow, ice storm, lightning, fallen trees or other objects, aircraft, vehicles, landslide or mud slide, avalanche, earthquake, subsidence, erosion, volcanic eruption or natural or manmade condition that exceeds the design criteria;

(e)    abuse or use of the Home, or any part thereof, beyond the reasonable capacity of such part for such use;

(f)   microorganisms, fungus, decay, wet rot, dry rot, soft rot, rotting of any kind, mold, mildew, vermin, termites, insects, rodents, birds, wild or domestic animals, plants, corrosion, rust, radon, radiation, formaldehyde, asbestos, any solid, liquid or gaseous pollutant, contaminant, toxin, irritant or carcinogenic substance, whether organic or inorganic, and any electro-magnetic field or emission, including any claim of health risk or un-inhabitability based on or caused by any matter contained in these exclusions;

(g)   Your failure to minimize or mitigate any Condition, loss or damage as soon as practicable;

(h)   any request for warranty service or performance submitted to Builder after an unreasonable delay or in any event later than expiration of the applicable Warranty Term, as applicable;

(i)   loss caused, in whole or in part, by any peril or occurrence for which compensation is provided by state or federal legislation or public funds;

(j)   diminution in the market value of the Home which is in addition to or exceeds the cost of repair;

(k)   loss or damage caused by or resulting from the loading of structural elements in excess designed loads, including, without limitation, water beds, safes, weight benches, large fish tanks, above-garage attics and storage spaces, and pool tables;

(l)   bodily injury or damage to personal property and any and all incidental and consequential damages, including, without limitation, lost profits, stigma damages, time missed from employment, expenses to address special health or physical situations, costs of shelter, transportation, food, moving, storage or other incidental expenses related to relocation during repairs;

(m)   loss or damage resulting from, or made worse by: (i) changes to the grading of the property surrounding the Home by anyone, including changes made by or its authorized employees, agents or subcontractors, (ii) changes in the grading or drainage resulting from erosion, subsidence or (iii) other soil movement. Builder assumes no responsibility for damage caused by the lack of or improper landscaping, changing the grade of a yard, or fencing, patios, spas, pools or otherwise which alter the grading or the water table;

15

(n)   loss or damage resulting from, or made worse by: dampness, condensation, cold or heat buildup caused by a failure to maintain proper ventilation in accordance with the terms of the Maintenance Guidelines;

(o)   loss or damage due to the actions of others, including, without limitation, actions by or failure to act by cities, counties or utility companies, including failure to provide utility service to the Home; and

(p)   modification of the Home and/or work performed at the Home by Homeowner or third parties after closing.

5.   Failure to allow Builder or Builder Parties reasonable and timely access for inspections and repair under this Limited Warranty.

6.   Alterations, ordinary wear and tear, misuse, abuse, or neglect, or use of the Home other than for intended purpose by You or any Owner Party.

7.   Any Covered Claim for which Builder has obtained a release.

8.   All Manufactured Products (including without limitation consumer products for purposes of the Magnuson-Moss Warranty Act), except as expressly provided otherwise in this Limited Warranty.

9.   All solar energy systems and Component parts warranted by a third party solar provider and/or its suppliers.

10.   Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through.

11.   Any of the conditions, occurrences, or matters set forth in Civil Code section 945.5.

12.   Association Property.

## SECTION 6

### MANUFACTURER'S WARRANTIES – DISCLAIMER

All Manufactured Products are excluded from coverage under this Limited Warranty. To the extent Builder has been issued a warranty from any manufacturer of Manufactured Products installed in Your Home, Builder assigns to You, to the extent assignable and without recourse to Builder, Builder's rights in such warranties, if any. The assignment will be effective as of the date on which You close escrow for the purchase of Your Home. Any rights that inure to a homeowner under a manufacturer's warranty are the obligation of the manufacturer. Builder has no obligations under the manufacturer's warranty, including without limitation the ability to enforce the manufacturer's warranty. Builder disclaims any warranty of any kind, express or implied, relating to Manufactured Products, including without limitation, any warranty of use, fitness of use, workmanship, or quality. Builder will not be obligated under this Limited Warranty for any damage to a Manufactured Product or for any damage caused by a Manufactured Product installed at Your Home; provided however, to the extent required by law, Builder will be responsible for damage caused by its improper installation of a Manufactured Product at Your Home or other act by Builder only if the installation or other act by Builder caused actual damage. Builder's disclaimer of warranties does not limit or otherwise affect the warranty of any manufacturer. If a Manufactured Product malfunctions, or is otherwise defective, You agree to follow the procedures in the applicable manufacturer's warranty documents or website. Prior to Your execution of this Limited Warranty, a copy of the warranties for Manufactured Products in Your Home were made available to You for Your review. At or after the close of escrow for the purchase of Your Home, Builder will deliver to You the actual warranties for the Manufactured Products in Your Home to the extent such warranties exist. Such delivery may be in digital format or links to a manufacturer's website.

## SECTION 7

### OTHER CONDITIONS AND LIMITATIONS

**DISCLAIMER OF OTHER WARRANTIES**.  TO THE FULLEST EXTENT PERMITTED BY LAW, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF HABITABILITY, ARE HEREBY EXPRESSLY DISCLAIMED BY BUILDER AND WAIVED BY YOU.  THIS LIMITED WARRANTY IS SUBSTITUTED IN PLACE OF ALL SUCH WARRANTIES. THIS MEANS THAT THIS WARRANTY IS THE ONLY WARRANTY THAT APPLIES AND GOVERNS YOUR AND OUR RIGHTS AND OBLIGATIONS RELATED TO YOUR HOME AND THAT THERE ARE NO OTHER WARRANTIES EXCEPT AS MAY BE REQUIRED BY LAW. NO ONE CAN ADD TO OR VARY THE TERMS OF THIS LIMITED WARRANTY, ORALLY OR IN WRITING.   IF AN ARBITRATOR OR COURT DETERMINES THAT A WARRANTY CANNOT BE WAIVED, DISCLAIMED, OR REDUCED BY THIS WARRANTY OR SUBSTITUTED WITH THE TERMS OF THIS WARRANTY BY LAW, THEN THE SPECIFIC TERM IN THIS WARRANTY THAT CONFLICTS WITH THE WARRANTY TERM THAT MAY NOT BE WAIVED, DISCLAIMED, REDUCED OR SUBSTITUTED WILL NOT APPLY, BUT ALL OTHER TERMS WILL REMAIN APPLICABLE TO THE EXTENT PERMITTED BY LAW.

**Severability**.  In the event any provision of this Limited Warranty is determined to be unenforceable, that determination will not affect the validity of the remaining provisions.

**Not an Insurance Policy**.  This Limited Warranty is not an insurance policy and Builder does not provide you any insurance through the Limited Warranty or otherwise. You should always obtain Homeowners insurance to protect your Home and if You have a mortgage on Your Home, Your lender may insist that You have a homeowner's insurance policy.  This is not a homeowner's insurance policy.

**Repair Does Not Extend Warranty Term**.  No repair, replacement or payment shall extend the Warranty Term of this Limited Warranty as to any Covered Claim, including, without limitation, the Covered Claim which was the subject of the repair.  There shall be no warranty, express or implied, arising from repair or replacement work performed by or on behalf of Builder except for the remaining original Warranty Term.

**Limitations on Post-Repair Condition of Home**. Repairs undertaken under the Limited Warranty are intended to restore the Home to acceptable tolerances, but not necessarily to like-new condition.

**Headings**. Section headings and the Table of Contents used herein are for convenience of reference only and shall not affect the meaning or interpretation of this Limited Warranty.

## SECTION 8

### TIME LIMIT FOR MAKING WARRANTY CLAIMS

The Warranty Term is different depending on the type of system, Component or element of construction involved. For items covered under Section 3 One Year Fit and Finish Warranty, the Warranty Term is one year from the Effective Date of Warranty. For items covered under Section 4 Extended Limited Warranty for Performance Standards, the Warranty Term is set forth for each building Component listed starting from the Effective Date of Warranty. All warranty claims must be received by Builder prior to the expiration of the applicable Warranty Term. Any claim that Builder did not comply with its obligations under this Limited Warranty must be brought pursuant to the procedures set forth in the Individual Dispute Resolution Agreement and must be initiated no later than thirty (30) days after the expiration of the applicable Warranty Term. Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend any applicable statutes of limitation or repose, including without limitation the ten (10) year statute of repose for construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such statutes of limitation and/or repose that apply to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

# SECTION 9

## RIGHT TO REPAIR ACT

This Limited Warranty is **NOT** intended to be a Builder's Enhanced Protection Agreement, as permitted by the Right to Repair Act. The terms and conditions of this Limited Warranty are intended by Builder to contractually set forth Your and the Builder's rights, duties, and obligations as to certain covered Components and functions of Your Home under this Limited Warranty.

If this Limited Warranty is in any way deemed to limit the application or reduce the protection of the Right to Repair Act, the provisions of the Right to Repair Act shall control and shall supersede any term, condition, provision, definition, limitation, exclusion, right, duty, or requirement stated in this Limited Warranty.

## SECTION 10

## WARRANTY CLAIM PROCEDURE

If You become aware of a Condition that You believe is Covered Claim under this Limited Warranty, You must proceed as follows:

**Notification**

You must submit a Service Request through the Builder's website at https://www.CustomerCareNHC.com (or by following the links at Builder's general website for "service", "customer care" or "warranty", "**Website**") as soon as reasonably possible after You become aware or should have become aware of the Condition, but in no event may Your service request be submitted to Builder through the Website later than the earlier to occur of (a) thirty (30) days following Your discovery of a Condition (except as provided below for Conditions discovered during the first thirty (30) days after the Effective Date of Warranty) or (b) the date on which the applicable Warranty Term expires for the system, Component or element of construction involved in such Condition. However, for ease of service, during the initial thirty (30) days following the Effective Date of Warranty you should keep track of Conditions You wish to report until the expiration of such thirty (30) day period. Service requests must be made through the Website and will not be accepted by mail or other delivery process. If your request for service is not submitted in accordance with the foregoing, Builder will have no obligation to remedy the Condition that is the subject of the service request. Further any claim or claims that Builder has breached this Limited Warranty must be brought within one (1) year following the alleged breach, but in no event later than thirty (30) days after expiration of the Warranty Term with respect to the system, Component or element of construction involved in such breach by Builder, and shall be resolved in accordance with the Individual Dispute Resolution Agreement.

**Cooperation**

You must fully cooperate with Builder, and any Builder Parties, in inspecting, investigating, testing (including destructive testing), monitoring, repairing, replacing or correcting a Condition under this Limited Warranty. This cooperation includes, but is not limited to, granting reasonable access to Your Home for the foregoing purposes during normal business hours, having a person at least eighteen (18) years of age at each and every scheduled appointment, and, if the Home has tenants, having Your authorized representative (as evidenced by a signed, written authorization), present for any such appointments. If You fail to so cooperate, the Builder will have no obligation to perform any warranty service under this Limited Warranty.

**Do Not Incur Expenses for Covered Claims Without Written Approval**

You agree not to make any voluntary payments, assume any obligations, or incur any expenses to remedy any Condition You believe is a Covered Claim without prior written approval from Builder. Subject to the exception below, Builder will not reimburse

You for any costs or expenses You incur if You do not obtain prior written approval from Builder agreeing to reimburse you for such costs.

However, Builder will reimburse you for reasonable expenses You incur with independent third parties, consistent with this Limited Warranty, in making repairs for (i) a Condition that is a Covered Claim which is necessary solely for the protection of the Home from further material damage, provided that you notify Builder of such Condition as soon as is reasonably possible, or (ii) an Emergency Condition provided that you notify Builder of such Emergency Condition as soon as is reasonably possible. To obtain reimbursement for such costs incurred as a result of an Emergency Condition, You must provide Builder with a complete and accurate record describing in detail the Emergency Condition and the repairs and repair costs. If proper, detailed documentation for emergency repairs and repair costs is not provided, Builder shall not be obligated to reimburse You for costs incurred in connection therewith.

**Sign a Release**

To the fullest extent permitted by law, when Builder or a third party designated by Builder pays to You any monetary settlement for any claim, You must sign a full release of Builder's obligations related to the claim. This release shall be applicable to the claim only and shall not prevent You from making a claim regarding any other Condition that You believe is a Covered Claim.

**Disputes**

You agree that all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial.

## SECTION 11

## REPORTING AN EMERGENCY CLAIM

Certain events and circumstances may require immediate attention by You under this Limited Warranty. Builder has provided an emergency phone number for Your convenience to expedite service in Emergency Conditions. To ensure documentation in Your warranty file, send a Service Request Form to Builder clearly identifying and describing in detail the Emergency Condition and the date that You reported the Emergency Condition.

Emergency Covered Claims are those Covered Claims that require immediate attention due to Emergency Conditions and include, but may not be limited to, the following examples:

- A total stoppage of the sewer system. (Note: Builder is not responsible for sewers, fixtures, and drains which are clogged as a result of the action or inaction of any Owner Party or Owner Parties.)

- A water leak which could cause serious damage to the building and/or furnishings. (Turn off water supply immediately.)

- An electrical problem causing complete loss of power within the Home. (Shut off main breaker.)

Urgent, but non-Emergency Conditions are those Conditions that may require immediate responsive action but are not of an Emergency Condition nature. Such urgent Conditions, include, but may not be limited to:

- Complete loss of heat or air conditioning

- Leak under a sink

The following Emergency Phone Number and contact information are provided to You for use if You believe a Condition is an Emergency Condition. Please strictly comply with the emergency service request procedures set forth above, including careful consideration of whether a Condition qualifies as an Emergency Condition subject to the emergency service request procedures set forth herein.

# EMERGENCY PHONE NUMBER

## 949-472-5518

For appliance service issues, please contact the appropriate factory warranty service company for all appliance repairs of any nature. To ensure documentation in your warranty file, after You have contacted the appropriate appliance service subcontractor, send a Service Request Form to Builder clearly identifying and describing the appliance service request and the date that the appliance service subcontractor or vendor was contacted.

You are required to exercise good faith in determining whether a Condition qualifies as a Covered Claim, whether such Condition qualifies as an Emergency Condition and using the proper reporting procedures under this Limited Warranty. You may be responsible for costs associated with services provided if you report an item that is not an Emergency Condition or a Covered Claim, at Builder's sole discretion.

Your failure to follow obligations, schedules, necessary maintenance (including without limitation the Maintenance Guidelines), reporting procedures and practices may invalidate all or portions of the coverage of this Limited Warranty.

# SECTION 12

## YOUR OBLIGATIONS

**Access to Your Home.**

In order for Builder to carry out its responsibilities under this Limited Warranty, Builder, or a third-party designated by Builder, will require access to Your Home from time-to-time, provided that access is during normal business hours, Monday through Friday, at a time mutually convenient to You and Builder between the hours of 8:00 a.m. and 4:00 p.m., or as otherwise set forth above. You hereby agree to grant access to Builder and Builder Parties during such time to inspect, repair and conduct tests in Your Home as in their judgment may be required. Your failure to allow access to Your Home will void this Limited Warranty.

**Your Obligations to Care for Your Home.**

This Limited Warranty covers the cost of labor and materials to correct a Covered Claim, as more fully defined above. Your obligation is to care for Your Home in such a way as to prevent or minimize damage to it. All new homes go through a period of settlement and movement. During this period, Your Home may experience some minor material shrinkage, cracking and other events which are normal and customary. You are responsible for proper maintenance of Your Home, including, but not limited to, complying fully with all Maintenance Guidelines. You should become familiar with all Maintenance Guidelines. By accepting this Limited Warranty, You agree to provide to any subsequent purchaser of the Home from You any and all Maintenance Guidelines. Any subsequent purchaser of the Home must also comply with the Maintenance Guidelines. The failure of any Homeowner to comply with the Maintenance Guidelines shall void this Limited Warranty, as to any claim in whole or in part, at Builder's sole and absolute discretion. The sale of the Home to a subsequent purchaser shall not extend the Warranty Term.

Without limiting the information or maintenance obligations provided in Your Homeowner Manual or other Maintenance Guidelines, below are some reminders of what Your Home has a right to expect from You:

- Your Home and lot were designed with a particular drainage pattern, which should carry rainwater away from the foundation. Water should not be directed to the edge of the foundation, either in the form of lot drainage or the watering of flowers, shrubs, or grass.
- Concrete surfaces should be free of salts, other deicing chemicals, and excessive weight such as a moving van. Yard drainage should be maintained to divert water away from concrete surfaces, if possible, to eliminate the chance it will undermine the surface and erode the bearing soil.
- Structural alterations to the Home must be performed by professionals who understand the load-bearing requirements of the change. One of the reasons that

25

local municipalities require permits for building alterations is to make sure that the structural integrity of the Home is maintained.

- In many cases, the seal around doors and windows is caulk. This material should be inspected annually and may need to be replaced after one to two years. Water from yard and lawn watering devices should not come in contact with the structure.
- Since the mechanical systems of Your Home were designed for normal usage, placing unreasonable demands upon them will present problems. Plugging several electrical devices into one circuit may cause it to overload. Loading materials into a drain may cause it to clog. Undue weight should not be placed on pipes or showerheads because they can break. Some devices must be cleaned periodically (e.g., furnace filters) so that they can do what they were designed to do.
- Wood requires cleaning and sealing to prevent problems associated with water penetration and continual exposure to the elements. Painted or sealed surfaces must be cleaned and refinished according to the requirements of Your geographic area. If this is not done, the surface will deteriorate.
- Instructions for care and maintenance are included with many Components of Your Home, including finished flooring, appliances, and air handling equipment. Following these instructions will extend the life of these Components.
- The common areas require the same care and maintenance as Your Home. Although Your Association is responsible for maintenance, all residents should strive to keep these areas clean and usable.

**Your Responsibility for Proper Use**

You are responsible for any improper use of Your Home, including, but not limited to, unreasonable use, intentional damage, and the use of Your Home for anything other than a single-family residence.

**Your Responsibility to Provide Notice and Mitigate Damages**

If You believe Your Home has a construction defect covered by this Limited Warranty, You must give Builder timely notice in the manner described in this Limited Warranty. Builder is not responsible for any damage that occurs because You failed to timely notify Builder or because You failed to take reasonable action to prevent the damage.

## SECTION 13

### BUILDER OBLIGATIONS UNDER THIS LIMITED WARRANTY

Except for Emergencies as set forth in Section 11 all Service Requests must be made by You in accordance with Section 10. Telephonic or face-to-face discussions will not protect or preserve Your rights under this Limited Warranty.

Upon receiving a fully completed Service Request from You, Builder, or a Builder Party, will conduct inspections, investigations and/or testing (including destructive testing) regarding the alleged claim described in the Service Request From to determine if a Covered Claim exists.  Upon Builder's determination that the described Condition is a Covered Claim, Builder, or a Builder Party, will, at Builder's sole discretion, (1) perform repair or replacement in response to the Covered Claim or (2) pay to You the reasonable cost to perform such repair or replacement in which case You shall execute a full release in favor of Builder with respect to the Covered Claim.

**Standards by Which the Presence of a Covered Claim Will be Determined.**

The following factors will be considered by Builder in determining whether a Condition constitutes a Covered Claim.  Should an arbitration be conducted under the Dispute Resolution Procedure, these factors shall be considered by the arbitrator or referee, as applicable, in rendering a decision:

1.    The Fit and Finish Standards or Performance Standards, as applicable.

2.    Consideration as to whether the magnitude of the Condition:
   - Materially affects the structural integrity of the Home; or
   - Has an obvious and material negative impact on the appearance of the Home; or
   - Creates an Emergency Situation; or
   - Results in the inability of the Home to provide the functions that can be reasonably expected in such a home;

3.    Consideration as to whether the Condition is the result of normal wear and tear (Conditions that are normal wear and tear, or are caused by normal wear and tear, are not Covered Claims);

4.    Consideration as to whether the Condition was caused by, or in any way resulted from, the failure of an Owner Party or Owner Parties to perform normal or routine maintenance (any Condition that is determined to be a maintenance issue or that results from improper or inadequate maintenance is not a Covered Claim);

5.    Consideration as to whether the Condition was caused by any Owner Party or Parties (any Condition that is caused by an Owner Party or Parties is not a Covered Claim);

6.  Recognition that any Condition resulting directly or indirectly from or worsened by changes, additions, alterations or other actions or omissions by any Owner Party or Owner Parties, will not be considered a Covered Claim; and

7.  Any conditions, limitations or exclusions contained in this Limited Warranty.

## SECTION 14

## DISPUTE RESOLUTION PROCEDURE

Any and all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial. The Individual Dispute Resolution Agreement is recorded against the Home.

**BY INITIALING IN THE SPACE BELOW, YOU AND BUILDER AGREE TO HAVE ANY DISPUTE DECIDED BY THE ABOVE DISPUTE RESOLUTION PROCEDURE AND YOU AND BUILDER ARE GIVING UP ANY RIGHTS YOU AND BUILDER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU AND BUILDER ARE GIVING UP THEIR RESPECTIVE JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THIS LIMITED WARRANTY. IF YOU OR BUILDER REFUSES TO SUBMIT TO THE DISPUTE RESOLUTION PROCEDURE, AFTER AGREEING TO THIS PROVISION, YOU OR BUILDER MAY BE COMPELLED TO COMPLY WITH THE FOREGOING DISPUTE RESOLUTION PROCEDURE.**

**I/WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES IN ACCORDANCE WITH THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**

**BUYERS' INITIALS: X** _RG_ **X** _G_ **; BUILDER'S INITIALS: X** _[signature]_

## SECTION 15

## CLAIMS UNDER INDIVIDUAL DISPUTE
## RESOLUTION AGREEMENT

Builder has elected to use certain procedures for the resolution of construction defect claims regarding Your Home, as allowed by the Right to Repair Law ("***Right to Repair Claims Procedure***"). The Right to Repair Claims Procedure is in the Individual Dispute Resolution Agreement that You and Builder have signed. Your providing Builder with a Service Request Form or any other notice of any alleged Covered Claim under this Limited Warranty **DOES NOT** constitute a "Notice of Claim" under the Individual Dispute Resolution Agreement or a claim under the Right to Repair Act or any law or statute. **THE REPORTING AND NOTICE PROCEDURES SET FORTH IN THIS LIMITED WARRANTY APPLY SOLELY TO COVERED CLAIMS UNDER THIS LIMITED WARRANTY, AND DO NOT IN ANY WAY CONSTITUTE ANY ELECTION TO USE OR COMMENCEMENT OF THE CLAIMS PROCESSES AND DISPUTE RESOLUTION PROCEDURES IN THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.**

## SECTION 16

## EFFECT ON FUTURE OWNERS OF THE HOME

All of Your rights and obligations under the Limited Warranty shall, unless previously released by You or Your successor, fully transfer to each successor owner of the Home, including any mortgagee in possession, for the remainder of the applicable Warranty Term and any transfer shall in no way affect, increase or reduce the coverage under the Limited Warranty for its unexpired term.

If you sell Your Home during the Warranty Term, You agree to give this Limited Warranty to the successor owner to inform the successor owner of warranty rights and to otherwise make it possible for the successor owner to fulfill the successor owner's obligations under the terms of the Limited Warranty and the applicable Maintenance Guidelines. If You are an owner other than the original purchaser of the Home, You are bound by all the terms and conditions of the Limited Warranty, including, but not limited to, claims procedures and the requirement to submit any disputes that may arise under the Limited Warranty to binding arbitration or judicial reference pursuant to the Individual Dispute Resolution Agreement which is recorded against the Home. If You are a subsequent purchaser and require a copy of the Individual Dispute Resolution Agreement, you may also contact Builder for a copy.

**YOU AND BUILDER ACKNOWLEDGE THAT THIS LIMITED WARRANTY CONTAINS TERMS, CONDITIONS, LIMITATIONS, WAIVERS, AND EXCLUSIONS THAT AFFECT THE LEGAL RIGHTS OF EACH OF YOU.  BY YOUR SIGNATURE BELOW, BOTH YOU AND BUILDER ACKNOWLEDGE THAT YOU HAVE HAD THE OPPORTUNITY TO OBTAIN THE ADVICE OF LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED WARRANTY.  YOU ACKNOWLEDGE THAT BUILDER HAS ADVISED YOU TO SEEK LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED WARRANTY.  YOU AND BUILDER AGREE TO BE BOUND BY ALL OF THE PROVISIONS OF THIS LIMITED WARRANTY.**

Dated: 5/15/2024

Buyer _____

Buyer _____

Buyer _____

Buyer _____

_____
BUILDER

Dated: 6/24/2024

Dated: 6/24/2024

Dated: _____

Dated: _____

Lot:      88

Address:   129 Oakstone

Irvine, CA 92618

Exhibit "B"



18100 Von Karman Ave., Suite 700
Irvine, California 92612
p (949) 271-8700
f (949) 627-2611
www.phlklaw.com

Melanie S. Woodfin, Partner
mwoodfin@phlklaw.com

June 23, 2025

**CEASE AND DESIST**

**VIA E-MAIL AND U.S. MAIL**
Jeffrey Gu
129 Oakstone
Irvine, CA  92618
jeffwgu@gmail.com

Re:    **Gu, Jeffrey v. The New Home Company**
PHLK File No.:        0066-2818

Dear Mr. Gu:

As you are aware of based on our letter dated April 16, 2025, as well as all subsequent letters from our office, Plante Huguenin Lebovic Kahn LLP has been retained to represent The New Home Company ("TNHC") in connection with your construction defect claims.  It has come to our attention that you have been contacting TNHC directly.  As we previously advised, all further communication must be directed to our office, and not TNHC.  Accordingly, we again request that all communication go through our office.  Thank you for your cooperation.

Further, as stated in our letter dated May 27, 2025, TNHC demands that you immediately cease and desist all harassing conduct.  TNHC has attempted to address your claims in good faith and in response you have engaged in a pattern of bad faith conduct designed and intended to annoy, harass and offend TNHC, and is illegal, dangerous, and disruptive.  If this behavior continues, TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.  Your harassing conduct includes abuse of the SB800 prelitigation process, improper and duplicative bond claims, improper demands, and illegal and dangerous trespassing on THNC's construction sites.

As stated in our May 27, 2025 letter, you served 16 separate notices of claims ("Notices"), numerous of which contain identical claims or claims already being addressed through warranty and/or included in prior Notices, you filed a claim with THNC's bond company for the same claims as in the Notices, you made multiple demands for documents and information after we repeatedly advised that the documents and information requested are not required of TNHC, and you have intentionally trespassed on TNHC's construction site and harassed its construction workers.  Despite our demand that you cease and desist this abusive and harassing behavior, it continues.



Page 2

Subsequent to the cease and desist letter dated May 27, 2025, you have continued with harassing conduct.  You submitted an additional bond claim on June 12, 2025 relating to the stair railing, which is a claim included in one of your 16 Notices.  In addition, you have contacted TNHC directly, despite our request that all communication go through our office as TNHC is represented by counsel, and requested documents which are irrelevant to your Notices and not required under SB800.  Finally, you have again intentionally and illegally trespassed on TNHC's construction site and harassed the construction workers.  This intentional trespass not only interferes with the work being performed, but is also extremely dangerous to both you and TNHC contractors.

**TNHC demands that all communication go through my office and that you immediately cease and desist all harassing activities against TNHC and its contractors and from unlawfully entering TNHC's construction site at the Olivewood community.**  TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.

Sincerely,

Melanie S. Woodfin

MSW

cc:    Sam C. Plante, Esq.
       Janelle Launi, Paralegal

# Exhibit 208



Allegheny Casualty Company
International Fidelity Insurance Company
Harco National Insurance Company

August 14, 2025

**<u>VIA EMAIL ONLY</u>**

Via email to jeffwgu@gmail.com

Re:  Surety:        Harco National Insurance Company
     Principal:     TNHC Realty and Construction ("TNHC")
     Bond No.:      CAHNSU0507551
     Obligee:       CALIFORNIA CONTRACTORS LICENSE
     Claimant:      Di Lan Ge
     Claim No.:     39498-2

Dear Mr. Gu:

Harco National Insurance Company ("HARCO") has made the following determination with respect to your claim under the referenced Bond.

The proof of claim dated July 16, 2025 alleges that TNHC defective installation of door casings, misaligned door jambs and visibly flawed trim Di Lan Ge's home located at 129 Oakstone, Irvine, CA. Ms. Le has provided a copy of an estimate to remediate the affected work from Finishing Touches for $19,550. You allege violations of the following sections of the Business and Professions Code:

**Business and Professions Code § 7113:**

> Failure in a material respect on the part of a licensee to complete any construction project or operation for such construction project or operation or in any modification of such contract constitutes a cause for disciplinary action.

**Business and Professions Code § 7110:**

> Willful or deliberate disregard and violation of the building laws of the state, or of any political subdivision thereof, or of any of the following references to or provisions of law, constitutes a cause for disciplinary action against a licensee:
>
> (a) Section 8550 or 8556.
> (b) Section 1689.5 to 1689.15, inclusive, of the Civil Code.
> (c) The safety laws or labor laws or compensation insurance laws or Unemployment Insurance Code of the state.
> (d) The Subletting and Subcontracting Fair Practices Act (Chapter 4 (commencing with Section 4100) of Part 1 of Division 2 of the Public Contract Code).

INTERNATIONAL FIDELITY INSURANCE COMPANY
P a g e | **2**

> (e) Any provision of the Health and Safety Code or Water Code, relating to the digging, boring, or drilling of water wells.
> (f) Any provision of Article 2 (commencing with Section 4216) of Chapter 3.1 of Division 5 of Title 1 of the Government Code.
> (g) Section 374.3 of the Penal Code or any substantially similar law or ordinance that is promulgated by a local government agency as defined in Section 82041 of the Government Code.
> (h) Any state or local law relating to the issuance of building permits

**Business and Professions Code § 7109:**

> (a) A willful departure in any material respect from accepted trade standards for good and workmanlike construction constitutes a cause for disciplinary action, unless the departure was in accordance with plans and specifications prepared by or under the direct supervision of an architect.

> (b) A willful departure from or disregard of plans or specifications in any material respect, which is prejudicial to another, without the consent of the owner or his or her duly authorized representative and without the consent of the person entitled to have the particular construction project or operation completed in accordance with such plans or specifications, constitutes a cause for disciplinary action.

The violations cited in your Proof of Claim require a willful and deliberate violation of the Contractor's license law. The examples of workmanship exhibited in the photos you have provided do not rise to the "willful and deliberate" level of conduct necessary to recover under the bond. Furthermore, TNHC has offered to make any repairs it deems appropriate in accordance with its limited warranty. Your failure to accept such offer shows a lack good faith. In addition, your claim does not allege a material failure to complete the project for the price stated in the contract. Business and Professions Code § 7113 does not appear to apply to your claim. Based upon the foregoing, HARCO must deny your claim under the referenced bond.

California law requires that we advise you that if you disagree with the disposition of the claim, you may request that the matter be reviewed by the California Department of Insurance; Claims Service Bureau, 11th Floor, 300 South Spring Street, Los Angeles, California 90012; Telephone: 1-800-927-HELP.

This letter is sent without prejudice to the rights of HARCO and its principal and it shall not constitute a waiver or release of their rights, defenses, claims or setoffs.

Very truly yours,

INTERNATIONAL FIDELITY INSURANCE COMPANY
P a g e | **3**

**HARCO NATIONAL INSURANCE COMPANY**

*Chris Cullen*
Christopher M. Cullen
Senior Claims Counsel

Encl.

# Exhibit 209



A Member of the Tokio Marine Group

**Surety Claims Department**
P.O. Box 3636, Bala Cynwyd, Pennsylvania 19004
800.765.9749

July 29, 2025

**_VIA ELECTRONIC MAIL ONLY_**

Jeffrey Gu
129 Oakstone
Irvine, CA 92618
Email: jeffwgu@gmail.com

RE:    Principal:           Patrick Willis Dibble
       Obligee:            State of California
       Claim Number:       PHYL25061720436
       Bond:               PB02497501181
       Bond Type:          California Bond of Qualifying Individual
       Claimant:           Jeffrey Gu

Dear Claimant:

Under full reservation of all rights and defenses, this letter is sent to advise you of the status of the above referenced claims investigation. TNHC Realty and Construction Inc. of Irvine, California ("Contractor") operating in the state of California as a Class B – General Building Contractor under the authority of License no. 938080 obtained a Bond of Qualifying Individual effective August 10, 2020, pursuant to California Business & Professions Code §7071.9. As you are aware, Philadelphia Indemnity Insurance Company ("PIIC") was Surety on the above referenced California Contractors Bond of Qualifying Individual no. PB02497501181 ("Bond") which PIIC issued on behalf of Qualifying Individual Patrick Willis Dibble ("Principal") as Principal.

In an effort to support a claim against the above-captioned Bond, Jeffrey Gu ("Claimant") as Claimant, provided to PIIC various supporting documents on behalf of Di Lan Ge ("Buyer"), including but not limited to, the following: a cover letter to PIIC, a certain invoice no. 1432 billed to Buyer in the amount of $250.00 USD by Finishing Touches on or about March 23, 2025, a FedEx delivery tracking confirmation dated July 9, 2025, a copy of PIIC's acknowledgment letter and document request dated June 25, 2025, which PIIC transmitted to Buyer via regular US mail upon PIIC's Surety Claims Department ("Claims") receiving notification of Claimant's claim upon the Bond via electronic mail on or about June 23, 2025, a copy of Claimant's April 14, 2025, letter to Principal alleging construction defects, an April 24,

2025, acknowledgment letter from Principal's Counsel to Claimant, a May 22, 2025, letter from Principal's Counsel to Claimant, a document entitled Purchase Agreement and Escrow Instructions ("Contract") signed by Buyer and Xian Feng Gu (collectively, "Co-Buyers, or "Buyers") on or about January 9, 2024. Additional signees of the Contract include Dave Christensen ("Home Counselor") on or about January 9, 2024, and Michael Battaglia as authorized agent for The New Home Company Southern California LLC, (collectively, "Seller"), on or about January 11, 2024. Additionally included with Claimant's claim submission were an estimate in the amount of $19,155.98 USD prepared by Elite Railings on behalf of Buyer, a .zip file allegedly containing photos of glass defects, a June 2025 email exchange between Claimant and Counsel for Principal, a Cease and Desist letter from Principal's Counsel to Claimant dated May 27, 2025, and a Cease and Desist letter from Principal's Counsel to Claimant dated June 23, 2025.

To further evaluate Claimant's claim, on July 9, 2025, PIIC sent correspondence to Claimant's attention via email to reiterate the need for additional information and documentation to facilitate PIIC's independent investigation of the Bond claim. Specifically, PIIC requested Claimant execute Claim Questionnaire and Affidavit of Loss claim forms and return signed copies of the fully executed forms to PIIC. In Claimant's email reply to PIIC of July 9, 2025, Claimant declined to provide the requested claim forms asserting said forms were "overly tedious and more than what other companies have asked us for." Claimant further declined to cooperate with PIIC's investigative efforts in a follow up email to PIIC characterizing PIIC's requests as "overly burdensome", "overly long", and "superfluous". Copies of PIIC's correspondence with Claimant relating to the aforementioned document request is attached hereto as ***Exhibit "A"***.

Based upon PIIC's review of the limited documentation made available to PIIC by Claimant, PIIC understands the following facts relevant to the claim asserted by Claimant. Based on the information we received, PIIC understands that Buyers entered into a Contract with Seller on or about January 9, 2024, for the purchase of new construction located at 129 Oakstone in the city of Irvine, California ("Residence"). Claimant's claim upon the Bond appears to arise from allegations by Claimant that Principal performed substandard work relative to Principal's construction of the Residence purchased by Buyers, and that Principal willfully departed from the plans and specifications of the Residence pursuant to California Business & Professions Code §7109.

In furtherance of our investigation, the Surety contacted Principal regarding the claim for its review and response. Based on the information we received, it is the PIIC's understanding that Principal, through its counsel, disputes Claimant's allegations against the Bond in their entirety. Please be advised that there appear to be bona fide questions of law and fact as to Claimant's standing to bring a claim against the Bond. An action against the Bond is governed by California Business and Professions Code Statute § 7071.10, which states as follows in pertinent part (emphasis added):

> The qualifying individual's bond shall be for the benefit of the following persons:
> (a) A homeowner **contracting for home improvement** upon the homeowner's personal family residence damaged as a result of a violation of this chapter by the licensee.

(b) A property owner **contracting for the construction** of a single-family dwelling who is damaged as a result of a violation of this chapter by the licensee. That property owner shall only recover under this subdivision if the single-family dwelling is not intended for sale or offered for sale at the time the damages were incurred.
(c) A person damaged as a result of a willful and deliberate violation of this chapter by the licensee, or by the fraud of the licensee in the **execution or performance of a construction contract**.
(d) An **employee** of the licensee damaged by the licensee's **failure to pay wages**.
(e) A person or entity, including a **laborer** described in subdivision (b) of Section 8024 of the Civil Code, to which a portion of the compensation of an employee of a licensee is paid by agreement with that employee or the collective bargaining agent of that employee, that is damaged as the result of the licensee's f**ailure to pay fringe benefits for its employees**…

Based on the information we received, neither the Claimant nor the Buyers (collectively, "Parties") entered into a **construction contract** with the **Principal** as required by Business and Professions Code Statute § 7071.10 above. Rather, it is PIIC's understanding that the Contract between Buyers and **Seller** at issue in this claim is a purchase agreement intended for the **purchase** of a Residence by Buyers. This interpretation is supported by the express terms of the Contract itself which specifically establish that the Contract is a purchase agreement rather than a construction contract. In pertinent part, paragraph **10(a)** of the Contract provides as follows:

> The Residence is not a custom home and Seller is not acting as a contractor for Buyer in the construction of the Residence nor is Seller constructing the Residence specifically for Buyer. Subject to Paragraph 12, Seller is not constructing the Residence or any improvements on the Property pursuant to any architect and/or construction plans or specifications, precise specifications or design of a model or appurtenances, or any federal, state or local building code, ordinance or statute.

Because the Parties did not contract with the Bond Principal and because the Parties did not enter into a construction contract, the Parties therefore lack standing to bring a claim against the Bond. Even if the Bond extended to the Seller, which the Principal does not concede, it does not appear at this time that the Parties are eligible to bring a claim against the bond with regard to sub-sections above due to the statutory entitlements established by Business and Professions Code Statute § 7071.10.

Stated another way, it is the Surety's understanding the Parties did not enter into a construction contract for home improvement to a primary residence pursuant to (a) nor did the Parties contract for construction of a single-family dwelling pursuant to (b). With regard to sub-sections (d) and (e) above, the Parties are not an employee of Principal seeking unpaid wages or fringe benefits and therefore neither section is applicable to the claim. As to sub-section (c), the Parties did not execute a construction contract as set forth above. Further, it is the Surety's understanding there has been no determination of a "willful and deliberate" violation or finding of fraud at this time

Claim # PHYL25061720436

that would give rise to a claim under subsection (c). If Claimant is in possession of a judgment or order by a court of competent jurisdiction and/or an adverse ruling by the Contractors State License Board ("CSLB") whereby a willful and deliberate violation or finding of fraud on part of Principal relative to the Contract occurred within the term of this Bond, please forward same to the undersigned for consideration.

The foregoing notwithstanding, please be advised it is the PIIC's understanding that Principal, through its counsel, further disputes Claimant's allegations against the Bond asserting that Claimant's claim submission to Surety lacks merit due to numerous misstatements of fact and inaccurate representations made by Claimant to PIIC.

Specifically, it is PIIC's understanding that the Principal contends that it has responded to Claimant's allegations in good faith and coordinated with its trades to address punch list items. The Principal contends that it hired a construction consultant to inspect the allegedly defective workmanship. The Principal contends that the consultant inspected the Residence and did not observe any actionable conditions. Nevertheless, the Principal contends that Principal offered to perform repairs to address the alleged defects identified by the Parties. The Principal contends that the Parties have not responded to Principal's good faith offer of performance. Please be advised that pursuant to Cal. Civ. Code, § 2839, performance of the principal's obligation, or an offer of such performance, exonerates a surety. Further, the Principal contends that the Parties pursuit of a claim under the Bond is untimely and/or improper pursuant to the Individual Dispute Resolution Agreement ("IDRA") executed by Buyers.

Based upon information provided, there appears to be a bona fide dispute between the parties as to liability and damages relating to Claimant's claim as set forth above. Please be advised, a surety may raise all defenses of its principal. Cal. Civ. Code, § 2810; *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 48 (surety entitled to assert as defenses to payment under a surety bond all defenses available to its principal); *Kalfountzos v. Hartford Fire Ins. Co.* (1995) 37 Cal.App.4th 1655, 1659-60 (stating the "general rule is that a surety may raise all defenses that would be allowed the principal). The liability of a surety is commensurate with that of the principal. "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation." Cal. Civ. Code, § 2809.

As the Surety's investigation has resulted in what it constitutes to be a sufficient basis for the Surety to believe that Principal's defenses to the claim, in addition to its own, could have merit and because there appears to be a sufficient basis for the Surety to question the liability and damages of the Surety for the claim pending a determination by a trier of fact, the Surety believes there is an adequate basis for which to deny the claim. Accordingly, the Surety respectfully denies the claim against the Bond.

Should you obtain any further information which you believe would materially affect the Surety's determination on these matters, please feel free to forward said information directly to the undersigned for consideration.

Should you desire to make a request for assistance to the California Department of Insurance regarding the denial of this claim, you may reach them at California Department of Insurance,

Page 3 of 4
Claim # PHYL25061720436

Consumer Communications Bureau, 300 S. Spring Street, South Tower, Los Angeles, CA 90013, (800) 927 – HELP (4357).

This correspondence, and all prior or subsequent communications and/or investigative efforts, are made with the express reservation of all rights and defenses that may be available to the Surety or the Principal, whether at law, in equity or under the terms and provisions of the Bond and applicable statutes.  This reservation includes, without limitation, defenses available to pursuant to any notice and suit limitation provisions.

Sincerely,

Douglas J. Aumann
Senior Surety Claims Examiner
Direct: 614-726-3856
Douglas.Aumann@PHLY.com

cc: Plante Huguenin Lebovic Kahn LLP, Counsel for Principal        (VIA EMAIL ONLY)

# Exhibit "A"

| From: | Jeffrey Gu |
|---|---|
| To: | Aumann, Douglas |
| Subject: | Re: Patrick Willis Dibble; bond B02497501181-01; claim PHYL25061720436; DI Lan Ge |
| Date: | Tuesday, July 15, 2025 9:41:41 AM |
| Attachments: | image001.png |

> **CAUTION:** Be mindful prior to opening non-TMNA attachments and/or links.

Hi Douglas,

The form you provided could be viewed as overly burdensome for consumers (it's not provided in an easy to fill out manner, overly long, and asking for superfluous information). This is in addition to your company responding beyond statutory requirements to the initial letter. Moreover, I provided exactly what needed to understand the problem: evidence of the damage, cost to fix, proof of ownership, and evidence of an attempt to fix through the principal.

Please let me know if any of those facts are unclear.

-Jeffrey

On Tue, Jul 15, 2025 at 6:33 AM Aumann, Douglas <Douglas.Aumann@phly.com> wrote:

> Dear Claimant:
>
>
> Please be advised that the Surety maintains its request for an executed claim questionnaire and affidavit of loss to assist in the Surety's understanding of the circumstances surrounding your claim as previously communicated.
>
>
> This correspondence, and all prior or subsequent communications and/or investigative efforts, are made with the express reservation of all rights and defenses that may be available to the Surety or its Principal, whether at law, in equity or under the terms and provisions of the bonds and contract documents. This reservation includes, without limitation, defenses available pursuant to any notice and suit limitation provisions.
>
>
> Thank you,
>
>
> **Douglas J. Aumann, AIC, AIS, AINS**
>
> Senior Surety Claims Examiner
>
> Philadelphia Insurance Companies
>
> A Member of the Tokio Marine Group

P.O. Box 3636

Bala Cynwyd, PA 19004

**O**: 614.726.3856 | M: 513.432.2186 | Douglas.Aumann@phly.com

Hear what our agents are saying about their experience with The PHLY Difference

Watch our video series to learn more about PHLY's surety options

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Monday, July 14, 2025 9:17 PM
**To:** Aumann, Douglas <Douglas.Aumann@phly.com>
**Subject:** Re: Patrick Willis Dibble; bond B02497501181-01; claim PHYL25061720436; DI Lan Ge

> **CAUTION:** Be mindful prior to opening non-TMNA attachments and/or links.

Okay great. It seems like you have all information on the carpentry and glass defects. Please let me know if anything seems unclear.

On Mon, Jul 14, 2025 at 8:17 AM Aumann, Douglas <Douglas.Aumann@phly.com> wrote:

> Dear Jeffrey Gu,
>
> Attached for your reference is a copy of the claim documents and/or information which the Surety has received from you to date. If you have any additional documentation or information that you wish to submit in support of your claim, please advise.
>
> This correspondence, and all prior or subsequent communications and/or investigative efforts, are made with the express reservation of all rights and defenses that may be available to the Surety or its Principal, whether at law, in equity or under the terms and provisions of the bonds and contract documents. This reservation includes, without limitation, defenses available pursuant to any notice and suit limitation provisions.

Thank you,


**Douglas J. Aumann, AIC, AIS, AINS**

Senior Surety Claims Examiner

Philadelphia Insurance Companies

A Member of the Tokio Marine Group


P.O. Box 3636

Bala Cynwyd, PA 19004

**O**: 614.726.3856 | M: 513.432.2186 | Douglas.Aumann@phly.com

Hear what our agents are saying about their experience with The PHLY Difference

Watch our video series to learn more about PHLY's surety options

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Monday, July 14, 2025 9:00 AM
**To:** Aumann, Douglas <Douglas.Aumann@phly.com>
**Subject:** Re: Patrick Willis Dibble; bond B02497501181-01; claim PHYL25061720436; DI Lan Ge

> **CAUTION:** Be mindful prior to opening non-TMNA attachments and/or links.

Hi Douglas,


Does your company acknowledge receipt of the attachments I sent in the initial email or not?


-Jeffrey

On Wed, Jul 9, 2025 at 7:13 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:

Hi Douglas,

I provided the problem evidence, the damage amount, the purchase agreement, and associated information in the initial email already. All of these extra sheets you are asking us to fill out are both overly tedious and more than what other companies have asked us for. Please see the attached documents I sent in the initial email.

-Jeffrey

On Wed, Jul 9, 2025 at 4:33 PM Aumann, Douglas <Douglas.Aumann@phly.com> wrote:

Dear Jeffrey Gu:

In furtherance of the Surety's investigation, please return fully executed copies of the attached Claim Questionnaire and Affidavit of Loss to the undersigned at your earliest opportunity. To the extent that you believe there is additional documentation that has not already been provided by you that supports the claim, please enclose that additional documentation along with the completed Claim Questionnaire and Affidavit of Loss forms. Please be advised that we reserve the right to request additional information from you as our investigation proceeds. Thank you for your anticipated cooperation and patience during the claims process. Should you have any questions, please contact the undersigned.

This correspondence, and all prior or subsequent communications and/or investigative efforts, are made with the express reservation of all rights and defenses that may be available to the Surety or its Principal, whether at law, in equity or under the terms and provisions of the bonds and contract documents. This reservation includes, without limitation, defenses available pursuant to any notice and suit limitation provisions.

**Douglas J. Aumann, AIC, AIS, AINS**

Senior Surety Claims Examiner

Philadelphia Insurance Companies

A Member of the Tokio Marine Group

P.O. Box 3636

Bala Cynwyd, PA 19004

**O**: 614.726.3856 | M: 513.432.2186 | Douglas.Aumann@phly.com

Hear what our agents are saying about their experience with The PHLY Difference

Watch our video series to learn more about PHLY's surety options

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Wednesday, July 9, 2025 3:47 PM
**To:** Aumann, Douglas <Douglas.Aumann@phly.com>
**Subject:** Re: FW: Patrick Willis Dibble; bond B02497501181-01; claim PHYL25061720436; DI Lan Ge

> **CAUTION:** Be mindful prior to opening non-TMNA attachments and/or links.

Hi Douglas,

I sent FedEx confirmation in the original email, and we will await the further processing of this claim.

-Jeffrey

On Wed, Jul 9, 2025 at 1:33 PM Aumann, Douglas <Douglas.Aumann@phly.com> wrote:

> Dear Jeffrey Gu:
>
> Please understand that my previous communications were in no way an attempt to misrepresent or obfuscate the record. I am confident that our claim file will support the record that our Surety Claims Department received the claim notice on 6/23/25 and that a claim acknowledgment letter was sent to the claimant on 6/25/25. If you are in possession of a FedEx delivery confirmation showing that the notice was received by PIIC on 5/27/25, then we do not dispute such a delivery confirmation. I cannot speak to the cause of any corresponding delay in the claim notice being routed from Sioux Falls to our

Surety Claims Department, and we apologize for any inconvenience that may have resulted pursuant to any such delay. Any further dispute over this issue does not appear to be necessary. PIIC has opened a claim file for this matter and we are actively investigating the claim. We look forward to receiving the claimant's supporting claim documentation, as previously requested.

This correspondence, and all prior or subsequent communications and/or investigative efforts, are made with the express reservation of all rights and defenses that may be available to the Surety or its Principal, whether at law, in equity or under the terms and provisions of the bonds and contract documents. This reservation includes, without limitation, defenses available pursuant to any notice and suit limitation provisions.

**Douglas J. Aumann, AIC, AIS, AINS**

Senior Surety Claims Examiner

Philadelphia Insurance Companies

A Member of the Tokio Marine Group

P.O. Box 3636

Bala Cynwyd, PA 19004

**O**: 614.726.3856 | **M**: 513.432.2186 | Douglas.Aumann@phly.com

Hear what our agents are saying about their experience with The PHLY Difference

Watch our video series to learn more about PHLY's surety options

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Wednesday, July 9, 2025 1:42 PM
**To:** Aumann, Douglas <Douglas.Aumann@phly.com>
**Cc:** Surety Claims <Surety.Claims@phly.com>
**Subject:** Re: Patrick Willis Dibble; bond B02497501181-01; claim PHYL25061720436; DI Lan Ge

CAUTION: Be mindful prior to opening non-TMNA attachments and/or links.

Hi Douglas,

The information your company has clearly states South Dakota as the address on file, and it seems reasonable for consumers to send mail to that address. If there is a better address, your company should obviously list it.

   

Home | Online Services | Insurance Company Details

## ▼ Surety Company Information

| | |
|---|---|
| Surety Company Code | H22 |
| Company Information | PHILADELPHIA INDEMNITY INSURANCE COMPANY<br>150 EAST 4TH PLACE<br>SUITE 304<br>SIOUX FALLS SD 57104<br>(888) 321-4713 |

Moreover, I have already stated the accurate date of the letter (May 23, 2025) and the date it was received by someone at your office (May 27, 2025). Please do not try to obfuscate the record again.

On Wed, Jul 9, 2025 at 12:27 PM Aumann, Douglas <Douglas.Aumann@phly.com> wrote:

Principal: Patrick Willis Dibble

Claim Number: PHYL25061720436

Bond Number: PB02497501181-01

Claimant: Di Lan Ge

Dear Jeffrey Gu:

On behalf of Philadelphia Indemnity Insurance Companies ("PIIC"), as Surety, this shall serve to acknowledge the email and attachments which surety.claims@phly.com received from you on July 8, 2025. Please direct all further correspondence related to the above captioned claim to the attention of the undersigned.

Please be advised that the Surety Claims Department received your claim submission on June 23, 2025, and acknowledged our receipt of same in a letter dated June 25, 2025, which PIIC mailed, with enclosures, to the attention of Claimant Di Lan Ge at the Oakstone address in Irvine, California. Please see **Exhibit A** In hindsight, PIIC's letter should have more correctly stated that the claim submission was received by our office on June 23, 2025, rather than implied that the claim submission itself was dated June 23, 2025.

Based on the information we received from you, it appears that you may have submitted a notice of claim on behalf of the Claimant to the Sioux Falls, South Dakota address appearing on the California Contractors State License Board ("CSLB") website. Please be advised that submitting a notice of claim to either the Pasadena, California address appearing on the bond form itself or preferably to the Bala Cynwyd, Pennsylvania address pursuant to the claim reporting information found on PIIC's website (i.e. https://www.phly.com/Claims/SuretyReportClaim.aspx), will facilitate a more timely response from the Surety Claims Department. Please see **Exhibit B**

The foregoing notwithstanding, please be assured that PIIC is in receipt of your claim submission and is investigating said claim at this time. Pursuant to PIIC's letter to Claimant dated June 25, 2025, which remains in effect and is incorporated herein, please be advised that by acknowledgment of receipt of your claim, PIIC does not necessarily acknowledge any liability on behalf of our Principal or on behalf of the Surety. Further, PIIC reserves all rights and defenses it may have under its bond(s) and other law, including statute of limitations.

Attached hereto, you will find a Claim Questionnaire and Affidavit of Loss which will assist you in providing PIIC, as Surety, with information necessary to the investigation. The Surety requests and requires that the Claimant fully complete, sign, and return the Claim Questionnaire and Affidavit of Loss to the undersigned. Please be sure to write clearly and legibly if handwritten. If you believe there is additional

documentation that has not already been provided by you that supports the claim, such as invoices, receipts, contracts, etc., please enclose that additional documentation along with the completed Claim Questionnaire and Affidavit of Loss forms. Our purpose in requesting information from you is to develop a complete understanding of the circumstances surrounding your claim. We reserve the right to request additional information from you as our investigation proceeds.

As part of our independent investigation, we will forward a copy of the claim to the Principal and request its review and input as to the merits of the claim. Upon receipt of the Principal's response, we will communicate with you regarding the status of our investigation. Please advise if you exchange communication with the parties concerning this claim, or receive payment in full or in part.

As the Surety is in the preliminary stages of its investigation, and we are unable to confirm with certainty what category your claim falls under pursuant to Business & Professions Code § 7071.10. We are unable to confirm coverage at this time. The bond issued is a California Bond of Qualifying Individual and is issued pursuant to California Statute § 7071.11, which states:

(c) Except for claims covered by subdivision (d), any action against a bond required under this article, excluding the judgment bond specified under Section 7071.17, shall be brought in accordance with the following:

(1) Within two years after the expiration of the license period during which the act or omission occurred. The provisions of this paragraph shall be applicable only if the license has not been inactivated, canceled, or revoked during the license period for which the bond was posted and accepted by the registrar as specified under Section 7071.7.

(2) If the license has been inactivated, canceled, or revoked, an action shall be brought within two years of the date the license of the active licensee would have expired had the license not been inactivated, canceled, or revoked. For the provisions of this paragraph to be applicable, the act or omission for which the action is filed must have occurred prior to the date the license was inactivated, canceled, or revoked.

(d) A claim to recover wages or fringe benefits shall be brought within six months from the date that the wage or fringe benefit delinquencies were discovered, but in no event shall a civil action thereon be brought later than

two years from the date the wage or fringe benefit contributions were due.

This correspondence, and all prior or subsequent communications and/or investigative efforts, are made with the express reservation of all rights and defenses that may be available to the Surety or its Principal, whether at law, in equity or under the terms and provisions of the bonds and contract documents. This reservation includes, without limitation, defenses available pursuant to any notice and suit limitation provisions, and coverage defenses. Subject to this strict and continuing reservation, we look forward to hearing from you soon.

Thank you for your anticipated cooperation and patience during the claims process. Should you have any questions, please contact the undersigned.

**Douglas J. Aumann**

Senior Surety Claims Examiner

**O**: 614.726.3856 | M: 513.432.2186 | Douglas.Aumann@phly.com

Hear what our agents are saying about their experience with The PHLY Difference

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Tuesday, July 8, 2025 8:28 PM
**To:** Surety Claims <Surety.Claims@phly.com>
**Subject:** Claim Number: PHYL25061720436

You don't often get email from jeffwgu@gmail.com. Learn why this is important
**CAUTION:** Be mindful prior to opening non-TMNA attachments and/or links.

Hello,

This email is in response to the claim below.

Principal: Patrick Willis Dibble
Claim Number: PHYL25061720436
Bond Number: PB02497501181-01
Claimant: Di Lan Ge

I would like to state that your company's response is much later than the statutorily required response time, as records show you received the Fedex delivered letter on May 27, 2025. Your company also states factual inaccuracies in the letter, stating that it was dated June 23 when it was indeed dated May 23. Such factual inaccuracies muddy the record and could be interpreted as an attempt to defend or bias the claim in favor of the principal.

As the owner's representative for this claim, I will lay out the details for a claim against the builder, TNHC REALTY AND CONSTRUCTION INC. Many things have transpired in the many weeks it took your company to respond, so I have included the cease and desist letters that your principal has sent over the last few months, along with their inability to back them up.

If you need any further information, please let me know.

-Jeffrey

Please consider the environment before printing this email.
******************* Internet Email Confidentiality ********************
The information contained in this message (including any attachments) may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that it is strictly prohibited (a) to disseminate, distribute or copy this communication or any of the information contained in it, or (b) to take any action based on the information in it. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.
*******************************************************************
*****

Please consider the environment before printing this email. *******************
Internet Email Confidentiality ******************** The information contained in this message (including any attachments) may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that it is strictly prohibited (a) to disseminate, distribute or copy this communication or any of the information contained in it, or (b) to take any action based on the information in it. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.
*******************************************************************
****

Please consider the environment before printing this email. *******************
Internet Email Confidentiality ******************** The information contained in this message (including any attachments) may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that it is strictly prohibited (a) to disseminate, distribute or copy this communication or any of the information contained in it, or (b) to take any action based on the information in it. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

**************************************************************
**

Please consider the environment before printing this email. *******************
Internet Email Confidentiality ******************* The information contained in this
message (including any attachments) may be privileged and confidential and protected
from disclosure. If the reader of this message is not the intended recipient, or an employee
or agent responsible for delivering this message to the intended recipient, you are hereby
notified that it is strictly prohibited (a) to disseminate, distribute or copy this
communication or any of the information contained in it, or (b) to take any action based
on the information in it. If you have received this communication in error, please notify us
immediately by replying to the message and deleting it from your computer.
**************************************************************

Please consider the environment before printing this email. ******************* Internet
Email Confidentiality ******************* The information contained in this message
(including any attachments) may be privileged and confidential and protected from
disclosure. If the reader of this message is not the intended recipient, or an employee or
agent responsible for delivering this message to the intended recipient, you are hereby
notified that it is strictly prohibited (a) to disseminate, distribute or copy this communication
or any of the information contained in it, or (b) to take any action based on the information
in it. If you have received this communication in error, please notify us immediately by
replying to the message and deleting it from your computer.
**************************************************************

FROM: Commercial Express <commercialexpress@phly.com>

<span style="color:red">1.  **Exhibit A**</span>

TO: Surety Claims
SENT: Monday, June 23, 2025 1:50:19 PM Eastern Daylight Time
SUBJECT: Claims
ATTACHMENTS: 20250610122309.pdf;
========================================================


Please see as an attachment documents received via mail
**Commercial Express**
Philadelphia Insurance Companies
A Member of the Tokio Marine Group
4000 West 114th Street, Suite 250 | Leawood, KS 66211
(888) 321-4713 | commercialexpress@phly.com
Hear what our agents are saying about their experience with The PHLY *Difference*
Watch our video series to learn more about PHLYâ¤™s surety options
PM

# INVOICE

**Finishing Touches Finish**
**Carpentry INC**
4 McLaren Suite B
Irvine, CA 92618

cahajeromie@yahoo.com
949-584-7706
ocfinishingtouches.com



**Bill to**

Di Lan Ge
129 Oakstone
Irvine Ca

**Ship to**

Di Lan Ge
129 Oakstone
Irvine Ca

**Invoice details**

Invoice no.: 1432
Invoice date: 03/23/2025
Due date: 04/22/2025

| # | Product or service | Description | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 1. | Inspection | All interior doors, jams and mouldings are separating at the seems in the majority of the home. Likely due to lack of glue during installation and settling of the new home. Some interior door jams are not plum creates excessive gaps,, some doors not able to latch or lock. Nickel Gap/3/16"is an industry standard for spacing around the door where it meets the jam. Likely due to poor craftsmanship and or lack of shimes during installation and settling of new home. Downstairs Noel post is loose and will likely become worse in time. Needs to be tightened or corrected to prevent further damage.. | 1 | $250.00 | $250.00 |

| | | Total | **$250.00** |
|---|---|---|---|

**Surety Bond Claim Letter – TNHC Realty and Construction Inc. / Patrick Willis Dibble**

**Date: 5/23/25**

**To:**

Philadelphia Indemnity Insurance Company

150 East 4th Place, Suite 304

Sioux Falls, SD 57104

**RE: Bond Claim on TNHC Realty and Construction Inc. (CSLB License #938080)**

**Bond of Qualifying Individual Number: PB02497501181**

**Qualifying Individual: Patrick Willis Dibble**

Dear Claims Department,

I am submitting this formal claim against the **Bond of Qualifying Individual** held by **Patrick Willis Dibble**, the qualifying individual for **TNHC Realty and Construction Inc. (CSLB License #938080)**, bonded under **Philadelphia Indemnity Insurance Company**, Bond Number **PB02497501181**.

This claim concerns widespread and pervasive carpentry and finish workmanship defects throughout my residence located at 129 Oakstone, Irvine, CA 92618.

## Summary of Defects

1. **Separation at every miter joint across all door frames**
   All interior door frames throughout the home show visible and significant separation at the miter joints. This indicates poor workmanship, likely the result of the use of nails without adhesive, violating industry standards of finish carpentry.
2. **Excessive gaps between doors and frames**
   Every door in the home exhibits excessive spacing between the door and the jamb, exceeding the typical 3/16" nickel gap standard. Several doors fail to latch or lock properly, indicating improper installation and lack of shimming or alignment during original construction.
3. **Baseboard corner separation**
   Numerous baseboard corners show physical separation, undermining the visual quality and integrity of the finish. These deficiencies are inconsistent with the workmanship expected of a licensed general contractor managing trades in a high-end home.

2. Exhibit B

# Claims

**Surety Report Claim**

**Report a Claim**

Notices are to be sent to the following address:

Philadelphia Insurance Companies
Attn: Surety Claims
P.O. Box 3636
Bala Cynwyd, PA 19004
Fax: 610.227.0186

**surety.claims@phly.com**

Please note that while we have included facsimile and email contact information, some bond forms and statutes do not recognize email or facsimile delivery as acceptable methods of perfecting claims against a bond. Nothing herein shall be deemed a waiver or estoppel by Philadelphia Indemnity Insurance Company of any of its rights and defenses, including but not limited to, any defenses associated with the content, timing, and form of delivery of claim notices.

**Surety**

Progress

- 
- 
- 
- 
- 

Claimant Contact Information
Required Fields
Claimant Name

Contact Name

Email Address of Person to Contact

Phone Number of Person to Contact

Principal Profile
Principal Name

Principal Street Address

Principal City

Principal State

Principal Phone

Principal Email

[ _____ ]

**Bond and Project Information**

Bond Number

[ _____ ]

Project/Contract Description

[ _____ ]

Project/Contract Location

[ _____ ]

Obligee/Project Owner

[ _____ ]

Description of Claim

Amount of Claim

[ _____ ]

Date of Last Supply of services, labor, or materials

[ _____ ]

To whom did Claimant supply services, labor or material (if different than Principal)

[ _____ ]

**PLEASE NOTE:**

Many bonds contain unique and specific notice requirements that must be followed in order to perfect a claim against the bond. Bonds may also be subject to State and Federal notice requirements. We encourage each claimant to obtain an executed copy of the final bond from the obligee to ensure that it is complying with the required form of claim notice, method of delivery, and timing requirements. Applicable statutory notice provisions should also be consulted. Submission and receipt of this online claim form shall not constitute a waiver, estoppel or other release of Philadelphia Indemnity Insurance Company's defenses relative to Claimant's compliance with notice requirements of the Bond and applicable law.

Submit Claim Form Here

File Attachments

[ Choose File ] No file chosen

File size is limited to 3 (MB) per file. Maximum Files: 5

Following packages will be used to scan file(s): * MSCW 5.1.2

Allowed file types: .doc .docx .pdf .jpg .jpeg .gif .bmp .png .tif .rar .zip .xls .xlsx

☐ **By checking this box, I confirm that I've read and understand the fraud language pertaining to the submission of this claim.**

# Exhibit 210



# New Residential Construction Permit

**00920236-RBP**

## City of Irvine
### Building & Safety Division
### Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501

**DESCRIPTION OF WORK:**
(e-plan) Olivewood Phase 3 Portola Springs - Tract 19176.
Lot 88. 1 Production SFD. Plan 2B.

---

**CONTRACTOR**

License Class.          Lic.No.

Date 01/04/2024    Contractor

**OWNER-BUILDER**

☐ LICENSED CONTRACTORS DECLARATION

I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

**OWNER-BUILDER DECLARATION**

I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:

☐ I as owner of the property, or my employees with wages as their sole offered for sale.

☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.

☐ I am exempt under Sec. _____, B&P.C., for this Reason _____

Date __1/4/2024__ Owner ___NEW HOME COMPANY___

**WORKERS' COMPENSATION**

☐ WORKERS' COMPENSATION DECLARATION

I hereby affirm under penalty of perjury one of the following declarations:

☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are

Carrier _____  Policy # _____

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date _____ Applicant _____

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

**LENDER**

☐ CONSTRUCTION LENDING AGENCY

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)

Lender's Name _____

Lender's Address _____

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Signature of Applicant or Agent _____ Date _____

Print Applicant's/Agent's Name _____

---

**OWNER:** NEW HOME COMPANY
**ADDRESS:** 15231 LAGUNA CANYON RD 250
**CITY, ST ZIP:** IRVINE CA 92618
**PHONE:** (949) 793-0040

**APPLICANT:** KB PROCESSING
**ADDRESS:** 37601 EARLY LN
**CITY, ST ZIP:** MURRIETA CA 92563
**CONTACT:** KRISTI BLANCHARD 951-970-4794
**PHONE:** (951) 970-4794

**CONTRACTOR:**
**ADDRESS:**
**CITY, ST ZIP:**
**CONTR LIC EXP:**
**IRV BUS LIC:**

**EXP DATE:**

**ADDRESS:** 129 OAKSTONE
**TRACT:** 19176          **LOT:** 88
**APN:**
**PLANNING AREA:**

**VALUATION:** $ 530,922
**STORIES:** 2          **NO. UNITS:** 1
**CODE YR:** 2019       **TOT SQFT:** 3,466
**USE** OCC          CONST. TYPE          SQ FT

---

### PERMIT FEES

| | |
|---|---|
| Automation Fee Inspection | 187.61 |
| SB 1473 Fee - Due to State | 19.80 |
| SB 1473 Fee - Admin | 2.20 |
| Energy Surcharge Insp | 247.12 |
| Issuance Fee Comm | 61.23 |
| Res SFD/Det Condo or Apt. Insp | 1,629.02 |
| State Seismic Res | 69.02 |
| System Dev Charge Circ | 2,654.61 |
| System Dev Charge Non-Circ | 2,654.61 |
| SlurrySeal New Res Max | 50.00 |

**Total Permit Fees: $7,575.22**

**TCA Receipt:** 8680    **Receipt#** 00270511
**PLAN CHECK #** 00891461-RNP          **TCA: F/E-A**
**PLANNING APPROVAL:** KATIE CURTIS 12/18/2023
**BUILDING APPROVAL:** ZHALEH AFRASIABI 12/15/2022
**PERMIT ISSUED BY:** CHERYL WILLIAMS 1/4/2024
**PERMIT FINALED BY:** DAVID CHAFFE 6/14/24
**ACTION CODE:** 86

---

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 365 days or if work is suspended for 180 days or more. **Residential** permit expiration: addition - 18 months, all others 6 months from date of permit.

See Inspection Record Card for Smoke Detector and Carbon Monoxide Alarm requirements.

CONSTRUCTION WORKING HOURS
Weekdays: 7 AM - 7 PM, Saturday:    9 AM - 6 PM
Sunday/Holiday: PROHIBITED

NOTICE: Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

C:\EServReports\permits_2_page_finaled.rpt

# Exhibit 211



**20216607747** ^

**Back to Search Result**

**File Number:**

◄ **20216607747** ►

**Filed Date:** 6/11/2021

**Business Names**

◄ **6 of 7** ►

**Name** NEW HOME CO.

**Registrants**

◄ **1 of 1** ►

**Name** TNHC REALTY AND CONSTRUCTION INC.
**Status** ACTIVE

**Documents**

PROOF OF PUBLICATION
FBN STATEMENT
PROOF OF PUBLICATION
FBN STATEMENT

· **Click "Add Document" to purchase this record.**

Frequently Asked Questions



**20216607747**

**Back to Search Result**

**File Number:**

‹ **20216607747** ›

**Filed Date:** 6/11/2021

**Business Names**

‹ **4 of 7** ›

**Name** NEW HOME COMPANY

**Registrants**

‹ **1 of 1** ›

**Name** TNHC REALTY AND CONSTRUCTION INC.

**Status** ACTIVE

**Documents**

PROOF OF PUBLICATION
FBN STATEMENT
PROOF OF PUBLICATION
FBN STATEMENT

‣ **Click "Add Document" to purchase this record.**

Frequently Asked Questions



**20216607747** ^

**Back to Search Result**

**File Number:**
‹ **20216607747** ›

**Filed Date:** 6/11/2021

**Business Names**

‹ **1 of 7** ›

**Name** THE NEW HOME COMPANY

**Registrants**

‹ **1 of 1** ›

**Name** TNHC REALTY AND CONSTRUCTION INC.

**Status** ACTIVE

**Documents**

PROOF OF PUBLICATION FBN STATEMENT
PROOF OF PUBLICATION FBN STATEMENT

• Click "Add Document" to purchase this record.

Frequently Asked Questions



**20216607747** ^

**Back to Search Result**

**File Number:**

◄ **20216607747** ►

**Filed Date:** 6/11/2021

**Business Names**

◄ **2 of 7** ►

**Name** NWHM

**Registrants**

◄ **1 of 1** ►

**Name** TNHC REALTY AND CONSTRUCTION INC.
**Status** ACTIVE

**Documents**

PROOF OF PUBLICATION
FBN STATEMENT
PROOF OF PUBLICATION
FBN STATEMENT

**Click "Add Document" to purchase this record.**
Frequently Asked Questions



**20216607747** ^

**Back to Search Result**

**File Number:**
◄ **20216607747** ►

**Filed Date:** 6/11/2021

**Business Names**

◄ **3 of 7** ►

**Name** NEW HOME

**Registrants**

◄ **1 of 1** ►

**Name** TNHC REALTY AND CONSTRUCTION INC.
**Status** ACTIVE

**Documents**

PROOF OF PUBLICATION
FBN STATEMENT
PROOF OF PUBLICATION
FBN STATEMENT

• **Click "Add Document" to purchase this record.**
**Frequently Asked Questions**



20216607747 ˄

**Back to Search Result**

**File Number:**

◄ **20216607747** ►

**Filed Date:** 6/11/2021

**Business Names**

◄ **5 of 7** ►

**Name** TNHC

**Registrants**

◄ **1 of 1** ►

**Name** TNHC REALTY AND CONSTRUCTION INC.
**Status** ACTIVE

**Documents**

PROOF OF PUBLICATION
FBN STATEMENT
PROOF OF PUBLICATION
FBN STATEMENT

· **Click "Add Document" to purchase this record.**

Frequently Asked Questions

# Exhibit 212



Home | Online Services | License Detail

# ☐ Contractor's License Detail for License # 938080

**DISCLAIMER: A license status check provides information taken from the CSLB license database. Before relying on this information, you should be aware of the following limitations.**

☐ CSLB complaint disclosure is restricted by law (B&P 7124.6) If this entity is subject to public complaint disclosure click on link that will appear below for more information. Click here for a definition of disclosable actions.

☐ Only construction related civil judgments reported to CSLB are disclosed (B&P 7071.17).

☐ Arbitrations are not listed unless the contractor fails to comply with the terms.

☐ Due to workload, there may be relevant information that has not yet been entered into the board's license database.

Data current as of 3/30/2025 10:35:04 AM

### Business Information

TNHC REALTY AND CONSTRUCTION INC
15231 LAGUNA CANYON ROAD
SUITE 250
IRVINE, CA 92618
Business Phone Number:(949) 382-6525

| | |
|---|---|
| **Entity** | Corporation |
| **Issue Date** | 09/23/2009 |
| **Expire Date** | 09/30/2025 |

### License Status

**This license is current and active.**

**All information below should be reviewed.**

### Classifications

B - GENERAL BUILDING

### Bonding Information

**Contractor's Bond**

This license filed a Contractor's Bond with HARCO NATIONAL INSURANCE COMPANY.

**Bond Number:** 0507551

**Bond Amount:** $25,000

**E!ective Date:** 01/01/2023

Contractor's Bond History

**Bond of Qualifying Individual**

This license filed Bond of Qualifying Individual number **PB02497501181** for PATRICK WILLIS DIBBLE in the amount of **$25,000** with PHILADELPHIA INDEMNITY INSURANCE COMPANY.

**E!ective Date:** 01/01/2023

BQI's Bond History

### Workers' Compensation

This license has workers compensation insurance with the STARSTONE NATIONAL INSURANCE COMPANY

**Policy Number:** T10241219
**E!ective Date:** 09/15/2024
**Expire Date:** 09/15/2025

Workers' Compensation History

*Other*

☐  Personnel listed on this license (current or disassociated) are listed on other licenses.

Back to Top    Conditions of Use    Privacy Policy    Accessibility    Accessibility Certification

Copyright © 2025 State of California

2222

# Exhibit 213

July 30 night: I received a phone call from an "Unknown Caller" line from a female police officer at 8:47pm PT. I forgot her name, but she alleged that I had said during my call with city council employee Trinity Pham, that I suggested someone should hurt themselves. She also said that I told Trinity that I had information that I could reveal more publicly. None of this in itself is not an illegal act, but I nonetheless said I did not recall saying anything along those lines. When I asked the officer to be more specific, she said she was already being specific. At the end of the call, I thanked the officer for the intimidation, and she said nothing notable in response.



The phone call from the police was in response, seemingly, to a phone call I made earlier in the day attempting to reach Councilman Go. Instead, I was met on the phone by a Ms. Trinity Doe, to whom I explained that I hoped to understand if Councilman Go wanted to be a partner in my personal investigation into the Building Department or wanted to be on their side.

July 30 afternoon: In the conversation at 4:01pm PT, I brought up for example how the CBO, Jesse Cardoza, directly contradicted a scenario I provided to the Executive Director of the CBSC, Mr Bumbalov. I also noted how there were permitting irregularities that Cardoza and the department seemingly glossed over regularly. I mentioned how Cardoza, according to CBC guidelines, was not qualified for the job. I also noted how one inspector (I did not name him, but I was referring to Derek Sanders) could not even spell the word "can't" correctly, spelling it as "cant" when he emailed me. I also brought up the fact that this individual made almost $200k a year. I also at some point referred to them as the "millionaire building department." In no instance do I recall asking for any individual to harm or kill themselves in response to the things I have found, as this would be odd behavior for me. While I may have a black sense of humor at times, I do not think I would joke about these matters with my friends in that way, much less a stranger on the phone. I ended the call by reiterating that I wanted to know if Councilman Go wanted to work with me on this, or wanted to essentially follow the Building Department in its ineptitude. I also mentioned that they should know who I am by now, Jeffrey Gu.



As such, given that the allegation by the officer wasn't illegal and that I would likely not say something like that in the first place, it's more than likely the City of Irvine used this as an attempt at intimidation.

Notably, they called 720-593-1548, which is a number I've frequently used for CPRA requests. I may have also left it on Councilman Go's voicemail. They did not call me back on the number I called that afternoon with, +1 (920) 273-9064. This suggests a highly deliberate phone call.

Complaint Text
Information related to the phone call from the Irvine Police Dept at 8:47PM Pacific Time on July 31 to the number at 720-593-1548.

Trinity Pham
Supervising Principal Council Executive Assistant, Council Services

Kalvin Alvarez
, Council Services

irvinecitycouncil@cityofirvine.org
949-724-6233

8/1 9:19am: I spoke with an employee in the human resources dept of the city of Irvine, and I was told he was no longer allowed to disclose employee information.

Marketing Communications Manager, City of Irvine
https://www.linkedin.com/in/trinity-pham-8598b022b/
Not in the Communications and Engagement Department (called Alyssa)
Grant City of Irvine Human Resources
Wendy


This request is related to the information surrounding the phone call made to 720-593-1548, my number, at 8:47pm on July 30, 2025.

1. Name and title of the officer and badge number who made the phone call, seemingly female.
2. Name and title of the other individual in the room with the officer, as the officer was consulting someone, seemingly male.
3. The name and title of any supervisors of this officer.
4. The notes and communications provided to the officer or the Irvine Police Department from the city council's office to instigate the phone call.
5. Names and titles of the individual or individuals in the city council office who provided the notes for the officer's call (Trinity Pham and others).
6. Names and titles of the individuals who motivated the police to instigate the phone call.
7. The location the phone call was made from.

8. Any recording or notes produced from the officer's phone call itself.

9. Any emails or written communications between the following entities and each other: City Attorney Jeffrey Melching/his law firm, the HR department, the communications and engagement dept, the building and safety dept, the city council's office, and the Irvine Police Department regarding this police phone call to me and my call to William Go's office, from July 30, 2025 and forward.

https://irvineca.seamlessdocs.com/f/requestforpolicerecords



Tasha State Auditor's office.
Attorney General 800-952-5225



# Exhibit 214

         

Home | My Network | Jobs | Messaging | Notifications | Me ▾ | For Business ▾ | Try Premium for $0



## Trinity Pham She/Her

Marketing Communications Manager, City of Irvine

- City of Irvine
- San Diego State University

Costa Mesa, California, United States · Contact info

248 connections

Message

## About

Graduate from San Diego State University, with a Bachelor of Science in Business Administration: Marketing, a specialty in Professional Selling and Sales Management and a minor in Management. I have the California State Seal of Biliteracy after taking 5 years of Mandarin Chinese. I also speak Vietnamese and English. I am a natural born leader, who is determined and motivated to always do better. I have a passion for learning, and love to meet new people.

 **Top skills**
Digital Marketing • Executive Administrative Assistance • Marketing Management • Marketing Strategy • Salesforce Lightning →

## Activity

254 followers

Posts

Trinity Pham posted this • 8mo

I'm happy to share that I'm starting a new position as a Marketing Communications Manager at City of Irvine!
… …show more

❤️👍 42                                                        20 comments

Trinity Pham posted this • 10mo

 I will be exhibiting at Utility Broadband Alliance (UBBA) Summit & Plugfest 2024 in Kansas City November 5-7! I'm excited to meet some new people and see some familiar faces. … …show more

 16

Trinity Pham reposted this • 11mo

 So fortunate to be able to help support my local community with TC Communications!

 8

Show all posts →

## Experience

 **Marketing Communications Manager**
City of Irvine · Full-time
Dec 2024 - Present · 8 mos
Irvine, California, United States

 **TC Communications**
Full-time · 1 yr 8 mos
Irvine, California, United States · On-site

**Marketing Coordinator**
Feb 2024 - Dec 2024 · 11 mos

⬦ Consumer Behavior, Travel Planning and +22 skills

**Marketing and Sales Assistant**
May 2023 - Feb 2024 · 10 mos

⬦ Travel Planning, Calendaring and +19 skills

**Executive Assistant to Chief Executive Officer**
Oven Empire Manufacturing · Part-time
Jul 2018 - May 2023 · 4 yrs 11 mos
United States · Hybrid

Scheduled and coordinated meetings, appointments, and travel arrangements for executive management team …

⬦ Travel Planning, Calendaring and +10 skills

 **Sports Camp Counselor**
Newport Mesa Unified School District · Seasonal
Jul 2019 - Jul 2021 · 2 yrs 1 mo
Costa Mesa, California, United States · On-site

This sports camp is a 4 week long summer camp that is free for all children in the Newport Mesa Unified School District to get exercise a …

⬦ Interpersonal Skills and Administration

 **Cheerleading Coach**
Costa Mesa High School · Part-time
May 2019 - May 2021 · 2 yrs 1 mo
Costa Mesa, California, United States · On-site

Coached and rigorously trained 4 teams, consisting of about 20-25 athletes each. …

⬦ Interpersonal Skills and Administration

## Education

 **San Diego State University**
Bachelor of Science Business Administration - BSBA, Marketing: Professional Selling and Sales Management
Aug 2018 - Dec 2022

Bachelor of Science in Business Administration Marketing: Professional Selling and Sales Management, Minor in Management  …

**Costa Mesa High School**
High School Diploma
Sep 2014 - Jun 2018
Grade: 4.46 GPA

Activities and societies: Varsity Competitive Cheerleading Captain, STUNT Captain, Associative Student Body, Key Club, DELTA …

Graduated as Valedictorian and Female Scholar Athlete of the Year, with Distinguished Honors, California Scholarship Federation recognition,  …

## Skills

**Spreadsheets**

 3 experiences across TC Communications and 1 other company

 2 endorsements

**Calendaring**

 3 experiences across TC Communications and 1 other company

 2 endorsements

Show all 29 skills  →

## Languages

**English**
Native or bilingual proficiency

**Mandarin**
Elementary proficiency

Show all 3 languages  →

## Interests

Companies       Schools

 **San Diego State University**
381,030 followers

 **City of Irvine**
14,520 followers


Follow

---

Show all companies  →

---

Promoted  ···

BRIGHTEDGE

Henry, explore relevant opportunities
with BrightEdge

Get the latest jobs and industry news

---

More profiles for you

**AJ Olsen** · 3rd+
Student of International Business at Chapman University.

---

**William Go** · 3rd+
City of Irvine, District 2 Councilmember | Asset Manager

---

**Emily Manetta** ✓ · 3rd+
Communications Professional

---

**Melissa Haley Branch** ✓ · 3rd+
Director of Communications & Engagement at City of Irvine

---

**James Mai** · 3rd+
Vice Mayor, City of Irvine | Entrepreneurship + Philanthropy +
Community …

---

Show all

---

Explore Premium profiles

**Brittany Chavez** · 3rd+
General Manager at Morongo Valley Community Services District

---

**Lee Rankin** · 3rd+
Shop Manager/Master Technician

---

**Vail Ardizzone** · 3rd+
Electrical Contractor specializing in residential remodels and audio-
visual systems. …





**Netane Hafoka** 3rd+
Bringing your project desires to life

## People you may know



**Raul Repreza** ✓
Industrial, Commercial, Residential Service Plumber.

**Joshua Kuskie**
--Journeyman Plumber
Project manager …

**Alaura Zayas**
Plumber

**Ivan Brito**
Journeyman Plumber

**William Sites**
Plumber | Drain Specialist | CIPP certified

Show all

# Exhibit 215

## Irvine PD July 30 Phone Call

**Jeffrey Gu** <jeffreygu@proffer.info>                                   Thu, Jul 31, 2025 at 9:58 AM
To: "Melching, Jeffrey" <jmelching@rutan.com>
Cc: <jsanders@rutan.com>

Hello Mr. Melching,

I received a call from an officer from the Irvine Police Department on July 30 at 8:47pm (duration 1 min, 54 sec) referencing a conversation I had earlier that day with a City Council staff member (Ms. Trinity ...) who took a call I made to Councilman Go's office. The officer vaguely stated that I had allegedly "implied someone should hurt themselves," but did not provide any specific quotation or context after I asked for it. I found this escalation both confusing and concerning.

Before I proceed with any public records requests or further correspondence, I'd like to ask directly, were you or your office involved in any way with this call or the decision to contact law enforcement?

This appears to be a serious overreaction to a conversation between a resident and the City Council's office, and I'm trying to better understand how this came to pass. I would also like to note that the litigation hold from earlier should cover communications about this incident, as the information I was discussing with the City Council's office employee had to do with CBO Jesse Cardoza and the Building Department. Moreover, since the PD phone call ostensibly referenced this conversation, this phone call and all related material should be covered, too.

Jeffrey Gu

Partner, Proffer LLC
720-593-1548

# Exhibit 216



# CITY OF IRVINE
# PLANNING AND DEVELOPMENT SERVICES
# CODE COMPLIANCE APPROVAL

Code Compliance No. 00891461-RNP
Olivewood Phase 3
Planning Area 6,Tract 19176
Lots 87-89, 96-98
126-131 Oakstone
December 18, 2023

<u>Planning & Development Services:</u>

Staff has reviewed the plans for the project referenced above and determined that the project is in compliance with the City's zoning requirements and any related discretionary approvals. All applicable conditions of approval from Planning Commission Resolution Nos. 22-3853 and 22-3854 have been satisfied. Therefore, this project is cleared for permit issuance by the Planning Department.

Should you have any questions, or need clarification, please do not hesitate to call Katie Berg-Curtis, Consultant to the City of Irvine, at (949) 724-6373 or kcurtis@cityofirvine.org.

Irvine Pacific - Portola Springs - Olivewood

| Construction Phase | Tract | Lot | UNIT | Street Address | Plan | Plan Type | Elevation | House SqFt | Subtotal Livable | Garage | Porch | Balcony | Opt. Loft | Total Sq. Footage |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 | 19176 | 87 | | 127 OAKSTONE | 3 | R | D | 3220 | 3,220 | 425 | 32 | 0 | 0 | 3,677 |
| 3 | 19176 | 88 | | 129 OAKSTONE | 2 | | B | 2980 | 2,980 | 425 | 61 | 0 | 0 | 3,466 |
| 3 | 19176 | 89 | | 131 OAKSTONE | 1 | | A | 2870 | 2,870 | 425 | 63 | 0 | 0 | 3,358 |
| 3 | 19176 | 96 | | 130 OAKSTONE | 3 | R | E | 3220 | 3,220 | 425 | 32 | 0 | 102 | 3,779 |
| 3 | 19176 | 97 | | 128 OAKSTONE | 1 | R | B | 2870 | 2,870 | 425 | 60 | 0 | 0 | 3,355 |
| 3 | 19176 | 98 | | 126 OAKSTONE | 2 | | C | 2980 | 2,980 | 425 | 0 | 0 | 0 | 3,405 |

City of Irvine
APPROVED
Katie Berg-Curtis
BY
CASE # 00891461-RNP
DATE 12/18/2023

 **COMMUNITY DEVELOPMENT**
**PUBLIC WORKS**

# PERMIT DECLARATION
## TO BE COMPLETED BY OWNER-BUILDER

**IMPORTANT!** You are completing this Permit Declaration as the **OWNER-BUILDER** for this project. If you are not the Owner-Builder, please complete the appropriate declaration as the Contractor or Authorized Agent.

| PLAN CHECK/PERMIT NUMBER(S) | |
|---|---|
| 00891461-RNP | |
| PROJECT ADDRESS | |
| 126-131      OAKSTONE | |
| PROJECT DESCRIPTION or NAME/PHASE | TRACT |
| OLIVEWOOD    PH    3 | 19176 |

## O W N E R – B U I L D E R   D E C L A R A T I O N

I hereby affirm under penalty of perjury that I am exempt from Contractors License Law for the following reason (Section 7031.5, Business and Professions Code: Any city or county which requires a permit to construct, alter, improve, demolish, or repair any structure prior to its issuance, also requires the applicant for such permit to file a signed statement that he or she is licensed pursuant to the provisions of the Contractors License Law - Chapter 9 [commencing with Section 7000] of Division 3 of the Business and Professions Code) or that he or she is exempt therefrom and the basis for the alleged exemption. Any violation of Section 7031.5 by any applicant for a permit subjects the applicant to civil penalty of not more than five hundred ($500) dollars.

☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work and structure is not intended or offered for sale. (Section 7044, Business and Professions Code: Contractor's License Law does not apply to an owner of property who builds or improves thereon, and who does such work himself or herself or through his or her own employees, provided that such improvements are not intended or offered for sale. If, however, the building or improvements is sold within one year of completion, the owner/builder will have the burden of proving that he or she did not build or improve for the purpose of sale.)

■ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project (Section 7044, Business License and Professions Code: the Contractor's License Law does not apply to an owner of property who builds or improves thereon, and who contracts for such projects with a contractor's license pursuant to the Contractor's License Law.) Additionally, I affirm that all subcontractors will be licensed in accordance with applicable California Business and Professions Code requirements and that a complete list of subcontractors (Form 43-19) will be provided to the City in accordance Irvine Municipal Code Section 5-9-205.

☐ I am exempt under Section _____ of the Business and Professions Code for this reason:

## O W N E R – B U I L D E R   D I S C L O S U R E S

### [NOTICE TO PROPERTY OWNER]

The Owner-Builder Acknowledgment and Verification of Information provided on the following pages is to inform you of your responsibilities and possible risks you may incur by having this permit issued to you as the Owner-Builder. **The City will not issue a building permit until you have read, initialed your understanding of each provision, signed, and returned this form.** Please read and initial each statement to signify you understand and/or verify this information.

# OWNER-BUILDER ACKNOWLEDGMENT AND VERIFICATION

KB

1. I understand a frequent practice of unlicensed persons is to have the property owner obtain an Owner-Builder building permit that erroneously implies that the property owner is providing his or her own labor and material personally. I, as an Owner-Builder, may be held liable and subject to serious financial risk for any injuries sustained by an unlicensed person and his or her employees while working on my property. My homeowner's insurance may not provide coverage for those injuries. I am willfully acting as an Owner-Builder and am aware of the limits of my insurance coverage for injuries to workers on my property.

KB

2. I understand building permits are not required to be signed by property owners unless they are *responsible* for the construction and are not hiring a licensed Contractor to assume this responsibility.

KB

3. I understand as an Owner-Builder I am the responsible party of record on the permit. I understand that I may protect myself from potential financial risk by hiring a licensed Contractor and having the permit filed in his or her name instead of my own.

KB

4. I understand Contractors are required by law to be licensed and bonded in California and to list their license numbers on permits and contracts.

KB

5. I understand if I employ or otherwise engage any persons, other than California licensed Contractors, and the total value of my construction is at least five hundred dollars ($500), including labor and materials, I may be considered an "employer" under state and federal law.

KB

6. I understand if I am considered an "employer" under state and federal law, I must register with the state and federal government, withhold payroll taxes, provide workers' compensation disability insurance, and contribute to unemployment compensation for each "employee." I also understand my failure to abide by these laws may subject me to serious financial risk.

KB

7. I understand under California Contractors' State License Law, an Owner-Builder who builds single-family residential structures cannot legally build them with the intent to offer them for sale, unless *all* work is performed by licensed subcontractors and the number of structures does not exceed four within any calendar year, or all of the work is performed under contract with a licensed general building Contractor.

KB

8. I understand as an Owner-Builder if I sell the property for which this permit is issued, I may be held liable for any financial or personal injuries sustained by any subsequent owner(s) that result from any latent construction defects in the workmanship or materials.

KB

9. I understand I may obtain more information regarding my obligations as an "employer" from the Internal Revenue Service, the United States Small Business Administration, the California Department of Benefit Payments, and the California Division of Industrial Accidents. I also understand I may contact the California Contractors' State License Board (CSLB) at 1-800-321-CSLB (2752) or www.cslb.ca.gov for more information about licensed contractors.

KB

10. I am aware of and consent to an Owner-Builder building permit applied for in my name, and understand that I am the party legally and financially responsible for proposed construction activity at the following address:

NEW    HOME    COMPANY

# OWNER-BUILDER ACKNOWLEDGMENT AND VERIFICATION

---

KB    11.   I agree that, as the party legally and financially responsible for this proposed construction activity, I will abide by all applicable laws and requirements that govern Owner-Builders as well as employers.

KB    12.   I agree to notify the issuer of this form immediately of any additions, deletions, or changes to any of the information I have provided on this form. Licensed contractors are regulated by laws designed to protect the public. If you contract with someone who does not have a license, the Contractors' State License Board may be unable to assist you with any financial loss you may sustain as a result of a complaint. Your only remedy against unlicensed Contractors may be in civil court. It is also important for you to understand that if an unlicensed Contractor or employee of that individual or firm is injured while working on your property, you may be held liable for damages. If you obtain a permit as Owner-Builder and wish to hire Contractors, you will be responsible for verifying whether or not those Contractors are properly licensed and the status of their workers' compensation insurance coverage.

---

**I certify that I have read this application and state that the above information is correct. I agree to comply with all City and county ordinances and state laws relating to building construction, and hereby authorize representatives of this City to enter upon the above mentioned property for inspection purposes.**

01-02-2024

OWNER-BUILDER SIGNATURE      **DATE**

Kristi Blanchard

PROPERTY OWNER NAME

Kristi.Blanchard@aol.com

EMAIL

Rev. 12/7/23



**COMMUNITY DEVELOPMENT**
**Building Safety**

[ Print Form ]

# SCHOOL FACILITIES FEE DETERMINATION

This form must be submitted in conjunction with all applications for
Code Compliance except those for Tenant Improvements.

CODE COMPLIANCE NO. **00891461-RNP**

| PART I: PROJECT INFORMATION *(To be completed by Applicant)* | |
|---|---|
| PROPERTY OWNER NAME | APPLICANT NAME (If different from Owner) |
| ~~ICDC~~ New Home Co. | KRISTI BLANCHARD |
| OWNER ADDRESS | APPLICANT ADDRESS |
| ~~550 NEWPORT CTR. DR.~~ 15231 Laguna Canyon Rd. | |

| CITY ~~NEWPORT BEACH~~ Irvine | STATE CA | ZIP ~~92660~~ 92618 | PHONE ~~9519704794~~ 949-793-0041 | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|---|

| PROPERTY ADDRESS/LOCATION | DESCRIPTION OF WORK TO BE DONE |
|---|---|
| 126-131 OAKSTONE | 6 DETACHED CONDOS |
| EXISTING/PROPOSED LAND USE | |

☒ RESIDENTIAL  No. Units: 6    ☐ INDUSTRIAL  ☐ COMMERCIAL/OFFICE  ☐ OTHER (Specify): _____

Total number of buildings for which permits are requested: 6

Is the building currently occupied?  ☐ YES  ☒ NO    If NO, anticipated occupancy date: TBD

| PART II: FEE DETERMINATION WORKSHEET *(To be completed by Staff)* |
|---|

A. TYPE OF CONSTRUCTION:    ☒ New  ☐ Expansion  ☐ Alteration  ☐ Other

☐ The proposed development <u>involves</u> construction/
expansion of accessible space and IS subject to the school
facility fee requirements; **complete Parts II and III.**

☐ The proposed development <u>DOES NOT involve</u>
construction/expansion of accessible space. School
facility fees ARE NOT required; **proceed to Part III.**

B. SIZE OF PROPOSED DEVELOPMENT:  Gross floor area (determined by City Plan Check Engineer)  18,100  sq. ft.

C. SCHOOL DISTRICT:  ☐ Irvine (IUSD)      ☐ Saddleback Valley (SVUSD)      ☐ No; **proceed to Section D**
☒ Irvine (IUSD CFD)  ☐ Santa Ana (SAUSD)  ☐ Tustin (TUSD)    ☐ Yes; **proceed to Part III**

D. FEE CALCULATION (Attach additional sheets if necessary):

1. Fees for SVUSD, SAUSD, TUSD are calculated and collected by the appropriate school districts; **proceed to Part III.**

2. IUSD fee calculation: _____ (sq. ft.) X $ _____ (factor) = $ _____ (fee)

| PART III: FEE DETERMINATION *(To be completed by Staff)* |
|---|

☐ Prior to issuance of a Building Permit, a Certificate of Compliance must be obtained from the school district noted
below (refer to the Information Sheet for the person responsible for the collection of fees). A copy of this
determination form should be presented to the school district to expedite collection of fees. IUSD will not accept
payment unless fees are accompanied by this determination form. __ IUSD  __ SAUSD  __ SVUSD  __ TUSD

☒ This project is EXEMPT from school fee requirements for the following reason:

__ Proposal does not involve addition or construction of assessable commercial, industrial, or residential floor area.

X  The subject property is located within a CFD. IUSD exempts these areas from the collection of school fees.

__ The project consists of an addition of less than 500 sq. ft. to an existing residential structure.

__ Other (Specify): _____

| PREPARED BY  Katie Berg-Curtis | TITLE  Consultant | DATE  12/18/2023 |
|---|---|---|

OF IR    COMMUNITY DEVELOPMENT
Building and Safety                 Rev. 12/1/23                          Print Form

# A SP    C    R    C    S    S    I    F

CODE COMPLIANCE NUMBER:                                          PAGE: 1          OF: 1

o com    by A
PROJECT:                                                         o com eted by     A
BUILDER: ~CBC~ New Home, ln      00891461-RNP                    CORRIDOR AGENCY: FOOTHILL EASTERN
APPLICANT NAME: KRISTI BLANCHARD           PHONE: 9519704794     ZONE: A
TRACT: 19176                      LOTS: 87-89, 96-98             SF RATE: $6,467.00
ADDRESSES: 126-131 OAKSTONE                                      MF RATE:
TOTAL NUMBER OF BUILDINGS: 6      TOTAL NUMBER OF UNITS: 6

| LOT NO. | ADDRESS | UNIT TYPE | # OF THIS UNIT TYPE PER BLDG | SQ.FT. PER UNIT | DETACHED | SEPARATE LOT | >=1500 SQ.FT.* | SF or MF | FEE CALCULATION UNITS @ $____ EACH | FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| 89,97 | 131,128 OAKSTONE | 1A,1B | 2 | 2870 | ☒Y ☐N | ☒Y ☐N | ☒Y ☐N | SF | 6 @ $6,467.00 = | 38,802 |
| 88,98 | 129,126 OAKSTONE | 2B,2C | 2 | 2980 | ☒Y ☐N | ☒Y ☐N | ☒Y ☐N | SF | | |
| 87,96 | 127,130 OAKSTONE | 3D,3E | 6 | 3220 | ☒Y ☐N | ☒Y ☐N | ☒Y ☐N | SF | | |
| | | | | | ☒Y ☐N | ☒Y ☐N | ☒Y ☐N | | | |
| | | | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N | | | |
| | | | | | ☐Y ☐N | ☐Y ☐N | ☐Y ☐N | | | |

If YES to two or more categories: Single Family (SF)
If NO to two more categories: Multi-Family (MF)
*Garage sq. ft. is NOT included

TOTAL UNITS: 6                    TOTAL UNITS:

PREPARED BY: KRISTI BLANCHARD     PREPARED BY: MARSHA LALONDE          TOTAL FEE: 38,802
COMPANY: ~CBC~ New Home, ln
                    APPLICANT
DATE: 11/28/22                    DATE: 12-21-23         AMOUNT: 38,802

LETTER OF CREDIT TRANSFER NO:           AMOUNT:          CASH BALANCE DUE:

RECEIVED BY:
        TCA

Developer: NEW HOME CO

Address: 15231 Laguna Cyn Rd 250
IRVINE CA 92618

City of: IRVINE

Foothill/Eastern
Transportation Corridor Agency

CV# 00920821

Receipt #: FTE **8680**

Permit #: 00920234-RBP-00920239-RBP

Date:

Plan Check #: 00891461-RNP

| Corridor Zone | Type of Units | | I Lot | er | Amount Paid |
|---|---|---|---|---|---|
| A | RES | 6 | Olivewood Phase 3 Portola Springs | | $38,802.00 |

Tract 19176. Lots 87-89,96-98.

6 Production SFD. 126-131 Oakstone

007-13

Please be advised that as of the above-noted date of issuance of this receipt, the 90-day approval period in which the developer of this project may protest has begun (see California Government Code Section 66020(d)(1).)

# Road Fee Remittance - Detail

First Name : Diana
Last Name : Asmar
Email : dasmar@newhomeco.com
Remittance Number : DFR23-00026
City : Irvine
Applicant Name : New Home Company
Project Address : 126,127,128,129,130,131 Oakstone
Project/Product and Phase # : Phase 3
Tract Number : 19176
Lot(s) : Lots # 87,88,89,96,97,98
Submitted Date : 12/07/2023
Total Fees : $6,888.00
Total Payments : $6,888.00
Comments :

| Road Fee Programs | Financials | Receipts | Additional Docs |

## Road Fee Programs

Show 10 entries

Search:

| Fee Programs | Unit Type(s) | Unit Fee(s) | Number of DUs | TotalSquareFootage | Deposit Amounts |
|---|---|---|---|---|---|
| Santiago | Single-Family Dwelling | $1,148.00 | 6 | | $6,888.00 |
| Santiago | Multi-Family Dwelling | $920.00 | 0 | | $0.00 |
| Santiago | Commercial | $1.01 | | 0 | $0.00 |

Showing 1 to 3 of 3 entries



| Previous | 1 | Next |



Select Language



Powered by **Google Translate (https://translate.google.com)**

Contact (/Contact)          Disclaimer (http://www.ocgov.com/contact/disclaimer/)

www.ocgov.com (https://ocgov.com/)          www.ocpublicworks.com (http://www.ocpublicworks.com/)

**IMPORTANT:**

**For best experience, use CHROME**

 (https://www.facebook.com/ocpublicworks/)   (https://twitter.com/ocpublicworks?lang=en)

Copyright © 2023 Orange County



COMMUNITY DEVELOPMENT
Building and Safety

# GRADING RELEASE CERTIFICATE

| GRADING PLAN CHECK# | PERMIT# | FUEL MOD |
| --- | --- | --- |
|  | 00873286-GP | ☐ MEMO IN JOB FILE |
| BLDG PHASE PLAN CHECK# | TRACT# |  |
| 00891461-RNP | 19176 | ■ N/A |
| LOCATION/ADDRESS | | |
| Portola    Springs | | |
| DEVELOPER | PRODUCT/PHASE | |
| TNHC | Olivewood/Phase    3 | |
| BUILDING NUMBER | UNITS/LOTS | |
|  | Lots 87-89,96-98 | |
| SPECIAL CONDITIONS/REQUIREMENTS | | |
|  | | |

eSigned via SeamlessDocs.c█

Key: 536fbe2█1860█0█a05a50d4651ef█

Scott    Coffey

12-11-2023
_____
DATE

FORM 65-10 REV 10/21

# Exhibit 217



**Jess Sanders**
E-mail: jmelching@rutan.com

August 5, 2025

<u>**VIA E-MAIL ONLY**</u>

Jeffrey Gu
jeffwgu@gmail.com

      Re:    <u>Demand to Cease and Desist Direct Contact with Irvine City Staff and Offices</u>

Dear Mr. Gu,

      This office serves in the capacity of City Attorney for the City of Irvine ("City"). My office has been advised that your recent actions and contact with City staff have caused a significant disruption to the operations of the City and have raised concerns regarding the safety and wellbeing of City staff.

      Beginning on or around June 1, 2025, you have submitted over 24 separate public records requests pursuant to the California Public Records Act (Gov. Code, § 7920.000 et seq.) (CPRA), and have been in persistent contact with the City's Community Development Department, Human Resources Department, City Clerk's Department, and Councilmember Go's office, sometimes calling as many as three to four times per day. You have contacted various staff members with a deluge of inquiries in a volume that has materially impaired the City's ability to conduct its business efficiently.

      In addition, your conduct regarding a member of Councilmember Go's staff, Ms. Trinity Pham is of particular concern. Your repeated calls and attempts to contact Ms. Pham, and requests for her personal contact information are inappropriate and not related to any legitimate request for service or information from the City. It has become necessary for the City and the Irvine Police Department (IPD) to take precautionary matters to preserve Ms. Pham's safety and wellbeing.

      While the City is committed to transparency and compliance with all applicable laws, your actions to date have escalated beyond reasonable requests for information or service. This demand to cease and desist is sent to you to both preserve Ms. Pham's safety and prevent further disruption to City operations.

      Accordingly, we demand that you **immediately cease all direct contact with City staff and offices**, except for attending duly noticed public meetings conducted by the City and in cases of emergency where calls for service may be directed to the Irvine Police Department. Any further communications regarding any of your CPRA requests or other City-related matters should be directed via email to the City Attorney's Office, and specifically to myself at jsanders@rutan.com.



Jeffrey Gu
August 5, 2025
Page 2


As of the date of this correspondence, the City has expended significant amounts of staff and City Attorney time, as well as City funds and resources to manage your numerous and ongoing inquiries. This imposes an unreasonable burden on City staff and resources, which are for the benefit of the people of the City as a whole. To the extent the answers to any of your inquiries are contained within documents produced to you in response to your CPRA requests, any responsive, non-exempt records will be provided in compliance with the CPRA. However, in an effort to conserve City resources moving forward, the City will not be separately inquiring and responding to your inquiries outside of the scope of what is required by the CPRA. These measures are not taken to single you out or deny you any rights to access City documents or meetings provided by applicable law, but rather to efficiently manage the limited resources available to serve all City residents.

Any direct correspondence to City staff will be forwarded to myself for review and response as appropriate. Unless deemed necessary or appropriate, you will not receive further direct responses from City staff in response to your inquiries or requests. To the extent any of your communications require a response, you will receive responses from our office as appropriate, but no more than once every two weeks. This timeframe does not apply to responding to your CPRA requests in compliance with the timeframes provided therein.

Failure to comply with this demand may result in further legal action to protect the safety and operations of the City and its employees. We hope to resolve this matter amicably and without the need for further intervention.

Thank you for your immediate attention to this matter.

Very truly yours,


RUTAN & TUCKER, LLP


Jess Sanders

JS.js

# Exhibit 218



18100 Von Karman Ave., Suite 700
Irvine, California 92612
p (949) 271-8700
f (949) 627-2611
www.phlklaw.com

Melanie S. Woodfin, Partner
mwoodfin@phlklaw.com

August 5, 2025

**CEASE AND DESIST**

**VIA EMAIL & U.S. MAIL**

Jeffrey Gu
129 Oakstone
Irvine, CA  92618
jeffwgu@gmail.com

Re:    **Gu, Jeffrey v. The New Home Company**
PHLK File No.:         0066-2818

Dear Mr. Gu:

This letter follows our prior letters, including our letter dated May 27, 2025, wherein The New Home Company ("TNHC") demanded that you immediately cease and desist all harassing conduct.  Our May 27, 2025 letter, which identifies your harassing behavior, is attached as Exhibit "A."  Despite our demand that you discontinue your pattern of bad faith and harassing conduct against TNHC and its employees and contractors, your harassment continues.  **TNHC again demands that you immediately cease and desist your harassment of TNHC's employees, contractors, and now, its insurance brokers.**  If your harassment continues, TNHC will take all appropriate corrective actions, including seeking injunctive relief, restraining orders and both civil and criminal penalties, as appropriate.

On July 29, 2025, you emailed TNHC employee Chad Baker demanding information relating to his employer.  Your email provides:

Hi Chad,

Could you please send me information about who your employer is?  One way of figuring this out is looking at your W2, if this is what the employer provides to you.

-Jeffrey



Page 2

Also on July 29, 2025, you emailed TNHC employee Dave Christensen demanding the same information relating to his employer.  Your email provides:

> Hi Dave,
>
> Could you please send me information about who your employer is?  One way of figuring this out is looking at your W2, if this is what the employer provides to you.
>
> -Jeffrey

On July 31, 2025, you emailed Mr. Christensen again stating that:

> Hi Dave,
>
> As a licensed realtor, I believe you should be able to give this information to me in a straightforward manner. Could you please provide me with the company that you have an employment relationship with?
>
> -Jeffrey

We have repeatedly asked that you refrain from harassing TNHC's employees.  There is absolutely no legitimate reason for you to request this information from TNHC's employees.  Please immediately cease and desist harassing TNHC's employees.

In addition, on July 30, 2025, you contacted TNHC's insurance broker, Alliant, asking for information relating to TNHC's insurance, as follows:

> Hello Ms. Coghill,
>
> I have a few questions about this COI and insured.  Could I please send them to you?
>
> -Jeffrey

There is likewise no legitimate purpose for contacting TNHC's insurance broker, nor are you entitled to any information relating to TNHC's insurance.  Indeed, you have no contractual relationship with TNHC whatsoever, nor are you an owner of a home constructed/sold by TNHC.  Please immediately cease and desist contacting TNHC's insurance broker.

\*       \*       \*



Page 3

Pursuant to the foregoing, we demand that you <u>immediately cease and desist</u> all harassing activities against TNHC's employees, its contractors, and its insurance broker. TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.

Sincerely,

Melanie S. Woodfin

SCP
Enclosure

cc:    Di Lan Ge
       Xian Feng Gu
       Sam C. Plante, Esq.
       Janelle Launi, Paralegal

Exhibit "A"



18100 Von Karman Ave., Suite 700
Irvine, California 92612
p (949) 271-8700
f (949) 627-2611
www.phlklaw.com

Melanie S. Woodfin, Partner
mwoodfin@phlklaw.com

May 27, 2025

**CEASE AND DESIST**

**VIA E-MAIL AND U.S. MAIL**
Jeffrey Gu
129 Oakstone
Irvine, CA  92618
jeffwgu@gmail.com

Re:    **Gu, Jeffrey v. The New Home Company**
PHLK File No.:        0066-2818

Dear Mr. Gu:

**The New Home Company ("TNHC") hereby demands that you immediately cease and desist all harassing conduct.** TNHC has attempted to address your claims in good faith and in response you have engaged in a pattern of bad faith conduct designed and intended to annoy, harass and offend TNHC.  Your conduct has now escalated to a level that is illegal, dangerous, and disruptive.  If this behavior continues, TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.

Your harassing conduct to date includes the following:

1. Abuse Of The SB800 Prelitigation Process: To date, you have provided **16 separate Notices** under Civil Code section 895, et seq. ("SB800"), which are dated April 2, 2025 (2), April 3, 2025, April 4, 2025, April 7, 2025 (3), April 14, 2025 (5), April 21, 2025[1], April 23, 2025, May 5, 2025, and May 12, 2025 (the "Notices").  TNHC timely acknowledged your Notices and inspected the claims on April 22, 2025 pursuant to Civil Code section 916, and after that date, you provided four additional Notices. Several of the Notices address the very same issues.  For instance, you assert the same claim relating to the shower pan in the master bathroom in four separate Notices and you assert claims relating to the grout in three separate Notices. Despite TNHC's timely response and inspection, evidencing TNHC's intent to complete the SB800 process in good faith, you continued to serve additional redundant Notices.  The obvious intent of repeated and duplicative Notices is to

---

[1] The April 21, 2025 Notice was not properly served under Civil Code section 910.  Accordingly, TNHC reserves all rights and defenses available as a result of the improper service.



harass and annoy TNHC.  It also bears noting that prior to the 16 Notices, TNHC was working in good faith with you to address your concerns through its customer service department.  Indeed, repairs were scheduled and in progress.  While those repairs were in process, you began serving the Notices, which contain many of the same issues which were in progress with the customer services department.  This taken in conjunction with your multiple and duplicative Notices demonstrates your harassment of TNHC and your bad faith in this process.  Until and unless you cease such abuse of the SB800 prelitigation process, TNHC will not respond to additional notices from you.

2.  <u>Improper Bond Claim</u>: We have learned that you filed a claim with TNHC's bond company for "construction defects" at the Property, presumably for the same claims identified in the Notices which at the time were proceeding under the SB800 process.  At the time you filed a claim with the bond company, TNHC was investigating the Notices in good faith and adhering to the SB800 procedures.  In fact, TNHC's response was not due until May 22, 2025 – one week after you filed the claim with the bond company.  TNHC at all times proceeded in good faith in the SB800 process.  Given your numerous and duplicative Notices, that the duplicative Notices contained the same issues which were being addressed by TNHC through customer service, and that you filed this claim before the SB800 process was concluded, it is clear that it is your intent to harass TNHC.  As you know, TNHC offered to make courtesy repairs as outlined in our May 22, 2025 letter.  To date, we have not received any response.

3.  <u>Improper Demands</u>: Following the inspection on April 22, 2025, you have contacted me multiple times requesting TNHC's inspector's insurance and license information, despite the fact that I advised you that SB800 only requires proof of insurance for the builder, which we provided.  Civil Code section 916 requires that "[t]he builder shall also provide written proof that the builder has liability insurance to cover any damages or injuries occurring during inspection and testing."  TNHC therefore satisfied this requirement.  TNHC is not required to provide proof of insurance for an inspector.  Your attempts to gain insurance and licensing information relating to TNHC's inspector (who performed a visual inspection only), presumably to pursue the inspector's bond company, further evidences your harassing conduct.

4.  <u>Illegal And Dangerous Trespass At TNHC's Construction Site</u>: It has come to our attention that you intentionally trespassed at TNHC's active construction site at the Olivewood community on May 20, 2025.  While trespassing, you also harassed TNHC's contractors, interfering with the work being performed.  Your trespass was captured on video and photographed.  The images below depict your trespass and harassment of TNHC's contractors.  The photographs and videos also record you taking photographs of construction workers and the license plates of their vehicles.  Construction sites are dangerous and this property, which is owned by TNHC, is not open to the public for this reason, among others.  Not only is it dangerous for you to trespass on an active construction site, your presence was disruptive to the



Page 3

construction operations.  We therefore demand that you immediately cease and desist from this unlawful activity, including both trespassing on TNHC's property and harassing TNHC's contractors.  If you continue to trespass on TNHC's property and harass TNHC's contractors, legal action may be taken against you and you may be subject to both civil and criminal penalties.

Pursuant to the foregoing, we demand that you **immediately cease and desist** all harassing activities against TNHC and its contractors and from unlawfully entering TNHC's construction site at the Olivewood community.  Please confirm in writing by close of business on **May 30, 2025** that you will cease trespassing on TNHC's property.  TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.

Sincerely,

Melanie S. Woodfin

MSW

cc:     Sam C. Plante, Esq.
        Janelle Launi, Paralegal

# Exhibit 219

| Name | Number | Date | Time (Eastern) | Duration |
|---|---|---|---|---|
| Ishmael Building Inspector | +1 (949) 724-6666 | 4/15/25 | 4:17:00 PM | 0:01:00 |
| Ishmael Building Inspector | +1 (949) 724-6666 | 4/15/25 | 1:07:00 PM | 0:02:00 |
| Ishmael Building Inspector | +1 (949) 724-6666 | 4/10/25 | 2:44:00 PM | 0:01:00 |
| Ishmael Building Inspector | +1 (949) 724-6666 | 4/8/25 | 4:12:00 PM | 0:08:00 |
| Irvine Code Enforcement | 1(949) 724-6326 | 6/11/25 | 6:24:00 PM | 0:15:00 |
| Irvine Code Enforcement | 1(949) 724-6326 | 5/17/25 | 11:24:00 AM | 0:00:42 |
| Irvine Code Enforcement | 1(949) 724-6326 | 4/21/25 | 12:45:00 PM | 0:00:00 |
| Irvine Code Enforcement | 1(949) 724-6326 | 4/15/25 | 6:03:00 PM | 0:02:00 |
| Irvine Code Enforcement | 1(949) 724-6326 | 4/15/25 | 4:30:00 PM | 0:00:43 |
| Irvine Building Inspection | (949) 724-6396 | 4/15/25 | 6:09:00 PM | 0:00:50 |
| Irvine Code Enforcement | 1(949) 724-6326 | 4/11/25 | 2:01:00 PM | 0:01:00 |
| Irvine Code Enforcement | 1(949) 724-6326 | 4/8/25 | 2:41:00 PM | 0:02:00 |
| Irvine Building Inspection | (949) 724-6396 | 4/16/25 | 1:00:00 PM | 0:03:00 |
| Irvine Building Inspection | (949) 724-6396 | 4/16/25 | 1:56:00 PM | 0:00:05 |
| Irvine Public Works | (949) 724-7365 | 5/5/25 | 1:13:00 PM | 0:14:00 |
| Irvine Police | (949) 724-7000 | 5/3/25 | 2:27:00 PM | 0:16:00 |
| Irvine Police | (949) 724-7000 | 5/3/25 | 2:28:00 PM | 0:00:00 |
| Irvine Police | (949) 724-7000 | 5/3/25 | 3:41:00 PM | 0:03:00 |
| Gina Mauro | (949) 724-6546 | 6/11/25 | 6:23:00 PM | 0:08:00 |
| Gina Mauro | (949) 724-6546 | 6/11/25 | 2:46:00 PM | 0:00:03 |
| City of Irvine Main | +1 (949) 724-6000 | 8/1/25 | 12:10:00 PM | 0:01:00 |
| City of Irvine Main | +1 (949) 724-6000 | 8/1/25 | 12:09:00 PM | 0:08:00 |
| City of Irvine Main | +1 (949) 724-6000 | 7/31/25 | 3:54:00 PM | 0:00:31 |
| City of Irvine Main | +1 (949) 724-6000 | 7/31/25 | 3:22:00 PM | 0:02:00 |
| City of Irvine Main | +1 (949) 724-6000 | 7/31/25 | 12:08:00 PM | 0:12:00 |
| City of Irvine Main | +1 (949) 724-6000 | 7/30/25 | 12:08:00 PM | 0:06:00 |
| City of Irvine Main | +1 (949) 724-6000 | 7/30/25 | 12:05:00 PM | 0:02:00 |
| City of Irvine Main | +1 (949) 724-6000 | 6/20/25 | 1:38:00 PM | 0:02:00 |
| City of Irvine Main | +1 (949) 724-6000 | 3/14/25 | 1:45:00 PM | 0:01:00 |
| William Go Irvine Councilman | (949) 724-6233 | 7/30/25 | 7:01:00 PM | 0:07:00 |
| William Go Irvine Councilman | (949) 724-6233 | 7/10/25 | 3:11:00 PM | 0:08:00 |
| Claudia City of Irvine Records | +1 (949) 724-6330 | 8/1/25 | 4:03:00 PM | 0:00:06 |

| | | | | | |
|---|---|---|---|---|---|
| Claudia City of Irvine Records | +1 (949) 724-6330 | 8/1/25 | 3:12:00 PM | 0:00:07 | |
| Claudia City of Irvine Records | +1 (949) 724-6330 | 7/1/25 | 3:44:00 PM | 0:00:15 | |
| Claudia City of Irvine Records | +1 (949) 724-6330 | 7/30/25 | 3:14:00 PM | 0:00:04 | |
| Claudia City of Irvine Records | +1 (949) 724-6330 | 7/30/25 | 3:10:00 PM | 0:00:05 | |
| Claudia City of Irvine Records | +1 (949) 724-6330 | 7/30/25 | 3:01:00 PM | 0:07:00 | |
| Claudia City of Irvine Records | +1 (949) 724-6330 | 7/30/25 | 1:32:00 PM | 0:00:00 | |
| Claudia City of Irvine Records | +1 (949) 724-6330 | 7/30/25 | 12:08:00 PM | 0:00:02 | |
| Claudia City of Irvine Records | (949) 724-6281 | 8/1/25 | 4:03:00 PM | 0:00:00 | |
| City of Irvine Records | (949) 724-6281 | 7/30/25 | 1:33:00 PM | 0:02:00 | |
| City of Irvine Records | (949) 724-6281 | 7/30/25 | 1:32:00 PM | 0:00:00 | |
| City of Irvine Records | (949) 724-6281 | 3/17/25 | 2:06:00 PM | 0:00:56 | |
| Alyssa City of Irvine Marketing | +1 (949) 724-6248 | 7/31/25 | 4:25:00 PM | 0:03:00 | |
| Jesse Cardoza | (949) 724-6377 | 8/1/25 | | 0:02:00 | |
| | | | | | |
| | | | | | |
| | | | | Total | 2:13:29 |

# Exhibit 220



# CITY CLERK'S OFFICE
## Legislative Services

Print Form

# CLAIM FOR DAMAGES

**INSTRUCTIONS:**

File original claim with the City Clerk's Office, P.O. Box 19575, Irvine, CA 92623-9575.  Failure to provide sufficient information may result in delays in claim processing.

**PLEASE NOTE:**

1.  Claims for death, injury to person or to personal property must be filed no later than six (6) months after the occurrence (Government Code Section 911.2). This applies to occurrences after January 1, 1988.

2.  Claims for damages to real property must be filed no later than one (1) year after the occurrence (Government Code Section 911.2).

3.  Review and complete entire Claim For Damages form before filing.

4.  Attach separate sheets, if necessary, to give full details.

5.  This form must be signed by the claimant or a person on his/her behalf (Government Code Section 911.2).

6.  This form is for the convenience of those desiring to present claims against the City. Claimant is advised to consult a private attorney if legal advice is desired.  City employees may not give legal advice to any claimant relating to private claims.

## CLAIM INFORMATION

| LAST NAME OF CLAIMANT | FIRST NAME | MI | PHONE* |
|---|---|---|---|
| Ge | Di | Lan | 7205931548 |

| HOME ADDRESS OF CLAIMANT* | | CITY | STATE | ZIP |
|---|---|---|---|---|
| 746 Country Club Lane | | Fond du Lac | Wisconsin | 54935 |

| [✓] IF CLAIMANT WOULD LIKE NOTICES SENT TO AN ADDRESS DIFFERENT FROM ABOVE, INDICATE BELOW | [ ] IF CLAIMANT IS REPRESENTED BY AN ATTORNEY, PROVIDE NAME AND ADDRESS: |
|---|---|
| NAME | NAME |
| Jeffrey Gu | |
| ADDRESS* | ADDRESS |
| 746 Country Club Lane | |

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| Fond du Lac | Wisconsin | 54935 | | | |

| DATE OF DAMAGE/INJURY | LOCATION OF DAMAGE/INJURY (If known, include specific address and location) |
|---|---|
| 7/30/25 | 129 Oakstone, Irvine, CA 92618 |
| TIME OF DAMAGE/INJURY | |
| 12:11   [ ] AM  [X] PM | |

The City of Irvine takes your privacy seriously. This form asks you to provide the City with certain personal information. Such information is being requested and will be
utilized by the City for the specific and limited purpose of future City correspondence regarding the subject-matter of this form. Pursuant to Measure S, an

# CLAIM FOR DAMAGES

**DESCRIBE SPECIFIC NATURE OF DAMAGE/INJURY (Attach additional sheet if necessary)**

1. Permit for 129 Oakstone was issued to a non-deeded owner, enabling a violation of BPC §7031.
2. Repeated negligence by CBO Jesse Cardoza and senior inspectors led to code violations.
3. Retaliatory police call on 7/30 defamed and intimidated our son following protected speech.
4. Defamatory cease and desist letter sent on 8/5 by attorney Jessica Sanders misrepresented facts and motives.

**SPECIFY HOW THE DAMAGE/INJURY OCCURED (Attach additional sheet if necessary)**

1. We purchased the home relying on City-approved permits that were issued under false pretenses.
2. This allowed an entity to build a structurally and legally defective home.
3. Our son called Councilmember Go on 7/30 to share information about Building & Safety, but instead spoke with Trinity Pham.
4. We sent good-faith inquiries to multiple departments seeking resolution.

**NAME(S) OF CITY EMPLOYEES INVOLVED IN DAMAGE/INJURY/LOSS (If known)**

Jesse Cardoza, David Chaffe, Cheryl Williams, Zhaleh Afrasiabi, Katie Curtis, Derek Sanders, Regina Mauro, William Go, Trinity Pham, Jeffrey Melching, Jessica Sanders

**SPECIFY WHAT PARTICULAR ACT/OMISSION ON THE PART OF CITY OFFICERS OR PUBLIC EMPLOYEES DO YOU CL
THE DAMAGE/INJURY (Attach additional sheet if necessary)**

1. Building & Safety staff failed to verify ownership before issuing permits, violating standard review procedures.
2. CBO Jesse Cardoza lacked the qualifications under CBC A101 when promoted in 2021.
3. City Council authorized or permitted misuse of police resources against a whistleblower.
4. Jessica Sanders fabricated a narrative to silence and discredit our public interest investigation.

| WERE POLICE ON SCENE? | WAS A POLICE REPORT FILED? | IF YES, PROVIDE POLICE REPORT NO. |
|---|---|---|
| ☐ NO    ☒ YES | ☒ NO    ☐ YES | |

**GIVE THE AMOUNT CLAIMED AS OF THE DATE OF PRESENTATION OF THE CLAIM, INCLUDING THE ESTIMATED AM
ANY DAMAGE/INJURY/LOSS, INSOFAR AS IT MAY BE KNOWN AT THE TIME OF PRESENTATION OF THIS CLA
WITH THE BASIS OF COMPUTATION OF THE AMOUNT CLAIMED, WITH ESTIMATES AND BILLS, IF APPROPRI
additional sheet if necessary)**

See attached spreadsheet.

| | |
|---|---|
| TOTAL AMOUNT | $5,719,254 |

**I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE FACTS HEREINABOVE SET FORTH ARE
TO THE BEST OF MY KNOWLEDGE.**

_____    8/7/25
SIGNATURE OF CLAIMANT -OR- REPRESENTATIVE OF CLAIMANT DATE

NOTICE: Section 72 of the Penal Code provides that: "Every person who, with intent to defraud, presents for allowance, or for payment to any state board or officer, or to an
County, Town, City, District, Ward, or Village Board or Officer, if genuine, and false, fraudulent claim, bill, account, voucher, or writing, is guilty of a felony."

The City of Irvine takes your privacy seriously. This form asks you to provide the City with certain personal information. Such information is being requested and
will be
utilized by the City for the specific and limited purpose of future City correspondence regarding the subject-matter of this form. Pursuant to Measure S, an

| Name | Amount |
|---|---|
| House | $3,897,154 |
| Current and future interest | $1,544,349 |
| Design & Furniture | $68,781 |
| Blinds | $3,632 |
| House Representative Expenses | $147,561 |
| Taxes, Insurance, Assessments | $52,218 |
| Electricity | $2,867 |
| Contractors & Inspections | $2,693 |
| | |
| | |
| Total | $5,719,254 |

Recording Requested By:
First American Title Company
Homebuilder Services Division

Order No.
Escrow No.
Loan No.

**WHEN RECORDED MAIL TO:**

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

22.00

491 CR-SC06 G02     6 26
2127.13 2127.12 0.00 0.00 15.00 0.00 0.000.000.00 0.00

DOCUMENTARY TRANSFER TAX $ 4,254.25

SPACE ABOVE THIS LINE FOR RECORDER'S USE

☑ Computed on the Consideration or value of property conveyed; OR
☐ Computed on the consideration or value less liens or encumbrances
remaining at time of sale. (x) City of Irvine

_Starling Rich, Escrow Specialist_
Signature of Declarant or Agent determining tax - Firm Name

APN: 591-791-57          **GRANT DEED**

For valuable consideration, receipt of which is hereby acknowledged,

**THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company**
(*"Grantor"*) hereby grants to ███████████████
Revocable Trust dated the 26th day of November, 2002

(*"Grantee"*) the real property in the City of Irvine, County of Orange, State of California, described on **Exhibit "A"**
attached hereto and incorporated herein by this reference.

Dated: May 16 _____, 2024

**"GRANTOR"**

THE NEW HOME COMPANY SOUTHERN
CALIFORNIA LLC, a Delaware limited liability
company

Exempt from fee per GC 27388.1 (a) (2); This
document is subject to Documentary Transfer Tax.

By: _____

Its: Authorized Signatory      Lori Michel

**MAIL TAX STATEMENTS TO:   SAME AS ABOVE**

# New Residential Construction Permit

**City of Irvine**
**Building & Safety Division**
Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6301 For Inspections: (949) 724-6501

**ADDRESS:**
**TRACT:** 19176        **LOT:**
**APN:**
**PLANNING AREA:**

**DESCRIPTION OF WORK:**
Automation Fee Inspection
(e-plan) Olivewood Phase 3 Portola Springs. Tract 19176.
1 Production SFD.

## CONTRACTOR

Date 01/04/2024 _____ Contractor

License Class. _____ Lic No.

**LICENSED CONTRACTORS DECLARATION** I hereby affirm under penalty of perjury that all provisions of Chapter 9 (commencing with section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

## OWNER-BUILDER

☐ I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:

☐ I, as owner of the property, or my employees with wages as their sole offered for sale.

☐ I have and will maintain for the performance of the work for which this permit is issued and the structure is not intended or offered for sale.

☐ I as owner of the property, am exclusively contracting with licensed contractors to construct the project.

☐ I am exempt under Sec. _____ B&PC, for this Reason _____

Date  1/4/2024 _____ Owner, __ NEW HOME COMPANY

**OWNER-BUILDER DECLARATION**

## WORKERS' COMPENSATION

☐ I hereby affirm under penalty of perjury one of the following declarations:

☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers compensation insurance carrier and policy number are:

Carrier _____
Policy # _____

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date  1/4/2024 _____ Applicant

**WORKERS' COMPENSATION DECLARATION**
WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

## LENDER

Lender's Name _____

Lender's Address _____

I hereby affirm under penalty that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)

**CONSTRUCTION LENDING AGENCY**

_____
Print Applicant's/Agent's Name

_____                    _____
Signature of Applicant or Agent        Date

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

---

**OWNER:** NEW HOME COMPANY
**ADDRESS:** 15231 LAGUNA CANYON RD 250
**CITY, ST ZIP:** IRVINE CA 92618
**PHONE:** (949) 793-0040

**APPLICANT:** KB PROCESSING
**ADDRESS:** 37601 EARLY LN
**CITY, ST ZIP:** MURRIETA  CA 92563
**CONTACT:** KRISTI BLANCHARD 951-970-4794
**PHONE:** (951) 970-4794

**CONTRACTOR:**
**ADDRESS:**
**CITY, ST ZIP:**
**CONTR LIC EXP:**
**IRV BUS LIC:**                    **EXP DATE:**

**VALUATION:**        **NO. UNITS:** 1
**STORIES:** 2        **TOT SQ FT** 3,466

**CODE YR:** 2019        **CONST. TYPE**

**USE**    OCC        SQ FT    $ 530,922

---

## PERMIT FEES

| | |
|---|---|
| Automation Fee Inspection | 187.61 |
| SB 1473 Fee - Due to State | 19.80 |
| SB 1473 Fee - Admin | 2.20 |
| Energy Surcharge Insp | 247.12 |
| Issuance Fee Comm | 61.23 |
| Res SFD/Det Condo or Apt. Insp | 1,629.02 |
| State Seismic Res | 69.02 |
| System Dev Charge Circ | 2,654.61 |
| System Dev Charge Non-Circ | 2,654.61 |
| SlurrySeal New Res Max | 50.00 |

**Total Permit Fees: $7,575.22**

**TCA Receipt#**    **Receipt#**
00270511
8680

**PLAN CHECK #:** 00891461-RNP
**PLANNING APPROVAL:KATIE CURTIS** 12/18/2023
**BUILDING APPROVAL:ZHALEH AFRASIABI** 12/15/2022
**PERMIT ISSUED BY:** CHERYL WILLIAMS  1/4/2024
**PERMIT FINALED BY:** DAVID CHAFFE        6/14/24
**ACTION CODE:** 86

**TCA: F/E-A**

---

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 365 days or if work is suspended for 180 days or more. **Residential** permit expiration: addition - 18 months, all others 6 months from date of permit.

**See Inspection Record Card for Smoke Detector and Carbon Monoxide Alarm requirements.**

CONSTRUCTION WORKING HOURS
Weekdays: 7 AM - 7 PM, Saturday:   9 AM - 6 PM
Sunday/Holiday: PROHIBITED

NOTICE: Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

C:\Efor<Reports\permits_2_page_finaled.rpt

 **COMMUNITY DEVELOPMENT**
**PUBLIC WORKS**

# PERMIT DECLARATION
## TO BE COMPLETED BY OWNER-BUILDER

**IMPORTANT!** You are completing this Permit Declaration as the **OWNER-BUILDER** for this project. If you are not the Owner-Builder, please complete the appropriate declaration as the Contractor or Authorized Agent.

| PLAN CHECK/PERMIT NUMBER(S) | |
|---|---|
| 00891461-RNP | |
| PROJECT ADDRESS | |
| ✕✕✕✕✕✕✕✕ | |
| PROJECT DESCRIPTION or NAME/PHASE | TRACT |
| OLIVEWOOD    PH    3 | 19176 |

## OWNER-BUILDER DECLARATION

I hereby affirm under penalty of perjury that I am exempt from Contractors License Law for the following reason (Section 7031.5, Business and Professions Code: Any city or county which requires a permit to construct, alter, improve, demolish, or repair any structure prior to its issuance, also requires the applicant for such permit to file a signed statement that he or she is licensed pursuant to the provisions of the Contractors License Law - Chapter 9 [commencing with Section 7000] of Division 3 of the Business and Professions Code) or that he or she is exempt therefrom and the basis for the alleged exemption. Any violation of Section 7031.5 by any applicant for a permit subjects the applicant to civil penalty of not more than five hundred ($500) dollars.

☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work and structure is not intended or offered for sale. (Section 7044, Business and Professions Code: Contractor's License Law does not apply to an owner of property who builds or improves thereon, and who does such work himself or herself or through his or her own employees, provided that such improvements are not intended or offered for sale. If, however, the building or improvements is sold within one year of completion, the owner/builder will have the burden of proving that he or she did not build or improve for the purpose of sale.)

■ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project (Section 7044, Business License and Professions Code: the Contractor's License Law does not apply to an owner of property who builds or improves thereon, and who contracts for such projects with a contractor's license pursuant to the Contractor's License Law.) Additionally, I affirm that all subcontractors will be licensed in accordance with applicable California Business and Professions Code requirements and that a complete list of subcontractors (Form 43-19) will be provided to the City in accordance Irvine Municipal Code Section 5-9-205.

☐ I am exempt under Section _____ of the Business and Professions Code for this reason:

## OWNER-BUILDER DISCLOSURES

### [NOTICE TO PROPERTY OWNER]

The Owner-Builder Acknowledgment and Verification of Information provided on the following pages is to inform you of your responsibilities and possible risks you may incur by having this permit issued to you as the Owner-Builder. **The City will not issue a building permit until you have read, initialed your understanding of each provision, signed, and returned this form.** Please read and initial each statement to signify you understand and/or verify this information.

# OWNER-BUILDER ACKNOWLEDGMENT AND VERIFICATION

KB 1. I understand a frequent practice of unlicensed persons is to have the property owner obtain an Owner-Builder building permit that erroneously implies that the property owner is providing his or her own labor and material personally. I, as an Owner-Builder, may be held liable and subject to serious financial risk for any injuries sustained by an unlicensed person and his or her employees while working on my property. My homeowner's insurance may not provide coverage for those injuries. I am willfully acting as an Owner-Builder and am aware of the limits of my insurance coverage for injuries to workers on my property.

KB 2. I understand building permits are not required to be signed by property owners unless they are *responsible* for the construction and are not hiring a licensed Contractor to assume this responsibility.

KB 3. I understand as an Owner-Builder I am the responsible party of record on the permit. I understand that I may protect myself from potential financial risk by hiring a licensed Contractor and having the permit filed in his or her name instead of my own.

KB 4. I understand Contractors are required by law to be licensed and bonded in California and to list their license numbers on permits and contracts.

KB 5. I understand if I employ or otherwise engage any persons, other than California licensed Contractors, and the total value of my construction is at least five hundred dollars ($500), including labor and materials, I may be considered an "employer" under state and federal law.

KB 6. I understand if I am considered an "employer" under state and federal law, I must register with the state and federal government, withhold payroll taxes, provide workers' compensation disability insurance, and contribute to unemployment compensation for each "employee." I also understand my failure to abide by these laws may subject me to serious financial risk.

KB 7. I understand under California Contractors' State License Law, an Owner-Builder who builds single-family residential structures cannot legally build them with the intent to offer them for sale, unless *all* work is performed by licensed subcontractors and the number of structures does not exceed four within any calendar year, or all of the work is performed under contract with a licensed general building Contractor.

KB 8. I understand as an Owner-Builder if I sell the property for which this permit is issued, I may be held liable for any financial or personal injuries sustained by any subsequent owner(s) that result from any latent construction defects in the workmanship or materials.

KB 9. I understand I may obtain more information regarding my obligations as an "employer" from the Internal Revenue Service, the United States Small Business Administration, the California Department of Benefit Payments, and the California Division of Industrial Accidents. I also understand I may contact the California Contractors' State License Board (CSLB) at 1-800-321-CSLB (2752) or www.cslb.ca.gov for more information about licensed contractors.

KB 10. I am aware of and consent to an Owner-Builder building permit applied for in my name, and understand that I am the party legally and financially responsible for proposed construction activity at the following address:

NEW    HOME    COMPANY

# OWNER-BUILDER ACKNOWLEDGMENT AND VERIFICATION

KB

11. I agree that, as the party legally and financially responsible for this proposed construction activity, I will abide by all applicable laws and requirements that govern Owner-Builders as well as employers.

KB

12. I agree to notify the issuer of this form immediately of any additions, deletions, or changes to any of the information I have provided on this form. Licensed contractors are regulated by laws designed to protect the public. If you contract with someone who does not have a license, the Contractors' State License Board may be unable to assist you with any financial loss you may sustain as a result of a complaint. Your only remedy against unlicensed Contractors may be in civil court. It is also important for you to understand that if an unlicensed Contractor or employee of that individual or firm is injured while working on your property, you may be held liable for damages. If you obtain a permit as Owner-Builder and wish to hire Contractors, you will be responsible for verifying whether or not those Contractors are properly licensed and the status of their workers' compensation insurance coverage.

**I certify that I have read this application and state that the above information is correct. I agree to comply with all City and county ordinances and state laws relating to building construction, and hereby authorize representatives of this City to enter upon the above mentioned property for inspection purposes.**

eSigned via SeamlessDock in

01-02-2024

Ken-1-73c9e5b5390c42f14f0e541-0c8ee42

**OWNER-BUILDER SIGNATURE**                    **DATE**

Kristi Blanchard

PROPERTY OWNER NAME

Kristi.Blanchard@aol.com

EMAIL



**20216607747** ˆ

**Back to Search Result**

**File Number:**

◂ **20216607747** ▸

**Filed Date:** 6/11/2021

**Business Names**

◂ **4 of 7** ▸

**Name** NEW HOME COMPANY

**Registrants**

◂ **1 of 1** ▸

**Name** TNHC REALTY AND CONSTRUCTION INC.
**Status** ACTIVE

**Documents**

PROOF OF PUBLICATION
FBN STATEMENT
PROOF OF PUBLICATION
FBN STATEMENT

‚ **Click "Add Document" to purchase this record.**
    Frequently Asked Questions

# New Residential Construction Permit



**City of Irvine**
**Building & Safety Division**
**Community Development Dept.**
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501

**ADDRESS:**
**TRACT:** 19176        **LOT:**
**APN:**
**PLANNING AREA:**

**DESCRIPTION OF WORK:**
(e-plan) Olivewood Phase 10 Portola Springs. Tract 19176.
1 Production SFD.

---

**OWNER:** NEW HOME COMPANY
**ADDRESS:** 15231 LAGUNA CANYON RD 250
**CITY, ST ZIP:** IRVINE CA 92618
**PHONE:** (949) 793-0040

**APPLICANT:** KB PROCESSING
**ADDRESS:** 37601 EARLY LN
**CITY, ST ZIP:** MURRIETA CA 92563
**CONTACT:** KRISTI BLANCHARD 951-970-4794
**PHONE:** (951) 970-4794

**CONTRACTOR:**
**ADDRESS:**
**CITY, ST ZIP:**
**CONTR LIC EXP:**
**IRV BUS LIC:**                **EXP DATE:**

**VALUATION:** $ 512,448
**STORIES:** 2                    **NO. UNITS:** 1
**CODE YR:** 2019               **TOT SQ FT:** 3,355

**USE**          **OCC**          **CONST. TYPE**          **SQ FT**

---

**PERMIT FEES**

| | |
|---|---|
| Automation Fee Inspection | 182.40 |
| SB 1473 fee - Due to State | 18.90 |
| SB 1473 fee - Admin | 2.10 |
| Energy Surcharge Insp | 247.12 |
| Issuance Fee Comm | 61.23 |
| Res SFD/Det Condo or Apt. Insp | 1,576.85 |
| State Seismic Res | 66.62 |
| State Dev Charge Circ | 2,562.24 |
| System Dev Charge Non-Circ | 2,562.24 |
| SlurrySeal New Res Max | 65.00 |

**Total Permit Fees: $7,344.70**

**TCA Receipt:**
**Receipt#** 0027444
3
**PLAN CHECK #** 00886803-RNP
**PLANNING APPROVAL:**KATIE CURTIS 3/25/2024
**BUILDING APPROVAL:**ZHALEH AFRASIABI 10/25/2022
**PERMIT ISSUED BY:** MARK MESSERSMITH 4/9/2024
**PERMIT FINALED BY:** DEREK SANDERS 9/20/24
**ACTION CODE:** 86

**TCA:**

---

## LICENSED CONTRACTORS DECLARATION

I hereby affirm under penalty of perjury that I am licensed under the provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

License Class.                    Lic.No.

Date 04/09/2024    Contractor

## OWNER-BUILDER DECLARATION

I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:

☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale.

☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.

☐ I am exempt under Sec. _____ B&PC, for this

Reason _____

Date  4/9/2024        Owner    NEW HOME COMPANY

## WORKERS' COMPENSATION DECLARATION

I hereby affirm under penalty of one of the following declarations:

☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers compensation insurance carrier and policy number are

Carrier

Policy #

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date  4/9/2024        Applicant

**WARNING:** FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

## CONSTRUCTION LENDING AGENCY

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)

Lender's Name

Lender's Address

---

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Signature of Applicant or Agent                    Date

Print Applicant's/Agent's Name

---

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 365 days or if work is suspended for 180 days or more. **Residential permit expiration:** addition - 18 months, all others 6 months from date of permit.

**See Inspection Record Card for Smoke Detector and Carbon Monoxide Alarm requirements.**

CONSTRUCTION WORKING HOURS
Weekdays: 7 AM - 7 PM, Saturday: 9 AM - 6 PM
Sunday/Holiday: PROHIBITED

NOTICE: Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

C:\ESeniReports\permits_2_page_finaled.rpt



COMMUNITY DEVELOPMENT
PUBLIC WORKS

# PERMIT DECLARATION
## TO BE COMPLETED BY OWNER-BUILDER

**IMPORTANT!** You are completing this Permit Declaration as the **OWNER-BUILDER** for this project. If you are not the Owner-Builder, please complete the appropriate declaration as the Contractor or Authorized Agent.

| PLAN CHECK/PERMIT NUMBER(S) | |
|---|---|
| 00886803-RNP | |
| **PROJECT ADDRESS** | |
| XXXXXXXXX | |
| **PROJECT DESCRIPTION or NAME/PHASE** | **TRACT** |
| OLIVEWOOD   PH    10 | 19176 |

## OWNER-BUILDER DECLARATION

I hereby affirm under penalty of perjury that I am exempt from Contractors License Law for the following reason (Section 7031.5, Business and Professions Code: Any city or county which requires a permit to construct, alter, improve, demolish, or repair any structure prior to its issuance, also requires the applicant for such permit to file a signed statement that he or she is licensed pursuant to the provisions of the Contractors License Law - Chapter 9 [commencing with Section 7000] of Division 3 of the Business and Professions Code) or that he or she is exempt therefrom and the basis for the alleged exemption. Any violation of Section 7031.5 by any applicant for a permit subjects the applicant to civil penalty of not more than five hundred ($500) dollars.

☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work and structure is not intended or offered for sale. (Section 7044, Business and Professions Code: Contractor's License Law does not apply to an owner of property who builds or improves thereon, and who does such work himself or herself or through his or her own employees, provided that such improvements are not intended or offered for sale. If, however, the building or improvements is sold within one year of completion, the owner/builder will have the burden of proving that he or she did not build or improve for the purpose of sale.)

☒ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project (Section 7044, Business License and Professions Code: the Contractor's License Law does not apply to an owner of property who builds or improves thereon, and who contracts for such projects with a contractor's license pursuant to the Contractor's License Law.) Additionally, I affirm that all subcontractors will be licensed in accordance with applicable California Business and Professions Code requirements and that a complete list of subcontractors (Form 43-19) will be provided to the City in accordance Irvine Municipal Code Section 5-9-205.

☐ I am exempt under Section _____ of the Business and Professions Code for this reason:

## OWNER-BUILDER DISCLOSURES

### [NOTICE TO PROPERTY OWNER]

The Owner-Builder Acknowledgment and Verification of Information provided on the following pages is to inform you of your responsibilities and possible risks you may incur by having this permit issued to you as the Owner-Builder. **The City will not issue a building permit until you have read, initialed your understanding of each provision, signed, and returned this form.** Please read and initial each statement to signify you understand and/or verify this information.

# OWNER-BUILDER ACKNOWLEDGMENT AND VERIFICATION

KB

1. I understand a frequent practice of unlicensed persons is to have the property owner obtain an Owner-Builder building permit that erroneously implies that the property owner is providing his or her own labor and material personally. I, as an Owner-Builder, may be held liable and subject to serious financial risk for any injuries sustained by an unlicensed person and his or her employees while working on my property. My homeowner's insurance may not provide coverage for those injuries. I am willfully acting as an Owner-Builder and am aware of the limits of my insurance coverage for injuries to workers on my property.

KB

2. I understand building permits are not required to be signed by property owners unless they are *responsible* for the construction and are not hiring a licensed Contractor to assume this responsibility.

KB

3. I understand as an Owner-Builder I am the responsible party of record on the permit. I understand that I may protect myself from potential financial risk by hiring a licensed Contractor and having the permit filed in his or her name instead of my own.

KB

4. I understand Contractors are required by law to be licensed and bonded in California and to list their license numbers on permits and contracts.

KB

5. I understand if I employ or otherwise engage any persons, other than California licensed Contractors, and the total value of my construction is at least five hundred dollars ($500), including labor and materials, I may be considered an "employer" under state and federal law.

KB

6. I understand if I am considered an "employer" under state and federal law, I must register with the state and federal government, withhold payroll taxes, provide workers' compensation disability insurance, and contribute to unemployment compensation for each "employee." I also understand my failure to abide by these laws may subject me to serious financial risk.

KB

7. I understand under California Contractors' State License Law, an Owner-Builder who builds single-family residential structures cannot legally build them with the intent to offer them for sale, unless *all* work is performed by licensed subcontractors and the number of structures does not exceed four within any calendar year, or all of the work is performed under contract with a licensed general building Contractor.

KB

8. I understand as an Owner-Builder if I sell the property for which this permit is issued, I may be held liable for any financial or personal injuries sustained by any subsequent owner(s) that result from any latent construction defects in the workmanship or materials.

KB

9. I understand I may obtain more information regarding my obligations as an "employer" from the Internal Revenue Service, the United States Small Business Administration, the California Department of Benefit Payments, and the California Division of Industrial Accidents. I also understand I may contact the California Contractors' State License Board (CSLB) at 1-800-321-CSLB (2752) or www.cslb.ca.gov for more information about licensed contractors.

KB

10. I am aware of and consent to an Owner-Builder building permit applied for in my name, and understand that I am the party legally and financially responsible for proposed construction activity at the following address:

NEW    HOME    COMPANY

# OWNER-BUILDER ACKNOWLEDGMENT AND VERIFICATION

---

KB

11. I agree that, as the party legally and financially responsible for this proposed construction activity, I will abide by all applicable laws and requirements that govern Owner-Builders as well as employers.

KB

12. I agree to notify the issuer of this form immediately of any additions, deletions, or changes to any of the information I have provided on this form. Licensed contractors are regulated by laws designed to protect the public. If you contract with someone who does not have a license, the Contractors' State License Board may be unable to assist you with any financial loss you may sustain as a result of a complaint. Your only remedy against unlicensed Contractors may be in civil court. It is also important for you to understand that if an unlicensed Contractor or employee of that individual or firm is injured while working on your property, you may be held liable for damages. If you obtain a permit as Owner-Builder and wish to hire Contractors, you will be responsible for verifying whether or not those Contractors are properly licensed and the status of their workers' compensation insurance coverage.

---

I certify that I have read this application and state that the above information is correct. I agree to comply with all City and county ordinances and state laws relating to building construction, and hereby authorize representatives of this City to enter upon the above mentioned property for inspection purposes.

03-29-2024

OWNER-BUILDER SIGNATURE                    DATE

Kristi Blanchard

PROPERTY OWNER NAME

Kristi.Blanchard@aol.com

EMAIL

Jeffrey Gu  ✖✖✖✖✖✖✖✖✖✖✖▶

## Irvine PD July 30 Phone Call

**Jeffrey Gu** <✖✖✖✖✖✖✖✖✖✖✖>                    Thu, Jul 31, 2025 at 9:58 AM
To: "Melching, Jeffrey" <jmelching@rutan.com>
Cc: <jsanders@rutan.com>

Hello Mr. Melching,

I received a call from an officer from the Irvine Police Department on July 30 at 8:47pm (duration 1 min, 54 sec) referencing a conversation I had earlier that day with a City Council staff member (Ms. Trinity ...) who took a call I made to Councilman Go's office. The officer vaguely stated that I had allegedly "implied someone should hurt themselves," but did not provide any specific quotation or context after I asked for it. I found this escalation both confusing and concerning.

Before I proceed with any public records requests or further correspondence, I'd like to ask directly, were you or your office involved in any way with this call or the decision to contact law enforcement?

This appears to be a serious overreaction to a conversation between a resident and the City Council's office, and I'm trying to better understand how this came to pass. I would also like to note that the litigation hold from earlier should cover communications about this incident, as the information I was discussing with the City Council's office employee had to do with CBO Jesse Cardoza and the Building Department. Moreover, since the PD phone call ostensibly referenced this conversation, this phone call and all related material should be covered, too.


Jeffrey Gu





**Jess Sanders**
E-mail: jmelching@rutan.com

August 5, 2025

**VIA E-MAIL ONLY**

Jeffrey Gu


Re:     <u>Demand to Cease and Desist Direct Contact with Irvine City Staff and Offices</u>

Dear Mr. Gu,

This office serves in the capacity of City Attorney for the City of Irvine ("City"). My office has been advised that your recent actions and contact with City staff have caused a significant disruption to the operations of the City and have raised concerns regarding the safety and wellbeing of City staff.

Beginning on or around June 1, 2025, you have submitted over 24 separate public records requests pursuant to the California Public Records Act (Gov. Code, § 7920.000 et seq.) (CPRA), and have been in persistent contact with the City's Community Development Department, Human Resources Department, City Clerk's Department, and Councilmember Go's office, sometimes calling as many as three to four times per day. You have contacted various staff members with a deluge of inquiries in a volume that has materially impaired the City's ability to conduct its business efficiently.

In addition, your conduct regarding a member of Councilmember Go's staff, Ms. Trinity Pham is of particular concern. Your repeated calls and attempts to contact Ms. Pham, and requests for her personal contact information are inappropriate and not related to any legitimate request for service or information from the City. It has become necessary for the City and the Irvine Police Department (IPD) to take precautionary matters to preserve Ms. Pham's safety and wellbeing.

While the City is committed to transparency and compliance with all applicable laws, your actions to date have escalated beyond reasonable requests for information or service. This demand to cease and desist is sent to you to both preserve Ms. Pham's safety and prevent further disruption to City operations.

Accordingly, we demand that you **immediately cease all direct contact with City staff and offices**, except for attending duly noticed public meetings conducted by the City and in cases of emergency where calls for service may be directed to the Irvine Police Department. Any further communications regarding any of your CPRA requests or other City-related matters should be directed via email to the City Attorney's Office, and specifically to myself at jsanders@rutan.com.

Ru t an  &  Tu c k er , LL P  |  18 57 5  Ja mb or ee   Road ,  9th  Fl oo r
I r vi ne ,  CA 92 61 2  |  71 4 - 64 1- 51 00  |  Fa x  71 4 - 546 -90 35
Or an ge   Coun ty  |  Pa lo  Alto  |  San  Fr an ci sco  |  Sc ot ts da le  |  www. ru ta n. co m



Jeffrey Gu
August 5, 2025
Page 2


As of the date of this correspondence, the City has expended significant amounts of staff and City Attorney time, as well as City funds and resources to manage your numerous and ongoing inquiries. This imposes an unreasonable burden on City staff and resources, which are for the benefit of the people of the City as a whole. To the extent the answers to any of your inquiries are contained within documents produced to you in response to your CPRA requests, any responsive, non-exempt records will be provided in compliance with the CPRA. However, in an effort to conserve City resources moving forward, the City will not be separately inquiring and responding to your inquiries outside of the scope of what is required by the CPRA. These measures are not taken to single you out or deny you any rights to access City documents or meetings provided by applicable law, but rather to efficiently manage the limited resources available to serve all City residents.

Any direct correspondence to City staff will be forwarded to myself for review and response as appropriate. Unless deemed necessary or appropriate, you will not receive further direct responses from City staff in response to your inquiries or requests. To the extent any of your communications require a response, you will receive responses from our office as appropriate, but no more than once every two weeks. This timeframe does not apply to responding to your CPRA requests in compliance with the timeframes provided therein.

Failure to comply with this demand may result in further legal action to protect the safety and operations of the City and its employees. We hope to resolve this matter amicably and without the need for further intervention.

Thank you for your immediate attention to this matter.

Very truly yours,


RUTAN & TUCKER, LLP


Jess Sanders

JS.js




## Demand to Cease Contact with City of Irvine Staff

**Jeffrey Gu <███████████>**                                     Thu, Aug 7, 2025 at 1:01 PM
To: "Sanders, Jessica" <jsanders@rutan.com>
Cc: William Go Web <WilliamGo@cityofirvine.org>, Mike Carroll Web <MikeCarroll@cityofirvine.org>, Melinda Liu Web <MelindaLiu@cityofirvine.org>, Betty Martinez Franco Web <bettymartinez@cityofirvine.org>, Kathleen Treseder Web <KathleenTreseder@cityofirvine.org>, jmelching@rutan.com, LarryAgran@cityofirvine.org, cm@cityofirvine.org

Hi Ms. Sanders,

I am still waiting on your and the City's response to the 4 points from my last email and my email dated 7/31 to you and Mr. Melching, which has gone unanswered and unacknowledged for 5 business days.

Please again note from my last email: *repeatedly asking me to route inquiries to generally unresponsive individuals such as yourself and Mr. Melching could be construed as acts of bad faith.*

-Jeffrey

On Tue, Aug 5, 2025 at 12:57 PM Jeffrey Gu <███████████> wrote:
> Hi Ms. Sanders,
>
> In your letter, you make certain claims, and I would like to ask you to detail certain ones.
>
> 1) Could you please name the date, time, and individual I supposedly contacted for Ms. Pham's contact information?
> 2) Could you please name the date and times on which I supposedly tried to contact Ms. Pham again?
> 3) Could you please provide the factual basis for the City and the Irvine Police Department's decision to "take precautionary measures to preserve Ms. Pham's safety and well-being" in response to my alleged actions?
> 4) Which individuals or City departments were notified by you, your office, or the City to take "precautionary measures to preserve Ms. Pham's safety and well-being" as a result of my alleged actions?
>
> Given the mysterious Irvine Police Department phone call from an unknown number I received on 7/30 at 8:47pm (approximately 4 and a half hours after I called Councilman Go's office and ended up speaking with Ms. Pham), I specifically avoided calling the City Council's office again after that point, due to the fact that it seemed to signify I would be treated with undue hostility. As such, some of these claims are news to me. To be clear, while I did indeed contact the City of Irvine HR department on 7/31 at 12:22pm (a call lasting 12 minutes) to confirm Ms. Pham's full name and title (which the individual on the phone said is "Supervising Principal Council Executive Assistant" and not "Marketing Communications Manager" as it states on her LinkedIn), I did not attempt to gain any other information about her during that call. To note, it would've been superfluous for me to ask for her contact info, since calling Councilman Go's office appears to be one manner of reaching her. Lastly, when I called the general City of Irvine number on 8/1, someone from the HR department informed me that they could not even release the title of Kalvin Alvarez to me, so I assume the information you may provide, if it exists, will be dated as 7/31.
>
> In addition to the letter you just emailed me, I am attaching a copy of an email I sent last Thursday, which as of yet, 3 business days later, remains unanswered by either you or Mr. Melching. While I understand that the City finds my communications and research with the Building & Safety Department to be sensitive for some reason, repeatedly asking me to route inquiries to generally unresponsive individuals such as yourself and Mr. Melching could be construed as acts of bad faith.
>
> I await your response to the 4 matters above.
>
> -Jeffrey
>
> On Tue, Aug 5, 2025 at 10:15 AM Sanders, Jessica <jsanders@rutan.com> wrote:

Good morning Mr. Gu,

Please find the attached letter related to your recent contact with the City of Irvine.  As mentioned therein, please direct all correspondence related to City inquiries and records requests to me.  I will coordinate with the City to ensure your records requests are processed in the manner required by law.

With regard to your email to Mr. Floyd, the City has received your email.  To the extent any of the documents provided in response to your records requests contain the information you seek, those documents will be provided where required by the Public Records Act.

Thank you

**Jess Sanders**

18575 Jamboree Road, 9th Floor | Irvine, CA 92612
O. (714) 641-5100 | D. (714) 662-4617

jsanders@rutan.com | www.rutan.com



Privileged And Confidential Communication.
This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited.



Jeffrey Gu <✕✕✕✕✕✕✕✕>


## Notice of Unlicensed Operator in the City of Irvine

**Business License** <BusinessLicense@cityofirvine.org>                    Thu, Jul 31, 2025 at 2:34 PM
To: Jeffrey Gu <✕✕✕✕✕✕✕✕>

Hi Jeffrey,


Thank you for contacting the City of Irvine, Business License Department with your concern.

The Business License Department will be mailing out a compliance letter to The New Home Company Southern California, LLC.

You can also contact Code Enforcement at CodeEnforcement@cityofirvine.org to express your concern.


Have a nice day,


**City of Irvine, Business Licensing**

**Community Development**

**949-724-7128**

---

**From:** Jeffrey Gu <✕✕✕✕✕✕✕✕>
**Sent:** Wednesday, July 30, 2025 12:00 PM
**To:** Business License <businesslicense@cityofirvine.org>
**Subject:** Notice of Unlicensed Operator in the City of Irvine


**CAUTION:** EXTERNAL EMAIL


Hello,


The New Home Company Southern California LLC appears to operate in Irvine without a business license, perhaps for its entire existence in California (from 2009).

Though the parent and sister companies appear to be registered, this specific entity is not, despite selling homes and retaining officers and employees in the city.


Please notify me if the city has any affirmative findings and takes any enforcement actions.


-Jeffrey

                                                         Jeffrey Gu - 

---

## BUILDING PERMIT - PERMIT #00920236-RBP - ADDRESS: 

---

**Cheryl Charters - (Contractor)** <CCharters@cityofirvine.org>              Mon, Aug 4, 2025 at 1:22 PM
To: Jeffrey Gu >

Kristi Blanchard is the authorized agent for New Home Company and able to sign on their behalf.



**Cheryl Charters** | Contract Permit Tech
Community Development
949-724-6321 | 1 Civic Center Plaza, Irvine, CA 92606

ccharters@cityofirvine.org | cityofirvine.org

---

**From:** Jeffrey Gu >
**Sent:** Monday, August 4, 2025 9:51 AM
**To:** Cheryl Charters - (Contractor) <CCharters@cityofirvine.org>
**Subject:** Re: BUILDING PERMIT - PERMIT #00920236-RBP - ADDRESS: ▨▨▨▨▨▨

**CAUTION:** EXTERNAL EMAIL

Hi Cheryl,

I understand that you sent me documents by phase, and I can clearly see documents pertaining to "New Home Co" besides the declaration documents. However, the declaration documents are signed by Kristi Blanchard of KB Processing, not by the owner-builder themselves.

In the one phase 3 permit I have (for ▨▨▨▨▨▨ I see "New Home Company" being named as the owner-builder. Does this mean that "New Home Company" was the supposed owner-builder in the declaration?

-Jeffrey

On Mon, Aug 4, 2025 at 12:17 PM Jeffrey Gu <✕✕✕✕✕✕✕> wrote:

Thank you, Cheryl, this is all I needed regarding these documents.

On Mon, Aug 4, 2025 at 12:07 PM Cheryl Charters - (Contractor) <CCharters@cityofirvine.org> wrote:



**Cheryl Charters** | Contract Permit Tech
Community Development
949-724-6321 | 1 Civic Center Plaza, Irvine, CA 92606

*ccharters@cityofirvine.org | cityofirvine.org*

---

**From:** Jeffrey Gu  ✕✕✕✕✕✕✕>
**Sent:** Monday, August 4, 2025 8:48 AM
**To:** Cheryl Charters - (Contractor) <CCharters@cityofirvine.org>
**Subject:** Re: BUILDING PERMIT - PERMIT #00920236-RBP - ADDRESS:✕✕✕✕✕✕✕

**CAUTION:** EXTERNAL EMAIL

I have a quick question, Cheryl. Are all the declarations for the Olivewood phases easily accessible by you? I'd appreciate having the declarations for all the phases.

On Mon, Aug 4, 2025 at 11:45 AM Jeffrey Gu <✕✕✕✕✕✕✕> wrote:

Thank you very much, Cheryl.

On Mon, Aug 4, 2025 at 10:47 AM Cheryl Charters - (Contractor) <CCharters@cityofirvine.org> wrote:

**Cheryl Charters** | Contract Permit Tech
Community Development
949-724-6321 | 1 Civic Center Plaza, Irvine, CA 92606

*ccharters@cityofirvine.org | cityofirvine.org*



---

**From:** Jeffrey Gu ▓▓▓▓▓▓▓▓>
**Sent:** Thursday, July 31, 2025 2:12 PM
**To:** Cheryl Charters - (Contractor) <CCharters@cityofirvine.org>
**Subject:** Re: BUILDING PERMIT - PERMIT #00920236-RBP - ADDRESS:▓▓▓▓▓▓▓

**CAUTION:** EXTERNAL EMAIL

Hi Cheryl,

Could you please send me the owner builder declaration for this permit?

-Jeffrey

On Wed, Jul 30, 2025 at 12:14 PM Cheryl Charters - (Contractor) <CCharters@cityofirvine.org> wrote:



**Cheryl Charters** | Contract Permit Tech
Community Development
949-724-6321 | 1 Civic Center Plaza, Irvine, CA 92606

ccharters@cityofirvine.org | cityofirvine.org

# Exhibit 221



**Irvine**
2050 Main Street
Suite 1000
Irvine, CA  92614

(949) 851-2424 Tel
(949) 851-0152 Fax

**Writer's Direct Dial:**
(949) 798-2137
**Writer's E-mail:**
skingston@fisherphillips.com

August 11, 2025

**Via E-Mail and FedEx**

Jeffrey Gu (jeffwgu@gmail.com)
Yang Gu (yang.x.gu@gmail.com)

129 Oakstone
Irvine, CA  92618

Re:    Cease and Desist / Bert L. Howe & Associates, Inc.

Dear Jeffrey Gu and Yang Gu:

This firm represents Bert L. Howe & Associates, Inc.  ("BHA" or the "Company"). The purpose of this correspondence is to demand that you **immediately cease and desist** your attempts to enter the Company's facilities, as well as your ongoing efforts to harass and intimidate Company employees.

Our office understands that BHA was retained as defense experts on behalf of the New Home Company ("NHC")  in single-home construction claims relating to a property located as 129 Oakstone, Irvine, California ("Subject Property")("Construction Claims").  The complaints were drafted by Jeffrey Gu.  On April 22, 2025, BHA employee and licensed general contractor Chris Lopez facilitated a visual inspection of the Subject Property.

Since BHA's retention as experts in the Construction Claims in April 2025, you have engaged in months of harassing and inappropriate conduct toward BHA, as well as its employees. Your harassing conduct and attempted intimidation includes, but is not limited to: two inquiries on May 17, 2025 from Jeffrey Gu to BHA's email account seeking California State Licensing Board (CSLB) license status, followed by complaints initiated by Jeffrey Gu with the bonding companies for BHA employees Chris Lopez, Bradley W. Hughes, and David L. Suggs, which lacked any semblance of validity and were summarily closed on June 3, 2025, one day after the initial complaint was received by Mr. Lopez.  Moreover, on June 5,2025, BHA received a letter in response to a complaint initiated by Jeffrey Gu with the California Board for Professional Engineers, Land Surveyors, and Geologists. On June 17, 2025, an almost identical letter was received by BHA employee Mark Chapman. Importantly, none of Messrs. Hughes, Suggs, or Chapman had any interaction or dealings relating to the Construction Claims or 129 Oakstone. All matters were found to be deficient and were administratively closed by the respective boards.

**Fisher & Phillips LLP**

Atlanta · Baltimore · Boston · Charlotte · Chicago · Cleveland · Columbia · Columbus · Dallas · Denver · Detroit · Fort Lauderdale · Gulfport · Houston
ne · Kansas City · Las Vegas · Los Angeles · Louisville · McLean · Memphis · Minneapolis · Nashville · New Jersey · New Orleans · New York · Orlando · Philadelp
hoenix · Pittsburgh · Portland, ME · Portland, OR · Sacramento · Salt Lake City · San Diego · San Francisco · Seattle · Tampa · Washington, DC · Woodland Hil

Jeffrey Gu
Yang Gu
August 11, 2025
Page 2


BHA views the foregoing conduct as attempts to harass and intimidate BHA and its employees and attempts to interfere with BHA's business relationships with its employees, clients and state licensing boards.

Most recently, on August 5, 2025, Mr. Yang Gu attempted to enter the Company's corporate headquarters located in Anaheim Hills, California, by attempting to defeat the key fob security features.  Video footage depicts Yang Gu parking more than 300 feet from the entrance of BHA's headquarters, approaching the front door, attempting to access the facility, then quickly returning to his vehicle when unsuccessful.  Of note, Mr. Gu was wearing a heavy coat with a hoodie cap, at approximately 3:00 p.m. on a 90 degree Fahrenheit day.  The vehicle Yang Gu was driving was consistent with the vehicle he drove to the April 22, 2025 site inspection.

BHA is taking preventive measures in response to the foregoing conduct.  The Company is working with local authorities, having filed a police report, and is working through our office to obtain a restraining order.

Your harassing communications are unprofessional, unwelcome, and may subject you to serious legal liability for, among other things, defamation and tortious interference with business relationships.  Moreover, the repeated unmeritorious claims are clearly intended to intimidate, harass, annoy, or alarm, and do not serve any legitimate purpose. Such communications violate California laws prohibiting intimidation and harassment and can **only** be viewed as attempts to adversely impact the Company's reputation and employment relationships. They will not be tolerated.  Moreover, each of the above may constitute attempts to prevent or dissuade BHA employees from attending or testifying in pending litigation, a violation of the California Penal Code.

Accordingly, in the interest of avoiding swift litigation, we demand that you **immediately cease and desist** all attempts to enter BHA's facilities and contact of any nature with any Company employee, officer, director, or representative. In the event you make, or attempt to make, any further contact with any Company employee, officer, director, or representative, the Company, and/or these representatives individually, may pursue all available civil and criminal remedies against you to prohibit further contact.

Further, the Company forewarns that you not respond to the instant letter by making any disparaging and defamatory statements about the Company and its business practices to any third party, including the Company's customers, bonding companies, or state licensing boards. Should you do so, a civil action seeking all available relief, including monetary damages and injunctive relief, will be filed against you.

You are not welcome at the Company's headquarters in Anaheim Hills, CA, or any other Company facility, regardless of location. In the event that you are found on the premises of any Company facility, the Company will take all necessary action to have you immediately removed from the premises and will pursue all civil and criminal avenues available to prevent any further trespassing on Company property by you.

In short, the Company need not and will not stand idly by while you actively engage in harassing and disruptive conduct. To this end, the Company, through its leadership, will continue

Jeffrey Gu
Yang Gu
August 11, 2025
Page 3

to closely monitor this situation. Should the Company have reason to believe at any point its rights and/or obligations have been violated, the Company will not hesitate to take immediate legal action against you and pursue all available civil and criminal relief to which it may be entitled. Importantly, if any such further action is required, the Company will seek to recover all damages, costs, and attorneys' fees incurred in pursuing such relief against you. Individuals who are employed by or affiliated with the Company and who have been or who will be threatened or harassed by you may pursue civil and/or criminal relief against you in their own individual capacity.

This letter is not, and cannot be construed as, a waiver or relinquishment of the Company's right to bring claims and/or charges against you or any other person or entity for any unlawful conduct. **Please direct any communications regarding this matter, either directly or through any legal representative you may have retained, to me.**

Sincerely,

SEAN T. KINGSTON
For FISHER & PHILLIPS LLP

# Exhibit 222



City Clerk's Office
City of Irvine, One Civic Center Plaza, P.O. Box 19575, Irvine, California 92623-9575    (949) 724-6205

August 13, 2025

Jeffrey Gu
746 Country Club Lane
Fond du Lac, WI 54935

RE:  CLAIM FOR DAMAGES:  Ge, Di Lan (Jeffrey Gu)
     FILE NUMBER:          GHC0086958
     DATE OF INCIDENT:     07/30/2025

Dear Jeffrey Gu:

Notice is hereby given that the claim, which you presented to the City of Irvine on August 11, 2025, was rejected on August 13, 2025.

## WARNING

Subject to certain exceptions, you have only six (6) months from the date of this notice was personally delivered or deposited in the mail to file an action in the state court based upon a claim under state law. See Government Code Section 945.6. This limitation does not apply to actions filed under the Federal Civil Rights Act.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately. If you have any questions, please contact Stephanie Reed, Claims Adjuster, at George Hills Company, Inc. by telephone at 909-806-4006 or by email at Stephanie.Reed@georgehills.com.

Sincerely,

Carl Petersen, MPA, CMC
City Clerk

CP:hc

cc:  Risk Management Administrator
     City Attorney
     George Hills Company (via e-mail)
     Director of Community Development

# Exhibit 223



Jeffrey Gu <jeffwgu@gmail.com>

---

## City Attorney Cease-and-Desist and First Amendment Concerns

---

**Jeffrey Gu** <jeffwgu@gmail.com>                                                Fri, Aug 22, 2025 at 5:47 PM
To: LarryAgran@cityofirvine.org, cm@cityofirvine.org

Hi Mr. Agran and Mr. Crumby,

I'm just confirming that it's been 2 business days since I sent the previous email regarding potential civil rights violations with no responses or acknowledgements from either of you.

-Jeffrey

On Wed, Aug 20, 2025 at 5:39 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:

Hello Mr. Agran and Mr. Crumby,

I'm writing to express concern about the cease-and-desist letter issued to me on August 5, 2025, by City Attorney Jessica Sanders. The letter instructed me to refrain from direct communication with City staff, and to route all further correspondence exclusively through her office. I have attached the letter for reference.

Because this directive was presented as an official position of the City, I would like to confirm whether it reflects the City's stance towards my inquiries. Given that the letter touches on issues of protected speech and access to public officials, I thought it appropriate to ensure you're both informed.

At this point, I'm simply looking to clarify the City's position so I can proceed with confidence that my conduct aligns with expectations and legal norms. If you believe this matter has been appropriately handled, no further response is necessary.

Sincerely,

Jeffrey Gu

# Exhibit 224



## Builder at Olivewood

**Ellis Calvillo** <ecalvillo@keystonepacific.com>                    Thu, Aug 21, 2025 at 6:01 PM
To: Jeffrey Gu <jeffwgu@gmail.com>

Hello Jeffrey,


Our records indicate that their legal name is "The New Home Company Southern California LLC".
Please let me know if there is anything else I can clarify.


Regards,


**Ellis Calvillo, CMCA, AMS | General Manager of Portola Springs**

**Keystone**


direct: 949.838.3252 | main: 949.833.2600

240 Commerce, Suite 200 | Irvine, CA 92602

kppm.com| facebook | LinkedIn | ecalvillo@keystonepacific.com

**We'd love your feedback!** Let us know how we're doing.





**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Thursday, August 21, 2025 1:08 PM
**To:** Ellis Calvillo <ecalvillo@keystonepacific.com>
**Subject:** Builder at Olivewood


Hi Mr. Calvillo,

I was hoping the HOA could clarify some information on the Olivewood neighborhood. Does Keystone keep information about the builder on file, and if so, what exact name entity does Keystone have for the Olivewood neighborhood?

I believe it could be one of the following:

THE NEW HOME COMPANY INC.

THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC

TNHC REALTY AND CONSTRUCTION INC.

-Jeffrey

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

# Exhibit 225



2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
p (480) 571-1717
f (949) 627-2611
www.phlklaw.com

Rae Richardson, Attorney
rrichardson@phlklaw.com

August 22, 2025

**CEASE AND DESIST**

**VIA EMAIL & U.S. MAIL**

Jeffrey Gu
129 Oakstone
Irvine, CA  92618
jeffwgu@gmail.com

Re:    **Gu, Jeffrey v. The New Home Company**
**Immediate Cease and Desist-Willful Misuse of Confusingly Similar Entity Name;**
**False Designation; Unfair Competition; Deceptive Trade Practices (Colorado)**
PHLK File No.:        0066-2818

Dear Mr. Gu:

As you know, our office is outside counsel for The New Home Company.  We write regarding your recent formation and/or use in Colorado of "The New Home Company Inc" (the "Offending Entity"), a name that is confusingly similar to the trade name our company has used continuously in commerce since 2016, and nearly identical to our federally registered trademark, The New Home Company (U.S. Reg. No. 5,226,028; Serial No. 86948941).  Your conduct appears to be part of your ongoing, calculated efforts to harass and interfere with The New Home Company's ("New Home") operations.  Moreover, it is clear that your registration and/or use of the Offending Entity is intended to deceive and confuse the public.  Your conduct appears to violate at least five federal and state laws:

1.    <u>False designation / unfair competition (Lanham Act § 43(a))</u>. Using a word, term, or name in commerce that is likely to cause confusion as to affiliation, connection, or association, or as to the origin, sponsorship, or approval of commercial activities, is unlawful. 15 U.S.C. § 1125(a)(1).

2.    <u>Registered mark infringement (Lanham Act § 32)</u>. Because the Offending Entity incorporates, or trades on, New Home's registered mark, your conduct violates 15 U.S.C. § 1114(1)(a).  Injunctions are expressly authorized by 15 U.S.C. § 1116(a), and courts apply a presumption of irreparable harm upon a showing of likely success on the merits.



Page 2

3.      Colorado Consumer Protection Act (CCPA). Your conduct violates C.R.S. § 6-1-105(1) (deceptive trade practices), including, without limitation, provisions prohibiting passing off, and causing likelihood of confusion or misunderstanding as to source, sponsorship, approval, or affiliation.  Remedies include damages, treble damages for willful bad faith conduct, and attorneys' fees. C.R.S. § 6-1-113.

4.      Colorado common law. Unregistered marks and trade names are protected where there is a likelihood of confusion.  Beer Nuts, Inc. v. Clover Club Foods Co., 711 F.2d 934, 941 (10th Cir. 1983) (stating, "One who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived.  All doubts must be resolved against him."); see also King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1089–92 (10th Cir. 1999).

5.      Colorado Harassment Statute. In light of your documented campaign to harass New Home, your actions related to the Offending Entity may meet the elements of C.R.S. § 18-9-111.

As such, New Home demands that you immediately cease and desist from any use of the Offending Entity name and any variation of our trade name, including punctuation, spacing, and corporate suffix variations, in any channel (corporate records, websites, email, invoices, ads, social media, directories, and Secretary of State filings).

You are hereby placed on notice that any continued use of the Offending Entity name will be considered willful infringement and may result in immediate legal action without further warning.  Nothing herein shall be deemed a waiver of any kind whatsoever; to the contrary, New Home expressly reserves all rights, claims, and remedies in connection with this matter.

TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.

Sincerely,

Rae Richardson

RR

cc:     Di Lan Ge
        Xian Feng Gu
        Melanie S. Woodfin, Esq.
        Sam C. Plante, Esq.
        Janelle Launi, Paralegal

# Exhibit 226



**PHILADELPHIA**
INSURANCE COMPANIES

A Member of the Tokio Marine Group

**Surety Claims Department**
P.O. Box 3636, Bala Cynwyd, Pennsylvania 19004
800.765.9749

August 22, 2025

***Via Email and US Mail, Certified Return Receipt***

Jeffrey Gu
746 Country Club Lane
Fond du Lac, Wisconsin 54935
Email: jeffwgu+1@gmail.com
       jeffwgu@gmail.com

|  |  |  |
|---|---|---|
| DOI File No. | : | CSB-8665853 |
| Regarding | : | Jeffrey Gu |
|  |  | 746 Country Club Lane |
|  |  | Fond du Lac, Wisconsin 54935 |
| Surety | : | Philadelphia Indemnity Insurance Company |
|  |  | NAIC 18058 |
| Bond No. | : | PB02497501181-01 |
| Principal | : | Patrick Willis Dibble |
| Claim No. | : | PHYL25061720436 |
| Complainant | : | Jeffrey Gu |

Dear Jeffrey Gu:

By letter dated August 1, 2025, the California Department of Insurance, Consumer Services and Market Conduct Branch ("Department of Insurance") advised the Philadelphia Indemnity Insurance Company ("Philadelphia") of a complaint relating to the claim submitted by Jeffrey Gu ("Complainant") under California Contractor's Bond of Qualifying Individual Number PB02497501181-01 ("Bond") naming Patrick Willis Dibble ("Principal") as Principal.

The Department of Insurance has requested Philadelphia reevaluate the problem and in no later than twenty-one (21) days inform the Complainant in writing of the results.

Philadelphia provides the following response to Complainant regarding your request for assistance.

On June 23, 2025, Philadelphia's Surety Claims Department ("Surety Claims") received an email from a division of Philadelphia's Underwriting Department ("Underwriting") located in Leawood, Kansas advising of a claim received via mail. The claim submission consisted of a cover letter and invoice only. The submission was not time or date stamped and did not include a scan of the envelope in which the submission was mailed. A copy of the foregoing is attached hereto for your reference as ***Exhibit A***.

Upon receipt of the email from Underwriting, Surety Claims opened a claim by Di Lan Ge against the above-referenced Bond. By email dated June 23, 2025, Surety Claims communicated with Underwriting regarding the submission to confirm the manner in which the submission was received and to confirm the totality of the submission based on its brevity. On June 24, 2025, the claim submission was transmitted via email to the responsible claims examiner, Douglas Aumann ("Examiner"), and the claim file was assigned to the Examiner for further handling.

On June 25, 2025, Philadelphia acknowledged the claim via US mail at the 129 Oakstone Irvine, California 92618 ("Project") mailing address which appeared on both the cover letter and invoice. The Examiner sent the acknowledgment letter to Di Lan Ge having no other point of contact based on the information available to Philadelphia at that time. A copy of the Surety's claim acknowledgment letter is attached hereto as ***Exhibit B***.

As set forth above, at the time of mailing the claim acknowledgment letter, Surety Claims had no specific knowledge that its claim acknowledgment letter was potentially untimely. Surety Claims received the claim submission from Underwriting on June 23, 2025, and mailed the acknowledgment letter to the only point of contact which the claim submission contained on June 25, 2025. The claim submission did not contain a phone number, an email address, or any other means of communicating with Claimant or Complainant in a more expeditious manner than that which was carried out by the Examiner on June 25, 2025.

By email to Examiner dated July 8, 2025, Complainant advised Philadelphia that pursuant to a FedEx delivery confirmation bearing tracking no. 881471869287, Complainant's claim submission was delivered to Philadelphia's Sioux Falls, South Dakota address on or about May 27, 2025. As such, Complainant asserted that Philadelphia's response was "much later" than the statutorily required response time. Complainant also alleged that Philadelphia's response contained factual inaccuracies stating that the claim submission was dated June 23, 2025, rather than May 23, 2025. Complainant alleged that said inaccuracies could be interpreted as an attempt to bias the claim in favor of the Principal.

Complainant's email of July 8, 2025, contained several attachments which were not transmitted to Surety Claims as part of the initial claim submission, including, but not limited to, a cover letter, an invoice, a copy of Philadelphia's June 25, 2025, letter mailed to the Project address acknowledging Philadelphia's receipt of the claim, a letter from Complainant to the New Home Company, Inc. of Irvine, California ("Seller"), an acknowledgment letter dated April 24, 2025, from Plante Huguenin Lebovic Kahn LLP [1] ("PHLK") to Complainant, a May 22, 2025, Offer of Performance letter from PHLK to Complainant, an executed copy of the Purchase Agreement and Escrow Instructions contract ("Purchase Agreement" or "Contract"), a Tempered Glass, Base Shoe System estimate prepared for the Project, a zip file allegedly containing glass defect pictures, a copy of an email exchange between Melanie Woodfin ("Woodfin") of PHLK and Complainant, a May 27, 2025, cease and desist letter from Woodfin to Complainant, and a June 23, 2025, cease and desist letter from Woodfin to Complainant.

On July 9, 2025, Philadelphia acknowledged Complainant's July 8, 2025, email and the attachments thereto. Philadelphia acknowledged that Surety Claims' June 25, 2025, letter to Complainant should have more correctly stated that the claim submission was *received* by Surety Claims on June 23, 2025, rather than imply that the submission was *dated* June 23, 2025. Going forward, Philadelphia requested that all further correspondence relating to the claim be

---

[1] PHLK represents TNHC Realty and Construction, Inc. ("TNHC"), the entity which obtained a Bond of Qualifying Individual on behalf of Principal relative to California Contractor's License no. 938080 under which authority TNHC operates in the state of California as a Class B – General Building Contractor.

transmitted directly to the Examiner via email. The foregoing notwithstanding, Philadelphia affirmed that the investigation was ongoing and reiterated its request for an executed Claim Questionnaire and Affidavit of Loss to assist Philadelphia in developing a complete understanding of the facts and circumstances surrounding the claim.

In a July 9, 2025, email reply to Philadelphia, Complainant asserted that Complainant relied upon the address of record on the California Contractor's State License Board ("CSLB") website.[2] Complainant further asserted that Philadelphia's email response was attempting to obfuscate the record.

By email dated July 9, 2025, Philadelphia replied to assure Complainant that prior communications were in no way an attempt to misrepresent or obfuscate the record, and confirmed to the Complainant that Philadelphia continued to actively investigate the claim.

To the extent that the FedEx delivery confirmation is accurate, and to the extent that the claim notice was in fact delivered to Philadelphia's Sioux Falls office, Philadelphia concedes that there appears to have been an isolated administrative issue within the mailroom of the Sioux Falls office that resulted in the claim notice being forwarded to Underwriting in Leawood Kansas and without a scanned copy of the envelope in which it was mailed.

However, as set forth above and as previously communicated to Complainant, Philadelphia disputes Complainant's assertion that any alleged acts or omissions on the part of Philadelphia violated California Fair Claims Settlement Practices, as promulgated by California Code of Regulations §2695 *et seq.* Pursuant to California Code of Regulations § 2695.1(a), the Insurance Commissioner has promulgated the Fair Claims Settlement Practices Regulations to accomplish the following objectives:

> (1) To delineate certain minimum standards for the settlement of claims which, when violated **knowingly on a single occasion or performed with such frequency as to indicate a general business practice** shall constitute an unfair claims settlement practice within the meaning of Insurance Code Section 790.03(h);
> (2) To promote the good faith, prompt, efficient and equitable settlement of claims on a cost effective basis;
> (3) To discourage and monitor the presentation to insurers of false or fraudulent claims; and,
> (4) To encourage the prompt and thorough investigation of suspected fraudulent claims and ensure the prompt and comprehensive reporting of suspected fraudulent claims as required by Insurance Code Section 1872.4.

(Emphasis added.)

To the extent that Complainant contends that any act or omission by Philadelphia may have *knowingly*, on a single occasion, violated certain minimum standards for the settlement of claims, or to the extent Complainant contends that any act or omission by Philadelphia occurred with such frequency as to constitute a general business practice for settlement of claims so as to constitute an unfair claims settlement practice within the meaning of Insurance Code Section 790.03(h), Philadelphia refutes such allegations.

---

[2] https://www.cslb.ca.gov/onlineservices/checklicenseII/CheckLicense.aspx

As set forth above, the failure to transmit the claim to Surety Claims to initiate the claims process until June 23, 2025, was an isolated and inadvertent incident. Philadelphia did not knowingly violate the Fair Claims Settlement Practices Regulations. Philadelphia believed it was acting promptly and within the regulations by responding to the claim on June 25, 2025. Philadelphia took all necessary steps to continue to promptly communicate with Complainant regarding the status of its investigation and to timely issue a determination of the claim on July 29, 2025. Further, Philadelphia can confirm that the alleged delay in responding to the original claim notice in no way impacted, influenced or affected Philadelphia's determination of the claim.

Complainant also alleges that certain acts or omissions of Philadelphia constitute a violation of California Code of Regulations § 2695.7. Please be advised that pursuant to California Code of Regulations § 2695.1(c), Complainant's allegations lack merit as only sections 2695.1 through 2695.6, inclusive, section 2695.10, and sections 2695.12, 2695.13 and 2695.14, inclusive, apply to the handling or settlement of claims brought against surety bonds. As such, surety bond claims and a surety's handling of such claims are not governed by California Code of Regulations § 2695.7, as Complainant appears to allege in his Department of Insurance complaint. To the extent Complainant alleges Philadelphia failed to timely make a determination of the claim, Philadelphia disputes such contention. Philadelphia's claim determination was issued within the statutorily required time period, within 40 days from receipt of proof of claim on July 8, 2025, and therefore, Philadelphia did not knowingly violate the Fair Claims Settlement Practices Regulations by failing to timely make a determination of the claim.

Upon the undersigned's investigation and review of the claim file, including Philadelphia's denial of the claim and Complainant's subsequent complaint to the Department of Insurance, Philadelphia cannot definitively conclude that any alleged actions or omissions on the part of Philadelphia knowingly violated any provisions of the California Fair Claims Settlement Practices Regulations. Conversely, the alleged delays, if any, on the part of Philadelphia in transmitting or acknowledging Complainant's claim would appear to be the sole result of an inadvertent and isolated incident. Furthermore, the alleged delays, if any, did not adversely impact Philadelphia's investigation of the claim or Philadelphia's claim determination, and there was no resulting prejudice to the Complainant. Therefore, under the totality of the circumstances, Philadelphia contends that it made a good faith effort to comply with the provisions of the Fair Claims Settlement Practices Regulations.

Should you obtain any further information which you believe would materially affect Philadelphia's determination of these matters, please feel free to forward said information to the undersigned for consideration.

Page 5 of 5
Claim # PHYL25061720436

This correspondence, and all prior or subsequent communications and/or investigative efforts, are made with the express reservation of all rights and defenses that may be available to Philadelphia or the Principal, whether at law, in equity or under the terms and provisions of the Bond and applicable statutes. This reservation includes, without limitation, defenses available to pursuant to any notice and suit limitation provisions.

Sincerely,

# Christopher J. Wise

Christopher J. Wise
Surety Claims Manager
Email: christopher.wise@phly.com
Phone: 614-726-3855

cc:     Patrick Willis Dibble c/o Plante Huguenin Lebovic Kahn, LLP
        California Department of Insurance, Consumer Services and Market Conduct Branch, Claims Service Bureau

# Exhibit 227



**Jess Sanders**
E-mail: jmelching@rutan.com

August 25, 2025

**VIA E-MAIL ONLY**

Jeffrey Gu
jeffwgu@gmail.com
jeffreygu@proffer.info

Re:    Further Demand to Cease and Desist Direct Contact with Irvine City Staff and Offices

Dear Mr. Gu,

As you know, this office serves in the capacity of City Attorney for the City of Irvine ("City").

I am writing to follow up on the cease and desist letter issued to you by my office on August 5, 2025 which demanded in part that you immediately cease all direct contact with City staff and offices. Despite the clear instructions to direct all correspondence exclusively through me by email, it has come to our attention that you continue to harass multiple City staff, contractors, and offices via persistent emails and phone calls, including calls where you have researched and raised the respondent's personal details on social media.

Your behavior is disruptive and threatening, and in flagrant default of the City's August 5, 2025 cease and desist letter.

You are hereby reminded that **all communications regarding City matters, including those directed to City staff and contractors must be directed solely to me via email.** I will transmit public comments and questions to the relevant City parties as necessary and appropriate. **You are not to contact City staff and offices directly by either email or phone calls.** Those staff and offices have been directed not to engage with your attempts to contact them except through me via email. You are further directed not to contact our office by telephone. Your calls will be terminated and will not be answered. You may correspond with myself and Attorney Melching via email **only**.

You may continue to exercise your legal rights to access City records through the California Public Records Act, submit emergency calls for service to the City's Police Department, comment on matters of public business (which must be submitted to me by email and will be forwarded as appropriate), and attend public meetings. However, you are reminded there is no legal right for members of the public to have unfettered access to public employees, offices, and officials.



Jeffrey Gu
August 25, 2025
Page 2


       Failure to comply with these directives will leave us with no choice but to consider further action to protect the City's interests, including instituting legal action against you.  We urge you to adhere to the direction in this letter and the City's August 5, 2025 cease and desist letter to avoid further escalation.

       We hope to resolve this matter amicably and without the need for further intervention. Your immediate compliance with these directives is expected and appreciated.

       Very truly yours,


       RUTAN & TUCKER, LLP

       Jess Sanders

JS.js

# Exhibit 228



Jeffrey Gu <jeffwgu@gmail.com>

---

## City Attorney Cease-and-Desist and First Amendment Concerns

---

**Jeffrey Gu** <jeffwgu@gmail.com>                                           Mon, Aug 25, 2025 at 7:02 PM
To: LarryAgran@cityofirvine.org, cm@cityofirvine.org

Hi Mr. Agran and Mr. Crumby,

I am attaching another letter sent by the City Attorney's office to me and wanted to confirm that you affirm the content of the letter. I suppose if so, like with my other email, no further response is necessary.

-Jeffrey

On Fri, Aug 22, 2025 at 5:47 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:
Hi Mr. Agran and Mr. Crumby,

I'm just confirming that it's been 2 business days since I sent the previous email regarding potential civil rights violations with no responses or acknowledgements from either of you.

-Jeffrey

On Wed, Aug 20, 2025 at 5:39 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:

Hello Mr. Agran and Mr. Crumby,

I'm writing to express concern about the cease-and-desist letter issued to me on August 5, 2025, by City Attorney Jessica Sanders. The letter instructed me to refrain from direct communication with City staff, and to route all further correspondence exclusively through her office. I have attached the letter for reference.

Because this directive was presented as an official position of the City, I would like to confirm whether it reflects the City's stance towards my inquiries. Given that the letter touches on issues of protected speech and access to public officials, I thought it appropriate to ensure you're both informed.

At this point, I'm simply looking to clarify the City's position so I can proceed with confidence that my conduct aligns with expectations and legal norms. If you believe this matter has been appropriately handled, no further response is necessary.

Sincerely,

Jeffrey Gu

---

📄 **[2025_08_25] Notice of Disclosure Gu 4451996 and 4451962.pdf**
142K

# Exhibit 229



Jess Sanders<br>E-mail: jsanders@rutan.com

August 28, 2025

**VIA E-MAIL**

Jeffrey Gu
jeffwgu@gmail.com
jeffreygu@proffer.info

Re:    Public Records Act Request Received August 4, 2025

Dear Mr. Gu,

As you know, this office serves in the capacity of City Attorney for the City of Irvine ("City"). This letter is being sent in response to the above-referenced request under the California Public Records Act, Gov. Code, § 7920.000 et seq. (CPRA), which seeks the following:

Any documents the permitting department used to verify the owner-builder declaration and related permits, namely any evidence of proof of ownership over the tract or parcel, for TRACT 19176 and/or all lots. An example approval and permit is attached. The owner appears to be any combination of "NEW HOME COMPANY", "New Home Co.", or "The New Home Company". Please provide proof of ownership by these companies or "TNHC Realty and Construction Inc" over the tract or individual lots.

On August 13, 2025, the City informed you that additional time was required to consult with another agency having substantial interest in the determination of the request or among two or more components of the agency having substantial subject matter interest therein, as well as to appropriately examine a voluminous amount of separate and distinct records demanded in your request. (Gov. Code, § 7922.535, subd. (c)(2)-(3).)

All non-exempt disclosable records that the City deems to fall within the scope of your request are attached to this correspondence. This completes the City's review and processing of the above-indicated request.

Please feel free to contact me should you have any questions regarding this matter.

Very truly yours,

, LLP

JS:js
cc:    City Clerk (via e-mail only)

Rutan & Tucker, LLP | 18575 Jamboree Road, 9th Floor
Irvine, CA 92612 | 714-641-5100 | Fax 714-546-9035
Orange County | Palo Alto | San Francisco | www.rutan.com

2905/048170-0301
22647575.1 a08/28/25



# COMMUNITY DEVELOPMENT
## Building and Safety

# PERMIT REVISION/DEFERRED SUBMITTAL APPLICATION

| FOR OFFICE USE ONLY | |
|---|---|
| REVISION # | 1 |
| PLAN CHECKER | Joel |
| DATE | 9/7/23 |
| TARGET DATE | 9/14/23 |

| PROJECT ADDRESS | | SUITE | PRODUCT NAME |
|---|---|---|---|
| OLIVEWOOD MODELS | | | OLIVEWOOD |

| TRACT | LOT | UNITS | VILLAGE |
|---|---|---|---|
| 19176 | | | PORTOLA SPRINGS |

| PLAN CHECK NUMBER | APPLICANT/COMPANY NAME | CONTACT |
|---|---|---|
| 00860702-RNM | KB PROCESSING | KRISTI BLANCHARD |

| PERMIT NUMBER(S) | ADDRESS | PHONE |
|---|---|---|
| 00873317-RBP, 00873318-RBP, 00873319-RBP | 37601 EARLY LANE | 9519704794 |
| | CITY | ZIP | EMAIL |
| | MURRIETA | 92563 | KRISTI.BLANCHARD@AOL.COM |

" 4FMFDU"PS#BTBQQMJDBCMF
" 5IFEFTDSJQUJPOPOGXPSLCFMPX SFWJTJPOUPBQQSPWFEQMBOTGPSUIFGPMMPXJOHEJTDJQMJOFTPGUIFPSJ
TDPQFPGXPSL      *G:&4 QSPWJEFBOTBJWFBTBSUJDMFTBBEEJUJPOBUBSUBMMDOFPUIFU
3FWJTJPOTNBEF PSDIJUFDUVSF □ MDUSVSB □ MFEUSJD □ M.FDIBOJDBM □ M1MVNCJ □ I$JW □ 0UIFS
    BOEXBTJPJUJBUFCZBGJMFDPSSFDUJPOPUPOUJDUBTUBUDIBOJDBM
    *G:&4 QSPWJEFFDPQZPFPGUIFDPSSFDUJPOOPUJDFBTBUUBDIFOU
    BOEXJMMJNQBDU$JUZ2MBOBOOJOH □ QSFÌBMT:FT/P
    BOEXJMMJNQBDU0$'"BQQSF □ BMÌT/T/P
    03
# 5IFEFTDSJQUJPOPOGXPSLCFMPX EFGFSSFETVCNJUUBMBMTMJTUFEPOUIFUJUMFTIFFUPÌ IFBÌ QSPWFEQMBOT
    *G:&4 QSPWJEFBQQSPWFETBNQMFQMBOBOJUFMFTIFFUTBTBUUBDINFOU

46#.*55"-48*5)*/$0.1-&5&"11-*$"5*0/403.44"*/(3&26*3*&%%%6.&/548*--#&-"&%/0)0-%

NOTE:  Any changes not listed JOEFUBJMMPZPPZPVÌSFTSFSFXJUPJOOBOOBEÌUÌO0#SSÌBÌUJJÌÌB $PÌÌFÌ BUJJBMÌÌÌÌÌÌ

OLIVEWOOD DELTA 3 - MASTER ARCH PLANS REVISED TO SHOW CHANGE OF OWNERSHIP/DEVELOPER FROM "IRVINE PACIFIC" TO "NEW HOME COMPANY."

KRISTI BLANCHARD                                    9/5/2023
**APPLICANT SIGNATURE**                             **DATE**

| FOR OFFICE USE ONLY | Permit required for additional □ ARCHITECTURAL/STRUCTURAL □ ELECTRICAL □ MECHANICAL □ PLUMBING |
|---|---|

| TO: | APPROVED BY: | REVISION FEES: | |
|---|---|---|---|
| Joel B. | , BUILDING: | HOURS @ | $ |
| | , PLANNING: | HOURS @ | $ |
| | , GRADING: | HOURS @ | $ |
| | , ENGINEERING: | HOURS @ | $ |
| | , FIRE DEPT: | HOURS @ | $ |
| SUBMITTAL RECEIPT #: | CUST #73031 | (LESS PAID) $ | |
| REVISION TMPL00913274-TMPL | | PLAN CHECK TOTAL $ | |
| | | PERMIT FEES $ | |
| ISSUANCE RECEIPT #: | DATE: | MICRO FEES $ | |
| ADDL P/C OR PERMIT #: | | **BALANCE DUE** $ | |



COMMUNITY DEVELOPMENT
Building and Safety

# NEW RESIDENTIAL REVISI
## SUPPLEMENTAL QUESTIONNA

This questionnaire must accompany any Permit Revision/Deferred Submittal Application (Form 65-33B) for new single multi-family dwellings. A copy of this form must be given to the construction superintendent as your inspector will no inspect the field change without it.

| PLAN CHECK NUMBER | REVISION # |
|---|---|
| 00860702 | 11 |
| PRODUCT NAME | TRACT |
| OLIVEWOOD | 19176 |

## DESCRIPTION OF REVISION

PROVIDE A COMPLETE AND BRIEF DESCRIPTION OF REVISION(S).  AS SPACE IS LIMITED, PLEASE USE ABBREVIAT

MASTER ARCH PLANS REVISED TO LIST NEW OWNERSHIP/DEVELOPER OF PROJECT TO "NEW HOME COMPANY."

| ABBREVIATIONS: | 2nd Floor Flr 2 | Beam BM | Foundation FDN | Roof RF |
|---|---|---|---|---|
| | Architectural ARCH | Column COL | Phases All Ph, Ph1, Ph2, etc. | Shear Wall SW |
| | | | Plan Type Number Plan 1, 2, 3, etc. | Structural Struc |

## PLEASE ANSWER THE FOLLOWING:

1. DO THESE REVISIONS APPLY TO ALL PHASES? [X] YES   [ ] NO, ONLY FROM PHASE _____ ON

2. DOES THIS AFFECT ALL PLAN TYPES?  [X] YES   [ ] NO, ONLY PLAN TYPE(S): _____

3. REVISIONS WILL AFFECT THE FOLLOWING: [X] ARCHITECTURAL [X] STRUCTURAL

FORM 66-16 REV 09/18



COMMUNITY DEVELOPMENT / PUBLIC WORKS

# ELECTRONIC/DIGITAL SIGNATURE DISCLOSURE

I understand and agree that (i) electronically signing and submitting any document(s) to the City of Irvine legally binds me in the same manner as if I had signed in a non-electronic or non-digital form, and (ii) the electronically stored copy of my signature, any written instruction or authorization and any otheU document provided to me by the City of Irvine, is considered to be the true, accurate, and legally enforceable record in any proceeding to the same extent as if such documents we re originally generated and maintained in printed form. I agree not to contest the admissibility or enforceability of the City of Irvine's electronically stored copy of any other documents.

By using the system to electronically sign and submit any document, I agree to the terms and conditions of this Electronic/ Digital Signature Disclosure.

KRISTI BLANCHARD                               9/5/2023
_____         _____

SIGNATURE                                    DATE

# Exhibit 230



 Jeffrey Gu <✗✗✗✗✗✗✗✗✗>

---

## Handrail guidance

---

**Jesse Cardoza** <JCardoza@cityofirvine.org>                    Wed, Jun 18, 2025 at 9:09 PM
To: Jeffrey Gu <▮▮▮▮▮▮▮▮>
Cc: Stephanie Frady <SFrady@cityofirvine.org>, Claudia Landeras-Sobaih <clanderas-sobaih@cityofirvine.org>

Mr. Gu,

Thank you for your inquiry and the reference email.

I am aware of the requirements of California Building Code (CBC) Section 1.8.7.2.1, similar to CBC 104.11 but applicable only to housing construction; however, as stated in my previous email, since the code language applicable to handrail graspability explicitly allows for handrail sections that provide equivalent graspability, a discretionary approval of an alternate design per CBC 1.8.7 is unnecessary.

Instead, my task is to determine whether the handrail dimensions "provide equivalent graspability" based on my understanding of the code's intent, professional experience, and industry practice. I have done so, and as previously stated, I have determined the specific increased size does not significantly affect graspability for the vast majority of users.

Please let me know if you have any further questions.


**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu ▮▮▮▮▮▮▮▮>
**Sent:** Wednesday, June 18, 2025 4:21 PM
**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** Stephanie Frady <SFrady@cityofirvine.org>; Claudia Landeras-Sobaih <clanderas-sobaih@cityofirvine.org>
**Subject:** Fwd: Handrail guidance

**CAUTION:** EXTERNAL EMAIL

Hi Jesse,

The CSBC provided me this information about alternative approvals. Does the City indeed believe it followed this protocol here?

-Jeffrey

---------- Forwarded message ---------
From: **CBSC@DGS** <CBSC@dgs.ca.gov>
Date: Wed, Jun 18, 2025 at 3:41 PM
Subject: RE: Handrail guidance
To: Jeffrey Gu <▮▮▮▮▮▮▮▮>

Hello Jeffrey,

Thank you for contacting the California Building Standards Commission (CBSC) with your inquiry. CBSC administers the development, adoption, and publication of the California Building Standards Code (Title 24, California Code of Regulations), in coordination with various other state agencies. However, the responsibility for the enforcement and administration of building standards, including alternative approvals, is under the authority of the local city or county building departments.

For residential projects, there is a section in the California Residential Code (below) that local jurisdictions must follow. Many cities and counties have amended this section, so this is another reason to check with the local jurisdiction. For non-residential projects, similar provisions can be found in the California Building Code Section 1.2.3.

I have to reiterate that many cities and counties amend this section, so discussion with the local building department is always a plus.

I hope this information helps.

**1.8.7.2.1 Approval of alternates.**

The consideration and approval of alternates by a local building department shall comply with the following procedures and limitations:

1. *1.The approval shall be granted on a case-by-case basis.*
2. *2.Evidence shall be submitted to substantiate claims that the proposed alternate, in performance, safety and protection of life and health, conforms to, or is at least equivalent to, the standards contained in this code and other rules and regulations promulgated by the Department of Housing and Community Development.*
3. *3.The local building department may require tests performed by an approved testing agency at the expense of the owner or owner's agent as proof of compliance.*
4. *4.If the proposed alternate is related to accessibility in covered multifamily dwellings or in facilities serving covered multifamily dwellings as defined in CBC Chapter 2, the proposed alternate must also meet the threshold set for equivalent facilitation as defined in Chapter 2 of the California Building Code.*

*For additional information regarding approval of alternates by a building department pursuant to the State Housing Law, see California Health and Safety Code Section 17951(e) and California Code of Regulations, Title 25, Division 1, Chapter 1, Subchapter 1.*

**1.8.7.3 Department of Housing and Community Development.**

The Department of Housing and Community Development may approve alternates for use in the erection, construction, reconstruction, movement, enlargement, conversion, alteration, repair, removal or demolition of apartments, condominiums, hotels, motels, lodging houses, dwellings, or an accessory thereto and permanent buildings in mobilehome parks and special occupancy parks. The consideration and approval of alternates shall comply with the following:

1. *1.The department may require tests at the expense of the owner or owner's agent to substantiate compliance with the California Building Standards Code.*

2. 2.The approved alternate shall, for its intended purpose, be at least equivalent in performance and safety to the materials, designs, tests or methods of construction prescribed by this code.

**Stoyan Bumbalov**

Executive Director

California Building Standards Commission

dgs.ca.gov/BSC

(916) 263-0998



CONFIDENTIALITY NOTICE: This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed. It may contain information that is confidential and prohibited from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this message or any attachment is strictly prohibited. If you have received this message in error, please notify the original sender immediately by telephone or by return e-mail and delete this message, along with any attachments, from your computer. Thank you.

# Exhibit 231

Jesse A. Cardoza



# Resume

## Objective

To obtain the position of Chief Building Official in the City of Irvine.

## Certifications

**PE**, State of California, 2014, No. 82846
**CASp**, State of California, 2017, No. 770

## Education

**Graduate-Level Course Work**, Civil Engineering, California State University, Long Beach.   Course work emphasizing:  foundation design; prestressed concrete design; timber design; steel design; and seismic design.  *GPA: 3.62*

**Bachelor of Science**, Civil Engineering, California State Polytechnic University, Pomona, 2011.   Course work emphasizing:  engineering surveying; highway design; geotechnical engineering; hydrology; hydraulic engineering; structural design with timber, concrete, and steel; and foundation and retaining wall design. *GPA: 3.40*

## Experience

**April 2015 to Present:**  Department of Community Development, City of Irvine, California.  Senior Plan Check Engineer.  Primary duties include:
- Examine construction documents (e.g., architectural plans, structural plans, design calculations, soil reports, etc.) to ensure complex residential and commercial building projects comply with all applicable building regulations, as well as standard engineering practice, including fire/life-saftey provisions, accessibility regulations, and conformance with reference engineering standards. Examples of project types include new single-family dwelling residential tracks, new multi-family dwelling buildings, new commercial buildings (e.g., parking structures, high-rise office buildings, etc.), and commercial tenant improvements.
- Coordinate plan check transmittals to and from plan check consultants, including: maintaining transmittal log; tracking project status and target dates; maintaining records of plan check corrections from consultants; and accurately recording consultant billable hours for invoice verification.
- Provide leadership and technical oversight to junior staff with respect to customer service, department policy, code interpretation, and plan review procedures.
- Provide assistance with the supervision of plan check staff and activities, including budget development/monitoring and employee performance assessment.
- Provide excellent customer service for assigned projects and as-needed at the community development counter with respect to overall customer satisfaction. Ensure that customer needs are met to the fullest extent possible while maintaining high-quality, code-compliant building plans.
- Research and provide technical/code interpretations for customer inquiries.
- Created and maintained standard correction library for use in electronic plan check software system.
- Participate in the purchase and implementation of both electronic plan review and permitting software packages from initial needs assessment, through final selection and implementation.



# Jesse Cardoza, PE, CASp

Deputy Director of Community Development/Chief Building Official at City of Irvine

California State Polytechnic University–Pomona · City of Irvine

Garden Grove, California, United States · 317 connections

**Connect**   🔒 **Message**

## Activity

323 followers

 **We are grateful to the men and women of the Irvine Police Department for all they do each and every day to keep our...**
Jesse Cardoza, PE, CASp liked this

**See all**

## Experience

 **City of Irvine**
10 yrs 3 mos

- **Building and Safety Manager/Chief Building Official**
Jan 2021 - Present · 4 yrs 6 mos
Irvine, California, United States

- **Senior Plan Check Engineer**
Apr 2015 - Jan 2021 · 5 yrs 10 mos

 **Structural Engineering Associate**
City of Los Angeles
Dec 2011 - Apr 2015 · 3 yrs 5 mos
Examine building plans for compliance with local zoning and building code requirements.

## Education

 **California State Polytechnic University–Pomona**
Bachelor of Science (BS) · Civil Engineering
2009 - 2011

# Exhibit 232

## Appendix A Employee Qualifications

⊖ You are viewing a Historical version of this title. Do you want to view the most recent version?

**Yes**    **No, Dismiss**    ✕

BASIC READ ONLY

⊡ Fullscreen    ⓘ Legend

## SECTION A101
## BUILDING OFFICIAL QUALIFICATIONS

**[A] A101.1 Building official.**

The building official shall have not fewer than 10 years' experience or equivalent as an architect, engineer, inspector, contractor or superintendent of construction, or any combination of these, 5 years of which shall have been supervisory experience. The building official should be certified as a building official through a recognized certification program. The building official shall be appointed or hired by the applicable governing authority.

# Exhibit 233



Jeffrey Gu <jeffwgu@gmail.com>

## OLIVEWOOD PREAPPROVAL INSTRUCTIONS / Parents of Jeffrey Gu

**Pope, Justin** <justin.pope@usbank.com>                    Fri, Dec 29, 2023 at 2:00 PM
To: "jeffwgu@gmail.com" <jeffwgu@gmail.com>
Cc: "Silveira, Jade" <jade.silveira@usbank.com>

Hi Jeffrey,

Thank you kindly for reaching out on behalf of your parents, and for their interest in obtaining preapproval to purchase a new home at Olivewood (https://www.newhomeco.com/region/orange-county/olivewood-portola-springs).

*To get started:*

**INSTRUCTIONS**

Please find below a click through link to start your preapproval application.

Once you arrive at this page, you will simply click the **Apply** button and begin a guided tour through the application.

Once your application is submitted and has been initially reviewed (*approx. <=48-72 hours current turn time*), you will then receive a request for specific, minimum items of supporting documentation to be conveniently uploaded via the same application portal.  For your benefit, our application can pre-verify a lot of the needed information which is why there will be no upload of documents until reviewed.

https://mortgage.usbank.com/ca-newport-beach-justin-pope

Best,

Justin & Team

**Justin M. Pope**



Mortgage Loan Officer
Builder Account Mgr.

NMLS #484146

3121 Michelson Drive • Irvine, CA 92612

Mobile. 949-500-6974
justin.pope@usbank.com
www.justinpope.com

**JADE SILVEIRA / Team Assistant**

Office. 408-878-0732 /
jade.silveira@usbank.com



U.S. BANCORP made the following annotations

----------------------------------------------------------------

Electronic Privacy Notice. This e-mail, and any attachments, contains information that is, or may be, covered by electronic communications privacy laws, and is also confidential and proprietary in nature. If you are not the intended recipient, please be advised that you are legally prohibited from retaining, using, copying, distributing, or otherwise disclosing this information in any manner. Instead, please reply to the sender that you have received this communication in error, and then immediately delete it. Thank you in advance for your cooperation.

----------------------------------------------------------------

# Exhibit 234

 **Move Fast, Save Big. Don't Miss Out!** New Homes →



Southern California     Irvine     Olivewood at Portola Springs

**NEIGHBORHOOD**

# Olivewood at Portola Springs

| Now Selling | STARTING FROM<br>MID $2 MILLIONS |
|---|---|
| 2,870 - 3,220<br>SQ. FOOTAGE | 4<br>BEDROOMS |
| 3 - 4.5<br>BATHROOMS | 2<br>CAR GARAGE |

Olivewood by New Home Co. presents a premium collection of designer residences set atop the highest point of Portola Springs, offering an exceptional selection of Southern California homes for sale. These luxury estates in Irvine feature modern floor plans with impressive interior finishes, gourmet kitchens, and panoramic doors that open to optional outdoor living spaces, perfect for al fresco dining and family gatherings. Each residence is expertly crafted with the highest quality materials that discerning buyers have come to expect. Select homesites will also offer breathtaking hillside and city light views. This highly desired Irvine address also places homeowners within walking distance to Loma Ridge Elementary School, miles of scenic trails, and 15+ family-friendly, amenity-rich parks.

- Luxury Hilltop Residences in Portola Springs
- Walking Distance to Award-Winning Schools
- Community Pools, Parks, Trails & More

SCHEDULE A TOUR

**JOIN THE INTEREST LIST**



VISIT US IN PERSON

207 Mistwater Street, Irvine, CA 92618

→ Monday - Tuesday: 10:00 AM - 5:00 PM
→ Wednesday: 1:00 PM - 5:00 PM
→ Thursday - Sunday: 10:00 AM - 5:00 PM

📞 (949) 943-3378

MEET YOUR NEIGHBORHOOD SALES MANAGERS  —

**Gilma Drummy**                    **Dave Christensen**
DRE# 01380132                       DRE# 01389799

MEET YOUR ONLINE SALES CONCIERGE TEAM  +



Olivewood at Portola Springs Sitemap



## Available Featured Homes (2)

### Available Floorplans (3)

### Plan 2

Starting at
$2,516,990

- 4 Bedrooms
- 3 Bathrooms
- Up to 2,980 Sq. Ft.

View Details

## Plan 1

Starting at
$2,799,990

- 4 Bedrooms
- 3 Bathrooms
- Up to 2,870 Sq. Ft.

View Details

## Plan 3

Starting at
$3,149,990

- 4 Bedrooms
- 4.5 Bathrooms
- Up to 3,220 Sq. Ft.



View Details

Explore Life at Olivewood at Portola Springs

What schools are zoned for Olivewood at Portola Springs?

Is there a HOA fee for homeowners in Olivewood at Portola Springs?

What are the base property taxes?

## Local Living In Olivewood at Portola Springs

Related Neighborhoods



SOLD OUT

### Centro

Whittier | Starting at High $700s

| 1,302 - 1,789 SQ. FEET | 2 - 3 BEDROOMS | 2.5 - 3.5 BATHS |

View All Details  >

## Ready to get started?

Are you ready to explore this neighborhood further? Take the next step by clicking below.

**SCHEDULE A TOUR**

**REQUEST INFO**

## Your New Home Awaits

Search our neighborhoods, city, or state:

| Arizona | |
|---|---|
| | Buckeye |
| | Phoenix |
| | Queen Creek |
| | San Tan Valley |
| | Surprise |
| | Gilbert |

| Northern California | |
|---|---|
| | El Dorado Hills |
| | Roseville |
| | Elk Grove |
| | Natomas |
| | Lathrop |
| | Mountain House |

| Southern California | |
|---|---|
| | Ontario |
| | Irvine |
| | Whittier |
| | Eastvale |
| | Lake Elsinore |

| Colorado | |
|---|---|
| | Aurora |
| | Columbine |
| | Littleton |
| | Thornton |
| | Golden |
| | Brighton |
| | Mead |

Oregon

Beaverton

Tigard

Austin

Austin

Buda

Georgetown

Kyle

Houston

Cypress

Humble

Katy

Splendora

Tomball

Waller

Washington

Bonney Lake

Bothell

Enumclaw

Federal Way

North Bend

Issaquah

Renton

Socials

About Our Homes

News

FAQ

About Us

Values

Our Team

Investors

Careers

Trade Partners

Support

Contact

Customer Care

Copyright © 2025 The New Home Company Inc. All rights reserved. All information subject to change. All imagery is representational and does not depict

Copyright © 2025 The New Home Company Inc. All rights reserved. All information subject to change. All imagery is representational and does not depict specific building, views or future architectural, community or amenity details. All services, pricing, square footage and bed/bath counts subject to change. Models do not reflect racial or ethnic preferences. Not an offer or solicitation to sell real property. Offers to sell real property may only be made and accepted at the sales center for individual New Home Co. communities. For additional legal disclaimers, please CLICK HERE.

PRIVACY POLICY   YOUR PRIVACY CHOICES        U.S. STATE PRIVACY NOTICE      TERMS OF USE & LEGAL DISCLAIMERS
SPECIFIC LEGAL DISCLAIMERS      STATE LICENSING AND NOTICES      ACCESSIBILITY

# Exhibit 235

9/11/25, 12:01 AM                              Olivewood at Portola Springs | The New Home Company

The Wayback Machine - https://web.archive.org/web/20231004210334/https://www.newhomeco.com/region/orange-county/olivewood-portola-springs
Skip to main content







- Find Your New Home
  - 1. Southern California
    1. Neighborhoods
    2. Move-In Ready Homes
  - 2. Northern California
    1. Neighborhoods
    2. Move-In Ready Homes
  - 3. Arizona
    1. Neighborhoods
    2. Move-In Ready Homes
  - 4. Colorado
    1. Neighborhoods
    2. Move-In Ready Homes
  - 5. Oregon
    1. Neighborhoods
    2. Move-In Ready Homes
  - 6. Washington
    1. Neighborhoods
  - 7. Masterplan Communities
- Design
  - 1. Design Features

9/11/25, 12:01 AM                          Olivewood at Portola Springs | The New Home Company

- 2. EVO Home Tech
- Programs
  - 1. Brokers
  - 2. First Time Homebuyer
  - 3. Homes for our Heroes
  - 4. Buyer Referral
  - 5. Unlocked Self-Guided Tours
- Service
  - 1. Customer Care
  - 2. Warranty
- About
  - 1. Our Values
  - 2. Executive Team
  - 3. Investors
  - 4. Careers
  - 5. Contact
    1. Southern California
    2. Northern California
    3. Arizona
    4. Colorado
    5. Oregon
    6. Washington
    7. Corporate
- Reviews
  - 1. Reviews
  - 2. Testimonial Videos
- News

Menu





Olivewood at Portola Springs



Olivewood at Portola Springs | The New Home Company



9/11/25, 12:01 AM                                    Olivewood at Portola Springs | The New Home Company



9/11/25, 12:01 AM                        Olivewood at Portola Springs | The New Home Company

Olivewood at Portola Springs | The New Home Company



Olivewood at Portola Springs | The New Home Company



9/11/25, 12:01 AM                                    Olivewood at Portola Springs | The New Home Company



Previous   Next
Olivewood at Portola Springs
Irvine, California

9/11/25, 12:01 AM                        Olivewood at Portola Springs | The New Home Company



Coming Soon!
Click Here & Register Today



Southern California

# Olivewood at Portola Springs

Olivewood at Portola Springs

Olivewood by New Home Co. will present a premium collection of designer residences set atop the highest point of Portola Springs. Modern floor plans feature impressive interior finishes, gourmet kitchens and panoramic doors that open to optional outdoor living spaces for al fresco dining and family gatherings. Plus, each residence is expertly crafted with the highest quality materials that discerning buyers have come to expect. Select homesites will also offer breathtaking hillside and city light views. This highly desired Irvine address also puts homeowners in walking-distance to Loma Ridge Elementary school, miles of scenic trails and 15+ family-friendly and amenity-rich parks.

- Luxury Hilltop Residences in Portola Springs
- Up to 3,220 Square Feet of Living Space
- Up to 5 Beds & 5.5 Baths

- Walking Distance to Award-Winning Schools
- Community Pools, Parks, Trails & More
- Sales Commence Fall 2023

9/11/25, 12:01 AM                                   Olivewood at Portola Springs | The New Home Company

Registry
Homes for Heroes
Homes for Our Heroes
*External Page*



Deborah Muro & Justyna Korczynski
Online Sales Concierge Team
(949) 415-5883
SoCalConcierge@NewHomeCo.com
DRE# 01436940 | DRE# 01452389
Yes

Chat with us!

Olivewood at Portola Springs | The New Home Company

Text us! phone iconCall us!

Olivewood at Portola Springs | The New Home Company

Olivewood at Portola Springs | The New Home Company

[Email us](#)!

## Residences

Now Selling
Move-In Ready

## [Plan 1 at Olivewood](#)

9/11/25, 12:01 AM                                   Olivewood at Portola Springs | The New Home Company

Off
https://www.i-marketingtools.com/tic/communities/olivewood/?loc=voi&plan=1
Plan 1
Olivewood at Portola Springs

- 2,870 Sq. Ft.
- 4 Bedrooms
- 3 Bathrooms
- First Floor Bedroom
- Freestanding Tub at Primary Bath

- 2-Car Garage
- Loft
- Laundry Room with Sink and Storage
- Walk-In Pantry
- Stacking Doors at Great Room

# Plan 2 at Olivewood

Off
https://www.i-marketingtools.com/tic/communities/olivewood/?loc=voi&plan=2
Plan 2
Olivewood at Portola Springs

- 2,980 Sq. Ft.
- 4-5 Bedrooms
- 3-4 Bathrooms
- First Floor Bedroom
- Walk-In Pantry
- Freestanding Tub at Primary Bath

- 2-Car Garage
- Loft

9/11/25, 12:01 AM                                    Olivewood at Portola Springs | The New Home Company

- Stacking Doors at Great Room
- Storage Under Stairs
- Laundry Room with Sink and Linen Storage

## Plan 3 at Olivewood

Off
https://www.i-marketingtools.com/tic/communities/olivewood/?loc=voi&plan=3
Plan 3
Olivewood at Portola Springs

- 3,220 Sq. Ft.
- 4-5 Bedrooms
- 4.5-5.5 Bathrooms
- First Floor Bedroom with Ensuite Bath
- Walk-In Pantry
- Freestanding Tub at Primary Bath

- 2-Car Garage
- Loft
- Stacking Doors at Great Room
- Secondary Bedrooms with Ensuite Bathrooms
- Laundry Room with Sink and Oversized Linen

[×]

Mortgage Calculator
your payment $ 0

768
9577
cmrLyUfq5M
293343
Olivewood at Portola Springs
Opened Prior to 2018
No
Stay
In Touch

First Name [                                        ]
Last Name [                                         ]
Email [                                          ]
Mobile Phone [                              ]
Zip Code [ Zip Code                               ]

Are you a broker
- ○ Yes
- ○ No

[Submit]

9/11/25, 12:01 AM                                    Olivewood at Portola Springs | The New Home Company

No
No
Show
No

# Breadcrumb

1. Olivewood at Portola Springs

# Footer

- Corporate Sustainability
- Careers
- Built Communities
- Awards
- Broker Policy
- Investors

Copyright © 2023 The New Home Company Inc. All rights reserved. All information subject to change. All imagery is representational and does not depict specific building, views or future architectural, community or amenity details. All services, pricing, square footage and bed/bath counts subject to change. Models do not reflect racial or ethnic preferences. Not an offer or solicitation to sell real property. Offers to sell real property may only be made and accepted at the sales center for individual New Home communities. For additional legal disclaimers, please click here.

PRIVACY POLICY YOUR PRIVACY CHOICES    U.S. STATE PRIVACY NOTICE TERMS OF USE & LEGAL DISCLAIMERS SPECIFIC LEGAL DISCLAIMERS

- Find Your New Home
  - Southern California
    - Neighborhoods
    - Move-In Ready Homes
  - Northern California
    - Neighborhoods

9/11/25, 12:01 AM

Olivewood at Portola Springs | The New Home Company

- Move-In Ready Homes
  - Arizona
    - Neighborhoods
    - Move-In Ready Homes
  - Colorado
    - Neighborhoods
    - Move-In Ready Homes
  - Oregon
    - Neighborhoods
    - Move-In Ready Homes
  - Washington
    - Neighborhoods
  - Masterplan Communities
- Design
  - Design Features
  - EVO Home Tech
- Programs
  - Brokers
  - First Time Homebuyer
  - Homes for our Heroes
  - Buyer Referral
  - Unlocked Self-Guided Tours
- Service
  - Customer Care
  - Warranty
- About
  - Our Values
  - Executive Team
  - Investors
  - Careers
  - Contact
    - Southern California
    - Northern California
    - Arizona
    - Colorado
    - Oregon
    - Washington
    - Corporate
- Reviews
  - Reviews
  - Testimonial Videos
  - News

Fulltext search

Search

popup image to register in order to get incentive

# Exhibit 236

# OLIVEWOOD

## PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

THIS DOCUMENT CREATES SIGNIFICANT LEGAL OBLIGATIONS IF IT IS ACCEPTED BY SELLER AS DESCRIBED BELOW. **PLEASE READ IT CAREFULLY**.

---

Lot No. <u>0088</u>  Plan/ Elevation No. <u>2 B</u>

Tract No./Name _____ <u>19176</u>

Purchase Price: <u>$3,699,990</u>

Prequalifying Lender: <u>US Bank</u>

Loan Amount: <u>$2,404,993</u>

Final Date for Loan Approval: <u>1/26/2024</u>

Estimated Closing Date: <u>Jun,2024</u>
(This is an estimated date only – see Paragraph 3(d) of General Provisions)

Options Cutoff Date(s): <u>**SEE OPTION CUTOFF SCHEDULE**</u>

Title Company: <u>**FIDELITY NATIONAL TITLE**</u>

---

TO:    The Escrow Specialists Inc (**"Escrow Holder"**)
2 Corporate Park, Suite 210
Irvine, CA  92606
Tel: (949) 261-6222

Escrow Number: _____
Escrow Officer: Starling Rich
Date of Opening of Escrow: _____, ____

This Purchase Agreement and Escrow Instructions (**"Agreement"**) is made between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), and the individual(s) identified below as "Buyer" (**"Buyer"**).  Buyer and Seller may hereinafter collectively be called the **"Parties."**  Buyer agrees to buy the **"Property"** described below including the residence to be constructed thereon (**"Residence"**), and Seller, upon "Acceptance" (as defined below) of this Agreement by its duly authorized representative, agrees to sell the Property to Buyer, on the terms and conditions set forth below in the **Basic Provisions** and **General Provisions**, any **Addenda** attached hereto and the "Limited Warranty" defined below (collectively **"Sales Terms"**), all of which are incorporated herein by this reference.  All references herein to this **"Agreement"** include the Sales Terms, and the Parties hereby agree to be bound by same.

### BASIC PROVISIONS

**PROPERTY DESCRIPTION:**  Real property located at 129 Oakstone, in the City of Irvine, State of California (**"Property"**).  The Property is more fully described as Lot 0088 of Tract No. 19176 as shown on the Subdivision Map recorded in Book 1000, Pages 27 through 37, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County (**"County"**), California.

**PROJECT:**  The Property is located in the Olivewood residential development (**"Project"**) and the Portola Springs master planned residential community (**"Community"**).

**RESTRICTIONS:**  The Property is subject to the Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs (**"Declaration"**).

**HOMEOWNERS ASSOCIATION(S):**  The Property is subject to the Portola Springs Community Association, the homeowners association for the Community (**"Association"**).

**PURCHASE PRICE:**  The "**Purchase Price**" and "**Estimated Closing Costs**" for the Property and the timing for the payment of the same are set  forth below.  Where estimates are indicated, the exact amounts  will be determined before the  "Close of Escrow" (as defined below in Paragraph 3(d)) in accordance with the terms of this Agreement.  All checks shall be made payable, at Seller's request, to either Escrow Holder or Seller.

| | | |
|---|---|---|
| (A) | Base Price | <u>$3,585,775</u> |
| (B) | Option Items | <u>$114,215</u> |
| (C) | Purchase Price (A + B) | <u>$3,699,990</u> |
| (D) | Loan Amount (if applicable) | <u>$2,404,993</u> |
| (E) | The **"Deposit"** of $<u>$75,000.00</u> received on received on  <u>1/9/2024</u> (Check/wire# ) (includes first<u>$75,000.</u> deposit and if applicable, the "Second Deposit" defined in the Second Deposit Addendum) | |
| (F) | Down Payment at Close of Escrow (Total Purchase Price less Deposit and Loan Amount) | <u>$1,219,997</u> |
| (G) | Estimated nonrecurring Closing Costs including title policy, tax service, notary fees, recording costs and **"Third Party Charges"** of $9,000.00_ for escrow fees, credit report, appraisal fees, loan origination and processing fees and title report | <u>$10,000.00</u> |
| (H) | Estimated recurring Closing Costs such as **"Association Assessments"** ( RANGE $166.80 - $180.00) per month depending on the phase of development in which the Property is located), property tax and assessment prorations, interest prorations, insurance premiums and impounds | <u>$10,000.00</u> |
| (I) | Total **estimated** cash due before Close of Escrow (E + F + G + H) (to be paid in the form of wire transfer through a California institution) | <u>$1,314,997</u> |

Execution of this Agreement by Buyer and Seller's sales agent (**"Home Counselor"**) is only an offer to purchase by Buyer. Execution of _____ ____'s Home Counselor and/or delivery of Buyer's funds to Seller or "Escrow" (as defined below in

**Seller's Initials:**

**Buyer's Initials:**

Paragraph 3(a)) do not make this Agreement binding on Seller. This Agreement shall not be binding on Seller unless, within ten (10) days after the date Buyer signs this Agreement, Seller, in its sole discretion, delivers to Buyer a copy of this Agreement, executed by an individual authorized to accept this Agreement on behalf of Seller ("*Acceptance*"). The date on which an individual authorized to accept this Agreement on behalf of Seller ("*Authorized Individual*") signs the Agreement shall be the "*Acceptance Date*". Neither Seller nor any Home Counselor has provided any assurances that Buyer's offer will be accepted by Seller. If, for any reason, Acceptance does not occur, Seller shall be deemed to have rejected Buyer's offer, this Agreement shall not become effective and all funds Buyer deposited with Seller shall be promptly refunded to Buyer. Seller may hold Buyer's deposit check uncashed until Acceptance. Buyer hereby authorizes Seller to hold Buyer's deposit check until Seller accepts this Agreement and Escrow is opened. Notwithstanding anything to the contrary herein, Acceptance shall be deemed not to occur if Buyer's deposit check is returned for non-sufficient funds or Buyer has stopped payment on the deposit check, in which event this Agreement shall automatically terminate without any further action by the parties; however, if requested by Seller, Buyer shall be required to execute a termination of purchase agreement and Escrow cancellation instructions prepared by Seller or Escrow Holder. Upon Acceptance, this Agreement will constitute the sole contract between the Parties regarding the purchase of the Property. There are no collateral understandings, representations or agreements, oral or written, other than those contained in this Agreement.

**WAIVER OF RIGHT TO JURY TRIAL. NOTICE: THIS AGREEMENT REQUIRES THAT BUYER WAIVE ITS RIGHT TO A JURY TRIAL IN THE EVENT OF A DISPUTE WITH SELLER, INCLUDING WITHOUT LIMITATION CONSTRUCTION DEFECT DISPUTES.**

**DOCUSIGN. BUYER ACKNOWLEDGES AND AGREES THAT ALL DOCUMENTS PROVIDED BY SELLER IN CONNECTION WITH THE PURCHASE OF THE PROPERTY WHICH ARE EXECUTED BY BUYER THROUGH DOCUSIGN AND ALL ELECTRONIC SIGNATURES TO SUCH DOCUMENTS SHALL BE DEEMED ORIGINALS AND BINDING UPON THE PARTIES THERETO. SUCH DOCUMENTS ARE LENGTHY AND CREATE SUBSTANTIAL LEGAL OBLIGATIONS ON BUYER'S PART. THEREFORE, BUYER SHOULD DOWNLOAD THE DOCUMENTS TO BUYER'S COMPUTER AND/OR PRINT COPIES AND REVIEW SAME CAREFULLY BEFORE SIGNING THROUGH DOCUSIGN.**

---

**BUYER CERTIFICATIONS**

Buyer acknowledges, agrees and certifies the following:

1. No Home Counselor, employee, agent, or broker of Seller has the authority to (a) make any promises, assurances, agreements, representations or warranties to Buyer which contradicts any matters set forth in this Agreement, (b) modify the terms of this Agreement or (c) make any agreements, representations or promises on behalf of Seller.

2. In executing this Agreement Buyer is not relying on any promise, assurance, agreement, representation or warranty not contained in this Agreement.

3. Any promises, assurances, agreements, representations or warranties by Seller must be in writing and signed by an Authorized Individual.

4. Although Buyer has had, and in the future may have, conversations with Home Counselors or other agents of Seller, no promises, assurances, agreements, representations or warranties of Home Counselors or other agents shall be binding upon Seller unless in writing executed by Buyer and an Authorized Individual and attached and made a part of this Agreement.

5. Prior to deciding to purchase the Property Buyer has considered all provisions of this Agreement and the impact of same on Buyer.

6. Written disclosures provided to Buyer do not relieve or alter Buyer's responsibility (subject to entry and other limitations imposed by Seller) to, among others: (a) diligently perform Buyer's investigation of the Property, Project and Community and the area surrounding same; (b) review the Declaration and all other Association documents; (c) review the recorded tract map for the Project and conditions of approval associated therewith; and (d) inspect the Property, Project and Community to satisfy Buyer as to the condition, safety and fitness of the Property, Project and Community for Buyer's intended use.

7. Buyer has read and considered all provisions of this Agreement.

---

*Seller's Initials* 

*Buyer's Initials*

*[SIGNATURE PAGE TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS]*

**BUYER:**

Di Lan Ge
First    Middle    Last Name

746 Country Club Ln

Fond du Lac WI 54935
Address

(920) 251-6478
Cell Phone                Home Phone

Preferred E-Mail Address dilange8888@gmail.com

Executed by Buyer on

Buyer's signature

**BUYER:**

Xian Feng Gu
First    Middle    Last Name

746 Country Club Ln

Fond du Lac WI 54935
Address

(920) 539-5919
Cell Phone                Home Phone

Preferred E-Mail Address xianfenggu888@gmail.com

Executed by Buyer on

Buyer's signature

**BUYER:**

First    Middle    Last Name

Address

Cell Phone                Home Phone

Preferred E-Mail Address

Executed by Buyer on

Buyer's signature

**BUYER:**

First    Middle    Last Name

Address

Cell Phone                Home Phone

Preferred E-Mail Address

Executed by Buyer on

Buyer's signature

Seller or Home Counselor must be notified by Buyer of any change in Buyer's contact information.

[Manner in which title to vest]
TBD

(Note: The manner of taking title may have significant legal and tax consequences.  Buyer should consult with a professional regarding such consequences.  Title cannot
consent to any such change (including without limitation any trusts, limited liability companies or other entities which Buyer may
have a controlling interest).)

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024                -3-

Hor
DocuSigned by:
By: *Dave Christensen*
8249D9BB96AD447...
(Home Counselor)

Date:

Sales Office Phone: (951) 382-0477

Accepted by Seller on
(*"Acceptance Date"*).

THE NEW HOME COMPANY SOUTHERN CALIFORNIA
LLC, a D iability company

By: DocuSigned by:
*Michael Battaglia*
6A030AD4FAE2493...

Print Name:  Michael Battaglia

Title: Authorized Agent

*"Seller"*

Address:

The New Home Company
15231 Laguna Canyon Road #250
Irvine, CA  92618
Tel.:  (949) 382-7800

**Seller's Initials**

**Buyer's Initials**    XG

-4-

## GENERAL PROVISIONS

1. **Purchase Price Payment Terms.**

(a) **Payment Method Election.** Buyer may elect to pay the Purchase Price in cash or with proceeds of a third-party loan (**"Loan"**) as provided in this Agreement.  Buyer's election shall be confirmed by an addendum to this Agreement ("**Financing Addendum"**) which shall be executed by Buyer and Seller concurrently upon execution of this Agreement.  Once Buyer has made this election, Buyer may not change the election if to do so would, in Seller's sole judgment, interfere in any way with Buyer's or Seller's performance of their obligations under this Agreement, including without limitation delay the Close of Escrow.

(b) **Payment for Options.** Concurrently upon execution of this  Agreement, the Parties shall complete and execute a Design Studio Selections Addendum in the form required by Seller ("**Options Addendum**") to select options or extras which are not included in the Base Price (**"Options"**).  As a condition to beginning  work on certain Option items, Seller  may require Buyer  to deliver to Escrow or Seller (as determined by Seller in its sole discretion) the cost of such Options, provided that to the extent that the cost of such Options is funded under the Loan, Buyer shall receive a credit through Escrow for Option costs funded by the Loan.  Seller has provided no assurances that the Loan provider will agree to cover all Option costs in the Loan.  The cost of Options must be included in the total Purchase Price, whether such Options will be financed or paid by cash, and the cost of the Options will be used in determining any reassessment of the Property for real property tax purposes.

(c) **Time and Manner of Payment.**  BUYER SHALL DEPOSIT INTO ESCROW ALL SUMS REQUIRED OF BUYER TO CLOSE ESCROW (OTHER THAN ANY PORTION OF THE PURCHASE PRICE OBTAINED THROUGH THE LOAN) NOT LATER THAN TWO (2) CALENDAR DAYS AFTER RECEIPT OF SELLER'S REQUEST FOR SAME.  ALL OF BUYER'S FUNDS REQUIRED UNDER THIS AGREEMENT WILL BE PAID BY CERTIFIED CHECK OR WIRE TRANSFER PAID THROUGH A FINANCIAL INSTITUTION UNLESS EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT OR THE FINANCING  ADDENDUM. ALL OPTIONAL ITEMS MUST BE ORDERED WITHIN THE TIME PERIODS SPECIFIED BY SELLER.  NO OPTIONS MAY BE ORDERED DURING THE SIXTY (60) DAY PERIOD PRIOR TO THE ESTIMATED CLOSING DATE.

(d) **Release of Deposit.**  Notwithstanding the foregoing, upon issuance of a Final Subdivision Public Report covering the Property from the California Department of Real Estate (previously known as the California Bureau of Real Estate) (**"DRE"**) and provided that Seller has posted a bond or other security in a form and amount acceptable to the DRE, (i) Escrow Holder shall,  upon Seller's request, release any of Buyer's deposits to Seller which have been deposited into Escrow, without further Escrow instructions from Buyer or Seller, and/or (ii)  Seller may, as determined by Seller in its sole discretion and without Buyer's approval, retain any of Buyer's deposits without delivery of such deposits to Escrow.

2. **Financing.**

(a) **Loan Application.**  If prequalification is required by Seller, prior to executing this Agreement Buyer shall have submitted all documentation necessary to prequalify with the **"Prequalifying Lender"** specified on Page 1 to enable Seller to determine if Buyer is financially capable of purchasing the Property (although such prequalification shall  not constitute  financing or  Loan Approval nor shall Buyer be obligated to use the Prequalifying Lender to obtain a Loan in connection with the purchase of the Property).  Buyer shall authorize the Prequalifying Lender to release  to Seller all information relating to Buyer's Loan application and credit report, including the status of the review and approval of Buyer's Loan application on an ongoing basis.  Seller will pay all costs of  the Prequalifying Lender but only in connection with Buyer's prequalification.   If Buyer's Financing Addendum includes an election to pay a portion of the Purchase Price with Loan proceeds, Buyer acknowledges and agrees that Buyer will be obligated to pay all costs charged by any institutional lender or lenders (as applicable, the **"Lender"**), including costs of the Prequalifying Lender with respect to  the Loan if it provides the Loan to Buyer.  BUYER ACKNOWLEDGES THAT SELLER IS RELYING ON THIS REPRESENTATION AND WARRANTY IN ACCEPTING THIS AGREEMENT AND INCURRING EXPENSES IN CONNECTION WITH THE SALE OF THE PROPERTY AND SELLER'S COMPLETION OF THE CONSTRUCTION AND DEVELOPMENT OF THE PROPERTY.

(b) **Buyer Acknowledgments Regarding Loan.**  BUYER IS SOLELY RESPONSIBLE FOR OBTAINING ANY LOAN NECESSARY TO PURCHASE THE PROPERTY, AND NO REPRESENTATION, WARRANTY OR ASSURANCE HAS BEEN GIVEN BY SELLER OR ITS AGENTS OR REPRESENTATIVES THAT BUYER WILL QUALIFY FOR A LOAN.  ANY INTEREST RATE OR OTHER FINANCING INFORMATION PROVIDED TO BUYER BY SELLER, PREQUALIFYING LENDER AND/OR ANY LENDER IS AN ESTIMATE ONLY AND BUYER AGREES THE ACTUAL  INTEREST RATE AND LOAN TERMS MAY BE DIFFERENT. THEREFORE (I) SELLER HAS PROVIDED NO REPRESENTATION, WARRANTY OR ASSURANCE THAT THE INTEREST RATE PREVAILING AT THE CLOSE OF ESCROW WILL BE  ANY  RATE QUOTED EARLIER TO BUYER AND (II) BUYER'S OBLIGATION TO PURCHASE THE PROPERTY IS NOT CONTINGENT UPON BUYER'S ABILITY TO RETAIN THE INTEREST RATE QUOTED AT THE TIME OF LOAN APPROVAL AND BUYER WILL BE REQUIRED TO PAY THE INTEREST RATE CHARGED BY THE LENDER AT THE CLOSE OF ESCROW. ALL FINANCING AND THE TERMS AND CONDITIONS THEREOF, INCLUDING WITHOUT LIMITATION IMPOUND PAYMENTS AND INTEREST RATE, ARE A MATTER OF CONCERN SOLELY BETWEEN BUYER AND THE LENDER AND SHALL  NOT IN ANY  WAY AFFECT THE  RIGHTS OR OBLIGATIONS  OF SELLER OR BUYER UNDER THIS AGREEMENT.

(c) **Loan Approval.** No later than the **"Final Date for Loan Approval"** specified on Page 1, Buyer shall deposit or cause to be deposited with Seller and Escrow Holder written verification (**"Loan Verification"**) for Buyer from Buyer's Lender of the Lender's Loan approval which shall be subject only to conditions that are acceptable to Seller in its sole discretion for the full Loan Amount to be financed as set forth in the Basic Provisions, or if the Purchase Price increases as a result of Options ordered, then the Loan Amount plus the cost of such Options (**"Loan Approval"**).  The Loan Verification shall include a statement that Buyer is an acceptable borrower of the Loan Amount pursuant to the Lender's normal lending policies and ratios, based only upon (i) Buyer's completed credit report, and (ii) as of the date of the Loan Verification, the Lender's verification of Buyer's income and of the existence on ~~........~~ olely in Buyer's name and ready availability to Buyer of the balance of the Purchase Price (less the Loan Amount) pri~~........~~  Close of Escrow.   The Final Date for Loan Approval cannot be extended without Seller's express written

**Seller's Initials:**

**Buyer's Initials:**

HLO\ Oliveowood: v.1 1/9/2024

approval, which approval Seller may withhold in its sole discretion.  The requirements of this Paragraph shall not be deemed satisfied if the written verification of Loan Approval deposited into Escrow is conditional or includes terms or conditions which are inconsistent with this Agreement.  Federal law requires any Lender which approves Buyer for a Loan to provide Buyer with a closing disclosure ("**Closing Disclosure**") no later than  three (3) business days prior to the consummation of the Loan, during  which time Buyer shall have the right to review the Closing Disclosure and elect to terminate the  Loan application.  Buyer acknowledges and agrees that if Buyer elects to terminate its Loan application under federal law, Buyer shall not be released from its obligations under this Agreement, including its obligation to close Escrow on the Closing Date and the Closing Date shall not be extended as a result of such termination.  Buyer  hereby authorizes any  Lender  with  which Buyer applies for  a  loan to provide to Seller a full copy of the Closing Disclosure delivered by such Lender to Buyer.

(d)   **Obligations Regarding Use of Lender; Credit Worthiness.**   If Buyer elects to obtain a Loan from a Lender other than the Prequalifying Lender, Buyer shall (i) within five (5) days after request by Seller, execute and deliver to Seller a written authorization, in a form to be determined by Seller in its sole discretion, which identifies such Lender and authorizes  Seller to grant such Lender access to information in Buyer's Escrow for the purpose of obtaining the Loan and (ii) promptly provide written authorization for such Lender and any and all other Lenders,  without  further instructions  from Buyer, to (1) copy Seller on all correspondences between Lender and Buyer; (2) provide Seller with copies of all credit, loan and other applications and other documentation and information of any kind submitted by Buyer to Lender and all documentation, including without limitation loan approvals and rejections, provided by Lender to Buyer; and (3) immediately provide any other information requested by Seller in writing or, at Seller's election, orally, in person or by phone.  In addition, Buyer shall (i) cause Lender to deliver to Seller weekly written status reports concerning the Loan, (ii) within five (5) days prior to the Close of Escrow, cause Lender to deliver to Escrow Holder and Seller, as applicable, all loan documents required to close Escrow, and (iii) arrange with Lender to fund the Loan proceeds and provide for the recordation of all appropriate documents on or prior to the Closing Date.  In addition, Buyer shall also have the obligation to maintain all sources of income and Buyer's credit worthiness, including without limitation (A) not taking any action (including incurring significant debt) which would prevent Buyer from qualifying for the Loan or any other financing or cause the cancellation of the Loan Approval  or adversely affect Buyer's credit and/or ability to purchase the Property and (B) using Buyer's best efforts to comply with the requirements of Lender and the terms of the Loan Approval.   The Lender selected by Buyer must use  an Escrow Holder which is either selected by Seller or selected by Buyer and approved by Seller.

(e)   **Failure to Obtain.**  If Buyer does not act in good faith as determined by Seller or otherwise fails to comply with any of the requirements of this Paragraph 2 strictly within the time frames set forth herein, including without limitation (i) voluntarily undertaking any act for the purpose of preventing a Lender from approving the Loan or any other financing required to consummate the purchase of the Property, (ii) requesting that a Lender not approve the Loan, (iii) making a material misrepresentation which results in the failure of a Lender to approve the Loan or (iv) failing to properly execute all documents and take all actions required by a Lender to approve and fund the Loan, Buyer shall be in default under this Agreement and Seller may cancel Escrow, terminate this Agreement and proceed in accordance with Paragraph 8.  If for reasons beyond the control of Buyer: (1) Buyer is unable to obtain Loan Approval by the Final Date for Loan Approval or (2) the Loan Approval does not comply fully and specifically with the requirements set forth in this Paragraph and is disapproved by Seller in its sole discretion, this Agreement shall terminate and Buyer's Deposit shall be refunded to Buyer.  If after obtaining Loan Approval the Loan Approval expires or is  withdrawn  for any reason, Buyer shall not be released from its obligations under this Agreement nor shall the Closing Date be extended.

(f)   **Substitute Loan.**   Once Buyer has deposited the Loan Approval into Escrow, Buyer may not apply for or obtain any modified, additional or new Loan Approval from any Lender or other source ("**Substitute Loan**") if the application for or the funding of the Substitute Loan would, in Seller's sole judgment, interfere in any way with Buyer's or Seller's performance of their obligations under this Agreement, including without limitation delay the Close of Escrow.  Buyer's application for or obtaining any Substitute Loan shall not extend the Closing Date, shall be deemed a Buyer default hereunder and shall entitle Seller to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.  If Buyer is authorized in writing by Seller, in its sole discretion, to apply for and obtain a Substitute Loan but Buyer does not qualify for such Substitute Loan, the Close of Escrow shall not be delayed and Buyer must purchase the Property and close Escrow using the original Loan Approval or cash.

(g)   **Accuracy of Information.**    Buyer represents and warrants to Seller that all information Buyer provides Seller, Escrow Holder, the Prequalifying Lender and the Lender, whether orally or in writing, shall be completely accurate, true and correct when given and at all later dates.  If any such information proves to be inaccurate in any material respect, Seller, at its option, may terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.

(h)   **Appraisal.**   Seller has provided no representations, warranties or assurances that the Purchase Price of the Property will equal or exceed the appraised value of the Property  (including optional items), including the appraised value determined by an appraisal required by Buyer's Lender ("**Lender Appraisal**").  If Buyer (i) obtains a Loan, (ii) does not select any optional items and (iii) (A) the appraised value of the Property at the Close of Escrow, as specified in the Lender Appraisal ("**Appraised Value**") is less than the Purchase Price and (B) Buyer, in its sole discretion, does not agree in writing with Seller within five (5) days after receipt of the final Lender Appraisal (which shall be deemed final if Seller does not dispute the Lender Appraisal or if Seller disputes the Lender Appraisal in Seller's discretion, following Seller's reasonable opportunity to dispute the Lender Appraisal) to increase Buyer's cash down payment to cover the difference between the Appraised Value and the Purchase Price, then Seller, in its sole discretion, will (1) reduce the Purchase Price to the Appraised Value or (2) terminate this Agreement and, subject to Paragraph 7(b), all funds deposited by Buyer in Escrow or delivered to Seller by Buyer shall be released to Buyer.  If Buyer elects to purchase any optional items from Seller (the price of such Property with optional items purchased, the "**Upgraded Purchase Price**") and the Appraised Value is greater than the base Purchase Price (Purchase Price without optional items) (the "**Base Price**"), but less than the Upgraded Purchase Price, then Buyer shall pay in cash the difference between the Appraised Value and the Upgraded Purchase Price ("**Cash Difference**") in accordance with Paragraph 1(c) of this Agreement.  Buyer's failure to pay the Cash Difference shall constitute a default under this Agreement by Buyer, entitling Seller to its remedies under Paragraph 8.  Buyer shall be solely responsible for keeping track of the optional items purchased by Buyer and the amount of the Cash Difference to be paid by Buyer in accordance with this Agreement.  For the avoidance of doubt, if Buyer pays all cash for the Property (no Loan), the foregoing provisions of this Paragraph shall not apply and Buyer agrees that (A) there shall be no appraisal of the Property and (B) the Upgraded Purchase Price shall be the  agreed value of the Property.  In addition, regardless of whether Buyer is paying all cash in connection with the purchase of the Property, under no circumstances shall Buyer be entitled to request or require (I) that any third party appraisal (other than the Lender Appraisal) be used in connection with this Agreement and/or the purchase of the Property and/or (II) any change in the Lender Appraisal or Lender Appraisal.

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

3.  **Escrow.**

(a)  **Opening of Escrow.**  On or promptly after the Acceptance Date, Seller shall open escrow (**"Escrow"**) by depositing an executed copy of this Agreement and Buyer's Deposit with either Escrow Holder or Seller, as determined by Seller in its sole discretion.  Escrow Holder shall deliver a copy of the fully executed Agreement to Buyer upon opening of Escrow.

(b)  **Escrow Instructions.**  The Basic Provisions of this Agreement, together with Paragraphs 1 through 8 of these General Provisions and Escrow Holder's General Escrow Instructions, constitute the Parties' instructions to Escrow Holder.  Escrow Holder is not responsible for any other parts of this Agreement.  Provisions regarding an award of attorneys' fees and similar costs in the General Escrow Instructions or any other Escrow instructions shall apply only to disputes between Escrow Holder and the Parties, and not to disputes between the Parties themselves.  If there is any conflict between this Agreement and Escrow Holder's General Escrow Instructions or other Escrow instructions, the provisions of this Agreement shall control.

(c)  **Third Party Charges.**  Without Buyer's approval, (i) Escrow Holder, at the request of Seller, may disburse the **"Third Party Charges"** (as estimated in the Basic Provisions) from funds deposited into Escrow by Buyer, or (ii) Seller may disburse the Third Party Charges from funds delivered to Seller by Buyer.

(d)  **Close of Escrow.**  Unless earlier terminated as provided herein, Escrow shall close on the date (**"Closing Date"**) specified on a "Closing Notice" delivered by Seller to Buyer stating that Seller has determined that the Property is ready for occupancy and Escrow shall close on the Closing Date, provided such Closing Date shall be no less than five (5) business days after the date Seller delivers the Closing Notice to Buyer.  The Estimated Closing Date on Page 1 is only an estimate of the Closing Date and subject to Paragraph 7(a), the Closing Date may occur earlier or later than the Estimated Closing Date.  Issuance of a Certificate of Occupancy or other alternative final approval of occupancy of the Property by the relevant local governmental authority shall  be conclusive evidence of Seller's completion of the Residence and that it is ready for occupancy by Buyer.  Seller may, from time to time, in its sole discretion send Buyer progress reports regarding construction of the Residence.  Those reports may include updated estimates of the Closing Date but those dates are only estimates.  The actual Closing Date will be set only by the Closing Notice, which  will be  titled "Closing Notice".  **BECAUSE OF THE NATURE OF THE HOME BUILDING INDUSTRY, IT IS NOT POSSIBLE TO ESTIMATE THE EXACT CLOSING DATE WITH ABSOLUTE ACCURACY.  DUE TO A VARIETY OF CIRCUMSTANCES BEYOND SELLER'S REASONABLE CONTROL, INCLUDING WITHOUT LIMITATION THE SCHEDULING OF WORK, AVAILABILITY OF MATERIALS AND LABOR, THE ACTIONS OF PUBLIC AUTHORITIES AND WEATHER CONDITIONS, THE CLOSING DATE COULD BE EXTENDED BY WEEKS OR MONTHS; PROVIDED, HOWEVER, THAT IF, FOR ANY REASON OTHER THAN A DEFAULT OF BUYER,  ESCROW IS NOT CLOSED WITHIN THE TIME PERIODS SPECIFIED IN PARAGRAPHS 7(a)(1) AND 7(a)(2), BUYER SHALL HAVE THE RIGHT TO TERMINATE THIS AGREEMENT AND CANCEL ESCROW IN ACCORDANCE WITH PARAGRAPHS 7(a)(1) AND 7(a)(2).    THEREFORE, BUYER ACCEPTS THE UNCERTAINTY OF THE CLOSING DATE DUE TO SUCH UNAVOIDABLE DELAYS AND WAIVES ALL CLAIMS AGAINST SELLER, ITS AGENTS, EMPLOYEES AND CONTRACTORS ARISING IN CONNECTION THEREWITH.**  If, as a result of a default by Buyer, Escrow is not in a position to close on the Closing Date, Seller may (in its sole discretion) terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8 or extend the Closing Date to a date selected by Seller, in which case Buyer shall pay to Seller, upon Seller agreeing to such extension, an amount (**"Extension Payment"**) equal to Two Hundred Fifty Dollars ($250) per day if the Purchase Price is less than One Million Dollars ($1,000,000) or Five Hundred Dollars ($500) per day if the Purchase Price is more than One Million Dollars ($1,000,000), for the period of time commencing on the original Closing Date  and expiring on the date on which Seller extends the Closing Date.  Nothing herein shall be construed to obligate Seller to extend the Closing Date.  If Seller approves an extension, Buyer shall pay to Seller the applicable Extension Payment upon Seller's approval of the extended Closing Date and Buyer shall execute any documentation required by Seller to extend the Closing Date.  The Extension Payment shall be paid either through Escrow, or at Seller's election, by certified check or other immediately available funds acceptable to Seller and will not be applicable to the Purchase Price and shall be consideration to Seller for Seller's agreement to extend the Closing Date.  Acceptance by Seller of the Extension Payment will not constitute a waiver by Seller of any default by Buyer in failing to consummate the purchase of the Property as extended by this Agreement.  Seller's sole remedy in the event of Buyer's failure to pay such Extension Payment shall be to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.  The date of recordation of the Grant Deed conveying title to the Property to Buyer shall be deemed to be the date of **"Close of Escrow."**

(e)  **Closing Procedure.**  Upon the Close of Escrow, Escrow Holder shall cause the Grant Deed to be recorded and Seller's net closing proceeds promptly disbursed to Seller or Seller's order.

(f)  **Assessments**.  Assessments shall be payable to the Association (**"Association Assessments"**) at the current monthly rate described in the Basic Provisions.  Association Assessments may increase from time to time.  From Buyer's funds deposited into Escrow or delivered to Seller by Buyer, Escrow Holder or Seller (as applicable) shall pay (i) to the Seller a proration of the Assessment installment due for the month in which Escrow is closed, from the Close of Escrow to the first day of the next month (if Association Assessments have begun before the Close of Escrow) and (ii) to the Association, the next month's Association Assessment installment in advance.

(g)  **Cooperation/Other Documentation**.  Buyer shall Buyer shall cooperate fully with Seller and Escrow Holder to diligently and timely perform all actions  required to timely consummate  the purchase of the Property, including  without  limitation promptly cooperating in good faith with all time frames for performance under this Agreement and providing all documentation and information requested by Escrow Holder and Seller consistent with this Agreement, including without limitation completing and delivering to Seller or Escrow Holder, as applicable, all further instructions, documents, instruments, forms, statements, materials and applications required by Seller or Escrow Holder to complete the transaction contemplated herein, including  any disclosures concerning the Property, within three (3) business days after receipt of such request.  Buyer's failure to so cooperate shall be a default hereunder entitling Seller to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.

(h)  **Short Funds**.  If, following the Close of Escrow, Seller or Escrow Holder determines that there was an error ("**Closing Cost Error**") in the calculation of Buyer's Escrow closing costs (including without limitation a failure to properly account for any costs to be charged to Buyer, including the Purchase Price), Buyer shall pay any such short funds to Seller or Escrow Holder, as applicable, within thirty (30) days after Seller or Escrow Holder provides written notification thereof to Buyer.  Any  short funds not paid within such thirty (___ eriod shall accrue interest at the rate of the maximum rate allowed by law from the date due until paid.  Notwithstand___ ___going, if Seller or Escrow Holder fails to notify Buyer of a Closing Cost Error within one (1) year following

**Seller's Initials:**

**Buyer's Initials:**

-7-

HLO\ Oliwewood\ v.1 1/9/2024

the Close of Escrow, Buyer shall not be obligated to pay any short funds thereunder. Buyer's covenant under this Paragraph shall survive the Close of Escrow and the delivery of the Grant Deed.

4. **Title.** Title to the Property is to be conveyed to Buyer by grant deed in a form selected by Seller (***"Grant Deed"***), subject to the following:

(a) All non-delinquent taxes and assessments, including any supplemental taxes levied after the Close of Escrow.

(b) Covenants, conditions, restrictions, reservations, dedications, easements and rights-of-way and other matters of record or apparent affecting the use and occupancy of the Property, including those set forth in the Subdivision Map and the Declaration and any Supplemental Declaration(s)/Notice(s) of Annexation, if applicable.

(c) Encumbrances evidencing Buyer's Loan, if any.

(d) Reservations contained in the Grant Deed, including reservations of oil, gas and minerals, if applicable.

Unless Buyer declines to purchase the Title Policy, at the Close of Escrow, Escrow Holder shall deliver to Buyer an ALTA owners title insurance policy (with regional exceptions) issued by the Title Company, insuring title to the Property vested in Buyer in the condition described above with a liability equal to the Purchase Price (***"Title Policy"***). Notwithstanding the foregoing, Buyer shall have the right to decline to purchase the Title Policy at Buyer's risk, but Buyer acknowledges that declining to purchase the Title Policy (i) may cause a significant increase in the cost which Buyer shall incur for the mandatory Lender's title insurance policy ("***Lender Policy***") and (ii) will leave the Buyer with no insurance if there is a future disputed claim on title.

5. **Closing Costs and Prorations.** Buyer shall pay all closing costs, including without limitation the cost of the Title Policy, all Escrow fees, the fee for recording the Grant Deed, documentary transfer fees for recordation of the Grant Deed, credit reports, Natural Hazard Disclosure, Tax Disclosure, the Lender policy, tax service, private mortgage insurance (PMI) if required, loan fees, impounds as may be required by the Lender, and prorated Assessments if applicable (as provided above). Seller shall pay any costs in connection with partial reconveyance of any construction loan. Real property taxes and assessments and Association Assessments shall be prorated as of the Close of Escrow based upon a thirty (30) day month for expenses billed monthly, and a three hundred sixty (360) day year for expenses billed yearly, using the most recent available information. The Property will be reassessed after Close of Escrow, based upon the sale to Buyer, completion of construction or otherwise. Buyer is responsible for all property taxes against the Property assessed after the Close of Escrow, including without limitation any supplemental assessments.

6. **Conditions to Close of Escrow.** Escrow shall not close, title to the Property shall not be conveyed to Buyer and, except for an uncured default of Buyer, Buyer's funds shall not be unconditionally released from Escrow until the following conditions have been satisfied:

(a) **Blanket Encumbrances.** All blanket encumbrances (as defined in Section 11013 of the California Business and Professions Code) encumbering the Property are released or will be released through Escrow before the conveyance of the Property to Buyer.

(b) **Subordination of Encumbrances.** All mortgages and deeds of trust encumbering the real property in the Project are subordinate to or will be subordinate to the Declaration. This provision does not include real property taxes and assessments constituting a lien not yet delinquent.

(c) **Assessment Security.** Seller has posted a letter of credit, cash deposit, surety bond, or other arrangement securing Seller's share of Association Assessments, if applicable, in a form and amount satisfactory to the DRE.

(d) **Title to Lots.** Seller has acquired fee title to the residential lots in the sales phase of the Project in which the Property is located. As used herein "***sales phase***" shall mean the group of lots, including the Property, covered by a single Final Subdivision Public Report issued by the DRE.

(e) **Title to Common Area.** Title to any property to be owned by the Association in fee or by easement (***"Common Area"***) in the sales phase in which the Property is located which is to be conveyed to the Association as provided in the Declaration has been conveyed to the Association free of any and all blanket encumbrances (as defined in Section 11013 of the California Business and Professions Code), but subject to all covenants, conditions, restrictions, reservations, rights-of-way, dedications and other matters of record.

(f) **Completion of Improvements.** Either (i) all improvements and facilities in the Common Area in the sales phase have been completed and a Notice of Completion (as defined in Section 8182 of the California Civil Code) has been recorded covering such improvements and facilities, and either (1) the statutory period for filing mechanics' liens against the Common Area has expired, or (2) the Association is provided a policy of title insurance with an endorsement insuring against unrecorded mechanics' liens (the cost of such endorsement to be paid by Seller); or (ii) Seller has posted a bond, letter of credit, or other security (in accordance with Section 11018.5 of the Business and Professions Code) to assure completion of all improvements and facilities in the Common Area in the sales phase.

(g) **Statement of Delinquent Assessments.** Escrow Holder has delivered a written statement from the Association to Buyer concerning the amount of any delinquent Association Assessments (and information relating to penalties, attorneys' fees, and other charges thereon as provided by the Declaration or the Bylaws of the Association) on the Property as of the date the statement is signed.

(h) **Other Contingencies.** For the benefit solely of Seller, Buyer shall have satisfied all other applicable conditions to Buyer's obligation to close Escrow.

BUYER'S OBLIGATION TO PURCHASE THE PROPERTY AND ABILITY TO OBTAIN A LOAN ARE NOT CONTINGENT UPON THE SALE OF BUYER'S CURRENT RESIDENCE OR ANY OTHER PROPERTY OWNED BY BUYER.



*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

7. **Termination of Agreement and Escrow.**

(a) **Buyer's Cancellation Right.**

(1) **Failure to Complete Construction and Close Escrow Within One Year.** If, through no fault of Buyer, Escrow is not closed within twelve (12) months after the Acceptance Date, Buyer, by written notice to Seller delivered within thirty (30) days following the expiration of such twelve (12) month period, may terminate this Agreement, cancel Escrow and, within fifteen (15) calendar days after Seller and Escrow Holder receive written notice of such termination and cancellation, Buyer shall receive a refund of all amounts Buyer has deposited into Escrow and/or delivered to Seller.

(2) **Failure to Complete Construction and Close Escrow Within Two Years.** Seller shall complete construction of the Property, including the Residence and all other improvements thereon, and the Close of Escrow shall occur within two (2) years after the Acceptance Date, except that such two (2) year period shall be extended for any periods of "Unavoidable Delays". As used herein, *"Unavoidable Delays"* shall mean any acts of God (e.g., fire, flood, inclement weather, wind, earthquake, or other natural causes), or any other event, circumstance, or condition beyond Seller's control (such as strikes or other labor disputes, boycotts, unavailability of materials or delays caused by governmental entities) which constitute a permissible performance delay under California law. If Seller fails to complete construction of the Property and close Escrow within two (2) years after the Acceptance Date, and if Buyer did not previously exercise Buyer's right to terminate this Agreement and cancel the Escrow as provided in Paragraph 7(a)(1) above, Buyer shall have the right to either: (i) terminate this Agreement and cancel the Escrow by giving written notice to Seller and Escrow Holder, and all of Buyer's funds deposited with Escrow Holder and/or delivered to Seller by Buyer shall be refunded to Buyer in full (without any deductions) within fifteen (15) days of Seller's receipt of Buyer's notice of termination, Escrow shall be canceled at Seller's expense, and the Parties shall have no further rights or obligations with respect to the Property under this Agreement; or (ii) pursue any remedy available at law or in equity against Seller, including an action for specific performance.

(3) **Material Changes.** Subject to any applicable approvals of the DRE and any approvals required under the Declaration, before the Close of Escrow, Seller, in its sole discretion, may make material changes (i) in the overall development plan for the Project, (ii) in the manner or content of any offering of residences in the Project or any phase of development thereof, and/or (iii) to the Declaration, Bylaws, Articles, rules and regulations and/or other management documents of the Association. In such case, Seller shall provide Buyer with written notice of such material change and Buyer's sole remedy at that time shall be to terminate this Agreement, request cancellation of Escrow and receive a full refund of all amounts deposited hereunder. Buyer's failure to deliver written notice of termination to Seller and Escrow Holder within five (5) days after receipt of Seller's material change notice constitutes a waiver of Buyer's right to terminate this Agreement and cancel Escrow concerning such change.

(b) **Third Party Charges.** If Escrow is canceled for any reason other than a default by Buyer, Seller shall pay all Third Party Charges, and all of Buyer's funds deposited into Escrow or delivered to Seller, including amounts released for Third Party Charges, shall be refunded to Buyer. If Escrow is canceled due to a default by Buyer, Seller may terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.

(c) **Seller's Right to Cancel.** Notwithstanding anything herein to the contrary, including the General Escrow Instructions, if after complying with all the provisions of Paragraph 2, Buyer does not secure the Loan Approval above and deposit written verification of the Loan Approval and applicable approvals into Escrow within the time specified herein, Seller may, at its election, terminate this Agreement and, subject to Paragraph 7(b), all funds deposited in Escrow or delivered to Seller by Buyer shall be released to Buyer. However, if Buyer does not obtain Loan Approval because Buyer failed to sell Buyer's current residence or any other property Buyer owns or as a result of Buyer's failure to comply with Paragraph 2, Buyer shall be in default under this Agreement and Seller may terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8. Seller may also terminate this Agreement and cancel Escrow if Seller's ability to construct the Property and/or deliver it to Buyer is materially impaired because of (i) the action of any foreign, federal, state or local governmental authority or utility, or (ii) the unavailability or delay in prompt delivery of materials, labor, water, sewer or other utility services to the Property or the Project. In such event, Seller may terminate this Agreement, cancel Escrow and upon returning Buyer's full deposit hereunder to Buyer, Seller shall be released from all obligations hereunder. Seller may also terminate this Agreement pursuant to Paragraph 22 below.

(d) **Effect of Termination and Further Actions.** If this Agreement is terminated, (i) Escrow shall be automatically canceled and the Parties shall execute cancellation instructions requested by Escrow Holder, (ii) within ten (10) days after such termination, Buyer shall deliver to Seller all documents delivered by Seller to Buyer hereunder, (iii) Buyer shall have no further right or interest in the Property, and (iv) all provisions of this Agreement obligating Buyer to indemnify Seller shall survive the termination.

8. **BUYER'S DEFAULT; REMEDIES OF SELLER.** BUYER WILL BE IN DEFAULT UNDER THIS AGREEMENT IF (a) BUYER BREACHES ANY COVENANT OR AGREEMENT OF BUYER OR OTHERWISE FAILS TO PERFORM ANY OBLIGATION OF BUYER UNDER THIS AGREEMENT OR (b) BUYER NOTIFIES SELLER OR SELLER'S REPRESENTATIVE IN WRITING THAT BUYER WILL NOT COMPLETE THE PURCHASE OF THE PROPERTY OR WILL NOT PERFORM ANY OTHER OBLIGATION OF BUYER SET FORTH IN THIS AGREEMENT. IF BUYER DEFAULTS UNDER THIS AGREEMENT, SELLER SHALL BE RELEASED FROM ITS OBLIGATION TO SELL THE PROPERTY TO BUYER, AND S____ AY PURSUE ANY REMED____ ____ ____JITY THAT IT MAY HAVE AGAINST BUYER ON ACCOUNT ____ DEFAULT. HOWEVER, B____ ____ ____ITIALS HERE, SELLER[Initials]____ AND BUYER[Initials]____ AGREE AS FOLLOWS:

(a) **LIQUIDATED DAMAGES.** IN THE EVENT OF A DEFAULT BY BUYER UNDER THIS AGREEMENT, BUYER AND SELLER AGREE THAT IT WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN THE ACTUAL DAMAGES SUFFERED BY SELLER, THAT BUYER DESIRES TO LIMIT THE DAMAGES FOR WHICH BUYER MAY BE LIABLE AS THE RESULT OF A DEFAULT BY BUYER AND THAT BUYER AND SELLER BOTH DESIRE TO AVOID THE COSTS AND DELAYS IF SELLER COMMENCED LEGAL PROCEEDINGS AGAINST BUYER TO RECOVER ITS DAMAGES RESULTING FROM BUYER'S DEFAULT. THEREFORE, IN THE EVENT OF A DEFAULT BY BUYER PRIOR TO ____OSE OF ESCROW, SELLER, AS ITS SOLE AND EXCLUSIVE REMEDY, SHALL BE ENTITLED TO TERMINATI____ AGREEMENT, CANCEL THE ESCROW AND RETAIN, AS LIQUIDATED DAMAGES, BUYER'S

*Seller's Initials*

*Buyer's Initials*

-9-

HLO\Olivewood\ v.1 1/9/2024

DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER UNDER THIS AGREEMENT (AND UNDER ANY ADDENDUM HERETO), INCLUDING WITHOUT LIMITATION DEPOSITS FOR ANY OPTION(S) PURCHASED BY BUYER, WHICH AMOUNT SHALL BE DEEMED TO BE A REASONABLE ESTIMATE OF SELLER'S DAMAGES PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671 ET SEQ. THE LIQUIDATED DAMAGES TO BE RETAINED BY SELLER SHALL BE DETERMINED AFTER FIRST DEDUCTING FROM BUYER'S DEPOSITS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE THEREFROM TO THIRD PARTIES. NOTWITHSTANDING THE FOREGOING, IF THE TOTAL AMOUNT OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER EXCEEDS THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE OF THE PROPERTY, SELLER, AT ITS SOLE DISCRETION, SHALL BE ENTITLED TO EITHER: (i) RETAIN AS LIQUIDATED DAMAGES AN AMOUNT NOT EXCEEDING THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1675(c) AND ESCROW HOLDER SHALL RETURN TO BUYER THE BALANCE OF BUYER'S DEPOSITS (LESS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE THEREFROM TO THIRD PARTIES); OR (2) DEMAND TO RETAIN AS LIQUIDATED DAMAGES AN AMOUNT IN EXCESS OF THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE; PROVIDED, HOWEVER, IF BUYER OBJECTS TO SUCH AMOUNT AS PROVIDED IN PARAGRAPH 8(a)(2) BELOW, PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1675(d) THIS LIQUIDATED DAMAGES PROVISION SHALL BE INVALID UNLESS SELLER ESTABLISHES IN THE ARBITRATION PROCEEDINGS PROVIDED FOR HEREIN (OR IN COURT PROCEEDINGS, IF APPLICABLE) THAT THE AMOUNT DEMANDED BY SELLER AS LIQUIDATED DAMAGES IS REASONABLE AS DETERMINED IN ACCORDANCE WITH CALIFORNIA CIVIL CODE SECTION 1675(e). ESCROW SHALL BE CANCELLED AND LIQUIDATED DAMAGES SHALL BE REMITTED TO SELLER BY ESCROW HOLDER IN ACCORDANCE WITH THE FOLLOWING PROCEDURE:

(1)     **SELLER'S TERMINATION NOTICE**.     SELLER SHALL GIVE WRITTEN NOTICE ("***TERMINATION NOTICE***") BY ANY OF THE MEANS AUTHORIZED BY SECTION 116.340 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE (E.G., PERSONAL DELIVERY OR ANY FORM OF MAILING PROVIDING FOR A RETURN RECEIPT) TO ESCROW HOLDER AND TO BUYER OF SELLER'S DETERMINATION THAT BUYER IS IN DEFAULT UNDER THIS AGREEMENT AND THAT SELLER IS EXERCISING ITS RIGHT TO TERMINATE THIS AGREEMENT AND IS INSTRUCTING ESCROW HOLDER TO CANCEL THE ESCROW AND REMIT TO SELLER AS LIQUIDATED DAMAGES ALL OR A PORTION OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER AS PROVIDED ABOVE.

(2)     **BUYER'S OBJECTION NOTICE**.  BUYER SHALL HAVE A PERIOD OF TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S TERMINATION NOTICE IN WHICH TO PROVIDE AN OBJECTION NOTICE TO ESCROW HOLDER AND SELLER THAT BUYER OBJECTS EITHER:

i.     TO SELLER'S TERMINATION OF THIS AGREEMENT; OR

ii.     TO THE AMOUNT OF LIQUIDATED DAMAGES TO BE REMITTED TO SELLER. UNLESS BUYER'S OBJECTION NOTICE CLEARLY STATES THAT BUYER OBJECTS TO SELLER'S TERMINATION OF THIS AGREEMENT AND THAT BUYER INTENDS TO DILIGENTLY PURSUE THE PURCHASE OF THE PROPERTY, BUYER SHALL BE DEEMED TO OBJECT SOLELY TO THE AMOUNT OF LIQUIDATED DAMAGES CLAIMED BY SELLER AND THE PARTIES SHALL HAVE NO FURTHER RIGHTS OR OBLIGATIONS WITH RESPECT TO THE PROPERTY UNDER THIS AGREEMENT. THE RENUNCIATION BY BUYER OF BUYER'S INTENTION TO DILIGENTLY PURSUE THE PURCHASE OF THE PROPERTY SHALL ALSO CONSTITUTE A WAIVER OF ANY RIGHT TO FILE OR RECORD A LIS PENDENS OR ANY OTHER LIEN AGAINST THE PROPERTY. SUBJECT TO PARAGRAPH 13, BUYER'S OBJECTION NOTICE SHALL BE DELIVERED TO SELLER AS SET FORTH BELOW:

> Lori Michel
> lmichel@NewHomeCo.com
> New Home Co.
> 15231 Laguna Canyon Rd., Suite 250
> Irvine, California 92618

(3)     **ESCROW HOLDER'S OBLIGATIONS IF TIMELY OBJECTION NOTICE IS RECEIVED**. IF ESCROW HOLDER RECEIVES AN OBJECTION NOTICE FROM BUYER WITHIN SAID TWENTY (20) DAY PERIOD, ESCROW HOLDER SHALL IMMEDIATELY NOTIFY SELLER OF BUYER'S CONFLICTING NOTICE. THE CONTROVERSY CREATED BY THE CONFLICTING NOTICES BY SELLER AND BUYER, AND THE DISPOSITION OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER SHALL BE RESOLVED EITHER BY

i.     A COURT OF PROPER JURISDICTION, IF APPLICABLE, OR

ii.     ARBITRATION IF BUYER AND SELLER HAVE INITIALED PARAGRAPH 27 BELOW. ARBITRATION SHALL BE CONDUCTED AS SET FORTH IN PARAGRAPH 26 BELOW.

(4)     **ESCROW HOLDER'S OBLIGATIONS IF TIMELY OBJECTION NOTICE IS NOT RECEIVED**. IF ESCROW HOLDER DOES NOT RECEIVE AN OBJECTION NOTICE FROM BUYER WITHIN SAID TWENTY (20) DAY PERIOD, AT THE EXPIRATION OF SUCH PERIOD, BUYER SHALL BE DEEMED TO AGREE THAT BUYER IS IN DEFAULT UNDER THIS AGREEMENT. ACCORDINGLY, ESCROW HOLDER SHALL:

i.     REMIT TO SELLER THE AMOUNT DEMANDED BY SELLER (LESS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE TO THIRD PARTIES);

ii.     REMIT THE BALANCE OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER, IF ANY, TO BUYER; AND

iii.     CANCEL THE ESCROW. BUYER SHALL BE DEEMED TO HAVE WAIVED BUYER'S RIGHTS TO ALL REMEDIES AVAILABLE AT LAW OR IN EQUITY AGAINST SELLER, INCLUDING AN ACTION TO SEEK SPECIFIC PERFORMANCE OF THIS AGREEMENT OR THE RIGHT TO FILE A LIS PENDENS AGAINST THE PROPERTY.

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

**BUYER AND SELLER EACH ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THIS PARAGRAPH** ~~AND~~ **THEIR INITIAL BELOW** ~~AGREE TO BE BOUND THEREBY.~~

BUYER|Initials                    SELLER|Initial

(b)    **USE OF BUYER FUNDS.**  IF SELLER HAS HAD THE USE OF BUYER'S DEPOSIT PENDING CONSUMMATION OF THE SALE UNDER AUTHORIZATION BY THE DRE PURSUANT TO SUBDIVISION (c) OR (d) OF SECTION 11013.2 OR SUBDIVISION (b) OR (c) OF SECTION 11013.4 OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE, SELLER SHALL IMMEDIATELY UPON ALLEGING BUYER'S DEFAULT, TRANSMIT TO ESCROW HOLDER FUNDS EQUAL TO ALL DEPOSITS AND THIRD PARTY CHARGES PAID BY BUYER.

The following paragraphs represent additional agreements **between Buyer and Seller only** with which Escrow Holder shall have no liability or duty.

9.    **No Brokers.**  Other than Seller's Home Counselor, Buyer represents and warrants to Seller that Buyer has dealt with no broker, real estate sales person, or finder in connection  with the transactions contemplated by this Agreement, and Buyer shall indemnify, defend and hold Seller harmless from all claims, demands, losses, liabilities, judgments and expenses arising out of any amounts claimed to be owing to any such persons on account of the conduct of Buyer with the exception of cooperating brokers satisfying all of Seller's cooperating broker standards, guidelines and requirements, if applicable.  ***Seller's Home Counselor is an exclusive agent of Seller.***

10.    **Development of Property.**

(a)    **Production Home**.  Seller shall cause construction and completion of the Residence and appurtenant improvements on the Property.  The Residence is not a custom home and Seller is not acting as a contractor for Buyer in the construction of the Residence nor is Seller constructing the Residence specifically for Buyer.  Subject to Paragraph 12, Seller is not constructing the Residence or any improvements on the Property pursuant to any architect and/or construction plans or specifications, precise specifications or design of a model or appurtenances, or any federal, state or local building code, ordinance or statute.

(b)    **Marketing Materials**.  Any marketing materials, including without limitation brochures, advertising, videos, vignettes, depictions or renderings of improvements, topographic maps, subdivision maps and/or plot plans shown to Buyer or model homes visited by Buyer (collectively,  ***"Marketing Materials"***), are displayed or provided to Buyer only for illustration purposes and subject to Paragraph 12, Seller has not agreed to deliver the Residence in accordance therewith.  The Marketing Materials have not been prepared to scale and are subject to change without notice to Buyer.  All renderings are intended as artist's conceptions and may show non-standard landscaping.  If there is a discrepancy between the Marketing Materials and the actual as-built conditions of the Property, the as-built conditions will control.

(c)    **Property Size and Dimensions**.  Subject to Paragraph 12, the usable, habitable or buildable location and configuration of the Property, Residence, Project and all improvements located thereon may fluctuate from that shown or displayed to Buyer in the Marketing Materials.  All depictions, statements or other representations of square footage are approximate only.  Subject to Paragraph 12, Buyer may not rely upon any models, Marketing Materials or written or oral statements by Seller or Seller's representatives regarding the exact square footage or dimensions of the Property and/or Residence nor does Seller provide any representations or assurances in connection therewith.  In addition, the boundaries of the Property shown on any plan or map are approximate only, and subject to Paragraph 12, Buyer may not rely upon any Marketing Materials or written or oral statements by Seller or Seller's representatives regarding the exact boundaries of the Property.

(d)    **Walls and Fences.**  Subject to Paragraph 12, the location, size, height and composition of all walls and fences to be constructed on the Property or adjacent thereto shall be determined by Seller in its sole and absolute discretion.  Despite temporary fencing, Seller, subject to Paragraph 12, has made no representations, warranties or assurances to Buyer regarding the size, height, location or composition of any wall, fence to be constructed on or adjacent to the Property.

(e)    **Models**.  None of the appurtenances and furnishings shown in any model home or Marketing Materials are included in this Agreement, unless Seller agrees in writing to deliver the same Options.

(f)    **Substitutions**.  Seller may, in its sole and absolute discretion, substitute the type and location of materials, appliances and other items in the Residence and on the Property of substantially equal or greater functionality and quality (and acceptable to any Lender) to complete the Residence, including without limitation substitutions for kitchen appliances (other than brand names selected by Buyer as Options), household fixtures, electrical outlets and switches, hardware, wall surfaces, painting and other similar items.  Seller may make such substitutions without adjustment to the Purchase Price.  Buyer's consultation by Seller or Seller's Home Counselors or other agents shall not waive Seller's rights to make any change contemplated or provided herein.

(g)    **Delay in Construction**.  If Seller is unable to complete or install on the Property any Options, decorator item, fixture, furnishing or other improvement, and such failure is caused by circumstances beyond Seller's reasonable control, the Close of Escrow shall not be delayed so long as occupancy of the Residence is approved by the applicable governmental authority.  The incomplete items shall be completed by Seller as soon as reasonably possible after the Close of Escrow.

11.    **Completion and Possession.**  Seller has not provided Buyer an exact date for completion or occupancy of the Residence or Close of Escrow; however, except for delays caused by Unavoidable Delay, Seller shall complete the construction of the Residence within two (2) years after the Acceptance Date.  Buyer has no right, title or interest in the Property, except the right and obligation to purchase the same in accordance with the terms of this Agreement.  Buyer may not possess the Property or enter it before the Close of Escrow.  Any entry by Buyer must be approved in writing in advance by Seller and shall be at Buyer's own risk.  Except as to any claims, demands, losses, liabilities or expenses arising through the gross negligence or wilful misconduct of the "Seller Parties" defined below, Buyer shall indemnify, defend and hold Seller, its agents, contractors, members, managers, officers, directors, shareholders, ~~agents~~ and employees (collectively,  ***"Seller Parties"***), harmless from and against all claims, demands, losses, liabilities and ~~expenses~~ arising from any personal injury, death or property damage to Buyer, Buyer's invitees and guests, Seller or any

*Seller's Initials*

*Buyer's Initials*

HLO\ Oliveowood\ v.1 1/9/2024

other individual or entity as a result of any entry on the Property by Buyer and/or Buyer's family, guests or invitees.  Buyer understands that to permit the work to progress in an orderly fashion, no interference with construction work on the Property is permitted.  In addition, before the Close of Escrow (a) Buyer shall not be entitled to perform or contract for the performance of any work on the Property by Buyer or Buyer's agents; (b) no signs of any kind may be posted by Buyer or Buyer's agents on or near the Property, and (c) Buyer shall not enter into any contract for the sale or transfer of the Property.  A violation of the foregoing restrictions shall be a material default by Buyer entitling Seller, at its option, to terminate this Agreement, cancel the Escrow, and proceed in accordance with Paragraph 8.

12.  **Condition of Property Upon Delivery.**  The Residence will be delivered to Buyer substantially as shown in any model or on any floor plan for the Residence displayed or delivered to Buyer by Seller (*"Property Plans"*) with the exception of (a) any improvements or features shown on any architect and/or construction plans or specifications, precise specifications or design other than the Property Plans; (b) any features in the models that are optional or decorator items and not included in the list of standard features provided to Buyer; (c) variances noted by Seller in any written disclosures provided to Buyer; (d) variances in square footage normally occurring in residential subdivisions of the same type as the Project; (e) variances required to address site topography, Residence location, optional items selected by Buyer or the requirements of any applicable governmental authority; and (f) Seller's right to substitute building and other materials, construction techniques and fixtures with those of equal or greater functionality and quality.

13.  **Notices.**  Unless expressly provided otherwise herein, any notice to be given hereunder to either Party or to Escrow Holder shall be in writing and shall be given either by personal delivery, e-mail, facsimile, federal express, overnight courier or by depositing such notice in the United States first class mail, certified, with return receipt requested, postage prepaid and addressed as provided in the Basic Provisions.  Either Party and Escrow Holder may, by written notice to the other and to Escrow Holder, designate a different address which shall be substituted for the one specified above. If any notice or other document shall be sent by certified mail as set forth above, it shall be deemed to have been effectively served or delivered forty eight (48) hours following the deposit of such notice in the United States mail in the manner set forth above.  If any notice or other document shall be sent by e-mail, it shall be deemed to have been served upon transmission; provided that if such transmission occurs on a weekend or holiday or after 5:00 p.m. on a weekday, it shall be deemed to have been received at 8:00 a.m. on the immediately following business day.  If any notice or other document shall be sent by facsimile, it shall be deemed to have been served or delivered upon electronic confirmation of transmission; provided that if such transmission occurs on a weekend or holiday or after 5:00 p.m. on a weekday, it shall be deemed to have been received at 8:00 a.m. on the immediately following business day.

14.  **No Recording of this Agreement.**  Neither this Agreement nor any memorandum hereof may be recorded.

15.  **Walk-Through.**  Buyer may conduct a single walk through inspection of the Residence at a time (either before or after the Close of Escrow) designated by Seller in its discretion.  Such walk-through is not a condition to the Close of Escrow.  At such walk through, Buyer and a representative of Seller shall prepare a Homeowner Orientation Report (*"Report"*) to be signed by Buyer and Seller's representative identifying items or conditions which Buyer and Seller agree are to be repaired by Seller; however, such items need not be repaired before the Close of Escrow, and if any such items are not repaired before the Close of Escrow, Buyer may not extend or delay the Close of Escrow. Subject to Title 7, Part 2 of Division 2 of the California Civil Code (Sections 895 et seq.), Buyer's failure for any reason (other than reasons beyond the control of Buyer) to attend a walk through of the Residence as set forth above constitutes Buyer's acceptance of the condition of the Residence.  If Buyer conducts the walk through inspection before the Close of Escrow but does not execute the Report within three (3) days after the inspection, or if, after such inspection, Buyer and Seller disagree as to any items included or not included on the Report, then Seller shall have the right, in its sole discretion, to terminate this Agreement by written notice to Buyer.  If Seller terminates this Agreement under this Paragraph, the Deposit shall be returned to Buyer without deduction, and Seller shall have no further liability or obligation to Buyer under this Agreement.

16.  **Prohibited Behavior.**  Neither Buyer nor any family member or representative of Buyer shall (a) enter the Property or portions of the Project that are under construction and/or restricted unless such entry has been approved in writing in advance by Seller and Buyer is accompanied by a representative of Seller; (b) prior to the Close of Escrow, attempt to do any work or install or modify any improvements on the Property; (c) enter the sales office/model complex if Buyer has been given written notice not to enter the sales office/model complex; (d) commit any illegal or tortious act on or in connection with the Project and/or Property, including without limitation assault or causing any intentional physical harm to persons; and/or (e) engage in harassing, abusive, threating, offensive or otherwise inappropriate behavior towards Seller's representative, personnel, contractors, homeowners or other potential buyers (as applicable, *"Prohibited Behavior"*).  If Buyer fails to permanently cease any Prohibited Behavior immediately upon receipt of written notice from Seller describing such Prohibited Behavior (*"Default Notice"*), such failure shall be deemed a default by Buyer under this Agreement entitling Seller to terminate this Agreement by delivery of written notice of termination to Buyer. If, upon receipt of the Default Notice Buyer does immediately cease the Prohibited Behavior described in the Default Notice but thereafter engages in such Prohibited Behavior again, Seller shall be entitled to terminate this Agreement without the need for an additional Default Notice. If Buyer ceases the Prohibited Behavior described in the Default Notice but then engages in any other Prohibited Behavior Seller shall be entitled to deliver a second Default Notice to Buyer and the foregoing provisions shall apply. However, after delivery of a second Default Notice, if Buyer engages in any Prohibited Behavior Seller shall be entitled to terminate this Agreement without the need for delivery to Buyer of any additional Default Notice.

17.  **Waiver of Default.**  Seller's waiver of a default by Buyer shall not be deemed a continuing waiver or a waiver of any subsequent default.

18.  **Time is of the Essence.**  Time is of the essence in the performance of Buyer's obligations under this Agreement.  Any delay in Buyer's performance under this Agreement will prejudice Seller.  Therefore, any failure by Buyer to perform within the specified periods will be a default by Buyer, entitling Seller to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.  No extension of time for performance of any obligation or act hereunder shall be deemed an extension of time for performance of any other obligation or act.  Unless otherwise provided herein, the term *"days"* means consecutive *"calendar days."*  If the date on which any action is to be taken or any obligation is to be performed, or any notice is to be given under this Agreement falls on a day which is not a business day (i.e., Saturday, Sunday or holiday), such performance date shall be automatically extended to the immediately following business day.

19.  **Severability and Interpretation.**  If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the validity and e̶_____ity of the other provisions of this Agreement shall not be affected thereby.  This Agreement shall be governed



*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

by California law.  As used herein, the word *"including"* means *"including but not limited to."*  If more than one person or entity is a Party, each of them is jointly and severally liable under this Agreement.

20.  **Assignment.**  In view of the credit qualifications, processing and other personal matters considered hereunder, this Agreement and the rights of Buyer hereunder may not be assigned, sold, transferred or hypothecated by Buyer voluntarily, involuntarily, or by operation of law without first obtaining Seller's written consent which may be withheld for any reason in Seller's sole discretion.

21.  **Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which, together, shall constitute one and the same instrument.

22.  **Buyer Selections.**  To the extent Seller offers Options to Buyer, Buyer shall make Option selections from the choices and at the prices provided by Seller within the time periods specified by Seller.  The availability and prices of Options are subject to change, at the sole discretion of Seller, and without prior notice to Buyer.  Subject to availability, Buyer's selections are final.  If Buyer fails to make any Option selections within the times specified by Seller, Buyer shall be deemed to have waived the right to select such Options.  If Buyer must make selections with respect to standard features, Buyer shall make such selections within the time periods specified by Seller.  If Buyer fails to make standard feature selections with the time period specified by Seller, Seller, in its sole discretion, may (a) terminate this Agreement under Paragraph 8 or (b) shall make such selections for Buyer and Buyer hereby approves such standard features selected by Seller.

23.  **Seller Affiliates.**  Buyer may elect to utilize the services of affiliated mortgage, interior design or other entities.  Buyer understands that such companies may be subsidiaries of Seller.

24.  **Limited Warranty.**  Seller is providing Buyer with a "Homebuyer Warranty" (*"Limited Warranty"*), a copy of which is attached as an addendum hereto and incorporated herein by this reference.  Buyer agrees to be bound by and to comply with all provisions of the Limited Warranty.  The Limited Warranty is the sole warranty provided to Buyer.  Any other warranty or warranties, whether express or implied, are disclaimed by Seller and waived by Buyer, unless otherwise prohibited by law.  Upon Buyer's resale of the Residence to a subsequent purchaser, the Limited Warranty shall be transferred to the subsequent purchaser for any time remaining under the Limited Warranty, and Buyer agrees to deliver the Limited Warranty to the subsequent purchaser upon the closing of that transaction.

25.  **RESOLUTION OF POST-CLOSING DISPUTES.**  ANY "DISPUTE" DEFINED BELOW ARISING AFTER THE CLOSE OF ESCROW, WHETHER RELATED TO, OR ARISING FROM, AN ACT, OMISSION OR OTHER EVENT OCCURRING PRIOR TO OR AFTER THE CLOSE OF ESCROW (A *"POST-CLOSING DISPUTE"*), SHALL BE RESOLVED IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROCEDURES SET FORTH IN THE DECLARATION OF DISPUTE RESOLUTION PROCEDURES FOR THE PROJECT (*"DISPUTE DECLARATION"*) AND THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT IN THE FORM ATTACHED AS AN ADDENDUM HERETO, AS IT MAY BE MODIFIED BY SELLER (*"INDIVIDUAL DISPUTE RESOLUTION AGREEMENT"*).  PRIOR TO THE CLOSE OF ESCROW, UPON SELLER'S REQUEST, BUYER SHALL EXECUTE THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.  THE DISPUTE DECLARATION RECORDED AGAINST THE PROJECT AND THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT, WHICH WILL BE RECORDED AGAINST PROPERTY AT THE CLOSE OF ESCROW, GOVERN THE RESOLUTION OF ALL POST-CLOSING DISPUTES BETWEEN BUYER AND SELLER. AS USED HEREIN, A *"DISPUTE"* SHALL MEAN ANY CLAIM, CONTROVERSY OR DISPUTE BY OR BETWEEN THE PARTIES HERETO RELATING TO THIS AGREEMENT, THE PROPERTY, THE SALE OF THE PROPERTY, OR ANY TRANSACTION RELATED HERETO, WHETHER BASED ON CONTRACT, TORT, OR STATUTE, INCLUDING WITHOUT LIMITATION ANY DISPUTE OVER THE DISPOSITION OF ANY DEPOSITS HEREUNDER, BREACH OF CONTRACT, NEGLIGENT OR INTENTIONAL MISREPRESENTATION, FRAUD, UNCONSCIONABILITY, BREACH OF ANY ALLEGED DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGATIONS OF LATENT OR PATENT CONSTRUCTION DEFECTS, INTERPRETATION OF ANY TERM OR PROVISION OF THIS AGREEMENT OR ANY DEFENSE GOING TO THE FORMATION OR VALIDITY OF THIS AGREEMENT (INCLUDING WITHOUT LIMITATION ALLEGATIONS OF WHETHER SUCH DISPUTE ARISES BEFORE OR AFTER THE CLOSE OF ESCROW).

26.  **RESOLUTION OF PRE-CLOSING DISPUTES.**  ANY DISPUTE ARISING PRIOR TO THE CLOSE OF ESCROW (A *"PRE-CLOSING DISPUTE"*) INCLUDING WITHOUT LIMITATION DISPUTES RELATED TO LIQUIDATED DAMAGES SET FORTH IN PARAGRAPH 8, SHALL BE RESOLVED IN ACCORDANCE WITH THE ALTERNATIVE DISPUTE RESOLUTION PROCEDURES SET FORTH IN THIS PARAGRAPH 26.

(a)  **MANDATORY BINDING ARBITRATION.**  ALL PRE-CLOSING DISPUTES SHALL BE RESOLVED BY NEUTRAL, BINDING ARBITRATION GOVERNED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. §§1-16) (*"FEDERAL ACT"*) AND NOT BY ANY COURT ACTION EXCEPT AS PROVIDED FOR JUDICIAL REVIEW OF ARBITRATION PROCEEDINGS UNDER THE FEDERAL ACT.  A DEMAND FOR ARBITRATION SHALL BE DELIVERED IN ACCORDANCE WITH PARAGRAPH 13 BY THE PARTY DESIRING TO ARBITRATE SUCH PRE-CLOSING DISPUTE TO THE OTHER PARTY WITHIN THIRTY (30) DAYS AFTER SELLER'S RECEIPT OF BUYER'S OBJECTION NOTICE AS SET FORTH IN PARAGRAPH 8(a)(2).  THIS AGREEMENT INVOLVES AND CONCERNS INTERSTATE COMMERCE AND THEREFORE THE ARBITRATION PROCEDURES SPECIFIED IN THIS PARAGRAPH 26(a) ARE TO BE INTERPRETED AND ENFORCED AS AUTHORIZED BY THE FEDERAL ACT, WHICH IS DESIGNED TO ENCOURAGE USE OF ALTERNATIVE METHODS OF DISPUTE RESOLUTION THAT AVOID COSTLY AND POTENTIALLY LENGTHY COURT PROCEEDINGS.  INTERPRETATION AND APPLICATION OF THE PROCEDURES SET FORTH IN THIS PARAGRAPH 26(a) SHALL CONFORM TO ANY APPLICABLE FEDERAL COURT RULES AND DECISIONS INTERPRETING AND APPLYING THE FEDERAL ACT.  THE ARBITRATION PROCEEDINGS SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ACT AND, TO THE EXTENT NOT INCONSISTENT, THE PROCEDURES SET FORTH IN THIS PARAGRAPH 26(a).  IN ADDITION, EXCEPT AS SET FORTH HEREIN, AND TO THE EXTENT IT IS NOT INCONSISTENT WITH THE FEDERAL ACT, THE ARBITRATION SHALL BE CONDUCTED PURSUANT TO TITLE 9 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE (SECTION 1280 ET SEQ.).  REFERENCES TO CALIFORNIA PROCEDURAL LAW ARE FOR GUIDANCE ONLY AND SHALL NOT BE CONSTRUED AS A WAIVER OF ANY RIGHTS OR DUTIES OF THE PARTIES UNDER THE FEDERAL ACT OR THE RIGHT OF THE PARTIES TO HAVE THE PROCEDURES SET FORTH IN THIS PARAGRAPH 26(a) INTERPRETED AND ENFORCED UNDER THE FEDERAL ACT.  IF ANY PARTY SEEKS REVIEW BY A COURT OF THE ENFORCEA... F ANY OF THE PROCEDURES SET FORTH OR REFERENCED HEREIN (NOTWITHSTANDING THE

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

PROVISIONS HEREIN MAKING THAT ISSUE ONE TO BE RESOLVED BY THE ARBITRATOR), THE EXCLUSIVE JURISDICTION AND VENUE FOR ANY SUCH REVIEW SHALL BE THE SUPERIOR COURT FOR THE COUNTY.

(1)    **ADDITIONAL PARTIES**.   SELLER HAS THE SOLE AND ABSOLUTE RIGHT, IN ITS DISCRETION, TO JOIN ANY PERSON OR ENTITY WHO IS NOT A PARTY TO THE ARBITRATION PROCEEDINGS IF THE PRESENCE OF SUCH PERSON OR ENTITY IS REQUIRED OR IS NECESSARY FOR COMPLETE RELIEF TO BE ACCORDED IN THE ARBITRATION PROCEEDINGS OR IF THE INTEREST OR RESPONSIBILITY OF SUCH PERSON OR ENTITY IN THE DISPUTE IS NOT INSUBSTANTIAL.  THE PARTIES SHALL COOPERATE IN GOOD FAITH AND SHALL DILIGENTLY PERFORM SUCH ACTS AS MAY BE NECESSARY TO ENSURE THAT ALL NECESSARY AND APPROPRIATE PARTIES ARE INCLUDED IN THE ARBITRATION PROCEEDINGS.

(2)    **ADMINISTRATION OF PROCEEDINGS.**   THE ARBITRATION PROCEEDINGS SHALL BE CONDUCTED BY AND IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE "ARBITRATION PROVIDER" DEFINED BELOW.

(3)    **STATUTES OF LIMITATION**.  EXCEPT FOR PROCEDURAL ISSUES, AND TO THE EXTENT NOT INCONSISTENT WITH THE FEDERAL ACT, THE ARBITRATION PROCEEDINGS, THE ULTIMATE DECISIONS OF THE ARBITRATOR, AND THE ARBITRATOR SHALL BE SUBJECT TO AND BOUND BY EXISTING CALIFORNIA CASE AND STATUTORY LAW.   ARBITRATION MUST BE INITIATED PRIOR TO THE EXPIRATION OF ANY APPLICABLE STATUTES OF LIMITATION.

(4)    **SELECTION OF ARBITRATOR**.  THE PARTIES SHALL SUBMIT THE DISPUTE TO BINDING ARBITRATION AT CONSTRUCTION DISPUTE RESOLUTION SERVICES, INC. (**"CDRS"**), OR IF CDRS IS UNABLE TO ADMINISTER THE ARBITRATION OR IS DETERMINED BY A COURT OF COMPETENT JURISDICTION TO BE AN UNSUITABLE ARBITRATION PROVIDER, AT ANOTHER ARBITRATION PROVIDER AS MAY BE MUTUALLY ACCEPTABLE TO THE PARTIES (E.G., "JAMS" DEFINED BELOW, AMERICAN ARBITRATION ASSOCIATION [**"AAA"**] OR SIMILAR ENTITY PROVIDING ARBITRATION SERVICES) (**"ARBITRATION PROVIDER"**).  IF THE PARTIES ARE UNABLE TO AGREE UPON AN ARBITRATION PROVIDER WITHIN SUCH TEN (10) DAY PERIOD, THEN ANY PARTY MAY THEREAFTER SEEK TO HAVE AN ARBITRATOR APPOINTED BY THE SUPERIOR COURT FOR ORANGE COUNTY, CALIFORNIA UNDER THE CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1297.115.   THE ARBITRATOR SHALL BE A NEUTRAL AND IMPARTIAL RETIRED JUDGE OR AN ATTORNEY WITH SUBSTANTIAL EXPERIENCE IN RELEVANT MATTERS. IN SELECTING THE ARBITRATOR, THE PROVISIONS OF SECTION 1297.121 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE SHALL APPLY.  AN ARBITRATOR MAY BE CHALLENGED FOR ANY OF THE GROUNDS LISTED THEREIN, IN SECTION 1297.124 OR SECTION 1297.125 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.  IN ALL CASES, THE ARBITRATOR SHALL BE APPOINTED WITHIN THIRTY (30) DAYS FROM RECEIPT BY ANY PARTY OF A WRITTEN REQUEST TO RESOLVE THE DISPUTE BETWEEN THEM BY ARBITRATION.

(5)    **AUTHORITY OF ARBITRATOR**.  THE ARBITRATOR SHALL HAVE THE POWER TO HEAR AND DISPOSE OF MOTIONS, INCLUDING MOTIONS RELATING TO PROVISIONAL REMEDIES, DEMURRERS, MOTIONS TO DISMISS, MOTIONS FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT AND/OR ADJUDICATION MOTIONS, IN THE SAME MANNER AS A TRIAL COURT JUDGE. IN ADDITION, THE ARBITRATOR SHALL HAVE THE POWER TO SUMMARILY ADJUDICATE ISSUES OF FACT OR LAW, INCLUDING THE AVAILABILITY OF REMEDIES, EVEN IF THE ISSUE ADJUDICATED DOES NOT DISPOSE OF AN ENTIRE CAUSE OF ACTION OR DEFENSE.  THE ARBITRATOR SHALL HAVE THE POWER TO GRANT PROVISIONAL REMEDIES INCLUDING PRELIMINARY INJUNCTIVE RELIEF.  PRIOR TO THE SELECTION OF THE ARBITRATOR, ANY PARTY SHALL HAVE THE RIGHT, BUT NOT THE OBLIGATION, TO PETITION THE SUPERIOR COURT OF THE COUNTY FOR ANY NECESSARY PROVISIONAL REMEDIES.  HOWEVER, AFTER OBTAINING ANY PROVISIONAL REMEDIES (PENDING SELECTION OF THE ARBITRATOR) THE ENTIRE MATTER SHALL BE REFERRED TO THE ARBITRATION PROVIDER FOR ALL PURPOSES AND THE SUPERIOR COURT SHALL HAVE NO FURTHER JURISDICTION TO MONITOR OR ENFORCE THE PROVISIONAL REMEDIES OR TO MAKE FURTHER DETERMINATIONS OR AWARDS OR TO ISSUE ADDITIONAL PROVISIONAL REMEDIES.  THE ARBITRATION PROVIDER SHALL HAVE THE SOLE POWER TO ENFORCE, EXTEND, MODIFY OR VACATE ANY SUCH PROVISIONAL REMEDIES.

(6)    **DISCOVERY**.   DISCOVERY SHALL BE PERMITTED BY THE ARBITRATOR AT HIS DISCRETION UPON A SHOWING OF GOOD CAUSE OR BASED ON THE AGREEMENT OF THE PARTIES.    THE ARBITRATOR SHALL OVERSEE DISCOVERY AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE.  AT A MINIMUM, THE PARTIES WILL EXCHANGE ALL DOCUMENTS IN THEIR POSSESSION, CUSTODY OR CONTROL WHICH ARE EITHER RELEVANT OR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE AND EACH PARTY SHALL BE ENTITLED TO AT LEAST TWO PERCIPIENT WITNESS DEPOSITIONS AND THE DEPOSITIONS OF ALL DESIGNATED EXPERTS.

(7)    **FULL DISCLOSURE**.  EACH PARTY SHALL MAKE, IN GOOD FAITH, A FULL DISCLOSURE OF ALL ISSUES AND EVIDENCE TO EACH OTHER PARTY PRIOR TO THE HEARING.  ANY EVIDENCE OR INFORMATION THAT THE ARBITRATOR DETERMINES WAS UNREASONABLY WITHHELD SHALL BE INADMISSIBLE BY THE PARTY WHO WITHHELD IT.  THE INITIATING PARTY SHALL BE THE FIRST TO DISCLOSE ALL OF THE FOLLOWING, IN WRITING, TO EACH OTHER PARTY AND TO THE ARBITRATOR:  (i) AN OUTLINE OF THE ISSUES AND ITS POSITION ON EACH SUCH ISSUE; (ii) A LIST OF ALL WITNESSES THE PARTY INTENDS TO CALL; AND (iii) COPIES OF ALL WRITTEN REPORTS AND OTHER DOCUMENTARY EVIDENCE, WHETHER WRITTEN OR NOT OR CONTRIBUTED TO BY ITS RETAINED EXPERTS (COLLECTIVELY **"OUTLINE"**).   THE INITIATING PARTY SHALL SUBMIT ITS OUTLINE TO EACH OTHER PARTY AND THE ARBITRATOR WITHIN THIRTY (30) DAYS OF THE FINAL SELECTION OF THE ARBITRATOR.  EACH RESPONDING PARTY SHALL SUBMIT ITS WRITTEN RESPONSE AS DIRECTED BY THE ARBITRATOR.

(8)    **HEARING**.  THE ARBITRATION HEARING SHALL BE HELD IN THE COUNTY.  THE ARBITRATOR SHALL PROMPTLY COMMENCE THE HEARING GIVING DUE CONSIDERATION TO THE COMPLEXITY OF THE ISSUES, NUMBER OF PARTIES AND NECESSARY DISCOVERY AND OTHER RELEVANT MATTERS.  THE ARBITRATION SHALL BE CONDUCTED AS INFORMALLY AS POSSIBLE.  CALIFORNIA EVIDENCE CODE SECTION

Seller's Initials

Buyer's Initials

-14-

1152 ET SEQ. SHALL APPLY FOR THE PURPOSE OF EXCLUDING OFFERS, COMPROMISES, AND SETTLEMENT PROPOSALS FROM EVIDENCE, UNLESS THERE IS AGREEMENT BY ALL PARTIES AS TO ADMISSIBILITY. THE ARBITRATOR SHALL BE THE SOLE JUDGE OF THE ADMISSIBILITY OF AND THE PROBATIVE VALUE OF ALL EVIDENCE OFFERED AND IS AUTHORIZED TO PROVIDE ALL LEGALLY RECOGNIZED REMEDIES WHETHER IN LAW OR EQUITY, EXCEPT AS OTHERWISE LIMITED IN THIS PARAGRAPH 26(a). THE COST OF AN INTERPRETER SHALL BE BORNE BY THE PARTY REQUIRING THE SERVICES OF THE INTERPRETER IN ORDER TO BE UNDERSTOOD BY THE ARBITRATOR AND THE EXPENSES OF WITNESSES SHALL BE BORNE BY THE PARTY PRODUCING SUCH WITNESSES.

(9)    **DECISION**. THE DECISION OF THE ARBITRATOR SHALL BE BINDING ON THE PARTIES AND MAY BE ENTERED AS A JUDGMENT IN ANY COURT OF THE STATE OF CALIFORNIA THAT HAS JURISDICTION AND VENUE. THE ARBITRATOR SHALL (i) CAUSE A COMPLETE RECORD OF ALL ARBITRATION PROCEEDINGS TO BE PREPARED SIMILAR TO THOSE KEPT IN THE SUPERIOR COURT, (ii) TRY ALL ISSUES OF BOTH FACT AND LAW, AND (iii) ISSUE A WRITTEN STATEMENT OF DECISION CONSISTENT WITH THAT DESCRIBED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 643 WHICH SHALL SPECIFY THE FACTS AND LAW RELIED UPON IN REACHING THE ARBITRATOR'S DECISION WITHIN TWENTY (20) DAYS AFTER THE CLOSE OF TESTIMONY.

(10)    **FEES AND COSTS**. SELLER SHALL ADVANCE ANY FEE REQUIRED BY THE ARBITRATION PROVIDER TO INITIATE THE ARBITRATION PROCEEDINGS.   WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE TOTAL COST OF THE ARBITRATION PROCEEDINGS, INCLUDING THE INITIATION FEE ADVANCED BY SELLER AND OTHER FEES OF THE ARBITRATION PROVIDER AND ANY RELATED COSTS AND FEES INCURRED BY THE ARBITRATION PROVIDER (SUCH AS EXPERTS AND CONSULTANTS RETAINED BY IT) SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME. THE ARBITRATOR SHALL NOT AWARD ATTORNEYS' FEES TO ANY PARTY. NOTHING HEREIN SHALL BE CONSTRUED TO MODIFY OR ABROGATE ANY DUTY TO DEFEND AND/OR INDEMNIFY A THIRD PARTY PURSUANT TO THE TERMS OF A CONTRACT BETWEEN ANY SUCH PARTIES OR TO ESTABLISH A DIFFERENT ALLOCATION OF COSTS BETWEEN SELLER AND SUCH THIRD PARTY. A STENOGRAPHIC RECORD OF THE HEARING SHALL BE MADE WHICH SHALL REMAIN CONFIDENTIAL EXCEPT AS MAY BE NECESSARY FOR POST-HEARING MOTIONS AND APPEALS.   THE COST OF THE RECORD SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME.   SHOULD ANY PARTY REFUSE OR FAIL TO PAY ITS PRO-RATA SHARE OF THE COSTS OF ARBITRATION, THE REMAINING PARTIES MAY PAY SUCH SHARE, AND THE PARTY OR PARTIES WHICH PAY SUCH EXTRA SHARE SHALL BE AWARDED SUCH EXTRA COSTS BY THE ARBITRATOR IN THE ARBITRATOR'S DECISION. NOTWITHSTANDING THE FOREGOING, UNDER ALL CIRCUMSTANCES THE PARTIES SHALL BE RESPONSIBLE FOR THEIR OWN ATTORNEYS' FEES AND EXPERT WITNESS COSTS, SUBJECT ONLY TO REALLOCATION BY ANY APPLICABLE STATUTORY COST-SHIFTING MECHANISMS.

(b)    **JUDICIAL REFERENCE**. IF, AND ONLY IF, FOR ANY REASON ARBITRATION CANNOT BE LEGALLY USED TO RESOLVE A PRE-CLOSING DISPUTE BETWEEN THE PARTIES OR THE ARBITRATION PROVISIONS PROVIDED FOR IN PARAGRAPH 26(a) ARE HELD NOT TO APPLY OR DETERMINED TO BE INVALID, VOID OR UNENFORCEABLE IN WHOLE OR MATERIAL PART FOR ANY REASON PREVENTING THEIR USE, THEN THE PRE-CLOSING DISPUTE SHALL BE SUBMITTED FOR RESOLUTION TO GENERAL JUDICIAL REFERENCE WITHIN THIRTY (30) DAYS OF JUDICIAL DETERMINATION THAT THE ARBITRATION PROVISION IS INVALID, VOID OR UNENFORCEABLE, AS SET FORTH BELOW.   PRE-CLOSING DISPUTES SUTMITTED TO GENERAL JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1, INCLUSIVE, OR ANY SUCCESSOR STATUTES THERETO, SHALL BE SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

(1)    **COOPERATION**. THE PARTIES SHALL COOPERATE IN GOOD FAITH TO ENSURE THAT ALL NECESSARY AND APPROPRIATE PARTIES ARE INCLUDED IN THE JUDICIAL REFERENCE PROCEEDINGS.

(2)    **FEES AND COSTS**.  ALL FEES AND COSTS OF THE JUDICIAL REFERENCE PROCEEDINGS SHALL BE BORNE IN THE SAME MANNER AS ARBITRATION.

(3)    **REFEREE**. THE GENERAL REFEREE SHALL BE CHOSEN FROM THE PANEL OF REFEREES PROVIDED BY JUDICIAL ARBITRATION AND MEDIATION SERVICES, INC. (*"JAMS"*) AND SHALL HAVE THE AUTHORITY TO TRY ALL ISSUES, WHETHER OF FACT OR LAW, AND TO REPORT A STATEMENT OF DECISION TO THE COURT.

(4)    **PROCEEDINGS**. THE PARTIES SHALL USE THE PROCEDURES ADOPTED BY JAMS FOR JUDICIAL REFERENCE (OR ANY OTHER ENTITY OFFERING JUDICIAL REFERENCE DISPUTE RESOLUTION PROCEDURES AS MAY BE MUTUALLY ACCEPTABLE TO THE PARTIES), PROVIDED THAT THE FOLLOWING RULES AND PROCEDURES SHALL APPLY IN ALL CASES UNLESS THE PARTIES AGREE OTHERWISE:

(i)    THE JUDICIAL REFERENCE PROCEEDINGS SHALL BE HEARD IN THE COUNTY WHERE THE PROPERTY IS LOCATED.

(ii)    THE REFEREE MUST BE A NEUTRAL AND IMPARTIAL RETIRED JUDGE OR A LICENSED ATTORNEY WITH SUBSTANTIAL EXPERIENCE IN RELEVANT REAL ESTATE MATTERS.

(iii)    ANY DISPUTE REGARDING THE SELECTION OF THE REFEREE SHALL BE RESOLVED BY JAMS OR THE ENTITY PROVIDING THE REFERENCE SERVICES, OR, IF NO ENTITY IS INVOLVED, BY THE COURT WITH APPROPRIATE JURISDICTION.

(iv)    THE REFEREE MAY REQUIRE ONE OR MORE PRE-HEARING CONFERENCES.

(v)    THE PARTIES SHALL BE ENTITLED TO DISCOVERY IN ACCORDANCE WITH THE CODE OF CIVIL PROCEDURE, AND THE REFEREE SHALL OVERSEE DISCOVERY AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE.

Seller's Initials:

Buyer's Initials:

-15-

(vi)    A STENOGRAPHIC RECORD OF THE REFERENCE TRIAL SHALL BE MADE, PROVIDED THAT THE RECORD SHALL REMAIN CONFIDENTIAL EXCEPT AS MAY BE NECESSARY FOR POST-HEARING MOTIONS AND ANY APPEALS.

(vii)    THE REFEREE'S STATEMENT OF DECISION SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW TO THE EXTENT APPLICABLE AND SHALL BE ISSUED WITHIN TWENTY (20) DAYS AFTER THE HEARING HAS BEEN CONCLUDED.

(viii)    THE REFEREE SHALL HAVE THE AUTHORITY TO RULE ON ALL POST-HEARING MOTIONS IN THE SAME MANNER AS A TRIAL JUDGE.

(ix)    THE STATEMENT OF DECISION OF THE REFEREE UPON ALL OF THE ISSUES CONSIDERED BY THE REFEREE IS BINDING UPON THE PARTIES, AND UPON FILING OF THE STATEMENT OF DECISION WITH THE CLERK OF THE COURT, OR WITH THE JUDGE WHERE THERE IS NO CLERK, JUDGMENT MAY BE ENTERED THEREON.  THE DECISION OF THE REFEREE SHALL BE APPEALABLE AS IF RENDERED BY THE COURT.  THIS PROVISION SHALL IN NO WAY BE CONSTRUED TO LIMIT ANY VALID CAUSE OF ACTION WHICH MAY BE BROUGHT BY ANY OF THE PARTIES.

(x)    THE PARTICIPATION BY ANY PARTY IN ANY JUDICIAL PROCEEDING CONCERNING THIS PARAGRAPH 26(b) OR ANY PRE-CLOSING DISPUTE SHALL NOT BE DEEMED A WAIVER OF THE RIGHT TO ENFORCE THIS PARAGRAPH 26(b) NOTWITHSTANDING ANY PROVISION OF LAW TO THE CONTRARY, SHALL NOT BE ASSERTED OR ACCEPTED AS A REASON TO DELAY, TO REFUSE TO PARTICIPATE IN, OR TO REFUSE TO ENFORCE THIS JUDICIAL REFERENCE PROVISION.

(c)    **SMALL CLAIMS COURT**.  NOTWITHSTANDING ANY PROVISION OF THIS PARAGRAPH 26 TO THE CONTRARY, EITHER PARTY MAY USE SMALL CLAIMS COURT AS AN ALTERNATIVE TO ARBITRATION OR JUDICIAL REFERENCE OF A PRE-CLOSING DISPUTE IF THE AMOUNT IN CONTROVERSY IS WITHIN THE JURISDICTIONAL LIMITS OF SMALL CLAIMS COURT.

**27.  General Dispute Resolution Provisions**.

(1)    PARAGRAPHS 25 AND 26 SHALL INURE TO THE BENEFIT OF, AND BE ENFORCEABLE BY, SELLER'S TRADE CONTRACTORS, AGENTS, VENDORS, SUPPLIERS, DESIGN PROFESSIONALS, INSURERS AND ANY OTHER PERSON WHOM BUYER CONTENDS IS RESPONSIBLE FOR ANY ALLEGED DEFECT IN OR TO THE PROPERTY OR AN IMPROVEMENT THERETO.

(2)    IF ANY PROVISION OF PARAGRAPH 25 OR 26 IS IN CONFLICT WITH OR IS DIFFERENT THAN ANY ALTERNATIVE DISPUTE RESOLUTION PROVISION OF ANY CC&RS OF ANY HOMEOWNER'S ASSOCIATION, MASTER ASSOCIATION OR ANY OTHER COMMON INTEREST DEVELOPMENT ASSOCIATION, THE PROVISIONS SET FORTH IN PARAGRAPH 25 OR 26, AS APPLICABLE, SHALL CONTROL.

NOTICE:  BY INITIALING IN THE SPACE BELOW, YOU AND SELLER AGREE TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN PARAGRAPHS 25 AND 26 RESOLVED IN ACCORDANCE WITH THE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26.  YOUR AGREEMENT TO THE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS IS VOLUNTARY.  AS TO ALL DISPUTES SUBJECT TO THE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26, SELLER, ON BEHALF OF ITSELF AND ITS MEMBERS, OFFICERS, EMPLOYEES, CONTRACTORS, SUBCONTRACTORS, CONSULTANTS, AGENTS AND REPRESENTATIVES, AND BUYER WAIVE ANY RIGHTS TO JURY TRIAL, APPEAL AND OTHER CIVIL LITIGATION PROCEEDINGS FOR SUCH DISPUTES, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26.

I/WE HAVE READ AND UNDERSTAND THE FOREGOING AND  AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN PARAGRAPHS 25 AND 26 TO THE PROCEDURES SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26.

BUYER'S INITIALS    /              SELLER'S INITIALS

**28.  Miscellaneous.** This Agreement is the entire agreement between the Parties concerning the subject matter hereof. Buyer has not executed this Agreement in reliance upon any promise, assurance, agreement, representation or warranty not expressly set forth herein.  All advertising material is superseded by this Agreement.  All representations and warranties of the Parties and any indemnity by the Parties under this Agreement shall survive the Close of Escrow and the delivery of the Grant Deed.  All Addenda attached hereto are a part of this Agreement.

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

**ADDENDUM**

**LIMITED WARRANTY**



*Seller's Initials*

*Buyer's Initials*

**ADDENDUM**

**INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**



*Seller's Initials:*

*Buyer's Initials:*

**CONDITIONAL STATEMENT - NOTICE TO PROSPECTIVE BUYER**

The New Home Company Southern California LLC, a Delaware limited partnership ("**Seller**" or "**Subdivider**"), advises prospective buyers of residences in the above-referenced Project ("**Project**") of the following pursuant to California Business & Professions Code Section 11018.12(f):

(A)     As of the date of this Notice, the California Department of Real Estate ("**DRE**") has issued a Conditional Public Report ("**Conditional Report**") for the Phase but has not yet issued a Final Subdivision Public Report ("**Final Report**" or "**Public Report**") for the Phase.

(B)     If you decide to enter into an agreement to purchase a Lot in the Phase ("**Purchase Agreement**") prior to issuance of the Final Report, your obligation to purchase that Lot will not be revocable at will once Seller has accepted your offer to purchase. A purchase agreement entered into under authority of the Conditional Report for the Phase may only be terminated as provided in the Purchase Agreement.

(C)     A Purchase Agreement entered into under authority of the Conditional Report for the Phase (prior to issuance of a Final Report for the Phase) will provide that (i) no funds are to be released from escrow until a Final Report for the Phase has been issued by the DRE; and (ii) the purchaser has the right, at the purchaser's option, to terminate the Purchase Agreement and receive a full refund of all amounts previously deposited in escrow by the purchaser if a Final Report has not been issued by the DRE within six (6) months following the date of issuance of the Conditional Report (or by the expiration date of any renewal of the Conditional Report) or the purchaser is dissatisfied with the Final Report delivered to the purchaser due to a material change (pursuant to Business & Professions Code Section 11012) in the offering previously described in the Conditional Report.

(D)     The following information, which was not available at the time of issuance of the Conditional Report for the Phase, is required before the DRE will issue the Final Report for the Phase:

        1.          A Final Subdivision Public Report is issued by the DRE for this Phase and same has been provided to you;

        2.          Subdivider has acquired fee title to the residential lots in this Phase;

        3.          The Notice of Annexation to Portola Springs annexing this Phase into Portola Springs, has been recorded in the Official Records of Orange County, California ("**Official Records**");

        4.          The Declaration of Dispute Resolution Procedures for Olivewood has been recorded in the Official Records;

        5.          The Supplemental Declaration of Dispute Resolution Procedures for Olivewood for this Phase has been recorded in the Official Records;

        6.          The Declaration of Solar Energy Covenants and Restrictions for Olivewood has been recorded in the Official Records;

        7.          The Declaration of Annexation to Solar Energy Covenants and Restrictions for Olivewood for this Phase has been recorded in the Official Records;

        8.          A current preliminary report of a licensed title insurance company issued after recording of the above mentioned documents covering all subdivision interests to be included in the Public Report has been issued;

        9.          Subdivider's providing security acceptable to the DRE for six (6) months homeowner association assessments for the Portola Springs Community Association in compliance with Commissioner's Regulation 2792.9(a)(2) and executed assessment security agreement and instructions to escrow holder; and

        10.         Subdivider will record subordination for any deeds of trust prior to the first close of escrow (if applicable).

(E)     No person acting as a principal or agent shall sell or lease or offer for sale or lease lots or parcels in a subdivision for which a conditional public report has been issued except as provided in Division 4, Part 2, Chapter 1, Article 2 of the California Business & Professions Code Sections 11010, et seq.

SELLER:

DATE:

THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC,
a Delaware limited liability company

By:

Name: Michael Battaglia
Title: Authorized Person

I/We received this notice on                                           UYER:
prior to execution of a purchase agreement.

_____
Signature
Di Lan Ge
_____
Name

Signature

Xian Feng Gu

Name

ADDENDUM TO
PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

<u>CONDITIONAL PUBLIC REPORT</u>

(OLIVEWOOD)

This Addendum is attached and incorporated into the Purchase Agreement and Escrow Instructions entered into concurrently with this Addendum and to which this Addendum is attached (*"**Agreement**"*) between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (*"**Seller**"*), and the undersigned (*"**Buyer**"*), regarding Buyer's purchase of the residence (*"**Property**"*) in the Olivewood residential development. If there is any conflict between the provisions of the Agreement and this Addendum, this Addendum shall control. All defined terms used in this Addendum shall have the same meaning as set forth in the Agreement.

    1. **Conditional Public Report**. Buyer has entered into the Agreement based on a Conditional Subdivision Public Report issued by the California Department of Real Estate (*"**DRE**"*). Therefore, (i) no funds shall be released from Escrow, Escrow will not close and the Property will not be conveyed until a Final Subdivision Public Report is issued by the DRE for the Property and same has been provided to Buyer; (ii) if a Final Subdivision Public Report has not been issued within six (6) months from the date of issuance of the Conditional Subdivision Public Report or prior to the expiration of a renewal of the Conditional Subdivision Public Report, Buyer shall be entitled to terminate the Agreement, cancel Escrow, and within fifteen (15) days after written notice of such termination and cancellation is delivered to Seller and Escrow Holder, receive a refund of all amounts deposited by Buyer into Escrow; and (iii) if the Final Subdivision Public Report is issued respecting the Property but it is unsatisfactory to Buyer due to a material change (as described in Section 11012 of the Business and Professions Code) from the Conditional Subdivision Public Report based on which Buyer entered into the Agreement, Buyer shall be entitled to terminate the Agreement by written notice to Seller and Escrow Holder (*"**Termination Notice**"*) delivered within ten (10) days after Buyer's receipt of the Final Subdivision Public Report and cancel Escrow, and within fifteen (15) days after written notice of such termination and cancellation is delivered to Seller and Escrow Holder, Buyer shall receive a refund of all amounts deposited by Buyer into Escrow.

    2. **Purchase Money Deposit**. All purchase money paid by Buyer shall be deposited into Escrow in compliance with Section 11013.2(a) or 11013.4(a), and Section 11018.12(e), of the California Business and Professions Code.

    3. **Statement of Law**. No person or entity acting as a principal or agent shall sell or lease, or offer for sale or lease, lots, parcels or condominiums in a subdivision for which a Conditional Subdivision Public Report has been issued, except as provided in Division 4, Part 2, Chapter 1, Article 2 of the California Business and Professions Code (§§ 11010, et seq.).

    4. **Ratification of Agreement**. Except as provided above, the Agreement is hereby ratified by the parties and shall remain in full force and effect.

*[SIGNATURES ON FOLLOWING PAGE]*

*Buyer's Initials*

*Seller's Initials*

Buyer(s) has read and understands each of the foregoing provisions and agrees to be bound thereby.  Buyer(s) acknowledges receipt of a copy of this Addendum.  This Addendum shall not be binding on Seller until such time as it has been executed by a duly authorized representative of Seller.

Buyer                                                    Dated:

Di Lan Ge
Printed Name

Buyer                                                    Dated:

Xian Feng Gu
Printed Name

Buyer                                                    Dated:

Printed Name

Buyer                                                    Dated:

Printed Name

*"Buyer"*

Seller's Sales Representative                             Dated:

THE NEW HOME COMPANY                                     Dated:
SOUTHERN CALIFORNIA LLC, a
Delaware limited liability
company

By:

Its:    Authorized Agent

*"Seller"*

**ADDENDUM TO**
**PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

**SECOND DEPOSIT**

**(OLIVEWOOD)**

This Addendum is attached and incorporated into the Purchase Agreement and Escrow Instructions dated _____ (***"Agreement"***) between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), and the undersigned (***"Buyer"***), regarding Buyer's purchase of the residence described in the Agreement (***"Property"***). This Addendum supplements the Agreement and includes additional agreements of Buyer and Seller. If there is any conflict between the provisions of the Agreement and this Addendum, this Addendum shall control. Various capitalized terms used in this Addendum but not defined herein shall have the meanings assigned to such terms in the Agreement.

1. **Requirement of Second Deposit**. Buyer shall be obligated to pay to Seller the "Second Deposit" defined below if, upon Buyer's execution of the Agreement or at any time following execution of the Agreement, any of the following occurs:

(a) <u>Cash Payment Election</u>. If Buyer elects to pay the entire amount of the Purchase Price in cash, in which case concurrently with the delivery by Buyer to Seller of an executed Cash Payment Election Addendum in accordance with Paragraph 1(a) of the Agreement (***"Cash Election Deposit Date"***), Buyer shall pay to Seller the Second Deposit as provided in Section 2 below.

(b) <u>Outside Lender Election</u>. If Buyer elects to obtain any portion of Buyer's financing for the purchase of the Property from a lender or lenders (***"Outside Lender"***) other than <u>Justin Pope NMLS #44146 – US BANK,OR Jeanne Ball NMLS #130496</u> (Seller's preferred lender), in which case concurrently with the delivery by Buyer to Seller of an executed written authorization to allow Buyer's Outside Lender access to Buyer's purchase documents in accordance with Paragraph 2(d) of the Agreement (***"Outside Lender Election Deposit Date"***), Buyer shall pay to Seller the Second Deposit as provided in Section 2 below.

(c) <u>Investor Election</u>. If the Loan Approval described in Paragraph 2(c) of the Agreement provides that Buyer is purchasing the Property as an investment property, in which case within five (5) days following Buyer's receipt of the Loan Approval (***"Investor Election Deposit Date"***), Buyer shall pay to Seller the Second Deposit as provided in Section 2 below.

The Cash Election Deposit Date, the Outside Lender Election Deposit Date and the Investor Election Deposit Date shall be referred to herein individually as an ***"Applicable Deposit Date."***

2. **Amount and Payment of Second Deposit.** On or before the Applicable Deposit Date, Buyer shall deposit an amount equal to Seventy Five Thousand Dollars ($75,000.00) (***"Second Deposit"***), either into Escrow or with Seller, as determined by Seller in its sole discretion; provided, however, that if Seller has not satisfied the conditions for release of Buyer's deposits as provided in Paragraph 1(d) of the Agreement (collectively, ***"Deposit Release Conditions"***), Buyer shall deposit the Second Deposit into Escrow and upon such time as Seller has satisfied the Deposit Release Conditions, Escrow Holder shall, solely upon Seller's request, release the Second Deposit to Seller, without further Escrow instructions from Buyer or Seller. All funds shall be in the form of certified check or wire transfer paid through a California institution.

3. **Failure to Deposit.** If Buyer fails to deliver the Second Deposit in accordance with this Addendum, Seller may terminate the Agreement, cancel Escrow and proceed in accordance with Paragraph 8 of the Agreement.

4. **Ratification of Agreement**. Except as provided above, the Agreement is hereby ratified by the parties and shall remain in full force and effect.

***[SIGNATURE PAGES ON FOLLOWING PAGE]***

Acknowledged and agreed by the parties on the respective dates set forth below.

Buyer                  Dated:

<u>Di Lan Ge</u>
Printed Name

Buyer                  Dated:

<u>Xian Feng Gu</u>
Printed Name

Buyer                  Dated:

Printed Name

Buyer                  Dated:

Printed Name

*"Buyer"*

Seller's Sales Representative          Dated:

THE NEW HOME COMPANY SOUTHERN      Dated:
CALIFORNIA LLC, a Delaware limited liability
company

By:

     Its:     <u>Authorized Agent</u>

*"Seller"*



**ADDENDUM TO**
**PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

**LOAN PAYMENT ELECTION**

**(OLIVEWOOD)**

This Addendum is attached and incorporated into the Purchase Agreement and Escrow Instructions dated _____ (**"Agreement"**) between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), and the undersigned (**"Buyer"**), regarding Buyer's purchase of the residence described in the Agreement (**"Property"**). This Addendum supplements the Agreement and includes additional agreements of Buyer and Seller. If there is any conflict between the provisions of the Agreement and this Addendum, this Addendum shall control. Various capitalized terms used in this Addendum but not defined herein shall have the meanings assigned to such terms in the Agreement.

1.      **Loan Payment Election.**  Pursuant to Paragraph 1(a) of the Agreement, Buyer hereby elects to pay the balance of the Purchase Price with proceeds from the Loan in accordance with the Agreement.

2.      **Down Payment.**  On or before 5:00 p.m. California time on the date that is three (3) business days prior to the Closing Date, Buyer shall deposit in Escrow the remainder of the Purchase Price (i.e., total Purchase Price less Deposit less Loan Amount). Without limiting the generality of the foregoing, Buyer shall cause Buyer's Lender to deposit in Escrow the Loan Amount no later than one (1) business day prior to the Closing Date; provided, however, if the Closing Date falls on a Monday, Buyer's Lender will not be required to deposit the Loan Amount in Escrow until Monday morning before 10:00 a.m. California time. All funds shall be in the form of certified check or wire transfer paid through a California institution.

3.      **Availability of Funds.**

        (a)     **Buyer Representation and Warranty.**  As a material inducement to Seller to accept the Agreement, Buyer represents and warrants to Seller that Buyer now has and at all times during Escrow will have in its possession and control all funds necessary to enable Buyer to make all deposits and down payments required of Buyer under the Agreement in the amounts and at the times required under the Agreement or by Seller as applicable (**"Buyer Funds"**). As used in this Addendum "possession and control" means that (a) the Buyer Funds are in the actual possession of Buyer with no restrictions or limitations on Buyer's access to same and ability to deliver same to Seller in accordance with the Agreement or as otherwise required by Seller or (b) Buyer has immediate and unrestricted access to the Buyer Funds and ability to deliver same to Seller in accordance with the Agreement or as otherwise required by Seller. If at any time, the foregoing representation and warranty of Buyer is inaccurate or untrue in any respect, such inaccuracy or untruth shall constitute a default under the Agreement and entitle Seller to terminate the Agreement in accordance with Paragraph 8 of the Agreement.

        (b)     **Evidence of Availability of Funds.**  No later than five (5) days following the date Buyer executes this Addendum, Buyer shall deliver to Lender written evidence acceptable to Seller in its sole discretion, that the Buyer Funds are in the possession and control of Buyer (**"Funds Availability Evidence"**). The Funds Availability Evidence may include, without limitation, current bank statements in Buyer's name, current investment brokerage statements in Buyer's name and current institutional lender existing equity line of credit statements in Buyer's name, but only to the extent acceptable to Seller as evidence that the Buyer Funds are in Buyer's possession and control. If Buyer fails to provide the Funds Availability Evidence in a form and content acceptable to Seller in its sole discretion within the time period set forth above or if any material information in the Funds Availability Evidence is untrue, incomplete or inaccurate such failure or untruth, inaccuracy or incompleteness shall constitute a default by Buyer under the Agreement and entitle Seller to terminate the Agreement in accordance with Paragraph 8 thereof. Seller's acceptance of the Funds Availability Evidence shall not constitute (a) a waiver or release of any of its obligations under the Agreement, including, without limitation, the obligation to deliver the Buyer Funds to Seller in the amount and at the times required under the Agreement; or as otherwise required by Seller; (b) a waiver or release of Buyer from any of its obligations under this Addendum should Seller discover that the Funds Availability Evidence was untrue, inaccurate or incomplete and/or Buyer's representation and warranty under Section 4(a) become untrue or inaccurate at any time; or (c) any form of financing or loan approval to Buyer, which financing shall be obtained separately by Buyer in accordance with the Agreement.

        (c)     **Availability of Funds Not a Contingency.**  This Section is solely intended to provide Seller with assurances that the Buyer Funds are in Buyer's possession and control. This Section, including, without limitation, the actual availability of the Buyer Funds to Buyer does not create a contingency or condition of any kind for the benefit of Buyer (regardless of the source of the Buyer Funds and regardless of Seller's acceptance of the Funds Availability Evidence) to any of Buyer's obligations under the Agreement. Subject to Section 4(b) above, if the Buyer Funds will be obtained through the sale of any other property owned by Buyer, unless, at the sole discretion of Seller, a separate sale of home contingency addendum is executed by Buyer and Seller, under no circumstances shall such sale be deemed a condition or contingency to Buyer's obligations under the Agreement, including without limitation the obligation to close Escrow for the purchase of the Property.

4.      **Failure to Deposit.**  If Buyer fails to perform as set forth in Section 2 above, Seller may terminate the Agreement, cancel Escrow and proceed in accordance with Paragraph 8 of the Agreement.

5.      **Ratification of Agreement**.  Except as provided above, the Agreement is hereby ratified by the parties and shall remain in full force and effect.

*Seller's Initial:*

*Buyer's Initial:*



HLO\ Olivewood\ v.1 1/9/2024                    -1-

Acknowledged and agreed by the parties on the respective dates set forth below.

Buyer                                                      Dated:

Di Lan Ge
Printed Name

Buyer                                                      Dated:

Xian Feng Gu
Printed Name

Buyer                                                      Dated:

Printed Name

Buyer                                                      Dated:

Printed Name

*"Buyer"*

Seller's Sales Representative                              Dated:

THE NEW HOME COMPANY SOUTHERN                             Dated:
CALIFORNIA LLC, a Delaware limited liability
company

By: _____

Its:        Authorized Agent

*"Seller"*

ADDENDUM TO
PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

GENERAL DISCLOSURE STATEMENT

(OLIVEWOOD)

This General Disclosure Statement (*"Disclosure Statement"*) is attached and incorporated into that certain Purchase Agreement and Escrow Instructions (*"Agreement"*) between the undersigned Seller and the undersigned Buyer regarding the residence (*"Property"*) Buyer is purchasing in the Olivewood residential development (*"Project"*). Various capitalized terms used in this Disclosure Statement but not defined herein shall have the meanings assigned to such terms in the Agreement or in the "Master Declaration" (as defined below).

**This Disclosure Statement discloses various matters which might affect Buyer's decision to purchase the Property. Please read it carefully. The information set forth in this Disclosure Statement may not be the only information that may have an impact on Buyer's decision to purchase the Property. Because much of the information included in this Disclosure Statement has been obtained from third party sources (e.g., governmental and other public agencies (*"Governmental Authorities"*), public records, etc.) and is subject to change for reasons beyond Seller's control, Seller cannot guarantee the accuracy or completeness of such information. Further, Seller is not obligated to advise Buyer of any changes in the information contained in this Disclosure Statement. Buyer should independently verify the information in this Disclosure Statement that is of concern to Buyer. Seller also strongly recommends that Buyer visit the Project, Master Community (as defined below) and surrounding area on at least several occasions on different days and at different times to become familiar with physical and other conditions to determine whether there are material factors that might affect Buyer's decision to purchase the Property. It is imperative that Buyer investigate all matters respecting the Property, Project and/or Master Community that are of concern to Buyer.**

**As part of Buyer's purchase of the Property, in addition to the Agreement, Buyer will receive other documents and disclosures (collectively, the *"Purchase Documents"*). Buyer will also receive a Contiguous Area Report and other disclosures regarding the Master Community (collectively, *"Master Disclosures"*), prepared by Irvine Community Development Company LLC, the developer of the Master Community (*"Master Developer"*). This Disclosure Statement is not intended as a substitute for Buyer's review of the Purchase Documents, the Master Disclosures and "Management Documents" (defined below). In addition, in the event of a conflict between the provisions of this Disclosure Statement and the Agreement and any Purchase Documents, the Master Disclosures and/or Management Documents, such Purchase Documents and/or Management Documents shall control.**

*THIS DISCLOSURE STATEMENT IS AN IMPORTANT DOCUMENT. PLEASE READ IT CAREFULLY. BY EXECUTING THIS DISCLOSURE STATEMENT, BUYER AGREES TO DISCLOSE TO SUBSEQUENT PURCHASERS INFORMATION THAT BUYER HAS RECEIVED REGARDING THE PROPERTY AND PROJECT AND TO PROVIDE THIS DISCLOSURE STATEMENT AND ANY OTHER DISCLOSURE PROVIDED BY SELLER TO SUBSEQUENT PURCHASERS.*

1.     **Project**.  The Project is located in the City of Irvine (*"City"*), County of Orange (*"County"*), State of California. The Project is located within Enclave 5B of the master community of Portola Springs (*"Master Community"*), which will be developed by a number of builders over a period of many years. Master Developer may increase or decrease the actual number of residences built in the Master Community in its sole discretion. If developed as planned, the Master Community will consist of a variety of residential housing projects, open space, recreational and other community facilities. The Project may be developed in phases of development (*"Phases"*), and if completed as planned, the Project will consist of approximately one hundred (100) residences ("*Residences*") and various improvements. Seller provides no assurance or representation that the Project will be completed as proposed or that Residences will be available for sale to homebuyers. Seller reserves the right to rent or lease Residences, and Seller, in its sole discretion, may increase or decrease the actual number of Residences built in the Project and/or change the size, design or type thereof. Seller is not obligated to construct any future common improvements within the Project (except as to improvements for which bonds or other security have been posted in favor of the "Master Association" defined below) or in any later Phases, if applicable.

2.     **Master Declaration**.  The Property, Project and Master Community are or will be encumbered by a number of recorded documents, including but not limited to the "Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs" (*"Master Declaration"*). The Master Declaration includes various restrictions, including those that limit Buyer's use, occupancy, enjoyment, and future development of the Property and contains, among other provisions, Buyer's maintenance and repair responsibilities. **THE RESTRICTIONS CONTAINED IN THE MASTER DECLARATION, PURCHASE DOCUMENTS AND/OR MANAGEMENT DOCUMENTS WILL IMPACT VARIOUS ACTIVITIES OF BUYER AND BUYER'S USE OF THE PROPERTY WITHIN THE PROJECT AND MASTER COMMUNITY.**

3.     **Master Association**.  The Portola Springs Community Association ("*Master Association"*) is the management body for the Project and Master Community responsible for owning, maintaining and/or administering the real and personal property owned by the Master Association or in which the Master Association has an interest (*"Master Association Property"*) and for enforcing the covenants, conditions, restrictions and easements set forth in the Master Declaration ng assessments as set forth in the Master Declaration (*"Assessments"*). The maintenance

*Seller's Initial:*

*Buyer's Initial:*

responsibilities of the Master Association are generally set forth in the Master Declaration. The affairs of the Master Association are conducted by a board of directors ("*Board*") elected by the members of the Master Association as provided in the Master Declaration and/or Bylaws of the Master Association. Master Developer has extended control over the selection of members of the Board. Please review the Master Declaration regarding Master Developer's voting control. Buyer is entitled to vote for the members of the Board, and if nominated and elected, Buyer may serve on the Board. In addition to being responsible for managing and maintaining, as may be applicable, the Master Association Property and other areas as specified in the Master Declaration, the Master Association may be responsible for: (a) the establishment and operation of a design review committee ("*Design Review Committee*") with jurisdiction over the Project and Master Community; (b) the collection of Assessments as described in the Master Declaration; (c) the enforcement of the use restrictions set forth in the Master Declaration; and (d) the enforcement of any rules and regulations for the Project ("*Rules and Regulations*"). **PLEASE REVIEW THE MASTER DECLARATION FOR MORE DETAILS ABOUT THE MASTER ASSOCIATION.**

4.  **Membership in the Master Association**. Upon conveyance of the Property to Buyer, Buyer shall automatically become a Member of the Master Association and shall be obligated to pay Assessments to the Master Association. Buyer acknowledges and understands that such Assessments may be used to pay for, among other things, the maintenance of the Master Association Property. Buyer, his/her family members, lessees, tenants, guests and invitees, will be entitled to the use and enjoyment of the Master Association Property facilities in accordance with all applicable restrictions for the Master Community, including without limitation the Master Declaration, Articles of Incorporation and Bylaws of the Master Association and any Rules and Regulations or architectural and design guidelines (*"Design Guidelines"*) adopted by the Board (collectively, *"Restrictions"*).

5.  **Design Review Committee**. Certain construction, repairs and alteration of improvements on the Property (collectively, *"Improvements"*) cannot be performed unless Buyer obtains all necessary approvals from the applicable Governmental Authority (e.g., local permitting jurisdiction), and the Design Review Committee as described in the Master Declaration. Buyer acknowledges and agrees that significant limitations may exist as to what Improvements may be approved or allowed. Buyer should review the provisions and procedures regarding architectural review in the Master Declaration so that Buyer understands the process that must be followed in order to obtain approval. Buyer is also advised that approval by the Design Review Committee does not constitute approval by any applicable Governmental Authorities.

6.  **Receipt of Management Documents**. Buyer hereby acknowledges that the documents listed below ("*Management Documents*") have been provided to Buyer. Subject to the approval of the California Department of Real Estate (*"DRE"*) and any approvals required under the Master Declaration, prior to the Close of Escrow, Seller, in its sole and absolute discretion, may make material changes to the (a) Management Documents (except for those documents prepared by the Master Developer or Master Association), (b) overall development of the Project or (c) manner or content of any offering of Residences in the Project.

(i)     The filed Articles of Incorporation of the Master Association;
(ii)    The Bylaws of the Master Association;
(iii)   The Master Declaration;
(iv)    The Notice of Annexation annexing the Property to the coverage of the Master Declaration, if applicable;
(v)     The Declaration of Dispute Resolution Procedures ("*Dispute Resolution Declaration*");
(vi)    The Declaration of Solar Energy Covenants and Restrictions ("*Solar Declaration*");
(vii)   To the extent available, the current financial statement and related statements specified in Sections 5300, et seq., of the California Civil Code;
(viii)  To the extent available, statements prepared by the Board setting forth the outstanding delinquent assessments and related charges levied by the Master Association against the Property;
(ix)    To the extent available, any Design Guidelines for the Master Association; and
(x)     Final Subdivision Tract Map(s) for Tract No. 19176 ("*Tract 19176*").

*Seller's sales representatives are not authorized to explain, interpret or modify any of the legal documents covering or pertaining to the purchase of the Property, including without limitation the Agreement, this Disclosure Statement, the Purchase Documents and/or the Management Documents. Buyer is encouraged to seek the advice of Buyer's own legal counsel with respect to any questions Buyer may have concerning any such legal documents.*

7.  **Community Facilities Districts and Other Tax Assessment Districts**. The Project lies within the boundaries of one or more Community Facilities Districts and tax assessment districts. These Community Facilities Districts and tax assessment districts impose on the Residences in the Project special taxes, which are in addition to the regular property taxes on the Property. Buyer should take these taxes and the benefits from the facilities for which they pay into account in deciding whether to buy the Property. Buyer is encouraged to review the tax disclosure statement provided by Seller which disclose specific information regarding the Community Facilities Districts and tax assessment districts applicable to the Property, including without limitation the following:

(a)     Irvine Unified School District Community Facilities District No. 09-01. The Project lies within the boundaries of Irvine Unified School District (*"IUSD"*) Community Facilities District No. 09-01 (*"CFD No. 09-01"*) and will be subject to the special taxes thereof. The special taxes will be levied each year until all of the authorized facilities are built and all special tax bonds are repaid, but in any case not after the 2059-60 year. Buyer is encouraged to review the Notice of Special Taxes provided by Seller with respect to CFD No. 09-01



*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

which contains important information about the functions and rights of CFD 09-01 and Buyer's obligations with respect to CFD No. 09-01.

(b)    <u>Community Facilities District No. 1 of Irvine Ranch Water Distr</u>ict.  The Project is also a part of Community Facilities District No. 1 (**"CFD No. 1"**).  Irvine Ranch Water District (**"IRWD"**) has advised that there is no current bonded indebtedness or special tax authorized for CFD No. 1 and it would require a public hearing, an election and approval by two-thirds majority of the qualified voters within the district to authorize such assessments.  Additional information regarding CFD No. 1 can be obtained by calling IRWD.

(c)    <u>Assessment District No. 04-20</u>.  The Property is located within the boundaries of Assessment District No. 4-20 (**"AD No. 04-20"**).  The purpose of AD No. 04-20 is to pay for construction of major infrastructure improvements benefiting properties within AD No. 04-20.  The City has sold bonds for AD No. 04-20 in order to finance the infrastructure improvements.  The cost of these improvements and the bonds has been allocated by the assessment engineer among the various residences and other properties within the AD No. 04-20 boundaries.  The portion of the cost of the improvements and the bonds allocated to the Property constitutes a lien upon the Property (**"Assessment Lien"**).  The Assessment Lien on the Property will be paid off in installments, which will appear as a line item on Buyer's annual real property tax bill.  Section 163 of the California Revenue and Taxation Code requires that the City annually notify the County Assessor of the amount of the Assessment Lien on each property within AD No. 04-20.  Buyer should contact the City of Irvine Public Works Department at (949) 724-6406 for further information as to how the Assessment Lien may affect the Property assessed value for real property tax purposes.  Buyer is encouraged to review the Notice of Special Taxes provided by Seller with respect to AD No. 04-20 which contains important information about the functions and rights of AD No. 04-20 and Buyer's obligations with respect to AD No. 04-20.

(d)    <u>City of Irvine Landscape, Lighting and Park Maintenance Assessment</u>.  The Project is located within the City which currently provides maintenance, service and operation of certain lighting, landscape and park maintenance improvements through a Landscape, Lighting and Park Maintenance Assessment (**"Park Assessment"**).  This assessment will be levied annually on the property tax bill for the Property.  The annual Park Assessment is based upon the actual costs associated with the landscaping, lighting and park maintenance improvements, which means the assessment can fluctuate from year to year as maintenance contracts expire.  The amount of the Park Assessment is subject to an annual adjustment based upon the Consumer Price Index; however, the annual adjustment may not exceed 3.5% in any given year.  The amount of the annual adjustment will be decided by the City Council after a public meeting.  The City will administer the levy and collection of the Park Assessment.  For further information regarding the Park Assessment, Buyer should contact the City Clerk at (949) 724-6205 or the City's Public Works Department at (949) 724-6406.

(e)    <u>IUSD Recreation Improvement and Maintenance Distri</u>ct.  The Project is located within the boundaries of IUSD.  On May 6, 2003, the IUSD established the IUSD Recreation Improvement and Maintenance District (**"RIMD"**).  IUSD will levy an annual assessment against parcels within the RIMD, including the Property, to pay a portion of the costs of improving, maintaining and servicing IUSD's recreational facilities.  The annual assessment is based upon the actual costs associated with the improvement, maintenance and servicing of IUSD recreational facilities, which means the assessment can fluctuate from year to year as maintenance contracts expire.  This assessment will appear on the property tax bill of the Property.  The amount of the assessment levied against the Property is subject to an annual adjustment not to exceed 2% of the prior year's assessment in any given year.   For further information regarding this assessment, Buyer should contact IUSD's Deputy Superintendent at (949) 936-5035 or IUSD's Assessment Engineer, Willdan Financial Services, at (800) 755-6864.

8.    **Use Restrictions**.  The Master Declaration imposes on the Property (and on Buyer as the purchaser of the Property) certain restrictions and obligations which will affect Buyer's ability to use and enjoy the Property and/or the manner in which Buyer may use, improve and maintain the Property.

9.    **Homeowner Maintenance Recommendations**.  Seller will provide Buyer with written recommendations and schedules on the proper maintenance of the Property and the Improvements thereon (**"Homeowner Manual"**).  The recommendations in the Homeowner Manual are recommendations only.  Buyer should consult with applicable experts to ensure that all maintenance is done in an appropriate manner and time frame.  Failure to properly maintain the Property and Improvements may cause premature deterioration and/or loss of function of important features, finishes or equipment and safety risks and may void the limited warranty provided by Seller (**"Limited Warranty"**).  Seller is not responsible for failure of equipment or other Improvements or any damages resulting therefrom caused by Buyer's failure to properly maintain such Improvements.  In addition, Buyer acknowledges that certain upgrade materials selected by Buyer may have specific maintenance requirements.  Seller is also not responsible for any damages that may occur to such upgrade materials due to Buyer's failure to properly maintain them.

10.    **Homeowner Maintenance**.  Buyer shall have the duty to maintain, repair and replace, at Buyer's sole cost and expense, all Improvements within the Property, in a neat, clean, safe, sanitary, attractive and orderly condition at all times and in conformance with the Restrictions, any recommendations in the Homeowner Manual, product manufacturers' maintenance recommendations, and commonly accepted maintenance standards.

11.    **Yard Landscaping Installation and Maintenance**.  Installation of landscaping by Buyer within any yard areas on the Property [that] are not otherwise installed by Seller must be completed (a) within one (1) year following the Close

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.4 11.17.23

-3-

of Escrow for the Property and (b) in accordance with all requirements of the Design Review Committee and any applicable Governmental Authority before installation work begins. Buyer is responsible for maintenance of all the yard Improvements located on the Property.

12. **Right to Repair Law**. Seller has elected to be subject to the "Right to Repair Law" set forth in Division 2, Part 2, Title 7 (commencing with Section 895) of the California Civil Code (***"Title 7"***). Title 7 establishes Buyer's rights and obligations concerning claims for defective construction (***"Title 7 Claims"***). Chapter 4 of Title 7 establishes nonadversarial procedures to address Title 7 Claims. As provided in the Dispute Resolution Declaration for the Project, Seller intends to utilize the nonadversarial procedures set forth in Chapter 4 of Title 7. A copy of Title 7 is attached to the Dispute Resolution Declaration. Title 7 includes functionality standards that set basic performance standards for many of the components of the Residences in the Project. As long as these components perform to the level, and for the period of time, specified in the functionality standards, they are operating properly. Buyer is solely responsible for ensuring that Buyer understands Buyer's rights and obligations under Title 7. Buyer will receive a Homeowner Manual which includes recommended guidelines for maintenance of certain Improvements in the Property. Buyer should follow the guidelines set forth in the Homeowner Manual.

13. **Option Items/Upgrades**. All option and upgrade times that are offered by Seller, in its sole discretion, that Buyer selects and purchases to be installed or otherwise constructed on the Property will be added to the purchase price of the Property, regardless of how the option items are paid (e.g., whether paid for in cash or added to the home loan). The total purchase price of the Property (including all amounts paid for option and upgrades items) will be reported by Seller to the County Assessor's Office for the County in which the Property is located as required by law. Should Buyer have any questions or require further information, Buyer should contact the County Assessor's Office.

14. **Installation of Improvements**. Seller and its employees, representatives and agents (collectively, ***"Seller Representatives"***) have made no representation, and Buyer has not relied on any representation, regarding the ability of Buyer to install any Improvements on the Property. Local building and zoning code regulations and the Master Association may prevent the installation of certain Improvements in this area. Prior to commencing any Improvements within the Property, Buyer shall obtain written approval from the Design Review Committee, and to the extent necessary, from all appropriate Governmental Authorities. All portions of the Property shall be maintained by Buyer in a clean, safe and attractive condition at all times. Buyer understands that any Rules and Regulations and/or Design Guidelines adopted by the Board will have a significant impact on Buyer and the Property. Buyer further understands that Buyer will not be able to install any antenna, satellite dish, or any other similar electronic receiving or broadcasting device except as provided in the Restrictions.

15. **Inspection of Project and Master Community**. Nothing contained in this Disclosure Statement is intended to be a complete disclosure of all facts which Buyer may wish to consider in buying the Property. Buyer agrees that (a) Buyer has personally conducted an inspection of the Project, Master Community and the surrounding area and (b) Buyer has not relied on any information provided by Seller as Buyer's single source of information regarding same. Nothing contained herein is meant to imply that the items discussed herein are more important than any items not listed herein.

16. **Master Community Facilities and Development**. Except as otherwise provided in the Final Subdivision Public Report issued for the Property by the DRE (***"Public Report"***), there are no assurances that all facilities currently proposed for development in the Project, if any, and the Master Community will be constructed or installed. Except as provided in the Public Report, Seller and the Seller Representatives have made no representation or warranty concerning future development of the Project and Master Community and, in particular, regarding: (a) product type, (i.e., single family, etc.), size, and density; (b) architectural design, specifications, and design; (c) building elevations; (d) lot configuration; (e) building materials and cost; (f) whether all Phases of the Project and Master Community will actually be developed; (g) future recreational facilities; and (h) extent of development.

17. **Parks**. The Master Community is planned to include numerous public and private neighborhood parks.

(a)     _Private Parks_. Private neighborhood parks will be located throughout the Master Community. These parks are or will be owned, operated and maintained by the Master Association. Residents living near any neighborhood park will hear noise and experience glare from lighting, increased traffic and limited parking due to on-street parking associated with park activities. In particular, the Project is located immediately adjacent to a private park that may include, among other things, pool, spa and wading pool, lighted tennis and pickleball courts, lawn areas, shade structures, restrooms and parking area. Residents living in proximity to this park may experience noise, debris, glare from lights and other inconveniences emanating from activities at the park.

(b)     _Public Park_. A 25-acre community park is located in Enclave 4 of the Master Community. This park is owned by the City and is open to all residents of the Master Community and the general public. Amenities at this park include a community building, active sports fields, tot lot, restrooms and off-street parking. The facilities are lighted for night use. Residents living near this park will hear noise and experience glare from lighting, increased traffic and impacts on on-street parking related to park usage.

18. **Open Space, Habitat and Conservation Areas; Wildlife**. Natural open space areas are located both within and near the Master Community. Most of these open space areas are not open for public use, although trails within open space areas owned by the City may be opened for public use by the City in the future. The open space area easterly of Portola Springs Elementary School within Enclave 5A of the Master Community is owned by the City; however, pursuant to a

*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

-4-

separate agreement with the City, responsibility for maintenance of landscape areas within a portion of this open space area will be the responsibility of the Master Association. Several areas set aside for habitat and conservation purposes are located within the Master Community. Activities within these areas have been or will be restricted by covenants to ensure their preservation for habitat and conservation purposes. Other than for certain designated trails, access into the conservation areas is prohibited. Conservation and open space areas contain wildlife that may come onto property within the Project and Master Community. Wildlife seen within or near the Master Community include, but are not limited to, mountain lions, bobcats, coyotes, deer, snakes, raccoons, rabbits, crows and mice. In addition to wild animals, residents may be affected by plant life (including, but not limited to, poison ivy, poison oak and other poisonous vegetation) typically found in natural open space areas. These wild animals and plant life may cause noise, odors, pollen and other concerns. Insects of all types may also be present, including without limitation flies (including Mediterranean Fruit flies), mosquitoes, termites, spiders, stinging bees (including Africanized killer bees), ants (including Red Imported Fire ants), crickets and aphids. Animal wildlife may venture from natural open space areas into portions of the Residences, Project and Master Community. Buyer assumes all risks pertaining to such wildlife and plants and releases Seller and its members, managers, partners, shareholders, directors, officers, employees, consultants and agents from any and all claims, damages, costs, expenses, losses and other liability (including actual attorneys' fees) for death or injury to any person and/or damage to any property (including, but not limited to, plants, pets and vehicles) arising from or otherwise relating to such wildlife and plants.

19.    **Trails**. A number of public and private equestrian, hiking and biking trails are located throughout the Master Community. In addition, 11-foot wide Class 1 off-street paved trails are located along portions of Portola Parkway, Portola Springs and Modjeska. Various paved sidewalk trails, ranging in size from 4- to 8-feet wide, will be located throughout the Master Community. The trails along public streets are public trails that are maintained by the City, and the trails within individual neighborhoods will be private trails maintained by the Master Association. In addition to the trails described above, additional trails will be located within joint use access roads extending from the end of the Class 1 off-street paved trail on Portola Parkway toward and near the Agua Chinon Retarding Basin. These joint use access road/trails, which are planned to be maintained by the City, will be conveyed to the City in connection with the build-out of Enclave 5B. For further information on the proposed trails, please contact the City Community Services Department at (949) 724-6000.

20.    **Prior Use**. Prior to development, portions of the Master Community were used for cultivation of avocados. Fertilizers, pesticides, weed killers and other agricultural chemicals may have been used during farming operations and such chemicals may still exist within the Project and Master Community. In addition, a 25-acre site in the Master Community was used for research and testing of rocket engines and aircraft, which cause contamination of the soil and groundwater in the Village Square private park in Enclave 3 (owned by the Master Association) and surrounding portions of Enclave 3 at levels in excess of applicable regulatory standards. In connection with the development of Enclave 3, the affected soils and groundwater were remediated under the oversight of applicable Governmental Authorities to levels that allowed development of the site for residential and park uses.

21.    **Avocado Orchards**. Avocado orchards will be operated for an indefinite period of time near or adjacent to portions of the Master Community. The orchards attract animals, insects and vegetation. Chemicals contained in pesticides, insecticides, fertilizers and other products will be used in the cultivation and maintenance of the orchards. The chemicals may be applied by spraying the trees or weeds from the ground or by injection into the irrigation system. Aerial spraying of trees may also occur from time to time. Maintenance, spraying and wildlife activity will cause noise and other inconveniences to adjacent residents. Residents are prohibited from entering the orchards. The orchards are not currently included within the property subject to the Master Declaration but may be conveyed to the Master Association and annexed into the property subject to the Master Declaration in the future. If annexed, the property will be subject to the Master Declaration, and the costs of maintaining such property will cause increases in monthly Assessments payable by members of the Master Association.

22.    **Adjacent Agricultural Uses**. Properties adjacent to the Project and Master Community may be used for continuing agricultural and container nursery operations, including without limitation commercial nursery and agricultural operations located on the north side of Portola Parkway near its intersection with Hicks Canyon Haul Road. In addition, an agricultural garden is located in the Orange County Great Park on the other side of Ridge Valley across from the Master Community. Agricultural and nursery operations may result in noise, odors, dust, overspray of pesticides, herbicides and other chemicals and other inconveniences for residents in the Project and Master Community.

23.    **NOTICE OF RIGHT TO FARM**. The Project is presently located within one mile of a parcel of real property designated as "Prime Farmland," "Farmland of Statewide Importance," "Unique Farmland," "Farmland of Local Importance," or "Grazing Land" on the most current county-level GIS "Important Farmland Map" issued by the California Department of Conservation, Division of Land Resource Protection. Accordingly, Seller hereby advises Buyer as follows:

NOTICE OF RIGHT TO FARM. This property is located within one mile of a farm or ranch land designated on the current county-level GIS "Important Farmland Map," issued by the California Department of Conservation, Division of Land Resource Protection. Accordingly, the property may be subject to inconveniences or discomforts resulting from agricultural operations that are a normal and necessary aspect of living in a community with a strong rural character and a healthy agricultural sector. Customary agricultural practices in farm operations may include, but are not limited to, noise, odors, dust, light, insects, the operation of pumps and machinery, the storage and disposal of manure, bee pol      nd the ground or serial application of fertilizers, pesticides, and herbicides.

*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

-5-

These agricultural practices may occur at any time during the 24-hour day.  Individual sensitivities to those practices can vary from person to person.  You may wish to consider the impacts of such agricultural practices before you complete your purchase.  Please be advised that you may be barred from obtaining legal remedies against agricultural practices conducted in a manner consistent with proper and accepted customs and standards pursuant to Section 3482.5 of the Civil Code or any pertinent local ordinance.

24.     **Apartment Communities; Affordable Housing Sites**.  An apartment community has been constructed in Enclave 2 of the Master Community, and two (2) other apartment communities (one of which provides "affordable" rental units) are located in Enclave 3.  The market rate apartments will be included within the homeowners association for the Enclave where they are located, and their residents will have rights to use the private neighborhood parks and other facilities in the Master Community.  In addition, an affordable housing site in Enclave 6 of the Master Community has been conveyed to the City, and another affordable housing site is located in Enclave 3.  Residents of such affordable units are not members of the Master Association, but may, subject to certain restrictions, be entitled to use the amenities within any of the private neighborhood parks in the Master Community.  Seller is not the developer of the apartment communities and affordable housing sites and has no control over their development and makes no representations or warranties or assurances regarding same.

25.     **Groundwater Contamination**.  The former U.S. Marine Corps Air Station (MCAS) El Toro was closed on July 2, 1999.  As a result of solvents used in connection with maintenance of aircraft and other equipment during the U.S. Marine Corps' operations at the former base, groundwater in portions of the Irvine sub-basin has been found to contain trichloroethylene (**"TCE"**).  Studies by the Orange County Water District and U.S. Navy indicate that the TCE has migrated in the  groundwater  beneath the portions of Enclave 3 located  southerly of Pinehurst  Street.  The affected groundwater is located at depths of over 75 feet below the surface of the land.  As the responsible party, the U.S. Navy is obligated under federal and state law to remediate the TCE contamination.  The Navy has committed to perform such remediation and is proceeding with implementation of appropriate remediation programs.  For further information, please visit the U.S. Navy website at www.bracpmo.navy.mil, and under the "BRAC BASES" icon select "California" to find the information and contact persons for MCAS El Toro.

26.     **Orange County Great Park and Great Park Neighborhood**s. The Orange County Great Park (**"Great Park"**) and Great Park Neighborhoods developments are being developed and/or are proposed to be constructed within portions of the former MCAS El Toro, as described as follows:

         (a)     Great Park.  The City is developing the Great Park on City-owned property covering approximately 1,347 acres of the former MCAS El Toro property.  The Great Park includes or is planned to include sports fields, ice rink, open space, park, amphitheater, educational, veterans cemetery and other public uses.  Facilities within the Great Park are or will be lighted, and residents living near the Great Park will experience glare from lighting of facilities within the Great Park.  For information regarding the proposed Great Park, please contact the City Manager's Office at the City of Irvine, telephone (949) 724-6424, or visit either the City's website at www.cityofirvine.org (click on the "Orange County Great Park" link) or the Great Park website at www.ocgp.orgwww.ocgp.org.

         (b)     Great Park Neighborhoods.  A private developer is developing over 2,000 acres of land adjacent to the Great Park with residential, commercial, industrial and other uses, generally known as the "Great Park Neighborhoods."  The City has no ownership interest in the Great Park Neighborhoods.  For information regarding this development, please visit the Great Park Neighborhoods website at www.greatparkneighborhoods.com.

         (c)     Development Impacts.  It is anticipated that the Great Park and the Great Park Neighborhoods will take years to complete.  During the development period, residents of the Master Community will experience a number of inconveniences such as dust, construction traffic and noise, traffic detours and travel delays.  As the developments are completed, residents of all neighboring communities will experience permanent impacts from these developments, including but not limited to, increased traffic, increased use of schools, roads, libraries and other public facilities by new residents of the Great Park Neighborhoods, as  well as noise, glare and other inconveniences from facilities constructed within the Great Park and Great Park Neighborhoods (including but not limited to, amphitheaters, stadiums, sports fields, ice rink, museums, commercial shopping centers, parks, golf courses, educational facilities and other improvements).

         (d)     No Representations.  The Great Park and the Great Park Neighborhoods are being developed independently of the Master Community, and neither Master Developer nor Seller nor any of their affiliates have any control over the operations, activities or uses of the land within either development.  No representations are made as to (i) whether the Great Park or the Great Park Neighborhoods will ever be fully developed or (ii) the ultimate uses that will be developed within or around the Great Park property.

27.     **Cemetery/Park**.  In July 2014, the City Council adopted a resolution regarding its intent to convey a 125-acre parcel of land within the Great Park to the State of California for a veterans cemetery and memorial park (**"Cemetery/Park"**).  In September 2014, the State of California approved a bill to establish a veterans cemetery in the County.  Final approval of the Cemetery/Park location has not occurred.  Construction of the Cemetery/Park is planned to occur after (a) a final location is approved, and (b) funding for design and construction is raised.  No representation is

*Seller's Initial*: 

*Buyer's Initial*:

HLO\ Olivewood\ v.4 11.17.23

made as to where the Cemetery/Park will ultimately be located.  Further, there is no assurance whether funding for the Cemetery/Park will be obtained or whether the Cemetery/Park will ever be built.

28.    **FBI Land**.  Approximately 897 acres of land located easterly of Enclave 5 of the Master Community (**"FBI Property"**). is owned by the Federal Bureau of Investigation (**"FBI"**).  This land was previously a part of the former MCAS El Toro, and a former explosive ordnance disposal range is located next to the FBI Property.  The FBI has indicated that this land is now used as an active live-fire training facility with training occurring year-round during day and evening hours.  Public access into the FBI Property is prohibited.

29.    **Adjacent Retail and Commercial Uses; Daycare Facility**.  The Master Community is located within one mile of various shopping centers, office buildings, vehicle maintenance facilities and/or light manufacturing facilities that are zoned by the City to allow for commercial, industrial and manufacturing uses.  In addition, a children's daycare facility is open at the terminus of Tomato Springs road next to the community park in Enclave 4 of the Master Community.  This facility is privately owned.  No representation is made as to the uses, operations and manufacturing activities allowed in such areas or whether such uses will remain the same or change in the future.

30.    **Bowerman Landfill**.  The Master Community lies less than a half mile south of the Bowerman Landfill.  This landfill is owned and operated by the County and covers over 700 acres of land.  The County proposes to continue and expand operation of the landfill until 2053.  A landfill gas extraction and renewable energy plant is operated at the landfill.  In October 2020, the County began operation of a greenwaste facility at the landfill.  This facility will convert greenwaste brought to the landfill into compost for distribution and reuse at off-site locations as a soil amendment and for erosion control.  The landfill is visible from the Master Community.  The ultimate elevation for the expanded landfill is planned to be approximately 1350 feet above sea level, which is considerably higher than existing views of the landfill site.  Trucks traveling to the landfill will cause noise and increased traffic on Portola Parkway.

31.    **Jail Facility**.  The James A. Musick Facility is a jail facility operated by the County Sheriff's Department.  The facility is located on a 94-acre site between Alton and Barranca Parkways slightly over one mile from Enclaves 3 and 5 of the Master Community.  This former minimum-security facility was temporarily closed in 2019.  After receipt of state funding in 2020, the County awarded a contract to expand the facility, with an estimated completion date in 2023 according to the County Sheriff's website.  The expanded facility will boost the facility's capacity to 2,208 persons and will be considered to be a "mental health" jail.

32.    **Adjacent Residential Development**.  Some land adjacent to the westerly side of Enclave 4 of the Master Community, known as "Lambert Ranch," is not owned by Master Developer.  This land has been developed with residential homes.  Residents of the Master Community will have no rights to use amenities constructed within Lambert Ranch.

33.    **Pedestrian and Bicycle Bridge**.  A bridge across Portola Parkway provides pedestrian and bicycle access between the conservation area south of Portola Parkway to the open space area in Enclave 4 of the Master Community.  The bridge is owned and maintained by the City.

34.    **Fuel and Gas Lines**.  A jet fuel line is located within or next to the northerly side of Irvine Boulevard south of Enclaves 3 and 6 of the Master Community.  This inactive line is owned by the United States government and was formerly used to transport jet fuel to the former MCAS El Toro.  Future use of the jet fuel line is uncertain.  A high pressure natural gas line, which is owned and operated by Southern California Gas Company, is also located within or next to Irvine Boulevard.

35.    **Bee Canyon Drainage Channel**.  The Bee Canyon Drainage Channel (**"Channel"**) is located within Enclave 4 of the Master Community.  The Channel's primary function is to provide flood protection from storm flows.  Residents living near the Channel may be subject to odors, insects and other inconveniences from the presence of the Channel.  During and after periods of rain, fast moving water flowing in the Channel may be a danger to children or pets playing in the vicinity of the Channel.  The Channel is maintained by the City.

36.    **Fire Station**.  A fire station is located in the vicinity of the Project at Portola Springs and Modjeska.  Residents living in the vicinity of this fire station may experience inconvenience from siren noise and activities associated with the operation of the fire station.  For further information, Buyer should contact the Orange County Fire Authority (**"OCFA"**) at (714) 573-6100.

37.    **Elementary Schools**.  Portola Springs Elementary School, a public school operated by the IUSD is located on the south side of Portola Parkway at its intersection with Portola Springs Road.  The school serves students in grades K-6.  A second elementary school, Loma Ridge Elementary School, is located on Tomato Springs Road (north of Portola Parkway) near the community park.  This school also serves students in grades K-6.  Residents living in the vicinity of these schools will experience noise, increased traffic, glare from lighting and other inconveniences from the operation of these schools.

38.    **Water Pump Stations**.  Water pump stations are in several locations within the Master Community.  In addition, several vaults for pressure reduction valves are located adjacent to Portola Springs Road in Enclave 4 of the Master Community, along with a 35-foot high radio telemetry antennae.  The antennae convey information regarding water pressure to IRWD.  These pump stations, vault and antennae facilities are owned and operated by IRWD.

*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

39.     **Water Basins**.  The Master Community is served by four (4) retarding basins that are designed to reduce peak storm flows to drainage systems below the basins.  Two (2) of the basins, the Bee Canyon and Round Canyon Retarding Basins, are located on the north side of the SR-241 as depicted on the Local Contiguous Area Map.  A third basin, known as the Aqua Chinon Retarding Basin, is located in the Master Community on the easterly side of Enclave 5B.  The fourth basin, Marshburn Retarding Basin, is located south of the Master Community within the Great Park development area.  All four (4) basins will be maintained by the Orange County Flood Control District, although the "natural treatment system" facilities within the Marshburn Basin will be maintained by the IRWD.  These basins provide flood protection and storm water quality benefits and are operated by the Orange County Flood Control District.  A dam inundation study was prepared for the Agua Chinon basin facility in 2020.  The study indicates that in the event of an unexpected failure of the Agua Chinon dam embankment, flooding would occur that would impact certain landscape lots in Enclave 5 but would not affect any residential structures.

40.     **Water Reservoirs and Transmission Pipelines**.  Five (5) water reservoirs owned by the IRWD and two (2) major water transmission pipelines are located in the vicinity of the Master Community.  In the event of a rupture of any reservoir or pipeline, local flooding would result and could cause property damage, personal injury or death.

41.     **Archaeological Findings**.  There are sites in Enclave 4 of the Master Community that have been identified as having archeological or historical importance.

42.     **University of California Agricultural Research & Extension Center**.  The University of California operates an agricultural research facility adjacent to Enclaves 2 and 3 of the Master Community.  The University conducts research and cultivates plants at this facility.  As with all nursery and agricultural operations, pesticides, herbicides and other chemicals may be applied to the land, plants and trees from time to time.

43.     **Solar Shading Restrictions**.  The Solar Declaration imposes solar shading restrictions upon the Owners of Residences (each, an *"Owner*," collectively, *"Owners"*) in an effort to ensure that the installation of Improvements and landscaping that might create shade does not unreasonably impair the efficiency of a solar energy system.  In addition to the restrictions set forth in the Solar Declaration, all Owners will be subject to all applicable laws, including without limitation the Solar Shade Control Act which can be found in California Public Resource Code § 25980 et seq. (*"Solar Act"*).  Buyer acknowledges that the solar shading restrictions under the Solar Declaration and the Solar Act may restrict certain construction activities on a Residence, including without the installation of any upper-floor additions.

44.     **Fuel Modification and Fire Protection**.  The Master Community is located near large open space areas that are susceptible to fire.  Portions of Enclave 5B are within a Very High Fire Hazard Severity Zone; however, according to the "NHD" defined below, the Project is not located within a Very High Fire Hazard Severity Zone.  In accordance with requirements of the OCFA, fuel modification zones have been established in portions of the Master Community.  The zones are intended to provide a buffer between the Master Community and flammable areas.  In addition, the Project is subject to a Fire Protection Plan which (a) depicts, among other things, the residential lots in the Project and designates them as being within either the Ember Mitigation Zone or the Radiant Heat Zone, (b) enumerates the special construction features (and the Codes (i.e., Building Code, Residential Code and Fire Code)) applicable to the Residences and other Improvements originally constructed or otherwise installed thereon by Seller or subsequently constructed or installed thereon by the Owner (e.g., a structure of an accessory or miscellaneous character such as decks, trellises, arbors, patio covers, gazebos, etc.,) and (c) includes additional notes regarding any special maintenance applicable to the Project.  The Fire Protection Plan designates Lot 7 through 25, inclusive, of Tract 19176 as being in the Radiant Heat Zone and all other residential lots in Tract 19176 as being in the Ember Mitigation Zone.  Buyer must comply at all times with the requirements imposed by the Fire Protection Plan as applicable to the Property.  Buyer is prohibited from building or otherwise installing any Improvements which are not in compliance with the restrictions imposed by the Fire Protection Plan without the prior written consent of OCFA and the City.  Certain large insurance companies have recently stopped or curtailed writing new insurance in California due to, among other things, high wildfire risk.  Buyer assumes the risk that this may impact the ability of Buyer to obtain hazard insurance.

45.     **Security and Privacy Disclaimer**.  Seller does not undertake to provide security or privacy for the Project, Master Community or any Owners, nor does Seller make any representations or warranties concerning the privacy, security and safety of the Project, Master Community or Owners.

46.     **View Impairment**.  There are no oral or written statements, representations or warranties concerning any view, present or future, that may be enjoyed from all or any portion of the Property or anywhere else in the Project.  The Master Declaration does not include provisions which protect the views from Residences.  Buyer acknowledges that: (a) there are no protected or guaranteed views, and no Residence is assured of the existence, quality, or continuation of any particular view; (b) any view from the Residence is not intended as part of the value of the Residence and is not guaranteed; and (c) any future development, construction, landscaping, growth of trees or other installation or improvements by Seller or other Owners or on adjacent properties may impair the view from the Property.  Even if the Property enjoys views, Buyer acknowledges that the views, if any, which the Property currently enjoys may be impaired and may be obstructed by the construction of other structures, fences, walls, and other improvements or the addition and growth of landscaping within the Project or on adjacent properties.  The landscaping will grow in height and width, and additional landscaping and other improvements may be added to adjacent properties at any time.

47.     **Sales and Rental Activity**.  Sales and rental activities will be occurring within the Project and Master Community.  This may result in inconvenience to residents in the Project due to increased noise, traffic and debris from the operation ___ odel units and sales and rental office.  As a result of sales and rental activities, certain areas within

*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

-8-

the Project and/or certain services servicing the Property may be temporarily interrupted or adversely affected, including but not limited to public and private utilities (e.g., water, electrical, cable television, sewers, storm drain, etc.) and parking which may be used by Seller for special events.  Buyer acknowledges that during the period Residences are marketed for sale or rental, portions of the Project will be used for sales and rental purposes and that such portions of the Project may not be available for the use of residents of the Project.  Seller reserves the right, at its sole discretion, to use any portion of the Project to, among other things, (a) operate sales and rental offices and models and (b) display signs, banners and other promotional materials in connection with its program of marketing, renting and selling Residences.

48.     **Advertising Devices**.  Nonexclusive easements of access, ingress and egress have been reserved to Seller over the Project and Master Community to enable Seller to erect, maintain and/or remove from that portion of the Project selected by Seller, marketing, advertising, tract or Project identification and other signage or advertising displays (*"Advertising Devices"*) deemed necessary by Seller to enable Seller to complete the development and marketing of Residences in the Project.  The Advertising Devices placed by Seller may obstruct light and views from the Project and may create other inconveniences, including, without limitation, negative aesthetic effect and noise associated with periodic vehicular and pedestrian traffic adjacent to and/or across the Project and Master Community for purposes of installation, maintenance and removal of the Advertising Devices and light shed.   Seller's rights with respect to the placement, maintenance and removal of Advertising Devices in the Project and Master Community shall continue until Seller has completed marketing of the Project.

49.     **Surrounding Development; Traffic**.  There are no written or oral representations or warranties concerning the impact on the Property of any future development or uses (including, without limitation, noise, traffic, and the type, style, or density) associated with future development of any real property in the vicinity of the Project and Master Community.  Real property in the vicinity of the Project and Master Community may be developed to accommodate land uses compatible with the applicable zoning and general plan designations for said property, as determined or modified by the City, County or applicable Governmental Authority.  Such development may modify existing developed areas, traffic patterns, and/or undeveloped areas.  There may be traffic signals installed near the Project.  Buyer and other residents within the Project  may  experience, and/or be exposed to, among other things,  glare from bright lights and  noise in connection with the public's use of adjacent roadways and traffic signals.  For more information about the existing and future traffic signals, Buyer should contact the applicable engineering department and/or agency.  Seller has no control over the location and/or installation of traffic signals or what may be built in the surrounding areas.  The development of property adjacent to or in the vicinity of the Project may modify traffic patterns in the vicinity of the Project.  The Project may be located in close proximity to several highways and major thoroughfares.  In particular, the Eastern Transportation Corridor (SR133) is located easterly of and in the vicinity of the Project, the Foothill Transportation Corridor (SR241) is located adjacent to northerly of and in the vicinity of the Project.  Noise and lights from such corridors and roadways will impact the Project and Master Community.  Portola Springs Road is a 2- to 4-lane local collector roadway, completed to its ultimate width.  Seller makes no representation as to the impacts of any freeway or road or the potential for expansion, widening or other improvements that may be planned for any freeway or road in the vicinity of the Project and Master Community, and Seller has no control over the use, maintenance or care of these highways and thoroughfares.  Some, if not all, of these highways and streets are heavily traveled at most hours of the day and night.  Noise will impact all homes in the Project and the level of noise may be considered significant.  Buyer will be impacted by dust, wind, vibrations, fuel particles, air pollution, fumes, odors, bright lights, traffic congestion, significant noise, and other impacts from such freeways and roads.   For further information, Buyer is advised to contact the City, County or other appropriate Governmental Authority.

50.     **Ongoing Development and Construction Activity**.  The ongoing construction and sale of homes in the Project and Master Community may cause Buyer some inconvenience (e.g., noise and dust from construction traffic, travel delays due to construction traffic, possible road closures and detours and prospective buyers visiting the model complexes and sales offices).  During the development of the Project and Master Community, there will be significant construction activity which may continue over a period of years.  Construction activity may include, without limitation, grading, construction, drilling, and excavation work both within and outside of the Project and Master Community, including without limitation on-site and off-site improvements which may impact Buyer and the Property.  The streets within and in the vicinity of the Project and Master Community will also be subject to construction-related activities, including, without limitation, vehicular transportation of building materials, equipment, and personnel, ongoing construction, staging, storage, and other related activities.  There will be substantial construction noise, dust, traffic interruptions and other inconveniences associated with completion of homes, streets, community and neighborhood parks and other facilities within the Master Community and within the neighboring Great Park and Great Park Neighborhoods development.  All activities described in this Paragraph will present increased traffic as well as dust, dirt, pollution, gasoline (including diesel) fumes, noise, and the like.  Due to the ongoing development of the Project and Master Community, public and private infrastructure and utilities in the Project servicing the Property may be temporarily interrupted from time to time and/or adversely affected.  Construction activities within and in the vicinity of the Project and Master Community may occur seven (7) days a week at all hours allowed by the applicable Governmental Authority.  Buyer has investigated the pending development plans and existing and proposed land uses associated with those areas surrounding the Project and Master Community.

51.     **As-Built Conditions**.  Various engineering and architectural plans pertaining to the Project, including, but not limited to, subdivision maps, grading plans, plot plans, improvement plans and building plans (collectively, *"Plans"*), contain dimensions regarding certain aspects of the Property and/or Project.  Subject to Paragraph 68 below, the Plans are for construction purposes only and cannot be relied upon by Buyer for any purpose.  Subject to Paragraph 68 below, the depiction of buildings, facilities or improvements on any renderings, topographic maps, Plans, videos, drawings, sales brochures and other advertising materials or information provided by Seller (collectively,  *"Project Materials"*) _____ constitute a representation, warranty or covenant by Seller that such buildings, facilities or

*Seller's Initials:* _____

*Buyer's Initials:* _____

HLO\ Olivewood\ v.4 11.17.23

-9-

improvements will be constructed (except as to buildings, facilities or improvements for which bonds or other security have been posted with the DRE) or that they will be constructed in accordance with the Project Materials. The Project Materials have not been prepared to scale and are subject to change without notice to Buyer. All renderings are intended as artist's conceptions and show non-standard landscaping. If there is a discrepancy between the Plans or other Project Materials and the actual as-built conditions of the Property, the as-built conditions will control. Buyer is advised to investigate the Property to determine the actual location of such items. Subject to Paragraph 68 below, the usable, habitable or buildable location and configuration of the Property, Project and all improvements located thereon may fluctuate from that shown or displayed to Buyer in Plans, models, vignettes, artists' renderings and Project Materials. Subject to Paragraph 68 below, the location, size, height and composition of all walls and fences to be constructed in the Project or adjacent thereto shall be determined by Seller in its sole and absolute discretion and despite models, drawings or topographic maps displayed to Buyer. Neither Seller nor the Seller Representatives have made any representations, warranties or assurances as to the size, height, location or composition of any wall or fence to be constructed in or adjacent to the Project. ALL DEPICTIONS, STATEMENTS OR OTHER REPRESENTATIONS OF SQUARE FOOTAGE ARE APPROXIMATE ONLY. BUYER MAY NOT RELY UPON ANY MODELS, VIGNETTES, ARTISTS' RENDERINGS, PROJECT MATERIALS, PLANS OR ORAL STATEMENTS BY SELLER OR SELLER'S REPRESENTATIVES REGARDING THE EXACT SQUARE FOOTAGE OR DIMENSIONS OF BUYER'S RESIDENCE NOR DOES SELLER PROVIDE ANY REPRESENTATIONS OR ASSURANCES IN CONNECTION THEREWITH. IN ADDITION, THE BOUNDARIES OF BUYER'S RESIDENCE SHOWN ON ANY PLAN OR MAP ARE APPROXIMATE ONLY. BUYER MAY NOT RELY UPON ANY MODELS, VIGNETTES, ARTISTS' RENDERINGS, PROJECT MATERIALS, PLANS OR WRITTEN OR ORAL STATEMENTS BY SELLER OR THE SELLER REPRESENTATIVES REGARDING THE EXACT BOUNDARIES OF THE PROPERTY. THE ACTUAL BOUNDARIES OF THE PROPERTY ARE THE PHYSICAL BOUNDARIES OF THE PROPERTY NOTWITHSTANDING ANY DEPICTIONS OF SAME IN ANY MAPS OR PLANS.

52.    **Design Features**. Window locations, window types, ceiling pitch and height, architectural projections, room dimensions and configuration, color schemes, exterior colors, roof materials and other similar features for Residences (**"Design Features"**) may vary from Residence to Residence and may differ from those displayed in any model, vignette, artists' renderings and/or Project Materials. The elevation and color schemes for the Property are pre-plotted and cannot be changed by Buyer. Subject to Paragraph 68 below, not all of the Design Features displayed in the models, vignettes, artists' renderings or Project Materials may be included in the Property, and the Design Features for the Property may be changed or eliminated by Seller, in its sole discretion, during construction.

53.    **No Improvements by Buyer**. Buyer may not make any changes or additions of any kind to the Property prior to the Close of Escrow (e.g., alarm systems, home intercoms, stereo wiring, built-ins, installation of flooring, etc.). Such changes will void portions of the Limited Warranty. Only those options and upgrades, if any, specifically listed on the option list provided by Seller and included in a Final Option Agreement executed by Buyer and Seller will be made by Seller. Buyer may not make interior or exterior construction changes or alterations not otherwise offered to Buyer at point of sale.

54.    **Fire Sprinkler System**. An automatic fire sprinkler system has been installed in the Property. The fire sprinkler system is heat-sensitive and should not be exposed to an open flame. Certain physical and legal limitations may exist with respect to Buyer's ability to install Improvements to the ceiling or other portions of the Property that impact the fire sprinkler system. Buyer should check with the local Governmental Authority before installing or altering any Improvements in the Property that may impact or affect the fire sprinkler system. Seller is not responsible for any damage to the Property or any personal property caused by the activation of the fire sprinkler system. Buyer understands that a fire in the Property will trigger the release of water from the automatic fire sprinkler system and that water damage to the Property and personal property therein may occur. Buyer is prohibited from covering, modifying or attempting to modify the fire sprinkler system in any way, including without limitation hanging any items, or otherwise damaging any exposed pipes in the Property. Buyer is responsible for the maintenance and repair of the fire sprinkler system.

55.    **Post Tension Concrete Slabs**. Concrete slabs (e.g., floor and/or foundation) for Residences constructed in the Project are reinforced with a grid of steel cable installed in the concrete slab and then tightened to create extremely high tension. This type of slab is commonly known as a "Post Tension Slab." Cutting into a Post Tension Slab for any reason (e.g., to install a floor safe, to remodel plumbing, etc.) is very hazardous and may result in serious damage to the Residence and/or personal injury. Buyer agrees that: (a) Buyer shall not cut into or otherwise tamper with the Post Tension Slab; (b) Buyer shall not permit or allow any other person to cut into or tamper with the Post Tension Slab; (c) Buyer shall disclose the existence of the Post Tension Slab to any person who rents, leases or purchases the Property; and (d) Buyer shall indemnify, defend and hold Seller and its respective officers, employees, contractors, and agents free and harmless from and against any and all claims, damages, losses or other liability (including attorneys' fees and costs of court) arising from any breach of this covenant by Buyer.

56.    **Parking**. The Master Declaration contains restrictions on parking which limit the type, size and number of vehicles that Buyer may park on the Property and in the Project and Master Community. All of the streets within Tract 19176 are public streets and are subject to all applicable laws, ordinances and regulations of the City and any other Governmental Authority having jurisdiction over parking along public streets. As more fully set forth in the Master Declaration, parking is not permitted on any portion of a street designated as a "no parking area" (including, but not limited to, any portion designated by the City or OCFA as a **"Fire Lane"**). Tract 19176 includes two (2) private motorcourts (i.e., Lot A which provides shared vehicular access to Lots 7 and 8 and Lot B which provides shared vehicular access to Lots 71, 72 and _____ both of these motorcourts are designated as a Fire Lane. No Owner served by either of these

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.4 11.17.23

-10-

motorcourts may park any vehicle or cause any object of any kind whatsoever (e.g., portable basketball backboard, etc.) to be placed on the motorcourt so as to block or otherwise impede vehicular access over such motorcourt at any time. Parking on the motorcourts will be enforced by the Master Association.

57.    **Garages.**  The garages for the Residences at the Project have limited overhead clearance and length.  Not all garages will accommodate all vehicles (especially full size models and sport utility vehicles) due to the overhead clearance and/or length of the garages.  Buyer is urged to confirm garage accessibility prior to purchase of the Property.  It is Buyer's responsibility to determine before the Close of Escrow whether the parking for the Property is satisfactory and to verify that the standard height of the garage and the depth of the parking spaces will provide adequate clearance for Buyer's vehicles.

58.    **Windows**.  The number of windows and size and location of windows in the Property will vary by floor plan.  Window jamb and sill dimensions may vary.  Buyer must periodically maintain windows in the Property to ensure their continued performance, including without limitation, cleaning the tracks and weep holes and restoring the seals with caulking.  Screens may be provided on some operable windows and sliding glass doors.  Screens serve as insect deterrents only and do not provide any other kind of protection.

59.    **Concrete Floors/Foundations**.  Buyer agrees that: (a) Buyer shall not cut into or otherwise tamper with the floor and or foundation of the Property; (b) Buyer shall not knowingly permit or allow any person to cut into or tamper with the floor and/or foundation so long as Buyer owns any interest in the Property; and (c) Buyer shall indemnify, defend, and hold Seller and its respective officers, employees, contractors, and agents, free and harmless from and against any and all claims, damages, losses, or other liability (including attorneys' fees) arising from any breach of this disclosure.  Certain portions of the Property may have a deeper foundation (a base which is installed at a considerable length under the surface of the ground and transfers a load of a building deeper).  Deep foundations may be necessary whenever the soil during or close to the ground is incapable of sustaining a building (e.g., exposed footings or highly expansive soil) and loads must be transferred to deeper layers.

60.    **Air Quality**.  The Property is constructed using hundreds of components made of natural and/or man-made materials and that any material or combination of materials can cause an allergic reaction.  Seller has no control over individual allergic reactions and Buyer hereby takes responsibility for testing the air quality within the Property to ascertain whether or not the materials/components affect Buyer's family members, or other occupants.

61.    **Gases**.  The aging process of the soil and other elements created by nature, as  well as  manmade building materials, many times create unwanted and undesired gases and other contaminants in residences, both new and used.  Also, since the increased awareness and need for energy conservation, the Uniform Building Code (specifically the energy Title 24 standards), has created residences which allow less outside air infiltration and therefore trap these unwanted gases in different degrees depending on how each person lives within his/her residence.  Measurements of such unwanted gases (such as radon) are reported to be in the air we breathe and can affect our health.  Seller recommends frequent airing of the Property by simply opening the windows to introduce outside air that is uncontaminated by such trapped gases.  By making such a recommendation, Seller does not undertake any obligations to Buyer in regard to the effects that any such contaminants may have on Buyer, Buyer's family or other occupants of the Property.

62.    **Proposition 65**.  The Safe Drinking Water and Toxic Enforcement Act of 1986, also known as Proposition 65, lists many chemicals known to the State of California to cause cancer or birth defects or other reproductive harm.  This law requires that all businesses (including all builders of residential homes) provide a warning to the public of the dangers of potential harm by exposure to any of the listed chemicals.  Buyer is advised and understands that chemicals on the Proposition 65 list are present at or around the Project and Master Community from various sources, including building materials, products used to maintain improvements within the Project and Master Community or as a result of activities associated with new construction, contractors and others.  Buyer hereby acknowledges that at the time Buyer executed the Agreement, Buyer has seen, read and understood Seller's Proposition 65 warning sign in the Project, which includes the following warning and notice:

**Proposition 65 Notice:**
**Pursuant to the Safe Drinking Water and Toxic Enforcement**
**Act of 1986, a California law commonly referred to as**
**"Proposition 65," Visitors and guests are advised that**
**chemicals on the Proposition 65 list are present at or**
**around the property from various sources, including**
**building materials, products used to maintain the property,**
**or as a result of activities associated with new construction,**
**contractors and others. In accordance with Proposition 65,**
**we provide the following warning:**

**Warning:**
**Entering this area can expose you to chemicals known to the**
**State of California to cause cancer and birth defects or other**
**reproductive harm, including formaldehyde, carbon monoxide,**
**and tobacco smoke, from building materials and furnishings,**
**and from resident and guest activities including the use of**
**tobacco products, vehicle engine exhaust and the use of gas**

**Seller's Initial:**

**Buyer's Initial:**

HLO\ Olivewood\ v.4 11.17.23

stoves, barbeques, and fireplaces.  For more information go to
**www.P65Warnings.ca.gov.**

Furthermore, Buyer hereby acknowledges that Buyer has reviewed and understands the following consumer product warning regarding the Property as required by Proposition 65:

⚠️**WARNING**: **This product can expose you to chemicals including formaldehyde, which are known to the State of California to cause cancer and birth defects or other reproductive harm.  For more information go to www.P65Warnings.ca.gov.**

The United States Environmental Protection Agency, the California Air Resources Board, and other agencies have measured the presence of formaldehyde in the indoor air of homes in California.  Formaldehyde is present in the air because it is emitted by a wide variety of building materials and products purchased by Seller from material suppliers.  These materials may include carpeting, pressed wood products, insulation, plastics and glues.  Materials used in the construction of the Property will expose Buyer to formaldehyde, a substance known by the State of California to cause cancer.  The Residences in the Project have not been tested.  Seller is providing this Disclosure Statement to advise Buyer of this information.  In addition, the Property Buyer purchases may contain one or more other chemicals known by the State of California to cause cancer or reproductive harm.  Because the development and construction of the Project involved numerous contractors and subcontractors, and numerous types of materials have been incorporated into a home, it is impossible to accurately isolate all of the chemicals that may have been used in the manufacturing of materials or that might be contained in the various materials incorporated into each Residence.  Seller is willing to share information it has obtained and  will provide, upon request, a list of  known  material suppliers that  may be contacted  for further information.  Buyer may also contact the State of California Office of Environmental Health Hazard Assessment, which is the administrative agency for Proposition 65, at (916) 445-6900 or www.oehha.ca.gov\prop65.html.

_____ below, Buyer _____ expressly acknowledges that Buyer has read and understands each of the foregoing _____ 5 warnings a_____ es.

_____       _____       _____       _____
Buyer's Initials       Buyer's Initials       Buyer's Initials       Buyer's Initials

63.    **Benefit of Home Ownership**.  Seller has made no representations, guarantees or warranties to Buyer with respect to the tax, investment or other benefits of home ownership, or regarding appreciation in the value or equity accrual in the Property.

64.    **Insurance**.  Buyer should investigate the viability and cost of obtaining homeowners insurance for the Property prior to Buyer's Close of Escrow.  If any insurance is required by Buyer's lender, Buyer is responsible for obtaining that insurance prior to the Close of Escrow on the Property.  Buyer shall carry the amount of liability insurance as Buyer's lender may deem necessary to cover Buyer's individual liability for damage occurring to Buyer, Buyer's property, or to others.  The Master Association will not provide coverage against any of the foregoing.  If Buyer desires earthquake insurance, it is Buyer's responsibility to conduct Buyer's own investigation regarding the potential for earthquakes and obtain the applicable insurance.  The Property is not warranted against damage due to earthquakes.

65.    **Removal of Surface Waters**.  To facilitate the removal of surface water caused by irrigation and rainfall, Seller may install area drains throughout the Project.  Each Owner of a Residence where an area drain has been installed, if any, shall be responsible for maintaining and repairing the area drain at his/her sole cost and expense.

66.    **"Virtual" Model Home Display**.  A virtual model home display may be available for viewing on one or more internet websites.  All virtual models are displayed for illustrative purposes only, and any such computer display may not be representative of the Property or Project.  Subject to Paragraph 68, nothing in any virtual display is intended or should be construed as an agreement, representation, or commitment on the part of Seller to deliver the Property in exact accordance with any such display.  Buyer understands and acknowledges that the virtual display is a computer rendition of the homes and that the size, shape, building materials, colors, and other features of the homes depicted in the display may differ from the actual as-built condition of the Property.  The Property will not necessarily conform to any model, virtual or otherwise.  Models may include features and fixtures that are optional or decorator items which are not included in the list of standard features and fixtures provided to Buyer.  Seller reserves the right to make any changes or substitutions as Seller may deem reasonably necessary or desirable to the plans and specifications, amenities, features, designs, materials, fixtures, and/or other integrals, so long as such changes or substitutions meet with the initiation or approval of any appropriate Governmental Authority and are of substantially equal or greater functionality and quality, all without notice to Buyer.  The foregoing substitutions may include, without limitation, kitchen appliances, household fixtures, electrical outlets and switches, hardware, wall surfaces, painting and other similar items.  Any consultation with Buyer with respect to the specifications of the Property shall not be deemed a waiver of Seller's rights to make any such changes as Seller deems appropriate without notice to Buyer.  Seller shall have the right to make the substitutions described above without adjustment to the purchase price of the Property.

67.    **Changes in Price, Number, Size and Location of Residences in Project**.  The residential real estate market continually fluctuates due to changes in economic, social and political conditions that directly affect the supply of and demand for _____  As a result, the development plan for the Project and Master Community, Residence prices as well

*Seller's Initials*

*Buyer's Initials*

as the terms and conditions of sale are also subject to change. Therefore, with the exception of the Property and subject to Paragraph 68 below, Seller reserves the right at any time without notice to (a) increase or decrease the sales price, adjust incentives, available optional items, and/or otherwise adjust the terms and conditions of sale for other Residences in the Project, (b) change the number, size, location, elevation, design or type of other Residences constructed in the Project and (c) make changes or substitutions, as Seller deems necessary, to the specifications, construction, materials, amenities, features, development plans, and designs of other Residences in the Project. Seller has the full and exclusive right to establish prices for the sale of Residences in the Project, without regard to the price to be paid by Buyer or any other buyer for any specific Residence within the Project and/or modify its marketing plan for Residences in the Project, including the offering of Residences through an auction or other alternative marketing plan. Buyer acknowledges Seller's right to offer price reductions, financing incentives, reduced interest rates, decorator allowances, optional features, and other incentives of any kind  (collectively, ***"Incentives"***) to future purchasers of Residences in the Project, without any obligation to offer any comparable or other Incentives to Buyer. Buyer acknowledges that Buyer has negotiated the purchase price for the Property and Buyer is fully satisfied with such price and any Incentives received in connection with the negotiation of such price. Seller has neither offered nor agreed to any price protection or other similar commitment to Buyer regarding the value or resale value of the Property (or any other property), and Seller shall not have any obligation or liability whatsoever to Buyer in the event any price and/or Incentive changes directly or indirectly affect the value of the Property. Furthermore, Seller may own other properties which may not have been shown to or otherwise made available for purchase by Buyer. Seller does not have any obligation to notify Buyer if any of such properties come on the market or are otherwise available for purchase nor any obligation to notify Buyer of any future properties Seller may develop and make available for purchase.

68.      **Condition of Property Upon Delivery**.  The Property will be delivered to Buyer substantially as shown in any model or on any floor plan for the Property displayed or delivered to Buyer by Seller (***"Property Plans"***)  with the exception of (a) any improvements or features shown on any architect and/or construction plans or specifications, precise specifications or design other than the Property Plans; (b) any features in the models that are optional or decorator items and not included in the list of standard features provided to Buyer; (c) variances noted by Seller in any written disclosures provided to Buyer; (d) variances in square footage normally occurring in residential subdivisions of the same type as the Project; (e) variances required to address site topography, Residence location, optional items selected by Buyer or the requirements of any Governmental Authority; and (f) Seller's right to substitute building and other materials, construction techniques and fixtures with those of equal or greater functionality and quality.

69.      **Market Conditions**.  Due to changing market conditions, Seller and the Seller Representatives have not provided any representation or assurance of any kind as to (a) the current or future value of the Property or any future appreciation or depreciation in its value or (b) sales price, terms, conditions, features, amenities, specifications, designs, or Incentives, if any, for any other Residence in the Project.  These items are subject to change, without notice, at Seller's sole discretion. Regardless of the sales price, terms, conditions, features, amenities, specifications, designs, or Incentives change for other Residences in the Project, Seller has no obligation to change the sales price, terms, conditions, features, amenities, specifications, designs, or Incentives, if any, concerning Buyer's purchase of the Property.

70.      **Environmental Conditions**.  Buyer and Buyer's  family, guests, tenants and invitees  may be exposed to various environmental conditions in or near the Property (including but not limited to, radon gas, electromagnetic fields from power lines and appliances, the presence of abandoned water wells, leach lines or oil wells, the presence of surface and underground utility facilities, and the possibility of air, water and soil pollution).  Seller does not claim any expertise concerning such conditions.  Seller makes no representations or warranties, express or implied, about the existing or future environmental conditions in the Project, Master Community or the areas surrounding or in the vicinity of the Project and Master Community, including possible present or future existence of radon gas or pollution of the air, water or soil from any sources, such as underground migration or seepage, electromagnetic fields from power lines and appliances or the presence of surface and underground utility facilities.  Seller expressly disclaims any liability and Buyer expressly waives any claims for any type of damages, whether direct, indirect or consequential, which the Property or Buyer or Buyer's family, guests, tenants or invitees thereof, may suffer because of any existing or future environmental conditions except for any environmental conditions existing on the Property which Seller had actual knowledge of, or would have actual knowledge of after conducting environmental investigations on the Property which a reasonable residential builder in California would conduct, that was (a) not disclosed to Buyer or (b) if disclosed to Buyer, not remediated in accordance with any requirements of the applicable Governmental Authorities.

71.      **Retaining Walls**.  Retaining walls will be installed within the Project, including in some of the residential lots.  The specifications for building retaining walls and their placement are determined by a civil engineer and existing lot conditions.  This type of wall has been designed and constructed to retain a specific amount of earth behind the wall and no modifications should be made to any retaining wall.  Removing compacted soil from the vicinity of a retaining wall, blocking the weep holes or pipes, or failure to clean the drain inlets can cause the retaining wall to fail. There may be steep drop-offs near the retaining wall. Keep all persons and pets away from retaining walls. Please refrain  from climbing on or coming into contact in any  way  with the retaining  walls.  Any interference  with the retaining walls could cause damage and compromise the integrity of the retaining wall.  Vehicles should be kept at least six feet (6') from the retaining wall.  As site conditions vary, retaining walls shown on current grading plans may be added or deleted.  The approved grading plans for "cross drainage" (including without limitation "retaining wall sub-drainage" where subsurface waters that accumulate adjacent to a retaining wall are conveyed by means of one or more subterranean drainage pipes to a street and/or to the storm drain system serving Tract 19176 (or other portion of Enclave 5B) whereby water from an "upstream" residential lot and/or portion of the Master Association Property drains across one (1) or more "downstream" residential lots and/or portion of the Master Association          y means of a surface drainage device and/or a subterranean drainage pipe.  Buyer is encouraged

*Seller's Initials:*

*Buyer's Initials:*

to review the Notice of Annexation applicable to the Property to determine if the Property is benefitted and/or encumbered by a retaining wall sub-drainage easement, and if applicable, Buyer's maintenance and other obligations in connection therewith.

72.     **Electrical Power Lines and Wireless Communications Facilities**.  Underground and above ground electric transmission and distribution lines and transformers are located in and around the Project and Master Community.  In particular, there are 220KV, 66KV and other above ground power lines within and in the immediate vicinity of all improved areas of the Master Community, of which the Project is a part.  Power lines and transformers produce extremely low-frequency electromagnetic fields (**"ELF-EMF"**) when operating.  Cellular telephone antennae and transmission facilities are located within or near the Master Community, and additional cellular telephone sites may be added by Master Developer or other landowners and operators in the future.  Like all wireless communications facilities, these facilities produce radio-frequency fields (**"RF"**).  Numerous studies of human health and ELF-EMF or RF have been undertaken over many years, and some are ongoing.  In particular, numerous scientific and epidemiological studies have been conducted as to whether any adverse health effects are caused by ELF-EMF generated by electric power lines.  Some of these studies have reported a possible relationship between ELF-EMF or RF exposure and certain adverse health conditions, while other studies found no such relationships. Research regarding EMF and associated health effects is still being conducted.  Buyers are encouraged to review information available on these studies and consider such information in making Buyer's decision to purchase the Property.  Additional information about power line ELF-EMF is available on the Southern California Edison website at https://www.sce.com/sites/default/files/inline-files/10_Sept_CC_Res-1.pdf or SCE's Regional EMF Manager, 1851 Valencia Drive, Fullerton, CA 92833.  Other information about ELF-EMF or RF research can be found at  the World Health Organization's International EMF Project website at http://www.who.int/peh-emf/project/en/  and  the  U.S.  National  Institute  of  Environmental  Health  Sciences  website  at http://www.niehs.nih.gov/health/topics/agents/emf/.

73.     **Electricity Shortage.**  California has faced a serious statewide electricity shortage which resulted in significant increases in the costs for energy and utilities, as well as rolling black-outs, service interruptions, service and maintenance problems from the utilities providers, and other related inconveniences such as delays in the establishment of electricity and utility services, bankruptcy filings by utilities providers and delays in the issuance of certificates of occupancy. Such interruptions and inconveniences could occur again in the future. Buyer understands and acknowledges that such shortages and delays may, in turn, cause delays in the Close of Escrow. Seller has no control or influence over the electricity shortage, increased costs, delays or any related problems and Buyer understands and accepts that Seller shall have no responsibility or liability for any such problems or delays, including, but not limited to, any delays in the Close of Escrow. Buyer should contact the utilities providers and their local, state, and federal Governmental Authorities for further information.

74.     **Sex Offender Database**.  In compliance with applicable California law, Seller hereby gives the following notice to Buyer:

            NOTICE:  Pursuant to Section 290.46 of the California Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov.  Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

Buyer is advised that Seller has not and will not check for any offenders in the area of the Project and Master Community.

75.     **Notice Regarding Gas and Hazardous Liquid Transmission Pipelines.**  This notice is being provided simply to notify Buyer that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the property, Buyer may contact Buyer's local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

76.     **Compliance with Requirements Regarding Project Storm Water Pollution**.  Water that enters a storm drain flows directly to natural sources of water, including waterways, creeks, drains, rivers, lakes and that erosion has an impact on the environment.  Unlike the water in the sewer system in the Property, which flows to wastewater treatment plants, water that enters a storm drain flows directly, without any treatment, to waterways, creeks, streams, rivers, lakes and/or oceans.  Accordingly, the National Pollutant Discharge Elimination System, the Federal Clean Water Act, and the policies and ordinances of local Governmental Authorities prohibit discharging anything other than natural rain water into storm drainage systems.  Toxic chemicals or hydrocarbon compounds such as gasoline, motor oil, antifreeze, solvents, paints, paint thinners, wood preservatives, detergents, pet waste, paints and other such materials and pollutants shall not be discharged into any storm water conveyance systems.  The disposal of such pollutants and materials into a storm drain system may result in significant penalties and fines, and Buyer may be responsible for any activities by Buyer's contractors (e.g., painters, landscapers, etc.) who dispose of such pollutants from the Property into a storm drain system.  Buyer is obligated to comply with all applicable "Best Management Practices" (**"BMPs"**) and perform all maintenance that may be imposed by any water quality management plan.  Buyer is encouraged to consult with the applicable Governmental Authorities, concerning the proper disposal of any toxic or hazardous materials.  Dumping any such materials into sewers, gutters or storm drains is against the law.  So long as Seller owns any Residence within the Project, if an Owner is not in compliance with any BMPs or other BMP-related provisions of the Master Declaration (as applicable), Seller shall have the right, but ___ obligation, to enter upon the applicable portion of the Project to correct such violation.  By executing

*Seller's Initial:* 

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

-14-

this Disclosure Statement, Buyer agrees to indemnify, protect, defend and hold Seller and its members, officers, directors, successors and assigns entirely free and harmless from and against any liabilities, penalties, costs, expenses and actions, including without limitation attorneys' fees and costs arising from or attributed to a violation of the BMPs by Buyer, including any costs incurred by Seller in remedying such noncompliance.

77.    **Key Release**.  After the Close of Escrow and only after Seller has received confirmation from the County Recorder that title to the Property has been conveyed to Buyer, Buyer may pick up the keys to the Property from Seller during regular business hours at a place to be determined by Seller.  For security and safety reasons, Seller strongly encourages Buyer to immediately re-key all exterior door locks to the Property as soon as Buyer obtains the keys from Seller.   Seller assumes no responsibility from and after the Close of Escrow for any unauthorized entry into the Property.  Keys to Master Association Property gates (if any) will be distributed by the Master Association.

78.    **Water Supply Systems**.  No individual water supply, sewage, disposal or water softener system is permitted in the Project unless such system is designed, located, constructed and equipped in accordance with the requirements, standards and recommendations of the applicable Governmental Authority, and approved by the Master Association, and it may be possible that no such systems are approved by the Master Association or allowed within the Project.

79.    **Utility Structures/Easements**.  The Project is subject to easements in favor of utility providers for (a) the installation of above-ground utility structures, vaults, transformers, street lights, valves, landscape irrigation pumps, clustered mailboxes, fire hydrants, drainage devices, manholes, manhole covers, and the like, and (b) electricity, gas, water, telephone and/or cable television.  In particular, certain residential lots within the Project may contain an above ground utility box within the public utility easement.  In addition, streetlights and underground utilities in and around the Project may block views and/or be placed directly outside of Residences.  The applicable utility agencies or the City control the location of these facilities, not Seller, and these facilities may be located on portions of the Project adjacent to the Property or within the Project.

80.    **Clustered Mailboxes; Commencement of Mail Pickup and Delivery.**  The U.S. Postmaster requires the use of clustered mailboxes for efficiency of mail service.  The location and grouping of these mailboxes are determined by the U.S. Postmaster.  If Buyer has any questions, Buyer should call the U.S. Postal Service.  Due to the size of the Project, it is possible that the U.S. Postal Service must add drivers/routes to its system to provide mail pick-up and delivery service to the Project.  Because it may take some time to complete this process, until the U.S. Postmaster commences mail pick-up and delivery service to the Project residents of the Project will have to (a) pick up their mail at a U.S. Post Office and (b) deliver outgoing mail to an off-site mailbox or a U.S. Post Office.  Buyer should investigate the location(s) of the local U.S. Post Office and outgoing mailboxes.  Seller has provided no assurances as to when the U.S. Postmaster will commence mail pick-up/delivery for the Project.

81.    **Smoke Detectors**.  Buyer is responsible for inspecting  any smoke and carbon monoxide detectors in the Property at least once a year.

82.    **Master Association Property Landscaping**.   Owners and other residents are prohibited from cutting, trimming, pruning, removing, damaging, destroying or replacing any plants, bushes, trees, or other landscaping located within the Master Association Property.

83.    **Master Association Property Facilities.**  Anyone using the Master Association Property facilities in the Master Community does so at his or her own risk.  Buyer is responsible and liable for any bodily injuries, damage to property, loss of access keys, or other liabilities arising out of the use of the Master Association Property facilities by Buyer or any guest of Buyer.  Buyer and Buyer's tenants and guests must comply with any Rules and Regulations established by the Board with respect to the Master Association Property facilities  which  will include but not be limited to restricted access to such facilities.  The Master Association may require prior reservations and a security deposit prior to the use of such facilities.  Buyer will be expected to comply with such rules and  regulations and responsible for exercising care during the use of such facilities.  The meeting room in the Master Community, if any, may be limited in its availability to the members as determined by the Board.

84.    **Utility Meters**.  The Property will have its own individual electric, water and gas meters, and the cost of such utilities will be billed to each Owner directly by the utility company.  If utility service is available to the Property at the Close of Escrow, on or prior to the Close of Escrow, Buyer will be required to provide Buyer's account numbers with such utility companies to Seller.  Seller will shut off service within five (5) days after the Close of Escrow and will NOT be responsible for continuation of service.  Furthermore, Seller will bill Buyer for any costs incurred by Seller as a result of Buyer's failure to comply with this disclosure.

85.    **Adjustments**.  Because the Property is engineered with thousands of component parts, many of them natural materials, changes to the Property may occur in the first several months as materials dry out and naturally settle. Such settlement occurs in virtually all wood-frame construction. During this process, natural phenomena such as small hairline cracks, lumber shrinkage, joint separations and slight re-alignments of moldings, trims and doorjambs may appear in the Property. Seller is not responsible for repair of minor structural or cosmetic changes in the appearance of the Property due to settlement.

86.    **Cell Phone Reception**.  Seller has no control over the quality of television or cellular phone reception or service to the Property.



*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

87.    **Drainage**.  Drainage facilities may have been installed on the Property to transport storm water to the public storm drain system.  Such facilities may include without limitation area drains and swales.  Failure to maintain any drainage facilities or systems located on the Property and/or any modification or alteration to any such facilities or systems may have an adverse effect upon the Property as well as adjacent lots, including, but not necessarily limited to, damage to the foundation, the Residence or other improvements.  Any modification or alteration to any drainage facilities or systems located on the Property should be made only in compliance with all applicable laws and with the advice of soils and civil engineers.  Buyer is responsible for maintaining any drainage channel, cut, swale, berm, and control facilities situated on the Property. Buyer further acknowledges and understands that there may be natural drainage channels and that they are subject to continuing erosion. The condition and course of such drainage channels are subject to periodic changes as a result of rain and runoff from neighboring lots.  No agent or representative of Seller has made any representations or warranties regarding the continued status, course, or condition of any drainage channels.  Buyer must establish and maintain all erosion control measures on the Property as required by Governmental Authorities until the landscaping is complete and established. The Regional Water Quality Control Board and/or other Governmental Authorities may revise existing requirements and policies and/or create new policies relating to enforcement of water quality standards. Existing drainage designs will not necessarily comply with future water quality control standards.

88.    **Subdrains**.  The residential lots in the Project may use subdrains to convey subsurface water into the storm drain system.  Subdrains are below ground but may be located near the ground surface.  Subdrains are for maintenance and drainage purposes only and should not be tampered with, relocated, or have anything placed in, on or around them that would affect their proper function and accessibility.  Altering, relocating, capping or damaging the subdrains could cause water to seep under structures resulting in damage to building foundations, slab-on-grade floors, sidewalks, driveways, hardscape and other exterior concrete flatwork and/or cause erosion, slope instability and damage to landscaping.

89.    **Electrical Improvement Locations**.  Standard cable outlets, telephone jacks, electrical outlets, and light fixture locations are approximate and may vary from the models and floor plans. Although it is Seller's desire to follow the locations as shown in the electrical diagram as closely as possible, changes due to building code updates and structural revisions as well as options shown or not shown in the models may require these locations to be relocated.

90.    **Electrical Transformers**.  Transformers may be installed in the front yards of some of the residential lots.  These are above-ground boxes that are approximately 2' tall and 3' wide. These transformers may not be moved.  The local power company may modify the location, add additional transformers, or increase the size of any of its parts without notice and without Buyer's consent or approval.  Buyer is responsible for verifying planned transformer locations on the Property.  However, the location of transformers may vary due to field conditions and/or utility company discretion.

91.    **Heavy Furnishings**.  Buyer must obtain approval from a structural engineer or other qualified professional before installing any heavy furnishing or equipment (such as safes, weight benches, heavy exercise equipment, large fish tanks and pool tables) in the Property.  It is important to verify that such furnishings or equipment will not exceed the structural design of the Property and that the flooring system will not be overloaded, damaged, or otherwise adversely affected. Seller will not be responsible for any damages, loss injury arising out of or in connection with Buyer's installation of any heavy furnishings or equipment. In addition, Buyer must obtain approval from the Board or Design Review Committee if required.

92.    **Landscaping; Changes and Alterations**.  Seller does not guarantee the preservation of any trees, shrubs, ground cover or other foliage located on the yard or any open space surrounding the Property, nor is Seller responsible for any immediate or long-term damage to trees or vegetation caused by construction activity.  Alterations to existing landscaping may be subject to review and approval by the City, County, Board and/or Design Review Committee.  In addition, Buyer should contact a local landscape architect or contractor to determine whether any soil amendments will be needed prior to landscaping Buyer's yard based upon the specific soil conditions.

93.    **Outlets in Garages; Electrical Vehicle Charger**.  The Uniform Building Code adopted in California requires that electrical outlets in garages be provided with ground fault interrupter circuits. These circuits are not intended for use with any appliances, especially refrigerators, freezers and aquariums or on any service that an interruption of electrical power would cause a problem. Seller strongly recommends that Buyer not use garage circuits for appliances or for any service (such as freezers) that would be harmed by an interruption of electrical power. Seller cannot be held responsible for the contents of appliances which are damaged because of the ground fault interrupter switches shutting off power, nor can Seller be held responsible for damage to the appliance units themselves.  In addition, all Residences in the Project will be pre-plumbed for an electrical vehicle charger in the garage (i.e., an electrical vehicle conduit to accommodate a future dedicated circuit).  Buyer acknowledges that the electrical vehicle charger will not be included as part of the Property. Neither Seller nor any of the Seller Representatives have made any representations or warranties regarding the compatibility of the wiring installed by Seller with any types or brands of electrical vehicle chargers or the costs for the installation of an electrical vehicle charger in the Property.  Please check with an electrician for further information.

94.    **Security System.**  An electronic home security system may be installed in the Property as an optional item.  Seller disclaims any knowledge of the design, manufacture, installation, or operation of the electronic home security system and disclaims all warranties, either expressed or implied, with respect to the home security system, including all implied warranties of merchantability and fitness for a particular purpose; in no event shall Seller be liable to Buyer for any damages directly or indirectly resulting from claims arising out of or in connection with the use or performance of the system; and Seller shall not be liable for any special, incidental or consequential damages even if Seller has been advised of the possibility of such damages. Employees of Seller are not authorized agents of the manufacturer of the electronic home security system and therefore any representations by such Seller employees should be disregarded.  It is Buyer's responsibility to carefully review the specification     lectronic security system to be installed in the Property, including basic coverage areas, features and

*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

system use.  Buyer is urged to carefully review the operation procedures and the limited warranty for the electronic home security system provided by the manufacturer. Special attention should be directed to those paragraphs which limit the liability of manufacturer.  Moreover, all arrangements for system activation, links (if any) to security services or public safety organizations are solely Buyer's responsibility.  Seller is not responsible for the effectiveness of any electronic home security system purchased from Seller, including any failure of the electronic home security system to warn, frighten off, or alert anyone about intruders or any other problems.  Buyer understands, acknowledges and accepts that no electronic home security system will prevent such problems from occurring and the electronic home security system is not a guarantee or warranty of safety to persons or property against criminal acts.  Subject to any claims Buyer may have solely for the repair of any electronic home security system under the "Right to Repair Law" as set forth in Division 2, Part 2, Title 7 (commencing with Section 895) of the California Civil Code, Buyer specifically waives any claims against Seller as a result of any failure of the electronic home security system.

95.    **Fences and Walls**.  Seller has installed or plans to install certain fences and walls within the Project.  The materials, specifications, and locations of fences and retaining walls are determined by structural, soils and civil engineers, the City and site conditions.  Fences and walls shown on the site map for the Project or on other plans or maps in the sales office are conceptual.  The responsibility for repairing and maintaining fencing and walls between lots is described in and controlled by the Master Declaration.

96.    **Walls/Fencing Not on Property Line.**  Grading lines, fences and walls installed by Seller, if any, may not coincide with the boundaries of the Property.  Buyer must independently verify the exact location of the Property, and whether the boundaries of the Property are marked by the fence/wall installed by Seller.  Often, fences and walls are intentionally offset from property lines to accommodate easement areas, slope conditions, drainage patterns, Master Association Property improvements, if any, open space restrictions, or for aesthetic or other reasons.  In addition, Master Association Property walls and/or pilasters and fencing installed by Master Developer or Seller may encroach into the property of the adjacent residential lots.

97.    **Wiring for Communications Services**.  If wiring for a Digital Subscriber line (**"DSL"**), high speed internet access and/or similar communication services is offered as an option for the Property, a third party service provider will provide such communication services.  Seller will have no control over such services and does not guarantee the availability of such communication services upon move-in or at any time in the future; nor the continuity, speed or quality of services delivered.  If Buyer selects this option, Buyer should directly contact the phone company, cable company and/or other communications service providers that serve the area in which the Project is located to ascertain the availability and quality of any such services.

98.    **Cable Television**.  All Residences in the Project may be pre-wired for cable television.  Cable television service may be furnished by a cable company; however, Seller makes no representation as to when or if cable television service will be available for the Project or any representation as to the quality of television reception or cable service.  Seller is not affiliated with the cable company and, as with other utilities (e.g., water, gas, electricity, telephone service, etc.), has no control over the rates or the services furnished.  BUYER MUST CONTRACT FOR CABLE TELEVISION SERVICE SINCE IT IS NOT PROVIDED FOR BY SELLER OR THE MASTER ASSOCIATION.  No other antennas or satellite dishes may be installed within the Project, except as specifically authorized by the Master Declaration or as required by law.

99.    **Restricted Access Areas**.  Access to certain areas of the Project (e.g., electrical facilities, equipment rooms and storage rooms) will be restricted to designated individuals or entities by the Board.

100.    **Easements**.  The Property may be subject to various easements of record, including, but not limited to, easements for poles, conduits, domestic water system and hydrants, public emergency ingress and egress, landscaping, irrigation and public utilities.  As a result, Buyer may experience noise, bright lights, odors, invasion of privacy and other adverse impacts relating to the use and/or maintenance of such easements.

101.    **Vesting**.  Prior to signing escrow instructions, Buyer may wish to consult an attorney regarding the manner in which title to the Property should be taken.  Sales representatives are prohibited by law from giving any advice on this matter.

102.    **Warranties for Consumer Products**.  The manufacturers' warranties for the consumer products included in the Residence (e.g., water heater, air conditioning system, dishwasher, garbage disposal and other household appliances, as applicable) are available for review in the sales office.  All such manufacturers' warranties are provided by Seller as a convenience only, and Seller has no responsibility or liability for statements, assurances or warranties of the applicable manufacturers set forth therein.  Seller makes no warranty as to any items included in the Property which are not manufactured by Seller, including without limitation any refrigerator, range, dishwasher, microwave, garbage disposal, trash compactor, stove, oven and other appliances, equipment or "consumer products", as defined by the Federal Trade Commission or manufactured products as defined by California Civil Code Section 896.  Any warranties, expressed or implied by the manufacturer of these items, whether arising under state law or the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (15 USC 2301 et seq.) or other applicable law, including but not limited to all implied warranties of fitness may be covered by the manufacturer but are expressly disclaimed and are not covered by Seller.

103.    **Consumer Product Information**.  Seller, as a service to its homebuyers, may, in its sole discretion, allow Buyer to select options and upgrades to be installed prior to the Close of Escrow through the use of an affiliated design studio.  To facilitate [this] process, the design studio provides a designer (**"Design Consultant"**) as a liaison between the

*Seller's Initials*

*Buyer's Initials*

option/upgrades contractor and Buyer. Seller hereby discloses general consumer information and protective disclosures about the upgrade items Buyer may be purchasing from the design studio.  To the best of its knowledge, Seller states that the following product information is accurate as of the date of this Agreement.

(a)  **Display Samples**.  All materials used in options and upgrades are subject to variations in shading, marking, coloring, graining, finish and texture, etc.   WOOD, STONE, TILE AND GROUT ARE PARTICULARLY SUSCEPTIBLE TO COLOR AND DYE VARIATIONS THAT ARE BEYOND SELLER'S CONTROL.  Pictures, catalog items, display samples and cut samples suggest the general coloring and marking of the goods to be delivered.  An exact match is neither implied nor guaranteed.  Buyer accepts all risks of variations from pictures, catalog items, display samples and cut samples.

(b)  **Tile Marble/Stone Finishes and Flooring (to the extent available)**

(i)  **Ceramic and Porcelain Tile**.  A variety of imported and domestic tile colors and patterns are displayed in the design studio.  Variations in shade, shape, and surface texture can occur between production lots because of differences in heat intensity and moisture content during manufacturing.  The samples displayed are examples of average color range and texture, and colors from one production lot to the next may be lighter or darker than the samples.  Finish trim pieces such as v-cap, quarter round, beaks and beads require a different manufacturing process than the field tile, and as such, may vary in color. All sizes given can vary in actual measurement (i.e., if a tile is labeled as a 6" x 6", actual size may vary by as much as 3/4").

(ii)  **Tile Appearance**.  On extreme relief materials, glazing may puddle, causing the glaze to appear darker and lighter throughout the tile.  Materials glazed with a waterfall application or a transparent glaze may be subject to crazing.  Crazing is the fine cracking that occurs in fired glazes or other ceramic coatings due to tensile stresses or in the surface portions of uncoated, unglazed whiteware bodies.  Crazing is not considered a defect, nor does it affect the wear of the material.  Stress on the tile body over the years may cause additional crazing to appear.  Craze marks may darken over time.  Surface and/or glaze imperfections such as pin holes, dirt particles, and mineral deposits found in or under the surface are inherent characteristics and not considered defects

(iii)  **Shower Floor Material**.  Because of safety reasons, Seller and tile installer do not recommend the use of glazed tile on shower floor surfaces.  Glazed tile on shower floors can be slippery when wet, which can cause injury.  Buyer's Design Consultant can provide a selection of materials for use on shower floors.

(iv)  **Tile Layout**.  Tile layout will be performed at the installers' sole discretion, and may differ from the model displayed in the design studio due to many factors, including without limitation variation in size of cabinets, framing and tile.  Larger format tile is more likely to have lippage and will require a larger grout joint and specific pattern installation to mitigate.

(v)  **Irregularly-Finished Tiles**.  Manufacturers create tiles with irregular edges to give them more rustic, old-world appearances.  Differences in edges can range from a wavy edge to a chipped edge and are a feature of this type of product and should not to be considered a defect.  Mosaic tiles may appear uneven or crooked; however, these are not defects and should not be considered an improper installation.

(vi)  **Placement of Electrical Outlets and Plumbing Valves**.  Electrical outlet/fixture and plumbing valve locations may vary from the locations displayed in models, vignettes and Project Materials.  All electrical outlets/fixtures and plumbing valves  will be located in standard locations to be determined by the electrician and plumber in their sole and respective discretion and will not be moved to accommodate tile design.  Therefore, the electrical outlet/fixture or plumbing valve placement may impede part of the tile design.

(vii)  **Concrete Slab Sub-Floor**.  It is not uncommon for a concrete slab over which Buyer's tile floor may be installed to expand and contract, settle or shift.  Such movement may cause hairline cracks which can be transmitted through the tile or grout lines.  Although an underlayment system is installed under all tile/marble/stone floors, Seller cannot prevent slab cracking and settling, nor guarantee that the tile/marble/stone or their grout lines will not crack.

(viii)  **Natural Materials**.  Natural stone, marble, limestone, travertine, slate, granite and other stone products are products of nature formed over thousands of years, with many natural markings.  It is impossible to guarantee shade, uniformity of color, veining or any other characteristics that may be represented in any sample submitted.  Some marble, limestones, and other stone products may contain unusual markings, nicks, chips, small vein cracks, pitting, and fissures as well as uneven surface finishes.  These are natural characteristics, not defects, and are beyond the control of Seller.  Mexican pavers, whether stained, sealed or natural, are inherently rustic in appearance. This includes, but is not limited to, efflorescence, chips, scars, pitting, surface popping or lifting, cracking and other markings.  Color and surface variations may be extreme.  Seller cannot guarantee uniformity of the finish, color or size, or any other characteristics that may be represented in any sample submitted.  Buyer should see Buyer's Design Consultant for further instructions and information regarding the sealing and maintenance of Buyer's pavers.  Ceramic tile, marble, stone and pavers will scratch.  Buyer should use a quality door mat outside entrances and area rugs inside to minimize damage from scratching.  Because marble, stone and pavers are porous, they are susceptible to staining.  Seller recommends that all stone flooring products be sealed.  Buyer's natural stone floor includes an initial sealing by Seller.   Subsequent sealing is part of the regular ma_____ of the floor and is the sole responsibility of Buyer.  Buyer's Design Consultant can refer Buyer to a

*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

-18-

professional sealing company.  The machine-applied polished finish of Buyer's marble or other stone product brings out the deep natural coloring of the stone, but it does not keep the stone from being porous and subject to staining.  It is recommended that Buyer discuss with Buyer's Design Consultant regarding immediately establishing a regular program of cleaning and sealing after installation.

     (ix)    **Filler**.  Polished stones are often filled at the factory.  In rustic or tumbled stones, these may be left as voids and filled with grout during installation. Over time, the filler can degrade or erode from these voids, and it may be necessary, as a normal maintenance procedure, to refill these areas.  Filled areas will not polish to the same degree as the actual stone surface, causing a difference in luster levels.  Factory honing and polishing may not always reach the level of Buyer's expectations.  The stone may appear to have swirls, high/low policy areas and uneven buffing.  Although this is standard in the stone industry, Buyer might want to consider having a stone refinishing company refinish the surface once the material is installed.

     (x)    **Flagstone/Slate**.  Flagstone and slate may, on occasion, sound hollow after installation.  Some types of flagstone and slate may have rust and/or mineral deposit spots, which is common with some types of stone and slate. Flagstone and slate may also peel and/or flake under normal wear and tear.

     (xi)    **Quartz Countertops**.  Quartz slabs are made from crushed quartz in various sizes, mixed with pigments and resin to bind material together.  Quartz has a lower gloss level than natural stone and is less likely to have pitting and fissures.  Quartz is more prone to damage from heat exposure and harsh cleaners.  A trivet should be used when placing heat sources near quartz countertops.  Quartz is scratch-resistant, not scratch-proof.  Abrasives should not be used on quartz surfaces and cutting boards are a must when preparing food.  Quartz is non-porous and is more resistant to staining than natural stone; however, quartz, particularly in lighter colors, can stain when not properly maintained.  Refer to manufacturer recommendations for cleaning and daily maintenance to prevent damage and prolong the life of the material.  Slab fabrication will require seaming, which will be visible.  Veining and movement in the slab will cause the seam to be more obvious when there are breaks in the pattern.  Variation in slab pattern and tone is to be expected and is intended to give the product a more natural look and feel.

(c)    **Carpet**.  Carpet is manufactured in 12' to 13' 6" widths and must be installed in one direction.  Roll sizes will affect seaming. Therefore, seaming is necessary and may be apparent in some applications, particularly in low, dense cut pile and Berber carpets.  Standard industry methods shall be utilized to make seams in a workmanship like manner.  Seams are most likely to be visible in new carpet installed in homes without window coverings or furnishings, especially in areas with the greatest amount of light.  Berber carpets are durable and unique, however, seams in Berber looped pile carpets will be visible, and their prominence will vary, depending on specific textures, colors, lighting and peaking.  Loops are subject to matting and snagging, especially at seams.  Seam visibility usually decreases with time, and with the reduction of light which occurs when furnishings are placed and window coverings are installed.  Seller recommends that Buyer refer to Buyer's fiber manufacturer booklet for recommendations on care and cleaning of Buyer's carpet.  Other cleaning methods and topical treatments may void warranties. Some carpets retain their appearance better than others, and some carpets offer guarantees of appearance retention.  However, no carpet is mat or crush proof and no carpet is totally stain proof.  "Stain resistant" does not mean that carpets will not show normal soiling.  Locally caused staining or carpet soiling are not carpet defects. Light colored carpet can become slightly discolored around the perimeter of the room and at staircases due to air filtration.  These are normal occurrences and are not covered under warranty.  Footprints are visible on all carpets, with the exception of most level loop carpets while some textures may make footprints less visible.  Footprints are most likely to show in new carpet which has not yet been exposed to traffic and vacuuming, and which has not yet recovered the moisture which was almost totally removed in the manufacturing processes.  It is essential to vacuum often and on a regular basis to keep Buyer's carpet looking good and to prolong its life. In areas of heavy traffic, vacuum three to four times per week.  Professional cleaning is recommended at least every twelve to eighteen months.

(d)    **Pad**.  Carpet cushion is necessary to form a good foundation that absorbs the impact of foot traffic and provides a comfortable feeling under foot.  Many carpet warranties define specific pad requirements.  The rebound carpet padding is manufactured from scrap urethane and may vary in color from our samples.  In addition, the thickness may vary slightly due to the method of cutting this material at the factory.

(e)    **Vinyl**.  In certain communities, standard vinyl will be installed in all baths before fixtures are set and will be installed in kitchens at the same time.  This installation of standard flooring may preclude the possibility of ordering optional flooring in these areas, and will affect any allowances that may be listed.  Buyer's Design Consultant will give Buyer more details.  Vinyl is manufactured in 6' and 12' widths, and seaming is usually necessary.  Vinyl can dent, tear and be scratched.  When Buyer is moving heavy objects across a vinyl floor, place an underlayment board under the object to prevent scratches, tears, gouges, and/or buckling of the floor.  Shoes with small diameter heel points may cause permanent indentations in vinyl.  It is important to follow the manufacturers' recommended guidelines by using the proper furniture rests and casters for any item that sit upon or move across any vinyl floor.

(f)    **Grout**.  Grout is a cement blended product which is porous and susceptible to staining and color variations.  Should Buyer choose to seal Buyer's grout, Seller recommends a professional installer be used.  Please discuss this with Buyer's Design Consultant.  Colored grout needs two (2) to six (6) weeks curing time, during which _____ or may change from the initial color or sample color. Grout colors will vary from the samples due

*Seller's Initial*

*Buyer's Initial*
HLO\ Olivewood\ v.4 11.17.23

to variations in temperature and humidity at the time of grouting. Exact layouts and grout joint widths are determined by the tile setter at the time of installation and are governed by the actual size and shape of the tile or marble, the exact dimensions of the areas to be covered and guidelines established by Seller. Small hairline cracks may develop in ceramic or marble flooring grout, particularly when installed over concrete slab. There is no way to completely eliminate the characteristics which are inherent to concrete and, because small hairline cracks are not structurally significant, they are not covered under warranty.

Normal spacing of grout lines is 1/4" except on cushion edge and Mexican tile where the grout lines may appear wider. Terra Cotta/Spanish pavers require larger grout joints due to the wide variation of the product. Smaller grout lines are not recommended due to undulations in sub-floors and variations in the size of tiles. Marble is usually butt jointed, which will reveal grout. Limestone and other stone products will be set with 1/8" to 1/4" grout joints, depending on the variation in size of tiles. Most marble and some stone tiles have beveled edges which may cause the grout joint to appear wider.

(g)      **Wood Flooring**. The design studio offers many products from the wood family, including but not limited to: solid wood, engineered wood, pre-finished wood and laminate products. Each has its own unique characteristics and installation requirements. The design studio reserves the right to determine the appropriate installation method unless otherwise specified by Buyer. Buyer is responsible for understanding which product it is purchasing. Wood may have knots, mineral streaks, color variations and may splinter. When installed pre-finished, wood may show gaps, unevenness or lippage at the joints, which is more noticeable in lighter colored floors. Some splintering may be expected throughout the life of a wood floor. Natural variations in color or grain, and slight gaps between boards are considered natural occurrences, and are not considered to be defects in the product or its installation. Wood flooring will expand and contract under temperature and humidity changes, which results in slight shrinkage and expansion. Because of this, floor noises such as squeaking and creaking will develop. Such noises are unavoidable and beyond Seller's control. In addition, wood floors will show hairline cracks or gaps between boards. This is more noticeable in light or whitewashed floors. If exposed to moisture, wood will swell and may come loose. Wood installed in kitchens, baths, and service areas may be damaged from leaked or spilled water. Excessive moisture or plumbing failure will cause hardwood floors to warp and in extreme instances can cause enough pressure to break the adhesives and force the hardwood off the sub-floor, necessitating replacement. Wood will dent, scratch and show wear. Shoes with small diameter heel contact points will cause indentations in all hardwood floors. A 100 pound woman with 1/4 inch diameter heel contact points can easily exert a force of 2000 pounds per square inch, and an exposed nailhead can exert a force of 8000 pounds per square inch (this can be a problem for any floor, hardwood, ceramic or marble, sheet vinyl or carpet). Wood may change color over a period of time due to environmental causes such as heat and light. Use a quality door mat outside entrances and area rugs with the proper backing inside to minimize damage from scratching. Avoid high heel shoes which can severely damage the surface of wood flooring. Property protectors made out of carpet or felt are recommended under furniture that will be moved often to help prevent scrapes and scratches. It is not uncommon for a concrete slab over which Buyer's wood floor may be installed to expand and contract, settle and shift. Such movement may cause hairline cracks. Although the wood floor is installed to manufacturer's specifications, Seller cannot guarantee against the effects of slab cracking and settling.

Exterior wood installations, depending on the area, will also experience warping, slitting, peeling and/or checking (i.e., raising of the grain in the wood) due to exposure to weather conditions and environment. In coastal situations, these issues may occur frequently.

(h)      **Luxury Vinyl Plank**. Luxury vinyl plank has many attractive benefits, including low maintenance and durability. Its moisture resistant properties make it a suitable product even in wet areas. Luxury vinyl plank may dent or scratch. Property protectors made from felt are recommended under furniture to prevent damage. Luxury vinyl plank can fade if exposed to direct sun. Periodic shifting of furniture and area rugs will help slow this process as will window coverings that provide protection from the sun. Luxury vinyl plank has its own unique characteristics and installation requirements. The product is typically floated over the slab or subfloor and is not directly glued down, which will create movement and flexibility on the floor's surface. Fluctuation in temperatures or exposure to high levels of heat can exaggerate its flexible nature, particularly along exterior doors. Trim pieces may be required when transitioning to other material types and thicknesses. T-molding, reducers, stair nosing and end moldings are most commonly applied and shade variations from trim to overall floor material are to be expected. Luxury vinyl plank, which is made to resemble a natural wood, will have variations in color and texture. Depending on the product type, Buyer may see knots, mineral streaks and dramatic range in color across the flooring installation. This inherent characteristic is an intentional effort to give the product a more natural look and feel. Refer to manufacturer recommendations for cleaning and daily maintenance to prolong the life of the product.

(i)      **Kitchen and Bath Wood Cabinets**. Cabinetry will reflect the overall natural characteristics of the undefined pattern of grain and color variations as well as the enhanced color as a result of hand applied stains. Stained finishes, distressing and other special effect applications will vary in color, intensity and tone depending on the wood selection and how the stain or application techniques are applied to both solid pieces of wood and veneer. Even though the same stain or other finish is used consistently, due to the unique characteristics of the natural wood and the stain or other finish applied to the wood, there will be variations in color from dark to light. The design studio's sample is only a representation of the final product and Buyer will notice the clarity of the finish on the installed cabinets may differ in the color and tone from the color sample or from the cabinetry dis[...] he models or design studio.



*Seller's Initial:*

*Buyer's Initial:*
HLO\ Olivewood\ v.4 11.17.23

(j)    **Window Coverings**.  Buyer has been advised that optional window coverings are ordered upon Seller's notification of Buyer's receipt of loan approval, and delays may result particularly with wood shutters.  A measure charge will be incurred should an order be canceled after the measure has been completed.  Most window coverings, unless otherwise disclosed, will be installed after the Close of Escrow.

(k)    **Custom Interior Paint Selections**.  Seller offers a flat paint for interior walls.  Custom paint color selections may be offered by Seller at its discretion but are only available from Seller's designated paint manufacturer assigned to the Project.  Buyer must select custom paint color selections before Seller's cutoff date or Buyer forfeits the option of making the custom color paint request.  Buyer understands that custom paint color will appear differently in the Property due to the orientation of the Property on Buyer's residential lot, and other physical factors outside the control of Seller and the design studio.  Please select Buyer's colors carefully.  Buyer understands that when custom paint is touched up, it will not match existing paint.

(l)    **Wrought Iron and Steel Products**.  Wrought iron and steel products (even with rust treated materials) may rust and peel with age and natural elements. In coastal situations, these issues may occur more frequently.

(m)    **Stucco and Paint Discoloration**.  Unless Buyer elects to acquire the Property without upgrades, the Property will have been professionally painted.  Certain portions of the Property, such as interior walls, paint-grade cabinets, casework, moldings and interior doors, may be painted with latex-based enamel paint.  Yellowing is common  with latex-based enamel paints.  Additionally, if the Property  has white latex-based enamel paint-grade cabinets, yellowing will occur.  Exterior painted surfaces will fade, discolor and peel over time and under certain weather and environmental conditions.  Stucco will also experience fading, patching, discoloration and cracking with any ground movement, age and weathering from natural elements.

(n)    **Plumbing/Light Fixtures/Hardware**.  Brass, chrome, bronze or other finishes have their limitations.  In time, the protective lacquer may deteriorate from exposure to weather, perspiration, cleaning agents, frequency of use and other factors.  Tarnishing or excessive wear of these finishes is, therefore, not a defect, but a normal process that is unavoidable.  These finishes cannot be guaranteed and products will not be repaired or replaced under the manufacturer's warranties for tarnishing or wear of finishes.

(o)    **Stain Grade Material Discoloration**.  Natural hardwood veneers used for cabinets, doors, moldings, etc. are finished with stain and lacquer finish products which will change color over time.  Color change may be the result of exposure to sunlight or weather, or simply the consequence of aging.  Discoloration is not a defect.

(p)    **Drywall Panels and Finishes**.  Drywall panels are placed over the wall studs, joists, rafters and beams.  Drywall is typically used to finish window openings.  Drywall panels will not completely eliminate variations in the dimension and plane of wood framing members.  Metal trim (i.e., corner bead) may be used at corners, window edges, soffits and ceilings.  They are designed to be filled with finish compounds.  These trim metals provide a durable finish but cause the wall plane to "flare" at the metal edge.  Panel joints and seams are taped and coated with finish compounds.  Fasteners are coated with finish compounds to cover the small "dimple" in the surface of the drywall panel.  Progressive applications of finish compounds are required to cover the joints, fasteners and seams.  In some cases, the normal finishing of these joints, fasteners and seams will cause a subtle "bulge."  When the finishing process is complete, the walls and ceilings receive a texture coat.  In certain lighting conditions (i.e., lights placed close to the walls), irregularities and variations in the wall plane or intersection of vertical and horizontal panels may be evident.  These variations are normal.

(q)    **Water Pipes**.  Residences in the Project may feature copper and/or pex pipes for the water system.  Copper pipes are generally corrosion-resistant and easy to repair.  However, over time, the copper pipes in Property may be affected by pitting corrosion leading to pinhole leaks.  Pitting is generally caused by exposure to waters with high dissolved solids including sulfates and chlorides, a pH between 7.2 and 7.8 and high carbon dioxide content.  Seller has no control over the quality or characteristics of the water supplied to the Property.  If Buyer has further questions concerning water quality in the Project, Buyer should contact the local water authority or a water treatment expert.  A qualified water treatment expert may be able to provide a treatment for aggressive water to make it non-aggressive to plumbing materials.

(r)    **Electrical Changes/Additions**.  All electrical changes and/or additions will be installed as close to locations provided by Buyer as reasonably possible, pending framing restrictions due to such issues as heating and air conditioning ducts and plumbing locations.  Electrical standard items cannot be moved or deleted.

(s)    **Upgrade Stair System**.  Seller and its trade contractors strive for a "blending" finish when attempting to match colors of flooring and cabinetry to the stair system (including the handrails, skirt, tread, risers, steps and kickboard); however, an exact match is not possible since flooring, cabinets and stair system are manufactured separately by different suppliers and utilize different species of wood that take stain differently.  The stair system finish will not be distressed if blending with distressed cabinetry.  Buyer's Design Consultant can provide pre-stained samples for Buyer's reference.  The design studio's sample is only a representation of the final product – the clarity, color and tone of the final product will vary.



**Seller's Initial:**

**Buyer's Initial:**

HLO\ Olivewood\ v.4 11.17.23

104.    **Real Property Taxes**.  California law requires real property to be revalued whenever it changes ownership or when Improvements are newly constructed.  After the Close of Escrow for the purchase of the Property, the County Assessor will determine a new taxable value for the Property.  Seller has no control over the valuation, timing or the amount of any tax bill or supplemental tax bill resulting from the reassessment.  Buyer is solely responsible for the payment of any supplemental tax bills.  Buyer acknowledges that neither Seller nor any of its sales associates have made any representations or warranties respecting the amount of the supplemental tax assessment, the assessed value, or future property taxes.

105.    **Outstanding Dedication**.  A portion of the real property within the Project (**"Dedicated Area"**) may be subject to an outstanding dedication to one or more Governmental Authorities.  Such irrevocable dedications can be accepted by a Governmental Authority at any time and once accepted, the Dedicated Area will be open to the public and maintained by the Governmental Authority.  Seller has provided no assurance as to when or if any such dedication will be accepted by a Governmental Authority.

106.    **Schools**.  To obtain information about the schools serving the Project, including the development and construction of school sites, as well as school assignments, facilities and bus service, contact IUSD at (949) 936-5000 or visit the IUSD Website at www.iusd.org.

107.    **Natural Hazard Disclosure (*"NHD"*)**.  Buyer will be provided with a NHD, which identifies if the Property Buyer is purchasing is within certain natural hazard areas such as a special flood hazard area, an area of potential flooding, a very high fire hazard severity zone, a wild land area that may contain substantial forest fire risk and hazards, an earthquake fault zone and a seismic hazard area.  The information contained in the NHD is taken from public records and is believed to be accurate, as of the date the NHD is prepared.  The classification of whether a property is located within a natural hazard area is subject to change; Seller is not responsible for updating Buyer in such an event.  **The NHD prepared is for disclosure only, is not part of the Agreement, is NOT an insurance policy and is subject to the terms and conditions set forth in the NHD provided.**  Buyer acknowledges receipt of this NHD.  If Buyer has any questions regarding these natural hazards, Buyer should conduct his/her own independent investigation.

108.    **Earthquake Faults; Ground Shaking**.  According to the NHD, the Project is located within (a) one-eighth of one mile of a mapped fault trace and Seismic Shaking Zone A (*i.e.*, a mapped relative seismic shaking zone with the least shaking potential), both as determined by the County and (b) one-eighth of one mile of a mapped inactive fault line and Area 4 for Seismic Response hazard area (*i.e.*, an area consisting of highlands characteristically over 20% slope), both as determined by the City.  California is subject to a wide range of earthquake activity.  There are numerous earthquake faults throughout Southern California, and property within the Project may be subject to earthquake hazards of varying degrees depending on the nature, proximity and activity of any such earthquake faults, including the potential for strong ground shaking and liquefaction or other earthquake hazards.  The Whittier-North Elsinore earthquake fault is located to the north of the Project, and the Newport-Inglewood Fault is located to the south of the Project.  In addition, it has been theorized, as a result of geological studies done in conjunction with grading of the San Joaquin Hills Transportation Corridor, that a "San Joaquin Hills thrust fault" exists in the vicinity of such facility.  This potential fault has not been mapped and there does not exist, as of the date hereof, any definitive information as to where such fault may lie.  Buyer must evaluate the potential for future seismic activity which might seriously damage the Property.  A major earthquake, which some have predicted will occur in our lifetimes, could cause very serious damage to residences located even many miles from the epicenter of the earthquake.  A more moderate earthquake occurring on a more minor fault, or on an as yet undiscovered fault, could also cause substantial damage.  Seller makes no representations or warranties as to the degree of earthquake risk within the Project and Master Community.  Buyer is advised to consult with City, County or other public agencies, and appropriate experts to evaluate the potential risk.

109.    **Disclosure to Subsequent Purchasers**.  When Buyer sells the Property, Buyer is required to disclose to the subsequent purchaser(s) information that Buyer has regarding the Property and Project.  Buyer will disclose such information and will provide all disclosure documents received from Seller and any other information that may be of value to the subsequent purchaser(s), including, but not limited to, the Master Declaration.

110.    **Visiting the Project Before Move-In.**  If Buyer wishes to visit the Project and the Property before Buyer moves in, please be aware that construction sites are potentially dangerous.  Seller may permit Buyer to enter the Property and the construction area, provided that Buyer is fully aware of the risks of such entry.  It may be necessary to deny Buyer access if work is in progress or site conditions are too hazardous to permit Buyer's visit.  Buyer must be accompanied by Buyer's sales counselor or another representative of Seller on any and all visits to the Project and the Property.  No children under the age of sixteen (16) years old shall be permitted to visit any portion of the Project at any time (including non-construction hours) while the Project is under construction.  Seller further requests that such visits be limited to non-construction hours.  By signing this Disclosure Statement, Buyer acknowledges that there are numerous risks associated with visiting the Project and Property during construction.  Buyer further agrees to use due care, including without limitation the wearing of appropriate attire (e.g., closed toe shoes, etc.) and hard hats, while visiting the Property and Project.  In addition, by signing this Disclosure Statement, Buyer agrees that Buyer, Buyer's family and invitees shall proceed at their own risk and  except as to any claims arising through the gross negligence or willful misconduct of the "Seller Parties" defined below, Buyer, Buyer's family and invitees shall release and waive any claims against Seller and all of its affiliates, parent and subsidiary companies, officers, directors, employees, attorneys, assigns and any and all other persons or entities that could be potentially liable to Buyer, Buyer's family and invitees (**"Seller Parties"**) as a result of an injury that may occur during a visit to the Property or to any portion of the Project.

Seller's Initials:

Buyer's Initials:

HLO\ Olivewood\ v.4 11.17.23

The disclosures contained herein are not all-inclusive and do not relieve or otherwise mitigate Buyer's responsibility to, among others: (a) diligently perform Buyer's investigation of the Property and the area immediately surrounding same, together with the neighborhood surrounding the Project; (b) review the preliminary title report prepared for the Property; (c) review the Management Documents; (d) review the recorded tract map for the Project together with the conditions of approval associated therewith; and (e) inspect the Property and Project to satisfy Buyer about the condition and fitness of said Property and Project for Buyer's intended use.

The undersigned represent(s) that I/we have read and understand the matters set forth in the foregoing Disclosure Statement and have received a copy for my/our records.  I/we acknowledge and agree that I/we are solely responsible to make certain that I/we understand the contents of this Disclosure Statement and will take whatever steps are necessary to do so, including without limitation, consult an attorney, interpreter, engineer, or any other person whose advice or assistance may be necessary to fully understand the matters set forth herein.  I/we acknowledge and agree that I/we have considered the possible effect of such matters in my/our decision to purchase the Property.  This Disclosure Statement has been executed by the parties on the dates indicated below.  Buyer hereby agrees to provide a copy of this Disclosure Statement to any individual or entity purchasing the Property from Buyer.

*[SIGNATURES ON FOLLOWING PAGE]*

*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.4 11.17.23

-23-

Acknowledged and agreed by the parties on the respective dates set forth below.

Buyer                                         Dated:

Di Lan Ge
Printed Name

Buyer                                         Dated:

Xian Feng Gu
Printed Name

Buyer                                         Dated:

Printed Name

Buyer                                         Dated:

Printed Name

*"Buyer"*

Seller's Sales Representative                 Dated:

THE NEW HOME COMPANY SOUTHERN                 Dated:
CALIFORNIA LLC, a Delaware limited liability
company

By: _____

Its:    Authorized Agent

*"Seller"*

**ADDENDUM TO**
**PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

**DESIGN STUDIO SELECTIONS**

**(OLIVEWOOD)**

This Addendum is attached and incorporated into that certain Purchase Agreement and Escrow Instructions dated _____ (**"Agreement"**) between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), and the undersigned (**"Buyer"**), regarding Buyer's purchase of the residence described in the Agreement (**"Property"**). This Addendum supplements the Agreement and includes additional agreements of Buyer and Seller. If there is any conflict between the provisions of the Agreement and this Addendum, this Addendum shall control. Except as otherwise provided in this Addendum, all defined terms used in this Addendum shall have the same meaning as set forth in the Agreement.

1.      **Design Studio Options**. Pursuant to the terms of this Addendum, Buyer is entitled to purchase certain options or upgrades (collectively, **"Design Studio Options"**), all in accordance with the terms of this Addendum. As used herein, the term **"Design Studio Order"** shall refer to any order by Buyer of one or more Design Studio Options pursuant to this Addendum which shall be evidenced by the execution by Buyer of either a "Designer Included Option Agreement" or "Buyer Option Agreement" (as such terms are defined below), as applicable. With the exception of the Design Studio Options selected by Buyer in accordance with this Addendum, Seller is not obligated to make any changes, alterations or additions to construction or design of the Property or any improvements, fixtures, appliances or other aspects of the Property.

2.      **Timing of Selection of Design Studio Options**.

(a)     **Pre-Plotted/Pre-Selected Design Studio Order**. If Seller, in its sole discretion, has included any pre-plotted Design Studio Options in the Property or Buyer has pre-selected any Design Studio Options for the Property in advance of execution of this Addendum (**"Pre-Plotted Options"**), Buyer shall, concurrently with the execution of this Addendum, execute a "Designer Included Option Agreement," in the form attached as **Exhibit "A"** hereto (**"Designer Included Option Agreement"**). Unless requested by Seller, Buyer shall not be obligated to deliver any deposits in connection with any Pre-Plotted Options.

(b)     **Other Design Studio Order**. If Buyer wishes to place a Design Studio Order for any Design Studio Options that are not covered by Section 2(a) above, this Section 2(b) shall apply. Buyer shall schedule an appointment with a Seller design consultant (**"Design Consultant"**) to discuss Buyer's Design Studio Order. All appointments must be scheduled by Buyer well in advance of the applicable established construction cutoff dates for the Design Studio Options (**"Cutoff Dates"**) provided by Seller to Buyer to ensure that Buyer makes all Design Studio Option selections by the applicable Cutoff Date. Buyer acknowledges and understands that the appointment times available with Design Consultants are limited and Seller will not make special or unscheduled times available and has not and cannot provide Buyer with any assurances as to whether there will be available appointment times to coincide with Buyer's schedule. Buyer must complete the selection of all Design Studio Options before the applicable Cutoff Dates; however, the Cutoff Dates may, at any time and from time to time, be accelerated or delayed by Seller, in its sole discretion. Seller is not obligated to accommodate any Design Studio Option Orders for Design Studio Options if delivered after the Cutoff Date for the applicable Design Studio Options and Seller shall not be obligated to extend any Cutoff Dates. On or before the applicable Cutoff Date, Buyer shall select the applicable Design Studio Options by executing and delivering to Seller a "Buyer Option Agreement," in the form attached hereto as **Exhibit "B"** (**"Buyer Option Agreement"**). Within five (5) days after receipt of the Seller's Request, Buyer shall execute and deliver to Seller a "Final Option Agreement," in the form attached as **Exhibit "C,"** evidencing Buyer's purchase of the Design Studio Options set forth in the Buyer Option Agreement(s). If Buyer fails to deliver to Seller an executed Final Option Agreement within five (5) days following a Seller's Request, Buyer's failure shall be deemed a material default under the terms of the Agreement and Seller shall have all rights and remedies under the Paragraph 8 of the Agreement.

One or more third-party providers may be assisting Seller in connection with the selection by Buyer of certain Designer Studio Option(s) for the Property, including without limitation the provider of EVO smart home automation features for the Property, and Buyer agrees to cooperate in a timely matter with such third-party provider(s) in connection with Buyer's selection of such Designer Studio Option(s). Buyer's failure to cooperate with such third-party provider(s) shall not extend any Cutoff Dates.

3.      **Description and Pricing of Design Studio Options.** The Design Studio Options currently available to Buyer are set forth in a web-based program (**"Design Studio Catalogue"**) which Buyer has been provided access to (this access may be indirect through a representative of Seller). The Design Studio Catalogue may be modified at any time and from time to time by Seller, in its sole discretion, without notice to Buyer, including without limitation the deletion and/or addition of Design Studio Options and the adjustment of Design Studio Option pricing. Seller has provided no assurances to Buyer that the pricing of Design Studio Options will not increase prior to the date on which Buyer executes and Seller executes and accepts a Design Studio Order. Design Studio Option Prices (as such term is defined below) are net of any allowances provided by Seller to Buyer. Allowances, if any, must be in writing and signed by Seller.

4.      **Design Studio Option Price.** The purchase price for each Design Studio Option shall be specified in the Design Studio Order (each, a **"Design Studio Option Price"**, collectively, the **"Design Studio Option Prices"**) for such Des____  ___ ·· Option. Seller has not provided any assurances that the Design Studio Option Prices will n_____ _____sed before Buyer places a Design Studio Order for same, and Seller, in its sole discretion, at

*Seller's Initial*

*Buyer's Initial*

HLO\ Olivewood\ v.1 9/21/2023                                   -1-

any time and from time to time, shall be entitled to change the amount of Design Studio Option Prices without notice to Buyer. The Design Studio Option Price shall be added to and constitute a portion of the Purchase Price (under the Agreement and for purposes of reassessment of the Property for real property tax purposes) of the Property. If Buyer will be paying a portion of the Purchase Price of the Property with Loan proceeds, Buyer acknowledges and understands that the addition of the Design Studio Option Price to the Purchase Price of the Property may increase the portion of the Purchase Price financed by Buyer. There are no assurances that Buyer's Lender will approve the increased Loan amount resulting from Design Studio Orders and such approval is not a condition to the sale of the Property. All Design Studio Options ordered by Buyer, including the Design Studio Option Prices for such Design Studio Options, shall be summarized in the Final Option Agreement(s).

5.    **Design Deposits.** Concurrently with the execution and delivery to Seller of a Design Studio Order (but excluding the order of any pre-plotted or pre-selected Design Studio Options pursuant to a Designer Included Option Agreement), Buyer shall deliver directly to Seller (a) an addendum to the Agreement regarding additional deposit as liquidated damages, in the form attached as *Exhibit "D"* (*"Liquidated Damages Addendum"*) and (b) a deposit on the Design Studio Options covered by the Design Studio Order in the amount as determined by *Exhibit "E"* attached hereto (each, a *"Design Deposit"*, collectively, the *"Design Deposits"*). All Design Deposits shall be applicable to the Design Studio Option Price and may differ depending on the type of Design Studio Option. Design Deposits shall not be held in an interest-bearing account nor shall interest be paid or accrued thereon. Seller, in its sole discretion, at any time and from time to time, shall be entitled to change the amount of Design Deposits without notice to Buyer.

6.    **Flooring Orders.** Seller will order flooring as far in advance of the completion date of the Property as practical, subject to manufacturers' availability. Flooring will be ordered and warehoused no earlier than the date on which Seller notifies Escrow Holder in writing that the Close of Escrow is anticipated to occur in not more than thirty (30) days. Certain floorings, including "custom dyed" carpeting, require substantial advance ordering time. Therefore, at least four (4) to six (6) extra weeks must be allowed for ordering such flooring. In such instances, it is Buyer's obligation to meet all Lender's and Seller's requirements, and deliver a Design Studio Order for such custom flooring in time to (a) meet any applicable Cutoff Date and (b) allow delivery and installation prior to anticipated Close of Escrow. Seller will schedule the flooring to be installed as soon as practical.

7.    **Verification of Order.** Buyer acknowledges that by executing a Design Studio Order, Buyer will be acknowledging that all product styles, patterns, and colors; direction of patterns, wood, and/or tile; and product prices have been checked against the written selection order and diagram and are verified to be those selected and agreed to by Buyer.

8.    **Changes.** Seller is not obligated to make any changes or additions to Design Studio Options or allow the cancellation of same after a Design Studio Order for same is executed; however, Buyer may request cancellation, changes or additions of or to a Design Studio Order by delivering to Seller a written request therefor. Seller shall be entitled to accept or reject any cancellation or make the requested changes or additions in Seller's sole discretion. Seller's failure to respond to any such request within fifteen (15) days following its receipt of such request shall be deemed an election by Seller to reject such request. Any cancellation, change or addition that is approved in writing by Seller will be contingent on Buyer's payment to Seller of (a) a $500.00 change order fee (which shall not be applicable to the Design Studio Option Price or Purchase Price); (b) if applicable, as determined by Seller, costs and fees for restocking of materials required by any applicable supplier or the full cost of materials (and the cost of storage or disposal of same) if such materials are not returnable (which shall not be applicable to the Design Studio Option Price or Purchase Price); (c) any increased Design Deposit required by Seller; and (d) any other amounts required by Seller, in its sole discretion (collectively, *"Additional Charges"*). All Additional Charges shall be paid by Buyer to Seller immediately upon Seller's notifying Buyer that Seller will make the change, addition or cancellation requested by Buyer. Seller's refusal to make any change, addition or cancellation shall not result in any refund, credit or payment to Buyer of any kind nor shall such refusal affect any of Buyer's obligations under this Addendum or the Agreement. In the case of a cancellation that is approved by Seller in writing any Design Deposit made by Buyer shall not be refunded until the Close of Escrow and such refund shall, in Seller's sole discretion, be in the form of a credit to the Purchase Price or direct payment through Escrow to Buyer. All requests for changes, additions or cancellation shall be in writing and delivered personally to Seller. Under no circumstances will changes, additions or cancellation in Design Studio Options be allowed after commencement of installation. Seller's approval of any change, addition or cancellation shall not be deemed an approval or obligate Seller to approve any later change, addition or cancellation requested by Buyer.

9.    **Production and Installation.** Seller shall use commercially reasonable efforts to complete installation of the Design Studio Options before the Close of Escrow; however, a delay in the installation of any Design Studio Option(s) shall not delay the Close of Escrow so long as the applicable governmental authority issues a Certificate of Occupancy for the Property. In addition, installation of Design Studio Options after the Close of Escrow shall not alter Buyer's obligation to close Escrow or otherwise modify or waive any provisions of the Agreement. If the Design Studio Options are not completed prior to the Close of Escrow, Buyer hereby grants to Seller and its agents, contractors and subcontractors a right and license to enter the Property to complete same. Production and installation schedules, however, are subject to manufacturers' delivery of products and other factors outside the control of Seller. Any delays in the installation of Design Studio Options (including without limitation delays beyond the Close of Escrow) shall not constitute a basis for cancellation of this Addendum or the Agreement or release Buyer from or alter any of Buyer's obligations under any Design Studio Order, this Addendum, the Agreement or any other agreement entered into by Buyer and Seller. Seller may, if deemed reasonably necessary by Seller due to availability of materials, design considerations or other circumstances or conditions deemed relevant by Seller, (a) substitute alternative Design Studio Option materials, appliances, decorator items, fixtures and other improvements [ ] by Buyer for alternative Design Studio Option materials, appliances, decorator items, fixtures and other im[ ]ts of substantially equal quality and utility or (b) change the location, method of installation or

*Seller's Initial*

*Buyer's Initial*

other aspects of any Design Studio Option. Seller may make such substitutions or changes without notification to Buyer or adjustment to the Purchase Price or Design Studio Option Price. Buyer's consultation by Seller or its Home Counselors or other agents shall not waive Seller's rights to make any substitutions or changes contemplated or provided in this Section. There shall be no adjustment to the Purchase Price or Design Studio Option Price as a result of any such substitution or change by Seller. If Seller is unable to complete or install any Design Studio Option by the Close of Escrow, the Close of Escrow shall not be delayed so long as occupancy of the Property is approved by the applicable governmental authority. The incomplete Design Studio Options shall be completed by Seller as soon as reasonably possible after the Close of Escrow. Unless otherwise specifically agreed to in writing by Seller, all required seaming, layout, tile or pattern direction, or other installation decisions will be at the discretion of Seller and/or the contractor/installer.

10.    **Samples**. Samples of materials, colors and other aspects of Design Studio Options are provided to Buyer only to give Buyer a general idea of what such Design Studio Options might look like. However since there may be substantial variation in the color, texture and other aspects of certain design materials, the providing of samples does not constitute a warranty or representation that the actual materials will conform with the samples.

11.    **Delivery of Warranties**. Seller will deliver to Buyer any and all guarantees and warranties that Seller receives from its subcontractors, materialmen and suppliers with respect to the Design Studio Options, to the extent that such guarantees and warranties can be assigned to Buyer.

12.    **Default Under Agreement.**  A default under this Addendum by Buyer shall constitute a default under the Agreement giving rise to all of Seller's remedies under the Agreement and otherwise.

*[SIGNATURES ON FOLLOWING PAGE]*

*Seller's Initial*

*Buyer's Initial*

HLO\ Olivewood\ v.1 9/21/2023                    -3-

The parties hereto have executed this Addendum as of the latest date set forth below.

Dated: _____

Buyer

Di Lan Ge
Printed Name

Dated: _____

Buyer

Xian Feng Gu
Printed Name

Buyer                                    Dated: _____

Printed Name

Buyer                                    Dated: _____

Printed Name

*"Buyer"*

Dated: _____

Seller's Sales Representative

THE NEW HOME COMPANY SOUTHERN          Dated: _____
CALIFORNIA LLC, a Delaware limited liability
company

By: _____

Its:    Authorized Agent

*"Seller"*

**EXHIBIT "A"**

**FORM OF DESIGNER INCLUDED OPTION AGREEMENT**

## THE NEW HOME COMPANY

## Designer Included Option Agreement

Community:

| Details | | | |
|---|---|---|---|
| Buyer: | | | |
| Lot #: | Plan/Elev: | Phase: | Tract: |
| Lot Address: | | City: | State: CALIFORNIA    Zip: |
| Design Consultant: | | | |

| Ordered Options | | | | |
|---|---|---|---|---|

**APPLIANCES**

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| | | APPLIANCES Total: | |
|---|---|---|---|

**CABINETS**

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| | | CABINETS Total: | |
|---|---|---|---|

**CLOSET**

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

_____
Buyer Initials                                    Page



# Designer Included Option Agreement

Community:

## CLOSET

| Description, Notes & Attributes: | Selected By: |
|---|---|
|  |  |

CLOSET Total:

## COUNTERTOPS

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

| Description, Notes & Attributes: | Selected By: |
|---|---|
|  |  |

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

| Description, Notes & Attributes: | Selected By: |
|---|---|
|  |  |

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

| Description, Notes & Attributes: | Selected By: |
|---|---|
|  |  |

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

| Description, Notes & Attributes: | Selected By: |
|---|---|
|  |  |

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

| Description, Notes & Attributes: | Selected By: |
|---|---|
|  |  |



# Designer Included Option Agreement

Community:

**PLUMBING OPTIONS**

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| | |
|---|---|
| PLUMBING OPTIONS Total: | |
| Order Total: | |

**EXHIBIT "B"**

**FORM OF BUYER OPTION AGREEMENT**



## Buyer Option Agreement

Community:

| Details | | | | |
|---|---|---|---|---|
| **Buyer:** | | | | |
| **Lot #:** | **Plan/Elev:** | **Phase:** | **Tract:** | |
| **Lot Address:** | | **City:** | **State:** CALIFORNIA | **Zip:** |
| **Design Consultant:** | | | | |

| Deposits Paid | | | | | |
|---|---|---|---|---|---|
| Date | Check # | Type | Add. # | Notes | Amount |
| | | | | | |
| | | | | **Total Deposits:** | |

| Ordered Options |
|---|

| APPLIANCES | Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|---|
| | Description, Notes & Attributes: | | Selected By: | | |
| | | | | APPLIANCES Total: | |

| FLOORING | Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|---|
| | Description, Notes & Attributes: | | Selected By: | | |
| | | | | FLOORING Total: | |

| WINDOW COVERINGS | Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|---|
| | Description, Notes & Attributes: | | Selected By: | | |
| | | | | WINDOW COVERINGS Total: | |

| | Order Total: | |
|---|---|---|

_____
Buyer Initials

Page

EXHIBIT "C"

**FORM OF FINAL OPTION AGREEMENT**

<table>
<tr><td>THE NEW HOME COMPANY</td><td colspan="4" style="text-align:center;">**Final Option Agreement**</td></tr>
<tr><td></td><td colspan="4" style="text-align:center;">Community:</td></tr>
</table>

| Details | | | | |
|---|---|---|---|---|
| Buyer: | | | | |
| Lot #: | Plan/Elev: | Phase: | Tract: | |
| Lot Address: | | City: | State: CALIFORNIA | Zip: |
| Design Consultant: | | | | |

| Deposits Paid | | | | | |
|---|---|---|---|---|---|
| Date | Check # | Type | Add. # | Notes | Amount |
| | | | | | |
| | | | | Total Deposits: | |

**Ordered Options**

**APPLIANCES**

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

Description, Notes & Attributes:                    Selected By:

APPLIANCES Total: [            ]

**CABINETS**

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| | | | | |

Description, Notes & Attributes:                    Selected By:

_____
Buyer Initials                              Page

# THE NEW HOME COMPANY

# Final Option Agreement

Community:

## CABINETS

| | | | CABINETS Total: | |
|---|---|---|---|---|

## CLOSET

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| Description, Notes & Attributes: | | | Selected By: | |

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| Description, Notes & Attributes: | | | Selected By: | |

| | | | CLOSET Total: | |
|---|---|---|---|---|

## COUNTERTOPS

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| Description, Notes & Attributes: | | | Selected By: | |

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| Description, Notes & Attributes: | | | Selected By: | |

| Order Date | Option | Qty | Price | Total |
|---|---|---|---|---|
| Description, Notes & Attributes: | | | Selected By: | |

HLO\ Olivewood\ v.1 9/21/2023



# Final Option Agreement

Community:

**PLUMBING OPTIONS**

| Order Date | Option | Qty | Price | Total |
|------------|--------|-----|-------|-------|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| Order Date | Option | Qty | Price | Total |
|------------|--------|-----|-------|-------|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| Order Date | Option | Qty | Price | Total |
|------------|--------|-----|-------|-------|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| Order Date | Option | Qty | Price | Total |
|------------|--------|-----|-------|-------|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| | | | PLUMBING OPTIONS Total: | |
|--|--|--|--|--|

**WINDOW COVERINGS**

| Order Date | Option | Qty | Price | Total |
|------------|--------|-----|-------|-------|
| | | | | |

Description, Notes & Attributes:                    Selected By:

| | | | WINDOW COVERINGS Total: | |
|--|--|--|--|--|

| | | | Order Total: | |
|--|--|--|--|--|

Buyer Initials                              Page

**EXHIBIT "D"**

**LIQUIDATED DAMAGES ADDENDUM**

[See attached]

ADDENDUM TO
PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

ADDITIONAL DEPOSIT AS LIQUIDATED DAMAGES

(OLIVEWOOD)

This Addendum is executed on _____, 202___ ("***Effective Date***") and is attached and incorporated into the Purchase Agreement and Escrow Instructions dated _____, 202___ ("***Agreement***") between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company ("***Seller***"), and the undersigned ("***Buyer***"), regarding Buyer's purchase of the residence described in the Agreement ("***Property***"). This Addendum supplements the Agreement and includes additional agreements of Buyer and Seller.  If there is any conflict between the provisions of the Agreement and this Addendum, this Addendum shall control.  All defined terms used in this Addendum shall have the same meaning as set forth in the Agreement.

1.        **Additional Deposit.**  Concurrently with the execution of this Addendum, Buyer has delivered to Seller or Seller's agent by Check No._____ the sum of $_____ as an additional deposit under the Agreement between Buyer and Seller ("***Additional Deposit***") to be applied to the Purchase Price of the Property at the Close of Escrow.

2.        **SELLER'S DAMAGES.**  IF BUYER DEFAULTS UNDER THE AGREEMENT, SELLER SHALL BE RELEASED FROM ITS OBLIGATION TO SELL ITS PROPERTY TO BUYER, AND SELLER MAY PURSUE ANY REMEDY AT LAW OR IN EQUITY THAT IT MAY HAVE AGAINST BUYER ON ACCOUNT OF SUCH DEFAULT.  HOWEVER, BY PLACING THEIR INITIALS HERE, SELLER [Initials] _____ _____ AND BUYER [Initials] _____ _____ AGREE AS FOLLOWS:

(a)        **LIQUIDATED DAMAGES**.  IN THE EVENT OF A DEFAULT BY BUYER UNDER THE AGREEMENT, BUYER AND SELLER AGREE THAT IT WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN THE ACTUAL DAMAGES SUFFERED BY SELLER, THAT BUYER DESIRES TO LIMIT THE DAMAGES FOR WHICH BUYER MAY BE LIABLE AS THE RESULT OF A DEFAULT BY BUYER AND THAT BUYER AND SELLER BOTH DESIRE TO AVOID THE COSTS AND DELAYS IF SELLER COMMENCED LEGAL PROCEEDINGS AGAINST BUYER TO RECOVER ITS DAMAGES RESULTING FROM BUYER'S DEFAULT.  THEREFORE, IN THE EVENT OF A DEFAULT BY BUYER PRIOR TO THE CLOSE OF ESCROW, SELLER, AS ITS SOLE AND EXCLUSIVE REMEDY, SHALL BE ENTITLED TO TERMINATE THE AGREEMENT, CANCEL THE ESCROW AND RETAIN, AS LIQUIDATED DAMAGES, BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER UNDER THE AGREEMENT (AND UNDER ANY ADDENDUM THERETO), WHICH AMOUNT SHALL BE DEEMED TO BE A REASONABLE ESTIMATE OF SELLER'S DAMAGES PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671 ET SEQ.  THE LIQUIDATED DAMAGES TO BE RETAINED BY SELLER SHALL BE DETERMINED AFTER FIRST DEDUCTING FROM BUYER'S DEPOSITS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE THEREFROM TO THIRD PARTIES.  NOTWITHSTANDING THE FOREGOING, IF THE TOTAL AMOUNT OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER EXCEEDS THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE OF THE PROPERTY, SELLER, AT ITS SOLE DISCRETION, SHALL BE ENTITLED TO EITHER:  (1) RETAIN AS LIQUIDATED DAMAGES AN AMOUNT NOT EXCEEDING THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1675(c) AND ESCROW HOLDER SHALL RETURN TO BUYER THE BALANCE OF BUYER'S DEPOSITS (LESS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE THEREFROM TO THIRD PARTIES); OR (2) DEMAND TO RETAIN AS LIQUIDATED DAMAGES AN AMOUNT IN EXCESS OF THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE; PROVIDED, HOWEVER, IF BUYER OBJECTS TO SUCH AMOUNT AS PROVIDED IN SECTION 2(a)(ii) BELOW, PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1675(d) THIS LIQUIDATED DAMAGES PROVISION SHALL BE INVALID UNLESS SELLER ESTABLISHES IN THE ARBITRATION PROCEEDINGS PROVIDED FOR HEREIN (OR IN COURT PROCEEDINGS, IF APPLICABLE)  THAT THE AMOUNT DEMANDED BY SELLER AS LIQUIDATED DAMAGES IS REASONABLE AS DETERMINED IN ACCORDANCE WITH CALIFORNIA CIVIL CODE SECTION 1675(e).  ESCROW SHALL BE CANCELLED AND LIQUIDATED DAMAGES SHALL BE REMITTED TO SELLER BY ESCROW HOLDER IN ACCORDANCE WITH THE FOLLOWING PROCEDURE:

(i)        **SELLER'S TERMINATION NOTICE**.  SELLER SHALL GIVE WRITTEN NOTICE ("***TERMINATION NOTICE***") BY ANY OF THE MEANS AUTHORIZED BY SECTION 116.340 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE (E.G., PERSONAL DELIVERY OR ANY FORM OF MAILING PROVIDING FOR A RETURN RECEIPT) TO ESCROW HOLDER AND TO BUYER OF SELLER'S DETERMINATION THAT BUYER IS IN DEFAULT UNDER THIS AGREEMENT AND THAT SELLER IS EXERCISING ITS RIGHT TO TERMINATE THIS AGREEMENT AND IS INSTRUCTING ESCROW HOLDER TO CANCEL THE ESCROW AND REMIT TO SELLER AS LIQUIDATED DAMAGES ALL OR A PORTION OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER AS PROVIDED ABOVE.

(ii)        **BUYER'S OBJECTION NOTICE**.  BUYER SHALL HAVE A PERIOD OF TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S TERMINATION NOTICE IN WHICH TO PROVIDE AN OBJECTION NOTICE TO ESCROW HOLDER AND SELLER THAT BUYER OBJECTS EITHER:

(1)        TO SELLER'S TERMINATION OF THIS AGREEMENT; OR

(2)        TO THE AMOUNT OF LIQUIDATED DAMAGES TO BE REMITTED TO SELLER.  UNLESS BUYER'S OBJECTION NOTICE CLEARLY STATES THAT BUYER

OBJECTS TO SELLER'S TERMINATION OF THIS AGREEMENT AND THAT BUYER INTENDS TO DILIGENTLY PURSUE THE PURCHASE OF THE PROPERTY, BUYER SHALL BE DEEMED TO OBJECT SOLELY TO THE AMOUNT OF LIQUIDATED DAMAGES CLAIMED BY SELLER AND THE PARTIES SHALL HAVE NO FURTHER RIGHTS OR OBLIGATIONS WITH RESPECT TO THE PROPERTY UNDER THIS AGREEMENT. THE RENUNCIATION BY BUYER OF BUYER'S INTENTION TO DILIGENTLY PURSUE THE PURCHASE OF THE PROPERTY SHALL ALSO CONSTITUTE A WAIVER OF ANY RIGHT TO FILE OR RECORD A LIS PENDENS OR ANY OTHER LIEN AGAINST THE PROPERTY. SUBJECT TO PARAGRAPH 13 OF THE AGREEMENT, BUYER'S OBJECTION NOTICE SHALL BE DELIVERED TO SELLER AS SET FORTH BELOW:

> Lori Michel
> lmichel@NewHomeCo.com
> New Home Co.
> 15231 Laguna Canyon Rd., Suite 250
> Irvine, California 92618

(iii)    **ESCROW HOLDER'S OBLIGATIONS IF TIMELY OBJECTION NOTICE IS RECEIVED**. IF ESCROW HOLDER RECEIVES AN OBJECTION NOTICE FROM BUYER WITHIN SAID TWENTY (20) DAY PERIOD, ESCROW HOLDER SHALL IMMEDIATELY NOTIFY SELLER OF BUYER'S CONFLICTING NOTICE. THE CONTROVERSY CREATED BY THE CONFLICTING NOTICES BY SELLER AND BUYER, AND THE DISPOSITION OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER SHALL BE RESOLVED EITHER BY

(1)    A COURT OF PROPER JURISDICTION, IF APPLICABLE, OR

(2)    ARBITRATION IF BUYER AND SELLER HAVE INITIALED PARAGRAPH 27 OF THE AGREEMENT. ARBITRATION SHALL BE CONDUCTED AS SET FORTH IN PARAGRAPH 26 OF THE AGREEMENT.

(iv)    **ESCROW HOLDER'S OBLIGATIONS IF TIMELY OBJECTION NOTICE IS NOT RECEIVED**. IF ESCROW HOLDER DOES NOT RECEIVE AN OBJECTION NOTICE FROM BUYER WITHIN SAID TWENTY (20) DAY PERIOD, AT THE EXPIRATION OF SUCH PERIOD, BUYER SHALL BE DEEMED TO AGREE THAT BUYER IS IN DEFAULT UNDER THIS AGREEMENT. ACCORDINGLY, ESCROW HOLDER SHALL:

(1)    REMIT TO SELLER THE AMOUNT DEMANDED BY SELLER (LESS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE TO THIRD PARTIES);

(2)    REMIT THE BALANCE OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER, IF ANY, TO BUYER; AND

(3)    CANCEL THE ESCROW. BUYER SHALL BE DEEMED TO HAVE WAIVED BUYER'S RIGHTS TO ALL REMEDIES AVAILABLE AT LAW OR IN EQUITY AGAINST SELLER, INCLUDING AN ACTION TO SEEK SPECIFIC PERFORMANCE OF THIS AGREEMENT OR THE RIGHT TO FILE A LIS PENDENS AGAINST THE PROPERTY.

**BUYER AND SELLER EACH ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THIS SECTION 2 AND BY PLACING THEIR INITIAL BELOW, AGREE TO BE BOUND THEREBY.**

Buyer's Initials _____                    Seller's Initials _____

(b)    **USE OF BUYER FUNDS.** IF SELLER HAS HAD THE USE OF BUYER'S DEPOSIT PENDING CONSUMMATION OF THE SALE UNDER AUTHORIZATION BY THE DRE PURSUANT TO SUBDIVISION (c) OR (d) OF SECTION 11013.2 OR SUBDIVISION (b) OR (c) OF SECTION 11013.4 OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE, SELLER SHALL IMMEDIATELY UPON ALLEGING BUYER'S DEFAULT, TRANSMIT TO ESCROW HOLDER FUNDS EQUAL TO ALL DEPOSITS AND THIRD PARTY CHARGES PAID BY BUYER.

3.    **Ratification.** Except as otherwise provided in this Addendum, the Agreement is hereby ratified and confirmed by the Parties.

***[SIGNATURES ON FOLLOWING PAGE]***



HL. *Seller's Ini*

*Buyer's Initial*
O\ Olivewood\ v.1 9/21/2023

Acknowledged and agreed by the parties on the respective dates set forth below.

_____                      Dated: _____, _____
Buyer

_____
Print Name

_____                      Dated: _____, _____
Buyer

_____
Print Name

_____                      Dated: _____, _____
Buyer

_____
Print Name

_____                      Dated: _____, _____
Buyer

_____
Print Name

                    *"Buyer"*

_____                      Dated: _____, _____
Seller's Sales Representative

THE NEW HOME COMPANY SOUTHERN                           Dated: _____, _____
CALIFORNIA LLC, a Delaware limited liability
company

By:    _____

       Its: _____

By:    _____

       Its: _____

                    *"Seller"*

**EXHIBIT "E"**

**DESIGN STUDIO OPTION DEPOSIT SCHEDULE**

Design Studio Option Deposits (based on a percentage of the option price charged by Seller) (collectively, ***"Option Deposits"***) will be as follows:

- A <u>**50%**</u> deposit is due on all flooring options upon execution by Buyer of documentation provided by Seller for the ordering of such options.
- A <u>**50%**</u> deposit is due on all structural options upon execution by Buyer of documentation provided by Seller for the ordering of such options.
- A <u>**50%**</u> deposit is due on all other option orders (other than flooring and structural options) upon execution by Buyer of documentation provided by Seller for the ordering of such options.
- The remaining cost of all optional items is due at the Close of Escrow in accordance with the Agreement.

**REGARDLESS OF WHETHER AN OPTION ITEM HAS BEEN ORDERED FROM THE MANUFACTURER AND/OR INSTALLED BY SELLER, SELLER SHALL HAVE A CLAIM TO RETAIN THE FULL AMOUNT OF THE OPTION DEPOSITS SUBJECT TO SECTION 2791(C) OF THE CALIFORNIA CIVIL CODE.**



HL *Seller's Ini*

*Buyer's Initial*

ADDENDUM TO
PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

SOLAR STANDARD – MANDATORY PURCHASE

(OLIVEWOOD)

This Addendum is attached and incorporated into that certain Purchase Agreement and Escrow Instructions dated _____ (**"Agreement"**) between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), and the undersigned (**"Buyer"**), regarding Buyer's purchase of the residence described in the Agreement (**"Property"**) in the Olivewood residential development (**"Project"**). This Addendum supplements the Agreement and includes additional agreements of Buyer and Seller. If there is any conflict between the provisions of the Agreement and this Addendum, this Addendum shall control. All defined terms used in this Addendum shall have the same meaning as set forth in the Agreement or the "Declaration" defined below.

1. **MANDATORY SOLAR ENERGY SYSTEM PURCHASE**. Seller has arranged with CalState Solar, Inc. (**"Solar Provider"**), a third party solar energy system provider unrelated to Seller, to install a photovoltaic solar system (**"System"**) on the Property. **As a condition to Buyer's purchase of the Property, Buyer is required to purchase the System from Seller at Buyer's sole and exclusive cost. The total cost of the System will be automatically added to the final Purchase Price of the Property.** If Buyer has any questions about the System, Buyer should contact a Solar Provider representative directly by phone at (213) 840-8687.

2. **INCENTIVES**. State, federal and local incentives in connection with the System may be available to Buyer. Such incentives may be based on the area Buyer lives in, tax liabilities and, if any, local rebates. Buyer is responsible for obtaining such credits. Buyer should contact Buyer's own financial and tax advisors for information on whether these credits are available to them. Solar Provider will provide Buyer with any and all information regarding their System to receive such credits.

3. **SOLAR SYSTEM INFORMATION.**

   a. **Service**. Solar Provider will provide a limited warranty on all System installer-supplied materials and services used in the Project against original defects in material or workmanship for a period of (10) years from the date of permit signoff (**"Solar Provider Warranty"**). Solar Provider does not warrant roof attachment issues at penetration. Buyer should consult roof installer for any roof leak, flashing or penetration issues.

   b. **System Excluded from Seller's Limited Warranty**. The only warranty that Seller provides for the Property is set forth in the Homebuyer Warranty provided to Buyer (**"Seller Limited Warranty"**). The Seller Limited Warranty <u>does not</u> cover the System and/or any aspect thereof. **SELLER MAKES NO OTHER REPRESENTATION, WARRANTY, COVENANT OR GUARANTY, EXPRESS OR IMPLIED, REGARDING (1) THE SYSTEM AND/OR WHETHER IT WILL PROVIDE ANY UTILITY COST SAVINGS, (2) THE LONGEVITY OF THE SYSTEM OR COST OF MAINTENANCE, REPLACEMENT OR REPAIR THEREOF, (3) THE SOLAR PROVIDER WARRANTY, (4) THE PERFORMANCE BY SOLAR PROVIDER UNDER THE SOLAR PROVIDER WARRANTY OR OTHERWISE, (5) ANY WARRANTY FROM A SYSTEM COMPONENT MANUFACTURER (AS DEFINED BELOW), (6) THE PERFORMANCE BY ANY SYSTEM COMPONENT MANUFACTURER UNDER SUCH MANUFACTURER'S WARRANTY OR (7) ANY COMPONENTS OR PARTS OF THE SYSTEM.** To the fullest extent permitted by law, Buyer acknowledges that the Seller Limited Warranty does not cover the System or components of the System, and that neither the System nor any component of the System constitutes a "Manufactured Product" as defined in the Seller Limited Warranty. Buyer agrees and understands that over time, the panels, parts and other components of the System installed on the Property will become obsolete and/or may no longer be manufactured as different, newer or more efficient solar panels, parts and products become available. Buyer agrees that Seller has no obligation to upgrade, repair or replace the System or any component thereof due to obsolescence or the unavailability of any panels, parts and other System components, should Buyer need to repair or replace the System or any portion thereof in the future. Seller makes no representation or warranty as to whether the System will last longer than the surrounding roof that is not a part of the System, and Buyer acknowledges that re-roofing the Property will likely be more expensive in the future due to the existence of the System and may require modification to the System itself. Seller has no ownership interest in and is not affiliated with Solar Provider or any System Component Manufacturer. Therefore, Buyer hereby releases Seller from all claims, liability and or responsibility regarding the System, including without limitation the matters described in this Section.

   c. **Manufacturer Warranty**. Buyer will also receive warranty and service agreements from one or more manufacturers of the System components (each, **"System Component Manufacturer"**). Buyer is responsible for Buyer's own education and understanding of the warranties provided by System Component Manufacturer(s).

   d. **Solar Location**. The System design has been predetermined based on a number of factors. The System is located in the optimum position based on orientation, setback requirements and aesthetics, as determined by Solar Provider in its sole discretion. The System design cannot be changed by Buyer.

   e. **Solar Monitoring**. The System will include a web-based monitoring website. Solar Provider will provide a consultation after interconnection has been approved. This consultation will provide Buyer with ruction on how to operate the System, how to pair WiFi connection and how to use the web-based



Seller's Initial

Buyer's Initial

monitoring platform.  If Buyer does not have WiFi, Buyer may purchase a cellular card for an additional fee, elect to add WiFi, or decide not to use the provided monitoring platform.

f. **Interconnection With Utility Company**.  Solar Provider will process Buyer's interconnection with the utility company and pay for all costs involved.  Buyer agrees to provide  Solar Provider with all relevant utility and property information to complete interconnection.  Utility credits for solar overproduction vary based on utility and rates.  Buyer must contact the utility company directly for specific information regarding any applicable solar credits.

g. **System Operational Delays**.  Buyer accepts that the System may not be operational at the Close of Escrow. It may take six (6) to ten (10) weeks to get interconnection approved.  This timeline starts when Buyer gives Solar Provider all interconnection information required by the utility company.

4. **SOLAR ACT AND HOME IMPROVEMENTS.**

a. **Solar Shade Control Act.**  All homeowners within the Project will be subject to all applicable laws including, without limitation, the Solar Shade Control Act, which can be found in California Public Resource Code §25980 et seq.

b. **Solar Declaration.**  The Declaration of Solar Energy Covenants and Restrictions for  Olivewood (**"*Solar Declaration*"**) imposes restrictions on improvements and landscaping that may be constructed or installed by Buyer and other homeowners in the Project in an effort to ensure that improvements and landscaping that might create shade will not unreasonably impair the efficiency of a solar energy system.  **BUYER MUST CAREFULLY CONSIDER THE EFFECT OF THE APPLICATION OF THE SOLAR RESTRICTIONS WHEN MAKING A DECISION TO PURCHASE AND/OR IMPROVE THE PROPERTY.**

c. **Shading Restrictions**.  **DUE TO THE RESTRICTIONS IN THE SOLAR SHADE CONTROL ACT AND THE SOLAR DECLARATION, THE DIMENSIONS OF THE PROPERTY MAY NOT ACCOMMODATE (i) THE PLANTING OF ANY TREES, OR THE PLANTING OF MEDIUM OR LARGE TREES, IN THE PROPERTY'S YARD AREAS (IF ANY), (ii) THE INSTALLATION OF ANY UPPER-FLOOR ADDITIONS, ROOF-TOP STRUCTURES OR OTHER TALL IMPROVEMENTS ON THE PROPERTY OR (iii) THE GROWTH OF TREES AND SHRUBS TO MATURE HEIGHTS.  BUYER MUST CAREFULLY CONSIDER THE EFFECT OF THESE RESTRICTIONS WHEN MAKING A DECISION TO PURCHASE THE PROPERTY.**

d. **Homeowner Replacement of System or Upgrade to System After the Close of Escrow**.  While Seller makes  no  warranty or representation regarding Buyer's ability to  make any  modifications to the System (including upgrades) after the Close of Escrow, Seller advises Buyer that the post-closing modification and/or maintenance of the System will be subject to:  (i) the Solar Declaration, (ii) the Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs (**"*Master Declaration*"**), (iii) the "Design Guidelines" (as defined in the Master Declaration), (iv) all applicable city and/or county ordinances and zoning regulations, (v) the Uniform Building Code and (vi) any other associated regulations. California has a strong public policy in favor of solar energy systems that may restrict Buyer's free and unfettered enjoyment of the Property if it conflicts with the operation of a  solar energy system installed upon an adjoining property, including the location and height of trees on the Property.  Buyer may be required to obtain written approval from the Portola Springs Community Association (**"*Master Association*"**), or the "Master Association Design Review Committee" (as defined in the Master Declaration) prior to making any modifications to the System and comply with reasonable restrictions placed on the System by the Master Association and/or Master Association Design Review Committee, subject to the provisions of California Civil Code Sections 714 and 714.1, as they may be amended from time to time. Without limiting the generality of the foregoing, neither the Master Association nor the Master Association Design Review Committee has the power or the duty to enforce the Solar Declaration.

5. **SOLAR SYSTEM PERFORMANCE.**

a. **Factors Affecting Production**.  Buyer understands that every solar energy system will have different production.  Production is based on many controlled and uncontrolled factors.  These may include, but are not limited to, the roof layout, solar design, solar azimuth, roof obstructions, cleanliness, weather, presence of streetlights, trees, etc. The addition or removal of these factors may change the monthly and annual production of System.

b. **Energy Production**.  Buyer acknowledges that the System can only generate limited power based on the system size, orientation and potential shading factors.  The System may not cover the entire monthly electricity bill.  The System is sized based on the required T24 guidelines and is not intended to cover 100% of every home's electrical usage.  If the  System does not provide enough electricity and  Buyer wants to increase the System size, Buyer can contact Solar Provider to explore options of adding to the System.

c. **Specific System Detail**.  Buyer acknowledges that Seller is not an expert in the installation or manufacture of solar energy systems and shall direct all system specific questions to Solar Provider.  Seller is not qualified to provide such information regarding the details and production of a solar energy system and Buyer should not rely on or consider any such information from Seller's salespersons.

d. **Uncontrolled Shading**.  Trees, structures and other obstructions installed  or permitted to grow on the Property or on neighboring properties may cause shading of the System, and such shading may be permitted by law and applicable rules and regulations.  If this occurs, the generation of energy from the System will be reduced or eliminated.  Seller makes no representation or warranty that any System installed on the Property will now or in the future be free from shading, and Seller has no control over whether shading restrictions exist on neighboring properties.



Seller's Initial

Buyer's Initial

6. **ESTIMATED GENERATION.**

    a. **CA Admin Code Title 20, Section 2702**. Below is a table showing the Estimated Annual kWh Generation and Dollar Savings of a 1kW Solar Energy System:

| Climate Zone | Estimated Annual kWh Generation | Estimated Annual Dollar Savings at Various Utility Electric Energy Rates | | | | |
|---|---|---|---|---|---|---|
| | | $0.10/kWh | $0.15/kWh | $0.20/kWh | $0.25/kWh | $0.30/kWh |
| CZ01 | 1220-1475 | $122-$148 | $183-$221 | $244-$295 | $305-$369 | $366-$443 |
| CZ02 | 1420-1660 | $142-$166 | $213-$249 | $284-$332 | $355-$415 | $426-$498 |
| CZ03 | 1515-1885 | $152-$189 | $227-$283 | $303-$377 | $379-$471 | $455-$566 |
| CZ04 | 1560-1920 | $156-$192 | $234-$288 | $312-$384 | $390-$480 | $468-$576 |
| CZ05 | 1570-1965 | $157-$197 | $236-$295 | $314-$393 | $393-$491 | $471-$590 |
| CZ06 | 1590-1980 | $159-$198 | $239-$297 | $318-$396 | $398-$495 | $477-$594 |
| CZ07 | 1545-1940 | $155-$194 | $232-$291 | $309-$388 | $386-$485 | $464-$582 |
| CZ08 | 1565-1965 | $157-$197 | $235-$295 | $313-$393 | $391-$491 | $470-$590 |
| CZ09 | 1570-1870 | $157-$187 | $236-$281 | $314-$374 | $393-$468 | $471-$561 |
| CZ10 | 1560-1880 | $156-$188 | $234-$282 | $312-$376 | $390-$470 | $468-$564 |
| CZ11 | 1595-1905 | $160-$191 | $239-$286 | $319-$381 | $399-$476 | $479-$572 |
| CZ12 | 1670-1975 | $167-$198 | $251-$296 | $334-$395 | $418-$494 | $501-$593 |
| CZ13 | 1705-2000 | $171-$200 | $256-$300 | $341-$400 | $426-$500 | $512-$600 |
| CZ14 | 1790-2140 | $179-$214 | $269-$321 | $358-$428 | $448-$535 | $537-$642 |
| CZ15 | 1755-2085 | $176-$209 | $263-$313 | $351-$417 | $439-$521 | $527-$626 |
| CZ16 | 1560-1860 | $156-$186 | $234-$279 | $312-$372 | $390-$465 | $468-$558 |

Note: The estimated annual kWh generation values are from calculations using the Solar Offset Program Calculator, which is based on the California Energy Commission Photovoltaic (CECPV) model. The actual performance of a solar energy system will be based on numerous factors, including but not limited to, the available solar insolation at the specific geographic location, the azimuth and tilt of the solar energy system, shading conditions at the specific location, and system loss factors. The estimated annual dollar savings are based on a flat utility electric energy rate rather than a tiered rate. The actual dollar savings will be based on the utility electric energy rate structure, the overall electricity consumption of the home, and the amount of energy produced by the solar energy system. The values in the table should not be interpreted as a guarantee of solar energy system performance nor should the values be used as the sole basis for purchasing a solar energy system. Prospective home buyers interested in purchasing a solar energy system are encouraged to obtain a site specific estimate of annual energy generation and dollar savings.

7. **ACKNOWLEDGEMENTS OF BUYER.**

    a. Except as specifically set forth in this Addendum, Buyer is not relying upon any agreements, understandings, inducements, promises, representations or warranties, express or implied made by any salesperson, employee or agent of Seller regarding the System;

    b. Buyer has taken whatever steps are necessary to fully understand all the information stated in this Addendum;

    c. Buyer has considered the possible effect of the matters contained in this Addendum in Buyer's decision to purchase the System;

    d. Seller and its affiliates, assigns and sales representatives are not acting as an agent of Solar Provider; and

    e. All terms of any warranty, System performance and other aspects of the System are set forth in the written materials that are prepared by Solar Provider. Neither Seller nor any of its affiliates, assigns or sales representatives have made representations or warranties to Buyer of any kind regarding the System, including but not limited to energy savings, tax benefits, cash grants, incentives or rebates.

8. **RATIFICATION OF AGREEMENT.** Except as provided above, the Agreement is hereby ratified by the parties and shall remain in full force and effect.

*{SIGNATURES ON FOLLOWING PAGE]*



Seller's Initial

Buyer's Initial

'ged and agreed by the parties on the respective dates set forth below.

Dated:

Buyer

Di Lan Ge

Dated:

Buyer

Xian Feng Gu

Printed Name

Buyer                                    Dated:

Printed Name

Buyer                                    Dated:

Printed Name

*"Buyer"*

Dated:

Seller's Sales Representative

THE NEW HOME COMPANY SOUTHERN        Dated:
CALIFORNIA LLC, a Delaware limited liability

company

By:

Its:    Authorized Agent

*"Seller"*

**ADDENDUM TO**
**PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

**DESCRIPTION OF FEATURES INCLUDED IN RESIDENCE**

**(OLIVEWOOD)**

This Addendum is attached to and incorporated into the Purchase Agreement and Escrow Instructions dated (**"Agreement"**) between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), and the undersigned (**"Buyer"**), regarding Buyer's purchase of the residence described in the Agreement (**"Property"**). This Addendum supplements the Agreement and includes additional agreements of Buyer and Seller. If there is any conflict between the provisions of the Agreement and this Addendum, this Addendum shall control. All defined terms used in this Addendum shall have the same meaning as set forth in the Agreement.

      1.    **Included Features**. Except as otherwise provided in the Agreement, the Property includes the standard and optional equipment, improvements and features described on **Exhibit "1"** hereto. Buyer acknowledges and agrees that the Agreement allows Seller to substitute fixtures, appliances and materials if necessary, which provisions of the Agreement shall control over **Exhibit "1"**. **Exhibit "1"** shall be deemed modified by any later Design Studio Order properly executed and delivered by Buyer to Seller in accordance with the Design Studio Selection Addendum.

      2.    **Ratification of Agreement**. Except as provided above, the Agreement is hereby ratified by the parties and shall remain in full force and effect.

      Acknowledged and agreed to by the parties on the respective dates set forth below.

Buyer                     Dated:

Buyer                     Dated:
Xian Feng Gu
Printed Name

Buyer                     Dated:
Printed Name

Buyer                     Dated:
Printed Name

**""****"yer"**
Seller's Sales Representative       Dated:

THE NEW HOME COMPANY SOUTHERN       Dated:
CALIFORNIA LLC, a Delaware limited liability
company

By:

Its:      Authorized Agent
**"Seller"**

**EXHIBIT "1"**

**DESCRIPTION OF INCLUDED FEATURES**

<u>**STANDARD FEATURES**</u>

SEE STANDARD FEATURES LIST

<u>**OPTIONAL FEATURES INCLUDED AT NO CHARGE**</u>

**NONE**

<u>**OPTIONAL FEATURES INCLUDED AT EXTRA CHARGE**</u>

SEE FINAL OPTION AGREEMENT OR DESIGN OPTION AGREEMENT, IF ANY



*Seller's Initial*

*Buyer's Initial*

**ADDENDUM TO**
**PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

**INSULATION**

**(OLIVEWOOD)**

This Addendum is attached and incorporated into that certain Purchase Agreement and Escrow Instructions entered into concurrently with this Addendum (***"Agreement"***) between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), and the undersigned (***"Buyer"***), regarding Buyer's purchase of the residential property described in the Agreement (***"Property"***).

**Insulation.** The Property will be insulated with the materials which, according to the insulation manufacturer, will yield the R-Values indicated below.  R-Value  measures resistance to heat flow.  The higher the R-Value, the greater the insulating power:

| LOCATION | *TYPE | THICKNESS | R-VALUES |
|---|---|---|---|
| Top Chord Roof Truss Deck | BATTS | 3.5 INCH | R-15 |
| Ceiling Areas (Accessible) | BLOWN-IN | 10.25 INCH | R-30 |
| Ceiling Areas (Inaccessible) | BATTS | 10.25 INCH | R-30 |
| Garage Ceilings | BATTS | 6.25 INCH | R-19 |
| 2x4 Exterior Walls | BATTS | 3.5 INCH | R-15 |
| 2x6 Exterior Walls | BATTS | 5.5 INCH | R-21 |
| Rimjoist at Garage & Ext Walls | BATTS | 3.5 / 5.5 INCH | R-15 (2x4) / R-21 (2x6) |

\* Subject to change due to availability

Except as specifically modified by this Addendum, the terms and conditions of the Agreement remain in full force and effect.

***[SIGNATURES ON FOLLOWING PAGE]***

*Seller's Initial:*

*Buyer's Initial:*

HLO\ Olivewood\ v.1 1/9/2024                    -1-

Acknowledged and agreed to by the parties on the respective dates set forth below.

Dated:

Buyer

Dated:

Xian Feng Gu
Printed Name
Buyer                                                           Dated:
Printed Name
Buyer                                                           Dated:
Printed Name

"Buyer"

Dated:

Seller's Sales Representative


THE NEW HOME COMPANY SOUTHERN            Dated:
CALIFORNIA LLC, a Delaware limited liability
company

By:

Its:      Authorized Agent
               "Seller"

**ADDENDUM TO**
**PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

**CHANGE OF ADDRESS**

**(OLIVEWOOD)**

This Addendum is attached and incorporated into that certain Purchase Agreement and Escrow Instructions dated _____ (*"Agreement"*) between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (*"Seller"*), and the undersigned (*"Buyer"*), regarding the real property described in the Agreement (*"Property"*).  The Property is located in the Olivewood residential development (*"Project"*).  Various capitalized terms used in this Addendum but not defined herein shall  have the meanings assigned to such terms in the Agreement.

      1.     **Change of Address**.  Prior to the Close of Escrow, Seller may, in its sole discretion and without notice to Buyer, change the address of the Property.  Following the Close of Escrow, Seller also may, upon written notice to Buyer, change the address of the Property as a result of changes in Seller's development plan for the Project or the requirements of the City, County or any other governing authorities with jurisdiction over the Project.  Buyer represents, warrants and agrees that Buyer's decision to purchase the Property is not based at all on the address of the Property and that Buyer has no preference regarding the number and/or street address of the Property.

      1.     **Ratification of Agreement**.  Except as provided above, the Agreement is hereby ratified by the parties and shall remain in full force and effect.

      Acknowledged and agreed by the parties on the respective dates set forth below.

Buyer                             Dated:

Buyer                             Dated:
Xian Feng Gu
Printed Name
Buyer                             Dated:
Printed Name
Buyer                             Dated:
Printed Name

                               *"Buyer"*

Seller's Sales Representative           Dated:

THE NEW HOME COMPANY SOUTHERN  Dated:
CALIFORNIA LLC, a Delaware limited liability
company

By: _____

Its:     Authorized Agent
                *"Seller"*

**DISCLOSURE REGARDING**
**HOME AUTOMATION AND SECURITY SYSTEMS**

**(OLIVEWOOD)**

The undersigned (***"Buyer"***) is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), a residence (***"Property"***) in the Olivewood residential development.  Unless defined herein, capitalized words and phrases used in this Disclosure shall have the meanings given them in the Purchase Agreement and Escrow Instructions entered into between Buyer and Seller ("***Agreement***").

1.      **Home Automation and Security Systems**.  In connection with the sale of the Property to Buyer, Seller may offer certain features including home automation (i.e., "smart home") features that utilize computers and/or wireless technology to control and monitor appliances and other home functions automatically and/or remotely (***"Home Automation"***) and/or security systems manufactured by unaffiliated third party vendors as part of the home purchase (***"Security System"***).  The Home Automation and/or Security System may be included as a standard item or may be offered as an upgrade option for additional cost in accordance with the Design Studio Selections Addendum attached to the Agreement.  The Design Studio Selections Addendum includes certain "cut-off dates" for the order.

2.      **Home Automation and Security System Risks**.  Buyer acknowledges and agrees that:

(a)      Seller is not responsible for the security of any Home Automation device (including any data stored thereon) connected to the internet and/or any third party service provider's server(s);

(b)      Buyer is solely responsible for securing his/her own home wireless (Wi-Fi) network(s) and implementing appropriate security precautions to protect Buyer's Home Automation system, computers and connected devices against threats, including without limitation viruses, spam, Trojan horses, worms, time bombs, denial of service attacks and other malicious intrusions that could result in damage to property (both real and personal) and even personal injury;

(c)      Home Automation software, applications and/or other content downloaded from the internet may contain viruses that may cause the Home Automation and/or Security System to be hacked, disabled or otherwise compromised; and

(d)      Because maintaining the security of a home network is an important part of ensuring safety and protecting privacy, Buyer should take precautions (including regularly updating antivirus software, firewalls and operating systems and protecting the confidentiality of passwords) to prevent unauthorized access by others and harm from various forms of viruses.



*Buyer's Initials*

3.    **Third Party Vendors**.    Buyer acknowledges and agrees that Home Automation and Security Systems (and related services) are **NOT** manufactured or installed by Seller but rather are provided by unaffiliated third party vendors.  Seller does not develop or manufacture the equipment, devices or licensed software utilized in any Home Automation or Security System, nor does Seller monitor the same.  As such, Seller, is not responsible for any acts or omissions on the part of the manufacturer, vendor or any service provider in connection with any Home Automation or Security System.  Seller makes no representation or warranty, express or implied, about the operation, safety, effectiveness, non-infringement, title, merchantability or fitness for a particular purpose of any Home Automation or Security System and/or service provided to Buyer by any third party, including without limitation Buyer's use of app stores (i.e., third party websites from which you download the mobile apps that work with the Home Automation or Security System), third party websites, referred vendors, third party equipment manufacturers/distributors/sellers, ISPs, monitoring companies and wireless carriers.  Furthermore, Seller does not warrant that any Home Automation or Security System will be free from viruses or other malicious agents (even if anti-virus mechanisms are deployed) and Seller does not warrant that any communication will be transmitted uncorrupted or at any particular speed.  Buyer acknowledges an obligation to exercise caution and personal responsibility, including adhering to any manufacturer warranty and instructions accompanying Buyer's Home Automation and/or Security System or any other equipment used in connection therewith.

4.    **Release**.  Buyer specifically releases and forever discharges Seller and its members and affiliates and their respective officers, directors, agents, representatives employees and subcontractors, from any and all liability (including from any past, present and future claims, liabilities and damages, known or unknown) in connection with any interruption or degradation of service, downtime, data loss, lack of interconnectivity, identity theft, software or hardware damage, damage to files, damage from burglary, robbery and/or home invasion or other harm or losses that may be sustained at any time arising from or relating to the installation, maintenance, use, or removal of any Home Automation and/or Security System acquired by Buyer.

*[SIGNATURES ON FOLLOWING PAGE]*

*Buyer's Initial:*

The undersigned represent(s) that I/we have read and understand the matters set forth in this Disclosure and have received a copy for my/our records. I/we acknowledge and agree that I/we are solely responsible to make certain that I/we understand the contents of this Disclosure and will take whatever steps are necessary to do so, including without limitation, consult an attorney, interpreter, engineer, or any other person whose advice or assistance may be necessary to fully understand the matters set forth herein. I/we acknowledge and agree that I/we have considered the possible effect of such matters in my/our decision to purchase the Property. Buyer hereby agrees to provide a copy of this Disclosure to any individual or entity purchasing the Property from Buyer. I/we acknowledge that my/our decision to purchase the Property is not based on any representation concerning the matters described herein other than as provided in this Disclosure.

Buyer                                         Dated:

Di Lan Ge
Printed Name

Buyer                                         Dated:

Xian Feng Gu
Printed Name

Buyer                                         Dated:

Printed Name

Buyer                                         Dated:

Printed Name

*"Buyer"*

**DISCLOSURE REGARDING**
**AVAILABLE FEATURES**

**(OLIVEWOOD)**

The undersigned (**"Buyer"**) is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), a residence (**"Property"**) in the Olivewood residential development (**"Development"**).

1.    **Standard and Optional Features**.  Seller and Buyer have executed an addendum regarding the standard features included with the Property and Seller has provided on its website a list of available optional features that may be purchased by Buyer in accordance with the Design Studio Selections Addendum executed by Buyer and Seller (collectively, "**Available Features**"). Seller shall be entitled to alter, modify or delete any optional items from the Available Features without notice to Buyer.

2.    **Model Features**.  All designer, decorator and other features, fixtures and items displayed in the model homes for the Development which are not Available Features are not included with the purchase of the Property and are not available as options (**"Unavailable Features"**).  The unavailability of the Unavailable Features will not result in a modification of the purchase price of the Property nor shall Buyer be entitled to any  compensation or payment in connection therewith.

3.    **No Representations or Warranties**.  Neither Seller nor any agent or representative of Seller has provided any representation, warranty or assurance as to the impact of the unavailability of the Unavailable Features on the Property and/or Buyer, including without limitation the impact on value and/or resale of the Property.  This Disclosure shall not modify or alter any other written disclosure provided by Seller to Buyer.

4.    **No Additional Obligations to Buyer**.  Seller shall not be obligated to (a) provide notice or explanation to Buyer or any other owners in the Development of changes in the Available Features, (b) offer any modified or changed features or items to Buyer or (c) modify the Property or common amenities in any way.

***[SIGNATURES ON FOLLOWING PAGE]***



*Buyer`s Initial*

Please indicate that you have received a copy of this Disclosure and have read and understand it by signing below.  You acknowledge that your decision to purchase the Property is not based on any representation concerning the matters described herein other than as provided in this Disclosure.

Buyer _____                    Dated: _____

Di Lan Ge
Printed Name

Buyer _____                    Dated: _____

Xian Feng Gu
Printed Name

Buyer _____                    Dated: _____

Printed Name

Buyer _____                    Dated: _____

Printed Name

*"Buyer"*

**DISCLOSURE REGARDING**
**SOLAR ENERGY SYSTEM**
**(OLIVEWOOD)**

The undersigned (*"**Buyer**"*) is purchasing from  THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (*"**Seller**"*), a residence (*"**Property**"*) in the Olivewood residential development (*"**Project**"*).   The Project is part of the master planned community commonly known as "Portola Springs" (*"**Community**"*).   Unless defined herein, capitalized words and phrases used in this Disclosure shall have the meanings given them in the Declaration of Solar Energy Covenants and Restrictions for Olivewood (*"**Solar Declaration**"*) or the Purchase Agreement and Escrow Instructions entered into between Buyer and Seller ("***Agreement***"), including without limitation the Addendum to Purchase Agreement and Escrow Instructions Regarding Solar Standard – Mandatory Purchase (*"**Solar Addendum**"*).

1.    **Mandatory Solar Energy System Purchase**.  Seller has arranged with CalState Solar, Inc. ("***Solar Provider***"), a third party solar energy system provider unrelated to Seller, to install a photovoltaic solar system ("***System***") on the Property.  **As a condition to Buyer's purchase of the Property, Buyer is required to purchase the System from Seller at Buyer's sole and exclusive cost.  The price of the System will be automatically added to the final Purchase Price of the Property.**   The purchase program is described in the Solar Addendum.  Prior to entering into the Agreement, Buyer should consider the impacts of this mandatory System requirement on Buyer, including without limitation (a) the additional expense to purchase the System; (b) the fact that some or all of the residences in the Project will have prominently visible Systems mounted on the roofs which can be seen from the street or from the Property; (c) the maintenance and repair expenses  for the System; and (d) the restrictions on certain types of landscaping and improvements that may be installed due to potential shading of the System on the Property or on adjacent residences.

2.    **About the System Equipment**.  The System equipment includes (a) roof-mounted photovoltaic modules ("***Solar Array***") consisting of solar panels, (b) an inverter that converts direct current (DC) electricity generated by the Solar Array to alternating current (AC) electricity for home use and (c) related movable equipment, all as offered by Solar Provider.   The System converts sunlight into electricity but does not directly heat water for the Property or exterior improvements (such as pools and spas).   Buyer should carefully read all documents relating to the System.

3.    **Placement of System**.  The System's Solar Array will be integrated into the roof system installed on the Property.  While it is preferable to install the Solar Array on a south-facing roof surface, in some instances it may not be feasible to do so because of the roof configuration, Property orientation or other reasons.  In those instances, Solar Provider will install the panels on another roof surface, including roof surfaces that may not face south, and, as a result, the annual electrical output from the System may be less than optimal.   The location of the panels on each roof will be determined by Solar Provider.   _____ pate that the Solar Array panels on the Property and/or on

*Buyer's Initial*

other residences in the Project and Community may be prominently visible, including installations on street-facing roof surfaces. Buyer should consider this when electing to purchase a residence in the Project.

4. **System Performance**. Buyer acknowledges and agrees that: (a) there are a variety of factors that can positively or negatively affect the electricity generating capacity of the System, which factors include, without limitation, the architectural elevation of the Property, the orientation of the Property to the sun, the roof layout of the Property, roof obstructions, the solar design, the solar azimuth angle, the cleanliness of the solar panels, arrays or tiles, cloudiness, weather patterns and seasonality, the presence of streetlights, the growth of trees and other vegetation and/or the addition of second stories or other structural additions to the Property or neighboring properties; (b) because of these and other factors, the electrical generating capacity of the System installed on the Property may be less than or greater than solar energy systems installed in other residences within the Project, even where the system size and other parameters for such other residences are the same as the System installed on the Property; and (c) the System is intended for residential personal, family or household purposes only.

5. **No Guaranteed Energy Savings or Energy Output**. **BUYER ACKNOWLEDGES AND AGREES THAT (A) BECAUSE THE SIZE OF THE SYSTEM IS BASED ON THE REQUIRED T24 GUIDELINES AND THEREFORE IS NOT INTENDED TO COVER 100% OF THE ELECTRICAL USAGE OF THE PROPERTY, THE SYSTEM WILL NOT GENERATE ENOUGH ELECTRICITY TO PROVIDE ALL ELECTRICITY REQUIRED FOR THE PROPERTY, AND THEREFORE BUYER WILL HAVE ELECTRICITY COSTS FOR THE PROPERTY; (B) ACTUAL ENERGY COSTS AND/OR USAGE ARE DEPENDENT ON A NUMBER OF FACTORS, INCLUDING UTILITY RATES, ENERGY CONSUMPTION, HOME MAINTENANCE, BUYER'S ENERGY CONSERVATION PRACTICES, HOME ORIENTATION AND SURROUNDING CLIMATE AND WEATHER CONDITIONS; AND (C) SELLER DOES NOT GUARANTEE OR WARRANT THE AMOUNT, IF ANY, OF ACTUAL ENERGY PRODUCED BY THE SYSTEM, ANY COSTS SAVINGS RELATED TO THE SYSTEM AND/OR COSTS OF MAINTENANCE OF THE SYSTEM. INFORMATION REGARDING THE ESTIMATED ELECTRICAL OUTPUT FOR THE SYSTEM, THE NUMBER OF KILOWATTS THE SYSTEM WILL GENERATE, AND ANY SAVINGS THAT BUYER CAN EXPECT TO RECEIVE IN BUYER'S ELECTRICITY BILL ARE CALCULATED AND PROVIDED BY SOLAR PROVIDER. NOTWITHSTANDING ANY WRITTEN, VERBAL OR ELECTRONIC STATEMENTS OR MATERIALS THAT HAVE BEEN MADE AVAILABLE TO BUYER OR THAT BUYER HAS RECEIVED OR MAY HEREAFTER RECEIVE, FROM SELLER, SOLAR PROVIDER OR ANY SYSTEM COMPONENT MANUFACTURER ("*SYSTEM COMPONENT MANUFACTURER*"), BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT PREVIOUSLY MADE AND HEREBY MAKES NO REPRESENTATION, WARRANTY, GUARANTY OR COVENANT OF ANY KIND, EXPRESS OR IMPLIED, REGARDING THE ELECTRICAL OUTPUT FOR THE _____ NUMBER OF KILOWATTS THE SYSTEM WILL**

*Buyer's Initials:*

**GENERATE, ANY SAVINGS THAT BUYER CAN EXPECT TO RECEIVE IN BUYER'S ELECTRICITY BILL, OR ANY OTHER MATTER WHATSOEVER BEARING UPON THE PERFORMANCE, EFFICIENCY, OUTPUT OR ELECTRICAL GENERATING CAPACITY OF THE SYSTEM.    BUYER SHOULD ALSO BE AWARE THE PERFORMANCE OF THE SYSTEM MIGHT DECREASE OVER TIME.**

6.    **System Materials**.    All information and materials obtained by Buyer regarding the System (***"System Materials"***), including without limitation the estimated electrical output for the System, the number of kilowatts the System will generate and any savings that Buyer can expect to receive in Buyer's electricity bill, are provided by Solar Provider and/or the manufacturer of the System (as applicable, ***"System Expert"***), not Seller.  Seller has not and will not manufacture any component of the System and will not install the System.    **BUYER ACKNOWLEDGES THAT SELLER IS NOT AN EXPERT IN THE INSTALLATION OR MANUFACTURE OF SOLAR ENERGY SYSTEMS AND THEREFORE ALL QUESTIONS WHICH BUYER MAY HAVE REGARDING THE SYSTEM OR THE SYSTEM MATERIALS SHOULD BE DIRECTED TO A SYSTEM EXPERT. SELLER'S SALESPERSONS ARE NOT QUALIFIED TO PROVIDE INFORMATION REGARDING THE SYSTEM AND BUYER SHOULD NOT RELY ON ANY SUCH INFORMATION PROVIDED BY SELLER'S SALESPERSONS.**  The contact information for the System Expert(s) is included in the System Materials provided by such System Expert(s).  Buyer further acknowledges that Seller has not previously made and hereby makes no written or verbal representation, warranty, guaranty or covenant of any kind, express or implied, regarding the accuracy of any written, verbal or electronic statements or materials or information that have been made available to Buyer or that Buyer has received or may hereafter receive from any System Expert, including without limitation any of the System Materials.

7.    **Uncontrolled Shading**.  Trees, structures and other obstructions installed or permitted to grow on neighboring properties may cause shading of the System, and such shading may be permitted by law.  If this occurs, the generation of energy from the System will be reduced or eliminated.  Seller makes no representation or warranty that any System installed on the Property will now or in the future be free from shading, and Seller has no control over whether shading restrictions exist on neighboring properties.

8.    **Solar Restrictions**.

(a)    **Solar Declaration**.  The Solar Declaration imposes restrictions on improvements and landscaping that may be constructed or installed by Buyer and other homeowners in the Project in an effort to ensure that improvements and landscaping that might create shade will not unreasonably impair the efficiency of a solar energy system. **BUYER MUST CAREFULLY CONSIDER THE EFFECT OF THE APPLICATION OF THE SOLAR RESTRICTIONS WHEN MAKING A DECISION TO PURCHASE AND/OR IMPROVE THE PROPERTY.**



*Buyer's Initial:*

(b)    **Solar Shade Control Act**.  All homeowners in the Project will be subject to all applicable laws, including without limitation the Solar Shade Control Act, which can be found in California Public Resource Code § 25980 et seq. (**"*Solar Act*"**).

(c)    **Shading Restrictions**.  As a result of the shading restrictions in the Solar Act and the Solar Declaration, the dimensions of the Property may not accommodate (i) the planting of any trees, or the planting of medium or large trees, in the Property's yard area (if any), (ii) the installation of any upper-floor additions, roof-top structures or other tall improvements on the Property or (iii) the growth of trees and shrubs to mature heights.

(d)    **Modification and/or Maintenance of System After the Close of Escrow**.  While Seller makes no warranty or representation regarding Buyer's ability to make any modifications to the System (including upgrades) after the Close of Escrow, Seller advises Buyer that the post-closing modification and/or maintenance of the System will be subject to:  (i) the Solar Declaration, (ii) the Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs (**"*Master Declaration*"**), (iii) the Design Guidelines, (iv) all applicable city and/or county ordinances and zoning regulations, (v) the Uniform Building Code, (vi) requirements set forth within the Lease agreement, if applicable, and (vii) and any other associated regulations.  Buyer may be required to obtain written approval from the Master Association and/or the Master Design Review Committee prior to replacement or upgrade of the System and Buyer shall be obligated to comply with reasonable restrictions placed on the System by the Master Association and/or the Master Design Review Committee, subject to the provisions of California Civil Code Sections 714 and 714.1, as they may be amended from time to time.  **THE NEED TO PREVENT SHADING OF THE SOLAR ARRAY INSTALLED ON THE PROPERTY OR ON A NEIGHBORING PROPERTY MEANS THAT THE DIMENSIONS OF SOME LOTS MAY NOT ACCOMMODATE THE PLANTING OF ANY TREES, OR THE PLANTING OF MEDIUM OR LARGE TREES, IN THE YARD.  BUYER MUST CAREFULLY CONSIDER THE EFFECT OF THE APPLICATION OF THE SHADING RESTRICTIONS IN THE SOLAR DECLARATION AND THE SOLAR SHADE CONTROL ACT WHEN MAKING A DECISION TO PURCHASE THE PROPERTY.**

9.    **Limited Warranty**.

(a)    **Warranty and Service of the System**.  In all cases, service questions and warranty claims pertaining to the operation and/or maintenance of the System should be directed to Solar Provider and to the System Component Manufacturer, if applicable.  Service questions and warranty claims regarding any roof issues related to the installation of the System should initially be directed to Seller.

(b)    **System Excluded from Seller Limited Warranty**.  The only warranty that Seller provides for the Property is set forth in the Homebuyer Warranty provided to Buyer ("**Seller Limited Warranty**").  The Seller Limited Warranty does not cover the ____ r____ ny aspect thereof.  **SELLER MAKES NO OTHER**

*Buyer's Initial*

REPRESENTATION, WARRANTY, COVENANT OR GUARANTY, EXPRESS OR IMPLIED, REGARDING (i) THE SYSTEM AND/OR WHETHER IT WILL PROVIDE ANY UTILITY COST SAVINGS, (ii) THE LONGEVITY OF THE SYSTEM OR COST OF MAINTENANCE, REPLACEMENT OR REPAIR THEREOF, (iii) THE SOLAR PROVIDER WARRANTY DESCRIBED IN THE SOLAR ADDENDUM, (iv) THE PERFORMANCE BY SOLAR PROVIDER UNDER THE SOLAR PROVIDER WARRANTY OR OTHERWISE, (v) ANY WARRANTY FROM A SYSTEM COMPONENT MANUFACTURER, (vi) THE PERFORMANCE BY ANY SYSTEM COMPONENT MANUFACTURER UNDER SUCH MANUFACTURER'S WARRANTY OR (vii) ANY COMPONENTS OR PARTS OF THE SYSTEM.

(c) **Warranties by Solar Provider and/or System Component Manufacturers**. Solar Provider or a System Component Manufacturer may provide warranties warranting against defects in the workmanship of the installation of the System, degrading of electric output from the System and limited warranties on the system components. Any warranties offered by one or more of such parties are unrelated to and independent of the Seller Limited Warranty. Buyer should carefully review the Solar Provider Warranty and all System Component Manufacturers' limited warranties for the System, copies of which will be provided by Seller. Special attention should be directed to those paragraphs which limit the liability of Solar Provider and the System Component Manufacturers. Since Seller has no ownership interest in Solar Provider or the System Component Manufacturers, Seller has no control over the design or performance of their products, and Seller assumes no liability for the performance of maintenance or warranty service on the System by Solar Provider or the System Component Manufacturers, as applicable.

If Buyer has any questions about the System, Solar Provider Warranty, Internet Solar Monitoring Service (if any) or the Owner Manual for the System, please contact a representative of Solar Provider directly. If Buyer has any questions about the System Component Manufacturers' limited warranties, please contact either Solar Provider or the individual System Component Manufacturer.

10. **Internet Solar Monitoring**. Solar Provider will provide Buyer with an internet-based monitoring website that monitors the performance of the System ("***Solar Monitoring Website***"). Seller has no control over the Solar Monitoring Website or any fees or rates which may be charged by Solar Provider in connection with Buyer's use of the Solar Monitoring Website.

11. **Utility Interconnection Agreement**. Buyer may be required to sign an interconnection agreement ("***Interconnection Agreement***") with the utility company servicing the Project ("***Utility Company***") prior to the Close of Escrow. If the Utility Company's electric service to the Property is interrupted or disconnected, the System will shut down, and the Utility Company may disconnect the System to protect its service personnel while restoring electric service. A specially-programmed meter may be installed to measure the difference between electricity Buyer purchases and electricity Buyer exp          methods of applying credit for exported energy vary. In

*Buyer's Initials*

addition, the Utility Company will charge a monthly grid connection fee (**"Grid Connection Fee"**).  The terms of the Interconnection Agreement with the Utility Company and the Grid Connection Fee are subject to change.  Seller has no control over the terms or provisions of the Interconnection Agreement, any method of applying credits for exported energy or any changes to net metering, including without limitation changes in the net metering export rates.  Seller makes no covenant, representation or warranty of any kind, express or implied, to Buyer as to whether the Utility Company or any other utility provider credits to Buyer's bill or pays Buyer a refund or rebate if the electricity generated by the System somehow exceeds the electricity used by Buyer at the Property for the applicable period of time.  Neither Seller nor any of its sales representatives have made any representations or warranties to Buyer in connection with the Interconnection Agreement, including without limitation the Grid Connection Fee.  For more information regarding the Interconnection Agreement, please contact the Utility Company.

12.    **Potential Delay of System Operation.**  Buyer acknowledges that the System may not be operational at the Close of Escrow.  Initial operation of the System may be delayed due to multiple factors, including, but not limited to, delays by the Utility Company in processing the Interconnection Agreement and delays by Solar Provider in starting up the System.  Buyer acknowledges that these delays are not within Seller's control as these delay, if any, are solely within the control of Solar Provider and the Utility Company.

13.    **System Disconnection.**  The System is designed to generate and deliver electricity in conjunction with the Utility Company's electric distribution system.  If the Utility Company's electric service to the Property is interrupted or disconnected, the System will shut down, and the Utility Company may disconnect the System to protect its service personnel while restoring electric service.

14.    **Federal, State and/or Local Energy Incentives.**  Buyer may qualify for federal and/or state and/or local incentives/credits in connection with the System.  However, Buyer is solely responsible for obtaining any such credits.  The availability of tax credits and incentives, if available at all, may be limited, and Buyer should contact Buyer's financial, tax and legal advisors for details and information on whether Buyer qualifies for any tax credits or incentives associated with the System and the amount of any such tax credits or incentives, given Buyer's individual tax and financial circumstances.  Solar Provider will provide information regarding the System to Buyer that is readily available and is reasonably required by Buyer in connection with Buyer's application for incentives and/or credits ("**Tax Credit Information**"); however, Buyer is solely responsible for obtaining any applicable credits and/or incentives.  Buyer agrees that (i) if Seller provides the Tax Credit Information it will have obtained same from a System Expert or other third party; (ii) Seller does not have the ability to verify the accuracy of the Tax Credit Information; and (iii) Seller has not and will not provide any representation, warranty, covenant or guaranty to Buyer regarding (1) the accuracy of the Tax Credit Information; (2) the generating capacity of the System; or (3) any other matter whatsoever having to do with the System.  Seller has not provided and will not provide any representations, warranties or assurances as to the availability or amount of any such

*Buyer's Initial*

credits nor is the Close of Escrow conditioned on Buyer receiving any such credits or benefits.

**BUYER AGREES THAT SELLER AND ITS AFFILIATES AND THEIR RESPECTIVE EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, MEMBERS, MANAGERS AND AFFILIATES HAVE MADE NO REPRESENTATION, WARRANTY, GUARANTY OR COVENANT OF ANY KIND, EXPRESS OR IMPLIED, TO BUYER REGARDING ANY FEDERAL, STATE, LOCAL OR UTILITY SOLAR TAX CREDITS AND/OR INCENTIVES. BUYER'S OBLIGATIONS UNDER THE AGREEMENT ARE NOT CONTINGENT UPON BUYER OR THE SYSTEM QUALIFYING FOR ANY TAX CREDIT, INCENTIVE, REBATE OR OTHER SIMILAR FINANCIAL BENEFIT. SELLER SHALL HAVE NO LIABILITY OR OBLIGATION TO BUYER WITH RESPECT TO ANY TAX CREDIT, REBATE OR OTHER SIMILAR FINANCIAL BENEFIT.**

**SELLER MAKES NO REPRESENTATION, WARRANTY, ASSURANCE OR GUARANTEE THAT BUYER WILL QUALIFY FOR OR RECEIVE, IN WHOLE OR IN PART, ANY TAX CREDIT, INCENTIVE, REBATE OR SIMILAR FINANCIAL BENEFIT IN CONNECTION WITH PROPERTY, AND BUYER SHOULD NOT MAKE BUYER'S DECISION TO PURCHASE THE PROPERTY IN RELIANCE ON OBTAINING ANY SUCH BENEFIT BASED ON THE INFORMATION SET FORTH IN THIS DISCLOSURE. IT IS BUYER'S SOLE RESPONSIBILITY TO INVESTIGATE WHAT TAX CREDITS, INCENTIVES OR OTHER SIMILAR FINANCIAL BENEFITS MAY BE AVAILABLE TO BUYER AND TO TAKE THE STEPS NECESSARY TO CLAIM ANY SUCH BENEFIT. INFORMATION ON THE FEDERAL TAX CREDIT IS AVAILABLE FROM THE INTERNAL REVENUE SERVICE AT HTTP://WWW.IRS.GOV. THE DATABASE OF STATE INCENTIVES FOR RENEWABLES AND EFFICIENCY (HTTP://WWW.DSIREUSA.ORG) IS ANOTHER SOURCE OF INFORMATION ON STATE, LOCAL, UTILITY AND FEDERAL ENERGY AND ENERGY EFFICIENCY INCENTIVES. THE INFORMATION SET FORTH IN THIS DISCLOSURE IS PROVIDED FOR GENERAL GUIDANCE ONLY AND DOES NOT CONSTITUTE TAX ADVICE.**

15.    **Marketing Materials**. **INFORMATION CONTAINED IN THE SYSTEM AND ENERGY EFFICIENCY MARKETING MATERIALS ARE BASED UPON INFORMATION OBTAINED FROM THIRD PARTIES UNRELATED TO SELLER AND IN SOME CASES PROVIDED BY SELLER BUT PREPARED BY UNRELATED THIRD PARTIES AND SHOULD NOT BE USED AS THE ONLY SOURCE OF INFORMATION WHEN MAKING PURCHASING DECISIONS, INVESTMENT DECISIONS OR TAX DECISIONS, OR WHEN EXECUTING OTHER BINDING AGREEMENTS. SELLER PROVIDES NO REPRESENTATIONS, WARRANTIES OR ASSURANCES AS TO THE ACCURACY OF SUCH MARKETING INFORMATION.**

*Buyer's Initials*

The undersigned represent(s) that I/we have read and understand the matters set forth in this Disclosure and have received a copy for my/our records.  I/we acknowledge and agree that I/we are solely responsible to make certain that I/we understand the contents of this Disclosure and will take whatever steps are necessary to do so, including without limitation consulting an attorney, interpreter, engineer or any other person whose advice or assistance may be necessary to fully understand the matters set forth herein.   I/we acknowledge and agree that I/we have considered the possible effect of such matters in my/our decision to purchase the Property.  Buyer hereby agrees to provide a copy of this Disclosure to any individual or entity purchasing the Property from Buyer.   I/we acknowledge that my/our decision to purchase the Property is not based on any representation concerning the matters described herein other than as provided in this Disclosure.  All terms of any System warranty, System performance and other aspects of the System, are set forth in the written materials that are prepared by Solar Provider.  Neither Seller nor any of its affiliates, assigns or sales representatives has made representations or warranties to Buyer of any kind regarding the System, including, but not limited to, energy savings, tax benefits, cash grants, incentives or rebates.

Buyer                                                      Dated:

Di Lan Ge
Printed Name

Buyer                                                      Dated:

Xian Feng Gu
Printed Name

Buyer                                                      Dated:
Printed Name

Buyer                                                      Dated:
Printed Name

*"Buyer"*

*Buyer's Initial*

**DISCLOSURE REGARDING**
**TITLE POLICY**

**(OLIVEWOOD)**

The undersigned (***"Buyer"***) is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), a residence (***"Property"***) in the Olivewood residential development.  Unless defined herein, capitalized words and phrases used in this Disclosure shall have the meanings given them in the Purchase Agreement and Escrow Instructions entered into between Buyer and Seller (***"Agreement"***).

The Agreement provides that in connection with the purchase of the Property Buyer will receive an ALTA owners title insurance policy (***"Title Policy"***) issued by First American Title Company ("***Title Company***").  Buyer is to pay the cost of the Title Policy.  However, federal law gives Buyer the right to decline to purchase the Title Policy.  The Title Policy is intended to provide Buyer protection from certain title defects which may arise after the Close of Escrow including third party claims, liens and other matters.  Therefore Seller recommends that Buyer give careful consideration to purchasing the Title Policy.

If Buyer is obtaining a Loan, Buyer's Lender will require Buyer to purchase and provide the lender with a lender's title insurance policy (***"Lender's Policy"***).  The Lender's Policy shall only be for the benefit of the Lender; it shall not provide any protection to the Buyer as owner of the Property.  If Buyer declines to purchase the Title Policy, this may cause a significant increase in the cost of other settlement services for Buyer's purchase of the Property, including without limitation the cost of the Lender's Policy.  In some cases, the foregoing increase in the cost of the Lender's Policy could exceed the cost of the Title Policy.

California Civil Code Section 1057.6 requires that the following statutory notice be given to a buyer or parties in a transaction where title insurance will not be issued for any reason:

**"IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED.  A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING."**

Buyer acknowledges that Buyer has reviewed the foregoing and has carefully considered the issues associated with obtaining the Title Policy.  If Buyer declines to purchase the Title Policy, all matters relating to title will be at the sole risk of Buyer.

***[SIGNATURES ON FOLLOWING PAGE]***



*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024                                    -1-

        The undersigned represent(s) that I/we have read and understand the matters set forth in the foregoing Disclosure and have received a copy for my/our records.  I/we acknowledge and agree that I/we are solely responsible to make certain that I/we understand the contents of this Disclosure and will take whatever steps are necessary to do so, including without limitation, consult an attorney, interpreter, engineer, or any other person whose advice or assistance may be necessary to fully understand the matters set forth herein.  I/we acknowledge and agree that I/we have considered the possible effect of such matters in my/our decision to purchase the Property.  The undersigned has executed this Disclosure on the dates indicated below.

_____                    Dated: _____
Buyer
B16A6EB85D7241D...

Di Lan Ge
Printed Name

_____                    Dated: _____
Buyer
7857A1A840134BD...

Xian Feng Gu
Printed Name

_____                    Dated: _____
Buyer

_____
Printed Name

_____                    Dated: _____
Buyer

_____
Printed Name

                        *"Buyer"*

**DISCLOSURE REGARDING
TITLE/ESCROW COMPANIES**

**(OLIVEWOOD)**

The undersigned (***"Buyer"***) is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), a residence (***"Property"***) in the Olivewood residential development. Unless defined herein, capitalized words and phrases used in this Disclosure shall have the meanings given them in the Purchase Agreement and Escrow Instructions entered into between Buyer and Seller (***"Agreement"***).

Seller has elected to use First American Title Company as the title company, and The Escrow Specialists Inc. as the escrow company (collectively, ***"Seller Title/Escrow Companies"***), in connection with Buyer's purchase of the Property. However, Buyer may select a different title and/or escrow company(ies) so long as such title/escrow company(ies) is approved by Seller. If Buyer does not want to use the Seller Title/Escrow Companies in connection with Buyer's purchase of the Property, Buyer must notify Seller in writing of the replacement title and/or escrow company(ies) selected by Buyer in accordance with the foregoing standards for approval by Seller within five (5) days following execution of the Agreement. Seller shall have five (5) days after receipt of such notice from Buyer to provide Buyer with written approval or disapproval of the title and/or escrow company(ies) selected by Buyer. If for any reasons Seller does not approve Buyer's selection the Agreement shall terminate, Buyer shall receive a refund of its Deposit and Buyer and Seller shall have no further liability or responsibility to each other. If Buyer does not provide written notification to Seller within such five (5) day period such failure shall constitute a waiver by Buyer of its right to select another title and/or escrow company(ies) and to object to the use of the Seller Title/Escrow Companies in connection with Buyer's purchase of the Property.

***[SIGNATURES ON FOLLOWING PAGE]***

*Buyer's Initials* 

HLO\ Olivewood\ v.1 1/9/2024                    -1-

The undersigned represent(s) that I/we have read and understand the matters set forth in the foregoing Disclosure and have received a copy for my/our records.  I/we acknowledge and agree that I/we are solely responsible to make certain that I/we understand the contents of this Disclosure and will take whatever steps are necessary to do so, including without limitation, consult an attorney, interpreter, engineer, or any other person whose advice or assistance may be necessary to fully understand the matters set forth herein.  I/we acknowledge and agree that I/we have considered the possible effect of such matters in my/our decision to purchase the Property.  The parties have executed this Disclosure on the dates indicated below.

_____          Dated: _____
Buyer

Di Lan Ge
Printed Name

_____          Dated: _____
Buyer

Xian Feng Gu
Printed Name

_____          Dated: _____
Buyer

_____
Printed Name

_____          Dated: _____
Buyer

_____
Printed Name

*"Buyer"*

### DISCLOSURE REGARDING
### CLOSING DATE

### (OLIVEWOOD)

The undersigned (**"Buyer"**) is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), a residence (**"Property"**) in the Olivewood residential development.  The Purchase Agreement and Escrow Instructions executed by Buyer for the purchase of the Property ("**Agreement**") includes an "Estimated Closing Date" on Page 1 of the Agreement (**"Estimated Closing Date"**).  The Estimated Closing Date is provided to Buyer solely as an accommodation and is only an estimate of the date on which Escrow will close on the Property (**"Closing Date"**).  The Estimated Closing Date and any other estimates of the Closing Date are subject to change at the sole discretion of Seller, with or without notice to Buyer.  There are no assurances that Escrow will close on the Estimated Closing Date, and the Closing Date may occur earlier or later than the Estimated Closing Date.

Regardless of the Estimated Closing Date, the Closing Date will occur on the date specified in a written notice delivered by Seller to Buyer notifying Buyer that Seller has determined that the Property is ready for occupancy and Escrow will close on the Closing Date ("**Closing Notice**"). The actual Closing Date can only be specified in the written Closing Notice which will include the heading, "**THIS IS YOUR CLOSING NOTICE**".  The Closing Date <u>cannot</u> be specified in any other manner, including without limitation any verbal communication from any salesperson or other employee or representative of Seller.

Because of the nature of the home building industry, it is not possible to estimate the Closing Date with absolute accuracy.  Due to a variety of circumstances beyond Seller's reasonable control, including without limitation the scheduling of work, availability of materials and labor, the actions of public authorities and weather conditions, the actual Closing Date could be weeks or months beyond the Estimated Closing Date.  Therefore Buyer accepts the uncertainty of the Closing Date and waives all claims against Seller, its agents, employees and contractors arising in connection therewith.

### *[SIGNATURES ON FOLLOWING PAGE]*



*Buyer`s Initial*

Please indicate that you have received a copy of this Disclosure and have read, understand and agree to it by signing below.  You acknowledge that your decision to purchase the Property is based on your consideration of the matters described above and not based on any representation, warranty or information not contained in this Disclosure.

Buyer                                                          Dated:

Di Lan Ge
Printed Name

Buyer                                                          Dated:

Xian Feng Gu
Printed Name

Buyer                                                          Dated:

Printed Name

Buyer                                                          Dated:

Printed Name

*"Buyer"*

**DISCLOSURE REGARDING**
**PRIVACY**

**(OLIVEWOOD)**

The undersigned ("*Buyer*") is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company ("*Seller*"), a residence ("*Property*") in the Olivewood residential development ("*Project*").  Unless defined herein, capitalized words and phrases used in this Disclosure shall have the meanings given them in the Purchase Agreement and Escrow Instructions entered into between Buyer and Seller regarding the Property ("*Agreement*").

**Personal Data and Information**.  In connection with Buyer's purchase of the Property, Seller will or have collected Buyer's personal data and information.  Buyer acknowledges and understands that for Seller's operational and business purposes, it will be necessary or advisable for Seller, as determined by Seller in its sole discretion, to share Buyer's personal data and information with various third parties, including trade contractors and suppliers (e.g., painters, electricians, telecom providers, appliance providers), consultants, warranty providers to complete warranty requests, financial institutions (such as third party lenders that have or will prequalify Buyer), title insurance carriers, escrow service providers, marketing consultants or providers that provide Buyer with information regarding the Project or other marketing communications, data analytics providers, survey companies to get Buyer's feedback on customer experience, the homeowners association for the Project (if any), and if the Project is part of a master planned community, the master developer (e.g., master developers will frequently request a homebuyer's contact information as the homebuyer will be part of the master homeowners association once the homebuyer closes escrow).  Seller is also required to share Buyer's information with various general and administrative vendors, including, but not limited to, auditors, insurance carriers, security providers, information technology vendors and platforms in order to operate Seller's business.  In some cases, Seller has no control over the practices and policies of these third parties with respect to their use of Buyer's information.  These third parties may use Buyer's personal information for their own direct marketing or other commercial purposes, in which case Buyer's personal data and information will be governed in accordance with such third parties' privacy policies.

In consideration of the services provided by Seller in connection with the purchase of the Property, Buyer specifically authorizes and directs Seller to collect and share Buyer's personal data and information in the ways described above.  Buyer acknowledges that Buyer has reviewed Seller's privacy policy at newhomeco.com/privacy-policy and further authorizes the use of Buyer's personal data and information as described therein.  For details on what personal information Seller collects and for what purposes, and Buyer's privacy rights and how to exercise them, including how to exercise a "do not sell/share/target" opt-out, visit newhomeco.com/us-state-privacy-notice.

*[SIGNATURES ON FOLLOWING PAGE]*

*Buyer's Initial:*

The undersigned represent(s) that I/we have read and understand the matters set forth in this Disclosure and have received a copy for my/our records. I/we acknowledge and agree that I/we are solely responsible to make certain that I/we understand the contents of this Disclosure and will take whatever steps are necessary to do so, including without limitation consulting an attorney, interpreter, engineer or any other person whose advice or assistance may be necessary to fully understand the matters set forth herein. I/we acknowledge and agree that I/we have considered the possible effect of such matters in my/our decision to purchase the Property. I/we acknowledge that my/our decision to purchase the Property is not based on any representation concerning the matters described herein other than as provided in this Disclosure.

Buyer                                                Dated:

Di Lan Ge
Printed Name

Buyer                                                Dated:

Xian Feng Gu
Printed Name

Buyer                                                Dated:

Printed Name

Buyer                                                Dated:

Printed Name

*"Buyer"*

**DISCLOSURE REGARDING**
**WIRE FRAUD**

**(OLIVEWOOD)**

The undersigned (***"Buyer"***) is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), a residence (***"Property"***) at Olivewood.  Unless defined herein, capitalized words and phrases used in this disclosure (***"Disclosure"***) shall have the meanings given them in the Purchase Agreement and Escrow Instructions entered into between Buyer and Seller.

Cyber-crimes involving e-mail breaches and wire fraud are on the rise in the real estate industry.  Buyer is advised to exercise extreme caution to ensure that funds for the purchase of the Property are delivered to Seller.  Hackers may attempt to induce fraudulent wire transfers by communicating with Buyer and providing new wiring instructions or routing information to ultimately direct the funds to a fraudulent account.  In some instances, hackers may provide false phone numbers to attempt to verify the modified wiring or funds transfer instructions.

**EXCEPT WHERE BUYER IS PERMITTED TO SEND WIRE FOR EARNEST MONEY DEPOSITS, SELLER AND SELLER'S NEW HOME ADVISORS WILL NEVER SEND WIRING INSTRUCTIONS TO BUYER FOR THE REMAINING PURCHASE PRICE OF THE HOME.**  To minimize exposure to possible wire fraud, Buyer is advised to:

(i)    Never rely on e-mails or other forms of communication purporting to change wire instructions.  Parties to a transaction rarely change wire instructions in the course of a transaction.

(ii)    Always verify wire instructions prior to wiring or electronically transferring any funds.  Obtain the phone number of Escrow Holder as soon as Buyer's Escrow account is opened.  Do not use a phone number or account number included in any e-mailed transfer instructions that Buyer is unable to verify.  Do not send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

(iii)    Orally confirm with Escrow Holder, at an independently verified phone number, that the transfer instructions are legitimate and confirm the bank routing number, account numbers and other codes from the sending party prior to taking steps to initiate the transfer the funds.

(iv)    Avoid sending personal information in e-mails or text messages.

(v)    Secure Buyer's e-mail account.  Create complex passwords, change passwords frequently and use secure wireless connections.

For more information on wire-fraud scams or to report an incident, Buyer should visit the following links:

1.    Federal Bureau of Investigation:  http://www.fbi.gov
2.    Internet Crime Complaint Center:  https://www.ic3.gov/default.aspx
3.    National White Collar Crime Center:  https://www.nw3c.org/
4.    On Guard Online:    https://www.consumer.ftc.gov/features/feature-0038-onguardonline

   The undersigned represent(s) that I/we have read and understand the matters set forth in this Disclosure and have received a copy for my/our records.  I/we acknowledge and agree that I/we are solely responsible to make certain that I/we understand the contents of this Disclosure and will take whatever steps are necessary to do so, including without limitation, consult an attorney, interpreter, engineer, or any other person whose advice or assistance may be necessary to fully understand the matters set forth herein.  I/we acknowledge and agree that I/we have considered the possible effect of such matters in my/our decision to purchase the Property.  I/we acknowledge that my/our decision to purchase the Property is not based on any representation concerning the matters described herein other than as provided in this Disclosure.

Buyer                                                    Dated:

Di Lan Ge
Printed Name

Buyer                                                    Dated:

Xian Feng Gu
Printed Name

Buyer                                                    Dated:

Printed Name

Buyer                                                    Dated:

Printed Name

                    *"Buyer"*

**DISCLOSURE REGARDING
RIGHT TO TERMINATE LOAN APPLICATION**

**(OLIVEWOOD)**

The undersigned (***"Buyer"***) is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), a residence (***"Property"***) in the Olivewood residential development.  Unless defined herein, capitalized words and phrases used in this Disclosure shall have the meanings given them in the Purchase Agreement and Escrow Instructions entered into between Buyer and Seller (***"Agreement"***).

Federal law requires any Lender which has approved Buyer for a loan for Buyer's purchase of the Property (***"Loan"***) to provide Buyer with a closing disclosure (***"Closing Disclosure"***) at least three (3) business days prior to the consummation of the Loan.  During such time, Buyer shall have the right to review the Closing Disclosure and may elect to terminate the Loan application for any reason.  However, after Buyer obtains Loan Approval, if the consummation of the Loan does not occur for any reason (including, without limitation, due to Buyer's termination of the Loan application), Buyer shall be obligated to complete the purchase of the Property on the Closing Date.  Buyer's option to terminate its Loan application shall have no impact on Buyer's obligations to Seller pursuant to the Agreement.  If Buyer terminates its Loan application, Seller shall not be required to delay the Closing Date or otherwise assist Buyer in obtaining a substitute Loan.  If Buyer fails to satisfy its obligations under the Agreement, Buyer shall be in default, and Seller shall be entitled to terminate the Agreement, cancel Escrow and retain all of Buyer's deposits made pursuant to the Agreement.

***[SIGNATURES ON FOLLOWING PAGE]***

*Buyer's Initial* 

HLO\ Olivewood\ v.1 1/9/2024                    -1-

The undersigned represent(s) that I/we have read and understand the matters set forth in the foregoing Disclosure and have received a copy for my/our records. I/we acknowledge and agree that I/we are solely responsible to make certain that I/we understand the contents of this Disclosure and will take whatever steps are necessary to do so, including without limitation, consult an attorney, interpreter, engineer, or any other person whose advice or assistance may be necessary to fully understand the matters set forth herein. I/we acknowledge and agree that I/we have considered the possible effect of such matters in my/our decision to purchase the Property. The undersigned has executed this Disclosure on the dates indicated below.

Buyer                                                   Dated:

Di Lan Ge
Printed Name

Buyer                                                   Dated:

Xian Feng Gu
Printed Name

Buyer                                                   Dated:

Printed Name

Buyer                                                   Dated:

Printed Name

*"Buyer"*



*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024                    -2-

**WRITTEN AUTHORIZATION TO LENDER**
**TO PROVIDE SELLER WITH CLOSING DISCLOSURE**

**(OLIVEWOOD)**

The undersigned (***"Buyer"***) hereby authorizes US Bank (***"Lender"***), to release to THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***) the closing disclosure to be provided by Lender to Buyer in connection with Buyer's purchase of a residence (***"Property"***) in the Longmeadow residential development.

Buyer                                                                    Dated:
B16A6EB85D7241D...

Di Lan Ge
Printed Name


Buyer                                                                    Dated:
7857A1A840134BD...

Xian Feng Gu
Printed Name


Buyer                                                                    Dated:

Printed Name

Buyer                                                                    Dated:

Printed Name

***"Buyer"***

Olivewood v1/HLO/9.26.2023

## 2007 NEW HOME UNIVERSAL DESIGN OPTION CHECKLIST (AB 1400)

Name of Development, if applicable _____Olivewood_____

_____
Home/Lot Address/ID _____
Developer (Contact) Name __The New Home Company Southern California LLC_____
Phone # __(949) 382-7800_____Fax __(949) 382-7801_____
Address _____15231 Laguna Canyon Rd., Suite 250, Irvine, CA  92618_____

California law, section 17959.6 of the Health and Safety Code, requires a builder of new for-sale residential units to provide buyers with a list of specific "universal design features" which make a home safer and easier to use for persons who are aging or frail, or who have certain temporary or permanent activity limitations or disabilities.  A developer is not required to provide the listed features during construction or at any other time, unless the developer has offered to provide a feature and the buyer has requested it and agreed to provide payment.

**_Part I_** is a summary of which features, if any are available or offered.
**_Part II_** is an explanation of the laws governing the Checklist and use of the Checklist.
**_Part III_** includes those features related to exterior adaptations, doors and openings, interior adaptations, kitchens, and bathrooms or powder rooms.
**_Part IV_** includes features which apply to other parts of the house and are commonly requested or considered universal design features.
**_Part V_** provides space for details, or for any other external or internal feature that may be requested, if it is requested at a reasonable time by the buyer, is reasonably available, is reasonably feasible to install or construct, and makes the home more usable and safer for a person with any type of activity limitation or disability.

### PART I:  SUMMARY OF FEATURES AVAILABLE OR OFFERED
### (If "available", see Parts III, IV and/or V)

| | Feature | Available | Not Available |
|---|---|---|---|
| III. 1. | Exterior Features (accessible route to door) | | √ |
| III. 2. | Exterior Doors, Openings and Entries Features | | √ |
| III. 3. | General Interior Features | | √ |
| III. 4. | Kitchen Features | | √ |
| III. 5. | Bathroom/Powder Room Features | | √ |
| IV. 6. | Common Room Features (Dining and Living) | | √ |
| IV. 7. | Bedroom Features | | √ |
| IV. 8. | Laundry Area Features | | √ |
| V. | Other Features | | √ |

### PART II:  EXPLANATION OF LAWS GOVERNING CHECKLIST AND USE OF THE LIST

All features covered by "Chapter 11A" of the California Building Code (Title 24, California Code of Regulations, Part 2) are identified by an asterisk (*) and must comply with that Chapter unless otherwise specifically provided.  All features not in Chapter 11A must be selected and installed in a workmanlike manner by the builder unless they are further described in **_Part V_**.

HLO\30535-0289\796721.1 1/9/2024

Abbreviation Meanings:  Standards in CA Bldg Code (Chapter 11A), ("*"); Status:  Standard ("S"), Limited ("L"), Option ("O"), or Not Available ("NA"); Timing:  Any Time ("AT"), Before Foundation ("BFo"), Before Fra_____ ____ ___al Wall Covering ("BIW"); See Part V ("Y" or "Yes"), None ("N" or "No").

_Buyer's initials_

Model Universal Design Checklist (1/2007)                                    Page 2

Features listed may not actually be available or offered by the builder.  In addition, certain items must be requested prior to certain phases of construction, as specified by the builder.  The builder may provide estimated costs for the special features. The features must be installed and comply with Chapter 11A, unless the builder and buyer agree in writing to different standards than those in Chapter 11A  and the differences are clearly disclosed in  *Part V*.  A builder is not required to install the listed features unless the builder offers them and both of the following occur:  (1) the buyer requests them with the specified phase of construction, and (2) the buyer agrees to provide payment for the features.  Any violation of this law is enforced by the local building department and local public prosecutors, and is punishable by civil penalties.

The attached chart lists the specific features which must be disclosed, as well as others commonly requested but not required by law.  There are four categories for each feature:

- "Status":  whether it is standard ("S"), limited ("L"), an option ("O"), or not available ("NA"), all as determined by the builder.
- "Timing":  by what stage in construction it must be requested (such as "any time," "before foundation," "before framing," or "before internal wall covering"), with actual times selected by the builder.
- "Details":  whether or not there are additional details or specified modifications from the Building Code listed in the "Additional Details" section, Part III (e.g., "Yes" or "No").
- "Cost":  optional labor and materials costs which may be estimated by the builder.

### Part III:  General Exterior and Interior Components and Features

| Feature | Status | Timing | Details | Cost |
|---|---|---|---|---|

1.  Exterior Features
Accessible route of travel to dwelling from public sidewalk
   or thoroughfare to primary entrance

| | | | | |
|---|---|---|---|---|
| Graded path* | NA | | | |
| Ramp* | NA | | | |
| Driveway to graded path | NA | | | |
| No-step entry (1/2" or less threshold)* | NA | | | |

Accessible landscaping of at least one side yard and rear
   yard                                               NA
Accessible route from garage/parking to home's primary
   entry*                                              NA
Accessible route from garage/parking to secondary entry   NA
Other options offered by builder [List in Part V]

2.  Exterior Doors, Openings, and Entries Features:
Minimum 32" clear primary entry doorway*                NA
Minimum 32" clear secondary entry doorway*              NA
Primary entry accessible internal/external maneuvering
   clearances, hardware, thresholds, and strike edge
   clearances*                                         NA
Secondary entry accessible internal/external maneuvering
   clearances, hardware, thresholds, and strike edge
   clearances*                                         NA
Primary entry accessible/dual peephole and doorbell       NA
Primary entry door sidelight/window                     NA

HLO\ 30535-0289\ 796721.1 1/9/2024

Abbreviation Meanings:  Standards in CA Bldg Code (Chapter 11A), ("*"); <u>Status</u>:  Standard ("S"), Limited ("L"), Option ("O"), or Not Available ("NA"); <u>Timing</u>:  Any Time ("AT"), Before Foundation ("BFo"), Before Framing ("BFr"), Before Internal Wall Covering ("BIW"); See Part V ("Y" or "Yes"), None ("N" or "No").

*Buyer's initials*

Model Universal Design Checklist (1/2007)                                         Page 3

| Feature | Status | Timing | Details | Cost |
|---------|--------|--------|---------|------|
| Accessible sliding glass door and threshold height* | NA | | | |
| Weather-sheltered entry area | NA | | | |
| Other options offered by builder [List in Part V] | | | | |
| | | | | |
| 3.  General Interior Features | | | | |
| Accessible route of travel to at least one bathroom/powder room, kitchen, and common room* | NA | | | |
| Accessible route of travel:  other areas* | NA | | | |
| 42" wide hallways/maneuvering clearances with 32" clear doorways on accessible route* | NA | | | |
| 39" wide hallways/maneuvering clearances with 34" clear doorways on accessible route* | NA | | | |
| Accessible hallways and doorway widths:  other areas* | NA | | | |
| Accessible hardware, strike edge clearance, and thresholds for accessible doorways* | NA | | | |
| Light switches, electric receptacles, and environmental and alarm controls at accessible heights on accessible route/rooms* | NA | | | |
| Light switches, electric receptacles, and environmental and alarm controls at accessible heights on primary floor* | NA | | | |
| Light switches, electric receptacles, and environmental and alarm controls at accessible locations when over barriers* | NA | | | |
| Rocker light switches/controls on accessible route/rooms | NA | | | |
| Rocker light switches/controls on primary floor | NA | | | |
| Visual smoke/fire/carbon monoxide alarm | NA | | | |
| Audio and visual doorbell | NA | | | |
| Audio and visual security alarm | NA | | | |
| Closets on accessible route:  adjustable (36"-60") rods/shelves | NA | | | |
| Nonslip carpet/floor for accessible route | NA | | | |
| Handrail reinforcement (1 side) provided in all accessible routes of travel/rooms over 4 feet long | NA | | | |
| Handrails (1 side) provided in all accessible routes of travel/rooms over 4 feet in length | NA | | | |
| Handrail reinforcement (2 sides) provided in all accessible routes of travel/rooms over 4 feet in length | NA | | | |
| Handrails (2 sides) provided in all accessible routes of travel/rooms over 4 feet in length | NA | | | |
| Handrail reinforcement or handrails installed in other areas | NA | | | |
| Interior lifts/elevators: | | | | |
|     Interior stairway lift | NA | | | |
|     Interior elevator | NA | | | |
|     Electrical and reinforcement for future lift | NA | | | |
|     Electrical and location for future elevator | NA | | | |
| Laundry Area, if provided: | | | | |
|     Accessible route of travel | NA | | | |
|     Accessible workspace | NA | | | |
|     Accessible cabinets | NA | | | |
|     Accessible appliances | NA | | | |

HLO\ 30535-0289\ 796721.1 1/9/2024

Abbreviation Meanings:  Standards in CA Bldg Code (Chapter 11A), ("*"); Status:  Standard ("S"), Limited ("L"), Option ("O"), or Not Available ("NA"); Timing:  Any Time ("AT"), Before Foundation ("BFo"), Before Fram̲e̲ ̲ ̲ ̲ e̲ ̲ ̲ ̲al Wall Covering ("BIW"); See Part V ("Y" or "Yes"), None ("N" or "No").

Buyer's initials

Model Universal Design Checklist (1/2007)                                                 Page 4

| Feature | Status | Timing | Details | Cost |
|---|---|---|---|---|

Other options offered by builder [List in Part V]

**4.  Kitchen Features**

| | Status |
|---|---|
| At least one kitchen on accessible route of travel | NA |
| Adequate work/floor space in front of: | |
|     Stove (specify 30"x48" or greater)* | NA |
|     Refrigerator (specify 30"x48" or greater)* | NA |
|     Dishwasher (specify 30"x48" or greater)* | NA |
|     Sink (specify 30"x48" or greater)* | NA |
|     Oven (if separate) (specify 30"x48" or greater)* | |
|     U-shaped kitchen space requirements* | NA |
|     Other (specify 30"x48" or greater)* | |
| Accessible appliances (door, controls, etc.) | |
|     Stove | NA |
|     Refrigerator | NA |
|     Dishwasher | NA |
|     Sink | NA |
|     Oven (if not part of stove) | NA |
|     Microwave/receptacle at countertop height | NA |
|     Other appliances | |
| Accessible countertops | |
|     All or a specified portion repositionable* | NA |
|     One or more breadboards at 15" wide* and 28"-32" high | NA |
|     One or more counter areas at 30" wide* and 28"-32" high | NA |
|     One or more workspaces at 30" wide with knee/toe space | NA |
|     Other features | |
| Cabinets: | |
|     Base cabinets:  pull-out and/or Lazy Susan shelves | NA |
|     Wall cabinets:  put-out and/or Lazy Susan shelves | NA |
|     Additional interior lighting | NA |
|     Additional under-cabinet lighting | NA |
|     Accessible handles/touch latches for doors/drawers | NA |
|     Under-cabinet roll-out carts | NA |
|     Other features | |
| Sink: | |
|     Repositionable height* | NA |
|     Removable base cabinets under sink* | NA |
|     Single-handle level faucet* | NA |
|     Hose/sprayer feature | NA |
|     Anti-scald device | NA |
|     Other features | |
| Contrasting Colors: | |
|     Edge border of cabinets/counters | NA |
|     Flooring:  in front of appliances | NA |
|     Flooring:  on route of travel | NA |
|     Other features | |

HLO\ 30535-0289\ 796721.1 1/9/2024

Abbreviation Meanings:  Standards in CA Bldg Code (Chapter 11A), ("*"); Status:  Standard ("S"), Limited ("L"), Option ("O"), or Not Available ("NA"); Timing:  Any Time ("AT"), Before Foundation ("BFo"), Before Frame ("BFr"), Before Internal Wall Covering ("BIW"); See Part V ("Y" or "Yes"), None ("N" or "No").

*Buyer's initials*

Model Universal Design Checklist (1/2007)                                              Page 5

| Feature | Status | Timing | Details | Cost |
|---|---|---|---|---|

Other options offered by builder [List in Part V]


5.  Bathroom/Powder Room Features

| Feature | Status |
|---|---|
| At least one full bathroom on accessible route of travel | NA |
| Maneuvering Space (For bathrooms and powder room) | |
|    Maneuvering space diameter | |
|      30" x 48" turning area* | NA |
|      60" diameter turning area | NA |
|    Clear space for toilet and sink | |
|      36" x 36" clear use area | NA |
|      30" x 48" clear use area* | NA |
| Bathtub and/or shower (For bathrooms only) | |
|    Standard bathtub with grab bar reinforcement* | NA |
|    Standard bathtub with grab bars* | NA |
|    Accessible bathtub (size* and handles) | NA |
|    Standard shower with grab bar reinforcement* | NA |
|    Standard shower with grab bars* | NA |
|    Accessible (roll-in) shower* | NA |
|    Single-handle lever faucets* | NA |
|    Offset controls for exterior use | NA |
| Toilet (For bathrooms or powder room) | |
|    Standard toilet with grab bar reinforcement* | NA |
|    Standard toilet with grab bars* | NA |
|    Accessible toilet with grab bars* | NA |
| Sink/Lavatory (For bathrooms or powder room) | |
|    Standard with undersink cabinets | NA |
|    Standard with removable base cabinets* | NA |
|    Pedestal or open front* | NA |
| Accessories (For bathroom or powder room) | |
|    Lower/accessible medicine chest | NA |
|    Accessible counter space near sink | NA |
|    Single-handle lever faucets* | NA |
|    Anti-scald devices for sink | NA |
|    Accessible handles/touch latches for doors/drawers | NA |
|    Lower towel rack(s) | NA |
|    Lower/tilted mirror(s) | NA |
|    Contrasting floor color | NA |
|    Fold-down/fixed shower seat(s) | NA |
|    Accessible toilet tissue holder | NA |
|    Hand-held adjustable shower spray unit(s) | NA |
| Other options offered by builder [List in Part V] | |

Abbreviation Meanings:  Standards in CA Bldg Code (Chapter 11A), ("*"); Status:  Standard ("S"), Limited ("L"), Option ("O"), or Not Available ("NA"); Timing:  Any Time ("AT"), Before Foundation ("BFo"), Before Framing ("BFr"), Before Interior Wall Covering ("BIW"); See Part V ("Y" or "Yes"), None ("N" or "No").

Buyer's initials

### Part IV:  Other Components and Features

**6.  Common Room Features**

| | |
|---|---|
| Dining room on accessible route of travel* | <u>NA</u> |
| Living room on accessible route of travel* | <u>NA</u> |
| Den on accessible route of travel* | <u>NA</u> |
| Split-level common room with accessible route of travel* | <u>NA</u> |
| No split level common room* | <u>NA</u> |
| Other options offered by builder [List in Part V] | |

**7.  Bedroom Features**

| | |
|---|---|
| One bedroom on accessible route of travel | <u>NA</u> |
| Two or more bedrooms on accessible route of travel | <u>NA</u> |
| Closets have minimum 32" clear opening* | <u>NA</u> |
| Larger "walk-in" closets | <u>NA</u> |
| Closets have adjustable (36"-60") shelves and bars | <u>NA</u> |
| Other options offered by builder [List in Part V] | |

**8I  Laundry Area Features**

| | |
|---|---|
| Laundry area on accessible path of travel | <u>NA</u> |
| Accessories: | |
|     Accessible workspace | <u>NA</u> |
|     Accessible cabinets | <u>NA</u> |
|     Accessible handles/touch latches for doors/drawers | <u>NA</u> |
|     Accessible appliances | <u>NA</u> |
| Other options offered by builder [List in Part V] | |

Abbreviation Meanings:  Standards in CA Bldg Code (Chapter 11A), ("*"); <u>Status:</u>  Standard ("S"), Limited ("L"), Option ("O"), or Not Available ("NA"); <u>Timing:</u>  Any Time ("AT"), Before Foundation ("BFo"), Before Fram... e... al Wall Covering ("BIW"); See Part V ("Y" or "Yes"), None ("N" or "No").

*Buyer's initials*

## Part V:  Additional Details, Components, or Features

**A.  External Features:  Buyer Request**  (Any other additional external feature requested at a reasonable time by the buyer that is reasonably available and reasonably feasible to install or construct and makes the residence more usable for a person with activity limitations or disabilities in order to accommodate them).  These may include features such as high-visibility address numbers, electronic garage door openers, additional lights, door bench or package shelf, oversize garage, zero-step house/garage entry, etc. **(Attached as Part III. A: ____ Yes ____ No_X_)**

**B.  External Features:  Builder Offer** (Any other additional external feature offered to the buyer by the builder that makes the residence more usable for a person with disabilities or activity limitations in order to accommodate them). **(Attached as Part III. B: ____ Yes ____ No_X_)**

**C.  Internal Features:  Buyer Request**  (Any other additional internal feature requested at a reasonable time by the buyer that is reasonably available and reasonably feasible to install or construct and makes the residence more usable for a person with activity limitations or disabilities in order to accommodate them).  These may include features such as lowered window sills (under 36"), additional lighting, "touch" luminous light switches, automatic internal lights, additional wiring for electronic features, lighted closets, air filtration systems, larger/more automatic thermostats, pocket doors, etc. **(Attached as Part III. C: ____ Yes ____ No_X_)**

**D.  Internal Features:  Builder Offer** (Any other additional internal feature offered to the buyer by the builder that makes the residence more usable for a person with activity limitations or disabilities in order to accommodate them). **(Attached as Part III. D: ____ Yes ____ No_X_)**

**E.  Variation from State Chapter 11A Standards**:  (Any mutually agreed-upon features with standards different than Chapter 11A of the California Building Code, including clearly identified deviations from those standards). **(Attached as Part III. E: ____ Yes ____ No_X_)**

**F.  Additional features or requirements**:  (Any mutually agreed-upon features not covered by Chapter 11A of the California Building Code for which additional detail would be helpful to the builder and buyer, including clearly identified standards). **(Attached as Part III. F: ____ Yes ____ No_X_)**

**Form Provided by Builder to Buyer:**

**Builder's initials**                                                  Dated:

**Buyer's initials**                                 Dated:

**Design Features Requested:**

Buyer                                                Dated:

Buyer                                                Dated:

Buyer                                                Dated:

Buyer                                                Dated:

Abbreviation Meanings:  Standards in CA Bldg Code (Chapter 11A), ("*"); <u>Status:</u>  Standard ("S"), Limited ("L"), Option ("O"), or Not Available ("NA"); <u>Timing:</u>  Any Time ("AT"), Before Foundation ("BFo"), Before Framing ("BFr"), Before Internal Wall Covering ("BIW"); See Part V ("Y" or "Yes"), None ("N" or "No").

**Universal Design Features Identified**
**And Agreed To By Builder and Buyer:** _____

Buyer Signature/Date

_____

Builder Signature/Date

**RELEASE AND INDEMNITY**
**(Entry Into Construction Area)**

**(OLIVEWOOD)**

The undersigned (***"Releasor"***) has requested THE NEW HOME COMPANY INC., a Delaware corporation (***"NWHM"***) or one of its subsidiaries, affiliates or unconsolidated joint venture in which one of NWHM's subsidiaries or affiliates has an ownership interest (a "***NWHM Party***") grant Releasor permission to enter certain portions of the residential project known as Olivewood  (***"Project"***) which are currently under construction.

Releasor hereby acknowledges and agrees that entering such portions of the Project is a hazardous and dangerous activity that could result in serious personal injury or personal property damage.  Releasor acknowledges that there are numerous risks associated with visiting homes during construction, including open trenches, construction traffic, potential falling debris, exposed nails and electrical wiring,  incomplete construction and other potential hazards.  Releasor agrees to use due care, including without limitation the wearing of appropriate attire (e.g., closed toe shoes, vests, etc.) and hard hats, while visiting the Project and be accompanied by a NWHM Party sales representative or other employee of a NWHM Party at all times.  Releasor further acknowledges that Releasor may have the opportunity to ride in a golf cart to tour homes in the Project.  Releasor understands that riding in a golf cart allows Releasor to view homes in a more convenient manner, but that such activity has inherent risks and personal injury, death and disability or property damage and loss may occur when riding in a golf cart due to uneven sidewalks and streets, ramps, curbs, steps, potholes, accidents, malfunctioning or uncontrollable golf carts, among other things.  Releasor understands that these risks and hazards further increase on a site that is partially developed.  Releasor further acknowledges that no children under the age of sixteen (16) years old shall be permitted to visit any portion of the Project at any time (including non-construction hours) while the Project is under construction.  Releasor hereby accepts and fully assumes any and all risk of personal injury or property damage associated with visiting such portions of the Project.  Releasor agrees not to interfere with any construction activities.  Releasor acknowledges that any injuries that they sustain may be compounded by negligent emergency response but authorizes any NWHM Party to obtain medical treatment in the event of an emergency.

Releasor and NWHM acknowledge that COVID-19 presents a risk of exposure for all individuals at the Project.  NWHM has instructed all NWHM Party representatives to comply with guidelines from the Center of Disease Control in order to minimize the spread of COVID-19 (***"CDC Guidelines"***).  NWHM has also requested all contractors, consultants and tradespeople working on the Project to comply with CDC Guidelines, but NWHM cannot provide assurance that all such contractors, consultants and tradespeople have complied with such CDC Guidelines at all times.  Nevertheless, Releasor acknowledges that compliance with the CDC Guidelines and any other safety measures implemented do not eliminate the risk of exposure to COVID-19 at the Project.  Releasor agrees not to enter the Project if Releasor has knowingly been exposed to COVID-19 or experienced any symptoms of COVID-19 (including, without limitation, fever, dry cough, loss of taste or smell and difficult breathing) in the fourteen (14) days prior.  While within the Project, Releasor agrees at all times to comply with any safety procedures as may be instructed by a NWHM Party sales representative.  Releasor should wash or sanitize Releasor's hands promptly after touring the Project.

In addition, Releasor acknowledges that there may be events or other activities at the Project and a NWHM Party or representative of NWHM Party may photograph, film or otherwise record Releasor and Releasor's activities, and those of Releasor's family, while on the premises, and use such photographs or recordings for any legitimate purpose, including, but not limited to: their own advertising, marketing, fundraising, and publishing on the internet or through social media ("***Marketing Activity***").

**Proposition 65**.   The Safe Drinking Water and Toxic Enforcement Act of 1986, also known as Proposition 65, lists many chemicals known to the State of California to cause cancer or birth defects or other reproductive harm.  This law requires that all businesses (including all builders of residential homes) provide a warning to the public of the dangers of potential harm by exposure to any of the listed chemicals.  Releasor is advised and understands that chemicals on the Proposition 65 list are present at or around the Project from various sources, including building materials, products used to maintain improvements within the Project or as a result of activities associated with new construction, contractors and others.   Releasor hereby acknowledges that Releasor has seen, read and understood the posted Proposition 65 warning sign in the Project.

> **Warning:  Entering this area can expose you to chemicals known to the State of California to cause cancer and birth defects or other reproductive harm, including formaldehyde, carbon monoxide, and tobacco smoke, from building materials and furnishings, and from resident and guest activities including the use of tobacco products, vehicle engine exhaust and the use of gas stoves, barbeques, and fireplaces.  For more information go to www.P65Warnings.ca.gov.**

The United States Environmental Protection Agency, the California Air Resources Board, and other agencies have measured the presence of formaldehyde in the indoor air of homes in California. Formaldehyde is present in the air because it is emitted by a wide variety of building materials and products purchased by a NWHM Party from material suppliers.  These materials may include carpeting, pressed wood products, insulation, plastics and glues.  Materials used in the construction of the Property will expose Releasor to formaldehyde, a substance known by the State of California to cause cancer.  The residences in the Project have not been tested.  NWHM is providing this disclosure to advise Releasor of this information. In addition, if Releasor purchases a home at the Property, it may contain one or more other chemicals known by the State of California to cause cancer or reproductive harm.  Because the development and construction of the Project involved numerous contractors and subcontractors, and numerous types of materials have been incorporated into a home, it is impossible to accurately isolate all of the chemicals that may have been used in the manufacturing of materials or that might be contained in the various materials incorporated into each Residence.  NWHM is willing to share information it has obtained and will provide, upon request, a list of known material suppliers that may be contacted for further information.  Releasor may also contact the State of California Office of Environmental Health Hazard Assessment, which is the administrative agency for Proposition 65, at (916-445-6900) or www.oehha.ca.gov\prop65.html.

RELEASOR, ON BEHALF OF ITSELF AND RELEASOR'S SUCCESSORS AND ASSIGNS, HEREBY WAIVES AND RELEASES NWHM, ALL OF NWHM'S SUBSIDIARIES, AFFILIATES AND UNCONSOLIDATED JOINT VENTURES, THE MASTER DEVELOPER OF THE MASTER PLANNED COMMUNITY AT WHICH THE PROJECT IS BEING BUILT (IF ANY), THE PROJECT'S HOMEOWNERS ASSOCIATION (IF ANY) AND THE MASTER ASSOCIATION (IF ANY), AND EACH OF THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, OFFICERS, EMPLOYEES, DIRECTORS, AFFILIATES, CONTRACTORS, SUBCONTRACTORS, AGENTS, SUCCESSORS AND ASSIGNS (COLLECTIVELY, ***"RELEASED PARTIES"***) FROM ALL ACTIONS, CLAIMS, DEMANDS, LOSSES, LIABILITIES, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND COURT COSTS), WHETHER KNOWN OR UNKNOWN, WHICH RELEASOR MAY NOW OR HEREAFTER HAVE AGAINST ANY RELEASED PARTIES, ARISING DURING, OUT OF OR IN CONNECTION WITH (i) RELEASOR'S ENTERING ANY PORTION OF THE PROJECT ON WHICH CONSTRUCTION ACTIVITY IS IN PROGRESS OR ANY PORTION OF THE PROJECT WHICH IS NOT OTHERWISE OPEN TO THE PUBLIC IN GENERAL; (ii) RELEASOR RIDING IN A GOLF CART OR SIMILAR VEHICLE ON OR AROUND THE PROJECT SITE (***"GOLF CART ACTIVITIES"***), INCLUDING WITHOUT LIMITATION THE NEGLIGENCE OF

ANY OF THE RELEASED PARTIES IN CONNECTION WITH THE GOLF CART ACTIVITIES, THE USE OF EQUIPMENT IN CONNECTION WITH THE GOLF CART ACTIVITIES, THE ACTS OR OMISSIONS OF THIRD PARTIES WHILE ON THE PREMISES WHERE THE GOLF CART ACTIVITIES OCCUR AND/OR THE CONDITION OF THE PREMISES WHERE THE GOLF CART ACTIVITIES OCCUR; OR (iii) ANY MARKETING ACTIVITY.  RELEASOR ACKNOWLEDGES THAT IT IS FAMILIAR WITH THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES AS FOLLOWS:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Releasor hereby expressly waives any right Releasor may have under Civil Code Section 1542 with respect to the matters released by Releasor above, as well as under any other statute or common legal principle of similar effect.

RELEASOR HEREBY AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS THE RELEASED PARTIES FROM AND AGAINST ANY AND ALL ACTIONS, CLAIMS, DEMANDS, LOSSES, LIABILITIES, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND COURT COSTS) ARISING DURING, OUT OF OR IN CONNECTION WITH RELEASOR'S ENTERING ANY PORTION OF THE PROJECT ON WHICH CONSTRUCTION ACTIVITY IS IN PROGRESS OR ANY PORTION OF THE PROJECT WHICH IS NOT OTHERWISE OPEN TO THE PUBLIC IN GENERAL AND/OR RELEASOR'S PARTICIPATION IN ANY GOLF CART ACTIVITIES WHILE ON THE PREMISES WHERE THE GOLF CART ACTIVITIES OCCUR.

In consideration of the foregoing assumption of risk, acknowledgements, agreements, waivers and releases of Releasor, NWHM Party hereby grants the undersigned Releasor (and only the undersigned Releasor) permission to enter that portion of the Project where the residence(s) Releasor is considering purchasing from NWHM Party is located and any other portions of the Project which are necessary to access the same.  Releasor shall only be permitted to enter the Project with an appointment with NWHM Party's sales team, and in no event shall Releasor be permitted to visit outside of regular business hours.

**Disputes**.  Any dispute, controversy or claim arising out of or related to this Release and Indemnity (***"Agreement"***) or the interpretation of this Agreement shall be resolved in accordance with the alternative dispute resolution procedures set forth in Paragraph 26 of the Purchase Agreement and Escrow Instructions entered into between Re_____ N_____ Party.

Releasor's Initials

**Interpretation**.  The entire agreement of the parties with respect to the matters in this Agreement is set forth herein, and all prior documents entered into by Releasor in connection with entry into the Project are superseded.

*[SIGNATURES ON FOLLOWING PAGE]*

THE RELEASOR DECLARES AND REPRESENTS THAT THE RELEASORS HAS READ THIS AGREEMENT IN ITS ENTIRETY AND FULLY UNDERSTANDS EACH OF ITS TERMS.

RELEASOR:                                    Dated:

Di Lan Ge
Printed Name

RELEASOR:                                    Dated:

Xian Feng Gu
Printed Name

RELEASOR:                                    Dated:

Printed Name

RELEASOR:                                    Dated:

Printed Name

*"Releasor"*



# HOMEBUYER LIMITED WARRANTY

# TABLE OF CONTENTS

**SECTION 1 –** Introduction ........................................................................... 2

**SECTION 2 –** Definitions ............................................................................. 3

**SECTION 3 –** One Year Fit and Finish Warranty ..................................... 6

**SECTION 4 –** Extended Limited Warranty for Performance Standards .................... 8

**SECTION 5 –** Exclusions ........................................................................... 14

**SECTION 6 –** Manufacturer's Warranties – Disclaimer ............................................. 17

**SECTION 7 –** Other Conditions and Limitations ....................................... 18

**SECTION 8 –** Time Limit for Making Warranty Claims ............................... 19

**SECTION 9 –** Right to Repair Act ............................................................. 20

**SECTION 10 –** Warranty Claim Procedure ............................................... 21

**SECTION 11 –** Reporting an Emergency Claim........................................ 23

**SECTION 12 –** Your Obligations ............................................................. 25

**SECTION 13 –** Builder Obligations Under this Limited Warranty ............................. 27

**SECTION 14 –** Dispute Resolution Procedure ......................................... 29

**SECTION 15 –** Claims Under Individual Dispute Resolution Agreement ................ 30

**SECTION 16 –** Effect on Future Owners of the Home ............................................. 31

i

**SECTION 1**

**INTRODUCTION**

Congratulations on purchasing Your Home!  Your purchase includes this Homebuyer Warranty which relates to original construction defects or deficiencies in materials and workmanship as more fully set forth below ("***Limited Warranty***").  All capitalized words and phrases used in this Limited Warranty shall have the meanings given them in Section 2 below or as otherwise defined herein.  This Limited Warranty contains important terms, exclusions, conditions, policies and procedures. Therefore, You should carefully read and become familiar with this Limited Warranty.  By signing this Limited Warranty, You agree to all terms, exclusions, conditions, policies and procedures of this Limited Warranty.

This Limited Warranty establishes (a) an agreed upon method for determining whether a construction defect or deficiency in materials and workmanship exists, and is therefore a "***Covered Claim***" as defined in Section 2 (rather than a minor imperfection that can reasonably be expected in the Home or conditions resulting from normal wear and tear or reasonable maintenance responsibilities) and (b) the Builder's responsibility for resolving any such Covered Claim.

This Limited Warranty contains the procedures You must use and follow to notify Builder of a Condition in the Home which You believe constitutes a Covered Claim.  If You believe that a Condition is a Covered Claim, You must submit a request for service under this Limited Warranty**.**  Based upon the information You provide, and the Builder's investigation/inspection and/or testing of the Home, the Builder will determine whether it agrees that the Condition constitutes a Covered Claim.  If the Builder determines that the Condition is a Covered Claim, it will provide the repair, replacement or other response to such Condition required of the Builder under this Limited Warranty.  If the Builder determines that a Condition does not constitute a Covered Claim, it may deny Your request for service under this Limited Warranty.  If You disagree with the Builder's determination, You have the right to pursue a claim against the Builder in accordance with the Individual Dispute Resolution Agreement (as defined below).

To the fullest extent permitted by law, all express or implied warranties other than this Limited Warranty**,** including any oral or written statement or representation made by Builder or any of the Builder Parties or any other person, and any implied warranty of habitability, merchantability or fitness, are hereby disclaimed by the Builder and are waived by You.  If any provision or portion of any provision of this Limited Warranty is determined to be unenforceable for any reason, such determination will not in any way affect the remaining provisions.

The issue of enforceability, as well as all other issues related to this Limited Warranty, will be determined by binding arbitration/judicial reference as provided for in the Individual Dispute Resolution Agreement.

2

**SECTION 2**

**DEFINITIONS**

The following words and phrases used in this Limited Warranty have the meanings set forth below.

**Actual Moisture Barrier** means any Component or material, actually installed, that serves to any degree as a barrier against moisture, whether or not intended as a barrier against moisture.

**Association** means any neighborhood association or master homeowner association applicable to the Project.

**Association Property** means any and all real property and improvements at the Project for which the Association owns or has the obligation to maintain and repair pursuant to the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements and any other governing documents for the Project.

**Builder** means The New Home Company Southern California LLC, a Delaware limited liability company.

**Builder Parties** means (i) Builder and its partners, members or other principals and their respective officers, agents, employees, affiliated, parent and subsidiary companies, successors and assigns, and design centers, and (ii) any subcontractors, design professionals, engineers, inspectors, material suppliers and/or consultants who provided labor, services or materials to any portion of the Home.

**Component** means an item that was incorporated into the construction of your Home by Builder, other than items specifically excluded by this Limited Warranty. The term does not include items added by you or anyone other than Builder or Builder Parties, or added to the home after the Effective Date of Warranty, such as improvements to the Home or furniture.

**Condition** means any circumstance and/or condition in the Home that You believe may be a Covered Claim.

**Covered Claim** is the failure of any workmanship, materials, and systems of any Component to meet the Fit and Finish Performance Standards or Performance Standards, as applicable.

**Designed Moisture Barrier** means an installed moisture barrier specified in the plans and specifications, contract documents, or manufacturer's recommendations.

**Effective Date of Warranty** means the date on which You close escrow for the purchase of the Home. Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend the ten (10) year statute of repose for

construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such ten (10) year statute of repose expressly applies to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

**Emergency Condition** means any Condition that would cause an unsafe living condition affecting the health and safety of persons residing in the Home.

**Extended Limited Warranty** means the warranty provided under Section 4 of this Limited Warranty.

**Federal Act** means the Federal Arbitration Act (9 U.S.C. §§1-16).

**Fit and Finish Standards** means the construction and performance standards set forth in Section 3 subject to the tolerances and exclusions set forth in this Limited Warranty.

**Fit and Finish Warranty** means the one (1) year warranty described in Section 3.

**Fit and Finish Warranty Term** means the period which is (1) year following the Effective Date of Warranty.

**Home** means the residence You purchased from the Builder as described on the signature page of this Limited Warranty and all appurtenant improvements.

**Homeowner** means You and any successive owner of the Home.

**Homeowner Manual** means the Homeowner Manual provided to You by the Builder which includes important information regarding Your Home, including guidelines for the maintenance, care and use of Your Home.

**Individual Dispute Resolution Agreement** means the Individual Dispute Resolution Agreement entered into between You and the Builder in connection with the purchase of the Home that is or shall be recorded against the Home.

**Manufactured Products** means a product that is completely manufactured off-site, including without limitation all flooring, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, appliances, pieces of equipment, or other items installed in the Home that are consumer products for purposes of the Magnuson-Moss Warranty Act (15 U.S.C. Section 2301, et. seq.) and solar energy systems including inverters.

**Maintenance Guidelines** means all maintenance obligations, guidelines, schedules and practices communicated to You in writing by Builder, including, without limitation all product manufacturers' use, maintenance and care instructions provided to You by Builder, as well as commonly accepted maintenance practices. Such commonly

4

accepted maintenance practices include, but are not limited to, those set forth in Your Homeowner Manual and those established by product manufacturers.

**Owner Party or Parties** means You and/or Your agents, family (including minor children), tenants, guests, invitees and or representatives.

**Performance Standards** means the construction and performance standards set forth in Section 4 of this Limited Warranty subject to the tolerances and exclusions set forth in this Limited Warranty.

**Project** means the residential development in which the Home is located.

**Right to Repair Act** means Title 7, Part 2 of Division 2 of the California Civil Code commencing with Section 895.

**Service Request** means a complete, detailed description of a Condition properly submitted by You as set forth in Section 10 of this Limited Warranty.

**Structure** means any residential building, other building, or improvement located within the Project.

**Unintended Water** means water that passes beyond, around, or through a Component or the material that is designed to prevent that passage.

**Warranty Term** means, as to each system or Component covered by this Limited Warranty, the period beginning on the Effective Date of Warranty and expiring on the date for each such Component specified in Section 3 or 4 of this Limited Warranty, as applicable.

**You or Your** means the homeowner to whom this Limited Warranty is provided.

## SECTION 3

## ONE YEAR FIT AND FINISH WARRANTY

Subject to the terms, limitations, conditions and exclusions of this Limited Warranty, Builder warrants that during the period which is one (1) year following the Effective Date of Warranty (the Fit and Finish Warranty Term) the following Components of the Home will satisfy the Fit and Finish Standards within an acceptable tolerance. Builder will correct any noncompliance with the Fit and Finish Standards that are reported to Builder in writing in accordance with this Limited Warranty during the Fit and Finish Warranty Term. Any noncompliance with the Fit and Finish Standards not so reported to Builder within the Fit and Finish Warranty Term shall be Your responsibility. A Condition will only be a Covered Claim under this Fit and Finish Warranty if the Condition is the result of a Component or function not being in compliance with the Fit and Finish Standards. Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through are presumed to have been caused by Homeowner. Such damages caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| Cabinets | Cabinet doors shall align. | Cabinet doors that are out of alignment in excess of 1/8 of an inch when closed are a deficiency. | |
| Cabinets | Cabinet doors shall not contain significant warps. | Cabinet door warping of more than 3/16 of an inch is a deficiency. | |
| Cabinets | Cabinets shall be installed level and flush to walls and ceilings. | Deviations greater than 3/8 of an inch in cabinet level in a 6 foot span is a deficiency. Deviations greater than 3/16 of an inch to walls and ceilings is a deficiency. | |
| Carpet | Carpet seams shall be butted tightly. | | Visible seams and seam separations after close of escrow are not covered. |
| Countertops | Countertops shall be installed flat and level. | Deviations greater than 3/8 of an inch in countertop level is a deficiency. | |
| Exterior Decks/Patios | Decks and patios shall drain properly. | Water ponding in excess of 3/8 of an inch 24 hours after last rain is a deficiency. | |
| Exterior Doors | Doors shall not contain significant warps. | Exterior door warping of more than 1/8 of an inch is a deficiency. | |
| Exterior Trim | Wood trim, siding, and false beam details shall not contain significant separations. | Separations exceeding 3/8 of an inch in width are a deficiency. | Maintenance of Components, including, without limitation, caulking at joints, is not covered. |
| Grout | Grout shall not contain significant cracks | Cracks in excess of 1/32 of an inch are a deficiency. | |
| Hardwood Flooring | Finish flooring shall be installed level. | Variance in the level of hardwood flooring that exceeds 1/4 of an inch in 8 feet is a deficiency. | |

6

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| HVAC | Heating, if any, shall be installed so as to be capable of maintaining a room temperature of 70 degrees Fahrenheit at a point three feet above the floor in any living space. | | |
| HVAC | Living space air-conditioning, if any, shall be provided in a manner consistent with the size and efficiency design criteria specified in Title 24 of the California Code of Regulations or its successor. | | |
| Interior Doors | Doors shall not contain significant warps. | Interior door warping of more than 1/4 of an inch is a deficiency. | |
| Interior Trim | Trim shall not contain significant separations. | Separations at miter joints exceeding 1/16 of an inch in width are a deficiency. Gaps between trim and adjacent trim or other materials exceeding 1/8 of an inch are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant bows or crowns. | Bows exceeding 1/4 of an inch in a 32 inch horizontal or vertical measurement or 1/2 of an inch in an 8 foot measurement are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant cracks or separations. | Cracks and separations exceeding 1/8 of an inch in width are a deficiency. | |
| Landscaping/Irrigation | Irrigation systems and drainage shall operate properly so as not to damage landscaping or other external improvements. | | Landscaping installed, modified, or damaged after close of escrow is not covered. |
| Landscaping/Irrigation | The landscaping systems shall be installed in such a manner so as to survive for not less than one year. | | |
| Manufactured Products | To the extent not otherwise covered by these standards, manufactured products (products completely manufactured offsite), including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any. Useful life shall mean one year or the term of the manufacturer's warranty, whichever is greater, but no more than 10 years. | | Claims relating solely to a defect in a manufactured product are not covered. |
| Subfloor | Wood subfloors shall be installed level. | Variance in the level of wood subfloors that exceeds 1/2 of an inch in 20 feet is a deficiency. | Squeaks from subfloors are not covered. |

7

# SECTION 4

## EXTENDED LIMITED WARRANTY FOR
## PERFORMANCE STANDARDS

Subject to the terms, conditions and exclusions of this Limited Warranty, Builder warrants that during the applicable Warranty Term the following Components of the Home will satisfy the Performance Standards identified below within an acceptable tolerance. A Condition will only be a Covered Claim under the Extended Limited Warranty if the Condition is the result of a Component or function not being in compliance with the Performance Standards described in this Section. Conditions caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Noise | Attached structures shall be constructed to comply with inter-unit noise transmission standards set by the applicable government building codes, ordinances, or regulations in effect at the time of the original construction. | | If there is no applicable code, ordinance or regulation, this standard does not apply. | 1 Year from original occupancy of the adjacent unit |
| Paint | Paint and stains shall be applied in such a manner so as not to cause deterioration of the building surfaces for the length of time specified by the paint or stain manufacturers' representations, if any. | | | No more than 5 Years |
| Electrical | Electrical systems shall operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | Alterations made after close of escrow that change or increase the electrical load on the system void this coverage. | 4 Years |
| Exterior Flatwork | Concrete driveway and garage slab shall not be significantly offset. | Vertical offset that exceeds 1/2 of an inch is a deficiency. | Offsets exceeding 1/2 of an inch that are intentionally created during original installation are not covered. | 4 Years |
| Exterior Flatwork | Exterior pathways, driveways, hardscape, sidewalls, sidewalks, and patios installed by the original builder shall not contain cracks that display significant vertical displacement or that are excessive. | Cracks exceeding 1/4 of an inch in width or vertical displacement are a deficiency. Cracks in control joints that exceed 1 inch in width or 1/4 of an inch in vertical displacement are a deficiency. | Minor cracking is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Damage to builder-installed flatwork caused by flatwork or other additions installed after close of escrow are not covered. | 4 Years |
| Fences | Untreated steel fences and adjacent Components shall be installed so as to prevent unreasonable corrosion. | | | 4 Years |
| Plumbing and Sewer | Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | | 4 Years |

8

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Fences | Untreated wood posts shall not be installed in contact with soil so as to cause unreasonable decay to the wood based upon the finish grade at the time of original construction. | | | 2 Years |
| Mechanical | Dryer ducts shall be installed and terminated pursuant to manufacturer installation requirements. | | | 2 Years |
| Exterior Finishes | Stucco, exterior siding, and other exterior wall finishes and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall not contain significant cracks or separations. | Cracks exceeding 1/8 of an inch in width are a deficiency. Separations between dissimilar materials exceeding 3/8 of an inch in width are a deficiency. Separations at butt joints or miter joints of trim pieces that exceed 1/4 of an inch are a deficiency. | Minor cracking and separations is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Maintenance of caulking between dissimilar materials is not covered. Efflorescence is considered acceptable and is not covered. | 10 Years |
| Fire Protection | Electrical and mechanical systems shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire. | Original construction that causes an unreasonable risk of fire is a deficiency. | | 10 Years |
| Fire Protection | Fireplaces, chimneys, chimney structures, and chimney termination caps shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire outside the fireplace enclosure or chimney. | Original construction that causes an unreasonable risk of fire outside the fireplace enclosure is a deficiency. | | 10 Years |
| Fire Protection | The Structure shall be constructed so as to materially comply with the design criteria of the applicable government building codes, regulations, and ordinances for fire protection of the occupants in effect at the time of the original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Public Health Hazard | Structures shall be constructed in such a manner so as not to impair the occupants' safety because they contain public health hazards as determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction. | | | 10 Years |
| Roof | Roofing materials shall be installed so as to avoid materials falling from the roof. | | Damage caused after close of escrow is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, damage to the Structure built upon the soil or engineered retaining wall. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, the Structure to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Soil | Soils shall not cause, in whole or in part, the land upon which no structure is built to become unusable for the purpose represented at the time of original sale by the builder or for the purpose for which that land is commonly used. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | Deficiencies caused, in whole or in part, by modifications to the soil or the surrounding areas after close of escrow are not covered. Damage caused by failure to maintain drainage swales is not covered. | 10 Years |
| Structural | Foundations, load bearing Components and slabs shall not cause the Structure, in whole or in part, to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |
| Structural | Foundations, load bearing Components, and slabs shall not contain significant cracks or significant vertical displacement. | Cracks exceeding 3/16 of an inch in width or 1/8 of an inch in vertical displacement are a deficiency. | Cracks in a control joint are not covered. | 10 Years |
| Structural | Foundations, load bearing Components, and slabs, and underlying soils shall be constructed so as to materially comply with the design criteria set by applicable government building codes, regulations, and ordinances for chemical deterioration or corrosion resistance in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Structural | The Structure shall be constructed so as to materially comply with the design criteria for earthquake and wind load resistance, as set forth in the applicable government building codes, regulations, and ordinances in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Tile | Ceramic tile and tile backing shall be installed in such a manner that the tile does not detach. | | | 10 Years |
| Water Intrusion - Doors | A door shall not allow Unintended Water to pass beyond, around, or through the door or its Designed or Actual Moisture Barriers, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |
| Water Intrusion - Doors/Windows | Windows, patio doors, deck doors, and their systems shall not allow water to pass beyond, around, or through the window, patio door, or deck door or its Designed or Actual Moisture Barriers, including, without limitation, internal barriers within the systems themselves. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Leaks caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |

10

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Drainage | Hardscape, including paths and patios, irrigation systems, landscaping systems, and drainage systems, that are installed as part of the original construction, shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the hardscape or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Water Intrusion - Enclosures | Shower and bath enclosures shall not leak water into the interior of walls, flooring systems, or the interior of other Components. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, grout, caulking, or weatherstripping, are not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, and exterior walls shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage from condensation entering the Structure caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, to maintain proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, exterior walls, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those Components and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall be installed in such a way so as not to allow Unintended Water to pass into the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers of the system, including any internal barriers located within the system itself. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking, are not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow Unintended Water to pass within the systems themselves and cause damage to the systems. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Damage caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, is not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow water to pass into the adjacent Structure. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, are not covered. | 10 Years |

11

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Exterior Systems | Windows, patio doors, deck doors and their systems shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Damage to another Component from excessive condensation entering the Structure from the outside as a result of original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. |  | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to limit the installation of the type of flooring materials typically used for the particular application. | Damage to the original flooring caused by water or vapor transmission through the foundation system and slab is a deficiency. | Preparation required for installation of a flooring material that differs from that originally installed by Builder is not covered. | 10 Years |
| Water Intrusion - Roof | Roofs, roofing systems, chimney caps, and ventilation Components shall not allow water to enter the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers, including, without limitation, internal barriers, located within the systems themselves. For purposes of this standard, systems include, without limitation, framing, substrate, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, their roof, are not covered. | 10 Years |
| Water Intrusion - Tile | Ceramic tile and tile countertops shall not allow water into the interior of walls, flooring systems, or other Components so as to cause damage. | Leaks caused by original construction are a deficiency. | Damage caused by water tracked or introduced into areas outside of showers or bathtubs is not covered. | 10 Years |
| Water Intrusion - Utilities | Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems. | Corrosion that impedes the useful life of the system is a deficiency. |  | 10 Years |
| Water Intrusion - Utilities | Sewer systems shall be installed in such a way as to allow the designated amount of sewage to flow through the system. | Original installation by the Builder that impedes the designated amount of sewage from flowing through the system is a deficiency. | Impediments caused by modifications or damage caused after close of escrow are not covered. Flushing of hygiene products that create a blockage are not covered. | 10 Years |
| Water Intrusion - Utilities | The lines and Components of the plumbing system, sewer system, and utility systems shall not leak. | Leaks caused by original construction are a deficiency. | Leaks caused by modifications or damage to Components after close of escrow are not covered. | 10 Years |
| Water Intrusion - Walls | Retaining and site walls and their associated drainage systems shall not allow Unintended Water to pass beyond, around, or through its Designed or Actual Moisture Barriers including, without limitation, any internal barriers, so as to cause damage. This standard does not apply to those portions of any wall or drainage system that are designed to have water flow beyond, around, or through them. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

12

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|----------|---------------------|-----------|-----------|---------------|
| Water Intrusion - Walls | Retaining walls and site walls, and their associated drainage systems, shall only allow water to flow beyond, around, or through the areas designated by design. | Water intrusion caused by original construction is a deficiency. | Water intrusion caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

**SECTION 5**

**EXCLUSIONS**

A.     In addition to the items specifically addressed in Sections 3 and 4, this Limited Warranty also does not provide any coverage for the following, which are specifically excluded and shall not be Covered Claims:

1.     Damage to any property that was not included as part of the original construction of Your Home by Builder.

2.     Any condition which has not resulted in actual physical damage to Your Home.

3.     Failure to maintain Your Home in accordance with the Maintenance Guidelines.

4.     Any loss or damage that is caused or made worse by any of the following causes, whether acting alone or in sequence or concurrence with any other cause or causes whatsoever, including without limitation:

(a)     negligence, improper maintenance, defective material or work supplied by, or improper operation by, anyone other than Builder or any Builder Parties, including failure to comply with the warranty requirements of manufacturers of appliances, equipment or fixtures;

(b)     Your failure to give prompt and proper notice to Builder of any Covered Claim in accordance with the terms of this Limited Warranty;

(c)     changes in grading that do not comply with accepted grading practices, or failure to maintain the original grade created by Builder;

(d)     riot or civil commotion, war, vandalism, hurricane, tornado or other wind storm, fire, explosion, blasting, smoke, water, flood, hail, snow, ice storm, lightning, fallen trees or other objects, aircraft, vehicles, landslide or mud slide, avalanche, earthquake, subsidence, erosion, volcanic eruption or natural or manmade condition that exceeds the design criteria;

(e)     abuse or use of the Home, or any part thereof, beyond the reasonable capacity of such part for such use;

(f)     microorganisms, fungus, decay, wet rot, dry rot, soft rot, rotting of any kind, mold, mildew, vermin, termites, insects, rodents, birds, wild or domestic animals, plants, corrosion, rust, radon, radiation, formaldehyde, asbestos, any solid, liquid or gaseous pollutant, contaminant, toxin, irritant or carcinogenic substance, whether organic or inorganic, and any electro-magnetic field or emission, including any claim of health risk or un-inhabitability based on or caused by any matter contained in these exclusions;

(g)     Your failure to minimize or mitigate any Condition, loss or damage as soon as practicable;

(h)     any request for warranty service or performance submitted to Builder after an unreasonable delay or in any event later than expiration of the applicable Warranty Term, as applicable;

(i)     loss caused, in whole or in part, by any peril or occurrence for which compensation is provided by state or federal legislation or public funds;

(j)     diminution in the market value of the Home which is in addition to or exceeds the cost of repair;

(k)     loss or damage caused by or resulting from the loading of structural elements in excess designed loads, including, without limitation, water beds, safes, weight benches, large fish tanks, above-garage attics and storage spaces, and pool tables;

(l)     bodily injury or damage to personal property and any and all incidental and consequential damages, including, without limitation, lost profits, stigma damages, time missed from employment, expenses to address special health or physical situations, costs of shelter, transportation, food, moving, storage or other incidental expenses related to relocation during repairs;

(m)     loss or damage resulting from, or made worse by: (i) changes to the grading of the property surrounding the Home by anyone, including changes made by or its authorized employees, agents or subcontractors, (ii) changes in the grading or drainage resulting from erosion, subsidence or (iii) other soil movement.  Builder assumes no responsibility for damage caused by the lack of or improper landscaping, changing the grade of a yard, or fencing, patios, spas, pools or otherwise which alter the grading or the water table;

15

(n)     loss or damage resulting from, or made worse by: dampness, condensation, cold or heat buildup caused by a failure to maintain proper ventilation in accordance with the terms of the Maintenance Guidelines;

(o)     loss or damage due to the actions of others, including, without limitation, actions by or failure to act by cities, counties or utility companies, including failure to provide utility service to the Home; and

(p)     modification of the Home and/or work performed at the Home by Homeowner or third parties after closing.

5.     Failure to allow Builder or Builder Parties reasonable and timely access for inspections and repair under this Limited Warranty.

6.     Alterations, ordinary wear and tear, misuse, abuse, or neglect, or use of the Home other than for intended purpose by You or any Owner Party.

7.     Any Covered Claim for which Builder has obtained a release.

8.     All Manufactured Products (including without limitation consumer products for purposes of the Magnuson-Moss Warranty Act), except as expressly provided otherwise in this Limited Warranty.

9.     All solar energy systems and Component parts warranted by a third party solar provider and/or its suppliers.

10.    Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through.

11.    Any of the conditions, occurrences, or matters set forth in Civil Code section 945.5.

12.    Association Property.

**SECTION 6**

**MANUFACTURER'S WARRANTIES – DISCLAIMER**

All Manufactured Products are excluded from coverage under this Limited Warranty.  To the extent Builder has been issued a warranty from any manufacturer of Manufactured Products installed in Your Home, Builder assigns to You, to the extent assignable and without recourse to Builder, Builder's rights in such warranties, if any. The assignment will be effective as of the date on which You close escrow for the purchase of Your Home.  Any rights that inure to a homeowner under a manufacturer's warranty are the obligation of the manufacturer.  Builder has no obligations under the manufacturer's warranty, including without limitation the ability to enforce the manufacturer's warranty.  Builder disclaims any warranty of any kind, express or implied, relating to Manufactured Products, including without limitation, any warranty of use, fitness of use, workmanship, or quality.  Builder will not be obligated under this Limited Warranty for any damage to a Manufactured Product or for any damage caused by a Manufactured Product installed at Your Home; provided however, to the extent required by law, Builder will be responsible for damage caused by its improper installation of a Manufactured Product at Your Home or other act by Builder only if the installation or other act by Builder caused actual damage.  Builder's disclaimer of warranties does not limit or otherwise affect the warranty of any manufacturer.  If a Manufactured Product malfunctions, or is otherwise defective, You agree to follow the procedures in the applicable manufacturer's warranty documents or website.  Prior to Your execution of this Limited Warranty, a copy of the warranties for Manufactured Products in Your Home were made available to You for Your review.  At or after the close of escrow for the purchase of Your Home, Builder will deliver to You the actual warranties for the Manufactured Products in Your Home to the extent such warranties exist.  Such delivery may be in digital format or links to a manufacturer's website.

**SECTION 7**

**OTHER CONDITIONS AND LIMITATIONS**

**DISCLAIMER OF OTHER WARRANTIES**.  TO THE FULLEST EXTENT PERMITTED BY LAW, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF HABITABILITY, ARE HEREBY EXPRESSLY DISCLAIMED BY BUILDER AND WAIVED BY YOU.  THIS LIMITED WARRANTY IS SUBSTITUTED IN PLACE OF ALL SUCH WARRANTIES. THIS MEANS THAT THIS WARRANTY IS THE ONLY WARRANTY THAT APPLIES AND GOVERNS YOUR AND OUR RIGHTS AND OBLIGATIONS RELATED TO YOUR HOME AND THAT THERE ARE NO OTHER WARRANTIES EXCEPT AS MAY BE REQUIRED BY LAW.  NO ONE CAN ADD TO OR VARY THE TERMS OF THIS LIMITED WARRANTY, ORALLY OR IN WRITING.  IF AN ARBITRATOR OR COURT DETERMINES THAT A WARRANTY CANNOT BE WAIVED, DISCLAIMED, OR REDUCED BY THIS WARRANTY OR SUBSTITUTED WITH THE TERMS OF THIS WARRANTY BY LAW, THEN THE SPECIFIC TERM IN THIS WARRANTY THAT CONFLICTS WITH THE WARRANTY TERM THAT MAY NOT BE WAIVED, DISCLAIMED, REDUCED OR SUBSTITUTED WILL NOT APPLY, BUT ALL OTHER TERMS WILL REMAIN APPLICABLE TO THE EXTENT PERMITTED BY LAW.

**Severability**.  In the event any provision of this Limited Warranty is determined to be unenforceable, that determination will not affect the validity of the remaining provisions.

**Not an Insurance Policy**.  This Limited Warranty is not an insurance policy and Builder does not provide you any insurance through the Limited Warranty or otherwise. You should always obtain Homeowners insurance to protect your Home and if You have a mortgage on Your Home, Your lender may insist that You have a homeowner's insurance policy.  This is not a homeowner's insurance policy.

**Repair Does Not Extend Warranty Term**.  No repair, replacement or payment shall extend the Warranty Term of this Limited Warranty as to any Covered Claim, including, without limitation, the Covered Claim which was the subject of the repair.  There shall be no warranty, express or implied, arising from repair or replacement work performed by or on behalf of Builder except for the remaining original Warranty Term.

**Limitations on Post-Repair Condition of Home**. Repairs undertaken under the Limited Warranty are intended to restore the Home to acceptable tolerances, but not necessarily to like-new condition.

**Headings**. Section headings and the Table of Contents used herein are for convenience of reference only and shall not affect the meaning or interpretation of this Limited Warranty.

**SECTION 8**

**TIME LIMIT FOR MAKING WARRANTY CLAIMS**

The Warranty Term is different depending on the type of system, Component or element of construction involved.  For items covered under Section 3 One Year Fit and Finish Warranty, the Warranty Term is one year from the Effective Date of Warranty.  For items covered under Section 4 Extended Limited Warranty for Performance Standards, the Warranty Term is set forth for each building Component listed starting from the Effective Date of Warranty.  All warranty claims must be received by Builder prior to the expiration of the applicable Warranty Term.  Any claim that Builder did not comply with its obligations under this Limited Warranty must be brought pursuant to the procedures set forth in the Individual Dispute Resolution Agreement and must be initiated no later than thirty (30) days after the expiration of the applicable Warranty Term.  Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend any applicable statutes of limitation or repose, including without limitation the ten (10) year statute of repose for construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such statutes of limitation and/or repose that apply to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

**SECTION 9**

**RIGHT TO REPAIR ACT**

This Limited Warranty is **NOT** intended to be a Builder's Enhanced Protection Agreement, as permitted by the Right to Repair Act.  The terms and conditions of this Limited Warranty are intended by Builder to contractually set forth Your and the Builder's rights, duties, and obligations as to certain covered Components and functions of Your Home under this Limited Warranty.

If this Limited Warranty is in any way deemed to limit the application or reduce the protection of the Right to Repair Act, the provisions of the Right to Repair Act shall control and shall supersede any term, condition, provision, definition, limitation, exclusion, right, duty, or requirement stated in this Limited Warranty.

## SECTION 10

## WARRANTY CLAIM PROCEDURE

If You become aware of a Condition that You believe is Covered Claim under this Limited Warranty, You must proceed as follows:

**Notification**

You must submit a Service Request through the Builder's website at https://www.CustomerCareNHC.com (or by following the links at Builder's general website for "service", "customer care" or "warranty", "**Website**") as soon as reasonably possible after You become aware or should have become aware of the Condition, but in no event may Your service request be submitted to Builder through the Website later than the earlier to occur of (a) thirty (30) days following Your discovery of a Condition (except as provided below for Conditions discovered during the first thirty (30) days after the Effective Date of Warranty) or (b) the date on which the applicable Warranty Term expires for the system, Component or element of construction involved in such Condition. However, for ease of service, during the initial thirty (30) days following the Effective Date of Warranty you should keep track of Conditions You wish to report until the expiration of such thirty (30) day period. Service requests must be made through the Website and will not be accepted by mail or other delivery process. If your request for service is not submitted in accordance with the foregoing, Builder will have no obligation to remedy the Condition that is the subject of the service request. Further any claim or claims that Builder has breached this Limited Warranty must be brought within one (1) year following the alleged breach, but in no event later than thirty (30) days after expiration of the Warranty Term with respect to the system, Component or element of construction involved in such breach by Builder, and shall be resolved in accordance with the Individual Dispute Resolution Agreement.

**Cooperation**

You must fully cooperate with Builder**,** and any Builder Parties, in inspecting, investigating, testing (including destructive testing), monitoring, repairing, replacing or correcting a Condition under this Limited Warranty. This cooperation includes, but is not limited to, granting reasonable access to Your Home for the foregoing purposes during normal business hours, having a person at least eighteen (18) years of age at each and every scheduled appointment, and, if the Home has tenants, having Your authorized representative (as evidenced by a signed, written authorization), present for any such appointments. If You fail to so cooperate, the Builder will have no obligation to perform any warranty service under this Limited Warranty.

**Do Not Incur Expenses for Covered Claims Without Written Approval**

You agree not to make any voluntary payments, assume any obligations, or incur any expenses to remedy any Condition You believe is a Covered Claim without prior written approval from Builder. Subject to the exception below, Builder will not reimburse

21

You for any costs or expenses You incur if You do not obtain prior written approval from Builder agreeing to reimburse you for such costs.

However, Builder will reimburse you for reasonable expenses You incur with independent third parties, consistent with this Limited Warranty, in making repairs for (i) a Condition that is a Covered Claim which is necessary solely for the protection of the Home from further material damage, provided that you notify Builder of such Condition as soon as is reasonably possible, or (ii) an Emergency Condition provided that you notify Builder of such Emergency Condition as soon as is reasonably possible. To obtain reimbursement for such costs incurred as a result of an Emergency Condition, You must provide Builder with a complete and accurate record describing in detail the Emergency Condition and the repairs and repair costs. If proper, detailed documentation for emergency repairs and repair costs is not provided, Builder shall not be obligated to reimburse You for costs incurred in connection therewith.

**Sign a Release**

To the fullest extent permitted by law, when Builder or a third party designated by Builder pays to You any monetary settlement for any claim, You must sign a full release of Builder's obligations related to the claim. This release shall be applicable to the claim only and shall not prevent You from making a claim regarding any other Condition that You believe is a Covered Claim.

**Disputes**

You agree that all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial.

**SECTION 11**

**REPORTING AN <u>EMERGENCY</u> CLAIM**

Certain events and circumstances may require immediate attention by You under this Limited Warranty.  Builder has provided an emergency phone number for Your convenience to expedite service in Emergency Conditions.  To ensure documentation in Your warranty file, send a Service Request Form to Builder clearly identifying and describing in detail the Emergency Condition and the date that You reported the Emergency Condition.

Emergency Covered Claims are those Covered Claims that require immediate attention due to Emergency Conditions and include, but may not be limited to, the following examples:

- A total stoppage of the sewer system.  (Note:  Builder is not responsible for sewers, fixtures, and drains which are clogged as a result of the action or inaction of any Owner Party or Owner Parties.)

- A water leak which could cause serious damage to the building and/or furnishings. (Turn off water supply immediately.)

- An electrical problem causing complete loss of power within the Home. (Shut off main breaker.)

Urgent, but non-Emergency Conditions are those Conditions that may require immediate responsive action but are not of an Emergency Condition nature.  Such urgent Conditions, include, but may not be limited to:

- Complete loss of heat or air conditioning

- Leak under a sink

The following Emergency Phone Number and contact information are provided to You for use if You believe a Condition is an Emergency Condition.  Please strictly comply with the emergency service request procedures set forth above, including careful consideration of whether a Condition qualifies as an Emergency Condition subject to the emergency service request procedures set forth herein.

23

# EMERGENCY PHONE NUMBER

## 949-472-5518

      For appliance service issues, please contact the appropriate factory warranty service company for all appliance repairs of any nature.  To ensure documentation in your warranty file, after You have contacted the appropriate appliance service subcontractor, send a Service Request Form to Builder clearly identifying and describing the appliance service request and the date that the appliance service subcontractor or vendor was contacted.

      You are required to exercise good faith in determining whether a Condition qualifies as a Covered Claim, whether such Condition qualifies as an Emergency Condition and using the proper reporting procedures under this Limited Warranty.  You may be responsible for costs associated with services provided if you report an item that is not an Emergency Condition or a Covered Claim, at Builder's sole discretion.

      Your failure to follow obligations, schedules, necessary maintenance (including without limitation the Maintenance Guidelines), reporting procedures and practices may invalidate all or portions of the coverage of this Limited Warranty.

## SECTION 12

## YOUR OBLIGATIONS

**Access to Your Home**.

In order for Builder to carry out its responsibilities under this Limited Warranty, Builder, or a third-party designated by Builder, will require access to Your Home from time-to-time, provided that access is during normal business hours, Monday through Friday, at a time mutually convenient to You and Builder between the hours of 8:00 a.m. and 4:00 p.m.**,** or as otherwise set forth above.  You hereby agree to grant access to Builder and Builder Parties during such time to inspect, repair and conduct tests in Your Home as in their judgment may be required.  Your failure to allow access to Your Home will void this Limited Warranty.

**Your Obligations to Care for Your Home**.

This Limited Warranty covers the cost of labor and materials to correct a Covered Claim**,** as more fully defined above.  Your obligation is to care for Your Home in such a way as to prevent or minimize damage to it.  All new homes go through a period of settlement and movement.  During this period,  Your Home may experience some minor material shrinkage, cracking and other events which are normal and customary.   You are responsible for proper maintenance of Your Home, including, but not limited to, complying fully with all Maintenance Guidelines. You should become familiar with all Maintenance Guidelines. By accepting this Limited Warranty, You agree to provide to any subsequent purchaser of the Home from You any and all Maintenance Guidelines.  Any subsequent purchaser of the Home must also comply with the Maintenance Guidelines.  The failure of any Homeowner to comply with the Maintenance Guidelines shall void this Limited Warranty, as to any claim in whole or in part, at Builder's sole and absolute discretion. The sale of the Home to a subsequent purchaser shall not extend the Warranty Term.

Without limiting the information or maintenance obligations provided in Your Homeowner Manual or other Maintenance Guidelines, below are some reminders of what Your Home has a right to expect from You:

- Your Home and lot were designed with a particular drainage pattern, which should carry rainwater away from the foundation. Water should not be directed to the edge of the foundation, either in the form of lot drainage or the watering of flowers, shrubs, or grass.
- Concrete surfaces should be free of salts, other deicing chemicals, and excessive weight such as a moving van. Yard drainage should be maintained to divert water away from concrete surfaces, if possible, to eliminate the chance it will undermine the surface and erode the bearing soil.
- Structural alterations to the Home must be performed by professionals who understand the load-bearing requirements of the change. One of the reasons that

local municipalities require permits for building alterations is to make sure that the structural integrity of the Home is maintained.

- In many cases, the seal around doors and windows is caulk. This material should be inspected annually and may need to be replaced after one to two years. Water from yard and lawn watering devices should not come in contact with the structure.

- Since the mechanical systems of Your Home were designed for normal usage, placing unreasonable demands upon them will present problems. Plugging several electrical devices into one circuit may cause it to overload. Loading materials into a drain may cause it to clog. Undue weight should not be placed on pipes or showerheads because they can break. Some devices must be cleaned periodically (e.g., furnace filters) so that they can do what they were designed to do.

- Wood requires cleaning and sealing to prevent problems associated with water penetration and continual exposure to the elements. Painted or sealed surfaces must be cleaned and refinished according to the requirements of Your geographic area. If this is not done, the surface will deteriorate.

- Instructions for care and maintenance are included with many Components of Your Home, including finished flooring, appliances, and air handling equipment. Following these instructions will extend the life of these Components.

- The common areas require the same care and maintenance as Your Home. Although Your Association is responsible for maintenance, all residents should strive to keep these areas clean and usable.

**Your Responsibility for Proper Use**

You are responsible for any improper use of Your Home, including, but not limited to, unreasonable use, intentional damage, and the use of Your Home for anything other than a single-family residence.

**Your Responsibility to Provide Notice and Mitigate Damages**

If You believe Your Home has a construction defect covered by this Limited Warranty, You must give Builder timely notice in the manner described in this Limited Warranty. Builder is not responsible for any damage that occurs because You failed to timely notify Builder or because You failed to take reasonable action to prevent the damage.

## SECTION 13

### BUILDER OBLIGATIONS UNDER THIS LIMITED WARRANTY

Except for Emergencies as set forth in Section 11 all Service Requests must be made by You in accordance with Section 10. Telephonic or face-to-face discussions will not protect or preserve Your rights under this Limited Warranty.

Upon receiving a fully completed Service Request from You, Builder, or a Builder Party, will conduct inspections, investigations and/or testing (including destructive testing) regarding the alleged claim described in the Service Request From to determine if a Covered Claim exists. Upon Builder's determination that the described Condition is a Covered Claim, Builder, or a Builder Party, will, at Builder's sole discretion, (1) perform repair or replacement in response to the Covered Claim or (2) pay to You the reasonable cost to perform such repair or replacement in which case You shall execute a full release in favor of Builder with respect to the Covered Claim.

**Standards by Which the Presence of a Covered Claim Will be Determined.**

The following factors will be considered by Builder in determining whether a Condition constitutes a Covered Claim. Should an arbitration be conducted under the Dispute Resolution Procedure, these factors shall be considered by the arbitrator or referee, as applicable, in rendering a decision:

1. The Fit and Finish Standards or Performance Standards, as applicable.

2. Consideration as to whether the magnitude of the Condition:
   - Materially affects the structural integrity of the Home; or
   - Has an obvious and material negative impact on the appearance of the Home; or
   - Creates an Emergency Situation; or
   - Results in the inability of the Home to provide the functions that can be reasonably expected in such a home;

3. Consideration as to whether the Condition is the result of normal wear and tear (Conditions that are normal wear and tear, or are caused by normal wear and tear, are not Covered Claims);

4. Consideration as to whether the Condition was caused by, or in any way resulted from, the failure of an Owner Party or Owner Parties to perform normal or routine maintenance (any Condition that is determined to be a maintenance issue or that results from improper or inadequate maintenance is not a Covered Claim);

5. Consideration as to whether the Condition was caused by any Owner Party or Parties (any Condition that is caused by an Owner Party or Parties is not a Covered Claim);

27

6.    Recognition that any Condition resulting directly or indirectly from or worsened by changes, additions, alterations or other actions or omissions by any Owner Party or Owner Parties, will not be considered a Covered Claim; and

7.    Any conditions, limitations or exclusions contained in this Limited Warranty.

**SECTION 14**

**DISPUTE RESOLUTION PROCEDURE**


Any and all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial. The Individual Dispute Resolution Agreement is recorded against the Home.

**BY INITIALING IN THE SPACE BELOW, YOU AND BUILDER AGREE TO HAVE ANY DISPUTE DECIDED BY THE ABOVE DISPUTE RESOLUTION PROCEDURE AND YOU AND BUILDER ARE GIVING UP ANY RIGHTS YOU AND BUILDER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU AND BUILDER ARE GIVING UP THEIR RESPECTIVE JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THIS LIMITED WARRANTY. IF YOU OR BUILDER REFUSES TO SUBMIT TO THE DISPUTE RESOLUTION PROCEDURE, AFTER AGREEING TO THIS PROVISION, YOU OR BUILDER MAY BE COMPELLED TO COMPLY WITH THE FOREGOING DISPUTE RESOLUTION PROCEDURE.**

**I/WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES IN ACCORDANCE WITH THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**

**BUYERS' INITIALS: X_____ X_____; BUILDER'S INITIALS: X_____**

**SECTION 15**

**CLAIMS UNDER INDIVIDUAL DISPUTE
RESOLUTION AGREEMENT**

Builder has elected to use certain procedures for the resolution of construction defect claims regarding Your Home, as allowed by the Right to Repair Law ("***Right to Repair Claims Procedure***"). The Right to Repair Claims Procedure is in the Individual Dispute Resolution Agreement that You and Builder have signed.  Your providing Builder with a Service Request Form or any other notice of any alleged Covered Claim under this Limited Warranty **DOES NOT** constitute a "Notice of Claim" under the Individual Dispute Resolution Agreement or a claim under the Right to Repair Act or any law or statute. **THE REPORTING AND NOTICE PROCEDURES SET FORTH IN THIS LIMITED WARRANTY APPLY SOLELY TO COVERED CLAIMS UNDER THIS LIMITED WARRANTY, AND DO NOT IN ANY WAY CONSTITUTE ANY ELECTION TO USE OR COMMENCEMENT OF THE CLAIMS PROCESSES AND DISPUTE RESOLUTION PROCEDURES IN THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.**

## SECTION 16

## EFFECT ON FUTURE OWNERS OF THE HOME


All of Your rights and obligations under the Limited Warranty shall, unless previously released by You or Your successor, fully transfer to each successor owner of the Home, including any mortgagee in possession, for the remainder of the applicable Warranty Term and any transfer shall in no way affect, increase or reduce the coverage under the Limited Warranty for its unexpired term.

If you sell Your Home during the Warranty Term, You agree to give this Limited Warranty to the successor owner to inform the successor owner of warranty rights and to otherwise make it possible for the successor owner to fulfill the successor owner's obligations under the terms of the Limited Warranty and the applicable Maintenance Guidelines.  If You are an owner other than the original purchaser of the Home, You are bound by all the terms and conditions of the Limited Warranty, including, but not limited to, claims procedures and the requirement to submit any disputes that may arise under the Limited Warranty to binding arbitration or judicial reference pursuant to the Individual Dispute Resolution Agreement which is recorded against the Home.  If You are a subsequent purchaser and require a copy of the Individual Dispute Resolution Agreement, you may also contact Builder for a copy.

**YOU AND BUILDER ACKNOWLEDGE THAT THIS LIMITED WARRANTY CONTAINS TERMS, CONDITIONS, LIMITATIONS, WAIVERS, AND EXCLUSIONS THAT AFFECT THE LEGAL RIGHTS OF EACH OF YOU.  BY YOUR SIGNATURE BELOW, BOTH YOU AND BUILDER ACKNOWLEDGE THAT YOU HAVE HAD THE OPPORTUNITY TO OBTAIN THE ADVICE OF LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED WARRANTY.  YOU ACKNOWLEDGE THAT BUILDER HAS ADVISED YOU TO SEEK LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED WARRANTY.   YOU AND BUILDER AGREE TO BE BOUND BY ALL OF THE PROVISIONS OF THIS LIMITED WARRANTY.**

Dated:

BUILDER

Dated:

Buyer

Di Lan Ge

Dated:

Buyer

Xian Feng Gu
Printed Name

Buyer                                          Dated:

Printed Name

Buyer                                          Dated:

Printed Name

Lot:            0088

Address:     129 Oakstone

              Irvine, CA

**RECORDED AT THE REQUEST OF:**

**WHEN RECORDED RETURN TO:**

The New Home Company
15231 Laguna Canyon Rd., Suite 250
Irvine, CA  92618
Attn:  Lori Michel

**INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**

**FOR**

**OLIVEWOOD**

HLO\ Olivewood\ v.1 9/20/2023

**TABLE OF CONTENTS**

**Page**

*ARTICLE I* APPLICABILITY ................................................................. **Error! Bookmark not defined.**

    1.1.    PROPERTY SUBJECT TO INDIVIDUAL DISPUTE RESOLUTION
          AGREEMENT ....................................................... **Error! Bookmark not defined.**
    1.2.    PURPOSE ................................................................ **Error! Bookmark not defined.**

*ARTICLE II* DEFINITIONS ..................................................................... **Error! Bookmark not defined.**

    2.1.    BUSINESS DAYS ................................................... **Error! Bookmark not defined.**
    2.2.    CLAIM PROCESS .................................................. **Error! Bookmark not defined.**
    2.3.    COUNTY ................................................................ **Error! Bookmark not defined.**
    2.4.    DISPUTE DECLARATION ..................................... **Error! Bookmark not defined.**
    2.5.    HOMEOWNER MANUAL........................................ **Error! Bookmark not defined.**
    2.6.    INDIVIDUAL DISPUTE RESOLUTION AGREEMENT **Error! Bookmark not defined.**
    2.7.    ISSUES ................................................................. **Error! Bookmark not defined.**
    2.8.    LIMITED WARRANTY .......................................... **Error! Bookmark not defined.**
    2.9.    MAINTENANCE GUIDELINES ............................... **Error! Bookmark not defined.**
    2.10.   MASTER ASSOCIATION ....................................... **Error! Bookmark not defined.**
    2.11.   MASTER DECLARATION ...................................... **Error! Bookmark not defined.**
    2.12.   MASTER DEVELOPER .......................................... **Error! Bookmark not defined.**
    2.13.   MERCHANT BUILDER ......................................... **Error! Bookmark not defined.**
    2.14.   MERCHANT BUILDER DISPUTE ......................... **Error! Bookmark not defined.**
    2.15.   MERCHANT BUILDER PARTIES ......................... **Error! Bookmark not defined.**
    2.16.   OWNER ................................................................ **Error! Bookmark not defined.**

         2.16.1  INITIAL OWNER ......................... **Error! Bookmark not defined.**

         2.16.2  SUCCESSOR OWNER ................ **Error! Bookmark not defined.**

    2.17.   PROJECT .............................................................. **Error! Bookmark not defined.**
    2.18.   PROPERTY ........................................................... **Error! Bookmark not defined.**
    2.19.   RESIDENCE ......................................................... **Error! Bookmark not defined.**
    2.20.   SUBSEQUENTLY RECORDED DOCUMENT ............. **Error! Bookmark not defined.**
    2.21.   SUPPLEMENTAL DECLARATION .............................. **Error! Bookmark not defined.**
    2.22.   TITLE 7 ................................................................ **Error! Bookmark not defined.**
    2.23.   TITLE 7 CLAIM ................................................... **Error! Bookmark not defined.**

*ARTICLE III* OWNER ACKNOWLEDGMENT OF NOTICES ............... **Error! Bookmark not defined.**

    3.1.    STATUTORY STANDARDS ................................... **Error! Bookmark not defined.**
    3.2.    CLAIM PROCESS .................................................. **Error! Bookmark not defined.**
    3.3.    AGENT ................................................................ **Error! Bookmark not defined.**

*ARTICLE IV* WARRANTIES AND MAINTENANCE ............................ **Error! Bookmark not defined.**

    4.1.    LIMITED WARRANTY .......................................... **Error! Bookmark not defined.**
    4.2.    MANUFACTURED PRODUCTS .................................. **Error! Bookmark not defined.**

4.3.    HOMEOWNER MANUAL .............................................. **Error! Bookmark not defined.**
4.4.    DUTY TO MAINTAIN ................................................... **Error! Bookmark not defined.**

*ARTICLE V* CLAIM PROCESSES AND DISPUTE RESOLUTION PROCEDURES**Error! Bookmark not defined.**

5.1.    CUSTOMER SERVICE ................................................. **Error! Bookmark not defined.**
5.2.    CLAIM PROCESS OR MEDIATION: ............................ **Error! Bookmark not defined.**

    5.2.1    TITLE 7 CLAIM............................ **Error! Bookmark not defined.**

    5.2.2    OTHER CLAIM ............................ **Error! Bookmark not defined.**

    5.2.3    MEDIATION FAILS TO SETTLE CLAIM**Error! Bookmark not defined.**

5.3.    MANDATORY BINDING ARBITRATION ................... **Error! Bookmark not defined.**
5.4.    JUDICIAL REFERENCE ............................................. **Error! Bookmark not defined.**
5.5.    DISPUTES EXEMPT FROM THIS INDIVIDUAL DISPUTE RESOLUTION
         AGREEMENT ............................................................. **Error! Bookmark not defined.**
5.6.    DISPUTES TO BE RESOLVED INDEPENDENTLY ..... **Error! Bookmark not defined.**

*ARTICLE VI* AMENDMENT AND ENFORCEMENT ............................ **Error! Bookmark not defined.**

6.1.    AMENDMENTS ......................................................... **Error! Bookmark not defined.**
6.2.    ENFORCEMENT ....................................................... **Error! Bookmark not defined.**
6.3.    THIRD PARTY BENEFICIARIES ............................... **Error! Bookmark not defined.**

*ARTICLE VII* MISCELLANEOUS PROVISIONS ............................... **Error! Bookmark not defined.**

7.1.    BINDING................................................................. **Error! Bookmark not defined.**
7.2.    CONFLICT ............................................................... **Error! Bookmark not defined.**
7.3.    CONSTRUCTION OF PROVISIONS ........................... **Error! Bookmark not defined.**
7.4.    EXHIBITS ............................................................... **Error! Bookmark not defined.**
7.5.    MORTGAGE PROTECTION ...................................... **Error! Bookmark not defined.**
7.6.    REDISTRIBUTION OF DOCUMENTS ........................ **Error! Bookmark not defined.**
7.7.    SEVERABILITY OF PROVISIONS ............................. **Error! Bookmark not defined.**
7.8.    SUCCESSOR STATUTES ........................................... **Error! Bookmark not defined.**
7.9.    TERM ..................................................................... **Error! Bookmark not defined.**

# INDIVIDUAL DISPUTE RESOLUTION AGREEMENT
## FOR
## OLIVEWOOD

THIS INDIVIDUAL DISPUTE RESOLUTION AGREEMENT FOR OLIVEWOOD (*"Individual Dispute Resolution Agreement"*) is entered into by and between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (*"Merchant Builder"*), and _____ (*"Initial Owner"*) as part of the purchase of the Residence by Initial Owner from Merchant Builder.  Merchant Builder and Owner are collectively referred to as the *"parties"* and individually as a *"party."*

## ARTICLE I
## APPLICABILITY

1.1.  **PROPERTY SUBJECT TO INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**:  Merchant Builder has agreed to transfer or has conveyed to Initial Owner the following described real property (*"Property"*) situated in the City of Irvine, County of Orange, State of California, described as follows:

Lot ___ of Tract No. 19176 as shown on a map recorded in Book 1000, Pages 27 through 37, inclusive, of the Miscellaneous Maps of Orange County, California.

1.2.  **PURPOSE**:  This Individual Dispute Resolution Agreement establishes covenants and agreements between Merchant Builder and (a) Initial Owner and (b) each Successor Owner of the Property.  It is the intention of the parties to record this document against the Property at close of escrow for the transfer of title from Merchant Builder to Initial Owner.  This Individual Dispute Resolution Agreement is provided to Initial Owner in compliance with the Dispute Declaration, a copy of which has been provided by Merchant Builder to Initial Owner.  This Individual Dispute Resolution Agreement is part of the consideration for the bargained-for purchase of the Property by Initial Owner from Merchant Builder.  The Property shall be held, conveyed, hypothecated, encumbered, leased, rented, used, occupied and improved subject to the terms of this Individual Dispute Resolution Agreement.  All of the agreements, notices and obligations stated in this Individual Dispute Resolution Agreement shall run with the Property and shall inure to the benefit of and be binding on each and every Successor Owner of the Property.

## ARTICLE II
## DEFINITIONS

Unless otherwise defined or unless the context clearly requires a different meaning, the terms used in this Individual Dispute Resolution Agreement shall have the meanings specified in this Article.   All capitalized terms in this Individual Dispute Resolution Agreement which are not defined in this Article or elsewhere in this Individual Dispute Resolution Agreement shall have the same meanings given them in the Dispute Declaration or the Master Declaration.

2.1.  **BUSINESS DAYS**:  The term *"Business Days"* shall mean Monday through Friday, except for Federal or State holidays.

2.2.  **CLAIM PROCESS**:  The term *"Claim Process"* shall mean those non adversarial procedures set forth in Chapter 4 of Title 7.

2.3.    **COUNTY**:  The term *"County"* shall mean Orange County, California.

2.4.    **DISPUTE DECLARATION**:  The term *"Dispute Declaration"* shall mean the Declaration of Dispute Resolution Procedures for Olivewood recorded against the Property on _____, as Instrument No. _____, in the Official Records of the County, and any Subsequently Recorded Document which amends or supplements the Dispute Declaration.

2.5.    **HOMEOWNER MANUAL**:  The term *"Homeowner Manual"* shall mean the Homeowner Manual provided to Owner by Merchant Builder or the other Merchant Builder Parties which includes important information regarding the Property, including guidelines for maintenance, care and use of the Property.

2.6.    **INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**:  The term *"Individual Dispute Resolution Agreement"* shall mean this Individual Dispute Resolution Agreement and any Subsequently Recorded Document which amends this Individual Dispute Resolution Agreement.

2.7.    **ISSUES**:  The term *"Issues"* shall mean alleged deficiencies in construction, design, specifications, surveying, planning, supervision, testing, or observation of construction or any substandard condition related in any way to the Residence, the Property or the Project.

2.8.    **LIMITED WARRANTY**:  The term *"Limited Warranty"* shall mean the Limited Warranty applicable to the Residence attached to this Individual Dispute Resolution Agreement as **Exhibit "A"**.

2.9.    **MAINTENANCE GUIDELINES**:  The term *"Maintenance Guidelines"* shall mean all maintenance obligations, guidelines, schedules and practices communicated to Owner in writing by Merchant Builder or the other Merchant Builder Parties, including, without limitation all product manufacturers' use, maintenance and care instructions provided to Owner by Merchant Builder or the other Merchant Builder Parties, as well as commonly accepted maintenance practices.  Such commonly accepted maintenance practices include, but are not limited to, those set forth in the Homeowner Manual and those established by product manufacturers.

2.10.    **MASTER ASSOCIATION**:  The term *"Master Association"* shall mean Portola Springs Community Association, a California nonprofit mutual benefit corporation, established pursuant to the Master Declaration.

2.11.    **MASTER DECLARATION**:  The term *"Master Declaration"* shall mean the document entitled "Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs," recorded in the Official Records of the County, as amended or restated from time to time.

2.12.    **MASTER DEVELOPER**:  The term *"Master Declaration"* shall mean the "Declarant" defined in the Master Declaration.

2.13.    **MERCHANT BUILDER**:  The term *"Merchant Builder"* shall mean The New Home Company Southern California LLC, a Delaware limited liability company, and its successors and assigns.

2.14.    **MERCHANT BUILDER DISPUTE**:  The term *"Merchant Builder Dispute"* shall mean any claim, issue or controversy that arises from or is related in any way to (i) the Project, (ii) the Property, (iii) the Residence or (iv) the relationship between Initial Owner and Merchant Builder, whether contractual, statutory or in tort, including without limitation, claims, issues or controversies that arise from or are related to the purchase, sale, condition, design, construction or materials used in construction

of any portion of the Project, the Property or the Residence, the agreement between Merchant Builder and Owner to purchase the Residence or any related agreement, a Limited Warranty, disclosures, or Issues, including without limitation the following:  (a) a Title 7 Claim; (b) any disagreement as to whether conditions that are the subject of a Title 7 Claim have been properly repaired; (c) any disagreement as to the value of repairing damages which are the subject of a Title 7 Claim; (d) the cost of repairing damage caused by the repair efforts, the cost to remove or replace an improper repair, and any alleged relocation expenses, storage expenses, lost business income, investigation costs and all other fees and costs recoverable by contract or statute as a result of a Title 7 Claim; and (e) any disagreement concerning the timeliness of Merchant Builder's performance or Owner's notification under a Limited Warranty or the Claim Process.  Notwithstanding anything to the contrary in this Individual Dispute Resolution Agreement, any and all Disputes (as defined in Section 14 of Article V of the Master Declaration) between or among the Master Association, Owner and/or any of the Developer Parties (including the Master Developer) that (i) arises out of, or relates to, or in any way is connected with the Master Association Documents or the Community, (ii) involves a claim  for damage to the Master Association Property or Maintenance Area or damage to the Property integrally related to any damage to the Master Association Property and/or Maintenance Area, or (iii) involves the Master Developer, the Master Association, the Master Association Property and/or a Maintenance Area (collectively, the *"Master Disputes"*) shall be resolved solely in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration, and not the alternative dispute resolution procedures set forth herein.

2.15.   **MERCHANT BUILDER PARTIES**:  The term *"Merchant Builder Parties"* shall mean Merchant Builder and its partners, members or other principals and their respective officers, agents, employees, affiliated parent and subsidiary companies, successors and assigns, design centers, subcontractors, design professionals, engineers, inspectors and material suppliers who provided labor, services or materials to any portion of the Project.

2.16.   **OWNER**:  The term *"Owner"* shall mean the person or entity that holds record fee title to the Property after the initial conveyance of the Property by Merchant Builder, including the Initial Owner and any Successor Owner.  The term "Owner" shall include a contract purchaser (vendee) under an installment land contract but shall exclude any person having an interest in the Property merely as security for performance of an obligation.

2.16.1  **INITIAL OWNER**:  The term *"Initial Owner"* shall mean the undersigned Owner who initially acquires or acquired title to the Property from Merchant Builder.

2.16.2  **SUCCESSOR OWNER**:  The term *"Successor Owner"* shall mean any person or entity who acquires title to the Property from an Initial Owner or from a Successor Owner.

2.17.   **PROJECT**:  The term *"Project"* shall mean the residential development in which the Property is located.   The Project is located within the master community of Portola Springs (*"Community"*).

2.18.   **PROPERTY**:  The term *"Property"* shall mean the real property described in Section 1.1 above.

2.19.   **RESIDENCE**:  The term *"Residence"* shall mean the single family residential dwelling situated on the Property and all Improvements on the Property, excluding any Improvements which are required to be maintained by the Master Association in accordance with the Master Declaration or a document annexing real property to the Master Declaration.

entity in the Merchant Builder Dispute is not insubstantial; provided, however, that if the Master Developer and/or the Master Association is a party to any Merchant Builder Dispute under this Individual Dispute Resolution Agreement, such Merchant Builder Dispute shall be resolved in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration. The parties shall cooperate in good faith and shall diligently perform such acts as may be necessary to ensure that all necessary and appropriate parties are included in the arbitration proceedings.

       5.3.4    **Administration of Proceedings**.  The arbitration proceedings shall be conducted by and in accordance with the commercial arbitration rules of JAMS, or if JAMS is unable to conduct the arbitration it shall be conducted by and in accordance with the commercial arbitration rules of the American Arbitration Association (***"Service"***).

       5.3.5    **Statutes of Limitation**.  Except for procedural issues, and to the extent not inconsistent with the Federal Act, the arbitration proceedings, the ultimate decisions of the arbitrator, and the arbitrator shall be subject to and bound by existing California case and statutory law including, but not limited to, applicable statutes of limitation established in Title 7.  Arbitration must be initiated prior to the expiration of the applicable statutes of limitation.

       5.3.6    **Selection of Arbitrator**.  The arbitration proceedings shall be conducted by one (1) qualified neutral and impartial arbitrator who shall be selected in accordance with the rules of the Service no later than thirty (30) days following the date one party delivers to the other party a demand for arbitration.  The term ***"qualified"*** for purposes of this Paragraph shall mean a retired judge who has experience with the laws governing residential real estate development and construction or an attorney who has actively practiced law in California for at least fifteen (15) years and who has experience with the laws governing residential real estate development and construction.

       5.3.7    **Authority of Arbitrator**.  The arbitrator shall have the power to hear and dispose of motions, including  motions relating to provisional remedies, demurrers, motions to dismiss, motions for judgment on the pleadings and summary judgment and/or adjudication motions, in the same manner as a trial court judge.  In addition, the arbitrator shall have the power to summarily adjudicate issues of fact or law, including the availability of remedies, even if the issue adjudicated does not dispose of an entire cause of action or defense.  The arbitrator shall have the power to grant provisional remedies including preliminary injunctive relief.  Prior to the selection of the arbitrator, any party shall have the right, but not the obligation, to petition the Superior Court of the County for any necessary provisional remedies.  However, after obtaining any provisional remedies (pending selection of the arbitrator) the entire matter shall be referred to the Service for all purposes and the Superior Court shall have no further jurisdiction to monitor or enforce the provisional remedies or to make further determinations or awards or to issue additional provisional remedies.  The Service shall have the sole power to enforce, extend, modify or vacate any such provisional remedies.

       5.3.8    **Discovery**.  All discovery shall be permitted by the arbitrator at the arbitrator's reasonable discretion upon a showing of good cause or based on the agreement of the parties.  The arbitrator shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge.  At a minimum, the parties will exchange all documents in their possession, custody or control which are either relevant or reasonably calculated to lead to the discovery of admissible evidence and each party shall be entitled to at least two percipient witness depositions and the depositions of all designated experts.

       5.3.9    **Full Disclosure**.  Each party shall make, in good faith, a full disclosure of all issues and evidence to each other party prior to the hearing.  Any evidence or information that the arbitrator determines was unreasonably withheld shall be inadmissible by the party who withheld it.  The initiating party shall be the first to disclose all of the following, in writing, to each other party and to the

2.20.   **SUBSEQUENTLY RECORDED DOCUMENT**:  The term *"Subsequently Recorded Document"* shall mean each of the following documents which is recorded in the Official Records of the County:  (i) an amendment to the Dispute Declaration, (ii) an amendment to an Individual Dispute Resolution Agreement, (iii) a Supplemental Declaration or (iv) an amendment to a Supplemental Declaration.

2.21.   **SUPPLEMENTAL DECLARATION**:  The term *"Supplemental Declaration"* shall mean any instrument recorded in the County which extends the provisions of the Dispute Declaration to other real property and any Subsequently Recorded Document which amends a Supplemental Declaration.

2.22.   **TITLE 7**:  The term *"Title 7"* shall mean Title 7, Part 2 of Division 2 of the California Civil Code (Section 895 et seq.) as amended from time to time.

2.23.   **TITLE 7 CLAIM**:  The term *"Title 7 Claim"* shall mean any claim, issue or controversy that arises from or is related in any way to any alleged violation of the standards set forth in California Civil Code Sections 895 through 897.

| *ARTICLE III* |
|:---:|
| **OWNER ACKNOWLEDGMENT OF NOTICES** |

## NOTICES

**NOTICE:  Merchant Builder has elected to be subject to Chapter 2 of Title 7 ("*Title 7*"), Part 2 of Division 2 of the California Civil Code (Section 896 et seq.).  See Section 3.1.**

**NOTICE:  Merchant Builder intends to utilize the non adversarial procedures set forth in Chapter 4 of Title 7 (California Civil Code Sections 910 et seq.).  See Section 3.2.**

**NOTICE:    The name and address of the agent Merchant Builder has designated for service of notice of claims pursuant to Title 7 is set forth in Section 3.3 below.**

Initial Owner's Initials _____  _____

3.1.   **STATUTORY STANDARDS**:    Chapter 2 of Title 7 provides standards for the installation, construction, design, specifications, surveying, planning, supervision, testing, or observation of construction of the Residence.    A complete copy of Chapter 2 of Title 7 is attached to the Dispute Declaration as **Exhibit "B-2."**

3.2.   **CLAIM PROCESS**:    Chapter 4 of Title 7 establishes non adversarial procedures to address claims for damages arising from or relating to Issues.  California Civil Code Section 914 provides that builders must notify buyers whether they intend to engage in the non adversarial procedures set forth in Chapter 4 of Title 7 or to enforce alternative non adversarial procedures.  Merchant Builder hereby notifies Owner that it intends to utilize the non adversarial procedures set forth in Chapter 4 of Title 7 (referred to in this Individual Dispute Resolution Agreement as the *"Claim Process"*).    The Claim Process impacts the legal rights of Owner.

**By initialing below Initial Owner acknowledges (a) the existence of Chapter 4 of Title 7, (b) that Initial Owner has received a copy of Chapter 4 of Title 7 which is attached to the Dispute Declaration as Exhibit "B-4," and a copy of all of Title 7 which is attached to the Dispute Declaration as Exhibit "B" and (c) that the Claim Process impacts the legal rights of Initial Owner**

**and Successor Owners.  By initialing in the space below, Initial Owner is giving up its judicial rights to discovery and appeal, and if Initial Owner refuses to submit to arbitration after entering into this Individual Dispute Resolution Agreement, Initial Owner may be compelled to arbitrate under the Federal Arbitration Act and the California Arbitration Act, to the extent the California Arbitration Act is consistent with the Federal Arbitration Act.**

**Sales Representative's Initials _____                     Initial Owner's Initials _____  _____**

3.3.    **AGENT**:  Merchant Builder hereby notifies Owner that Merchant Builder's agent for notice (**"Merchant Builder's Agent for Notice"**) is:

The New Home Company
15231 Laguna Canyon Rd., Suite 250
Irvine, CA  92618
Attn:  Miek Harbur

Owner may commence the Claim Process by filing a claim with Merchant Builder's Agent for Notice at the address set forth above via certified mail, overnight mail or personal delivery to Merchant Builder's Agent for Notice.  If Merchant Builder changes the identity or address of Merchant Builder's Agent for Notice in the future, Merchant Builder will notify the Secretary of State of the State of California (or the governmental agency then responsible for monitoring agents for service of process) of any such change and Owner may obtain the identity and address of Merchant Builder's Agent for Notice by inquiry to the Secretary of State of the State of California (or the governmental agency then responsible for monitoring agents for service of process).

**By initialing below Initial Owner and Merchant Builder's Sales Representative acknowledge the name and address of Merchant Builder's Agent for Notice:**

**Sales Representative's Initials _____                     Initial Owner's Initials _____  _____**

**ARTICLE IV
WARRANTIES AND MAINTENANCE**

4.1.    **LIMITED WARRANTY**:  Merchant Builder has provided Initial Owner with the Limited Warranty applicable to the Residence, in the form attached hereto as **Exhibit "A"**.  The Limited Warranty shall, unless previously released, fully transfer to each Successor Owner of the Residence, including any mortgagee in possession, for the remainder of the applicable warranty term as set forth in the Limited Warranty.

4.2.    **MANUFACTURED PRODUCTS**:  Merchant Builder has made available for Initial Owner's review maintenance procedures, maintenance schedules, maintenance recommendations, and manufacturer limited warranty information (**"Product Information"**) for Manufactured Products (as defined below) applicable to the Residence.  *For purposes of this Section, a "Manufactured Product" means a product that is completely manufactured off site, all appliances, pieces of equipment, or other items installed in the Residence that are consumer products for the purposes of the Magnuson Moss Warranty Act (15 U.S.C. Section 2301 et. seq.) and solar energy systems, including inverters*.  The Product Information will be delivered to Initial Owner at the close of escrow.  The Product Information available for review by Initial Owner before the close of escrow may be in sample form or otherwise different than the Product Information actually provided to Initial Owner at the close of escrow.  The actual Product Information provided at the close of escrow shall control.  The Product Information for the Manufactured Products has been created by the manufacturers or suppliers of the Manufactured Products

and not by Merchant Builder.  Merchant Builder has not reviewed or approved and does not endorse, warrant or guaranty the Product Information or the Manufactured Products to which the Product Information applies.  In order to assure that the Manufactured Products function properly throughout their useful life, and in order to maintain any warranty provided by the manufacturer for the Manufactured Products, Owner must comply with the recommendations and requirements included in the Product Information.  Owner shall provide the Product Information to its Successor Owner.

**TO THE FULLEST EXTENT PERMITTED BY LAW, MERCHANT BUILDER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO MANUFACTURED PRODUCTS (INCLUDING CONSUMER PRODUCTS) INSTALLED IN OR AROUND THE RESIDENCE. DEFECTS IN MANUFACTURED PRODUCTS ARE NOT COVERED UNDER MERCHANT BUILDER'S LIMITED WARRANTY AND OWNER'S SOLE AND EXCLUSIVE REMEDY FOR DEFECTS IN MANUFACTURED PRODUCTS IS AGAINST THE PRODUCT MANUFACTURER.**

4.3.    **HOMEOWNER MANUAL**:  Merchant Builder has provided Owner with a Homeowner Manual which includes maintenance guidelines for the Property.  Owner must perform all required and recommended inspection and maintenance procedures set forth in the Homeowner Manual and must provide a copy of the Homeowner Manual to its Successor Owner.

4.4.    **DUTY TO MAINTAIN**:  Owner agrees to maintain Owner's Residence in accordance with the Homeowner Manual and all Maintenance Guidelines.

**ARTICLE V**
**CLAIM PROCESSES AND DISPUTE RESOLUTION PROCEDURES**

5.1.    **CUSTOMER SERVICE**:  Merchant Builder has established a Customer Service Department for all Owners.  The procedures for processing a request for service (***"Service Request"***) through the Customer Service Department are set forth in the Limited Warranty and are available online at CustomerCareNHC.com (or by following the links at Merchant Builder's general website for "service", "customer care" or "warranty").  Owners should also consider the Customer Service Department a resource both for general information and to answer specific questions regarding construction of the Owner's Residence. **A Service Request is not a claim pursuant to the Claim Process**. If Owner's claim is not resolved under the Limited Warranty and Owner wishes to initiate a claim, Owner must follow the steps set forth in Section 5.2.

5.2.    **CLAIM PROCESS OR MEDIATION:**

5.2.1    **TITLE 7 CLAIM**:  If the customer service process does not resolve a Title 7 Claim to the satisfaction of Owner, Owner shall file a written Notice of Claim in accordance with the provisions of California Civil Code Section 910 with Merchant Builder's Agent for Notice at the address provided in Section 3.3 above.  The Notice of Claim must (i) provide Owner's name, address and telephone number (or the information necessary to use an alternative method of contact such as facsimile or e-mail) and (ii) describe the Title 7 Claim in sufficient detail to enable Merchant Builder to determine the location, nature and extent of the Title 7 Claim and what area or components of the Residence are involved.

5.2.2    **OTHER CLAIM**:  If a Merchant Builder Dispute does not involve a Title 7 Claim (***"Other Claim"***) and is not resolved to the satisfaction of Owner, Owner shall file a written Notice of Claim with Merchant Builder's Agent for Notice at the address provided by Section 3.3 above.  The Notice of Claim must (i) provide Owner's name, address and telephone number (or the information

necessary to use an alternative method of contact such as facsimile or e-mail), (ii) describe the Other Claim in sufficient detail to enable Merchant Builder to determine the location, nature and extent of the Other Claim, and (iii) include a request for mediation.  Merchant Builder and Owner shall, in good faith, attempt to resolve the Other Claim by mediation in accordance with this Section.

(a)     **Mediator**.  The mediation shall be conducted by a single neutral and impartial mediator employed by Judicial Arbitration and Mediation Services, Inc. ("*JAMS*") or the American Arbitration Association, in accordance with the rules established by the selected service ("*Mediation Provider*").  Merchant Builder shall have the right to select the mediator by notifying Owner in writing within ten (10) Business Days following the date of service of the Notice of Claim.  If Merchant Builder selects the mediator, Merchant Builder shall pay any filing fees required by the Mediation Provider and the first four (4) hours of the mediator's fees.  If the mediation lasts more than four (4) hours, any additional fees shall be split equally between Owner and Merchant Builder.  At Owner's sole option, Owner may agree to share the filing fees required by the Mediation Provider and the fees of the mediator, including the first four (4) hours, equally with Merchant Builder.  If Owner so agrees, then Owner and Merchant Builder shall jointly select the mediator.  If the parties cannot agree on a mediator within fourteen (14) days following the date of service of the Notice of Claim, the Mediation Provider shall select the mediator.  No person with any financial or personal interest in the mediation's result shall serve as a mediator, except by the written consent of the parties.  Prior to accepting any appointment, the prospective mediator shall disclose any circumstances likely to create a presumption of bias or prevent a prompt commencement of the mediation process.

(b)     **Location of Mediation**.  The mediation shall be held in the County or such other place as is mutually acceptable to the parties.

(c)     **Additional Parties**.  Merchant Builder shall have the right to include other persons or entities in the mediation, including any of its subcontractors, material suppliers, design professionals, individual product manufacturers, warranty company representative and insurance carrier representatives.

(d)     **Refusal to Participate**.  If either party refuses to participate in the mediation, then the other party may initiate arbitration proceedings as provided in Section 5.3.

(e)     **Mediation Session(s)**.  The mediation session(s) shall be commenced as quickly as reasonably practical in the discretion and judgment of the mediator but not later than thirty (30) days following the date of service of the Notice of Claim.  The parties shall cooperate in good faith with each other and with the mediator and shall provide all documents reasonably required by the mediator to be provided.  Without mutual agreement of Owner and Merchant Builder, the mediation shall not exceed four (4) hours.

(f)     **No Attorneys' Fees**.  The parties shall be solely responsible for their own attorneys' fees and no party shall be entitled to an award of its attorneys' fees.  Nothing herein shall be construed to modify or abrogate any duty to defend and/or indemnify another party pursuant to the terms of a contract between any such parties.

(g)     **Confidentiality**.  The entire mediation proceedings shall be maintained in the strictest confidence and documentary or demonstrative evidence or testimony introduced or revealed to the mediator or other party during the mediation shall be inadmissible in any subsequent proceeding including litigation, arbitration and judicial reference.  The provisions of California Evidence Code Section 1115 et seq. shall be applicable to the mediation.

**5.2.3    MEDIATION FAILS TO SETTLE CLAIM**:  If the mediation process provided in Section 5.2.2 fails to settle the Other Claim, either party may initiate arbitration proceedings as provided in Section 5.3.

5.3.    **MANDATORY BINDING ARBITRATION**:  Before Owner institutes arbitration proceedings as provided in this Section 5.3 involving a Title 7 Claim, Owner must first commence the Claim Process and proceed, in good faith, to resolve the claim using the Claim Process.  Before Owner or Merchant Builder institutes arbitration proceedings which do not involve a Title 7 Claim, Owner or Merchant Builder shall, in good faith, attempt to resolve the Other Claim by mediation in accordance with the mediation procedures set forth in Section 5.2.2 above.  The mandatory arbitration procedures below shall apply to all post-closing Merchant Builder Disputes between Merchant Builder and Initial Owner and all Merchant Builder Disputes between Merchant Builder and Successor Owners.  If negotiations, mediation or other non-binding dispute resolution procedures, including the Claim Process, fail to resolve any Merchant Builder Dispute between Owner and Merchant Builder Parties, then the Merchant Builder Dispute shall be resolved by neutral, binding arbitration as follows:

5.3.1    **Mandatory Binding Arbitration**.  Any Merchant Builder Dispute between Owner and any of the Merchant Builder Parties which is not resolved by negotiations, mediation or other non-binding dispute resolution procedures as set forth herein, including the Claim Process, shall be resolved by neutral, binding arbitration governed by the Federal Arbitration Act (9 U.S.C. §§1-16) ("*Federal Act*") and not by any court action except as provided for judicial review of arbitration proceedings under the Federal Act.  A demand for arbitration shall be delivered in accordance with the notice provision provided herein by the party desiring to arbitrate such Merchant Builder Dispute to the other party within thirty (30) days after the conclusion of either the Title 7 Claim or mediation of an Other Claim, as applicable.

5.3.2    **Federal Arbitration Act**.  The construction of the Residences and the Project involved interstate commerce and therefore the arbitration procedures specified in this Section 5.3 are to be interpreted and enforced as authorized by the Federal Act, which is designed to encourage use of alternative methods of dispute resolution that avoid costly and potentially lengthy court proceedings.  The Residences and the Project were constructed with materials and products manufactured throughout the United States which have been shipped to the Project for installation and involved communications by interstate mail and telephone with out-of-state manufacturers, design professionals, contractors and their employees.  The shipment of such materials and products across state lines cause the products and materials to enter into the stream of interstate commerce and become subject to the Interstate Commerce Clause (Article I, Section VIII of the United States Constitution) and ensuing federal laws.  Interpretation and application of the procedures set forth in this Section 5.3 shall conform to any applicable federal court rules and decisions interpreting and applying the Federal Act.  The arbitration proceedings shall be conducted pursuant to the Federal Act and, to the extent not inconsistent, the procedures set forth in this Section 5.3.  In addition, except as set forth herein, and to the extent it is not inconsistent with the Federal Act, the arbitration shall be conducted pursuant to Title 9 of the California Code of Civil Procedure (Section 1280 et seq.).  References to California procedural law are for guidance only and shall not be construed as a waiver of any rights or duties of the parties under the Federal Act or the right of the parties to have the procedures set forth in this Section 5.3 interpreted and enforced under the Federal Act.  If any party seeks review by a court of the enforceability of any of the procedures set forth or referenced herein (notwithstanding the provisions herein making that issue one to be resolved by the arbitrator), the exclusive jurisdiction and venue for any such review shall be the Superior Court for the County.

5.3.3    **Other Parties**.  Merchant Builder and the other Merchant Builder Parties have the sole and absolute right, in their discretion, to join any person or entity who is not a party to the arbitration proceedings if the presence of such person or entity is required or is necessary for complete relief to be accorded in the arbitration proceedings or if the interest or responsibility of such person or

arbitrator: (i) an outline of the issues and its position on each such issue; (ii) a list of all witnesses the party intends to call; and (iii) copies of all written reports and other documentary evidence, whether written or not or contributed to by its retained experts (collectively "***Outline***"). The initiating party shall submit its Outline to each other party and the arbitrator within thirty (30) days of the final selection of the arbitrator. Each responding party shall submit its written response as directed by the arbitrator. If the Merchant Builder Dispute involves a Title 7 Claim, then Owner shall be the first party to submit its written Outline, list of witnesses, and reports/documents and shall include a detailed description of the nature and scope of the alleged violation(s), its proposal for repair or restoration, all repairs made to date and an estimate of the cost of repair/restoration together with the calculations used to derive the estimate.

        5.3.10  **Title 7 Claim and Measure of Damages**. If the Merchant Builder Dispute involves a Title 7 Claim, the arbitrator shall determine whether a violation exists and whether any Merchant Builder Parties are responsible for the violation. If the arbitrator finds that Merchant Builder Parties are responsible for a Title 7 Claim, the arbitrator shall determine the scope of any repair and the reasonable value of repairing the nonconformity, based on evidence presented to him by the parties and their experts. The reasonable value of repairing any nonconformity shall be limited to the lesser of (i) the repair costs, or (ii) the diminution in current value of the real property caused by the nonconformity, subject to the personal use exception as developed under common law. For all Title 7 Claims, Owner is only entitled to damages for the reasonable value of repairing the nonconformity, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure to meet the applicable standards, the reasonable cost of removing and replacing any improper repair by Merchant Builder, reasonable relocation and storage expenses, lost business income if Owner's Residence or the Property was used as a principal place of business licensed to be operated within the Residence or the Property, reasonable and necessary investigative costs for each established violation, and all other costs or fees recoverable by contract or statute. If any of the damages described above are awarded to Owner in any other cause of action, the damages awarded pursuant to this Section 5.3.10 shall be reduced by the amounts recovered in such other causes of action. Merchant Builder Parties shall not be responsible for, and shall be excused from, any obligation, damage, loss or liability to the extent that Merchant Builder Parties can demonstrate any of the affirmative defenses set forth in California Civil Code Section 945.5.

        5.3.11  **Hearing**. The arbitration shall be held in the County. The arbitration shall be conducted as promptly as possible after giving due consideration to the complexity of the issues, the number of parties and necessary discovery and other relevant matters. The arbitration shall be conducted as informally as possible. California Evidence Code Section 1152 *et seq.* shall apply for the purpose of excluding offers, compromises, and settlement proposals from evidence, unless there is agreement by all parties as to admissibility. The arbitrator shall be the sole judge of the admissibility of and the probative value of all evidence offered and is authorized to provide all legally recognized remedies whether in law or equity, except as otherwise limited in this Section 5.3. The cost of an interpreter shall be borne by the party requiring the services of the interpreter in order to be understood by the arbitrator and the expenses of witnesses shall be borne by the party producing such witnesses.

        5.3.12  **Decision**. The decision of the arbitrator shall be binding on the parties and may be entered as a judgment in any court of the State of California that has jurisdiction and venue. The arbitrator shall (i) cause a complete record of all arbitration proceedings to be prepared similar to those kept in the Superior Court, (ii) try all issues of both fact and law, and (iii) issue a written statement of decision consistent with that described in California Code of Civil Procedure Section 643 which shall specify the facts and law relied upon in reaching the arbitrator's decision within twenty (20) days after the close of testimony.

        5.3.13  **Fees and Costs**. Merchant Builder Parties shall advance any fee required by the Service to initiate the arbitration proceedings. Without limiting the generality of the foregoing, the total

cost of the arbitration proceedings, including the fee of the arbitrator, the initiation fee advanced by Merchant Builder Parties and other fees of the Service and any related costs and fees incurred by the Service (such as experts and consultants retained by it), shall be borne one-half by Owner and one-half by Merchant Builder Parties, regardless of the outcome. The arbitrator shall not award attorneys' fees to any party and the parties shall each be solely responsible for their own attorneys' fees. Nothing herein shall be construed to modify or abrogate any duty to defend and/or indemnify a third party pursuant to the terms of a contract between any such parties. A stenographic record of the hearing shall be made which shall remain confidential except as may be necessary for post-hearing motions and appeals. The cost of the record shall be borne one-half by Owner and one-half by Merchant Builder Parties, regardless of the outcome. Should any party refuse or fail to pay its pro-rata share, the remaining parties may pay such share, and the party or parties which pay such extra share shall be awarded such extra costs by the arbitrator in the arbitrator's decision. Notwithstanding the foregoing, under all circumstances the parties shall be responsible for their own attorneys' fees and expert witness costs, subject only to reallocation by any applicable statutory cost-shifting mechanisms. This provision does not modify any provision of any contract between Merchant Builder Parties and any third party requiring indemnification or establishing a different allocation of costs between Merchant Builder Parties and such third party.

5.4.    **JUDICIAL REFERENCE**:  If, and only if, for any reason arbitration cannot be legally used to resolve a Merchant Builder Dispute between Owner and Merchant Builder under Section 5.3, or the arbitration provisions provided for in Section 5.3 above are held not to apply or determined to be invalid, void or unenforceable in whole or material part for any reason preventing their use, then the Merchant Builder Dispute shall be submitted for resolution to general judicial reference within thirty (30) days of judicial determination that the arbitration provision is invalid, void or unenforceable, as set forth below:

5.4.1    **Judicial Reference**.  Merchant Builder Disputes submitted to general judicial reference pursuant to California Code of Civil Procedure Sections 638 through 645.1, inclusive, or any successor statutes thereto, shall be subject to the following terms and conditions:

5.4.1.1    **Cooperation**.  The parties shall cooperate in good faith to ensure that all necessary and appropriate parties are included in the judicial reference proceedings.

5.4.1.2    **Fees and Costs**.  All fees and costs of the judicial reference proceedings shall be borne in the same manner as arbitration.

5.4.1.3    **Referee**.  The general referee shall be chosen from the panel of referees provided by Judicial Arbitration and Mediation Services, Inc. (**"JAMS"** as previously defined) and shall have the authority to try all issues, whether of fact or law, and to report a statement of decision to the court.

5.4.1.4    **Proceedings**.  The parties shall use the procedures adopted by JAMS for judicial reference (or any other entity offering judicial reference dispute resolution procedures as may be mutually acceptable to the parties), provided that the following rules and procedures shall apply in all cases unless the parties agree otherwise:

(a)    The judicial reference proceedings shall be heard in the County.

(b)    The referee must be a neutral and impartial retired judge or a licensed attorney with substantial experience in relevant real estate matters.

(c)     Any dispute regarding the selection of the referee shall be resolved by JAMS or the entity providing the reference services, or, if no entity is involved, by the court with appropriate jurisdiction.

(d)     The referee may require one or more pre-hearing conferences.

(e)     The parties shall be entitled to discovery in accordance with the Code of Civil Procedure, and the referee shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge.

(f)     A stenographic record of the reference trial shall be made, provided that the record shall remain confidential except as may be necessary for post-hearing motions and any appeals.

(g)     The referee's statement of decision shall contain findings of fact and conclusions of law to the extent applicable and shall be issued within twenty (20) days after the hearing has been concluded.

(h)     The referee shall have the authority to rule on all post-hearing motions in the same manner as a trial judge.

(i)     The statement of decision of the referee upon all of the issues considered by the referee is binding upon the parties, and upon filing of the statement of decision with the clerk of the court, or with the judge where there is no clerk, judgment may be entered thereon.  The decision of the referee shall be appealable as if rendered by the court.  This provision shall in no way be construed to limit any valid cause of action which may be brought by any of the parties.

(j)     The participation by any party in any judicial proceedings concerning this Section or any Merchant Builder Dispute shall not be deemed a waiver of the right to enforce this Section notwithstanding any provision of law to the contrary, shall not be asserted or accepted as a reason to delay, to refuse to participate in, or to refuse to enforce this judicial reference provision.

5.5.     **DISPUTES EXEMPT FROM THIS INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**.  Notwithstanding any other provision of this Individual Dispute Resolution Agreement to the contrary, any and all Master Disputes shall be resolved solely in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration.

5.6.     **DISPUTES TO BE RESOLVED INDEPENDENTLY**:  Notwithstanding anything to the contrary herein, Merchant Builder and Owner agree that it is in the best interest of the parties that the dispute resolution procedures set forth in this Individual Dispute Resolution Agreement be utilized independently of any actions (including actions brought pursuant to alternative dispute resolution procedures) involving Merchant Builder Disputes between Merchant Builder Parties and other claimants. Accordingly, Owner knowingly waives any right to participate in any form of "class", "joint" or "representative" litigation (including in any "private attorney general capacity") or dispute resolution procedures against Merchant Builder Parties.  Merchant Builder and Owner agree to this Section 5.5 on the grounds that they wish to assure, in advance, that any Merchant Builder Disputes by or between Owner and any of the Merchant Builder Parties will not be combined with any Merchant Builder Disputes by or between any Merchant Builder Parties and any other claimant.   Merchant Builder and Owner include this provision on the additional grounds that:  (i) the Property is unique from other properties in the Project, and any potential problems it may suffer will not necessarily be common to other properties; (ii) it may provide Owner increased ability to control any Merchant Builder Dispute involving the Property; (iii) Owner's interests will not be subordinated to the interests of other parties who might otherwise become involved in these dispute resolution procedures; (iv) this approach is likely to foster

faster resolution of most Merchant Builder Disputes that may arise; (v) it will help to avoid conflicts of interest among Merchant Builder's and Owner's representatives; and (vi) it is intended to foster better communication between Owner and Merchant Builder focused on resolving the actual issues that may arise in any Merchant Builder Dispute between them. Notwithstanding the foregoing, the restrictions of this Section shall not apply to actions (including actions brought pursuant to alternative dispute resolution procedures) for damages in the amount of one thousand dollars ($1000.00) or less per action (including actions brought pursuant to alternative dispute resolution procedures); provided however, that Owner shall be required to meet any legal requirements for any "class", "joint" or "representative" litigation or dispute resolution procedures with respect to such actions.

---

## ARTICLE VI
## AMENDMENT AND ENFORCEMENT

6.1.    **AMENDMENTS**:  This Individual Dispute Resolution Agreement may be amended by Merchant Builder and Owner by recording an amendment in the Official Records of the County of an instrument setting forth the terms of the amendment executed by Merchant Builder and Owner.

6.2.    **ENFORCEMENT**:  Merchant Builder Parties and Owner shall have the right to enforce any and all of the provisions of this Individual Dispute Resolution Agreement in the manner provided in this Individual Dispute Resolution Agreement.  The failure to enforce the provisions of any agreement, notice or obligation contained in this Individual Dispute Resolution Agreement will not constitute a waiver of any right to enforce any such provisions or any other provisions of this Individual Dispute Resolution Agreement.

6.3.    **THIRD PARTY BENEFICIARIES**:    The Master Developer and the Master Association are each an intended third party beneficiary and have the right to enforce the provisions of Section 5.4 of this Individual Dispute Resolution Agreement.

---

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

7.1.    **BINDING**:  Under California Civil Code Section 945, the provisions, standards, rights, and obligations set forth in this Individual Dispute Resolution Agreement are binding upon Initial Owner and Successor Owners.  This Individual Dispute Resolution Agreement is for the benefit of and binding upon Merchant Builder and Owner and their respective heirs, legatees, devisees, executors, administrators, guardians, conservators, members, successors, purchasers, tenants, encumbrancers, donees, grantees, mortgagees, lien holders and assigns.  The provisions of this Individual Dispute Resolution Agreement are equitable servitudes and covenants running with the land, enforceable by Merchant Builder and Owner.  All covenants, conditions, restrictions and agreements in this Individual Dispute Resolution Agreement shall run with and burden the Property and be binding on and for the benefit of the Property and all real property subject to the Dispute Declaration and/or any Supplemental Declaration recorded pursuant to the provisions of Section 5.2 of the Dispute Declaration and all Successor Owners acquiring any interest in the Property.

7.2.    **CONFLICT**:  Section 5.1 of the Dispute Declaration provides that an Individual Dispute Resolution Agreement may amend, supplement, replace or repeal any of the Exhibits attached to the Dispute Declaration.  Any exhibit attached to this Individual Dispute Resolution Agreement shall be deemed to supersede and replace, in full, the corresponding exhibit in the Dispute Declaration as to the Residence covered by this Individual Dispute Resolution Agreement.  The provisions of Section 5.3 and Section 5.4 of this Individual Dispute Resolution Agreement are separate and independent of the Dispute

Declaration; however, it is intended that the dispute resolution provisions of Section 4.3 of the Dispute Declaration be identical to the provisions of Section 5.3 of this Individual Dispute Resolution Agreement. If there is a conflict between this Individual Dispute Resolution Agreement and the Dispute Declaration, to the maximum extent allowed by law, this Individual Dispute Resolution Agreement shall be construed so as to be consistent with the Dispute Declaration; provided, however, if there is an irreconcilable conflict between this Individual Dispute Resolution Agreement and the Dispute Declaration or a Supplemental Declaration or for any reason the provisions of the Dispute Declaration are not enforceable, then the provisions of this Individual Dispute Resolution Agreement shall control.

7.3.    **CONSTRUCTION OF PROVISIONS**:  The provisions of this Individual Dispute Resolution Agreement are to be liberally construed to effect its purpose.

7.4.    **EXHIBITS**:  Any exhibits attached to this Individual Dispute Resolution Agreement are incorporated by this reference as though fully set forth herein.

7.5.    **MORTGAGE PROTECTION**:  Owner may encumber the Property with a mortgage or deed of trust.  A breach of any of the conditions contained in this Individual Dispute Resolution Agreement shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value as to the Property; provided, however, that the agreements, notices and obligations contained in this Individual Dispute Resolution Agreement shall be binding upon and effective against Owner notwithstanding whether the Property is acquired by foreclosure, trustee's sale or otherwise.

7.6.    **REDISTRIBUTION OF DOCUMENTS**:  Upon the resale of the Property by Initial Owner, Initial Owner must deliver to its Successor Owner a copy of the Dispute Declaration, this Individual Dispute Resolution Agreement and all documents provided to Initial Owner in conjunction with the original sale of the Property.  Upon each resale of the Property, Owner must supply to its Successor Owner a copy of the Dispute Declaration, this Individual Dispute Resolution Agreement and all other documents provided to that Owner by the previous Owner.

7.7.    **SEVERABILITY OF PROVISIONS**:  All provisions of this Individual Dispute Resolution Agreement shall be deemed independent and severable.  If one provision of this Individual Dispute Resolution Agreement is deemed to be invalid or unenforceable to any degree and for any reason, such invalidity or unenforceability will not affect the validity or enforceability of any other provision of this Individual Dispute Resolution Agreement (***"Enforceable Provisions"***).  It is therefore the intent of the parties that any court or arbitrator shall interpret and enforce all Enforceable Provisions of this Individual Dispute Resolution Agreement as binding contractual obligations of the parties.

7.8.    **SUCCESSOR STATUTES**:  Any reference in this Individual Dispute Resolution Agreement to a statute will be deemed a reference to any amended or successor statute.

7.9.    **TERM**:  This Individual Dispute Resolution Agreement shall be effective as of the date of its recordation and shall continue in full force and effect so long as the Dispute Declaration is effective, but in no event shall it terminate within twenty (20) years from its effective date.

*[SIGNATURES ON FOLLOWING PAGE]*

This Individual Dispute Resolution Agreement is executed on this _____ day of _____, 202__.

MERCHANT BUILDER:                                    INITIAL OWNER:

THE NEW HOME COMPANY SOUTHERN
CALIFORNIA LLC, a Delaware limited                  _____
liability company

By: _____                       _____

    Name: _____

    Title: _____

_____                    Dated:
Buyer

Di Lan Ge
Printed Name

_____                    Dated:
Buyer

Xian Feng Gu
Printed Name

Buyer                                               Dated:

Printed Name

Buyer                                               Dated:

Printed Name

*"Buyer"*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF _____ )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public                                                    (SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF _____ )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public                                                    (SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF _____         )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Notary Public                                    (SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF _____         )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Notary Public                                    (SEAL)

**EXHIBIT "A"**

**LIMITED WARRANTY**



**RECEIPT FOR LIMITED WARRANTY AND DISPUTE RESOLUTION
AGREEMENTS**

**(OLIVEWOOD)**

The undersigned (***"Buyer"***) hereby certifies that in connection with Buyer's purchase of a residence ("***Property***") in the Olivewood residential development, Buyer has received from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), the following:  (a) the Homebuyer Warranty attached as an addendum to the Purchase Agreement and Escrow Instructions executed by Buyer in connection with the purchase of the Property ("***Purchase Agreement***"); (b) the Individual Dispute Resolution Agreement attached as an addendum to the Purchase Agreement; and (c) the Declaration of Dispute Resolution Procedures, which is provided to Buyer in a USB flash drive (collectively, the "***Warranty/Dispute Documents***").

The Warranty/Dispute Documents create a process that Buyer must comply with in resolving any disputes with Seller arising after the close of escrow for the purchase of the Property. The Warranty/Dispute Documents create substantial legal obligations and Buyer agrees that, prior to the close of escrow for the purchase of the Property, Buyer (a) will read the Warranty/Dispute Documents and (b) has the right to have the Warranty/Dispute Documents and any and all other documents related to the purchase of the Property reviewed by an attorney or other expert of Buyer's choosing at Buyer's sole expense; provided, however, that such review does not allow Buyer to alter the terms of the Warranty/Dispute Documents or any other sales documents or delay or cancel the close of escrow on the Property.

Buyer agrees that Buyer's failure to read the Warranty/Dispute Documents and to obtain any needed assistance in understanding the Warranty/Dispute Documents and/or any other sales documents shall not in any way change Buyer's or Seller's rights, duties or obligations under the Warranty/Dispute Documents, sales documents or otherwise.

***[SIGNATURES ON FOLLOWING PAGE]***

_____     Dated: _____
Buyer

<u>Di Lan Ge</u>
Printed Name

_____     Dated: _____
Buyer

<u>Xian Feng Gu</u>
Printed Name

_____     Dated: _____
Buyer

_____
Printed Name

_____     Dated: _____
Buyer

_____
Printed Name

***"Buyer"***

**RECEIPT FOR**
**USB FLASH DRIVE CONTAINING DEVELOPMENT DOCUMENTS**
**(OLIVEWOOD)**

The undersigned (***"Buyer"***) is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), a residence in the Olivewood development (***"Development"***).  Buyer acknowledges that Seller has delivered to Buyer a USB flash drive (***"Drive"***) which includes copies of the Development documents listed on ***Exhibit "A"*** hereto (***"Development Documents"***).  Buyer further acknowledges that Buyer owns a computer into which the Drive can be inserted and that Buyer has inspected the Drive and confirmed that the Development Documents can be displayed on and printed from Buyer's computer.  Buyer is encouraged to print and review the Development Documents immediately.  If for any reason Buyer cannot load or view and print the Development Documents from Buyer's computer, Buyer will immediately make written request to Seller for hard  copies of the Development Documents.

Buyer                                                          Dated:

Di Lan Ge
Printed Name

Buyer                                                          Dated:

Xian Feng Gu
Printed Name

Buyer                                                          Dated:

Printed Name

Buyer                                                          Dated:
Printed Name

***"Buyer"***

Olivewood v1/HLO/9.26.2023

**EXHIBIT "A"**

**LIST OF DEVELOPMENT DOCUMENTS**

- Articles of Incorporation of Portola Springs Community Association Filed March 14, 2006.

- By Laws of Portola Springs Community Association Certified on July 6, 2006.

- Restated Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Portola Springs – Recorded on September 18, 2006 as Doc # 2006000619895.

- Portola Springs Community Association Design Guidelines Updated and Revised February 10, 2022.

- Budget Review 660C dated January 6, 2022

- DRE Approved Best Case/ Worst Case/ Buildout Budgets.

- 18.A 2024 DRE Budget Resolution

- 18.D.3 Port-ph507BC (Best Case)

- 18.D.4 Port-ph598WCBC (Worst Case/Build Out)

- 18.D.5 Port-ScenB

- Notice of Annexation w/ Exhibits

- Declaration of Dispute Resolution Procedures w/Exhibits

- Declaration of Solar Energy Covenants and Restrictions

- Design Guidelines with Applications & Exhibits Revised 2.10.22

- Approved Fire Protection Plan

- Approved Enclave 5B Precise Fuel Modification Plan

- Living Close to Nature Handout dated 7-10-20

*Buyer's Initials* 

Olivewood v1/HLO/9.26.2023

**DocuSign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 367CC3C14305406FBD4A205CAC6ACCDC | | Status: Completed |
| Subject: Olivewood - 0088 - Ge | | |
| Source Envelope: | | |
| Document Pages: 171 | Signatures: 76 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 229 | NSS Docusign |
| AutoNav: Enabled | | 15231 Laguna Canyon Rd |
| EnvelopeId Stamping: Enabled | | Suite 250 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Irvine, CA  92618 |
| | | nssdocusign@nwhm.com |
| | | IP Address: 40.78.44.74 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: NSS Docusign | Location: DocuSign |
|     1/9/2024 2:22:01 PM |     nssdocusign@nwhm.com | |

## Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| Dave Christensen<br>dchristensen@newhomeco.com<br>Security Level:<br>  .Email<br>  ID: 7f97f9da-97fc-4f2b-bcc6-71d91e2414fe<br>1/9/2024 3:11:48 PM | *Dave Christensen*<br>8249D06B9EAD447...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 98.190.194.56 | Sent: 1/9/2024 2:23:01 PM<br>Viewed: 1/9/2024 3:11:58 PM<br>Signed: 1/9/2024 3:12:36 PM |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 12/2/2023 12:36:39 PM<br>  ID: c8523ee9-b8a4-4c3c-b66c-bc2cb195be75 | | |
| Di Lan Ge<br>dilange8888@gmail.com<br>Security Level: Email, Account Authentication<br>(None) | B16A6EB85D7241D...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 24.240.100.63 | Sent: 1/9/2024 3:12:46 PM<br>Viewed: 1/9/2024 5:48:27 PM<br>Signed: 1/9/2024 7:52:26 PM |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 1/9/2024 7:20:46 PM<br>  ID: 79306b43-eeb7-4d02-a7ca-a8cf2d9afb6e | | |
| XianFeng Gu<br>xianfenggu888@gmail.com<br>Security Level: Email, Account Authentication<br>(None) | 7857A1A840134BD...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 24.240.100.63 | Sent: 1/9/2024 7:52:39 PM<br>Viewed: 1/9/2024 8:03:50 PM<br>Signed: 1/9/2024 8:16:16 PM |
| **Electronic Record and Signature Disclosure:**<br>  Accepted: 1/9/2024 6:03:32 PM<br>  ID: 8ec58e13-2417-450e-8c59-d3c779c9f811 | | |
| Sales and Escrow<br>salesandescrow@nwhm.com<br>May 9, 2016<br>The New Home Company<br>Security Level: Email, Account Authentication<br>(None) | S&E<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 98.190.194.50 | Sent: 1/9/2024 8:16:33 PM<br>Viewed: 1/11/2024 12:55:52 PM<br>Signed: 1/11/2024 2:05:01 PM<br>Freeform Signing |
| **Electronic Record and Signature Disclosure:**<br>  Not Offered via DocuSign | | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Michael Battaglia<br>mbattaglia@nwhm.com<br>President, southern Califor<br>The New Home Company<br>Security Level: Email, Account Authentication (None) | *[DocuSigned by: Michael C. Battaglia]*<br>6A030AD4FAE2493...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 98.190.194.50 | Sent: 1/11/2024 2:05:20 PM<br>Viewed: 1/11/2024 3:51:22 PM<br>Signed: 1/11/2024 3:52:34 PM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Ming Li<br>lmzwj0206@gmail.com<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 1/9/2024 2:23:01 PM<br>Viewed: 1/11/2024 9:20:02 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 1/9/2024 5:17:19 PM<br>    ID: af3d2277-d40e-4a57-80cb-247b05050466 | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 1/9/2024 2:23:01 PM |
| Certified Delivered | Security Checked | 1/11/2024 3:51:22 PM |
| Signing Complete | Security Checked | 1/11/2024 3:52:34 PM |
| Completed | Security Checked | 1/11/2024 3:52:34 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure | | |

#!  !#$! "  "$!!#
!#"!#  %!"#" $

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, The New Home Company (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact The New Home Company:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by paper mail, please send correspondence to:
The New Home Company
85 Enterprise, Suite 450
Aliso Viejo, CA 92656

**To advise The New Home Company of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at it@nwhm.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from The New Home Company**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to it@nwhm.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with The New Home Company**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to  and in the body of such request you must state your email, full name, mailing address, and telephone number. Please call.  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..


**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.


**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify The New Home Company as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by The New Home Company during the course of your relationship with The New Home Company.

# Exhibit 237



# HOMEBUYER LIMITED WARRANTY

# TABLE OF CONTENTS

**SECTION 1 –** Introduction ............................................................................... 2

**SECTION 2 –** Definitions................................................................................... 3

**SECTION 3 –** One Year Fit and Finish Warranty .................................................. 6

**SECTION 4 –** Extended Limited Warranty for Performance Standards.................... 8

**SECTION 5 –** Exclusions .............................................................................. 14

**SECTION 6 –** Manufacturer's Warranties – Disclaimer............................................ 17

**SECTION 7 –** Other Conditions and Limitations .......................................................... 18

**SECTION 8 –** Time Limit for Making Warranty Claims .............................................. 19

**SECTION 9 –** Right to Repair Act ........................................................................ 20

**SECTION 10 –** Warranty Claim Procedure ............................................................. 21

**SECTION 11 –** Reporting an Emergency Claim.......................................................... 23

**SECTION 12 –** Your Obligations.............................................................................. 25

**SECTION 13 –** Builder Obligations Under this Limited Warranty............................. 27

**SECTION 14 –** Dispute Resolution Procedure.......................................................... 29

**SECTION 15 –** Claims Under Individual Dispute Resolution Agreement................ 30

**SECTION 16 –** Effect on Future Owners of the Home ............................................. 31

## SECTION 1

## INTRODUCTION

Congratulations on purchasing Your Home!  Your purchase includes this Homebuyer Warranty which relates to original construction defects or deficiencies in materials and workmanship as more fully set forth below ("**Limited Warranty**").  All capitalized words and phrases used in this Limited Warranty shall have the meanings given them in Section 2 below or as otherwise defined herein.  This Limited Warranty contains important terms, exclusions, conditions, policies and procedures.  Therefore, You should carefully read and become familiar with this Limited Warranty.  By signing this Limited Warranty, You agree to all terms, exclusions, conditions, policies and procedures of this Limited Warranty.

This Limited Warranty establishes (a) an agreed upon method for determining whether a construction defect or deficiency in materials and workmanship exists, and is therefore a "**Covered Claim**" as defined in Section 2 (rather than a minor imperfection that can reasonably be expected in the Home or conditions resulting from normal wear and tear or reasonable maintenance responsibilities) and (b) the Builder's responsibility for resolving any such Covered Claim.

This Limited Warranty contains the procedures You must use and follow to notify Builder of a Condition in the Home which You believe constitutes a Covered Claim.  If You believe that a Condition is a Covered Claim, You must submit a request for service under this Limited Warranty.  Based upon the information You provide, and the Builder's investigation/inspection and/or testing of the Home, the Builder will determine whether it agrees that the Condition constitutes a Covered Claim.  If the Builder determines that the Condition is a Covered Claim, it will provide the repair, replacement or other response to such Condition required of the Builder under this Limited Warranty.  If the Builder determines that a Condition does not constitute a Covered Claim, it may deny Your request for service under this Limited Warranty.  If You disagree with the Builder's determination, You have the right to pursue a claim against the Builder in accordance with the Individual Dispute Resolution Agreement (as defined below).

To the fullest extent permitted by law, all express or implied warranties other than this Limited Warranty, including any oral or written statement or representation made by Builder or any of the Builder Parties or any other person, and any implied warranty of habitability, merchantability or fitness, are hereby disclaimed by the Builder and are waived by You.  If any provision or portion of any provision of this Limited Warranty is determined to be unenforceable for any reason, such determination will not in any way affect the remaining provisions.

The issue of enforceability, as well as all other issues related to this Limited Warranty, will be determined by binding arbitration/judicial reference as provided for in the Individual Dispute Resolution Agreement.

## SECTION 2

## DEFINITIONS

The following words and phrases used in this Limited Warranty have the meanings set forth below.

**Actual Moisture Barrier** means any Component or material, actually installed, that serves to any degree as a barrier against moisture, whether or not intended as a barrier against moisture.

**Association** means any neighborhood association or master homeowner association applicable to the Project.

**Association Property** means any and all real property and improvements at the Project for which the Association owns or has the obligation to maintain and repair pursuant to the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements and any other governing documents for the Project.

**Builder** means The New Home Company Southern California LLC, a Delaware limited liability company.

**Builder Parties** means (i) Builder and its partners, members or other principals and their respective officers, agents, employees, affiliated, parent and subsidiary companies, successors and assigns, and design centers, and (ii) any subcontractors, design professionals, engineers, inspectors, material suppliers and/or consultants who provided labor, services or materials to any portion of the Home.

**Component** means an item that was incorporated into the construction of your Home by Builder, other than items specifically excluded by this Limited Warranty. The term does not include items added by you or anyone other than Builder or Builder Parties, or added to the home after the Effective Date of Warranty, such as improvements to the Home or furniture.

**Condition** means any circumstance and/or condition in the Home that You believe may be a Covered Claim.

**Covered Claim** is the failure of any workmanship, materials, and systems of any Component to meet the Fit and Finish Performance Standards or Performance Standards, as applicable.

**Designed Moisture Barrier** means an installed moisture barrier specified in the plans and specifications, contract documents, or manufacturer's recommendations.

**Effective Date of Warranty** means the date on which You close escrow for the purchase of the Home. Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend the ten (10) year statute of repose for

Page ID #:2136

construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such ten (10) year statute of repose expressly applies to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

**Emergency Condition** means any Condition that would cause an unsafe living condition affecting the health and safety of persons residing in the Home.

**Extended Limited Warranty** means the warranty provided under Section 4 of this Limited Warranty.

**Federal Act** means the Federal Arbitration Act (9 U.S.C. §§1-16).

**Fit and Finish Standards** means the construction and performance standards set forth in Section 3 subject to the tolerances and exclusions set forth in this Limited Warranty.

**Fit and Finish Warranty** means the one (1) year warranty described in Section 3.

**Fit and Finish Warranty Term** means the period which is (1) year following the Effective Date of Warranty.

**Home** means the residence You purchased from the Builder as described on the signature page of this Limited Warranty and all appurtenant improvements.

**Homeowner** means You and any successive owner of the Home.

**Homeowner Manual** means the Homeowner Manual provided to You by the Builder which includes important information regarding Your Home, including guidelines for the maintenance, care and use of Your Home.

**Individual Dispute Resolution Agreement** means the Individual Dispute Resolution Agreement entered into between You and the Builder in connection with the purchase of the Home that is or shall be recorded against the Home.

**Manufactured Products** means a product that is completely manufactured off-site, including without limitation all flooring, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, appliances, pieces of equipment, or other items installed in the Home that are consumer products for purposes of the Magnuson-Moss Warranty Act (15 U.S.C. Section 2301, et. seq.) and solar energy systems including inverters.

**Maintenance Guidelines** means all maintenance obligations, guidelines, schedules and practices communicated to You in writing by Builder, including, without limitation all product manufacturers' use, maintenance and care instructions provided to You by Builder, as well as commonly accepted maintenance practices. Such commonly

accepted maintenance practices include, but are not limited to, those set forth in Your Homeowner Manual and those established by product manufacturers.

**Owner Party or Parties** means You and/or Your agents, family (including minor children), tenants, guests, invitees and or representatives.

**Performance Standards** means the construction and performance standards set forth in Section 4 of this Limited Warranty subject to the tolerances and exclusions set forth in this Limited Warranty.

**Project** means the residential development in which the Home is located.

**Right to Repair Act** means Title 7, Part 2 of Division 2 of the California Civil Code commencing with Section 895.

**Service Request** means a complete, detailed description of a Condition properly submitted by You as set forth in Section 10 of this Limited Warranty.

**Structure** means any residential building, other building, or improvement located within the Project.

**Unintended Water** means water that passes beyond, around, or through a Component or the material that is designed to prevent that passage.

**Warranty Term** means, as to each system or Component covered by this Limited Warranty, the period beginning on the Effective Date of Warranty and expiring on the date for each such Component specified in Section 3 or 4 of this Limited Warranty, as applicable.

**You or Your** means the homeowner to whom this Limited Warranty is provided.

5

## SECTION 3

## ONE YEAR FIT AND FINISH WARRANTY

Subject to the terms, limitations, conditions and exclusions of this Limited Warranty, Builder warrants that during the period which is one (1) year following the Effective Date of Warranty (the Fit and Finish Warranty Term) the following Components of the Home will satisfy the Fit and Finish Standards within an acceptable tolerance. Builder will correct any noncompliance with the Fit and Finish Standards that are reported to Builder in writing in accordance with this Limited Warranty during the Fit and Finish Warranty Term. Any noncompliance with the Fit and Finish Standards not so reported to Builder within the Fit and Finish Warranty Term shall be Your responsibility. A Condition will only be a Covered Claim under this Fit and Finish Warranty if the Condition is the result of a Component or function not being in compliance with the Fit and Finish Standards. Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through are presumed to have been caused by Homeowner. Such damages caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| Cabinets | Cabinet doors shall align. | Cabinet doors that are out of alignment in excess of 1/8 of an inch when closed are a deficiency. | |
| Cabinets | Cabinet doors shall not contain significant warps. | Cabinet door warping of more than 3/16 of an inch is a deficiency. | |
| Cabinets | Cabinets shall be installed level and flush to walls and ceilings. | Deviations greater than 3/8 of an inch in cabinet level in a 6 foot span is a deficiency. Deviations greater than 3/16 of an inch to walls and ceilings is a deficiency. | |
| Carpet | Carpet seams shall be butted tightly. | | Visible seams and seam separations after close of escrow are not covered. |
| Countertops | Countertops shall be installed flat and level. | Deviations greater than 3/8 of an inch in countertop level is a deficiency. | |
| Exterior Decks/Patios | Decks and patios shall drain properly. | Water ponding in excess of 3/8 of an inch 24 hours after last rain is a deficiency. | |
| Exterior Doors | Doors shall not contain significant warps. | Exterior door warping of more than 1/8 of an inch is a deficiency. | |
| Exterior Trim | Wood trim, siding, and false beam details shall not contain significant separations. | Separations exceeding 3/8 of an inch in width are a deficiency. | Maintenance of Components, including, without limitation, caulking at joints, is not covered. |
| Grout | Grout shall not contain significant cracks | Cracks in excess of 1/32 of an inch are a deficiency. | |
| Hardwood Flooring | Finish flooring shall be installed level. | Variance in the level of hardwood flooring that exceeds 1/4 of an inch in 8 feet is a deficiency. | |

6

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| HVAC | Heating, if any, shall be installed so as to be capable of maintaining a room temperature of 70 degrees Fahrenheit at a point three feet above the floor in any living space. | | |
| HVAC | Living space air-conditioning, if any, shall be provided in a manner consistent with the size and efficiency design criteria specified in Title 24 of the California Code of Regulations or its successor. | | |
| Interior Doors | Doors shall not contain significant warps. | Interior door warping of more than 1/4 of an inch is a deficiency. | |
| Interior Trim | Trim shall not contain significant separations. | Separations at miter joints exceeding 1/16 of an inch in width are a deficiency. Gaps between trim and adjacent trim or other materials exceeding 1/8 of an inch are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant bows or crowns. | Bows exceeding 1/4 of an inch in a 32 inch horizontal or vertical measurement or 1/2 of an inch in an 8 foot measurement are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant cracks or separations. | Cracks and separations exceeding 1/8 of an inch in width are a deficiency. | |
| Landscaping/Irrigation | Irrigation systems and drainage shall operate properly so as not to damage landscaping or other external improvements. | | Landscaping installed, modified, or damaged after close of escrow is not covered. |
| Landscaping/Irrigation | The landscaping systems shall be installed in such a manner so as to survive for not less than one year. | | |
| Manufactured Products | To the extent not otherwise covered by these standards, manufactured products (products completely manufactured offsite), including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any. Useful life shall mean one year or the term of the manufacturer's warranty, whichever is greater, but no more than 10 years. | | Claims relating solely to a defect in a manufactured product are not covered. |
| Subfloor | Wood subfloors shall be installed level. | Variance in the level of wood subfloors that exceeds 1/2 of an inch in 20 feet is a deficiency. | Squeaks from subfloors are not covered. |

## SECTION 4

## EXTENDED LIMITED WARRANTY FOR
## PERFORMANCE STANDARDS

Subject to the terms, conditions and exclusions of this Limited Warranty, Builder warrants that during the applicable Warranty Term the following Components of the Home will satisfy the Performance Standards identified below within an acceptable tolerance. A Condition will only be a Covered Claim under the Extended Limited Warranty if the Condition is the result of a Component or function not being in compliance with the Performance Standards described in this Section. Conditions caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Noise | Attached structures shall be constructed to comply with inter-unit noise transmission standards set by the applicable government building codes, ordinances, or regulations in effect at the time of the original construction. | | If there is no applicable code, ordinance or regulation, this standard does not apply. | 1 Year from original occupancy of the adjacent unit |
| Paint | Paint and stains shall be applied in such a manner so as not to cause deterioration of the building surfaces for the length of time specified by the paint or stain manufacturers' representations, if any. | | | No more than 5 Years |
| Electrical | Electrical systems shall operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | Alterations made after close of escrow that change or increase the electrical load on the system void this coverage. | 4 Years |
| Exterior Flatwork | Concrete driveway and garage slab shall not be significantly offset. | Vertical offset that exceeds 1/2 of an inch is a deficiency. | Offsets exceeding 1/2 of an inch that are intentionally created during original installation are not covered. | 4 Years |
| Exterior Flatwork | Exterior pathways, driveways, hardscape, sidewalls, sidewalks, and patios installed by the original builder shall not contain cracks that display significant vertical displacement or that are excessive. | Cracks exceeding 1/4 of an inch in width or vertical displacement are a deficiency. Cracks in control joints that exceed 1 inch in width or 1/4 of an inch in vertical displacement are a deficiency. | Minor cracking is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Damage to builder-installed flatwork caused by flatwork or other additions installed after close of escrow are not covered. | 4 Years |
| Fences | Untreated steel fences and adjacent Components shall be installed so as to prevent unreasonable corrosion. | | | 4 Years |
| Plumbing and Sewer | Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | | 4 Years |

8

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Fences | Untreated wood posts shall not be installed in contact with soil so as to cause unreasonable decay to the wood based upon the finish grade at the time of original construction. | | | 2 Years |
| Mechanical | Dryer ducts shall be installed and terminated pursuant to manufacturer installation requirements. | | | 2 Years |
| Exterior Finishes | Stucco, exterior siding, and other exterior wall finishes and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall not contain significant cracks or separations. | Cracks exceeding 1/8 an inch in width are a deficiency. Separations between dissimilar materials exceeding 3/8 of an inch in width are a deficiency. Separations at butt joints or miter joints of trim pieces that exceed 1/4 of an inch are a deficiency. | Minor cracking and separations is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Maintenance of caulking between dissimilar materials is not covered. Efflorescence is considered acceptable and is not covered. | 10 Years |
| Fire Protection | Electrical and mechanical systems shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire. | Original construction that causes an unreasonable risk of fire is a deficiency. | | 10 Years |
| Fire Protection | Fireplaces, chimneys, chimney structures, and chimney termination caps shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire outside the fireplace enclosure or chimney. | Original construction that causes an unreasonable risk of fire outside the fireplace enclosure is a deficiency. | | 10 Years |
| Fire Protection | The Structure shall be constructed so as to materially comply with the design criteria of the applicable government building codes, regulations, and ordinances for fire protection of the occupants in effect at the time of the original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Public Health Hazard | Structures shall be constructed in such a manner so as not to impair the occupants' safety because they contain public health hazards as determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction. | | | 10 Years |
| Roof | Roofing materials shall be installed so as to avoid materials falling from the roof. | | Damage caused after close of escrow is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, damage to the Structure built upon the soil or engineered retaining wall. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, the Structure to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Soil | Soils shall not cause, in whole or in part, the land upon which no structure is built to become unusable for the purpose represented at the time of original sale by the builder or for the purpose for which that land is commonly used. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | Deficiencies caused, in whole or in part, by modifications to the soil or the surrounding areas after close of escrow are not covered. Damage caused by failure to maintain drainage swales is not covered. | 10 Years |
| Structural | Foundations, load bearing Components and slabs shall not cause the Structure, in whole or in part, to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |
| Structural | Foundations, load bearing Components, and slabs shall not contain significant cracks or significant vertical displacement. | Cracks exceeding 3/16 of an inch in width or 1/8 of an inch in vertical displacement are a deficiency. | Cracks in a control joint are not covered. | 10 Years |
| Structural | Foundations, load bearing Components, and slabs, and underlying soils shall be constructed so as to materially comply with the design criteria set by applicable government building codes, regulations, and ordinances for chemical deterioration or corrosion resistance in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Structural | The Structure shall be constructed so as to materially comply with the design criteria for earthquake and wind load resistance, as set forth in the applicable government building codes, regulations, and ordinances in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Tile | Ceramic tile and tile backing shall be installed in such a manner that the tile does not detach. | | | 10 Years |
| Water Intrusion - Doors | A door shall not allow Unintended Water to pass beyond, around, or through the door or its Designed or Actual Moisture Barriers, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |
| Water Intrusion - Doors/Windows | Windows, patio doors, deck doors, and their systems shall not allow water to pass beyond, around, or through the window, patio door, or deck door or its Designed or Actual Moisture Barriers, including, without limitation, internal barriers within the systems themselves. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Leaks caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Drainage | Hardscape, including paths and patios, irrigation systems, landscaping systems, and drainage systems, that are installed as part of the original construction, shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the hardscape or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Water Intrusion - Enclosures | Shower and bath enclosures shall not leak water into the interior of walls, flooring systems, or the interior of other Components. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, grout, caulking, or weatherstripping, are not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, and exterior walls shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage from condensation entering the Structure caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, to maintain proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, exterior walls, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those Components and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall be installed in such a way so as not to allow Unintended Water to pass into the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers of the system, including any internal barriers located within the system itself. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking, are not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow Unintended Water to pass within the systems themselves and cause damage to the systems. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Damage caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, is not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow water to pass into the adjacent Structure. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, are not covered. | 10 Years |

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Exterior Systems | Windows, patio doors, deck doors and their systems shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Damage to another Component from excessive condensation entering the Structure from the outside as a result of original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. | | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to limit the installation of the type of flooring materials typically used for the particular application. | Damage to the original flooring caused by water or vapor transmission through the foundation system and slab is a deficiency. | Preparation required for installation of a flooring material that differs from that originally installed by Builder is not covered. | 10 Years |
| Water Intrusion - Roof | Roofs, roofing systems, chimney caps, and ventilation Components shall not allow water to enter the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers, including, without limitation, internal barriers, located within the systems themselves. For purposes of this standard, systems include, without limitation, framing, substrate, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, their roof, are not covered. | 10 Years |
| Water Intrusion - Tile | Ceramic tile and tile countertops shall not allow water into the interior of walls, flooring systems, or other Components so as to cause damage. | Leaks caused by original construction are a deficiency. | Damage caused by water tracked or introduced into areas outside of showers or bathtubs is not covered. | 10 Years |
| Water Intrusion - Utilities | Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems. | Corrosion that impedes the useful life of the system is a deficiency. | | 10 Years |
| Water Intrusion - Utilities | Sewer systems shall be installed in such a way as to allow the designated amount of sewage to flow through the system. | Original installation by the Builder that impedes the designated amount of sewage from flowing through the system is a deficiency. | Impediments caused by modifications or damage caused after close of escrow are not covered. Flushing of hygiene products that create a blockage are not covered. | 10 Years |
| Water Intrusion - Utilities | The lines and Components of the plumbing system, sewer system, and utility systems shall not leak. | Leaks caused by original construction are a deficiency. | Leaks caused by modifications or damage to Components after close of escrow are not covered. | 10 Years |
| Water Intrusion - Walls | Retaining and site walls and their associated drainage systems shall not allow Unintended Water to pass beyond, around, or through its Designed or Actual Moisture Barriers including, without limitation, any internal barriers, so as to cause damage. This standard does not apply to those portions of any wall or drainage system that are designed to have water flow beyond, around, or through them. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Walls | Retaining walls and site walls, and their associated drainage systems, shall only allow water to flow beyond, around, or through the areas designated by design. | Water intrusion caused by original construction is a deficiency. | Water intrusion caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

## SECTION 5

## EXCLUSIONS

A.    In addition to the items specifically addressed in Sections 3 and 4, this Limited Warranty also does not provide any coverage for the following, which are specifically excluded and shall not be Covered Claims:

1.    Damage to any property that was not included as part of the original construction of Your Home by Builder.

2.    Any condition which has not resulted in actual physical damage to Your Home.

3.    Failure to maintain Your Home in accordance with the Maintenance Guidelines.

4.    Any loss or damage that is caused or made worse by any of the following causes, whether acting alone or in sequence or concurrence with any other cause or causes whatsoever, including without limitation:

(a)    negligence, improper maintenance, defective material or work supplied by, or improper operation by, anyone other than Builder or any Builder Parties, including failure to comply with the warranty requirements of manufacturers of appliances, equipment or fixtures;

(b)    Your failure to give prompt and proper notice to Builder of any Covered Claim in accordance with the terms of this Limited Warranty;

(c)    changes in grading that do not comply with accepted grading practices, or failure to maintain the original grade created by Builder;

(d)    riot or civil commotion, war, vandalism, hurricane, tornado or other wind storm, fire, explosion, blasting, smoke, water, flood, hail, snow, ice storm, lightning, fallen trees or other objects, aircraft, vehicles, landslide or mud slide, avalanche, earthquake, subsidence, erosion, volcanic eruption or natural or manmade condition that exceeds the design criteria;

(e)    abuse or use of the Home, or any part thereof, beyond the reasonable capacity of such part for such use;

14

(f)     microorganisms, fungus, decay, wet rot, dry rot, soft rot, rotting of any kind, mold, mildew, vermin, termites, insects, rodents, birds, wild or domestic animals, plants, corrosion, rust, radon, radiation, formaldehyde, asbestos, any solid, liquid or gaseous pollutant, contaminant, toxin, irritant or carcinogenic substance, whether organic or inorganic, and any electro-magnetic field or emission, including any claim of health risk or un-inhabitability based on or caused by any matter contained in these exclusions;

(g)     Your failure to minimize or mitigate any Condition, loss or damage as soon as practicable;

(h)     any request for warranty service or performance submitted to Builder after an unreasonable delay or in any event later than expiration of the applicable Warranty Term, as applicable;

(i)     loss caused, in whole or in part, by any peril or occurrence for which compensation is provided by state or federal legislation or public funds;

(j)     diminution in the market value of the Home which is in addition to or exceeds the cost of repair;

(k)     loss or damage caused by or resulting from the loading of structural elements in excess designed loads, including, without limitation, water beds, safes, weight benches, large fish tanks, above-garage attics and storage spaces, and pool tables;

(l)     bodily injury or damage to personal property and any and all incidental and consequential damages, including, without limitation, lost profits, stigma damages, time missed from employment, expenses to address special health or physical situations, costs of shelter, transportation, food, moving, storage or other incidental expenses related to relocation during repairs;

(m)     loss or damage resulting from, or made worse by: (i) changes to the grading of the property surrounding the Home by anyone, including changes made by or its authorized employees, agents or subcontractors, (ii) changes in the grading or drainage resulting from erosion, subsidence or (iii) other soil movement. Builder assumes no responsibility for damage caused by the lack of or improper landscaping, changing the grade of a yard, or fencing, patios, spas, pools or otherwise which alter the grading or the water table;

15

(n)    loss or damage resulting from, or made worse by: dampness, condensation, cold or heat buildup caused by a failure to maintain proper ventilation in accordance with the terms of the Maintenance Guidelines;

(o)    loss or damage due to the actions of others, including, without limitation, actions by or failure to act by cities, counties or utility companies, including failure to provide utility service to the Home; and

(p)    modification of the Home and/or work performed at the Home by Homeowner or third parties after closing.

5.    Failure to allow Builder or Builder Parties reasonable and timely access for inspections and repair under this Limited Warranty.

6.    Alterations, ordinary wear and tear, misuse, abuse, or neglect, or use of the Home other than for intended purpose by You or any Owner Party.

7.    Any Covered Claim for which Builder has obtained a release.

8.    All Manufactured Products (including without limitation consumer products for purposes of the Magnuson-Moss Warranty Act), except as expressly provided otherwise in this Limited Warranty.

9.    All solar energy systems and Component parts warranted by a third party solar provider and/or its suppliers.

10.    Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through.

11.    Any of the conditions, occurrences, or matters set forth in Civil Code section 945.5.

12.    Association Property.

## SECTION 6

### MANUFACTURER'S WARRANTIES – DISCLAIMER

All Manufactured Products are excluded from coverage under this Limited Warranty. To the extent Builder has been issued a warranty from any manufacturer of Manufactured Products installed in Your Home, Builder assigns to You, to the extent assignable and without recourse to Builder, Builder's rights in such warranties, if any. The assignment will be effective as of the date on which You close escrow for the purchase of Your Home. Any rights that inure to a homeowner under a manufacturer's warranty are the obligation of the manufacturer. Builder has no obligations under the manufacturer's warranty, including without limitation the ability to enforce the manufacturer's warranty. Builder disclaims any warranty of any kind, express or implied, relating to Manufactured Products, including without limitation, any warranty of use, fitness of use, workmanship, or quality. Builder will not be obligated under this Limited Warranty for any damage to a Manufactured Product or for any damage caused by a Manufactured Product installed at Your Home; provided however, to the extent required by law, Builder will be responsible for damage caused by its improper installation of a Manufactured Product at Your Home or other act by Builder only if the installation or other act by Builder caused actual damage. Builder's disclaimer of warranties does not limit or otherwise affect the warranty of any manufacturer. If a Manufactured Product malfunctions, or is otherwise defective, You agree to follow the procedures in the applicable manufacturer's warranty documents or website. Prior to Your execution of this Limited Warranty, a copy of the warranties for Manufactured Products in Your Home were made available to You for Your review. At or after the close of escrow for the purchase of Your Home, Builder will deliver to You the actual warranties for the Manufactured Products in Your Home to the extent such warranties exist. Such delivery may be in digital format or links to a manufacturer's website.

## SECTION 7

## OTHER CONDITIONS AND LIMITATIONS

**DISCLAIMER OF OTHER WARRANTIES**. TO THE FULLEST EXTENT PERMITTED BY LAW, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF HABITABILITY, ARE HEREBY EXPRESSLY DISCLAIMED BY BUILDER AND WAIVED BY YOU. THIS LIMITED WARRANTY IS SUBSTITUTED IN PLACE OF ALL SUCH WARRANTIES. THIS MEANS THAT THIS WARRANTY IS THE ONLY WARRANTY THAT APPLIES AND GOVERNS YOUR AND OUR RIGHTS AND OBLIGATIONS RELATED TO YOUR HOME AND THAT THERE ARE NO OTHER WARRANTIES EXCEPT AS MAY BE REQUIRED BY LAW. NO ONE CAN ADD TO OR VARY THE TERMS OF THIS LIMITED WARRANTY, ORALLY OR IN WRITING. IF AN ARBITRATOR OR COURT DETERMINES THAT A WARRANTY CANNOT BE WAIVED, DISCLAIMED, OR REDUCED BY THIS WARRANTY OR SUBSTITUTED WITH THE TERMS OF THIS WARRANTY BY LAW, THEN THE SPECIFIC TERM IN THIS WARRANTY THAT CONFLICTS WITH THE WARRANTY TERM THAT MAY NOT BE WAIVED, DISCLAIMED, REDUCED OR SUBSTITUTED WILL NOT APPLY, BUT ALL OTHER TERMS WILL REMAIN APPLICABLE TO THE EXTENT PERMITTED BY LAW.

**Severability**. In the event any provision of this Limited Warranty is determined to be unenforceable, that determination will not affect the validity of the remaining provisions.

**Not an Insurance Policy**. This Limited Warranty is not an insurance policy and Builder does not provide you any insurance through the Limited Warranty or otherwise. You should always obtain Homeowners insurance to protect your Home and if You have a mortgage on Your Home, Your lender may insist that You have a homeowner's insurance policy. This is not a homeowner's insurance policy.

**Repair Does Not Extend Warranty Term**. No repair, replacement or payment shall extend the Warranty Term of this Limited Warranty as to any Covered Claim, including, without limitation, the Covered Claim which was the subject of the repair. There shall be no warranty, express or implied, arising from repair or replacement work performed by or on behalf of Builder except for the remaining original Warranty Term.

**Limitations on Post-Repair Condition of Home**. Repairs undertaken under the Limited Warranty are intended to restore the Home to acceptable tolerances, but not necessarily to like-new condition.

**Headings**. Section headings and the Table of Contents used herein are for convenience of reference only and shall not affect the meaning or interpretation of this Limited Warranty.

## SECTION 8

### TIME LIMIT FOR MAKING WARRANTY CLAIMS

The Warranty Term is different depending on the type of system, Component or element of construction involved. For items covered under Section 3 One Year Fit and Finish Warranty, the Warranty Term is one year from the Effective Date of Warranty. For items covered under Section 4 Extended Limited Warranty for Performance Standards, the Warranty Term is set forth for each building Component listed starting from the Effective Date of Warranty. All warranty claims must be received by Builder prior to the expiration of the applicable Warranty Term. Any claim that Builder did not comply with its obligations under this Limited Warranty must be brought pursuant to the procedures set forth in the Individual Dispute Resolution Agreement and must be initiated no later than thirty (30) days after the expiration of the applicable Warranty Term. Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend any applicable statutes of limitation or repose, including without limitation the ten (10) year statute of repose for construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such statutes of limitation and/or repose that apply to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

## SECTION 9

### RIGHT TO REPAIR ACT

This Limited Warranty is **NOT** intended to be a Builder's Enhanced Protection Agreement, as permitted by the Right to Repair Act. The terms and conditions of this Limited Warranty are intended by Builder to contractually set forth Your and the Builder's rights, duties, and obligations as to certain covered Components and functions of Your Home under this Limited Warranty.

If this Limited Warranty is in any way deemed to limit the application or reduce the protection of the Right to Repair Act, the provisions of the Right to Repair Act shall control and shall supersede any term, condition, provision, definition, limitation, exclusion, right, duty, or requirement stated in this Limited Warranty.

## SECTION 10

## WARRANTY CLAIM PROCEDURE

If You become aware of a Condition that You believe is Covered Claim under this Limited Warranty, You must proceed as follows:

### Notification

You must submit a Service Request through the Builder's website at https://www.CustomerCareNHC.com (or by following the links at Builder's general website for "service", "customer care" or "warranty", "**Website**") as soon as reasonably possible after You become aware or should have become aware of the Condition, but in no event may Your service request be submitted to Builder through the Website later than the earlier to occur of (a) thirty (30) days following Your discovery of a Condition (except as provided below for Conditions discovered during the first thirty (30) days after the Effective Date of Warranty) or (b) the date on which the applicable Warranty Term expires for the system, Component or element of construction involved in such Condition. However, for ease of service, during the initial thirty (30) days following the Effective Date of Warranty you should keep track of Conditions You wish to report until the expiration of such thirty (30) day period. Service requests must be made through the Website and will not be accepted by mail or other delivery process. If your request for service is not submitted in accordance with the foregoing, Builder will have no obligation to remedy the Condition that is the subject of the service request. Further any claim or claims that Builder has breached this Limited Warranty must be brought within one (1) year following the alleged breach, but in no event later than thirty (30) days after expiration of the Warranty Term with respect to the system, Component or element of construction involved in such breach by Builder, and shall be resolved in accordance with the Individual Dispute Resolution Agreement.

### Cooperation

You must fully cooperate with Builder, and any Builder Parties, in inspecting, investigating, testing (including destructive testing), monitoring, repairing, replacing or correcting a Condition under this Limited Warranty. This cooperation includes, but is not limited to, granting reasonable access to Your Home for the foregoing purposes during normal business hours, having a person at least eighteen (18) years of age at each and every scheduled appointment, and, if the Home has tenants, having Your authorized representative (as evidenced by a signed, written authorization), present for any such appointments. If You fail to so cooperate, the Builder will have no obligation to perform any warranty service under this Limited Warranty.

### Do Not Incur Expenses for Covered Claims Without Written Approval

You agree not to make any voluntary payments, assume any obligations, or incur any expenses to remedy any Condition You believe is a Covered Claim without prior written approval from Builder. Subject to the exception below, Builder will not reimburse

You for any costs or expenses You incur if You do not obtain prior written approval from Builder agreeing to reimburse you for such costs.

However, Builder will reimburse you for reasonable expenses You incur with independent third parties, consistent with this Limited Warranty, in making repairs for (i) a Condition that is a Covered Claim which is necessary solely for the protection of the Home from further material damage, provided that you notify Builder of such Condition as soon as is reasonably possible, or (ii) an Emergency Condition provided that you notify Builder of such Emergency Condition as soon as is reasonably possible. To obtain reimbursement for such costs incurred as a result of an Emergency Condition, You must provide Builder with a complete and accurate record describing in detail the Emergency Condition and the repairs and repair costs. If proper, detailed documentation for emergency repairs and repair costs is not provided, Builder shall not be obligated to reimburse You for costs incurred in connection therewith.

**Sign a Release**

To the fullest extent permitted by law, when Builder or a third party designated by Builder pays to You any monetary settlement for any claim, You must sign a full release of Builder's obligations related to the claim. This release shall be applicable to the claim only and shall not prevent You from making a claim regarding any other Condition that You believe is a Covered Claim.

**Disputes**

You agree that all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial.

## SECTION 11

### REPORTING AN EMERGENCY CLAIM

Certain events and circumstances may require immediate attention by You under this Limited Warranty. Builder has provided an emergency phone number for Your convenience to expedite service in Emergency Conditions. To ensure documentation in Your warranty file, send a Service Request Form to Builder clearly identifying and describing in detail the Emergency Condition and the date that You reported the Emergency Condition.

Emergency Covered Claims are those Covered Claims that require immediate attention due to Emergency Conditions and include, but may not be limited to, the following examples:

- A total stoppage of the sewer system. (Note: Builder is not responsible for sewers, fixtures, and drains which are clogged as a result of the action or inaction of any Owner Party or Owner Parties.)

- A water leak which could cause serious damage to the building and/or furnishings. (Turn off water supply immediately.)

- An electrical problem causing complete loss of power within the Home. (Shut off main breaker.)

Urgent, but non-Emergency Conditions are those Conditions that may require immediate responsive action but are not of an Emergency Condition nature. Such urgent Conditions, include, but may not be limited to:

- Complete loss of heat or air conditioning

- Leak under a sink

The following Emergency Phone Number and contact information are provided to You for use if You believe a Condition is an Emergency Condition. Please strictly comply with the emergency service request procedures set forth above, including careful consideration of whether a Condition qualifies as an Emergency Condition subject to the emergency service request procedures set forth herein.

# EMERGENCY PHONE NUMBER

## 949-472-5518

For appliance service issues, please contact the appropriate factory warranty service company for all appliance repairs of any nature. To ensure documentation in your warranty file, after You have contacted the appropriate appliance service subcontractor, send a Service Request Form to Builder clearly identifying and describing the appliance service request and the date that the appliance service subcontractor or vendor was contacted.

You are required to exercise good faith in determining whether a Condition qualifies as a Covered Claim, whether such Condition qualifies as an Emergency Condition and using the proper reporting procedures under this Limited Warranty. You may be responsible for costs associated with services provided if you report an item that is not an Emergency Condition or a Covered Claim, at Builder's sole discretion.

Your failure to follow obligations, schedules, necessary maintenance (including without limitation the Maintenance Guidelines), reporting procedures and practices may invalidate all or portions of the coverage of this Limited Warranty.

## SECTION 12

## YOUR OBLIGATIONS

**Access to Your Home**.

In order for Builder to carry out its responsibilities under this Limited Warranty, Builder, or a third-party designated by Builder, will require access to Your Home from time-to-time, provided that access is during normal business hours, Monday through Friday, at a time mutually convenient to You and Builder between the hours of 8:00 a.m. and 4:00 p.m., or as otherwise set forth above. You hereby agree to grant access to Builder and Builder Parties during such time to inspect, repair and conduct tests in Your Home as in their judgment may be required. Your failure to allow access to Your Home will void this Limited Warranty.

**Your Obligations to Care for Your Home**.

This Limited Warranty covers the cost of labor and materials to correct a Covered Claim, as more fully defined above. Your obligation is to care for Your Home in such a way as to prevent or minimize damage to it. All new homes go through a period of settlement and movement. During this period, Your Home may experience some minor material shrinkage, cracking and other events which are normal and customary. You are responsible for proper maintenance of Your Home, including, but not limited to, complying fully with all Maintenance Guidelines. You should become familiar with all Maintenance Guidelines. By accepting this Limited Warranty, You agree to provide to any subsequent purchaser of the Home from You any and all Maintenance Guidelines. Any subsequent purchaser of the Home must also comply with the Maintenance Guidelines. The failure of any Homeowner to comply with the Maintenance Guidelines shall void this Limited Warranty, as to any claim in whole or in part, at Builder's sole and absolute discretion. The sale of the Home to a subsequent purchaser shall not extend the Warranty Term.

Without limiting the information or maintenance obligations provided in Your Homeowner Manual or other Maintenance Guidelines, below are some reminders of what Your Home has a right to expect from You:

- Your Home and lot were designed with a particular drainage pattern, which should carry rainwater away from the foundation. Water should not be directed to the edge of the foundation, either in the form of lot drainage or the watering of flowers, shrubs, or grass.
- Concrete surfaces should be free of salts, other deicing chemicals, and excessive weight such as a moving van. Yard drainage should be maintained to divert water away from concrete surfaces, if possible, to eliminate the chance it will undermine the surface and erode the bearing soil.
- Structural alterations to the Home must be performed by professionals who understand the load-bearing requirements of the change. One of the reasons that

local municipalities require permits for building alterations is to make sure that the structural integrity of the Home is maintained.

- In many cases, the seal around doors and windows is caulk. This material should be inspected annually and may need to be replaced after one to two years. Water from yard and lawn watering devices should not come in contact with the structure.
- Since the mechanical systems of Your Home were designed for normal usage, placing unreasonable demands upon them will present problems. Plugging several electrical devices into one circuit may cause it to overload. Loading materials into a drain may cause it to clog. Undue weight should not be placed on pipes or showerheads because they can break. Some devices must be cleaned periodically (e.g., furnace filters) so that they can do what they were designed to do.
- Wood requires cleaning and sealing to prevent problems associated with water penetration and continual exposure to the elements. Painted or sealed surfaces must be cleaned and refinished according to the requirements of Your geographic area. If this is not done, the surface will deteriorate.
- Instructions for care and maintenance are included with many Components of Your Home, including finished flooring, appliances, and air handling equipment. Following these instructions will extend the life of these Components.
- The common areas require the same care and maintenance as Your Home. Although Your Association is responsible for maintenance, all residents should strive to keep these areas clean and usable.

**Your Responsibility for Proper Use**

You are responsible for any improper use of Your Home, including, but not limited to, unreasonable use, intentional damage, and the use of Your Home for anything other than a single-family residence.

**Your Responsibility to Provide Notice and Mitigate Damages**

If You believe Your Home has a construction defect covered by this Limited Warranty, You must give Builder timely notice in the manner described in this Limited Warranty. Builder is not responsible for any damage that occurs because You failed to timely notify Builder or because You failed to take reasonable action to prevent the damage.

## SECTION 13

### BUILDER OBLIGATIONS UNDER THIS LIMITED WARRANTY

Except for Emergencies as set forth in Section 11 all Service Requests must be made by You in accordance with Section 10. Telephonic or face-to-face discussions will not protect or preserve Your rights under this Limited Warranty.

Upon receiving a fully completed Service Request from You, Builder, or a Builder Party, will conduct inspections, investigations and/or testing (including destructive testing) regarding the alleged claim described in the Service Request From to determine if a Covered Claim exists.  Upon Builder's determination that the described Condition is a Covered Claim, Builder, or a Builder Party, will, at Builder's sole discretion, (1) perform repair or replacement in response to the Covered Claim or (2) pay to You the reasonable cost to perform such repair or replacement in which case You shall execute a full release in favor of Builder with respect to the Covered Claim.

**Standards by Which the Presence of a Covered Claim Will be Determined.**

The following factors will be considered by Builder in determining whether a Condition constitutes a Covered Claim.  Should an arbitration be conducted under the Dispute Resolution Procedure, these factors shall be considered by the arbitrator or referee, as applicable, in rendering a decision:

1. The Fit and Finish Standards or Performance Standards, as applicable.

2. Consideration as to whether the magnitude of the Condition:
   - Materially affects the structural integrity of the Home; or
   - Has an obvious and material negative impact on the appearance of the Home; or
   - Creates an Emergency Situation; or
   - Results in the inability of the Home to provide the functions that can be reasonably expected in such a home;

3. Consideration as to whether the Condition is the result of normal wear and tear (Conditions that are normal wear and tear, or are caused by normal wear and tear, are not Covered Claims);

4. Consideration as to whether the Condition was caused by, or in any way resulted from, the failure of an Owner Party or Owner Parties to perform normal or routine maintenance (any Condition that is determined to be a maintenance issue or that results from improper or inadequate maintenance is not a Covered Claim);

5. Consideration as to whether the Condition was caused by any Owner Party or Parties (any Condition that is caused by an Owner Party or Parties is not a Covered Claim);

27

6.    Recognition that any Condition resulting directly or indirectly from or worsened by changes, additions, alterations or other actions or omissions by any Owner Party or Owner Parties, will not be considered a Covered Claim; and

7.    Any conditions, limitations or exclusions contained in this Limited Warranty.

## SECTION 14

## DISPUTE RESOLUTION PROCEDURE

Any and all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial. The Individual Dispute Resolution Agreement is recorded against the Home.

**BY INITIALING IN THE SPACE BELOW, YOU AND BUILDER AGREE TO HAVE ANY DISPUTE DECIDED BY THE ABOVE DISPUTE RESOLUTION PROCEDURE AND YOU AND BUILDER ARE GIVING UP ANY RIGHTS YOU AND BUILDER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU AND BUILDER ARE GIVING UP THEIR RESPECTIVE JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THIS LIMITED WARRANTY. IF YOU OR BUILDER REFUSES TO SUBMIT TO THE DISPUTE RESOLUTION PROCEDURE, AFTER AGREEING TO THIS PROVISION, YOU OR BUILDER MAY BE COMPELLED TO COMPLY WITH THE FOREGOING DISPUTE RESOLUTION PROCEDURE.**

**I/WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES IN ACCORDANCE WITH THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**

**BUYERS' INITIALS: X___ X X___ ; BUILDER'S INITIALS: X___**

## SECTION 15

### CLAIMS UNDER INDIVIDUAL DISPUTE
### RESOLUTION AGREEMENT

Builder has elected to use certain procedures for the resolution of construction defect claims regarding Your Home, as allowed by the Right to Repair Law ("***Right to Repair Claims Procedure***"). The Right to Repair Claims Procedure is in the Individual Dispute Resolution Agreement that You and Builder have signed. Your providing Builder with a Service Request Form or any other notice of any alleged Covered Claim under this Limited Warranty **DOES NOT** constitute a "Notice of Claim" under the Individual Dispute Resolution Agreement or a claim under the Right to Repair Act or any law or statute. **THE REPORTING AND NOTICE PROCEDURES SET FORTH IN THIS LIMITED WARRANTY APPLY SOLELY TO COVERED CLAIMS UNDER THIS LIMITED WARRANTY, AND DO NOT IN ANY WAY CONSTITUTE ANY ELECTION TO USE OR COMMENCEMENT OF THE CLAIMS PROCESSES AND DISPUTE RESOLUTION PROCEDURES IN THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.**

**SECTION 16**

**EFFECT ON FUTURE OWNERS OF THE HOME**


All of Your rights and obligations under the Limited Warranty shall, unless previously released by You or Your successor, fully transfer to each successor owner of the Home, including any mortgagee in possession, for the remainder of the applicable Warranty Term and any transfer shall in no way affect, increase or reduce the coverage under the Limited Warranty for its unexpired term.

If you sell Your Home during the Warranty Term, You agree to give this Limited Warranty to the successor owner to inform the successor owner of warranty rights and to otherwise make it possible for the successor owner to fulfill the successor owner's obligations under the terms of the Limited Warranty and the applicable Maintenance Guidelines.  If You are an owner other than the original purchaser of the Home, You are bound by all the terms and conditions of the Limited Warranty, including, but not limited to, claims procedures and the requirement to submit any disputes that may arise under the Limited Warranty to binding arbitration or judicial reference pursuant to the Individual Dispute Resolution Agreement which is recorded against the Home.  If You are a subsequent purchaser and require a copy of the Individual Dispute Resolution Agreement, you may also contact Builder for a copy.

YOU AND BUILDER ACKNOWLEDGE THAT THIS LIMITED WARRANTY CONTAINS
TERMS, CONDITIONS, LIMITATIONS, WAIVERS, AND EXCLUSIONS THAT AFFECT
THE LEGAL RIGHTS OF EACH OF YOU.  BY YOUR SIGNATURE BELOW, BOTH
YOU AND BUILDER ACKNOWLEDGE THAT YOU HAVE HAD THE OPPORTUNITY
TO OBTAIN THE ADVICE OF LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED
WARRANTY.  YOU ACKNOWLEDGE THAT BUILDER HAS ADVISED YOU TO SEEK
LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED WARRANTY.  YOU AND
BUILDER AGREE TO BE BOUND BY ALL OF THE PROVISIONS OF THIS LIMITED
WARRANTY.

Dated: 5/15/2024 _____                    _____
                                                BUILDER

Buyer _____                Dated: 6/24/2024

Buyer _____                Dated: 6/24/2024

Buyer _____                Dated: _____

Buyer _____                Dated: _____

Lot:        88 _____

Address:    129 Oakstone _____

            Irvine, CA 92618

# Exhibit 238

Recording Requested By:
First American Title Company
Homebuilder Services Division

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 22.00
* S R 0 0 1 5 0 1 0 1 1 3 S *
**2024000156492 8:00 am 06/25/24**
491 CR-SC06 G02   6 26
2127.13 2127.12 0.00 0.00 15.00 0.00 0.000.000.00 0.00

Order No. 6923749
Escrow No. 87410-SR
Loan No.

**WHEN RECORDED MAIL TO:**

Xian Feng Gu, Trustee
Di Lan Ge, Trustee
746 Country Club Ln
Fond du Lac, WI 54935

DOCUMENTARY TRANSFER TAX $ 4,254.25

✓ Computed on the Consideration or value of property conveyed; OR
__ Computed on the consideration or value less liens or encumbrances
remaining at time of sale. (X) City of Irvine

SPACE ABOVE THIS LINE FOR RECORDER'S USE

_Starling Rich, Escrow Specialist_
Signature of Declarant or Agent determining tax - Firm Name

APN: 591.781.57          **GRANT DEED**

For valuable consideration, receipt of which is hereby acknowledged,

**THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company
(*"Grantor"*)** hereby grants to Xian Feng Gu and Di Lan Ge, Trustees of The Xian Feng Gu and Di Lan Ge
Revocable Trust dated the 26th day of November, 2002

(*"Grantee"*) the real property in the City of Irvine, County of Orange, State of California, described on Exhibit "A"
attached hereto and incorporated herein by this reference.

Dated: **May 16**_____, 2024

Exempt from fee per GC 27388.1 (a) (2); This
document is subject to Documentary Transfer Tax.

**"GRANTOR"**

THE NEW HOME COMPANY SOUTHERN
CALIFORNIA LLC, a Delaware limited liability
company

By: _____

Its: Authorized Signatory    Lori Michel

**MAIL TAX STATEMENTS TO: _SAME AS ABOVE_**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF ORANGE )

On __May 16_____, 2024, before me, __Sherry Ivery_____,
Notary Public, personally appeared __Lori Michel_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SHERRY IVERY
Notary Public - California
Orange County
Commission # 2403177
My Comm. Expires May 4, 2026

*(SEAL)*

## EXHIBIT "A"

**PARCEL 1:**

Lot 88 of Tract No. 19176 as shown on a map recorded in Book 1000, Pages 27 through 37, inclusive, of the Miscellaneous Maps of Orange County, California (the "**Property**").

EXCEPTING THEREFROM all water rights as conveyed to Irvine Ranch Water District in the Quitclaim Deed recorded on June 21, 2006 as Instrument No. 2006000416403 in the Official Records of Orange County, California.

ALSO EXCEPTING THEREFROM all oil, minerals and other rights as reserved to The Irvine Company, its successors and assigns, per deed recorded on April 18, 2003 as Instrument No. 2003000436059 in the Official Records of Orange County, California, and per any other documents of record.

ALSO EXCEPTING THEREFROM all of those certain rights and easements for, among other things, a community antenna television system, communication and utility facilities and systems, vehicular and pedestrian access, and the construction and maintenance of certain other improvements, systems and facilities, all as more specifically described and reserved to Irvine Community Development Company LLC, a Delaware limited liability company ("Master Developer"), its successors and assigns, in the Grant Deed(s) from Master Developer to Grantor recorded in the Official Records of Orange County, California.

RESERVING THEREFROM unto Grantor, its successors and assigns, together with the right (without the consent of Grantee or any other owner of any interest in the Property) to grant or transfer the same, nonexclusive easements for the installation, maintenance and repair of utilities and related facilities (including, but not limited to, electrical, telephone, cable television, communication, gas, water and sewer lines, utility meters, storm drains, street lights, mail boxes, fire hydrants and traffic signs) as shown on the map of Tract 19176 or otherwise of record.

ALSO RESERVING THEREFROM for the benefit of the Portola Springs Community Association, a California nonprofit mutual benefit corporation (the "Master Association") nonexclusive easements for ingress, egress, access, encroachment, support, maintenance, repairs, drainage, enforcement and all other purposes as set forth in that certain "Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs" recorded on September 18, 2006 as Instrument No. 2006000619895, as same may be restated and/or amended from time to time (the "Master Declaration"), and/or in that certain "Notice of Annexation to Portola Springs" recorded on April 11, 2024 as Instrument No. 2024000090939, as same may be re-recorded, restated and/or amended from time to time (the "Notice of Annexation"), both in the Official Records of Orange County, California.

ALSO RESERVING THEREFROM a nonexclusive easement for drainage and for the installation, maintenance, repair and replacement of a Retaining Wall Sub-

Drainage Pipe (the "Retaining Wall Sub-Drainage Easement") on, over, under, across and through the Property (as a "Downstream Property") in favor of each Upstream Property, as more particularly set forth in the Notice of Annexation, if applicable.

FURTHER RESERVING THEREFROM unto Grantor, its successors and assigns, together with the right (without the consent of Grantee or any other owner of any interest in the Property) to grant or transfer the same, nonexclusive easements for ingress, egress, access, encroachment, support, maintenance, repairs, drainage and all other purposes as set forth in the Master Declaration and/or in the Notice of Annexation.

**PARCEL 2:   Nonexclusive Easement for Retaining Wall Sub-Drainage:**

A nonexclusive easement appurtenant to the Property (as an "Upstream Property") on, over, under, across and through each "Downstream Property" for drainage and for the installation, maintenance, repair and replacement of the Retaining Wall Sub-Drainage Pipe (the "Retaining Wall Sub-Drainage Easement"), as more particularly set forth in the Notice of Annexation, if applicable.

**PARCEL 3:   Nonexclusive Easements for Access and Other Purposes under the Master Declaration and the Notice of Annexation:**

Nonexclusive easements for ingress, egress, access, maintenance, repairs, drainage, encroachment, support, use, enjoyment and for all other purposes as set forth in the Master Declaration and/or in the Notice of Annexation.

**SUBJECT TO:**

1.    Non-delinquent general and special real property taxes and assessments, if any, for the current fiscal year;

2.    The Master Declaration and the Notice of Annexation;

3.    That certain Declaration of Solar Energy Covenants and Restrictions for Olivewood recorded on March 14, 2024 as Instrument No. 2024000056634, and the Declaration of Annexation to Solar Energy Covenants and Restrictions for Olivewood (Phase 2) recorded on April 11, 2024 as Instrument No. 2024000090941, as same may be re-recorded, restated and/or amended from time to time, both in the Official Records of Orange County, California (collectively the "Solar Declaration");

4.    That certain Declaration of Dispute Resolution Procedures for Olivewood recorded on March 14, 2024 as Instrument No. 2024000056633, the Supplemental Declaration of Dispute Resolution Procedures for Olivewood (Phase 2) recorded on April 11, 2024 as Instrument No. 2024000090940, and the Individual Dispute Resolution Agreement recorded concurrently herewith, as same may be re-

recorded, restated and/or amended from time to time, all in the Official Records of Orange County, California (collectively the "Dispute Resolution Documents");

5.    All other covenants, conditions, restrictions, easements, rights, rights-of-way, dedications, offers of dedication and other matters of record or apparent.

THIS DEED is made and accepted and the real property conveyed hereby is granted subject to the covenants, conditions, restrictions, easements, reservations, rights, uses, limitations, equitable servitudes, liens, charges and all other terms and provisions (collectively the "Protective Covenants") set forth in the Master Declaration, the Notice of Annexation, the Solar Declaration and/or the Dispute Resolution Documents, and to all other matters referenced above, each and all of which are hereby made a part hereof and expressly imposed on said real property by this reference with the same effect as though fully set forth herein.

GRANTEE, by acceptance and recordation of this Deed, hereby (a) accepts and approves all of the foregoing in this Deed and (b) grants to Grantor, Master Developer and the Master Association such powers and rights as are set forth in the Master Declaration, the Notice of Annexation, the Solar Declaration and the Dispute Resolution Documents. In furtherance thereof, Grantee is obligated to fully and faithfully comply with each and all of the Protective Covenants set forth in the Master Declaration, the Notice of Annexation, the Solar Declaration and the Dispute Resolution Documents for the benefit Grantor, Master Developer, the Master Association and each and every Owner bound thereby, and this obligation shall be binding upon Grantee and Grantee's successors, assigns and grantees.

ACCEPTANCE

Grantee hereby accepts the conveyance from Grantor of the real property described herein, subject to the Protective Covenants set forth in the documents referenced above and to all other matters referenced above.

Dated: _____June 24_____, 2024

_____
Xian Feng Gu, Trustee

_____
Di Lan Ge, Trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA    )
                       )
COUNTY OF ORANGE       )

On June 24, 2024 , 202_, before me, Leakimna Choeum ,
Notary Public, personally appeared Di Lan Ge and
Xian Feng Chi Gu , who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

   I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

LEAKIMNA CHOEUM
Notary Public - California
Orange County
Commission # 2367605
My Comm. Expires Jul 24, 2025

*(SEAL)*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA    )
                       )
COUNTY OF ORANGE       )

On _____ , 202_, before me, _____,
Notary Public, personally appeared _____ and
_____ , who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

   I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

*(SEAL)*

Page 4 of 4

# Exhibit 239

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

| Closing Information | | Transaction Information | | Loan Information | |
|---|---|---|---|---|---|
| **Date Issued** | 06/18/2024 | **Borrower** | Xian Feng Gu | **Loan Term** | 30 years |
| **Closing Date** | 06/22/2024 | | Di Lan Ge | **Purpose** | Purchase |
| **Disbursement Date** | 06/24/2024 | | 746 Country Club Ln | **Product** | 7/1 Adjustable Rate |
| **Settlement Agent** | The Escrow Specialists, I | | Fond du Lac, WI 54935 | | |
| **File #** | 87418-SR | **Seller** | The New Home Company Southern Ca | **Loan Type** | ☒ Conventional ☐ FHA |
| **Property** | 129 Oakstone | | 15231 Laguna Canyon Road, Suite | | ☐ VA ☐ _____ |
| | Irvine, CA 92618 | | Irvine, CA 92618 | **Loan ID #** | 2490876227 |
| | | **Lender** | U.S. Bank National Association | **MIC #** | |
| **Sale Price** | $3,867,154.00 | | | | |

## Loan Terms

| | | Can this amount increase after closing? | |
|---|---|---|---|
| **Loan Amount** | $1,000,000 | **NO** | |
| **Interest Rate** | 7% | **YES** | • Adjusts every 1 year starting in Year 8<br>• Can go as high as 12% in year 8<br>• See AIR Table on page 4 for details |
| **Monthly Principal & Interest**<br>*See Projected Payments below for your Estimated Total Monthly Payment* | $6,653.02 | **YES** | • Adjusts every 1 year starting in Year 8<br>• Can go as high as $9,740 in year 8 |
| | | Does the loan have these features? | |
| **Prepayment Penalty** | | **NO** | |
| **Balloon Payment** | | **NO** | |

## Projected Payments

| Payment Calculation | Years 1-7 | Year 8 | Year 9 | Years 10-30 |
|---|---|---|---|---|
| Principal & Interest | $6,653.02 | $4,460 min<br>$9,740 max | $4,460 min<br>$9,740 max | $4,460 min<br>$9,740 max |
| Mortgage Insurance | + 0.00 | + 0.00 | + 0.00 | + 0.00 |
| Estimated Escrow<br>*Amount can increase over time* | + 0.00 | + 0.00 | + 0.00 | + 0.00 |
| **Estimated Total Monthly Payment** | **$6,653.02** | **$4,460-$9,740** | **$4,460-$9,740** | **$4,460-$9,740** |

| Estimated Taxes, Insurance & Assessments<br>*Amount can increase over time*<br>*See page 4 for details* | $4,351.47<br>a month | **This estimate includes** | **In escrow?** |
|---|---|---|---|
| | | ☒ Property Taxes | NO |
| | | ☒ Homeowner's Insurance | NO |
| | | ☒ Other: HOA Dues | NO |
| | | *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | |

## Costs at Closing

| **Closing Costs** | $23,924.50 | Includes $10,652.09 in Loan Costs + $14,272.41 in Other Costs - $1,000.00 in Lender Credits. *See page 2 for details.* |
|---|---|---|
| **Cash to Close** | $2,732,293.89 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* |

## Closing Cost Details

| Loan Costs | | Borrower-Paid At Closing | Borrower-Paid Before Closing | Seller-Paid At Closing | Seller-Paid Before Closing | Paid by Others |
|---|---|---|---|---|---|---|
| **A. Origination Charges** | | **$3,195.00** | | | | |
| 01 0.19% of Loan Amount (Points) | | $1,900.00 | | | | |
| 02 Application Fee | | | $395.00 | | | |
| 03 Commitment Fee | | $900.00 | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **B. Services Borrower Did Not Shop For** | | **$1,105.79** | | | | |
| 01 Appraisal Fee | to Red Sky | $825.00 | | | | |
| 02 Before Final Inspect | to Red Sky | $150.00 | | | | |
| 03 Credit Report Fee | to Equifax | $38.79 | | | | (L)$168.28 |
| 04 Flood Certificate Fee | to CoreLogic Flood Services, LLC | $8.00 | | | | |
| 05 Tax Service Fee | to CoreLogic Tax Services, LLC | $84.00 | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| 09 | | | | | | |
| **C. Services Borrower Did Shop For** | | **$6,351.30** | | | | |
| 01 Title - Courier Express Mail | to First American Title | $72.00 | | | | |
| 02 Title - Doc Prep Fee | to The Escrow Specialists, Inc. | $50.00 | | | | |
| 03 Title - IDRA | to First American Title | $210.00 | | | | |
| 04 Title - Lender's Title Ins | to First American Title | $1,248.30 | | | | |
| 05 Title - Messenger Fee | to The Escrow Specialists, Inc. | $85.00 | | | | |
| 06 Title - Notary Fee | to The Escrow Specialists, Inc. | $250.00 | | | | |
| 07 Title - Recording Service Fee | to First American Title | $31.00 | | | | |
| 08 Title - Settlement Esc Service | to The Escrow Specialists, Inc. | $4,255.00 | | | | |
| 09 Title - Sub-escrow Fee | to First American Title | $150.00 | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$10,652.09** | | | | |
| Loan Costs Subtotals (A + B + C) | | $10,257.09 | $395.00 | | | |

| Other Costs | | | | | | |
|---|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$4,404.25** | | | | |
| 01 Recording Fees | Deed: $50.00     Mortgage: $100.00 | $150.00 | | | | |
| 02 Documentary Transfer Tax Cnty | to Orange County Recorder | $4,254.25 | | | | |
| **F. Prepaids** | | **$6,707.46** | | | | |
| 01 Homeowner's Insurance Premium (12 mo.) to California FAIR Plan | | $4,605.00 | | | | |
| 02 Mortgage Insurance Premium (   mo.) | | | | | | |
| 03 Prepaid Interest ($191.78 per day from 06/24/24 to 07/01/24) | | $1,342.46 | | | | |
| 04 Property Taxes (   mo.) | | | | | | |
| 05 Other Insurance Premium (12 mo.) to American Modern | | $760.00 | | | | |
| **G. Initial Escrow Payment at Closing** | | | | | | |
| 01 Homeowner's Insurance | per month     for     mo. | | | | | |
| 02 Mortgage Insurance | per month     for     mo. | | | | | |
| 03 Property Taxes | per month     for     mo. | | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 Aggregate Adjustment | | | | | | |
| **H. Other** | | **$3,160.70** | | | | |
| 01 Association Dues | to Portola Springs Community Association | $183.00 | | | | |
| 02 RE Commission Buyers Broker | to Pinnacle Real Estate Group | | | $45,000.00 | | |
| 03 Release Recording | to First American Title | | | $175.00 | | |
| 04 Title - Owner's Cov(optional) | to First American Title | $2,912.70 | | | | |
| 05 Transfer Fee | to Keystone Pacific Property Management, LL | $65.00 | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$14,272.41** | | | | |
| Other Costs Subtotals (E + F + G + H) | | $14,272.41 | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$23,924.50** | | | | |
| Closing Costs Subtotals (D + I) | | $24,529.50 | $395.00 | $45,175.00 | | $168.28 |
| Lender Credits | | − $1,000.00 | | | | |

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $26,425 | $23,924.50 | YES • See Total Loan Costs (D) and Total Other Costs (I) |
| Closing Costs Paid Before Closing | $0 | − $395.00 | YES • You paid these Closing Costs before closing |
| Closing Costs Financed (Paid from your Loan Amount) | $0 | $0 | NO |
| Down Payment/Funds from Borrower | $2,867,154 | $2,867,154.00 | NO |
| Deposit | − $158,582 | − $158,582.00 | NO |
| Funds for Borrower | $0 | $0 | NO |
| Seller Credits | $0 | $0 | NO |
| Adjustments and Other Credits | $0 | $192.39 | YES • See details in Sections K and L |
| Cash to Close | $2,734,997 | $2,732,293.89 | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

| BORROWER'S TRANSACTION | | SELLER'S TRANSACTION | |
|---|---|---|---|
| K. Due from Borrower at Closing | $3,890,876.89 | M. Due to Seller at Closing | |
| 01 Sale Price of Property | $3,867,154.00 | 01 Sale Price of Property | |
| 02 Sale Price of Any Personal Property Included in Sale | | 02 Sale Price of Any Personal Property Included in Sale | |
| 03 Closing Costs Paid at Closing (J) | $23,529.50 | 03 | |
| 04 | | 04 | |
| Adjustments | | 05 | |
| 05 NHD | $110.00 | 06 | |
| 06 | | 07 | |
| 07 | | 08 | |
| Adjustments for Items Paid by Seller in Advance | | Adjustments for Items Paid by Seller in Advance | |
| 08 City/Town Taxes        to | | 09 City/Town Taxes | |
| 09 County Taxes    06/24/24 to 07/01/24 | $39.69 | 10 County Taxes | |
| 10 Assessments            to | | 11 Assessments | |
| 11 Homeowners Association Dues 06/24/24 to 07/01/24 | $42.70 | 12 | |
| 12 | | 13 | |
| 13 | | 14 | |
| 14 | | 15 | |
| 15 | | 16 | |
| L. Paid Already by or on Behalf of Borrower at Closing | $1,158,582.00 | N. Due from Seller at Closing | |
| 01 Deposit | $158,582.00 | 01 Excess Deposit | |
| 02 Loan Amount | $1,000,000.00 | 02 Closing Costs Paid at Closing (J) | |
| 03 Existing Loan(s) Assumed or Taken Subject to | | 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 | | 04 Payoff of First Mortgage Loan | |
| 05 Seller Credit | | 05 Payoff of Second Mortgage Loan | |
| Other Credits | | 06 | |
| 06 | | 07 | |
| 07 | | 08 Seller Credit | |
| Adjustments | | 09 | |
| 08 | | 10 | |
| 09 | | 11 | |
| 10 | | 12 | |
| 11 | | 13 | |
| Adjustments for Items Unpaid by Seller | | Adjustments for Items Unpaid by Seller | |
| 12 City/Town Taxes        to | | 14 City/Town Taxes | |
| 13 County Taxes           to | | 15 County Taxes | |
| 14 Assessments            to | | 16 Assessments | |
| 15 | | 17 | |
| 16 | | 18 | |
| 17 | | 19 | |
| CALCULATION | | CALCULATION | |
| Total Due from Borrower at Closing (K) | $3,890,875.89 | Total Due to Seller at Closing (M) | |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | − $1,158,582.00 | Total Due from Seller at Closing (N) | |
| Cash to Close ☒ From ☐ To Borrower | $2,732,293.89 | Cash ☐ From ☐ To Seller | |

# Additional Information About This Loan

## Loan Disclosures

**Assumption**
If you sell or transfer this property to another person, your lender

- [X] will allow, under certain conditions, this person to assume this loan on the original terms.
- [ ] will not allow assumption of this loan on the original terms.

**Demand Feature**
Your loan

- [ ] has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.
- [X] does not have a demand feature.

**Late Payment**
If your payment is more than *15* days late, your lender will charge a late fee of *5 percent of the monthly principal and interest payment.*

**Negative Amortization** (Increase in Loan Amount)
Under your loan terms, you

- [ ] are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
- [ ] may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
- [X] do not have a negative amortization feature.

**Partial Payments**
Your lender

- [ ] may accept payments that are less than the full amount due (partial payments) and apply them to your loan.
- [ ] may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.
- [X] does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

**Security Interest**
You are granting a security interest in
*the real property located at: 129 Oakstone, Irvine, CA 92618*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

**Escrow Account**
*For now,* your loan

- [ ] will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your escrowed property costs: |
| Non-Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your non-escrowed property costs:  You may have other property costs. |
| Initial Escrow Payment | | A cushion for the escrow account you pay at closing. See Section G on page 2 |
| Monthly Escrow Payment | | The amount included in your total monthly payment. |

- [X] will not have an escrow account because [X] you declined it [ ] your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | $52,217.68 | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

*In the future,*
Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Adjustable Interest Rate (AIR) Table

| | |
|---|---|
| Index + Margin | 1 Year Treasury Index + 2.75% |
| Initial Interest Rate | 7% |
| Minimum/Maximum Interest Rate | 2.75%/12% |
| **Change Frequency** | |
| First Change | Beginning of 85th month |
| Subsequent Changes | Every 12 months after first change |
| **Limits on Interest Rate Changes** | |
| First Change | 5% |
| Subsequent Changes | 2% |

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $2,546,611.58 |
| **Finance Charge.** The dollar amount the loan will cost you. | $1,544,349.49 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $990,267.54 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 7.491% |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 153.596% |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of the loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,

☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.

☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | U.S. Bank National Association | | Pinnacle Real Estate Group | NEW HOME COMPANY SOUTHERN CALIFORNIA LLC | The Escrow Specialists, Inc. |
| **Address** | 9380 Excelsior Blvd Hopkins, MN 55343 | | 2633 S BALDWIN AVE Arcadia, CA 910071904 | 15231 LAGUNA CANYON RD STE 250 Irvine, CA 92618 | 2 Corporate Park, Suite 210 Irvine, CA 92606 |
| **NMLS ID** | 402761 | | | | |
| **CA License ID** | | | 01918023 | 1870227 | 963-0800 |
| **Contact** | Justin Pope | | Ming Li | Dave Christensen | Starling Rich |
| **Contact NMLS ID** | 484146 | | | | |
| **Contact CA License ID** | | | 02011879 | 01389799 | |
| **Email** | justin.pope@usbank.com | | lmzwj0206@gmail.com | dchristensen@newhomeco.com | srich@theescrowspecialists.com |
| **Phone** | (949)863-2402 | | (626)534-6455 | (949)508-2064 | (949)261-6222 |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_signature_    6/24/2024
**Xian Feng Gu**          Date

_signature_    6/24/2024
**Di Lan Ge**             Date

CLOSING DISCLOSURE
Wolters Kluwer Financial Services © 2021        2024061824.2.0.5604-J20240219Y

PAGE 5 OF 5

• LOAN ID # 2490876227
Borrower Only - 06/2023

# Closing Disclosure Addendum

**Date Issued 06/18/2024**

**Seller**

The New Home Company Southern California, LLC a Delaware limited liability company

15231 Laguna Canyon Road, Suite 250

Irvine, CA 92618

# Exhibit 240

# STATE OF CALIFORNIA
# DEPARTMENT OF REAL ESTATE

In reviewing a licensee's information, please be aware that license discipline information may have been removed from a licensee's record pursuant to Business & Professions Code Section 10083.2 (c). However, discipline information may be available from the California Department of Real Estate upon submittal of a request, or by calling the Department's public information line at 1-877-373-4542.

The license information shown below represents public information. It will not reflect pending licensing changes which are being reviewed for subsequent updating. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.

Some historical disciplinary action documents may not be in compliance with certain accessibility functions. For assistance with these documents, please contact the Department's Licensing Flag Section.

License information taken from records of the Department of Real Estate on 4/6/2025 2:23:33 PM

| | |
|---|---|
| **License Type:** | CORPORATION |
| **Name:** | TNHC Realty and Construction Inc |
| **Mailing Address:** | 15231 LAGUNA CANYON RD STE 250 IRVINE, CA 92618 |
| **License ID:** | 01870227 |
| **Expiration Date:** | 05/29/27 |
| **License Status:** | LICENSED |
| **Corporation License Issued:** | 08/27/09 |
| **Former Name(s):** | NO FORMER NAMES |
| **Main Office:** | 15231 LAGUNA CANYON RD STE 250 IRVINE, CA 92618 |
| **Licensed Officer(s):** | DESIGNATED OFFICER 02196303 - Expiration Date: 05/29/27 Harbur, Miek<br><br>01203925 - Expiration Date: 08/26/25 Battaglia, Michael Charles<br><br>01029053 - Expiration Date: 08/26/25 Alkon, Jose Alejandro OFFICER CANCELED AS OF 03/04/22<br><br>00874521 - Expiration Date: 08/26/13 Stelmar, Wayne James OFFICER CANCELED AS OF 06/11/12 |

01913435 - Expiration Date: 08/26/21
Webb, Joan Marcus
OFFICER LICENSE EXPIRED AS OF 08/27/21

**DBA**                Bedford South Corona
                       ACTIVE AS OF 09/12/2016

                       The Cannery
                       ACTIVE AS OF 09/12/2016

                       McKinley Village
                       ACTIVE AS OF 09/12/2016

                       New Home
                       ACTIVE AS OF 09/12/2016

                       New Home Co.
                       ACTIVE AS OF 09/12/2016

                       The New Home Company
                       ACTIVE AS OF 07/29/2016

                       NWHM
                       ACTIVE AS OF 09/12/2016

                       Russell Ranch
                       ACTIVE AS OF 09/12/2016

                       TNHC
                       ACTIVE AS OF 09/12/2016

**Branches:**          14873 RUSTIC RIDGE CIR
                       FOLSOM, CA 95630

                       14973 PRAIRIE GOLD CIR
                       FOLSOM, CA 95630

                       1508 EUREKA ROAD
                       SUITE 290
                       ROSEVILLE, CA 95661

                       15218 JANINE DRIVE UNIT 1
                       WHITTIER, CA 90605

                       1610 LAKESIDE DR
                       LATHROP, CA 95330

207 MISTWATER
IRVINE, CA 92618

215 PINNACLE
IRVINE, CA 92602

2461 E. HYDE PASEO
ONTARIO, CA 91764

2731 MULHOLLAND DR
LATHROP, CA 95330

2767 MULHOLLAND DR
LATHROP, CA 95330

309 FORTIFY COURT
ROSEVILLE, CA 95747

3194 BEATTY DRIVE
EL DORADO HILLS, CA 95762

4002 SPRING LANE
CORONA, CA 92883

4002 SPRING LN
CORONA, CA 92883

4065 E. LILIANA PASEO
ONTARIO, CA 91764

4113 MONTEREY GROVE DR
GRANITE BAY, CA 95746

4119 MONTEREY GROVE DR
GRANITE BAY, CA 95746

4160 CAVITT STALLMAN
GRANITE BAY, CA 95746

4575 GREENBRAE RD
ROCKLIN, CA 95677

5500 CANNES WAY
FAIR OAKS, CA 95628

6065 WATERTON DRIVE
EASTVALE, CA 92880

8444 COTTONSEED WAY
ELK GROVE, CA 95624

8827 EUREKA CIRCLE
GRANITE BAY, CA 95746

8835 EUREKA GROVE CIRCLE
GRANITE BAY, CA 95746

9690 AIRE PL
RANCHO CUCAMONGA, CA 91730

W 11TH STREET AND N CENTRAL AVE
UPLAND, CA 91786

**Broker Associates:**    01489204 - Gailey, Jennifer Maureen
License Expiration Date: 12/20/2027

01456355 - Nguyen, Katrina Thi Thanh Thuy
License Expiration Date: 08/28/2028

01264261 - Stickelman, Laura Kay
License Expiration Date: 03/27/2027

**Salespersons:**    01309415 - Andrews, Cynthia Renee
License Expiration Date: 04/29/2025

01078922 - Aquino, Demetrio F Jr
License Expiration Date: 07/14/2026

01396712 - Beeks, Twanda Renea
License Expiration Date: 08/21/2027

02001832 - Burgman, Ryan Benjamin
License Expiration Date: 03/14/2028

00978873 - Cheshire, Malia K
License Expiration Date: 07/05/2028

01389799 - Christensen, David John
License Expiration Date: 06/20/2027

01403623 - Coffey, Joanne Susan
License Expiration Date: 01/29/2028

01951180 - Coleman, Kristin Aldene
License Expiration Date: 05/28/2026

02032402 - Demartino, Kyle K
License Expiration Date: 04/20/2025

01380132 - Drummy, Gilma A
License Expiration Date: 05/08/2027

01433597 - Dwyer, Steven George
License Expiration Date: 02/28/2026

02047063 - Earl, Unique Melanie
License Expiration Date: 09/13/2026

02039009 - Greyshock, Jennifer Lauren
License Expiration Date: 11/28/2025

01402197 - Hobiera, Gregory Lee
License Expiration Date: 01/15/2028

01452389 - Korczynski, Justyna
License Expiration Date: 09/03/2028

01719501 - Krehbiel, Ashley Elizabeth
License Expiration Date: 11/18/2025

02179693 - Lopez Chavez, Yesica E
License Expiration Date: 08/31/2026

01219192 - Michel, Lori Denise
License Expiration Date: 01/29/2029

02140781 - Rakela, Nicolas Reve
License Expiration Date: 05/27/2025

02226480 - Santos, Macie
License Expiration Date: 03/20/2028

01985079 - Tsai, William Wei-Lun
License Expiration Date: 08/30/2027

01296475 - Villery, Roderick Lorne
License Expiration Date: 09/17/2028

02011480 - Yarberry, Jennifer Sue
License Expiration Date: 12/14/2028

**Comment**:                    NO DISCIPLINARY ACTION

                                NO OTHER PUBLIC COMMENTS

>>>> Public information request complete <<<<

# Exhibit 241

## The Escrow
## Specialists, Inc.

41 Corporate Park, Suite 300, Irvine, CA 92606
Tel: (949) 261-6222 • Fax: (949) 975-1996

**BUYER/BORROWER STATEMENT**
**Final**

| | |
|---|---|
| **File No.:**  87418-SR | **Printed Date/Time:** 06/25/2024 - 11:50:39AM |
| **Officer/Escrow Officer:** Starling Rich | Page      1 of 2 |
| | **Closing Date:** 06/25/2024 |
| | **Disbursement Date:** 06/25/2025 |
| | **Loan Number:** 2490876227 |

**Buyer/Borrower:** Investment Property Exchange Services, Inc. as Qualified Intermediary for Di Lan Ge, Trustee and Investment Property
Exchange Services, Inc. as Qualified Intermediary for Xian Feng Gu, Trustee
601 California Street, Suite 1501, San Francisco, CA  94108

**Seller:** The New Home Company Southern California, LLC a Delaware limited liability company
15231 Laguna Canyon Road, Suite 250, Irvine, CA  92618

**Property:** 129 Oakstone, Irvine, CA  92618

Lot: 88    Tract: 19176

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | 3,867,154.00 | |
| Earnest Money | | 75,000.00 |
| Additional Deposit | | 25,910.00 |
| Additional Deposit | | 57,672.00 |
| Additional Deposit | | 500,000.00 |
| Additional Deposit | | 1,287,243.80 |
| Additional Deposit | | 500,000.00 |
| Additional Deposit | | 445,538.12 |
| **PRORATIONS/ADJUSTMENTS:** | | |
| Property Tax @ 1,020.57 per 6 month(s) 6/25/2024 to 7/01/2024 | 34.02 | |
| Association Dues @ 183.00 per 1 month(s) 6/25/2024 to 7/01/2024 | 36.60 | |
| **TITLE CHARGES** | | |
| Owner's Premium for 3,867,154.00: First American Title | 2,912.70 | |
| Lender/Mortgagee Premium for 1,000,000.00: First American Title | 1,248.30 | |
| Sub-Escrow Fee: First American Title | 150.00 | |
| Deed: First American Title | 22.00 | |
| Mortgage Recording Fee: First American Title | 112.00 | |
| County Transfer Tax: First American Title | 4,254.25 | |
| Recording Service Fee: First American Title | 31.00 | |
| Title Messenger Fee: First American Title | 53.76 | |
| IDRA: First American Title | 166.00 | |
| Notary/Signing Fee: Leakimna Choeum | 250.00 | |
| **ESCROW CHARGES TO: The Escrow Specialists, Inc.** | | |
| Settlement Agent Fee | 4,255.00 | |
| Messenger Fee | 85.00 | |
| Document Preparation Fee | 50.00 | |
| **LENDER CHARGES** | | |
| New Deed of Trust to U.S. Bank National Association: | | 1,000,000.00 |
| Prepaid Interest From  6/24/2024 To  7/01/2024, 7 Days, @ 191.7800/per day: U.S. Bank National Association | 1,342.46 | |
| Tax Service: Corelogic | 84.00 | |
| Flood Certification: CoreLogic Flood Service | 8.00 | |
| Appraisal: Red Sky | 825.00 | |
| Credit Report: Equifax $168.28 PBO New Lender | 38.79 | |
| Commitment Fee: U.S. Bank National Association | 900.00 | |
| Application Fee: U.S. Bank National Association $395.00 POC Borrower | | |
| Inspection Fee: Red Sky | 150.00 | |



# The Escrow
## Specialists, Inc.

41 Corporate Park, Suite 300, Irvine, CA 92606
Tel: (949) 261-6222 • Fax: (949) 975-1996

**BUYER/BORROWER STATEMENT**
**Final**

**File No.:** 87418-SR

**Printed Date/Time:** 06/25/2024 - 11:50:39AM
Page      2 of 2

**Property:** 129 Oakstone, Irvine, CA 92618

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| Lender Credit: U.S. Bank National Association | | 1,000.00 |
| Discount Points: U.S. Bank National Association | 1,900.00 | |
| **ADDITIONAL DISBURSEMENTS:** | | |
| NHD/Tax Disclosure: Disclosure Source | 110.00 | |
| Homeowner's Insurance: California Fair Plan Association | 4,605.00 | |
| Homeowner's Insurance: American Modern | 760.00 | |
| Transfer Fee: Keystone Pacific Property Management, LLC | 65.00 | |
| Association Dues: Olivewood Community Association | 183.00 | |
| **SUBTOTALS** | 3,891,785.88 | 3,892,363.92 |
| **DUE TO BUYER/BORROWER** | 578.04 | |
| | | |
| **TOTALS** | 3,892,363.92 | 3,892,363.92 |

THIS IS A FINAL CLOSING STATEMENT

# Exhibit 242

127

# New Residential Construction Permit

**00939967-RBP**

Issue Date: 10/04/2024

**DESCRIPTION OF WORK:**
(eplan) Elevate Phase 3 Cadence Park, Tract 19276, Lot 30.1 Production SFD, Plan 2A.

**City of Irvine**
**Building & Safety Division**
**Community Development Dept.**
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501

**OWNER: >>>>>** HERITAGE FIELDS EL TORO LLC
**ADDRESS:** 2000 FIVEPOINT 4TH FLOOR
**CITY, ST ZIP:** IRVINE CA 92618
**PHONE:** (949) 349-1000

**PLANNING AREA:**

**APPLICANT:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTACT** DAN SHANAHAN 714-347-1388
**PHONE:** (714) 347-1388

**CONTRACTOR:** TOLL BROS INC SOUTHERN CA DIVISION
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTR LIC EXP:** 12/31/2025

**APN:**

**TRACT:** 19276          **LOT:** 30

**IRV BUS LIC:** 240000790          **EXP DATE:** 5/31/2025

**PERMIT FEES:**

| | |
|---|---|
| Automation Fee Inspection | 258.20 |
| SB 1473 fee - Due to State | 24.30 |
| SB 1473 fee - Admin | 2.70 |
| Energy Surcharge Insp | 299.78 |
| Issuance Fee Comm | 65.82 |
| Res SFD/Det Condo or Apt. Insp | 2,286.25 |
| State Seismic Res | 85.18 |
| System Dev Charge Circ | 3,276.27 |
| System Dev Charge Non-Circ | 3,276.27 |
| SlurySeal New Res Max | 65.00 |

**Total Permit Fees: $9,635.77**

**PLAN CHECK #:**

**Receipt#** 00283107

**TCA Receipt:** **TCA:**

**PLANNING APPROVAL-**AMIR RAFIQ 9/17/2024
**BUILDING APPROVAL-**ZHALEH AFRASIABI 9/18/2024
**PERMIT ISSUED BY:** MARK MESSERSMITH  10/4/2024

---

**VALUATION:** $655,253

**CODE YR:** 2022

**STORIES:** 3

**NO. UNITS:** 1

**TOT SQFT:** 4,475

| USE | OCC | SQ FT | CONST TYPE |
|---|---|---|---|
| 142 Res | R-3 | 3,627 | Type VB |
| Priv Gar | U-1 | 442 | Type VB |
| Roof Structure | R-3 | 231 | Wood Patio Covers |
| Roof Structure | R-3 | 49 | Wood Patio Covers |
| Roof Structure | R-3 | 126 | Wood Patio Covers |
| Air Conditioner | | | RESIDENTIAL |
| F.S. SY S/AF PA.130 | | | F.S. SY S/AF PA.130 |

---

## LICENSED CONTRACTORS DECLARATION

I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

License Class        B          Lic No. 683543

Date: 10/04/2024      Contractor: TOLL BROS INC SOUTHERN CA DIVISION

## OWNER-BUILDER DECLARATION

I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:

☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.

☐ I am exempt under Sec. _____ B&P.C, for this Reason: _____

Date: _____      Owner _____

## WORKERS' COMPENSATION DECLARATION

I hereby affirm under penalty of perjury one of the following declarations:

☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:

Carrier _____      Policy # _____

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date _____      Applicant _____

**WARNING:** FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

## CONSTRUCTION LENDING AGENCY

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)

Lender's Name _____
Lender's Address _____

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Signature of Applicant or Agent _____      Date _____

Print Applicant's/Agent's Name _____

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 365 days nor if work is not started in 365 days or more. Residential permit expiration: addition - 18 months, all others 6 months from date of permit.

**See Inspection Record Card for Smoke Detector and Carbon Monoxide Alarm requirements.**

**CONSTRUCTION WORKING HOURS**
Weekdays:  7 AM – 7 PM
Saturday:  9 AM – 6 PM
Sunday/Holiday:  PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 2020, no excavation permit is valid unless the following is performed.
1. The applicant notifies UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

470

**City of Irvine**
Building & Safety Division
Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501



CITY OF IRVINE

# Res Alt/Add/2nd Story Deck Permit

## 00941649-RBPR

**DESCRIPTION OF WORK:**
Issue Date: 10/15/2024
(eplan) Add optional bedroom @ loft to permit 00939967
RBP, Elevate Phase 3 Cadence Park, Tract 19276, Lot 30.
Plan 2A, Model plans under 00918463 RNM.

**ADDRESS:** 156 CREATION
**TRACT:** 19276        **LOT:** 30
**APN:**
**PLANNING AREA:**

---

### CONTRACTOR

Lic.No. 683543

Date: 10/15/2024        Contractor: TOLL BROS INC SOUTHERN CA DIVISION

License Class:  B

### LICENSED CONTRACTORS DECLARATION

I hereby affirm under penalty of perjury that I am licensed under provisions
of Chapter 9 (commencing with Section 7000) of Division 3 of the Business
and Professions Code, and my license is in full force and effect.

### OWNER-BUILDER

Date:

I hereby affirm under penalty of perjury that I am exempt from the
Contractor's License Law for the following reason:

☐ I, as owner of the property, am exclusively contracting with licensed
contractors to construct the project.

☐ I, as owner of the property, or my employees with wages as their sole
compensation, will do the work, and the structure is not intended or
offered for sale.

☐ I am exempt under Sec._____, B&PC, for this
Reason:_____

Owner_____

### OWNER-BUILDER DECLARATION

### WORKERS' COMPENSATION

Date:

I hereby affirm under penalty of perjury one of the following declarations:

☐ I have and will maintain a certificate of consent to self-insure for
workers' compensation, as provided for by Section 3700 of the Labor
Code, for the performance of the work for which this permit is issued.

☐ I have and will maintain workers' compensation insurance, as required
by Section 3700 of the Labor Code, for the performance of the work for
which this permit is issued.  My workers' compensation insurance
carrier and policy number are:

Carrier:_____

Policy #_____

### WORKERS' COMPENSATION DECLARATION

☐ I certify that in the performance of the work for which this permit is
issued, I shall not employ any person in any manner so as to become
subject to the workers' compensation laws of California, and agree that
if I should become subject to the workers' compensation provisions of
Section 3700 of the Labor Code, I shall forthwith comply with those
provisions.

Date:_____        Applicant_____

**WARNING: FAILURE TO SECURE WORKERS' COMPENSATION
COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER
TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED
THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF
COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706
OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.**

### LENDER

### CONSTRUCTION LENDING AGENCY

I hereby affirm under penalty of perjury that there is a construction lending
agency for the performance of the work for which this permit is issued (Sec.
3097, Civ. C.)

Lender's Name:_____

Lender's Address:_____

I certify that I have read this application and state that the above information
is correct.  I agree to comply with all city and county ordinances and state
laws relating to building construction, and hereby authorize representatives
of this city to enter upon the above-mentioned property for inspection
purposes.

Signature of Applicant or Agent_____

Print Applicant's/Agent's Name_____        Date_____

---

**OWNER: >>>>>** HERITAGE FIELDS EL TORO LLC
**ADDRESS:** 2000 FIVEPOINT 4TH FLOOR
**CITY, ST ZIP:** IRVINE CA 92618
**PHONE:** (949) 349-1000

**APPLICANT:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTACT** DAN SHANAHAN 714-347-1388
**PHONE:** (714) 347-1388

**CONTRACTOR:** TOLL BROS INC SOUTHERN CA DIVISION
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTR LIC EXP:** 12/31/2025
**IRV BUS LIC:** 240000790        **EXP DATE:** 5/31/2025

**VALUATION:** $43,903
**STORIES:** 3
**CODE YR:** 2022

**NO. UNITS:** 1
**TOT SQFT:** 265

**USE**            **OCC**     **CONST. TYPE**
Air Condition      R-3         RESIDENTIAL
1&2 Res            R-3         Type VB
F.S. SYS-NFPA 13D              F.S. SYS-NFPA 13D        **SQ FT** 265

---

### PERMIT FEES

| | |
|---|---|
| SB 1473 fee - Due to State | 1.80 |
| SB 1473 fee - Admin | 0.20 |
| Energy Surcharge Insp | 66.42 |
| Issuance Fee Res | 28.72 |
| Res Remodel Insp | 318.00 |
| State Seismic Res | 5.71 |
| System Dev Charge Circ | 219.51 |
| System Dev Charge Non-Circ | 219.51 |
| Slurry Seal Res Remodel/Add | 10.60 |

**Total Permit Fees: $870.47**

**PLAN CHECK #:** 00938076-TMPL

**PLANNING APPROVAL:**

**BUILDING APPROVAL:**

**PERMIT ISSUED BY:** MARK MESSERSMITH 10/15/2024

**Receipt#** 00283612

**TCA Receipt:** **TCA:**

---

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or
more.  Residential permit expiration: addition - 18 months, all others 6 months from date of permit.

**See Inspection Record Card for Smoke Detector and Carbon Monoxide Alarm requirements.**

**CONSTRUCTION WORKING HOURS**
Weekdays:  7 AM – 6 PM
Saturday:  9 AM – 6 PM
Sunday/Holiday:  PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 2020, no excavation permit is valid unless the following is performed:
1. The applicant has called Underground Service Alert at least 2 working days before commencing excavation to obtain an inquiry ID number.
2. The applicant agrees to contact and obtain an inquiry ID number from UNDERGROUND SERVICE ALERT
(1-800-422-4133) at least 2 working days prior to commencing excavation.

D:\WEBSITE\OUTPUT\TAL\Reports\Permits\WebApps\01Permits\Ju45_issued_permits_assessor_monthly.rpt

563

# Online Permit - Misc. Residential

**00948519-WMSR**

Issue Date: 1/16/2025

**DESCRIPTION OF WORK:**
wmsr-10: [New] Roof-Mount Solar PV w/Approved Master
Plan |
Additional Details: 5.28kW, 13 Modules & Micro Inverters

## City of Irvine
**Building & Safety Division**
Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501

**ADDRESS: 156 CREATION**
**TRACT: 19276**      **LOT: 30**
**APN:**
**PLANNING AREA:**

---

### CONTRACTOR
License Class:    B      Lic No.   750184
Date: 01/16/2025        Contractor: SUNRUN INSTALLATION

### LICENSED CONTRACTORS DECLARATION
I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

### OWNER-BUILDER
Date:
Reason:
_____ B&PC, for this

### OWNER-BUILDER DECLARATION
I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:
☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale.
☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.
☐ I am exempt under Sec. _____ Owner
Reason: _____

### WORKERS' COMPENSATION
Date:
☐ I hereby affirm under penalty of perjury one of the following declarations:
☐ I have and will maintain a certificate of consent to self-insure for workers' compensation as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.
☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:
Carrier _____
Policy # _____

### WORKERS' COMPENSATION DECLARATION
I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

### LENDER

### CONSTRUCTION LENDING AGENCY
I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)
Lender's Name _____
Lender's Address _____

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Signature of Applicant/Agent or Agent

Print Applicant's/Agent's Name      Date

---

**OWNER:** TOLL BROTHERS
**ADDRESS:** 350 COMMERCE ST SUITE 200
**CITY, ST ZIP:** IRVINE CA 92602
**PHONE:** (949) 933-5378

**APPLICANT:** TOLL BROTHERS
**ADDRESS:** 350 COMMERCE ST SUITE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTACT:**
**PHONE:** (949) 933-5378

**CONTRACTOR:** SUNRUN INSTALLATION
**ADDRESS:** 505 TECHNOLOGY DR
**CITY, ST ZIP:** IRVINE CA 92618
**CONTR LIC EXP:** 6/30/2026
**IRV BUS LIC:** 220002368        **EXP DATE:** 11/30/2025

**VALUATION:** $0
**STORIES:** 0
**CODE YR:** 2022

USE        OCC        CONST TYPE

NO. UNITS:
TOT SQFT: 0        SQ FT

---

**PERMIT FEES**
Online Res Elec Permit Fee

Lot 30

| | | |
|---|---|---|
| | | 269.26 |

**Total Permit Fees: $269.26**

**Receipt#**      **00280015**

**PLAN CHECK #:**   00942919-CSP
**PLANNING APPROVAL:**
**BUILDING APPROVAL:**
**PERMIT ISSUED BY:**

**TCA Receipt:**        **TCA:**

---

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 365 days or if work is suspended for 180 days or more. Residential permit expiration: addition - 18 months, all others 6 months from date of permit.

**CONSTRUCTION WORKING HOURS**
Weekdays:    7 AM – 6 PM
Saturday:    9 AM – 6 PM
Sunday/Holiday: PROHIBITED

**NOTICE:**
Pursuant to Assembly Bill 2020, no excavation permit is valid unless the following is performed:
1. The DIGGING/EXCAVATION CONTRACTOR has been contacted and has been provided with an inquiry identification number.
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

D:\WebSites\nPORTAL\Reports\Permits\WebApps01\Permits\OL45_issued_permits_assessor_monthly.rpt

# City of Irvine
## Building & Safety Division
### Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501



# Plumbing Alteration/Addition Permit

**0930957-PBP**

**DESCRIPTION OF WORK:**
(E-PLAN) FOUNDATION & UTILITIES FOR TEMPORARY
SALES TRAILER. TRACT 19276, LOT 17, ELEVATE @ GPN.

**ADDRESS: 105 APRON**
**TRACT:** 19276        **LOT:** 16
**APN:**
**PLANNING AREA:**

**OWNER:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE  CA 92602
**PHONE:** (714) 403-0745

**APPLICANT:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE  CA 92602
**CONTACT:** DAN SHANAHAN  714-920-4629
**PHONE:** (714) 403-0745

**CONTRACTOR:** TOLL BROTHERS MORTGAGE COMPANY
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE  CA 92602
**CONTR LIC EXP:** 12/31/2025
**IRV BUS LIC:** 240000790          **EXP DATE:** 5/31/2025

## PERMIT FEES
Automation Fee Inspection                    24.48
Issuance Fee Comm                            61.23
Private Sewage Disposal Com                  244.79

**TCA Receipt:**
**Receipt#**                00276939
                            00276939

**Total Permit Fees: $330.50**                **TCA:**

**PLAN CHECK #:** 00928820-CTIS
**PLANNING APPROVAL:** HERNAN DESANTOS 5/8/2024
**BUILDING APPROVAL:** TUNG VO  5/23/2024
**PERMIT ISSUED BY:** BRIA/ANNA JAMES  6/4/2024
**PERMIT FINALED BY:**          SEAN KING          8/16/24
**ACTION CODE:**          86

**VALUATION:**                **NO. UNITS:**
**STORIES:** 0                **TOT SQFT:** 0
**CODE YR:** 2022

1   # all p21 codes on take-off
1   # private sewage disp systems

---

## CONTRACTOR

Date: 06/04/2024

License Class:    B         Lic No.    683543

Contractor   TOLL BROTHERS MORTGAGE COMPANY

### LICENSED CONTRACTORS DECLARATION
I hereby affirm under penalty of perjury that all of the provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

---

## OWNER-BUILDER

☐ I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:

☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale.

☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct this project.

☐ I am exempt under Sec._____ B&P.C, for this Reason:_____

### OWNER-BUILDER DECLARATION

Date:   6/4/2024          Owner   TOLL WEST COAST LLC

---

## WORKERS' COMPENSATION

☐ I hereby affirm under penalty of perjury one of the following declarations:

☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are:

Carrier _____
Policy # _____

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date   6/4/2024                Applicant

**WORKERS' COMPENSATION DECLARATION**
WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

---

## OWNER-BUILDER / CONSTRUCTION LENDING AGENCY

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)

Lender's Name _____

Lender's Address _____

---

## LENDER

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Signature of Applicant or Agent          Date

Print Applicant's/Agent's Name

---

**PERMIT EXPIRATION: Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more. Residential permit expiration: addition - 18 months, all others 6 months from date of permit.**

**CONSTRUCTION WORKING HOURS**
Weekdays: 7 AM - 7 PM, Saturday:  9 AM - 6 PM
Sunday/Holiday: PROHIBITED

NOTICE: Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

D:\Websites\ePORTAL\reports\Permits\WebApps01\Application Reports\permits_2_page_finaled.rpt



City of Irvine
Building & Safety Division
Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501

# Res Alt/Add/2nd Story Deck Permit

## 00933670-RBPR

**DESCRIPTION OF WORK:**
(E-PLAN) MODEL LANDSCAPE AMENITIES TO INCLUDE A TRELLIS, WALLS & FENCES. ELEVATE @ GREAT PARK NEIGHBORHOODS, MODEL SALES COMPLEX. TRACT 19276. LOT 18.

**OWNER >>>>>** HERITAGE FIELDS EL TORO LLC
**ADDRESS:** 2000 FIVEPOINT 4TH FLOOR
**CITY, ST ZIP:** IRVINE CA 92618
**PHONE:** (949) 349-1000

**APPLICANT:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTACT:** DAN SHANAHAN  714-347-1388
**PHONE:** (714) 347-1388

**CONTRACTOR:**
**ADDRESS:**
**CITY, ST ZIP:**
**CONTR LIC EXP:**
**IRV BUS LIC:**    **EXP DATE:**

**VALUATION:** $10,692
**STORIES:** 0
**CODE YR:** 2022    OCC    **CONST. TYPE**
**USE**    **NO. UNITS:**
    **TOT SQFT:** 174    SQ FT

**TRACT: GRID**    **LOT: Q025**
**APN: Q025**
**PLANNING AREA: 6**

## PERMIT FEES

| | |
|---|---|
| SB 1473 fee - Due to State | 0.90 |
| SB 1473 fee - Admin | 0.10 |
| Energy Surcharge Insp | 61.78 |
| Fence PC Res | 187.76 |
| Misc Res Structures PC | 80.36 |
| Issuance Fee Res | 26.72 |
| Fence Insp Res | 180.19 |
| Misc Res. Structures Insp | 91.84 |
| State Seismic Res | 1.39 |

**Total Permit Fees: $631.04**
**Receipt#** 00278484

**PLAN CHECK #:** 00921651-RRA
**PLANNING APPROVAL:** ZHALEH AFRASIABI  3/8/2024
**BUILDING APPROVAL:** SHERMAN JONES  3/8/2024
**PERMIT ISSUED BY:** BRIAA,NNA, JAMES  7/3/2024
**PERMIT FINALED BY:**    SEAN KING    8/16/24
**ACTION CODE:**    86

**TCA Receipt#** **TCA:**

---

LICENSED CONTRACTORS DECLARATION

**LENDER** | **WORKERS' COMPENSATION** | **OWNER-BUILDER** | **CONTRACTOR**

☐ I hereby affirm under penalty of perjury that I am licensed under the provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

Date: 07/03/2024    Contractor
License Class.    Lic.No.

**OWNER-BUILDER DECLARATION**

☐ I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:

☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale.

☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.

☐ I am exempt under Sec.___ B&PC, for this Reason:___

Date: 7/3/2024  Owner >>>>> HERITAGE FIELDS

**WORKERS' COMPENSATION DECLARATION**

☐ I hereby affirm under penalty of perjury one of the following declarations:

☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

☐ I have and will maintain workers compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers compensation insurance carrier and policy number are

Carrier    Policy #

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Applicant
**WARNING:** FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

**CONSTRUCTION LENDING AGENCY**

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)

Lender's Name
Lender's Address

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Print Applicant's/Agent's Name

Signature of Applicant or Agent    Date

---

**PROJECT DURATION:** 18 months –Overall for Room Additions or major reconstruction, and no more than 6 months to complete exterior wall finishes and roofing; 6 months – Any other type of permit work. Note: this permit shall become null & void if work is suspended for 180 days or more. See City of Irvine Information Bulletin No. 222 for more information regarding owner and contractor responsibilities.
See Inspection Record Card for Smoke Detector and Carbon Monoxide Alarm requirements.

**CONSTRUCTION WORKING HOURS**
Weekdays: 7 AM - 7 PM, Saturday:  9 AM - 6 PM
Sunday/Holiday: PROHIBITED

**NOTICE:** Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

# Electrical Alteration/Addition Permit

**0030054-EBP**

**City of Irvine**
**Building & Safety Division**
**Community Development Dept.**
**One Civic Center Plaza**
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6601

DESCRIPTION OF WORK:
(E-PLAN) FOUNDATION & UTILITIES FOR TEMPORARY
SALES TRAILER. TRACT 19276, LOT 17. ELEVATE @ GPN.

**ADDRESS: 105 APRON**
**TRACT: 19276**
**APN:**
**PLANNING AREA:**
**LOT: 16**

**OWNER:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**PHONE:** (714) 403-0745

**APPLICANT:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTACT:** DAN SHANAHAN 714-920-4629
**PHONE:** (714) 403-0745

**CONTRACTOR:** TOLL BROTHERS MORTGAGE COMPANY
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTR LIC EXP:** 12/31/2025
**IRV BUS LIC:** 240000790    **EXP DATE:** 5/31/2025

## LICENSED CONTRACTORS DECLARATION
I hereby affirm under penalty of perjury that one of the provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.
Date: 06/04/2024    License Class: B    Lic No.: 683543
Contractor: TOLL BROTHERS MORTGAGE COMPANY

## OWNER-BUILDER DECLARATION
I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:
☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale.
☐ I am owner of the property, am exclusively contracting with licensed contractors to construct the project.
☐ I am exempt under Sec.___
Reason:___
Date: 6/4/2024    Owner: TOLL WEST COAST LLC
___ B&PC, for this

## WORKERS' COMPENSATION DECLARATION
I hereby affirm under penalty of perjury one of the following declarations:
☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.
☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number are
Carrier___
Policy #___
☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.
Date___    Applicant___
WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

## CONSTRUCTION LENDING AGENCY
I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)
Lender's Name___
Lender's Address___

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Print Applicant's/Agent's Name___
Signature of Applicant or Agent___    Date___

**VALUATION:**
**CODE YR:** 2022
**STORIES:** 0
**NO. UNITS:**
**TOT SQFT:** 0

**Total Permit Fees: $633.66**
**Receipt#:** 00276939
**TCA Receipt:** TCA:

## PERMIT FEES
| | |
|---|---|
| Automation Fee Inspection | 70.35 |
| Issuance Fee Comm | 61.23 |
| Elec Fixtures/Switch Com | 201.38 |
| Panel/Switch bd COM | 81.96 |
| Pole Mnted Fixt w/Base Com | 217.46 |
| Service/Meter com | |

# light fixtures/branchcircuit ... 7
# pole mounted fixtures ... 2
# service/meter <400 amps ... 2
# switchbd/panelbrd<400amps ... 2

**PLAN CHECK #:** 00928620-CTIS
**PLANNING APPROVAL:** HERNAN DESANTOS 5/8/2024
**BUILDING APPROVAL:** TUNG VO 5/23/2024
**PERMIT ISSUED BY:** BRIAN NA. JAMES 6/4/2024
**PERMIT FINALED BY:** SEAN KING
**ACTION CODE:** 86    6/27/24

CONSTRUCTION WORKING HOURS
Weekdays: 7 AM - 7 PM, Saturday: 9 AM - 6 PM
Sunday/Holiday: PROHIBITED

PERMIT EXPIRATION: Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more.
Residential permit expiration: addition - 18 months, all others 6 months from date of permit.

NOTICE: Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

D:\Websites\ePORTAL\reports\Permits\WebApps01\Application Reports\permits_2_page_finaled.rpt



COMMUNITY DEVELOPMENT
PUBLIC WORKS

# PERMIT DECLARATION
## TO BE COMPLETED BY CONTRACTOR

**IMPORTANT!** You are completing this Permit Declaration as the **LICENSED CONTRACTOR** for this project. If you are not the Contractor, please complete the appropriate declaration as the Owner-Builder or Authorized Agent.

| PLAN CHECK/PERMIT NUMBER(S) | | |
|---|---|---|
| 00928634-TMPL/ | #00928820-CTIS | |
| PROJECT ADDRESS | | |
| 105    Apron, Irvine, CA    92602 | | |
| PROJECT DESCRIPTION or NAME/PHASE | | TRACT |
| Foundation    and    Utility Connections    for    Temporary    Sales Center | | 19276 |

## WORKERS' COMPENSATION DECLARATION

I do hereby affirm under penalty of perjury one of the following declarations:

☐ I have and will maintain a certificate of consent to self insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

☑ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers' compensation insurance carrier and policy number and expiration are: CARRIER:Old    Republic    Insurance    Company

POLICY#:MWC30267709            EXP: 09/01/2024

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

**WARNING:** Failure to secure workers' compensation coverage is unlawful, and shall subject an employer to criminal penalties and civil fines up to one hundred thousand dollars ($100,000). In addition to the cost of the compensation, damages as provided for in Section 3706 of the Labor Code, interest and attorney's fees.

## LICENSED CONTRACTOR DECLARATION

I hereby affirm under penalty of perjury that I am licensed under provision of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect. Additionally, I affirm that all subcontractors will be licensed in accordance with applicable California Business and Professions Code requirements and that a complete list of subcontractors (Form 43-19) will be provided to the City in accordance Irvine Municipal Code Section 5-9-205.

BUSINESS NAME: Toll    Brothers.,    Inc.                LICENSE#:683543        EXP:12/31/2025

EMAIL:dshanahan@tollbrothers.com        BUSINESS LICENSE#:240000790    EXP:03/11/2025

**NOTE:** Permits will not be issued without a valid City Business License.

**I certify that I have read this application and state that the above information is correct. I agree to comply with all City and county ordinances and state laws relating to building construction, and hereby authorize representatives of this City to enter upon the above mentioned property for inspection purposes.**

eSigned via SeamlessDocs.com    Dan    Shanahan        05-29-2024

**CONTRACTOR SIGNATURE**                **DATE**

FORM 66-17 REV 03/23

# Mechanical Alteration/Addition Permit

## City of Irvine
### Building & Safety Division
### Community Development Dept.
One Civic Center Plaza
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6301 For Inspections: (949) 724-6300



**00930955-MBP**

**DESCRIPTION OF WORK:**
(E-PLAN) FOUNDATION & UTILITIES FOR TEMPORARY SALES TRAILER, TRACT 19276, LOT 17, ELEVATE @ GPN.

Date: 06/04/2024    License Class:    B    Lic.No.    683543

### CONTRACTOR

I hereby affirm under penalty of perjury that one of the following declarations
is true:

**LICENSED CONTRACTORS DECLARATION**

I hereby affirm under penalty of perjury that I am licensed under provisions of Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, and my license is in full force and effect.

Contractor TOLL BROTHERS MORTGAGE COMPANY

### OWNER-BUILDER

I hereby affirm under penalty of perjury that I am exempt from the Contractor's License Law for the following reason:

☐ I, as owner of the property, or my employees with wages as their sole compensation, will do the work, and the structure is not intended or offered for sale.

☐ I, as owner of the property, am exclusively contracting with licensed contractors to construct the project.

☐ I am exempt under Sec._____, B&PC, for this
Reason._____

Date ____ 6/4/2024 ____    Owner ____ TOLL WEST COAST LLC

**OWNER-BUILDER DECLARATION**

### WORKERS' COMPENSATION

I hereby affirm under penalty of perjury one of the following declarations:

☐ I have and will maintain a certificate of consent to self-insure for workers' compensation, as provided for by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued.

☐ I have and will maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the performance of the work for which this permit is issued. My workers compensation insurance carrier and policy number are

Carrier ____    Policy # ____

☐ I certify that in the performance of the work for which this permit is issued, I shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, and agree that if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions.

Date ____ 6/4/2024 ____    Applicant

**WORKERS' COMPENSATION DECLARATION**

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

### LENDER

I hereby affirm under penalty of perjury that there is a construction lending agency for the performance of the work for which this permit is issued (Sec. 3097, Civ. C.)

Lender's Name ____
Lender's Address ____

**CONSTRUCTION LENDING AGENCY**

I certify that I have read this application and state that the above information is correct. I agree to comply with all city and county ordinances and state laws relating to building construction, and hereby authorize representatives of this city to enter upon the above-mentioned property for inspection purposes.

Signature of Applicant or Agent ____    Date ____

Print Applicant's or Agent's Name ____

---

**OWNER:** TOLL WEST COAST LLC
**ADDRESS:** 106 APRON
**TRACT:** 19276    **LOT:** 16
**CITY, ST ZIP:** IRVINE CA 92602
**APN:**
**PHONE:** (714) 403-0745
**PLANNING AREA:**

**APPLICANT:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE  CA 92602
**CONTACT:** DAN SHANAHAN  714-920-4629
**PHONE:** (714) 403-0745

**CONTRACTOR:** TOLL BROTHERS MORTGAGE COMPANY
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE  CA 92602
**CONTR LIC EXP:** 12/31/2025
**IRV BUS LIC:** 240000790    **EXP DATE:** 5/31/2025

**VALUATION:**
**STORIES:** 0    **NO. UNITS:**
**CODE YR:** 2022    **TOT SQFT:** 0

### PERMIT FEES

| | |
|---|---|
| Automation Plan Fee Inspection | 38.52 |
| Issuance Fee Comm | 61.23 |
| Boiler/Compressor Comm | 385.20 |

# ac/refrigerator compressor    2

**Total Permit Fees: $484.95**
**TCA Receipt#**
**00276939**

**PLAN CHECK #** 00928820-CTIS    **TCA:**
**PLANNING APPROVAL**-HERNAN DESANTOS 5/8/2024
**BUILDING APPROVAL**-TUNG VO  5/23/2024
**PERMIT ISSUED BY:** BRAUNNA JAMES  6/4/2024
**PERMIT FINALED BY:**  SEAN KING    6/27/24
**ACTION CODE:**  86

**PERMIT EXPIRATION:** Permit becomes null & void if work is not started in 180 days or if work is suspended for 180 days or more. **Residential** permit expiration: addition - 18 months, all others 6 months from date of permit.

NOTICE: Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

C:\ESeer\Reports\permits_2_page_finaled.rpt

**City of Irvine**
**Building & Safety Division**
**Community Development Dept.**
**One Civic Center Plaza**
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501

## Misc Commercial Permit

**0093056-MISC**

ADDRESS: 105 APRON
TRACT: 19276
APN:
PLANNING AREA:

LOT: 16

**DESCRIPTION OF WORK:**
Automation Fee Inspection
(E-PLAN) FOUNDATION & UTILITIES FOR TEMPORARY
SALES TRAILER. TRACT 19276, LOT 17, ELEVATE @ GPN.

### LICENSED CONTRACTORS DECLARATION

CONTRACTOR
Date: 06/04/2024    License Class:    B    Lic.No.  683543
Contractor: TOLL BROTHERS MORTGAGE COMPANY

### OWNER-BUILDER DECLARATION
OWNER-BUILDER
Date: 6/4/2024    Owner:    TOLL WEST COAST LLC

### WORKERS' COMPENSATION DECLARATION
WORKERS' COMPENSATION
Date: 6/4/2024
Policy #
Carrier

**CONSTRUCTION LENDING AGENCY**
LENDER
Lender's Name
Lender's Address

Signature of Applicant or Agent    Date
Print Applicant's/Agent's Name

**OWNER:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**PHONE:** (714) 403-0745

**APPLICANT:** TOLL WEST COAST LLC
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTACT:** DAN SHANAHAN  714-920-4629
**PHONE:** (714) 403-0745

**CONTRACTOR:** TOLL BROTHERS MORTGAGE COMPANY
**ADDRESS:** 350 COMMERCE 200
**CITY, ST ZIP:** IRVINE CA 92602
**CONTR LIC EXP:** 12/31/2025
**IRV BUS LIC:** 240000790    **EXP DATE:** 5/31/2025

VALUATION: $152,640    NO. UNITS:    TOT SQFT: 1,440
STORIES: 0    OCC    CONST TYPE
CODE YR: 2022    USE    SQ FT

square footage patio/misc

### PERMIT FEES
| | |
|---|---|
| Automation Fee Inspection | 36.04 |
| SB 1473 fee - Due to State | 6.30 |
| SB 1473 fee - Admin | 0.70 |
| Issuance Fee Comm | 61.23 |
| Misc Comm Insp | 360.38 |
| State Seismic Com | 47.01 |

**Total Permit Fees: $511.66**
**Receipt#** 00276939
**PLAN CHECK #:** 00928620-CTIS
**PLANNING APPROVAL: HERNAN DESANTOS 5/8/2024**
**BUILDING APPROVAL: TUNG VO 5/23/2024**
**PERMIT ISSUED BY: BRIA/ANNA JAMES  6/4/2024**
**PERMIT FINALED BY:**    SEAN KING    8/16/24
**ACTION CODE:**    86

TCA Receipt:    TCA:    1440



**City of Irvine**
**Building & Safety Division**
**Community Development Dept.**
**One Civic Center Plaza**
PO Box 19575 Irvine, CA 92623-9575
For Permit Info: (949) 724-6300 For Inspections: (949) 724-6501

# Res Alt/Add/2nd Story Deck Permit

**00933667-RBPR**

**DESCRIPTION OF WORK:**
(E-PLAN) MODEL LANDSCAPE AMENITIES TO INCLUDE A TRELLIS, WALLS & FENCES AND ASSOCIATED LIGHTING. ELEVATE @ GREAT PARK NEIGHBORHOODS, MODEL SALES COMPLEX. TRACT 19276, LOT 17.

**OWNER >>>>>** HERITAGE FIELDS EL TORO LLC
**ADDRESS:** 105 APRON
**TRACT:** GRID                 **LOT:** Q025
**APN:** Q025
**PLANNING AREA:** 6

**APPLICANT:** TOLL WEST COAST LLC
**ADDRESS:** 2000 FIVEPOINT 4TH FLOOR
**CITY, ST ZIP:** IRVINE CA 92618
**PHONE:** (949) 349-1000

**CONTACT:** DAN SHANAHAN  714-347-1388
**PHONE:** (714) 347-1388

**CONTRACTOR:**
**ADDRESS:**
**CITY, ST ZIP:**
**CONTR LIC EXP:**
**IRV BUS LIC:**                    **EXP DATE:**

**VALUATION:** $10,692
**STORIES:** 0                **NO. UNITS:**
**CODE YR:** 2022             **TOT SQ FT:** 174
**USE** OCC  CONST. TYPE  SQ FT

## PERMIT FEES

| | | |
|---|---|---|
| SB 1473 fee - Due to State | | 0.90 |
| SB 1473 fee - Admin | | 0.10 |
| Issuance Fee Res | | 26.72 |
| Elec Min Insp Res | | 53.43 |
| Fence Insp Res | | 53.43 |
| Misc Res, Structures Insp | | 180.19 |
| Plumb Min Insp Res | | 91.84 |
| State Seismic Res | | 1.39 |

**PLAN CHECK #:** 00921651-RRA
**PLANNING APPROVAL:** SHERMAN JONES  3/8/2024
**BUILDING APPROVAL:** ZHALEH AFRASIABI  1/25/2024
**PERMIT ISSUED BY:** BRIAN/INA, JAMES  7/3/2024
**PERMIT FINALED BY:** SEAN KING
**ACTION CODE:** 86  8/16/24

**Total Permit Fees: $408.00**
**Receipt#:** 00278484
**TCA Receipt:**                 **TCA:**

LICENSED CONTRACTORS DECLARATION
License Class.                Lic.No.
Date 07/03/2024 _____ Contractor

OWNER-BUILDER DECLARATION
Owner >>>>> HERITAGE FIELDS
Date 7/3/2024 _____ Owner _____ B&PC, for this

WORKERS' COMPENSATION DECLARATION
Date _____ Applicant
Policy #

CONSTRUCTION LENDING AGENCY
Lender's Name
Lender's Address

Signature of Applicant or Agent                Date
Print Applicant's/Agent's Name

**PROJECT DURATION:** 18 months –Overall for Room Additions or major reconstruction, and no more than 6 months to complete exterior wall finishes and roofing; 6 months – Any other type of permitted work. Note: this permit shall become null & void if work is suspended for 180 days or more. See City of Irvine Information Bulletin No. 222 for more information regarding owner and contractor responsibilities.
See Inspection Record Card for Smoke Detector and Carbon Monoxide Alarm requirements.

NOTICE: Pursuant to Assembly Bill 3020, no excavation permit is valid unless the following is performed:
1. UNDERGROUND SERVICE ALERT has been contacted and has provided inquiry I.D. Number
2. The applicant agrees to contact and obtain an inquiry I.D. Number from UNDERGROUND SERVICE ALERT (1-800-422-4133) at least 2 working days prior to commencing excavation.

CONSTRUCTION WORKING HOURS
Weekdays: 7 AM - 7 PM, Saturday: 9 AM - 6 PM
Sunday/Holiday: PROHIBITED

# Exhibit 243



Jeffrey Gu <jeffwgu@gmail.com>

---

## Toll Brothers Permit

---

Jesse Cardoza <JCardoza@cityofirvine.org>                          Thu, Jul 24, 2025 at 4:56 PM
To: Jeffrey Gu <jeffwgu@gmail.com>
Cc: William Go Web <WilliamGo@cityofirvine.org>

Mr. Gu

It appears that the two permits with the missing license information are the result of a clerical error - not an omission of information or a mistake. I was able to confirm that the contractor license information was validated, but not all of the information was reflected on the permit.

Thank you for brining this to my attention.


**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Friday, July 18, 2025 7:45 AM
**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Sure, well I see a potential case of license lending in this specific set of permits.

On Thu, Jul 17, 2025 at 1:43 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:

Mr. Gu

At first glance, I don't notice anything of the ordinary. Is there something particular you'd like to draw my attention to?


**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Thursday, July 17, 2025 6:00 AM
**To:** Jesse Cardoza <JCardoza@cityofirvine.org>

**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Hi Jesse,

Any comments on my last email?

-Jeffrey

On Tue, Jul 8, 2025 at 8:00 AM Jeffrey Gu <jeffwgu@gmail.com> wrote:

> Hi Jesse,
>
> I just received these permits from my CPRA request. Do you happen to see any irregularities?
>
> -Jeffrey

# Exhibit 244



Jeffrey Gu <jeffwgu@gmail.com>

## Toll Brothers Permit

**Jesse Cardoza** <JCardoza@cityofirvine.org>                    Thu, Jul 24, 2025 at 6:00 PM
To: Jeffrey Gu <jeffwgu@gmail.com>
Cc: William Go Web <WilliamGo@cityofirvine.org>

Mr. Gu

Thank you for the excellent follow-up question.

We don't specifically track the relative portion of licensed contractors that are also mortgage companies, so I'm unable to say how common this occurrence is; however, I can confirm that we have issued a number of building permits to Toll Brothers under their B - General Building contractor's license. For up-to-date contractor license information, please visit the California Department of Consumer Affairs web page (https://www.cslb.ca.gov/).

Please let me know if you have any other questions.

**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Thursday, July 24, 2025 2:09 PM
[Quoted text hidden]
[Quoted text hidden]

# Exhibit 245



Jeffrey Gu <jeffwgu@gmail.com>

---

## Toll Brothers Permit

---

Jesse Cardoza <JCardoza@cityofirvine.org>                    Wed, Jul 30, 2025 at 8:49 PM
To: Jeffrey Gu <jeffwgu@gmail.com>
Cc: William Go Web <WilliamGo@cityofirvine.org>

Mr. Gu

Thank you for the question. When we transitioned to all electronic permit submittals in 2019, we began collecting permit declarations at permit issuance via a separate, stand-alone document, which is why you'll find many fields empty in the declaration portion of the permit. The separate, complete declaration is printed and sent to the Office of Records at project close-out along with the permit, so all of the required information is captured and preserved - just not on one piece of paper. These separate permit declarations should have been provided to you by the Office of Records as part of your Public Records Request. If they were not, please contact the Office of Records to obtain the additional documents.

Thank you and let me know if you have any other questions.

Since

**Jesse Cardoza, PE, CASp** | Deputy Director of Community Development/Chief Building Official
949-724-6377 | 1 Civic Center Plaza, Irvine, CA 92606

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Wednesday, July 30, 2025 12:11:43 PM
**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Hi Jesse,

I have obtained a permit for "New Home Company" (which is not a registered entity California or licensed business entity within Irvine). Could you please explain why the "OWNER-BUILDER DECLARATION" section has no checkboxes filled in?

-Jeffrey

On Thu, Jul 24, 2025 at 6:30 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:
> Sure, well it seems that your Building Department likes to gloss over (or totally ignore) the details. While I could bring more oversights to your attention, I imagine it'd be futile.
>
> On Thu, Jul 24, 2025 at 6:00 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:
>> Mr. Gu
>>
>> Thank you for the excellent follow-up question.
>>
>> We don't specifically track the relative portion of licensed contractors that are also mortgage

companies, so I'm unable to say how common this occurrence is; however, I can confirm that we have issued a number of building permits to Toll Brothers under their B - General Building contractor's license. For up-to-date contractor license information, please visit the California Department of Consumer Affairs web page (https://www.cslb.ca.gov/).

Please let me know if you have any other questions.

**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Thursday, July 24, 2025 2:09 PM

**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Are you referring to "TOLL BROTHERS MORTGAGE COMPANY" being listed as the contractor? Are mortgage companies commonly contractors in Irvine?

On Thu, Jul 24, 2025 at 4:56 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:
Mr. Gu

It appears that the two permits with the missing license information are the result of a clerical error - not an omission of information or a mistake. I was able to confirm that the contractor license information was validated, but not all of the information was reflected on the permit.

Thank you for brining this to my attention.

**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Friday, July 18, 2025 7:45 AM

**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Sure, well I see a potential case of license lending in this specific set of permits.

On Thu, Jul 17, 2025 at 1:43 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:

> Mr. Gu
>
> At first glance, I don't notice anything of the ordinary. Is there something particular you'd like to draw my attention to?
>
> **Jesse Cardoza, PE, CASp**
>
> Deputy Director of Community Development/Chief Building Official
>
> 949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Thursday, July 17, 2025 6:00 AM
**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Hi Jesse,

Any comments on my last email?

-Jeffrey

On Tue, Jul 8, 2025 at 8:00 AM Jeffrey Gu <jeffwgu@gmail.com> wrote:

> Hi Jesse,
>
> I just received these permits from my CPRA request. Do you happen to see any irregularities?
>
> -Jeffrey

# Exhibit 246



Jeffrey Gu <jeffwgu@gmail.com>

## Toll Brothers Permit

**Sam Floyd** <SFloyd@cityofirvine.org>                                    Mon, Aug 4, 2025 at 2:03 PM
To: "jeffwgu@gmail.com" <jeffwgu@gmail.com>
Cc: Jesse Cardoza <JCardoza@cityofirvine.org>

Hello Mr. Gu,

This information has been provided to the Records Department and is currently under review by our legal team prior to release. I have communicated to them that you would like this included in the next batch of responsive records.

Regards.

**Sam Floyd** | CD Strategist
Community Development
949-724-7175 | 1 Civic Center Plaza, Irvine, CA 92606

*sfloyd@cityofirvine.org* | *cityofirvine.org*

---

**From:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Sent:** Thursday, July 31, 2025 2:01 PM
**To:** Sam Floyd <SFloyd@cityofirvine.org>
**Subject:** Fw: Toll Brothers Permit
**Importance:** High

Sam

Please coordinate with records to ensure they provide Mr. Gu with everything he asked for.

**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>

**Sent:** Thursday, July 31, 2025 1:40 PM
**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Hi Jesse,

I was asking your explicit help in obtaining it. If the City intended to send me the full permit record and did not, and the fact that you cannot or will not furnish it, then the declaration seemingly doesn't exist.

-Jeffrey

On Thu, Jul 31, 2025 at 4:35 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:

Thank you for clarifying.

The declaration should have been provided as part of the records you received from the Office of Record. If it wasn't, please contact the Office of Records to request additional documents at 949-724-6281.

**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Thursday, July 31, 2025 12:38 PM

**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Hi Jesse,

Sure, you mentioned that with respect to the permit for 129 Oakstone, that the declaration was saved somewhere else (which is not mentioned on the permit). Could you please provide the declaration for that specific permit?

-Jeffrey

On Thu, Jul 31, 2025 at 3:33 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:

Good Afternoon Mr. Gu

The permit was provided to you because you submitted a request for public records for permit records related to particular projects.

What specific information can I provide for you?

**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Wednesday, July 30, 2025 5:57 PM
**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Hi Jesse,

If this permit provided to me is not reflective of the truth, what was the point of providing it to me? I would like a fuller picture, if this could be provided.

Given your position, I would like you to provide this fuller picture for this specific property, as it does not seem that the staff has been properly trained to provide it.

-Jeffrey

On Wed, Jul 30, 2025 at 8:49 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:

> Mr. Gu
>
> Thank you for the question. When we transitioned to all electronic permit submittals in 2019, we began collecting permit declarations at permit issuance via a separate, stand-alone document, which is why you'll find many fields empty in the declaration portion of the permit. The separate, complete declaration is printed and sent to the Office of Records at project close-out along with the permit, so all of the required information is captured and preserved - just not on one piece of paper. These separate permit declarations should have been provided to you by the Office of Records as part of your Public Records Request. If they were not, please contact the Office of Records to obtain the additional documents.
>
> Thank you and let me know if you have any other questions.
>
> Since
>
> **Jesse Cardoza, PE, CASp** | Deputy Director of Community Development/Chief Building Official
> 949-724-6377 | 1 Civic Center Plaza, Irvine, CA 92606
>
> ---
>
> **From:** Jeffrey Gu <jeffwgu@gmail.com>
> **Sent:** Wednesday, July 30, 2025 12:11:43 PM
>
> **To:** Jesse Cardoza <JCardoza@cityofirvine.org>
> **Cc:** William Go Web <WilliamGo@cityofirvine.org>
> **Subject:** Re: Toll Brothers Permit
>
> **CAUTION:** EXTERNAL EMAIL
>
> Hi Jesse,
>
> I have obtained a permit for "New Home Company" (which is not a registered entity California or licensed business entity within Irvine). Could you please explain why the "OWNER-BUILDER DECLARATION" section has no checkboxes filled in?
>
> -Jeffrey

On Thu, Jul 24, 2025 at 6:30 PM Jeffrey Gu <jeffwgu@gmail.com> wrote:

Sure, well it seems that your Building Department likes to gloss over (or totally ignore) the details. While I could bring more oversights to your attention, I imagine it'd be futile.

On Thu, Jul 24, 2025 at 6:00 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:

Mr. Gu

Thank you for the excellent follow-up question.

We don't specifically track the relative portion of licensed contractors that are also mortgage companies, so I'm unable to say how common this occurrence is; however, I can confirm that we have issued a number of building permits to Toll Brothers under their B - General Building contractor's license. For up-to-date contractor license information, please visit the California Department of Consumer Affairs web page (https://www.cslb.ca.gov/).

Please let me know if you have any other questions.

**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Thursday, July 24, 2025 2:09 PM

**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Are you referring to "TOLL BROTHERS MORTGAGE COMPANY" being listed as the contractor? Are mortgage companies commonly contractors in Irvine?

On Thu, Jul 24, 2025 at 4:56 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:

Mr. Gu

It appears that the two permits with the missing license information are the result of a clerical error - not an omission of information or a mistake. I was able to confirm that the contractor license information was validated, but not all of the information was reflected on the permit.

Thank you for brining this to my attention.

**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Friday, July 18, 2025 7:45 AM

**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Sure, well I see a potential case of license lending in this specific set of permits.

On Thu, Jul 17, 2025 at 1:43 PM Jesse Cardoza <JCardoza@cityofirvine.org> wrote:

Mr. Gu

At first glance, I don't notice anything of the ordinary. Is there something particular you'd like to draw my attention to?

**Jesse Cardoza, PE, CASp**

Deputy Director of Community Development/Chief Building Official

949-724-6377

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Thursday, July 17, 2025 6:00 AM
**To:** Jesse Cardoza <JCardoza@cityofirvine.org>
**Cc:** William Go Web <WilliamGo@cityofirvine.org>
**Subject:** Re: Toll Brothers Permit

**CAUTION:** EXTERNAL EMAIL

Hi Jesse,

Any comments on my last email?

-Jeffrey

On Tue, Jul 8, 2025 at 8:00 AM Jeffrey Gu <jeffwgu@gmail.com> wrote:

Hi Jesse,

I just received these permits from my CPRA request. Do you happen to see any irregularities?

-Jeffrey

# Exhibit 247



Jess Sanders
E-mail: jsanders@rutan.com

October 1, 2025

<u>**VIA E-MAIL**</u>

Jeffrey Gu
jeffwgu@gmail.com
jeffreygu@proffer.info

Re:    <u>Public Records Act Request Received September 8, 2025</u>

Dear Mr. Gu,

As you know, this office serves in the capacity of City Attorney for the City of Irvine ("City"). This letter is being sent in response to the above-referenced request under the California Public Records Act, Gov. Code, § 7920.000 et seq. (CPRA), which seeks the following:

> - Any communications between the City Attorney, the City Council's office, and the Irvine Police Department to justify actions taken to "preserve Ms. Pham's safety and wellbeing" as a result Jeffrey Gu's alleged actions
>
> - Any evidence showing Jeffrey Gu's "repeated calls and attempts to contact Ms. Pham, and requests for her personal contact information"

On September 18, 2025, the City informed you that due to the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records and/or the need to consult with another agency having substantial interest in the determination of the request or among two or more components of the agency having substantial subject matter interest therein, the City's response time for this request would be extended to October 2, 2025 (Gov. Code, § 7922.535, subds. (b) & (c).)

Rutan & Tucker, LLP | 18575 Jamboree Road, 9th Floor
Irvine, CA 92612 | 714-641-5100 | Fax 714-546-9035
Orange County | Palo Alto | San Francisco | www.rutan.com

2905/048170-0301
22850630.1 a10/01/25



Jeffrey Gu
October 1, 2025
Page 2


     The City has now determined that it is in possession of public records potentially responsive to your request. The City is currently reviewing those records and intends to make any non-exempt public records responsive to your request available to you on a rolling production basis beginning on or about **November 10, 2025**.

     Should you have any questions about the above, please do not hesitate to contact me.

Very truly yours,

ER, LLP

JS:js
cc:    City Clerk (via e-mail only)

# Exhibit 248



Jess Sanders
E-mail: jsanders@rutan.com

October 1, 2025

**VIA E-MAIL**

Jeffrey Gu
jeffwgu@gmail.com
jeffreygu@proffer.info

      Re:    Public Records Act Request Received July 30, 2025

Dear Mr. Gu:

As you know, this office serves in the capacity of City Attorney for the City of Irvine ("City"). This letter is being sent in response to the above-referenced request under the California Public Records Act, Gov. Code, § 7920.000 et seq. (CPRA), which seeks the following:

> Any statements of authority, officer's certificates, powers of attorney, or similar authority granting/reflecting documents for the entity known as "THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC"

On August 8, 2025, the City informed you that due to the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records and/or the need to consult with another agency having substantial interest in the determination of the request or among two or more components of the agency having substantial subject matter interest therein, the City's response time for this request would be extended to August 25, 2025. (Gov. Code, § 7922.535, subds. (b) & (c).)  On August 25, 2025, the City contacted you to inform you that the City was diligently processing your request, and estimated that responsive records would be available on or around October 7, 2025.

All non-exempt disclosable records that the City deems to fall within the scope of your request are attached to this correspondence. This completes the City's review and processing of the above-indicated request.

Should you have any questions about the above, please do not hesitate to contact me.

Very truly yours,



ER, LLP

Jess Sanders

JS:js

Rutan & Tucker, LLP | 18575 Jamboree Road, 9th Floor
Irvine, CA 92612 | 714-641-5100 | Fax 714-546-9035
Orange County | Palo Alto | San Francisco | www.rutan.com

2905/048170-0301
22847942.2 a10/01/25



October 10, 2023

City of Irvine
Building and Safety Department
One Civic Center Plaza
Irvine, CA 92623

Letter of Authorization

Please accept this letter of authorization for Kristi Bhend (KB Processing) to act on behalf of New Home Company as applicant for all building permit submittals, permit processing and all activities necessary at the Irvine City Permit Counter. Please note, New Home Company will be pulling permits as owner/builder.

Should you have any questions, please feel free to contact me.



**Diana Asmar**

**Director, Forward Planning**

New Home Co

15231 Laguna Canyon Rd, Suite 250

Irvine, CA 92618

Cell: ████████

NewHomeCo.com



COMMUNITY DEVELOPMENT
Building and Safety

# PERMIT REVISION/DEFERRED SUBMITTAL APPLICATION

| FOR OFFICE USE ONLY | |
|---|---|
| REVISION #: | 1 |
| PLAN CHECKER: | Joel |
| DATE: | 9/7/23 |
| TARGET DATE: | 9/14/23 |

| PROJECT ADDRESS | SUITE | PRODUCT NAME |
|---|---|---|
| OLIVEWOOD MODELS | | OLIVEWOOD |

| TRACT | LOT | UNITS | VILLAGE |
|---|---|---|---|
| 19176 | | | PORTOLA SPRINGS |

| PLAN CHECK NUMBER | APPLICANT/COMPANY NAME | CONTACT |
|---|---|---|
| 00860702-RNM | KB PROCESSING | KRISTI BLANCHARD |

| PERMIT NUMBER(S) | ADDRESS | PHONE |
|---|---|---|
| 00873317-RBP, 00873318-RBP, 00873319-RBP | 37601 EARLY LANE | 9519704794 |

| | CITY | ZIP | EMAIL |
|---|---|---|---|
| | MURRIETA | 92563 | KRISTI.BLANCHARD@AOL.COM |

(Select A or B as applicable)

**A.**
(*If YES, provide narrative as attachment*)

☐   ☐   ☐   ☐   ☐   ☒   ☐   ☒

1.   ☐   ☒
(*If YES, provide copy of the correction notice as attachment*)

2.   ☐   ☒

3.   ☐   ☒

**B.**
(*If YES, provide approved/stamped plan title sheet as attachment*)   ☐   ☒

**\*SUBMITTALS WITH INCOMPLETE APPLICATIONS OR MISSING REQUIRED DOCUMENTS WILL BE PLACED O**

NOTE:  Any changes not listed                    will NOT be reviewed or approved.

OLIVEWOOD DELTA 3 - MASTER ARCH PLANS REVISED TO SHOW CHANGE OF OWNERSHIP/ DEVELOPER FROM "IRVINE PACIFIC" TO "NEW HOME COMPANY."

| KRISTI BLANCHARD | 9/5/2023 |
|---|---|
| APPLICANT SIGNATURE | DATE |

**FOR OFFICE USE ONLY** Permit required for additional: ☐ ARCHITECTURAL/STRUCTURAL ☐ ELECTRICAL ☐ MECHANICAL ☐ PLUMBING

| TO: | APPROVED BY: | REVISION FEES: | | |
|---|---|---|---|---|
| Joel B. | BUILDING: | HOURS @ | $ |
| | PLANNING: | HOURS @ | $ |
| | GRADING: | HOURS @ | $ |
| | ENGINEERING: | HOURS @ | $ |
| | FIRE DEPT: | HOURS @ | $ |
| SUBMITTAL RECEIPT #: n/a | CUST #: 73031 | (LESS PAID) $ | > |
| REVISION TMPL: 00913274-TMPL | | PLAN CHECK TOTAL $ | |
| | | PERMIT FEES $ | |
| ISSUANCE RECEIPT #: | DATE: | MICRO FEES $ | |
| ADDL P/C OR PERMIT #: | | **BALANCE DUE** $ | |

FORM 65-33B REV 09/22



COMMUNITY DEVELOPMENT
Building and Safety

# NEW RESIDENTIAL REVISI
## SUPPLEMENTAL QUESTIONNA

This questionnaire must accompany any Permit Revision/Deferred Submittal Application (Form 65-33B) for new single
multi-family dwellings. A copy of this form must be given to the construction superintendent as your inspector will n
inspect the field change without it.

| PLAN CHECK NUMBER | REVISION # |
|---|---|
| 00860702 | 11 |
| PRODUCT NAME | TRACT |
| OLIVEWOOD | 19176 |

### D E S C R I P T I O N   O F   R E V I S I O N

PROVIDE A COMPLETE AND BRIEF DESCRIPTION OF REVISION(S).  AS SPACE IS LIMITED, PLEASE USE ABBREVIAT

MASTER ARCH PLANS REVISED TO LIST NEW OWNERSHIP/DEVELOPER OF PROJECT TO "NEW HOME COMPANY."

**ABBREVIATIONS:** **2nd Floor** Flr 2    **Beam** BM    **Foundation** FDN    **Roof** RF
                **Architectural** ARCH    **Column** COL    **Phases** All Ph, Ph1, Ph2, etc.    **Shear Wall** SW
                                           **Plan Type Number** Plan 1, 2, 3, etc.    **Structural** Struc

## PLEASE ANSWER THE FOLLOWING:

1.  DO THESE REVISIONS APPLY TO ALL PHASES? [X] YES [ ] NO, ONLY FROM PHASE _____ ON

2.  DOES THIS AFFECT ALL PLAN TYPES? [X] YES [ ] NO, ONLY PLAN TYPE(S): _____

3.  REVISIONS WILL AFFECT THE FOLLOWING: [X] ARCHITECTURAL [X] STRUCTURAL



COMMUNITY DEVELOPMENT / PUBLIC WORKS

# ELECTRONIC/DIGITAL SIGNATURE DISCLOSURE

I understand and agree that (i) electronically signing and submitting any document(s) to the City of Irvine legally binds me in the same manner as if I had signed in a non-electronic or non-digital form, and (ii) the electronically stored copy of my signature, any written instruction or authorization and any other document provided to me by the City of Irvine, is considered to be the true, accurate, and legally enforceable record in any proceeding to the same extent as if such documents we re originally generated and maintained in printed form. I agree not to contest the admissibility or enforceability of the City of Irvine's electronically stored copy of any other documents.

By using the system to electronically sign and submit any document, I agree to the terms and conditions of this Electronic/ Digital Signature Disclosure.

| KRISTI BLANCHARD | 9/5/2023 |
|---|---|
| SIGNATURE | DATE |

# Exhibit 249



Jess Sanders
E-mail: jsanders@rutan.com

October 1, 2025

**VIA E-MAIL**

Jeffrey Gu
jeffwgu@gmail.com
jeffreygu@proffer.info

Re:    Public Records Act Request Received September 8, 2025

Dear Mr. Gu,

As you know, this office serves in the capacity of City Attorney for the City of Irvine ("City"). This letter is being sent in response to the above-referenced request under the California Public Records Act, Gov. Code, § 7920.000 et seq. (CPRA), which seeks the following:

- Any communications between the City Attorney, the City Council's office, and the Irvine Police Department to justify actions taken to "preserve Ms. Pham's safety and wellbeing" as a result Jeffrey Gu's alleged actions

- Any evidence showing Jeffrey Gu's "repeated calls and attempts to contact Ms. Pham, and requests for her personal contact information"

On September 18, 2025, the City informed you that due to the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records and/or the need to consult with another agency having substantial interest in the determination of the request or among two or more components of the agency having substantial subject matter interest therein, the City's response time for this request would be extended to October 2, 2025 (Gov. Code, § 7922.535, subds. (b) & (c).)

Rutan & Tucker, LLP | 18575 Jamboree Road, 9th Floor
Irvine, CA 92612 | 714-641-5100 | Fax 714-546-9035
Orange County | Palo Alto | San Francisco | www.rutan.com

2905/048170-0301
22850630.1 a10/01/25



Jeffrey Gu
October 1, 2025
Page 2


     The City has now determined that it is in possession of public records potentially responsive to your request. The City is currently reviewing those records and intends to make any non-exempt public records responsive to your request available to you on a rolling production basis beginning on or about **November 10, 2025**.

     Should you have any questions about the above, please do not hesitate to contact me.

Very truly yours,

ER, LLP

JS:js
cc:    City Clerk (via e-mail only)

# Exhibit 250



Jeffrey Gu <jeffwgu@gmail.com>

---

No FBN John Laing Homes

---

Jeffrey Gu <jeffwgu@gmail.com>                                                        Wed, Sep 17 at 11:27 AM
To: Jeffrey Gu <jeffwgu@gmail.com>

Called OC Recorder at +1 (714) 834-2500 on September 17, 2025 at 8:17AM PT.

Esmerelda (Deputy #878) confirmed that there is no FBN on file historically for "John Laing Homes"