**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY GU,<br><br>            Plaintiff,<br>     v.<br><br>CITY OF IRVINE, et al.,<br><br>            Defendants. | No. 8:25-cv-2134-VBF (DSR)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST CITY DEFENDANTS (DOC. NO. 75) AND CITY DEFENDANTS' MOTION TO SET ASIDE ENTRY OF DEFAULT (DOC. NO. 100)** |

This Report and Recommendation is submitted to the Honorable Valerie B. Fairbank, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**1.     INTRODUCTION**

Before the Court are two motions related to the defaults of four of the more than one dozen named Defendants in the above-captioned matter.  On Plaintiff's request, the clerk has entered the defaults of Defendants City of Irvine, Irvine Police Department,[1] City employee Trinity Pham, and City Councilmember William

---

[1] Plaintiff names both the City of Irvine and the Irvine Police Department as separate Defendants in his First Amended Complaint, and has taken the defaults of both.  In the Motion to Set Aside Entry of Default, the City asserts that the Police Department is not a separate entity from the City.  Typically, a governmental entity and its police or sheriff's department are considered
(cont'd . . .)

1  Go (collectively, the "City Defendants").  Plaintiff now moves for entry of default
2  judgment against them.  See Doc. No. 75.  Before the Court could decide that
3  Motion, the City Defendants filed their own Motion to set aside the entry of their
4  defaults.  See Doc. No. 100.  For the reasons discussed below, the Court
5  recommends that the City Defendants' Motion to Set Aside Entry of Default be
6  GRANTED, and that Plaintiff's Motion for Default Judgment be DENIED as moot.

**2.    BACKGROUND**

Plaintiff's operative First Amended Complaint is lengthy and complex.  It spans 110 pages for the pleading itself, and together with its 274 exhibits, totals 2,648 pages.  The root of this case appears to be two separate construction-defect disputes: one over the condition of a house Plaintiff purchased in Colorado from Defendant Toll Brothers, Inc. and the other over the condition of a house Plaintiff's parents purchased in Irvine, California from Defendant The New Home Company Southern California LLC.

Plaintiff names a total of 15 Defendants in this case, including the fictitiously named "Officers Jane and John Doe."  They are: the respective sellers of the two homes (Toll Brothers, Inc. and The New Home Company Southern California LLC); several of their respective related entities (Toll Southwest LLC, TB Proprietary Corp., The New Home Company, Inc., and TNHC Realty and Construction, Inc.); a home-inspection company (Bert L. Howe & Associates, Inc.); the contract City Attorneys for the City of Irvine (attorneys Jeffrey Melching and Jessica Sanders), the above-mentioned Officers Jane and John Doe; and finally as directly relevant to these particular motions now before the Court, the four City Defendants.

---

duplicative where, as here, the allegations against both are the same, and courts routinely dismiss one or the other.  See, e.g., Smith v. Cnty. of Orange, 678 F. Supp. 3d 1182, 1214 (C.D. Cal. 2023).  At this time, the Court need not consider dismissal of the Irvine Police Department as duplicative of the City of Irvine, as no such motion is pending.  For purposes of the instant Motion to Set Aside Entry of Default and Motion for Default Judgment, the Court considers the Police Department to be part of the City, and therefore included in the Motion to Set Aside.

|   |   |
|---|---|
| 1 | Plaintiff pleads five causes of action in the First Amended Complaint: (1) a |
| 2 | claim against the City of Irvine seeking a judicial declaration that the City "failed to |
| 3 | prevent or correct violations of California Business and Professions Code § 7031(b) |
| 4 | by approving and accepting permits submitted by entities that misstated their legal |
| 5 | status on those permits and related declarations, thereby undermining the state's |
| 6 | consumer-protection objectives," (2) a Section 1983 claim against the City, Police |
| 7 | Department, and Officers John and Jane Doe for unreasonable seizure in violation |
| 8 | of the Fourth Amendment, (3) a Section 1983 claim against the City Defendants, |
| 9 | the fictitiously named officers, and the City Attorneys for violation of the First |
| 10 | Amendment right to petition the government, (4) a Section 1983 claim for |
| 11 | deprivation of procedural due process against the same Defendants named in the |
| 12 | First Amendment claim, and (5) a state-law claim for violation of the Bane Act |
| 13 | (California Civil Code § 52.1) against all Defendants. |
| 14 | Plaintiff initiated this action on September 19, 2025, by filing his original |
| 15 | Complaint in which he named all of the present defendants except the Toll |
| 16 | Brothers Defendants (Toll Brothers, Inc., TB Proprietary Corp., and Toll Southwest |
| 17 | LLC). See Doc. No. 1. Plaintiff did not serve that Complaint, however, and instead |
| 18 | filed a First Amended Complaint a few weeks later which added the Toll Brothers |
| 19 | Defendants – and thousands of pages – to his pleading. See Doc. No. 11. The |
| 20 | Summons on the First Amended Complaint was issued on October 8, 2025. See |
| 21 | Doc. No. 13. |
| 22 | As relevant to these motions, on October 20, 2025, Plaintiff filed Proofs of |
| 23 | Service of the Summons and First Amended Complaint on each of the City |
| 24 | Defendants indicating they were served earlier that day. See Doc. Nos. 23-26. |
| 25 | Plaintiff requested the entry of default against each of the City Defendants at 12:01 |
| 26 | a.m. on November 11, 2025, notwithstanding that by then the Defendants who |
| 27 | were purportedly served by substitute service under state law (California Code of |
| 28 | |

