**Jeffrey Gu**

**jeffwgu@gmail.com**

**2332 N Clay St Apt 3**

**Denver, CO 80211**

**1-720-593-1548**

**Plaintiff Pro Se**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Jeffrey Gu,** | **\| Case No.: 8:25-cv-02134-VBF-DSR** |
| **Plaintiff,** | **\| RESPONSE TO OSC** |
| **vs.** | **\|** |
| **City of Irvine et al,** | **\|** |
| **Defendants.** | **\|** |
| **_____\|** | |

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE ON**

**WHY DEFENDANTS JESSICA SANDERS AND JEFFREY MELCHING**

**SHOULD NOT BE DISMISSED FOR FAILURE TO COMPLY WITH**

**FEDERAL RULE OF CIVIL PROCEDURE 4(M)**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**

Cases

Statutes and Rules

**I. INTRODUCTION**

**II. RELEVANT PROCEDURAL AND FACTUAL TIMELINE**

**III. ARGUMENT**

A. Continuous Procedural Instability and Surrounding Hostilities Rendered Preemptive Re-Service Explicitly Wasteful and Counterproductive

B. Plaintiff Directly Satisfies the Controlling Three-Factor Test Under Boudette, Commanding a Finding of Mandatory Good Cause

    1. The City Attorneys Received Uncontestable, Immediate Actual Notice of the Lawsuit

    2. The Individual Defendants Suffer Zero Cognizable Prejudice From a Discretionary Service Alignment

    3. Plaintiff Faces Direct, Fatal, and Irreparable Prejudice If the Action Is Dismissed

C. Under the Controlling Standard in Lemoge, a Dismissal Here Would Constitute an Abuse of Discretion Where Defense Harm Is Wholly Absent and Substantive Claims Face Total Forfeiture

D. The Court Possesses Broad Discretion to Grant an Extension Under Mann Even Absent a Finding of Good Cause

E. Manifest Judicial Economy Mandates a Combined Service Extension and Pleading Alignment Under Federal Rule of Civil Procedure 1

**IV. CONCLUSION**

**CERTIFICATE OF COMPLIANCE**

**TABLE OF AUTHORITIES**

**Cases**

*Boudette v. Barnette*, 923 F.2d 754 (9th Cir. 1991) ....................................... 12-16

*Conley v. Gibson*, 355 U.S. 41 (1957) ................................................................. 19

*Dietz v. Bouldin*, 579 U.S. 40 (2016) ................................................................. 19

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ............... 19

*Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124 (9th Cir. 2008) .............. 19

*In re Sheehan*, 253 F.3d 507 (9th Cir. 2001) .............................................. 9, 10, 13

*Lemoge v. United States*, 587 F.3d 1188 (9th Cir. 2009) ................................. 16-17

*Mann v. American Airlines*, 324 F.3d 1088 (9th Cir. 2003) ............................ 17-18

*Nealey v. Transportacion Maritima Mexicana, S.A.*,

        662 F.2d 1275 (9th Cir. 1980) ....................................................................... 9

**Statutes and Rules**

*Federal Rule of Civil Procedure 1* ......................................................... 4-5, 18, 20

*Federal Rule of Civil Procedure 4(m)* ........................................ 4, 9, 11, 13, 16-21

*California Civil Code § 47(a)* ......................................................................... 7, 15

*California Civil Code § 47(b)* ......................................................................... 7, 15

*California Civil Code § 51.7* (Ralph Civil Rights Act of 1957) ........ 7-8, 15, 17-18

*California Assembly Bill No. 1775*

(Stats. 2020, ch. 326, § 1, effective January 1, 2021) ................................ 15

## I. INTRODUCTION

Plaintiff Jeffrey Gu, proceeding *pro se*, respectfully submits this Response to the Court's Order to Show Cause (OSC) directing Plaintiff to show cause why Defendants Jessica Sanders and Jeffrey Melching (collectively, City Attorneys) should not be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). *See* Dkt. No. 126. This Response is supported by the concurrently filed Declaration of Jeffrey Gu and the authenticated exhibits attached thereto.

