PLANTE HUGUENIN LAUNI KAHN LLP
BRIAN C. PLANTE, State Bar No. 175585
  *bplante@phlklaw.com*
MELANIE S. WOODFIN, State Bar No. 245616
  *mwoodfin@phlklaw.com*
RAE RICHARDSON, State Bar No. 183932
  *rrichardson@phlklaw.com*
18100 Von Karman Ave., Suite 700
Irvine, California 92612
Telephone: (949) 271-8700
Facsimile: (949) 627-2611

Attorneys for Risewell Homes Inc.; The
New Home Company Southern California
LLC; and TNHC Realty and Construction
Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY GU,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF IRVINE, et al.,<br><br>          Defendants. | CASE NO. 8:25-cv-02134-VBF-DSR<br><br>JUDGE:        Valerie Baker Fairbank<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, FILED IN THE ALTERNATIVE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Filed concurrently with Declarations of Melanie Woodfin and Lori Michel; Exhibits; Good Faith Certificate; Request for Judicial Notice; and [Proposed] Order*<br><br>**Date:  August 18, 2026**<br>**Time:  10:00 a.m.**<br><br>**Magistrate Judge:  Daniel S. Roberts** |

/ / /

/ / /

/ / /

1

TO THE COURT, ALL PARTIES, THEIR COUNSEL OF RECORD, AND PLAINTIFF:

PLEASE TAKE NOTICE that on August 18, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Daniel S. Roberts in U.S. Courthouse, 350 West First Street, Los Angeles, California 90012, Defendants Risewell Homes Inc., The New Home Company Southern California LLC, and TNHC Realty and Construction Inc. (collectively, "TNHC") will move this Court for an Order to compel compliance with the arbitration provisions set forth in the Purchase Agreement and Escrow Instructions ("PSA") and the Individual Dispute Resolution Agreement for Olivewood ("IDRA"), which is brought in the alternative to their concurrently filed Motion to Strike and Motion to Dismiss (ECF ___), and to stay the litigation pending completion of the arbitration.  If the Motion to Strike and Motion to Dismiss (ECF 151) are denied, TNHC hereby moves to enforce the arbitration agreement.

This Motion is brought pursuant to Section 5.3 of the IDRA and the Federal Arbitration Act (9 U.S.C. sections 1-16).  Defendants bring this Motion on the grounds that the IDRA requires that all claims arising out of or related to the home located at 129 Oakstone, Irvine, California **must** be submitted to binding arbitration.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Lori Michel, the Declaration of Melanie S. Woodfin, Esq., Good Faith Consultation Certificate, and Request for Judicial Notice filed concurrently herewith, the papers and pleadings on file herein, and such oral

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

2

MOTION TO COMPEL ARBITRATION

argument and documentary evidence that may be presented at the hearing on this
Motion.

Dated:  July 13, 2026                           PLANTE HUGUENIN LAUNI KAHN LLP


                                                By:  */s/ Melanie S. Woodfin*
                                                    Brian C. Plante
                                                    Melanie S. Woodfin
                                                    Rae Richardson
                                                Attorneys for Defendants Risewell Homes Inc.,
                                                The New Home Company Southern California
                                                LLC, and TNHC Realty and Construction Inc.

MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 6

II. STATEMENT OF FACTS................................................................................ 7

III. THE PSA AND IDRA REQUIRE THAT ALL CLAIMS ARISING OUT OF THE PROPERTY BE SUBMITTED TO BINDING ARBITRATION ............................................................................................ 12

IV. PURSUANT TO CONTROLLING STATE AND FEDERAL LAW, THE PARTIES MUST COMPLY WITH THE ARBITRATION PROVISIONS MANDATED BY THE IDRA ................................................ 15

    A. Federal Arbitration Act ...................................................................... 15

V. AS AUTHORIZED AGENT FOR OWNERS, PLAINTIFF IS SUBJECT TO THE ARBITRATION AGREEMENT AND IS ESTOPPED FROM REFUSING TO ARBITRATION.................................. 18

    A. Plaintiff's Actions Are Within The Scope Of The Agency Agreement And The Claim Is Connected To The IDRA And PSA ................................................................................................. 19

    B. Plaintiff Is Estopped From Refusing To Arbitrate............................... 21

VI. CONCLUSION ............................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*AT&T Technologies, Inc. v. Communications Workers of America, et al.*
(1986) 475 U.S. 643, 650 ...................................................................................17

*Cohen v. TNP 2008 Participating Notes Program, LLC*
(2019) 31 Cal.App.5th 840, 859.........................................................................18

*Dean Witter Reynolds, Inc. v. Byrd*
(1985) 470 U.S. 213, 218 ...................................................................................17

*DMS Services, LLC v. Superior Court*
(2012) 205 Cal.App.4th 1346, 1353, 1354.............................................18, 21, 22

*Jenks v. DLA Piper Rudnick Gray Cary US LLP*
(2015) 243 Cal.App.4th 1, 8-9 ...........................................................................18

