# Exhibit 1

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 166.00
* S R 0 0 1 5 0 1 0 1 1 5 S *
**2024000156494 8:00 am 06/25/24**
491 CR-SC06 A12    54
0.00 0.00 0.00 0.00 159.00 0.00 0.000.000.00 0.00

**RECORDED AT THE REQUEST OF:**

Recording Requested By:
First American Title Company
Homebuilder Services Division

**WHEN RECORDED RETURN TO:**

The New Home Company
15231 Laguna Canyon Rd., Suite 250
Irvine, CA  92618
Attn:  Lori Michel

6923749

# INDIVIDUAL DISPUTE RESOLUTION AGREEMENT

## FOR

## OLIVEWOOD

Exempt from fee per GC 27388.1 (a)(2): recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT)

HLO\ Olivewood\ v.1 9/20/2023

# TABLE OF CONTENTS

**Page**

*ARTICLE I* APPLICABILITY ...................................................................................................... 1

| | | |
|---|---|---|
| 1.1. | PROPERTY SUBJECT TO INDIVIDUAL DISPUTE RESOLUTION AGREEMENT ................................................................................... 1 |
| 1.2. | PURPOSE .................................................................................................... 1 |

*ARTICLE II* DEFINITIONS .......................................................................................................... 1

| | | |
|---|---|---|
| 2.1. | BUSINESS DAYS ........................................................................................ 1 |
| 2.2. | CLAIM PROCESS ...................................................................................... 1 |
| 2.3. | COUNTY .................................................................................................... 2 |
| 2.4. | DISPUTE DECLARATION ........................................................................ 2 |
| 2.5. | HOMEOWNER MANUAL .......................................................................... 2 |
| 2.6. | INDIVIDUAL DISPUTE RESOLUTION AGREEMENT ........................... 2 |
| 2.7. | ISSUES ...................................................................................................... 2 |
| 2.8. | LIMITED WARRANTY .............................................................................. 2 |
| 2.9. | MAINTENANCE GUIDELINES.................................................................. 2 |
| 2.10. | MASTER ASSOCIATION .......................................................................... 2 |
| 2.11. | MASTER DECLARATION ......................................................................... 2 |
| 2.12. | MASTER DEVELOPER .............................................................................. 2 |
| 2.13. | MERCHANT BUILDER .............................................................................. 2 |
| 2.14. | MERCHANT BUILDER DISPUTE............................................................. 2 |
| 2.15. | MERCHANT BUILDER PARTIES ............................................................. 3 |
| 2.16. | OWNER ...................................................................................................... 3 |

2.16.1 INITIAL OWNER ................................................................. 3

2.16.2 SUCCESSOR OWNER.......................................................... 3

| | | |
|---|---|---|
| 2.17. | PROJECT.................................................................................................... 3 |
| 2.18. | PROPERTY ................................................................................................ 3 |
| 2.19. | RESIDENCE............................................................................................... 3 |
| 2.20. | SUBSEQUENTLY RECORDED DOCUMENT .......................................... 4 |
| 2.21. | SUPPLEMENTAL DECLARATION .......................................................... 4 |
| 2.22. | TITLE 7...................................................................................................... 4 |
| 2.23. | TITLE 7 CLAIM......................................................................................... 4 |

*ARTICLE III* OWNER ACKNOWLEDGMENT OF NOTICES.................................................. 4

| | | |
|---|---|---|
| 3.1. | STATUTORY STANDARDS ...................................................................... 4 |
| 3.2. | CLAIM PROCESS ...................................................................................... 4 |
| 3.3. | AGENT ...................................................................................................... 5 |

*ARTICLE IV* WARRANTIES AND MAINTENANCE ............................................................... 5

| | | |
|---|---|---|
| 4.1. | LIMITED WARRANTY .............................................................................. 5 |
| 4.2. | MANUFACTURED PRODUCTS................................................................. 5 |

HLO\ Olivewood\ v.1 9/20/2023    i

| | | |
|---|---|---|
| 4.3. | HOMEOWNER MANUAL | 6 |
| 4.4. | DUTY TO MAINTAIN | 6 |

**ARTICLE V** CLAIM PROCESSES AND DISPUTE RESOLUTION PROCEDURES ... 6

| | | |
|---|---|---|
| 5.1. | CUSTOMER SERVICE | 6 |
| 5.2. | CLAIM PROCESS OR MEDIATION: | 6 |
| | 5.2.1 TITLE 7 CLAIM | 6 |
| | 5.2.2 OTHER CLAIM | 6 |
| | **5.2.3** MEDIATION FAILS TO SETTLE CLAIM | 8 |
| 5.3. | MANDATORY BINDING ARBITRATION | 8 |
| 5.4. | JUDICIAL REFERENCE | 11 |
| 5.5. | DISPUTES EXEMPT FROM THIS INDIVIDUAL DISPUTE RESOLUTION AGREEMENT | 12 |
| 5.6. | DISPUTES TO BE RESOLVED INDEPENDENTLY | 12 |

**ARTICLE VI** AMENDMENT AND ENFORCEMENT ... 13

| | | |
|---|---|---|
| 6.1. | AMENDMENTS | 13 |
| 6.2. | ENFORCEMENT | 13 |
| 6.3. | THIRD PARTY BENEFICIARIES | 13 |

**ARTICLE VII** MISCELLANEOUS PROVISIONS ... 13

| | | |
|---|---|---|
| 7.1. | BINDING | 13 |
| 7.2. | CONFLICT | 13 |
| 7.3. | CONSTRUCTION OF PROVISIONS | 14 |
| 7.4. | EXHIBITS | 14 |
| 7.5. | MORTGAGE PROTECTION | 14 |
| 7.6. | REDISTRIBUTION OF DOCUMENTS | 14 |
| 7.7. | SEVERABILITY OF PROVISIONS | 14 |
| 7.8. | SUCCESSOR STATUTES | 14 |
| 7.9. | TERM | 14 |

## INDIVIDUAL DISPUTE RESOLUTION AGREEMENT
## FOR
## OLIVEWOOD

THIS INDIVIDUAL DISPUTE RESOLUTION AGREEMENT FOR OLIVEWOOD (*"Individual Dispute Resolution Agreement"*) is entered into by and between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (*"Merchant Builder"*), and Xian Feng Gu, Trustee and Di Lan Ge, Trustee (*"Initial Owner"*) as part of the purchase of the Residence by Initial Owner from Merchant Builder. Merchant Builder and Owner are collectively referred to as the *"parties"* and individually as a *"party."*

## ARTICLE I
## APPLICABILITY

1.1.   **PROPERTY SUBJECT TO INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**: Merchant Builder has agreed to transfer or has conveyed to Initial Owner the following described real property (*"Property"*) situated in the City of Irvine, County of Orange, State of California, described as follows:

> Lot 88 of Tract No. 19176 as shown on a map recorded in Book 1000, Pages 27 through 37, inclusive, of the Miscellaneous Maps of Orange County, California.

1.2.   **PURPOSE**: This Individual Dispute Resolution Agreement establishes covenants and agreements between Merchant Builder and (a) Initial Owner and (b) each Successor Owner of the Property. It is the intention of the parties to record this document against the Property at close of escrow for the transfer of title from Merchant Builder to Initial Owner. This Individual Dispute Resolution Agreement is provided to Initial Owner in compliance with the Dispute Declaration, a copy of which has been provided by Merchant Builder to Initial Owner. This Individual Dispute Resolution Agreement is part of the consideration for the bargained-for purchase of the Property by Initial Owner from Merchant Builder. The Property shall be held, conveyed, hypothecated, encumbered, leased, rented, used, occupied and improved subject to the terms of this Individual Dispute Resolution Agreement. All of the agreements, notices and obligations stated in this Individual Dispute Resolution Agreement shall run with the Property and shall inure to the benefit of and be binding on each and every Successor Owner of the Property.

## ARTICLE II
## DEFINITIONS

Unless otherwise defined or unless the context clearly requires a different meaning, the terms used in this Individual Dispute Resolution Agreement shall have the meanings specified in this Article. All capitalized terms in this Individual Dispute Resolution Agreement which are not defined in this Article or elsewhere in this Individual Dispute Resolution Agreement shall have the same meanings given them in the Dispute Declaration or the Master Declaration.

2.1.   **BUSINESS DAYS**: The term *"Business Days"* shall mean Monday through Friday, except for Federal or State holidays.

2.2.   **CLAIM PROCESS**: The term *"Claim Process"* shall mean those non adversarial

HLO\ Olivewood\ v.1 9/20/2023                          1

procedures set forth in Chapter 4 of Title 7.

2.3.     **COUNTY**: The term *"County"* shall mean Orange County, California.

2.4.     **DISPUTE DECLARATION**:    The term *"Dispute Declaration"* shall mean the Declaration of Dispute Resolution Procedures for Olivewood recorded against the Property on March 14, 2024, as Instrument No. 2024000056633, in the Official Records of the County, and any Subsequently Recorded Document which amends or supplements the Dispute Declaration.

2.5.     **HOMEOWNER MANUAL**:    The term *"Homeowner Manual"* shall mean the Homeowner Manual provided to Owner by Merchant Builder or the other Merchant Builder Parties which includes important information regarding the Property, including guidelines for maintenance, care and use of the Property.

2.6.     **INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**:    The term *"Individual Dispute Resolution Agreement"* shall mean this Individual Dispute Resolution Agreement and any Subsequently Recorded Document which amends this Individual Dispute Resolution Agreement.

2.7.     **ISSUES**:   The term *"Issues"* shall mean alleged deficiencies in construction, design, specifications, surveying, planning, supervision, testing, or observation of construction or any substandard condition related in any way to the Residence, the Property or the Project.

2.8.     **LIMITED WARRANTY**:   The term *"Limited Warranty"* shall mean the Limited Warranty applicable to the Residence attached to this Individual Dispute Resolution Agreement as **Exhibit "A"**.

2.9.     **MAINTENANCE GUIDELINES**:   The term *"Maintenance Guidelines"* shall mean all maintenance obligations, guidelines, schedules and practices communicated to Owner in writing by Merchant Builder or the other Merchant Builder Parties, including, without limitation all product manufacturers' use, maintenance and care instructions provided to Owner by Merchant Builder or the other Merchant Builder Parties, as well as commonly accepted maintenance practices. Such commonly accepted maintenance practices include, but are not limited to, those set forth in the Homeowner Manual and those established by product manufacturers.

2.10.    **MASTER ASSOCIATION**:    The term *"Master Association"* shall mean Portola Springs Community Association, a California nonprofit mutual benefit corporation, established pursuant to the Master Declaration.

2.11.    **MASTER DECLARATION**:   The term *"Master Declaration"* shall mean the document entitled "Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs," recorded in the Official Records of the County, as amended or restated from time to time.

2.12.    **MASTER DEVELOPER**:   The term *"Master Declaration"* shall mean the "Declarant" defined in the Master Declaration.

2.13.    **MERCHANT BUILDER**:   The term *"Merchant Builder"* shall mean The New Home Company Southern California LLC, a Delaware limited liability company, and its successors and assigns.

2.14.    **MERCHANT BUILDER DISPUTE**:   The term *"Merchant Builder Dispute"* shall mean any claim, issue or controversy that arises from or is related in any way to (i) the Project, (ii) the Property, (iii) the Residence or (iv) the relationship between Initial Owner and Merchant Builder, whether

HLO\ Olivewood\ v.1 9/20/2023                              2

contractual, statutory or in tort, including without limitation, claims, issues or controversies that arise from or are related to the purchase, sale, condition, design, construction or materials used in construction of any portion of the Project, the Property or the Residence, the agreement between Merchant Builder and Owner to purchase the Residence or any related agreement, a Limited Warranty, disclosures, or Issues, including without limitation the following: (a) a Title 7 Claim; (b) any disagreement as to whether conditions that are the subject of a Title 7 Claim have been properly repaired; (c) any disagreement as to the value of repairing damages which are the subject of a Title 7 Claim; (d) the cost of repairing damage caused by the repair efforts, the cost to remove or replace an improper repair, and any alleged relocation expenses, storage expenses, lost business income, investigation costs and all other fees and costs recoverable by contract or statute as a result of a Title 7 Claim; and (e) any disagreement concerning the timeliness of Merchant Builder's performance or Owner's notification under a Limited Warranty or the Claim Process. Notwithstanding anything to the contrary in this Individual Dispute Resolution Agreement, any and all Disputes (as defined in Section 14 of Article V of the Master Declaration) between or among the Master Association, Owner and/or any of the Developer Parties (including the Master Developer) that (i) arises out of, or relates to, or in any way is connected with the Master Association Documents or the Community, (ii) involves a claim for damage to the Master Association Property or Maintenance Area or damage to the Property integrally related to any damage to the Master Association Property and/or Maintenance Area, or (iii) involves the Master Developer, the Master Association, the Master Association Property and/or a Maintenance Area (collectively, the *"Master Disputes"*) shall be resolved solely in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration, and not the alternative dispute resolution procedures set forth herein.

2.15.    **MERCHANT BUILDER PARTIES**: The term *"Merchant Builder Parties"* shall mean Merchant Builder and its partners, members or other principals and their respective officers, agents, employees, affiliated parent and subsidiary companies, successors and assigns, design centers, subcontractors, design professionals, engineers, inspectors and material suppliers who provided labor, services or materials to any portion of the Project.

2.16.    **OWNER**: The term *"Owner"* shall mean the person or entity that holds record fee title to the Property after the initial conveyance of the Property by Merchant Builder, including the Initial Owner and any Successor Owner. The term "Owner" shall include a contract purchaser (vendee) under an installment land contract but shall exclude any person having an interest in the Property merely as security for performance of an obligation.

2.16.1    **INITIAL OWNER**: The term *"Initial Owner"* shall mean the undersigned Owner who initially acquires or acquired title to the Property from Merchant Builder.

2.16.2    **SUCCESSOR OWNER**: The term *"Successor Owner"* shall mean any person or entity who acquires title to the Property from an Initial Owner or from a Successor Owner.

2.17.    **PROJECT**: The term *"Project"* shall mean the residential development in which the Property is located. The Project is located within the master community of Portola Springs (*"Community"*).

2.18.    **PROPERTY**: The term *"Property"* shall mean the real property described in Section 1.1 above.

2.19.    **RESIDENCE**: The term *"Residence"* shall mean the single family residential dwelling situated on the Property and all Improvements on the Property, excluding any Improvements which are required to be maintained by the Master Association in accordance with the Master Declaration or a document annexing real property to the Master Declaration.

HLO\ Olivewood\ v.1 9/20/2023                    3

2.20.    **SUBSEQUENTLY RECORDED DOCUMENT**: The term *"Subsequently Recorded Document"* shall mean each of the following documents which is recorded in the Official Records of the County: (i) an amendment to the Dispute Declaration, (ii) an amendment to an Individual Dispute Resolution Agreement, (iii) a Supplemental Declaration or (iv) an amendment to a Supplemental Declaration.

2.21.    **SUPPLEMENTAL DECLARATION**: The term *"Supplemental Declaration"* shall mean any instrument recorded in the County which extends the provisions of the Dispute Declaration to other real property and any Subsequently Recorded Document which amends a Supplemental Declaration.

2.22.    **TITLE 7**: The term *"Title 7"* shall mean Title 7, Part 2 of Division 2 of the California Civil Code (Section 895 et seq.) as amended from time to time.

2.23.    **TITLE 7 CLAIM**: The term *"Title 7 Claim"* shall mean any claim, issue or controversy that arises from or is related in any way to any alleged violation of the standards set forth in California Civil Code Sections 895 through 897.

| *ARTICLE III* |
| :---: |
| **OWNER ACKNOWLEDGMENT OF NOTICES** |

## NOTICES

**NOTICE**: Merchant Builder has elected to be subject to Chapter 2 of Title 7 (*"Title 7"*), Part 2 of Division 2 of the California Civil Code (Section 896 et seq.). See Section 3.1.

**NOTICE**: Merchant Builder intends to utilize the non adversarial procedures set forth in Chapter 4 of Title 7 (California Civil Code Sections 910 et seq.). See Section 3.2.

**NOTICE**: The name and address of the agent Merchant Builder has designated for service of notice of claims pursuant to Title 7 is set forth in Section 3.3 below.

Initial Owner's Initials ___ ___ X ___

3.1.    **STATUTORY STANDARDS**: Chapter 2 of Title 7 provides standards for the installation, construction, design, specifications, surveying, planning, supervision, testing, or observation of construction of the Residence. A complete copy of Chapter 2 of Title 7 is attached to the Dispute Declaration as **Exhibit "B-2."**.

3.2.    **CLAIM PROCESS**: Chapter 4 of Title 7 establishes non adversarial procedures to address claims for damages arising from or relating to Issues. California Civil Code Section 914 provides that builders must notify buyers whether they intend to engage in the non adversarial procedures set forth in Chapter 4 of Title 7 or to enforce alternative non adversarial procedures. Merchant Builder hereby notifies Owner that it intends to utilize the non adversarial procedures set forth in Chapter 4 of Title 7 (referred to in this Individual Dispute Resolution Agreement as the *"Claim Process"*). The Claim Process impacts the legal rights of Owner.

By initialing below Initial Owner acknowledges (a) the existence of Chapter 4 of Title 7, (b) that Initial Owner has received a copy of Chapter 4 of Title 7 which is attached to the Dispute Declaration as **Exhibit "B-4,"** and a copy of all of Title 7 which is attached to the Dispute Declaration as **Exhibit "B"** and (c) that the Claim Process impacts the legal rights of Initial Owner

HLO\ Olivewood\ v.1 9/20/2023                                4

and Successor Owners. **By initialing in the space below, Initial Owner is giving up its judicial rights to discovery and appeal, and if Initial Owner refuses to submit to arbitration after entering into this Individual Dispute Resolution Agreement, Initial Owner may be compelled to arbitrate under the Federal Arbitration Act and the California Arbitration Act, to the extent the California Arbitration Act is consistent with the Federal Arbitration Act.**

**Sales Representative's Initials** ___       **Initial Owner's Initials** ___

3.3.    **AGENT**:  Merchant Builder hereby notifies Owner that Merchant Builder's agent for notice (*"Merchant Builder's Agent for Notice"*) is:

> The New Home Company
> 15231 Laguna Canyon Rd., Suite 250
> Irvine, CA  92618
> Attn:  Miek Harbur

Owner may commence the Claim Process by filing a claim with Merchant Builder's Agent for Notice at the address set forth above via certified mail, overnight mail or personal delivery to Merchant Builder's Agent for Notice.  If Merchant Builder changes the identity or address of Merchant Builder's Agent for Notice in the future, Merchant Builder will notify the Secretary of State of the State of California (or the governmental agency then responsible for monitoring agents for service of process) of any such change and Owner may obtain the identity and address of Merchant Builder's Agent for Notice by inquiry to the Secretary of State of the State of California (or the governmental agency then responsible for monitoring agents for service of process).

**By initialing below Initial Owner and Merchant Builder's Sales Representative acknowledge the name and address of Merchant Builder's Agent for Notice:**

**Sales Representative's Initials** ___       **Initial Owner's Initials** ___

---

### ARTICLE IV
### WARRANTIES AND MAINTENANCE

---

4.1.    **LIMITED WARRANTY**:  Merchant Builder has provided Initial Owner with the Limited Warranty applicable to the Residence, in the form attached hereto as **Exhibit "A"**.  The Limited Warranty shall, unless previously released, fully transfer to each Successor Owner of the Residence, including any mortgagee in possession, for the remainder of the applicable warranty term as set forth in the Limited Warranty.

4.2.    **MANUFACTURED PRODUCTS**:  Merchant Builder has made available for Initial Owner's review maintenance procedures, maintenance schedules, maintenance recommendations, and manufacturer limited warranty information (*"Product Information"*) for Manufactured Products (as defined below) applicable to the Residence.  *For purposes of this Section, a "Manufactured Product" means a product that is completely manufactured off site, all appliances, pieces of equipment, or other items installed in the Residence that are consumer products for the purposes of the Magnuson Moss Warranty Act (15 U.S.C. Section 2301 et. seq.) and solar energy systems, including inverters.*  The Product Information will be delivered to Initial Owner at the close of escrow.  The Product Information available for review by Initial Owner before the close of escrow may be in sample form or otherwise different than the Product Information actually provided to Initial Owner at the close of escrow.  The actual Product Information provided at the close of escrow shall control.  The Product Information for the Manufactured Products has been created by the manufacturers or suppliers of the Manufactured Products

HLO\ Olivewood\ v.1 9/20/2023                    5

and not by Merchant Builder. Merchant Builder has not reviewed or approved and does not endorse, warrant or guaranty the Product Information or the Manufactured Products to which the Product Information applies. In order to assure that the Manufactured Products function properly throughout their useful life, and in order to maintain any warranty provided by the manufacturer for the Manufactured Products, Owner must comply with the recommendations and requirements included in the Product Information. Owner shall provide the Product Information to its Successor Owner.

**TO THE FULLEST EXTENT PERMITTED BY LAW, MERCHANT BUILDER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO MANUFACTURED PRODUCTS (INCLUDING CONSUMER PRODUCTS) INSTALLED IN OR AROUND THE RESIDENCE. DEFECTS IN MANUFACTURED PRODUCTS ARE NOT COVERED UNDER MERCHANT BUILDER'S LIMITED WARRANTY AND OWNER'S SOLE AND EXCLUSIVE REMEDY FOR DEFECTS IN MANUFACTURED PRODUCTS IS AGAINST THE PRODUCT MANUFACTURER.**

4.3.    **HOMEOWNER MANUAL**: Merchant Builder has provided Owner with a Homeowner Manual which includes maintenance guidelines for the Property. Owner must perform all required and recommended inspection and maintenance procedures set forth in the Homeowner Manual and must provide a copy of the Homeowner Manual to its Successor Owner.

4.4.    **DUTY TO MAINTAIN**: Owner agrees to maintain Owner's Residence in accordance with the Homeowner Manual and all Maintenance Guidelines.

---

## ARTICLE V
## CLAIM PROCESSES AND DISPUTE RESOLUTION PROCEDURES

---

5.1.    **CUSTOMER SERVICE**: Merchant Builder has established a Customer Service Department for all Owners. The procedures for processing a request for service (*"Service Request"*) through the Customer Service Department are set forth in the Limited Warranty and are available online at CustomerCareNHC.com (or by following the links at Merchant Builder's general website for "service", "customer care" or "warranty"). Owners should also consider the Customer Service Department a resource both for general information and to answer specific questions regarding construction of the Owner's Residence. **A Service Request is not a claim pursuant to the Claim Process.** If Owner's claim is not resolved under the Limited Warranty and Owner wishes to initiate a claim, Owner must follow the steps set forth in Section 5.2.

5.2.    **CLAIM PROCESS OR MEDIATION:**

5.2.1    **TITLE 7 CLAIM**: If the customer service process does not resolve a Title 7 Claim to the satisfaction of Owner, Owner shall file a written Notice of Claim in accordance with the provisions of California Civil Code Section 910 with Merchant Builder's Agent for Notice at the address provided in Section 3.3 above. The Notice of Claim must (i) provide Owner's name, address and telephone number (or the information necessary to use an alternative method of contact such as facsimile or e-mail) and (ii) describe the Title 7 Claim in sufficient detail to enable Merchant Builder to determine the location, nature and extent of the Title 7 Claim and what area or components of the Residence are involved.

5.2.2    **OTHER CLAIM**: If a Merchant Builder Dispute does not involve a Title 7 Claim (*"Other Claim"*) and is not resolved to the satisfaction of Owner, Owner shall file a written Notice of Claim with Merchant Builder's Agent for Notice at the address provided by Section 3.3 above. The Notice of Claim must (i) provide Owner's name, address and telephone number (or the information

HLO\ Olivewood\ v.1 9/20/2023                    6

necessary to use an alternative method of contact such as facsimile or e-mail), (ii) describe the Other Claim in sufficient detail to enable Merchant Builder to determine the location, nature and extent of the Other Claim, and (iii) include a request for mediation. Merchant Builder and Owner shall, in good faith, attempt to resolve the Other Claim by mediation in accordance with this Section.

(a)    **Mediator.** The mediation shall be conducted by a single neutral and impartial mediator employed by Judicial Arbitration and Mediation Services, Inc. (*"JAMS"*) or the American Arbitration Association, in accordance with the rules established by the selected service (*"Mediation Provider"*). Merchant Builder shall have the right to select the mediator by notifying Owner in writing within ten (10) Business Days following the date of service of the Notice of Claim. If Merchant Builder selects the mediator, Merchant Builder shall pay any filing fees required by the Mediation Provider and the first four (4) hours of the mediator's fees. If the mediation lasts more than four (4) hours, any additional fees shall be split equally between Owner and Merchant Builder. At Owner's sole option, Owner may agree to share the filing fees required by the Mediation Provider and the fees of the mediator, including the first four (4) hours, equally with Merchant Builder. If Owner so agrees, then Owner and Merchant Builder shall jointly select the mediator. If the parties cannot agree on a mediator within fourteen (14) days following the date of service of the Notice of Claim, the Mediation Provider shall select the mediator. No person with any financial or personal interest in the mediation's result shall serve as a mediator, except by the written consent of the parties. Prior to accepting any appointment, the prospective mediator shall disclose any circumstances likely to create a presumption of bias or prevent a prompt commencement of the mediation process.

(b)    **Location of Mediation.** The mediation shall be held in the County or such other place as is mutually acceptable to the parties.

(c)    **Additional Parties.** Merchant Builder shall have the right to include other persons or entities in the mediation, including any of its subcontractors, material suppliers, design professionals, individual product manufacturers, warranty company representative and insurance carrier representatives.

(d)    **Refusal to Participate.** If either party refuses to participate in the mediation, then the other party may initiate arbitration proceedings as provided in Section 5.3.

(e)    **Mediation Session(s).** The mediation session(s) shall be commenced as quickly as reasonably practical in the discretion and judgment of the mediator but not later than thirty (30) days following the date of service of the Notice of Claim. The parties shall cooperate in good faith with each other and with the mediator and shall provide all documents reasonably required by the mediator to be provided. Without mutual agreement of Owner and Merchant Builder, the mediation shall not exceed four (4) hours.

(f)    **No Attorneys' Fees.** The parties shall be solely responsible for their own attorneys' fees and no party shall be entitled to an award of its attorneys' fees. Nothing herein shall be construed to modify or abrogate any duty to defend and/or indemnify another party pursuant to the terms of a contract between any such parties.

(g)    **Confidentiality.** The entire mediation proceedings shall be maintained in the strictest confidence and documentary or demonstrative evidence or testimony introduced or revealed to the mediator or other party during the mediation shall be inadmissible in any subsequent proceeding including litigation, arbitration and judicial reference. The provisions of California Evidence Code Section 1115 et seq. shall be applicable to the mediation.

HLO\ Olivewood\ v.1 9/20/2023                                           7

**5.2.3  MEDIATION FAILS TO SETTLE CLAIM:** If the mediation process provided in Section 5.2.2 fails to settle the Other Claim, either party may initiate arbitration proceedings as provided in Section 5.3.

**5.3.  MANDATORY BINDING ARBITRATION:** Before Owner institutes arbitration proceedings as provided in this Section 5.3 involving a Title 7 Claim, Owner must first commence the Claim Process and proceed, in good faith, to resolve the claim using the Claim Process. Before Owner or Merchant Builder institutes arbitration proceedings which do not involve a Title 7 Claim, Owner or Merchant Builder shall, in good faith, attempt to resolve the Other Claim by mediation in accordance with the mediation procedures set forth in Section 5.2.2 above. The mandatory arbitration procedures below shall apply to all post-closing Merchant Builder Disputes between Merchant Builder and Initial Owner and all Merchant Builder Disputes between Merchant Builder and Successor Owners. If negotiations, mediation or other non-binding dispute resolution procedures, including the Claim Process, fail to resolve any Merchant Builder Dispute between Owner and Merchant Builder Parties, then the Merchant Builder Dispute shall be resolved by neutral, binding arbitration as follows:

**5.3.1  Mandatory Binding Arbitration.** Any Merchant Builder Dispute between Owner and any of the Merchant Builder Parties which is not resolved by negotiations, mediation or other non-binding dispute resolution procedures as set forth herein, including the Claim Process, shall be resolved by neutral, binding arbitration governed by the Federal Arbitration Act (9 U.S.C. §§1-16) (*"Federal Act"*) and not by any court action except as provided for judicial review of arbitration proceedings under the Federal Act. A demand for arbitration shall be delivered in accordance with the notice provision provided herein by the party desiring to arbitrate such Merchant Builder Dispute to the other party within thirty (30) days after the conclusion of either the Title 7 Claim or mediation of an Other Claim, as applicable.

**5.3.2  Federal Arbitration Act.** The construction of the Residences and the Project involved interstate commerce and therefore the arbitration procedures specified in this Section 5.3 are to be interpreted and enforced as authorized by the Federal Act, which is designed to encourage use of alternative methods of dispute resolution that avoid costly and potentially lengthy court proceedings. The Residences and the Project were constructed with materials and products manufactured throughout the United States which have been shipped to the Project for installation and involved communications by interstate mail and telephone with out-of-state manufacturers, design professionals, contractors and their employees. The shipment of such materials and products across state lines cause the products and materials to enter into the stream of interstate commerce and become subject to the Interstate Commerce Clause (Article I, Section VIII of the United States Constitution) and ensuing federal laws. Interpretation and application of the procedures set forth in this Section 5.3 shall conform to any applicable federal court rules and decisions interpreting and applying the Federal Act. The arbitration proceedings shall be conducted pursuant to the Federal Act and, to the extent not inconsistent, the procedures set forth in this Section 5.3. In addition, except as set forth herein, and to the extent it is not inconsistent with the Federal Act, the arbitration shall be conducted pursuant to Title 9 of the California Code of Civil Procedure (Section 1280 et seq.). References to California procedural law are for guidance only and shall not be construed as a waiver of any rights or duties of the parties under the Federal Act or the right of the parties to have the procedures set forth in this Section 5.3 interpreted and enforced under the Federal Act. If any party seeks review by a court of the enforceability of any of the procedures set forth or referenced herein (notwithstanding the provisions herein making that issue one to be resolved by the arbitrator), the exclusive jurisdiction and venue for any such review shall be the Superior Court for the County.

**5.3.3  Other Parties.** Merchant Builder and the other Merchant Builder Parties have the sole and absolute right, in their discretion, to join any person or entity who is not a party to the arbitration proceedings if the presence of such person or entity is required or is necessary for complete relief to be accorded in the arbitration proceedings or if the interest or responsibility of such person or

HLO\ Olivewood\ v.1 9/20/2023                          8

entity in the Merchant Builder Dispute is not insubstantial; provided, however, that if the Master Developer and/or the Master Association is a party to any Merchant Builder Dispute under this Individual Dispute Resolution Agreement, such Merchant Builder Dispute shall be resolved in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration. The parties shall cooperate in good faith and shall diligently perform such acts as may be necessary to ensure that all necessary and appropriate parties are included in the arbitration proceedings.

5.3.4    **Administration of Proceedings.** The arbitration proceedings shall be conducted by and in accordance with the commercial arbitration rules of JAMS, or if JAMS is unable to conduct the arbitration it shall be conducted by and in accordance with the commercial arbitration rules of the American Arbitration Association (*"Service"*).

5.3.5    **Statutes of Limitation.** Except for procedural issues, and to the extent not inconsistent with the Federal Act, the arbitration proceedings, the ultimate decisions of the arbitrator, and the arbitrator shall be subject to and bound by existing California case and statutory law including, but not limited to, applicable statutes of limitation established in Title 7. Arbitration must be initiated prior to the expiration of the applicable statutes of limitation.

5.3.6    **Selection of Arbitrator.** The arbitration proceedings shall be conducted by one (1) qualified neutral and impartial arbitrator who shall be selected in accordance with the rules of the Service no later than thirty (30) days following the date one party delivers to the other party a demand for arbitration. The term *"qualified"* for purposes of this Paragraph shall mean a retired judge who has experience with the laws governing residential real estate development and construction or an attorney who has actively practiced law in California for at least fifteen (15) years and who has experience with the laws governing residential real estate development and construction.

5.3.7    **Authority of Arbitrator.** The arbitrator shall have the power to hear and dispose of motions, including motions relating to provisional remedies, demurrers, motions to dismiss, motions for judgment on the pleadings and summary judgment and/or adjudication motions, in the same manner as a trial court judge. In addition, the arbitrator shall have the power to summarily adjudicate issues of fact or law, including the availability of remedies, even if the issue adjudicated does not dispose of an entire cause of action or defense. The arbitrator shall have the power to grant provisional remedies including preliminary injunctive relief. Prior to the selection of the arbitrator, any party shall have the right, but not the obligation, to petition the Superior Court of the County for any necessary provisional remedies. However, after obtaining any provisional remedies (pending selection of the arbitrator) the entire matter shall be referred to the Service for all purposes and the Superior Court shall have no further jurisdiction to monitor or enforce the provisional remedies or to make further determinations or awards or to issue additional provisional remedies. The Service shall have the sole power to enforce, extend, modify or vacate any such provisional remedies.

5.3.8    **Discovery.** All discovery shall be permitted by the arbitrator at the arbitrator's reasonable discretion upon a showing of good cause or based on the agreement of the parties. The arbitrator shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge. At a minimum, the parties will exchange all documents in their possession, custody or control which are either relevant or reasonably calculated to lead to the discovery of admissible evidence and each party shall be entitled to at least two percipient witness depositions and the depositions of all designated experts.

5.3.9    **Full Disclosure.** Each party shall make, in good faith, a full disclosure of all issues and evidence to each other party prior to the hearing. Any evidence or information that the arbitrator determines was unreasonably withheld shall be inadmissible by the party who withheld it. The initiating party shall be the first to disclose all of the following, in writing, to each other party and to the

arbitrator: (i) an outline of the issues and its position on each such issue; (ii) a list of all witnesses the party intends to call; and (iii) copies of all written reports and other documentary evidence, whether written or not or contributed to by its retained experts (collectively "*Outline*"). The initiating party shall submit its Outline to each other party and the arbitrator within thirty (30) days of the final selection of the arbitrator. Each responding party shall submit its written response as directed by the arbitrator. If the Merchant Builder Dispute involves a Title 7 Claim, then Owner shall be the first party to submit its written Outline, list of witnesses, and reports/documents and shall include a detailed description of the nature and scope of the alleged violation(s), its proposal for repair or restoration, all repairs made to date and an estimate of the cost of repair/restoration together with the calculations used to derive the estimate.

5.3.10 **Title 7 Claim and Measure of Damages.** If the Merchant Builder Dispute involves a Title 7 Claim, the arbitrator shall determine whether a violation exists and whether any Merchant Builder Parties are responsible for the violation. If the arbitrator finds that Merchant Builder Parties are responsible for a Title 7 Claim, the arbitrator shall determine the scope of any repair and the reasonable value of repairing the nonconformity, based on evidence presented to him by the parties and their experts. The reasonable value of repairing any nonconformity shall be limited to the lesser of (i) the repair costs, or (ii) the diminution in current value of the real property caused by the nonconformity, subject to the personal use exception as developed under common law. For all Title 7 Claims, Owner is only entitled to damages for the reasonable value of repairing the nonconformity, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure to meet the applicable standards, the reasonable cost of removing and replacing any improper repair by Merchant Builder, reasonable relocation and storage expenses, lost business income if Owner's Residence or the Property was used as a principal place of business licensed to be operated within the Residence or the Property, reasonable and necessary investigative costs for each established violation, and all other costs or fees recoverable by contract or statute. If any of the damages described above are awarded to Owner in any other cause of action, the damages awarded pursuant to this Section 5.3.10 shall be reduced by the amounts recovered in such other causes of action. Merchant Builder Parties shall not be responsible for, and shall be excused from, any obligation, damage, loss or liability to the extent that Merchant Builder Parties can demonstrate any of the affirmative defenses set forth in California Civil Code Section 945.5.

5.3.11 **Hearing.** The arbitration shall be held in the County. The arbitration shall be conducted as promptly as possible after giving due consideration to the complexity of the issues, the number of parties and necessary discovery and other relevant matters. The arbitration shall be conducted as informally as possible. California Evidence Code Section 1152 *et seq.* shall apply for the purpose of excluding offers, compromises, and settlement proposals from evidence, unless there is agreement by all parties as to admissibility. The arbitrator shall be the sole judge of the admissibility of and the probative value of all evidence offered and is authorized to provide all legally recognized remedies whether in law or equity, except as otherwise limited in this Section 5.3. The cost of an interpreter shall be borne by the party requiring the services of the interpreter in order to be understood by the arbitrator and the expenses of witnesses shall be borne by the party producing such witnesses.

5.3.12 **Decision.** The decision of the arbitrator shall be binding on the parties and may be entered as a judgment in any court of the State of California that has jurisdiction and venue. The arbitrator shall (i) cause a complete record of all arbitration proceedings to be prepared similar to those kept in the Superior Court, (ii) try all issues of both fact and law, and (iii) issue a written statement of decision consistent with that described in California Code of Civil Procedure Section 643 which shall specify the facts and law relied upon in reaching the arbitrator's decision within twenty (20) days after the close of testimony.

5.3.13 **Fees and Costs.** Merchant Builder Parties shall advance any fee required by the Service to initiate the arbitration proceedings. Without limiting the generality of the foregoing, the total

cost of the arbitration proceedings, including the fee of the arbitrator, the initiation fee advanced by Merchant Builder Parties and other fees of the Service and any related costs and fees incurred by the Service (such as experts and consultants retained by it); shall be borne one-half by Owner and one-half by Merchant Builder Parties, regardless of the outcome. The arbitrator shall not award attorneys' fees to any party and the parties shall each be solely responsible for their own attorneys' fees. Nothing herein shall be construed to modify or abrogate any duty to defend and/or indemnify a third party pursuant to the terms of a contract between any such parties. A stenographic record of the hearing shall be made which shall remain confidential except as may be necessary for post-hearing motions and appeals. The cost of the record shall be borne one-half by Owner and one-half by Merchant Builder Parties, regardless of the outcome. Should any party refuse or fail to pay its pro-rata share, the remaining parties may pay such share, and the party or parties which pay such extra share shall be awarded such extra costs by the arbitrator in the arbitrator's decision. Notwithstanding the foregoing, under all circumstances the parties shall be responsible for their own attorneys' fees and expert witness costs, subject only to reallocation by any applicable statutory cost-shifting mechanisms. This provision does not modify any provision of any contract between Merchant Builder Parties and any third party requiring indemnification or establishing a different allocation of costs between Merchant Builder Parties and such third party.

5.4. **JUDICIAL REFERENCE**: If, and only if, for any reason arbitration cannot be legally used to resolve a Merchant Builder Dispute between Owner and Merchant Builder under Section 5.3, or the arbitration provisions provided for in Section 5.3 above are held not to apply or determined to be invalid, void or unenforceable in whole or material part for any reason preventing their use, then the Merchant Builder Dispute shall be submitted for resolution to general judicial reference within thirty (30) days of judicial determination that the arbitration provision is invalid, void or unenforceable, as set forth below:

5.4.1 **Judicial Reference.** Merchant Builder Disputes submitted to general judicial reference pursuant to California Code of Civil Procedure Sections 638 through 645.1, inclusive, or any successor statutes thereto, shall be subject to the following terms and conditions:

5.4.1.1 **Cooperation.** The parties shall cooperate in good faith to ensure that all necessary and appropriate parties are included in the judicial reference proceedings.

5.4.1.2 **Fees and Costs.** All fees and costs of the judicial reference proceedings shall be borne in the same manner as arbitration.

5.4.1.3 **Referee.** The general referee shall be chosen from the panel of referees provided by Judicial Arbitration and Mediation Services, Inc. (*"JAMS"* as previously defined) and shall have the authority to try all issues, whether of fact or law, and to report a statement of decision to the court.

5.4.1.4 **Proceedings.** The parties shall use the procedures adopted by JAMS for judicial reference (or any other entity offering judicial reference dispute resolution procedures as may be mutually acceptable to the parties), provided that the following rules and procedures shall apply in all cases unless the parties agree otherwise:

(a) The judicial reference proceedings shall be heard in the County.

(b) The referee must be a neutral and impartial retired judge or a licensed attorney with substantial experience in relevant real estate matters.

(c)     Any dispute regarding the selection of the referee shall be resolved by JAMS or the entity providing the reference services, or, if no entity is involved, by the court with appropriate jurisdiction.

(d)     The referee may require one or more pre-hearing conferences.

(e)     The parties shall be entitled to discovery in accordance with the Code of Civil Procedure, and the referee shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge.

(f)     A stenographic record of the reference trial shall be made, provided that the record shall remain confidential except as may be necessary for post-hearing motions and any appeals.

(g)     The referee's statement of decision shall contain findings of fact and conclusions of law to the extent applicable and shall be issued within twenty (20) days after the hearing has been concluded.

(h)     The referee shall have the authority to rule on all post-hearing motions in the same manner as a trial judge.

(i)     The statement of decision of the referee upon all of the issues considered by the referee is binding upon the parties, and upon filing of the statement of decision with the clerk of the court, or with the judge where there is no clerk, judgment may be entered thereon. The decision of the referee shall be appealable as if rendered by the court. This provision shall in no way be construed to limit any valid cause of action which may be brought by any of the parties.

(j)     The participation by any party in any judicial proceedings concerning this Section or any Merchant Builder Dispute shall not be deemed a waiver of the right to enforce this Section notwithstanding any provision of law to the contrary, shall not be asserted or accepted as a reason to delay, to refuse to participate in, or to refuse to enforce this judicial reference provision.

5.5.    **DISPUTES EXEMPT FROM THIS INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.** Notwithstanding any other provision of this Individual Dispute Resolution Agreement to the contrary, any and all Master Disputes shall be resolved solely in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration.

5.6.    **DISPUTES TO BE RESOLVED INDEPENDENTLY**: Notwithstanding anything to the contrary herein, Merchant Builder and Owner agree that it is in the best interest of the parties that the dispute resolution procedures set forth in this Individual Dispute Resolution Agreement be utilized independently of any actions (including actions brought pursuant to alternative dispute resolution procedures) involving Merchant Builder Disputes between Merchant Builder Parties and other claimants. Accordingly, Owner knowingly waives any right to participate in any form of "class", "joint" or "representative" litigation (including in any "private attorney general capacity") or dispute resolution procedures against Merchant Builder Parties. Merchant Builder and Owner agree to this Section 5.5 on the grounds that they wish to assure, in advance, that any Merchant Builder Disputes by or between Owner and any of the Merchant Builder Parties will not be combined with any Merchant Builder Disputes by or between any Merchant Builder Parties and any other claimant. Merchant Builder and Owner include this provision on the additional grounds that: (i) the Property is unique from other properties in the Project, and any potential problems it may suffer will not necessarily be common to other properties; (ii) it may provide Owner increased ability to control any Merchant Builder Dispute involving the Property; (iii) Owner's interests will not be subordinated to the interests of other parties who might otherwise become involved in these dispute resolution procedures; (iv) this approach is likely to foster

faster resolution of most Merchant Builder Disputes that may arise; (v) it will help to avoid conflicts of interest among Merchant Builder's and Owner's representatives; and (vi) it is intended to foster better communication between Owner and Merchant Builder focused on resolving the actual issues that may arise in any Merchant Builder Dispute between them. Notwithstanding the foregoing, the restrictions of this Section shall not apply to actions (including actions brought pursuant to alternative dispute resolution procedures) for damages in the amount of one thousand dollars ($1000.00) or less per action (including actions brought pursuant to alternative dispute resolution procedures); provided however, that Owner shall be required to meet any legal requirements for any "class", "joint" or "representative" litigation or dispute resolution procedures with respect to such actions.

---

**ARTICLE VI**
**AMENDMENT AND ENFORCEMENT**

---

6.1.    **AMENDMENTS**:  This Individual Dispute Resolution Agreement may be amended by Merchant Builder and Owner by recording an amendment in the Official Records of the County of an instrument setting forth the terms of the amendment executed by Merchant Builder and Owner.

6.2.    **ENFORCEMENT**:  Merchant Builder Parties and Owner shall have the right to enforce any and all of the provisions of this Individual Dispute Resolution Agreement in the manner provided in this Individual Dispute Resolution Agreement.  The failure to enforce the provisions of any agreement, notice or obligation contained in this Individual Dispute Resolution Agreement will not constitute a waiver of any right to enforce any such provisions or any other provisions of this Individual Dispute Resolution Agreement.

6.3.    **THIRD PARTY BENEFICIARIES**:    The Master Developer and the Master Association are each an intended third party beneficiary and have the right to enforce the provisions of Section 5.4 of this Individual Dispute Resolution Agreement.

---

**ARTICLE VII**
**MISCELLANEOUS PROVISIONS**

---

7.1.    **BINDING**:  Under California Civil Code Section 945, the provisions, standards, rights, and obligations set forth in this Individual Dispute Resolution Agreement are binding upon Initial Owner and Successor Owners.  This Individual Dispute Resolution Agreement is for the benefit of and binding upon Merchant Builder and Owner and their respective heirs, legatees, devisees, executors, administrators, guardians, conservators, members, successors, purchasers, tenants, encumbrancers, donees, grantees, mortgagees, lien holders and assigns.  The provisions of this Individual Dispute Resolution Agreement are equitable servitudes and covenants running with the land, enforceable by Merchant Builder and Owner.  All covenants, conditions, restrictions and agreements in this Individual Dispute Resolution Agreement shall run with and burden the Property and be binding on and for the benefit of the Property and all real property subject to the Dispute Declaration and/or any Supplemental Declaration recorded pursuant to the provisions of Section 5.2 of the Dispute Declaration and all Successor Owners acquiring any interest in the Property.

7.2.    **CONFLICT**:  Section 5.1 of the Dispute Declaration provides that an Individual Dispute Resolution Agreement may amend, supplement, replace or repeal any of the Exhibits attached to the Dispute Declaration.  Any exhibit attached to this Individual Dispute Resolution Agreement shall be deemed to supersede and replace, in full, the corresponding exhibit in the Dispute Declaration as to the Residence covered by this Individual Dispute Resolution Agreement.  The provisions of Section 5.3 and Section 5.4 of this Individual Dispute Resolution Agreement are separate and independent of the Dispute

Declaration; however, it is intended that the dispute resolution provisions of Section 4.3 of the Dispute Declaration be identical to the provisions of Section 5.3 of this Individual Dispute Resolution Agreement. If there is a conflict between this Individual Dispute Resolution Agreement and the Dispute Declaration, to the maximum extent allowed by law, this Individual Dispute Resolution Agreement shall be construed so as to be consistent with the Dispute Declaration; provided, however, if there is an irreconcilable conflict between this Individual Dispute Resolution Agreement and the Dispute Declaration or a Supplemental Declaration or for any reason the provisions of the Dispute Declaration are not enforceable, then the provisions of this Individual Dispute Resolution Agreement shall control.

7.3. **CONSTRUCTION OF PROVISIONS**: The provisions of this Individual Dispute Resolution Agreement are to be liberally construed to effect its purpose.

7.4. **EXHIBITS**: Any exhibits attached to this Individual Dispute Resolution Agreement are incorporated by this reference as though fully set forth herein.

7.5. **MORTGAGE PROTECTION**: Owner may encumber the Property with a mortgage or deed of trust. A breach of any of the conditions contained in this Individual Dispute Resolution Agreement shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value as to the Property; provided, however, that the agreements, notices and obligations contained in this Individual Dispute Resolution Agreement shall be binding upon and effective against Owner notwithstanding whether the Property is acquired by foreclosure, trustee's sale or otherwise.

7.6. **REDISTRIBUTION OF DOCUMENTS**: Upon the resale of the Property by Initial Owner, Initial Owner must deliver to its Successor Owner a copy of the Dispute Declaration, this Individual Dispute Resolution Agreement and all documents provided to Initial Owner in conjunction with the original sale of the Property. Upon each resale of the Property, Owner must supply to its Successor Owner a copy of the Dispute Declaration, this Individual Dispute Resolution Agreement and all other documents provided to that Owner by the previous Owner.

7.7. **SEVERABILITY OF PROVISIONS**: All provisions of this Individual Dispute Resolution Agreement shall be deemed independent and severable. If one provision of this Individual Dispute Resolution Agreement is deemed to be invalid or unenforceable to any degree and for any reason, such invalidity or unenforceability will not affect the validity or enforceability of any other provision of this Individual Dispute Resolution Agreement (*"Enforceable Provisions"*). It is therefore the intent of the parties that any court or arbitrator shall interpret and enforce all Enforceable Provisions of this Individual Dispute Resolution Agreement as binding contractual obligations of the parties.

7.8. **SUCCESSOR STATUTES**: Any reference in this Individual Dispute Resolution Agreement to a statute will be deemed a reference to any amended or successor statute.

7.9. **TERM**: This Individual Dispute Resolution Agreement shall be effective as of the date of its recordation and shall continue in full force and effect so long as the Dispute Declaration is effective, but in no event shall it terminate within twenty (20) years from its effective date.

*[SIGNATURES ON FOLLOWING PAGE]*

HLO\ Olivewood\ v.1 9/20/2023                                              14

This Individual Dispute Resolution Agreement is executed on this 15th day of May, 2024.

MERCHANT BUILDER:

THE NEW HOME COMPANY SOUTHERN
CALIFORNIA LLC, a Delaware limited
liability company

By: _____

Name:    Lori Michel

Title:    Authorized Person

INITIAL OWNER:

_____
DiLanGe, trustee

_____
Xian Feng Gu, trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA     )
                                    )

COUNTY OF ORANGE         )

On May 15, 2024 before me, Sherry Ivery, a Notary Public, personally appeared Lori Michel, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

```
SHERRY IVERY
Notary Public - California
Orange County
Commission # 2403177
My Comm. Expires May 4, 2026
```

(SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA     )
                                    )

COUNTY OF ___Orange___   )

On ___June 24, 2024___, before me, ___Leakimna Choeum___, a Notary Public, personally appeared ___Di Lan Ge & Xian Feng Gu___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

```
LEAKIMNA CHOEUM
Notary Public - California
Orange County
Commission # 2367605
My Comm. Expires Jul 24, 2025
```

(SEAL)

Centro vl/HLO/9.6.2023                    16

<div style="border:1px solid">

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

</div>

STATE OF CALIFORNIA                )
                                   )
COUNTY OF _____           )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.




_____
Notary Public                                          (SEAL)

<div style="border:1px solid">

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

</div>

STATE OF CALIFORNIA                )
                                   )
COUNTY OF _____           )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.




_____
Notary Public                                          (SEAL)

Centro v1/HLO/9.6.2023                              17

**EXHIBIT "A"**

**LIMITED WARRANTY**

HLO\ Olivewood\ v.1 9/20/2023



# HOMEBUYER LIMITED WARRANTY

# TABLE OF CONTENTS

**SECTION 1** – Introduction .................................................................... 2

**SECTION 2** – Definitions ..................................................................... 3

**SECTION 3** – One Year Fit and Finish Warranty ............................... 6

**SECTION 4** – Extended Limited Warranty for Performance Standards .................... 8

**SECTION 5** – Exclusions ..................................................................... 14

**SECTION 6** – Manufacturer's Warranties – Disclaimer ...................... 17

**SECTION 7** – Other Conditions and Limitations ................................ 18

**SECTION 8** – Time Limit for Making Warranty Claims ....................... 19

**SECTION 9** – Right to Repair Act ....................................................... 20

**SECTION 10** – Warranty Claim Procedure ......................................... 21

**SECTION 11** – Reporting an Emergency Claim .................................. 23

**SECTION 12** – Your Obligations ......................................................... 25

**SECTION 13** – Builder Obligations Under this Limited Warranty ....... 27

**SECTION 14** – Dispute Resolution Procedure ................................... 29

**SECTION 15** – Claims Under Individual Dispute Resolution Agreement ........ 30

**SECTION 16** – Effect on Future Owners of the Home ........................ 31

I

# SECTION 1

# INTRODUCTION

Congratulations on purchasing Your Home! Your purchase includes this Homebuyer Warranty which relates to original construction defects or deficiencies in materials and workmanship as more fully set forth below ("*Limited Warranty*"). All capitalized words and phrases used in this Limited Warranty shall have the meanings given them in Section 2 below or as otherwise defined herein. This Limited Warranty contains important terms, exclusions, conditions, policies and procedures. Therefore, You should carefully read and become familiar with this Limited Warranty. By signing this Limited Warranty, You agree to all terms, exclusions, conditions, policies and procedures of this Limited Warranty.

This Limited Warranty establishes (a) an agreed upon method for determining whether a construction defect or deficiency in materials and workmanship exists, and is therefore a "*Covered Claim*" as defined in Section 2 (rather than a minor imperfection that can reasonably be expected in the Home or conditions resulting from normal wear and tear or reasonable maintenance responsibilities) and (b) the Builder's responsibility for resolving any such Covered Claim.

This Limited Warranty contains the procedures You must use and follow to notify Builder of a Condition in the Home which You believe constitutes a Covered Claim. If You believe that a Condition is a Covered Claim, You must submit a request for service under this Limited Warranty. Based upon the information You provide, and the Builder's investigation/inspection and/or testing of the Home, the Builder will determine whether it agrees that the Condition constitutes a Covered Claim. If the Builder determines that the Condition is a Covered Claim, it will provide the repair, replacement or other response to such Condition required of the Builder under this Limited Warranty. If the Builder determines that a Condition does not constitute a Covered Claim, it may deny Your request for service under this Limited Warranty. If You disagree with the Builder's determination, You have the right to pursue a claim against the Builder in accordance with the Individual Dispute Resolution Agreement (as defined below).

To the fullest extent permitted by law, all express or implied warranties other than this Limited Warranty, including any oral or written statement or representation made by Builder or any of the Builder Parties or any other person, and any implied warranty of habitability, merchantability or fitness, are hereby disclaimed by the Builder and are waived by You. If any provision or portion of any provision of this Limited Warranty is determined to be unenforceable for any reason, such determination will not in any way affect the remaining provisions.

The issue of enforceability, as well as all other issues related to this Limited Warranty, will be determined by binding arbitration/judicial reference as provided for in the Individual Dispute Resolution Agreement.

2

## SECTION 2

## DEFINITIONS

The following words and phrases used in this Limited Warranty have the meanings set forth below.

**Actual Moisture Barrier** means any Component or material, actually installed, that serves to any degree as a barrier against moisture, whether or not intended as a barrier against moisture.

**Association** means any neighborhood association or master homeowner association applicable to the Project.

**Association Property** means any and all real property and improvements at the Project for which the Association owns or has the obligation to maintain and repair pursuant to the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements and any other governing documents for the Project.

**Builder** means The New Home Company Southern California LLC, a Delaware limited liability company.

**Builder Parties** means (i) Builder and its partners, members or other principals and their respective officers, agents, employees, affiliated, parent and subsidiary companies, successors and assigns, and design centers, and (ii) any subcontractors, design professionals, engineers, inspectors, material suppliers and/or consultants who provided labor, services or materials to any portion of the Home.

**Component** means an item that was incorporated into the construction of your Home by Builder, other than items specifically excluded by this Limited Warranty. The term does not include items added by you or anyone other than Builder or Builder Parties, or added to the home after the Effective Date of Warranty, such as improvements to the Home or furniture.

**Condition** means any circumstance and/or condition in the Home that You believe may be a Covered Claim.

**Covered Claim** is the failure of any workmanship, materials, and systems of any Component to meet the Fit and Finish Performance Standards or Performance Standards, as applicable.

**Designed Moisture Barrier** means an installed moisture barrier specified in the plans and specifications, contract documents, or manufacturer's recommendations.

**Effective Date of Warranty** means the date on which You close escrow for the purchase of the Home.  Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend the ten (10) year statute of repose for

3

construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such ten (10) year statute of repose expressly applies to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

**Emergency Condition** means any Condition that would cause an unsafe living condition affecting the health and safety of persons residing in the Home.

**Extended Limited Warranty** means the warranty provided under Section 4 of this Limited Warranty.

**Federal Act** means the Federal Arbitration Act (9 U.S.C. §§1-16).

**Fit and Finish Standards** means the construction and performance standards set forth in Section 3 subject to the tolerances and exclusions set forth in this Limited Warranty.

**Fit and Finish Warranty** means the one (1) year warranty described in Section 3.

**Fit and Finish Warranty Term** means the period which is (1) year following the Effective Date of Warranty.

**Home** means the residence You purchased from the Builder as described on the signature page of this Limited Warranty and all appurtenant improvements.

**Homeowner** means You and any successive owner of the Home.

**Homeowner Manual** means the Homeowner Manual provided to You by the Builder which includes important information regarding Your Home, including guidelines for the maintenance, care and use of Your Home.

**Individual Dispute Resolution Agreement** means the Individual Dispute Resolution Agreement entered into between You and the Builder in connection with the purchase of the Home that is or shall be recorded against the Home.

**Manufactured Products** means a product that is completely manufactured off-site, including without limitation all flooring, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, appliances, pieces of equipment, or other items installed in the Home that are consumer products for purposes of the Magnuson-Moss Warranty Act (15 U.S.C. Section 2301, et. seq.) and solar energy systems including inverters.

**Maintenance Guidelines** means all maintenance obligations, guidelines, schedules and practices communicated to You in writing by Builder, including, without limitation all product manufacturers' use, maintenance and care instructions provided to You by Builder, as well as commonly accepted maintenance practices. Such commonly

4

accepted maintenance practices include, but are not limited to, those set forth in Your Homeowner Manual and those established by product manufacturers.

**Owner Party or Parties** means You and/or Your agents, family (including minor children), tenants, guests, invitees and or representatives.

**Performance Standards** means the construction and performance standards set forth in Section 4 of this Limited Warranty subject to the tolerances and exclusions set forth in this Limited Warranty.

**Project** means the residential development in which the Home is located.

**Right to Repair Act** means Title 7, Part 2 of Division 2 of the California Civil Code commencing with Section 895.

**Service Request** means a complete, detailed description of a Condition properly submitted by You as set forth in Section 10 of this Limited Warranty.

**Structure** means any residential building, other building, or improvement located within the Project.

**Unintended Water** means water that passes beyond, around, or through a Component or the material that is designed to prevent that passage.

**Warranty Term** means, as to each system or Component covered by this Limited Warranty, the period beginning on the Effective Date of Warranty and expiring on the date for each such Component specified in Section 3 or 4 of this Limited Warranty, as applicable.

**You or Your** means the homeowner to whom this Limited Warranty is provided.

5

## SECTION 3

## ONE YEAR FIT AND FINISH WARRANTY

Subject to the terms, limitations, conditions and exclusions of this Limited Warranty, Builder warrants that during the period which is one (1) year following the Effective Date of Warranty (the Fit and Finish Warranty Term) the following Components of the Home will satisfy the Fit and Finish Standards within an acceptable tolerance. Builder will correct any noncompliance with the Fit and Finish Standards that are reported to Builder in writing in accordance with this Limited Warranty during the Fit and Finish Warranty Term. Any noncompliance with the Fit and Finish Standards not so reported to Builder within the Fit and Finish Warranty Term shall be Your responsibility. A Condition will only be a Covered Claim under this Fit and Finish Warranty if the Condition is the result of a Component or function not being in compliance with the Fit and Finish Standards. Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through are presumed to have been caused by Homeowner. Such damages caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| Cabinets | Cabinet doors shall align. | Cabinet doors that are out of alignment in excess of 1/8 of an inch when closed are a deficiency. | |
| Cabinets | Cabinet doors shall not contain significant warps. | Cabinet door warping of more than 3/16 of an inch is a deficiency. | |
| Cabinets | Cabinets shall be installed level and flush to walls and ceilings. | Deviations greater than 3/8 of an inch in cabinet level in a 6 foot span is a deficiency. Deviations greater than 3/16 of an inch to walls and ceilings is a deficiency. | |
| Carpet | Carpet seams shall be butted tightly. | | Visible seams and seam separations after close of escrow are not covered. |
| Countertops | Countertops shall be installed flat and level. | Deviations greater than 3/8 of an inch in countertop level is a deficiency. | |
| Exterior Decks/Patios | Decks and patios shall drain properly. | Water ponding in excess of 3/8 of an inch 24 hours after last rain is a deficiency. | |
| Exterior Doors | Doors shall not contain significant warps. | Exterior door warping of more than 1/8 of an inch is a deficiency. | |
| Exterior Trim | Wood trim, siding, and false beam details shall not contain significant separations. | Separations exceeding 3/8 of an inch in width are a deficiency. | Maintenance of Components, including, without limitation, caulking at joints, is not covered. |
| Grout | Grout shall not contain significant cracks | Cracks in excess of 1/32 of an inch are a deficiency. | |
| Hardwood Flooring | Finish flooring shall be installed level. | Variance in the level of hardwood flooring that exceeds 1/4 of an inch in 8 feet is a deficiency. | |

6

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| HVAC | Heating, if any, shall be installed so as to be capable of maintaining a room temperature of 70 degrees Fahrenheit at a point three feet above the floor in any living space. | | |
| HVAC | Living space air-conditioning, if any, shall be provided in a manner consistent with the size and efficiency design criteria specified in Title 24 of the California Code of Regulations or its successor. | | |
| Interior Doors | Doors shall not contain significant warps. | Interior door warping of more than 1/4 of an inch is a deficiency. | |
| Interior Trim | Trim shall not contain significant separations. | Separations at miter joints exceeding 1/16 of an inch in width are a deficiency. Gaps between trim and adjacent trim or other materials exceeding 1/8 of an inch are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant bows or crowns. | Bows exceeding 1/4 of an inch in a 32 inch horizontal or vertical measurement or 1/2 of an inch in an 8 foot measurement are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant cracks or separations. | Cracks and separations exceeding 1/8 of an inch in width are a deficiency. | |
| Landscaping/Irrigation | Irrigation systems and drainage shall operate properly so as not to damage landscaping or other external improvements. | | Landscaping installed, modified, or damaged after close of escrow is not covered. |
| Landscaping/Irrigation | The landscaping systems shall be installed in such a manner so as to survive for not less than one year. | | |
| Manufactured Products | To the extent not otherwise covered by these standards, manufactured products (products completely manufactured offsite), including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any. Useful life shall mean one year or the term of the manufacturer's warranty, whichever is greater, but no more than 10 years. | | Claims relating solely to a defect in a manufactured product are not covered. |
| Subfloor | Wood subfloors shall be installed level. | Variance in the level of wood subfloors that exceeds 1/2 of an inch in 20 feet is a deficiency. | Squeaks from subfloors are not covered. |

7

## SECTION 4

## EXTENDED LIMITED WARRANTY FOR
## PERFORMANCE STANDARDS

Subject to the terms, conditions and exclusions of this Limited Warranty, Builder warrants that during the applicable Warranty Term the following Components of the Home will satisfy the Performance Standards identified below within an acceptable tolerance. A Condition will only be a Covered Claim under the Extended Limited Warranty if the Condition is the result of a Component or function not being in compliance with the Performance Standards described in this Section. Conditions caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Noise | Attached structures shall be constructed to comply with inter-unit noise transmission standards set by the applicable government building codes, ordinances, or regulations in effect at the time of the original construction. | | If there is no applicable code, ordinance or regulation, this standard does not apply. | 1 Year from original occupancy of the adjacent unit |
| Paint | Paint and stains shall be applied in such a manner so as not to cause deterioration of the building surfaces for the length of time specified by the paint or stain manufacturers' representations, if any. | | | No more than 5 Years |
| Electrical | Electrical systems shall operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | Alterations made after close of escrow that change or increase the electrical load on the system void this coverage. | 4 Years |
| Exterior Flatwork | Concrete driveway and garage slab shall not be significantly offset. | Vertical offset that exceeds 1/2 of an inch is a deficiency. | Offsets exceeding 1/2 of an inch that are intentionally created during original installation are not covered. | 4 Years |
| Exterior Flatwork | Exterior pathways, driveways, hardscape, sidewalls, sidewalks, and patios installed by the original builder shall not contain cracks that display significant vertical displacement or that are excessive. | Cracks exceeding 1/4 of an inch in width or vertical displacement are a deficiency. Cracks in control joints that exceed 1 inch in width or 1/4 of an inch in vertical displacement are a deficiency. | Minor cracking is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Damage to builder-installed flatwork caused by flatwork or other additions installed after close of escrow are not covered. | 4 Years |
| Fences | Untreated steel fences and adjacent Components shall be installed so as to prevent unreasonable corrosion. | | | 4 Years |
| Plumbing and Sewer | Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | | 4 Years |

8

Document Number: 20210081884941 Page: 80 of 88

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Fences | Untreated wood posts shall not be installed in contact with soil so as to cause unreasonable decay to the wood based upon the finish grade at the time of original construction. | | | 2 Years |
| Mechanical | Dryer ducts shall be installed and terminated pursuant to manufacturer installation requirements. | | | 2 Years |
| Exterior Finishes | Stucco, exterior siding, and other exterior wall finishes and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall not contain significant cracks or separations. | Cracks exceeding 1/8 of an inch in width are a deficiency. Separations between dissimilar materials exceeding 3/8 of an inch in width are a deficiency. Separations at butt joints or miter joints of trim pieces that exceed 1/4 of an inch are a deficiency. | Minor cracking and separations is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Maintenance of caulking between dissimilar materials is not covered. Efflorescence is considered acceptable and is not covered. | 10 Years |
| Fire Protection | Electrical and mechanical systems shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire. | Original construction that causes an unreasonable risk of fire is a deficiency. | | 10 Years |
| Fire Protection | Fireplaces, chimneys, chimney structures, and chimney termination caps shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire outside the fireplace enclosure or chimney. | Original construction that causes an unreasonable risk of fire outside the fireplace enclosure is a deficiency. | | 10 Years |
| Fire Protection | The Structure shall be constructed so as to materially comply with the design criteria of the applicable government building codes, regulations, and ordinances for fire protection of the occupants in effect at the time of the original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Public Health Hazard | Structures shall be constructed in such a manner so as not to impair the occupants' safety because they contain public health hazards as determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction. | | | 10 Years |
| Roof | Roofing materials shall be installed so as to avoid materials falling from the roof. | | Damage caused after close of escrow is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, damage to the Structure built upon the soil or engineered retaining wall. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, the Structure to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |

9

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Soil | Soils shall not cause, in whole or in part, the land upon which no structure is built to become unusable for the purpose represented at the time of original sale by the builder or for the purpose for which that land is commonly used. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | Deficiencies caused, in whole or in part, by modifications to the soil or the surrounding areas after close of escrow are not covered. Damage caused by failure to maintain drainage swales is not covered. | 10 Years |
| Structural | Foundations, load bearing Components and slabs shall not cause the Structure, in whole or in part, to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |
| Structural | Foundations, load bearing Components, and slabs shall not contain significant cracks or significant vertical displacement. | Cracks exceeding 3/16 of an inch in width or 1/8 of an inch in vertical displacement are a deficiency. | Cracks in a control joint are not covered. | 10 Years |
| Structural | Foundations, load bearing Components, and slabs, and underlying soils shall be constructed so as to materially comply with the design criteria set by applicable government building codes, regulations, and ordinances for chemical deterioration or corrosion resistance in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Structural | The Structure shall be constructed so as to materially comply with the design criteria for earthquake and wind load resistance, as set forth in the applicable government building codes, regulations, and ordinances in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Tile | Ceramic tile and tile backing shall be installed in such a manner that the tile does not detach. | | | 10 Years |
| Water Intrusion - Doors | A door shall not allow Unintended Water to pass beyond, around, or through the door or its Designed or Actual Moisture Barriers, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |
| Water Intrusion - Doors/Windows | Windows, patio doors, deck doors, and their systems shall not allow water to pass beyond, around, or through the window, patio door, or deck door or its Designed or Actual Moisture Barriers, including, without limitation, internal barriers within the systems themselves. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Leaks caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |

10

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Drainage | Hardscape, including paths and patios, irrigation systems, landscaping systems, and drainage systems, that are installed as part of the original construction, shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the hardscape or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Water Intrusion - Enclosures | Shower and bath enclosures shall not leak water into the interior of walls, flooring systems, or the interior of other Components. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, grout, caulking, or weatherstripping, are not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, and exterior walls shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage from condensation entering the Structure caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, to maintain proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, exterior walls, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those Components and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall be installed in such a way so as not to allow Unintended Water to pass into the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers of the system, including any internal barriers located within the system itself. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking, are not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow Unintended Water to pass within the systems themselves and cause damage to the systems. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Damage caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, is not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow water to pass into the adjacent Structure. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, are not covered. | 10 Years |

11

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Exterior Systems | Windows, patio doors, deck doors and their systems shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Damage to another Component from excessive condensation entering the Structure from the outside as a result of original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. | | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to limit the installation of the type of flooring materials typically used for the particular application. | Damage to the original flooring caused by water or vapor transmission through the foundation system and slab is a deficiency. | Preparation required for installation of a flooring material that differs from that originally installed by Builder is not covered. | 10 Years |
| Water Intrusion - Roof | Roofs, roofing systems, chimney caps, and ventilation Components shall not allow water to enter the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers, including, without limitation, internal barriers, located within the systems themselves. For purposes of this standard, systems include, without limitation, framing, substrate, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, their roof, are not covered. | 10 Years |
| Water Intrusion - Tile | Ceramic tile and tile countertops shall not allow water into the interior of walls, flooring systems, or other Components so as to cause damage. | Leaks caused by original construction are a deficiency. | Damage caused by water tracked or introduced into areas outside of showers or bathtubs is not covered. | 10 Years |
| Water Intrusion - Utilities | Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems. | Corrosion that impedes the useful life of the system is a deficiency. | | 10 Years |
| Water Intrusion - Utilities | Sewer systems shall be installed in such a way as to allow the designated amount of sewage to flow through the system. | Original installation by the Builder that impedes the designated amount of sewage from flowing through the system is a deficiency. | Impediments caused by modifications or damage caused after close of escrow are not covered. Flushing of hygiene products that create a blockage are not covered. | 10 Years |
| Water Intrusion - Utilities | The lines and Components of the plumbing system, sewer system, and utility systems shall not leak. | Leaks caused by original construction are a deficiency. | Leaks caused by modifications or damage to Components after close of escrow are not covered. | 10 Years |
| Water Intrusion - Walls | Retaining and site walls and their associated drainage systems shall not allow Unintended Water to pass beyond, around, or through its Designed or Actual Moisture Barriers including, without limitation, any internal barriers, so as to cause damage. This standard does not apply to those portions of any wall or drainage system that are designed to have water flow beyond, around, or through them. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

12

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Walls | Retaining walls and site walls, and their associated drainage systems, shall only allow water to flow beyond, around, or through the areas designated by design. | Water intrusion caused by original construction is a deficiency. | Water intrusion caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

13

## SECTION 5

## EXCLUSIONS

A.      In addition to the items specifically addressed in Sections 3 and 4, this Limited Warranty also does not provide any coverage for the following, which are specifically excluded and shall not be Covered Claims:

1.      Damage to any property that was not included as part of the original construction of Your Home by Builder.

2.      Any condition which has not resulted in actual physical damage to Your Home.

3.      Failure to maintain Your Home in accordance with the Maintenance Guidelines.

4.      Any loss or damage that is caused or made worse by any of the following causes, whether acting alone or in sequence or concurrence with any other cause or causes whatsoever, including without limitation:

(a)     negligence, improper maintenance, defective material or work supplied by, or improper operation by, anyone other than Builder or any Builder Parties, including failure to comply with the warranty requirements of manufacturers of appliances, equipment or fixtures;

(b)     Your failure to give prompt and proper notice to Builder of any Covered Claim in accordance with the terms of this Limited Warranty;

(c)     changes in grading that do not comply with accepted grading practices, or failure to maintain the original grade created by Builder;

(d)     riot or civil commotion, war, vandalism, hurricane, tornado or other wind storm, fire, explosion, blasting, smoke, water, flood, hail, snow, ice storm, lightning, fallen trees or other objects, aircraft, vehicles, landslide or mud slide, avalanche, earthquake, subsidence, erosion, volcanic eruption or natural or manmade condition that exceeds the design criteria;

(e)     abuse or use of the Home, or any part thereof, beyond the reasonable capacity of such part for such use;

14

(f)    microorganisms, fungus, decay, wet rot, dry rot, soft rot, rotting of any kind, mold, mildew, vermin, termites, insects, rodents, birds, wild or domestic animals, plants, corrosion, rust, radon, radiation, formaldehyde, asbestos, any solid, liquid or gaseous pollutant, contaminant, toxin, irritant or carcinogenic substance, whether organic or inorganic, and any electro-magnetic field or emission, including any claim of health risk or un-inhabitability based on or caused by any matter contained in these exclusions;

(g)    Your failure to minimize or mitigate any Condition, loss or damage as soon as practicable;

(h)    any request for warranty service or performance submitted to Builder after an unreasonable delay or in any event later than expiration of the applicable Warranty Term, as applicable;

(i)    loss caused, in whole or in part, by any peril or occurrence for which compensation is provided by state or federal legislation or public funds;

(j)    diminution in the market value of the Home which is in addition to or exceeds the cost of repair;

(k)    loss or damage caused by or resulting from the loading of structural elements in excess designed loads, including, without limitation, water beds, safes, weight benches, large fish tanks, above-garage attics and storage spaces, and pool tables;

(l)    bodily injury or damage to personal property and any and all incidental and consequential damages, including, without limitation, lost profits, stigma damages, time missed from employment, expenses to address special health or physical situations, costs of shelter, transportation, food, moving, storage or other incidental expenses related to relocation during repairs;

(m)    loss or damage resulting from, or made worse by: (i) changes to the grading the property surrounding the Home by anyone, including changes made by or its authorized employees, agents or subcontractors, (ii) changes in the grading or drainage resulting from erosion, subsidence or (iii) other soil movement.  Builder assumes no responsibility for damage caused by the lack of or improper landscaping, changing the grade of a yard, or fencing, patios, spas, pools or otherwise which alter the grading or the water table;

15

(n)    loss or damage resulting from, or made worse by: dampness, condensation, cold or heat buildup caused by a failure to maintain proper ventilation in accordance with the terms of the Maintenance Guidelines;

(o)    loss or damage due to the actions of others, including, without limitation, actions by or failure to act by cities, counties or utility companies, including failure to provide utility service to the Home; and

(p)    modification of the Home and/or work performed at the Home by Homeowner or third parties after closing.

5.    Failure to allow Builder or Builder Parties reasonable and timely access for inspections and repair under this Limited Warranty.

6.    Alterations, ordinary wear and tear, misuse, abuse, or neglect, or use of the Home other than for intended purpose by You or any Owner Party.

7.    Any Covered Claim for which Builder has obtained a release.

8.    All Manufactured Products (including without limitation consumer products for purposes of the Magnuson-Moss Warranty Act), except as expressly provided otherwise in this Limited Warranty.

9.    All solar energy systems and Component parts warranted by a third party solar provider and/or its suppliers.

10.    Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through.

11.    Any of the conditions, occurrences, or matters set forth in Civil Code section 945.5.

12.    Association Property.

16

## SECTION 6

## MANUFACTURER'S WARRANTIES – DISCLAIMER

All Manufactured Products are excluded from coverage under this Limited Warranty. To the extent Builder has been issued a warranty from any manufacturer of Manufactured Products installed in Your Home, Builder assigns to You, to the extent assignable and without recourse to Builder, Builder's rights in such warranties, if any. The assignment will be effective as of the date on which You close escrow for the purchase of Your Home. Any rights that inure to a homeowner under a manufacturer's warranty are the obligation of the manufacturer. Builder has no obligations under the manufacturer's warranty, including without limitation the ability to enforce the manufacturer's warranty. Builder disclaims any warranty of any kind, express or implied, relating to Manufactured Products, including without limitation, any warranty of use, fitness of use, workmanship, or quality. Builder will not be obligated under this Limited Warranty for any damage to a Manufactured Product or for any damage caused by a Manufactured Product installed at Your Home; provided however, to the extent required by law, Builder will be responsible for damage caused by its improper installation of a Manufactured Product at Your Home or other act by Builder only if the installation or other act by Builder caused actual damage. Builder's disclaimer of warranties does not limit or otherwise affect the warranty of any manufacturer. If a Manufactured Product malfunctions, or is otherwise defective, You agree to follow the procedures in the applicable manufacturer's warranty documents or website. Prior to Your execution of this Limited Warranty, a copy of the warranties for Manufactured Products in Your Home were made available to You for Your review. At or after the close of escrow for the purchase of Your Home, Builder will deliver to You the actual warranties for the Manufactured Products in Your Home to the extent such warranties exist. Such delivery may be in digital format or links to a manufacturer's website.

17

## SECTION 7

## OTHER CONDITIONS AND LIMITATIONS

**DISCLAIMER OF OTHER WARRANTIES.** TO THE FULLEST EXTENT PERMITTED BY LAW, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF HABITABILITY, ARE HEREBY EXPRESSLY DISCLAIMED BY BUILDER AND WAIVED BY YOU. THIS LIMITED WARRANTY IS SUBSTITUTED IN PLACE OF ALL SUCH WARRANTIES. THIS MEANS THAT THIS WARRANTY IS THE ONLY WARRANTY THAT APPLIES AND GOVERNS YOUR AND OUR RIGHTS AND OBLIGATIONS RELATED TO YOUR HOME AND THAT THERE ARE NO OTHER WARRANTIES EXCEPT AS MAY BE REQUIRED BY LAW. NO ONE CAN ADD TO OR VARY THE TERMS OF THIS LIMITED WARRANTY, ORALLY OR IN WRITING. IF AN ARBITRATOR OR COURT DETERMINES THAT A WARRANTY CANNOT BE WAIVED, DISCLAIMED, OR REDUCED BY THIS WARRANTY OR SUBSTITUTED WITH THE TERMS OF THIS WARRANTY BY LAW, THEN THE SPECIFIC TERM IN THIS WARRANTY THAT CONFLICTS WITH THE WARRANTY TERM THAT MAY NOT BE WAIVED, DISCLAIMED, REDUCED OR SUBSTITUTED WILL NOT APPLY, BUT ALL OTHER TERMS WILL REMAIN APPLICABLE TO THE EXTENT PERMITTED BY LAW.

**Severability.** In the event any provision of this Limited Warranty is determined to be unenforceable, that determination will not affect the validity of the remaining provisions.

**Not an Insurance Policy.** This Limited Warranty is not an insurance policy and Builder does not provide you any insurance through the Limited Warranty or otherwise. You should always obtain Homeowners insurance to protect your Home and if You have a mortgage on Your Home, Your lender may insist that You have a homeowner's insurance policy. This is not a homeowner's insurance policy.

**Repair Does Not Extend Warranty Term.** No repair, replacement or payment shall extend the Warranty Term of this Limited Warranty as to any Covered Claim, including, without limitation, the Covered Claim which was the subject of the repair. There shall be no warranty, express or implied, arising from repair or replacement work performed by or on behalf of Builder except for the remaining original Warranty Term.

**Limitations on Post-Repair Condition of Home.** Repairs undertaken under the Limited Warranty are intended to restore the Home to acceptable tolerances, but not necessarily to like-new condition.

**Headings.** Section headings and the Table of Contents used herein are for convenience of reference only and shall not affect the meaning or interpretation of this Limited Warranty.

18

## SECTION 8

## TIME LIMIT FOR MAKING WARRANTY CLAIMS

The Warranty Term is different depending on the type of system, Component or element of construction involved.  For items covered under Section 3 One Year Fit and Finish Warranty, the Warranty Term is one year from the Effective Date of Warranty.  For items covered under Section 4 Extended Limited Warranty for Performance Standards, the Warranty Term is set forth for each building Component listed starting from the Effective Date of Warranty.  All warranty claims must be received by Builder prior to the expiration of the applicable Warranty Term.  Any claim that Builder did not comply with its obligations under this Limited Warranty must be brought pursuant to the procedures set forth in the Individual Dispute Resolution Agreement and must be initiated no later than thirty (30) days after the expiration of the applicable Warranty Term.  Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend any applicable statutes of limitation or repose, including without limitation the ten (10) year statute of repose for construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such statutes of limitation and/or repose that apply to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

19

## SECTION 9

### RIGHT TO REPAIR ACT

This Limited Warranty is **NOT** intended to be a Builder's Enhanced Protection Agreement, as permitted by the Right to Repair Act.  The terms and conditions of this Limited Warranty are intended by Builder to contractually set forth Your and the Builder's rights, duties, and obligations as to certain covered Components and functions of Your Home under this Limited Warranty.

If this Limited Warranty is in any way deemed to limit the application or reduce the protection of the Right to Repair Act, the provisions of the Right to Repair Act shall control and shall supersede any term, condition, provision, definition, limitation, exclusion, right, duty, or requirement stated in this Limited Warranty.

20

## SECTION 10

## WARRANTY CLAIM PROCEDURE

If You become aware of a Condition that You believe is Covered Claim under this Limited Warranty, You must proceed as follows:

### Notification

You must submit a Service Request through the Builder's website at https://www.CustomerCareNHC.com (or by following the links at Builder's general website for "service", "customer care" or "warranty", "**Website**") as soon as reasonably possible after You become aware or should have become aware of the Condition, but in no event may Your service request be submitted to Builder through the Website later than the earlier to occur of (a) thirty (30) days following Your discovery of a Condition (except as provided below for Conditions discovered during the first thirty (30) days after the Effective Date of Warranty) or (b) the date on which the applicable Warranty Term expires for the system, Component or element of construction involved in such Condition. However, for ease of service, during the initial thirty (30) days following the Effective Date of Warranty you should keep track of Conditions You wish to report until the expiration of such thirty (30) day period.  Service requests must be made through the Website and will not be accepted by mail or other delivery process.  If your request for service is not submitted in accordance with the foregoing, Builder will have no obligation to remedy the Condition that is the subject of the service request.  Further any claim or claims that Builder has breached this Limited Warranty must be brought within one (1) year following the alleged breach, but in no event later than thirty (30) days after expiration of the Warranty Term with respect to the system, Component or element of construction involved in such breach by Builder, and shall be resolved in accordance with the Individual Dispute Resolution Agreement.

### Cooperation

You must fully cooperate with Builder, and any Builder Parties, in inspecting, investigating, testing (including destructive testing), monitoring, repairing, replacing or correcting a Condition under this Limited Warranty.  This cooperation includes, but is not limited to, granting reasonable access to Your Home for the foregoing purposes during normal business hours, having a person at least eighteen (18) years of age at each and every scheduled appointment, and, if the Home has tenants, having Your authorized representative (as evidenced by a signed, written authorization), present for any such appointments.  If You fail to so cooperate, the Builder will have no obligation to perform any warranty service under this Limited Warranty.

### Do Not Incur Expenses for Covered Claims Without Written Approval

You agree not to make any voluntary payments, assume any obligations, or incur any expenses to remedy any Condition You believe is a Covered Claim without prior written approval from Builder.  Subject to the exception below, Builder will not reimburse

21

You for any costs or expenses You incur if You do not obtain prior written approval from Builder agreeing to reimburse you for such costs.

However, Builder will reimburse you for reasonable expenses You incur with independent third parties, consistent with this Limited Warranty, in making repairs for (i) a Condition that is a Covered Claim which is necessary solely for the protection of the Home from further material damage, provided that you notify Builder of such Condition as soon as is reasonably possible, or (ii) an Emergency Condition provided that you notify Builder of such Emergency Condition as soon as is reasonably possible. To obtain reimbursement for such costs incurred as a result of an Emergency Condition, You must provide Builder with a complete and accurate record describing in detail the Emergency Condition and the repairs and repair costs. If proper, detailed documentation for emergency repairs and repair costs is not provided, Builder shall not be obligated to reimburse You for costs incurred in connection therewith.

**Sign a Release**

To the fullest extent permitted by law, when Builder or a third party designated by Builder pays to You any monetary settlement for any claim, You must sign a full release of Builder's obligations related to the claim. This release shall be applicable to the claim only and shall not prevent You from making a claim regarding any other Condition that You believe is a Covered Claim.

**Disputes**

You agree that all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial.

22

## SECTION 11

## REPORTING AN EMERGENCY CLAIM

Certain events and circumstances may require immediate attention by You under this Limited Warranty. Builder has provided an emergency phone number for Your convenience to expedite service in Emergency Conditions. To ensure documentation in Your warranty file, send a Service Request Form to Builder clearly identifying and describing in detail the Emergency Condition and the date that You reported the Emergency Condition.

Emergency Covered Claims are those Covered Claims that require immediate attention due to Emergency Conditions and include, but may not be limited to, the following examples:

- A total stoppage of the sewer system. (Note: Builder is not responsible for sewers, fixtures, and drains which are clogged as a result of the action or inaction of any Owner Party or Owner Parties.)

- A water leak which could cause serious damage to the building and/or furnishings. (Turn off water supply immediately.)

- An electrical problem causing complete loss of power within the Home. (Shut off main breaker.)

Urgent, but non-Emergency Conditions are those Conditions that may require immediate responsive action but are not of an Emergency Condition nature. Such urgent Conditions, include, but may not be limited to:

- Complete loss of heat or air conditioning

- Leak under a sink

The following Emergency Phone Number and contact information are provided to You for use if You believe a Condition is an Emergency Condition. Please strictly comply with the emergency service request procedures set forth above, including careful consideration of whether a Condition qualifies as an Emergency Condition subject to the emergency service request procedures set forth herein.

23

# EMERGENCY PHONE NUMBER

## 949-472-5518

For appliance service issues, please contact the appropriate factory warranty service company for all appliance repairs of any nature. To ensure documentation in your warranty file, after You have contacted the appropriate appliance service subcontractor, send a Service Request Form to Builder clearly identifying and describing the appliance service request and the date that the appliance service subcontractor or vendor was contacted.

You are required to exercise good faith in determining whether a Condition qualifies as a Covered Claim, whether such Condition qualifies as an Emergency Condition and using the proper reporting procedures under this Limited Warranty. You may be responsible for costs associated with services provided if you report an item that is not an Emergency Condition or a Covered Claim, at Builder's sole discretion.

Your failure to follow obligations, schedules, necessary maintenance (including without limitation the Maintenance Guidelines), reporting procedures and practices may invalidate all or portions of the coverage of this Limited Warranty.

24

# SECTION 12

## YOUR OBLIGATIONS

**Access to Your Home.**

In order for Builder to carry out its responsibilities under this Limited Warranty, Builder, or a third-party designated by Builder, will require access to Your Home from time-to-time, provided that access is during normal business hours, Monday through Friday, at a time mutually convenient to You and Builder between the hours of 8:00 a.m. and 4:00 p.m., or as otherwise set forth above. You hereby agree to grant access to Builder and Builder Parties during such time to inspect, repair and conduct tests in Your Home as in their judgment may be required. Your failure to allow access to Your Home will void this Limited Warranty.

**Your Obligations to Care for Your Home.**

This Limited Warranty covers the cost of labor and materials to correct a Covered Claim, as more fully defined above. Your obligation is to care for Your Home in such a way as to prevent or minimize damage to it. All new homes go through a period of settlement and movement. During this period, Your Home may experience some minor material shrinkage, cracking and other events which are normal and customary. You are responsible for proper maintenance of Your Home, including, but not limited to, complying fully with all Maintenance Guidelines. You should become familiar with all Maintenance Guidelines. By accepting this Limited Warranty, You agree to provide to any subsequent purchaser of the Home from You any and all Maintenance Guidelines. Any subsequent purchaser of the Home must also comply with the Maintenance Guidelines. The failure of any Homeowner to comply with the Maintenance Guidelines shall void this Limited Warranty, as to any claim in whole or in part, at Builder's sole and absolute discretion. The sale of the Home to a subsequent purchaser shall not extend the Warranty Term.

Without limiting the information or maintenance obligations provided in Your Homeowner Manual or other Maintenance Guidelines, below are some reminders of what Your Home has a right to expect from You:

- Your Home and lot were designed with a particular drainage pattern, which should carry rainwater away from the foundation. Water should not be directed to the edge of the foundation, either in the form of lot drainage or the watering of flowers, shrubs, or grass.
- Concrete surfaces should be free of salts, other deicing chemicals, and excessive weight such as a moving van. Yard drainage should be maintained to divert water away from concrete surfaces, if possible, to eliminate the chance it will undermine the surface and erode the bearing soil.
- Structural alterations to the Home must be performed by professionals who understand the load-bearing requirements of the change. One of the reasons that

25

local municipalities require permits for building alterations is to make sure that the structural integrity of the Home is maintained.

- In many cases, the seal around doors and windows is caulk. This material should be inspected annually and may need to be replaced after one to two years. Water from yard and lawn watering devices should not come in contact with the structure.
- Since the mechanical systems of Your Home were designed for normal usage, placing unreasonable demands upon them will present problems. Plugging several electrical devices into one circuit may cause it to overload. Loading materials into a drain may cause it to clog. Undue weight should not be placed on pipes or showerheads because they can break. Some devices must be cleaned periodically (e.g., furnace filters) so that they can do what they were designed to do.
- Wood requires cleaning and sealing to prevent problems associated with water penetration and continual exposure to the elements. Painted or sealed surfaces must be cleaned and refinished according to the requirements of Your geographic area. If this is not done, the surface will deteriorate.
- Instructions for care and maintenance are included with many Components of Your Home, including finished flooring, appliances, and air handling equipment. Following these instructions will extend the life of these Components.
- The common areas require the same care and maintenance as Your Home. Although Your Association is responsible for maintenance, all residents should strive to keep these areas clean and usable.

## Your Responsibility for Proper Use

You are responsible for any improper use of Your Home, including, but not limited to, unreasonable use, intentional damage, and the use of Your Home for anything other than a single-family residence.

## Your Responsibility to Provide Notice and Mitigate Damages

If You believe Your Home has a construction defect covered by this Limited Warranty, You must give Builder timely notice in the manner described in this Limited Warranty. Builder is not responsible for any damage that occurs because You failed to timely notify Builder or because You failed to take reasonable action to prevent the damage.

26

## SECTION 13

## BUILDER OBLIGATIONS UNDER THIS LIMITED WARRANTY

Except for Emergencies as set forth in Section 11 all Service Requests must be made by You in accordance with Section 10. Telephonic or face-to-face discussions will not protect or preserve Your rights under this Limited Warranty.

Upon receiving a fully completed Service Request from You, Builder, or a Builder Party, will conduct inspections, investigations and/or testing (including destructive testing) regarding the alleged claim described in the Service Request From to determine if a Covered Claim exists. Upon Builder's determination that the described Condition is a Covered Claim, Builder, or a Builder Party, will, at Builder's sole discretion, (1) perform repair or replacement in response to the Covered Claim or (2) pay to You the reasonable cost to perform such repair or replacement in which case You shall execute a full release in favor of Builder with respect to the Covered Claim.

**Standards by Which the Presence of a Covered Claim Will be Determined.**

The following factors will be considered by Builder in determining whether a Condition constitutes a Covered Claim. Should an arbitration be conducted under the Dispute Resolution Procedure, these factors shall be considered by the arbitrator or referee, as applicable, in rendering a decision:

1.  The Fit and Finish Standards or Performance Standards, as applicable.

2.  Consideration as to whether the magnitude of the Condition:
    *   Materially affects the structural integrity of the Home; or
    *   Has an obvious and material negative impact on the appearance of the Home; or
    *   Creates an Emergency Situation; or
    *   Results in the inability of the Home to provide the functions that can be reasonably expected in such a home;

3.  Consideration as to whether the Condition is the result of normal wear and tear (Conditions that are normal wear and tear, or are caused by normal wear and tear, are not Covered Claims);

4.  Consideration as to whether the Condition was caused by, or in any way resulted from, the failure of an Owner Party or Owner Parties to perform normal or routine maintenance (any Condition that is determined to be a maintenance issue or that results from improper or inadequate maintenance is not a Covered Claim);

5.  Consideration as to whether the Condition was caused by any Owner Party or Parties (any Condition that is caused by an Owner Party or Parties is not a Covered Claim);

27

6.    Recognition that any Condition resulting directly or indirectly from or worsened by changes, additions, alterations or other actions or omissions by any Owner Party or Owner Parties, will not be considered a Covered Claim; and

7.    Any conditions, limitations or exclusions contained in this Limited Warranty.

28

## SECTION 14

## DISPUTE RESOLUTION PROCEDURE

Any and all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial. The Individual Dispute Resolution Agreement is recorded against the Home.

BY INITIALING IN THE SPACE BELOW, YOU AND BUILDER AGREE TO HAVE ANY DISPUTE DECIDED BY THE ABOVE DISPUTE RESOLUTION PROCEDURE AND YOU AND BUILDER ARE GIVING UP ANY RIGHTS YOU AND BUILDER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU AND BUILDER ARE GIVING UP THEIR RESPECTIVE JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THIS LIMITED WARRANTY. IF YOU OR BUILDER REFUSES TO SUBMIT TO THE DISPUTE RESOLUTION PROCEDURE, AFTER AGREEING TO THIS PROVISION, YOU OR BUILDER MAY BE COMPELLED TO COMPLY WITH THE FOREGOING DISPUTE RESOLUTION PROCEDURE.

I/WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES IN ACCORDANCE WITH THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT

BUYERS' INITIALS: X____ X____; BUILDER'S INITIALS: X____

29

## SECTION 15

## CLAIMS UNDER INDIVIDUAL DISPUTE
## RESOLUTION AGREEMENT

Builder has elected to use certain procedures for the resolution of construction defect claims regarding Your Home, as allowed by the Right to Repair Law ("*Right to Repair Claims Procedure*"). The Right to Repair Claims Procedure is in the Individual Dispute Resolution Agreement that You and Builder have signed. Your providing Builder with a Service Request Form or any other notice of any alleged Covered Claim under this Limited Warranty **DOES NOT** constitute a "Notice of Claim" under the Individual Dispute Resolution Agreement or a claim under the Right to Repair Act or any law or statute. **THE REPORTING AND NOTICE PROCEDURES SET FORTH IN THIS LIMITED WARRANTY APPLY SOLELY TO COVERED CLAIMS UNDER THIS LIMITED WARRANTY, AND DO NOT IN ANY WAY CONSTITUTE ANY ELECTION TO USE OR COMMENCEMENT OF THE CLAIMS PROCESSES AND DISPUTE RESOLUTION PROCEDURES IN THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.**

30

## SECTION 16

## EFFECT ON FUTURE OWNERS OF THE HOME

All of Your rights and obligations under the Limited Warranty shall, unless previously released by You or Your successor, fully transfer to each successor owner of the Home, including any mortgagee in possession, for the remainder of the applicable Warranty Term and any transfer shall in no way affect, increase or reduce the coverage under the Limited Warranty for its unexpired term.

If you sell Your Home during the Warranty Term, You agree to give this Limited Warranty to the successor owner to inform the successor owner of warranty rights and to otherwise make it possible for the successor owner to fulfill the successor owner's obligations under the terms of the Limited Warranty and the applicable Maintenance Guidelines.  If You are an owner other than the original purchaser of the Home, You are bound by all the terms and conditions of the Limited Warranty, including, but not limited to, claims procedures and the requirement to submit any disputes that may arise under the Limited Warranty to binding arbitration or judicial reference pursuant to the Individual Dispute Resolution Agreement which is recorded against the Home.  If You are a subsequent purchaser and require a copy of the Individual Dispute Resolution Agreement, you may also contact Builder for a copy.

31

**YOU AND BUILDER ACKNOWLEDGE THAT THIS LIMITED WARRANTY CONTAINS TERMS, CONDITIONS, LIMITATIONS, WAIVERS, AND EXCLUSIONS THAT AFFECT THE LEGAL RIGHTS OF EACH OF YOU.  BY YOUR SIGNATURE BELOW, BOTH YOU AND BUILDER ACKNOWLEDGE THAT YOU HAVE HAD THE OPPORTUNITY TO OBTAIN THE ADVICE OF LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED WARRANTY.  YOU ACKNOWLEDGE THAT BUILDER HAS ADVISED YOU TO SEEK LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED WARRANTY.  YOU AND BUILDER AGREE TO BE BOUND BY ALL OF THE PROVISIONS OF THIS LIMITED WARRANTY.**

Dated: 5/15/2024

BUILDER

Buyer

Buyer

Buyer

Dated: 6/24/2024

Dated: 6/24/2024

Buyer

Dated:

Dated:

Lot:        88

Address:    129 Oakstone

Irvine, CA 92618

THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: Nov 05, 2025

CERTIFICATION FEE: 55.00

COUNTY CLERK-RECORDER

ORANGE COUNTY
STATE OF CALIFORNIA

# Exhibit 2

## ADDENDUM

## LIMITED WARRANTY



**Seller's Initials**

**Buyer's Initials**

HLO\ Olivewood\ v.1 1/9/2024

-17-
**82**

**ADDENDUM**

**INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**

 

DocuSign Envelope ID: 367CC3C1-4305-406F-BD4A-205CAC6ACGDC

## RECEIPT FOR LIMITED WARRANTY AND DISPUTE RESOLUTION AGREEMENTS

## (OLIVEWOOD)

The undersigned (***"Buyer"***) hereby certifies that in connection with Buyer's purchase of a residence ("***Property***") in the Olivewood residential development, Buyer has received from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (***"Seller"***), the following:  (a) the Homebuyer Warranty attached as an addendum to the Purchase Agreement and Escrow Instructions executed by Buyer in connection with the purchase of the Property ("***Purchase Agreement***"); (b) the Individual Dispute Resolution Agreement attached as an addendum to the Purchase Agreement; and (c) the Declaration of Dispute Resolution Procedures, which is provided to Buyer in a USB flash drive (collectively, the "***Warranty/Dispute Documents***").

The Warranty/Dispute Documents create a process that Buyer must comply with in resolving any disputes with Seller arising after the close of escrow for the purchase of the Property. The Warranty/Dispute Documents create substantial legal obligations and Buyer agrees that, prior to the close of escrow for the purchase of the Property, Buyer (a) will read the Warranty/Dispute Documents and (b) has the right to have the Warranty/Dispute Documents and any and all other documents related to the purchase of the Property reviewed by an attorney or other expert of Buyer's choosing at Buyer's sole expense; provided, however, that such review does not allow Buyer to alter the terms of the Warranty/Dispute Documents or any other sales documents or delay or cancel the close of escrow on the Property.

Buyer agrees that Buyer's failure to read the Warranty/Dispute Documents and to obtain any needed assistance in understanding the Warranty/Dispute Documents and/or any other sales documents shall not in any way change Buyer's or Seller's rights, duties or obligations under the Warranty/Dispute Documents, sales documents or otherwise.

## *[SIGNATURES ON FOLLOWING PAGE]*

Buyer

Dated:  1/9/2024 | 7:52:26 PM PST

<u>Di Lan Ge</u>
Printed Name

Buyer

Dated:  1/9/2024 | 8:16:16 PM PST

<u>Xian Feng Gu</u>
Printed Name

Buyer                                   Dated:

Printed Name

Buyer                                   Dated:

Printed Name

***"Buyer"***

Olivewood v1/HLO/9.26.2023                      -2-

## RECEIPT FOR
## USB FLASH DRIVE CONTAINING DEVELOPMENT DOCUMENTS
## (OLIVEWOOD)

The undersigned (*"Buyer"*) is purchasing from THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (*"Seller"*), a residence in the Olivewood development (*"Development"*). Buyer acknowledges that Seller has delivered to Buyer a USB flash drive (*"Drive"*) which includes copies of the Development documents listed on *Exhibit "A"* hereto (*"Development Documents"*). Buyer further acknowledges that Buyer owns a computer into which the Drive can be inserted and that Buyer has inspected the Drive and confirmed that the Development Documents can be displayed on and printed from Buyer's computer. Buyer is encouraged to print and review the Development Documents immediately. If for any reason Buyer cannot load or view and print the Development Documents from Buyer's computer, Buyer will immediately make written request to Seller for hard copies of the Development Documents.

Dated: 1/9/2024 | 7:52:26 PM PST

Buyer

Di Lan Ge
Printed Name

Dated: 1/9/2024 | 8:16:16 PM PST

Buyer

Xian Feng Gu
Printed Name

Buyer                                    Dated:

Printed Name

Buyer                                    Dated:
Printed Name

*"Buyer"*

Olivewood v1/HLO/9.26.2023

**86**

## EXHIBIT "A"

## <u>LIST OF DEVELOPMENT DOCUMENTS</u>

- Articles of Incorporation of Portola Springs Community Association Filed March 14, 2006.

- By Laws of Portola Springs Community Association Certified on July 6, 2006.

- Restated Master Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Portola Springs – Recorded on September 18, 2006 as Doc # 2006000619895.

- Portola Springs Community Association Design Guidelines Updated and Revised February 10, 2022.

- Budget Review 660C dated January 6, 2022

- DRE Approved Best Case/ Worst Case/ Buildout Budgets.

- 18.A 2024 DRE Budget Resolution

- 18.D.3 Port-ph507BC (Best Case)

- 18.D.4 Port-ph598WCBC (Worst Case/Build Out)

- 18.D.5 Port-ScenB

- Notice of Annexation w/ Exhibits

- Declaration of Dispute Resolution Procedures w/Exhibits

- Declaration of Solar Energy Covenants and Restrictions

- Design Guidelines with Applications & Exhibits Revised 2.10.22

- Approved Fire Protection Plan

- Approved Enclave 5B Precise Fuel Modification Plan

- Living Close to Nature Handout dated 7-10-20

*Buyer's Initials*

Olivewood v1/HLO/9.26.2023

**87**

# Exhibit 3

**ADDENDUM TO**
**PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS**

**COOPERATION IN 1031 EXCHANGE**

**(OLIVEWOOD)**

This Addendum is attached and incorporated into the Purchase Agreement and Escrow Instructions dated _____1/11/24_____, 202__ (**"Agreement"**) between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), and the undersigned (**"Buyer"**), regarding Buyer's purchase of the residence described in the Agreement (**"Property"**). This Addendum supplements the Agreement and includes additional agreements of Buyer and Seller. If there is any conflict between the provisions of the Agreement and this Addendum, this Addendum shall control. All defined terms used in this Addendum shall have the same meaning as set forth in the Agreement.

1.      Buyer has advised Seller that Buyer desires to structure its acquisition of the Property as a tax-deferred exchange (**"Exchange"**) pursuant to Section 1031 of the Internal Revenue Code. Buyer may acquire the Property in connection with an Exchange, subject to the following terms:

1.1.    Buyer may assign its rights to acquire the Property to an exchange accommodator (**"Accommodator"**) selected by Buyer.

1.2.    Seller shall in no way be obligated to pay any escrow costs, brokerage commissions, title charges, survey costs, recording costs or other charges incurred with respect to the Exchange.

1.3.    The Close of Escrow shall not be contingent or otherwise subject to the consummation of the Exchange, and Escrow shall timely close in accordance with the terms of this Agreement notwithstanding any failure, for any reason, of the consummation of the Exchange. Buyer acknowledges that neither Seller nor its representatives have made any representations, warranties, guarantees or assurances that the Close of Escrow for the Property shall occur prior to the deadline to complete the Exchange.

1.4.    Seller shall have no responsibility or liability on account of the Exchange to any third party involved in the Exchange.

1.5.    Seller shall not be required to make any representations or warranties nor assume any obligations, nor spend any out-of-pocket sum in connection with the Exchange.

1.6.    Buyer shall remain solely liable to Seller for all representations, warranties, covenants and indemnification obligations of Buyer to Seller set forth in the Agreement notwithstanding an Exchange.

1.7.    Except as to any claims, demands, losses, liabilities or expenses arising through the gross negligence or willful misconduct of Seller, Buyer shall indemnify, protect, defend and hold Seller harmless from and against any and all causes of action, claims, demands, liabilities, costs and expenses, including attorneys' fees and court costs, incurred by Seller arising out of or in connection with the Exchange.

Neither Seller nor its agents or its employees have made any promises, assurances, representations or warranties of any kind or nature (express or implied) that tax-deferred exchange treatment is available to Buyer with respect to the Exchange, or that such a transaction will qualify in any respect for such treatment, and Seller shall incur no liability if the Exchange fails to qualify for the tax-deferred treatment intended by Buyer. If Seller defaults under the terms of the Agreement, then Seller will be liable to Buyer for only those damages that would have occurred if Buyer had not included the Property in any such exchange. Specifically excluded from those damages for which Seller would be liable, but not by way of limitation, are any consequential damages Buyer would incur because of a loss of tax advantages, tax deferment or other detrimental tax impacts Seller's default would cause to Buyer. Buyer hereby acknowledges and represents to Seller that Buyer is relying solely and entirely upon the advice of Buyer's own consultants with respect to any and all aspects of any such Exchange.

2.      **Ratification of Agreement**. Except as provided above, the Agreement is hereby ratified by the parties and shall remain in full force and effect.

*[SIGNATURES ON FOLLOWING PAGE]*

HLO\ Olivewood\ v.1 11/1/2023                    **89**    *Seller's Initials* _____    *Buyer's Initials* __ __

Acknowledged and agreed by the parties on the respective dates set forth below.

Buyer

Di Lan Ge

Print Name

Dated: 2/14/2024 | 10:20:39 AM PST , _____

Buyer

XianFeng Gu

Print Name

Dated: 2/11/2024 | 12:40:52 PM PST , _____

Buyer

Print Name

Dated: _____, _____

Buyer

Print Name

Dated: _____, _____

*"Buyer"*

Seller's Sales Representative

Dated: 2/10/2024 | 11:16:49 AM PST , _____

THE NEW HOME COMPANY SOUTHERN CALIFORNIA
LLC, a Delaware limited liability company

Dated: 2/15/2024 | 6:54:34 AM PST , _____

By: _____

Its: _____
    Authorized Person

By: _____

Its: _____

*"Seller"*

# Exhibit 4

- 2025.0402 Gu_SB800_129 Oakstone_Cast Bronze Trim
- 2025.0402 Gu_SB800_129 Oakstone_Stair Railing System
- 2025.0403 Gu_SB800_129 Oakstone_Shower Installation
- 2025.0404 Gu_SB800_129 Oakstone_Shower Niche Installations
- 2025.0407 Gu_SB800_129 Oakstone_Carpet
- 2025.0407 Gu_SB800_129 Oakstone_HVAC
- 2025.0407 Gu_SB800_129 Oakstone_Misaligned Cabinetry
- 2025.0414 Gu_SB800_129 Oakstone_Drywall
- 2025.0414 Gu_SB800_129 Oakstone_Glass Fence
- 2025.0414 Gu_SB800_129 Oakstone_Shower Fan
- 2025.0414 Gu_SB800_129 Oakstone_Shower Floor
- 2025.0414 Gu_SB800_129 Oakstone_Water softening system
- 2025.0421 Gu_SB800_129 Oakstone_Tile_NOT PROPERLY SERVED
- 2025.0423 Gu_SB800_129 Oakstone_Tile at Bathrooms, Floors, and Shower Pan
- 2025.0505 Gu_SB800_129 Oakstone_Tile Defects
- 2025.0512 Gu_SB800_129 Oakstone_Gutter-downspout

92

From: Di Lan Ge & Xian Feng Gu
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

4/2/25

Notice of SB 800 Claim – Defective functioning of doors and finish on doors, frames, and trim

To Whom This May Concern:

Pursuant to California Civil Code § 910, this letter constitutes a formal Notice of Claim regarding defective carpentry finishes and door installations at 129 Oakstone, Irvine, CA 92618.

We have observed the following issues affecting numerous interior doors, their associated trim, and baseboards throughout the home:

- Significant and uneven gaps (up to or exceeding ¼ inch) between doors and their jambs
- Doors that do not sit flush against the stopper when closed
- Doors that creak excessively and have a noticeable trail of black powder on the hinges
- Miter joints in door casing and trim that exceed the industry-standard separation of 1/16 inch, with daylight visible through some joints
- Inconsistent workmanship, including misaligned, unlevel hardware and uneven reveals, affecting both function and aesthetics

We submitted these issues previously through the warranty portal, where there are relevant photos when feasible. However, they were prematurely marked as "Completed" without any inspection or corrective action. A repair has been scheduled for 2 especially bad doors, but we remain concerned that the proposed solution will not address the underlying workmanship problem — especially if glue and/or other standard industry practices are again omitted during reinstallation.

Please respond within the timeframes required by California Civil Code § 913 and arrange for an overall inspection and repair, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

93

From: Di Lan Ge & Xian Feng Gu
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

4/2/25

<center>Notice of SB 800 Claim – Unsafe Stair Railing System</center>

To Whom This May Concern:

Pursuant to California Civil Code § 910, this letter constitutes a formal Notice of Claim regarding a defect in the construction of the stair railing system at 129 Oakstone, Irvine, CA 92618. We have observed the following with respect to the stair railing system:

- Loose wooden newel posts and iron balusters
- Noticeable flexing or movement when light force is applied

These conditions present a serious safety hazard, particularly for children, elderly individuals, or guests using the staircase. Due to these safety concerns, beginning on February 18, 2025, we began altering our use of the stairwell and house. We also submitted warranty service requests on that date with photo references, as much as was feasible.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of the stair railing system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

<center>94</center>

Prepared by:

Jeffrey Gu

jeffwgu@gmail.com
720-593-1548

95



**CERTIFIED MAIL®**

Jeffrey Gu
129 Oakstone
Irvine, CA 92618

9589 0710 5270 1112 1181 85

*Retail*



92618

RDC 99

U.S. POSTAGE PAID
FCM LETTER
IRVINE, CA 92602
APR 02, 2025

**$9.68**

S2324A502490-02

RETURN RECEIPT
REQUESTED

The New Home Company Inc.

NOTIFY SENDER OF NEW ADDRESS
: NEW HOME CO
18300 VON KARMAN AVE STE 1000
IRVINE CA 92612-0182

BC: 92612018250      *0408-00551-03-01

From: Di Lan Ge & Xian Feng Gu
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

4/2/25

Notice of SB 800 Claim – Unsafe Stair Railing System

To Whom This May Concern:

Pursuant to California Civil Code § 910, this letter constitutes a formal Notice of Claim regarding a defect in the construction of the stair railing system at 129 Oakstone, Irvine, CA 92618. We have observed the following with respect to the stair railing system:

- Loose wooden newel posts and iron balusters
- Noticeable flexing or movement when light force is applied

These conditions present a serious safety hazard, particularly for children, elderly individuals, or guests using the staircase. Due to these safety concerns, beginning on February 18, 2025, we began altering our use of the stairwell and house. We also submitted warranty service requests on that date with photo references, as much as was feasible.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of the stair railing system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

**97**

From: Di Lan Ge & Xian Feng Gu
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

4/3/25

### Notice of SB 800 Claim – Improper Workmanship in Shower Installations

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving 4 ~~two~~ separate showers, each of which fails to meet the minimum workmanship and functional standards required by California law and industry norms.

Exhibit 1: Master Bathroom Shower

The shower niche located in the master bathroom was constructed with visible workmanship and finish deficiencies, including:

- Uneven and excessive slope on the niche base, creating an unnatural surface angle that impairs functionality and suggests poor installation.
- Inconsistent tile alignment and spacing, including irregular grout lines.
- Lack of mitered joints at the lower corners of the niche, despite their use at the top, resulting in a visibly unbalanced and incomplete finish.

Moreover, there is wide variation in the width of the grout joints throughout the shower. We were also informed that the initial niche had the wrong tile backing and had to be demoed, which makes us question the integrity of the hot-mopped waterproofing system. A contractor also severely scratched the glass on 3/19 when performing work in the shower, creating a visible half foot scratch. Lastly, a sharp metal shard was left inside the grout of the shower pan. This deficiency requires no explanation.

Exhibit 2: Downstairs Shower

The second niche is located in the downstairs suite shower. It exhibits a lack of usability and functional design, including:

- Placement approximately 59 inches above the shower floor, which is uncomfortably high and outside the normal ergonomic reach zone for most users.
- An interior depth of only approximately 2.75 inches, which is insufficient for holding standard shower items like bottles or soap, rendering it effectively unusable.
- This installation fails to provide a functional bathing feature and appears to have been placed without regard for the intended use or accessibility of the space.

98

Moreover, there is wide variation in the width of the grout joints throughout the shower.

Exhibit 3: 2 showers with glass tile

The other 2 showers contain glass tile that was broken at some point during the build process. These 2 showers had these tiles replaced on 3/19. However, we have not been reassured at any point that the hot-mopped waterproofing layer was not compromised in the demolition of the old broken tiles.

These issues deviate from acceptable finish practices and are inconsistent with industry-standard tile installation guidelines. They also reflect poor aesthetic execution, functional impairment, and possibly life threatening conditions.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of these showers, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

99





Retail

FCM LETTER
IRVINE, CA 92619
APR 03, 2025



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®

92618

$9.68

Jeffrey Gu
129 Oakstone
Irvine, CA 92618

RDC 99

S2324M504433-5

9589 0710 5270 3001 4379 26



The New Home Company Inc.

NOTIFY SENDER OF NEW ADDRESS
NEW HOME CO
18500 VON KARMAN AVE STE 1000
IRVINE CA 92612-0182

92618-7714
92612>0182

BC: 92612018250     *0577-01051-03-42

100

From: Di Lan Ge & Xian Feng Gu
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

4/4/25

Notice of SB 800 Claim – Improper Workmanship in Shower Niche Installations

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving two separate shower niches, each of which fails to meet the minimum workmanship and functional standards required by California law and industry norms.

Defect 1: Master Bathroom Shower Niche

The shower niche located in the master bathroom was constructed with visible workmanship and finish deficiencies, including:

- Uneven and excessive slope on the niche base, creating an unnatural surface angle that impairs functionality and suggests poor installation.
- Inconsistent tile alignment and spacing, including irregular grout lines.
- Lack of mitered joints at the lower corners of the niche, despite their use at the top, resulting in a visibly unbalanced and incomplete finish.

Defect 2: Downstairs Shower Niche

The second niche is located in the downstairs suite shower. It exhibits a lack of usability and functional design, including:

- Placement approximately 59 inches above the shower floor, which is uncomfortably high and outside the normal ergonomic reach zone for most users.
- An interior depth of only approximately 2.75 inches, which is insufficient for holding standard shower items like bottles or soap, rendering it effectively unusable.
- This installation fails to provide a functional bathing feature and appears to have been placed without regard for the intended use or accessibility of the space.

These issues deviate from acceptable finish practices and are inconsistent with industry-standard tile installation guidelines. They also reflect poor aesthetic execution and functional impairment.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of these niches, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

From: Di Lan Ge & Xian Feng Gu                                                  4/7/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<div align="center">Notice of SB 800 Claim – Poor workmanship and materials in carpeting</div>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving the carpet installation and materials used throughout the residence at 129 Oakstone, Irvine, CA. The workmanship falls well below accepted industry standards, resulting in both safety hazards and diminished comfort.

There is general unevenness in the carpeting across multiple rooms, with inconsistencies in texture, tension, and alignment. Along baseboards and walls, the carpet is often poorly tucked, while transitions between rooms and thresholds are sloppily finished. One door threshold includes a visible carpet loop, and another exhibits a raised transition, creating a tripping hazard. The carpet installation on the stair treads is also of concern due to looseness that may contribute to slip and fall risks.

Compounding these issues is the use of the lowest quality carpet padding, which negatively impacts both comfort and durability. The current padding is excessively thin and hard, providing minimal cushion or support, and contributing to a noticeably substandard experience throughout the stairs and second floor.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of this system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

<div align="center">**103**</div>

From: Di Lan Ge & Xian Feng Gu                                    4/7/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<div align="center">Notice of SB 800 Claim – Defective HVAC System</div>

To Whom This May Concern:

Pursuant to California Civil Code § 910, this letter constitutes a formal Notice of Claim regarding a defect in the construction of the HVAC system at 129 Oakstone, Irvine, CA 92618.

The system does not currently correctly differentiate between the downstairs and upstairs zones. When the downstairs zone is cooling, for example, one can still feel air coming out of the vents upstairs. This leads us to believe there is something very wrong with the damping mechanisms and wiring.

We have also observed that the HVAC system produces excessive noise in the kitchen, particularly from the vent located near the refrigerator. Measured sound levels have ranged between 52–75 dBA, significantly above the thresholds commonly recommended by industry guidelines for residential comfort.

This condition presents a persistent nuisance and negatively impacts the habitability of the home, especially in a space generally associated with relaxation and daily use. Prolonged exposure to this level of noise pollution may have adverse health impacts, which heightens our concern. See addendum 1 for more information, it is attached for the record.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the formal inspection and repair of this system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

<div align="center">104</div>

Addendum 1

**Supporting Medical and Environmental Evidence**

The excessive noise emitted by the HVAC vent in the kitchen—measured between 52 and 75 dBA—exceeds recommended levels for healthy indoor environments. Chronic exposure to indoor noise within this range has been directly linked to increased risks of cardiovascular disease, elevated cortisol levels, and premature mortality. These findings are supported by the following peer-reviewed studies and public health guidelines:

• Babisch (2011) found that chronic noise exposure ≥55 dBA is associated with elevated risks of hypertension, myocardial infarction, and ischemic heart disease, due to sustained secretion of stress hormones like cortisol.

*Source*: Babisch, W. (2011). *Noise and Health*, 13(52), 201–209.

https://pubmed.ncbi.nlm.nih.gov/21537106

• The World Health Organization (2018) recommends indoor noise levels not exceed 45 dBA at night and 53 dBA during the day, citing strong evidence linking chronic exposure above these levels to increased stroke and heart disease risk.

*Source*: WHO Environmental Noise Guidelines for the European Region.

https://www.who.int/publications/i/item/9789289053563

• Münzel et al. (2018) report that environmental noise over 55 dBA activates the hypothalamic-pituitary-adrenal (HPA) axis, causing oxidative stress, vascular inflammation, and accelerated biological aging. They classify noise as an independent risk factor for cardiovascular mortality.

*Source*: Münzel, T. et al. (2018). *Journal of the American College of Cardiology*, 71(6), 688–697.

https://www.jacc.org/doi/10.1016/j.jacc.2017.12.015

• Basner et al. (2014) conclude that noise levels above 50 dBA impair sleep quality, increase cognitive fatigue, and induce stress responses, even more so in spaces associated with rest or daily use like kitchens and living rooms.

*Source*: Basner, M. et al. (2014). *The Lancet*, 383(9925), 1325–1332.

https://doi.org/10.1016/S0140-6736(13)61613-X

**105**

From: Di Lan Ge & Xian Feng Gu
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

4/7/25

Notice of SB 800 Claim – Misaligned Cabinetry, Plumbing Fixtures, and Door Hardware

To Whom This May Concern:

Pursuant to California Civil Code § 910, this letter constitutes a formal Notice of Claim regarding multiple construction defects observed at 129 Oakstone, Irvine, CA 92618, all of which fall within the scope of fit and finish workmanship obligations under California law.

**1. Misaligned Cabinetry**

The cabinetry throughout the house exhibits visible workmanship defects, including:

- Doors and drawers that are uneven or not level
- Cabinet faces that do not sit flush when closed
- Inconsistent reveals and visible skewing of cabinet boxes

**2. Misaligned Plumbing Fixtures**

Plumbing elements—including faucets and trim escutcheons—are visibly off-center, slanted, or not aligned squarely with surrounding tile or counter surfaces.

**3. Misaligned Door Knobs and Handles**

Many knobs and locks throughout the home are:

- Installed off-plumb or visibly tilted
- Escutcheon plates mounted askew relative to the door surface

106

These issues collectively degrade the finish quality of the home and fall below the standard of craftsmanship expected in new construction. Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of these matters, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

**107**

From: Di Lan Ge & Xian Feng Gu                                              4/7/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<div align="center">Notice of SB 800 Claim – Poor workmanship and materials in carpeting</div>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving
the carpet installation and materials used throughout the residence at 129 Oakstone, Irvine, CA.
The workmanship falls well below accepted industry standards, resulting in both safety hazards
and diminished comfort.

There is general unevenness in the carpeting across multiple rooms, with inconsistencies in
texture, tension, and alignment. Along baseboards and walls, the carpet is often poorly tucked,
while transitions between rooms and thresholds are sloppily finished. One door threshold
includes a visible carpet loop, and another exhibits a raised transition, creating a tripping
hazard. The carpet installation on the stair treads is also of concern due to looseness that may
contribute to slip and fall risks.

Compounding these issues is the use of the lowest quality carpet padding, which negatively
impacts both comfort and durability. The current padding is excessively thin and hard, providing
minimal cushion or support, and contributing to a noticeably substandard experience throughout
the stairs and second floor.

Please respond within the timeframes required by California Civil Code § 913 and arrange for
the inspection and repair of this system, and send your response to 129 Oakstone and/or email
to jeffwgu@gmail.com.

*Di Lan Ge*

Di Lan Ge, Owner

*Xian Feng Gu*

Xian Feng Gu, Owner

Prepared by:

*Jeffrey Gu*

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

<div align="center">**108**</div>

Jeffrey Gu
129 Oakstone
Irvine, CA 92618

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**®



9589 0710 5270 3001 4324 26

*Retail*



RDC 99

92618

U.S. POSTAGE PAID
FCM LETTER
IRVINE, CA 92602
APR 07, 2025

**$9.96**

S2324H503654-12

910 N7E 1     425C7204/11/25
NOTIFY SENDER OF NEW ADDRESS
:NEW HOME CO
18300 VON KARMAN AVE STE 1000
IRVINE CA 92612-0182

BC: 92612018250     *0952=00781=11=17

CA1: 93331100357210          FWD

92612>0182

109

From: Di Lan Ge & Xian Feng Gu
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

4/7/25

Notice of SB 800 Claim – Misaligned Cabinetry, Plumbing Fixtures, and Door Hardware

To Whom This May Concern:

Pursuant to California Civil Code § 910, this letter constitutes a formal Notice of Claim regarding multiple construction defects observed at 129 Oakstone, Irvine, CA 92618, all of which fall within the scope of fit and finish workmanship obligations under California law.

**1. Misaligned Cabinetry**

The cabinetry throughout the house exhibits visible workmanship defects, including:

- Doors and drawers that are uneven or not level
- Cabinet faces that do not sit flush when closed
- Inconsistent reveals and visible skewing of cabinet boxes

**2. Misaligned Plumbing Fixtures**

Plumbing elements—including faucets and trim escutcheons—are visibly off-center, slanted, or not aligned squarely with surrounding tile or counter surfaces.

**3. Misaligned Door Knobs and Handles**

Many knobs and locks throughout the home are:

- Installed off-plumb or visibly tilted
- Escutcheon plates mounted askew relative to the door surface

**110**

These issues collectively degrade the finish quality of the home and fall below the standard of craftsmanship expected in new construction. Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of these matters, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

**111**

From: Di Lan Ge & Xian Feng Gu                                                    4/14/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<p align="center">Notice of SB 800 Claim –Defects on Drywall</p>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving the drywall at 129 Oakstone, Irvine, CA 92618.

There are visible cracks at many corners of rooms, nails bulging out from the drywall, and edges near windows with large protrusions as well.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of this system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

<p align="center">**112**</p>

From: Di Lan Ge & Xian Feng Gu                                               4/14/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<div align="center">Notice of SB 800 Claim – Defects on glass fence</div>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving the glass fence at 129 Oakstone, Irvine, CA 92618.

There are visible, arching scratches on every panel, probably due to an improper cleaning of the glass, and the rubber gaskets visibly protrude from many pieces of the frame.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of this system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

**113**

From: Di Lan Ge & Xian Feng Gu                                                    4/14/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<center>Notice of SB 800 Claim – Defects in shower fan</center>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving the master shower fan at 129 Oakstone, Irvine, CA 92618.

The fan above the master shower is audibly very quiet and probably does not adhere to the CFM codes required for a shower installation and bathroom of this size.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of this system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

<center>**114**</center>

From: Di Lan Ge & Xian Feng Gu                                                         4/14/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<center>Notice of SB 800 Claim – Uneven shower floor</center>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving the master shower floor at 129 Oakstone, Irvine, CA 92618.

Though a slope is expected, the shower pan of the master shower feels uneven, peaking in certain areas when it should feel flat.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of this system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

<center>**115**</center>

From: Di Lan Ge & Xian Feng Gu                                                    4/14/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<p style="text-align:center">Notice of SB 800 Claim – Defective water softening system</p>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving the water softening system at 129 Oakstone, Irvine, CA 92618.

Since the delivery of the house, seemingly the water softening system was not operational due to a defective part in the brining bin: the fill valve was not assembled or it was broken. Unfortunately this has caused visible white scaling on the counters of the bathrooms across the home, and has likely caused premature clogging of certain pipes and the hot water heater.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of this system and the side effects caused, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

**116**

From: Di Lan Ge & Xian Feng Gu                                                4/21/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<div align="center">Notice of SB 800 Claim – Tile Defects</div>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving the tiling workmanship at 129 Oakstone, Irvine, CA 92618.

1. Master Bathroom Sink & Shower Area - Trapezoidal Tile Installation

The tiles installed behind the master bathroom sinks and shower niche exhibit multiple defects:

- Varying grout line widths.
- Mismatched intersections between tiles.
- Varying levels of flatness, resulting in uneven surfaces.
- In the case of the niche, an obviously chipped tile

2. Main Kitchen Area - Vertical Tiles Behind Stove and Counter

In the kitchen area, the vertical tiles behind the main stove and other countertop areas exhibit widely varying grout line widths, and do not even have a visible grout line in certain areas.

3. All bathrooms - Large Tiles and Decorative Tiles

In all the showers, the large tiles and decorative tiles exhibit varying grout line widths, levels of flatness, and misalignments. Moreover, the niches oftentimes have very wide grout lines, implying that they have tried to cover up fundamental mismeasurements in the tile with grouting.

4. Tile flooring

The tile flooring often exhibits the same as mentioned above, with mismatched corners and varying levels of flatness.

5. Use of caulk instead of grout

In response to a warranty request, the builder opted to use caulk instead of grout to fix up some cracks in the grout work. This is a non-permanent solution that also creates obvious visual differences and should've been remedied with the original installation material, grout.

These defects affect both the visual appeal and the overall craftsmanship of the installations. Please respond within the timeframes required by California Civil Code § 913 and arrange for

<div align="center">**117**</div>

the inspection and repair of these areas, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

**118**

From: Di Lan Ge & Xian Feng Gu                                          4/23/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<div align="center">Notice of SB 800 Claim – Tile Defects</div>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving the tiling workmanship at 129 Oakstone, Irvine, CA 92618.

1. Master Bathroom Sink & Shower Area - Trapezoidal Tile Installation

The trapezoidal tiles installed behind the master bathroom sinks and shower niche exhibit multiple defects:

- Varying grout line widths.
- Mismatched intersections between tiles.
- Varying levels of flatness, resulting in uneven surfaces.
- Grout on the tile surface
- In the case of the niche, an obviously chipped tile

2. All bathrooms - Large Tiles and Decorative Tiles

In all the showers, the large tiles and decorative tiles exhibit varying grout line widths, levels of flatness, and misalignments. Moreover, the niches oftentimes have very wide grout lines, implying that they have tried to cover up fundamental mismeasurements in the tile with grouting.

3. Tile flooring

The tile flooring often exhibits the same as mentioned above, with mismatched corners and varying levels of flatness.

4. Master Shower Pan

In response to a warranty request, the builder opted to use caulk instead of grout to fix up some cracks in the grout work. The caulk ended up being a very different color, so I requested grout instead. There is leftover residue from the caulk that makes the new grout work look discolored.

These defects affect both the visual appeal and the overall craftsmanship of the installations. Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of these areas, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

<div align="center">**119**</div>

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548




Jeffrey Gu
129 Oakstone
Irvine, CA 92618

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®** SANTA

9589 0710 5270 3001 4324 57

*Retail*



UNITED STATES
POSTAL SERVICE®


92618

**RDC 99**

U.S. POSTAGE PAID
FCM LETTER
IRVINE, CA 92602
APR 23, 2025

**$9.68**

S2324H503654-12

The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

910 NFE 1    425I0004/24/25
NOTIFY SENDER OF NEW ADDRESS
:NEW HOME CO
18300 VON KARMAN AVE STE 1000
IRVINE CA 92612-0182

BC: 92612018250    *0677-07037-23-39

92618-771450 INT
92612>0182

**121**

From: Di Lan Ge & Xian Feng Gu                                          5/5/25
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

### Notice of SB 800 Claim – Tile Defects

To Whom It May Concern,

Pursuant to California Civil Code § 910, we hereby provide formal notice of construction defects
involving the tiling workmanship at 129 Oakstone, Irvine, CA 92618. This notice is submitted in
accordance with the requirements under California's Right to Repair Act (SB 800), and we
request that the builder take appropriate action to address these issues.

1. Master Bathroom Sink & Shower Area - Trapezoidal Tile Installation

The trapezoidal tiles installed behind the master bathroom sinks and shower niche exhibit
multiple defects, including:

- Varying grout line widths
- Mismatched intersections between tiles
- Varying levels of flatness, resulting in uneven surfaces
- Grout residue on the tile surface
- A chipped tile in the niche area

2. All Bathrooms - Large Tiles and Decorative Tiles

In all of the showers, the large and decorative tiles exhibit the following defects:

- Varying grout line widths
- Misalignment between tiles
- Uneven flatness, resulting in visible surface issues

Additionally, the niches often have grout lines that are unusually wide, which suggests an
attempt to cover up fundamental mismeasurements in the tiles using excessive grout.

3. Tile Flooring

The tile flooring exhibits similar issues to those noted above, including:

- Mismatched corners
- Varying levels of flatness across tiles

4. Master Shower Pan

**122**

- In response to a previous warranty request, the builder chose to use caulk instead of grout to repair cracks in the grout work. The caulk used is a significantly different color from the grout, and upon my request, grout was subsequently applied. However, leftover residue from the caulk now causes discoloration in the newly applied grout.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of these areas, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

123



124

Jeffrey Gu
129 Oakstone
Irvine, CA 92618

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**

9589 0710 5270 1112 0881 36

*Retail*

RDC 99

U.S. POSTAGE PAID
FCM LETTER
IRVINE, CA 92602
MAY 05, 2025

92618

**$9.68**

S2324H503654-11

The New Home Company Inc
15231 Laguna Canyon Rd., Suite 250

910 NFE 1      4ZSI0005/06/25
NOTIFY SENDER OF NEW ADDRESS
:NEW HOME CO
18300 VON KARMAN AVE STE 1000
IRVINE CA 92612-0182

BC: 92612018250      *0477-03344-05-47

JK1: 9334310691824 8      92618-771450
                          92612>0182

From: Di Lan Ge & Xian Feng Gu                                    5/12/25
129 Oakstone
Irvine, CA 92618
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

<div align="center">Notice of SB 800 Claim – Gutter/downspout Defect</div>

To Whom This May Concern:

Pursuant to California Civil Code § 910, we are notifying you of construction defects involving the gutters at 129 Oakstone, Irvine, CA 92618.

The gutter/downspout installed at the front of the house, near the 5th bedroom, produces a loud, percussive sound when it rains. This noise disrupts the use and enjoyment of the bedroom, as it significantly impacts the quiet and livability of the room. The noise seems to be caused by the way the downspout is constructed or mounted, creating an audible disturbance that is clearly outside the expected performance standards for residential gutters.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of this system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

**125**

Jeffrey Gu
129 Oakstone
Irvine, CA 92618

9589 0710 5270 1112 0948 47

RETURN RECEIPT REQUESTED

9400 9228 5213 3170

Retail

U.S. POSTAGE PAID
FCM LETTER
IRVINE, CA 92602
MAY 12, 2025

UNITED STATES POSTAL SERVICE®

RDC 99

92618

$9.68
S2324P503419-33

NOTIFY SENDER OF NEW ADDRESS
NEW HOME CO
18300 VON KARMAN AVE STE 1000
IRVINE CA 92612-0182
BC: 92612018250        *0718-05161-13-00
925192612 01 82        INT
910 NFE 1     425T00005/13/25

126

Case 8:25-cv-02134-VBF-DSR    Document 152-1    Filed 07/13/26    Page 103 of 248
Page ID #:9742

# Exhibit 5

VIA CERTIFIED MAIL                                                    May 23, 2025

TO:

- The New Home Company Inc./TNHC Realty and Construction Inc. (TNHC)
  15231 Laguna Canyon Rd., Suite 250, Irvine, CA 92618
- PHLK LLP
  18100 Von Karman Ave., Suite 700, Irvine, CA 92612
- Bert L. Howe & Associates, Inc. (BHA)
  5415 La Palma Ave, Anaheim, CA 92807

## Litigation Hold Notice – Pending Legal Action Regarding Defective Construction and Related Misconduct

To All It May Concern:

This letter serves as formal notice that we are preparing to pursue legal action related to serious construction defects, failure to comply with statutory warranty obligations, and potential misconduct associated with the planning, design, sales, building, closing, warranty, and inspection of the home located at 129 Oakstone, Irvine, CA 92618.

Effective immediately, you are instructed to preserve and suspend deletion or alteration of any and all documents, communications, and electronically stored information (ESI) that may be relevant to this matter, which could include other properties and projects besides this one. This includes materials held by employees, consultants, contractors, and affiliated personnel operating under your direction.

## Materials Subject to Preservation

You are expected to preserve, without limitation:

- All communications between The New Home Company, PHLK LLP, BHA, and any affiliated parties concerning:
  - The planning, design, sales, building, closing, warranty, and inspection of the subject property or similarly situated homes
  - Warranty claims, service requests, homeowner complaints, or internal responses thereto
  - The use, selection, or involvement of third-party consultants or experts, including but not limited to BHA
- All reports, draft reports, photographs, field notes, assessments, inspection summaries, or related materials prepared by BHA or any third party, whether related to the subject property or other properties in the same development
- All internal and external correspondence regarding litigation strategy, risk evaluation, or handling of statutory warranty obligations
- All metadata, edit histories, revision logs, attachments, email backups, mobile device records, archived storage, or cloud-based files associated with the above categories

This hold applies to all digital and physical records, including emails, text messages, internal memoranda, cloud systems, and archived storage.

**128**

**Legal Notice and Obligations**

You are hereby placed on notice that failure to preserve relevant evidence may constitute spoliation, and may result in court-imposed sanctions, including adverse inference instructions, monetary sanctions, or evidentiary penalties.

We reserve all rights in connection with this matter.

Please confirm acknowledgment of this litigation hold in writing via mail or email within five (5) business days.

Sincerely,

Jeffrey Gu

jeffwgu@gmail.com

720-593-1548

129

# Exhibit 6

| | |
|---|---|
| **From:** | Carrie Hoffmann <Carrie.Hoffmann@iatinsurance.com> |
| **Sent:** | Thursday, June 12, 2025 9:03 AM |
| **To:** | Carie Howard |
| **Cc:** | Melanie Woodfin; Samuel Plante; Janelle Launi |
| **Subject:** | RE: Claim No.: 39498-2; Bond No.: CAHNSU0507551; Gu, Jeffrey v. TNHC Realty and Construction Inc. |
| **Attachments:** | [EXTERNAL] TNHC 0507551 Proof of Claim, Stair Railing |

 ⚠ External Message

Ms. Woodfin,

Please see attached for a new claim from Mr. Gu relating to the stair railing. Please provide me with the principal's response at your earliest convenience.

Thank you,

Carrie Hoffmann, Senior Bond Claims Specialist
IAT Surety
847 S. Randall Road, #402
Elgin, IL 60123
Phone 630-696-4478
Fax 973-623-8006
www.iatinsurance.com



  



**CONFIDENTIALITY STATEMENT**

**This e-mail, including attachments, is intended for the person(s) or company named and may contain confidential and/or legally privileged information. Unauthorized disclosure, copying or use of this information may be unlawful and is prohibited. If you are not the intended recipient or you have received this communication in error, please notify the sender immediately by telephone, return the original message to us by mail, and delete this message.**

 Think green - please don't unnecessarily print this e-mail.

**From:** Carrie Hoffmann
**Sent:** Monday, June 2, 2025 2:35 PM
**To:** Carie Howard <choward@phlklaw.com>
**Cc:** Melanie Woodfin <mwoodfin@phlklaw.com>; Samuel Plante <splante@phlklaw.com>; Janelle Launi <Jlauni@phlklaw.com>
**Subject:** RE: Claim No.: 39498-2; Bond No.: CAHNSU0507551; Gu, Jeffrey v. TNHC Realty and Construction Inc.

Ms. Woodfin,

Please see attached for additional information from Mr. Gu. Please provide me with the principal's reply to the proof of claim forwarded to you on May 29th at your earliest convenience.

Thank you,

Carrie Hoffmann, Senior Bond Claims Specialist
IAT Surety
847 S. Randall Road, #402
Elgin, IL 60123
Phone 630-696-4478
Fax 973-623-8006
www.iatinsurance.com



  



**CONFIDENTIALITY STATEMENT**

This e-mail, including attachments, is intended for the person(s) or company named and may contain confidential and/or legally privileged information. Unauthorized disclosure, copying or use of this information may be unlawful and is prohibited. If you are not the intended recipient or you have received this communication in error, please notify the sender immediately by telephone, return the original message to us by mail, and delete this message.

 Think green - please don't unnecessarily print this e-mail.

**From:** Carrie Hoffmann
**Sent:** Thursday, May 29, 2025 8:48 AM
**To:** Carie Howard <choward@phlklaw.com>
**Cc:** Melanie Woodfin <mwoodfin@phlklaw.com>; Samuel Plante <splante@phlklaw.com>; Janelle Launi <Jlauni@phlklaw.com>
**Subject:** RE: Claim No.: 39498-2; Bond No.: CAHNSU0507551; Gu, Jeffrey v. TNHC Realty and Construction Inc.

Ms. Woodfin,

2

**132**

Thank you for your quick reply. Attached please find additional documentation forwarded by Mr. Gu which seems to limit the claim to alleged defects in the glass fence system. Please review and advise.

Thank you,

Carrie Hoffmann, Senior Bond Claims Specialist
IAT Surety
847 S. Randall Road, #402
Elgin, IL 60123
Phone 630-696-4478
Fax 973-623-8006
www.iatinsurance.com



 



**CONFIDENTIALITY STATEMENT**

**This e-mail, including attachments, is intended for the person(s) or company named and may contain confidential and/or legally privileged information. Unauthorized disclosure, copying or use of this information may be unlawful and is prohibited. If you are not the intended recipient or you have received this communication in error, please notify the sender immediately by telephone, return the original message to us by mail, and delete this message.**

 **Think green - please don't unnecessarily print this e-mail.**

**From:** Carie Howard <choward@phlklaw.com>
**Sent:** Wednesday, May 28, 2025 4:06 PM
**To:** Carrie Hoffmann <Carrie.Hoffmann@iatinsurance.com>
**Cc:** Melanie Woodfin <mwoodfin@phlklaw.com>; Samuel Plante <splante@phlklaw.com>; Janelle Launi <Jlauni@phlklaw.com>
**Subject:** [EXTERNAL] Claim No.: 39498-2; Bond No.: CAHNSU0507551; Gu, Jeffrey v. TNHC Realty and Construction Inc.

CAUTION: This email originated from outside IAT. Do not click on links or open attachments unless you recognize the sender and confirm the content is safe.

Good afternoon,

With respect to the above-referenced matter, attached is attorney Melanie Woodfin's letter dated May 28, 2025.  U.S. Mail copy will follow.

Thank you.



**Carie Howard**
**Plante Huguenin Lebovic Kahn LLP**
18100 Von Karman Ave., Suite 700
Irvine, CA 92612
P – (949) 271-8700
F – (949) 627-2611
choward@phlklaw.com
www.phlklaw.com [phlklaw.com]

**PLEASE NOTE OUR NEW FIRM NAME AND EMAIL ADDRESS**

| | |
|---|---|
| **From:** | Jeffrey Gu <jeffwgu@gmail.com> |
| **Sent:** | Thursday, June 12, 2025 7:24 AM |
| **To:** | Carrie Hoffmann; IAT Surety Claims |
| **Cc:** | Kyle Murphy |
| **Subject:** | [EXTERNAL] TNHC 0507551 Proof of Claim, Stair Railing |
| **Attachments:** | May 22 Final Builder Response.pdf; Purchase Agreement.pdf; Harco Stair Railing Violations Supplement.pdf; Stair Railing Claim.pdf; railing measure 2.jpg; railing measure 1.jpg; Stairs SB800.pdf |

CAUTION: This email originated from outside IAT. Do not click on links or open attachments unless you recognize the sender and confirm the content is safe.

Hi Carrie,

I am submitting another bond complaint regarding another matter at 129 Oakstone.

Surety:        Harco National Insurance Company
Principal:     TNHC Realty and Construction
Bond No.:     CAHNSU0507551
Obligee:       California Contractors License Board
Claimant:      Jeffrey Gu

I have not included a notary this time because requiring it could be seen as a violation of CIC §790.03(h). Please acknowledge this submission within 2 business days.

-Jeffrey

Attachment video: https://drive.google.com/file/d/1J-UCWEmWpes4ESqpR9fmdEfQaruUiUT7/view?usp=sharing [drive.google.com]



18100 Von Karman Ave., Suite 700
Irvine, California 92612
p (949) 271-8700
f (949) 627-2611
www.phlklaw.com

Melanie S. Woodfin, Partner
mwoodfin@phlklaw.com

May 22, 2025

**VIA E-MAIL AND U.S. MAIL**

Jeffrey Gu
129 Oakstone
Irvine, CA 92618
jeffwgu@gmail.com

      Re:     ***Gu, Jeffrey v. The New Home Company***
              PHLK File No.:      0066-2818

Dear Mr. Gu:

As you know, Plante Huguenin Lebovic Kahn LLP represents The New Home Company, Inc. ("TNHC") in connection with Notices of Claim under Civil Code section 896, *et seq*. ("SB800") dated April 2, 2025 (2), April 3, 2025, April 4, 2025, April 7, 2025 (3), April 14, 2025 (5), April 21, 2025[1], and April 23, 2025[2] (collectively "Notices") served by you on behalf of yourself (Xian Fen Gu, also known as Jeffrey Gu) and Di Lan Ge as co-owners of the home located at 129 Oakstone, Irvine, CA 92618 in the Olivewood community (the "Property"). Pursuant to the foregoing representations, we have and will continue to address TNHC's responses to the Notices to your attention only. If that is not correct, please advise immediately. Please continue to direct all communication through our office.

TNHC has investigated the claims set forth in the Notices and has concluded that none of the issues identified in the Notices constitute building standard violations under SB800. Rather, the issues set forth in the Notices are, at most, fit and finish issues which are expressly excluded from SB800. As such, TNHC denies all claims identified in the Notices under SB800.

---

[1] The April 21, 2025 Notice was not properly served under Civil Code section 910. Accordingly, TNHC reserves all rights and defenses available as a result of the improper service.
[2] TNHC will respond to the Notices dated May 5, 2025 and May 12, 2025 under separate cover.

Irvine • Roseville • Phoenix • Denver • Las Vegas • Dallas • Seattle • Washington D.C.

**136**

**PH** PLANTE HUGUENIN
**LK** LEBOVIC KAHN LLP

However, in order to amicably resolve this matter, TNHC is willing to address many of the identified issues through customer service repairs as detailed below:

| Alleged Issue[3] | Courtesy Repair/Locations |
|---|---|
| Significant and uneven gaps (up to or exceeding % inch) between doors and their jambs | TNHC will repair where the gaps exceed standards set forth in the Limited Warranty. |
| Doors that do not sit flush against the stopper when closed | TNHC will address this issue. |
| Doors that creak excessively and have a noticeable trail of black powder on the hinges | TNHC will address this issue. |
| Miter joints in door casing and trim that exceed the industry-standard separation of 1/16 inch, with daylight visible through some joints | TNHC will perform door tune-ups where door jamb/head separations and/or casing separations in select locations where observed gaps exceed standards set forth in the Limited Warranty.<br><br>TNHC will also repair weather-stripping at the entry door. |
| Inconsistent workmanship, including misaligned, unlevel hardware and uneven reveals, affecting both function and aesthetics | TNHC will perform a base moulding tune-up in select locations where observed separations standards set forth in the Limited Warranty.<br><br>TNHC will also perform a wood trim tune-up in select locations where observed interior wood trim joint separations exceed standards set forth in the Limited Warranty. |
| Loose wooden newel posts and iron balusters | This condition was not observed during TNHC's investigation; however, TNHC will paint the |

---

[3] Please note that in listing the alleged issues we have used your exact wording; however, such listing shall not be interpreted to mean that TNHC agrees with the descriptions and/or characterizations in any way. To the contrary, TNHC disagrees with such descriptions and/or characterizations.

**137**



| Alleged Issue[3] | Courtesy Repair/Locations |
|---|---|
| | unfinished paint application on the guardrail post. |
| Lack of mitered joints at the lower corners of the niche, despite their use at the top, resulting in a visibly unbalanced and incomplete finish. | TNHC will address this issue at select locations where observed. |
| We have also observed that the HVAC system produces excessive noise in the kitchen, particularly from the vent located near the refrigerator. Measured sound levels have ranged between 52-75 dBA, significantly above the thresholds commonly recommended by industry guidelines for residential comfort. This condition presents a persistent nuisance and negatively impacts the habitability of the home, especially in a space generally associated with relaxation and daily use: Prolonged exposure to this level of noise pollution may have adverse health impacts, which heightens our concern. See addendum 1 for more information, it is attached for the record. | TNHC will further investigate the noise levels. |
| Doors and drawers that are uneven or not level | TNHC will address this issue at select locations where observed. |
| Cabinet faces that do not sit flush when closed | TNHC will address this issue at select locations where observed. |
| Inconsistent reveals and visible skewing of cabinet boxes | TNHC will address one cabinet separation observed in bath 3. |
| There is general unevenness in the carpeting across multiple rooms, with inconsistencies in texture, tension, and alignment. Along baseboards and walls, the carpet is often poorly tucked, while transitions between rooms and thresholds are sloppily finished. One door threshold includes a visible carpet loop, and another exhibits a raised transition, creating a tripping hazard. The carpet installation on the stair treads is also of concern due to | TNHC will address this issue at select locations where observed. |

**PLANTE HUGUENIN LEBOVIC KAHN LLP**

| Alleged Issue[3] | Courtesy Repair/Locations |
|---|---|
| looseness that may  contribute to slip and fall risks. | |
| Varying grout line widths. | TNHC will address this issue at select locations where observed. |
| Mismatched intersections between tiles. | TNHC will address this issue at select locations where observed. |
| Varying levels of flatness, resulting in uneven surfaces. | TNHC will address this issue at select locations where observed. |
| In the case of the niche, an obviously chipped tile | TNHC will address this issue at select locations where observed. |
| In response to a warranty request, the builder opted to use caulk instead of grout to fix up some  cracks in the grout work. This is a non-permanent solution that also creates obvious visual differences and should've been remedied with the original installation material, grout. | TNHC will address this issue at select locations where observed. |
| Countertops Granite - Backsplash / sidesplash separation | TNHC will address a backsplash separation at the master bath, bath 2, and bath 3. |
| Drywall - Blemishes - Cornerbead cracks, drywall cracks and nail pops | TNHC will perform a drywall finish tune-up to address cornerbead separation in select locations where observed condition deviates from standards set forth in the Limited Warranty. |

The courtesy repairs will be coordinated through my office at mutually convenient times and dates.  Please provide your availability and confirm that you will provide access for these repairs.

TNHC reserves all defenses, and any and all rights it has to enforce any other applicable pre-litigation and/or dispute resolution procedures contained in the relevant contracts and governing documents.

\*      \*      \*

**139**

**PH** PLANTE HUGUENIN
**LK** LEBOVIC KAHN LLP

Should you wish to discuss this matter further, please feel free to contact me.

Sincerely,

Melanie S. Woodfin

SCP

cc:     Sam C. Plante, Esq.
        Janelle Launi, Paralegal

**140**

# OLIVEWOOD

## PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

THIS DOCUMENT CREATES SIGNIFICANT LEGAL OBLIGATIONS IF IT IS ACCEPTED BY SELLER AS DESCRIBED BELOW. **PLEASE READ IT CAREFULLY**.

| | |
|---|---|
| Lot No. 0088  Plan/ Elevation No. 2 B | |
| Tract No./Name     19176 | |
| Purchase Price: $3,699,990 | |
| Prequalifying Lender: US Bank | |
| Loan Amount: $2,404,993 | |
| Final Date for Loan Approval: 1/26/2024 | |
| Estimated Closing Date: Jun,2024 (This is an estimated date only – see Paragraph 3(d) of General Provisions) | |
| Options Cutoff Date(s): **SEE OPTION CUTOFF SCHEDULE** | |
| Title Company: **FIDELITY NATIONAL TITLE** | |

TO:    The Escrow Specialists Inc (**"Escrow Holder"**)
2 Corporate Park, Suite 210
Irvine, CA  92606
Tel: (949)  261-6222

Escrow Number: _____
Escrow Officer:  Starling Rich
Date of Opening of Escrow: _____, ____

This Purchase Agreement and Escrow Instructions (**"Agreement"**) is made between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), and the individual(s) identified below as "Buyer" (**"Buyer"**).  Buyer and Seller may hereinafter collectively be called the **"Parties."**  Buyer agrees to buy the **"Property"** described below including the residence to be constructed thereon (**"Residence"**), and Seller, upon "Acceptance" (as defined below) of this Agreement by its duly authorized representative, agrees to sell the Property to Buyer, on the terms and conditions set forth below in the **Basic Provisions** and **General Provisions,** any **Addenda** attached hereto and the "Limited Warranty**"** defined below (collectively **"Sales Terms"**), all of which are incorporated herein by this reference.  All references herein to this **"Agreement"** include the Sales Terms, and the Parties hereby agree to be bound by same.

## BASIC PROVISIONS

**PROPERTY DESCRIPTION:**  Real property located at 129 Oakstone, in the City of Irvine, State of California (**"Property"**).  The Property is more fully described as Lot 0088 of Tract No. 19176 as shown on the Subdivision Map recorded in Book 1000, Pages 27 through 37, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County (**"County"**), California.

**PROJECT:**  The Property is located in the Olivewood residential development (**"Project"**) and the Portola Springs master planned residential community (**"Community"**).

**RESTRICTIONS:**  The Property is subject to the Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs (**"Declaration"**).

**HOMEOWNERS ASSOCIATION(S):**  The Property is subject to the Portola Springs Community Association, the homeowners association for the Community (**"Association"**)

**PURCHASE PRICE:**  The "**Purchase Price"** and **"Estimated Closing Costs"** for the Property and the timing for the payment of the same are set forth below.  Where estimates are indicated, the exact amounts will be determined before the "Close of Escrow" (as defined below in Paragraph 3(d)) in accordance with the terms of this Agreement.  All checks shall be made payable, at Seller's request, to either Escrow Holder or Seller.

| | | |
|---|---|---|
| (A) | Base Price | $3,585,775 |
| (B) | Option Items | $114,215 |
| (C) | Purchase Price (A + B) | $3,699,990 |
| (D) | Loan Amount (if applicable) | $2,404,993 |
| (E) | The **"Deposit"** of $$75,000.00 received on received on 1/9/2024 (Check/wire# ) (includes first deposit and if applicable, the "Second Deposit" defined in the Second Deposit Addendum) | $75,000. |
| (F) | Down Payment at Close of Escrow (Total Purchase Price less Deposit and Loan Amount) | $1,219,997 |
| (G) | **Estimated** nonrecurring Closing Costs including title policy, tax service, notary fees, recording costs and **"Third Party Charges"** of $9,000.00_ for escrow fees, credit report, appraisal fees, loan origination and processing fees and title report | $10,000.00 |
| (H) | **Estimated** recurring Closing Costs such as **"Association Assessments"** ( RANGE $166.80 - $180.00) per month depending on the phase of development in which the Property is located), property tax and assessment prorations, interest prorations, insurance premiums and impounds | $10,000.00 |
| (I) | Total **estimated** cash due before Close of Escrow (E + F + G + H) (to be paid in the form of wire transfer through a California institution) | $1,314,997 |

Execution of this Agreement by Buyer and Seller's sales agent (**"Home Counselor"**) is only an offer to purchase by Buyer. Execution of this Agreement by Seller's Home Counselor and/or delivery of Buyer's funds to Seller or "Escrow" (as defined below in

*Seller's Initials*

*Buyer's Initials*

Paragraph 3(a)) do not make this Agreement binding on Seller. This Agreement shall not be binding on Seller unless, within ten (10) days after the date Buyer signs this Agreement, Seller, in its sole discretion, delivers to Buyer a copy of this Agreement, executed by an individual authorized to accept this Agreement on behalf of Seller ("*Acceptance*"). The date on which an individual authorized to accept this Agreement on behalf of Seller ("*Authorized Individual*") signs the Agreement shall be the "*Acceptance Date*". Neither Seller nor any Home Counselor has provided any assurances that Buyer's offer will be accepted by Seller. If, for any reason, Acceptance does not occur, Seller shall be deemed to have rejected Buyer's offer, this Agreement shall not become effective and all funds Buyer deposited with Seller shall be promptly refunded to Buyer. Seller may hold Buyer's deposit check uncashed until Acceptance. Buyer hereby authorizes Seller to hold Buyer's deposit check until Seller accepts this Agreement and Escrow is opened. Notwithstanding anything to the contrary herein, Acceptance shall be deemed not to occur if Buyer's deposit check is returned for non-sufficient funds or Buyer has stopped payment on the deposit check, in which event this Agreement shall automatically terminate without any further action by the parties; however, if requested by Seller, Buyer shall be required to execute a termination of purchase agreement and Escrow cancellation instructions prepared by Seller or Escrow Holder. Upon Acceptance, this Agreement will constitute the sole contract between the Parties regarding the purchase of the Property. There are no collateral understandings, representations or agreements, oral or written, other than those contained in this Agreement.

**WAIVER OF RIGHT TO JURY TRIAL. NOTICE: THIS AGREEMENT REQUIRES THAT BUYER WAIVE ITS RIGHT TO A JURY TRIAL IN THE EVENT OF A DISPUTE WITH SELLER, INCLUDING WITHOUT LIMITATION CONSTRUCTION DEFECT DISPUTES.**

**DOCUSIGN. BUYER ACKNOWLEDGES AND AGREES THAT ALL DOCUMENTS PROVIDED BY SELLER IN CONNECTION WITH THE PURCHASE OF THE PROPERTY WHICH ARE EXECUTED BY BUYER THROUGH DOCUSIGN AND ALL ELECTRONIC SIGNATURES TO SUCH DOCUMENTS SHALL BE DEEMED ORIGINALS AND BINDING UPON THE PARTIES THERETO. SUCH DOCUMENTS ARE LENGTHY AND CREATE SUBSTANTIAL LEGAL OBLIGATIONS ON BUYER'S PART. THEREFORE, BUYER SHOULD DOWNLOAD THE DOCUMENTS TO BUYER'S COMPUTER AND/OR PRINT COPIES AND REVIEW SAME CAREFULLY BEFORE SIGNING THROUGH DOCUSIGN.**

---

**BUYER CERTIFICATIONS**

Buyer acknowledges, agrees and certifies the following:

1. No Home Counselor, employee, agent, or broker of Seller has the authority to (a) make any promises, assurances, agreements, representations or warranties to Buyer which contradicts any matters set forth in this Agreement, (b) modify the terms of this Agreement or (c) make any agreements, representations or promises on behalf of Seller.

2. In executing this Agreement Buyer is not relying on any promise, assurance, agreement, representation or warranty not contained in this Agreement.

3. Any promises, assurances, agreements, representations or warranties by Seller must be in writing and signed by an Authorized Individual.

4. Although Buyer has had, and in the future may have, conversations with Home Counselors or other agents of Seller, no promises, assurances, agreements, representations or warranties of Home Counselors or other agents shall be binding upon Seller unless in writing executed by Buyer and an Authorized Individual and attached and made a part of this Agreement.

5. Prior to deciding to purchase the Property Buyer has considered all provisions of this Agreement and the impact of same on Buyer.

6. Written disclosures provided to Buyer do not relieve or alter Buyer's responsibility (subject to entry and other limitations imposed by Seller) to, among others: (a) diligently perform Buyer's investigation of the Property, Project and Community and the area surrounding same; (b) review the Declaration and all other Association documents; (c) review the recorded tract map for the Project and conditions of approval associated therewith; and (d) inspect the Property, Project and Community to satisfy Buyer as to the condition, safety and fitness of the Property, Project and Community for Buyer's intended use.

7. Buyer has read and considered all provisions of this Agreement.

---

*Seller's Initials*



*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024                    **142**

*[SIGNATURE PAGE TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS]*

**BUYER:**

Di Lan Ge
First    Middle        Last Name

746 Country Club Ln

Fond du Lac WI 54935
Address

(920) 251-6478
Cell Phone                    Home Phone

Preferred E-Mail Address dilange8888@gmail.com

Executed by Buyer on  1/9/2024 | 7:52:26 PM PST.

B16A6EB85D7241D...
Buyer's signature

**BUYER:**

Xian Feng Gu
First    Middle        Last Name

746 Country Club Ln

Fond du Lac WI 54935
Address

(920) 539-5919
Cell Phone                    Home Phone

Preferred E-Mail Address xianfenggu888@gmail.com

Executed by Buyer on  1/9/2024 | 8:16:16 PM PST

7857A1A840134BD...
Buyer's signature

**BUYER:**

First    Middle        Last Name

Address

Cell Phone                    Home Phone

Preferred E-Mail Address

Executed by Buyer on

Buyer's signature

**BUYER:**

First    Middle        Last Name

Address

Cell Phone                    Home Phone

Preferred E-Mail Address

Executed by Buyer on

Buyer's signature

Seller or Home Counselor must be notified by Buyer of any change in Buyer's contact information.

[Manner in which title to vest]
TBD

(Note: The manner of taking title may have significant legal and tax consequences.  Buyer should consult with a professional regarding such c consent to any such change (including without limitation any trusts, limited liability companies or other entities which Buyer may have a controlling interest).)

*Seller' s Initials*

*Buyer' s Initials*

HLO\ Olivewood\ v.1 1/9/2024                    **143**

Home Counselor

By: *Dave Christensen*
(Home Counselor)

Date:  1/9/2024 | 3:12:36 PM PST

Sales Office Phone: (951) 382-0477

Accepted by Seller on  1/11/2024 | 3:52:34 PM PST
(*"Acceptance Date"*).

THE NEW HOME COMPANY SOUTHERN CALIFORNIA
LLC, a Delaware limited liability company

By:

Print Name: Michael Battaglia

Title: Authorized Agent

*"Seller"*

Address:

The New Home Company
15231 Laguna Canyon Road #250
Irvine, CA  92618
Tel.:  (949) 382-7800

**Seller's Initials**

**Buyer's Initials**

HLO\ Olivewood\ v.1 1/9/2024

-4-
**144**

## GENERAL PROVISIONS

1.  **Purchase Price Payment Terms**.

     (a)  **Payment Method Election.**  Buyer may elect to pay the Purchase Price in cash or with proceeds of a third-party loan (**"Loan"**) as provided in this Agreement.  Buyer's election shall be confirmed by an addendum to this Agreement ("**Financing Addendum**") which shall be executed by Buyer and Seller concurrently upon execution of this Agreement.  Once Buyer has made this election, Buyer may not change the election if to do so would, in Seller's sole judgment, interfere in any way with Buyer's or Seller's performance of their obligations under this Agreement, including without limitation delay the Close of Escrow.

     (b)  **Payment for Options.**  Concurrently upon execution of this Agreement, the Parties shall complete and execute a Design Studio Selections Addendum in the form required by Seller ("**Options Addendum**") to select options or extras which are not included in the Base Price (**"Options"**).  As a condition to beginning work on certain Option items, Seller may require Buyer to deliver to Escrow or Seller (as determined by Seller in its sole discretion) the cost of such Options, provided that to the extent that the cost of such Options is funded under the Loan, Buyer shall receive a credit through Escrow for Option costs funded by the Loan.  Seller has provided no assurances that the Loan provider will agree to cover all Option costs in the Loan.  The cost of Options must be included in the total Purchase Price, whether such Options will be financed or paid by cash, and the cost of the Options will be used in determining any reassessment of the Property for real property tax purposes.

     (c)  **Time and Manner of Payment.**  BUYER SHALL DEPOSIT INTO ESCROW ALL SUMS REQUIRED OF BUYER TO CLOSE ESCROW (OTHER THAN ANY PORTION OF THE PURCHASE PRICE OBTAINED THROUGH THE LOAN) NOT LATER THAN TWO (2) CALENDAR DAYS AFTER RECEIPT OF SELLER'S REQUEST FOR SAME.  ALL OF BUYER'S FUNDS REQUIRED UNDER THIS AGREEMENT WILL BE PAID BY CERTIFIED CHECK OR WIRE TRANSFER PAID THROUGH A CALIFORNIA INSTITUTION UNLESS EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT OR THE FINANCING ADDENDUM.  ALL OPTIONAL ITEMS MUST BE ORDERED WITHIN THE TIME PERIODS SPECIFIED BY SELLER. NO OPTIONS MAY BE ORDERED DURING THE SIXTY (60) DAY PERIOD PRIOR TO THE ESTIMATED CLOSING DATE.

     (d)  **Release of Deposit**.  Notwithstanding the foregoing, upon issuance of a Final Subdivision Public Report covering the Property from the California Department of Real Estate (previously known as the California Bureau of Real Estate) (**"DRE"**) and provided that Seller has posted a bond or other security in a form and amount acceptable to the DRE, (i) Escrow Holder shall, upon Seller's request, release any of Buyer's deposits to Seller which have been deposited into Escrow, without further Escrow instructions from Buyer or Seller, and/or (ii)  Seller may, as determined by Seller in its sole discretion and without Buyer's approval, retain any of Buyer's deposits without delivery of such deposits to Escrow.

2.  **Financing**.

     (a)  **Loan Application.**  If prequalification is required by Seller, prior to executing this Agreement Buyer shall have submitted all documentation necessary to prequalify with the **"Prequalifying Lender"** specified on Page 1 to enable Seller to determine if Buyer is financially capable of purchasing the Property (although such prequalification shall not constitute financing or Loan Approval nor shall Buyer be obligated to use the Prequalifying Lender to obtain a Loan in connection with the purchase of the Property).  Buyer shall authorize the Prequalifying Lender to release to Seller all information relating to Buyer's Loan application and credit report, including the status of the review and approval of Buyer's Loan application on an ongoing basis. Seller will pay all costs of  the Prequalifying Lender but only in connection with Buyer's prequalification.  If Buyer's Financing Addendum includes an election to pay a portion of the Purchase Price with Loan proceeds, Buyer acknowledges and agrees that Buyer will be obligated to pay all costs charged by any institutional lender or lenders (as applicable, the **"Lender"**), including costs of the Prequalifying Lender with respect to the Loan if it provides the Loan to Buyer.  BUYER ACKNOWLEDGES THAT SELLER IS RELYING ON THIS REPRESENTATION AND WARRANTY IN ACCEPTING THIS AGREEMENT AND INCURRING EXPENSES IN CONNECTION WITH THE SALE OF THE PROPERTY AND SELLER'S COMPLETION OF THE CONSTRUCTION AND DEVELOPMENT OF THE PROPERTY.

     (b)  **Buyer Acknowledgments Regarding Loan**.  BUYER IS SOLELY RESPONSIBLE FOR OBTAINING ANY LOAN NECESSARY TO PURCHASE THE PROPERTY, AND NO REPRESENTATION, WARRANTY OR ASSURANCE HAS BEEN GIVEN BY SELLER OR ITS AGENTS OR REPRESENTATIVES THAT BUYER WILL QUALIFY FOR A LOAN.  ANY INTEREST RATE OR OTHER FINANCING INFORMATION PROVIDED TO BUYER BY SELLER, PREQUALIFYING LENDER AND/OR ANY LENDER IS AN ESTIMATE ONLY AND BUYER AGREES THE ACTUAL INTEREST RATE AND LOAN TERMS MAY BE DIFFERENT. THEREFORE (I) SELLER HAS PROVIDED NO REPRESENTATION, WARRANTY OR ASSURANCE THAT THE INTEREST RATE PREVAILING AT THE CLOSE OF ESCROW WILL BE ANY RATE QUOTED EARLIER TO BUYER AND (II) BUYER'S OBLIGATION TO PURCHASE THE PROPERTY IS NOT CONTINGENT UPON BUYER'S ABILITY TO RETAIN THE INTEREST RATE QUOTED AT THE TIME OF LOAN APPROVAL AND BUYER WILL BE REQUIRED TO PAY THE INTEREST RATE CHARGED BY THE LENDER AT THE CLOSE OF ESCROW. ALL FINANCING AND THE TERMS AND CONDITIONS THEREOF, INCLUDING WITHOUT LIMITATION IMPOUND PAYMENTS AND INTEREST RATE, ARE A MATTER OF CONCERN SOLELY BETWEEN BUYER AND THE LENDER AND SHALL NOT IN ANY WAY AFFECT THE RIGHTS OR OBLIGATIONS OF SELLER OR BUYER UNDER THIS AGREEMENT.

     (c)  **Loan Approval.** No later than the **"Final Date for Loan Approval"** specified on Page 1, Buyer shall deposit or cause to be deposited with Seller and Escrow Holder written verification (**"Loan Verification"**) for Buyer from Buyer's Lender of the Lender's Loan approval which shall be subject only to conditions that are acceptable to Seller in its sole discretion for the full Loan Amount to be financed as set forth in the Basic Provisions, or if the Purchase Price increases as a result of Options ordered, then the Loan Amount plus the cost of such Options (**"Loan Approval"**).  The Loan Verification shall include a statement that Buyer is an acceptable borrower of the Loan Amount pursuant to the Lender's normal lending policies and ratios, based only upon (i) Buyer's completed credit report, and (ii) as of the date of the Loan Verification, the Lender's verification of Buyer's income and of the existence on deposit solely in Buyer's name and ready availability to Buyer of the balance of the Purchase Price (less the Loan Amount) prior to the Close of Escrow.  The Final Date for Loan Approval cannot be extended without Seller's express written

**Seller's Initials** _____

**Buyer's Initials** _____

approval, which approval Seller may withhold in its sole discretion. The requirements of this Paragraph shall not be deemed satisfied if the written verification of Loan Approval deposited into Escrow is conditional or includes terms or conditions which are inconsistent with this Agreement. Federal law requires any Lender which approves Buyer for a Loan to provide Buyer with a closing disclosure ("*Closing Disclosure*") no later than three (3) business days prior to the consummation of the Loan, during which time Buyer shall have the right to review the Closing Disclosure and elect to terminate the Loan application. Buyer acknowledges and agrees that if Buyer elects to terminate its Loan application under federal law, Buyer shall not be released from its obligations under this Agreement, including its obligation to close Escrow on the Closing Date and the Closing Date shall not be extended as a result of such termination. Buyer hereby authorizes any Lender with which Buyer applies for a loan to provide to Seller a full copy of the Closing Disclosure delivered by such Lender to Buyer.

(d) **Obligations Regarding Use of Lender; Credit Worthiness.** If Buyer elects to obtain a Loan from a Lender other than the Prequalifying Lender, Buyer shall (i) within five (5) days after request by Seller, execute and deliver to Seller a written authorization, in a form to be determined by Seller in its sole discretion, which identifies such Lender and authorizes Seller to grant such Lender access to information in Buyer's Escrow for the purpose of obtaining the Loan and (ii) promptly provide written authorization for such Lender and any and all other Lenders, without further instructions from Buyer, to (1) copy Seller on all correspondences between Lender and Buyer; (2) provide Seller with copies of all credit, loan and other applications and other documentation and information of any kind submitted by Buyer to Lender and all documentation, including without limitation loan approvals and rejections, provided by Lender to Buyer; and (3) immediately provide any other information requested by Seller in writing or, at Seller's election, orally, in person or by phone. In addition, Buyer shall (i) cause Lender to deliver to Seller weekly written status reports concerning the Loan, (ii) within five (5) days prior to the Close of Escrow, cause Lender to deliver to Escrow Holder and Seller, as applicable, all loan documents required to close Escrow, and (iii) arrange with Lender to fund the Loan proceeds and provide for the recordation of all appropriate documents on or prior to the Closing Date. In addition, Buyer shall also have the obligation to maintain all sources of income and Buyer's credit worthiness, including without limitation (A) not taking any action (including incurring significant debt) which would prevent Buyer from qualifying for the Loan or any other financing or cause the cancellation of the Loan Approval or adversely affect Buyer's credit and/or ability to purchase the Property and (B) using Buyer's best efforts to comply with the requirements of Lender and the terms of the Loan Approval. The Lender selected by Buyer must use an Escrow Holder which is either selected by Seller or selected by Buyer and approved by Seller.

(e) **Failure to Obtain.** If Buyer does not act in good faith as determined by Seller or otherwise fails to comply with any of the requirements of this Paragraph 2 strictly within the time frames set forth herein, including without limitation (i) voluntarily undertaking any act for the purpose of preventing a Lender from approving the Loan or any other financing required to consummate the purchase of the Property, (ii) requesting that a Lender not approve the Loan, (iii) making a material misrepresentation which results in the failure of a Lender to approve the Loan or (iv) failing to properly execute all documents and take all actions required by a Lender to approve and fund the Loan, Buyer shall be in default under this Agreement and Seller may cancel Escrow, terminate this Agreement and proceed in accordance with Paragraph 8. If for reasons beyond the control of Buyer: (1) Buyer is unable to obtain Loan Approval by the Final Date for Loan Approval or (2) the Loan Approval does not comply fully and specifically with the requirements set forth in this Paragraph and is disapproved by Seller in its sole discretion, this Agreement shall terminate and Buyer's Deposit shall be refunded to Buyer. If after obtaining Loan Approval the Loan Approval expires or is withdrawn for any reason, Buyer shall not be released from its obligations under this Agreement nor shall the Closing Date be extended.

(f) **Substitute Loan.** Once Buyer has deposited the Loan Approval into Escrow, Buyer may not apply for or obtain any modified, additional or new Loan Approval from any Lender or other source ("*Substitute Loan*") if the application for or the funding of the Substitute Loan would, in Seller's sole judgment, interfere in any way with Buyer's or Seller's performance of their obligations under this Agreement, including without limitation delay the Close of Escrow. Buyer's application for or obtaining any Substitute Loan shall not extend the Closing Date, shall be deemed a Buyer default hereunder and shall entitle Seller to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8. If Buyer is authorized in writing by Seller, in its sole discretion, to apply for and obtain a Substitute Loan but Buyer does not qualify for such Substitute Loan, the Close of Escrow shall not be delayed and Buyer must purchase the Property and close Escrow using the original Loan Approval or cash.

(g) **Accuracy of Information.** Buyer represents and warrants to Seller that all information Buyer provides Seller, Escrow Holder, the Prequalifying Lender and the Lender, whether orally or in writing, shall be completely accurate, true and correct when given and at all later dates. If any such information proves to be inaccurate in any material respect, Seller, at its option, may terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.

(h) **Appraisal**. Seller has provided no representations, warranties or assurances that the Purchase Price of the Property will equal or exceed the appraised value of the Property (including optional items), including the appraised value determined by an appraisal required by Buyer's Lender ("*Lender Appraisal*"). If Buyer (i) obtains a Loan, (ii) does not select any optional items and (iii) (A) the appraised value of the Property at the Close of Escrow, as specified in the Lender Appraisal ("*Appraised Value*") is less than the Purchase Price and (B) Buyer, in its sole discretion, does not agree in writing with Seller within five (5) days after receipt of the final Lender Appraisal (which shall be deemed final if Seller does not dispute the Lender Appraisal or if Seller disputes the Lender Appraisal in Seller's discretion, following Seller's reasonable opportunity to dispute the Lender Appraisal) to increase Buyer's cash down payment to cover the difference between the Appraised Value and the Purchase Price, then Seller, in its sole discretion, will (1) reduce the Purchase Price to the Appraised Value or (2) terminate this Agreement and, subject to Paragraph 7(b), all funds deposited by Buyer in Escrow or delivered to Seller by Buyer shall be released to Buyer. If Buyer elects to purchase any optional items from Seller (the price of such Property with optional items purchased, the "*Upgraded Purchase Price*") and the Appraised Value is greater than the base Purchase Price (Purchase Price without optional items) (the "*Base Price*"), but less than the Upgraded Purchase Price, then Buyer shall pay in cash the difference between the Appraised Value and the Upgraded Purchase Price ("*Cash Difference*") in accordance with Paragraph 1(c) of this Agreement. Buyer's failure to pay the Cash Difference shall constitute a default under this Agreement by Buyer, entitling Seller to its remedies under Paragraph 8. Buyer shall be solely responsible for keeping track of the optional items purchased by Buyer and the amount of the Cash Difference to be paid by Buyer in accordance with this Agreement. For the avoidance of doubt, if Buyer pays all cash for the Property (no Loan), the foregoing provisions of this Paragraph shall not apply and Buyer agrees that (A) there shall be no appraisal of the Property and (B) the Upgraded Purchase Price shall be the agreed value of the Property. In addition, regardless of whether Buyer is paying all cash or obtaining a Loan in connection with the purchase of the Property, under no circumstances shall Buyer be entitled to request or require (I) that any third party appraisal (other than the Lender Appraisal) be used in connection with this Agreement and/or the purchase of the Property and/or (II) any change in the Lender Appraisal or a new Lender Appraisal.

**Seller's Initials**

**Buyer's Initials**

HLO\ Olivewood\ v.1 1/9/2024                                    -6-

3.  **Escrow.**

(a)  **Opening of Escrow.**  On or promptly after the Acceptance Date, Seller shall open escrow (**"Escrow"**) by depositing an executed copy of this Agreement and Buyer's Deposit with either Escrow Holder or Seller, as determined by Seller in its sole discretion.  Escrow Holder shall deliver a copy of the fully executed Agreement to Buyer upon opening of Escrow.

(b)  **Escrow Instructions.**  The Basic Provisions of this Agreement, together with Paragraphs 1 through 8 of these General Provisions and Escrow Holder's General Escrow Instructions, constitute the Parties' instructions to Escrow Holder.  Escrow Holder is not responsible for any other parts of this Agreement.  Provisions regarding an award of attorneys' fees and similar costs in the General Escrow Instructions or any other Escrow instructions shall apply only to disputes between Escrow Holder and the Parties, and not to disputes between the Parties themselves.  If there is any conflict between this Agreement and Escrow Holder's General Escrow Instructions or other Escrow instructions, the provisions of this Agreement shall control.

(c)  **Third Party Charges.**  Without Buyer's approval, (i) Escrow Holder, at the request of Seller, may disburse the **"Third Party Charges"** (as estimated in the Basic Provisions) from funds deposited into Escrow by Buyer, or (ii) Seller may disburse the Third Party Charges from funds delivered to Seller by Buyer.

(d)  **Close of Escrow**.  Unless earlier terminated as provided herein, Escrow shall close on the date (**"Closing Date"**) specified on a "Closing Notice" delivered by Seller to Buyer stating that Seller has determined that the Property is ready for occupancy and Escrow shall close on the Closing Date, provided such Closing Date shall be no less than five (5) business days after the date Seller delivers the Closing Notice to Buyer.  The Estimated Closing Date on Page 1 is only an estimate of the Closing Date and subject to Paragraph 7(a), the Closing Date may occur earlier or later than the Estimated Closing Date.  Issuance of a Certificate of Occupancy or other alternative final approval of occupancy of the Property by the relevant local governmental authority shall be conclusive evidence of Seller's completion of the Residence and that it is ready for occupancy by Buyer.  Seller may, from time to time, in its sole discretion send Buyer progress reports regarding construction of the Residence. Those reports may include updated estimates of the Closing Date but those dates are only estimates.  The actual Closing Date will be set only by the Closing Notice, which will be titled "Closing Notice".  **BECAUSE OF THE NATURE OF THE HOME BUILDING INDUSTRY, IT IS NOT POSSIBLE TO ESTIMATE THE EXACT CLOSING DATE WITH ABSOLUTE ACCURACY.  DUE TO A VARIETY OF CIRCUMSTANCES BEYOND SELLER'S REASONABLE CONTROL, INCLUDING WITHOUT LIMITATION THE SCHEDULING OF WORK, AVAILABILITY OF MATERIALS AND LABOR, THE ACTIONS OF PUBLIC AUTHORITIES AND WEATHER CONDITIONS, THE CLOSING DATE COULD BE EXTENDED BY WEEKS OR MONTHS; PROVIDED, HOWEVER, THAT IF, FOR ANY REASON OTHER THAN A DEFAULT OF BUYER,  ESCROW IS NOT CLOSED WITHIN THE TIME PERIODS SPECIFIED IN PARAGRAPHS 7(a)(1) AND 7(a)(2), BUYER SHALL HAVE THE RIGHT TO TERMINATE THIS AGREEMENT AND CANCEL ESCROW IN ACCORDANCE WITH PARAGRAPHS 7(a)(1) AND 7(a)(2).  THEREFORE, BUYER ACCEPTS THE UNCERTAINTY OF THE CLOSING DATE DUE TO SUCH UNAVOIDABLE DELAYS AND WAIVES ALL CLAIMS AGAINST SELLER, ITS AGENTS, EMPLOYEES AND CONTRACTORS ARISING IN CONNECTION THEREWITH**.  If, as a result of a default by Buyer, Escrow is not in a position to close on the Closing Date, Seller may (in its sole discretion) terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8 or extend the Closing Date to a date selected by Seller, in which case Buyer shall pay to Seller, upon Seller agreeing to such extension, an amount (**"Extension Payment"**) equal to Two Hundred Fifty Dollars ($250) per day if the Purchase Price is less than One Million Dollars ($1,000,000) or Five Hundred Dollars ($500) per day if the Purchase Price is more than One Million Dollars ($1,000,000), for the period of time commencing on the original Closing Date and expiring on the date to which Seller extends the Closing Date.  Nothing herein shall be construed to obligate Seller to extend the Closing Date.  If Seller approves an extension, Buyer shall pay to Seller the applicable Extension Payment upon Seller's approval of the extended Closing Date and Buyer shall execute any documentation required by Seller to extend the Closing Date.  The Extension Payment shall be paid either through Escrow, or at Seller's election, by certified check or other immediately available funds acceptable to Seller and will not be applicable to the Purchase Price and shall be consideration to Seller for Seller's agreement to extend the Closing Date.  Acceptance by Seller of the Extension Payment will not constitute a waiver by Seller of any default by Buyer in failing to consummate the purchase of the Property as extended by this Agreement.  Seller's sole remedy in the event of Buyer's failure to pay such Extension Payment shall be to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.  The date of recordation of the Grant Deed conveying title to the Property to Buyer shall be deemed to be the date of **"Close of Escrow."**

(e)  **Closing Procedure.**  Upon the Close of Escrow, Escrow Holder shall cause the Grant Deed to be recorded and Seller's net closing proceeds promptly disbursed to Seller or Seller's order.

(f)  **Assessments**.  Assessments shall be payable to the Association (**"Association Assessments"**) at the current monthly rate described in the Basic Provisions.  Association Assessments may increase from time to time.  From Buyer's funds deposited into Escrow or delivered to Seller by Buyer, Escrow Holder or Seller (as applicable) shall pay (i) to the Seller a proration of the Assessment installment due for the month in which Escrow is closed, from the Close of Escrow to the first day of the next month (if Association Assessments have begun before the Close of Escrow) and (ii) to the Association, the next month's Association Assessment installment in advance.

(g)  **Cooperation/Other Documentation**.  Buyer shall Buyer shall cooperate fully with Seller and Escrow Holder to diligently and timely perform all actions required to timely consummate the purchase of the Property, including without limitation promptly cooperating in good faith with all time frames for performance under this Agreement and providing all documentation and information requested by Escrow Holder and Seller consistent with this Agreement, including without limitation completing and delivering to Seller or Escrow Holder, as applicable, all further instructions, documents, instruments, forms, statements, materials and applications required by Seller or Escrow Holder to complete the transaction contemplated herein, including any disclosures concerning the Property, within three (3) business days after receipt of such request.  Buyer's failure to so cooperate shall be a default hereunder entitling Seller to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.

(h)  **Short Funds**.  If, following the Close of Escrow, Seller or Escrow Holder determines that there was an error ("**Closing Cost Error**") in the calculation of Buyer's Escrow closing costs (including without limitation a failure to properly account for any costs to be charged to Buyer, including the Purchase Price), Buyer shall pay any such short funds to Seller or Escrow Holder, as applicable, within thirty (30) days after Seller or Escrow Holder provides written notification thereof to Buyer.  Any short funds not paid within such thirty (30) day period shall accrue interest at the rate of the maximum rate allowed by law from the date due until paid.  Notwithstanding the foregoing, if Seller or Escrow Holder fails to notify Buyer of a Closing Cost Error within one (1) year following

**Seller's Initials**

**Buyer's Initials**

HLO\ Olivewood\ v.1 1/9/2024

-7-

**147**

the Close of Escrow, Buyer shall not be obligated to pay any short funds thereunder. Buyer's covenant under this Paragraph shall survive the Close of Escrow and the delivery of the Grant Deed.

4.  **Title.**  Title to the Property is to be conveyed to Buyer by grant deed in a form selected by Seller (***"Grant Deed"***), subject to the following:

(a)  All non-delinquent taxes and assessments, including any supplemental taxes levied after the Close of Escrow.

(b)  Covenants, conditions, restrictions, reservations, dedications, easements and rights-of-way and other matters of record or apparent affecting the use and occupancy of the Property, including those set forth in the Subdivision Map and the Declaration and any Supplemental Declaration(s)/Notice(s) of Annexation, if applicable.

(c)  Encumbrances evidencing Buyer's Loan, if any.

(d)  Reservations contained in the Grant Deed, including reservations of oil, gas and minerals, if applicable.

Unless Buyer declines to purchase the Title Policy, at the Close of Escrow, Escrow Holder shall deliver to Buyer an ALTA owners title insurance policy (with regional exceptions) issued by the Title Company, insuring title to the Property vested in Buyer in the condition described above with a liability equal to the Purchase Price (***"Title Policy"***). Notwithstanding the foregoing, Buyer shall have the right to decline to purchase the Title Policy at Buyer's risk, but Buyer acknowledges that declining to purchase the Title Policy (i) may cause a significant increase in the cost which Buyer shall incur for the mandatory Lender's title insurance policy ("***Lender Policy***") and (ii) will leave the Buyer with no insurance if there is a future disputed claim on title.

5.  **Closing Costs and Prorations.**  Buyer shall pay all closing costs, including without limitation the cost of the Title Policy, all Escrow fees, the fee for recording the Grant Deed, documentary transfer fees for recordation of the Grant Deed, credit reports, Natural Hazard Disclosure, Tax Disclosure, the Lender policy, tax service, private mortgage insurance (PMI) if required, loan fees, impounds as may be required by the Lender, and prorated Assessments if applicable (as provided above). Seller shall pay any costs in connection with partial reconveyance of any construction loan. Real property taxes and assessments and Association Assessments shall be prorated as of the Close of Escrow based upon a thirty (30) day month for expenses billed monthly, and a three hundred sixty (360) day year for expenses billed yearly, using the most recent available information. The Property will be reassessed after Close of Escrow, based upon the sale to Buyer, completion of construction or otherwise. Buyer is responsible for all property taxes against the Property assessed after the Close of Escrow, including without limitation any supplemental assessments.

6.  **Conditions to Close of Escrow.**  Escrow shall not close, title to the Property shall not be conveyed to Buyer and, except for an uncured default of Buyer, Buyer's funds shall not be unconditionally released from Escrow until the following conditions have been satisfied:

(a)  **Blanket Encumbrances.**  All blanket encumbrances (as defined in Section 11013 of the California Business and Professions Code) encumbering the Property are released or will be released through Escrow before the conveyance of the Property to Buyer.

(b)  **Subordination of Encumbrances.**  All mortgages and deeds of trust encumbering the real property in the Project are subordinate to or will be subordinate to the Declaration. This provision does not include real property taxes and assessments constituting a lien not yet delinquent.

(c)  **Assessment Security.**  Seller has posted a letter of credit, cash deposit, surety bond, or other arrangement securing Seller's share of Association Assessments, if applicable, in a form and amount satisfactory to the DRE.

(d)  **Title to Lots.**  Seller has acquired fee title to the residential lots in the sales phase of the Project in which the Property is located. As used herein "***sales phase***" shall mean the group of lots, including the Property, covered by a single Final Subdivision Public Report issued by the DRE.

(e)  **Title to Common Area.**  Title to any property to be owned by the Association in fee or by easement (***"Common Area"***) in the sales phase in which the Property is located which is to be conveyed to the Association as provided in the Declaration has been conveyed to the Association free of any and all blanket encumbrances (as defined in Section 11013 of the California Business and Professions Code), but subject to all covenants, conditions, restrictions, reservations, rights-of-way, dedications and other matters of record.

(f)  **Completion of Improvements.**  Either (i) all improvements and facilities in the Common Area in the sales phase have been completed and a Notice of Completion (as defined in Section 8182 of the California Civil Code) has been recorded covering such improvements and facilities, and either (1) the statutory period for filing mechanics' liens against the Common Area has expired, <u>or</u> (2) the Association is provided a policy of title insurance with an endorsement insuring against unrecorded mechanics' liens (the cost of such endorsement to be paid by Seller); <u>or</u> (ii) Seller has posted a bond, letter of credit, or other security (in accordance with Section 11018.5 of the Business and Professions Code) to assure completion of all improvements and facilities in the Common Area in the sales phase.

(g)  **Statement of Delinquent Assessments.**  Escrow Holder has delivered a written statement from the Association to Buyer concerning the amount of any delinquent Association Assessments (and information relating to penalties, attorneys' fees, and other charges thereon as provided by the Declaration or the Bylaws of the Association) on the Property as of the date the statement is signed.

(h)  **Other Contingencies.**  For the benefit solely of Seller, Buyer shall have satisfied all other applicable conditions to Seller's obligation to close Escrow.

BUYER'S OBLIGATION TO PURCHASE THE PROPERTY AND ABILITY TO OBTAIN A LOAN ARE NOT CONTINGENT UPON THE SALE OF BUYER'S CURRENT RESIDENCE OR ANY OTHER PROPERTY OWNED BY BUYER.



*Seller's Initials*

*Buyer's Initials*

7. **Termination of Agreement and Escrow.**

   (a) **Buyer's Cancellation Right.**

     (1) <u>**Failure to Complete Construction and Close Escrow Within One Year**</u>.  If, through no fault of Buyer, Escrow is not closed within twelve (12) months after the Acceptance Date, Buyer, by written notice to Seller delivered within thirty (30) days following the expiration of such twelve (12) month period, may terminate this Agreement, cancel Escrow and, within fifteen (15) calendar days after Seller and Escrow Holder receive written notice of such termination and cancellation, Buyer shall receive a refund of all amounts Buyer has deposited into Escrow and/or delivered to Seller.

     (2) <u>**Failure to Complete Construction and Close Escrow Within Two Years**</u>.  Seller shall complete construction of the Property, including the Residence and all other improvements thereon, and the Close of Escrow shall occur within two (2) years after the Acceptance Date, except that such two (2) year period shall be extended for any periods of "Unavoidable Delays".  As used herein, ***"Unavoidable Delays"*** shall mean any acts of God (e.g., fire, flood, inclement weather, wind, earthquake, or other natural causes), or any other event, circumstance, or condition beyond Seller's control (such as strikes or other labor disputes, boycotts, unavailability of materials or delays caused by governmental entities) which constitute a permissible performance delay under California law.  If Seller fails to complete construction of the Property and close Escrow within two (2) years after the Acceptance Date, and if Buyer did not previously exercise Buyer's right to terminate this Agreement and cancel the Escrow as provided in Paragraph 7(a)(1) above, Buyer shall have the right to either:  (i) terminate this Agreement and cancel the Escrow by giving written notice to Seller and Escrow Holder, and all of Buyer's funds deposited with Escrow Holder and/or delivered to Seller by Buyer shall be refunded to Buyer in full (without any deductions) within fifteen (15) days of Seller's receipt of Buyer's notice of termination, Escrow shall be canceled at Seller's expense, and the Parties shall have no further rights or obligations with respect to the Property under this Agreement; or (ii) pursue any remedy available at law or in equity against Seller, including an action for specific performance.

     (3) <u>**Material Changes**</u>.  Subject to any applicable approvals of the DRE and any approvals required under the Declaration, before the Close of Escrow, Seller, in its sole discretion, may make material changes (i) in the overall development plan for the Project, (ii) in the manner or content of any offering of residences in the Project or any phase of development thereof, and/or (iii) to the Declaration, Bylaws, Articles, rules and regulations and/or other  management documents of the Association.  In such case, Seller shall provide Buyer with written notice of such material change and Buyer's sole remedy at that time shall be to terminate this Agreement, request cancellation of Escrow and receive a full refund of all amounts deposited hereunder.  Buyer's failure to deliver written notice of termination to Seller and Escrow Holder within five (5) days after receipt of Seller's material change notice constitutes a waiver of Buyer's right to terminate this Agreement and cancel Escrow concerning such change.

   (b) **Third Party Charges.**  If Escrow is canceled for any reason other than a default by Buyer, Seller shall pay all Third Party Charges, and all of Buyer's funds deposited into Escrow or delivered to Seller, including amounts released for Third Party Charges, shall be refunded to Buyer.  If Escrow is canceled due to a default by Buyer, Seller may terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.

   (c) **Seller's Right to Cancel.**  Notwithstanding anything herein to the contrary, including the General Escrow Instructions, if after complying with all the provisions of Paragraph 2, Buyer does not secure the Loan Approval above and deposit written verification of the Loan Approval and applicable approvals into Escrow within the time specified herein, Seller may, at its election, terminate this Agreement and, subject to Paragraph 7(b), all funds deposited in Escrow or delivered to Seller by Buyer shall be released to Buyer.  However, if Buyer does not obtain Loan Approval because Buyer failed to sell Buyer's current residence or any other property Buyer owns or as a result of Buyer's failure to comply with Paragraph 2, Buyer shall be in default under this Agreement and Seller may terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.  Seller may also terminate this Agreement and cancel Escrow if Seller's ability to construct the Property and/or deliver it to Buyer is materially impaired because of (i) the action of any foreign, federal, state or local governmental authority or utility, or (ii) the unavailability or delay in prompt delivery of materials, labor, water, sewer or other utility services to the Property or the Project.  In such event, Seller may terminate this Agreement, cancel Escrow and upon returning Buyer's full deposit hereunder to Buyer, Seller shall be released from all obligations hereunder.  Seller may also terminate this Agreement pursuant to Paragraph 22 below.

   (d) **Effect of Termination and Further Actions.**  If this Agreement is terminated, (i) Escrow shall be automatically canceled and the Parties shall execute cancellation instructions requested by Escrow Holder, (ii) within ten (10) days after such termination, Buyer shall deliver to Seller all documents delivered by Seller to Buyer hereunder, (iii) Buyer shall have no further right or interest in the Property, and (iv) all provisions of this Agreement obligating Buyer to indemnify Seller shall survive the termination.

8. **BUYER'S DEFAULT; REMEDIES OF SELLER.**  BUYER WILL BE IN DEFAULT UNDER THIS AGREEMENT IF (a) BUYER BREACHES ANY COVENANT OR AGREEMENT OF BUYER OR OTHERWISE FAILS TO PERFORM ANY OBLIGATION OF BUYER UNDER THIS AGREEMENT OR (b) BUYER NOTIFIES SELLER OR SELLER'S REPRESENTATIVE IN WRITING THAT BUYER WILL NOT COMPLETE THE PURCHASE OF THE PROPERTY OR WILL NOT PERFORM ANY OTHER OBLIGATION OF BUYER SET FORTH IN THIS AGREEMENT.  IF BUYER DEFAULTS UNDER THIS AGREEMENT, SELLER SHALL BE RELEASED FROM ITS OBLIGATION TO SELL THE PROPERTY TO BUYER, AND SELLER MAY PURSUE ANY REMEDY AT LAW OR IN EQUITY THAT IT MAY HAVE AGAINST BUYER ON ACCOUNT OF SUCH DEFAULT.  HOWEVER, BY PLACING THEIR INITIALS HERE, SELLER**[Initials]**_____    AND BUYER**[Initials]**_____    AGREE AS FOLLOWS:

   (a) **LIQUIDATED DAMAGES**.  IN THE EVENT OF A DEFAULT BY BUYER UNDER THIS AGREEMENT, BUYER AND SELLER AGREE THAT IT WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN THE ACTUAL DAMAGES SUFFERED BY SELLER, THAT BUYER DESIRES TO LIMIT THE DAMAGES FOR WHICH BUYER MAY BE LIABLE AS THE RESULT OF A DEFAULT BY BUYER AND THAT BUYER AND SELLER BOTH DESIRE TO AVOID THE COSTS AND DELAYS IF SELLER COMMENCED LEGAL PROCEEDINGS AGAINST BUYER TO RECOVER ITS DAMAGES RESULTING FROM BUYER'S DEFAULT.  THEREFORE, IN THE EVENT OF A DEFAULT BY BUYER PRIOR TO THE CLOSE OF ESCROW, SELLER, AS ITS SOLE AND EXCLUSIVE REMEDY, SHALL BE ENTITLED TO TERMINATE THIS AGREEMENT, CANCEL THE ESCROW AND RETAIN, AS LIQUIDATED DAMAGES, BUYER'S

**Seller's Initials**

**Buyer's Initials**

HLO\ Olivewood\ v.1 1/9/2024

-9-

**149**

DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER UNDER THIS AGREEMENT (AND UNDER ANY ADDENDUM HERETO), INCLUDING WITHOUT LIMITATION DEPOSITS FOR ANY OPTION(S) PURCHASED BY BUYER, WHICH AMOUNT SHALL BE DEEMED TO BE A REASONABLE ESTIMATE OF SELLER'S DAMAGES PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671 ET SEQ.  THE LIQUIDATED DAMAGES TO BE RETAINED BY SELLER SHALL BE DETERMINED AFTER FIRST DEDUCTING FROM BUYER'S DEPOSITS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE THEREFROM TO THIRD PARTIES.  NOTWITHSTANDING THE FOREGOING, IF THE TOTAL AMOUNT OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER EXCEEDS THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE OF THE PROPERTY, SELLER, AT ITS SOLE DISCRETION, SHALL BE ENTITLED TO EITHER:  (1) RETAIN AS LIQUIDATED DAMAGES AN AMOUNT NOT EXCEEDING THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1675(c) AND ESCROW HOLDER SHALL RETURN TO BUYER THE BALANCE OF BUYER'S DEPOSITS (LESS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE THEREFROM TO THIRD PARTIES); OR (2) DEMAND TO RETAIN AS LIQUIDATED DAMAGES AN AMOUNT IN EXCESS OF THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE; PROVIDED, HOWEVER, IF BUYER OBJECTS TO SUCH AMOUNT AS PROVIDED IN PARAGRAPH 8(a)(2) BELOW, PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1675(d) THIS LIQUIDATED DAMAGES PROVISION SHALL BE INVALID UNLESS SELLER ESTABLISHES IN THE ARBITRATION PROCEEDINGS PROVIDED FOR HEREIN (OR IN COURT PROCEEDINGS, IF APPLICABLE) THAT THE AMOUNT DEMANDED BY SELLER AS LIQUIDATED DAMAGES IS REASONABLE AS DETERMINED IN ACCORDANCE WITH CALIFORNIA CIVIL CODE SECTION 1675(e). ESCROW SHALL BE CANCELLED AND LIQUIDATED DAMAGES SHALL BE REMITTED TO SELLER BY ESCROW HOLDER IN ACCORDANCE WITH THE FOLLOWING PROCEDURE:

(1)    **SELLER'S TERMINATION NOTICE**.    SELLER  SHALL  GIVE  WRITTEN  NOTICE ("*TERMINATION NOTICE*") BY ANY OF THE MEANS AUTHORIZED BY SECTION 116.340 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE (E.G., PERSONAL DELIVERY OR ANY FORM OF MAILING PROVIDING FOR A RETURN RECEIPT) TO ESCROW HOLDER AND TO BUYER OF SELLER'S DETERMINATION THAT BUYER IS IN DEFAULT UNDER THIS AGREEMENT AND THAT SELLER IS EXERCISING ITS RIGHT TO TERMINATE THIS AGREEMENT AND IS INSTRUCTING ESCROW HOLDER TO CANCEL THE ESCROW AND REMIT TO SELLER AS LIQUIDATED DAMAGES ALL OR A PORTION OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER AS PROVIDED ABOVE.

(2)    **BUYER'S OBJECTION NOTICE**.  BUYER SHALL HAVE A PERIOD OF TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S TERMINATION NOTICE IN WHICH TO PROVIDE AN OBJECTION NOTICE TO ESCROW HOLDER AND SELLER THAT BUYER OBJECTS EITHER:

i.    TO SELLER'S TERMINATION OF THIS AGREEMENT; OR

ii.    TO THE AMOUNT OF LIQUIDATED DAMAGES TO BE REMITTED TO SELLER. UNLESS BUYER'S OBJECTION NOTICE CLEARLY STATES THAT BUYER OBJECTS TO SELLER'S TERMINATION OF THIS AGREEMENT AND THAT BUYER INTENDS TO DILIGENTLY PURSUE THE PURCHASE OF THE PROPERTY, BUYER SHALL BE DEEMED TO OBJECT SOLELY TO THE AMOUNT OF LIQUIDATED DAMAGES CLAIMED BY SELLER AND THE PARTIES SHALL HAVE NO FURTHER RIGHTS OR OBLIGATIONS WITH RESPECT TO THE PROPERTY UNDER THIS AGREEMENT. THE RENUNCIATION BY BUYER OF BUYER'S INTENTION TO DILIGENTLY PURSUE THE PURCHASE OF THE PROPERTY SHALL ALSO CONSTITUTE A WAIVER OF ANY RIGHT TO FILE OR RECORD A LIS PENDENS OR ANY OTHER LIEN AGAINST THE PROPERTY.  SUBJECT TO PARAGRAPH 13, BUYER'S OBJECTION NOTICE SHALL BE DELIVERED TO SELLER AS SET FORTH BELOW:

> Lori Michel
> lmichel@NewHomeCo.com
> New Home Co.
> 15231 Laguna Canyon Rd., Suite 250
> Irvine, California 92618

(3)    **ESCROW HOLDER'S OBLIGATIONS IF TIMELY OBJECTION NOTICE IS RECEIVED**. IF ESCROW HOLDER RECEIVES AN OBJECTION NOTICE FROM BUYER WITHIN SAID TWENTY (20) DAY PERIOD, ESCROW  HOLDER  SHALL  IMMEDIATELY  NOTIFY  SELLER  OF  BUYER'S  CONFLICTING  NOTICE.    THE CONTROVERSY CREATED BY THE CONFLICTING NOTICES BY SELLER AND BUYER, AND THE DISPOSITION OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER SHALL BE RESOLVED EITHER BY

i.    A COURT OF PROPER JURISDICTION, IF APPLICABLE, OR

ii.    ARBITRATION IF BUYER AND SELLER HAVE INITIALED PARAGRAPH 27 BELOW. ARBITRATION SHALL BE CONDUCTED AS SET FORTH IN PARAGRAPH 26 BELOW.

(4)    **ESCROW HOLDER'S OBLIGATIONS IF TIMELY OBJECTION NOTICE IS NOT RECEIVED**. IF ESCROW HOLDER DOES NOT RECEIVE AN OBJECTION NOTICE FROM BUYER WITHIN SAID TWENTY (20) DAY PERIOD, AT THE EXPIRATION OF SUCH PERIOD, BUYER SHALL BE DEEMED TO AGREE THAT BUYER IS IN DEFAULT UNDER THIS AGREEMENT. ACCORDINGLY, ESCROW HOLDER SHALL:

i.    REMIT TO SELLER THE AMOUNT DEMANDED BY SELLER (LESS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE TO THIRD PARTIES);

ii.    REMIT THE BALANCE OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER, IF ANY, TO BUYER; AND

iii.    CANCEL THE ESCROW.  BUYER SHALL BE DEEMED TO HAVE WAIVED BUYER'S RIGHTS TO ALL REMEDIES AVAILABLE AT LAW OR IN EQUITY AGAINST SELLER, INCLUDING AN ACTION TO SEEK SPECIFIC PERFORMANCE OF THIS AGREEMENT OR THE RIGHT TO FILE A LIS PENDENS AGAINST THE PROPERTY.

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

**BUYER AND SELLER EACH ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THIS PARAGRAPH 8 AND BY PLACING THEIR INITIAL BELOW, AGREE TO BE BOUND THEREBY**.

BUYER**[Initials]**_____    _____    SELLER**[Initials]**_____

(b)  **USE OF BUYER FUNDS.**  IF SELLER HAS HAD THE USE OF BUYER'S DEPOSIT PENDING CONSUMMATION OF THE SALE UNDER AUTHORIZATION BY THE DRE PURSUANT TO SUBDIVISION (c) OR (d) OF SECTION 11013.2 OR SUBDIVISION (b) OR (c) OF SECTION 11013.4 OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE, SELLER SHALL IMMEDIATELY UPON ALLEGING BUYER'S DEFAULT, TRANSMIT TO ESCROW HOLDER FUNDS EQUAL TO ALL DEPOSITS AND THIRD PARTY CHARGES PAID BY BUYER.

The following paragraphs represent additional agreements **between Buyer and Seller only** with which Escrow Holder shall have no liability or duty.

9.  **No Brokers.**  Other than Seller's Home Counselor, Buyer represents and warrants to Seller that Buyer has dealt with no broker, real estate sales person, or finder in connection with the transactions contemplated by this Agreement, and Buyer shall indemnify, defend and hold Seller harmless from all claims, demands, losses, liabilities, judgments and expenses arising out of any amounts claimed to be owing to any such persons on account of the conduct of Buyer with the exception of cooperating brokers satisfying all of Seller's cooperating broker standards, guidelines and requirements, if applicable.  *Seller's Home Counselor is an exclusive agent of Seller.*

10.  **Development of Property.**

(a)  **Production Home**.  Seller shall cause construction and completion of the Residence and appurtenant improvements on the Property.  The Residence is not a custom home and Seller is not acting as a contractor for Buyer in the construction of the Residence nor is Seller constructing the Residence specifically for Buyer.  Subject to Paragraph 12, Seller is not constructing the Residence or any improvements on the Property pursuant to any architect and/or construction plans or specifications, precise specifications or design of a model or appurtenances, or any federal, state or local building code, ordinance or statute.

(b)  **Marketing Materials**.  Any marketing materials, including without limitation brochures, advertising, videos, vignettes, depictions or renderings of improvements, topographic maps, subdivision maps and/or plot plans shown to Buyer or model homes visited by Buyer (collectively, *"Marketing Materials"*), are displayed or provided to Buyer only for illustration purposes and subject to Paragraph 12, Seller has not agreed to deliver the Residence in accordance therewith.  The Marketing Materials have not been prepared to scale and are subject to change without notice to Buyer.  All renderings are intended as artist's conceptions and may show non-standard landscaping.  If there is a discrepancy between the Marketing Materials and the actual as-built conditions of the Property, the as-built conditions will control.

(c)  **Property Size and Dimensions**.  Subject to Paragraph 12, the usable, habitable or buildable location and configuration of the Property, Residence, Project and all improvements located thereon may fluctuate from that shown or displayed to Buyer in the Marketing Materials.  All depictions, statements or other representations of square footage are approximate only.  Subject to Paragraph 12, Buyer may not rely upon any models, Marketing Materials or written or oral statements by Seller or Seller's representatives regarding the exact square footage or dimensions of the Property and/or Residence nor does Seller provide any representations or assurances in connection therewith.  In addition, the boundaries of the Property shown on any plan or map are approximate only, and subject to Paragraph 12, Buyer may not rely upon any Marketing Materials or written or oral statements by Seller or Seller's representatives regarding the exact boundaries of the Property.

(d)  **Walls and Fences.**  Subject to Paragraph 12, the location, size, height and composition of all walls and fences to be constructed on the Property or adjacent thereto shall be determined by Seller in its sole and absolute discretion.  Despite temporary fencing, Seller, subject to Paragraph 12, has made no representations, warranties or assurances to Buyer regarding the size, height, location or composition of any wall, fence to be constructed on or adjacent to the Property.

(e)  **Models**.  None of the appurtenances and furnishings shown in any model home or Marketing Materials are included in this Agreement, unless Seller agrees in writing to deliver the same Options.

(f)  **Substitutions**.  Seller may, in its sole and absolute discretion, substitute the type and location of materials, appliances and other items in the Residence and on the Property of substantially equal or greater functionality and quality (and acceptable to any Lender) to complete the Residence, including without limitation substitutions for kitchen appliances (other than brand names selected by Buyer as Options), household fixtures, electrical outlets and switches, hardware, wall surfaces, painting and other similar items.  Seller may make such substitutions without adjustment to the Purchase Price.  Buyer's consultation by Seller or Seller's Home Counselors or other agents shall not waive Seller's rights to make any change contemplated or provided herein.

(g)  **Delay in Construction**.  If Seller is unable to complete or install on the Property any Options, decorator item, fixture, furnishing or other improvement, and such failure is caused by circumstances beyond Seller's reasonable control, the Close of Escrow shall not be delayed so long as occupancy of the Residence is approved by the applicable governmental authority.  The incomplete items shall be completed by Seller as soon as reasonably possible after the Close of Escrow.

11.  **Completion and Possession.**  Seller has not provided Buyer an exact date for completion or occupancy of the Residence or Close of Escrow; however, except for delays caused by Unavoidable Delay, Seller shall complete the construction of the Residence within two (2) years after the Acceptance Date.  Buyer has no right, title or interest in the Property, except the right and obligation to purchase the same in accordance with the terms of this Agreement.  Buyer may not possess the Property or enter it before the Close of Escrow.  Any entry by Buyer must be approved in writing in advance by Seller and shall be at Buyer's own risk.  Except as to any claims, demands, losses, liabilities or expenses arising through the gross negligence or willful misconduct of the "Seller Parties" defined below, Buyer shall indemnify, defend and hold Seller, its agents, contractors, members, managers, officers, directors, shareholders, partners and employees (collectively, *"Seller Parties"*), harmless from and against all claims, demands, losses, liabilities and expenses arising from any personal injury, death or property damage to Buyer, Buyer's invitees and guests, Seller or any

*Seller's Initials*_____    _____

*Buyer's Initials*_____

other individual or entity as a result of any entry on the Property by Buyer and/or Buyer's family, guests or invitees. Buyer understands that to permit the work to progress in an orderly fashion, no interference with construction work on the Property is permitted. In addition, before the Close of Escrow (a) Buyer shall not be entitled to perform or contract for the performance of any work on the Property by Buyer or Buyer's agents; (b) no signs of any kind may be posted by Buyer or Buyer's agents on or near the Property, and (c) Buyer shall not enter into any contract for the sale or transfer of the Property. A violation of the foregoing restrictions shall be a material default by Buyer entitling Seller, at its option, to terminate this Agreement, cancel the Escrow, and proceed in accordance with Paragraph 8.

12. **Condition of Property Upon Delivery**. The Residence will be delivered to Buyer substantially as shown in any model or on any floor plan for the Residence displayed or delivered to Buyer by Seller (*"Property Plans"*) with the exception of (a) any improvements or features shown on any architect and/or construction plans or specifications, precise specifications or design other than the Property Plans; (b) any features in the models that are optional or decorator items and not included in the list of standard features provided to Buyer; (c) variances noted by Seller in any written disclosures provided to Buyer; (d) variances in square footage normally occurring in residential subdivisions of the same type as the Project; (e) variances required to address site topography, Residence location, optional items selected by Buyer or the requirements of any applicable governmental authority; and (f) Seller's right to substitute building and other materials, construction techniques and fixtures with those of equal or greater functionality and quality.

13. **Notices.** Unless expressly provided otherwise herein, any notice to be given hereunder to either Party or to Escrow Holder shall be in writing and shall be given either by personal delivery, e-mail, facsimile, federal express, overnight courier or by depositing such notice in the United States first class mail, certified, with return receipt requested, postage prepaid and addressed as provided in the Basic Provisions. Either Party and Escrow Holder may, by written notice to the other and to Escrow Holder, designate a different address which shall be substituted for the one specified above. If any notice or other document shall be sent by certified mail as set forth above, it shall be deemed to have been effectively served or delivered forty eight (48) hours following the deposit of such notice in the United States mail in the manner set forth above. If any notice or other document shall be sent by e-mail, it shall be deemed to have been served upon transmission; provided that if such transmission occurs on a weekend or holiday or after 5:00 p.m. on a weekday, it shall be deemed to have been received at 8:00 a.m. on the immediately following business day. If any notice or other document shall be sent by facsimile, it shall be deemed to have been served or delivered upon electronic confirmation of transmission; provided that if such transmission occurs on a weekend or holiday or after 5:00 p.m. on a weekday, it shall be deemed to have been received at 8:00 a.m. on the immediately following business day.

14. **No Recording of this Agreement.** Neither this Agreement nor any memorandum hereof may be recorded.

15. **Walk-Through.** Buyer may conduct a single walk through inspection of the Residence at a time (either before or after the Close of Escrow) designated by Seller in its discretion. Such walk-through is not a condition to the Close of Escrow. At such walk through, Buyer and a representative of Seller shall prepare a Homeowner Orientation Report (*"Report"*) to be signed by Buyer and Seller's representative identifying items or conditions which Buyer and Seller agree are to be repaired by Seller; however, such items need not be repaired before the Close of Escrow, and if any such items are not repaired before the Close of Escrow, Buyer may not extend or delay the Close of Escrow. Subject to Title 7, Part 2 of Division 2 of the California Civil Code (Sections 895 et seq.), Buyer's failure for any reason (other than reasons beyond the control of Buyer) to attend a walk through of the Residence as set forth above constitutes Buyer's acceptance of the condition of the Residence. If Buyer conducts the walk through inspection before the Close of Escrow but does not execute the Report within three (3) days after the inspection, or if, after such inspection, Buyer and Seller disagree as to any items included or not included on the Report, then Seller shall have the right, in its sole discretion, to terminate this Agreement by written notice to Buyer. If Seller terminates this Agreement under this Paragraph, the Deposit shall be returned to Buyer without deduction, and Seller shall have no further liability or obligation to Buyer under this Agreement.

16. **Prohibited Behavior.** Neither Buyer nor any family member or representative of Buyer shall (a) enter the Property or portions of the Project that are under construction and/or restricted unless such entry has been approved in writing in advance by Seller and Buyer is accompanied by a representative of Seller; (b) prior to the Close of Escrow, attempt to do any work or install or modify any improvements on the Property; (c) enter the sales office/model complex if Buyer has been given written notice not to enter the sales office/model complex; (d) commit any illegal or tortious act on or in connection with the Project and/or Property, including without limitation assault or causing any intentional physical harm to persons; and/or (e) engage in harassing, abusive, threating, offensive or otherwise inappropriate behavior towards Seller's representative, personnel, contractors, homeowners or other potential buyers (as applicable, *"Prohibited Behavior"*). If Buyer fails to permanently cease any Prohibited Behavior immediately upon receipt of written notice from Seller describing such Prohibited Behavior (*"Default Notice"*), such failure shall be deemed a default by Buyer under this Agreement entitling Seller to terminate this Agreement by delivery of written notice of termination to Buyer. If, upon receipt of the Default Notice Buyer does immediately cease the Prohibited Behavior described in the Default Notice but thereafter engages in such Prohibited Behavior again, Seller shall be entitled to terminate this Agreement without the need for an additional Default Notice. If Buyer ceases the Prohibited Behavior described in the Default Notice but then engages in any other Prohibited Behavior Seller shall be entitled to deliver a second Default Notice to Buyer and the foregoing provisions shall apply. However, after delivery of a second Default Notice, if Buyer engages in any Prohibited Behavior Seller shall be entitled to terminate this Agreement without the need for delivery to Buyer of any additional Default Notice.

17. **Waiver of Default.** Seller's waiver of a default by Buyer shall not be deemed a continuing waiver or a waiver of any subsequent default.

18. **Time is of the Essence.** Time is of the essence in the performance of Buyer's obligations under this Agreement. Any delay in Buyer's performance under this Agreement will prejudice Seller. Therefore, any failure by Buyer to perform within the specified periods will be a default by Buyer, entitling Seller to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8. No extension of time for performance of any obligation or act hereunder shall be deemed an extension of time for performance of any other obligation or act. Unless otherwise provided herein, the term *"days"* means consecutive *"calendar days."* If the date on which any action is to be taken, any obligation is to be performed, or any notice is to be given under this Agreement falls on a day which is not a business day (i.e., Saturday, Sunday or holiday), such performance date shall be automatically extended to the immediately following business day.

19. **Severability and Interpretation.** If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the validity and enforceability of the other provisions of this Agreement shall not be affected thereby. This Agreement shall be governed

*Seller's Initials*

*Buyer's Initials*

by California law.  As used herein, the word *"including"* means *"including but not limited to."*  If more than one person or entity is a Party, each of them is jointly and severally liable under this Agreement.

20.  **Assignment.**  In view of the credit qualifications, processing and other personal matters considered hereunder, this Agreement and the rights of Buyer hereunder may not be assigned, sold, transferred or hypothecated by Buyer voluntarily, involuntarily, or by operation of law without first obtaining Seller's written consent which may be withheld for any reason in Seller's sole discretion.

21.  **Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which, together, shall constitute one and the same instrument.

22.  **Buyer Selections.**  To the extent Seller offers Options to Buyer, Buyer shall make Option selections from the choices and at the prices provided by Seller within the time periods specified by Seller.  The availability and prices of Options are subject to change, at the sole discretion of Seller, and without prior notice to Buyer.  Subject to availability, Buyer's selections are final.  If Buyer fails to make any Option selections within the times specified by Seller, Buyer shall be deemed to have waived the right to select such Options.  If Buyer must make selections with respect to standard features, Buyer shall make such selections within the time periods specified by Seller.  If Buyer fails to make standard feature selections with the time period specified by Seller, Seller, in its sole discretion, may (a) terminate this Agreement under Paragraph 8 or (b) shall make such selections for Buyer and Buyer hereby approves such standard features selected by Seller.

23.  **Seller Affiliates.**  Buyer may elect to utilize the services of affiliated mortgage, interior design or other entities. Buyer understands that such companies may be subsidiaries of Seller.

24.  **Limited Warranty**.  Seller is providing Buyer with a "Homebuyer Warranty" (*"**Limited Warranty**"*), a copy of which is attached as an addendum hereto and incorporated herein by this reference.  Buyer agrees to be bound by and to comply with all provisions of the Limited Warranty.  The Limited Warranty is the sole warranty provided to Buyer.  Any other warranty or warranties, whether express or implied, are disclaimed by Seller and waived by Buyer, unless otherwise prohibited by law.  Upon Buyer's resale of the Residence to a subsequent purchaser, the Limited Warranty shall be transferred to the subsequent purchaser for any time remaining under the Limited Warranty, and Buyer agrees to deliver the Limited Warranty to the subsequent purchaser upon the closing of that transaction.

25.  **RESOLUTION OF POST-CLOSING DISPUTES**.  ANY "DISPUTE" DEFINED BELOW ARISING AFTER THE CLOSE OF ESCROW, WHETHER RELATED TO, OR ARISING FROM, AN ACT, OMISSION OR OTHER EVENT OCCURRING PRIOR TO OR AFTER THE CLOSE OF ESCROW (A *"POST-CLOSING DISPUTE"*), SHALL BE RESOLVED IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROCEDURES SET FORTH IN THE DECLARATION OF DISPUTE RESOLUTION PROCEDURES FOR THE PROJECT (*"DISPUTE DECLARATION"*) AND THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT IN THE FORM ATTACHED AS AN ADDENDUM HERETO, AS IT MAY BE MODIFIED BY SELLER (*"INDIVIDUAL DISPUTE RESOLUTION AGREEMENT"*).  PRIOR TO THE CLOSE OF ESCROW, UPON SELLER'S REQUEST, BUYER SHALL EXECUTE THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.  THE DISPUTE DECLARATION RECORDED AGAINST THE PROJECT AND THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT, WHICH WILL BE RECORDED AGAINST THE PROPERTY AT THE CLOSE OF ESCROW, GOVERN THE RESOLUTION OF ALL POST-CLOSING DISPUTES BETWEEN BUYER AND SELLER.  AS USED HEREIN, A *"DISPUTE"* SHALL MEAN ANY CLAIM, CONTROVERSY OR DISPUTE BY OR BETWEEN THE PARTIES HERETO RELATING TO THIS AGREEMENT, THE PROPERTY, THE SALE OF THE PROPERTY, OR ANY TRANSACTION RELATED HERETO, WHETHER BASED ON CONTRACT, TORT, OR STATUTE, INCLUDING WITHOUT LIMITATION ANY DISPUTE OVER THE DISPOSITION OF ANY DEPOSITS HEREUNDER, BREACH OF CONTRACT, NEGLIGENT OR INTENTIONAL MISREPRESENTATION, FRAUD, UNCONSCIONABILITY, BREACH OF ANY ALLEGED DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGATIONS OF LATENT OR PATENT CONSTRUCTION DEFECTS, INTERPRETATION OF ANY TERM OR PROVISION OF THIS AGREEMENT OR ANY DEFENSE GOING TO THE FORMATION OR VALIDITY OF THIS AGREEMENT (INCLUDING WITHOUT LIMITATION ALLEGATIONS OF WHETHER SUCH DISPUTE ARISES BEFORE OR AFTER THE CLOSE OF ESCROW).

26.  **RESOLUTION OF PRE-CLOSING DISPUTES.**  ANY DISPUTE ARISING PRIOR TO THE CLOSE OF ESCROW (A **"*PRE-CLOSING DISPUTE*"**) INCLUDING WITHOUT LIMITATION DISPUTES RELATED TO LIQUIDATED DAMAGES SET FORTH IN PARAGRAPH 8, SHALL BE RESOLVED IN ACCORDANCE WITH THE ALTERNATIVE DISPUTE RESOLUTION PROCEDURES SET FORTH IN THIS PARAGRAPH 26.

(a)   **MANDATORY BINDING ARBITRATION**.  ALL PRE-CLOSING DISPUTES SHALL BE RESOLVED BY NEUTRAL, BINDING ARBITRATION GOVERNED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. §§1-16) (**"*FEDERAL ACT*"**) AND NOT BY ANY COURT ACTION EXCEPT AS PROVIDED FOR JUDICIAL REVIEW OF ARBITRATION PROCEEDINGS UNDER THE FEDERAL ACT.  A DEMAND FOR ARBITRATION SHALL BE DELIVERED IN ACCORDANCE WITH PARAGRAPH 13 BY THE PARTY DESIRING TO ARBITRATE SUCH PRE-CLOSING DISPUTE TO THE OTHER PARTY WITHIN THIRTY (30) DAYS AFTER SELLER'S RECEIPT OF BUYER'S OBJECTION NOTICE AS SET FORTH IN PARAGRAPH 8(a)(2).  THIS AGREEMENT INVOLVES AND CONCERNS INTERSTATE COMMERCE AND THEREFORE THE ARBITRATION PROCEDURES SPECIFIED IN THIS PARAGRAPH 26(a) ARE TO BE INTERPRETED AND ENFORCED AS AUTHORIZED BY THE FEDERAL ACT, WHICH IS DESIGNED TO ENCOURAGE USE OF ALTERNATIVE METHODS OF DISPUTE RESOLUTION THAT AVOID COSTLY AND POTENTIALLY LENGTHY COURT PROCEEDINGS. INTERPRETATION AND APPLICATION OF THE PROCEDURES SET FORTH IN THIS PARAGRAPH 26(a) SHALL CONFORM TO ANY APPLICABLE FEDERAL COURT RULES AND DECISIONS INTERPRETING AND APPLYING THE FEDERAL ACT. THE ARBITRATION PROCEEDINGS SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ACT AND, TO THE EXTENT NOT INCONSISTENT, THE PROCEDURES SET FORTH IN THIS PARAGRAPH 26(a).  IN ADDITION, EXCEPT AS SET FORTH HEREIN, AND TO THE EXTENT IT IS NOT INCONSISTENT WITH THE FEDERAL ACT, THE ARBITRATION SHALL BE CONDUCTED PURSUANT TO TITLE 9 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE (SECTION 1280 ET SEQ.).  REFERENCES TO CALIFORNIA PROCEDURAL LAW ARE FOR GUIDANCE ONLY AND SHALL NOT BE CONSTRUED AS A WAIVER OF ANY RIGHTS OR DUTIES OF THE PARTIES UNDER THE FEDERAL ACT OR THE RIGHT OF THE PARTIES TO HAVE THE PROCEDURES SET FORTH IN THIS PARAGRAPH 26(a) INTERPRETED AND ENFORCED UNDER THE FEDERAL ACT.  IF ANY PARTY SEEKS REVIEW BY A COURT OF THE ENFORCEABILITY OF ANY OF THE PROCEDURES SET FORTH OR REFERENCED HEREIN (NOTWITHSTANDING THE

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

-13-

PROVISIONS HEREIN MAKING THAT ISSUE ONE TO BE RESOLVED BY THE ARBITRATOR), THE EXCLUSIVE JURISDICTION AND VENUE FOR ANY SUCH REVIEW SHALL BE THE SUPERIOR COURT FOR THE COUNTY.

(1) **ADDITIONAL PARTIES**.  SELLER HAS THE SOLE AND ABSOLUTE RIGHT, IN ITS DISCRETION, TO JOIN ANY PERSON OR ENTITY WHO IS NOT A PARTY TO THE ARBITRATION PROCEEDINGS IF THE PRESENCE OF SUCH PERSON OR ENTITY IS REQUIRED OR IS NECESSARY FOR COMPLETE RELIEF TO BE ACCORDED IN THE ARBITRATION PROCEEDINGS OR IF THE INTEREST OR RESPONSIBILITY OF SUCH PERSON OR ENTITY IN THE DISPUTE IS NOT INSUBSTANTIAL.  THE PARTIES SHALL COOPERATE IN GOOD FAITH AND SHALL DILIGENTLY PERFORM SUCH ACTS AS MAY BE NECESSARY TO ENSURE THAT ALL NECESSARY AND APPROPRIATE PARTIES ARE INCLUDED IN THE ARBITRATION PROCEEDINGS.

(2) **ADMINISTRATION OF PROCEEDINGS.**  THE ARBITRATION PROCEEDINGS SHALL BE CONDUCTED BY AND IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE "ARBITRATION PROVIDER" DEFINED BELOW.

(3) **STATUTES OF LIMITATION**. EXCEPT FOR PROCEDURAL ISSUES, AND TO THE EXTENT NOT INCONSISTENT WITH THE FEDERAL ACT, THE ARBITRATION PROCEEDINGS, THE ULTIMATE DECISIONS OF THE ARBITRATOR, AND THE ARBITRATOR SHALL BE SUBJECT TO AND BOUND BY EXISTING CALIFORNIA CASE AND STATUTORY LAW.  ARBITRATION MUST BE INITIATED PRIOR TO THE EXPIRATION OF ANY APPLICABLE STATUTES OF LIMITATION.

(4) **SELECTION OF ARBITRATOR**.  THE PARTIES SHALL SUBMIT THE DISPUTE TO BINDING ARBITRATION AT CONSTRUCTION DISPUTE RESOLUTION SERVICES, INC. (**"CDRS"**), OR IF CDRS IS UNABLE TO ADMINISTER THE ARBITRATION OR IS DETERMINED BY A COURT OF COMPETENT JURISDICTION TO BE AN UNSUITABLE ARBITRATION PROVIDER, AT ANOTHER ARBITRATION PROVIDER AS MAY BE MUTUALLY ACCEPTABLE TO THE PARTIES (E.G., "JAMS" DEFINED BELOW, AMERICAN ARBITRATION ASSOCIATION [**"AAA"**] OR SIMILAR ENTITY PROVIDING ARBITRATION SERVICES) (**"ARBITRATION PROVIDER"**).  IF THE PARTIES ARE UNABLE TO AGREE UPON AN ARBITRATION PROVIDER WITHIN SUCH TEN (10) DAY PERIOD, THEN ANY PARTY MAY THEREAFTER SEEK TO HAVE AN ARBITRATOR APPOINTED BY THE SUPERIOR COURT FOR ORANGE COUNTY, CALIFORNIA UNDER THE CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1297.115.  THE ARBITRATOR SHALL BE A NEUTRAL AND IMPARTIAL RETIRED JUDGE OR AN ATTORNEY WITH SUBSTANTIAL EXPERIENCE IN RELEVANT MATTERS. IN SELECTING THE ARBITRATOR, THE PROVISIONS OF SECTION 1297.121 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE SHALL APPLY. AN ARBITRATOR MAY BE CHALLENGED FOR ANY OF THE GROUNDS LISTED THEREIN, IN SECTION 1297.124 OR SECTION 1297.125 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE.  IN ALL CASES, THE ARBITRATOR SHALL BE APPOINTED WITHIN THIRTY (30) DAYS FROM RECEIPT BY ANY PARTY OF A WRITTEN REQUEST TO RESOLVE THE DISPUTE BETWEEN THEM BY ARBITRATION.

(5) **AUTHORITY OF ARBITRATOR**.  THE ARBITRATOR SHALL HAVE THE POWER TO HEAR AND DISPOSE OF MOTIONS, INCLUDING MOTIONS RELATING TO PROVISIONAL REMEDIES, DEMURRERS, MOTIONS TO DISMISS, MOTIONS FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT AND/OR ADJUDICATION MOTIONS, IN THE SAME MANNER AS A TRIAL COURT JUDGE.  IN ADDITION, THE ARBITRATOR SHALL HAVE THE POWER TO SUMMARILY ADJUDICATE ISSUES OF FACT OR LAW, INCLUDING THE AVAILABILITY OF REMEDIES, EVEN IF THE ISSUE ADJUDICATED DOES NOT DISPOSE OF AN ENTIRE CAUSE OF ACTION OR DEFENSE.  THE ARBITRATOR SHALL HAVE THE POWER TO GRANT PROVISIONAL REMEDIES INCLUDING PRELIMINARY INJUNCTIVE RELIEF.  PRIOR TO THE SELECTION OF THE ARBITRATOR, ANY PARTY SHALL HAVE THE RIGHT, BUT NOT THE OBLIGATION, TO PETITION THE SUPERIOR COURT OF THE COUNTY FOR ANY NECESSARY PROVISIONAL REMEDIES.  HOWEVER, AFTER OBTAINING ANY PROVISIONAL REMEDIES (PENDING SELECTION OF THE ARBITRATOR) THE ENTIRE MATTER SHALL BE REFERRED TO THE ARBITRATION PROVIDER FOR ALL PURPOSES AND THE SUPERIOR COURT SHALL HAVE NO FURTHER JURISDICTION TO MONITOR OR ENFORCE THE PROVISIONAL REMEDIES OR TO MAKE FURTHER DETERMINATIONS OR AWARDS OR TO ISSUE ADDITIONAL PROVISIONAL REMEDIES.  THE ARBITRATION PROVIDER SHALL HAVE THE SOLE POWER TO ENFORCE, EXTEND, MODIFY OR VACATE ANY SUCH PROVISIONAL REMEDIES.

(6) **DISCOVERY**.  DISCOVERY SHALL BE PERMITTED BY THE ARBITRATOR AT HIS DISCRETION UPON A SHOWING OF GOOD CAUSE OR BASED ON THE AGREEMENT OF THE PARTIES.  THE ARBITRATOR SHALL OVERSEE DISCOVERY AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE.  AT A MINIMUM, THE PARTIES WILL EXCHANGE ALL DOCUMENTS IN THEIR POSSESSION, CUSTODY OR CONTROL WHICH ARE EITHER RELEVANT OR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE AND EACH PARTY SHALL BE ENTITLED TO AT LEAST TWO PERCIPIENT WITNESS DEPOSITIONS AND THE DEPOSITIONS OF ALL DESIGNATED EXPERTS.

(7) **FULL DISCLOSURE**.  EACH PARTY SHALL MAKE, IN GOOD FAITH, A FULL DISCLOSURE OF ALL ISSUES AND EVIDENCE TO EACH OTHER PARTY PRIOR TO THE HEARING.  ANY EVIDENCE OR INFORMATION THAT THE ARBITRATOR DETERMINES WAS UNREASONABLY WITHHELD SHALL BE INADMISSIBLE BY THE PARTY WHO WITHHELD IT.  THE INITIATING PARTY SHALL BE THE FIRST TO DISCLOSE ALL OF THE FOLLOWING, IN WRITING, TO EACH OTHER PARTY AND TO THE ARBITRATOR:  (i) AN OUTLINE OF THE ISSUES AND ITS POSITION ON EACH SUCH ISSUE; (ii) A LIST OF ALL WITNESSES THE PARTY INTENDS TO CALL; AND (iii) COPIES OF ALL WRITTEN REPORTS AND OTHER DOCUMENTARY EVIDENCE, WHETHER WRITTEN OR NOT OR CONTRIBUTED TO BY ITS RETAINED EXPERTS (COLLECTIVELY **"OUTLINE"**).  THE INITIATING PARTY SHALL SUBMIT ITS OUTLINE TO EACH OTHER PARTY AND THE ARBITRATOR WITHIN THIRTY (30) DAYS OF THE FINAL SELECTION OF THE ARBITRATOR.  EACH RESPONDING PARTY SHALL SUBMIT ITS WRITTEN RESPONSE AS DIRECTED BY THE ARBITRATOR.

(8) **HEARING**.  THE ARBITRATION HEARING SHALL BE HELD IN THE COUNTY.  THE ARBITRATOR SHALL PROMPTLY COMMENCE THE HEARING GIVING DUE CONSIDERATION TO THE COMPLEXITY OF THE ISSUES, THE NUMBER OF PARTIES AND NECESSARY DISCOVERY AND OTHER RELEVANT MATTERS.  THE ARBITRATION SHALL BE CONDUCTED AS INFORMALLY AS POSSIBLE.  CALIFORNIA EVIDENCE CODE SECTION

*Seller's Initials*

*Buyer's Initials*

1152 ET SEQ. SHALL APPLY FOR THE PURPOSE OF EXCLUDING OFFERS, COMPROMISES, AND SETTLEMENT PROPOSALS FROM EVIDENCE, UNLESS THERE IS AGREEMENT BY ALL PARTIES AS TO ADMISSIBILITY. THE ARBITRATOR SHALL BE THE SOLE JUDGE OF THE ADMISSIBILITY OF AND THE PROBATIVE VALUE OF ALL EVIDENCE OFFERED AND IS AUTHORIZED TO PROVIDE ALL LEGALLY RECOGNIZED REMEDIES WHETHER IN LAW OR EQUITY, EXCEPT AS OTHERWISE LIMITED IN THIS PARAGRAPH 26(a). THE COST OF AN INTERPRETER SHALL BE BORNE BY THE PARTY REQUIRING THE SERVICES OF THE INTERPRETER IN ORDER TO BE UNDERSTOOD BY THE ARBITRATOR AND THE EXPENSES OF WITNESSES SHALL BE BORNE BY THE PARTY PRODUCING SUCH WITNESSES.

(9) **DECISION**. THE DECISION OF THE ARBITRATOR SHALL BE BINDING ON THE PARTIES AND MAY BE ENTERED AS A JUDGMENT IN ANY COURT OF THE STATE OF CALIFORNIA THAT HAS JURISDICTION AND VENUE. THE ARBITRATOR SHALL (i) CAUSE A COMPLETE RECORD OF ALL ARBITRATION PROCEEDINGS TO BE PREPARED SIMILAR TO THOSE KEPT IN THE SUPERIOR COURT, (ii) TRY ALL ISSUES OF BOTH FACT AND LAW, AND (iii) ISSUE A WRITTEN STATEMENT OF DECISION CONSISTENT WITH THAT DESCRIBED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 643 WHICH SHALL SPECIFY THE FACTS AND LAW RELIED UPON IN REACHING THE ARBITRATOR'S DECISION WITHIN TWENTY (20) DAYS AFTER THE CLOSE OF TESTIMONY.

(10) **FEES AND COSTS**. SELLER SHALL ADVANCE ANY FEE REQUIRED BY THE ARBITRATION PROVIDER TO INITIATE THE ARBITRATION PROCEEDINGS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE TOTAL COST OF THE ARBITRATION PROCEEDINGS, INCLUDING THE INITIATION FEE ADVANCED BY SELLER AND OTHER FEES OF THE ARBITRATION PROVIDER AND ANY RELATED COSTS AND FEES INCURRED BY THE ARBITRATION PROVIDER (SUCH AS EXPERTS AND CONSULTANTS RETAINED BY IT) SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME. THE ARBITRATOR SHALL NOT AWARD ATTORNEYS' FEES TO ANY PARTY. NOTHING HEREIN SHALL BE CONSTRUED TO MODIFY OR ABROGATE ANY DUTY TO DEFEND AND/OR INDEMNIFY A THIRD PARTY PURSUANT TO THE TERMS OF A CONTRACT BETWEEN ANY SUCH PARTIES OR TO ESTABLISH A DIFFERENT ALLOCATION OF COSTS BETWEEN SELLER AND SUCH THIRD PARTY. A STENOGRAPHIC RECORD OF THE HEARING SHALL BE MADE WHICH SHALL REMAIN CONFIDENTIAL EXCEPT AS MAY BE NECESSARY FOR POST-HEARING MOTIONS AND APPEALS. THE COST OF THE RECORD SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME. SHOULD ANY PARTY REFUSE OR FAIL TO PAY ITS PRO-RATA SHARE OF THE COSTS OF ARBITRATION, THE REMAINING PARTIES MAY PAY SUCH SHARE, AND THE PARTY OR PARTIES WHICH PAY SUCH EXTRA SHARE SHALL BE AWARDED SUCH EXTRA COSTS BY THE ARBITRATOR IN THE ARBITRATOR'S DECISION. NOTWITHSTANDING THE FOREGOING, UNDER ALL CIRCUMSTANCES THE PARTIES SHALL BE RESPONSIBLE FOR THEIR OWN ATTORNEYS' FEES AND EXPERT WITNESS COSTS, SUBJECT ONLY TO REALLOCATION BY ANY APPLICABLE STATUTORY COST-SHIFTING MECHANISMS.

(b) **JUDICIAL REFERENCE**. IF, AND ONLY IF, FOR ANY REASON ARBITRATION CANNOT BE LEGALLY USED TO RESOLVE A PRE-CLOSING DISPUTE BETWEEN THE PARTIES OR THE ARBITRATION PROVISIONS PROVIDED FOR IN PARAGRAPH 26(a) ARE HELD NOT TO APPLY OR DETERMINED TO BE INVALID, VOID OR UNENFORCEABLE IN WHOLE OR MATERIAL PART FOR ANY REASON PREVENTING THEIR USE, THEN THE PRE-CLOSING DISPUTE SHALL BE SUBMITTED FOR RESOLUTION TO GENERAL JUDICIAL REFERENCE WITHIN THIRTY (30) DAYS OF JUDICIAL DETERMINATION THAT THE ARBITRATION PROVISION IS INVALID, VOID OR UNENFORCEABLE, AS SET FORTH BELOW. PRE-CLOSING DISPUTES SUTMITTED TO GENERAL JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1, INCLUSIVE, OR ANY SUCCESSOR STATUTES THERETO, SHALL BE SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

(1) **COOPERATION.** THE PARTIES SHALL COOPERATE IN GOOD FAITH TO ENSURE THAT ALL NECESSARY AND APPROPRIATE PARTIES ARE INCLUDED IN THE JUDICIAL REFERENCE PROCEEDINGS.

(2) **FEES AND COSTS**. ALL FEES AND COSTS OF THE JUDICIAL REFERENCE PROCEEDINGS SHALL BE BORNE IN THE SAME MANNER AS ARBITRATION.

(3) **REFEREE**. THE GENERAL REFEREE SHALL BE CHOSEN FROM THE PANEL OF REFEREES PROVIDED BY JUDICIAL ARBITRATION AND MEDIATION SERVICES, INC. (*"JAMS"*) AND SHALL HAVE THE AUTHORITY TO TRY ALL ISSUES, WHETHER OF FACT OR LAW, AND TO REPORT A STATEMENT OF DECISION TO THE COURT.

(4) **PROCEEDINGS**. THE PARTIES SHALL USE THE PROCEDURES ADOPTED BY JAMS FOR JUDICIAL REFERENCE (OR ANY OTHER ENTITY OFFERING JUDICIAL REFERENCE DISPUTE RESOLUTION PROCEDURES AS MAY BE MUTUALLY ACCEPTABLE TO THE PARTIES), PROVIDED THAT THE FOLLOWING RULES AND PROCEDURES SHALL APPLY IN ALL CASES UNLESS THE PARTIES AGREE OTHERWISE:

(i) THE JUDICIAL REFERENCE PROCEEDINGS SHALL BE HEARD IN THE COUNTY WHERE THE PROPERTY IS LOCATED.

(ii) THE REFEREE MUST BE A NEUTRAL AND IMPARTIAL RETIRED JUDGE OR A LICENSED ATTORNEY WITH SUBSTANTIAL EXPERIENCE IN RELEVANT REAL ESTATE MATTERS.

(iii) ANY DISPUTE REGARDING THE SELECTION OF THE REFEREE SHALL BE RESOLVED BY JAMS OR THE ENTITY PROVIDING THE REFERENCE SERVICES, OR, IF NO ENTITY IS INVOLVED, BY THE COURT WITH APPROPRIATE JURISDICTION.

(iv) THE REFEREE MAY REQUIRE ONE OR MORE PRE-HEARING CONFERENCES.

(v) THE PARTIES SHALL BE ENTITLED TO DISCOVERY IN ACCORDANCE WITH THE CODE OF CIVIL PROCEDURE, AND THE REFEREE SHALL OVERSEE DISCOVERY AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE.

**Seller's Initials**

**Buyer's Initials**

HLO\ Olivewood\ v.1 1/9/2024

-15-

**155**

(vi)    A STENOGRAPHIC RECORD OF THE REFERENCE TRIAL SHALL BE MADE, PROVIDED THAT THE RECORD SHALL REMAIN CONFIDENTIAL EXCEPT AS MAY BE NECESSARY FOR POST-HEARING MOTIONS AND ANY APPEALS.

(vii)    THE REFEREE'S STATEMENT OF DECISION SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW TO THE EXTENT APPLICABLE AND SHALL BE ISSUED WITHIN TWENTY (20) DAYS AFTER THE HEARING HAS BEEN CONCLUDED.

(viii)    THE REFEREE SHALL HAVE THE AUTHORITY TO RULE ON ALL POST-HEARING MOTIONS IN THE SAME MANNER AS A TRIAL JUDGE.

(ix)    THE STATEMENT OF DECISION OF THE REFEREE UPON ALL OF THE ISSUES CONSIDERED BY THE REFEREE IS BINDING UPON THE PARTIES, AND UPON FILING OF THE STATEMENT OF DECISION WITH THE CLERK OF THE COURT, OR WITH THE JUDGE WHERE THERE IS NO CLERK, JUDGMENT MAY BE ENTERED THEREON.  THE DECISION OF THE REFEREE SHALL BE APPEALABLE AS IF RENDERED BY THE COURT.  THIS PROVISION SHALL IN NO WAY BE CONSTRUED TO LIMIT ANY VALID CAUSE OF ACTION WHICH MAY BE BROUGHT BY ANY OF THE PARTIES.

(x)    THE PARTICIPATION BY ANY PARTY IN ANY JUDICIAL PROCEEDING CONCERNING THIS PARAGRAPH 26(b) OR ANY PRE-CLOSING DISPUTE SHALL NOT BE DEEMED A WAIVER OF THE RIGHT TO ENFORCE THIS PARAGRAPH 26(b) NOTWITHSTANDING ANY PROVISION OF LAW TO THE CONTRARY, SHALL NOT BE ASSERTED OR ACCEPTED AS A REASON TO DELAY, TO REFUSE TO PARTICIPATE IN, OR TO REFUSE TO ENFORCE THIS JUDICIAL REFERENCE PROVISION.

(c)    **SMALL CLAIMS COURT**.  NOTWITHSTANDING ANY PROVISION OF THIS PARAGRAPH 26 TO THE CONTRARY, EITHER PARTY MAY USE SMALL CLAIMS COURT AS AN ALTERNATIVE TO ARBITRATION OR JUDICIAL REFERENCE OF A PRE-CLOSING DISPUTE IF THE AMOUNT IN CONTROVERSY IS WITHIN THE JURISDICTIONAL LIMITS OF SMALL CLAIMS COURT.

27.  **General Dispute Resolution Provisions**.

(1)    PARAGRAPHS 25 AND 26 SHALL INURE TO THE BENEFIT OF, AND BE ENFORCEABLE BY, SELLER'S TRADE CONTRACTORS, AGENTS, VENDORS, SUPPLIERS, DESIGN PROFESSIONALS, INSURERS AND ANY OTHER PERSON WHOM BUYER CONTENDS IS RESPONSIBLE FOR ANY ALLEGED DEFECT IN OR TO THE PROPERTY OR AN IMPROVEMENT THERETO.

(2)    IF ANY PROVISION OF PARAGRAPH 25 OR 26 IS IN CONFLICT WITH OR IS DIFFERENT THAN ANY ALTERNATIVE DISPUTE RESOLUTION PROVISION OF ANY CC&RS OF ANY HOMEOWNER'S ASSOCIATION, MASTER ASSOCIATION OR ANY OTHER COMMON INTEREST DEVELOPMENT ASSOCIATION, THE PROVISIONS SET FORTH IN  PARAGRAPH 25 OR 26, AS APPLICABLE, SHALL CONTROL.

NOTICE:  BY INITIALING IN THE SPACE BELOW, YOU AND SELLER AGREE TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN PARAGRAPHS 25 AND 26 RESOLVED IN ACCORDANCE WITH THE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26.  YOUR AGREEMENT TO THE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS IS VOLUNTARY.  AS TO ALL DISPUTES SUBJECT TO THE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26, SELLER, ON BEHALF OF ITSELF AND ITS MEMBERS, OFFICERS, EMPLOYEES, CONTRACTORS, SUBCONTRACTORS, CONSULTANTS, AGENTS AND REPRESENTATIVES, AND BUYER WAIVE ANY RIGHTS TO JURY TRIAL, APPEAL AND OTHER CIVIL LITIGATION PROCEEDINGS FOR SUCH DISPUTES, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26.

I/WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN PARAGRAPHS 25 AND 26 TO THE PROCEDURES SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26.

BUYER'S INITIALS    /            SELLER'S INITIALS

28.  **Miscellaneous.** This Agreement is the entire agreement between the Parties concerning the subject matter hereof. Buyer has not executed this Agreement in reliance upon any promise, assurance, agreement, representation or warranty not expressly set forth herein.  All advertising material is superseded by this Agreement.  All representations and warranties of the Parties and any indemnity by the Parties under this Agreement shall survive the Close of Escrow and the delivery of the Grant Deed.  All Addenda attached hereto are a part of this Agreement.

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024                  -16-
**156**

**ADDENDUM**

**LIMITED WARRANTY**



Seller's Initials

Buyer's Initials

**ADDENDUM**

**INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**



*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024                    -18-

**Section 7109 (Departure from trade standards):** The contractor delivered and installed a stair railing system that is both dimensionally noncompliant and physically unstable. Specifically, the primary handrail fails to meet the graspability requirements established by the California Building Code and related local municipal guidelines. The cross-sectional perimeter of the handrail exceeds the maximum allowable 6.25 inches for a Type I handrail, and it does not conform to any recognized Type II exemption. Furthermore, the handrail exhibits lateral movement upon light pressure, indicating improper anchoring or substandard materials. These deficiencies constitute a negligent departure from accepted trade practices and minimum safety standards for residential stair systems.

**Section 7113 (Failure to complete work or comply with specifications):** The stair railing as installed does not meet applicable code requirements for handrail size, graspability, or structural integrity. Despite being notified of these defects, the contractor has failed to provide corrective measures or submit a revised, code-compliant design. The failure to bring the railing into compliance or to provide engineering validation of its legality represents a failure to deliver work consistent with minimum specifications, particularly as they relate to occupant safety.

**Section 7110 (Disregard of building laws):** The installation and continued defense of a noncompliant stair railing constitutes a disregard of mandatory building codes adopted by the State of California and enforced through local jurisdictions. In addition, the contractor or their representatives have made misleading representations about the legality of the railing's design, including unsubstantiated references to subjective code exceptions. No evidence has been provided demonstrating that the stair railing meets either dimensional or performance-based criteria under the applicable sections of the California Building Code.

---

### 6. Claimant was damaged by such violations as follows

The installation of a non-graspable, wobbly stair railing constitutes both a safety hazard and a defect in the home's structural usability. The railing fails to meet code requirements that are specifically designed to protect occupants from falls and other injuries, particularly in homes with staircases of significant height. The defect has caused the homeowner ongoing anxiety and forced them to delay use and furnishing of key areas of the home. Furthermore, the contractor's refusal to acknowledge or correct the violation signals a pattern of disregard for statutory obligations and consumer safety. The continued presence of this noncompliant feature negatively affects both the marketability and insurability of the property.

*"For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison."*

## PROOF OF CLAIM FORM

### CALIFORNIA CONTRACTORS LICENSE

State of California

County of ___Orange_____

I, _____Jeffrey Gu_____ on behalf of ____Di Lan Ge_____
    (Name of Individual)                              (Name of Claimant)

of _____129 Oakstone, Irvine CA 92618____ being duly sworn according
         (Address of Claimant)

to law, upon my oath depose and say:

1). Claimant asserts this claim with respect to the acts

of __TNHC REALTY AND CONSTRUCTION INC CSLB 938080__, in its capacity as a
    (Name of Licensed Contractor)

contractor pursuant to the Contractor's license.

2). This claim relates to the following (check where

appropriate):

__X__ home improvement to Claimant's primary residence

_____ home improvement not to Claimant's primary residence

_____ improvement to non-residential property

_____ failure to pay wages to licensed Contractor employees

_____ trust fund damaged by Contractor failure to pay fringe benefits per union collective bargaining agreement

_____ Other _____
                           (describe)

Page 1 of 4

160

3). The amount claimed under this surety bond claim is
$ 14,900. .

4). Claimant, between the dates of ___6/1/24___ and ___5/25/25___
(check one) ___ furnished to or _x_ purchased from _____
_____A new house_____ Contractor in accordance
   (Describe services or materials)
with a __x__ Contract or _____ Purchase Order dated ___6/25/24___, a
copy of which is attached hereto, for the agreed price of
$_____3,699,990_____ .

5). Claimant contends that the Contractor violated the
following provision(s) of Division 3, Chapter 9 (commencing with
Section 7000) of the Business and Professions Code of the State
of California: ___See attached_____
                  (Cite Specific Section(s))
The violations are as follows: _____
_____;
         (Explain – attach additional sheets, if necessary)

6). Claimant was damaged by such violations as follows: __
         See attached
_____
_____.
         (Explain – attach additional sheets, if necessary)

7). Attached hereto are documents showing the demands for
payment from Contractor and the amount due to Claimant and all
responses received from the Contractor.

8). The foregoing information is furnished to the Surety

Page 2 of 4

161

in support of the claim and it is understood that the furnishing of this form or the acceptance and/or retention thereof by the Surety does not constitute a waiver of any of the terms of the Surety's bond nor of any defenses the Surety may have, not an admission of liability thereunder.

9).  This claim is being made against Bond No. __0507551__ (if known) and a copy of the Bond is __yes__ attached hereto _____ unavailable.

10). Claimant is a (check one):

___ Corporation

___ General Partnership

___ Limited Partnership. Managing partner is _____

___ Sole Proprietorship.

_x_ Other. __Homeowner__
             (specify)

IN WITNESS WHEREOF, on this __12__ day of __June__, 200__2025__, the undersigned hereby acknowledges that I am the ___representative___ (state title of officer or authorized capacity on behalf of Claimant) of the claimant named below and that I caused these presents to be duly executed with the authority and on behalf of the claimant.

Signed: __Di Lan Ge__ (Corporate Seal)
          (Name of Claimant)

By:_____
        (Signature)

Page 3 of 4

**162**



163



164

From: Di Lan Ge & Xian Feng Gu
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

4/2/25

Notice of SB 800 Claim – Unsafe Stair Railing System

To Whom This May Concern:

Pursuant to California Civil Code § 910, this letter constitutes a formal Notice of Claim regarding a defect in the construction of the stair railing system at 129 Oakstone, Irvine, CA 92618. We have observed the following with respect to the stair railing system:

- Loose wooden newel posts and iron balusters
- Noticeable flexing or movement when light force is applied

These conditions present a serious safety hazard, particularly for children, elderly individuals, or guests using the staircase. Due to these safety concerns, beginning on February 18, 2025, we began altering our use of the stairwell and house. We also submitted warranty service requests on that date with photo references, as much as was feasible.

Please respond within the timeframes required by California Civil Code § 913 and arrange for the inspection and repair of the stair railing system, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

**165**

# Exhibit 7

| | |
|---|---|
| **From:** | Jeffrey Gu <jeffwgu@gmail.com> |
| **Sent:** | Monday, July 14, 2025 8:34 AM |
| **To:** | Melanie Woodfin |
| **Cc:** | Samuel Plante; Ira Lebovic |
| **Subject:** | Representations to IAT Surety |
| **Attachments:** | 2025.0625 Hoffmann_Stair Railing Bond Claim.pdf |

 ⚠️ External Message

Hi Melanie,

In your June 25, 2025 letter to IAT Surety, you write that I sent "a letter threatening a lawsuit." Could you please provide me with a copy of that letter and the date and time that your firm received it?

Moreover, I'd like to understand what "SB800 building standards" are, or at least what you and/or your firm understands them to mean. Your education would be helpful here.

I have highlighted those sections in the attached copy in case your memory does not serve you well. While there are a number of factual inaccuracies or confused ideas in the letter (which I'm sure an experienced founding attorney like Mr. Lebovic could pinpoint right away), these are the main ones that I think would help in clearing the record.

-Jeffrey

> Pursuant to the Second Bond Complaint, Mr. Gu seeks payment under the Bond in the amount of $14,900 for the cost to repair the stair railing at the Home. No estimates were provided which identify the basis for the amount sought. Mr. Gu claims that the stair railing system is "dimensionally noncompliant and physically unstable." He further claims that it does not meet the applicable code requirements for handrail size and graspability. Mr. Gu does not identify any building standard violations set forth in Civil Code section 896 ("SB800"). Rather, he identifies California Business and Professions Code sections 7109, 7113, and 7110. However, SB800 is Mr. Gu's exclusive remedy for construction defects at the Home. Mr. Gu's claim does not constitute a construction defect under California law. Specifically, handrail size and graspability are not violations of the SB800 building standards and, as discussed below, there is no evidence of instability of the handrailing or posts.

> duplicative of the Notices, and a letter threatening a lawsuit (a copy of which is attached as Exhibit "B").

> Should you wish to discuss this matter further, please feel free to contact me.

> Sincerely,

> Melanie S. Woodfin

MSW
Enclosures

cc:    Sam C. Plante, Esq.
       Janelle Launi, Paralegal



18100 Von Karman Ave., Suite 700
Irvine, California 92612
p (949) 271-8700
f (949) 627-2611
www.phlklaw.com

Melanie S. Woodfin, Partner
mwoodfin@phlklaw.com

June 25, 2025

**VIA E-MAIL AND U.S. MAIL**

Carrie Hoffmann, Sr. Bond Claims Specialist
IAT Surety
847 S. Randall Road, Suite 402
Elgin, IL  60123
carrie.hoffmann@iatinsurance.com

Re:    ***Gu, Jeffrey v. TNHC Realty and Construction Inc.***
       Surety:          Harco National Insurance Company
       Bond No.:        CAHNSU0507551
       Claim No.:       39498-2
       PHLK File No.:   0066-2818

Dear Ms. Hoffmann:

As you know, we are outside counsel for TNHC Realty and Construction Inc. ("TNHC") and have been asked to provide a response to Mr. Jeffrey Gu's claim against Bond No. 0507551 ("Bond") dated June 12, 2025 pertaining to the stair railings at the home located at 129 Oakstone, Irvine California 92618 (the "Home") ("Second Bond Complaint").

Pursuant to the Second Bond Complaint, Mr. Gu seeks payment under the Bond in the amount of $14,900 for the cost to repair the stair railing at the Home.  No estimates were provided which identify the basis for the amount sought.  Mr. Gu claims that the stair railing system is "dimensionally noncompliant and physically unstable."  He further claims that it does not meet the applicable code requirements for handrail size and graspability.  Mr. Gu does not identify any building standard violations set forth in Civil Code section 896 ("SB800").  Rather, he identifies California Business and Professions Code sections 7109, 7113, and 7110.  However, SB800 is Mr. Gu's exclusive remedy for construction defects at the Home.  Mr. Gu's claim does not constitute a construction defect under California law.  Specifically, handrail size and graspability are not violations of the SB800 building standards and, as discussed below, there is no evidence of instability of the handrailing or posts.

Further, the City of Irvine's Building and Safety Division approved the structural plans for the stair railing and posts and inspected the Home prior to issuing a Certificate of Occupancy ("COO").  A copy of the approved plans are attached.  The City of Irvine completed the final inspection of the Home and the COO was issued.  Accordingly, the size of the handrail and the

PH PLANTE HUGUENIN
LK LEBOVIC KAHN LLP

design and construction of the stair railing and posts were approved and inspected by the City of Irvine prior to Mr. Gu's occupancy.

In addition, as provided in TNHC's initial response letter, the parties proceeded under the SB 800 procedures under 16 separate Notices of Claim. During that process, Mr. Gu provided an SB800 Notice dated April 2, 2025 that identifies the same issue; namely, that he observed the following issues with respect to the stair railing system: (1) loose wooden newel posts and iron balusters; and (2) noticeable flexing or movement when light force is applied. A copy of the SB800 Notice was provided in Exhibit "A" of our May 28, 2025 response letter and attached to Mr. Gu's Second Bond Complaint.

TNHC hired a construction consultant to inspect this alleged condition. The consultant inspected the stair railing and did not observe the condition alleged by Mr. Gu. TNHC, however, did offer to paint an area with unfinished paint application on the guardrail post as a courtesy. A copy of TNHC's response letter to Mr. Gu was attached to our May 28, 2025 letter as Exhibit "B" and attached to Mr. Gu's Second Bond Complaint.

Even if this condition were observed, it is not covered under the Limited Warranty. There is no line item in the Limited Warranty relating to loose railings. If these issues were from original construction, Mr. Gu was required to identify it in the New Homeowner Orientation form or the House to Home Walk form which he signed at the time of his final walk-throughs before taking possession of the Home. He did not identify a loose railing or "graspability" issues at the time of the final walk-through. See Exhibits "A" and "B" to our June 5, 2025 letter. Further, under the Limited Warranty,

> A Condition will only be a Covered Claim under this Fit and Finish
> Warranty if the condition is the result of a Component or function
> not being in compliance with the Fit and Finish Standards.

(See Page 6 of the Limited Warranty, attached as Exhibit "C" to our June 5, 2025 letter.) Moreover, ordinary wear and tear, misuse, and abuse is not covered. (See Section 5, page 16, paragraph 6 to the Limited Warranty.)

Moreover, Mr. Gu executed an Individual Dispute Resolution Agreement ("IDRA") which contains the parties' agreement to complete certain alternative dispute resolution procedures. A copy of the IDRA is attached as Exhibit "A." Specifically, it provides that any construction issues must first be submitted to customer care, then through SB 800, and if not resolved through these pre-litigation procedures, to binding arbitration. (See Exhibit "A," pages 6-10, Sections 5.1, 5.2 and 5.3.) Instead of complying with the parties' agreement, he has filed two claims against the Bond.

TNHC has been and continues to act in good faith to resolve Mr. Gu's concerns, both under TNHC's customer care procedures, and through the SB800 process. However, Mr. Gu has responded with bad faith conduct including repeated conduct intended to harass and annoy TNHC. We previously outlined such behavior which includes trespassing on TNHC's active construction site and 16 separate SB 800 Notices, two claims against the Bond which are

**169**

**PH** PLANTE HUGUENIN
**LK** LEBOVIC KAHN LLP

duplicative of the Notices, and a letter threatening a lawsuit (a copy of which is attached as Exhibit "B").

Should you wish to discuss this matter further, please feel free to contact me.

Sincerely,

Melanie S. Woodfin

MSW
Enclosures

cc:     Sam C. Plante, Esq.
        Janelle Launi, Paralegal

# Exhibit "A"

171

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

166.00

||||||||||||||||||||||||||||||||||||||||||||||||
* $ R 0 0 1 5 0 1 0 1 1 5 $ *

2024000156494 8:00 am 06/25/24
491 CR-SC06 A12    54
0.00 0.00 0.00 0.00 159.00 0.00 0.000.000.00 0.00

**RECORDED AT THE REQUEST OF:**

Recording Requested By:
First American Title Company
Homebuilder Services Division

**WHEN RECORDED RETURN TO:**

The New Home Company
15231 Laguna Canyon Rd., Suite 250
Irvine, CA  92618
Attn:  Lori Michel

6923749

# INDIVIDUAL DISPUTE RESOLUTION AGREEMENT

# FOR

# OLIVEWOOD

Exempt from fee per GC 27388.1 (a)(2): recorded concurrently "in connection with"
a transfer subject to the imposition of documentary transfer tax (DTT)

HLO\ Olivewood\ v.1 9/20/2023

172

# TABLE OF CONTENTS

**Page**

*ARTICLE I* APPLICABILITY ..................................................................................................... 1

1.1.    PROPERTY SUBJECT TO INDIVIDUAL DISPUTE RESOLUTION
        AGREEMENT ................................................................................................... 1
1.2.    PURPOSE ........................................................................................................... 1

*ARTICLE II* DEFINITIONS ..................................................................................................... 1

2.1.    BUSINESS DAYS ............................................................................................. 1
2.2.    CLAIM PROCESS ............................................................................................. 1
2.3.    COUNTY ............................................................................................................ 2
2.4.    DISPUTE DECLARATION .............................................................................. 2
2.5.    HOMEOWNER MANUAL ................................................................................ 2
2.6.    INDIVIDUAL DISPUTE RESOLUTION AGREEMENT ................................ 2
2.7.    ISSUES .............................................................................................................. 2
2.8.    LIMITED WARRANTY ................................................................................... 2
2.9.    MAINTENANCE GUIDELINES ...................................................................... 2
2.10.   MASTER ASSOCIATION ................................................................................ 2
2.11.   MASTER DECLARATION ............................................................................... 2
2.12.   MASTER DEVELOPER .................................................................................... 2
2.13.   MERCHANT BUILDER .................................................................................... 2
2.14.   MERCHANT BUILDER DISPUTE ................................................................... 2
2.15.   MERCHANT BUILDER PARTIES ................................................................... 3
2.16.   OWNER .............................................................................................................. 3

        2.16.1  INITIAL OWNER .............................................................................. 3

        2.16.2  SUCCESSOR OWNER ...................................................................... 3

2.17.   PROJECT ........................................................................................................... 3
2.18.   PROPERTY ........................................................................................................ 3
2.19.   RESIDENCE ...................................................................................................... 3
2.20.   SUBSEQUENTLY RECORDED DOCUMENT ................................................ 4
2.21.   SUPPLEMENTAL DECLARATION ................................................................ 4
2.22.   TITLE 7 .............................................................................................................. 4
2.23.   TITLE 7 CLAIM ................................................................................................ 4

*ARTICLE III* OWNER ACKNOWLEDGMENT OF NOTICES ............................................... 4

3.1.    STATUTORY STANDARDS ............................................................................ 4
3.2.    CLAIM PROCESS ............................................................................................. 4
3.3.    AGENT ............................................................................................................... 5

*ARTICLE IV* WARRANTIES AND MAINTENANCE ............................................................ 5

4.1.    LIMITED WARRANTY ................................................................................... 5
4.2.    MANUFACTURED PRODUCTS ...................................................................... 5

4.3.     HOMEOWNER MANUAL.................................................................................................6
4.4.     DUTY TO MAINTAIN ...................................................................................................6

*ARTICLE V* CLAIM PROCESSES AND DISPUTE RESOLUTION PROCEDURES...............................6

5.1.     CUSTOMER SERVICE ..................................................................................................6
5.2.     CLAIM PROCESS OR MEDIATION: ...........................................................................6

     5.2.1   TITLE 7 CLAIM .............................................................................6

     5.2.2   OTHER CLAIM ...............................................................................6

     **5.2.3   MEDIATION FAILS TO SETTLE CLAIM**....................................8
5.3.     MANDATORY BINDING ARBITRATION......................................................................8
5.4.     JUDICIAL REFERENCE..............................................................................................11
5.5.     DISPUTES EXEMPT FROM THIS INDIVIDUAL DISPUTE RESOLUTION
         AGREEMENT ...........................................................................................................12
5.6.     DISPUTES TO BE RESOLVED INDEPENDENTLY........................................................12

*ARTICLE VI* AMENDMENT AND ENFORCEMENT ..............................................................13

6.1.     AMENDMENTS ..........................................................................................................13
6.2.     ENFORCEMENT .........................................................................................................13
6.3.     THIRD PARTY BENEFICIARIES ..................................................................................13

*ARTICLE VII* MISCELLANEOUS PROVISIONS .....................................................................13

7.1.     BINDING....................................................................................................................13
7.2.     CONFLICT .................................................................................................................13
7.3.     CONSTRUCTION OF PROVISIONS ..............................................................................14
7.4.     EXHIBITS ..................................................................................................................14
7.5.     MORTGAGE PROTECTION .........................................................................................14
7.6.     REDISTRIBUTION OF DOCUMENTS...........................................................................14
7.7.     SEVERABILITY OF PROVISIONS ................................................................................14
7.8.     SUCCESSOR STATUTES..............................................................................................14
7.9.     TERM .......................................................................................................................14

## INDIVIDUAL DISPUTE RESOLUTION AGREEMENT
## FOR
## OLIVEWOOD

THIS INDIVIDUAL DISPUTE RESOLUTION AGREEMENT FOR OLIVEWOOD (*"Individual Dispute Resolution Agreement"*) is entered into by and between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (*"Merchant Builder"*), and Xian Feng Gu, Trustee and Di Lan Ge, Trustee (*"Initial Owner"*) as part of the purchase of the Residence by Initial Owner from Merchant Builder.  Merchant Builder and Owner are collectively referred to as the *"parties"* and individually as a *"party."*

| |
|---|
| ***ARTICLE I***<br>**APPLICABILITY** |

 1.1.  **PROPERTY SUBJECT TO INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**: Merchant Builder has agreed to transfer or has conveyed to Initial Owner the following described real property (*"Property"*) situated in the City of Irvine, County of Orange, State of California, described as follows:

 Lot 88 of Tract No. 19176 as shown on a map recorded in Book 1000, Pages 27 through 37, inclusive, of the Miscellaneous Maps of Orange County, California.

 1.2.  **PURPOSE**:  This Individual Dispute Resolution Agreement establishes covenants and agreements between Merchant Builder and (a) Initial Owner and (b) each Successor Owner of the Property.  It is the intention of the parties to record this document against the Property at close of escrow for the transfer of title from Merchant Builder to Initial Owner.  This Individual Dispute Resolution Agreement is provided to Initial Owner in compliance with the Dispute Declaration, a copy of which has been provided by Merchant Builder to Initial Owner.  This Individual Dispute Resolution Agreement is part of the consideration for the bargained-for purchase of the Property by Initial Owner from Merchant Builder.  The Property shall be held, conveyed, hypothecated, encumbered, leased, rented, used, occupied and improved subject to the terms of this Individual Dispute Resolution Agreement.  All of the agreements, notices and obligations stated in this Individual Dispute Resolution Agreement shall run with the Property and shall inure to the benefit of and be binding on each and every Successor Owner of the Property.

| |
|---|
| ***ARTICLE II***<br>**DEFINITIONS** |

Unless otherwise defined or unless the context clearly requires a different meaning, the terms used in this Individual Dispute Resolution Agreement shall have the meanings specified in this Article.  All capitalized terms in this Individual Dispute Resolution Agreement which are not defined in this Article or elsewhere in this Individual Dispute Resolution Agreement shall have the same meanings given them in the Dispute Declaration or the Master Declaration.

 2.1.  **BUSINESS DAYS**:  The term *"Business Days"* shall mean Monday through Friday, except for Federal or State holidays.

 2.2.  **CLAIM PROCESS**:  The term *"Claim Process"* shall mean those non adversarial

HLO\ Olivewood\ v.1 9/20/2023                          1

**175**

procedures set forth in Chapter 4 of Title 7.

2.3.    **COUNTY**:  The term *"County"* shall mean Orange County, California.

2.4.    **DISPUTE DECLARATION**:    The term *"Dispute Declaration"* shall mean the Declaration of Dispute Resolution Procedures for Olivewood recorded against the Property on March 14, 2024, as Instrument No. 2024000056633, in the Official Records of the County, and any Subsequently Recorded Document which amends or supplements the Dispute Declaration.

2.5.    **HOMEOWNER MANUAL**:    The term *"Homeowner Manual"* shall mean the Homeowner Manual provided to Owner by Merchant Builder or the other Merchant Builder Parties which includes important information regarding the Property, including guidelines for maintenance, care and use of the Property.

2.6.    **INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**:    The term *"Individual Dispute Resolution Agreement"* shall mean this Individual Dispute Resolution Agreement and any Subsequently Recorded Document which amends this Individual Dispute Resolution Agreement.

2.7.    **ISSUES**:  The term *"Issues"* shall mean alleged deficiencies in construction, design, specifications, surveying, planning, supervision, testing, or observation of construction or any substandard condition related in any way to the Residence, the Property or the Project.

2.8.    **LIMITED WARRANTY**:    The term *"Limited Warranty"* shall mean the Limited Warranty applicable to the Residence attached to this Individual Dispute Resolution Agreement as **Exhibit "A"**.

2.9.    **MAINTENANCE GUIDELINES**:  The term *"Maintenance Guidelines"* shall mean all maintenance obligations, guidelines, schedules and practices communicated to Owner in writing by Merchant Builder or the other Merchant Builder Parties, including, without limitation all product manufacturers' use, maintenance and care instructions provided to Owner by Merchant Builder or the other Merchant Builder Parties, as well as commonly accepted maintenance practices.  Such commonly accepted maintenance practices include, but are not limited to, those set forth in the Homeowner Manual and those established by product manufacturers.

2.10.    **MASTER ASSOCIATION**:    The term *"Master Association"* shall mean Portola Springs Community Association, a California nonprofit mutual benefit corporation, established pursuant to the Master Declaration.

2.11.    **MASTER DECLARATION**:  The term *"Master Declaration"* shall mean the document entitled "Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs," recorded in the Official Records of the County, as amended or restated from time to time.

2.12.    **MASTER DEVELOPER**:  The term *"Master Declaration"* shall mean the "Declarant" defined in the Master Declaration.

2.13.    **MERCHANT BUILDER**:  The term *"Merchant Builder"* shall mean The New Home Company Southern California LLC, a Delaware limited liability company, and its successors and assigns.

2.14.    **MERCHANT BUILDER DISPUTE**:  The term *"Merchant Builder Dispute"* shall mean any claim, issue or controversy that arises from or is related in any way to (i) the Project, (ii) the Property, (iii) the Residence or (iv) the relationship between Initial Owner and Merchant Builder, whether

contractual, statutory or in tort, including without limitation, claims, issues or controversies that arise from or are related to the purchase, sale, condition, design, construction or materials used in construction of any portion of the Project, the Property or the Residence, the agreement between Merchant Builder and Owner to purchase the Residence or any related agreement, a Limited Warranty, disclosures, or Issues, including without limitation the following: (a) a Title 7 Claim; (b) any disagreement as to whether conditions that are the subject of a Title 7 Claim have been properly repaired; (c) any disagreement as to the value of repairing damages which are the subject of a Title 7 Claim; (d) the cost of repairing damage caused by the repair efforts, the cost to remove or replace an improper repair, and any alleged relocation expenses, storage expenses, lost business income, investigation costs and all other fees and costs recoverable by contract or statute as a result of a Title 7 Claim; and (e) any disagreement concerning the timeliness of Merchant Builder's performance or Owner's notification under a Limited Warranty or the Claim Process. Notwithstanding anything to the contrary in this Individual Dispute Resolution Agreement, any and all Disputes (as defined in Section 14 of Article V of the Master Declaration) between or among the Master Association, Owner and/or any of the Developer Parties (including the Master Developer) that (i) arises out of, or relates to, or in any way is connected with the Master Association Documents or the Community, (ii) involves a claim for damage to the Master Association Property or Maintenance Area or damage to the Property integrally related to any damage to the Master Association Property and/or Maintenance Area, or (iii) involves the Master Developer, the Master Association, the Master Association Property and/or a Maintenance Area (collectively, the *"Master Disputes"*) shall be resolved solely in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration, and not the alternative dispute resolution procedures set forth herein.

2.15.    **MERCHANT BUILDER PARTIES**: The term *"Merchant Builder Parties"* shall mean Merchant Builder and its partners, members or other principals and their respective officers, agents, employees, affiliated parent and subsidiary companies, successors and assigns, design centers, subcontractors, design professionals, engineers, inspectors and material suppliers who provided labor, services or materials to any portion of the Project.

2.16.    **OWNER**: The term *"Owner"* shall mean the person or entity that holds record fee title to the Property after the initial conveyance of the Property by Merchant Builder, including the Initial Owner and any Successor Owner. The term "Owner" shall include a contract purchaser (vendee) under an installment land contract but shall exclude any person having an interest in the Property merely as security for performance of an obligation.

2.16.1 **INITIAL OWNER**: The term *"Initial Owner"* shall mean the undersigned Owner who initially acquires or acquired title to the Property from Merchant Builder.

2.16.2 **SUCCESSOR OWNER**: The term *"Successor Owner"* shall mean any person or entity who acquires title to the Property from an Initial Owner or from a Successor Owner.

2.17.    **PROJECT**: The term *"Project"* shall mean the residential development in which the Property is located. The Project is located within the master community of Portola Springs (*"Community"*).

2.18.    **PROPERTY**: The term *"Property"* shall mean the real property described in Section 1.1 above.

2.19.    **RESIDENCE**: The term *"Residence"* shall mean the single family residential dwelling situated on the Property and all Improvements on the Property, excluding any Improvements which are required to be maintained by the Master Association in accordance with the Master Declaration or a document annexing real property to the Master Declaration.

2.20.  **SUBSEQUENTLY RECORDED DOCUMENT**: The term *"Subsequently Recorded Document"* shall mean each of the following documents which is recorded in the Official Records of the County:  (i) an amendment to the Dispute Declaration, (ii) an amendment to an Individual Dispute Resolution Agreement, (iii) a Supplemental Declaration or (iv) an amendment to a Supplemental Declaration.

2.21.  **SUPPLEMENTAL DECLARATION**: The term *"Supplemental Declaration"* shall mean any instrument recorded in the County which extends the provisions of the Dispute Declaration to other real property and any Subsequently Recorded Document which amends a Supplemental Declaration.

2.22.  **TITLE 7**: The term *"Title 7"* shall mean Title 7, Part 2 of Division 2 of the California Civil Code (Section 895 et seq.) as amended from time to time.

2.23.  **TITLE 7 CLAIM**: The term *"Title 7 Claim"* shall mean any claim, issue or controversy that arises from or is related in any way to any alleged violation of the standards set forth in California Civil Code Sections 895 through 897.

---

*ARTICLE III*
**OWNER ACKNOWLEDGMENT OF NOTICES**

---

## NOTICES

**NOTICE:  Merchant Builder has elected to be subject to Chapter 2 of Title 7 ("*Title 7*"), Part 2 of Division 2 of the California Civil Code (Section 896 et seq.).  See Section 3.1.**

**NOTICE:  Merchant Builder intends to utilize the non adversarial procedures set forth in Chapter 4 of Title 7 (California Civil Code Sections 910 et seq.).  See Section 3.2.**

**NOTICE:  The name and address of the agent Merchant Builder has designated for service of notice of claims pursuant to Title 7 is set forth in Section 3.3 below.**

Initial Owner's Initials _P GT X G_

---

3.1.  **STATUTORY STANDARDS**:  Chapter 2 of Title 7 provides standards for the installation, construction, design, specifications, surveying, planning, supervision, testing, or observation of construction of the Residence.  A complete copy of Chapter 2 of Title 7 is attached to the Dispute Declaration as **Exhibit "B-2."**

3.2.  **CLAIM PROCESS**:  Chapter 4 of Title 7 establishes non adversarial procedures to address claims for damages arising from or relating to Issues.  California Civil Code Section 914 provides that builders must notify buyers whether they intend to engage in the non adversarial procedures set forth in Chapter 4 of Title 7 or to enforce alternative non adversarial procedures.  Merchant Builder hereby notifies Owner that it intends to utilize the non adversarial procedures set forth in Chapter 4 of Title 7 (referred to in this Individual Dispute Resolution Agreement as the *"Claim Process"*).  The Claim Process impacts the legal rights of Owner.

**By initialing below Initial Owner acknowledges (a) the existence of Chapter 4 of Title 7, (b) that Initial Owner has received a copy of Chapter 4 of Title 7 which is attached to the Dispute Declaration as Exhibit "B-4," and a copy of all of Title 7 which is attached to the Dispute Declaration as Exhibit "B" and (c) that the Claim Process impacts the legal rights of Initial Owner**

HLO\ Olivewood\ v.1 9/20/2023         4

**178**

and Successor Owners. By initialing in the space below, Initial Owner is giving up its judicial rights to discovery and appeal, and if Initial Owner refuses to submit to arbitration after entering into this Individual Dispute Resolution Agreement, Initial Owner may be compelled to arbitrate under the Federal Arbitration Act and the California Arbitration Act, to the extent the California Arbitration Act is consistent with the Federal Arbitration Act.

Sales Representative's Initials _____        Initial Owner's Initials _____

3.3.    **AGENT**: Merchant Builder hereby notifies Owner that Merchant Builder's agent for notice (*"Merchant Builder's Agent for Notice"*) is:

> The New Home Company
> 15231 Laguna Canyon Rd., Suite 250
> Irvine, CA 92618
> Attn: Miek Harbur

Owner may commence the Claim Process by filing a claim with Merchant Builder's Agent for Notice at the address set forth above via certified mail, overnight mail or personal delivery to Merchant Builder's Agent for Notice. If Merchant Builder changes the identity or address of Merchant Builder's Agent for Notice in the future, Merchant Builder will notify the Secretary of State of the State of California (or the governmental agency then responsible for monitoring agents for service of process) of any such change and Owner may obtain the identity and address of Merchant Builder's Agent for Notice by inquiry to the Secretary of State of the State of California (or the governmental agency then responsible for monitoring agents for service of process).

By initialing below Initial Owner and Merchant Builder's Sales Representative acknowledge the name and address of Merchant Builder's Agent for Notice:

Sales Representative's Initials _____        Initial Owner's Initials _____

---

**ARTICLE IV**
**WARRANTIES AND MAINTENANCE**

---

4.1.    **LIMITED WARRANTY**: Merchant Builder has provided Initial Owner with the Limited Warranty applicable to the Residence, in the form attached hereto as **Exhibit "A"**. The Limited Warranty shall, unless previously released, fully transfer to each Successor Owner of the Residence, including any mortgagee in possession, for the remainder of the applicable warranty term as set forth in the Limited Warranty.

4.2.    **MANUFACTURED PRODUCTS**: Merchant Builder has made available for Initial Owner's review maintenance procedures, maintenance schedules, maintenance recommendations, and manufacturer limited warranty information (*"Product Information"*) for Manufactured Products (as defined below) applicable to the Residence. *For purposes of this Section, a "Manufactured Product" means a product that is completely manufactured off site, all appliances, pieces of equipment, or other items installed in the Residence that are consumer products for the purposes of the Magnuson Moss Warranty Act (15 U.S.C. Section 2301 et. seq.) and solar energy systems, including inverters.* The Product Information will be delivered to Initial Owner at the close of escrow. The Product Information available for review by Initial Owner before the close of escrow may be in sample form or otherwise different than the Product Information actually provided to Initial Owner at the close of escrow. The actual Product Information provided at the close of escrow shall control. The Product Information for the Manufactured Products has been created by the manufacturers or suppliers of the Manufactured Products

and not by Merchant Builder. Merchant Builder has not reviewed or approved and does not endorse, warrant or guaranty the Product Information or the Manufactured Products to which the Product Information applies. In order to assure that the Manufactured Products function properly throughout their useful life, and in order to maintain any warranty provided by the manufacturer for the Manufactured Products, Owner must comply with the recommendations and requirements included in the Product Information. Owner shall provide the Product Information to its Successor Owner.

**TO THE FULLEST EXTENT PERMITTED BY LAW, MERCHANT BUILDER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO MANUFACTURED PRODUCTS (INCLUDING CONSUMER PRODUCTS) INSTALLED IN OR AROUND THE RESIDENCE. DEFECTS IN MANUFACTURED PRODUCTS ARE NOT COVERED UNDER MERCHANT BUILDER'S LIMITED WARRANTY AND OWNER'S SOLE AND EXCLUSIVE REMEDY FOR DEFECTS IN MANUFACTURED PRODUCTS IS AGAINST THE PRODUCT MANUFACTURER.**

4.3. **HOMEOWNER MANUAL**: Merchant Builder has provided Owner with a Homeowner Manual which includes maintenance guidelines for the Property. Owner must perform all required and recommended inspection and maintenance procedures set forth in the Homeowner Manual and must provide a copy of the Homeowner Manual to its Successor Owner.

4.4. **DUTY TO MAINTAIN**: Owner agrees to maintain Owner's Residence in accordance with the Homeowner Manual and all Maintenance Guidelines.

---

### *ARTICLE V*
### CLAIM PROCESSES AND DISPUTE RESOLUTION PROCEDURES

---

5.1. **CUSTOMER SERVICE**: Merchant Builder has established a Customer Service Department for all Owners. The procedures for processing a request for service (***"Service Request"***) through the Customer Service Department are set forth in the Limited Warranty and are available online at CustomerCareNHC.com (or by following the links at Merchant Builder's general website for "service", "customer care" or "warranty"). Owners should also consider the Customer Service Department a resource both for general information and to answer specific questions regarding construction of the Owner's Residence. **A Service Request is not a claim pursuant to the Claim Process.** If Owner's claim is not resolved under the Limited Warranty and Owner wishes to initiate a claim, Owner must follow the steps set forth in Section 5.2.

5.2. **CLAIM PROCESS OR MEDIATION:**

5.2.1 **TITLE 7 CLAIM**: If the customer service process does not resolve a Title 7 Claim to the satisfaction of Owner, Owner shall file a written Notice of Claim in accordance with the provisions of California Civil Code Section 910 with Merchant Builder's Agent for Notice at the address provided in Section 3.3 above. The Notice of Claim must (i) provide Owner's name, address and telephone number (or the information necessary to use an alternative method of contact such as facsimile or e-mail) and (ii) describe the Title 7 Claim in sufficient detail to enable Merchant Builder to determine the location, nature and extent of the Title 7 Claim and what area or components of the Residence are involved.

5.2.2 **OTHER CLAIM**: If a Merchant Builder Dispute does not involve a Title 7 Claim (***"Other Claim"***) and is not resolved to the satisfaction of Owner, Owner shall file a written Notice of Claim with Merchant Builder's Agent for Notice at the address provided by Section 3.3 above. The Notice of Claim must (i) provide Owner's name, address and telephone number (or the information

necessary to use an alternative method of contact such as facsimile or e-mail), (ii) describe the Other Claim in sufficient detail to enable Merchant Builder to determine the location, nature and extent of the Other Claim, and (iii) include a request for mediation. Merchant Builder and Owner shall, in good faith, attempt to resolve the Other Claim by mediation in accordance with this Section.

(a)      **Mediator.** The mediation shall be conducted by a single neutral and impartial mediator employed by Judicial Arbitration and Mediation Services, Inc. (*"JAMS"*) or the American Arbitration Association, in accordance with the rules established by the selected service (*"Mediation Provider"*). Merchant Builder shall have the right to select the mediator by notifying Owner in writing within ten (10) Business Days following the date of service of the Notice of Claim. If Merchant Builder selects the mediator, Merchant Builder shall pay any filing fees required by the Mediation Provider and the first four (4) hours of the mediator's fees. If the mediation lasts more than four (4) hours, any additional fees shall be split equally between Owner and Merchant Builder. At Owner's sole option, Owner may agree to share the filing fees required by the Mediation Provider and the fees of the mediator, including the first four (4) hours, equally with Merchant Builder. If Owner so agrees, then Owner and Merchant Builder shall jointly select the mediator. If the parties cannot agree on a mediator within fourteen (14) days following the date of service of the Notice of Claim, the Mediation Provider shall select the mediator. No person with any financial or personal interest in the mediation's result shall serve as a mediator, except by the written consent of the parties. Prior to accepting any appointment, the prospective mediator shall disclose any circumstances likely to create a presumption of bias or prevent a prompt commencement of the mediation process.

(b)      **Location of Mediation.** The mediation shall be held in the County or such other place as is mutually acceptable to the parties.

(c)      **Additional Parties.** Merchant Builder shall have the right to include other persons or entities in the mediation, including any of its subcontractors, material suppliers, design professionals, individual product manufacturers, warranty company representative and insurance carrier representatives.

(d)      **Refusal to Participate.** If either party refuses to participate in the mediation, then the other party may initiate arbitration proceedings as provided in Section 5.3.

(e)      **Mediation Session(s).** The mediation session(s) shall be commenced as quickly as reasonably practical in the discretion and judgment of the mediator but not later than thirty (30) days following the date of service of the Notice of Claim. The parties shall cooperate in good faith with each other and with the mediator and shall provide all documents reasonably required by the mediator to be provided. Without mutual agreement of Owner and Merchant Builder, the mediation shall not exceed four (4) hours.

(f)      **No Attorneys' Fees.** The parties shall be solely responsible for their own attorneys' fees and no party shall be entitled to an award of its attorneys' fees. Nothing herein shall be construed to modify or abrogate any duty to defend and/or indemnify another party pursuant to the terms of a contract between any such parties.

(g)      **Confidentiality.** The entire mediation proceedings shall be maintained in the strictest confidence and documentary or demonstrative evidence or testimony introduced or revealed to the mediator or other party during the mediation shall be inadmissible in any subsequent proceeding including litigation, arbitration and judicial reference. The provisions of California Evidence Code Section 1115 et seq. shall be applicable to the mediation.

**5.2.3    MEDIATION FAILS TO SETTLE CLAIM**:    If the mediation process provided in Section 5.2.2 fails to settle the Other Claim, either party may initiate arbitration proceedings as provided in Section 5.3.

5.3.    **MANDATORY BINDING ARBITRATION**:    Before Owner institutes arbitration proceedings as provided in this Section 5.3 involving a Title 7 Claim, Owner must first commence the Claim Process and proceed, in good faith, to resolve the claim using the Claim Process. Before Owner or Merchant Builder institutes arbitration proceedings which do not involve a Title 7 Claim, Owner or Merchant Builder shall, in good faith, attempt to resolve the Other Claim by mediation in accordance with the mediation procedures set forth in Section 5.2.2 above. The mandatory arbitration procedures below shall apply to all post-closing Merchant Builder Disputes between Merchant Builder and Initial Owner and all Merchant Builder Disputes between Merchant Builder and Successor Owners. If negotiations, mediation or other non-binding dispute resolution procedures, including the Claim Process, fail to resolve any Merchant Builder Dispute between Owner and Merchant Builder Parties, then the Merchant Builder Dispute shall be resolved by neutral, binding arbitration as follows:

5.3.1    **Mandatory Binding Arbitration.**    Any Merchant Builder Dispute between Owner and any of the Merchant Builder Parties which is not resolved by negotiations, mediation or other non-binding dispute resolution procedures as set forth herein, including the Claim Process, shall be resolved by neutral, binding arbitration governed by the Federal Arbitration Act (9 U.S.C. §§1-16) (*"Federal Act"*) and not by any court action except as provided for judicial review of arbitration proceedings under the Federal Act. A demand for arbitration shall be delivered in accordance with the notice provision provided herein by the party desiring to arbitrate such Merchant Builder Dispute to the other party within thirty (30) days after the conclusion of either the Title 7 Claim or mediation of an Other Claim, as applicable.

5.3.2    **Federal Arbitration Act.**    The construction of the Residences and the Project involved interstate commerce and therefore the arbitration procedures specified in this Section 5.3 are to be interpreted and enforced as authorized by the Federal Act, which is designed to encourage use of alternative methods of dispute resolution that avoid costly and potentially lengthy court proceedings. The Residences and the Project were constructed with materials and products manufactured throughout the United States which have been shipped to the Project for installation and involved communications by interstate mail and telephone with out-of-state manufacturers, design professionals, contractors and their employees. The shipment of such materials and products across state lines cause the products and materials to enter into the stream of interstate commerce and become subject to the Interstate Commerce Clause (Article I, Section VIII of the United States Constitution) and ensuing federal laws. Interpretation and application of the procedures set forth in this Section 5.3 shall conform to any applicable federal court rules and decisions interpreting and applying the Federal Act. The arbitration proceedings shall be conducted pursuant to the Federal Act and, to the extent not inconsistent, the procedures set forth in this Section 5.3. In addition, except as set forth herein, and to the extent it is not inconsistent with the Federal Act, the arbitration shall be conducted pursuant to Title 9 of the California Code of Civil Procedure (Section 1280 et seq.). References to California procedural law are for guidance only and shall not be construed as a waiver of any rights or duties of the parties under the Federal Act or the right of the parties to have the procedures set forth in this Section 5.3 interpreted and enforced under the Federal Act. If any party seeks review by a court of the enforceability of any of the procedures set forth or referenced herein (notwithstanding the provisions herein making that issue one to be resolved by the arbitrator), the exclusive jurisdiction and venue for any such review shall be the Superior Court for the County.

5.3.3    **Other Parties.**    Merchant Builder and the other Merchant Builder Parties have the sole and absolute right, in their discretion, to join any person or entity who is not a party to the arbitration proceedings if the presence of such person or entity is required or is necessary for complete relief to be accorded in the arbitration proceedings or if the interest or responsibility of such person or

entity in the Merchant Builder Dispute is not insubstantial; provided, however, that if the Master Developer and/or the Master Association is a party to any Merchant Builder Dispute under this Individual Dispute Resolution Agreement, such Merchant Builder Dispute shall be resolved in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration. The parties shall cooperate in good faith and shall diligently perform such acts as may be necessary to ensure that all necessary and appropriate parties are included in the arbitration proceedings.

5.3.4   **Administration of Proceedings**. The arbitration proceedings shall be conducted by and in accordance with the commercial arbitration rules of JAMS, or if JAMS is unable to conduct the arbitration it shall be conducted by and in accordance with the commercial arbitration rules of the American Arbitration Association (*"Service"*).

5.3.5   **Statutes of Limitation**. Except for procedural issues, and to the extent not inconsistent with the Federal Act, the arbitration proceedings, the ultimate decisions of the arbitrator, and the arbitrator shall be subject to and bound by existing California case and statutory law including, but not limited to, applicable statutes of limitation established in Title 7. Arbitration must be initiated prior to the expiration of the applicable statutes of limitation.

5.3.6   **Selection of Arbitrator**. The arbitration proceedings shall be conducted by one (1) qualified neutral and impartial arbitrator who shall be selected in accordance with the rules of the Service no later than thirty (30) days following the date one party delivers to the other party a demand for arbitration. The term *"qualified"* for purposes of this Paragraph shall mean a retired judge who has experience with the laws governing residential real estate development and construction or an attorney who has actively practiced law in California for at least fifteen (15) years and who has experience with the laws governing residential real estate development and construction.

5.3.7   **Authority of Arbitrator**. The arbitrator shall have the power to hear and dispose of motions, including motions relating to provisional remedies, demurrers, motions to dismiss, motions for judgment on the pleadings and summary judgment and/or adjudication motions, in the same manner as a trial court judge. In addition, the arbitrator shall have the power to summarily adjudicate issues of fact or law, including the availability of remedies, even if the issue adjudicated does not dispose of an entire cause of action or defense. The arbitrator shall have the power to grant provisional remedies including preliminary injunctive relief. Prior to the selection of the arbitrator, any party shall have the right, but not the obligation, to petition the Superior Court of the County for any necessary provisional remedies. However, after obtaining any provisional remedies (pending selection of the arbitrator) the entire matter shall be referred to the Service for all purposes and the Superior Court shall have no further jurisdiction to monitor or enforce the provisional remedies or to make further determinations or awards or to issue additional provisional remedies. The Service shall have the sole power to enforce, extend, modify or vacate any such provisional remedies.

5.3.8   **Discovery**. All discovery shall be permitted by the arbitrator at the arbitrator's reasonable discretion upon a showing of good cause or based on the agreement of the parties. The arbitrator shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge. At a minimum, the parties will exchange all documents in their possession, custody or control which are either relevant or reasonably calculated to lead to the discovery of admissible evidence and each party shall be entitled to at least two percipient witness depositions and the depositions of all designated experts.

5.3.9   **Full Disclosure**. Each party shall make, in good faith, a full disclosure of all issues and evidence to each other party prior to the hearing. Any evidence or information that the arbitrator determines was unreasonably withheld shall be inadmissible by the party who withheld it. The initiating party shall be the first to disclose all of the following, in writing, to each other party and to the

arbitrator: (i) an outline of the issues and its position on each such issue; (ii) a list of all witnesses the party intends to call; and (iii) copies of all written reports and other documentary evidence, whether written or not or contributed to by its retained experts (collectively "*Outline*"). The initiating party shall submit its Outline to each other party and the arbitrator within thirty (30) days of the final selection of the arbitrator. Each responding party shall submit its written response as directed by the arbitrator. If the Merchant Builder Dispute involves a Title 7 Claim, then Owner shall be the first party to submit its written Outline, list of witnesses, and reports/documents and shall include a detailed description of the nature and scope of the alleged violation(s), its proposal for repair or restoration, all repairs made to date and an estimate of the cost of repair/restoration together with the calculations used to derive the estimate.

5.3.10  **Title 7 Claim and Measure of Damages.**  If the Merchant Builder Dispute involves a Title 7 Claim, the arbitrator shall determine whether a violation exists and whether any Merchant Builder Parties are responsible for the violation. If the arbitrator finds that Merchant Builder Parties are responsible for a Title 7 Claim, the arbitrator shall determine the scope of any repair and the reasonable value of repairing the nonconformity, based on evidence presented to him by the parties and their experts. The reasonable value of repairing any nonconformity shall be limited to the lesser of (i) the repair costs, or (ii) the diminution in current value of the real property caused by the nonconformity, subject to the personal use exception as developed under common law. For all Title 7 Claims, Owner is only entitled to damages for the reasonable value of repairing the nonconformity, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure to meet the applicable standards, the reasonable cost of removing and replacing any improper repair by Merchant Builder, reasonable relocation and storage expenses, lost business income if Owner's Residence or the Property was used as a principal place of business licensed to be operated within the Residence or the Property, reasonable and necessary investigative costs for each established violation, and all other costs or fees recoverable by contract or statute. If any of the damages described above are awarded to Owner in any other cause of action, the damages awarded pursuant to this Section 5.3.10 shall be reduced by the amounts recovered in such other causes of action. Merchant Builder Parties shall not be responsible for, and shall be excused from, any obligation, damage, loss or liability to the extent that Merchant Builder Parties can demonstrate any of the affirmative defenses set forth in California Civil Code Section 945.5.

5.3.11  **Hearing.**  The arbitration shall be held in the County. The arbitration shall be conducted as promptly as possible after giving due consideration to the complexity of the issues, the number of parties and necessary discovery and other relevant matters. The arbitration shall be conducted as informally as possible. California Evidence Code Section 1152 *et seq.* shall apply for the purpose of excluding offers, compromises, and settlement proposals from evidence, unless there is agreement by all parties as to admissibility. The arbitrator shall be the sole judge of the admissibility of and the probative value of all evidence offered and is authorized to provide all legally recognized remedies whether in law or equity, except as otherwise limited in this Section 5.3. The cost of an interpreter shall be borne by the party requiring the services of the interpreter in order to be understood by the arbitrator and the expenses of witnesses shall be borne by the party producing such witnesses.

5.3.12  **Decision.**  The decision of the arbitrator shall be binding on the parties and may be entered as a judgment in any court of the State of California that has jurisdiction and venue. The arbitrator shall (i) cause a complete record of all arbitration proceedings to be prepared similar to those kept in the Superior Court, (ii) try all issues of both fact and law, and (iii) issue a written statement of decision consistent with that described in California Code of Civil Procedure Section 643 which shall specify the facts and law relied upon in reaching the arbitrator's decision within twenty (20) days after the close of testimony.

5.3.13  **Fees and Costs.**  Merchant Builder Parties shall advance any fee required by the Service to initiate the arbitration proceedings. Without limiting the generality of the foregoing, the total

cost of the arbitration proceedings, including the fee of the arbitrator, the initiation fee advanced by Merchant Builder Parties and other fees of the Service and any related costs and fees incurred by the Service (such as experts and consultants retained by it), shall be borne one-half by Owner and one-half by Merchant Builder Parties, regardless of the outcome. The arbitrator shall not award attorneys' fees to any party and the parties shall each be solely responsible for their own attorneys' fees. Nothing herein shall be construed to modify or abrogate any duty to defend and/or indemnify a third party pursuant to the terms of a contract between any such parties. A stenographic record of the hearing shall be made which shall remain confidential except as may be necessary for post-hearing motions and appeals. The cost of the record shall be borne one-half by Owner and one-half by Merchant Builder Parties, regardless of the outcome. Should any party refuse or fail to pay its pro-rata share, the remaining parties may pay such share, and the party or parties which pay such extra share shall be awarded such extra costs by the arbitrator in the arbitrator's decision. Notwithstanding the foregoing, under all circumstances the parties shall be responsible for their own attorneys' fees and expert witness costs, subject only to reallocation by any applicable statutory cost-shifting mechanisms. This provision does not modify any provision of any contract between Merchant Builder Parties and any third party requiring indemnification or establishing a different allocation of costs between Merchant Builder Parties and such third party.

   5.4.   **JUDICIAL REFERENCE**: If, and only if, for any reason arbitration cannot be legally used to resolve a Merchant Builder Dispute between Owner and Merchant Builder under Section 5.3, or the arbitration provisions provided for in Section 5.3 above are held not to apply or determined to be invalid, void or unenforceable in whole or material part for any reason preventing their use, then the Merchant Builder Dispute shall be submitted for resolution to general judicial reference within thirty (30) days of judicial determination that the arbitration provision is invalid, void or unenforceable, as set forth below:

   5.4.1   **Judicial Reference**. Merchant Builder Disputes submitted to general judicial reference pursuant to California Code of Civil Procedure Sections 638 through 645.1, inclusive, or any successor statutes thereto, shall be subject to the following terms and conditions:

   5.4.1.1   **Cooperation**. The parties shall cooperate in good faith to ensure that all necessary and appropriate parties are included in the judicial reference proceedings.

   5.4.1.2   **Fees and Costs**. All fees and costs of the judicial reference proceedings shall be borne in the same manner as arbitration.

   5.4.1.3   **Referee**. The general referee shall be chosen from the panel of referees provided by Judicial Arbitration and Mediation Services, Inc. (**"JAMS"** as previously defined) and shall have the authority to try all issues, whether of fact or law, and to report a statement of decision to the court.

   5.4.1.4   **Proceedings**. The parties shall use the procedures adopted by JAMS for judicial reference (or any other entity offering judicial reference dispute resolution procedures as may be mutually acceptable to the parties), provided that the following rules and procedures shall apply in all cases unless the parties agree otherwise:

   (a)   The judicial reference proceedings shall be heard in the County.

   (b)   The referee must be a neutral and impartial retired judge or a licensed attorney with substantial experience in relevant real estate matters.

HLO\ Olivewood\ v.1 9/20/2023                                11

(c)     Any dispute regarding the selection of the referee shall be resolved by JAMS or the entity providing the reference services, or, if no entity is involved, by the court with appropriate jurisdiction.

(d)     The referee may require one or more pre-hearing conferences.

(e)     The parties shall be entitled to discovery in accordance with the Code of Civil Procedure, and the referee shall oversee discovery and may enforce all discovery orders in the same manner as any trial court judge.

(f)     A stenographic record of the reference trial shall be made, provided that the record shall remain confidential except as may be necessary for post-hearing motions and any appeals.

(g)     The referee's statement of decision shall contain findings of fact and conclusions of law to the extent applicable and shall be issued within twenty (20) days after the hearing has been concluded.

(h)     The referee shall have the authority to rule on all post-hearing motions in the same manner as a trial judge.

(i)     The statement of decision of the referee upon all of the issues considered by the referee is binding upon the parties, and upon filing of the statement of decision with the clerk of the court, or with the judge where there is no clerk, judgment may be entered thereon. The decision of the referee shall be appealable as if rendered by the court. This provision shall in no way be construed to limit any valid cause of action which may be brought by any of the parties.

(j)     The participation by any party in any judicial proceedings concerning this Section or any Merchant Builder Dispute shall not be deemed a waiver of the right to enforce this Section notwithstanding any provision of law to the contrary, shall not be asserted or accepted as a reason to delay, to refuse to participate in, or to refuse to enforce this judicial reference provision.

5.5.    **DISPUTES EXEMPT FROM THIS INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.** Notwithstanding any other provision of this Individual Dispute Resolution Agreement to the contrary, any and all Master Disputes shall be resolved solely in accordance with the dispute resolution procedures set forth in Section 14 of Article V of the Master Declaration.

5.6.    **DISPUTES TO BE RESOLVED INDEPENDENTLY:** Notwithstanding anything to the contrary herein, Merchant Builder and Owner agree that it is in the best interest of the parties that the dispute resolution procedures set forth in this Individual Dispute Resolution Agreement be utilized independently of any actions (including actions brought pursuant to alternative dispute resolution procedures) involving Merchant Builder Disputes between Merchant Builder Parties and other claimants. Accordingly, Owner knowingly waives any right to participate in any form of "class", "joint" or "representative" litigation (including in any "private attorney general capacity") or dispute resolution procedures against Merchant Builder Parties. Merchant Builder and Owner agree to this Section 5.5 on the grounds that they wish to assure, in advance, that any Merchant Builder Disputes by or between Owner and any of the Merchant Builder Parties will not be combined with any Merchant Builder Disputes by or between any Merchant Builder Parties and any other claimant. Merchant Builder and Owner include this provision on the additional grounds that: (i) the Property is unique from other properties in the Project, and any potential problems it may suffer will not necessarily be common to other properties; (ii) it may provide Owner increased ability to control any Merchant Builder Dispute involving the Property; (iii) Owner's interests will not be subordinated to the interests of other parties who might otherwise become involved in these dispute resolution procedures; (iv) this approach is likely to foster

faster resolution of most Merchant Builder Disputes that may arise; (v) it will help to avoid conflicts of interest among Merchant Builder's and Owner's representatives; and (vi) it is intended to foster better communication between Owner and Merchant Builder focused on resolving the actual issues that may arise in any Merchant Builder Dispute between them.  Notwithstanding the foregoing, the restrictions of this Section shall not apply to actions (including actions brought pursuant to alternative dispute resolution procedures) for damages in the amount of one thousand dollars ($1000.00) or less per action (including actions brought pursuant to alternative dispute resolution procedures); provided however, that Owner shall be required to meet any legal requirements for any "class", "joint" or "representative" litigation or dispute resolution procedures with respect to such actions.

---

### ARTICLE VI
### AMENDMENT AND ENFORCEMENT

---

6.1.    **AMENDMENTS**:  This Individual Dispute Resolution Agreement may be amended by Merchant Builder and Owner by recording an amendment in the Official Records of the County of an instrument setting forth the terms of the amendment executed by Merchant Builder and Owner.

6.2.    **ENFORCEMENT**:  Merchant Builder Parties and Owner shall have the right to enforce any and all of the provisions of this Individual Dispute Resolution Agreement in the manner provided in this Individual Dispute Resolution Agreement.  The failure to enforce the provisions of any agreement, notice or obligation contained in this Individual Dispute Resolution Agreement will not constitute a waiver of any right to enforce any such provisions or any other provisions of this Individual Dispute Resolution Agreement.

6.3.    **THIRD PARTY BENEFICIARIES**:    The Master Developer and the Master Association are each an intended third party beneficiary and have the right to enforce the provisions of Section 5.4 of this Individual Dispute Resolution Agreement.

---

### ARTICLE VII
### MISCELLANEOUS PROVISIONS

---

7.1.    **BINDING**:  Under California Civil Code Section 945, the provisions, standards, rights, and obligations set forth in this Individual Dispute Resolution Agreement are binding upon Initial Owner and Successor Owners.  This Individual Dispute Resolution Agreement is for the benefit of and binding upon Merchant Builder and Owner and their respective heirs, legatees, devisees, executors, administrators, guardians, conservators, members, successors, purchasers, tenants, encumbrancers, donees, grantees, mortgagees, lien holders and assigns.  The provisions of this Individual Dispute Resolution Agreement are equitable servitudes and covenants running with the land, enforceable by Merchant Builder and Owner.  All covenants, conditions, restrictions and agreements in this Individual Dispute Resolution Agreement shall run with and burden the Property and be binding on and for the benefit of the Property and all real property subject to the Dispute Declaration and/or any Supplemental Declaration recorded pursuant to the provisions of Section 5.2 of the Dispute Declaration and all Successor Owners acquiring any interest in the Property.

7.2.    **CONFLICT**:  Section 5.1 of the Dispute Declaration provides that an Individual Dispute Resolution Agreement may amend, supplement, replace or repeal any of the Exhibits attached to the Dispute Declaration.  Any exhibit attached to this Individual Dispute Resolution Agreement shall be deemed to supersede and replace, in full, the corresponding exhibit in the Dispute Declaration as to the Residence covered by this Individual Dispute Resolution Agreement.  The provisions of Section 5.3 and Section 5.4 of this Individual Dispute Resolution Agreement are separate and independent of the Dispute

HLO\ Olivewood\ v.1 9/20/2023                              13

Declaration; however, it is intended that the dispute resolution provisions of Section 4.3 of the Dispute Declaration be identical to the provisions of Section 5.3 of this Individual Dispute Resolution Agreement. If there is a conflict between this Individual Dispute Resolution Agreement and the Dispute Declaration, to the maximum extent allowed by law, this Individual Dispute Resolution Agreement shall be construed so as to be consistent with the Dispute Declaration; provided, however, if there is an irreconcilable conflict between this Individual Dispute Resolution Agreement and the Dispute Declaration or a Supplemental Declaration or for any reason the provisions of the Dispute Declaration are not enforceable, then the provisions of this Individual Dispute Resolution Agreement shall control.

7.3.   **CONSTRUCTION OF PROVISIONS**:   The provisions of this Individual Dispute Resolution Agreement are to be liberally construed to effect its purpose.

7.4.   **EXHIBITS**:  Any exhibits attached to this Individual Dispute Resolution Agreement are incorporated by this reference as though fully set forth herein.

7.5.   **MORTGAGE PROTECTION**:  Owner may encumber the Property with a mortgage or deed of trust.   A breach of any of the conditions contained in this Individual Dispute Resolution Agreement shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value as to the Property; provided, however, that the agreements, notices and obligations contained in this Individual Dispute Resolution Agreement shall be binding upon and effective against Owner notwithstanding whether the Property is acquired by foreclosure, trustee's sale or otherwise.

7.6.   **REDISTRIBUTION OF DOCUMENTS**:  Upon the resale of the Property by Initial Owner, Initial Owner must deliver to its Successor Owner a copy of the Dispute Declaration, this Individual Dispute Resolution Agreement and all documents provided to Initial Owner in conjunction with the original sale of the Property.   Upon each resale of the Property, Owner must supply to its Successor Owner a copy of the Dispute Declaration, this Individual Dispute Resolution Agreement and all other documents provided to that Owner by the previous Owner.

7.7.   **SEVERABILITY OF PROVISIONS**:   All provisions of this Individual Dispute Resolution Agreement shall be deemed independent and severable.   If one provision of this Individual Dispute Resolution Agreement is deemed to be invalid or unenforceable to any degree and for any reason, such invalidity or unenforceability will not affect the validity or enforceability of any other provision of this Individual Dispute Resolution Agreement (*"Enforceable Provisions"*).   It is therefore the intent of the parties that any court or arbitrator shall interpret and enforce all Enforceable Provisions of this Individual Dispute Resolution Agreement as binding contractual obligations of the parties.

7.8.   **SUCCESSOR STATUTES**:   Any reference in this Individual Dispute Resolution Agreement to a statute will be deemed a reference to any amended or successor statute.

7.9.   **TERM**:  This Individual Dispute Resolution Agreement shall be effective as of the date of its recordation and shall continue in full force and effect so long as the Dispute Declaration is effective, but in no event shall it terminate within twenty (20) years from its effective date.

*[SIGNATURES ON FOLLOWING PAGE]*

This Individual Dispute Resolution Agreement is executed on this 15th day of May, 2024.

MERCHANT BUILDER:

INITIAL OWNER:

THE NEW HOME COMPANY SOUTHERN
CALIFORNIA LLC, a Delaware limited
liability company

By: _____
    Name:    <u>Lori Michel</u>
    Title:    <u>Authorized Person</u>

_____
Di Lan Ge, trustee

_____
Xian Feng Gu, trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )
COUNTY OF ORANGE             )

On May 15, 2024 before me, Sherry Ivery, a Notary Public, personally appeared Lori Michel, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



SHERRY IVERY
Notary Public - California
Orange County
Commission # 2403177
My Comm. Expires May 4, 2026

Notary Public                                    (SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )
COUNTY OF  Orange            )

On  June 24, 2024 , before me, Leakimna Choeum , a Notary Public, personally appeared Di Lan Ge & Xian Feng Gu , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

LEAKIMNA CHOEUM
Notary Public - California
Orange County
Commission # 2367605
My Comm. Expires Jul 24, 2025

Notary Public                                    (SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA           )
                              )
COUNTY OF _____     )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



_____
Notary Public                                              (SEAL)


A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA           )
                              )
COUNTY OF _____     )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



_____
Notary Public                                              (SEAL)

## EXHIBIT "A"

## LIMITED WARRANTY



# HOMEBUYER LIMITED WARRANTY

# TABLE OF CONTENTS

**SECTION 1 –** Introduction ..................................................................2

**SECTION 2 –** Definitions.................................................................3

**SECTION 3 –** One Year Fit and Finish Warranty .....................................6

**SECTION 4 –** Extended Limited Warranty for Performance Standards....................8

**SECTION 5 –** Exclusions ................................................................14

**SECTION 6 –** Manufacturer's Warranties – Disclaimer.............................17

**SECTION 7 –** Other Conditions and Limitations .................................18

**SECTION 8 –** Time Limit for Making Warranty Claims .............................19

**SECTION 9 –** Right to Repair Act .......................................................20

**SECTION 10 –** Warranty Claim Procedure .............................................21

**SECTION 11 –** Reporting an Emergency Claim........................................23

**SECTION 12 –** Your Obligations.........................................................25

**SECTION 13 –** Builder Obligations Under this Limited Warranty............................27

**SECTION 14 –** Dispute Resolution Procedure........................................29

**SECTION 15 –** Claims Under Individual Dispute Resolution Agreement................30

**SECTION 16 –** Effect on Future Owners of the Home ...............................31

i

194

# SECTION 1

## INTRODUCTION

Congratulations on purchasing Your Home!  Your purchase includes this Homebuyer Warranty which relates to original construction defects or deficiencies in materials and workmanship as more fully set forth below ("*Limited Warranty*").  All capitalized words and phrases used in this Limited Warranty shall have the meanings given them in Section 2 below or as otherwise defined herein.  This Limited Warranty contains important terms, exclusions, conditions, policies and procedures. Therefore, You should carefully read and become familiar with this Limited Warranty.  By signing this Limited Warranty, You agree to all terms, exclusions, conditions, policies and procedures of this Limited Warranty.

This Limited Warranty establishes (a) an agreed upon method for determining whether a construction defect or deficiency in materials and workmanship exists, and is therefore a "*Covered Claim*" as defined in Section 2 (rather than a minor imperfection that can reasonably be expected in the Home or conditions resulting from normal wear and tear or reasonable maintenance responsibilities) and (b) the Builder's responsibility for resolving any such Covered Claim.

This Limited Warranty contains the procedures You must use and follow to notify Builder of a Condition in the Home which You believe constitutes a Covered Claim.  If You believe that a Condition is a Covered Claim, You must submit a request for service under this Limited Warranty.  Based upon the information You provide, and the Builder's investigation/inspection and/or testing of the Home, the Builder will determine whether it agrees that the Condition constitutes a Covered Claim.  If the Builder determines that the Condition is a Covered Claim, it will provide the repair, replacement or other response to such Condition required of the Builder under this Limited Warranty.  If the Builder determines that a Condition does not constitute a Covered Claim, it may deny Your request for service under this Limited Warranty.  If You disagree with the Builder's determination, You have the right to pursue a claim against the Builder in accordance with the Individual Dispute Resolution Agreement (as defined below).

To the fullest extent permitted by law, all express or implied warranties other than this Limited Warranty, including any oral or written statement or representation made by Builder or any of the Builder Parties or any other person, and any implied warranty of habitability, merchantability or fitness, are hereby disclaimed by the Builder and are waived by You.  If any provision or portion of any provision of this Limited Warranty is determined to be unenforceable for any reason, such determination will not in any way affect the remaining provisions.

The issue of enforceability, as well as all other issues related to this Limited Warranty, will be determined by binding arbitration/judicial reference as provided for in the Individual Dispute Resolution Agreement.

2

# SECTION 2

## DEFINITIONS

The following words and phrases used in this Limited Warranty have the meanings set forth below.

**Actual Moisture Barrier** means any Component or material, actually installed, that serves to any degree as a barrier against moisture, whether or not intended as a barrier against moisture.

**Association** means any neighborhood association or master homeowner association applicable to the Project.

**Association Property** means any and all real property and improvements at the Project for which the Association owns or has the obligation to maintain and repair pursuant to the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements and any other governing documents for the Project.

**Builder** means The New Home Company Southern California LLC, a Delaware limited liability company.

**Builder Parties** means (i) Builder and its partners, members or other principals and their respective officers, agents, employees, affiliated, parent and subsidiary companies, successors and assigns, and design centers, and (ii) any subcontractors, design professionals, engineers, inspectors, material suppliers and/or consultants who provided labor, services or materials to any portion of the Home.

**Component** means an item that was incorporated into the construction of your Home by Builder, other than items specifically excluded by this Limited Warranty. The term does not include items added by you or anyone other than Builder or Builder Parties, or added to the home after the Effective Date of Warranty, such as improvements to the Home or furniture.

**Condition** means any circumstance and/or condition in the Home that You believe may be a Covered Claim.

**Covered Claim** is the failure of any workmanship, materials, and systems of any Component to meet the Fit and Finish Performance Standards or Performance Standards, as applicable.

**Designed Moisture Barrier** means an installed moisture barrier specified in the plans and specifications, contract documents, or manufacturer's recommendations.

**Effective Date of Warranty** means the date on which You close escrow for the purchase of the Home.  Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend the ten (10) year statute of repose for

3

construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such ten (10) year statute of repose expressly applies to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

**Emergency Condition** means any Condition that would cause an unsafe living condition affecting the health and safety of persons residing in the Home.

**Extended Limited Warranty** means the warranty provided under Section 4 of this Limited Warranty.

**Federal Act** means the Federal Arbitration Act (9 U.S.C. §§1-16).

**Fit and Finish Standards** means the construction and performance standards set forth in Section 3 subject to the tolerances and exclusions set forth in this Limited Warranty.

**Fit and Finish Warranty** means the one (1) year warranty described in Section 3.

**Fit and Finish Warranty Term** means the period which is (1) year following the Effective Date of Warranty.

**Home** means the residence You purchased from the Builder as described on the signature page of this Limited Warranty and all appurtenant improvements.

**Homeowner** means You and any successive owner of the Home.

**Homeowner Manual** means the Homeowner Manual provided to You by the Builder which includes important information regarding Your Home, including guidelines for the maintenance, care and use of Your Home.

**Individual Dispute Resolution Agreement** means the Individual Dispute Resolution Agreement entered into between You and the Builder in connection with the purchase of the Home that is or shall be recorded against the Home.

**Manufactured Products** means a product that is completely manufactured off-site, including without limitation all flooring, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, appliances, pieces of equipment, or other items installed in the Home that are consumer products for purposes of the Magnuson-Moss Warranty Act (15 U.S.C. Section 2301, et. seq.) and solar energy systems including inverters.

**Maintenance Guidelines** means all maintenance obligations, guidelines, schedules and practices communicated to You in writing by Builder, including, without limitation all product manufacturers' use, maintenance and care instructions provided to You by Builder, as well as commonly accepted maintenance practices. Such commonly

4

accepted maintenance practices include, but are not limited to, those set forth in Your Homeowner Manual and those established by product manufacturers.

**Owner Party or Parties** means You and/or Your agents, family (including minor children), tenants, guests, invitees and or representatives.

**Performance Standards** means the construction and performance standards set forth in Section 4 of this Limited Warranty subject to the tolerances and exclusions set forth in this Limited Warranty.

**Project** means the residential development in which the Home is located.

**Right to Repair Act** means Title 7, Part 2 of Division 2 of the California Civil Code commencing with Section 895.

**Service Request** means a complete, detailed description of a Condition properly submitted by You as set forth in Section 10 of this Limited Warranty.

**Structure** means any residential building, other building, or improvement located within the Project.

**Unintended Water** means water that passes beyond, around, or through a Component or the material that is designed to prevent that passage.

**Warranty Term** means, as to each system or Component covered by this Limited Warranty, the period beginning on the Effective Date of Warranty and expiring on the date for each such Component specified in Section 3 or 4 of this Limited Warranty, as applicable.

**You or Your** means the homeowner to whom this Limited Warranty is provided.

5

# SECTION 3

## ONE YEAR FIT AND FINISH WARRANTY

Subject to the terms, limitations, conditions and exclusions of this Limited Warranty, Builder warrants that during the period which is one (1) year following the Effective Date of Warranty (the Fit and Finish Warranty Term) the following Components of the Home will satisfy the Fit and Finish Standards within an acceptable tolerance. Builder will correct any noncompliance with the Fit and Finish Standards that are reported to Builder in writing in accordance with this Limited Warranty during the Fit and Finish Warranty Term. Any noncompliance with the Fit and Finish Standards not so reported to Builder within the Fit and Finish Warranty Term shall be Your responsibility. A Condition will only be a Covered Claim under this Fit and Finish Warranty if the Condition is the result of a Component or function not being in compliance with the Fit and Finish Standards. Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through are presumed to have been caused by Homeowner. Such damages caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| Cabinets | Cabinet doors shall align. | Cabinet doors that are out of alignment in excess of 1/8 of an inch when closed are a deficiency. | |
| Cabinets | Cabinet doors shall not contain significant warps. | Cabinet door warping of more than 3/16 of an inch is a deficiency. | |
| Cabinets | Cabinets shall be installed level and flush to walls and ceilings. | Deviations greater than 3/8 of an inch in cabinet level in a 6 foot span is a deficiency. Deviations greater than 3/16 of an inch to walls and ceilings is a deficiency. | |
| Carpet | Carpet seams shall be butted tightly. | | Visible seams and seam separations after close of escrow are not covered. |
| Countertops | Countertops shall be installed flat and level. | Deviations greater than 3/8 of an inch in countertop level is a deficiency. | |
| Exterior Decks/Patios | Decks and patios shall drain properly. | Water ponding in excess of 3/8 of an inch 24 hours after last rain is a deficiency. | |
| Exterior Doors | Doors shall not contain significant warps. | Exterior door warping of more than 1/8 of an inch is a deficiency. | |
| Exterior Trim | Wood trim, siding, and false beam details shall not contain significant separations. | Separations exceeding 3/8 of an inch in width are a deficiency. | Maintenance of Components, including, without limitation, caulking at joints, is not covered. |
| Grout | Grout shall not contain significant cracks | Cracks in excess of 1/32 of an inch are a deficiency. | |
| Hardwood Flooring | Finish flooring shall be installed level. | Variance in the level of hardwood flooring that exceeds 1/4 of an inch in 8 feet is a deficiency. | |

6

| Category | Fit and Finish Standard | Tolerance | Exclusions |
|---|---|---|---|
| HVAC | Heating, if any, shall be installed so as to be capable of maintaining a room temperature of 70 degrees Fahrenheit at a point three feet above the floor in any living space. | | |
| HVAC | Living space air-conditioning, if any, shall be provided in a manner consistent with the size and efficiency design criteria specified in Title 24 of the California Code of Regulations or its successor. | | |
| Interior Doors | Doors shall not contain significant warps. | Interior door warping of more than 1/4 of an inch is a deficiency. | |
| Interior Trim | Trim shall not contain significant separations. | Separations at miter joints exceeding 1/16 of an inch in width are a deficiency. Gaps between trim and adjacent trim or other materials exceeding 1/8 of an inch are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant bows or crowns. | Bows exceeding 1/4 of an inch in a 32 inch horizontal or vertical measurement or 1/2 of an inch in an 8 foot measurement are a deficiency. | |
| Interior Walls | Finished interior walls shall not contain significant cracks or separations. | Cracks and separations exceeding 1/8 of an inch in width are a deficiency. | |
| Landscaping/Irrigation | Irrigation systems and drainage shall operate properly so as not to damage landscaping or other external improvements. | | Landscaping installed, modified, or damaged after close of escrow is not covered. |
| Landscaping/Irrigation | The landscaping systems shall be installed in such a manner so as to survive for not less than one year. | | |
| Manufactured Products | To the extent not otherwise covered by these standards, manufactured products (products completely manufactured offsite), including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any. Useful life shall mean one year or the term of the manufacturer's warranty, whichever is greater, but no more than 10 years. | | Claims relating solely to a defect in a manufactured product are not covered. |
| Subfloor | Wood subfloors shall be installed level. | Variance in the level of wood subfloors that exceeds 1/2 of an inch in 20 feet is a deficiency. | Squeaks from subfloors are not covered. |

7

# SECTION 4

## EXTENDED LIMITED WARRANTY FOR
## PERFORMANCE STANDARDS

Subject to the terms, conditions and exclusions of this Limited Warranty, Builder warrants that during the applicable Warranty Term the following Components of the Home will satisfy the Performance Standards identified below within an acceptable tolerance. A Condition will only be a Covered Claim under the Extended Limited Warranty if the Condition is the result of a Component or function not being in compliance with the Performance Standards described in this Section. Conditions caused by Homeowner or third parties after closing are not Builder's responsibility under this Limited Warranty.

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Noise | Attached structures shall be constructed to comply with inter-unit noise transmission standards set by the applicable government building codes, ordinances, or regulations in effect at the time of the original construction. | | If there is no applicable code, ordinance or regulation, this standard does not apply. | 1 Year from original occupancy of the adjacent unit |
| Paint | Paint and stains shall be applied in such a manner so as not to cause deterioration of the building surfaces for the length of time specified by the paint or stain manufacturers' representations, if any. | | | No more than 5 Years |
| Electrical | Electrical systems shall operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | Alterations made after close of escrow that change or increase the electrical load on the system void this coverage. | 4 Years |
| Exterior Flatwork | Concrete driveway and garage slab shall not be significantly offset. | Vertical offset that exceeds 1/2 of an inch is a deficiency. | Offsets exceeding 1/2 of an inch that are intentionally created during original installation are not covered. | 4 Years |
| Exterior Flatwork | Exterior pathways, driveways, hardscape, sidewalls, sidewalks, and patios installed by the original builder shall not contain cracks that display significant vertical displacement or that are excessive. | Cracks exceeding 1/4 of an inch in width or vertical displacement are a deficiency. Cracks in control joints that exceed 1 inch in width or 1/4 of an inch in vertical displacement are a deficiency. | Minor cracking is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Damage to builder-installed flatwork caused by flatwork or other additions installed after close of escrow are not covered. | 4 Years |
| Fences | Untreated steel fences and adjacent Components shall be installed so as to prevent unreasonable corrosion. | | | 4 Years |
| Plumbing and Sewer | Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the Structure by its inhabitants. | Original construction that materially impairs the use of the Structure by its inhabitants is a deficiency. | | 4 Years |

8

201

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Fences | Untreated wood posts shall not be installed in contact with soil so as to cause unreasonable decay to the wood based upon the finish grade at the time of original construction. | | | 2 Years |
| Mechanical | Dryer ducts shall be installed and terminated pursuant to manufacturer installation requirements. | | | 2 Years |
| Exterior Finishes | Stucco, exterior siding, and other exterior wall finishes and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall not contain significant cracks or separations. | Cracks exceeding 1/8 of an inch in width are a deficiency. Separations between dissimilar materials exceeding 3/8 of an inch in width are a deficiency. Separations at butt joints or miter joints of trim pieces that exceed 1/4 of an inch are a deficiency. | Minor cracking and separations is considered normal. Color match of repairs or replacements with surrounding materials is not covered. Maintenance of caulking between dissimilar materials is not covered. Efflorescence is considered acceptable and is not covered. | 10 Years |
| Fire Protection | Electrical and mechanical systems shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire. | Original construction that causes an unreasonable risk of fire is a deficiency. | | 10 Years |
| Fire Protection | Fireplaces, chimneys, chimney structures, and chimney termination caps shall be constructed and installed in such a way so as not to cause an unreasonable risk of fire outside the fireplace enclosure or chimney. | Original construction that causes an unreasonable risk of fire outside the fireplace enclosure is a deficiency. | | 10 Years |
| Fire Protection | The Structure shall be constructed so as to materially comply with the design criteria of the applicable government building codes, regulations, and ordinances for fire protection of the occupants in effect at the time of the original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Public Health Hazard | Structures shall be constructed in such a manner so as not to impair the occupants' safety because they contain public health hazards as determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction. | | | 10 Years |
| Roof | Roofing materials shall be installed so as to avoid materials falling from the roof. | | Damage caused after close of escrow is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, damage to the Structure built upon the soil or engineered retaining wall. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Soil | Soils and engineered retaining walls shall not cause, in whole or in part, the Structure to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |

9

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Soil | Soils shall not cause, in whole or in part, the land upon which no structure is built to become unusable for the purpose represented at the time of original sale by the builder or for the purpose for which that land is commonly used. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | Deficiencies caused, in whole or in part, by modifications to the soil or the surrounding areas after close of escrow are not covered. Damage caused by failure to maintain drainage swales is not covered. | 10 Years |
| Structural | Foundations, load bearing Components and slabs shall not cause the Structure, in whole or in part, to be structurally unsafe. | Original construction that causes the Structure to be structurally unsafe is a deficiency. | | 10 Years |
| Structural | Foundations, load bearing Components, and slabs shall not contain significant cracks or significant vertical displacement. | Cracks exceeding 3/16 of an inch in width or 1/8 of an inch in vertical displacement are a deficiency. | Cracks in a control joint are not covered. | 10 Years |
| Structural | Foundations, load bearing Components, and slabs, and underlying soils shall be constructed so as to materially comply with the design criteria set by applicable government building codes, regulations, and ordinances for chemical deterioration or corrosion resistance in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Structural | The Structure shall be constructed so as to materially comply with the design criteria for earthquake and wind load resistance, as set forth in the applicable government building codes, regulations, and ordinances in effect at the time of original construction. | Original construction that does not materially comply with the applicable design criteria is a deficiency. | | 10 Years |
| Tile | Ceramic tile and tile backing shall be installed in such a manner that the tile does not detach. | | | 10 Years |
| Water Intrusion - Doors | A door shall not allow Unintended Water to pass beyond, around, or through the door or its Designed or Actual Moisture Barriers, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |
| Water Intrusion - Doors/Windows | Windows, patio doors, deck doors, and their systems shall not allow water to pass beyond, around, or through the window, patio door, or deck door or its Designed or Actual Moisture Barriers, including, without limitation, internal barriers within the systems themselves. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Leaks caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking or weather stripping, or to perform routine door adjustments, are not covered. | 10 Years |

10

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Drainage | Hardscape, including paths and patios, irrigation systems, landscaping systems, and drainage systems, that are installed as part of the original construction, shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the hardscape or to the surrounding areas after close of escrow, is not covered. | 10 Years |
| Water Intrusion - Enclosures | Shower and bath enclosures shall not leak water into the interior of walls, flooring systems, or the interior of other Components. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, grout, caulking, or weatherstripping, are not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, and exterior walls shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage from condensation entering the Structure caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, to maintain proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Exterior Finishes | Stucco, exterior siding, exterior walls, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those Components and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall be installed in such a way so as not to allow Unintended Water to pass into the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers of the system, including any internal barriers located within the system itself. For purposes of this standard, systems include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any. | Damage caused by original construction is a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, functioning caulking, are not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow Unintended Water to pass within the systems themselves and cause damage to the systems. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Damage caused by original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, is not covered. | 10 Years |
| Water Intrusion - Exterior Systems | Decks, deck systems, balconies, balcony systems, exterior stairs, and stair systems shall not allow water to pass into the adjacent Structure. For purposes of this standard, systems include, without limitation, framing, substrate, flashing, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, the deck, balcony, or stairs, are not covered. | 10 Years |

11

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Exterior Systems | Windows, patio doors, deck doors and their systems shall not allow excessive condensation to enter the Structure and cause damage to another Component. For purposes of this standard, systems include, without limitation, windows, window assemblies, framing, substrate, flashings, and trim, if any. | Damage to another Component from excessive condensation entering the Structure from the outside as a result of original construction is a deficiency. | Damage caused by Homeowner's failure to properly maintain Components, including, without limitation, proper ventilation, is not covered. | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to cause damage to another building Component. | Damage caused by original construction is a deficiency. | | 10 Years |
| Water Intrusion - Foundation | Foundation systems and slabs shall not allow water or vapor to enter into the Structure so as to limit the installation of the type of flooring materials typically used for the particular application. | Damage to the original flooring caused by water or vapor transmission through the foundation system and slab is a deficiency. | Preparation required for installation of a flooring material that differs from that originally installed by Builder is not covered. | 10 Years |
| Water Intrusion - Roof | Roofs, roofing systems, chimney caps, and ventilation Components shall not allow water to enter the Structure or to pass beyond, around, or through the Designed or Actual Moisture Barriers, including, without limitation, internal barriers, located within the systems themselves. For purposes of this standard, systems include, without limitation, framing, substrate, and sheathing, if any. | Leaks caused by original construction are a deficiency. | Leaks caused by Homeowner's failure to properly maintain Components, including, without limitation, their roof, are not covered. | 10 Years |
| Water Intrusion - Tile | Ceramic tile and tile countertops shall not allow water into the interior of walls, flooring systems, or other Components so as to cause damage. | Leaks caused by original construction are a deficiency. | Damage caused by water tracked or introduced into areas outside of showers or bathtubs is not covered. | 10 Years |
| Water Intrusion - Utilities | Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems. | Corrosion that impedes the useful life of the system is a deficiency. | | 10 Years |
| Water Intrusion - Utilities | Sewer systems shall be installed in such a way as to allow the designated amount of sewage to flow through the system. | Original installation by the Builder that impedes the designated amount of sewage from flowing through the system is a deficiency. | Impediments caused by modifications or damage caused after close of escrow are not covered. Flushing of hygiene products that create a blockage are not covered. | 10 Years |
| Water Intrusion - Utilities | The lines and Components of the plumbing system, sewer system, and utility systems shall not leak. | Leaks caused by original construction are a deficiency. | Leaks caused by modifications or damage to Components after close of escrow are not covered. | 10 Years |
| Water Intrusion - Walls | Retaining and site walls and their associated drainage systems shall not allow Unintended Water to pass beyond, around, or through its Designed or Actual Moisture Barriers including, without limitation, any internal barriers, so as to cause damage. This standard does not apply to those portions of any wall or drainage system that are designed to have water flow beyond, around, or through them. | Damage caused by original construction is a deficiency. | Damage caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

12

| Category | Performance Standard | Tolerance | Exclusions | Warranty Term |
|---|---|---|---|---|
| Water Intrusion - Walls | Retaining walls and site walls, and their associated drainage systems, shall only allow water to flow beyond, around, or through the areas designated by design. | Water intrusion caused by original construction is a deficiency. | Water intrusion caused, in whole or in part, by modifications to the retaining or site walls or to the surrounding areas after close of escrow, is not covered. | 10 Years |

13

## SECTION 5

## EXCLUSIONS

A.    In addition to the items specifically addressed in Sections 3 and 4, this Limited Warranty also does not provide any coverage for the following, which are specifically excluded and shall not be Covered Claims:

1.    Damage to any property that was not included as part of the original construction of Your Home by Builder.

2.    Any condition which has not resulted in actual physical damage to Your Home.

3.    Failure to maintain Your Home in accordance with the Maintenance Guidelines.

4.    Any loss or damage that is caused or made worse by any of the following causes, whether acting alone or in sequence or concurrence with any other cause or causes whatsoever, including without limitation:

    (a)    negligence, improper maintenance, defective material or work supplied by, or improper operation by, anyone other than Builder or any Builder Parties, including failure to comply with the warranty requirements of manufacturers of appliances, equipment or fixtures;

    (b)    Your failure to give prompt and proper notice to Builder of any Covered Claim in accordance with the terms of this Limited Warranty;

    (c)    changes in grading that do not comply with accepted grading practices, or failure to maintain the original grade created by Builder;

    (d)    riot or civil commotion, war, vandalism, hurricane, tornado or other wind storm, fire, explosion, blasting, smoke, water, flood, hail, snow, ice storm, lightning, fallen trees or other objects, aircraft, vehicles, landslide or mud slide, avalanche, earthquake, subsidence, erosion, volcanic eruption or natural or manmade condition that exceeds the design criteria;

    (e)    abuse or use of the Home, or any part thereof, beyond the reasonable capacity of such part for such use;

14

(f)     microorganisms, fungus, decay, wet rot, dry rot, soft rot, rotting of any kind, mold, mildew, vermin, termites, insects, rodents, birds, wild or domestic animals, plants, corrosion, rust, radon, radiation, formaldehyde, asbestos, any solid, liquid or gaseous pollutant, contaminant, toxin, irritant or carcinogenic substance, whether organic or inorganic, and any electro-magnetic field or emission, including any claim of health risk or un-inhabitability based on or caused by any matter contained in these exclusions;

(g)     Your failure to minimize or mitigate any Condition, loss or damage as soon as practicable;

(h)     any request for warranty service or performance submitted to Builder after an unreasonable delay or in any event later than expiration of the applicable Warranty Term, as applicable;

(i)     loss caused, in whole or in part, by any peril or occurrence for which compensation is provided by state or federal legislation or public funds;

(j)     diminution in the market value of the Home which is in addition to or exceeds the cost of repair;

(k)     loss or damage caused by or resulting from the loading of structural elements in excess designed loads, including, without limitation, water beds, safes, weight benches, large fish tanks, above-garage attics and storage spaces, and pool tables;

(l)     bodily injury or damage to personal property and any and all incidental and consequential damages, including, without limitation, lost profits, stigma damages, time missed from employment, expenses to address special health or physical situations, costs of shelter, transportation, food, moving, storage or other incidental expenses related to relocation during repairs;

(m)     loss or damage resulting from, or made worse by: (i) changes to the grading of the property surrounding the Home by anyone, including changes made by or its authorized employees, agents or subcontractors, (ii) changes in the grading or drainage resulting from erosion, subsidence or (iii) other soil movement.  Builder assumes no responsibility for damage caused by the lack of or improper landscaping, changing the grade of a yard, or fencing, patios, spas, pools or otherwise which alter the grading or the water table;

15

(n)     loss or damage resulting from, or made worse by: dampness, condensation, cold or heat buildup caused by a failure to maintain proper ventilation in accordance with the terms of the Maintenance Guidelines;

(o)     loss or damage due to the actions of others, including, without limitation, actions by or failure to act by cities, counties or utility companies, including failure to provide utility service to the Home; and

(p)     modification of the Home and/or work performed at the Home by Homeowner or third parties after closing.

5.     Failure to allow Builder or Builder Parties reasonable and timely access for inspections and repair under this Limited Warranty.

6.     Alterations, ordinary wear and tear, misuse, abuse, or neglect, or use of the Home other than for intended purpose by You or any Owner Party.

7.     Any Covered Claim for which Builder has obtained a release.

8.     All Manufactured Products (including without limitation consumer products for purposes of the Magnuson-Moss Warranty Act), except as expressly provided otherwise in this Limited Warranty.

9.     All solar energy systems and Component parts warranted by a third party solar provider and/or its suppliers.

10.     Scratched, stained, dented, chipped or scuffed surfaces, cabinets, flooring, appliances, paint, finishes, countertops, fixtures, tile or grout, or torn screens, or broken or scratched glass in windows or mirrors which are not noted in writing at the time of Homeowner's pre-closing walk through.

11.     Any of the conditions, occurrences, or matters set forth in Civil Code section 945.5.

12.     Association Property.

16

# SECTION 6

## MANUFACTURER'S WARRANTIES – DISCLAIMER

All Manufactured Products are excluded from coverage under this Limited Warranty. To the extent Builder has been issued a warranty from any manufacturer of Manufactured Products installed in Your Home, Builder assigns to You, to the extent assignable and without recourse to Builder, Builder's rights in such warranties, if any. The assignment will be effective as of the date on which You close escrow for the purchase of Your Home. Any rights that inure to a homeowner under a manufacturer's warranty are the obligation of the manufacturer. Builder has no obligations under the manufacturer's warranty, including without limitation the ability to enforce the manufacturer's warranty. Builder disclaims any warranty of any kind, express or implied, relating to Manufactured Products, including without limitation, any warranty of use, fitness of use, workmanship, or quality. Builder will not be obligated under this Limited Warranty for any damage to a Manufactured Product or for any damage caused by a Manufactured Product installed at Your Home; provided however, to the extent required by law, Builder will be responsible for damage caused by its improper installation of a Manufactured Product at Your Home or other act by Builder only if the installation or other act by Builder caused actual damage. Builder's disclaimer of warranties does not limit or otherwise affect the warranty of any manufacturer. If a Manufactured Product malfunctions, or is otherwise defective, You agree to follow the procedures in the applicable manufacturer's warranty documents or website. Prior to Your execution of this Limited Warranty, a copy of the warranties for Manufactured Products in Your Home were made available to You for Your review. At or after the close of escrow for the purchase of Your Home, Builder will deliver to You the actual warranties for the Manufactured Products in Your Home to the extent such warranties exist. Such delivery may be in digital format or links to a manufacturer's website.

17

# SECTION 7

## OTHER CONDITIONS AND LIMITATIONS

**DISCLAIMER OF OTHER WARRANTIES.** TO THE FULLEST EXTENT PERMITTED BY LAW, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF HABITABILITY, ARE HEREBY EXPRESSLY DISCLAIMED BY BUILDER AND WAIVED BY YOU. THIS LIMITED WARRANTY IS SUBSTITUTED IN PLACE OF ALL SUCH WARRANTIES. THIS MEANS THAT THIS WARRANTY IS THE ONLY WARRANTY THAT APPLIES AND GOVERNS YOUR AND OUR RIGHTS AND OBLIGATIONS RELATED TO YOUR HOME AND THAT THERE ARE NO OTHER WARRANTIES EXCEPT AS MAY BE REQUIRED BY LAW. NO ONE CAN ADD TO OR VARY THE TERMS OF THIS LIMITED WARRANTY, ORALLY OR IN WRITING. IF AN ARBITRATOR OR COURT DETERMINES THAT A WARRANTY CANNOT BE WAIVED, DISCLAIMED, OR REDUCED BY THIS WARRANTY OR SUBSTITUTED WITH THE TERMS OF THIS WARRANTY BY LAW, THEN THE SPECIFIC TERM IN THIS WARRANTY THAT CONFLICTS WITH THE WARRANTY TERM THAT MAY NOT BE WAIVED, DISCLAIMED, REDUCED OR SUBSTITUTED WILL NOT APPLY, BUT ALL OTHER TERMS WILL REMAIN APPLICABLE TO THE EXTENT PERMITTED BY LAW.

**Severability.** In the event any provision of this Limited Warranty is determined to be unenforceable, that determination will not affect the validity of the remaining provisions.

**Not an Insurance Policy.** This Limited Warranty is not an insurance policy and Builder does not provide you any insurance through the Limited Warranty or otherwise. You should always obtain Homeowners insurance to protect your Home and if You have a mortgage on Your Home, Your lender may insist that You have a homeowner's insurance policy. This is not a homeowner's insurance policy.

**Repair Does Not Extend Warranty Term.** No repair, replacement or payment shall extend the Warranty Term of this Limited Warranty as to any Covered Claim, including, without limitation, the Covered Claim which was the subject of the repair. There shall be no warranty, express or implied, arising from repair or replacement work performed by or on behalf of Builder except for the remaining original Warranty Term.

**Limitations on Post-Repair Condition of Home.** Repairs undertaken under the Limited Warranty are intended to restore the Home to acceptable tolerances, but not necessarily to like-new condition.

**Headings.** Section headings and the Table of Contents used herein are for convenience of reference only and shall not affect the meaning or interpretation of this Limited Warranty.

# SECTION 8

## TIME LIMIT FOR MAKING WARRANTY CLAIMS

The Warranty Term is different depending on the type of system, Component or element of construction involved. For items covered under Section 3 One Year Fit and Finish Warranty, the Warranty Term is one year from the Effective Date of Warranty. For items covered under Section 4 Extended Limited Warranty for Performance Standards, the Warranty Term is set forth for each building Component listed starting from the Effective Date of Warranty. All warranty claims must be received by Builder prior to the expiration of the applicable Warranty Term. Any claim that Builder did not comply with its obligations under this Limited Warranty must be brought pursuant to the procedures set forth in the Individual Dispute Resolution Agreement and must be initiated no later than thirty (30) days after the expiration of the applicable Warranty Term. Without limiting the generality of the foregoing, nothing in this Limited Warranty shall be construed to extend any applicable statutes of limitation or repose, including without limitation the ten (10) year statute of repose for construction defects set forth in California Code of Civil Procedure Section 337.15 or California Civil Code Section 941, and such statutes of limitation and/or repose that apply to any construction defect claims You may make regarding Your Home, regardless of whether such claims are made under this Limited Warranty, the Right to Repair Act or otherwise.

19

# SECTION 9

## RIGHT TO REPAIR ACT

This Limited Warranty is **NOT** intended to be a Builder's Enhanced Protection Agreement, as permitted by the Right to Repair Act. The terms and conditions of this Limited Warranty are intended by Builder to contractually set forth Your and the Builder's rights, duties, and obligations as to certain covered Components and functions of Your Home under this Limited Warranty.

If this Limited Warranty is in any way deemed to limit the application or reduce the protection of the Right to Repair Act, the provisions of the Right to Repair Act shall control and shall supersede any term, condition, provision, definition, limitation, exclusion, right, duty, or requirement stated in this Limited Warranty.

20

# SECTION 10

# WARRANTY CLAIM PROCEDURE

If You become aware of a Condition that You believe is Covered Claim under this Limited Warranty, You must proceed as follows:

**Notification**

You must submit a Service Request through the Builder's website at https://www.CustomerCareNHC.com (or by following the links at Builder's general website for "service", "customer care" or "warranty", "***Website***") as soon as reasonably possible after You become aware or should have become aware of the Condition, but in no event may Your service request be submitted to Builder through the Website later than the earlier to occur of (a) thirty (30) days following Your discovery of a Condition (except as provided below for Conditions discovered during the first thirty (30) days after the Effective Date of Warranty) or (b) the date on which the applicable Warranty Term expires for the system, Component or element of construction involved in such Condition. However, for ease of service, during the initial thirty (30) days following the Effective Date of Warranty you should keep track of Conditions You wish to report until the expiration of such thirty (30) day period.  Service requests must be made through the Website and will not be accepted by mail or other delivery process.  If your request for service is not submitted in accordance with the foregoing, Builder will have no obligation to remedy the Condition that is the subject of the service request.  Further any claim or claims that Builder has breached this Limited Warranty must be brought within one (1) year following the alleged breach, but in no event later than thirty (30) days after expiration of the Warranty Term with respect to the system, Component or element of construction involved in such breach by Builder, and shall be resolved in accordance with the Individual Dispute Resolution Agreement.

**Cooperation**

You must fully cooperate with Builder, and any Builder Parties, in inspecting, investigating, testing (including destructive testing), monitoring, repairing, replacing or correcting a Condition under this Limited Warranty.  This cooperation includes, but is not limited to, granting reasonable access to Your Home for the foregoing purposes during normal business hours, having a person at least eighteen (18) years of age at each and every scheduled appointment, and, if the Home has tenants, having Your authorized representative (as evidenced by a signed, written authorization), present for any such appointments.  If You fail to so cooperate, the Builder will have no obligation to perform any warranty service under this Limited Warranty.

**Do Not Incur Expenses for Covered Claims Without Written Approval**

You agree not to make any voluntary payments, assume any obligations, or incur any expenses to remedy any Condition You believe is a Covered Claim without prior written approval from Builder.  Subject to the exception below, Builder will not reimburse

21

You for any costs or expenses You incur if You do not obtain prior written approval from Builder agreeing to reimburse you for such costs.

However, Builder will reimburse you for reasonable expenses You incur with independent third parties, consistent with this Limited Warranty, in making repairs for (i) a Condition that is a Covered Claim which is necessary solely for the protection of the Home from further material damage, provided that you notify Builder of such Condition as soon as is reasonably possible, or (ii) an Emergency Condition provided that you notify Builder of such Emergency Condition as soon as is reasonably possible. To obtain reimbursement for such costs incurred as a result of an Emergency Condition, You must provide Builder with a complete and accurate record describing in detail the Emergency Condition and the repairs and repair costs. If proper, detailed documentation for emergency repairs and repair costs is not provided, Builder shall not be obligated to reimburse You for costs incurred in connection therewith.

**Sign a Release**

To the fullest extent permitted by law, when Builder or a third party designated by Builder pays to You any monetary settlement for any claim, You must sign a full release of Builder's obligations related to the claim. This release shall be applicable to the claim only and shall not prevent You from making a claim regarding any other Condition that You believe is a Covered Claim.

**Disputes**

You agree that all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial.

22

## SECTION 11

## REPORTING AN <u>EMERGENCY</u> CLAIM

Certain events and circumstances may require immediate attention by You under this Limited Warranty. Builder has provided an emergency phone number for Your convenience to expedite service in Emergency Conditions. To ensure documentation in Your warranty file, send a Service Request Form to Builder clearly identifying and describing in detail the Emergency Condition and the date that You reported the Emergency Condition.

Emergency Covered Claims are those Covered Claims that require immediate attention due to Emergency Conditions and include, but may not be limited to, the following examples:

- A total stoppage of the sewer system. (Note: Builder is not responsible for sewers, fixtures, and drains which are clogged as a result of the action or inaction of any Owner Party or Owner Parties.)

- A water leak which could cause serious damage to the building and/or furnishings. (Turn off water supply immediately.)

- An electrical problem causing complete loss of power within the Home. (Shut off main breaker.)

Urgent, but non-Emergency Conditions are those Conditions that may require immediate responsive action but are not of an Emergency Condition nature. Such urgent Conditions, include, but may not be limited to:

- Complete loss of heat or air conditioning

- Leak under a sink

The following Emergency Phone Number and contact information are provided to You for use if You believe a Condition is an Emergency Condition. Please strictly comply with the emergency service request procedures set forth above, including careful consideration of whether a Condition qualifies as an Emergency Condition subject to the emergency service request procedures set forth herein.

23

# EMERGENCY PHONE NUMBER

## 949-472-5518

For appliance service issues, please contact the appropriate factory warranty service company for all appliance repairs of any nature. To ensure documentation in your warranty file, after You have contacted the appropriate appliance service subcontractor, send a Service Request Form to Builder clearly identifying and describing the appliance service request and the date that the appliance service subcontractor or vendor was contacted.

You are required to exercise good faith in determining whether a Condition qualifies as a Covered Claim, whether such Condition qualifies as an Emergency Condition and using the proper reporting procedures under this Limited Warranty. You may be responsible for costs associated with services provided if you report an item that is not an Emergency Condition or a Covered Claim, at Builder's sole discretion.

Your failure to follow obligations, schedules, necessary maintenance (including without limitation the Maintenance Guidelines), reporting procedures and practices may invalidate all or portions of the coverage of this Limited Warranty.

24

# SECTION 12

# YOUR OBLIGATIONS

**Access to Your Home.**

In order for Builder to carry out its responsibilities under this Limited Warranty, Builder, or a third-party designated by Builder, will require access to Your Home from time-to-time, provided that access is during normal business hours, Monday through Friday, at a time mutually convenient to You and Builder between the hours of 8:00 a.m. and 4:00 p.m., or as otherwise set forth above. You hereby agree to grant access to Builder and Builder Parties during such time to inspect, repair and conduct tests in Your Home as in their judgment may be required. Your failure to allow access to Your Home will void this Limited Warranty.

**Your Obligations to Care for Your Home**.

This Limited Warranty covers the cost of labor and materials to correct a Covered Claim, as more fully defined above. Your obligation is to care for Your Home in such a way as to prevent or minimize damage to it. All new homes go through a period of settlement and movement. During this period, Your Home may experience some minor material shrinkage, cracking and other events which are normal and customary. You are responsible for proper maintenance of Your Home, including, but not limited to, complying fully with all Maintenance Guidelines. You should become familiar with all Maintenance Guidelines. By accepting this Limited Warranty, You agree to provide to any subsequent purchaser of the Home from You any and all Maintenance Guidelines. Any subsequent purchaser of the Home must also comply with the Maintenance Guidelines. The failure of any Homeowner to comply with the Maintenance Guidelines shall void this Limited Warranty, as to any claim in whole or in part, at Builder's sole and absolute discretion. The sale of the Home to a subsequent purchaser shall not extend the Warranty Term.

Without limiting the information or maintenance obligations provided in Your Homeowner Manual or other Maintenance Guidelines, below are some reminders of what Your Home has a right to expect from You:

- Your Home and lot were designed with a particular drainage pattern, which should carry rainwater away from the foundation. Water should not be directed to the edge of the foundation, either in the form of lot drainage or the watering of flowers, shrubs, or grass.
- Concrete surfaces should be free of salts, other deicing chemicals, and excessive weight such as a moving van. Yard drainage should be maintained to divert water away from concrete surfaces, if possible, to eliminate the chance it will undermine the surface and erode the bearing soil.
- Structural alterations to the Home must be performed by professionals who understand the load-bearing requirements of the change. One of the reasons that

25

local municipalities require permits for building alterations is to make sure that the structural integrity of the Home is maintained.

- In many cases, the seal around doors and windows is caulk. This material should be inspected annually and may need to be replaced after one to two years. Water from yard and lawn watering devices should not come in contact with the structure.

- Since the mechanical systems of Your Home were designed for normal usage, placing unreasonable demands upon them will present problems. Plugging several electrical devices into one circuit may cause it to overload. Loading materials into a drain may cause it to clog. Undue weight should not be placed on pipes or showerheads because they can break. Some devices must be cleaned periodically (e.g., furnace filters) so that they can do what they were designed to do.

- Wood requires cleaning and sealing to prevent problems associated with water penetration and continual exposure to the elements. Painted or sealed surfaces must be cleaned and refinished according to the requirements of Your geographic area. If this is not done, the surface will deteriorate.

- Instructions for care and maintenance are included with many Components of Your Home, including finished flooring, appliances, and air handling equipment. Following these instructions will extend the life of these Components.

- The common areas require the same care and maintenance as Your Home. Although Your Association is responsible for maintenance, all residents should strive to keep these areas clean and usable.

**Your Responsibility for Proper Use**

You are responsible for any improper use of Your Home, including, but not limited to, unreasonable use, intentional damage, and the use of Your Home for anything other than a single-family residence.

**Your Responsibility to Provide Notice and Mitigate Damages**

If You believe Your Home has a construction defect covered by this Limited Warranty, You must give Builder timely notice in the manner described in this Limited Warranty. Builder is not responsible for any damage that occurs because You failed to timely notify Builder or because You failed to take reasonable action to prevent the damage.

26

# SECTION 13

## BUILDER OBLIGATIONS UNDER THIS LIMITED WARRANTY

Except for Emergencies as set forth in Section 11 all Service Requests must be made by You in accordance with Section 10. Telephonic or face-to-face discussions will not protect or preserve Your rights under this Limited Warranty.

Upon receiving a fully completed Service Request from You, Builder, or a Builder Party, will conduct inspections, investigations and/or testing (including destructive testing) regarding the alleged claim described in the Service Request From to determine if a Covered Claim exists.  Upon Builder's determination that the described Condition is a Covered Claim, Builder, or a Builder Party, will, at Builder's sole discretion, (1) perform repair or replacement in response to the Covered Claim or (2) pay to You the reasonable cost to perform such repair or replacement in which case You shall execute a full release in favor of Builder with respect to the Covered Claim.

**Standards by Which the Presence of a Covered Claim Will be Determined.**

The following factors will be considered by Builder in determining whether a Condition constitutes a Covered Claim.  Should an arbitration be conducted under the Dispute Resolution Procedure, these factors shall be considered by the arbitrator or referee, as applicable, in rendering a decision:

1.      The Fit and Finish Standards or Performance Standards, as applicable.

2.      Consideration as to whether the magnitude of the Condition:
   - Materially affects the structural integrity of the Home; or
   - Has an obvious and material negative impact on the appearance of the Home; or
   - Creates an Emergency Situation; or
   - Results in the inability of the Home to provide the functions that can be reasonably expected in such a home;

3.      Consideration as to whether the Condition is the result of normal wear and tear (Conditions that are normal wear and tear, or are caused by normal wear and tear, are not Covered Claims);

4.      Consideration as to whether the Condition was caused by, or in any way resulted from, the failure of an Owner Party or Owner Parties to perform normal or routine maintenance (any Condition that is determined to be a maintenance issue or that results from improper or inadequate maintenance is not a Covered Claim);

5.      Consideration as to whether the Condition was caused by any Owner Party or Parties (any Condition that is caused by an Owner Party or Parties is not a Covered Claim);

27

6.    Recognition that any Condition resulting directly or indirectly from or worsened by changes, additions, alterations or other actions or omissions by any Owner Party or Owner Parties, will not be considered a Covered Claim; and

7.    Any conditions, limitations or exclusions contained in this Limited Warranty.

28

## SECTION 14

## DISPUTE RESOLUTION PROCEDURE

Any and all disputes arising out of or relating to this Limited Warranty shall be resolved in accordance with the Individual Dispute Resolution Agreement, which provides for the resolution of disputes through arbitration, or alternatively, judicial reference, and a corresponding waiver of the right to a jury trial. The Individual Dispute Resolution Agreement is recorded against the Home.

**BY INITIALING IN THE SPACE BELOW, YOU AND BUILDER AGREE TO HAVE ANY DISPUTE DECIDED BY THE ABOVE DISPUTE RESOLUTION PROCEDURE AND YOU AND BUILDER ARE GIVING UP ANY RIGHTS YOU AND BUILDER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU AND BUILDER ARE GIVING UP THEIR RESPECTIVE JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THIS LIMITED WARRANTY. IF YOU OR BUILDER REFUSES TO SUBMIT TO THE DISPUTE RESOLUTION PROCEDURE, AFTER AGREEING TO THIS PROVISION, YOU OR BUILDER MAY BE COMPELLED TO COMPLY WITH THE FOREGOING DISPUTE RESOLUTION PROCEDURE.**

**I/WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES IN ACCORDANCE WITH THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**

**BUYERS' INITIALS: X_____ X_____ ; BUILDER'S INITIALS: X_____**

29

## SECTION 15

## CLAIMS UNDER INDIVIDUAL DISPUTE
## RESOLUTION AGREEMENT

Builder has elected to use certain procedures for the resolution of construction defect claims regarding Your Home, as allowed by the Right to Repair Law ("***Right to Repair Claims Procedure***"). The Right to Repair Claims Procedure is in the Individual Dispute Resolution Agreement that You and Builder have signed. Your providing Builder with a Service Request Form or any other notice of any alleged Covered Claim under this Limited Warranty **DOES NOT** constitute a "Notice of Claim" under the Individual Dispute Resolution Agreement or a claim under the Right to Repair Act or any law or statute. **THE REPORTING AND NOTICE PROCEDURES SET FORTH IN THIS LIMITED WARRANTY APPLY SOLELY TO COVERED CLAIMS UNDER THIS LIMITED WARRANTY, AND DO NOT IN ANY WAY CONSTITUTE ANY ELECTION TO USE OR COMMENCEMENT OF THE CLAIMS PROCESSES AND DISPUTE RESOLUTION PROCEDURES IN THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.**

30

# SECTION 16

## EFFECT ON FUTURE OWNERS OF THE HOME

All of Your rights and obligations under the Limited Warranty shall, unless previously released by You or Your successor, fully transfer to each successor owner of the Home, including any mortgagee in possession, for the remainder of the applicable Warranty Term and any transfer shall in no way affect, increase or reduce the coverage under the Limited Warranty for its unexpired term.

If you sell Your Home during the Warranty Term, You agree to give this Limited Warranty to the successor owner to inform the successor owner of warranty rights and to otherwise make it possible for the successor owner to fulfill the successor owner's obligations under the terms of the Limited Warranty and the applicable Maintenance Guidelines. If You are an owner other than the original purchaser of the Home, You are bound by all the terms and conditions of the Limited Warranty, including, but not limited to, claims procedures and the requirement to submit any disputes that may arise under the Limited Warranty to binding arbitration or judicial reference pursuant to the Individual Dispute Resolution Agreement which is recorded against the Home. If You are a subsequent purchaser and require a copy of the Individual Dispute Resolution Agreement, you may also contact Builder for a copy.

31

**YOU AND BUILDER ACKNOWLEDGE THAT THIS LIMITED WARRANTY CONTAINS TERMS, CONDITIONS, LIMITATIONS, WAIVERS, AND EXCLUSIONS THAT AFFECT THE LEGAL RIGHTS OF EACH OF YOU.  BY YOUR SIGNATURE BELOW, BOTH YOU AND BUILDER ACKNOWLEDGE THAT YOU HAVE HAD THE OPPORTUNITY TO OBTAIN THE ADVICE OF LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED WARRANTY.  YOU ACKNOWLEDGE THAT BUILDER HAS ADVISED YOU TO SEEK LEGAL COUNSEL PRIOR TO SIGNING THIS LIMITED WARRANTY.  YOU AND BUILDER AGREE TO BE BOUND BY ALL OF THE PROVISIONS OF THIS LIMITED WARRANTY.**

Dated: 5/15/2024

Buyer

Buyer

Buyer

Buyer

BUILDER

Dated: 6/24/2024

Dated: 6/24/2024

Dated:

Dated:

Lot:        88

Address:    129 Oakstone

Irvine, CA 92618

225

# Exhibit "B"



18100 Von Karman Ave., Suite 700
Irvine, California 92612
p (949) 271-8700
f (949) 627-2611
www.phlklaw.com

Melanie S. Woodfin, Partner
mwoodfin@phlklaw.com

June 23, 2025

**CEASE AND DESIST**

**VIA E-MAIL AND U.S. MAIL**
Jeffrey Gu
129 Oakstone
Irvine, CA  92618
jeffwgu@gmail.com

Re:    ***Gu, Jeffrey v. The New Home Company***
PHLK File No.:    0066-2818

Dear Mr. Gu:

As you are aware of based on our letter dated April 16, 2025, as well as all subsequent letters from our office, Plante Huguenin Lebovic Kahn LLP has been retained to represent The New Home Company ("TNHC") in connection with your construction defect claims.  It has come to our attention that you have been contacting TNHC directly.  As we previously advised, all further communication must be directed to our office, and not TNHC.  Accordingly, we again request that all communication go through our office.  Thank you for your cooperation.

Further, as stated in our letter dated May 27, 2025, TNHC demands that you immediately cease and desist all harassing conduct.  TNHC has attempted to address your claims in good faith and in response you have engaged in a pattern of bad faith conduct designed and intended to annoy, harass and offend TNHC, and is illegal, dangerous, and disruptive.  If this behavior continues, TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.  Your harassing conduct includes abuse of the SB800 prelitigation process, improper and duplicative bond claims, improper demands, and illegal and dangerous trespassing on THNC's construction sites.

As stated in our May 27, 2025 letter, you served 16 separate notices of claims ("Notices"), numerous of which contain identical claims or claims already being addressed through warranty and/or included in prior Notices, you filed a claim with THNC's bond company for the same claims as in the Notices, you made multiple demands for documents and information after we repeatedly advised that the documents and information requested are not required of TNHC, and you have intentionally trespassed on TNHC's construction site and harassed its construction workers.  Despite our demand that you cease and desist this abusive and harassing behavior, it continues.

---

Irvine • Roseville • Phoenix • Denver • Las Vegas • Dallas • Seattle • Washington D.C.

**PH** PLANTE HUGUENIN
**LK** LEBOVIC KAHN LLP

Subsequent to the cease and desist letter dated May 27, 2025, you have continued with harassing conduct.  You submitted an additional bond claim on June 12, 2025 relating to the stair railing, which is a claim included in one of your 16 Notices.  In addition, you have contacted TNHC directly, despite our request that all communication go through our office as TNHC is represented by counsel, and requested documents which are irrelevant to your Notices and not required under SB800.  Finally, you have again intentionally and illegally trespassed on TNHC's construction site and harassed the construction workers.  This intentional trespass not only interferes with the work being performed, but is also extremely dangerous to both you and TNHC contractors.

**TNHC demands that all communication go through my office and that you immediately cease and desist all harassing activities against TNHC and its contractors and from unlawfully entering TNHC's construction site at the Olivewood community.**  TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties.

Sincerely,

Melanie S. Woodfin

MSW

cc:    Sam C. Plante, Esq.
       Janelle Launi, Paralegal

**228**

# Exhibit 8

| | |
|---|---|
| **From:** | Carrie Hoffmann <Carrie.Hoffmann@iatinsurance.com> |
| **Sent:** | Wednesday, July 23, 2025 11:57 AM |
| **To:** | Melanie Woodfin |
| **Cc:** | Carie Howard |
| **Subject:** | FW: [EXTERNAL] TNHC 0507551 Proof of Claim, Doors Trim |
| **Attachments:** | Harco Door Trim Violations Supplement.pdf; Door Trim Claim.pdf; May 22 Final Builder Response.pdf; Door frames SB800.pdf; Door and Trim Estimate.pdf; Workmanship Example Door gap 2.jpeg; Workmanship Example Door gap.jpeg; Workmanship Example Doorframe Separation.jpeg; Workmanship Example Doorframe Daylight.jpeg; Workmanship Example Trim Gap.jpeg; Purchase Agreement.pdf |

 ⚠ External Message

Ms. Woodfin,

Please see attached for a new claim from Mr. Gu relating to the doors and trim. Please provide me with the principal's response at your earliest convenience. Also, please advise as to whether any of these items have already been addressed under the warranty.

Thank you,

Carrie Hoffmann, Senior Bond Claims Specialist
IAT Surety
847 S. Randall Road, #402
Elgin, IL 60123
Phone 630-696-4478
Fax 973-623-8006
www.iatinsurance.com



 



**CONFIDENTIALITY STATEMENT**

This e-mail, including attachments, is intended for the person(s) or company named and may contain confidential and/or legally privileged information. Unauthorized disclosure, copying or use of this information may be unlawful and is prohibited. If you are not the intended recipient or you have received this communication in error, please notify the sender immediately by telephone, return the original message to us by mail, and delete this message.

🌲 Think green - please don't unnecessarily print this e-mail.

---

**From:** Jeffrey Gu <jeffwgu@gmail.com>
**Sent:** Wednesday, July 16, 2025 1:58 PM
**To:** Carrie Hoffmann <Carrie.Hoffmann@iatinsurance.com>; IAT Surety Claims <IATSuretyClaims@iatinsurance.com>; Kyle Murphy <Kyle.Murphy@iatinsurance.com>; Chris Cullen <Chris.Cullen@iatinsurance.com>
**Subject:** [EXTERNAL] TNHC 0507551 Proof of Claim, Doors Trim

<mark>CAUTION: This email originated from outside IAT. Do not click on links or open attachments unless you recognize the sender and confirm the content is safe.</mark>

---

I am submitting another bond complaint regarding another matter at 129 Oakstone.


Surety:          Harco National Insurance Company
Principal:       TNHC Realty and Construction
Bond No.:        CAHNSU0507551
Obligee:         California Contractors License Board
Claimant:        Jeffrey Gu

I have not included a notary this time because requiring it could be seen as a violation of CIC §790.03(h). Please acknowledge this submission within 2 business days.

-Jeffrey

**Section 7109 (Departure from trade standards):**

The contractor delivered and installed interior doors and trim exhibiting significant alignment, latching, and finish defects. Door jambs were not plumb, casing was improperly spliced and caulked, and multiple corners were left with visible separation. These issues represent a negligent departure from accepted industry standards for door installation and finish carpentry.

**Section 7113 (Failure to complete work or comply with specifications):**

Despite multiple notices, the contractor failed to address pervasive issues with door operability and trim alignment. Many doors did not latch properly, required hinge adjustment, or were set into warped jambs. The workmanship does not conform to quality standards reasonably expected by consumers or implied during the purchase and walkthrough process.

**Section 7110 (Disregard of building laws):**

The contractor appears to have used unlicensed or inadequately supervised labor during the trim installation, leading to widespread noncompliance with accepted construction practices. Additionally, inspectors retained by the contractor failed to document or resolve obvious finish carpentry defects, suggesting systemic disregard for basic quality control requirements.

---

## 6. Claimant was damaged by such violations as follows:

The defective installation of door casings, misaligned door jambs, and visibly flawed trim has significantly diminished the finish quality of the home. These issues were not caused by homeowner use but were present well within the first year of ownership. A professional estimate of $19,550 was obtained to remediate the affected door systems and restore basic operability and aesthetic standards. The contractor's refusal to make repairs or respond in good faith or according to statutory requirements has caused financial harm, emotional distress, and a loss of trust in the integrity of the home's construction. The pattern of neglect and denial further supports a finding of bad faith and willful misconduct.

**232**

*"For your protection California
law requires the following to
appear on this form: Any person
who knowingly presents false or
fraudulent claim for the payment
of a loss is guilty of a crime and
may be subject to fines and
confinement in state prison."*

### PROOF OF CLAIM FORM

### CALIFORNIA CONTRACTORS LICENSE

State of California

County of ___Orange___

I, ___Jeffrey Gu___ on behalf of ___Di Lan Ge___
   (Name of Individual)                (Name of Claimant)

of ___129 Oakstone, Irvine CA 92618___ being duly sworn according
   (Address of Claimant)

to law, upon my oath depose and say:

   1). Claimant asserts this claim with respect to the acts

of ___TNHC REALTY AND CONSTRUCTION INC CSLB 938080___, in its capacity as a
   (Name of Licensed Contractor)

contractor pursuant to the Contractor's license.

   2). This claim relates to the following (check where

appropriate):

   __x__ home improvement to Claimant's primary residence

   _____ home improvement not to Claimant's primary residence

   _____ improvement to non-residential property

   _____ failure to pay wages to licensed Contractor employees

   _____ trust fund damaged by Contractor failure to pay fringe
         benefits per union collective bargaining agreement

   _____ Other _____
                           (describe)

Page 1 of 4

**233**

3). The amount claimed under this surety bond claim is $ ✗✗✗✗ $19,550.00.

4). Claimant, between the dates of ___6/1/24___ and ___5/25/25___ (check one) ___ furnished to or _x_ purchased from _____

___A new house_____ Contractor in accordance
(Describe services or materials)

with a __x__ Contract or _____ Purchase Order dated ___6/25/24___, a copy of which is attached hereto, for the agreed price of

$_____3,699,990_____.

5). Claimant contends that the Contractor violated the following provision(s) of Division 3, Chapter 9 (commencing with Section 7000) of the Business and Professions Code of the State of California: ___See attached_____
(Cite Specific Section(s))

The violations are as follows: _____

_____;
(Explain - attach additional sheets, if necessary)

6). Claimant was damaged by such violations as follows: __

___See attached_____

_____;
(Explain - attach additional sheets, if necessary)

7). Attached hereto are documents showing the demands for payment from Contractor and the amount due to Claimant and all responses received from the Contractor.

8). The foregoing information is furnished to the Surety

Page 2 of 4

234

in support of the claim and it is understood that the furnishing of this form or the acceptance and/or retention thereof by the Surety does not constitute a waiver of any of the terms of the Surety's bond nor of any defenses the Surety may have, not an admission of liability thereunder.

9). This claim is being made against Bond No, 0507551 (if known) and a copy of the Bond is __yes__ attached hereto _____ unavailable.

10). Claimant is a (check one):

___ Corporation

___ General Partnership

___ Limited Partnership. Managing partner is _____

___ Sole Proprietorship.

_x_ Other. ___Homeowner_____
      (specify)

IN WITNESS WHEREOF, on this __16__ day of ___July___. 200_2025_, the undersigned hereby acknowledges, that I am the __representative__ (state title of officer or authorized capacity on behalf of Claimant) of the claimant named below and that I caused these presents to be duly executed with the authority and on behalf of the claimant.

Signed:  ___Di Lan Ge___ (Corporate Seal)
         (Name of Claimant)

By: _____
    (Signature)

Page 1 of 4

235



18100 Von Karman Ave., Suite 700
Irvine, California 92612
p (949) 271-8700
f (949) 627-2611
www.phlklaw.com

Melanie S. Woodfin, Partner
mwoodfin@phlklaw.com

May 22, 2025

**VIA E-MAIL AND U.S. MAIL**

Jeffrey Gu
129 Oakstone
Irvine, CA  92618
jeffwgu@gmail.com

Re:    ***Gu, Jeffrey v. The New Home Company***
PHLK File No.:        0066-2818

Dear Mr. Gu:

As you know, Plante Huguenin Lebovic Kahn LLP represents The New Home Company, Inc. ("TNHC") in connection with Notices of Claim under Civil Code section 896, *et seq*. ("SB800") dated April 2, 2025 (2), April 3, 2025, April 4, 2025, April 7, 2025 (3), April 14, 2025 (5), April 21, 2025[1], and April 23, 2025[2] (collectively "Notices") served by you on behalf of yourself (Xian Fen Gu, also known as Jeffrey Gu) and Di Lan Ge as co-owners of the home located at 129 Oakstone, Irvine, CA 92618 in the Olivewood community (the "Property"). Pursuant to the foregoing representations, we have and will continue to address TNHC's responses to the Notices to your attention only.  If that is not correct, please advise immediately.  Please continue to direct all communication through our office.

TNHC has investigated the claims set forth in the Notices and has concluded that none of the issues identified in the Notices constitute building standard violations under SB800. Rather, the issues set forth in the Notices are, at most, fit and finish issues which are expressly excluded from SB800.  As such, TNHC denies all claims identified in the Notices under SB800.

---

[1] The April 21, 2025 Notice was not properly served under Civil Code section 910.  Accordingly, TNHC reserves all rights and defenses available as a result of the improper service.
[2] TNHC will respond to the Notices dated May 5, 2025 and May 12, 2025 under separate cover.

**PH** PLANTE HUGUENIN
**LK** LEBOVIC KAHN LLP

However, in order to amicably resolve this matter, TNHC is willing to address many of the identified issues through customer service repairs as detailed below:

| Alleged Issue[3] | Courtesy Repair/Locations |
|---|---|
| Significant and uneven gaps (up to or exceeding % inch) between doors and their jambs | TNHC will repair where the gaps exceed standards set forth in the Limited Warranty. |
| Doors that do not sit flush against the stopper when closed | TNHC will address this issue. |
| Doors that creak excessively and have a noticeable trail of black powder on the hinges | TNHC will address this issue. |
| Miter joints in door casing and trim that exceed the industry-standard separation of 1/16 inch, with daylight visible through some joints | TNHC will perform door tune-ups where door jamb/head separations and/or casing separations in select locations where observed gaps exceed standards set forth in the Limited Warranty.  TNHC will also repair weather-stripping at the entry door. |
| Inconsistent workmanship, including misaligned, unlevel hardware and uneven reveals, affecting both function and aesthetics | TNHC will perform a base moulding tune-up in select locations where observed separations standards set forth in the Limited Warranty.  TNHC will also perform a wood trim tune-up in select locations where observed interior wood trim joint separations exceed standards set forth in the Limited Warranty. |
| Loose wooden newel posts and iron balusters | This condition was not observed during TNHC's investigation; however, TNHC will paint the |

---

[3] Please note that in listing the alleged issues we have used your exact wording; however, such listing shall not be interpreted to mean that TNHC agrees with the descriptions and/or characterizations in any way.  To the contrary, TNHC disagrees with such descriptions and/or characterizations.

**PLANTE HUGUENIN
LEBOVIC KAHN LLP**

| Alleged Issue[3] | Courtesy Repair/Locations |
|---|---|
| | unfinished paint application on the guardrail post. |
| Lack of mitered joints at the lower corners of the niche, despite their use at the top, resulting in a visibly unbalanced and incomplete finish. | TNHC will address this issue at select locations where observed. |
| We have also observed that the HVAC system produces excessive noise in the kitchen, particularly from the vent located near the refrigerator. Measured sound levels have ranged between 52-75 dBA, significantly above the thresholds commonly recommended by industry guidelines for residential comfort. This condition presents a persistent nuisance and negatively impacts the habitability of the home, especially in a space generally associated with relaxation and daily use: Prolonged exposure to this level of noise pollution may have adverse health impacts, which heightens our concern. See addendum 1 for more information, it is attached for the record. | TNHC will further investigate the noise levels. |
| Doors and drawers that are uneven or not level | TNHC will address this issue at select locations where observed. |
| Cabinet faces that do not sit flush when closed | TNHC will address this issue at select locations where observed. |
| Inconsistent reveals and visible skewing of cabinet boxes | TNHC will address one cabinet separation observed in bath 3. |
| There is general unevenness in the carpeting across multiple rooms, with inconsistencies in texture, tension, and alignment. Along baseboards and walls, the carpet is often poorly tucked, while transitions between rooms and thresholds are sloppily finished. One door threshold includes a visible carpet loop, and another exhibits a raised transition, creating a tripping hazard. The carpet installation on the stair treads is also of concern due to | TNHC will address this issue at select locations where observed. |

**238**

**PLANTE HUGUENIN
LEBOVIC KAHN LLP**

| Alleged Issue[3] | Courtesy Repair/Locations |
|---|---|
| looseness that may contribute to slip and fall risks. | |
| Varying grout line widths. | TNHC will address this issue at select locations where observed. |
| Mismatched intersections between tiles. | TNHC will address this issue at select locations where observed. |
| Varying levels of flatness, resulting in uneven surfaces. | TNHC will address this issue at select locations where observed. |
| In the case of the niche, an obviously chipped tile | TNHC will address this issue at select locations where observed. |
| In response to a warranty request, the builder opted to use caulk instead of grout to fix up some cracks in the grout work. This is a non-permanent solution that also creates obvious visual differences and should've been remedied with the original installation material, grout. | TNHC will address this issue at select locations where observed. |
| Countertops Granite - Backsplash / sidesplash separation | TNHC will address a backsplash separation at the master bath, bath 2, and bath 3. |
| Drywall - Blemishes - Cornerbead cracks, drywall cracks and nail pops | TNHC will perform a drywall finish tune-up to address cornerbead separation in select locations where observed condition deviates from standards set forth in the Limited Warranty. |

The courtesy repairs will be coordinated through my office at mutually convenient times and dates. Please provide your availability and confirm that you will provide access for these repairs.

TNHC reserves all defenses, and any and all rights it has to enforce any other applicable pre-litigation and/or dispute resolution procedures contained in the relevant contracts and governing documents.

\*       \*       \*

**239**

**PH** **PLANTE** HUGUENIN
**LK** **LEBOVIC** **KAHN** LLP

Page 5

Should you wish to discuss this matter further, please feel free to contact me.

Sincerely,

Melanie S. Woodfin

SCP

cc:     Sam C. Plante, Esq.
        Janelle Launi, Paralegal

From: Di Lan Ge & Xian Feng Gu
746 Country Club Ln
Fond du Lac, WI 54935
dilange8888@gmail.com
920-251-6478

To: The New Home Company Inc.
15231 Laguna Canyon Rd., Suite 250
Irvine, CA 92618

4/2/25

Notice of SB 800 Claim – Defective functioning of doors and finish on doors, frames, and trim

To Whom This May Concern:

Pursuant to California Civil Code § 910, this letter constitutes a formal Notice of Claim regarding defective carpentry finishes and door installations at 129 Oakstone, Irvine, CA 92618.

We have observed the following issues affecting numerous interior doors, their associated trim, and baseboards throughout the home:

- Significant and uneven gaps (up to or exceeding ¼ inch) between doors and their jambs
- Doors that do not sit flush against the stopper when closed
- Doors that creak excessively and have a noticeable trail of black powder on the hinges
- Miter joints in door casing and trim that exceed the industry-standard separation of 1/16 inch, with daylight visible through some joints
- Inconsistent workmanship, including misaligned, unlevel hardware and uneven reveals, affecting both function and aesthetics

We submitted these issues previously through the warranty portal, where there are relevant photos when feasible. However, they were prematurely marked as "Completed" without any inspection or corrective action. A repair has been scheduled for 2 especially bad doors, but we remain concerned that the proposed solution will not address the underlying workmanship problem — especially if glue and/or other standard industry practices are again omitted during reinstallation.

Please respond within the timeframes required by California Civil Code § 913 and arrange for an overall inspection and repair, and send your response to 129 Oakstone and/or email to jeffwgu@gmail.com.

Di Lan Ge, Owner

Xian Feng Gu, Owner

**241**

Prepared by:

Jeffrey Gu
jeffwgu@gmail.com
720-593-1548

# ESTIMATE

**Finishing Touches Finish Carpentry INC**
4 McLaren Suite B
Irvine, CA 92618

cahajeromie@yahoo.com
949-584-7706
ocfinishingtouches.com



**Bill to**
Di Lan Ge
129 Oakstone
Irvine Ca

**Estimate details**
Estimate no.: 1580
Estimate date: 04/03/2025

| # | Product or service | Description | Qty | Rate | Amount |
|---|---|---|---|---|---|
| 1. | **Repair Work** | Remove and replace 3" MDF Flat stock casing on 38 interior doors sides.<br><br>Shim & reset/plum door 17 existing jams to best capability, to allow doors to latch and lock properly.<br><br>3-jams squeezing.<br>Remove door. Adjust hinge placement.<br>Replace 4-hinges (Satin Nickel). Rehang door.<br>(2-jams down glue, nail and caulk.)<br><br>34-corners & splices need glue caulking, filer and nails to help reduce expansion.<br><br>All materials included. | 1 | $12,700.00 | $12,700.00 |
| 2. | **Paint Repairs** | Prep & Repaint all repaired areas only with roll and brush.<br>(Water based paint)<br><br>All materials included.<br><br>Customer supplies paint color and sheen. | 1 | $6,850.00 | $6,850.00 |

**Total** **$19,550.00**

## Note to customer

We look forward to doing business with you. Thank you for the opportunity to bid on this project.

**243**

Accepted date    Accepted by

Accepted date    Accepted by

**244**



245



**246**





**248**



249

# OLIVEWOOD

## PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

THIS DOCUMENT CREATES SIGNIFICANT LEGAL OBLIGATIONS IF IT IS ACCEPTED BY SELLER AS DESCRIBED BELOW. **PLEASE READ IT CAREFULLY**.

---

Lot No. <u>0088</u>  Plan/ Elevation No. <u>2 B</u>

Tract No./Name   <u>19176</u>

Purchase Price: <u>$3,699,990</u>

Prequalifying Lender: <u>US Bank</u>

Loan Amount: <u>$2,404,993</u>

Final Date for Loan Approval: <u>1/26/2024</u>

Estimated Closing Date: <u>Jun,2024</u>
(This is an estimated date only – see Paragraph 3(d) of General Provisions)

Options Cutoff Date(s): **SEE OPTION CUTOFF SCHEDULE**

Title Company: **FIDELITY NATIONAL TITLE**

---

TO:    The Escrow Specialists Inc (**"Escrow Holder"**)
2 Corporate Park, Suite 210
Irvine, CA  92606
Tel: (949)  261-6222

Escrow Number: _____
Escrow Officer: <u>Starling Rich</u>
Date of Opening of Escrow: _____, ____

This Purchase Agreement and Escrow Instructions (**"Agreement"**) is made between THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, a Delaware limited liability company (**"Seller"**), and the individual(s) identified below as "Buyer" (**"Buyer"**).  Buyer and Seller may hereinafter collectively be called the **"Parties."**  Buyer agrees to buy the **"Property"** described below including the residence to be constructed thereon (**"Residence"**), and Seller, upon "Acceptance" (as defined below) of this Agreement by its duly authorized representative, agrees to sell the Property to Buyer, on the terms and conditions set forth below in the **Basic Provisions** and **General Provisions,** any **Addenda** attached hereto and the "Limited Warranty**"** defined below (collectively **"Sales Terms"**), all of which are incorporated herein by this reference.  All references herein to this **"Agreement"** include the Sales Terms, and the Parties hereby agree to be bound by same.

## BASIC PROVISIONS

**PROPERTY DESCRIPTION:**  Real property located at <u>129 Oakstone</u>, in the City of Irvine, State of California (**"Property"**).  The Property is more fully described as Lot <u>0088</u> of Tract No. 19176 as shown on the Subdivision Map recorded in Book 1000, Pages 27 through 37, inclusive, of Miscellaneous Maps, in the Office of the County Recorder of Orange County (**"County"**), California.

**PROJECT:**  The Property is located in the Olivewood residential development (**"Project"**) and the Portola Springs master planned residential community (**"Community"**).

**RESTRICTIONS:**  The Property is subject to the Restated Master Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Portola Springs (**"Declaration"**).

**HOMEOWNERS ASSOCIATION(S):**  The Property is subject to the Portola Springs Community Association, the homeowners association for the Community (**"Association"**)

**PURCHASE PRICE:**  The "**Purchase Price"** and **"Estimated Closing Costs"** for the Property and the timing for the payment of the same are set forth below.  Where estimates are indicated, the exact amounts will be determined before the "Close of Escrow" (as defined below in Paragraph 3(d)) in accordance with the terms of this Agreement.  All checks shall be made payable, at Seller's request, to either Escrow Holder or Seller.

| | | |
|---|---|---|
| (A) | Base Price | $3,585,775 |
| (B) | Option Items | $114,215 |
| (C) | Purchase Price (A + B) | $3,699,990 |
| (D) | Loan Amount (if applicable) | $2,404,993 |
| (E) | The **"Deposit"** of $$75,000.00 received on received on 1/9/2024 (Check/wire# ) (includes first deposit and if applicable, the "Second Deposit" defined in the Second Deposit Addendum) | $75,000. |
| (F) | Down Payment at Close of Escrow (Total Purchase Price less Deposit and Loan Amount) | $1,219,997 |
| (G) | **Estimated** nonrecurring Closing Costs including title policy, tax service, notary fees, recording costs and **"Third Party Charges"** of $9,000.00_ for escrow fees, credit report, appraisal fees, loan origination and processing fees and title report | $10,000.00 |
| (H) | **Estimated** recurring Closing Costs such as **"Association Assessments"** ( RANGE $166.80 - $180.00) per month depending on the phase of development in which the Property is located), property tax and assessment prorations, interest prorations, insurance premiums and impounds | $10,000.00 |
| (I) | Total **estimated** cash due before Close of Escrow (E + F + G + H) (to be paid in the form of wire transfer through a California institution) | $1,314,997 |

Execution of this Agreement by Buyer and Seller's sales agent (**"Home Counselor"**) is only an offer to purchase by Buyer. Execution of this Agreement by Seller's Home Counselor and/or delivery of Buyer's funds to Seller or "Escrow" (as defined below in

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

**250**

Paragraph 3(a)) do not make this Agreement binding on Seller.  This Agreement shall not be binding on Seller unless, within ten (10) days after the date Buyer signs this Agreement, Seller, in its sole discretion, delivers to Buyer a copy of this Agreement, executed by an individual authorized to accept this Agreement on behalf of Seller ("***Acceptance***").  The date on which an individual authorized to accept this Agreement on behalf of Seller ("***Authorized Individual***") signs the Agreement shall be the "***Acceptance Date***".  Neither Seller nor any Home Counselor has provided any assurances that Buyer's offer will be accepted by Seller. If, for any reason, Acceptance does not occur, Seller shall be deemed to have rejected Buyer's offer, this Agreement shall not become effective and all funds Buyer deposited with Seller shall be promptly refunded to Buyer.  Seller may hold Buyer's deposit check uncashed until Acceptance.  Buyer hereby authorizes Seller to hold Buyer's deposit check until Seller accepts this Agreement and Escrow is opened.  Notwithstanding anything to the contrary herein, Acceptance shall be deemed not to occur if Buyer's deposit check is returned for non-sufficient funds or Buyer has stopped payment on the deposit check, in which event this Agreement shall automatically terminate without any further action by the parties; however, if requested by Seller, Buyer shall be required to execute a termination of purchase agreement and Escrow cancellation instructions prepared by Seller or Escrow Holder.  Upon Acceptance, this Agreement will constitute the sole contract between the Parties regarding the purchase of the Property.  There are no collateral understandings, representations or agreements, oral or written, other than those contained in this Agreement.

**WAIVER OF RIGHT TO JURY TRIAL**.  **NOTICE:  THIS AGREEMENT REQUIRES THAT BUYER WAIVE ITS RIGHT TO A JURY TRIAL IN THE EVENT OF A DISPUTE WITH SELLER, INCLUDING WITHOUT LIMITATION CONSTRUCTION DEFECT DISPUTES.**

**DOCUSIGN**.  **BUYER ACKNOWLEDGES AND AGREES THAT ALL DOCUMENTS PROVIDED BY SELLER IN CONNECTION WITH THE PURCHASE OF THE PROPERTY WHICH ARE EXECUTED BY BUYER THROUGH DOCUSIGN AND ALL ELECTRONIC SIGNATURES TO SUCH DOCUMENTS SHALL BE DEEMED ORIGINALS AND BINDING UPON THE PARTIES THERETO.  SUCH DOCUMENTS ARE LENGTHY AND CREATE SUBSTANTIAL LEGAL OBLIGATIONS ON BUYER'S PART.  THEREFORE, BUYER SHOULD DOWNLOAD THE DOCUMENTS TO BUYER'S COMPUTER AND/OR PRINT COPIES AND REVIEW SAME CAREFULLY BEFORE SIGNING THROUGH DOCUSIGN.**

---

**BUYER CERTIFICATIONS**

Buyer acknowledges, agrees and certifies the following:

1.  No Home Counselor, employee, agent, or broker of Seller has the authority to (a) make any promises, assurances, agreements, representations or warranties to Buyer which contradicts any matters set forth in this Agreement, (b)  modify the terms of this Agreement or (c) make any agreements, representations or promises on behalf of Seller.

2.  In executing this Agreement Buyer is not relying on any promise, assurance, agreement, representation or warranty not contained in this Agreement.

3.  Any promises, assurances, agreements, representations or warranties by Seller must be in writing and signed by an Authorized Individual.

4. Although Buyer has had, and in the future may have, conversations with Home Counselors or other agents of Seller, no promises, assurances, agreements, representations or warranties of Home Counselors or other agents shall be binding upon Seller unless in writing executed by Buyer and an Authorized Individual and attached and made a part of this Agreement.

5. Prior to deciding to purchase the Property Buyer has considered all provisions of this Agreement and the impact of same on Buyer.

6. Written disclosures provided to Buyer do not relieve or alter Buyer's responsibility (subject to entry and other limitations imposed by Seller) to, among others: (a) diligently perform Buyer's investigation of the Property, Project and Community and the area surrounding same; (b) review the Declaration and all other Association documents; (c) review the recorded tract map for the Project and conditions of approval associated therewith; and (d) inspect the Property, Project and Community to satisfy Buyer as to the condition, safety and fitness of the Property, Project and Community for Buyer's intended use.

7.  Buyer has read and considered all provisions of this Agreement.

---

*Seller's Initials*

*Buyer's Initials*



HLO\ Olivewood\ v.1 1/9/2024

**251**

DocuSign Envelope ID: 367SG3C1-4305-496F-BD4A-205CAC6ACSDC

*[SIGNATURE PAGE TO PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS]*

| **BUYER:** | **BUYER:** |
|---|---|
| Di Lan Ge | Xian Feng Gu |
| First      Middle      Last Name | First      Middle      Last Name |
| 746 Country Club Ln | 746 Country Club Ln |
| Fond du Lac WI 54935 | Fond du Lac WI 54935 |
| Address | Address |
| (920) 251-6478 | (920) 539-5919 |
| Cell Phone                Home Phone | Cell Phone                Home Phone |
| Preferred E-Mail Address dilange8888@gmail.com | Preferred E-Mail Address xianfenggu888@gmail.com |
| Executed by Buyer on  1/9/2024 | 7:52:26 PM PST. | Executed by Buyer on  1/9/2024 | 8:16:16 PM PST |
| Buyer's signature | Buyer's signature |

| **BUYER:** | **BUYER:** |
|---|---|
| First      Middle      Last Name | First      Middle      Last Name |
| Address | Address |
| Cell Phone                Home Phone | Cell Phone                Home Phone |
| Preferred E-Mail Address | Preferred E-Mail Address |
| Executed by Buyer on | Executed by Buyer on |
| Buyer's signature | Buyer's signature |

Seller or Home Counselor must be notified by Buyer of any change in Buyer's contact information.

[Manner in which title to vest]
TBD

(Note: The manner of taking title may have significant legal and tax consequences.  Buyer should consult with a professional regarding such c
consent to any such change (including without limitation any trusts, limited liability companies or other entities which Buyer may
have a controlling interest).)

*Seller's Initials*

*Buyer's Initials*

Home Counselor:

By: *Dave Christensen*
(Home Counselor)

Date:  1/9/2024 | 3:12:36 PM PST

Sales Office Phone:  (951) 382-0477

Accepted by Seller on  1/11/2024 | 3:52:34 PM PST
(**"Acceptance Date"**).

THE NEW HOME COMPANY SOUTHERN CALIFORNIA
LLC, a Delaware limited liability company

By:

Print Name: Michael Battaglia

Title: Authorized Agent

*"Seller"*

Address:

The New Home Company
15231 Laguna Canyon Road #250
Irvine, CA  92618
Tel.:  (949) 382-7800

**Seller's Initials**

**Buyer's Initials**

## GENERAL PROVISIONS

1. **Purchase Price Payment Terms**.

(a) **Payment Method Election.** Buyer may elect to pay the Purchase Price in cash or with proceeds of a third-party loan (**"Loan"**) as provided in this Agreement. Buyer's election shall be confirmed by an addendum to this Agreement ("**Financing Addendum**") which shall be executed by Buyer and Seller concurrently upon execution of this Agreement. Once Buyer has made this election, Buyer may not change the election if to do so would, in Seller's sole judgment, interfere in any way with Buyer's or Seller's performance of their obligations under this Agreement, including without limitation delay the Close of Escrow.

(b) **Payment for Options.** Concurrently upon execution of this Agreement, the Parties shall complete and execute a Design Studio Selections Addendum in the form required by Seller ("**Options Addendum**") to select options or extras which are not included in the Base Price (**"Options"**). As a condition to beginning work on certain Option items, Seller may require Buyer to deliver to Escrow or Seller (as determined by Seller in its sole discretion) the cost of such Options, provided that to the extent that the cost of such Options is funded under the Loan, Buyer shall receive a credit through Escrow for Option costs funded by the Loan. Seller has provided no assurances that the Loan provider will agree to cover all Option costs in the Loan. The cost of Options must be included in the total Purchase Price, whether such Options will be financed or paid by cash, and the cost of the Options will be used in determining any reassessment of the Property for real property tax purposes.

(c) **Time and Manner of Payment.** BUYER SHALL DEPOSIT INTO ESCROW ALL SUMS REQUIRED OF BUYER TO CLOSE ESCROW (OTHER THAN ANY PORTION OF THE PURCHASE PRICE OBTAINED THROUGH THE LOAN) NOT LATER THAN TWO (2) CALENDAR DAYS AFTER RECEIPT OF SELLER'S REQUEST FOR SAME. ALL OF BUYER'S FUNDS REQUIRED UNDER THIS AGREEMENT WILL BE PAID BY CERTIFIED CHECK OR WIRE TRANSFER PAID THROUGH A CALIFORNIA INSTITUTION UNLESS EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT OR THE FINANCING ADDENDUM. ALL OPTIONAL ITEMS MUST BE ORDERED WITHIN THE TIME PERIODS SPECIFIED BY SELLER. NO OPTIONS MAY BE ORDERED DURING THE SIXTY (60) DAY PERIOD PRIOR TO THE ESTIMATED CLOSING DATE.

(d) **Release of Deposit**. Notwithstanding the foregoing, upon issuance of a Final Subdivision Public Report covering the Property from the California Department of Real Estate (previously known as the California Bureau of Real Estate) (**"DRE"**) and provided that Seller has posted a bond or other security in a form and amount acceptable to the DRE, (i) Escrow Holder shall, upon Seller's request, release any of Buyer's deposits to Seller which have been deposited into Escrow, without further Escrow instructions from Buyer or Seller, and/or (ii) Seller may, as determined by Seller in its sole discretion and without Buyer's approval, retain any of Buyer's deposits without delivery of such deposits to Escrow.

2. **Financing**.

(a) **Loan Application.** If prequalification is required by Seller, prior to executing this Agreement Buyer shall have submitted all documentation necessary to prequalify with the **"Prequalifying Lender"** specified on Page 1 to enable Seller to determine if Buyer is financially capable of purchasing the Property (although such prequalification shall not constitute financing or Loan Approval nor shall Buyer be obligated to use the Prequalifying Lender to obtain a Loan in connection with the purchase of the Property). Buyer shall authorize the Prequalifying Lender to release to Seller all information relating to Buyer's Loan application and credit report, including the status of the review and approval of Buyer's Loan application on an ongoing basis. Seller will pay all costs of the Prequalifying Lender but only in connection with Buyer's prequalification. If Buyer's Financing Addendum includes an election to pay a portion of the Purchase Price with Loan proceeds, Buyer acknowledges and agrees that Buyer will be obligated to pay all costs charged by any institutional lender or lenders (as applicable, the **"Lender"**), including costs of the Prequalifying Lender with respect to the Loan if it provides the Loan to Buyer. BUYER ACKNOWLEDGES THAT SELLER IS RELYING ON THIS REPRESENTATION AND WARRANTY IN ACCEPTING THIS AGREEMENT AND INCURRING EXPENSES IN CONNECTION WITH THE SALE OF THE PROPERTY AND SELLER'S COMPLETION OF THE CONSTRUCTION AND DEVELOPMENT OF THE PROPERTY.

(b) **Buyer Acknowledgments Regarding Loan**. BUYER IS SOLELY RESPONSIBLE FOR OBTAINING ANY LOAN NECESSARY TO PURCHASE THE PROPERTY, AND NO REPRESENTATION, WARRANTY OR ASSURANCE HAS BEEN GIVEN BY SELLER OR ITS AGENTS OR REPRESENTATIVES THAT BUYER WILL QUALIFY FOR A LOAN. ANY INTEREST RATE OR OTHER FINANCING INFORMATION PROVIDED TO BUYER BY SELLER, PREQUALIFYING LENDER AND/OR ANY LENDER IS AN ESTIMATE ONLY AND BUYER AGREES THE ACTUAL INTEREST RATE AND LOAN TERMS MAY BE DIFFERENT. THEREFORE (I) SELLER HAS PROVIDED NO REPRESENTATION, WARRANTY OR ASSURANCE THAT THE INTEREST RATE PREVAILING AT THE CLOSE OF ESCROW WILL BE ANY RATE QUOTED EARLIER TO BUYER AND (II) BUYER'S OBLIGATION TO PURCHASE THE PROPERTY IS NOT CONTINGENT UPON BUYER'S ABILITY TO RETAIN THE INTEREST RATE QUOTED AT THE TIME OF LOAN APPROVAL AND BUYER WILL BE REQUIRED TO PAY THE INTEREST RATE CHARGED BY THE LENDER AT THE CLOSE OF ESCROW. ALL FINANCING AND THE TERMS AND CONDITIONS THEREOF, INCLUDING WITHOUT LIMITATION IMPOUND PAYMENTS AND INTEREST RATE, ARE A MATTER OF CONCERN SOLELY BETWEEN BUYER AND THE LENDER AND SHALL NOT IN ANY WAY AFFECT THE RIGHTS OR OBLIGATIONS OF SELLER OR BUYER UNDER THIS AGREEMENT.

(c) **Loan Approval.** No later than the **"Final Date for Loan Approval"** specified on Page 1, Buyer shall deposit or cause to be deposited with Seller and Escrow Holder written verification (**"Loan Verification"**) for Buyer from Buyer's Lender of the Lender's Loan approval which shall be subject only to conditions that are acceptable to Seller in its sole discretion for the full Loan Amount to be financed as set forth in the Basic Provisions, or if the Purchase Price increases as a result of Options ordered, then the Loan Amount plus the cost of such Options (**"Loan Approval"**). The Loan Verification shall include a statement that Buyer is an acceptable borrower of the Loan Amount pursuant to the Lender's normal lending policies and ratios, based only upon (i) Buyer's completed credit report, and (ii) as of the date of the Loan Verification, the Lender's verification of Buyer's income and of the existence on deposit solely in Buyer's name and ready availability to Buyer of the balance of the Purchase Price (less the Loan Amount) prior to the Close of Escrow. The Final Date for Loan Approval cannot be extended without Seller's express written

**Seller's Initials**

**Buyer's Initials**

approval, which approval Seller may withhold in its sole discretion. The requirements of this Paragraph shall not be deemed satisfied if the written verification of Loan Approval deposited into Escrow is conditional or includes terms or conditions which are inconsistent with this Agreement. Federal law requires any Lender which approves Buyer for a Loan to provide Buyer with a closing disclosure ("*Closing Disclosure*") no later than three (3) business days prior to the consummation of the Loan, during which time Buyer shall have the right to review the Closing Disclosure and elect to terminate the Loan application. Buyer acknowledges and agrees that if Buyer elects to terminate its Loan application under federal law, Buyer shall not be released from its obligations under this Agreement, including its obligation to close Escrow on the Closing Date and the Closing Date shall not be extended as a result of such termination. Buyer hereby authorizes any Lender with which Buyer applies for a loan to provide to Seller a full copy of the Closing Disclosure delivered by such Lender to Buyer.

(d) **Obligations Regarding Use of Lender; Credit Worthiness.** If Buyer elects to obtain a Loan from a Lender other than the Prequalifying Lender, Buyer shall (i) within five (5) days after request by Seller, execute and deliver to Seller a written authorization, in a form to be determined by Seller in its sole discretion, which identifies such Lender and authorizes Seller to grant such Lender access to information in Buyer's Escrow for the purpose of obtaining the Loan and (ii) promptly provide written authorization for such Lender and any and all other Lenders, without further instructions from Buyer, to (1) copy Seller on all correspondences between Lender and Buyer; (2) provide Seller with copies of all credit, loan and other applications and other documentation and information of any kind submitted by Buyer to Lender and all documentation, including without limitation loan approvals and rejections, provided by Lender to Buyer; and (3) immediately provide any other information requested by Seller in writing or, at Seller's election, orally, in person or by phone. In addition, Buyer shall (i) cause Lender to deliver to Seller weekly written status reports concerning the Loan, (ii) within five (5) days prior to the Close of Escrow, cause Lender to deliver to Escrow Holder and Seller, as applicable, all loan documents required to close Escrow, and (iii) arrange with Lender to fund the Loan proceeds and provide for the recordation of all appropriate documents on or prior to the Closing Date. In addition, Buyer shall also have the obligation to maintain all sources of income and Buyer's credit worthiness, including without limitation (A) not taking any action (including incurring significant debt) which would prevent Buyer from qualifying for the Loan or any other financing or cause the cancellation of the Loan Approval or adversely affect Buyer's credit and/or ability to purchase the Property and (B) using Buyer's best efforts to comply with the requirements of Lender and the terms of the Loan Approval. The Lender selected by Buyer must use an Escrow Holder which is either selected by Seller or selected by Buyer and approved by Seller.

(e) **Failure to Obtain.** If Buyer does not act in good faith as determined by Seller or otherwise fails to comply with any of the requirements of this Paragraph 2 strictly within the time frames set forth herein, including without limitation (i) voluntarily undertaking any act for the purpose of preventing a Lender from approving the Loan or any other financing required to consummate the purchase of the Property, (ii) requesting that a Lender not approve the Loan, (iii) making a material misrepresentation which results in the failure of a Lender to approve the Loan or (iv) failing to properly execute all documents and take all actions required by a Lender to approve and fund the Loan, Buyer shall be in default under this Agreement and Seller may cancel Escrow, terminate this Agreement and proceed in accordance with Paragraph 8. If for reasons beyond the control of Buyer: (1) Buyer is unable to obtain Loan Approval by the Final Date for Loan Approval or (2) the Loan Approval does not comply fully and specifically with the requirements set forth in this Paragraph and is disapproved by Seller in its sole discretion, this Agreement shall terminate and Buyer's Deposit shall be refunded to Buyer. If after obtaining Loan Approval the Loan Approval expires or is withdrawn for any reason, Buyer shall not be released from its obligations under this Agreement nor shall the Closing Date be extended.

(f) **Substitute Loan.** Once Buyer has deposited the Loan Approval into Escrow, Buyer may not apply for or obtain any modified, additional or new Loan Approval from any Lender or other source ("*Substitute Loan*") if the application for or the funding of the Substitute Loan would, in Seller's sole judgment, interfere in any way with Buyer's or Seller's performance of their obligations under this Agreement, including without limitation delay the Close of Escrow. Buyer's application for or obtaining any Substitute Loan shall not extend the Closing Date, shall be deemed a Buyer default hereunder and shall entitle Seller to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8. If Buyer is authorized in writing by Seller, in its sole discretion, to apply for and obtain a Substitute Loan but Buyer does not qualify for such Substitute Loan, the Close of Escrow shall not be delayed and Buyer must purchase the Property and close Escrow using the original Loan Approval or cash.

(g) **Accuracy of Information.** Buyer represents and warrants to Seller that all information Buyer provides Seller, Escrow Holder, the Prequalifying Lender and the Lender, whether orally or in writing, shall be completely accurate, true and correct when given and at all later dates. If any such information proves to be inaccurate in any material respect, Seller, at its option, may terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.

(h) **Appraisal**. Seller has provided no representations, warranties or assurances that the Purchase Price of the Property will equal or exceed the appraised value of the Property (including optional items), including the appraised value determined by an appraisal required by Buyer's Lender ("*Lender Appraisal*"). If Buyer (i) obtains a Loan, (ii) does not select any optional items and (iii) (A) the appraised value of the Property at the Close of Escrow, as specified in the Lender Appraisal ("*Appraised Value*") is less than the Purchase Price and (B) Buyer, in its sole discretion, does not agree in writing with Seller within five (5) days after receipt of the final Lender Appraisal (which shall be deemed final if Seller does not dispute the Lender Appraisal or if Seller disputes the Lender Appraisal in Seller's discretion, following Seller's reasonable opportunity to dispute the Lender Appraisal) to increase Buyer's cash down payment to cover the difference between the Appraised Value and the Purchase Price, then Seller, in its sole discretion, will (1) reduce the Purchase Price to the Appraised Value or (2) terminate this Agreement and, subject to Paragraph 7(b), all funds deposited by Buyer in Escrow or delivered to Seller by Buyer shall be released to Buyer. If Buyer elects to purchase any optional items from Seller (the price of such Property with optional items purchased, the "*Upgraded Purchase Price*") and the Appraised Value is greater than the base Purchase Price (Purchase Price without optional items) (the "*Base Price*"), but less than the Upgraded Purchase Price, then Buyer shall pay in cash the difference between the Appraised Value and the Upgraded Purchase Price ("*Cash Difference*") in accordance with Paragraph 1(c) of this Agreement. Buyer's failure to pay the Cash Difference shall constitute a default under this Agreement by Buyer, entitling Seller to its remedies under Paragraph 8. Buyer shall be solely responsible for keeping track of the optional items purchased by Buyer and the amount of the Cash Difference to be paid by Buyer in accordance with this Agreement. For the avoidance of doubt, if Buyer pays all cash for the Property (no Loan), the foregoing provisions of this Paragraph shall not apply and Buyer agrees that (A) there shall be no appraisal of the Property and (B) the Upgraded Purchase Price shall be the agreed value of the Property. In addition, regardless of whether Buyer is paying all cash or obtaining a Loan in connection with the purchase of the Property, under no circumstances shall Buyer be entitled to request or require (I) that any third party appraisal (other than the Lender Appraisal) be used in connection with this Agreement and/or the purchase of the Property and/or (II) any change in the Lender Appraisal or a new Lender Appraisal.

**Seller's Initials**

**Buyer's Initials**

HLO\ Olivewood\ v.1 1/9/2024

-6-
**255**

3.   **Escrow.**

(a)   **Opening of Escrow.**  On or promptly after the Acceptance Date, Seller shall open escrow (*"Escrow"*) by depositing an executed copy of this Agreement and Buyer's Deposit with either Escrow Holder or Seller, as determined by Seller in its sole discretion.  Escrow Holder shall deliver a copy of the fully executed Agreement to Buyer upon opening of Escrow.

(b)   **Escrow Instructions.**  The Basic Provisions of this Agreement, together with Paragraphs 1 through 8 of these General Provisions and Escrow Holder's General Escrow Instructions, constitute the Parties' instructions to Escrow Holder.  Escrow Holder is not responsible for any other parts of this Agreement.  Provisions regarding an award of attorneys' fees and similar costs in the General Escrow Instructions or any other Escrow instructions shall apply only to disputes between Escrow Holder and the Parties, and not to disputes between the Parties themselves.  If there is any conflict between this Agreement and Escrow Holder's General Escrow Instructions or other Escrow instructions, the provisions of this Agreement shall control.

(c)   **Third Party Charges.**  Without Buyer's approval, (i) Escrow Holder, at the request of Seller, may disburse the *"Third Party Charges"* (as estimated in the Basic Provisions) from funds deposited into Escrow by Buyer, or (ii) Seller may disburse the Third Party Charges from funds delivered to Seller by Buyer.

(d)   **Close of Escrow**.  Unless earlier terminated as provided herein, Escrow shall close on the date (*"Closing Date"*) specified on a "Closing Notice" delivered by Seller to Buyer stating that Seller has determined that the Property is ready for occupancy and Escrow shall close on the Closing Date, provided such Closing Date shall be no less than five (5) business days after the date Seller delivers the Closing Notice to Buyer.  The Estimated Closing Date on Page 1 is only an estimate of the Closing Date and subject to Paragraph 7(a), the Closing Date may occur earlier or later than the Estimated Closing Date.  Issuance of a Certificate of Occupancy or other alternative final approval of occupancy of the Property by the relevant local governmental authority shall be conclusive evidence of Seller's completion of the Residence and that it is ready for occupancy by Buyer.  Seller may, from time to time, in its sole discretion send Buyer progress reports regarding construction of the Residence. Those reports may include updated estimates of the Closing Date but those dates are only estimates.  The actual Closing Date will be set only by the Closing Notice, which will be titled "Closing Notice".  **BECAUSE OF THE NATURE OF THE HOME BUILDING INDUSTRY, IT IS NOT POSSIBLE TO ESTIMATE THE EXACT CLOSING DATE WITH ABSOLUTE ACCURACY.  DUE TO A VARIETY OF CIRCUMSTANCES BEYOND SELLER'S REASONABLE CONTROL, INCLUDING WITHOUT LIMITATION THE SCHEDULING OF WORK, AVAILABILITY OF MATERIALS AND LABOR, THE ACTIONS OF PUBLIC AUTHORITIES AND WEATHER CONDITIONS, THE CLOSING DATE COULD BE EXTENDED BY WEEKS OR MONTHS; PROVIDED, HOWEVER, THAT IF, FOR ANY REASON OTHER THAN A DEFAULT OF BUYER,  ESCROW IS NOT CLOSED WITHIN THE TIME PERIODS SPECIFIED IN PARAGRAPHS 7(a)(1) AND 7(a)(2), BUYER SHALL HAVE THE RIGHT TO TERMINATE THIS AGREEMENT AND CANCEL ESCROW IN ACCORDANCE WITH PARAGRAPHS 7(a)(1) AND 7(a)(2).  THEREFORE, BUYER ACCEPTS THE UNCERTAINTY OF THE CLOSING DATE DUE TO SUCH UNAVOIDABLE DELAYS AND WAIVES ALL CLAIMS AGAINST SELLER, ITS AGENTS, EMPLOYEES AND CONTRACTORS ARISING IN CONNECTION THEREWITH**.  If, as a result of a default by Buyer, Escrow is not in a position to close on the Closing Date, Seller may (in its sole discretion) terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8 or extend the Closing Date to a date selected by Seller, in which case Buyer shall pay to Seller, upon Seller agreeing to such extension, an amount (*"Extension Payment"*) equal to Two Hundred Fifty Dollars ($250) per day if the Purchase Price is less than One Million Dollars ($1,000,000) or Five Hundred Dollars ($500) per day if the Purchase Price is more than One Million Dollars ($1,000,000), for the period of time commencing on the original Closing Date and expiring on the date to which Seller extends the Closing Date.  Nothing herein shall be construed to obligate Seller to extend the Closing Date.  If Seller approves an extension, Buyer shall pay to Seller the applicable Extension Payment upon Seller's approval of the extended Closing Date and Buyer shall execute any documentation required by Seller to extend the Closing Date.  The Extension Payment shall be paid either through Escrow, or at Seller's election, by certified check or other immediately available funds acceptable to Seller and will not be applicable to the Purchase Price and shall be consideration to Seller for Seller's agreement to extend the Closing Date.  Acceptance by Seller of the Extension Payment will not constitute a waiver by Seller of any default by Buyer in failing to consummate the purchase of the Property as extended by this Agreement.  Seller's sole remedy in the event of Buyer's failure to pay such Extension Payment shall be to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.  The date of recordation of the Grant Deed conveying title to the Property to Buyer shall be deemed to be the date of *"Close of Escrow."*

(e)   **Closing Procedure.**  Upon the Close of Escrow, Escrow Holder shall cause the Grant Deed to be recorded and Seller's net closing proceeds promptly disbursed to Seller or Seller's order.

(f)   **Assessments**.  Assessments shall be payable to the Association (*"Association Assessments"*) at the current monthly rate described in the Basic Provisions.  Association Assessments may increase from time to time.  From Buyer's funds deposited into Escrow or delivered to Seller by Buyer, Escrow Holder or Seller (as applicable) shall pay (i) to the Seller a proration of the Assessment installment due for the month in which Escrow is closed, from the Close of Escrow to the first day of the next month (if Association Assessments have begun before the Close of Escrow) and (ii) to the Association, the next month's Association Assessment installment in advance.

(g)   **Cooperation/Other Documentation**.  Buyer shall Buyer shall cooperate fully with Seller and Escrow Holder to diligently and timely perform all actions required to timely consummate the purchase of the Property, including without limitation promptly cooperating in good faith with all time frames for performance under this Agreement and providing all documentation and information requested by Escrow Holder and Seller consistent with this Agreement, including without limitation completing and delivering to Seller or Escrow Holder, as applicable, all further instructions, documents, instruments, forms, statements, materials and applications required by Seller or Escrow Holder to complete the transaction contemplated herein, including any disclosures concerning the Property, within three (3) business days after receipt of such request.  Buyer's failure to so cooperate shall be a default hereunder entitling Seller to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.

(h)   **Short Funds**.  If, following the Close of Escrow, Seller or Escrow Holder determines that there was an error ("*Closing Cost Error*") in the calculation of Buyer's Escrow closing costs (including without limitation a failure to properly account for any costs to be charged to Buyer, including the Purchase Price), Buyer shall pay any such short funds to Seller or Escrow Holder, as applicable, within thirty (30) days after Seller or Escrow Holder provides written notification thereof to Buyer.  Any short funds not paid within such thirty (30) day period shall accrue interest at the rate of the maximum rate allowed by law from the date due until paid.  Notwithstanding the foregoing, if Seller or Escrow Holder fails to notify Buyer of a Closing Cost Error within one (1) year following

**Seller's Initials**

**Buyer's Initials**

HLO\ Olivewood\ v.1 1/9/2024

-7-

**256**

the Close of Escrow, Buyer shall not be obligated to pay any short funds thereunder.  Buyer's covenant under this Paragraph shall survive the Close of Escrow and the delivery of the Grant Deed.

4.    **Title.**  Title to the Property is to be conveyed to Buyer by grant deed in a form selected by Seller (**"Grant Deed"**), subject to the following:

(a)   All non-delinquent taxes and assessments, including any supplemental taxes levied after the Close of Escrow.

(b)   Covenants, conditions, restrictions, reservations, dedications, easements and rights-of-way and other matters of record or apparent affecting the use and occupancy of the Property, including those set forth in the Subdivision Map and the Declaration and any Supplemental Declaration(s)/Notice(s) of Annexation, if applicable.

(c)   Encumbrances evidencing Buyer's Loan, if any.

(d)   Reservations contained in the Grant Deed, including reservations of oil, gas and minerals, if applicable.

Unless Buyer declines to purchase the Title Policy, at the Close of Escrow, Escrow Holder shall deliver to Buyer an ALTA owners title insurance policy (with regional exceptions) issued by the Title Company, insuring title to the Property vested in Buyer in the condition described above with a liability equal to the Purchase Price (**"Title Policy"**).  Notwithstanding the foregoing, Buyer shall have the right to decline to purchase the Title Policy at Buyer's risk, but Buyer acknowledges that declining to purchase the Title Policy (i) may cause a significant increase in the cost which Buyer shall incur for the mandatory Lender's title insurance policy ("**Lender Policy**") and (ii) will leave the Buyer with no insurance if there is a future disputed claim on title.

5.    **Closing Costs and Prorations.**  Buyer shall pay all closing costs, including without limitation the cost of the Title Policy, all Escrow fees, the fee for recording the Grant Deed, documentary transfer fees for recordation of the Grant Deed, credit reports, Natural Hazard Disclosure, Tax Disclosure, the Lender policy, tax service, private mortgage insurance (PMI) if required, loan fees, impounds as may be required by the Lender, and prorated Assessments if applicable (as provided above).  Seller shall pay any costs in connection with partial reconveyance of any construction loan.  Real property taxes and assessments and Association Assessments shall be prorated as of the Close of Escrow based upon a thirty (30) day month for expenses billed monthly, and a three hundred sixty (360) day year for expenses billed yearly, using the most recent available information.  The Property will be reassessed after Close of Escrow, based upon the sale to Buyer, completion of construction or otherwise.  Buyer is responsible for all property taxes against the Property assessed after the Close of Escrow, including without limitation any supplemental assessments.

6.    **Conditions to Close of Escrow.**  Escrow shall not close, title to the Property shall not be conveyed to Buyer and, except for an uncured default of Buyer, Buyer's funds shall not be unconditionally released from Escrow until the following conditions have been satisfied:

(a)   **Blanket Encumbrances.**  All blanket encumbrances (as defined in Section 11013 of the California Business and Professions Code) encumbering the Property are released or will be released through Escrow before the conveyance of the Property to Buyer.

(b)   **Subordination of Encumbrances.**  All mortgages and deeds of trust encumbering the real property in the Project are subordinate to or will be subordinate to the Declaration.  This provision does not include real property taxes and assessments constituting a lien not yet delinquent.

(c)   **Assessment Security.**  Seller has posted a letter of credit, cash deposit, surety bond, or other arrangement securing Seller's share of Association Assessments, if applicable, in a form and amount satisfactory to the DRE.

(d)   **Title to Lots.**  Seller has acquired fee title to the residential lots in the sales phase of the Project in which the Property is located. As used herein "**sales phase**" shall mean the group of lots, including the Property, covered by a single Final Subdivision Public Report issued by the DRE.

(e)   **Title to Common Area.**  Title to any property to be owned by the Association in fee or by easement (**"Common Area"**) in the sales phase in which the Property is located which is to be conveyed to the Association as provided in the Declaration has been conveyed to the Association free of any and all blanket encumbrances (as defined in Section 11013 of the California Business and Professions Code), but subject to all covenants, conditions, restrictions, reservations, rights-of-way, dedications and other matters of record.

(f)   **Completion of Improvements.**  Either (i) all improvements and facilities in the Common Area in the sales phase have been completed and a Notice of Completion (as defined in Section 8182 of the California Civil Code) has been recorded covering such improvements and facilities, and either (1) the statutory period for filing mechanics' liens against the Common Area has expired, <u>or</u> (2) the Association is provided a policy of title insurance with an endorsement insuring against unrecorded mechanics' liens (the cost of such endorsement to be paid by Seller); <u>or</u> (ii) Seller has posted a bond, letter of credit, or other security (in accordance with Section 11018.5 of the Business and Professions Code) to assure completion of all improvements and facilities in the Common Area in the sales phase.

(g)   **Statement of Delinquent Assessments.**  Escrow Holder has delivered a written statement from the Association to Buyer concerning the amount of any delinquent Association Assessments (and information relating to penalties, attorneys' fees, and other charges thereon as provided by the Declaration or the Bylaws of the Association) on the Property as of the date the statement is signed.

(h)   **Other Contingencies.**  For the benefit solely of Seller, Buyer shall have satisfied all other applicable conditions to Seller's obligation to close Escrow.

BUYER'S OBLIGATION TO PURCHASE THE PROPERTY AND ABILITY TO OBTAIN A LOAN ARE NOT CONTINGENT UPON THE SALE OF BUYER'S CURRENT RESIDENCE OR ANY OTHER PROPERTY OWNED BY BUYER.

*Seller's Initials*

*Buyer's Initials*



HLO\ Olivewood\ v.1 1/9/2024

7. **Termination of Agreement and Escrow.**

(a) **Buyer's Cancellation Right.**

(1) **Failure to Complete Construction and Close Escrow Within One Year**. If, through no fault of Buyer, Escrow is not closed within twelve (12) months after the Acceptance Date, Buyer, by written notice to Seller delivered within thirty (30) days following the expiration of such twelve (12) month period, may terminate this Agreement, cancel Escrow and, within fifteen (15) calendar days after Seller and Escrow Holder receive written notice of such termination and cancellation, Buyer shall receive a refund of all amounts Buyer has deposited into Escrow and/or delivered to Seller.

(2) **Failure to Complete Construction and Close Escrow Within Two Years**. Seller shall complete construction of the Property, including the Residence and all other improvements thereon, and the Close of Escrow shall occur within two (2) years after the Acceptance Date, except that such two (2) year period shall be extended for any periods of "Unavoidable Delays". As used herein, ***"Unavoidable Delays"*** shall mean any acts of God (e.g., fire, flood, inclement weather, wind, earthquake, or other natural causes), or any other event, circumstance, or condition beyond Seller's control (such as strikes or other labor disputes, boycotts, unavailability of materials or delays caused by governmental entities) which constitute a permissible performance delay under California law. If Seller fails to complete construction of the Property and close Escrow within two (2) years after the Acceptance Date, and if Buyer did not previously exercise Buyer's right to terminate this Agreement and cancel the Escrow as provided in Paragraph 7(a)(1) above, Buyer shall have the right to either: (i) terminate this Agreement and cancel the Escrow by giving written notice to Seller and Escrow Holder, and all of Buyer's funds deposited with Escrow Holder and/or delivered to Seller by Buyer shall be refunded to Buyer in full (without any deductions) within fifteen (15) days of Seller's receipt of Buyer's notice of termination, Escrow shall be canceled at Seller's expense, and the Parties shall have no further rights or obligations with respect to the Property under this Agreement; or (ii) pursue any remedy available at law or in equity against Seller, including an action for specific performance.

(3) **Material Changes**. Subject to any applicable approvals of the DRE and any approvals required under the Declaration, before the Close of Escrow, Seller, in its sole discretion, may make material changes (i) in the overall development plan for the Project, (ii) in the manner or content of any offering of residences in the Project or any phase of development thereof, and/or (iii) to the Declaration, Bylaws, Articles, rules and regulations and/or other management documents of the Association. In such case, Seller shall provide Buyer with written notice of such material change and Buyer's sole remedy at that time shall be to terminate this Agreement, request cancellation of Escrow and receive a full refund of all amounts deposited hereunder. Buyer's failure to deliver written notice of termination to Seller and Escrow Holder within five (5) days after receipt of Seller's material change notice constitutes a waiver of Buyer's right to terminate this Agreement and cancel Escrow concerning such change.

(b) **Third Party Charges.** If Escrow is canceled for any reason other than a default by Buyer, Seller shall pay all Third Party Charges, and all of Buyer's funds deposited into Escrow or delivered to Seller, including amounts released for Third Party Charges, shall be refunded to Buyer. If Escrow is canceled due to a default by Buyer, Seller may terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8.

(c) **Seller's Right to Cancel.** Notwithstanding anything herein to the contrary, including the General Escrow Instructions, if after complying with all the provisions of Paragraph 2, Buyer does not secure the Loan Approval above and deposit written verification of the Loan Approval and applicable approvals into Escrow within the time specified herein, Seller may, at its election, terminate this Agreement and, subject to Paragraph 7(b), all funds deposited in Escrow or delivered to Seller by Buyer shall be released to Buyer. However, if Buyer does not obtain Loan Approval because Buyer failed to sell Buyer's current residence or any other property Buyer owns or as a result of Buyer's failure to comply with Paragraph 2, Buyer shall be in default under this Agreement and Seller may terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8. Seller may also terminate this Agreement and cancel Escrow if Seller's ability to construct the Property and/or deliver it to Buyer is materially impaired because of (i) the action of any foreign, federal, state or local governmental authority or utility, or (ii) the unavailability or delay in prompt delivery of materials, labor, water, sewer or other utility services to the Property or the Project. In such event, Seller may terminate this Agreement, cancel Escrow and upon returning Buyer's full deposit hereunder to Buyer, Seller shall be released from all obligations hereunder. Seller may also terminate this Agreement pursuant to Paragraph 22 below.

(d) **Effect of Termination and Further Actions.** If this Agreement is terminated, (i) Escrow shall be automatically canceled and the Parties shall execute cancellation instructions requested by Escrow Holder, (ii) within ten (10) days after such termination, Buyer shall deliver to Seller all documents delivered by Seller to Buyer hereunder, (iii) Buyer shall have no further right or interest in the Property, and (iv) all provisions of this Agreement obligating Buyer to indemnify Seller shall survive the termination.

8. **BUYER'S DEFAULT; REMEDIES OF SELLER.** BUYER WILL BE IN DEFAULT UNDER THIS AGREEMENT IF (a) BUYER BREACHES ANY COVENANT OR AGREEMENT OF BUYER OR OTHERWISE FAILS TO PERFORM ANY OBLIGATION OF BUYER UNDER THIS AGREEMENT OR (b) BUYER NOTIFIES SELLER OR SELLER'S REPRESENTATIVE IN WRITING THAT BUYER WILL NOT COMPLETE THE PURCHASE OF THE PROPERTY OR WILL NOT PERFORM ANY OTHER OBLIGATION OF BUYER SET FORTH IN THIS AGREEMENT. IF BUYER DEFAULTS UNDER THIS AGREEMENT, SELLER SHALL BE RELEASED FROM ITS OBLIGATION TO SELL THE PROPERTY TO BUYER, AND SELLER MAY PURSUE ANY REMEDY AT LAW OR IN EQUITY THAT IT MAY HAVE AGAINST BUYER ON ACCOUNT OF SUCH DEFAULT. HOWEVER, BY PLACING THEIR INITIALS HERE, SELLER**[Initials]**_____ AND BUYER**[Initials]**_____ AGREE AS FOLLOWS:

(a) **LIQUIDATED DAMAGES**. IN THE EVENT OF A DEFAULT BY BUYER UNDER THIS AGREEMENT, BUYER AND SELLER AGREE THAT IT WOULD BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN THE ACTUAL DAMAGES SUFFERED BY SELLER, THAT BUYER DESIRES TO LIMIT THE DAMAGES FOR WHICH BUYER MAY BE LIABLE AS THE RESULT OF A DEFAULT BY BUYER AND THAT BUYER AND SELLER BOTH DESIRE TO AVOID THE COSTS AND DELAYS IF SELLER COMMENCED LEGAL PROCEEDINGS AGAINST BUYER TO RECOVER ITS DAMAGES RESULTING FROM BUYER'S DEFAULT. THEREFORE, IN THE EVENT OF A DEFAULT BY BUYER PRIOR TO THE CLOSE OF ESCROW, SELLER, AS ITS SOLE AND EXCLUSIVE REMEDY, SHALL BE ENTITLED TO TERMINATE THIS AGREEMENT, CANCEL THE ESCROW AND RETAIN, AS LIQUIDATED DAMAGES, BUYER'S

**Seller's Initials**

**Buyer's Initials**

DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER UNDER THIS AGREEMENT (AND UNDER ANY ADDENDUM HERETO), INCLUDING WITHOUT LIMITATION DEPOSITS FOR ANY OPTION(S) PURCHASED BY BUYER, WHICH AMOUNT SHALL BE DEEMED TO BE A REASONABLE ESTIMATE OF SELLER'S DAMAGES PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671 ET SEQ. THE LIQUIDATED DAMAGES TO BE RETAINED BY SELLER SHALL BE DETERMINED AFTER FIRST DEDUCTING FROM BUYER'S DEPOSITS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE THEREFROM TO THIRD PARTIES. NOTWITHSTANDING THE FOREGOING, IF THE TOTAL AMOUNT OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER EXCEEDS THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE OF THE PROPERTY, SELLER, AT ITS SOLE DISCRETION, SHALL BE ENTITLED TO EITHER: (1) RETAIN AS LIQUIDATED DAMAGES AN AMOUNT NOT EXCEEDING THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1675(c) AND ESCROW HOLDER SHALL RETURN TO BUYER THE BALANCE OF BUYER'S DEPOSITS (LESS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE THEREFROM TO THIRD PARTIES); OR (2) DEMAND TO RETAIN AS LIQUIDATED DAMAGES AN AMOUNT IN EXCESS OF THREE PERCENT (3%) OF THE TOTAL PURCHASE PRICE; PROVIDED, HOWEVER, IF BUYER OBJECTS TO SUCH AMOUNT AS PROVIDED IN PARAGRAPH 8(a)(2) BELOW, PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1675(d) THIS LIQUIDATED DAMAGES PROVISION SHALL BE INVALID UNLESS SELLER ESTABLISHES IN THE ARBITRATION PROCEEDINGS PROVIDED FOR HEREIN (OR IN COURT PROCEEDINGS, IF APPLICABLE) THAT THE AMOUNT DEMANDED BY SELLER AS LIQUIDATED DAMAGES IS REASONABLE AS DETERMINED IN ACCORDANCE WITH CALIFORNIA CIVIL CODE SECTION 1675(e). ESCROW SHALL BE CANCELLED AND LIQUIDATED DAMAGES SHALL BE REMITTED TO SELLER BY ESCROW HOLDER IN ACCORDANCE WITH THE FOLLOWING PROCEDURE:

(1) **SELLER'S TERMINATION NOTICE**. SELLER SHALL GIVE WRITTEN NOTICE ("**TERMINATION NOTICE**") BY ANY OF THE MEANS AUTHORIZED BY SECTION 116.340 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE (E.G., PERSONAL DELIVERY OR ANY FORM OF MAILING PROVIDING FOR A RETURN RECEIPT) TO ESCROW HOLDER AND TO BUYER OF SELLER'S DETERMINATION THAT BUYER IS IN DEFAULT UNDER THIS AGREEMENT AND THAT SELLER IS EXERCISING ITS RIGHT TO TERMINATE THIS AGREEMENT AND IS INSTRUCTING ESCROW HOLDER TO CANCEL THE ESCROW AND REMIT TO SELLER AS LIQUIDATED DAMAGES ALL OR A PORTION OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER AS PROVIDED ABOVE.

(2) **BUYER'S OBJECTION NOTICE**. BUYER SHALL HAVE A PERIOD OF TWENTY (20) DAYS FROM THE DATE OF RECEIPT OF SELLER'S TERMINATION NOTICE IN WHICH TO PROVIDE AN OBJECTION NOTICE TO ESCROW HOLDER AND SELLER THAT BUYER OBJECTS EITHER:

    i.    TO SELLER'S TERMINATION OF THIS AGREEMENT; OR

    ii.    TO THE AMOUNT OF LIQUIDATED DAMAGES TO BE REMITTED TO SELLER. UNLESS BUYER'S OBJECTION NOTICE CLEARLY STATES THAT BUYER OBJECTS TO SELLER'S TERMINATION OF THIS AGREEMENT AND THAT BUYER INTENDS TO DILIGENTLY PURSUE THE PURCHASE OF THE PROPERTY, BUYER SHALL BE DEEMED TO OBJECT SOLELY TO THE AMOUNT OF LIQUIDATED DAMAGES CLAIMED BY SELLER AND THE PARTIES SHALL HAVE NO FURTHER RIGHTS OR OBLIGATIONS WITH RESPECT TO THE PROPERTY UNDER THIS AGREEMENT. THE RENUNCIATION BY BUYER OF BUYER'S INTENTION TO DILIGENTLY PURSUE THE PURCHASE OF THE PROPERTY SHALL ALSO CONSTITUTE A WAIVER OF ANY RIGHT TO FILE OR RECORD A LIS PENDENS OR ANY OTHER LIEN AGAINST THE PROPERTY. SUBJECT TO PARAGRAPH 13, BUYER'S OBJECTION NOTICE SHALL BE DELIVERED TO SELLER AS SET FORTH BELOW:

> Lori Michel
> lmichel@NewHomeCo.com
> New Home Co.
> 15231 Laguna Canyon Rd., Suite 250
> Irvine, California 92618

(3) **ESCROW HOLDER'S OBLIGATIONS IF TIMELY OBJECTION NOTICE IS RECEIVED**. IF ESCROW HOLDER RECEIVES AN OBJECTION NOTICE FROM BUYER WITHIN SAID TWENTY (20) DAY PERIOD, ESCROW HOLDER SHALL IMMEDIATELY NOTIFY SELLER OF BUYER'S CONFLICTING NOTICE. THE CONTROVERSY CREATED BY THE CONFLICTING NOTICES BY SELLER AND BUYER, AND THE DISPOSITION OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER SHALL BE RESOLVED EITHER BY

    i.    A COURT OF PROPER JURISDICTION, IF APPLICABLE, OR

    ii.    ARBITRATION IF BUYER AND SELLER HAVE INITIALED PARAGRAPH 27 BELOW. ARBITRATION SHALL BE CONDUCTED AS SET FORTH IN PARAGRAPH 26 BELOW.

(4) **ESCROW HOLDER'S OBLIGATIONS IF TIMELY OBJECTION NOTICE IS NOT RECEIVED**. IF ESCROW HOLDER DOES NOT RECEIVE AN OBJECTION NOTICE FROM BUYER WITHIN SAID TWENTY (20) DAY PERIOD, AT THE EXPIRATION OF SUCH PERIOD, BUYER SHALL BE DEEMED TO AGREE THAT BUYER IS IN DEFAULT UNDER THIS AGREEMENT. ACCORDINGLY, ESCROW HOLDER SHALL:

    i.    REMIT TO SELLER THE AMOUNT DEMANDED BY SELLER (LESS ALL AUTHORIZED THIRD PARTY DISBURSEMENTS MADE OR PAYABLE TO THIRD PARTIES);

    ii.    REMIT THE BALANCE OF BUYER'S DEPOSITS DEPOSITED WITH ESCROW HOLDER OR SELLER, IF ANY, TO BUYER; AND

    iii.    CANCEL THE ESCROW. BUYER SHALL BE DEEMED TO HAVE WAIVED BUYER'S RIGHTS TO ALL REMEDIES AVAILABLE AT LAW OR IN EQUITY AGAINST SELLER, INCLUDING AN ACTION TO SEEK SPECIFIC PERFORMANCE OF THIS AGREEMENT OR THE RIGHT TO FILE A LIS PENDENS AGAINST THE PROPERTY.

*Seller's Initials*

*Buyer's Initials*

**BUYER AND SELLER EACH ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THIS PARAGRAPH 8 AND BY PLACING THEIR INITIAL BELOW, AGREE TO BE BOUND THEREBY.**

BUYER**[Initials]**_____  _____          SELLER**[Initials]**_____

(b)  **USE OF BUYER FUNDS.**  IF SELLER HAS HAD THE USE OF BUYER'S DEPOSIT PENDING CONSUMMATION OF THE SALE UNDER AUTHORIZATION BY THE DRE PURSUANT TO SUBDIVISION (c) OR (d) OF SECTION 11013.2 OR SUBDIVISION (b) OR (c) OF SECTION 11013.4 OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE, SELLER SHALL IMMEDIATELY UPON ALLEGING BUYER'S DEFAULT, TRANSMIT TO ESCROW HOLDER FUNDS EQUAL TO ALL DEPOSITS AND THIRD PARTY CHARGES PAID BY BUYER.

The following paragraphs represent additional agreements **between Buyer and Seller only** with which Escrow Holder shall have no liability or duty.

9.  **No Brokers.**  Other than Seller's Home Counselor, Buyer represents and warrants to Seller that Buyer has dealt with no broker, real estate sales person, or finder in connection with the transactions contemplated by this Agreement, and Buyer shall indemnify, defend and hold Seller harmless from all claims, demands, losses, liabilities, judgments and expenses arising out of any amounts claimed to be owing to any such persons on account of the conduct of Buyer with the exception of cooperating brokers satisfying all of Seller's cooperating broker standards, guidelines and requirements, if applicable.  *Seller's Home Counselor is an exclusive agent of Seller.*

10.  **Development of Property.**

(a)  **Production Home**.  Seller shall cause construction and completion of the Residence and appurtenant improvements on the Property.  The Residence is not a custom home and Seller is not acting as a contractor for Buyer in the construction of the Residence nor is Seller constructing the Residence specifically for Buyer.  Subject to Paragraph 12, Seller is not constructing the Residence or any improvements on the Property pursuant to any architect and/or construction plans or specifications, precise specifications or design of a model or appurtenances, or any federal, state or local building code, ordinance or statute.

(b)  **Marketing Materials**.  Any marketing materials, including without limitation brochures, advertising, videos, vignettes, depictions or renderings of improvements, topographic maps, subdivision maps and/or plot plans shown to Buyer or model homes visited by Buyer (collectively, **"Marketing Materials"**), are displayed or provided to Buyer only for illustration purposes and subject to Paragraph 12, Seller has not agreed to deliver the Residence in accordance therewith.  The Marketing Materials have not been prepared to scale and are subject to change without notice to Buyer.  All renderings are intended as artist's conceptions and may show non-standard landscaping.  If there is a discrepancy between the Marketing Materials and the actual as-built conditions of the Property, the as-built conditions will control.

(c)  **Property Size and Dimensions**.  Subject to Paragraph 12, the usable, habitable or buildable location and configuration of the Property, Residence, Project and all improvements located thereon may fluctuate from that shown or displayed to Buyer in the Marketing Materials.  All depictions, statements or other representations of square footage are approximate only.  Subject to Paragraph 12, Buyer may not rely upon any models, Marketing Materials or written or oral statements by Seller or Seller's representatives regarding the exact square footage or dimensions of the Property and/or Residence nor does Seller provide any representations or assurances in connection therewith.  In addition, the boundaries of the Property shown on any plan or map are approximate only, and subject to Paragraph 12, Buyer may not rely upon any Marketing Materials or written or oral statements by Seller or Seller's representatives regarding the exact boundaries of the Property.

(d)  **Walls and Fences.**  Subject to Paragraph 12, the location, size, height and composition of all walls and fences to be constructed on the Property or adjacent thereto shall be determined by Seller in its sole and absolute discretion.  Despite temporary fencing, Seller, subject to Paragraph 12, has made no representations, warranties or assurances to Buyer regarding the size, height, location or composition of any wall, fence to be constructed on or adjacent to the Property.

(e)  **Models**.  None of the appurtenances and furnishings shown in any model home or Marketing Materials are included in this Agreement, unless Seller agrees in writing to deliver the same Options.

(f)  **Substitutions**.  Seller may, in its sole and absolute discretion, substitute the type and location of materials, appliances and other items in the Residence and on the Property of substantially equal or greater functionality and quality (and acceptable to any Lender) to complete the Residence, including without limitation substitutions for kitchen appliances (other than brand names selected by Buyer as Options), household fixtures, electrical outlets and switches, hardware, wall surfaces, painting and other similar items.  Seller may make such substitutions without adjustment to the Purchase Price.  Buyer's consultation by Seller or Seller's Home Counselors or other agents shall not waive Seller's rights to make any change contemplated or provided herein.

(g)  **Delay in Construction**.  If Seller is unable to complete or install on the Property any Options, decorator item, fixture, furnishing or other improvement, and such failure is caused by circumstances beyond Seller's reasonable control, the Close of Escrow shall not be delayed so long as occupancy of the Residence is approved by the applicable governmental authority.  The incomplete items shall be completed by Seller as soon as reasonably possible after the Close of Escrow.

11.  **Completion and Possession.**  Seller has not provided Buyer an exact date for completion or occupancy of the Residence or Close of Escrow; however, except for delays caused by Unavoidable Delay, Seller shall complete the construction of the Residence within two (2) years after the Acceptance Date.  Buyer has no right, title or interest in the Property, except the right and obligation to purchase the same in accordance with the terms of this Agreement.  Buyer may not possess the Property or enter it before the Close of Escrow.  Any entry by Buyer must be approved in writing in advance by Seller and shall be at Buyer's own risk.  Except as to any claims, demands, losses, liabilities or expenses arising through the gross negligence or willful misconduct of the "Seller Parties" defined below, Buyer shall indemnify, defend and hold Seller, its agents, contractors, members, managers, officers, directors, shareholders, partners and employees (collectively, **"Seller Parties"**), harmless from and against all claims, demands, losses, liabilities and expenses arising from any personal injury, death or property damage to Buyer, Buyer's invitees and guests, Seller or any

*Seller's Initials*_____  _____

*Buyer's Initials*_____

HLO\ Olivewood\ v.1 1/9/2024

-11-

**260**

other individual or entity as a result of any entry on the Property by Buyer and/or Buyer's family, guests or invitees. Buyer understands that to permit the work to progress in an orderly fashion, no interference with construction work on the Property is permitted. In addition, before the Close of Escrow (a) Buyer shall not be entitled to perform or contract for the performance of any work on the Property by Buyer or Buyer's agents; (b) no signs of any kind may be posted by Buyer or Buyer's agents on or near the Property, and (c) Buyer shall not enter into any contract for the sale or transfer of the Property. A violation of the foregoing restrictions shall be a material default by Buyer entitling Seller, at its option, to terminate this Agreement, cancel the Escrow, and proceed in accordance with Paragraph 8.

12. **Condition of Property Upon Delivery**. The Residence will be delivered to Buyer substantially as shown in any model or on any floor plan for the Residence displayed or delivered to Buyer by Seller (***"Property Plans"***) with the exception of (a) any improvements or features shown on any architect and/or construction plans or specifications, precise specifications or design other than the Property Plans; (b) any features in the models that are optional or decorator items and not included in the list of standard features provided to Buyer; (c) variances noted by Seller in any written disclosures provided to Buyer; (d) variances in square footage normally occurring in residential subdivisions of the same type as the Project; (e) variances required to address site topography, Residence location, optional items selected by Buyer or the requirements of any applicable governmental authority; and (f) Seller's right to substitute building and other materials, construction techniques and fixtures with those of equal or greater functionality and quality.

13. **Notices.** Unless expressly provided otherwise herein, any notice to be given hereunder to either Party or to Escrow Holder shall be in writing and shall be given either by personal delivery, e-mail, facsimile, federal express, overnight courier or by depositing such notice in the United States first class mail, certified, with return receipt requested, postage prepaid and addressed as provided in the Basic Provisions. Either Party and Escrow Holder may, by written notice to the other and to Escrow Holder, designate a different address which shall be substituted for the one specified above. If any notice or other document shall be sent by certified mail as set forth above, it shall be deemed to have been effectively served or delivered forty eight (48) hours following the deposit of such notice in the United States mail in the manner set forth above. If any notice or other document shall be sent by e-mail, it shall be deemed to have been served upon transmission; provided that if such transmission occurs on a weekend or holiday or after 5:00 p.m. on a weekday, it shall be deemed to have been received at 8:00 a.m. on the immediately following business day. If any notice or other document shall be sent by facsimile, it shall be deemed to have been served or delivered upon electronic confirmation of transmission; provided that if such transmission occurs on a weekend or holiday or after 5:00 p.m. on a weekday, it shall be deemed to have been received at 8:00 a.m. on the immediately following business day.

14. **No Recording of this Agreement.** Neither this Agreement nor any memorandum hereof may be recorded.

15. **Walk-Through.** Buyer may conduct a single walk through inspection of the Residence at a time (either before or after the Close of Escrow) designated by Seller in its discretion. Such walk-through is not a condition to the Close of Escrow. At such walk through, Buyer and a representative of Seller shall prepare a Homeowner Orientation Report (***"Report"***) to be signed by Buyer and Seller's representative identifying items or conditions which Buyer and Seller agree are to be repaired by Seller; however, such items need not be repaired before the Close of Escrow, and if any such items are not repaired before the Close of Escrow, Buyer may not extend or delay the Close of Escrow. Subject to Title 7, Part 2 of Division 2 of the California Civil Code (Sections 895 et seq.), Buyer's failure for any reason (other than reasons beyond the control of Buyer) to attend a walk through of the Residence as set forth above constitutes Buyer's acceptance of the condition of the Residence. If Buyer conducts the walk through inspection before the Close of Escrow but does not execute the Report within three (3) days after the inspection, or if, after such inspection, Buyer and Seller disagree as to any items included or not included on the Report, then Seller shall have the right, in its sole discretion, to terminate this Agreement by written notice to Buyer. If Seller terminates this Agreement under this Paragraph, the Deposit shall be returned to Buyer without deduction, and Seller shall have no further liability or obligation to Buyer under this Agreement.

16. **Prohibited Behavior.** Neither Buyer nor any family member or representative of Buyer shall (a) enter the Property or portions of the Project that are under construction and/or restricted unless such entry has been approved in writing in advance by Seller and Buyer is accompanied by a representative of Seller; (b) prior to the Close of Escrow, attempt to do any work or install or modify any improvements on the Property; (c) enter the sales office/model complex if Buyer has been given written notice not to enter the sales office/model complex; (d) commit any illegal or tortious act on or in connection with the Project and/or Property, including without limitation assault or causing any intentional physical harm to persons; and/or (e) engage in harassing, abusive, threating, offensive or otherwise inappropriate behavior towards Seller's representative, personnel, contractors, homeowners or other potential buyers (as applicable, ***"Prohibited Behavior"***). If Buyer fails to permanently cease any Prohibited Behavior immediately upon receipt of written notice from Seller describing such Prohibited Behavior (***"Default Notice"***), such failure shall be deemed a default by Buyer under this Agreement entitling Seller to terminate this Agreement by delivery of written notice of termination to Buyer. If, upon receipt of the Default Notice Buyer does immediately cease the Prohibited Behavior described in the Default Notice but thereafter engages in such Prohibited Behavior again, Seller shall be entitled to terminate this Agreement without the need for an additional Default Notice. If Buyer ceases the Prohibited Behavior described in the Default Notice but then engages in any other Prohibited Behavior Seller shall be entitled to deliver a second Default Notice to Buyer and the foregoing provisions shall apply. However, after delivery of a second Default Notice, if Buyer engages in any Prohibited Behavior Seller shall be entitled to terminate this Agreement without the need for delivery to Buyer of any additional Default Notice.

17. **Waiver of Default.** Seller's waiver of a default by Buyer shall not be deemed a continuing waiver or a waiver of any subsequent default.

18. **Time is of the Essence.** Time is of the essence in the performance of Buyer's obligations under this Agreement. Any delay in Buyer's performance under this Agreement will prejudice Seller. Therefore, any failure by Buyer to perform within the specified periods will be a default by Buyer, entitling Seller to terminate this Agreement, cancel Escrow and proceed in accordance with Paragraph 8. No extension of time for performance of any obligation or act hereunder shall be deemed an extension of time for performance of any other obligation or act. Unless otherwise provided herein, the term ***"days"*** means consecutive ***"calendar days."*** If the date on which any action is to be taken, any obligation is to be performed, or any notice is to be given under this Agreement falls on a day which is not a business day (i.e., Saturday, Sunday or holiday), such performance date shall be automatically extended to the immediately following business day.

19. **Severability and Interpretation.** If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the validity and enforceability of the other provisions of this Agreement shall not be affected thereby. This Agreement shall be governed

*Seller's Initials*
*Buyer's Initials*



HLO\ Olivewood\ v.1 1/9/2024

-12-

by California law.  As used herein, the word *"including"* means *"including but not limited to."*  If more than one person or entity is a Party, each of them is jointly and severally liable under this Agreement.

20.  **Assignment.**  In view of the credit qualifications, processing and other personal matters considered hereunder, this Agreement and the rights of Buyer hereunder may not be assigned, sold, transferred or hypothecated by Buyer voluntarily, involuntarily, or by operation of law without first obtaining Seller's written consent which may be withheld for any reason in Seller's sole discretion.

21.  **Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which, together, shall constitute one and the same instrument.

22.  **Buyer Selections.**  To the extent Seller offers Options to Buyer, Buyer shall make Option selections from the choices and at the prices provided by Seller within the time periods specified by Seller.  The availability and prices of Options are subject to change, at the sole discretion of Seller, and without prior notice to Buyer.  Subject to availability, Buyer's selections are final.  If Buyer fails to make any Option selections within the times specified by Seller, Buyer shall be deemed to have waived the right to select such Options.  If Buyer must make selections with respect to standard features, Buyer shall make such selections within the time periods specified by Seller.  If Buyer fails to make standard feature selections with the time period specified by Seller, Seller, in its sole discretion, may (a) terminate this Agreement under Paragraph 8 or (b) shall make such selections for Buyer and Buyer hereby approves such standard features selected by Seller.

23.  **Seller Affiliates.**  Buyer may elect to utilize the services of affiliated mortgage, interior design or other entities. Buyer understands that such companies may be subsidiaries of Seller.

24.  **Limited Warranty**.  Seller is providing Buyer with a "Homebuyer Warranty" (*"Limited Warranty"*), a copy of which is attached as an addendum hereto and incorporated herein by this reference.  Buyer agrees to be bound by and to comply with all provisions of the Limited Warranty.  The Limited Warranty is the sole warranty provided to Buyer.  Any other warranty or warranties, whether express or implied, are disclaimed by Seller and waived by Buyer, unless otherwise prohibited by law.  Upon Buyer's resale of the Residence to a subsequent purchaser, the Limited Warranty shall be transferred to the subsequent purchaser for any time remaining under the Limited Warranty, and Buyer agrees to deliver the Limited Warranty to the subsequent purchaser upon the closing of that transaction.

25.  **RESOLUTION OF POST-CLOSING DISPUTES**.  ANY "DISPUTE" DEFINED BELOW ARISING AFTER THE CLOSE OF ESCROW, WHETHER RELATED TO, OR ARISING FROM, AN ACT, OMISSION OR OTHER EVENT OCCURRING PRIOR TO OR AFTER THE CLOSE OF ESCROW (A *"POST-CLOSING DISPUTE"*), SHALL BE RESOLVED IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROCEDURES SET FORTH IN THE DECLARATION OF DISPUTE RESOLUTION PROCEDURES FOR THE PROJECT (*"DISPUTE DECLARATION"*) AND THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT IN THE FORM ATTACHED AS AN ADDENDUM HERETO, AS IT MAY BE MODIFIED BY SELLER (*"INDIVIDUAL DISPUTE RESOLUTION AGREEMENT"*).  PRIOR TO THE CLOSE OF ESCROW, UPON SELLER'S REQUEST, BUYER SHALL EXECUTE THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT.  THE DISPUTE DECLARATION RECORDED AGAINST THE PROJECT AND THE INDIVIDUAL DISPUTE RESOLUTION AGREEMENT, WHICH WILL BE RECORDED AGAINST THE PROPERTY AT THE CLOSE OF ESCROW, GOVERN THE RESOLUTION OF ALL POST-CLOSING DISPUTES BETWEEN BUYER AND SELLER.  AS USED HEREIN, A *"DISPUTE"* SHALL MEAN ANY CLAIM, CONTROVERSY OR DISPUTE BY OR BETWEEN THE PARTIES HERETO RELATING TO THIS AGREEMENT, THE PROPERTY, THE SALE OF THE PROPERTY, OR ANY TRANSACTION RELATED HERETO, WHETHER BASED ON CONTRACT, TORT, OR STATUTE, INCLUDING WITHOUT LIMITATION ANY DISPUTE OVER THE DISPOSITION OF ANY DEPOSITS HEREUNDER, BREACH OF CONTRACT, NEGLIGENT OR INTENTIONAL MISREPRESENTATION, FRAUD, UNCONSCIONABILITY, BREACH OF ANY ALLEGED DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGATIONS OF LATENT OR PATENT CONSTRUCTION DEFECTS, INTERPRETATION OF ANY TERM OR PROVISION OF THIS AGREEMENT OR ANY DEFENSE GOING TO THE FORMATION OR VALIDITY OF THIS AGREEMENT (INCLUDING WITHOUT LIMITATION ALLEGATIONS OF WHETHER SUCH DISPUTE ARISES BEFORE OR AFTER THE CLOSE OF ESCROW).

26.  **RESOLUTION OF PRE-CLOSING DISPUTES.**  ANY DISPUTE ARISING PRIOR TO THE CLOSE OF ESCROW (A **"PRE-CLOSING DISPUTE"**) INCLUDING WITHOUT LIMITATION DISPUTES RELATED TO LIQUIDATED DAMAGES SET FORTH IN PARAGRAPH 8, SHALL BE RESOLVED IN ACCORDANCE WITH THE ALTERNATIVE DISPUTE RESOLUTION PROCEDURES SET FORTH IN THIS PARAGRAPH 26.

(a)  **MANDATORY BINDING ARBITRATION**.  ALL PRE-CLOSING DISPUTES SHALL BE RESOLVED BY NEUTRAL, BINDING ARBITRATION GOVERNED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. §§1-16) (**"FEDERAL ACT"**) AND NOT BY ANY COURT ACTION EXCEPT AS PROVIDED FOR JUDICIAL REVIEW OF ARBITRATION PROCEEDINGS UNDER THE FEDERAL ACT.  A DEMAND FOR ARBITRATION SHALL BE DELIVERED IN ACCORDANCE WITH PARAGRAPH 13 BY THE PARTY DESIRING TO ARBITRATE SUCH PRE-CLOSING DISPUTE TO THE OTHER PARTY WITHIN THIRTY (30) DAYS AFTER SELLER'S RECEIPT OF BUYER'S OBJECTION NOTICE AS SET FORTH IN PARAGRAPH 8(a)(2).  THIS AGREEMENT INVOLVES AND CONCERNS INTERSTATE COMMERCE AND THEREFORE THE ARBITRATION PROCEDURES SPECIFIED IN THIS PARAGRAPH 26(a) ARE TO BE INTERPRETED AND ENFORCED AS AUTHORIZED BY THE FEDERAL ACT, WHICH IS DESIGNED TO ENCOURAGE USE OF ALTERNATIVE METHODS OF DISPUTE RESOLUTION THAT AVOID COSTLY AND POTENTIALLY LENGTHY COURT PROCEEDINGS. INTERPRETATION AND APPLICATION OF THE PROCEDURES SET FORTH IN THIS PARAGRAPH 26(a) SHALL CONFORM TO ANY APPLICABLE FEDERAL COURT RULES AND DECISIONS INTERPRETING AND APPLYING THE FEDERAL ACT. THE ARBITRATION PROCEEDINGS SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ACT AND, TO THE EXTENT NOT INCONSISTENT, THE PROCEDURES SET FORTH IN THIS PARAGRAPH 26(a).  IN ADDITION, EXCEPT AS SET FORTH HEREIN, AND TO THE EXTENT IT IS NOT INCONSISTENT WITH THE FEDERAL ACT, THE ARBITRATION SHALL BE CONDUCTED PURSUANT TO TITLE 9 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE (SECTION 1280 ET SEQ.).  REFERENCES TO CALIFORNIA PROCEDURAL LAW ARE FOR GUIDANCE ONLY AND SHALL NOT BE CONSTRUED AS A WAIVER OF ANY RIGHTS OR DUTIES OF THE PARTIES UNDER THE FEDERAL ACT OR THE RIGHT OF THE PARTIES TO HAVE THE PROCEDURES SET FORTH IN THIS PARAGRAPH 26(a) INTERPRETED AND ENFORCED UNDER THE FEDERAL ACT.  IF ANY PARTY SEEKS REVIEW BY A COURT OF THE ENFORCEABILITY OF ANY OF THE PROCEDURES SET FORTH OR REFERENCED HEREIN (NOTWITHSTANDING THE

**Seller's Initials**

**Buyer's Initials**

HLO\ Olivewood\ v.1 1/9/2024

-13-

PROVISIONS HEREIN MAKING THAT ISSUE ONE TO BE RESOLVED BY THE ARBITRATOR), THE EXCLUSIVE JURISDICTION AND VENUE FOR ANY SUCH REVIEW SHALL BE THE SUPERIOR COURT FOR THE COUNTY.

(1) **ADDITIONAL PARTIES**. SELLER HAS THE SOLE AND ABSOLUTE RIGHT, IN ITS DISCRETION, TO JOIN ANY PERSON OR ENTITY WHO IS NOT A PARTY TO THE ARBITRATION PROCEEDINGS IF THE PRESENCE OF SUCH PERSON OR ENTITY IS REQUIRED OR IS NECESSARY FOR COMPLETE RELIEF TO BE ACCORDED IN THE ARBITRATION PROCEEDINGS OR IF THE INTEREST OR RESPONSIBILITY OF SUCH PERSON OR ENTITY IN THE DISPUTE IS NOT INSUBSTANTIAL. THE PARTIES SHALL COOPERATE IN GOOD FAITH AND SHALL DILIGENTLY PERFORM SUCH ACTS AS MAY BE NECESSARY TO ENSURE THAT ALL NECESSARY AND APPROPRIATE PARTIES ARE INCLUDED IN THE ARBITRATION PROCEEDINGS.

(2) **ADMINISTRATION OF PROCEEDINGS.** THE ARBITRATION PROCEEDINGS SHALL BE CONDUCTED BY AND IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE "ARBITRATION PROVIDER" DEFINED BELOW.

(3) **STATUTES OF LIMITATION**. EXCEPT FOR PROCEDURAL ISSUES, AND TO THE EXTENT NOT INCONSISTENT WITH THE FEDERAL ACT, THE ARBITRATION PROCEEDINGS, THE ULTIMATE DECISIONS OF THE ARBITRATOR, AND THE ARBITRATOR SHALL BE SUBJECT TO AND BOUND BY EXISTING CALIFORNIA CASE AND STATUTORY LAW. ARBITRATION MUST BE INITIATED PRIOR TO THE EXPIRATION OF ANY APPLICABLE STATUTES OF LIMITATION.

(4) **SELECTION OF ARBITRATOR**. THE PARTIES SHALL SUBMIT THE DISPUTE TO BINDING ARBITRATION AT CONSTRUCTION DISPUTE RESOLUTION SERVICES, INC. (**"CDRS"**), OR IF CDRS IS UNABLE TO ADMINISTER THE ARBITRATION OR IS DETERMINED BY A COURT OF COMPETENT JURISDICTION TO BE AN UNSUITABLE ARBITRATION PROVIDER, AT ANOTHER ARBITRATION PROVIDER AS MAY BE MUTUALLY ACCEPTABLE TO THE PARTIES (E.G., "JAMS" DEFINED BELOW, AMERICAN ARBITRATION ASSOCIATION [**"AAA"**] OR SIMILAR ENTITY PROVIDING ARBITRATION SERVICES) (**"ARBITRATION PROVIDER"**). IF THE PARTIES ARE UNABLE TO AGREE UPON AN ARBITRATION PROVIDER WITHIN SUCH TEN (10) DAY PERIOD, THEN ANY PARTY MAY THEREAFTER SEEK TO HAVE AN ARBITRATOR APPOINTED BY THE SUPERIOR COURT FOR ORANGE COUNTY, CALIFORNIA UNDER THE CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1297.115. THE ARBITRATOR SHALL BE A NEUTRAL AND IMPARTIAL RETIRED JUDGE OR AN ATTORNEY WITH SUBSTANTIAL EXPERIENCE IN RELEVANT MATTERS. IN SELECTING THE ARBITRATOR, THE PROVISIONS OF SECTION 1297.121 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE SHALL APPLY. AN ARBITRATOR MAY BE CHALLENGED FOR ANY OF THE GROUNDS LISTED THEREIN, IN SECTION 1297.124 OR SECTION 1297.125 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. IN ALL CASES, THE ARBITRATOR SHALL BE APPOINTED WITHIN THIRTY (30) DAYS FROM RECEIPT BY ANY PARTY OF A WRITTEN REQUEST TO RESOLVE THE DISPUTE BETWEEN THEM BY ARBITRATION.

(5) **AUTHORITY OF ARBITRATOR**. THE ARBITRATOR SHALL HAVE THE POWER TO HEAR AND DISPOSE OF MOTIONS, INCLUDING MOTIONS RELATING TO PROVISIONAL REMEDIES, DEMURRERS, MOTIONS TO DISMISS, MOTIONS FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT AND/OR ADJUDICATION MOTIONS, IN THE SAME MANNER AS A TRIAL COURT JUDGE. IN ADDITION, THE ARBITRATOR SHALL HAVE THE POWER TO SUMMARILY ADJUDICATE ISSUES OF FACT OR LAW, INCLUDING THE AVAILABILITY OF REMEDIES, EVEN IF THE ISSUE ADJUDICATED DOES NOT DISPOSE OF AN ENTIRE CAUSE OF ACTION OR DEFENSE. THE ARBITRATOR SHALL HAVE THE POWER TO GRANT PROVISIONAL REMEDIES INCLUDING PRELIMINARY INJUNCTIVE RELIEF. PRIOR TO THE SELECTION OF THE ARBITRATOR, ANY PARTY SHALL HAVE THE RIGHT, BUT NOT THE OBLIGATION, TO PETITION THE SUPERIOR COURT OF THE COUNTY FOR ANY NECESSARY PROVISIONAL REMEDIES. HOWEVER, AFTER OBTAINING ANY PROVISIONAL REMEDIES (PENDING SELECTION OF THE ARBITRATOR) THE ENTIRE MATTER SHALL BE REFERRED TO THE ARBITRATION PROVIDER FOR ALL PURPOSES AND THE SUPERIOR COURT SHALL HAVE NO FURTHER JURISDICTION TO MONITOR OR ENFORCE THE PROVISIONAL REMEDIES OR TO MAKE FURTHER DETERMINATIONS OR AWARDS OR TO ISSUE ADDITIONAL PROVISIONAL REMEDIES. THE ARBITRATION PROVIDER SHALL HAVE THE SOLE POWER TO ENFORCE, EXTEND, MODIFY OR VACATE ANY SUCH PROVISIONAL REMEDIES.

(6) **DISCOVERY**. DISCOVERY SHALL BE PERMITTED BY THE ARBITRATOR AT HIS DISCRETION UPON A SHOWING OF GOOD CAUSE OR BASED ON THE AGREEMENT OF THE PARTIES. THE ARBITRATOR SHALL OVERSEE DISCOVERY AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE. AT A MINIMUM, THE PARTIES WILL EXCHANGE ALL DOCUMENTS IN THEIR POSSESSION, CUSTODY OR CONTROL WHICH ARE EITHER RELEVANT OR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE AND EACH PARTY SHALL BE ENTITLED TO AT LEAST TWO PERCIPIENT WITNESS DEPOSITIONS AND THE DEPOSITIONS OF ALL DESIGNATED EXPERTS.

(7) **FULL DISCLOSURE**. EACH PARTY SHALL MAKE, IN GOOD FAITH, A FULL DISCLOSURE OF ALL ISSUES AND EVIDENCE TO EACH OTHER PARTY PRIOR TO THE HEARING. ANY EVIDENCE OR INFORMATION THAT THE ARBITRATOR DETERMINES WAS UNREASONABLY WITHHELD SHALL BE INADMISSIBLE BY THE PARTY WHO WITHHELD IT. THE INITIATING PARTY SHALL BE THE FIRST TO DISCLOSE ALL OF THE FOLLOWING, IN WRITING, TO EACH OTHER PARTY AND TO THE ARBITRATOR: (i) AN OUTLINE OF THE ISSUES AND ITS POSITION ON EACH SUCH ISSUE; (ii) A LIST OF ALL WITNESSES THE PARTY INTENDS TO CALL; AND (iii) COPIES OF ALL WRITTEN REPORTS AND OTHER DOCUMENTARY EVIDENCE, WHETHER WRITTEN OR NOT OR CONTRIBUTED TO BY ITS RETAINED EXPERTS (COLLECTIVELY **"OUTLINE"**). THE INITIATING PARTY SHALL SUBMIT ITS OUTLINE TO EACH OTHER PARTY AND THE ARBITRATOR WITHIN THIRTY (30) DAYS OF THE FINAL SELECTION OF THE ARBITRATOR. EACH RESPONDING PARTY SHALL SUBMIT ITS WRITTEN RESPONSE AS DIRECTED BY THE ARBITRATOR.

(8) **HEARING**. THE ARBITRATION HEARING SHALL BE HELD IN THE COUNTY. THE ARBITRATOR SHALL PROMPTLY COMMENCE THE HEARING GIVING DUE CONSIDERATION TO THE COMPLEXITY OF THE ISSUES, THE NUMBER OF PARTIES AND NECESSARY DISCOVERY AND OTHER RELEVANT MATTERS. THE ARBITRATION SHALL BE CONDUCTED AS INFORMALLY AS POSSIBLE. CALIFORNIA EVIDENCE CODE SECTION

*Seller's Initials* _____

*Buyer's Initials* _____

HLO\ Olivewood\ v.1 1/9/2024                    -14-

1152 ET SEQ. SHALL APPLY FOR THE PURPOSE OF EXCLUDING OFFERS, COMPROMISES, AND SETTLEMENT PROPOSALS FROM EVIDENCE, UNLESS THERE IS AGREEMENT BY ALL PARTIES AS TO ADMISSIBILITY. THE ARBITRATOR SHALL BE THE SOLE JUDGE OF THE ADMISSIBILITY OF AND THE PROBATIVE VALUE OF ALL EVIDENCE OFFERED AND IS AUTHORIZED TO PROVIDE ALL LEGALLY RECOGNIZED REMEDIES WHETHER IN LAW OR EQUITY, EXCEPT AS OTHERWISE LIMITED IN THIS PARAGRAPH 26(a). THE COST OF AN INTERPRETER SHALL BE BORNE BY THE PARTY REQUIRING THE SERVICES OF THE INTERPRETER IN ORDER TO BE UNDERSTOOD BY THE ARBITRATOR AND THE EXPENSES OF WITNESSES SHALL BE BORNE BY THE PARTY PRODUCING SUCH WITNESSES.

(9)    **DECISION**. THE DECISION OF THE ARBITRATOR SHALL BE BINDING ON THE PARTIES AND MAY BE ENTERED AS A JUDGMENT IN ANY COURT OF THE STATE OF CALIFORNIA THAT HAS JURISDICTION AND VENUE. THE ARBITRATOR SHALL (i) CAUSE A COMPLETE RECORD OF ALL ARBITRATION PROCEEDINGS TO BE PREPARED SIMILAR TO THOSE KEPT IN THE SUPERIOR COURT, (ii) TRY ALL ISSUES OF BOTH FACT AND LAW, AND (iii) ISSUE A WRITTEN STATEMENT OF DECISION CONSISTENT WITH THAT DESCRIBED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 643 WHICH SHALL SPECIFY THE FACTS AND LAW RELIED UPON IN REACHING THE ARBITRATOR'S DECISION WITHIN TWENTY (20) DAYS AFTER THE CLOSE OF TESTIMONY.

(10)    **FEES AND COSTS**. SELLER SHALL ADVANCE ANY FEE REQUIRED BY THE ARBITRATION PROVIDER TO INITIATE THE ARBITRATION PROCEEDINGS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE TOTAL COST OF THE ARBITRATION PROCEEDINGS, INCLUDING THE INITIATION FEE ADVANCED BY SELLER AND OTHER FEES OF THE ARBITRATION PROVIDER AND ANY RELATED COSTS AND FEES INCURRED BY THE ARBITRATION PROVIDER (SUCH AS EXPERTS AND CONSULTANTS RETAINED BY IT) SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME. THE ARBITRATOR SHALL NOT AWARD ATTORNEYS' FEES TO ANY PARTY. NOTHING HEREIN SHALL BE CONSTRUED TO MODIFY OR ABROGATE ANY DUTY TO DEFEND AND/OR INDEMNIFY A THIRD PARTY PURSUANT TO THE TERMS OF A CONTRACT BETWEEN ANY SUCH PARTIES OR TO ESTABLISH A DIFFERENT ALLOCATION OF COSTS BETWEEN SELLER AND SUCH THIRD PARTY. A STENOGRAPHIC RECORD OF THE HEARING SHALL BE MADE WHICH SHALL REMAIN CONFIDENTIAL EXCEPT AS MAY BE NECESSARY FOR POST-HEARING MOTIONS AND APPEALS. THE COST OF THE RECORD SHALL BE BORNE ONE-HALF BY BUYER AND ONE-HALF BY SELLER, REGARDLESS OF THE OUTCOME. SHOULD ANY PARTY REFUSE OR FAIL TO PAY ITS PRO-RATA SHARE OF THE COSTS OF ARBITRATION, THE REMAINING PARTIES MAY PAY SUCH SHARE, AND THE PARTY OR PARTIES WHICH PAY SUCH EXTRA SHARE SHALL BE AWARDED SUCH EXTRA COSTS BY THE ARBITRATOR IN THE ARBITRATOR'S DECISION. NOTWITHSTANDING THE FOREGOING, UNDER ALL CIRCUMSTANCES THE PARTIES SHALL BE RESPONSIBLE FOR THEIR OWN ATTORNEYS' FEES AND EXPERT WITNESS COSTS, SUBJECT ONLY TO REALLOCATION BY ANY APPLICABLE STATUTORY COST-SHIFTING MECHANISMS.

(b)    **JUDICIAL REFERENCE**. IF, AND ONLY IF, FOR ANY REASON ARBITRATION CANNOT BE LEGALLY USED TO RESOLVE A PRE-CLOSING DISPUTE BETWEEN THE PARTIES OR THE ARBITRATION PROVISIONS PROVIDED FOR IN PARAGRAPH 26(a) ARE HELD NOT TO APPLY OR DETERMINED TO BE INVALID, VOID OR UNENFORCEABLE IN WHOLE OR MATERIAL PART FOR ANY REASON PREVENTING THEIR USE, THEN THE PRE-CLOSING DISPUTE SHALL BE SUBMITTED FOR RESOLUTION TO GENERAL JUDICIAL REFERENCE WITHIN THIRTY (30) DAYS OF JUDICIAL DETERMINATION THAT THE ARBITRATION PROVISION IS INVALID, VOID OR UNENFORCEABLE, AS SET FORTH BELOW. PRE-CLOSING DISPUTES SUTMITTED TO GENERAL JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1, INCLUSIVE, OR ANY SUCCESSOR STATUTES THERETO, SHALL BE SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

(1)    **COOPERATION.** THE PARTIES SHALL COOPERATE IN GOOD FAITH TO ENSURE THAT ALL NECESSARY AND APPROPRIATE PARTIES ARE INCLUDED IN THE JUDICIAL REFERENCE PROCEEDINGS.

(2)    **FEES AND COSTS**. ALL FEES AND COSTS OF THE JUDICIAL REFERENCE PROCEEDINGS SHALL BE BORNE IN THE SAME MANNER AS ARBITRATION.

(3)    **REFEREE**. THE GENERAL REFEREE SHALL BE CHOSEN FROM THE PANEL OF REFEREES PROVIDED BY JUDICIAL ARBITRATION AND MEDIATION SERVICES, INC. (*"JAMS"*) AND SHALL HAVE THE AUTHORITY TO TRY ALL ISSUES, WHETHER OF FACT OR LAW, AND TO REPORT A STATEMENT OF DECISION TO THE COURT.

(4)    **PROCEEDINGS**. THE PARTIES SHALL USE THE PROCEDURES ADOPTED BY JAMS FOR JUDICIAL REFERENCE (OR ANY OTHER ENTITY OFFERING JUDICIAL REFERENCE DISPUTE RESOLUTION PROCEDURES AS MAY BE MUTUALLY ACCEPTABLE TO THE PARTIES), PROVIDED THAT THE FOLLOWING RULES AND PROCEDURES SHALL APPLY IN ALL CASES UNLESS THE PARTIES AGREE OTHERWISE:

(i)    THE JUDICIAL REFERENCE PROCEEDINGS SHALL BE HEARD IN THE COUNTY WHERE THE PROPERTY IS LOCATED.

(ii)    THE REFEREE MUST BE A NEUTRAL AND IMPARTIAL RETIRED JUDGE OR A LICENSED ATTORNEY WITH SUBSTANTIAL EXPERIENCE IN RELEVANT REAL ESTATE MATTERS.

(iii)    ANY DISPUTE REGARDING THE SELECTION OF THE REFEREE SHALL BE RESOLVED BY JAMS OR THE ENTITY PROVIDING THE REFERENCE SERVICES, OR, IF NO ENTITY IS INVOLVED, BY THE COURT WITH APPROPRIATE JURISDICTION.

(iv)    THE REFEREE MAY REQUIRE ONE OR MORE PRE-HEARING CONFERENCES.

(v)    THE PARTIES SHALL BE ENTITLED TO DISCOVERY IN ACCORDANCE WITH THE CODE OF CIVIL PROCEDURE, AND THE REFEREE SHALL OVERSEE DISCOVERY AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE.

*Seller's Initials*

*Buyer's Initials*

(vi)    A STENOGRAPHIC RECORD OF THE REFERENCE TRIAL SHALL BE MADE, PROVIDED THAT THE RECORD SHALL REMAIN CONFIDENTIAL EXCEPT AS MAY BE NECESSARY FOR POST-HEARING MOTIONS AND ANY APPEALS.

(vii)    THE REFEREE'S STATEMENT OF DECISION SHALL CONTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW TO THE EXTENT APPLICABLE AND SHALL BE ISSUED WITHIN TWENTY (20) DAYS AFTER THE HEARING HAS BEEN CONCLUDED.

(viii)    THE REFEREE SHALL HAVE THE AUTHORITY TO RULE ON ALL POST-HEARING MOTIONS IN THE SAME MANNER AS A TRIAL JUDGE.

(ix)    THE STATEMENT OF DECISION OF THE REFEREE UPON ALL OF THE ISSUES CONSIDERED BY THE REFEREE IS BINDING UPON THE PARTIES, AND UPON FILING OF THE STATEMENT OF DECISION WITH THE CLERK OF THE COURT, OR WITH THE JUDGE WHERE THERE IS NO CLERK, JUDGMENT MAY BE ENTERED THEREON.  THE DECISION OF THE REFEREE SHALL BE APPEALABLE AS IF RENDERED BY THE COURT.  THIS PROVISION SHALL IN NO WAY BE CONSTRUED TO LIMIT ANY VALID CAUSE OF ACTION WHICH MAY BE BROUGHT BY ANY OF THE PARTIES.

(x)    THE PARTICIPATION BY ANY PARTY IN ANY JUDICIAL PROCEEDING CONCERNING THIS PARAGRAPH 26(b) OR ANY PRE-CLOSING DISPUTE SHALL NOT BE DEEMED A WAIVER OF THE RIGHT TO ENFORCE THIS PARAGRAPH 26(b) NOTWITHSTANDING ANY PROVISION OF LAW TO THE CONTRARY, SHALL NOT BE ASSERTED OR ACCEPTED AS A REASON TO DELAY, TO REFUSE TO PARTICIPATE IN, OR TO REFUSE TO ENFORCE THIS JUDICIAL REFERENCE PROVISION.

(c)    **SMALL CLAIMS COURT**.  NOTWITHSTANDING ANY PROVISION OF THIS PARAGRAPH 26 TO THE CONTRARY, EITHER PARTY MAY USE SMALL CLAIMS COURT AS AN ALTERNATIVE TO ARBITRATION OR JUDICIAL REFERENCE OF A PRE-CLOSING DISPUTE IF THE AMOUNT IN CONTROVERSY IS WITHIN THE JURISDICTIONAL LIMITS OF SMALL CLAIMS COURT.

27.  **General Dispute Resolution Provisions**.

(1)    PARAGRAPHS 25 AND 26 SHALL INURE TO THE BENEFIT OF, AND BE ENFORCEABLE BY, SELLER'S TRADE CONTRACTORS, AGENTS, VENDORS, SUPPLIERS, DESIGN PROFESSIONALS, INSURERS AND ANY OTHER PERSON WHOM BUYER CONTENDS IS RESPONSIBLE FOR ANY ALLEGED DEFECT IN OR TO THE PROPERTY OR AN IMPROVEMENT THERETO.

(2)    IF ANY PROVISION OF PARAGRAPH 25 OR 26 IS IN CONFLICT WITH OR IS DIFFERENT THAN ANY ALTERNATIVE DISPUTE RESOLUTION PROVISION OF ANY CC&RS OF ANY HOMEOWNER'S ASSOCIATION, MASTER ASSOCIATION OR ANY OTHER COMMON INTEREST DEVELOPMENT ASSOCIATION, THE PROVISIONS SET FORTH IN  PARAGRAPH 25 OR 26, AS APPLICABLE, SHALL CONTROL.

NOTICE:  BY INITIALING IN THE SPACE BELOW, YOU AND SELLER AGREE TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN PARAGRAPHS 25 AND 26 RESOLVED IN ACCORDANCE WITH THE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26.  YOUR AGREEMENT TO THE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS IS VOLUNTARY.  AS TO ALL DISPUTES SUBJECT TO THE ALTERNATIVE DISPUTE RESOLUTION PROVISIONS SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26, SELLER, ON BEHALF OF ITSELF AND ITS MEMBERS, OFFICERS, EMPLOYEES, CONTRACTORS, SUBCONTRACTORS, CONSULTANTS, AGENTS AND REPRESENTATIVES, AND BUYER WAIVE ANY RIGHTS TO JURY TRIAL, APPEAL AND OTHER CIVIL LITIGATION PROCEEDINGS FOR SUCH DISPUTES, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26.

I/WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN PARAGRAPHS 25 AND 26 TO THE PROCEDURES SET FORTH OR REFERENCED IN PARAGRAPHS 25 AND 26.

BUYER'S INITIALS    /    SELLER'S INITIALS

28.  **Miscellaneous.** This Agreement is the entire agreement between the Parties concerning the subject matter hereof. Buyer has not executed this Agreement in reliance upon any promise, assurance, agreement, representation or warranty not expressly set forth herein.  All advertising material is superseded by this Agreement.  All representations and warranties of the Parties and any indemnity by the Parties under this Agreement shall survive the Close of Escrow and the delivery of the Grant Deed.  All Addenda attached hereto are a part of this Agreement.

*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024

-16-
**265**

**ADDENDUM**

**LIMITED WARRANTY**



**Seller's Initials**

**Buyer's Initials**

DocuSign Envelope ID: 367SC3C1-4305-496F-BD4A-205CAC6ACCDC

**ADDENDUM**

**INDIVIDUAL DISPUTE RESOLUTION AGREEMENT**



*Seller's Initials*

*Buyer's Initials*

HLO\ Olivewood\ v.1 1/9/2024                    -18-

**267**

# Exhibit 9

OFFICE OF THE SECRETARY OF STATE
OF THE STATE OF COLORADO

# CERTIFICATE OF DOCUMENT FILED

I,    Jena Griswold    , as the Secretary of State of the State of Colorado, hereby certify that, according to the records of this office, the attached document is a true and complete copy of the

Articles of Dissolution

with Document # 20258022446   of

The New Home Company Inc, Dissolved September 18, 2025

Colorado Corporation

(Entity ID # 20251852657   )

consisting of   3   pages.

This certificate reflects facts established or disclosed by documents delivered to this office on paper through 11/13/2025 that have been posted, and by documents delivered to this office electronically through 11/17/2025 @ 11:57:02.

I have affixed hereto the Great Seal of the State of Colorado and duly generated, executed, and issued this official certificate at Denver, Colorado on 11/17/2025 @ 11:57:02 in accordance with applicable law. This certificate is assigned Confirmation Number  17892701       .



Secretary of State of the State of Colorado

*************************************************End of Certificate*********************************************
*Notice: A certificate issued electronically from the Colorado Secretary of State's website is fully and immediately valid and effective. However, as an option, the issuance and validity of a certificate obtained electronically may be established by visiting the Validate a Certificate page of the Secretary of State's website, https://www.coloradosos.gov/biz/CertificateSearchCriteria.do entering the certificate's confirmation number displayed on the certificate, and following the instructions displayed. Confirming the issuance of a certificate is merely optional and is not necessary to the valid and effective issuance of a certificate. For more information, visit our website, https://www.coloradosos.gov click "Businesses, trademarks, trade names" and select "Frequently Asked Questions."*

**269**



Business Program
Colorado Secretary of State
1700 Broadway, Ste. 550 Denver, CO 80290
Phone: 303-894-2200                          Fax: 303-869-4864
Email: Business@coloradosos.gov          Website: www.coloradosos.gov



Colorado Secretary of State
ID#: 20251852657
Document #: 20258022446
Filed on: 09/18/2025 07:46:46 AM
Paid: $10.00

# Articles of Dissolution
# Corporation

Filed pursuant to §7-114-103 of the Colorado Revised Statutes (C.R.S.)

## Section 1 – Entity information

ID number (Colorado Secretary of State ID number):

| 20251852657 |

Entity Name:

| The New Home Company Inc |

## Section 2 – Principal office address

**Street Address**
Street Address 1

| 5131 Vivian St |

Street Address 2

|  |

| City | State | ZIP code |
| Wheat Ridge | CO | 80033 |

| Province (if applicable) | Country |
|  | United States |

**Mailing Address (Leave blank if same as street address)**
Mailing Address 1

|  |

Mailing Address 2

|  |

| City | State | ZIP code |
|  |  |  |

| Province (if applicable) | Country |
|  |  |

DISS_PC
Revised 02/18/2025


Colorado
**Secretary of State**

## Section 3 – Dissolution confirmation

The corporation is dissolved.

## Section 4 – Delayed effective date (optional)

If the following statement applies, adopt the statement by entering a date and, if applicable, time using the required format.

The delayed effective date and/or time (mm/dd/yyyy hour:minute am/pm) of this document is:

Caution: Leave blank if the document does not have a delayed effective date. Stating a delayed effective date has significant legal consequences. If you don't enter a specific time, the filing will take effect at 11:59 PM. Times are MST/MDT.

## Section 5 – Additional information

☐    The document contains additional information as provided by law.

## Section 6 – Notice of perjury

Causing this document to be delivered to the Secretary of State for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that such document is such individual's act and deed, or that such individual in good faith believes such document is the act and deed of the person on whose behalf such individual is causing such document to be delivered for filing, taken in conformity with the requirements of part 3 of article 90 of title 7, C.R.S. and, if applicable, the constituent documents and the organic statutes, and that such individual in good faith believes the facts stated in such document are true and such document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the Secretary of State, whether or not such individual is identified in this document as one who has caused it to be delivered.

## Section 7 – Filer information

Name(s) and mailing address(es) of the individual(s) causing the document to be delivered for filing:

| Last name | First name | Middle | Suffix |
|---|---|---|---|
| Gu | Jeffrey | | |

Address 1
5131 Vivian St

Address 2

| City | State | ZIP code |
|---|---|---|
| Wheat Ridge | CO | 80033 |

| Province (if applicable) | Country |
|---|---|
| | United States |

☐    This document contains the true name and mailing address of one or more additional individuals causing the document to be delivered for filing.

DISS_PC
Revised 02/18/2025


Colorado
**Secretary of State**

## Section 8 – Disclaimer

This form/cover sheet, and any related instructions, are not intended to provide legal, business or tax advice, and are furnished without representation or warranty. While this form/cover sheet is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form/cover sheet.

Questions should be addressed to the user's legal, business or tax advisor(s).

**272**

Colorado
**Secretary of State**