**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

**Civil Action No: 1:25-cv-02884-CYC**

**Toll Brothers, Inc. et al v. Gu et al**

**Table of Contents**

ANSWERS
    I. INTRODUCTION
    II. RESPONSES
    III. AFFIRMATIVE DEFENSES
        1. Lack of Standing / Improper Joinder
        2. Failure to State a Claim
        3. Unclean Hands
        4. Waiver
        5. No Likelihood of Confusion
        6. No Commercial Use
        7. Fair Use / Nominative Use
        8. First Amendment / Petitioning Activity
        9. Abuse of Process
        10. Failure to Mitigate Damages
        11. Non-Infringing Names
        12. Implausibility of Harm
        13. Retaliatory Motive and Lack of Identifiable Victim
COUNTERCLAIM
    I. INTRODUCTION
    II. PARTIES
    III. JURISDICTION AND VENUE
    IV. FACTUAL ALLEGATIONS
        A. Pre-purchase
        B. Agreement of Sale
        C. Construction
        D. Closing
        E. Post-closing
        F. City of Wheat Ridge
        G. Toll Brothers History
        H. Licenses
        I. Insurance

1

**EXHIBIT 6 - PAGE 34**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-10    Filed 07/21/26    Page 2 of 34    Page
ID #:10239

J. Marsh

K. Consumers

L. Other Toll Court Cases

M. Oakstone Matter

N. SEC Disclosures

O. Statements of Authority

P. Tenure at TB

Q. A Tale of Two Kens

R. Employee Evasiveness

S. TB Annual Reports

T. The New Home Company History

U. John Laing Homes Company History

V. The New Home Company Disclosures

W. A Tale of Two Builders

V. CAUSES OF ACTION

Count 1. Declaratory Judgment (Applicability of CP-1 Exemption/ C.R.S. § 12-10-201 et seq. )

Count 2. Fraudulent Inducement

A. Misrepresentation by Omission and False Authority: The Use of Shell Entities and Paper Officers

B. The Gary-Greenspan Pattern

C. Harm and Reliance

Count 3. Civil Conspiracy

A. Toll Brothers, Inc. and Related Entities

B. The City of Wheat Ridge, Gerald Dahl, Renee Meriaux, and Charles Abbott Associates

C. Felten Group, Inc.

D. Marsh & McLennan Companies, Inc. and Subsidiary Entities

E. The New Home Company, Inc. and Bert L. Howe & Associates, Inc.

F. Harm and Joint Liability

Count 4. Deceptive Trade Practices

Count 5. Breach of Statutory Duty

Count 6. Abuse of Process

Count 7. Negligence

Count 8: Violation of First Amendment Rights (42 U.S.C. § 1983)

Count 9: Violation of Fourteenth Amendment Rights – Due Process and Equal Protection (42 U.S.C. § 1983)

VI. PRAYER FOR RELIEF

1. Declaratory Relief

2

EXHIBIT 6 - PAGE 35

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-7-08    Filed 07/21/26    Page 3 of 34    Page
ID #:10240

2. Injunctive Relief

3. Rescission or, in the Alternative, Compensatory Damages

4. Mitigation Expenses

5. Statutory Damages

6. Punitive Damages

7. Attorneys' Fees and Costs

8. Additional Legal or Equitable Relief

VII. DEMAND FOR JURY TRIAL

Notice of Electronic Filing

**ANSWERS**

**I. INTRODUCTION**

This lawsuit is not about trademark infringement. It is a retaliatory strike—an effort to silence a consumer who asked difficult questions about Plaintiffs' business practices, entity registrations, and regulatory compliance. The Complaint alleges no quantifiable harm, no commercial use, and no plausible theory of confusion under the Lanham Act. Plaintiffs attach no exhibits of lost sales, diverted customers, or actual confusion. Instead, they rely on conclusory assertions and speculative narratives to recast a homeowner and consumer advocate as a commercial actor.

The absence of evidence is telling. Plaintiffs devote pages to unrelated disputes—such as the so-called "Oakstone Matter" involving The New Home Company, Inc.—that have nothing to do with the claims before this Court. They even describe the backstory of Toll Southwest LLC, the subsidiary that purportedly sold Defendant his home, despite that entity's lack of standing to enforce trademark rights. These pleading choices reveal the true motive behind the action: to intimidate, discredit, and suppress a whistleblower who has raised legitimate concerns about corporate misrepresentation, shell-entity structuring, and deceptive trade practices across jurisdictions. Many of the named "Copy" entities underscore the overreach. Several contain only

3

**EXHIBIT 6 - PAGE 36**

Case No. 1:25-cv-02884-PAB-CYC   Document 17   filed 09/29/25   USDC Colorado
Case 8:25-cv-02134-VBF-DSR   Document 167-08   Filed 07/21/26   Page 4 of 34   Page
ID #:10241

the common word "Toll" or letters "TB," which Plaintiffs do not own exclusively and which are not inherently distinctive when used alone. Furthermore, USPTO 73636618 and USPTO 73636618 are both owned by TB Proprietary Corp., which brings into question the standing of the parent corporation. Thus, sweeping every touchpoint and entity into a Lanham Act case is improper and underscores the lack of a credible infringement theory.

However, this does not mean there is nothing of import here, quite the contrary. By alleging in Paragraph 28 that Defendant "purchased a townhome from Plaintiff Toll Southwest," Plaintiffs themselves placed the home sale and entity structure directly as a threshold issue. Colorado law strictly regulates who may act as a property seller without license, limiting what we might call the "Colorado Real Estate Commission CP-1 exemption" ("CP-1") to entities selling through their own "officers, partners, or regularly salaried employees." Once Plaintiffs elected to make the transaction part of their narrative, the Court necessarily must determine whether Toll Southwest LLC of Delaware—or any other Plaintiff—qualified for the exemption, which is more formally laid out in CO Rev Stat § 12-10-201(6)(b) (2023). Toll Southwest LLC of Delaware exists primarily as a title-holding shell: it employs no sales staff, conducts no marketing, does not receive earnest money, does not retain the officers that sign for it, and does not administer the warranty processes. If Toll Southwest LLC of Delaware was nothing more than a nominal signatory, then it lacks standing both to enforce trademark rights and to qualify for CP-1's narrow statutory exemption. Until this threshold question is resolved, Plaintiffs' claims possibly rest on a misidentified and improperly joined party.

4

EXHIBIT 6 - PAGE 37

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-08    Filed 07/21/26    Page 5 of 34    Page
ID #:10242

Somewhat amusingly, Plaintiffs allege in Paragraph 66 that the registration of similarly named entities across state lines may confuse consumers as to the proper entity for legal recourse. This is a startling admission. If, as Plaintiffs assert, consumers might misdirect service or claims due to ambiguous entity naming, it is only because Plaintiffs themselves have built a multi-layered corporate shell system intentionally designed to obscure which "Toll Brothers" entity is responsible for any given transaction. The conduct Plaintiffs attribute to Defendants is not only modeled after Plaintiffs' own structuring, but reveals how structurally confusing Plaintiffs' operations truly are.