Civil Procedure § 415.20) had at least 10 more days to respond.[2]  See Doc. Nos. 52-55.

On December 15, 2025, the clerk entered default against each of the City Defendants.  See Doc. No. 74.  At approximately 1:34 the following afternoon (December 16, 2025), counsel for the City Defendants contacted Plaintiff proposing a stipulation to set aside the defaults and allow those Defendants to file a responsive pleading.  See Dec. 16, 2025, Email from Attorney Spearman to Plaintiff Gu, Doc. No. 106-2 (attached to Pl.'s Opp'n to Mot. to Set Aside Entry of Default) at ECF p. 1.  The City Defendants' counsel indicates in his Declaration in support of the Motion to Set Aside that he contacted Plaintiff "in the hopes that the parties could stipulate to set aside the default without the need for motion practice or time-intensive investigation into the facts of service, " but "Plaintiff responded by questioning [Attorney Spearman's] admission to the Central District and by insisting that he would not communicate with Defendants' counsel until Defendants and counsel had appeared in the case."[3]  Decl. of Justin Spearman, Doc. No. 100-3, at ¶ 3.  Hours later that afternoon, Plaintiff filed his Motion for Default Judgment against the City Defendants.  See Doc. No. 75.[4]  On January 16, 2026, the City Defendants filed their Motion to Set Aside Entry of Default.  See Doc. No. 100.

---

[2] There are questions as to the validity of service on at least some of the City Defendants.  The City Defendants have not raised any such issues, however, and have attached to their Motion to Set Aside Entry of Default a proposed Answer.  Thus, the Court will not address the validity of service at this time.

[3] This is at least the third occasion the Court is aware of in which Plaintiff refused to meet and confer with another party under Local Rule 7-3 because such counsel had not yet made a formal appearance in the case.  See Decl. of Kiana Rugar, Doc. No. 47 at ECF pp. 19-20; Decl. of Ira Rivin, Doc. No. 48 at ECF pp. 7-8.

[4] The docket indicates that Plaintiff filed his Motion for Default Judgment electronically at 4:02 p.m. on December 16th.

The Court has found that both Plaintiff's Motion for Entry of Default Judgment and the City Defendants' Motion to Set Aside Entry of Default are suitable for decision without oral argument, and has taken both matters under submission. Because Plaintiff's Motion for Default Judgment presupposes the entry of default against the City Defendants, the Court must first consider those Defendants' Motion to Set Aside Entry of Default.

**3.   LEGAL STANDARD**

"[J]udgment by default is a drastic step appropriate only in extreme circumstances . . . ." Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984). It is generally disfavored, and whenever reasonably possible, cases should be decided upon their merits. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985) (citing Patapoff v. Vollstedt's, Inc., 267 F.2d 863, 865 (9th Cir.1959)). Thus, "[w]here timely relief is sought from a default and the movant has a meritorious defense," any doubts "should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." Mendoza v. Wight Vineyard Mgmt., 783 F.2d 941, 945 (9th Cir. 1986) (quoting Schwab v. Bullock's Inc., 508 F.2d 353, 355 (9th Cir. 1974)).

Obtaining judgment by default "is a two-step process: an entry of default judgment must be preceded by an entry of default." Amazon Content Servs. LLC v. DeBarr, 793 F. Supp. 3d 1242, 1250 (C.D. Cal. 2025) (citing Fed. R. Civ. P. 55; Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).