As demonstrated below and in the accompanying record, Plaintiff respectfully requests that the Court find mandatory good cause for the service timeline, or, in the alternative, exercise its broad discretionary authority to grant an extension of time under Rule 4(m). Rather than forcing a fragmented track that requires the immediate service of an obsolete, eclipsed First Amended Complaint (FAC)— which would inevitably trigger a redundant cycle of non-substantive motion practice—Plaintiff respectfully requests that the Court conditionally align the service clock with the filing of the definitive Second Amended Complaint (SAC). In the interest of manifest judicial economy and in direct adherence to Federal Rule

of Civil Procedure 1, Plaintiff requests a conditional extension to formalize service within thirty (30) days of the electronic docketing of the SAC, or, in the alternative, that the Court order the SAC to be entered within seven (7) days of this Order with the identical thirty (30) day service runway running from that entry.

## II. RELEVANT PROCEDURAL AND FACTUAL TIMELINE

To demonstrate that Plaintiff has acted with ongoing diligence and in good faith, Plaintiff provides the following chronology of the pre-litigation and litigation events:

- **August 3, 2025:** Plaintiff created CPRA requests for substantive information related to the July 30, 2025 Officer Emma Olague phone call, which explicitly asked for the "[n]ame and title of the officer and badge number who made the phone call" and "[a]ny recording or notes produced from the officer's phone call itself." *See* Exhibit 1.

- **September 19, 2025:** Plaintiff filed the initial complaint. *See* Dkt. No. 1.

- **October 8, 2025:** Plaintiff filed the FAC. *See* Dkt. No. 11.

- **October 13, 2025:** Plaintiff diligently attempted timely service of process on both City Attorneys at their respective places of work. *See* Dkt. Nos. 15 and 16.

- **October 27, 2025:** The City of Irvine finally disclosed a critical police report that had previously been withheld. *See* Exhibit 2. This report contained foundational information and essential facts providing direct insight into the specific conduct of the City Attorneys.

- **October 28, 2025:** The Irvine City Council and Defendant Jeffrey Melching identified this case as existing litigation and discussed it. *See* Dkt. No. 106-1.

- **December 16, 2025:** Concurrently, a fluid procedural dispute arose regarding the default posture of the Defendants City of Irvine, William Go, and Trinity Pham (City Defendants). Plaintiff filed a Motion for Default Judgment against the City Defendants with respect to the FAC. *See* Dkt. No. 75.

- **December 30, 2025:** The Court ultimately quashed the October 13 services on the City Attorneys. *See* Dkt. No. 84.

- **January 16, 2026:** City Defendants filed a Motion to Set Aside Default, extending the procedural instability of the core pleadings. *See* Dkt. No. 100. Human Resources Director for the City of Irvine Michelle Riske made declarations in support of this motion. *See* Dkt. No. 100-2.

- **January 26, 2026:** Toll Brothers Inc., Toll Southwest LLC, and TB Proprietary Corp (Toll Defendants) filed a motion for default judgment in

another federal case that contained relevant admissions for the instant case. *See Toll Brothers Inc. et al v. Gu et al.*, No. 1:25-cv-02884, Dkt. No. 179 (D. Colo. Sept. 12, 2025).

- **March 12, 2026**: Defendant Risewell Homes Inc. via PHLK attorney Rae Richardson sent Plaintiff another cease and desist letter, claiming that Plaintiff was found "trespassing and harassing a Risewell employee working in the Olivewood Community."

- **April 27, 2026:** The City Defendants filed an answer to the FAC and asserted defenses under California Civil Code § 47 (a) and (b). *See* Dkt. No. 118 at 20.

- **May 12, 2026:** In its subsequent defensive maneuvers, the City Defendants asserted a purported defense of absolute privilege/immunity under California Civil Code § 47(b). *See* Dkt. No. 124 at 10.

- **May 13, 2026:** Plaintiff cited updated state statutes in opposing the City Defendants use of California Civil Code § 47(b) as an absolute defense and raised the Ralph Civil Rights Act of 1976. *See* Dkt. No. 125 at 9, 13, and 24.

- **June 3, 2026:** The City of Irvine provided metadata related to the AXON body-cam footage generated in conjunction with the police report. *See* Exhibit 3. Plaintiff also sent emails requesting conferral with all relevant Defendants (see Exhibit 4) and obtained at least one agreement to stipulate

with respect to the finalized SAC with the Ralph Civil Rights Act of 1976 (Cal. Civ. Code § 51.7) cause of action. *See* Exhibits 4, 5, 6, and 7.