*Moses H. Cone Hospital v. Mercury Constr. Corp.*
(1983) 460 U.S. 1, 24 .........................................................................................16

*NS Holdings LLC Inc. v. Am. Int'l Group, Inc.*
2010 U.S. Dist. LEXIS 125077 ..........................................................................16

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (U.S.), LLC*
(2012) 55 Cal.4th 223, 236.............................................................................16, 17

*Rodriguez v. American Technologies, Inc.*
(2006) 136 Cal.App.4th 1110, 1121.................................................................16, 17

*Ronay Family Limited Partnership v. Tweed*
(2013) 216 Cal.App.4th 830, 838.......................................................................19

*Suh v. Superior Court*
(2010) 181 Cal.App.4th 1504, 1513....................................................................18

*United Steelworkers of America v. American Manufacturing Co.*
(1960) 363 U.S. 564, 567-568.............................................................................17

*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.*
(2005) 129 Cal.App.4th 759, 762, 766............................................................19, 22

## OTHER AUTHORITIES

9 U.S.C. § 2...........................................................................................................16

9 U.S.C. § 3...........................................................................................................16

MOTION TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Di Lan Ge and Xian Feng Gu ("Owners") purchased a home from The New Home Company Southern California LLC located at 129 Oakstone, Irvine, California (the "Property") in the Olivewood community (the "Project") on or about June 24, 2024.  Owners executed a purchase agreement and dispute resolution agreement (the latter of which was recorded), which contain an agreement to arbitrate all claims arising out of or related to the Property.

On February 1, 2025, Plaintiff and Owners entered into an agreement for Plaintiff to act as their authorized agent for the Property ("Agency Agreement"). Pursuant to the Agency Agreement, Plaintiff performed the following (among other things) as Owners' authorized agent:

1.   From April 2, 2025 to May 12, 2025, he served TNHC with 16 Notices of Claim pursuant to Civil Code Section 896, et seq. ("Title 7") for alleged building standard violations at the Property.

2.   On April 21, 2025, he filed a complaint with the Department of Real Estate ("DRE") as to the flooring at the Property.

3.   From May 23, 2025 to July 16, 2025, he filed five bond claims for the same alleged defects identified in the Title 7 Claims.

4.   He contacted multiple agencies regarding alleged issues with regulatory compliance relating to the design and construction of the Property.

5.   He contacted TNHC's employees and demanded information relating to TNHC, the Property, and the Project.

6.   He appeared at TNHC's closed construction site multiple times without authorization and took photographs and questioned subcontractors.

6

MOTION TO COMPEL ARBITRATION

Plaintiff asserts that, while he was acting as the authorized agent of Owners, TNHC violated the Bane Act (California Civil Code § 52.1) and the Ralph Civil Rights Act of 1976 (California Civil Code § 51.7) when it served him with cease and desist letters after months of receiving a multitude of complaints, bond claims, harassing emails to employees, and his trespassing at a closed construction site multiple times.  Plaintiff's Second Amended Complaint ("SAC") asserts that the cease and desist letters were calculated to interfere with his lawful right to document construction conditions, report violations, petition governmental officials for redress, and be free from threats of violence/intimidation on the basis of his protected characteristics.  Plaintiff has no potential "right" or legal standing for claims pertaining to the Property except in connection with his role as the authorized agent of Owners.

Plaintiff, as a nonsignatory to the agreement to arbitrate, must be compelled to arbitrate this claim as he was acting as the agent of Owners, his actions were within the scope of the agency relationship, and the claims are connected to the Purchase Agreement and Escrow Instructions ("PSA") and the Individual Dispute Resolution Agreement ("IDRA").  Here, Plaintiff does not dispute that he performed the foregoing actions in his capacity as the authorized agent of Owners.  The conduct which forms the basis for Plaintiff's claimed violations of the Bane Act and the Ralph Act occurred in connection with his enforcement of Owners' purchase agreement and dispute resolution agreement after the date on which he became the authorized agent of Owners.  The dispute therefore falls squarely within the Agency Agreement and Owners' arbitration agreement.  Plaintiff, as Owners' agent, must therefore be compelled to arbitration and is equitably estopped to deny TNHC's right to enforce the arbitration clause which Plaintiff placed at issue.