At a minimum, Plaintiffs' case is an effort to weaponize trademark law as a shield against consumer accountability. It rests on speculation, omits evidence, and ignores statutory constraints. Defendant respectfully submits that the Court should view the Complaint for what it is: an overreaching attempt to chill lawful criticism and avoid scrutiny of Plaintiffs' opaque business structure. But there is a way to salvage this action. Likely, the proper first step in this litigation is to clarify Plaintiffs' standing under CP-1; absent such clarity, the Complaint cannot survive.

## II. RESPONSES

Defendant denies the allegations in the "Introduction" section of the Complaint, as they consist of conclusions, characterizations, and unsupported rhetoric rather than factual allegations. To the extent any specific factual assertion is contained therein, Defendant denies it unless expressly admitted below.

24. Admitted.

25. Admitted.

5

**EXHIBIT 6 - PAGE 38**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-7108    Filed 07/21/26    Page 6 of 34    Page
ID #:10243

assertion of "harassment," they fail for lack of standing, improper joinder, and reliance on conclusory rhetoric rather than concrete injury.

# COUNTERCLAIM

**COUNTERCLAIM PLAINTIFF JEFFREY GU,** by and for himself, brings the following Counterclaims against **COUNTERCLAIM DEFENDANTS TOLL BROTHERS, INC., et al.**

## I. INTRODUCTION

Defendant and Counterclaim Plaintiff Jeffrey Gu asserts counterclaims.

In Paragraph 28 of the Complaint, Plaintiffs allege that "Gu purchased a townhome from Plaintiff Toll Southwest." That allegation grossly oversimplifies the purchase process and disregards the involvement of multiple affiliated entities—including Plaintiffs' parent corporation—in marketing, contracting, and warranty administration. (See ¶¶ 1-8, 27-35, 45, 47, 51-56, 119-120, 123-130, 152-161.) Homebuying is not akin to purchasing a product at a convenience store: it is a multi-stage pipeline involving advertising, pre-qualification, bidding, execution of contracts, and post-closing service obligations. By reducing this process to a single entity name, Plaintiffs conceal the true complexity of their sales structure and the extent to which they attempted to form transactions around the Colorado Real Estate Commission's CP-1 exemption ("CP-1"). Because Plaintiffs themselves chose to place the purchase transaction into their Complaint, Counterclaim Plaintiff respectfully submits that the Court must first clarify which entity (if any) was the actual "seller," and whether that entity qualified for CP-1's narrow exemption. Without such clarity, it will be impossible to assess Plaintiffs' standing, to resolve

12

**EXHIBIT 6 - PAGE 39**

Case No. 1:25-cv-02884-PAB-CYC   Document 17   filed 09/29/25   USDC Colorado
Case 8:25-cv-02134-VBF-DSR   Document 13 of 108   Filed 07/21/26   Page 7 of 34   Page
ID #:10244

their claims, or to evaluate Counterclaim Plaintiff's causes of action. This threshold determination is therefore vital to adjudicating both the Complaint and the Counterclaims.

Counterclaim Plaintiff has already sought clarification from the Colorado Department of Real Estate (See ¶¶ 141). That agency declined to resolve the ambiguities in Plaintiffs' entity structure, choosing instead to defer responsibility. In so doing, the regulatory authority effectively placed the interpretive burden on this Court. Thus, the judicial determination sought here is not only proper but necessary to fill the gap left by regulators unwilling to adjudicate Plaintiffs' use of the CP-1 exemption.

By styling their Complaint as they did, Plaintiffs themselves placed their corporate structure, sales practices, and regulatory compliance directly at issue. They did not limit their pleading to the trademark owner, TB Proprietary Corp. of Delaware, but instead joined other entities—such as Toll Brothers, Inc. and Toll Southwest LLC—that neither own nor enforce the marks in question. Plaintiffs also chose to frame their allegations around Defendant's post-closing conduct in connection with his home purchase. That strategy makes it impossible to adjudicate their claims without simultaneously addressing the inducement, licensing, and statutory compliance issues that underpin the transaction. Under Rule 13(a), these counterclaims are not optional: they arise from the same transaction or occurrence that is the subject matter of Plaintiffs' Complaint, and resolution of one necessarily requires resolution of the other.

Even Plaintiffs inadvertently admit to there being aspects of this case requiring more clarity. In Paragraph 47 of their Complaint, they describe the situation as an "entire mess." That candid phrasing underscores Defendant's point: this confusion stems not from the "copy entities" but from Plaintiffs' own opaque structure and shifting narratives. Their counsel has likewise

13

**EXHIBIT 6 - PAGE 40**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 46-7 118    Filed 07/21/26    Page 8 of 34    Page
ID #:10245

stumbled, erroneously alleging in Paragraph 28 of their Complaint that "Toll Southwest is a Colorado LLC." Were that to be true, diversity jurisdiction would vanish altogether.

Identity is not a sideshow in this litigation—it is the litigation. Plaintiffs chose to sue under conflicting corporate names, alleging confusion while obscuring which entity constructed the property, which entity marketed it, which entity sold it, which entity accepted earnest money, and which entity provided warranties. By making "identity" the centerpiece of their complaint, Plaintiffs have made it unavoidable that this Court resolves the true identities of the entities responsible. Defendant welcomes that inquiry, because it reveals not confusion caused by Defendant, but confusion caused by Plaintiffs' own shell-game of registrations and subsidiaries.

**Preview of Exhibits**

To aid the Court's understanding of the counterclaim, several exhibits provide a clear overview of the corporate structure and consumer experience at issue. Exhibit 2, titled Colorado Ops, maps the array of subsidiary entities used by Toll Brothers in the state (See
📄 Exhibit 2 Colorado Ops.pdf ). Exhibit 3, titled Consumer Journey, depicts the sequence of entities presented to a homebuyer during the marketing, contracting, and closing process (See
📄 Exhibit 3 Consumer Journey.pdf ). Exhibit 87, titled Corporate Hierarchy, shows the relationship of Toll Brothers, Inc. to its numerous subsidiaries (See
📄 Exhibit 87 Corporate Hierarchy.pdf ). These diagrams illustrate how the corporate defendants controlled and coordinated the consumer-facing process while obscuring which entities bore legal responsibility.