A "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." Franchise Holding II, LLC. v. Huntington Rests. Grp., Inc., 375 F.3d 922, 925 (9th Cir. 2004). The party seeking relief from default bears the burden of showing good cause. Id. at 926. In determining whether this standard is met, courts consider: "(1) whether the party seeking to set aside the default engaged in

5

culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default would prejudice the other party." <u>United States v. Signed Pers. Check No. 730 of Yubran S. Mesle</u>, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting <u>Franchise Holding II</u>, 375 F.3d at 925-26) (alterations adopted) (internal quotation marks omitted).  These factors "are disjunctive, such that a court may decline to vacate an entry of default upon a finding of any of these factors."  See <u>Comercializadora Recmaq v. Hollywood Auto Mall, LLC</u>, No. 12CV0945 AJB MDD, 2013 WL 494476, at *2 (S.D. Cal. Feb. 6, 2013) (citing <u>Brandt v. Am. Bankers Ins. Co. of Fla.</u>, 653 F.3d 1108, 1111 (9th Cir. 2011); <u>Mesle</u>, 615 F.3d at 1091).

Determination of whether a party demonstrates "good cause" to set aside the entry of default lies within the sound discretion of the District Court.  <u>Madsen v. Bumb</u>, 419 F.2d 4, 6 (9th Cir. 1969).  Such discretion is particularly broad where a party seeks to set aside an entry of default rather than a default judgment.  <u>Mendoza v. Wight Vineyard Mgmt.</u>, 783 F.2d 941, 945 (9th Cir. 1986).

4.     **DISCUSSION**

    A.     **The City Defendants' Motion to Set Aside Entry of Default Should be Granted**

On the record before the Court, all three factors to determine the existence of good cause to set aside the entry of default against the City Defendants favor setting aside the default.  The Court discusses each factor in turn.

    i.     **Defendants Did Not Engage in Culpable Conduct**

A defendant's conduct is culpable "if he has received actual or constructive notice of the filing of the action and intentionally failed to answer."  <u>Mesle</u>, 615 F.3d at 1092 (citations omitted).  In this context, a defendant acts intentionally if it "acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'"  <u>Id.</u> (quoting <u>TCI Grp. Life Ins. Plan v. Knoebber</u>, 244 F.3d 691, 697 (9th

6

Cir. 2001)).  A defendant's neglectful failure to answer, without more, is typically not "culpable" unless "there is no explanation of the default inconsistent with a devious, willful, or bad faith failure to respond."  Id.  "In evaluating a defendant's alleged culpability, courts are to accept the defendant's uncontested factual allegations accompanying the motion to set aside default as true."  Francois & Co., LLC v. Nadeau, 334 F.R.D. 588, 598 (C.D. Cal. 2020) (citing Falk, 739 F.2d at 464).

      Here, the uncontested facts offered by the City Defendants as to why they failed to answer in a timely manner provide an explanation that is just that – inconsistent with a devious, willful, or bad faith failure to respond.  Plaintiff served his First Amended Complaint and Summons by delivering them to Irvine's City Clerk.  See Doc. Nos. 23-26.  Defendants argue that because of at least perceived harassment by Plaintiff of City staff, staff forwarded these documents from Plaintiff to the City Attorney, rather than the City's insurance claims adjuster.  See Decl. of Michelle Riske, Doc. No. 100-2, at ¶¶ 6-8.  The City Attorney, Jeffrey Melching, is also named as a Defendant in this action, however, and therefore unable to represent the City Defendants in this case.  In light of that fact, and the uncontroverted fact that tort litigation matters involving the City are generally forwarded to the City's insurer – not to the City Attorney – for assignment of counsel (see Riske Decl. at ¶ 9), it is reasonable to conclude that this misrouting of the Summons and First Amended Complaint was the cause of the City Defendants' failure to respond prior to the entry of their default, at least under the applicable standard requiring the Court to resolve all doubts "in favor of the motion to set aside the default so that cases may be decided on their merits."  There is no indication here that the City Defendants sought to take advantage of Plaintiff, interfere with judicial decisionmaking, or otherwise interfere with the legal process.  Rather, Defendants' proffered explanation is indicative of inadvertence.