## III. ARGUMENT

**A. Continuous Procedural Instability and Surrounding Hostilities Rendered Preemptive Re-Service Explicitly Wasteful and Counterproductive**

Following the Court's December 30, 2025 order quashing the initial workplace service (*See* Dkt. No. 84), Plaintiff fully intended to file a SAC and then, pursuant to it, cure service for the City Attorneys. However, the surrounding litigation landscape was marked by systemic, structural instability—orchestrated heavily by City Defendants and City Attorneys.

Between the City Defendants moving to set aside their default (*See* Dkt. No. 100) and the critical, late-disclosed police report and metadata (*See* Exhibits 2 and 3) reshaping the factual core of the claims against the City Attorneys, the operative pleading became a constantly moving target. Crucially, the City Defendants severely delayed these proceedings by leveraging entirely fabricated, incendiary accusations of "harassment" and a "criminal threat" against Plaintiff in their motion to set aside default. *See* Dkt. No. 100-1 at 5 and Exhibit 2. Rather than litigating the core claims on the merits, the City Defendants and City Attorneys weaponized

these unproven claims of misconduct to poison the well, generate procedural friction, and intentionally stall the timeline of this case.

Under long-standing Ninth Circuit precedent, a court-initiated dismissal under Rule 4(m) constitutes an abuse of discretion if a plaintiff demonstrates "good cause" for the delay, such as when the failure to complete formal service within the strict statutory period is driven by third-party conduct or factors wholly outside the plaintiff's control. *See In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001) (holding that a court *must* extend the time for service if good cause is shown, and retains broad discretion to do so even absent good cause); *see also Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280 (9th Cir. 1980) (emphasizing the Ninth Circuit's preference for merits-based resolutions and noting that "unreasonableness is not inherent in every lapse of time").

The City Defendants' own sworn record in this case completely establishes that the City Attorneys were the operational, proximate cause of the procedural breakdown. In their moving papers, Human Resources Director Michelle Riske explicitly admitted under penalty of perjury that the City of Irvine's own internal, self-imposed policy of diverting files concerning Plaintiff to the City Attorney's office broke their own routing loop, stating:

9

8. As a result of the safety concerns and the instructions to refer matters pertaining to Plaintiff to the City's Attorney, the Complaint was incorrectly routed to the City's Attorney's office. The City's Attorney could not represent the City in this matter, because the City's Attorney has also been named as a party.

9. In matters relating to tort litigation against Irvine such as those made by Plaintiff, complaints would generally be forwarded to Irvine's insurer for handling and assignment of counsel.

10. The routing of the Complaint to Irvine's insurer was delayed in this matter due to the issues with Plaintiff and the routing of the Complaint to the City's Attorney.

*See* Riske Decl., Dkt. No. 100-2 at ¶¶ 8–10, lines 7–15.

By their own explicit admission, City Defendants show that the City Attorneys created the operational sinkhole that created the original delay. The City Defendants and City Attorneys then leveraged this resulting internal delay—which stalled transmission to their insurance carrier—to secure tactical breathing room on the docket. Even if the Court were to charitably characterize this internal breakdown as mere administrative neglect rather than deliberate, bad-faith obstruction, the legal consequence under *In re Sheehan* remains identical: the City Attorneys' own internal operational maneuvers were the proximate cause of lengthening an unstable procedural posture.

To that end, equity requires a symmetric and even-handed application of procedural standards. In prior proceedings, the Court explicitly noted that the City

Defendants' mere "perception" of harassment was a sufficient basis to account for and excuse their own litigation posture and timing delays. *See* Dkt. No. 112 at 8. It would be fundamentally biased and untenable to hold a *pro se* Plaintiff to an exponentially higher, hyper-rigid standard of procedural perfection under Rule 4(m) while simultaneously permitting the City Defendants to restructure their timeline based on self-inflicted internal routing failures and unproven subjective impressions. As the City Attorneys for the City of Irvine, Defendants Melching and Sanders are the functional legal agents who initially perpetuated these false narratives, created this broken internal routing loop, and actively withheld key factual disclosures.