## II.    STATEMENT OF FACTS

On January 31, 2017, Owners entered into the PSA with The New Home Company Southern California LLC to purchase the Property.  (Plaintiff's Exhibit

7

PLANTE HUGUENIN
LAUNI KAHN LLP
PH
LK

("PE") 236 at ECF 130-7, pp. 281-456.)  The PSA provides that all post-closing disputes shall be resolved through the alternative dispute resolution procedures set forth in the IDRA, which is attached to the PSA as an Addendum.  (*Id.* at ¶ 25, p. 293; SAC, ¶ 506.)  Post closing disputes mean any claim, controversy or dispute by or between the parties relating to the PSA, the Property, the sale of the Property, whether based on contract, tort, or statute.  (*Ibid.*)

Owners, as Trustees of The Xian Feng Gu and Di Lan Ge Revocable Trust dated the 26th day of November, 2022, closed escrow on the Property on June 24, 2024.  (SAC, ¶ 526; PE 238 at ECF 130-7, pp. 492-497.)  The grant deed provides that the Property is conveyed "subject to the Individual Dispute Resolution Agreement recorded concurrently herewith…in the Official Records of Orange County… ('Dispute Resolution Documents')."  (*Id.* at p. 495-496.)  It further provides that the property is granted subject to the conditions, covenants, and terms of the  Dispute Resolution Documents.  *(Id.* at p. 496.)

Owners also executed the IDRA, which provides the parties' agreement regarding alternative dispute resolution procedures for all claims, including without limitation, a pre-litigation process and binding arbitration for all claims arising out of the Property.  (Declaration of L. Michel ("Michel Dec."), ¶ 5, Request for Judicial Notice ("RJN"), ¶ 1; Exhibit "1" at pp. 25-80.)  Owners also signed the Receipt for Limited Warranty and Dispute Resolution Agreements (Olivewood) ("Receipt"), which acknowledged their receipt of the IDRA.  (Michel Dec., ¶ 6; Exhibit "2" at pp. 82-83.)  Owners also executed a waiver of their right to a jury trial.  (PE 236 at ECF 130-7, p. 296, ¶ 27, and PE 237 at 130-7, pp. 458-490.)

The IDRA governs all "Merchant Builder Disputes," which is defined as any claim, controversy or dispute that arises from or is related in any way to the Project, the Property, or the Residence, Limited Warranty or a Title 7 Claim whether contractual, statutory, or in tort, including without limitation, claims, issues or controversies that arise from or are related to the purchase, sale, condition, design,

8

construction or materials used in construction of any portion of the Project, the Property or the Residence.  (RJN ¶1; Michel Dec., ¶ 5, Exhibit "1" at pp. 30-31.) Further, Section 5.2.1 of the IDRA provides a pre-litigation dispute process ("Title 7 Claim Process"), which must be completed prior to initiating arbitration.  (*Ibid.*)

On February 1, 2025, Owners and Plaintiff executed an Agency Agreement authorizing Plaintiff to act on behalf of Owners for warranty and defect-related matters at the Property, including acting as their proxy.  (SAC, ¶ 543; Exhibit 238 at ECF 130-7, pp. 492-497.)  Pursuant to the Agency Agreement, beginning in April of 2025, Plaintiff, as the agent of Owners and on Owners' behalf, sought to enforce the PSA and IDRA by pursuing a multitude of claims for construction defects at the Property in various forums.  (Michel Dec., ¶ 8, Exhibit "4" at pp. 91-126; Declaration of Melanie Woodfin ("Woodfin Dec."), ¶¶ 2-6; PE 129-133 at ECF 130-4, pp. 115-134; PE 149 at ECF 130-4, pp. 369-376; PE 151 at ECF 130-5, pp 2-4; PE 186 at ECF 130-5, pp. 193-209; PE 202-209 at ECF 130-7, pp. 12-122; PE 218 at ECF 130-7, pp. 168-170; PE 220 at ECF 130-7, pp. 177-201; PE 222 at ECF 130-7, p. 207; PE 224 at 130-7, pp. 211-212; PE 226 at ECF 130-7, pp. 217-226; and PE 230, ECF 130-7, pp. 233-235.)

Plaintiff, acting on behalf of Owners as their agent pursuant to the Agency Agreement, proceeded with the Title 7 Claim Process set forth in Section 5.2.1 of the IDRA.  (Michel Dec., ¶ 8, Exhibit "4" at pp. 91-126; Woodfin Dec., ¶ 2.) Specifically, Plaintiff served 16 Title 7 Notices between April 2, 2025 to May 12, 2025.  (*Ibid.*)  TNHC timely acknowledged the Title 7 Notices, inspected the Property, and served a statutory response to Plaintiff, thereby concluding the Title 7 Claim Process on May 22, 2025.  (SAC, ¶ 560; PE 132, ECF 130-4, pp. 126-130.)

While this pre-litigation process was ongoing and afterward, Plaintiff, on Owners' behalf and as their agent, filed a complaint with the DRE relating to the flooring at the Property ("DRE Claim") and multiple bond claims for alleged defects in workmanship at the Property: (1) May 23, 2025 (HVAC; Aliso Air); (2) May 23,