**II. PARTIES**

**A. Counterclaim Plaintiff:**

14

**EXHIBIT 6 - PAGE 41**

**Jeffrey Gu**

Residence: 2332 N Clay St Apt 3, Denver, CO 80211

State of Domicile: Colorado

**B. Counterclaim Defendants:**

**Toll Brothers, Inc.,** a Delaware Corporation

Principal Place of Business: 1140 Virginia Drive, Fort Washington, PA 19034

**Toll Southwest LLC,** a Delaware LLC

Principal Place of Business: 1140 Virginia Drive, Fort Washington, PA 19034

**TB Proprietary Corp.,** a Delaware Corporation

Principal Place of Business: 1140 Virginia Drive, Fort Washington, PA 19034

**City of Wheat Ridge**

Principal Place of Business: 7500 W 29th Ave., Wheat Ridge, CO 80033

**Gerald Dahl,** in his capacity as City Attorney of City of Wheat Ridge

Principal Place of Business: 7500 W 29th Ave., Wheat Ridge, CO 80033

**Renee Meriaux,** in her capacity as Chief Building Official of City of Wheat Ridge Building Department

Principal Place of Business: 7500 W 29th Ave., Wheat Ridge, CO 80033

**Charles Abbot Associates, Inc.,** a California Corporation

Principal Place of Business: 27201 PUERTA REAL, SUITE 200, MISSION VIEJO, CA 92691

**Felten Group, Inc.**, an Arizona Corporation

Principal Place of Business: 18325 N Allied Way Ste 200, Phoenix, AZ 85054, US

**Marsh & McLennan Companies, Inc.,** a Delaware Corporation

15

**EXHIBIT 6 - PAGE 42**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-810    Filed 07/21/26    Page 10 of 34
Page ID #:10247

Principal Place of Business: 1166 AVENUE OF THE AMERICAS, NEW YORK, NY,

UNITED STATES, 10036

**Marsh LLC,** a Delaware LLC

Principal Place of Business: 1166 AVENUE OF THE AMERICAS, NEW YORK, NY,

UNITED STATES, 10036

**Marsh USA LLC,** a Delaware LLC

Principal Place of Business: 1166 AVENUE OF THE AMERICAS, NEW YORK, NY,

UNITED STATES, 10036

**The New Home Company, Inc,** a Delaware Corporation

Principal Place of Business: 18300 VON KARMAN AVE., SUITE 1000, IRVINE, CA

92612

**Bert L Howe and Associates, Inc,** a California Corporation

Principal Place of Business: 5415 E. LA PALMA AVENUE, ANAHEIM HILLS, CA

92807

## III. JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C.

§ 1331 because Counterclaim Plaintiff asserts claims arising under the First and Fourteenth

Amendments to the United States Constitution, enforceable through 42 U.S.C. § 1983. These

constitutional claims are directed against the City of Wheat Ridge, a municipal corporation

within the State of Colorado, its officials and agents acting under color of state law.

2.    Additionally, this Court has subject matter jurisdiction under 28 U.S.C. § 1332 because

the controversy is between citizens of different states and the amount in controversy exceeds

$75,000, exclusive of interest and costs. Counterclaim Plaintiff is a resident of Colorado. The

16

**EXHIBIT 6 - PAGE 43**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-7810    Filed 07/21/26    Page 11 of 34
Page ID #:10248

corporate Counterclaim Defendants—including Toll Brothers, Inc. (a Delaware corporation with principal place of business in Pennsylvania), TB Proprietary Corp. (a Delaware corporation with principal place of business in Pennsylvania), Toll Southwest LLC (a Delaware limited liability company with members domiciled outside Colorado), Marsh & McLennan Companies, Inc. (a Delaware corporation with principal place of business in New York), Marsh LLC (a Delaware limited liability company with members domiciled outside Colorado), Marsh USA LLC (a Delaware limited liability company with members domiciled outside Colorado), The New Home Company, Inc. (a Delaware corporation), Felten Group, Inc. (an Arizona corporation), and Bert L. Howe & Associates, Inc. (a California corporation)—are citizens of states other than Colorado for purposes of diversity.

3.    This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims alleged herein, including fraudulent inducement, negligence, and civil conspiracy, because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the District of Colorado, including the negotiation, execution, and closing of the home purchase transaction, the permitting and inspection activities of the City of Wheat Ridge, and the communications and acts that form the basis of the alleged conspiracy.

## IV. FACTUAL ALLEGATIONS

*All referenced corporate registrations, recorded county documents, employee information, licenses, and permits are matters of public record and can be judicially noticed. If Plaintiffs dispute the accuracy of the attached copies, they are in possession of the true and correct versions and should provide them to the Court.*

17

EXHIBIT 6 - PAGE 44

Case No. 1:25-cv-02884-PAB-CYC   Document 17   filed 09/29/25   USDC Colorado
Case 8:25-cv-02134-VBF-DSR   Document 16-7810   Filed 07/21/26   Page 12 of 34
Page ID #:10249

336.    Another Reddit user named "Cold_Ad103" states that they had rust problems on the exterior of their million dollar home and were "Simply heartbroken and tired of the pushback. They aren't listening. I have a bad feeling they're just going to do the minimum and patch it up."

📄 Exhibit 124 Toll Brothers Reddit 2.pdf

337.    An article about an apartment complex named "Northside Piers" built on or around 2008 cites complaints about 'leaky walls, poor insulation, mold, faulty plumbing, faulty sewage system, faulty heating, faulty air-conditioning. And the biggest: "The windows are thin and the seams between the panes allow wind and rain to easily come through, residents say. Some residents have taped around the window panes, but they say rain and air still blows in."'(See

📄 Exhibit 125 Toll Brothers Northside Piers.pdf )

338.    The article states that this was the Toll Brothers response: The company "is aware of these isolated situations and strongly disagrees with the allegations as they have been presented. It "will continue to honor its obligations and provide the quality and customer service for which it is known."

339.    The response implies that Toll Brothers did not view these as systemic issues but were isolated problems unique to each unit.

**L. Other Toll Court Cases**

340.    In prior litigation, **Toll Brothers, Inc.** of Delaware has appeared under varying subsidiary names.

341.    In *Goldan et al. v. Toll Brothers AZ Limited Partnership*, the named defendant was not the parent company, **Toll Brothers, Inc.** of Delaware, but a subsidiary company.

51

**EXHIBIT 6 - PAGE 45**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 118-10    Filed 07/21/26    Page 13 of 34
Page ID #:10250

342. In *Goldan et al. v. Toll Brothers AZ Limited Partnership*, **Toll Brothers AZ Limited Partnership** retained the services of PHLK LLP.

343. One lawyer representing the case was Brian Plante.

344. Another lawyer representing the case was **Melanie Woodfin**.

345. **Toll Brothers AZ Limited Partnership** was named **EDMUNDS-TOLL CONSTRUCTION COMPANY** at one point in time.

346. **EDMUNDS-TOLL CONSTRUCTION COMPANY** was acquired by **Toll Brothers, Inc.** of Delaware in 1995.

347. In *Rawlins et al. v. Toll Southwest, LLC*, plaintiffs litigated against an LLC owned by **Toll Bros, Inc**. of Pennsylvania.

348. In *Bhaskar Koukuntla v. Toll Bros., Inc.*, plaintiff litigated against a corporation owned by **Toll Holdings, Inc** of Delaware, which is in turn owned by **Toll Brothers, Inc.** of Delaware.

349. In *Paul Tolstyga v. Toll Bros., Inc. and Toll Dallas TX, LLC*, plaintiffs were confronted with multiple subsidiaries of **Toll Brothers, Inc.** of Delaware.

350. In the examples cited above, plaintiffs pursuing claims in different states sued different subsidiaries of **Toll Brothers, Inc.** of Delaware—a limited partnership in Arizona, an LLC in Utah and Texas, and **Toll Bros., Inc.** of Pennsylvania in other jurisdictions.