      Plaintiff offers a series of arguments as to why the City Defendants engaged in culpable conduct, all of which are without merit.  First, he argues that the

7

1  alleged safety concerns arising from Plaintiff's purported harassment of City
2  employees are unsubstantiated by Defendants' supporting evidence.  See Pl.'s
3  Opp'n to Mot. to Set Aside (Doc. No. 106) at 19:15-20:6.  Whether any employee
4  was <u>justified</u> in feeling harassed is immaterial for this purpose, however.  What is
5  relevant is that based upon a <u>perception</u> of harassment, City employees were
6  instructed to forward all materials relating to Plaintiff to the City Attorney's office.
7  Plaintiff does not controvert that such misrouting is what actually happened.
8  Second, Plaintiff argues that the City Defendants' counsel's immediate attempts to
9  contact him once assigned following entry of default somehow supports the
10 inference that Defendants' delay was intentional.  Id. at 20:13-21:2.  Additionally,
11 Plaintiff argues that Defendants' thirty-two-day delay in filing the instant motion
12 following entry of default discounts the credibility of their explanation.  Id. at 21:3-
13 16.  Such post-default conduct has no bearing on whether the City Defendants
14 have advanced a credible explanation that they engaged in culpable conduct
15 <u>leading to</u> default, however.  Moreover, their immediate attempt to rectify their
16 default pursuant to Local Rule 7-3 (in which Plaintiff refused to engage for
17 inapposite reasons) instead supports the conclusion that the City Defendants'
18 initial inaction was the product of negligence, and that their desire to resolve the
19 case on the merits is sincere.  As for the 32 days to prepare and file the Motion to
20 Set Aside Entry of Default after Plaintiff refused to stipulate to such relief, the
21 Court notes that such period occurred over the winter holidays, and that
22 preparation of a proposed Answer to Plaintiff's lengthy First Amended Complaint,
23 which the City Defendants have lodged with their motion, necessarily required
24 substantial time to complete.
25        There is no indication of a "devious, willful, or bad faith failure to respond"
26 here.  The first factor favors setting aside default and allowing Plaintiff's claims
27 against the City Defendants to be determined on their merit, not by default.
28

### ii. Defendants Present a Potentially Meritorious Defense

A defense is meritorious if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." Hawaii Carpenters' Tr. Funds v. Stone, 794 F.2d 508, 513 (9th Cir. 1986). A defendant seeking to set aside entry of default must provide specific facts that could constitute a defense, but the burden is not "extraordinarily heavy." TCI Grp. Life Ins., 244 F.3d at 700. The inquiry at this stage does not concern whether a defendant's factual allegations are true. Mesle, 615 F.3d at 1094. Instead, a movant need only "allege sufficient facts that, if true, would constitute a defense . . . ." Id.

The City Defendants have lodged with their Motion to Set Aside a proposed Answer to Plaintiff's First Amended Complaint in which they deny most of the material allegations against them. See proposed Answer, Doc. No. 100-4. Moreover, they assert several legal Defenses to Plaintiff's claims. See Def.'s Mem. P. & A. in Support of Mot. to Set Aside (Doc. No. 100-1) at 8-13. Without presently addressing the merits of these arguments, Defendants have presented colorable defenses on these grounds to meet the low standard required for setting aside an entry of default. At this point, it suffices that there is "some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." Haw. Carpenters' Trust Funds, 794 F.2d at 513. Thus, the second factor guiding the Court's discretion to consider whether there is good cause to set aside the default also favors doing so.

### iii. Setting Aside Default Would Not Prejudice Plaintiff

Finally, the Court must consider whether setting aside the default would be prejudicial to Plaintiff. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" TCI Grp. Life Ins., 244 F.3d at 701 (quoting Falk, 739 F.2d at 463). An order setting

aside default prejudices a plaintiff when it results in "'tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion.'" Id. (quoting Thompson v. Am. Home Assurance Co., 95 F.3d 429, 433-34 (6th Cir. 1996)). Importantly, the fact that a party may lose a "quick victory" does not "justify denial of relief" from default. Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1225 (9th Cir. 2000). Nor does "merely being forced to litigate on the merits." TCI Grp. Life Ins., 244 F.3d at 701.