This systemic instability was further compounded by parallel institutional actors whose hostile maneuvers directly disrupted the stabilization of the factual record. On January 26, 2026, Toll Defendants filed a default judgment motion in a parallel federal action containing critical, binding admissions directly relevant to the underlying claims here. *See Toll Brothers Inc. et al v. Gu et al.*, No. 1:25-cv-02884, Dkt. No. 179 (D. Colo.). As Plaintiff moved to ingest these cross-jurisdictional disclosures, the surrounding landscape further escalated on March 12, 2026, when Defendant Risewell Homes Inc. transmitted a bad-faith cease-and-desist letter leveraging fabricated allegations of "trespassing and harassment"

within the Olivewood Community in Irvine. These coordinated, multi-front campaigns—ranging from complex corporate federal admissions to continued threats of police involvement—were explicitly calculated to create overwhelming procedural friction. For Plaintiff to have rushed to serve a transient, half-formed pleading amidst this active hostility would have subverted judicial economy; equity commanded that Plaintiff first neutralize these collateral threats and stabilize the global data corpus before deploying a definitive, fully integrated SAC.

**B. Plaintiff Directly Satisfies the Controlling Three-Factor Test Under _Boudette_, Commanding a Finding of Mandatory Good Cause**

To evaluate whether a disrupted service timeline rises to the level of mandatory good cause, Ninth Circuit precedent dictates a precise three-factor inquiry, examining whether:

(1) the party to be served received actual notice of the lawsuit;

(2) the defendant would suffer no prejudice; and

(3) the plaintiff would be severely prejudiced if the complaint were dismissed.

*See Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991); *see also Sheehan, supra*, 253 F.3d at 512. Plaintiff satisfies each independent prong of the *Boudette* test with a clear evidentiary foundation:

**1. The City Attorneys Received Uncontestable, Immediate Actual Notice of the Lawsuit**

There is no ambiguity on this record that the City Attorneys possessed actual notice of the claims against them from the earliest phases of this litigation. Plaintiff diligently attempted physical service of process at their formal workplaces on October 13, 2025. *See* Dkt. Nos. 15, 16. For the purposes of a Rule 4(m) good cause inquiry, the Ninth Circuit explicitly prioritizes whether a defendant had functional, actual knowledge of the action to prevent surprise, rather than focusing solely on whether formal service was mechanically perfected at the outset. *See Boudette, supra*, 923 F.2d at 756.

Here, the defense's own institutional records conclusively establish that on October 28, 2025—a mere fifteen days after the quashed service attempts—the Irvine City Council and Defendant Melching explicitly identified, indexed, and discussed this specific case as an active, existing legal action. *See* Dkt. No. 106-1. Furthermore, the City Defendants' sworn evidentiary record demonstrates that the summons and complaint were physically routed to the City Attorneys' offices and that the City

Defendants and City Attorneys acknowledged the fact that the City Attorneys themselves were named in the lawsuit and thus could not represent the City Defendants. *See* Riske Decl., Dkt. No. 100-2 at ¶¶ 8–10, lines 7–15.

To argue a lack of adequate notice under these circumstances is legally untenable. The City Attorneys are not unsophisticated laypersons: they are the City Attorneys of the City of Irvine. The moment a federal complaint detailing specific civil rights claims against them verifiably landed on their desks, their functional notice was immediate, absolute, and complete. Because the core purpose of Rule 4 is to ensure a party is apprised of the action so they may prepare a defense, this verified institutional knowledge and physical receipt fully satisfy the first *Boudette* prong.

**2. The Individual Defendants Suffer Zero Cognizable Prejudice From a Discretionary Service Alignment**

Under the second *Boudette* prong, the Court must examine whether the defense has suffered any structural harm, loss of evidence, or faded witness memories as a result of the timeline lapse. Here, City Attorneys suffer completely zero prejudice. No discovery has commenced, no scheduling order has been issued, and no trial dates have been set. To the extent the Court reviews early communications where defense counsel offered to accept service conditioned upon an immediate 21-day responsive timeline, a retroactive critique of Plaintiff's decision to decline

introduces severe hindsight bias. Plaintiff was actively defending the validity of his workplace service attempt and cannot be penalized for proceeding under the reasonable assumption that his existing service would be sustained. Crucially, the City Attorneys have raised no independent claim of prejudice or delay on the record on behalf of themselves; the issue arises solely *sua sponte*.

**3. Plaintiff Faces Direct, Fatal, and Irreparable Prejudice If the Action Is Dismissed**

Conversely, the third *Boudette* prong weighing the risk of severe prejudice to the plaintiff is completely determinative. The further need to wait for a stabilized SAC became a strict procedural necessity on April 27 and May 12, 2026, when the City Defendants formally asserted absolute privilege under Cal. Civ. Code § 47 (a) and (b). *See* Dkt. No. 118 at 20 *and* Dkt. No. 124 at 10. To pierce this potential defense and prevent a premature adjudication, Plaintiff's forthcoming SAC (which he sent to opposing counsel on June 3, 2026 in an attempt to either stipulate or confer, already receiving one agreement to stipulate, from Defendant Bert L. Howe and Associates Inc. *See* Exhibits 4, 5, 6, and 7.) directly adds City Attorneys to the 7th Cause of Action under the Ralph Civil Rights Act of 1976 —incorporating the modern statutory elements updated under AB 1775 (effective January 1, 2021). Because the Court has already accommodated a path forward to file a refined motion for leave to encompass these modifications alongside the facts uncovered

in the late-disclosed police report, a dismissal under Rule 4(m)—even without prejudice—would construct a severe, prejudicial procedural barrier to re-adding these individual actors via the very amendment process the Court has opened.

Because Plaintiff has cleanly demonstrated immediate actual notice, an absolute absence of defense prejudice, and catastrophic terminal prejudice to his civil rights claims, a finding of good cause is legally commanded under the *Boudette* matrix.

**C. Under the Controlling Standard in Lemoge, a Dismissal Here Would Constitute an Abuse of Discretion Where Defense Harm Is Wholly Absent and Substantive Claims Face Total Forfeiture**

Independent of a mandatory good cause finding, the Ninth Circuit places strict equitable limitations on a district court's exercise of discretion to dismiss an action *sua sponte* under Rule 4(m). *See Lemoge v. United States*, 587 F.3d 1188, 1194 (9th Cir. 2009). Under the controlling standard in *Lemoge*, even if a plaintiff fails to show good cause, a district court abuses its discretion if it fails to meaningfully weigh the balance of equities—specifically whether a dismissal without prejudice would functionally execute the plaintiff's claims via a statute of limitations bar and whether the defendants have suffered any actual prejudice. *Id.* at 1195, 1198.

The *Lemoge* court emphasized that the rules of service are meant to facilitate justice, not act as a mechanical trap to execute substantive civil actions on

technicalities. *Id.* at 1198 (holding that the district court abused its discretion by dismissing where the plaintiff faced terminal prejudice and the government suffered no prejudice). Here, the prejudice at stake goes far beyond simple procedural fragmentation; a dismissal under Rule 4(m) threatens to completely foreclose Plaintiff's ability to litigate his core civil rights claims under the Ralph Civil Rights Act of 1976 against the primary institutional instigators of the underlying harm.

Because the individual City Attorneys have had continuous actual notice of these claims, have been completely insulated from litigation surprise by their outside counsel, and have suffered no loss of evidence or impairment to their defense, the balance of equities under *Lemoge* heavily favors an extension. Enforcing a robotic, hyper-technical timeline under these specific circumstances—where the defense faces zero prejudice but the *pro se* civil rights plaintiff faces the permanent loss of statutory claims—constitutes the exact type of mechanical, prejudicial dismissal that the Ninth Circuit in *Lemoge* declared an abuse of discretion.

**D. The Court Possesses Broad Discretion to Grant an Extension Under *Mann* Even Absent a Finding of Good Cause**

Even if the Court determines that this extraordinary factual, statutory, and cross-jurisdictional coordination does not strictly meet the mandatory "good cause"

standard, the Ninth Circuit explicitly holds that district courts possess broad,

inherent discretion to extend the service period under Rule 4(m) anyway. *See*

*Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003) (holding that

"Rule 4(m) does not tie the hands of the district court after the [statutory] period

has expired. Rather, Rule 4(m) explicitly permits a district court to grant an

extension of time to serve the complaint after that...period has expired.).

An exercise of the Court's *Mann* discretionary power is highly warranted here.

Public policy strongly favors resolving actions on their substantive merits—

specifically critical civil rights claims under the Ralph Civil Rights Act of 1976—

rather than dismissing individual defendants due to timing complications born

directly from late evidence disclosures, quash orders, and fluid default battles.

**E. Manifest Judicial Economy Mandates a Combined Service Extension and Pleading Alignment Under Federal Rule of Civil Procedure 1**

To resolve the administrative standstill reflected on this docket, the solution lies

not in a fragmented dismissal under Rule 4(m), but in the foundational directive of

Federal Rule of Civil Procedure 1. Rule 1 explicitly mandates that all rules be

"construed, administered, and employed by the court and the parties to secure the

just, speedy, and inexpensive determination of every action." The United States

Supreme Court and the Ninth Circuit have firmly established that the federal rules

reject the notion that pleading is a "game of skill" where a procedural misstep can forfeit substantive rights, emphasizing instead a binding preference for merits-based adjudication over technical gatekeeping. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957); *see also Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1132 (9th Cir. 2008).

The current record presents a stark operational choice: forcing immediate service of an obsolete, eclipsed FAC on the City Defendants would be an exercise in pure procedural emptiness, predictably triggering a redundant cycle of technical motions to dismiss that would further bloat a docket already exceeding 125 entries. Conversely, using the Court's inherent authority to manage its docket efficiently—by aligning the Rule 4(m) clock directly with the definitive SAC—cuts the Gordian knot. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). Given that the standard for granting leave to amend under Rule 15(a)(2) is explicitly liberal, and because the defense has repeatedly failed to articulate any genuinely substantive futility arguments to overcome this standard (as noted in Plaintiff's reply in support of his motion for leave. *See* Dkt. No. 125.)—which the Ninth Circuit commands must be applied with 'extreme liberality'—there is zero justification for forcing a fragmented track. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (reaffirming that Rule 15's policy favoring amendment is to be

applied with 'extreme liberality'). Granting Plaintiff seven (7) days to file the finalized SAC and thirty (30) days thereafter to execute service on the City Defendants eliminates an artificial paper blizzard, provides the defense with a single, clear target to answer on the merits, and spares the Clerk of Court unnecessary administrative burdens.

Ultimately, coordinating this timeline fulfills every independent mandate of Rule 1: it is **just** because it protects a *pro se* litigant's core civil rights claims from mechanical forfeiture; it is **speedy** because it aggressively truncates the timeline by bypassing an entire cycle of obsolete motion practice; and it is **inexpensive** because it eliminates the wasteful costs of duplicative formal service while preventing the defense from further inflating billable hours through non-substantive, repetitive oppositions. Plaintiff's attached Proposed Order provides the exact turn-key mechanism needed to clear the administrative brush in a single stroke, and manifest judicial economy commands that the Court utilize its authority to discharge the Order to Show Cause and force this litigation onto the merits.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court DISCHARGE and vacate the Order to Show Cause (Dkt. No. 126).

In the interest of judicial efficiency and to stabilize the operative record, Plaintiff further requests that the Court grant leave to file the SAC attached hereto, and conditionally extend the Rule 4(m) timeline to allow Plaintiff thirty (30) days from the electronic docketing of the SAC to execute formal service of process upon Defendants Jessica Sanders and Jeffrey Melching.

In the alternative, should the Court require an expedited filing timeline, Plaintiff requests that the Court order the SAC to be filed within seven (7) days of the Court's order, with the identical thirty (30) day extension under Rule 4(m) running from that electronic entry to execute formal service of process upon the City Attorneys. A Proposed Order reflecting this comprehensive, streamlined resolution is attached herewith.

Respectfully submitted,

June 5, 2026

Jeffrey Gu, Plaintiff, Pro Se

jeffwgu@gmail.com, 2332 N Clay St Apt 3, Denver, CO 80211, 720-593-1548

**CERTIFICATE OF COMPLIANCE**

The undersigned, Plaintiff Jeffrey Gu, certifies that this brief contains 3,642 words,

which complies with the word limit of L.R. 11-6.1.

June 5, 2026

Jeffrey Gu, Plaintiff, Pro Se

jeffwgu@gmail.com, 2332 N Clay St Apt 3, Denver, CO 80211, 720-593-1548