9

2025 (Stair and Handrail System; Turnstyle); (3) May 29, 2025 (Glass Fence System); (4) June 12, 2025 (Stair and Handrail System); (5) July 16, 2025 (Door Trim) ("Bond Claims").  (PE 130 at ECF 130-4, p. 121; PE 151 at ECF 130-5, pp. 2-4; PE 202 at ECF 130-7, pp. 12-14; PE 203 at ECF 130-7, pp. 16-19; PE 207-209 at ECF 130-7, pp. 34-122; PE 226 at ECF 130-7, pp. 217-221; PE 230 at ECF 130-7, pp. 233-235; Woodfin Dec., ¶¶ 2-6; Exhibits "5-8," pp. 127 to 267.)  Plaintiff personally emailed the complaints on behalf of Owners, and communicated with the claim handlers on behalf of Owners.  (*Ibid.*)  On or about June 12, 2025, Plaintiff, on behalf of Owners, filed a bond claim relating to "home improvement to Claimant's primary residence," which was filled out by Plaintiff and signed by Owner Di Lan Ge.  (Woodfin Dec., ¶ 4, Exhibit "6" at pp. 130-165.)  In support of this complaint, Plaintiff provided a copy of the PSA to the bond company.  (*Id.*)  Plaintiff, however, did not advise the bond company that the Property was purchased as a 1031 exchange and thus was not "Claimant's primary residence." (Michel Dec., ¶ 7, Exhibit "3" at pp. 88-90.)

On May 20, 2025, Plaintiff appeared at a closed construction project without authorization and questioned subcontractors who were performing work ("Regulatory Investigation 1").  (PE 133 at ECF 130-4, pp. 132-133 and PE 149 at ECF 130-4, pp. 369-376.)

On May 23, 2025, Plaintiff served a Litigation Hold Notice – Pending Legal Action Regarding Defective Construction and Related Misconduct ("Notice of Legal Action"), stating that it:

> serves as formal notice that we are preparing to pursue legal action related to serious construction defects, failure to comply with statutory warranty obligations, and potential misconduct associated with the planning, design, sales, building, closing, warranty, and inspection of the [Property].

(Woodfin Dec., ¶ 3, Exhibit "5" at pp. 127-129.)

10

MOTION TO COMPEL ARBITRATION

Plaintiff also contacted TNHC employees via email requesting business and insurance information as it relates to the Property ("Regulatory Investigation 2"). On July 29 and July 30, 2025, Plaintiff sent emails to Dave Christensen of TNHC demanding that he provide Plaintiff with the name of his employer and advising him to review his W2 to obtain this information.  (PE 218 at ECF 130-7, pp. 168-170.) On July 29, 2025, he also separately emailed Chad Baker of TNHC demanding the same information relating to his employer and advising him to review his W2 for this information.  (*Ibid.*)

On March 3, 2026, Plaintiff was again found trespassing on a TNHC construction site and was harassing a TNHC employee working in the Olivewood Community by standing in front of him, face to face, and demanding that he tell Plaintiff his name and the name of the company he worked for.  When a TNHC supervisor arrived onsite and asked Plaintiff to leave, Plaintiff became hostile, demanded that the employee answer his questions, and used profanity toward the employee and a City inspector who was also onsite.  (PE 285 at ECF 130-10, pp. 73-74.)  Further, Plaintiff admitted that he was present at the construction site on March 3, 2026, a fact which Plaintiff also admits in his SAC.  (*Id.*, and SAC, pp. 129-130, ¶¶ 849-869.)  This is the incident that resulted in TNHC's fifth cease and desist letter to Plaintiff.

The Title 7 Claims, DRE Claim, Bond Claims, Regulatory Investigation 1, and Regulatory Investigation 2 and the trespassing incident on March 3, 2026 are collectively referred to as the "Defect Claims."

Pursuant to what TNHC viewed as harassing behavior occurring over the span of several months in connection with the Defect Claims, TNHC served Plaintiff with cease and desist letters requesting that he refrain from harassing TNHC and its employees, refrain from trespassing on closed construction sites, and immediately cease and desist the willful misuse of confusingly similar names to TNHC entities. (SAC at ECF 130, pp. 104-15; PE 133 at ECF 130-4, pp. 132-133; PE 205 at ECF

130-7, pp. 25-26; PE 218 at ECF 130-7, pp. 168-169; and PE 225 at ECF 130-7, 214-215.)  TNHC served Plaintiff with another cease and desist letter on March 12, 2026, as a result of his continuing trespassing and harassing behavior.  (PE 285 at ECF 130-10, pp. 73-74.)  In response to these letters pertaining to Plaintiff's actions as an agent of Owners, Plaintiff filed the SAC asserting violations of the Bane Act (California Civil Code § 52.1) ("Bane Act"), and the Ralph Civil Rights Act of 1976 (California Civil Code § 51.7) ("Ralph Act").

As to the fourth cease and desist letter dated August 22, 2025, Plaintiff filed an Article of Dissolution (of) Corporation pursuant to C.R.S. § 7-114-103 dissolving the confusingly similar entity name ("The New Home Company Inc") in response to TNHC's cease and desist letter.  (RJN, ¶ 2; Exhibit "9" at pp. 268-272.)

## III.    THE PSA AND IDRA REQUIRE THAT ALL CLAIMS ARISING OUT OF THE PROPERTY BE SUBMITTED TO BINDING ARBITRATION

Plaintiff, acting as the authorized agent of Owners, pursued the Defect Claims.  (Michel Dec., ¶ 8; Woodfin Dec., ¶ 2; Exhibit "4" at pp. 91-126; PE 128 at ECF 130-4, pp. 112-113; PE 130 at ECF 130-4, p. 121; PE 131 at ECF 130-4, p. 123; PE 132 at ECF 130-4, pp. 126-130; PE 149 at 130-4, pp. 369-376; PE 151 at ECF 130-5, pp. 2-4; PE 202-205 at ECF 130-7, pp. 12-26; PE 207-209 at ECF 130-7, pp. 34-122; PE 226 at 130-7, pp. 217-221; PE 236-238 at ECF 130-7, pp. 280-497; and PE 245 at ECF 103-7, pp. 532-534.)  Further, the Defect Claims – and all of Plaintiff's conduct in connection with enforcing the Defect Claims as Owners' agent – fall squarely within the definition of "Merchant Builder Dispute" set forth in Section 2.14 of the IDRA and, therefore, are subject to the arbitration agreement.  (RJN, ¶ 1; Michel Dec., ¶ 5; Exhibit "1" at pp. 30-31.)  Specifically, Section 2.14 of the IDRA provides, in relevant part, that:

2.14  **MERCHANT BUILDER DISPUTE:**  "*Merchant Builder Dispute*" shall mean any claim, issue or controversy that **arises from or is related in any way** to

12

MOTION TO COMPEL ARBITRATION

> (i) the **Project**, (ii) the **Property**, (iii) the **Residence**, or (iv) the relationship between Initial Owner and Merchant Builder, **whether contractual, statutory or in tort, including without limitation, claims, issues or controversies that arise from or are related to the purchase, sale, condition, design, construction or materials used in construction of any portion of the Project, Property or the Residence**, the agreement between Builder and Owner to purchase the Residence or any related agreement, a Limited Warranty, disclosures, or Issues, including without limitation the following: (a) **a Title 7 Claim**; … and (e) any disagreement concerning the timeliness of Builder's performance or Owner's notification under a Limited Warranty or the Claim Process.

(*Ibid.* [emphasis added].)  Here, the claims asserted against TNHC arise solely out of Plaintiff's actions as agent to Owners in the enforcement of a Title 7 Claim, alleged defects at the Property, and the design and construction of the Property.  (PE 130-133 at 130-4, pp. 112-130; PE 149 at ECF 130-4, pp. 369-376; PE 151 at ECF 130-5, pp. 2-4; PE 203-210 at ECF 130-7, pp. 16-124; PE 218 at ECF 130-7, pp. 168-170; PE 220 at ECF 130-7, pp. 177-201; PE 222 at ECF 130-7, p. 207; PE 224-226 at ECF 130-7, pp. 217-226; and PE 229-230 at ECF 130-7, pp. 228-235; Michel Dec., ¶ 8; Exhibit "4" at pp. 91-126.)  It therefore cannot be disputed that the claims asserted in the SAC fall squarely within the scope of the Owners' agreement to arbitrate.

Further, Section 5.2 of the IDRA sets forth the Title 7 Claim Process that must be followed before any legal proceeding can be initiated by an Owner against the Merchant Builder Parties.  (Michel Dec., ¶ 8; RJN, ¶ 1; Exhibit "1" at pp. 30-31.)  Owner is defined at Section 2.10, as " . . . the person or entity that holds record

13

fee title to the Property . . ." and Merchant Builder Parties is defined at Section 2.15, as " . . The New Home Company Southern California LLC . . . and … affiliated parent and subsidiary companies…" (*Ibid*.)  The parties complied with the provisions of the Title 7 Claims Process.  (PE 131 at ECF 130-4, pp. 123-124 and PE 132 at ECF 130-4, pp. 126-130; Michel Dec., ¶ 8; Woodfin Dec., ¶ 2; Exhibit "4" at pp. 91-126.)  As that process did not resolve the dispute, the claims are subject to binding arbitration pursuant to the PSA and IDRA.  (Michel Dec., ¶ 8, RJN, ¶ 1, and Exhibit "1" at pp. 34-36.)  Specifically, all post-closing Disputes are subject to mandatory binding arbitration and governed by the Federal Arbitration Act ("FAA").  (*Ibid*; *See* Sections 5.3 and 5.3.1.)  The Merchant Builder Parties, The New Home Company Southern California LLC, and its parent company and member, Risewell Homes Inc., and its affiliated subsidiary TNHC Realty and Construction Inc., are parties to the arbitration agreement and may enforce it.  (*Ibid*.)

Moreover, Owners and TNHC waived their right to a jury trial.  The PSA provides in all capital letters that both buyer and seller agree, by initialing below this provision, that:

> AS TO ALL DISPUTES SUBJECT TO THE
> ALTERNATIVE DISPUTE RESOLUTION
> PROVISIONS SET FORTH OR REFERENCED IN THIS
> PARAGRAPH 25, SELLER…AND BUYER WAIVE
> ANY RIGHTS TO JURY TRIAL, APPEAL OR OTHER
> CIVIL LITIGATION PROCEDURES …

(PE 236 at ECF 130-7, p. 293, ¶ 25.)  Further, Paragraph 27 of the PSA provides that:

> WE/I HAVE READ AND UNDERSTAND THE
> FOREGOING AND AGREE TO SUBMIT DISPUTES
> ARISING OUT OF THE MATTERS INCLUDED IN
> THIS PARAGRAPH ENTITLED "ALTERNATIVE

14

DISPUTE RESOLUTION PROCEDURES" TO THE PROCEDURES SET FORTH IN PARAGRAPH 25.

(*Id.* at ¶ 27, p. 296.)  Owners and The New Home Company Southern California LLC ("Seller") both initialed below this paragraph.  (*Ibid.*)  Owners also executed the Receipt which certifies that Owners received the IDRA.  (Michel Dec., ¶ 6, Exhibit "2" at pp. 84-85.)  The Receipt provides that Owners agree that failure to read the IDRA shall not change the parties' rights, duties or obligations in the IDRA.  (*Ibid.*)

Owners and Seller also initialed Section 14 of the Limited Warranty which provides that the parties agree to have any dispute resolved through arbitration and that by initialing this document, they agree to waive any right to litigate the dispute in a court or jury trial.  (PE 237 at ECF 130-7, p. 458-490.)  It further provides that if Owners refuse to submit the dispute to arbitration, they may be compelled to arbitration.  (*Ibid.*)

Pursuant to the foregoing, the Defect Claims – which include alleged design and construction defects at the Property and regulatory claims as to the Property and the Project – are subject to binding arbitration pursuant to the IDRA and the PSA.

## IV.   PURSUANT TO CONTROLLING STATE AND FEDERAL LAW, THE PARTIES MUST COMPLY WITH THE ARBITRATION PROVISIONS MANDATED BY THE IDRA

### A.   Federal Arbitration Act

Section 5.3.1 of the IDRA mandates that any Merchant Builder Dispute which is not resolved by non-binding dispute resolution procedures, "shall be resolved by neutral, binding arbitration governed by the Federal Arbitration Act (9 U.S.C. §§1-16 ("*Federal Act*") and not by any court action except as provided for judicial review of arbitration proceedings under the Federal Act. . . ." (RJN, ¶ 1, and Michel Dec., ¶ 5; Exhibit "1" at p. 36.)

/ / /

The FAA, at 9 U.S.C. section 2, provides, in pertinent part, that:

A written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

(9 U.S.C. § 2.)  "In cases governed by the [FAA], federal courts are empowered to compel arbitration and to stay actions arising out of disputes that are subject to an arbitration agreement." (*NS Holdings LLC Inc. v. Am. Int'l Group, Inc.* 2010 U.S. Dist. LEXIS 125077 *3; 9 U.S.C. § 3.)  This section ". . . is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24.) "The FAA 'establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution.'" (*NS Holdings LLC Inc.*, *supra*, at *4; citing *Preston v. Ferrer* (2008) 552 U.S. 346, 349, 128 S. Ct. 978, 169 L. Ed. 2d 917). "Therefore, on a motion to compel arbitration, courts resolve any doubts in favor of arbitration." (*Ibid.*, citing *Moses H. Cone Mem'l Hosp.*, *supra*, at 24-25.) Where the parties adopt the FAA to govern the arbitration, the FAA controls, including 9 U.S.C. section 3, which requires the court to stay the judicial proceedings and compel arbitration. (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1121; 9 U.S.C. § 3.)

"In determining the rights of parties to enforce an arbitration agreement within the FAA's scope, courts apply state contract law while giving due regard to the federal policy favoring arbitration." [Citations omitted.] (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (U.S.), LLC* (2012) 55 Cal.4th 223, 236.) "In California, '[g]eneral principles of contract law determine whether the

16

parties have entered a binding agreement to arbitrate.' [Citations omitted.]  A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement.  (*Pinnacle Museum Tower Assn.*, *supra*, 55 Cal.4ᵗʰ at 236.)  Here, Owners expressly agreed to arbitration by signing the IDRA, the Receipt, and Section 14 of the Limited Warranty.  (RJN, ¶ 1; Michel Dec., ¶¶ 5, 6; Exhibits "1" and "2" at pp. 43, 76-77, 79, 84-85; PE 237 at ECF 130-7, pp. 458-490.)  The law is clear that parties may expressly agree that an arbitration move forward under the FAA's procedural provisions rather than under state procedural law.  (*Rodriguez*, *supra*, 136 Cal.App.4th at 1121.)  In such a scenario (as is the case here), the Court is required to stay the litigation and compel the parties to complete arbitration. (*Ibid.*)

Under the FAA, the function of a court in deciding whether a dispute is subject to arbitration is confined to ascertaining whether the claim, on its face, is governed by the arbitration agreement.  (*United Steelworkers of America v. American Manufacturing Co.* (1960) 363 U.S. 564, 567-568.)  As the United States Supreme Court has stated in construing the federal policy underlying the FAA, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." (*AT&T Technologies, Inc. v. Communications Workers of America, et al.* (1986) 475 U.S. 643, 650.)  "By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion [of the court], but instead mandates that [courts] *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4." (*Dean Witter Reynolds, Inc. v. Byrd* (1985) 470 U.S. 213, 218.)  The FAA therefore mandates enforcement of the arbitration provision in the IDRA.

/ / /

/ / /

17

## V. AS AUTHORIZED AGENT FOR OWNERS, PLAINTIFF IS SUBJECT TO THE ARBITRATION AGREEMENT AND IS ESTOPPED FROM REFUSING TO ARBITRATE

"Because arbitration is a matter of contract, generally 'one must be a party to an arbitration agreement to be bound by it or invoke it.'" (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1353; citing *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 706.) "There are circumstances in which nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement." (*Jenks v. DLA Piper Rudnick Gray Cary US LLP* (2015) 243 Cal.App.4th 1, 8-9.) Specifically:

> "… both California and federal courts have recognized limited exceptions to this rule, allowing nonsignatories to an agreement containing an arbitration clause to compel arbitration of, or be compelled to arbitrate, **a dispute arising within the scope of that agreement**. (See *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513 [105 Cal.Rptr.3d 585] [describing "… theories by which a nonsignatory may [compel or] be bound to arbitrate: '…(c) **agency**; … (e) **estoppel**…'"]; *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 268 [25 Cal.Rptr.3d 440] (Boucher) [same, citing federal cases]; see also *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile* (4th Cir. 1988) 863 F.2d 315, 320–321.)

(*Id.* at 1353 [emphasis added]; See also *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513; *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 859.) Further,

> These exceptions to the general rule that one must be a party to an arbitration agreement to invoke it or be bound

18

MOTION TO COMPEL ARBITRATION

by it 'generally are based on the existence of a relationship between the nonsignatory and the signatory, such as principal and agent … where a sufficient 'identity of interest' exists between them.' (*Jones v. Jacobson*, supra, 195 Cal.App.4th at pp. 18–19, fn. 9; accord, *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614–615 [139 Cal.Rptr.3d 114] [allegations in complaint that defendants acted as agents of one another sufficient to allow alleged agent/nonsignatory to compel arbitration]; *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 766 [28 Cal.Rptr.3d 752] [" '[t]he common thread' " in these cases " 'is the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement'…

(*Id.* at 1354.)

A.   **Plaintiff's Actions Are Within The Scope Of The Agency Agreement And The Claim Is Connected To The IDRA And PSA**

An agent is bound by the arbitration agreement to which its principal is a party, provided that the agent's actions are within the scope of the agency relationship and the claims are connected to the agreement containing the agreement to arbitrate. (*Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 838.)

Plaintiff concedes that as of February 1, 2025, he executed an Agency Agreement with Owners which authorized him to act on their behalf as to the post-construction defect management, claims coordination, warranty correspondence, and related tasks concerning the Property. (SAC, ¶ 543; PE 128 at ECF 130-4, pp. 112-113.) The Agency Agreement provides that Plaintiff will act as a "proxy" to the

19

MOTION TO COMPEL ARBITRATION

Owners for defect-related matters.  (*Ibid.*)  It is therefore undisputed that Plaintiff is Owners' agent for the Property and, including without limitation, the Defect Claims.

Likewise, it cannot be disputed that Plaintiff's prosecution of the Defect Claims, and his behavior in connection therewith, fall squarely within the scope of the Agency Agreement and the PSA and IDRA.  The PSA and IDRA, which contain the agreement to arbitrate, govern all claims arising out of or in any way related to the Property, including unresolved Title 7 Claims pertaining to the Property.  (PE 236 at ECF 130-7, p. 293-296, ¶¶ 25, 27; RJN, ¶ 1; Michel Dec., ¶ 5; Exhibit "1" at ¶¶ 2.14, 5.3, pp. 30-31, 34, 43, 76-77, 79, 84-85.)

Plaintiff, while acting as agent to Owners pursuant to the Agency Agreement, pursued Defect Claims against TNHC relating to the Property.  Further, in pursuit of these claims, he relied on the documents containing the arbitration agreement.  Indeed, Plaintiff provided a copy of the PSA to bond companies in connection with the Bond Claims.  (Woodfin Dec., ¶ 4; Exhibit "6" at p. 130-165.)  He likewise provided the PSA, which includes an Addendum identifying the IDRA, and the Limited Warranty as Exhibits to the SAC, all of which identify the IDRA and the parties' agreement to arbitrate, further demonstrating that the Defect Claims are connected to these documents.  (PE 236, ECF 130-7, pp. 280-456 at 297, 298 and PE 237, ECF 130-7, pp. 457-490.)

In connection with Plaintiff's Defect Claims, TNHC issued cease and desist letters to Plaintiff demanding that he cease and desist from harassing behavior and reserving its rights to pursue legal remedies.  (PE 133 at ECF 130-4, pp. 132-134; PE 205 at ECF 130-7, pp. 25-26; and PE 218 at ECF 130-7, pp. 168-170[1].)  In

---

[1] A fourth cease and desist letter was provided to Plaintiff in connection with his registering of a confusingly similar TNHC entity name in Colorado – "The New Home Company Inc" – which, in response, Plaintiff dissolved. (PE 225 at ECF 130-7, pp. 214-215; RJN, ¶ 2, Exhibit "9" at p. 268-272.)

20

MOTION TO COMPEL ARBITRATION

response, Plaintiff filed the SAC asserting that these cease and desist letters, served in connection with the Defect Claims, violate the Bane Act and the Ralph Act.

It is clear that the Defect Claims were brought within the scope of the Agency Agreement, that the violations of the Bane Act and the Ralph Act that Plaintiff asserts in his SAC arise out of and relate solely to conduct between Plaintiff and TNHC in connection with the Defect Claims, and that the Defect Claims (including without limitation claims arising out of conduct in connection with the pursuit of those Defect Claims) fall squarely within the IDRA and PSA. His claim arises out of his enforcement of the IDRA and PSA on the Owners' behalf and he must therefore be compelled to arbitrate his claims pursuant to Owners' agreement to arbitrate.

## B. Plaintiff Is Estopped From Refusing To Arbitrate

In addition to agency, a nonsignatory can be compelled to arbitration under the doctrine of equitable estoppel. Under the theory of equitable estoppel,

> 'a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations.

(*DMS Services, LLC*, *supra*, at 1354; citing, *JSM*, supra, 193 Cal.App.4th at pp. 1240–1241 "[doctrine of equitable estoppel may also apply to permit signatory to arbitration agreement to compel nonsignatory to arbitrate].") The *DMS Services, LLC* Court notes that:

> The reason for this equitable rule is plain: One should not be permitted to rely on an agreement containing an arbitration clause for its claims, while at the same time repudiating the arbitration provision contained in the same contract. (See *Jones v. Jacobson*, supra, 195 Cal.App.4th

21

at p. 20 [purpose of equitable estoppel doctrine is to "'prevent a party from using the terms or obligations of an agreement as the basis for his [or her] claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement'"]; *Boucher*, at p. 272 ["a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved"]; *Molecular Analytical*, at p. 706 ["'[t]he rule applies to prevent parties from trifling with their contractual obligations'"].) (*Ibid.*)  If an agent of a signatory party to an arbitration agreement may enforce it under equitable estoppel principles, the same must be true as to enforcing the arbitration against the agent of a signatory.  (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.*, *supra*, 129 Cal.App.4th at p. 762.)

Plaintiff, as Owners' agent, is relying on the PSA, IDRA, and Limited Warranty signed by Owners to pursue the Defect Claims, yet he refuses to be bound by the Owners' agreement to arbitrate.  "One should not be permitted to rely on an agreement containing an arbitration clause for its claims, while at the same time repudiating the arbitration provision contained in the same contract."  (*DMS Services, LLC*, *supra*, at 1354.)

## VI.    CONCLUSION

Pursuant to the IDRA and PSA, the Owners agreed to arbitrate any and all claims arising out of the Project, the Property, and any unresolved Title 7 Claims. Plaintiff, as agent of Owners, pursued the Defect Claims which gave rise to his claim for violations of the Bane Act and the Ralph Act.  The scope of the claims

/ / /

/ / /

22

therefore falls squarely within Plaintiff's agency relationship and the IDRA and, thus, Plaintiff must be compelled to, and is estopped from refusing to, arbitrate the claims set forth in the SAC.

Dated:  July 13, 2026                    PLANTE HUGUENIN LAUNI KAHN LLP


By:  /s/ *Melanie S. Woodfin*
        Brian C. Plante
        Melanie S. Woodfin
        Rae Richardson
Attorneys for Risewell Homes Inc.; The New Home Company Southern California LLC; and TNHC Realty and Construction Inc.

23

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Risewell Homes Inc., The New Home Company Southern California LLC, and TNHC Realty and Construction Inc., certifies that this brief contains <u>5349</u> words, which:

    ☒ complies with the word limit of L.R. 11-6.1.


Dated:  July 13, 2026               PLANTE HUGUENIN LAUNI KAHN LLP


By:  /s/ *Melanie S. Woodfin*
         Brian C. Plante
         Melanie S. Woodfin
         Rae Richardson
Attorneys for Risewell Homes Inc.; The New Home Company Southern California LLC; and TNHC Realty and Construction Inc.




PLANTE HUGUENIN LAUNI KAHN LLP