**M. Oakstone Matter**

351. **JG's** parents are named Xian Feng Gu ("**XFG**") and Di Lan Ge ("**DLG**").

352. On June 24, 2024, **XFG** and **DLG** signed closing documents for a newly built home in Irvine, California in Portola Springs.

52

**EXHIBIT 6 - PAGE 46**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 13-7810    Filed 07/21/26    Page 14 of 34
Page ID #:10251

353.    The Grantor on the Grant Deed for this transaction was a company called **The New Home Company Southern California LLC.** (See

📄 Exhibit 126 129 Oakstone Grant Deed.pdf )

354.    On information and belief, **The New Home Company Southern California LLC** is 100% owned by **The New Home Company, Inc.**

355.    **The New Home Company, Inc.** markets the homes sold to its buyers online at newhomeco.com.

356.    The webpage for the neighborhood for the house sold to the **XFG** and **DLG** is available at https://www.newhomeco.com/region/orange-county/olivewood-portola-springs.

357.    Like the **Toll Brothers, Inc.** of Delaware, **The New Home Company, Inc.** also of Delaware markets its homes through the parent company and sells them contractually through a subsidiary.

358.    **XFG**, born in October 1957, was over 65 at the time of closing.

359.    **DLG**, born in April 1959, was over 65 at the time of closing.

360.    In February of 2025, **JG** agreed to help his elderly parents with administering warranty and other issues related to this home.

361.    Throughout March to May 2025, JG sent **The New Home Company Inc.** numerous California SB800 notice of claim letters.

362.    These are what the Plaintiff refers to as "16 prelitigation notices" in Paragraph 46 of the Complaint.

363.    Also in Paragraph 46, Plaintiff references a situation in which **JG** allegedly "trespassed on site and took pictures."

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 130-10    Filed 07/21/26    Page 15 of 34
Page ID #:10252

364.    Plaintiff refers to a situation cited in a cease and desist letter sent to Defendant by **The New Home Company, Inc.** on May 27, 2025. (See 📄 Exhibit 127 Cease and Desist 1.pdf )

365.    The author of the letter was PHLK lawyer **Melanie Woodfin**.

366.    Melanie Woodfin was also an attorney representing **Toll Brothers AZ Limited Partnership** in *Goldan et al. v. Toll Brothers AZ Limited Partnership*.

367.    The cease and desist letter refers to a situation on May 20, 2025 in which Plaintiff took numerous pictures of unmarked commercial vehicles in the Irvine neighborhood known as Olivewood. (See, 📄 Exhibit 149 IMG_8225.pdf , 📄 Exhibit 150 IMG_8223.pdf , and 📄 Exhibit 151 IMG_8228.pdf )

368.    The California CSLB has a bulletin titled "Contractors State License Board Reminds Contractors to Include License Number on Vehicles and Advertisements." (See 📄 Exhibit 128 20-21_Advertising_on_Vehicles.pdf )

369.    The bulletin states the following: According to Business and Professions Code (BPC) § 7029.6, your business name and contractor license number should be clearly visible on your commercially registered vehicle in print type of at least 72-point font, or three-quarters of an inch in height and width.

370.    **Toll Brothers, Inc.** of Delaware and/or subsidiaries build and sell homes in Irvine, California.

371.    **Toll Brothers, Inc.** of Delaware and/or subsidiaries are aware of California Business and Professions Code (BPC) § 7029.6 and the CSLB guidance regarding displays on commercial vehicles.

372.    On April 21, 2025, **JG** submitted a complaint to the California DRE against a subsidiary of **The New Home Company Inc.** (See 📄 Exhibit 129 DRE Complaint Number.pdf )

54

**EXHIBIT 6 - PAGE 48**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 1-7810    Filed 07/21/26    Page 16 of 34
Page ID #:10253

373.    On May 23, 2025, **JG** sent complaint evidence to the CSLB, issued litigation hold notices to **The New Home Company Inc** and its retained law firm PHLK, and sent bond-related letters to surety companies.

374.    As of September 22, 2025, **The New Home Company Inc** has sent **JG** four cease and desist letters. (See  📄 Exhibit 127 Cease and Desist 1.pdf ,

📄 Exhibit 130 Cease and Desist 2.pdf ,  📄 Exhibit 131 Cease and Desist 3.pdf , and

📄 Exhibit 132 Cease and Desist 4.pdf )

375.    On August 7, 2025, **JG** submitted a Letter of Concern to the Orange County Grand Jury regarding misconduct by the **City of Irvine**.

376.    Throughout May to June 2025, **JG** submitted various complaints about **Bert L. Howe and Associates** to the California CSLB, BPELSG, and CAB.

377.    On August 11, 2025, **Bert L. Howe & Associates** issued a cease-and-desist letter to **JG**. (See  📄 Exhibit 133 BHA Cease and Desist.pdf )

378.    The cease and desist letter references these regulatory complaints.


**N. SEC Disclosures**

379.    On the investor FAQ page, **Toll Brothers, Inc.** of Delaware answers the question "What companies has Toll Brothers acquired?" with the following text: Toll Brothers has made thirteen acquisitions: Geoffrey H. Edmunds in Scottsdale, Arizona (1995), Coleman Homes' Las Vegas Division (1998), Silverman Homes in metro Detroit (1999), Richard R. Dostie (2003) and The Manhattan Building Company (2003) in northern New Jersey, the central Florida Division of Landstar Homes (2005), CamWest Development LLC in Seattle, Washington (2012), Shapell Industries, Inc. in California (2014), Coleman Homes in Boise, Idaho (2017), Sharp Residential

**EXHIBIT 6 - PAGE 49**

Case No. 1:25-cv-02884-PAB-CYC     Document 17     filed 09/29/25     USDC Colorado
Case 8:25-cv-02134-VBF-DSR     Document 130810     Filed 07/21/26     Page 17 of 34
Page ID #:10254

recent dispute with **The New Home Company, Inc** of Delaware, information that subsequently appeared in the Federal complaint docketed as *1:25-cv-02884-CYC*. (See ¶¶ 344, 365 and original Complaint Paragraphs 3, 45-52.)

## V. CAUSES OF ACTION

**Count 1. Declaratory Judgment (Applicability of CP-1 Exemption/ C.R.S. § 12-10-201 et seq. )**

*Against Toll Brothers, Inc., TB Proprietary Corp., and Toll Southwest LLC*

Counterclaim Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Counterclaim Plaintiff seeks a declaration that Plaintiffs can or cannot rely on the "owner-broker" exemption described in Commission Position Statement CP-1, or, more specifically, a declaration on whether CO Rev Stat § 12-10-201(6)(b) (2023) applied to the Plaintiffs' actions at the time of sale. The exemption applies only where property is sold by the entity's own "officers, partners or regularly salaried employees." Plaintiffs structured the transaction on paper through Toll Southwest LLC of Delaware, yet all material sales communications, offer acceptance, earnest money collection, and warranty obligations were carried out by Toll Brothers, Inc. of Delaware or Toll Bros., Inc. of Pennsylvania—separate entities that did not hold title to the property. (See ¶¶ 1-8, 27-35, 45, 47, 51-56, 119-120, 123-130, 152-161, 175.)

Plaintiffs themselves have produced Statements of Authority and Officer Certificates purporting to show that individuals such as Mark Bailey and Reginald Carveth were "officers" of Toll Southwest LLC of Delaware. (See ¶¶ 395-408.)  Yet these documents lack any accompanying

69

**EXHIBIT 6 - PAGE 50**

Case No. 1:25-cv-02884-PAB-CYC   Document 17   filed 09/29/25   USDC Colorado
Case 8:25-cv-02134-VBF-DSR   Document 16-8310   Filed 07/21/26   Page 18 of 34
Page ID #:10255

Had Counterclaim Plaintiff known that he was not truly contracting with Toll Brothers, Inc.—despite every outward indication to the contrary—he would not have proceeded with the Agreement of Sale under the same terms, or possibly at all. At a minimum, Counterclaim Plaintiff would have sought to negotiate different terms, exercised greater due diligence, and verified the licensing of the true counterparty.

Instead, Counterclaim Plaintiff was induced to sign based on false impressions of legal accountability, regulatory compliance, and direct engagement with a publicly traded company with a supposedly excellent reputation, when in reality the contractual seller was a poorly disclosed, minimally staffed LLC with no assets, no online presence, and no clear liability path.

This fraud was not incidental—it was structural, deliberate, and baked into the Toll Brothers, Inc.'s operating model. As a result, Counterclaim Plaintiff has suffered damages and is entitled to relief as set forth below.

**Count 3. Civil Conspiracy**

*Against all Counterclaim Defendants*

Counterclaim Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Defendants engaged in a coordinated scheme involving multiple public and private entities, contractors, consultants, and insurers, to conceal material facts, circumvent consumer protections, misrepresent legal liability, and suppress regulatory enforcement across state lines. This conspiracy induced consumers, including the Plaintiff, to enter into property transactions under false pretenses, while denying access to recourse mechanisms intentionally obscured by interlocking layers of legal and administrative deceit.

75

**EXHIBIT 6 - PAGE 51**

Case No. 1:25-cv-02884-PAB-CYC   Document 17   filed 09/29/25   USDC Colorado
Case 8:25-cv-02134-VBF-DSR   Document 76-10   Filed 07/21/26   Page 19 of 34
Page ID #:10256

The conspiracy spans multiple domains—engineering, brokering, planning, permitting, inspecting, and insurance brokering—and involves both affirmative acts and knowing omissions. The pattern of behavior across parties demonstrates tacit or explicit agreement to further unlawful objectives under color of legality.

## A. Toll Brothers, Inc. and Related Entities

Toll Brothers, Inc., a publicly traded company, used a multilayered network of shell entities (e.g., Toll Bros., Inc., Toll Southwest LLC) to market, sell, and transfer homes while avoiding direct liability. These entities frequently misrepresented their licensing, failed to register as foreign entities in key jurisdictions, and misled Counterclaim Plaintiff into believing he was contracting with the parent company. (See ¶¶ 1-8, 27-35, 45, 47, 51-56, 119-120, 123-130, 152-161, 249.)

Toll Brothers' internal officers signed contradictory Statements of Authority across multiple counties and states, assigning signature power to long-tenured employees who were used as "paper officers" to obscure operational accountability. These officers regularly swapped formation states and jurisdictions to avoid regulatory exposure. (See ¶¶ 395-408.)

Toll Brothers' legal leadership—including Kenneth Gary and Kenneth Greenspan—designed or perpetuated this structure over decades. Despite one holding the position of General Counsel and the other one wielding nearly as much power, neither consistently appeared as such in public filings, suggesting deliberate detachment from direct liability. It suggests a legal department that has exploited state registration loopholes and professional licensure ambiguity to facilitate consumer fraud while maintaining plausible deniability. (See ¶¶ 414-438.)

## B. The City of Wheat Ridge, Gerald Dahl, Renee Meriaux, and Charles Abbott Associates

76

**EXHIBIT 6 - PAGE 52**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 18-10    Filed 07/21/26    Page 20 of 34
Page ID #:10257

The City of Wheat Ridge conspired with third-party municipal contractors, Charles Abbot Associates, Inc. ("CAA"), to retroactively validate or obscure unpermitted construction activity and building code violations. (See ¶¶ 64-70, 94-118, 204-214.) Chief Building Official Renee Meriaux and City Attorney Gerald Dahl each took affirmative steps to frustrate records requests and disclosure of code violations that could trigger consumer or legal remedies. (See ¶¶ 215-244 .)

CAA, the City's contracted permitting and inspection provider, issued permits and inspection approvals under false pretenses. (See ¶¶ 64-70, 94-118, 123-130, 278-285.) These defective approvals enabled Toll Brothers, Inc. and its contractors to offload an improperly constructed home to Counterclaim Plaintiff, with the City shielding them from inquiry.

Dahl's policies actively dissuaded further communication, citing dubious procedural justifications. (See ¶¶ 207-209, 234-244.) The City and CAA's approval of obvious code violations, contract falsities, and permitting irregularities demonstrates willful coordination with Toll Brothers, Inc. and its agents to suppress material evidence of fraud.

**C. Felten Group, Inc.**

Felten Group, Inc. ("Felten"), an Arizona Corporation, served as the engineer of record for the subject property and affixed its professional seal to structural documents that were later contradicted by field conditions—most notably, the discovery that an entire structural wall system was missing from the home as built. (See ¶¶ 57-62, 71-73, 82-84, 177.) This discrepancy raises significant questions about both Felten's design process and its professional oversight obligations under state engineering laws.

77

**EXHIBIT 6 - PAGE 53**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-10    Filed 07/21/26    Page 21 of 34
Page ID #:10258

When confronted with these issues, Felten officers David Sparks and Mark Matthews refused to provide the structural engineering plans, evading legitimate inquiries into how such a material discrepancy occurred. More troublingly, these individuals declined to identify which party it had contracted with, despite its role being central to the chain of accountability. This refusal to disclose its contractual counterparty—whether Toll Brothers Inc. or one of its many affiliated shell entities—suggests a deliberate effort to obstruct transparency and prevent discovery of who exercised operational control over engineering decisions. (See ¶¶ 177-184.)

Felten also failed to initiate any oversight or revision process when it became evident that a structural change order or revision plan was required—as would be standard practice when as-built conditions deviate so significantly from engineered drawings. (See ¶¶ 68, 86.) Its inaction in the face of such discrepancies implies either gross negligence or intentional complicity in a broader effort to paper over construction defects.

Felten's silence and inaction served not merely to obscure the truth, but to legitimize the defective conditions post hoc, by allowing its engineering seal to remain attached to structures it could not have reasonably reviewed or approved in their actual form. In this context, Felten's participation in the broader civil conspiracy is not passive but active—aiding in the laundering of liability and enabling the enforcement of flawed permitting and inspection regimes. By failing to disclose basic contractual facts, declining to provide engineering documentation, and remaining silent when engineering revisions were clearly mandated, Felten operated as a shield for builder misconduct rather than as an independent and professionally accountable engineer.

78

**EXHIBIT 6 - PAGE 54**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-7810    Filed 07/21/26    Page 22 of 34
Page ID #:10259

**D. Marsh & McLennan Companies, Inc. and Subsidiary Entities**

Marsh & McLennan Companies, Inc., along with its subsidiaries Marsh LLC and Marsh USA LLC (collectively, "Marsh"), played an instrumental role in facilitating the deception surrounding Toll Brothers, Inc's and subsidiaries' entity structure and liability practices. As the long-time insurance broker for Toll Brothers, Inc and its various subsidiaries, Marsh issued and distributed Certificates of Liability Insurance (COIs) that misrepresented the insured party, the insurable interest, and the very existence of certain entities involved in construction and development operations. (See ¶¶ 294-304.)

Most notably, Marsh repeatedly issued COIs that listed "Toll Brothers, Inc." as the insured entity in Colorado, despite the fact that Toll Brothers, Inc. was not registered to do business in the state. (See ¶¶ 297, 299, 300.) This practice persisted year after year, even though other subsidiaries such as Toll Southwest LLC were the actual signatories and counterparties on municipal agreements and recorded documents.

In some cases, the same policy number was reused across multiple distinct legal entities, creating the illusion that coverage applied universally, regardless of the actual corporate structure or licensing. Additionally, Marsh's COIs obtained always failed to disclose the "Producer" contact information required by industry and regulatory standards, obscuring the origin of the document and preventing proper verification of its authenticity or scope. (See ¶¶ 294-304.)

Marsh's persistent failure to accurately reflect the legal identity of the insured party was not an administrative oversight. It was part of a broader pattern of insurance documentation manipulation that allowed Toll Brothers, Inc. and subsidiaries to:

79

**EXHIBIT 6 - PAGE 55**

Case No. 1:25-cv-02884-PAB-CYC     Document 17     filed 09/29/25     USDC Colorado
Case 8:25-cv-02134-VBF-DSR     Document 130810     Filed 07/21/26     Page 23 of 34
Page ID #:10260

- Avoid municipal scrutiny;

- Pass permit and inspection hurdles under improper credentials;

- Represent to homeowners that a legitimate, parent-level entity stood behind construction obligations.

Despite the obvious discrepancies—ranging from nonexistent entities being listed as insureds, to missing producer fields, to boilerplate policy numbers recycled across companies—Marsh continued issuing and standing behind these documents without correction or withdrawal.

Their actions cannot be characterized as neutral third-party brokerage. Instead, Marsh acted as a knowledgeable enabler of the broader scheme, aware of the entity-switching, regulatory mismatches, and fictitious filings at play. Marsh's centrality to the insurance verification process made their complicity indispensable to the execution and concealment of Toll Brothers, Inc.'s misconduct across jurisdictions.

The Marsh-related entities—Marsh & McLennan Companies, Inc., Marsh LLC, and Marsh USA LLC—have operated as a unified, interdependent enterprise with no meaningful separation in management, function, or decision-making. Though nominally distinct legal entities, they share a single brand identity, common headquarters and regional offices, and IT operations, where they issued or enabled the issuance of materially misleading insurance certificates in connection with Toll Brothers' construction activities. (See ¶¶ 305-321.) Given the shared operations, branding, and knowing involvement in regulatory evasion, the corporate veil between Marsh & McLennan Companies, Inc., Marsh LLC, and Marsh USA LLC should be pierced, and all Marsh entities held jointly and severally liable for their role in the conspiracy to mislead regulators and consumers through deceptive insurance practices.

**EXHIBIT 6 - PAGE 56**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 130810    Filed 07/21/26    Page 24 of 34
Page ID #:10261

As such, Marsh is properly included as a co-conspirator in the civil conspiracy alleged herein. Without Marsh's ongoing assistance in laundering risk through misleading COIs, many of the downstream approvals and consumer transactions would not have been possible.

**E. The New Home Company, Inc. and Bert L. Howe & Associates, Inc.**

The New Home Company, Inc. ("TNHC") engaged in conduct that parallels Toll Brothers' operational model, using a multilayered subsidiary structure to confuse regulators and homebuyers about which legal entity bears responsibility for construction, warranties, and contractual representations. (See ¶¶ 505-514.) While marketing and communications uniformly brand the company as "New Home Co," contractual documents and regulatory filings shift liability onto entities such as TNHC Realty and Construction Inc. or The New Home Company Southern California LLC, often without disclosing this distinction to consumers. (See ¶¶ 353-356, 361.)

TNHC's refusal to identify which entity employed particular individuals—despite repeated, good-faith inquiries—mirrors Toll Brothers' tactic of shielding paper officers and rotating signatories across state-registered shell entities. (See ¶¶ 462-465.) Like Toll Brothers, Inc., TNHC deployed multiple cease-and-desist threats in response to these inquiries, weaponizing the legal process not to clarify but to further obscure corporate accountability. (See ¶¶ 364-374.)

Bert L. Howe & Associates, Inc. ("BHA") functions as an unlicensed inspection and consulting firm that has an arm's length relationship with TNHC via the law firm PHLK LLP. BHA acted in furtherance of a liability concealment strategy by providing a veneer of third-party credibility while in practice executing TNHC's interests and shielding it from direct construction defect liability. (See ¶¶ 203, 377.)

81

**EXHIBIT 6 - PAGE 57**

Case No. 1:25-cv-02884-PAB-CYC     Document 17     filed 09/29/25     USDC Colorado
Case 8:25-cv-02134-VBF-DSR     Document 18-7810     Filed 07/21/26     Page 25 of 34
Page ID #:10262

Critically, Toll Brothers, Inc., TNHC, and BHA appear to have coordinated efforts behind the scenes to suppress the Plaintiff's inquiries. Details about Counterclaim Plaintiff's situations with the latter two entities were later shared with Toll Brothers, Inc. and formed part of the pretext for Toll Brothers' trademark-based legal action. (See ¶¶ 361-362, 376-378.) This pattern reflects not independent corporate responses, but a coordinated industry pushback against an individual consumer exposing systemic corporate misconduct. The uniformity of tone, timing, and substance between the three companies' cease-and-desist communications and litigation narratives further underscores that these are not isolated actors, but rather entities operating from a shared playbook.

This alignment is no coincidence. Toll Brothers, Inc. and TNHC share a similar corporate DNA: rapid promotions of minimally experienced in-house counsel into General Counsel positions shortly after IPOs; the use of cease and desist letters and intimidation as a first-line defense mechanism; and systemic obfuscation of the identity and licensing status of subsidiaries. (See ¶¶ 203, 374, 422-425, 492-494, 505-514.) These shared characteristics suggest that their legal strategy is not merely parallel but potentially collaborative, coordinated either through shared outside counsel (perhaps via Melanie Woodfin of PHLK LLP), industry associations, or direct backchannel communication. (See ¶¶ 344, 365.)

Such alignment in behavior, legal posture, and information flow transcends coincidence and rises to the level of civil conspiracy, designed to insulate both parties from regulatory scrutiny, suppress consumer complaints, and discredit legitimate whistleblower efforts.

**F. Harm and Joint Liability**

82

**EXHIBIT 6 - PAGE 58**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-10    Filed 07/21/26    Page 26 of 34
Page ID #:10263

On July 21, 2025, Counterclaim Plaintiff timely submitted a Notice of Claim pursuant to C.R.S. § 24-10-109, properly identifying the City of Wheat Ridge and its agents as respondents and detailing the statutory violations, oversight failures, and municipal misconduct  (See

📄 Exhibit 200 Wheat Ridge CGIA Notice of Claim.pdf ). However, because the six-month statutory waiting period has not yet expired, Counterclaim Plaintiff respectfully requests that the Court stay or withhold judgment on any remedies governed by CGIA until the expiration of that period, at which point such claims may be amended or supplemented as necessary. Mr. Dahl notes receipt of the CGIA Notice of Claim in this letter. (See

📄 Exhibit 82 Wheat Ridge Cease Letter.pdf )

As a result, Counterclaim Plaintiff has suffered damages and is entitled to relief as set forth below.

## Count 6. Abuse of Process

*Against Toll Brothers, Inc., Toll Southwest LLC, TB Proprietary Corp., The New Home Company, Inc., and Bert L. Howe & Associates, Inc.*

Counterclaim Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Counterclaim Defendants misused legal process—including cease-and-desist threats, coordinated vendor communications, and the instant litigation—not to resolve genuine claims, but to intimidate Counterclaim Plaintiff and suppress legitimate consumer complaints. (See ¶¶ 203, 344, 361-362, 365, 374, 377, 514.)

Toll Brothers, Inc. initiated and directed a campaign of threats against Counterclaim Plaintiff after he raised concerns about entity irregularities and construction defects. (See ¶¶ 169-173,

89

**EXHIBIT 6 - PAGE 59**

Case No. 1:25-cv-02884-PAB-CYC     Document 17     filed 09/29/25     USDC Colorado
Case 8:25-cv-02134-VBF-DSR     Document 13-10     Filed 07/21/26     Page 27 of 34
Page ID #:10264

203.) Toll Southwest LLC, a subsidiary with no independent employees, was used as the nominal "seller" of the property and then invoked as Defendant despite lacking capacity to enforce the asserted marks. TB Proprietary Corp. was added as a plaintiff not to vindicate bona fide trademark rights, but to multiply pressure and intimidate Counterclaim Plaintiff into silence.

The New Home Company, Inc., itself a national builder, coordinated with Toll Brothers in this retaliatory campaign, sharing strategy and supporting cease-and-desist threats despite having no legitimate interest in the subject property or trademarks. Its vendor, Bert L. Howe & Associates, Inc. ("BHA"), further lent its reports and correspondence to the effort, repurposing its role as an inspector into a tool of intimidation rather than neutral evaluation. (See ¶¶ 351-378, 514)

Together, these Counterclaim Defendants sought to leverage the machinery of litigation to chill Counterclaim Plaintiff's exercise of his First Amendment right to petition regulatory authorities and speak publicly about construction and permitting defects. Their misuse of legal process diverted the judicial forum away from legitimate dispute resolution and into a vehicle for harassment and retaliation.

As a result, Counterclaim Plaintiff has suffered damages and is entitled to relief as set forth below.

**Count 7. Negligence**

*Against the City of Wheat Ridge, Renee Meriaux, and Charles Abbot Associates, Inc.*

Counterclaim Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

90

**EXHIBIT 6 - PAGE 60**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 13-10    Filed 07/21/26    Page 28 of 34
Page ID #:10265

legitimate safety and licensing concerns, singling him out for obstruction and deflection rather than fair treatment. (See ¶¶ 232, 238, 240.)

These actions were not the product of mere negligence but deliberate indifference, motivated by a desire to shield the City and its private collaborators from liability. As a direct and proximate result, Counterclaim Plaintiff has been deprived of property protections guaranteed by law, exposed to unsafe living conditions, and subjected to economic and reputational harm.

Counterclaim Defendant Charles Abbott Associates, Inc. is a private corporation acting under color of state law by virtue of its exclusive contractual delegation to perform building department services on behalf of the City of Wheat Ridge. CAA was instrumental in approving permits, inspections, and structural approvals that ultimately deprived Plaintiff of constitutionally protected rights under the Fourteenth Amendment, including the right to due process and equal protection. CAA's coordinated efforts with municipal actors to obscure permitting fraud and deny redress constitute joint action under 42 U.S.C. §1983. (See ¶¶ 66, 234-237.)

Counterclaim Plaintiff seeks judgment against the City of Wheat Ridge, Gerald Dahl, and Renee Meriaux under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights, and requests compensatory damages, punitive damages against the individual defendants, declaratory relief, and attorneys' fees under 42 U.S.C. § 1988.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Counterclaim Plaintiff respectfully requests that this Court enter judgment in his favor and against Counterclaim Defendants, and grant the following relief:

95

**EXHIBIT 6 - PAGE 61**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 130810    Filed 07/21/26    Page 29 of 34
Page ID #:10266

## 1. Declaratory Relief

That the Court, at the earliest practicable stage of these proceedings, enter a declaratory judgment under 28 U.S.C. § 2201 and C.R.S. § 13-51-101 et seq. clarifying whether the CP-1/C.R.S. § 12-10-201(6)(b) (2023) exemption under Colorado real estate licensing law applies to the transaction at issue. This determination is a threshold matter with direct consequences for the validity of Plaintiffs' claims and Defendant's counterclaims. Early resolution will narrow the scope of dispute, prevent unnecessary discovery disputes, and promote judicial economy.

## 2. Injunctive Relief

Issue appropriate injunctive orders restraining Counterclaim Defendants from further retaliation, unlawful restriction of speech or petitioning, or interference with Counterclaim Plaintiff's statutory and constitutional rights.

## 3. Rescission or, in the Alternative, Compensatory Damages

Rescission of the purchase agreement for the townhome, restoring Counterclaim Plaintiff to his pre-contract position, or, in the alternative, compensatory damages **in the amount of $380,792.37,** inclusive of calculated interest of 10% per year. (See 📄 Exhibit 201 Toll Brothers Damages - Total Damages.pdf )

## 4. Mitigation Expenses

Compensation for mitigation measures undertaken to address tenant harms arising from the defective Certificate of Occupancy and construction deficiencies, **in the amount of $51,980.98**,

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 18-10    Filed 07/21/26    Page 30 of 34
Page ID #:10267

inclusive of calculated interest of 10% per year. (See

📄 Exhibit 201 Toll Brothers Damages - Total Damages.pdf )

Order that the sum of **$51,980.98**, representing mitigation damages for half of tenant rent paid under a defective Certificate of Occupancy, be placed into escrow under the supervision of the Court, to be held for the benefit of impacted tenants and disbursed upon further order of the Court.

### 5. Statutory Damages

Counterclaim Plaintiff further seeks statutory damages under Colorado law. Pursuant to the Colorado Consumer Protection Act, CO Rev Stat § 6-1-113 (2024), each deceptive trade practice committed by Counterclaim Defendants gives rise to statutory damages of not less than $500 per violation, or treble damages "if it is established by clear and convincing evidence that such person engaged in bad faith conduct." Counterclaim Defendants and their co-conspirators engaged in repeated misrepresentations regarding the identity of the selling principal, the validity of entity registrations, and the use of shell entities in consumer transactions. These practices were deliberate, systemic, and calculated for many decades to induce reliance by homebuyers, including Counterclaim Plaintiff.

In addition, under CO Rev Stat § 12-10-202 (2023), "It is unlawful for any person, firm, partnership, limited liability company, association, or corporation to engage in the business or capacity of real estate broker in this state without first having obtained a license from the commission." Counterclaim Plaintiff therefore requests rescission of the purchase contract in the amount of **$380,792.37**, restitution of half of tenant rents wrongfully collected under a defective

97

**EXHIBIT 6 - PAGE 63**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-7810    Filed 07/21/26    Page 31 of 34
Page ID #:10268

Certificate of Occupancy in the amount of **$51,980.98**, and such further remedies as this Court deems just and proper. (See 📄 Exhibit 201 Toll Brothers Damages - Total Damages.pdf )

**6. Punitive Damages**

Counterclaim Plaintiff further requests an award of punitive damages pursuant to Colorado law and 42 U.S.C. § 1983. Under C.R.S. § 13-21-102, punitive (exemplary) damages are warranted when a defendant's conduct is willful, wanton, or carried out in reckless disregard of the rights of others. Likewise, punitive damages under § 1983 are available against individual officials where their actions were motivated by evil motive, intent, or deliberate indifference to constitutional rights.

The evidence demonstrates that Counterclaim Defendants did not merely make isolated errors; they engaged in a deliberate scheme of entity manipulation, misrepresentation, and concealment designed to obscure the true selling principal, evade licensing requirements, and suppress consumer complaints. Municipal actors further reinforced these practices through stonewalling, selective enforcement, and concealment of public records, amounting to willful disregard for constitutional protections of due process and equal protection.

Such conduct was not accidental—it was systematic, repeated across multiple transactions, and supported by coordinated actions among national corporations, municipal actors, and professional vendors. These coordinated acts were aimed not only at Counterclaim Plaintiff but also at silencing and intimidating other consumers who might question Plaintiffs' practices.

The degree of planning and concealment warrants an award of punitive damages sufficient to deter similar misconduct in the future and to punish Counterclaim Defendants for their willful

98

**EXHIBIT 6 - PAGE 64**

Case No. 1:25-cv-02884-PAB-CYC   Document 17   filed 09/29/25   USDC Colorado
Case 8:25-cv-02134-VBF-DSR   Document 16-8   Filed 07/21/26   Page 32 of 34
Page ID #:10269

violations of law and public trust. Counterclaim Plaintiff therefore seeks punitive damages in an amount to be determined at trial, consistent with statutory and constitutional standards, and proportionate to the gravity of Counterclaim Defendants' conduct.

## 7. Attorneys' Fees and Costs

Award reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988 and C.R.S. § 13-17-102, including expert witness fees, deposition costs, and related expenses.

## 8. Additional Legal or Equitable Relief

Grant such other and further relief—legal or equitable—as the Court deems just and proper, including declaratory relief and any additional orders necessary to prevent ongoing or future violations of Counterclaim Plaintiff's rights.

## VII. DEMAND FOR JURY TRIAL

Counterclaim Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

_____        September 29, 2025

Jeffrey Gu, Defendant and Counterclaim Plaintiff, Pro Se

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 14-10    Filed 07/21/26    Page 33 of 34
Page ID #:10270

**Notice of Electronic Filing**

Pursuant to Fed. R. Civ. P. 5(d) and D.C.COLO.LCivR 5.1, the Answer and Counterclaim in *Toll Brothers, Inc. et al v. Gu et al* was filed electronically on the Court's CM/ECF system on September 29, 2025. All referenced exhibits (Exhibits 1–201) are maintained on the electronic docket and are accessible to all parties of record. A complete copy of the filing, including exhibits, may be obtained through the Clerk's Office or by accessing the docket via PACER.

Exhibit 1 Gmail - Toll Brothers Inc Thank you for your interest in The Ridge at Ward Station.pdf

Exhibit 2 Colorado Ops.pdf

Exhibit 3 Consumer Journey.pdf

Exhibit 4 tollbrothers.com whois.pdf

Exhibit 5 DE SOS Toll Brothers, Inc..pdf

Exhibit 6 Gmail - Toll Brothers Inc Best and Finals offers now open for Building 15.pdf

Exhibit 7 Colorado Toll Brothers License.pdf

Exhibit 8 Gmail - License Expiration Date Toll Brothers.pdf

Exhibit 9 Public License Lookup - DRE CA.pdf

Exhibit 10 Gmail - Toll Brothers Inc Received Your Offers.pdf

Exhibit 11 Agreement of Sale.pdf

Exhibit 12 DE SOS Toll Southwest.pdf

Exhibit 13 CO Toll Southwest LLC.pdf

Exhibit 14 5131 Walls In Question.png

Exhibit 15 Acknowledgment by Architect of Bedroom Walls.pdf

Exhibit 16 DJT Design Admitting Contract was with Toll Brothers Inc.pdf

Exhibit 17 Gmail - Toll Bros Receipt.pdf

Exhibit 18 Toll Integrated Systems, Inc.png

Exhibit 19 Gmail - Building #15 framing update 1.pdf

**EXHIBIT 6 - PAGE 66**

Case No. 1:25-cv-02884-PAB-CYC    Document 17    filed 09/29/25    USDC Colorado
Case 8:25-cv-02134-VBF-DSR    Document 16-10    Filed 07/21/26    Page 34 of 34
Page ID #:10271

Exhibit 112 AZ MARSH USA LLC.pdf

Exhibit 113 Marsh Homepage.png

Exhibit 114 MarshMcLennan Homepage.png

Exhibit 115 MM Trademark.pdf

Exhibit 116 marsh.com.pdf

Exhibit 117 marshmclennan.com.pdf

Exhibit 118 30 South 17th Street.png

Exhibit 119 1717 Arch Street.png

Exhibit 120 Toll Brothers Consumer Affairs.pdf

Exhibit 121 Toll Brothers Consumer Affairs Frequency.png

Exhibit 122 Medium North Carolina.pdf

Exhibit 123 Toll Brothers Reddit 1.pdf

Exhibit 124 Toll Brothers Reddit 2.pdf

Exhibit 125 Toll Brothers Northside Piers.pdf

Exhibit 126 129 Oakstone Grant Deed.pdf

Exhibit 127 Cease and Desist 1.pdf

Exhibit 128 20-21_Advertising_on_Vehicles.pdf

Exhibit 129 DRE Complaint Number.png

Exhibit 130 Cease and Desist 2.pdf

Exhibit 131 Cease and Desist 3.pdf

Exhibit 132 Cease and Desist 4.pdf

Exhibit 133 BHA Cease and Desist.pdf

Exhibit 134 LVP Warranty Text.pdf

105
**EXHIBIT 6 - PAGE 67**