Here, it appears Plaintiff's interest is in preserving such a "quick victory" against the City Defendants. He moved for entry of default the very minute he even arguably could, filing such request at 12:01 a.m. on the 22nd day after he claims to have served the City Defendants. See Doc. Nos. 52-55. He then not only refused to engage with the City Defendants' counsel about a stipulation to set aside the default on the flimsiest of bases (questions about defense counsel's admission to this Court, his address of record, and the fact that he had not yet appeared in the case),[5] but filed his Motion for Default Judgment quickly after defense counsel contacted him to propose such a stipulation, thus knowing that the City Defendants intended to seek to set aside their default and defend this case. Compare Dec. 16, 2025, Email from Attorney Spearman to Plaintiff Gu (Doc. No. 106-2 at ECF p.1), timestamped 1:34 p.m., with Pl.'s Motion for Default Judgment (Doc. No. 75), filed Dec. 16, 2025 at 4:02 p.m.

Plaintiff nevertheless argues in his Opposition that setting aside the City Defendants' default would materially prejudice his ability to pursue his claims by "impairing his ability to obtain accurate and complete evidence." Pl.'s Opp'n. to Mot. to Set Aside at 16:3-4. He contends that the City Defendant are in possession of "key public records, bodycam footage, and internal communications central to Plaintiff's claims," and argues that "[p]rolonged delay increases the risk that

---

[5] See Decl. of Justin Spearman, Doc. No. 100-3, at ¶ 3; Pl.'s Opp'n to Mot. to Set Aside (Doc. No. 106) at 10:9-11:7; 21:3-10.

records will be lost, altered, reclassified, or withheld, and that memories of relevant events will fade." Id. 16:7-10.

Such argument about hypothetical "risk" that evidence will be lost is far too speculative and devoid of factual basis to demonstrate prejudice in the form of impairment to his ability to obtain evidence. See Kiwijet, LLC. v. Guangzhou Hayonex Int'l Logistics Co. Ltd, No. 2:21-cv-07515-FWS (JDE), 2024 WL 3468811, at *5 (C.D. Cal. May 22, 2024) (stating that the hypothetical loss of witnesses or evidence is insufficient to demonstrate a "tangible harm" to plaintiff); see also Francois, 334 F.R.D. at 599 (finding that a two-year delay "did not constitute cognizable prejudice"); Aristocrat Techs., Inc. v. High Impact Design and Ent., 642 F.Supp.2d 1228, 1233 (D. Nev. 2009) (finding plaintiffs would not be prejudiced when plaintiffs did not contend that "evidence has been lost or has become unavailable" or "something has occurred since entry of the default which will hinder its ability to litigate the case").

Plaintiff points to no facts which demonstrate a concrete, tangible risk that relevant evidence has been, or will likely be, lost or unavailable because of the City Defendants' short delay in answering the First Amended Complaint. Any such delay was at most 36 days – from the earliest possible date their response would have been due (November 10th) to the date when their counsel first contacted Plaintiff about an agreement to set aside the default (December 16th). This is a minimal period in the context of the hypothetical possibility of loss of records and fading of memory. If anything, Plaintiff's own refusal to set aside the default when first contacted about it in mid-December has caused more delay in the two months since than the City Defendants' initial delay in responding. In addition, relevant document-retention schedules under state law and the general duty of parties to preserve potentially relevant evidence once they are aware of the potential for litigation mitigates against the loss of evidence Plaintiff speculates about. Plaintiff's hypothetical concern about the "risk" evidence may have been lost does

not establish the prejudice sufficient to overcome the strong interest in resolution of cases on the merits rather than by default. Thus, this third factor similarly favors the Court exercising its discretion to set aside the City Defendants' default.

Because all three applicable factors favor a finding of good cause to set aside the defaults under Rule 55(c), the Court recommends the City Defendants' Motion to Set Aside Entry of Default be GRANTED, and that those Defendants be ordered to file the proposed Answer they lodged with that Motion within seven days of the Order adopting this Report and Recommendation.

### B. Plaintiff's Motion for Default Judgment Should be Denied

Because good cause exists to set aside the entry of default against the City Defendants, the first, prerequisite, step in the two-step process of default judgment against them is now missing. Accordingly, Plaintiff's Motion for Default Judgment should be DENIED, and Plaintiff's case against the City Defendants should be allowed to proceed on the merits.

## 5. RECOMMENDATION

Accordingly, it is recommended that the Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) GRANTING the City Defendants' Motion to Set Aside Entry of Default (Doc No. 100) and ordering them to file the Answer lodged with that Motion (Doc. No. 100-4) within seven days of the date of the Court's Order adopting this Report and Recommendation; and (3) DENYING Plaintiff's Motion for Default Judgment against the City Defendants as moot.

DATED: February 17, 2026

_____
HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE