**RUTAN**
RUTAN & TUCKER, LLP

Jess Sanders
E-mail: jsanders@rutan.com

September 8, 2025

**VIA E-MAIL**

Jeffrey Gu
jeffwgu@gmail.com
jeffreygu@proffer.info

   Re:  Public Records Act Request Received August 16, 2025

Dear Mr. Gu,

  As you know, this office serves in the capacity of City Attorney for the City of Irvine ("City"). This letter is being sent in response to the above-referenced request under the California Public Records Act, Gov. Code, § 7920.000 et seq. (CPRA), which seeks the following:

> List of current and past city attorneys, from 2015 until now. Please list their name, the dates of their tenure, and their law firm at the time (if applicable).

  On August 25, 2025, the City contacted you stating that a 14-day extension was required to respond, and that the time for response to your request would be extended to September 8, 2025. (Gov. Code, § 7922.535, subds. (b) & (c).)

  All non-exempt disclosable records that the City deems to fall within the scope of your request are attached to this correspondence. This completes the City's review and processing of the above-indicated request.

    Very truly yours,

    RUTAN & TUCKER, LLP

    *Jess Sanders*
    Jess Sanders

JS:js
cc:  City Clerk (via e-mail only)

Rutan & Tucker, LLP | 18575 Jamboree Road, 9th Floor
Irvine, CA 92612 | 714-641-5100 | Fax 714-546-9035
Orange County | Palo Alto | San Francisco | www.rutan.com

2905/048170-0301
22751813.1 a09/08/25

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: **9080A**

CONTRACT TYPE: **AMENDMENT**

DEPARTMENT: **CITY MANAGER**
Department initiating contract

CONTRACT DATE: **06/15/2016**
As stated in the Terms sections of contract

EXPIRATION DATE:
As stated in the Terms sections of contract

MEETING DATE: **06/14/2016**
Date of meeting where contract was approved

ITEM NUMBER: **5.2**
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of contract

CONTRACT NAME: **RUTAN & TUCKER, LLP**
As stated in first paragraph of contract

CONTRACT SUBJECT: **AMENDMENT TO MODIFY PART V**
As stated in Description of Services section of contract **BUDGET**

ORIGINAL

# AMENDMENT NUMBER 1
## TO "AGREEMENT FOR CONTRACT SERVICES"

THIS AMENDMENT NUMBER 1 TO AGREEMENT FOR CONTRACT SERVICES (the "First Amendment") is made and entered into as of June 15, 2016 by and between the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency, ("Successor Agency") and Rutan & Tucker, LLP, a Limited Liability Partnership ("Contractor"), for the purpose of amending the written "Agreement for Contract Services" entered into between Successor Agency and Contractor as of February 10, 2016, City of Irvine contract number 9080 (the "Agreement").

1. "PART V, BUDGET" is modified by adding EXHIBIT I, attached hereto, increasing the hourly rates. The increased rates are effective July 1, 2016.

2. Except as set forth in this First Amendment, all terms, conditions and provisions of the Agreement are unchanged and remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this First Amendment to the Agreement to be executed by their respective duly authorized agents as of the date first set forth above.

**CITY OF IRVINE AS SUCCESSOR AGENCY TO THE DISSOLVED IRVINE REDEVELOPMENT AGENCY**

By: _____

Its:   Chair, Successor Agency

**RUTAN & TUCKER, LLP**

By: _____

Its:   Partner

Attest:
By: _____
Molly McLaughlin
City Clerk

APPROVED AS TO FORM:
Woodruff, Spradlin & Smart

_____
Daniel K. Spradlin

1

9080A

# EXHIBIT I

## COST SUMMARY – SUCCESSOR AGENCY

Pricing shall be as set forth below.

| | |
|---|---|
| General Counsel; Partner/Associate; and Special Services | $245 per hour |
| Law Clerk | $140 per hour |
| Paralegal | $110 per hour |
| Bond Counsel | See Below |

Contractor's minimum unit of time for billing is one-tenth of an hour (0.1).

"Special Services" includes successor agency matters, litigation and contested administrative matters.  Litigation includes, in addition to formal litigation, contested administrative matters before other governmental agencies.

In-service training costs are charged at the normal hourly rates.

On bond counsel matters, if contingent, one percent (1%) of the first $1 million executed and delivered; one-half percent (0.5%) of the next $4 million executed and delivered; one-quarter percent (0.25%) of the next $10 million executed and delivered; one-eighth percent (0.125%) of the next $5 million executed and delivered; and one-tenth percent (0.1%) of any amount over $20 million executed and delivered; all subject to a minimum fee of $25,000.  Payment of fees is entirely contingent upon the successful execution and delivery of the bonds or notes to be payable on or after delivery except for out-of-pocket costs, which are payable in any event.  If non-contingent, $300 per hour, together with out-of-pocket expenses.  In the event that multiple series of bonds or notes are issued, the foregoing fee structure would be applied to each issue, subject to the $25,000 minimum fee per issue.

On projects for which the Successor Agency is reimbursed by a third party or applicant, Contractor may charge its full design rate for the attorney performing the work.

Payment for services will be made monthly on invoices deemed satisfactory to the Successor Agency, with payment terms of net 45 days upon receipt of invoice. Contractor shall submit invoices within fifteen (15) days from the end of each month in which services have been provided. Contractor shall provide invoices with sufficient detail to ensure compliance to pricing as set forth in this Agreement. The information required may include: date(s) of work, hours of work, hourly rate(s), and material costs.

Contractors shall provide invoicing in the format requested by Successor Agency.

Payment by Successor Agency under this Agreement shall not be deemed as a waiver of the Successor Agency's right to claim at a later point that such payment was not due under the terms of this Agreement.

**No work shall be performed in connection with this Agreement until the receipt of a signed City of Irvine Purchase Order.**

Pricing shall remain firm for the remaining two (2) year Agreement term.

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER:  **9079B**

CONTRACT TYPE:  **AMENDMENT**

DEPARTMENT:  **CITY MANAGER**
Department initiating contract

CONTRACT DATE:  **01/24/2018**
As stated in the Terms sections of contract

EXPIRATION DATE:
As stated in the Terms sections of contract

MEETING DATE:  **01/23/2018**
Date of meeting where contract was approved

ITEM NUMBER:  **1.4**
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of contract

CONTRACT NAME:  **RUTAN & TUCKER, LLP**
As stated in first paragraph of contract

CONTRACT SUBJECT:  **AMENDMENT TO MODIFY PART I**
As stated in Description of Services section of contract  **TERM OF THE AGREEMENT**

**ORIGINAL**

## AMENDMENT NUMBER 2
## TO "AGREEMENT FOR CONTRACT SERVICES"

THIS AMENDMENT NUMBER 2 TO AGREEMENT FOR CONTRACT SERVICES (the "First Amendment") is made and entered into as of January 24, 2018 by and between the City of Irvine, a municipal corporation ("City") and Rutan & Tucker, LLP, a Limited Liability Partnership ("Contractor"), for the purpose of amending the written "Agreement for Contract Services" entered into between City and Contractor as of February 10, 2016, City of Irvine contract number 9079 (the "Agreement").

1. "PART I (C), Term" is modified in its entirety to state in full as follows:

   This Agreement shall continue on a month to month basis until otherwise terminated in accordance with Part II (General Provisions), Section 3.9 (Termination by City) or Section 3.10 (Right to Stop Work; Termination by Contractor).

2. Except as set forth in this Second Amendment, all terms, conditions and provisions of the Agreement are unchanged and remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Second Amendment to the Agreement to be executed by their respective duly authorized agents as of the date first set forth above.

**CITY OF IRVINE**

By: _____
    Sean Joyce
Its:   City Manager

By: _____
    Donald P. Wagner
Its:   Mayor

Attest:
By: _____
    Molly McLaughlin
    City Clerk

**RUTAN & TUCKER, LLP**

By: _____
Its:   Partner

APPROVED AS TO FORM:
Woodruff, Spradlin & Smart

_____
Daniel K. Spradlin

## ATTACHMENT 1

9079 B

# CONTRACTS
# SCAN SHEET

**CONTRACT NUMBER:** 9080B

**CONTRACT TYPE:** AMENDMENT

**DEPARTMENT:** CITY MANAGER
Department initiating contract

**CONTRACT DATE:** 01/24/2018
As stated in the Terms sections of contract

**EXPIRATION DATE:**
As stated in the Terms sections of contract

**MEETING DATE:** 01/23/2018
Date of meeting where contract was approved

**ITEM NUMBER:** 2.2
Item number of meeting where contract was approved

**CONTRACT AMOUNT:**
As stated in Budget section of contract

**CONTRACT NAME:** RUTAN & TUCKER, LLP
As stated in first paragraph of contract

**CONTRACT SUBJECT:** AMENDMENT TO MODIFY PART I
As stated in Description of Services section of contract    TERM OF THE AGREEMENT

ORIGINAL

# AMENDMENT NUMBER 2
## TO "AGREEMENT FOR CONTRACT SERVICES"

THIS AMENDMENT NUMBER 2 TO AGREEMENT FOR CONTRACT SERVICES (the "Second Amendment") is made and entered into as of January 24, 2018 by and between the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency ("Successor Agency") and Rutan & Tucker, LLP, a Limited Liability Partnership ("Contractor"), for the purpose of amending the written "Agreement for Contract Services" entered into between Successor Agency and Contractor as of February 10, 2016, City of Irvine contract number 9080 (the "Agreement").

1.  "PART I (C), Term" is modified in its entirety to state in full as follows:

    This Agreement shall continue on a month to month basis until otherwise terminated in accordance with Part II (General Provisions), Section 3.9 (Termination by City) or Section 3.10 (Right to Stop Work; Termination by Contractor).

2.  Except as set forth in this Second Amendment, all terms, conditions and provisions of the Agreement are unchanged and remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Second Amendment to the Agreement to be executed by their respective duly authorized agents as of the date first set forth above.

**CITY OF IRVINE**

By: _____

Its: _____Chair, Successor Agency_____

**RUTAN & TUCKER, LLP**

By: _____

Its: _____Partner_____

Attest:
By: _____
    Molly McLaughlin
    City Clerk

APPROVED AS TO FORM:
Woodruff, Spradlin & Smart

_____
Daniel K. Spradlin

## ATTACHMENT 1

9080 B

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: **8101A**

CONTRACT TYPE: **AMENDMENT**

DEPARTMENT:
Department initiating contract
**CITY MANAGER**

CONTRACT DATE:
As stated in Terms section of Contract
**08/16/2014**

EXPIRATION DATE:
As stated in Terms section of Contract
**08/15/2015**

MEETING DATE:
Date of meeting where contract was approved

ITEM NUMBER:
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of Contract

CONTRACT NAME:
As stated in 1st paragraph of contract
**RUTAN & TUCKER, LLP**

CONTRACT SUBJECT:
As stated in Description of Services section of contract
**AMENDMENT TO EXTEND TERM OF AGREEMENT**

ORIGINAL

# AMENDMENT NO. 1 TO AGREEMENT FOR CONTRACT SERVICES

THIS AMENDMENT NUMBER 1 TO AGREEMENT FOR CONTRACT SERVICES (the "First Amendment") is made and entered into with the effective date of August 16, 2014 by and between the SUCCESSOR AGENCY, a municipal corporation ("AGENCY") and Rutan & Tucker, LLP a Limited Liability Partnership ("Contractor") for the purpose of amending the written agreement entered into between City and Contractor on or about August 15, 2013 (the "Agreement").

## RECITALS

A.    On or about August 13, 2013, the Successor Agency and Contractor entered into that certain Agreement for Contract Services ("General Counsel Services Contract") which is attached hereto and incorporated by reference as Attachment 2.

B.    The City Attorney Contract had an initial duration of one year, but the City reserved the right under Fundamental Term "C" to "extend the Agreement for up to four (4) addition (1) year periods.

C.    On July 8, 2014, the Board of Directors of the Successor Agency directed that the General Counsel Services Contract be extended for an additional one year, pursuant to its reserved rights under Fundamental Term "C."

## AMENDMENT

**NOW, THEREFORE,** in consideration of the mutual promises and covenants hereinafter set forth (and previously set forth in the Agreement), the parties hereto agree as follows:

1.    Amendment to Agreement Term.  The term of the Agreement is hereby extended to and shall terminate on August 15, 2015, subject to the Agency's reserved rights under Fundamental Term "C" to issue further extensions.

2.    Except as set forth in this First Amendment, all terms, conditions and provisions of the Agreement are unchanged and remain in full force and effect.

**[END OF AMENDMENT - SIGNATURES ON FOLLOWING PAGE]**

1

8101A

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the date first set forth above.

**CITY OF IRVINE**                                          **CONTRACTOR**

By: _____                    By: _____

Its:     Chair, Successor Agency                    Its:   Partner


By: _____                    By: _____

Its: _____                    Its: _____

Attest:

By: _____

Molly McLaughlin
City Clerk of the
City Of Irvine *and Secretary*
*to the Successor Agency*

**Contractor Information**
**Address for Notices and Payments:**

611 Anton Boulevard
Suite 1400
Costa Mesa, CA 92626-1931

**Attn:** Todd O. Litfin
**Telephone:** 714-641-5100
**FAX:** 714-546-9035
**Email:** tlitfin@rutan.com

2

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: **8031A**

CONTRACT TYPE: **AMENDMENT**

DEPARTMENT:
Department initiating contract
**CITY MANAGER**

CONTRACT DATE:
As stated in Terms section of Contract
**08/16/2014**

EXPIRATION DATE:
As stated in Terms section of Contract
**08/15/2015**

MEETING DATE:
Date of meeting where contract was approved

ITEM NUMBER:
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of Contract

CONTRACT NAME:
As stated in 1st paragraph of contract
**RUTAN & TUCKER, LLP**

CONTRACT SUBJECT:
As stated in Description of Services section of contract
**AMENDMENT TO EXTEND TERM OF CONTRACT**

ORIGINAL

# AMENDMENT NO. 1 TO AGREEMENT FOR CONTRACT SERVICES

THIS AMENDMENT NUMBER 1 TO AGREEMENT FOR CONTRACT SERVICES (the "First Amendment") is made and entered into with the effective date of August 16, 2014 by and between the CITY OF IRVINE, a municipal corporation ("City") and Rutan & Tucker, LLP a Limited Liability Partnership ("Contractor") for the purpose of amending the written agreement entered into between City and Contractor on or about August 15, 2013 (the "Agreement").

## RECITALS

A.    On or about August 13, 2013, IRVINE and Contractor entered into that certain Agreement for Contract Services ("City Attorney Contract") which is attached hereto and incorporated by reference as Attachment 2.

B.    The City Attorney Contract had an initial duration of one year, but the City reserved the right under Fundamental Term "C" to "extend the Agreement for up to four (4) addition (1) year periods.

C.    On July 8, 2014, the City Council of the City of Irvine ("City Council") directed that the City Attorney Contract be extended for an additional one year, pursuant to its reserved rights under Fundamental Term "C."

## AMENDMENT

**NOW, THEREFORE,** in consideration of the mutual promises and covenants hereinafter set forth (and previously set forth in the Agreement), the parties hereto agree as follows:

1.    Amendment to Agreement Term.  The term of the Agreement is hereby extended to and shall terminate on August 15, 2015, subject to the City Council's reserved rights under Fundamental Term "C" to issue further extensions.

2.    Except as set forth in this First Amendment, all terms, conditions and provisions of the Agreement are unchanged and remain in full force and effect.

**[END OF AMENDMENT - SIGNATURES ON FOLLOWING PAGE]**

1

8031A

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the date first set forth above.

**CITY OF IRVINE**                                                    **CONTRACTOR**

By: _____                       By: _____

Its:    City Manager                                              Its:    Partner

By: _____                       By: _____

Its:    Mayor                                                         Its: _____

Attest:

By: _____

Molly McLaughlin
City Clerk of the
City Of Irvine

**Contractor Information**
**Address for Notices and Payments:**

611 Anton Boulevard
Suite 1400
Costa Mesa, CA 92626-1931

**Attn:** Todd O. Litfin
**Telephone:** 714-641-5100
**FAX:** 714-546-9035
**Email:** tlitfin@rutan.com

2

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: 9080

CONTRACT TYPE: SERVICES

DEPARTMENT: CITY MANAGER
Department initiating contract

CONTRACT DATE: 02/10/2016
As stated in the Terms sections of contract

EXPIRATION DATE: 02/15/2018
As stated in the Terms sections of contract

MEETING DATE: 02/09/2016
Date of meeting where contract was approved

ITEM NUMBER: 3.3
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of contract

CONTRACT NAME: RUTAN & TUCKER, LLP
As stated in first paragraph of contract

CONTRACT SUBJECT: SUCCESSOR AGENCY LEGAL
As stated in Description of Services section of contract    SERVICES

ORIGINAL

# AGREEMENT FOR SUCCESSOR AGENCY LEGAL SERVICES

THIS AGREEMENT FOR SUCCESSOR AGENCY LEGAL SERVICES (the "Agreement") is made and entered into as of February 10, 2016, by and between the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency ("Successor Agency"), and Rutan & Tucker, LLP, a Limited Liability Partnership ("Contractor"). (The term Contractor includes professionals performing in a consulting capacity.)

## PART I

## FUNDAMENTAL TERMS

**A.** **Location of Project:** The Successor Agency location(s) as set forth in PART IV, Scope of Services, included herein.

**B.** **Description of Services/Goods to be Provided:** Legal Services in accordance with PART IV, Scope of Services, included herein (reference RFP 13-2938).

**C.** **Term:** Unless terminated earlier as set forth in this Agreement, the services shall commence on February 16, 2016 ("Commencement Date") and shall continue through February 15, 2018.

**D.** **Party Representatives:**

D.1. The Successor Agency designates the following person/officer to act on Successor Agency's behalf: Sean Joyce, City Manager, email: sjoyce@cityofirvine.org

D.2. The Contractor designates the following person to act on Contractor's behalf: Jeffrey T. Melching, email: jmelching@rutan.com

**E.** **Notices:** Contractor shall deliver all notices and other writings required to be delivered under this Agreement to Successor Agency at the address set forth in Part II ("General Provisions"). The Successor Agency shall deliver all notices and other writings required to be delivered to Contractor at the address set forth following Contractor's signature below.

**F.** **Attachments:** This Agreement incorporates by reference the following Attachments to this Agreement:

|      |           |                    |
|------|-----------|--------------------|
| F.1. | Part I:   | Fundamental Terms  |
| F.2. | Part II:  | General Provisions |
| F.3. | Part III: | Special Provisions |
| F.4. | Part IV:  | Scope of Services  |
| F.5. | Part V:   | Budget             |

**G.** **Integration:** This Agreement represents the entire understanding of Successor Agency and Contractor as to those matters contained herein. No prior oral or written understanding shall

1

9080

be of any force or effect with regard to those matters covered by this Agreement. This Agreement supersedes and cancels any and all previous negotiations, arrangements, agreements, and understandings, if any, between the parties, and none shall be used to interpret this Agreement.

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the date first set forth above.

**CITY OF IRVINE AS SUCCESSOR AGENCY TO THE DISSOLVED IRVINE REDEVELOPMENT AGENCY**

**RUTAN & TUCKER, LLP**

By: _____

By: _____

Its:    Chair, Successor Agency

Its:    Partner

By: _____

By: _____

Its: _____

Its: _____

Attest:

By: _____

Molly McLaughlin
Secretary, Successor Agency

APPROVED AS TO FORM:
Woodruff, Spradlin & Smart

_____

Daniel K. Spradlin

**Contractor Information**
**Address for Notices and Payments:**
611 Anton Boulevard
Suite 1400
Costa Mesa, CA  92626-1931

**Attn: Jeff Melching**
**Telephone: (714) 641-5100**
**FAX: (714) 546-9035**
**Email: jmelching@rutan.com**

2

PART II

GENERAL PROVISIONS

SECTION ONE: <u>SERVICES OF CONTRACTOR</u>

      **1.1**    **Scope of Services.**  In compliance with all terms and conditions of this Agreement, Contractor shall provide the goods and/or services shown on Part IV hereto ("Scope of Services"), which may be referred to herein as the "services" or the "work."  If this Agreement is for the provision of goods, supplies, equipment or personal property, the terms "services" and "work" shall include the provision (and, if designated in the Scope of Services, the installation) of such goods, supplies, equipment or personal property.

      **1.2**    **Changes and Additions to Scope of Services**.  Successor Agency shall have the right at any time during the performance of the services, without invalidating this Agreement, to order extra work beyond that specified in the Scope of Services or make changes by altering, adding to, or deducting from said work.  No such work shall be undertaken unless a written order is first given by Successor Agency to Contractor, incorporating therein any adjustment in (i) the Budget, and/or (ii) the time to perform this Agreement, which adjustments are subject to the written approval of the Contractor.  Successor Agency approval and/or payment for work claimed by Contractor as changed or additional shall not act to prevent Successor Agency at any time to claim such work is covered by the Scope of Work and should be performed by Contractor without additional consideration due.  It is expressly understood by Contractor that the provisions of this Section 1.2 shall not apply to services specifically set forth in the Scope of Services or reasonably contemplated therein.  Contractor hereby acknowledges that it accepts the risk that the services to be provided pursuant to the Scope of Services may be more costly or time consuming than Contractor anticipates and that Contractor shall not be entitled to additional compensation therefor.

      **1.3**    **Standard of Performance.**  Contractor agrees that all services shall be performed in a competent, professional, and satisfactory manner in accordance with the standards prevalent in the industry, and that all goods, materials, equipment or personal property included within the services herein shall be of good quality, fit for the purpose intended.

      **1.4**    **Instructions from Successor Agency**.  In the performance of this Agreement, Contractor shall report to and receive instructions from the Successor Agency's Representative designated in Paragraph D.1 of Part I ("Fundamental Terms") of this Agreement.  Tasks or services other than those specifically described in the Scope of Services shall not be performed without the prior written approval of the Successor Agency's Representative.

      **1.5**    **Familiarity with Work.**  By executing this Agreement, Contractor warrants that Contractor (i) has thoroughly investigated and considered the scope of services to be performed, (ii) has carefully considered how the services should be performed, and (iii) fully understands the facilities, difficulties, and restrictions attending performance of the services under the Agreement.  If the services involve work upon any site, Contractor warrants that Contractor has or will investigate the site and is or will be fully acquainted with the conditions there existing, prior to commencement of services hereunder.  Should the Contractor discover any conditions, including any latent or unknown conditions, which will materially affect the performance of the services hereunder, Contractor shall immediately inform the Successor Agency of such fact in writing and shall not proceed except at Contractor's risk until written instructions are received from the Successor Agency's Representative.

3

### 1.6    Identity of Persons Performing Work.

(A)    Contractor represents that it employs or will employ at its own expense all personnel required for the satisfactory performance of any and all tasks and services required hereunder. Any personnel performing the services under this Agreement on behalf of Contractor shall at all times be under Contractor's exclusive direction and control. Contractor shall pay all wages, salaries, and other amounts due such personnel in connection with their performance of services under this Agreement and as required by law.

(B)    Contractor represents that the tasks and services required hereunder will be performed by Contractor or under its direct supervision, and that all personnel engaged in such work shall be fully qualified and shall be authorized and permitted under applicable State and local law to perform such tasks and services. Contractor will exclusively determine the means, methods and details of performing the services subject to the requirements of this Agreement.

(C)    This Agreement contemplates the personal services of Contractor and Contractor's employees, and it is recognized by the parties hereto that a substantial inducement to Successor Agency for entering into this Agreement was, and is, the professional reputation and competence of Contractor. Neither this Agreement nor any interest therein may be assigned by Contractor, except upon written consent of Successor Agency.

### 1.7    Prohibition Against Subcontracting or Assignment.    Contractor shall not contract with any other entity to perform in whole or in part the services required hereunder without the express written approval of Successor Agency. In addition, neither the Agreement nor any interest herein may be transferred, assigned, conveyed, hypothecated, or encumbered voluntarily or by operation of law, whether for the benefit of creditors or otherwise, without the prior written approval of Successor Agency. In the event of any unapproved transfer, including any bankruptcy proceeding, Successor Agency may void the Agreement at Successor Agency's option in its sole and absolute discretion. No approved transfer shall release any surety of Contractor of any liability hereunder without the express written consent of Successor Agency.

## SECTION TWO:    INSURANCE AND INDEMNIFICATION

### 2.1    Insurance.    Without limiting Contractor's indemnification obligations, Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided below, against all claims for injuries against persons or damages to property which may arise from or in connection with the performance of the work hereunder by Contractor, its agents, representatives, employees, and/or subcontractors. In the event that Contractor subcontracts any portion of the work in compliance with Section 1.8 of this Agreement, the contract between the Contractor and such subcontractor shall require the subcontractor to maintain the same policies of insurance that the contractor is required to maintain pursuant to this Section 2.1.

#### 2.1.1    Insurance Coverage Required.    The policies and amounts of insurance required hereunder shall be as follows:

**A. Comprehensive General Liability** Insurance which affords coverage at least as broad as Insurance Services Office "occurrence" form CG 00 01 including completed operations and contractual liability, with limits of liability of not less than $1,000,000 per occurrence and $2,000,000 annual aggregate for liability arising out of Contractor's

4

performance of this Agreement. The limits shall be provided by either a single primary policy or combination of policies. If limits are provided with excess and/or umbrella coverage the limits combined with the primary will equal the minimum limits set forth above. If written with an aggregate, the aggregate shall be double the each occurrence limit. Such insurance shall be endorsed to:

> (1) Name the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency and its employees, representatives, officers and agents (collectively hereinafter "Successor Agency and Successor Agency Personnel") as additional insured for claims arising out of Contractor's performance of this Agreement.

> (2) Provide that the insurance is primary and non-contributing with any other valid and collectible insurance or self-insurance available to Successor Agency.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement.*

**B. Automobile Liability Insurance** with a limit of liability of not less than $1,000,000 each occurrence and $1,000,000 annual aggregate. The limits shall be provided by either a single primary policy or combination of policies. If limits are provided with excess and/or umbrella coverage the limits combined with the primary will equal the minimum limits set above. Such insurance shall include coverage for all "owned," "hired" and "non-owned" vehicles, or coverage for "any auto." Such insurance shall be endorsed to:

> (1) Name the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency and its employees, representatives, officers and agents as additional insured for claims arising out of Contractor's performance of this Agreement.

> (2) Provide that the insurance is primary and non-contributing with any other valid and collectible insurance or self-insurance available to Successor Agency.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement.*

**C. Workers' Compensation Insurance** in accordance with the Labor Code of California and covering all employees of the Contractor providing any service in the performance of this agreement. Such insurance shall be endorsed to:

> (1)   Waive the insurer's right of Subrogation against the Successor Agency and Successor Agency Personnel.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement unless your insurance carrier is the State of California Insurance Fund (SCIF) and the endorsement numbers 2570 and 2065 are referenced on the certificate of insurance.*

<u>**Contractor's completion of the form attached hereto as Exhibit 1 shall be a condition precedent to Contractor's rights under this Agreement.**</u>  Should

Contractor certify, pursuant to Exhibit 1, that, in the performance of the work under this Agreement, it shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, Contractor shall nonetheless maintain responsibility for requiring that any subcontractors performing work under this Agreement have and maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the work performed under this Agreement.

**D. Professional Liability Insurance** with minimum annual aggregate limits of $10,000,000. Covered professional services shall include all work performed under this Agreement and delete any exclusion that may potentially affect the work to be performed; Subcontractors and consultants to Contractor may also satisfy the insurance coverage requirements of this Agreement if they provide minimum limits of $3,000,000 each claim.

**E. Evidence of Insurance**: Contractor shall provide to Successor Agency a Certificate(s) of Insurance evidencing such coverage together with copies of the required policy endorsements no later than five (5) business days prior to commencement of service and at least fifteen (15) business days prior to the expiration of any policy. Coverage shall not be suspended, voided, cancelled, reduced in coverage or in limits, non-renewed, or materially changed for any reason, without thirty (30) days prior written notice thereof given by the insurer to Successor Agency by U.S. mail, or by personal delivery, except for nonpayment of premiums, in which case ten (10) days prior notice shall be provided.

Signed insurance certificates and endorsements must be **sent via email** from Contractor's insurance broker/agent to purchasing@cityofirvine.org

The Successor Agency project title or description MUST be included in the "Description of Operations" box on the certificate.

**Certificate Holder:**
City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency
c/o: City of Irvine
PO Box 19575
Irvine, CA 92623-9575

**F. Endorsements:** A statement on an insurance certificate will not be accepted in lieu of the actual endorsement. Insurance policies shall not be in compliance if they include any limiting provision or endorsement that has not been submitted to the Successor Agency for approval.

Additional Insured Endorsements shall not:

1. Be limited to "Ongoing Operations"
2. Exclude "Contractual Liability"
3. Restrict coverage to the "Sole" liability of Contractor
4. Contain any other exclusion contrary to the Agreement.

**G. Any Deductible in Excess of $50,000 and/or Self-Insured Retentions** must be approved in writing by the Successor Agency.

6

**H. Acceptability of Insurers**. Each policy shall be from a company with current A.M. Best's rating of A VII or higher and authorized to do business in the State of California, or otherwise allowed to place insurance through surplus lines brokers under applicable provisions of the California Insurance Code or any federal law. Any other rating must be approved in writing by the Successor Agency.

**I. Insurance of Subcontractors.** Contractor shall be responsible for causing Subcontractors to maintain the same types and limits of coverage in compliance with this Agreement, including naming the Successor Agency as an additional insured to the Subcontractor's policies.

**2.2    Defense and Indemnification**. Contractor agrees to defend and indemnify Successor Agency and its officers, agents and employees against, and to hold and save them harmless from, any and all actions, claims, damages to persons or property, penalties, obligations, or liabilities that may be asserted or claimed by any person, firm, entity, corporation, political subdivision or other organization arising out of the willful or negligent act, errors or omissions of Contractor, its agents, employees, or subcontractors, in performance of services under this Agreement, excepting claims of professional negligence or malpractice. Nothing herein shall be deemed to affect or waive Successor Agency's rights to make or pursue claims of professional negligence or malpractice against Contractor.

**SECTION THREE:    LEGAL RELATIONS AND RESPONSIBILITIES**

**3.1    Compliance with Laws**. Contractor shall keep itself fully informed of all existing and future state and federal laws and all county and city ordinances and regulations which in any manner affect those employed by it or in any way affect the performance of services pursuant to this Agreement. Contractor shall at all times observe and comply with all such laws, ordinances, and regulations and shall be responsible for the compliance of all work and services performed by or on behalf of Contractor. When applicable, Contractor shall not pay less than the prevailing wage, which rate is determined by the Director of Industrial Relations of the State of California.

**3.2    Licenses, Permits, Fees and Assessments**. Contractor shall obtain at its sole cost and expense all licenses, permits, and approvals that may be required by law for the performance of the services required by this Agreement. Contractor shall have the sole obligation to pay any fees, assessments, and taxes, plus applicable penalties and interest, which may be imposed by law and arise from or are necessary for Contractor's performance of the services required by this Agreement, and shall indemnify, defend, and hold harmless Successor Agency against any such fees, assessments, taxes, penalties, or interest levied, assessed, or imposed against Successor Agency thereunder.

**3.3    Covenant against Discrimination**. Contractor covenants for itself, its heirs, executors, assigns, and all persons claiming under or through it, that there shall be no discrimination against any person on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, in the performance of this Agreement. Contractor further covenants and agrees to comply with the terms of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101 et seq.) as the same may be amended from time to time.

**3.4** **Independent Contractor.** Contractor shall perform all services required herein as an independent contractor of Successor Agency and shall remain at all times as to Successor Agency a wholly independent contractor. Successor Agency shall not in any way or for any purpose become or be deemed to be a partner of Contractor in its business or otherwise, or a joint venturer, or a member of any joint enterprise with Contractor. Contractor shall not at any time or in any manner represent that it or any of its agents or employees are agents or employees of Successor Agency. Neither Contractor nor any of Contractor's employees shall, at any time, or in any way, be entitled to any sick leave, vacation, retirement, or other fringe benefits from the Successor Agency; and neither Contractor nor any of its employees shall be paid by Successor Agency time and one-half for working in excess of forty (40) hours in any one week. Successor Agency is under no obligation to withhold State and Federal tax deductions from Contractor's compensation. Neither Contractor nor any of Contractor's employees shall be included in the competitive service, have any property right to any position, or any of the rights an employee may have in the event of termination of this Agreement.

**3.5** **Covenant against Contingent Fees.** Contractor warrants that it has not employed or retained any company or person to solicit or secure this Agreement and that it has not paid or agreed to pay any company or person any fee or commission from the award or making of this Agreement. For breach or violation of this warranty, Successor Agency shall have the right to annul this Agreement without liability or, in its discretion, to deduct from the Agreement price or consideration, or otherwise recover, the full amount of such fee or commission.

**3.6** **Use of Patented Materials.** Contractor shall assume all costs arising from the use of patented or copyrighted materials, including but not limited to equipment, devices, processes, and software programs, used or incorporated in the services or work performed by Contractor under this Agreement. Contractor shall indemnify, defend, and save the Successor Agency harmless from any and all suits, actions or proceedings of every nature for or on account of the use of any patented or copyrighted materials consistent with Section 2.2 herein.

**3.7** **Proprietary Information.** All proprietary information developed specifically for Successor Agency by Contractor in connection with, or resulting from, this Agreement, including but not limited to inventions, discoveries, improvements, copyrights, patents, maps, reports, textual material, or software programs, but not including Contractor's underlying materials, software, or know-how, shall be the sole and exclusive property of Successor Agency, and are confidential and shall not be made available to any person or entity without the prior written approval of Successor Agency. Contractor agrees that the compensation to be paid pursuant to this Agreement includes adequate and sufficient compensation for any proprietary information developed in connection with or resulting from the performance of Contractor's services under this Agreement. Contractor further understands and agrees that full disclosure of all proprietary information developed in connection with, or resulting from, the performance of services by Contractor under this Agreement shall be made to Successor Agency, and that Contractor shall do all things necessary and proper to perfect and maintain ownership of such proprietary information by Successor Agency.

**3.8** **Retention of Funds.** Contractor hereby authorizes Successor Agency to deduct from any amount payable to Contractor (whether arising out of this Agreement or otherwise) any amounts the payment of which may be in dispute hereunder or which are necessary to compensate Successor Agency for any losses, costs, liabilities, or damages suffered by Successor Agency, and all amounts for which Successor Agency may be liable to third parties, by reason of Contractor's negligent acts, errors, or omissions, or willful misconduct, in performing or failing to perform Contractor's obligations under this Agreement. Successor Agency in its sole and absolute discretion, may withhold from any payment due Contractor, without liability for interest, an amount

8

sufficient to cover such claim or any resulting lien. The failure of Successor Agency to exercise such right to deduct or withhold shall not act as a waiver of Contractor's obligation to pay Successor Agency any sums Contractor owes Successor Agency.

      **3.9**    **Termination by Successor Agency.** Successor Agency reserves the right to terminate this Agreement at any time, with or without cause, upon written notice to Contractor. Upon receipt of any notice of termination from Successor Agency, Contractor shall immediately cease all services hereunder except such as may be specifically approved in writing by Successor Agency. Contractor shall be entitled to compensation for all services rendered prior to receipt of Successor Agency's notice of termination and for any services authorized in writing by Successor Agency thereafter. If termination is due to the failure of Contractor to fulfill its obligations under this Agreement, Successor Agency may take over the work and prosecute the same to completion by contract or otherwise, and Contractor shall be liable to the extent that the total cost for completion of the services required hereunder, including costs incurred by Successor Agency in retaining a replacement contractor and similar expenses, exceeds the Budget. Contractor agrees that upon termination of this Agreement and of services in any manner, it will provide to Successor Agency a closing report, including a brief description of the facts of the case, completed research, and calendar of any scheduled court appearances and deadlines, with respect to all pending litigation matters handled by Contractor.

      **3.10**   **Right to Stop Work; Termination by Contractor.** Contractor shall have the right to stop work and terminate only if Successor Agency fails to timely make a payment required under the terms of the Budget. Contractor shall provide Successor Agency thirty (30) day prior written notice of such claimed payment owed and Successor Agency shall have an opportunity to remedy any such claimed breach during such time with no legal consequence to Successor Agency. Contractor shall immediately cease all services hereunder following the thirty (30) day notice, except such services as may be specifically approved in writing by Successor Agency. Contractor shall be entitled to compensation for all services rendered prior to termination and for any services authorized in writing by Successor Agency thereafter. If Contractor terminates this Agreement because of an error, omission, or a fault of Contractor, or Contractor's willful misconduct, the terms of Section 3.9 relating to Successor Agency's right to take over and finish the work and Contractor's liability, the thirty (30) day notice shall apply. Contractor shall have the right to terminate this Agreement at any time, with or without cause, upon sixty (60) days' advance written notice to Successor Agency. Contractor agrees, consistent with its professional responsibilities, to allow for sufficient time and services to permit Successor Agency to arrange for alternative representation. Successor Agency and Contractor agree to cooperate in the transition of work and substitution of new counsel as counsel of record.

      **3.11**   **Waiver.** No delay or omission in the exercise of any right or remedy by a nondefaulting party on any default shall impair such right or remedy or be construed as a waiver. A party's consent to or approval of any act by the other party requiring the party's consent or approval shall not be deemed to waive or render unnecessary the other party's consent to or approval of any subsequent act. Any waiver by either party of any default must be in writing.

      **3.12**   **Legal Actions.** Legal actions concerning any dispute, claim, or matter arising out of or in relation to this Agreement shall be instituted and maintained in the Municipal and Superior Courts of the State of California in the County of Orange, or in any other appropriate court with jurisdiction in such County, and Contractor agrees to submit to the personal jurisdiction of such court.

**3.13** **Rights and Remedies are Cumulative.** Except as may be expressly set forth in this Agreement, the rights and remedies of the parties are cumulative and the exercise by either party of one or more of such rights or remedies or other rights or remedies as may be permitted by law or in equity shall not preclude the exercise by such party, at the same or different times, of any other rights or remedies to which such party may be entitled.

**3.14** **Attorneys' Fees.** In any action between the parties hereto seeking enforcement of any of the terms or provisions of this Agreement or in connection with the performance of the work hereunder, the party prevailing in the final judgment in such action or proceeding, in addition to any other relief which may be granted, shall be entitled to have and recover from the other party its reasonable costs and expenses, including, but not limited to, reasonable attorney's fees, expert witness fees, and courts costs. If either party to this Agreement is required to initiate or defend litigation with a third party because of the violation of any term or provision of this Agreement by the other party, then the party so litigating shall be entitled to its reasonable attorney's fees and costs from the other party to this Agreement.

**3.15** **Force Majeure.** The time period specified in this Agreement for performance of services shall be extended because of any delays due to unforeseeable causes beyond the control and without the fault or negligence of Successor Agency or Contractor, including, but not restricted to, acts of nature or of the public enemy, unusually severe weather, fires, earthquakes, floods, epidemics, quarantine restrictions, riots, strikes, freight embargoes, wars, litigation, and/or acts of any governmental agency, including Successor Agency, if the delaying party shall within ten (10) days of the commencement of such delay notify the other party in writing of the causes of the delay. If Contractor is the delaying party, Successor Agency shall ascertain the facts and the extent of delay, and extend the time for performing the services for the period of the enforced delay when and if in the judgment of Successor Agency such delay is justified. Successor Agency's determination shall be final and conclusive upon the parties to this Agreement. In no event shall Contractor be entitled to recover damages against Successor Agency for any delay in the performance of this Agreement, however caused. Contractor's sole remedy shall be extension of this Agreement pursuant to this Section 3.13.

**3.16** **Non-liability of Successor Agency Officers and Employees.** No officer, official, employee, agent, representative, or volunteer of Successor Agency shall be personally liable to Contractor, or any successor in interest, in the event of any default or breach by Successor Agency, or for any amount which may become due to Contractor or its successor, or for breach of any obligation of the terms of this Agreement.

**3.17** **Conflicts of Interest.**

A. No officer, official, employee, agent, representative or volunteer of Successor Agency shall have any financial interest, direct or indirect, in this Agreement, or participate in any decision relating to this Agreement that affects his or her financial interest or the financial interest of any corporation, partnership, association or other entity in which he or she is interested, in violation of any federal, state or city statute, ordinance or regulation. Contractor shall not employ any such person while this Agreement is in effect.

B. Contractor represents, warrants and covenants that he, she or it presently has no interest, direct or indirect, which would interfere with or impair in any manner or degree the performance of Contractor's obligations and responsibilities under this Agreement. Contractor further agrees that while this Agreement is in effect, Contractor shall not acquire or otherwise

10

obtain any interest, direct or indirect, that would interfere with or impair in any manner or degree the performance of Contractor's obligations and responsibilities under this Agreement.

C.    Contractor acknowledges that pursuant to the provisions of the Political Reform Act (Government Code section 87100 *et seq.*), Successor Agency may determine Contractor to be a "Consultant" as that term is defined by the Act. In the event Successor Agency makes such a determination, Contractor agrees to complete and file a "Statement of Economic Interest" with the City Clerk to disclose such financial interests as required by Successor Agency. In such event, Contractor further agrees to require any other person doing work under this Agreement to complete and file a "Statement of Economic Interest" to disclose such other person's financial interests as required by Successor Agency.

D.    Contractor has disclosed all present and contemplated representation of other clients or third parties on any matter (either litigation or non-litigation) that may be adverse to Successor Agency.

E.    Contractor agrees that Contractor, its officers, directors, partners and employees shall not represent any other client or party on any matter (either litigation or non-litigation) adverse to the Successor Agency. Contractor further agrees that following the termination of this Agreement, Contractor, its officers, directors, partners and employees shall not represent any other client or third party in any matter relating to the Successor Agency, without first receiving a written release from the Successor Agency. Contractor has also considered the potential applicability of the Political Reform Act of 1974 to Contractor's services pursuant to this Agreement and has concluded that no conflict of interest exists that would preclude Contractor from performing the services required of Contractor pursuant to this Agreement.

**3.18    Contractor Ethics.** Contractor represents and warrants that it has not provided or promised to provide any gift or other consideration, directly or indirectly, to any officer, employee, or agent of Successor Agency to obtain Successor Agency's approval of this Agreement. Contractor shall not, at any time, have any financial interest in this Agreement or the project that is the subject of this Agreement other than the compensation to be paid to Contractor as set forth in this Agreement. In the event the work and/or services to be performed hereunder relate to a project and/or application under consideration by or on file with the Successor Agency, (i) Contractor shall not possess or maintain any business relationship with the applicant or any other person or entity which Contractor knows to have a personal stake in said project and/or application, (ii) other than performing its work and/or services to Successor Agency in accordance with this Agreement Contractor shall not advocate either for or against said project and/or application, and (iii) Contractor shall immediately notify Successor Agency in the event Contractor determines that Contractor has or acquires any such business relationship with the applicant or other person or entity which has a personal stake in said project and/or application. The provisions in this Section shall be applicable to all of Contractor's officers, directors, employees, and agents, and shall survive the termination of this Agreement.

**3.19    Compliance with California Unemployment Insurance Code Section 1088.8.** If Contractor is a Sole Proprietor, then prior to signing the Agreement, Contractor shall provide to the Successor Agency a completed and signed Form W-9, Request for Taxpayer Identification Number and Certification. Contractor understands that pursuant to California Unemployment Insurance Code Section 1088.8, the Successor Agency will report the information from Form W-9 to the State of California Unemployment Development Department, and that the information

may be used for the purposes of establishing, modifying, or enforcing child support obligations, including collections, or reported to the Franchise Tax Board for tax enforcement purposes.

## SECTION FOUR:   **MISCELLANEOUS PROVISIONS**

**4.1   Records and Reports.** The Executive Director or his/her designee reserves the right to audit the Contractor's compliance with all of the terms and conditions of this Agreement at any time.  Upon request by Successor Agency, Contractor shall prepare and submit to Successor Agency any reports concerning Contractor's performance of the services rendered under this Agreement.  Successor Agency shall have access, with 72 hours **advance written notice delivered to Contractor**, to the books and records of Contractor related to Contractor's performance of this Agreement in the event any audit is required.  All drawings, documents, and other materials prepared by Contractor in the performance of this Agreement (i) shall be the property of Successor Agency and shall be delivered at no cost to Successor Agency upon request of Successor Agency or upon the termination of this Agreement, and (ii) are confidential and shall not be made available to any individual or entity without prior written approval of Successor Agency.  Contractor shall keep and maintain all records and reports related to this Agreement for a period of three (3) years following termination of this Agreement, and Successor Agency shall have access to such records in the event any audit is required.

**4.2   Findings Confidential, Ownership, Reports and Information**. All reports, information, data and exhibits prepared or assembled by Contractor in connection with the performance of its services pursuant to this Agreement are confidential and Contractor agrees that they shall not be made available to any individual or organization without prior written consent of Successor Agency, as applicable. All such reports, information, data and exhibits shall be the property of Successor Agency, as applicable, and shall be delivered to Successor Agency upon demand without additional cost or expense to Successor Agency.

**4.3   Notices**.  Unless otherwise provided herein, all notices required to be delivered under this Agreement or under applicable law shall be personally delivered, or delivered by United States mail, prepaid, certified, return receipt requested, or by reputable document delivery service that provides a receipt showing date and time of delivery. Notices personally delivered or delivered by a document delivery service shall be effective upon receipt.  Notices delivered by mail shall be effective at 5:00 p.m. on the second calendar day following dispatch.  Notices to the Successor Agency shall be delivered to the following address, to the attention of the Successor Agency Representative set forth in Paragraph D.1 of the Fundamental Terms of this Agreement:

<u>To Successor Agency</u>:
        One Civic Center Plaza  (92606) (Hand Deliveries)
        P. O. Box 19575
        Irvine, CA  92623-9575
        ATTN: Sean Joyce, Executive Director

Notices to Contractor shall be delivered to the address set forth below Contractor's signature on Part I of this Agreement, to the attention of Contractor's Representative set forth in Paragraph D.2 of the Fundamental Terms of this Agreement.  Changes in the address to be used for receipt of notices shall be effected in accordance with this Section 4.3.

**4.4    Construction and Amendment**.  The terms of this Agreement shall be construed in accordance with the meaning of the language used and shall not be construed for or against either party by reason of the authorship of this Agreement or any other rule of construction which might otherwise apply.  The headings of sections and paragraphs of this Agreement are for convenience or reference only, and shall not be construed to limit or extend the meaning of the terms, covenants and conditions of this Agreement.  This Agreement may only be amended by the mutual consent of the parties by an instrument in writing.

**4.5    Severability**.  Each provision of this Agreement shall be severable from the whole. If any provision of this Agreement shall be found contrary to law, the remainder of this Agreement shall continue in full force.

**4.6    Authority**.  The person(s) executing this Agreement on behalf of the parties hereto warrant that (i) such party is duly organized and existing, (ii) they are duly authorized to execute and deliver this Agreement on behalf of said party, (iii) by so executing this Agreement, such party is formally bound to the provisions of this Agreement, and (iv) the entering into this Agreement does not violate any provision of any other Agreement to which said party is bound.

**4.7    Special Provisions**.  Any additional or supplementary provisions or modifications or alterations of these General Provisions shall be set forth in Part III of this Agreement ("Special Provisions").

**4.8    Precedence**.  In the event of any discrepancy between Part I ("Fundamental Terms"), Part II ("General Provisions"), Part III ("Special Provisions"), Part IV ("Scope of Services"), and/or Part V ("Budget"), Part III shall take precedence and prevail over Parts I, II, IV and V; Part II shall take precedence and prevail over Parts I, IV and V; Part IV shall take precedence and prevail over Parts I and V; and Part V shall take precedence over Part I.

## PART III

### SPECIAL PROVISIONS

1) **Business License Requirement.** Contractors who provide services for the Successor Agency within the city limits of the city of Irvine shall obtain, within five (5) days of executing this Agreement and prior to commencing any work herein, a City of Irvine business license and shall maintain a current business license throughout the term of this Agreement.

PART IV

## Successor Agency Legal Services

# SCOPE OF SERVICES

Contractor shall perform general counsel services for the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency ("Successor Agency") as directed by the Successor Agency.

The City shall conduct a performance evaluation annually.

Contractor shall perform the services as set forth below.

1. Attend all Successor Agency and Oversight Board meetings.

2. Provide legal advice, counsel, services, consultation and opinions to Successor Agency, Successor Agency Executive Director and City staff on a wide variety of Successor Agency related assignments.

3. Attend departmental meetings, staff meetings or committee meetings as deemed necessary and appropriate or as requested by the Successor Agency Executive Director or Successor Agency Board of Directors.

4. Perform research and interpret laws, court decisions and other legal matters in order to prepare legal opinions and to advise the Successor Agency Board and management staff on legal matters pertaining to Successor Agency operations.

5. Provide routine legal advice, telephone and personal consultations with Successor Agency Board, Successor Agency Executive Director and City staff.

6. Review and/or prepare staff reports, ordinances, resolutions, orders, agreements, forms, notices, declarations, certificates, deeds, leases, and other documents required by the Successor Agency.

7. Render advice and assistance in the administration of the Successor Agency's general liability and risk management programs to the extent that the same is not covered by the City of Irvine's California Insurance Pool Authority (CIPA).

8. Serve as legal counsel to bodies as may be created and represented by or for the Successor Agency and which meet regularly or periodically or on an as-needed basis.

9. Represent the Successor Agency before other governmental bodies and agencies to promote the interests of the Successor Agency.

10. Provide assistance to staff to monitor pending and current State and Federal legislation, regulations and case law. Conduct legislative analysis of proposed legislation and regulations to include impacts to the Successor Agency, as directed.

11. Ensure that current and future Successor Agency policies, procedures and practices comply with state and federal law. Inform Successor Agency Board and staff and recommend changes to practices, as needed.

12. Provide the Successor Agency Board and Oversight Board with guidance relative to Roberts Rules of Order, open meetings, Brown Act, and other related procedural matters.

13. Coordinate and monitor the work of special legal counsel as needed and directed by the Successor Agency Board and/or Successor Agency Executive Director.

14. Provide litigation support including monitoring matters involving litigation affecting the Successor Agency and represent the Successor Agency in actions, suits, or proceeding in which the Successor Agency is a party or has a legal interest.

15. Represent the Successor Agency in the administration of claims and litigation filed by or against them. Upon recommendation and Successor Agency approval, special counsel may be retained to defend or prosecute actions under certain circumstances, including, but not limited to, matters assigned by CIPA for tort defense and workers' compensation defense work. Prior to commencing any litigation services, Contractor shall notify and obtain approval from the Successor Agency, as appropriate, and provide a case evaluation and plan -  which shall include a statement of known facts and legal issues, statement of known injuries or damages, statement of liability exposure, recommendations on case strategy, possibilities and recommendations regarding early settlement, and a budget of anticipated fees, costs, and expenses through pleadings, discovery, arbitration, trial, and any other identifiable stages.  Contractor shall advise the Successor Agency in a timely fashion and in writing of any material change in the factors identified in the case evaluation and plan, including any change in the estimated budget. Contractor shall provide the Successor Agency, as appropriate, with a written status report of all pending litigation matters on a quarterly basis, or more frequently upon request.

16. Provide services on legal matters subject to reimbursement and other specialized litigation, specialized transactions and representational matters as requested by the Successor Agency.

PART V

BUDGET

Pricing shall be as set forth below.

## COST SUMMARY – SUCCESSOR AGENCY

| | |
|---|---|
| General Counsel; Partner/Associate; and Special Services | $225 per hour |
| Law Clerk | $140 per hour |
| Paralegal | $110 per hour |
| Bond Counsel | See Below |

Contractor's minimum unit of time for billing is one-tenth of an hour (0.1).

"Special Services" includes successor agency matters, litigation and contested administrative matters. Litigation includes, in addition to formal litigation, contested administrative matters before other governmental agencies.

In-service training costs are charged at the normal hourly rates.

On bond counsel matters, if contingent, one percent (1%) of the first $1 million executed and delivered; one-half percent (0.5%) of the next $4 million executed and delivered; one-quarter percent (0.25%) of the next $10 million executed and delivered; one-eighth percent (0.125%) of the next $5 million executed and delivered; and one-tenth percent (0.1%) of any amount over $20 million executed and delivered; all subject to a minimum fee of $25,000. Payment of fees is entirely contingent upon the successful execution and delivery of the bonds or notes to be payable on or after delivery except for out-of-pocket costs, which are payable in any event. If non-contingent, $300 per hour, together with out-of-pocket expenses. In the event that multiple series of bonds or notes are issued, the foregoing fee structure would be applied to each issue, subject to the $25,000 minimum fee per issue.

On projects for which the Successor Agency is reimbursed by a third party or applicant, Contractor may charge its full design rate for the attorney performing the work.

Payment for services will be made monthly on invoices deemed satisfactory to the Successor Agency, with payment terms of net 45 days upon receipt of invoice.

17

Contractor shall submit invoices within fifteen (15) days from the end of each month in which services have been provided. Contractor shall provide invoices with sufficient detail to ensure compliance to pricing as set forth in this Agreement. The information required may include: date(s) of work, hours of work, hourly rate(s), and material costs.

Contractors shall provide invoicing in the format requested by Successor Agency.

Payment by Successor Agency under this Agreement shall not be deemed as a waiver of the Successor Agency's right to claim at a later point that such payment was not due under the terms of this Agreement.

**No work shall be performed in connection with this Agreement until the receipt of a signed City of Irvine Purchase Order.**

## Exhibit 1

### WORKERS' COMPENSATION INSURANCE CERTIFICATION

Contract Services Description: Legal Services

**WORKERS' COMPENSATION DECLARATION**

I hereby affirm under penalty of perjury one of the following declarations:

*(CHECK ONE APPLICABLE BOX BELOW)*

☐ **I have and will maintain workers' compensation insurance**, as required by Section 3700 of the Labor Code, for the performance of the work to be performed under this Agreement and shall submit insurance certificates evidencing such coverage as set forth herein.

☐ I certify that, in the performance of the work under this Agreement, **I shall not employ any person** in any manner so as to become subject to the workers' compensation laws of California, and I hereby agree to indemnify, defend, and hold harmless the City of Irvine and the Successor Agency and all of their officials, employees, and agents from and against any and all claims, liabilities, and losses relating to personal injury or death, economic losses, and property damage arising out of my failure to provide such workers' compensation insurance. I further agree that, **if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions and immediately furnish insurance certificates** evidencing such coverage as set forth herein.

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

| | |
|---|---|
| Dated: | 2/16/16 |
| Contracting Firm: | Rutan + Tucker, LLP |
| Signature: | *[signature]* |
| Title: | Partner |
| Address: | 611 Anton Blvd, Costa Mesa, CA 92626 |

19

DocuSign Envelope ID: 6240BD77-2B59-46FC-A139-744A609233C9

# AMENDMENT NUMBER 3
# TO "AGREEMENT FOR CONTRACT SERVICES"

THIS AMENDMENT NUMBER 3 TO AGREEMENT FOR CONTRACT SERVICES (the "First Amendment") is made and entered into as of November 1, 2021 by and between the City of Irvine, a municipal corporation ("City") and Rutan & Tucker, LLP, a Limited Liability Partnership ("Contractor"), for the purpose of amending the written "Agreement for Contract Services" entered into between City and Contractor as of February 10, 2016, as amended by Amendment Number 1 to "Agreement for Contract Services" dated June 15, 2016, and as further amended by Amendment Number 2 to "Agreement for Contract Services" dated January 24, 2018, City of Irvine contract number 9079, 9079a, and 9079b, respectfully (collectively "Agreement").

1.  "PART V, BUDGET, ATTACHMENT A" is modified by adding Exhibit I, attached hereto, modifying the hourly rates.  The increase is effective November 1, 2021.

2.  "PART I (C), Term" is modified in its entirety to state in full as follows:

    Term:  Unless terminated earlier as set forth in this Agreement, the services shall commence on February 16, 2016 ("Commencement Date") and shall continue through November 1, 2023; provided, however, that unless the term is amended, the term shall continue from month to month from and after November 1, 2023 until otherwise terminated in accordance with Part II (General Provisions, Section 3.9 (Termination by City) or Section 3.10 (Right to Stop Work; Termination by Contractor).

3.  "PART II, Section 2.2, Defense and Indemnification" is modified in its entirety to state in full as follows:

    **Defense and Indemnification**.  Contractor agrees to defend and indemnify City and its officers, agents and employees against, and to hold and save them harmless from, any and all actions, claims, damages to persons or property, penalties, obligations, or liabilities that may be asserted or claimed by any person, firm, entity, corporation, political subdivision or other organization arising out of the willful or negligent act, errors or omissions of Contractor, its agents, employees, or subcontractors, in performance of services under this Agreement; provided, however, that City agrees that that Indemnification provision under Section 2.2 shall not apply if the Contractor's insurance coverage is invalidated for any circumstance which may arise to which this provision may apply.  Without limiting the generality of the foregoing, the obligations undertaken by Contractor in this indemnification provision do not impair Contractor's ability to assert defenses of contributory or comparative negligence, or other defenses otherwise applicable in professional negligence or negligent supervision claims

1

4. Except as set forth in this Third Amendment, all terms, conditions and provisions of the Agreement are unchanged and remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Third Amendment to the Agreement to be executed by their respective duly authorized agents as of the date first set forth above.

**CITY OF IRVINE**

By: _Marianna Marysheva_
Marianna Marysheva

Its: Interim City Manager

By: _Farrah N. Khan_
Farrah N. Khan

Its: Mayor

Attest:
By: _[signature]_
Carl Petersen
City Clerk

APPROVED AS TO FORM:
Woodruff, Spradlin & Smart

_Daniel K. Spradlin_
Daniel K. Spradlin

**RUTAN & TUCKER, LLP**

By: _Jeff Melching_

Its: City Attorney

2

DocuSign Envelope ID: 62405B77-2B59-465C-A129-744A609233C9

# EXHIBIT I

## COST SUMMARY

| Labor Rates* | |
|---|---|
| City Attorney | $280per hour |
| Assistant City Attorney | $280 per hour |
| Partner/Associate | $280 per hour |
| Law Clerk | $190 per hour |
| Paralegal | $150 per hour |
| Special Services | $320 per hour |

*On July 1, 2022 and each July 1st thereafter, all hourly rates and amounts charged hereunder will be increased for the change in the cost of living for the prior calendar year, as shown on the U.S. Department of Labor and its All Urban Consumers Index set forth for the Los Angeles-Riverside-Orange Counties area (or substantially equivalent index if the described index is discontinued or renamed).

Rutan's minimum unit of time for billing is one-tenth of an hour (.1).

"Special Services" includes: cable television, telecommunications, solid waste and other franchise matters; water and wastewater utility issues; complex economic development and successor agency matters, including services for the benefit of the City's successor agency to the extent such services are not an enforceable obligation of the successor agency; advice on water quality, NPDES, hazardous materials and other complex environmental matters; complex land use matters including CEQA, RHNA, and implementation of housing legislation; non-routine real estate negotiations and transactions; matters relating to the Orange County Great Park, and any non-routine item or matter added by the City Council. Special Services also includes litigation, which includes matters filed or anticipated to be filed in state or federal courts, contested administrative matters before other governmental agencies (e.g. Department of Industrial Relations, Regional water Quality Control Board), and internal administrative proceedings such as employee disciplinary hearings and resulting lawsuits, eminent domain matters, appeals and proceedings to revoke land use entitlements or City-issued licenses, and similar litigation like proceedings.

In-service training costs are charged at the normal hourly rates. However, since Rutan gives such training repeatedly to its City clients (including ethics training, mandatory AB 1234 training, new Councilperson/Commissioner training, harassment training, etc.), it has already prepared presentation materials.

On projects for which the City is reimbursed by a third party or applicant, including bond and municipal finance matters, Rutan may charge its full design rate for the attorney performing the work.

3

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: **9079A**

CONTRACT TYPE: **AMENDMENT**

DEPARTMENT: **CITY MANAGER**
Department initiating contract

CONTRACT DATE: **06/15/2016**
As stated in the Terms sections of contract

EXPIRATION DATE:
As stated in the Terms sections of contract

MEETING DATE: **06/14/2016**
Date of meeting where contract was approved

ITEM NUMBER: **5.2**
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of contract

CONTRACT NAME: **RUTAN & TUCKER, LLP**
As stated in first paragraph of contract

CONTRACT SUBJECT: **AMENDMENT TO MODIFY PART V BUDGET**
As stated in Description of Services section of contract

ORIGINAL

## AMENDMENT NUMBER 1
## TO "AGREEMENT FOR CONTRACT SERVICES"

THIS AMENDMENT NUMBER 1 TO AGREEMENT FOR CONTRACT SERVICES (the "First Amendment") is made and entered into as of June 15, 2016 by and between the City of Irvine, a municipal corporation ("City") and Rutan & Tucker, LLP, a Limited Liability Partnership ("Contractor"), for the purpose of amending the written "Agreement for Contract Services" entered into between City and Contractor as of February 10, 2016, City of Irvine contract number 9079 (the "Agreement").

1. "PART V, BUDGET, ATTACHMENT A" is modified by adding EXHIBIT I, attached hereto, increasing the hourly rates. The increased rates are effective July 1, 2016.

2. Except as set forth in this First Amendment, all terms, conditions and provisions of the Agreement are unchanged and remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this First Amendment to the Agreement to be executed by their respective duly authorized agents as of the date first set forth above.

CITY OF IRVINE

By: _____
    Sean Joyce
Its: City Manager

By: _____
    Steven S. Choi, Ph.D.
Its: Mayor

Attest:
By: _____
    Molly McLaughlin
    City Clerk

APPROVED AS TO FORM:
Woodruff, Spradlin & Smart

_____
Daniel K. Spradlin

RUTAN & TUCKER, LLP

By: _____
Its: Partner

1

9079A



# EXHIBIT I

## COST SUMMARY

| Labor Rates | |
|---|---|
| City Attorney | $215 per hour |
| Assistant City Attorney | $215 per hour |
| Partner/Associate | $215 per hour |
| Law Clerk | $140 per hour |
| Paralegal | $110 per hour |
| Special Services | $245 per hour |

Rutan's minimum unit of time for billing is one-tenth of an hour (.1).

"Special Services" includes: cable television, telecommunications, solid waste and other franchise matters; water and wastewater utility issues; complex economic development and successor agency matters, including services to or for the benefit of the City's successor agency to the extent such services are not an enforceable obligation of the successor agency; advice on water quality, NPDES, hazardous materials and other complex environmental matters; and any non-routine item or matter added by the City Council. Furthermore, Special Services includes litigation and contested administrative matters. Litigation includes, in addition to formal litigation, contested administrative matters before other governmental agencies (e.g., Department of Industrial Relations, Regional Water Quality Control Board), and internal administrative proceedings such as employee disciplinary hearings and any resulting lawsuits, eminent domain matters, proceedings to revoke land use entitlements or City-issued licenses, and similar litigation-like proceedings.

Legal work performed relating to the Great Park will be charged at the same rate as regular City Attorney work, unless the nature of the work fits within the definition of "Special Services" detailed in the above paragraph.

In-service training costs are charged at the normal hourly rates. However, since Rutan gives such training repeatedly to its City clients (including ethics training, mandatory AB 1234 training, new Councilperson/Commissioner training, harassment training, ...), it already has prepared presentation materials.

On bond counsel matters, if contingent, one percent (1%) of the first $1 million executed and delivered; one-half percent (0.5%) of the next $4 million executed and delivered; one-quarter percent (0.25%) of the next $10 million executed and delivered; one-eighth percent (0.125%) of the next $5 million executed and delivered; and one-tenth percent (0.1%) of any amount over $20 million executed and delivered; all subject to a minimum fee of $25,000. Payment of fees is entirely contingent upon the successful execution and delivery of the bonds or notes to be payable on or after delivery except for out-of-pocket costs, which are payable in any event. If

2

non-contingent, $300 per hour, together with out-of-pocket expenses.  In the event that multiple series of bonds or notes are issued, the foregoing fee structure would be applied to each issue, subject to the $25,000 minimum fee per issue.

On projects for which the City is reimbursed by a third party or applicant, Rutan may charge its full design rate for the attorney performing the work.

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: **8031**

CONTRACT TYPE: **SERVICES**

DEPARTMENT:
Department initiating contract
**CITY MANAGER**

CONTRACT DATE:
As stated in Terms section of Contract
**8/13/2013**

EXPIRATION DATE:
As stated in Terms section of Contract
**08/15/2014**

MEETING DATE:
Date of meeting where contract was approved

ITEM NUMBER:
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of Contract

CONTRACT NAME:
As stated in 1st paragraph of contract
**RUTAN & TUCKER, LLP**

CONTRACT SUBJECT:
As stated in Description of Services section of contract
**GENERAL COUNSEL SERVICES FOR THE CITY OF IRVINE AND THE ORANGE COUNTY GREAT PARK CORPORATION AS DIRECTED BY THE CITY OR GREAT PARK**

ORIGINAL

# ATTACHMENT I

## AGREEMENT FOR CONTRACT SERVICES

THIS AGREEMENT FOR CONTRACT SERVICES (the "Agreement") is made and entered into as of August 13, 2013, by and between the CITY OF IRVINE, a municipal corporation ("City"), and Rutan & Tucker, LLP a Limited Liability Partnership ("Contractor"). (The term Contractor includes professionals performing in a consulting capacity.)

### PART I
### FUNDAMENTAL TERMS

**A.     Location of Project:**   The City of Irvine location(s) as set forth in PART IV, Scope of Services, included herein.

**B.     Description of Services/Goods to be Provided:**   City Attorney Services in accordance with PART IV, Scope of Services, included herein.

**C.     Term:**   Unless terminated earlier as set forth in this Agreement, the services shall commence on August 16, 2013 ("Commencement Date") and shall continue until August 15, 2014. The City reserves the right to extend this Agreement for up to four (4) additional one (1) year periods. Such extension shall only be valid with City Council approval.

**D.     Party Representatives:**

D.1.  The City designates the following person/officer to act on City's behalf:  Sean Joyce, City Manager

D.2.  The Contractor designates the following person to act on Contractor's behalf: Todd O. Litfin, Partner

**E.     Notices:**   Contractor shall deliver all notices and other writings required to be delivered under this Agreement to City at the address set forth in Part II ("General Provisions"). The City shall deliver all notices and other writings required to be delivered to Contractor at the address set forth following Contractor's signature below.

**F.     Attachments:**   This Agreement incorporates by reference the following Attachments to this Agreement:

| | | |
|---|---|---|
| F.1. | Part I: | Fundamental Terms |
| F.2. | Part II: | General Provisions |
| F.3. | Part III: | Special Provisions |
| F.4. | Part IV: | Scope of Services |
| F.5. | Part V: | Budget |

**G.     Integration:**   This Agreement represents the entire understanding of City and Contractor as to those matters contained herein. No prior oral or written understanding shall be of any force or effect with regard to those matters covered by this Agreement. This Agreement supersedes and cancels any and all previous negotiations, arrangements, agreements, and understandings, if any, between the parties, and none shall be used to interpret this Agreement.

1

8031

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the date first set forth above.

**CITY OF IRVINE**                                    **CONTRACTOR**

By: _____             By: _____

Its:    City Manager                                 Its:    Partner

By: _____             By: _____

Its:    Mayor                                        Its: _____

Attest:

By: _____

Marie Macias
Interim City Clerk of the
City Of Irvine

**Contractor Information**
**Address for Notices and Payments:**

611 Anton Boulevard
Suite 1400
Costa Mesa, CA 92626-1931

**Attn:** Todd O. Litfin
**Telephone:** 714-641-5100
**FAX:** 714-546-9035
**Email:** tlitfin@rutan.com

2

**PART II**
**GENERAL PROVISIONS**

**SECTION ONE: <u>SERVICES OF CONTRACTOR</u>**

      **1.1**    **<u>Scope of Services</u>.** In compliance with all terms and conditions of this Agreement, Contractor shall provide the goods and/or services shown on Part IV hereto ("Scope of Services"), which may be referred to herein as the "services" or the "work." If this Agreement is for the provision of goods, supplies, equipment or personal property, the terms "services" and "work" shall include the provision (and, if designated in the Scope of Services, the installation) of such goods, supplies, equipment or personal property.

      **1.2**    **<u>Changes and Additions to Scope of Services</u>.** City shall have the right at any time during the performance of the services, without invalidating this Agreement, to order extra work beyond that specified in the Scope of Services or make changes by altering, adding to, or deducting from said work. No such work shall be undertaken unless a written order is first given by City to Contractor, incorporating therein any adjustment in (i) the Budget, and/or (ii) the time to perform this Agreement, which adjustments are subject to the written approval of the Contractor. City approval and/or payment for work claimed by Contractor as changed or additional shall not act to prevent City at any time to claim such work is covered by the Scope of Work and should be performed by Contractor without additional consideration due. It is expressly understood by Contractor that the provisions of this Section 1.2 shall not apply to services specifically set forth in the Scope of Services or reasonably contemplated therein. Contractor hereby acknowledges that it accepts the risk that the services to be provided pursuant to the Scope of Services may be more costly or time consuming than Contractor anticipates and that Contractor shall not be entitled to additional compensation therefor.

      **1.3**    **<u>Standard of Performance</u>.** Contractor agrees that all services shall be performed in a competent, professional, and satisfactory manner in accordance with the standards prevalent in the industry, and that all goods, materials, equipment or personal property included within the services herein shall be of good quality, fit for the purpose intended.

      **1.4**    **<u>Performance to Satisfaction of City</u>.** Notwithstanding any other provision herein, Contractor agrees to perform all work to the satisfaction of City within the time specified. If City reasonably determines that the work is not satisfactory, City shall have the right to take appropriate action, including but not limited to: (i) meeting with Contractor to review the quality of the work and resolve matters of concern; (ii) requiring Contractor to repeat unsatisfactory work at no additional charge until it is satisfactory; (iii) suspending the delivery of work to Contractor for an indefinite time; (iv) withholding payment; and (v) terminating this Agreement as hereinafter set forth.

      **1.5**    **<u>Instructions from City</u>.** In the performance of this Agreement, Contractor shall report to and receive instructions from the City's Representative designated in Paragraph D.1 of Part I ("Fundamental Terms") of this Agreement. Tasks or services other than those specifically described in the Scope of Services shall not be performed without the prior written approval of the City's Representative.

      **1.6**    **<u>Familiarity with Work</u>.** By executing this Agreement, Contractor warrants that Contractor (i) has thoroughly investigated and considered the scope of services to be performed, (ii) has carefully considered how the services should be performed, and (iii) fully understands the facilities, difficulties, and restrictions attending performance of the services under the Agreement. If the services involve work upon any site, Contractor warrants that Contractor has or will investigate the site and is or will be fully acquainted with the conditions there existing, prior to commencement

3

of services hereunder. Should the Contractor discover any conditions, including any latent or unknown conditions, which will materially affect the performance of the services hereunder, Contractor shall immediately inform the City of such fact in writing and shall not proceed except at Contractor's risk until written instructions are received from the City's Representative.

### 1.7    Identity of Persons Performing Work.

(A)    Contractor represents that it employs or will employ at its own expense all personnel required for the satisfactory performance of any and all tasks and services required hereunder. Contractor shall not replace any of the principal members of the Project team, or any successors to any of such persons, without City's prior written approval.

(B)    Contractor represents that the tasks and services required hereunder will be performed by Contractor or under its direct supervision, and that all personnel engaged in such work shall be fully qualified and shall be authorized and permitted under applicable State and local law to perform such tasks and services. In carrying out such tasks and services, Contractor shall not employ any undocumented aliens (that is, persons who are not citizens or nationals of the United States).

(C)    This Agreement contemplates the personal services of Contractor and Contractor's employees, and it is recognized by the parties hereto that a substantial inducement to City for entering into this Agreement was, and is, the professional reputation and competence of Contractor and Contractor's employees. Neither this Agreement nor any interest therein may be assigned by Contractor, except upon written consent of City.

**1.8    Prohibition Against Subcontracting or Assignment.**    Contractor shall not contract with any other entity to perform in whole or in part the services required hereunder without the express written approval of City. In addition, neither the Agreement nor any interest herein may be transferred, assigned, conveyed, hypothecated, or encumbered voluntarily or by operation of law, whether for the benefit of creditors or otherwise, without the prior written approval of City. In the event of any unapproved transfer, including any bankruptcy proceeding, City may void the Agreement at City's option in its sole and absolute discretion. No approved transfer shall release any surety of Contractor of any liability hereunder without the express written consent of City.

### SECTION TWO:    INSURANCE AND INDEMNIFICATION

**2.1    Insurance.**    Without limiting Contractor's indemnification obligations, Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided below, against all claims for injuries against persons or damages to property which may arise from or in connection with the performance of the work hereunder by Contractor, its agents, representatives, employees, and/or subcontractors. In the event that Contractor subcontracts any portion of the work in compliance with Section 1.8 of this Agreement, the contract between the Contractor and such subcontractor shall require the subcontractor to maintain the same policies of insurance that the contractor is required to maintain pursuant to this Section 2.1. Providing the insurance coverage required by this Agreement shall not relieve Contractor of any liability for any damages to City or any third party which is in excess of such insurance coverage or excluded from such insurance coverage but for which Contractor may be held legally responsible.

**2.1.1    Insurance Coverage Required.**    The policies and amounts of insurance required hereunder shall be as follows:

4

**A. Comprehensive General Liability** Insurance which affords coverage at least as broad as Insurance Services Office "occurrence" form CG 00 01 including completed operations and contractual liability, with limits of liability of not less than $1,000,000 per occurrence and $2,000,000 annual aggregate for liability arising out of Contractor's performance of this Agreement. The limits shall be provided by either a single primary policy or combination of policies. If limits are provided with excess and/or umbrella coverage the limits combined with the primary will equal the minimum limits set forth above. If written with an aggregate, the aggregate shall be double the each occurrence limit. Such insurance shall be endorsed to:

(1) Name the City of Irvine and its employees, representatives, officers and agents (collectively hereinafter "City and City Personnel") as additional insured for claims arising out of Contractor's performance of this Agreement.

(2) Provide that the insurance is primary and non-contributing with any other valid and collectible insurance or self-insurance available to City.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement.*

**B. Automobile Liability Insurance** with a limit of liability of not less than $1,000,000 each occurrence and $1,000,000 annual aggregate. The limits shall be provided by either a single primary policy or combination of policies. If limits are provided with excess and/or umbrella coverage the limits combined with the primary will equal the minimum limits set above. Such insurance shall include coverage for all "owned," "hired" and "non-owned" vehicles, or coverage for "any auto." Such insurance shall be endorsed to:

(1) Name the City of Irvine and its employees, representatives, officers and agents as additional insured for claims arising out of Contractor's performance of this Agreement.

(2) Provide that the insurance is primary and non-contributing with any other valid and collectible insurance or self-insurance available to City.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement.*

**C. Workers' Compensation Insurance** in accordance with the Labor Code of California and covering all employees of the Contractor providing any service in the performance of this agreement. Such insurance shall be endorsed to:

(1) Waive the insurer's right of Subrogation against the City and City Personnel.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement unless your insurance carrier is the State of California Insurance Fund (SCIF) and the endorsement numbers 2570 and 2065 are referenced on the certificate of insurance.*

<u>**Contractor's completion of the form attached hereto as Exhibit 1 shall be a condition precedent to Contractor's rights under this Agreement.**</u> Should Contractor certify, pursuant to Exhibit 1, that, in the performance of the work under this

5

Agreement, it shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, Contractor shall nonetheless maintain responsibility for requiring that any subcontractors performing work under this Agreement have and maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the work performed under this Agreement.

**D. Professional Liability Insurance** with minimum limits of $1,000,000 each claim. Covered professional services shall include all work performed under this Agreement and delete any exclusion that may potentially affect the work to be performed.

**E. Evidence of Insurance**: Contractor shall provide to City a Certificate(s) of Insurance evidencing such coverage together with copies of the required policy endorsements no later than five (5) business days prior to commencement of service and at least fifteen (15) business days prior to the expiration of any policy. Coverage shall not be suspended, voided, cancelled, reduced in coverage or in limits, non-renewed, or materially changed for any reason, without thirty (30) days prior written notice thereof given by the insurer to City by U.S. mail, or by personal delivery, except for nonpayment of premiums, in which case ten (10) days prior notice shall be provided.

Signed insurance certificates and endorsements must be **sent via email** from Contractor's insurance broker/agent to the City's insurance certificate tracking company at CertsOnly@periculum.com

The City project title or description MUST be included in the "Description of Operations" box on the certificate.

   **Certificate Holder:**
   City of Irvine, California
   c/o: CertsOnly@periculum.com

**F. Endorsements:** A statement on an insurance certificate will not be accepted in lieu of the actual endorsement. Insurance policies shall not be in compliance if they include any limiting provision or endorsement that has not been submitted to the City for approval.

   Additional Insured Endorsements shall not:

1. Be limited to "Ongoing Operations"
2. Exclude "Contractual Liability"
3. Restrict coverage to the "Sole" liability of Contractor
4. Contain any other exclusion contrary to the Agreement.

**G. Any Deductible in Excess of $50,000 and/or Self-Insured Retentions** must be approved in writing by the City.

**H. Acceptability of Insurers.** Each policy shall be from a company with current A.M. Best's rating of A VII or higher and authorized to do business in the State of California, or otherwise allowed to place insurance through surplus lines brokers under applicable provisions of the California Insurance Code or any federal law. Any other rating must be approved in writing by the City.

**I. Insurance of Subcontractors.** Contractor shall be responsible for causing Subcontractors to maintain the same types and limits of coverage in compliance with this

Agreement, including naming the City as an additional insured to the Subcontractor's policies.

**2.2    Indemnification.**  Contractor shall indemnify, defend, and hold City and City Personnel harmless from and against any and all actions, suits, claims, demands, judgments, attorney's fees, costs, damages to persons or property, losses, penalties, obligations, expenses or liabilities (herein "claims" or "liabilities") that may be asserted or claimed by any person or entity arising out of the willful or negligent acts, errors or omissions of Contractor, its employees, agents, representatives or subcontractors which directly or indirectly relate to the work being performed or services being provided under this Agreement, whether or not there is concurrent active or passive negligence on the part of City and/or City Personnel, but excluding such claims or liabilities arising from the sole active negligence or willful misconduct of City or City Personnel in connection therewith:

**2.2.1**   Contractor shall defend any action or actions filed in connection with any such claims or liabilities, and shall pay all costs and expenses, including attorney's fees incurred in connection therewith.

**2.2.2**   Contractor shall promptly pay any judgment rendered against City or any City Personnel for any such claims or liabilities.

**2.2.3**   In the event City and/or any City Personnel is made a party to any action or proceeding filed or prosecuted for any such damages or other claims arising out of or in connection with the work being performed or services being provided under this Agreement, Contractor shall pay to City any and all costs and expenses incurred by City or City Personnel in such action or proceeding, together with reasonable attorney's fees and expert witness fees.

## SECTION THREE:    LEGAL RELATIONS AND RESPONSIBILITIES

**3.1    Compliance with Laws.**  Contractor shall keep itself fully informed of all existing and future state and federal laws and all county and city ordinances and regulations which in any manner affect those employed by it or in any way affect the performance of services pursuant to this Agreement.  Contractor shall at all times observe and comply with all such laws, ordinances, and regulations and shall be responsible for the compliance of all work and services performed by or on behalf of Contractor.  When applicable, Contractor shall not pay less than the prevailing wage, which rate is determined by the Director of Industrial Relations of the State of California.

**3.2    Licenses, Permits, Fees and Assessments.**  Contractor shall obtain at its sole cost and expense all licenses, permits, and approvals that may be required by law for the performance of the services required by this Agreement.  Contractor shall have the sole obligation to pay any fees, assessments, and taxes, plus applicable penalties and interest, which may be imposed by law and arise from or are necessary for Contractor's performance of the services required by this Agreement, and shall indemnify, defend, and hold harmless City against any such fees, assessments, taxes, penalties, or interest levied, assessed, or imposed against City thereunder.

**3.3    Covenant against Discrimination.**  Contractor covenants for itself, its heirs, executors, assigns, and all persons claiming under or through it, that there shall be no discrimination against any person on account of race, color, creed, religion, sex, marital status,

7

national origin, or ancestry, in the performance of this Agreement.  Contractor further covenants and agrees to comply with the terms of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101 et seq.) as the same may be amended from time to time.

**3.4    Independent Contractor.**  Contractor shall perform all services required herein as an independent contractor of City and shall remain at all times as to City a wholly independent contractor.  City shall not in any way or for any purpose become or be deemed to be a partner of Contractor in its business or otherwise, or a joint venturer, or a member of any joint enterprise with Contractor.  Contractor shall not at any time or in any manner represent that it or any of its agents or employees are agents or employees of City.  Neither Contractor nor any of Contractor's employees shall, at any time, or in any way, be entitled to any sick leave, vacation, retirement, or other fringe benefits from the City; and neither Contractor nor any of its employees shall be paid by City time and one-half for working in excess of forty (40) hours in any one week.  City is under no obligation to withhold State and Federal tax deductions from Contractor's compensation.  Neither Contractor nor any of Contractor's employees shall be included in the competitive service, have any property right to any position, or any of the rights an employee may have in the event of termination of this Agreement.

**3.5    Covenant against Contingent Fees.**  Contractor warrants that it has not employed or retained any company or person to solicit or secure this Agreement and that it has not paid or agreed to pay any company or person any fee or commission from the award or making of this Agreement.  For breach or violation of this warranty, City shall have the right to annul this Agreement without liability or, in its discretion, to deduct from the Agreement price or consideration, or otherwise recover, the full amount of such fee or commission.

**3.6    Use of Patented Materials**.  Contractor shall assume all costs arising from the use of patented or copyrighted materials, including but not limited to equipment, devices, processes, and software programs, used or incorporated in the services or work performed by Contractor under this Agreement.  Contractor shall indemnify, defend, and save the City harmless from any and all suits, actions or proceedings of every nature for or on account of the use of any patented or copyrighted materials consistent with Section 2.2 herein.

**3.7    Proprietary Information.**  All proprietary information developed specifically for City by Contractor in connection with, or resulting from, this Agreement, including but not limited to inventions, discoveries, improvements, copyrights, patents, maps, reports, textual material, or software programs, but not including Contractor's underlying materials, software, or know-how, shall be the sole and exclusive property of City, and are confidential and shall not be made available to any person or entity without the prior written approval of City.  Contractor agrees that the compensation to be paid pursuant to this Agreement includes adequate and sufficient compensation for any proprietary information developed in connection with or resulting from the performance of Contractor's services under this Agreement.  Contractor further understands and agrees that full disclosure of all proprietary information developed in connection with, or resulting from, the performance of services by Contractor under this Agreement shall be made to City, and that Contractor shall do all things necessary and proper to perfect and maintain ownership of such proprietary information by City.

**3.8    Retention of Funds.**  Contractor hereby authorizes City to deduct from any amount payable to Contractor (whether arising out of this Agreement or otherwise) any amounts the payment of which may be in dispute hereunder or which are necessary to compensate City for any losses, costs, liabilities, or damages suffered by City, and all amounts for which City may be liable to third parties, by reason of Contractor's negligent acts, errors, or omissions, or willful misconduct, in performing or failing to perform Contractor's obligations under this Agreement.  City in its sole and absolute discretion, may withhold from any payment due Contractor, without liability for

8

interest, an amount sufficient to cover such claim or any resulting lien. The failure of City to exercise such right to deduct or withhold shall not act as a waiver of Contractor's obligation to pay City any sums Contractor owes City.

  **3.9**   **Termination by City.** City reserves the right to terminate this Agreement at any time, with or without cause, upon written notice to Contractor. Upon receipt of any notice of termination from City, Contractor shall immediately cease all services hereunder except such as may be specifically approved in writing by City. Contractor shall be entitled to compensation for all services rendered prior to receipt of City's notice of termination and for any services authorized in writing by City thereafter. If termination is due to the failure of Contractor to fulfill its obligations under this Agreement, City may take over the work and prosecute the same to completion by contract or otherwise, and Contractor shall be liable to the extent that the total cost for completion of the services required hereunder, including costs incurred by City in retaining a replacement contractor and similar expenses, exceeds the Budget.

  **3.10**   **Right to Stop Work; Termination by Contractor.** Contractor shall have the right to stop work and terminate if City fails to timely make a payment required under the terms of the Budget. Contractor shall provide City thirty (30) day prior written notice of such claimed payment owed and City shall have an opportunity to remedy any such claimed breach during such time with no legal consequence to City. Contractor shall immediately cease all services hereunder following the thirty (30) day notice, except such services as may be specifically approved in writing by City. Contractor shall be entitled to compensation for all services rendered prior to termination and for any services authorized in writing by City thereafter. If Contractor terminates this Agreement because of an error, omission, or a fault of Contractor, or Contractor's willful misconduct, the terms of Section 3.9 relating to City's right to take over and finish the work and Contractor's liability, the thirty (30) day notice shall apply.

  **3.11**   **Waiver.** No delay or omission in the exercise of any right or remedy by a nondefaulting party on any default shall impair such right or remedy or be construed as a waiver. A party's consent to or approval of any act by the other party requiring the party's consent or approval shall not be deemed to waive or render unnecessary the other party's consent to or approval of any subsequent act. Any waiver by either party of any default must be in writing.

  **3.12**   **Legal Actions.** Legal actions concerning any dispute, claim, or matter arising out of or in relation to this Agreement shall be instituted and maintained in the Municipal and Superior Courts of the State of California in the County of Orange, or in any other appropriate court with jurisdiction in such County, and Contractor agrees to submit to the personal jurisdiction of such court.

  **3.13**   **Rights and Remedies are Cumulative.** Except as may be expressly set forth in this Agreement, the rights and remedies of the parties are cumulative and the exercise by either party of one or more of such rights or remedies or other rights or remedies as may be permitted by law or in equity shall not preclude the exercise by such party, at the same or different times, of any other rights or remedies to which such party may be entitled.

  **3.14**   **Attorneys' Fees.** In any action between the parties hereto seeking enforcement of any of the terms or provisions of this Agreement or in connection with the performance of the work hereunder, the party prevailing in the final judgment in such action or proceeding, in addition to any other relief which may be granted, shall be entitled to have and recover from the other party its reasonable costs and expenses, including, but not limited to, reasonable attorney's fees, expert witness fees, and courts costs. If either party to this Agreement is required to initiate or defend litigation with a third party because of the violation of any term or provision of this Agreement by the

9

other party, then the party so litigating shall be entitled to its reasonable attorney's fees and costs from the other party to this Agreement.

**3.15    Force Majeure.**  The time period specified in this Agreement for performance of services shall be extended because of any delays due to unforeseeable causes beyond the control and without the fault or negligence of City or Contractor, including, but not restricted to, acts of nature or of the public enemy, unusually severe weather, fires, earthquakes, floods, epidemics, quarantine restrictions, riots, strikes, freight embargoes, wars, litigation, and/or acts of any governmental agency, including City, if the delaying party shall within ten (10) days of the commencement of such delay notify the other party in writing of the causes of the delay.  If Contractor is the delaying party, City shall ascertain the facts and the extent of delay, and extend the time for performing the services for the period of the enforced delay when and if in the judgment of City such delay is justified.  City's determination shall be final and conclusive upon the parties to this Agreement.  In no event shall Contractor be entitled to recover damages against City for any delay in the performance of this Agreement, however caused.  Contractor's sole remedy shall be extension of this Agreement pursuant to this Section 3.13.

**3.16    Non-liability of City Officers and Employees.**  No officer, official, employee, agent, representative, or volunteer of City shall be personally liable to Contractor, or any successor in interest, in the event of any default or breach by City, or for any amount which may become due to Contractor or its successor, or for breach of any obligation of the terms of this Agreement.

**3.17    Conflicts of Interest.**

A.      No officer, official, employee, agent, representative or volunteer of City shall have any financial interest, direct or indirect, in this Agreement, or participate in any decision relating to this Agreement that affects his or her financial interest or the financial interest of any corporation, partnership, association or other entity in which he or she is interested, in violation of any Federal, State or City statute, ordinance or regulation.  Contractor shall not employ any such person while this Agreement is in effect.

B.      Contractor represents, warrants and covenants that he, she or it presently has no interest, direct or indirect, which would interfere with or impair in any manner or degree the performance of Contractor's obligations and responsibilities under this Agreement.  Contractor further agrees that while this Agreement is in effect, Contractor shall not acquire or otherwise obtain any interest, direct or indirect, that would interfere with or impair in any manner or degree the performance of Contractor's obligations and responsibilities under this Agreement.

C.      Contractor represents and warrants that it has not provided or promised to provide any gift or other consideration, directly or indirectly, to any officer, employee, or agent of City to obtain City's approval of this Agreement.  Contractor shall not, at any time, have any financial interest in this Agreement or the project that is the subject of this Agreement other than the compensation to be paid to Contractor as set forth in this Agreement.  In the event the work and/or services to be performed hereunder relate to a project and/or application under consideration by or on file with the City, (i) Contractor shall not possess or maintain any business relationship with the applicant or any other person or entity which Contractor knows to have a personal stake in said project and/or application, (ii) other than performing its work and/or services to City in accordance with this Agreement Contractor shall not advocate either for or against said project and/or application, and (iii) Contractor shall immediately notify City in the event Contractor determines that Contractor has or acquires any such business relationship with the applicant or other person or entity which has a personal stake in said project and/or application.  The provisions in this Section shall be applicable to all of Contractor's officers, directors, employees, and agents, and shall survive the termination of this Agreement.

10

D.    Contractor acknowledges that pursuant to the provisions of the Political Reform Act (Government Code section 87100 *et seq.*), City may determine Contractor to be a "Consultant" as that term is defined by the Act. In the event City makes such a determination, Contractor agrees to complete and file a "Statement of Economic Interest" with the City Clerk to disclose such financial interests as required by City. In such event, Contractor further agrees to require any other person doing work under this Agreement to complete and file a "Statement of Economic Interest" to disclose such other person's financial interests as required by City.

**3.18    Contractor Ethics.**  Contractor represents and warrants that it has not provided or promised to provide any gift or other consideration, directly or indirectly, to any officer, employee, or agent of City to obtain City's approval of this Agreement. Contractor shall not, at any time, have any financial interest in this Agreement or the project that is the subject of this Agreement other than the compensation to be paid to Contractor as set forth in this Agreement. In the event the work and/or services to be performed hereunder relate to a project and/or application under consideration by or on file with the City, (i) Contractor shall not possess or maintain any business relationship with the applicant or any other person or entity which Contractor knows to have a personal stake in said project and/or application, (ii) other than performing its work and/or services to City in accordance with this Agreement Contractor shall not advocate either for or against said project and/or application, and (iii) Contractor shall immediately notify City in the event Contractor determines that Contractor has or acquires any such business relationship with the applicant or other person or entity which has a personal stake in said project and/or application. The provisions in this Section shall be applicable to all of Contractor's officers, directors, employees, and agents, and shall survive the termination of this Agreement.

**3.19  Compliance with California Unemployment Insurance Code Section 1088.8.**  If Contractor is a Sole Proprietor, then prior to signing the Agreement, Contractor shall provide to the City a completed and signed Form W-9, Request for Taxpayer Identification Number and Certification. Contractor understands that pursuant to California Unemployment Insurance Code Section 1088.8, the City will report the information from Form W-9 to the State of California Unemployment Development Department, and that the information may be used for the purposes of establishing, modifying, or enforcing child support obligations, including collections, or reported to the Franchise Tax Board for tax enforcement purposes.

**SECTION FOUR:    MISCELLANEOUS PROVISIONS**

**4.1    Records and Reports.**  The City Manager or his/her designee of the City of Irvine reserves the right to audit the Contractor's compliance with all of the terms and conditions of this Agreement at any time. Upon request by City, Contractor shall prepare and submit to City any reports concerning Contractor's performance of the services rendered under this Agreement. City shall have access, with 72 hours **advance written** notice **delivered to Contractor**, to the books and records of Contractor related to Contractor's performance of this Agreement in the event any audit is required. All drawings, documents, and other materials prepared by Contractor in the performance of this Agreement (i) shall be the property of City and shall be delivered at no cost to City upon request of City or upon the termination of this Agreement, and (ii) are confidential and shall not be made available to any individual or entity without prior written approval of City. Contractor shall keep and maintain all records and reports related to this Agreement for a period of

11

three (3) years following termination of this Agreement, and City shall have access to such records in the event any audit is required.

**4.2    Notices**.  Unless otherwise provided herein, all notices required to be delivered under this Agreement or under applicable law shall be personally delivered, or delivered by United States mail, prepaid, certified, return receipt requested, or by reputable document delivery service that provides a receipt showing date and time of delivery.  Notices personally delivered or delivered by a document delivery service shall be effective upon receipt.  Notices delivered by mail shall be effective at 5:00 p.m. on the second calendar day following dispatch.  Notices to the City shall be delivered to the following address, to the attention of the City Representative set forth in Paragraph D.1 of the Fundamental Terms of this Agreement:

<u>To City</u>:              City of Irvine
                     One Civic Center Plaza  (92606) (Hand Deliveries)
                     P. O. Box 19575
                     Irvine, CA  92623-9575

Notices to Contractor shall be delivered to the address set forth below Contractor's signature on Part I of this Agreement, to the attention of Contractor's Representative set forth in Paragraph D.2 of the Fundamental Terms of this Agreement.  Changes in the address to be used for receipt of notices shall be effected in accordance with this Section 4.2.

**4.3    Construction and Amendment**.  The terms of this Agreement shall be construed in accordance with the meaning of the language used and shall not be construed for or against either party by reason of the authorship of this Agreement or any other rule of construction which might otherwise apply.  The headings of sections and paragraphs of this Agreement are for convenience or reference only, and shall not be construed to limit or extend the meaning of the terms, covenants and conditions of this Agreement.  This Agreement may only be amended by the mutual consent of the parties by an instrument in writing.

**4.4    Severability**.  Each provision of this Agreement shall be severable from the whole. If any provision of this Agreement shall be found contrary to law, the remainder of this Agreement shall continue in full force.

**4.5    Authority**.  The person(s) executing this Agreement on behalf of the parties hereto warrant that (i) such party is duly organized and existing, (ii) they are duly authorized to execute and deliver this Agreement on behalf of said party, (iii) by so executing this Agreement, such party is formally bound to the provisions of this Agreement, and (iv) the entering into this Agreement does not violate any provision of any other Agreement to which said party is bound.

**4.6    Special Provisions**.  Any additional or supplementary provisions or modifications or alterations of these General Provisions shall be set forth in Part III of this Agreement ("Special Provisions").

**4.7    Precedence**.  In the event of any discrepancy between Part I ("Fundamental Terms"), Part II ("General Provisions"), Part III ("Special Provisions"), Part IV ("Scope of Services"), and/or Part V ("Budget"), Part III shall take precedence and prevail over Parts I, II, IV and V; Part II shall take precedence and prevail over Parts I, IV and V; Part IV shall take precedence and prevail over Parts I and V; and Part V shall take precedence over Part I.

12

## PART III
## SPECIAL PROVISIONS

1) **Business License Requirement.**  Contractors who provide services for the City of Irvine within the city limits of Irvine shall obtain, within five (5) days of executing this Agreement and prior to commencing any work herein, a City of Irvine business license and shall maintain a current business license throughout the term of this Agreement.

2) **Living Wage Ordinance**.  The City of Irvine has adopted a Living Wage Ordinance (the "Ordinance") that requires contractors who enter into a contract with the City to provide services with an estimated value of one hundred thousand dollars ($100,000) or more for any consecutive twelve-month period to comply with the requirements of the Ordinance (reference Appendix A). Contractor shall notify the City in writing if the aggregate value of multiple contracts with the City, including amendments to this Agreement, total $100,000 or more. Any subcontractor(s) performing work on the Agreement shall also be subject to the requirements of the Ordinance. The current living wage and benefit factor rates are posted on the City's website at www.cityofirvine.org/purchasing. To view the rates, along with other living wage information, click on the "Living Wage Information" link.

**Contractors are required to submit a completed Declaration of Compliance - Living Wage Ordinance form (included herein as Appendix B) with their completed contract documents.**

The following Living Wage Ordinance information documents are also included:  Living Wage Guide (Appendix C); Living Wage Comparable Benefits Summary (Appendix D); and the required Notice to Employees (Contractor Responsibility/Employee Rights) (Appendix E).

3) **PART II GENERAL PROVISIONS, Section 2.1.1 Insurance Coverage Required, Professional Liability Insurance, is replaced with the following:**

**Professional Liability Insurance** with minimum annual aggregate limits of $10,000,000. Covered professional services shall include all work performed under this Agreement and delete any exclusion that may potentially affect the work to be performed; Subcontractors and consultants to Contractor may also satisfy the insurance coverage requirements of this Agreement if they provide minimum limits of $3,000,000 each claim.

4) **PART II GENERAL PROVISIONS, Section 2.2 Indemnification, is replaced with the following:**

**Defense and Indemnification.** Contractor agrees to defend and indemnify City and its officers, agents and employees against, and to hold and save them harmless from, any and all actions, claims, damages to persons or property, penalties, obligations, or liabilities that may be asserted or claimed by any person, firm, entity, corporation, political subdivision or other organization arising out of the willful or negligent act, errors or omissions of Contractor, its agents, employees, or subcontractors, in performance of services under this Agreement, excepting claims of professional negligence or malpractice.  Nothing herein shall be deemed to affect or waive City's rights to make or pursue claims of professional negligence or malpractice against Contractor.

13

5) **PART II GENERAL PROVISIONS, Section 3.9 Termination by City, is replaced with the following:**

**Termination by City.** City reserves the right to terminate this Agreement at any time, with or without cause, upon written notice to Contractor. Upon receipt of any notice of termination from City, Contractor shall immediately cease all services hereunder except such as may be specifically approved in writing by City. Contractor shall be entitled to compensation for all services rendered prior to receipt of City's notice of termination and for any services authorized in writing by City thereafter. If termination is due to the failure of Contractor to fulfill its obligations under this Agreement, City may take over the work and prosecute the same to completion by contract or otherwise, and Contractor shall be liable to the extent that the total cost for completion of the services required hereunder, including costs incurred by City in retaining a replacement contractor and similar expenses, exceeds the Budget. <u>Contractor agrees that upon termination of this Agreement and of services in any manner, it will provide to City a closing report, including a brief description of the facts of the case, completed research, and calendar of any scheduled court appearances and deadlines, with respect to all pending litigation matters handled by Contractor.</u>

6) **The following section is added to PART II GENERAL PROVISIONS, Section 3.10 <u>Right to Stop Work; Termination by Contractor.</u>**

Contractor shall have the right to terminate this Agreement at any time, with or without cause, upon sixty (60) days' advance written notice to City. Contractor agrees, consistent with its professional responsibilities, to allow for sufficient time and services to permit City to arrange for alternative representation. City and Contractor agree to cooperate in the transition of work and substitution of new counsel as counsel of record.

7) **The following section is added to PART II GENERAL PROVISIONS, Section 3.17 <u>Conflicts of Interest</u>:**

Contractor has disclosed all present and contemplated representation of other clients or third parties on any matter (either litigation or non-litigation) that may be adverse to City.

Contractor agrees that Contractor, its officers, directors, partners and employees shall not represent any other client or party on any matter (either litigation or non-litigation) adverse to the City. Contractor further agrees that following the termination of this Agreement, Contractor, its officers, directors, partners and employees shall not represent any other client or third party in any matter relating to the City, without first receiving a written release from the City. Contractor has also considered the potential applicability of the Political Reform Act of 1974 to Contractor's services pursuant to this Agreement and has concluded that no conflict of interest exists that would preclude Contractor from performing the services required of Contractor pursuant to this Agreement.

8) **The following section is added to PART II GENERAL PROVISIONS:**

**Findings Confidential, Ownership, Reports and Information.** All reports, information, data and exhibits prepared or assembled by Contractor in connection with the performance of its services pursuant to this Agreement are confidential and Contractor agrees that they shall not be made available to any individual or organization without prior written consent of City, as applicable. All such reports, information, data and

14

exhibits shall be the property of City, as applicable, and shall be delivered to City upon demand without additional cost or expense to City.

**PART IV**

**SCOPE OF SERVICES**

Contractor shall perform City Attorney and general counsel services for the City of Irvine ("City") and the Orange County Great Park Corporation ("Great Park"); as directed by the City or Great Park, as applicable.

Contractor shall perform the services as set forth below.

1. Attend all City Council, Great Park Board of Directors and Planning Commission meetings.

2. Provide legal advice, counsel, services, consultation and opinions to City Council, Great Park, City Manager and City staff on a wide variety of municipal assignments.

3. Provide conflict of interest assistance to elected and appointed officials and staff, and assist officials and staff in seeking advice from the Fair Political Practices Commission.

4. Attend departmental meetings, staff meetings or committee meetings as deemed necessary and appropriate or as requested by the City Manager, City Council or Great Park Board of Directors.

5. Perform research and interpret laws, court decisions and other legal matters in order to prepare legal opinions and to advise the City Council, Great Park Board and management staff on legal matters pertaining to City operations.

6. Provide routine legal advice, telephone and personal consultations with City Council, Great Park Board, City Manager and City staff.

7. Review and/or prepare staff reports, ordinances, resolutions, orders, agreements, forms, notices, declarations, certificates, deeds, leases, and other documents required by the City or Great Park.

8. Render advice and assistance in the administration of the City's and Great Park's general liability and risk management programs to the extent that the same is not covered by the California Insurance Pool Authority (CIPA).

9. Serve as legal counsel to bodies as may be created and represented by or for the City and which meet regularly or periodically or on an as-needed basis.

10. Provide assistance to the City regarding election laws and assist in review of election forms, filings, and coordination with county, state and federal election officials.

11. Represent the City before other governmental bodies and agencies to promote the interests of the City.

16

12. Provide assistance to staff to monitor pending and current State and Federal legislation, regulations and case law. Conduct legislative analysis of proposed legislation and regulations to include impacts to the City, as directed.

13. Ensure that current and future City ordinances, policies, procedures and practices comply with state and federal law. Inform City Council and staff and recommend changes to City ordinances and practices, as needed.

14. Support enforcement of City codes, zoning regulations and building standards through administrative, quasi-judicial and judicial actions.

15. Provide assistance with issues related to land use and zoning ordinance, general plan and master plan updates.

16. Perform legal work pertaining to property acquisitions, condemnations, forfeiture activities, public improvements, public rights of ways, CEQA, and matters relating to special assessments and public utilities.

17. Provide City Council with guidance relative to Roberts Rules of Order, open meetings, Brown Act, and other related procedural matters.

18. Coordinate and monitor the work of special legal counsel as needed and directed by the City Council and/or City Manager.


**Non-Retainer Services/Special Counsel:**

Certain other legal services may also be required at the City's sole discretion including but not limited to the following:

1. Provide litigation support including monitoring matters involving litigation affecting the City and represent the City in actions, suits, or proceeding in which the City is a party or has a legal interest.

2. Commence and prosecute criminal actions necessary and appropriate to enforce municipal ordinances, including enforcement through administrative proceedings.

3. Represent the City and Great Park in the administration of claims and litigation filed by or against them. Upon recommendation and City approval, special counsel may be retained to defend or prosecute actions under certain circumstances, including, but not limited to, matters assigned by CIPA for tort defense and workers' compensation defense work. Prior to commencing any litigation services, Contractor shall notify and obtain approval from the City, as appropriate, and provide a case evaluation and plan -   which shall include a statement of known facts and legal issues, statement of known injuries or damages, statement of liability exposure, recommendations on case strategy, possibilities and recommendations regarding early settlement, and a budget of anticipated fees, costs, and expenses through pleadings, discovery, arbitration, trial, and any other identifiable stages.  Contractor shall advise the City in timely

17

fashion and in writing of any material change in the factors identified in the case evaluation and plan, including any change in the estimated budget. Contractor shall provide the City, as appropriate, with a written status report of all pending litigation matters on a quarterly basis, or more frequently upon request.

4. Render advice and assistance to the City on labor relations matters, review memoranda of understanding or other labor agreements, draft implementing legislation or other pertinent documents, and represent the City on matters arising from memoranda of understanding of the City's personnel rules and regulations.

5. Provide services on legal matters subject to reimbursement and other specialized litigation, specialized transactions and representational matters as requested by the City.

6. As needed and directed by the City or Great Park, Contractor may perform work related to the City of Irvine Successor Agency to the Dissolved Irvine Redevelopment Agency and post-Redevelopment.

## PART V

## BUDGET

Pricing shall be as set forth below and as listed in the Cost Summary in Attachment A.

Included in the Budget are all ordinary and overhead expenses incurred by Contractor and its agents and employees, including meetings with City representatives, and incidental costs incurred in performing under this Agreement.

The City shall not reimburse Contractor for local travel-related expenses, so any such costs must be included in the hourly rates set forth herein. The City will, however, provide reimbursement for reasonable pre-approved travel out of the area to include airfare and hotel reimbursement only. Contractors submitting expense reimbursement requests to the City shall include on their invoices detailed information including description, date of the expense, business purpose and amount. Travel related expenses (including hotels) shall be reimbursed at direct cost, but not to exceed the federal per diem rate as established by the U.S. General Services Administration (www.gsa.gov/perdiem), plus applicable taxes. Contractor shall attach supporting documents substantiating all expenses such as itemized receipts, paid invoices or paid credit card statements (if description has sufficient detail). Any request for travel-related expense reimbursement must be pre-approved by the City.

Payment for services will be made monthly on invoices deemed satisfactory to the City, with payment terms of net 45 days upon receipt of invoice. Contractor shall submit invoices within fifteen (15) days from the end of each month in which services have been provided. Contractor shall provide invoices with sufficient detail to ensure compliance to pricing as set forth in this Agreement. The information required may include: date(s) of work, hours of work, hourly rate(s), and material costs.

Contractors shall provide invoicing in the format requested by City.

Payment by City under this Agreement shall not be deemed as a waiver of the City's right to claim at a later point that such payment was not due under the terms of this Agreement.

Pricing shall remain firm for three (3) years, if the contract is extended beyond its one-year term. Thereafter, any proposed pricing adjustment for follow-on renewal periods shall be submitted to the City Representative in writing at least ninety (90) days prior to the new Agreement term. City reserves the right to negotiate any pricing adjustment not to exceed the Bureau of Labor Statistics Consumer Price Index (CPI) data as follows: Los Angeles-Riverside-Orange County, CA; All Items; Not Seasonally Adjusted; annualized change comparing the most recent month's reported data to the same month of the prior year. (This information may be found on the U.S. Department of Labor's website at www.bls.gov.)

19



# ATTACHMENT A

## COST SUMMARY

| Labor Rates | |
|---|---|
| City Attorney | $195 per hour |
| Assistant City Attorney | $195 per hour |
| Partner/Associate | $195 per hour |
| Law Clerk | $140 per hour |
| Paralegal | $110 per hour |
| Special Services | $225 per hour |

Rutan's minimum unit of time for billing is one-tenth of an hour (.1).

"Special Services" includes: cable television, telecommunications, solid waste and other franchise matters; water and wastewater utility issues; complex economic development and successor agency matters, including services to or for the benefit of the City's successor agency to the extent such services are not an enforceable obligation of the successor agency; advice on water quality, NPDES, hazardous materials and other complex environmental matters; and any non-routine item or matter added by the City Council. Furthermore, Special Services includes litigation and contested administrative matters. Litigation includes, in addition to formal litigation, contested administrative matters before other governmental agencies (e.g., Department of Industrial Relations, Regional Water Quality Control Board), and internal administrative proceedings such as employee disciplinary hearings and any resulting lawsuits, eminent domain matters, proceedings to revoke land use entitlements or City-issued licenses, and similar litigation-like proceedings.

Legal work performed relating to the Great Park will be charged at the same rate as regular City Attorney work, unless the nature of the work fits within the definition of "Special Services" detailed in the above paragraph.

In-service training costs are charged at the normal hourly rates. However, since Rutan gives such training repeatedly to its City clients (including ethics training, mandatory AB 1234 training, new Councilperson/Commissioner training, harassment training, ...), it already has prepared presentation materials.

On bond counsel matters, if contingent, one percent (1%) of the first $1 million executed and delivered; one-half percent (0.5%) of the next $4 million executed and delivered; one-quarter percent (0.25%) of the next $10 million executed and delivered; one-eighth percent (0.125%) of

20

the next $5 million executed and delivered; and one-tenth percent (0.1%) of any amount over $20 million executed and delivered; all subject to a minimum fee of $25,000. Payment of fees is entirely contingent upon the successful execution and delivery of the bonds or notes to be payable on or after delivery except for out-of-pocket costs, which are payable in any event. If non-contingent, $300 per hour, together with out-of-pocket expenses. In the event that multiple series of bonds or notes are issued, the foregoing fee structure would be applied to each issue, subject to the $25,000 minimum fee per issue.

On projects for which the City is reimbursed by a third party or applicant, Rutan may charge its full design rate for the attorney performing the work.

**Exhibit 1**

**WORKERS' COMPENSATION INSURANCE CERTIFICATION**

Contract Services Description: _City Attorney Services_

**WORKERS' COMPENSATION DECLARATION**

I hereby affirm under penalty of perjury one of the following declarations:

*(CHECK ONE APPLICABLE BOX BELOW)*

☒ **I have and will maintain workers' compensation insurance**, as required by Section 3700 of the Labor Code, for the performance of the work to be performed under this Agreement and shall submit insurance certificates evidencing such coverage as set forth herein.

☐ I certify that, in the performance of the work under this Agreement, **I shall not employ any person** in any manner so as to become subject to the workers' compensation laws of California, and I hereby agree to indemnify, defend, and hold harmless the City of Irvine and all of its officials, employees, and agents from and against any and all claims, liabilities, and losses relating to personal injury or death, economic losses, and property damage arising out of my failure to provide such worker's compensation insurance. I further agree that, **if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions and immediately furnish insurance certificates** evidencing such coverage as set forth herein.

WARNING:    FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

| | |
|---|---|
| **Dated:** | August 13, 2013 |
| **Contracting Firm:** | Rutan & Tucker, LLP |
| **Signature:** | Todd O. Titflin |
| **Title:** | Partner |
| **Address:** | 611 Anton Blvd, Suite 1400, Costa Mesa, CA 92626 |

22

**Appendix A**

CITY COUNCIL ORDINANCE NO. 07-15


AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF IRVINE, CALIFORNIA, ADDING DIVISION 6 TO TITLE 2 OF THE IRVINE MUNICIPAL CODE RELATING TO LIVING WAGE REQUIREMENTS

The City Council of the City of Irvine DOES HEREBY ORDAIN AS FOLLOWS:

SECTION 1.  Division 6, entitled "Living Wage Requirements," is hereby added to Title 2 ("Administrative Services") of the Irvine Municipal Code to read in its entirety as follows:

Division 6.  Living Wage Requirements

Section 2-6-101.  Title and Purpose.

A.      This division shall be known and may be cited as the "City of Irvine Living Wage Ordinance."

B.      The purpose of this division is to improve the quality of services to beneficiaries of City-contracted services and to ensure that employees of City service contractors earn an hourly wage that is sufficient to live with dignity and to achieve economic self-sufficiency.  The City contracts with many businesses and organizations to provide services to the public.  Such public expenditures should in accordance with a community economic standard that permits workers to live above the poverty level.

C.      This division is intended to protect the public health, safety and welfare.  It advances this intent by requiring that public funds be expended in such a manner as to facilitate individual self-reliance by employees of City contractors.

Section 2-6-102.  Findings.

A.      As a charter city, the City has the power to set compensation and terms of employment for its employees as an exercise of its municipal powers.

B.      The City awards contracts to private firms and other businesses to provide services to the public and to City government.

C.      The use of City funds to create living wage jobs will decrease poverty, increase consumer income, invigorate community businesses and

reduce the need for taxpayer-funded social service programs.

D.    When City funds are used to contract for services, such contracts should demonstrate an effort to promote an employment environment that enhances the general quality of life within the community and maximizes the productive effect of the City's limited resources.

E.    The City's use of contractors that do not provide health insurance to their employees can result in imposing the costs of their medical care on the county, state and federal governments.

F.    Employees are more likely to be healthy if their employers provide reasonable health insurance to them and their dependents.

G.    The payment of a living wage as required by this division benefits the above-stated interests.

Section 2-6-103.  Definitions.

For purposes of this division, the following definitions shall be applicable:

(a) "Benefit factor rate" means the rate established by the City to be the estimated cost of health benefits paid to a covered employee. If the Contractor does not provide comparable benefits equal to or exceeding this rate to the covered employee, the benefit factor rate must be added to the living wage rate to arrive at the total hourly rate that must be paid to the covered employee.

(b)    "City" means the City of Irvine and all City agencies, departments and offices, including but not limited to the Irvine Redevelopment Agency and the Orange County Great Park Corporation.

(c) "Contractor" means any person or business that enters into a new service contract or any service contract with the City that is amended, renewed or extended after the effective date of this division except for those bids, RFP's and contracts that were in process at the time this division becomes effective. For the purposes of this division, the term "Contractor" shall include all subcontractors retained by a Contractor to perform any or all of the functions covered by the contract.

(d) "Covered employee" means (1) any employee whose services fulfill the Contractor's contractual obligations for contracts with the City that are subject to this division and (2) any other employee of the Contractor who performs a majority of his or her services within Orange County.  Additionally, bona fide volunteers shall not be considered

"covered employees."

(e) "Health benefits" means medical and dental benefits offered by the Contractor to its employees in which the employer pays at least the current benefit factor rate on behalf of its covered employees.

Section 2-6-104.  Application of this Division.

Every Contractor that enters into a contract with the City to provide services with an estimated value of one hundred thousand dollars ($100,000) or more for any consecutive twelve-month period shall comply with the requirements of this division.  As a condition of the contract, the Contractor shall notify the City in writing if the aggregate value of multiple contracts with the City is $100,000 or more.

Section 2-6-105.  Duties of the Purchasing Agent.

The Purchasing Agent shall be responsible for ensuring that the requirements of this division are incorporated in all contracts, bid documents, requests for proposals (RFP's) and requests for qualifications (RFQ's) that may be subject to this division to ensure proper implementation of all requirements.  In addition, the Purchasing Agent shall be responsible for developing and implementing rules and regulations for the effective administration of all requirements set forth in this division.

Section 2-6-106.  Compensation Required to be Paid to Contractor's Employees.

A.     All Contractors subject to the requirements of this division shall pay its covered employees an hourly rate and comparable health benefits and paid time off (such as vacation, sick, holiday and jury duty) as set by the most current City Council Resolution establishing compensation policy for employees.  The hourly rate shall be the minimum hourly rate of all salary classifications.  An additional rate, defined as the benefit factor rate, shall be added to the hourly rate if comparable health benefits are not offered by the Contractor to the covered employee.

B.     Beginning July 1, 2007, the City shall provide notice to all covered Contractors by posting current living wage and benefit factor rates on the City's web site in the Bids & RFP's Purchasing section.  In general, rates are subject to change each July; however, Contractors are responsible for monitoring and updating payroll records to accommodate rate changes where applicable.  In addition, Contractors are responsible for notifying and ensuring compliance with these requirements by

CC ORDINANCE 07-15

subcontractors retained by Contractor to perform any or all of the functions covered by the contract.

C.    A Declaration of Compliance must be signed by an authorized agent of the Contractor and will serve as part of the terms of the contract and/or amendments.

D.    In the event that collective bargaining agreements and/or prevailing wage requirements are higher than the current living wage rates as set forth in this division, collective bargaining and/or prevailing wage rates must be paid to covered employees.

Section 2-6-107. Exceptions.

A.    The City Council, by majority vote, may grant a whole or partial exception to the requirements of this division to a Contractor at the time of award of the contract if the City Council determines that imposition of the requirements of this division would violate State or Federal laws. A Contractor that desires such a determination by the City Council shall, at the time it submits its bid or proposal to the City, provide the City with a written request that it desires exemption from the requirements of this division, and a reference to the specific State or Federal laws, if applicable, that would be violated if the City imposed the requirements of this division on the Contractor.

B.    The City Council, by a four-fifths vote, may grant a whole or partial exception to the requirements of this division to a Contractor at the time of award of the contract if the City Council determines that the existence of an emergency or other extraordinary circumstances (such as the creation of training positions that will enable employees to advance into permanent living wage jobs or better) justifies an exemption from the requirements of this division. Exemptions pursuant to this subsection are disfavored and shall be granted only when a balancing of competing interests weighs clearly in favor of granting an exemption, in the sole and absolute discretion of the City Council. If an exemption is to be granted, a partial exemption is favored over a whole exemption, and limits on the duration of the exemption are favored as well.

Section 2-6-108. Duties of Director of Administrative Services.

A.    The Director of Administrative Services, or his or her designee, shall have the authority to perform the following acts for purposes of accomplishing the intent of this division and as deemed necessary or appropriate in the Director's judgment:

(1)    Review, investigate and/or maintain records of

4                            CC ORDINANCE 07-15

complaints alleging that the Contractor has violated the requirements of this division.

(2)  Perform random audits of the Contractor's and/or the Contractor's subcontractor's records to verify compliance with this division.

B.  Upon determining that a Contractor is operating in accordance with the requirements of this division, the Director of Administrative Services shall furnish the Contractor with a written recognition and acknowledgment of such compliance.

Section 2-6-109.  Contractor Notice Posting Requirements.

A.  A Contractor subject to the requirements of this division shall post in a conspicuous place, as required by State and Federal laws for other notices to employees, a copy of the notice referred to in this division, a sample of which is provided as part of the contract documents. The Contractor is responsible for notifying and requiring compliance from any subcontractors retained by Contractor, to perform any or all functions covered by the contract.

B.  A Contractor subject to the requirements of this division shall post in a conspicuous place, as required by State and Federal laws for other notices to employees, a notice of potential Federal Earned Income Tax Credit (EITC) eligibility for covered employees.

Section 2-6-110.  Retaliation and Discrimination Prohibited.

No Contractor shall discharge, reduce the compensation of or otherwise discriminate or retaliate against any of its employees for making a complaint to the City, asserting the employee's rights or assisting another employee in making a complaint or asserting his or her rights under this division.

Section 2-6-111.  Complaint Process for Violations.

A.  Any covered employee may lodge a written complaint with the Director of Administrative Services or his/her designee that a Contractor or subcontractor has violated the requirements of this division.

B.  Upon receipt of such a complaint, the Director of Administrative Services, or his/her designee, shall review and investigate at his/her discretion, the complaint and determine if the Contractor should be issued a preliminary notice of violation, which shall also contain the corrective measures the Contractor is required to undertake and/or the

remedies that are being imposed. If the Contractor does not file a timely and sufficient appeal to the preliminary notice of violation, it shall become final and conclusive.

C.     If a Contractor receives a notice of violation, the Contractor may request in writing an appeal hearing before the Director of Administrative Services, or his/her designee, to dispute the violation and/or corrective measures and/or remedies required. The request for an appeal hearing shall be filed with the City Clerk within fifteen (15) days of the date the Director of Administrative Services issued the preliminary notice of violation, and shall contain the reasons why the Contractor believes that a violation does not exist and/or that the corrective measures and or remedies are not appropriate. The Director of Administrative Services or his/her designee shall conduct the appeal hearing within forty-five (45) days of receipt of the appeal request. Within fifteen (15) days of the conclusion of the appeal hearing, the Director of Administrative Services shall issue his/her findings and final decision with respect to the appeal hearing

D.     A Contractor may appeal the final decision of the Director of Administrative Services to the City Council by filing a written notice of appeal within fifteen (15) days of the date of the Director's final written decision. The City Council shall conduct a hearing on the appeal within forty-five (45) days of its receipt of the appeal request and either uphold, overturn or modify the Director's final decision.

Section 2-6-112. Remedies of City for Violations.

A.     The City may impose any or all of the following corrective measures and/or remedies against a Contractor for violations of this division:

(1) Order the Contractor to comply with all regulations of this Section within sixty (60) days.

(2) Order payment to covered employees to compensate the employees up to the compensation level required by this division.

(3) Suspend payments for and/or suspend or cancel contracts between the City and the Contractor.

(4) Render the Contractor ineligible to enter into contracts with the City for a period of three (3) years or until all restitution to covered employees has been paid, whichever is longer.

B.     In addition to the above corrective measures and/or

6                              CC ORDINANCE 07-15

remedies, the City shall be entitled to seek any and all other equitable and legal rights it may have under Federal, State and local laws, including without limitation injunctive relief, for purposes of enforcing the remedies set forth above.

Section 2-6-113 . <u>Remedies of Covered Employees for Violations</u>.

A.    A covered employee shall have the right to seek the following remedies against a Contractor violating the provisions of this division in a court of competent jurisdiction:

(1) Restitution to compensate the employee for all amounts that should have been paid to the employee pursuant to this division.

(2) Reasonable attorneys' fees and costs.

(3) Any and all other legal and equitable remedies available under Federal, State and local laws.

SECTION 2.   If any portion of this Ordinance, or the application of any such provision to any person or circumstances, shall be held invalid, the remainder of this Ordinance to the extent it can be given effect, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby, and to this extent the provisions of this Ordinance are severable.

SECTION 3.   The City Council determines that pursuant to Title 14, California Code of Regulations Section 15061, this project is exempt from the California Environmental Quality Act because it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment.

SECTION 4.   The City Clerk shall certify to the passage of this Ordinance and this Ordinance shall be published as required by law and shall take effect as provided by law.

CC ORDINANCE 07-15

PASSED AND ADOPTED by the City Council of the City of Irvine at a regular meeting held on the 12th day of June, 2007.

_____
MAYOR OF THE CITY OF IRVINE

ATTEST:

_____
CITY CLERK OF THE CITY OF IRVINE

STATE OF CALIFORNIA    )
COUNTY OF ORANGE      )      SS
CITY OF IRVINE              )

I, SHARIE APODACA, City Clerk of the City of Irvine, HEREBY DO CERTIFY that the foregoing Ordinance was introduced for first reading on May 22nd, 2007, and duly adopted at a regular meeting of the City Council of the City of Irvine held on the 12th day of June, 2007, by the following vote:

AYES:     3   COUNCILMEMBERS:   Agran, Kang, and Krom

NOES:     2   COUNCILMEMBERS:   Choi and Shea

ABSENT:  0   COUNCILMEMBERS:   None

_____
CITY CLERK OF THE CITY OF IRVINE

8                                          CC ORDINANCE 07-15

## AFFIDAVIT OF POSTING

STATE OF CALIFORNIA)
COUNTY OF ORANGE   ) ss
CITY OF IRVINE          )

I, SHARIE APODACA, City Clerk of the City of Irvine, HEREBY DO CERTIFY that on the 22nd day of June 2007, I caused to have posted the foregoing true and correct copy of Ordinance No. 07-15 of the City of Irvine in the following public places in the City:

1)     Bulletin Board in Walnut Village Shopping Center, Culver and Walnut, Irvine.

2)     Bulletin Board in University Park Shopping Center, Culver at Michelson, Irvine.

3)     Bulletin Board in Northwood Shopping Center, Irvine Boulevard at Yale, Irvine.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the official seal of the City Council of the City of Irvine, California, the 22nd day of June 2007.

_____
CITY CLERK OF THE CITY OF IRVINE

CC ORDINANCE 07-15

# Appendix B

## DECLARATION OF COMPLIANCE
### Living Wage Ordinance

Name of Contractor     _Rutan & Tucker, LLP_

Type of Service     _City Attorney_

The above-named contractor hereby declares and agrees as follows:

1. I have read and understand the requirements set forth by the City's Living Wage Ordinance (the "Ordinance") that has been provided by the City of Irvine ("City") in connection with the City's request for proposals or other invitation or solicitation for the performance of services under a City contract.

2. As a condition of receiving the City contract, I agree to fully comply with all of the requirements specified in the Ordinance. As required by the Ordinance and while under any City contract subject to the Ordinance, I agree to pay no less than the minimum compensation, including the benefit factor rate as applicable, to all "covered employees" as that term is defined by the Ordinance.

3. If the amount of this City contract is less than one hundred thousand dollars ($100,000), then as a condition of receiving this contract, I agree to notify the City in writing if the aggregate value of multiple City contracts covered by the Ordinance, including amendments to this contract, is one hundred thousand dollars ($100,000) or more within any consecutive 12-month period.

4. I acknowledge and agree that the Ordinance, and this Declaration, shall constitute part of the City contract, and that these provisions shall govern in the event of any conflict with any other provisions of the contract.

5. I further acknowledge and agree that any violation of the Ordinance constitutes a material breach of City contract, and that if such a breach occurs, the City may avail itself of any or all of the remedies for violations that are provided by the Ordinance.

6. I acknowledge and understand that retaliation and/or discrimination against any employee making a complaint to the City, asserting his or her rights or assisting another employee in making a complaint, constitutes a violation of the Ordinance. In addition, I understand that violated employees may seek any or all of the remedies that are provided by the Ordinance.

7. If requested by the City, I agree to promptly submit certified payroll and/or benefits documents to the City for my firm and/or subcontractor(s) as requested by the City, and shall take any other steps as may be required by the City to ensure that my firm and my subcontractor(s) have complied with the Ordinance. The documents requested may include, but are not limited to, covered employee timesheets, gross pay calculations, pay registers, cancelled checks, medical and dental insurance invoices, paid time off policies, and other related payroll or benefit documents.

8. I agree to require all subcontractors who I retain to perform any or all of the work or services covered by this contract to comply with the requirements of the

Ordinance, and I shall include the requirements of the Ordinance in all subcontracts covered thereby.

9. I agree to post in a conspicuous place, as required by State and Federal laws for other notices to employees, a notice informing covered employees of their rights under the Ordinance and a notice of potential Federal Earned Income Tax Credit (EITC) eligibility for covered employees.

10. I have received the "Living Wage Guide" from the City, explaining the specific requirements of the Ordinance in detail.

11. I agree to defend, indemnify, and hold harmless the City, its officers and employees, against any claims, actions, damages, costs (including reasonable attorneys' fees) or other liabilities of any kind arising from any violation of the City's Living Wage Ordinance, by my firm or by any subcontractor retained by my firm to perform work or provide services under the City contract.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that I am authorized to bind the Contractor to the provisions of this Declaration.

_____          ____9/5/13_____
Signature of Authorized Representative          Date: (Month/Day/Year)

Print Name: ___Todd O. Litfin_____

Title: ___Partner_____



| Appendix C |
|---|
| **Appendix C** |
| City of Irvine |
| **Living Wage Guide** |

## Living Wage Description

### What is the City of Irvine's Living Wage Ordinance?

The Living Wage Ordinance requires a Contractor entering into City contracts subject to the Ordinance to pay its covered employees an hourly rate, comparable health benefits and paid time off (such as vacation, sick and holiday paid time off) as set by the most current City Council Resolution (Resolution) establishing compensation policy for employees. These benefits are summarized in the Living Wage Comparable Benefits Summary included with this document.

**Current hourly and benefit factor rates, along with other Living Wage Ordinance information, is available on the City of Irvine web site at www.cityofirvine.org. Click on the "Doing Business" tab at the top of the screen, and then select "Living Wage Info."**

The purpose of the Ordinance is to ensure that employees of City services Contractors can earn an hourly wage that is sufficient to live with dignity and to achieve economic self-sufficiency. The use of City funds to create living wage jobs is intended to decrease poverty, increase consumer income, invigorate community businesses and reduce the need for taxpayer-funded social service programs.

## Contractors and Contracts Subject to the Living Wage Ordinance

### Which Contractors are subject to the Living Wage Ordinance?

"Contractor" means any person or business that enters into a new service contract or any service contract with the City (including the Orange County Great Park Corporation) and all other City agencies, departments and offices) that is amended, renewed or extended after July 12, 2007 except for those bids, RFP's and contracts that were in process on that date.

The term "Contractor" shall include all subcontractors retained by a Contractor to perform any or all of the functions covered by the contract.

### Which contracts are subject to the Living Wage Ordinance?

All services contracts greater than $100,000 over a 12-month period are subject to the Living Wage Ordinance. A contract shall be subject to the Living Wage Ordinance if the aggregate value of multiple contracts with the City, including amendments to contracts, is $100,000 or more in a consecutive 12-month period.

## Employees Covered Under the Living Wage Ordinance

### Who is a "covered employee"?

"Covered employee" means (1) any employee whose services fulfill the Contractor's contractual obligations for contracts with the City that are subject to this Ordinance and (2) any other employee of the Contractor who performs a majority of his or her services within Orange County. Volunteers are not considered "covered employees" under the Ordinance.

### Are both part-time and full-time employees covered under the Living Wage Ordinance?

The City does not provide health benefits or paid time off for City employees working less than 30 hours per week on average. Accordingly, there is no current requirement for a Contractor to pay a "benefit factor rate" for its part-time employees who work less than 30 hours a week on average.

1

## Compensation Required Under the Ordinance

**What base hourly rate must I pay "covered employees"?**
The current City Council Resolution sets the minimum hourly rate. This is the rate at which an employee must be paid if the Contractor also provides the employee with health benefits and paid time off that are equal to or exceeding those offered to City employees, as detailed in the current City Council Resolution. **Rates generally change in July of each year.** All rate changes will be posted on the City's web site and Contractors are responsible for monitoring all changes and for notifying their subcontractors of those changes.

**What if my employees are under a collective bargaining agreement or if I am paying my employees prevailing wages?**
In the event that collective bargaining agreements and/or prevailing wage requirements are higher than the current living wage rates as set forth in the Ordinance, collective bargaining and/or prevailing wage rates must be paid to covered employees.

**What minimum health and paid time off benefits are offered to City employees?**
The selection of benefits of all salary classifications is set forth by the most current City Council Resolution establishing compensation for City employees. Currently, minimum City health benefits include an option for employees to enroll in the City's indemnity medical insurance plan or the Health Maintenance Organization (HMO), and the option to enroll in a dental plan. City benefits also include pro-rata paid time off such as sick, vacation, and holiday pay. A summarization of these benefits is included in the Living Wage Comparable Benefit Summary.

**What if I don't offer my employees comparable health and paid time off benefits?**
An additional "benefit factor" must be added to the base hourly rate if employees are not offered health and paid time off benefits equal to or exceeding those offered to City employees, as detailed in the current City Council Resolution and summarized in the Living Wage Comparable Benefit Summary. The current benefit factor must be added to the base minimum rate to reach the total minimum rate for covered employees.

If the cost of health and paid time off benefits provided to your employees cost you less than the current benefit factor, the difference between what you pay and the benefit factor must be added to the base minimum rate to achieve the total hourly compensation that must be paid to the covered employees.

All rate changes will be posted on the City's web site. Contractors are responsible for monitoring all changes and for notifying their subcontractors of the changes.

**How is the benefit factor calculated and how often is it updated?**
The methodology for calculating the benefit factor is based on the actual cost to the City for providing those benefits to employees. **The rate is updated as benefit costs change, generally in July of each year.** All rate changes will be posted on the City's web site. Contractors are responsible for monitoring all changes and for notifying their subcontractors of the changes.

**How do I calculate the benefit factor I am currently paying my employees?**
Take the total annual cost you pay, or offer to pay, as the employer for the benefits offered to your employees including health insurance and paid time off benefits, and then divide by 2,080 (the number of hours in a year).

**Where do I find the current rates?**
Rates may be found on the City's web site, at www.cityofirvine.org. Click on the "Doing Business" tab at the top of the screen, and then select "Living Wage Info." You may also call the Purchasing Department at 949-724-6180.

Rates are subject to change and it is the Contractor's responsibility to monitor and update payroll records to accommodate rate changes when applicable. In addition, Contractors are responsible for notifying and ensuring compliance with these requirements by subcontractors retained by the Contractor to perform any or all functions covered by the contract.

2

## Other Requirements under the Ordinance

**What other requirements must I meet under the Ordinance?**

You are required under the Ordinance to:

- Post in a conspicuous place, as required by State and Federal laws for other notices to employees, a copy of the notice referred to in the Ordinance that informs covered employees of their rights under the Ordinance. A copy will be provided to you with your contract documents and is also available on the City's web site.
- Post in a conspicuous place, as required by State and Federal laws for other notices to employees, a copy of the notice referred to in the Ordinance that informs covered employees of their potential eligibility for Federal Earned Income Tax Credit (EITC). Provide notification of all of the requirements of the Ordinance to any subcontractors retained by you to perform any or all of the functions covered by the contract; and ensure compliance to the Ordinance.
- You are required to monitor and update your payroll records to accommodate Living Wage minimum wage and benefit factor rates when applicable.
- **You are required to contact the City in writing if you are awarded additional contracts and the aggregate value of your contract(s) with the City, including amendments to your contract(s), is $100,000 or more in a 12-month period. Such notification should be sent to: Purchasing Agent, City of Irvine, PO Box 19575, Irvine, CA 92623-9575**

You are **prohibited** under the Ordinance to discharge, reduce the compensation, discriminate or retaliate against any employee for making a complaint to the City, asserting his or her rights or assisting another employee in making a complaint or asserting his or her rights under the Ordinance.

## Compliance and Violations

**How is the Living Wage Ordinance enforced?**
Any covered employee may lodge a written complaint and/or the Director of Administrative Services may at any time review, investigate and/or perform random audits of the Contractor's records to verify compliance with the Ordinance.

**If I am audited what documents might I be asked to provide?**
Specific documents that may be reviewed include, but are not limited to, covered employee time cards, gross pay calculations, pay registers, canceled checks, medical and dental insurance invoices, paid time off policies, required postings and other related payroll or benefit documents.

**What happens if it is determined that I am not in compliance with the Ordinance?**
The City may impose any or all of the following corrective measures for violations of the Ordinance:

- Order Contractor to comply within 60 days
- Order payment to covered employees to compensate the employee for amounts that should have been paid under the contract
- Suspend payments to the Contractor for the contract in violation
- Cancel the City contract in violation
- Render the Contractor ineligible to enter into contracts with the City for a period of three years or until all restitution to covered employees has been paid, whichever is longer
- Seek all other equitable and legal rights under Federal, State and local laws, including injunctive relief

**Is there an appeal process?**
If it is determined that the Contractor is not in compliance, the Contractor will be issued a preliminary notice of violation that contains the corrective measures required by the Contractor. The Contractor may request in writing an appeal hearing before the Director of Administrative Services to dispute the violation and/or the corrective measures. The request for appeal hearing must be filed with the City Clerk within fifteen (15) days of the date of the preliminary notice of violation and must contain the reasons the Contractor believes that a violation does not exist and/or that the corrective measures or remedies are not appropriate.

3

The Director of Administrative Services will conduct the appeal hearing within forty-five (45) days of receipt of the appeal request. Within fifteen (15) days of the conclusion of the appeal hearing, the Director of Administrative Services will issue his/her findings and final decision.

The final decision of the Director of Administrative Services may be appealed to the City Council by filing a written notice of appeal within fifteen (15) days of the date of the Director's final written decision. The City Council shall conduct a hearing on the appeal within forty-five (45) days of its receipt of the appeal request and either uphold, overturn or modify the Director's final decision.

**How does a covered employee file a complaint if they believe that a Contractor or subcontractor is in violation of the Ordinance?**
A Covered employee who believes a Contractor or subcontractor has violated the requirements of the Ordinance may file a written complaint with the Director of Administrative Services.

**What remedies for violation do covered employees have under the Ordinance?**
A covered employee may seek the following remedies against a Contractor violating the Ordinance:
- Restitution to compensate the employee for amounts that should have been paid under the contract
- Reasonable attorneys' fees and costs
- Any and all other legal and equitable remedies available under Federal, State and local laws

## Exceptions

**Are there any circumstances in which an exception to the Ordinance will be granted?**
The City Council, by a majority vote, may grant a whole or partial exception at the time of award of the contract if it is determined that imposition of this Ordinance would violate State or Federal laws. A Contractor that desires an exception must, at the time of the bid proposal, provide the City with a written request with a reference to the specific State or Federal law that would be violated.

The City Council, by a four-fifths vote, may grant a whole or partial exception if it is determined that an emergency or extraordinary circumstance justifies an exemption.

## More Information

**Where can I view more information about the Ordinance?**
More information may be found concerning the Living Wage Ordinance, including current rates, by visiting the City's web site at **www.cityofirvine.org**. Click on the "Doing Business" tab at the top of the screen, and then select "Living Wage Info."

## Contact Information

To receive a copy of the Living Wage Guide, or to ask questions about the Living Wage Ordinance, please contact:

| | | |
|---|---|---|
| **Purchasing Department** | **Phone:** | **(949) 724-6180** |
| **City of Irvine** | **FAX:** | **(949) 724-6187** |
| **PO Box 19575** | | |
| **Irvine, CA  92623-9575** | | |

Employees registering a complaint against an employer should contact:

| | | |
|---|---|---|
| **Director of Administrative Services** | **Phone:** | **(949) 724-6255** |
| **City of Irvine** | **FAX:** | **(949) 724-6030** |
| **PO Box 19575** | | |
| **Irvine, CA  92623-9575** | | |

4

# Appendix D

## Living Wage Comparable Benefits Summary

The following benefits are offered to City of Irvine employees who work a minimum of 30 hours per week on average. Contractor employees must be offered benefits equal to or greater than the benefits detailed below or the Contractor is required to add a "benefit factor" to the minimum wage paid to the employee as defined in the Living Wage Ordinance.

### Medical Insurance:

a. <u>Health Insurance</u>:
   The City provides the option to employees to enroll in an indemnity medical insurance plan or Health Maintenance Organization (HMO).

b. The total cost to the City for medical insurance coverage for employee only shall not exceed 50% of the monthly premium. Employees are responsible for the cost of the remaining premium amount.

c. The City provides the option to employees, who have enrolled in the HMO plan, to purchase HMO medical insurance for their dependents. The total cost of the additional premium is borne by the employee.

d. The City provides the option to employees to enroll in a dental Health Maintenance Organization for employees only. The total cost is borne by the employee.

### Vacation:

Vacation benefits accrue on a monthly basis as follows:

| Years of Service | Annual Vacation Credits |
|---|---|
| 1 through 3 | 60 hours |
| after 3 through 10 | 90 hours |
| after 10 years or more | 120 hours |

### Personal Sick Leave:

Employees accrue personal sick leave credits at the rate of six (6) hours per month.

### Holidays:

Employees are paid for the hours they are regularly scheduled to work on holidays observed by the City.

# Exhibit E



## LIVING WAGE ORDINANCE
### Notice to Employees

This employer has one or more contracts with the City of Irvine. Terms of the contract(s) subject the employer to the City of Irvine Living Wage Ordinance No. 07-15. Under the Ordinance **you must be paid a "living wage"** by the employer if a majority of your work is performed in Orange County.

## THESE ARE YOUR RIGHTS

### You must be paid a minimum of:

➢ **$10.82** per hour

### If you work an average of 30 hours per week or more, you must be paid a minimum of:

➢ **$10.82** per hour
  - ○ If health and paid time off benefits are offered to you
  - **OR**
➢ **$13.23** per hour:
  - ○ If no health or paid time off benefits are offered to you
  - ○ If the cost of health and paid time off benefits provided to you cost your employer less than **$2.41** per hour, the difference is added to the minimum hourly wage listed above

➢ Rates are generally adjusted annually. Current rates are effective as of **July 1, 2013.**
➢ Retaliation by your employer is **prohibited**
➢ Employers may not fire, reduce pay, or discriminate against a worker for filing a complaint

### If your rights are violated you could receive:

➢ Restitution to compensate you for all amounts that should have been paid to you under the Ordinance
➢ Reasonable attorneys' fees and costs
➢ Any and all other legal and equitable remedies under Federal, State and local law

## FOR MORE INFORMATION

To obtain a confidential complaint form if you believe your rights are being violated, please contact:
**CITY OF IRVINE**
Director of Administrative Services
One Civic Center Plaza
Irvine, CA 92606
(949) 724-6255

For more information and to review the City Ordinance, Living Wage Guide (frequently asked questions) and updated rates, visit the City's website and access the Purchasing Department, Living Wage page at: *www.cityofirvine.org/purchasing*

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: 8101B

CONTRACT TYPE: AMENDMENT

DEPARTMENT: CITY MANAGER
Department initiating contract

CONTRACT DATE: 08/16/2015
As stated in the Terms sections of contract

EXPIRATION DATE: 02/15/2016
As stated in the Terms sections of contract

MEETING DATE: 08/11/2015
Date of meeting where contract was approved

ITEM NUMBER: 2.7
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of contract

CONTRACT NAME: RUTAN & TUCKER, LLP
As stated in first paragraph of contract

CONTRACT SUBJECT: AMENDMENT TO EXTEND THE
As stated in Description of Services section of contract    TERM OF THE AGREEMENT

ORIGINAL

## AMENDMENT NUMBER 2
## TO "AGREEMENT FOR CONTRACT SERVICES"

THIS AMENDMENT NUMBER 2 TO AGREEMENT FOR CONTRACT SERVICES (the "Second Amendment") is made and entered into as of August 13, 2015 by and between the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency ("Successor Agency") and Rutan & Tucker, LLP, a Limited Liability Partnership ("Contractor"), for the purpose of amending the written "Agreement for Contract Services" entered into between City and Contractor as of August 13, 2013, City of Irvine contract number 8101 (the "Agreement").

1. The expiration date of the Agreement is changed from August 15, 2015 to February 15, 2016.

2. Except as set forth in this Second Amendment, all terms, conditions and provisions of the Agreement are unchanged and remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Second Amendment to the Agreement to be executed by their respective duly authorized agents as of the date first set forth above.

**CITY OF IRVINE AS SUCCESSOR AGENCY TO THE DISSOLVED IRVINE REDEVELOPMENT AGENCY**

**RUTAN & TUCKER, LLP**

By: _____

By: _____Todd O. Litfin_____

Its:   Chair, Successor Agency

Its:   Partner

Attest:
By: _____
Molly McLaughlin
City Clerk

APPROVED AS TO FORM:
WOODRUFF, SPRADLIN & SMART

_____
Daniel K. Spradlin

8101 B

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: **8031B**

CONTRACT TYPE: **AMENDMENT**

DEPARTMENT: **CITY MANAGER**
Department initiating contract

CONTRACT DATE: 08/16/2015
As stated in the Terms sections of contract

EXPIRATION DATE: 02/15/2016
As stated in the Terms sections of contract

MEETING DATE: 08/11/2015
Date of meeting where contract was approved

ITEM NUMBER: 2.7
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of contract

CONTRACT NAME: RUTAN & TUCKER, LLP
As stated in first paragraph of contract

CONTRACT SUBJECT: AMENDMENT TO EXTEND THE
As stated in Description of Services section of contract   TERM OF THE AGREEMENT

ORIGINAL

# AMENDMENT NUMBER 2
## TO "AGREEMENT FOR CONTRACT SERVICES"

THIS AMENDMENT NUMBER 2 TO AGREEMENT FOR CONTRACT SERVICES (the "Second Amendment") is made and entered into as of August 13, 2015 by and between the City of Irvine, a municipal corporation ("City") and Rutan & Tucker, LLP, a Limited Liability Partnership ("Contractor"), for the purpose of amending the written "Agreement for Contract Services" entered into between City and Contractor as of August 13, 2013, City of Irvine contract number 8031 (the "Agreement").

1. The expiration date of the Agreement is changed from August 15, 2015 to February 15, 2016.

2. Except as set forth in this Second Amendment, all terms, conditions and provisions of the Agreement are unchanged and remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have caused this Second Amendment to the Agreement to be executed by their respective duly authorized agents as of the date first set forth above.

CITY OF IRVINE

By: _____
    Sean Joyce
Its: City Manager

By: _____
    Steven S. Choi, Ph.D.
Its: Mayor

Attest:
By: _____
    Molly McLaughlin
    City Clerk

APPROVED AS TO FORM:
WOODRUFF, SPRADLIN & SMART

_____
Daniel K. Spradlin

RUTAN & TUCKER, LLP

By: _____
    Todd O. Litfin
Its: Partner

8031B

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: 9079

CONTRACT TYPE: SERVICES

DEPARTMENT: CITY MANAGER
Department initiating contract

CONTRACT DATE: 02/10/2016
As stated in the Terms sections of contract

EXPIRATION DATE: 02/15/2018
As stated in the Terms sections of contract

MEETING DATE: 02/09/2016
Date of meeting where contract was approved

ITEM NUMBER: 2.3
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of contract

CONTRACT NAME: RUTAN & TUCKER, LLP
As stated in first paragraph of contract

CONTRACT SUBJECT: CITY ATTORNEY SERVICES
As stated in Description of Services section of contract



# AGREEMENT FOR CITY ATTORNEY SERVICES

THIS AGREEMENT FOR CITY ATTORNEY SERVICES (the "Agreement") is made and entered into as of February 10, 2016, by and between the CITY OF IRVINE, a municipal corporation ("City"), and RUTAN & TUCKER, LLP, a Limited Liability Partnership ("Contractor"). (The term Contractor includes professionals performing in a consulting capacity.)

## PART I

## FUNDAMENTAL TERMS

**A.**     **Location of Project:** The City of Irvine location(s) as set forth in PART IV, Scope of Services, included herein.

**B.**     **Description of Services/Goods to be Provided:** City Attorney Services in accordance with PART IV, Scope of Services, included herein (reference RFP 13-2938).

**C.**     **Term:** Unless terminated earlier as set forth in this Agreement, the services shall commence on February 16, 2016 ("Commencement Date") and shall continue through February 15, 2018.

**D.**     **Party Representatives:**

D.1. The City designates the following person/officer to act on City's behalf: Sean Joyce, City Manager, email: sjoyce@cityofirvine.org

D.2. The Contractor designates the following person to act on Contractor's behalf: Jeffrey T. Melching, email: jmelching@rutan.com

**E.**     **Notices:** Contractor shall deliver all notices and other writings required to be delivered under this Agreement to City at the address set forth in Part II ("General Provisions"). The City shall deliver all notices and other writings required to be delivered to Contractor at the address set forth following Contractor's signature below.

**F.**     **Attachments:** This Agreement incorporates by reference the following Attachments to this Agreement:

|       |           |                    |
|-------|-----------|--------------------|
| F.1.  | Part I:   | Fundamental Terms  |
| F.2.  | Part II:  | General Provisions |
| F.3.  | Part III: | Special Provisions |
| F.4.  | Part IV:  | Scope of Services  |
| F.5.  | Part V:   | Budget             |

**G.**     **Integration:** This Agreement represents the entire understanding of City and Contractor as to those matters contained herein. No prior oral or written understanding shall be of any force or effect with regard to those matters covered by this Agreement. This Agreement supersedes

1

9079

and cancels any and all previous negotiations, arrangements, agreements, and understandings, if any, between the parties, and none shall be used to interpret this Agreement.

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the date first set forth above.

**CITY OF IRVINE**

By: _____
    Sean Joyce
Its:   City Manager

By: _____
    Steven S. Choi, Ph.D.
Its:   Mayor

Attest:

By: _____
    Molly McLaughlin
    City Clerk

APPROVED AS TO FORM:
Woodruff, Spradlin & Smart

_____
Daniel K. Spradlin

**RUTAN & TUCKER, LLP**

By: _____
Its:   Partner

By: _____
Its: _____

**Contractor Information**
**Address for Notices and Payments:**
611 Anton Boulevard
Suite 1400
Costa Mesa, CA  92626-1931

**Attn: Jeff Melching**
**Telephone: (714) 641-5100**
**FAX: (714) 546-9035**
**Email:** jmelching@rutan.com

PART II

GENERAL PROVISIONS

**SECTION ONE: <u>SERVICES OF CONTRACTOR</u>**

**1.1** **Scope of Services.** In compliance with all terms and conditions of this Agreement, Contractor shall provide the goods and/or services shown on Part IV hereto ("Scope of Services"), which may be referred to herein as the "services" or the "work." If this Agreement is for the provision of goods, supplies, equipment or personal property, the terms "services" and "work" shall include the provision (and, if designated in the Scope of Services, the installation) of such goods, supplies, equipment or personal property.

**1.2** **Changes and Additions to Scope of Services**. City shall have the right at any time during the performance of the services, without invalidating this Agreement, to order extra work beyond that specified in the Scope of Services or make changes by altering, adding to, or deducting from said work. No such work shall be undertaken unless a written order is first given by City to Contractor, incorporating therein any adjustment in (i) the Budget, and/or (ii) the time to perform this Agreement, which adjustments are subject to the written approval of the Contractor. City approval and/or payment for work claimed by Contractor as changed or additional shall not act to prevent City at any time to claim such work is covered by the Scope of Work and should be performed by Contractor without additional consideration due. It is expressly understood by Contractor that the provisions of this Section 1.2 shall not apply to services specifically set forth in the Scope of Services or reasonably contemplated therein. Contractor hereby acknowledges that it accepts the risk that the services to be provided pursuant to the Scope of Services may be more costly or time consuming than Contractor anticipates and that Contractor shall not be entitled to additional compensation therefor.

**1.3** **Standard of Performance.** Contractor agrees that all services shall be performed in a competent, professional, and satisfactory manner in accordance with the standards prevalent in the industry, and that all goods, materials, equipment or personal property included within the services herein shall be of good quality, fit for the purpose intended.

**1.4** **Instructions from City**. In the performance of this Agreement, Contractor shall report to and receive instructions from the City's Representative designated in Paragraph D.1 of Part I ("Fundamental Terms") of this Agreement. Tasks or services other than those specifically described in the Scope of Services shall not be performed without the prior written approval of the City's Representative.

**1.5** **Familiarity with Work.** By executing this Agreement, Contractor warrants that Contractor (i) has thoroughly investigated and considered the scope of services to be performed, (ii) has carefully considered how the services should be performed, and (iii) fully understands the facilities, difficulties, and restrictions attending performance of the services under the Agreement. If the services involve work upon any site, Contractor warrants that Contractor has or will investigate the site and is or will be fully acquainted with the conditions there existing, prior to commencement of services hereunder. Should the Contractor discover any conditions, including any latent or unknown conditions, which will materially affect the performance of the services hereunder, Contractor shall immediately inform the City of such fact in writing and shall not proceed except at Contractor's risk until written instructions are received from the City's Representative.

3

### 1.6    Identity of Persons Performing Work.

(A)    Contractor represents that it employs or will employ at its own expense all personnel required for the satisfactory performance of any and all tasks and services required hereunder. Any personnel performing the services under this Agreement on behalf of Contractor shall at all times be under Contractor's exclusive direction and control. Contractor shall pay all wages, salaries, and other amounts due such personnel in connection with their performance of services under this Agreement and as required by law.

(B)    Contractor represents that the tasks and services required hereunder will be performed by Contractor or under its direct supervision, and that all personnel engaged in such work shall be fully qualified and shall be authorized and permitted under applicable State and local law to perform such tasks and services. Contractor will exclusively determine the means, methods and details of performing the services subject to the requirements of this Agreement.

(C)    This Agreement contemplates the personal services of Contractor and Contractor's employees, and it is recognized by the parties hereto that a substantial inducement to City for entering into this Agreement was, and is, the professional reputation and competence of Contractor. Neither this Agreement nor any interest therein may be assigned by Contractor, except upon written consent of City.

**1.7    Prohibition Against Subcontracting or Assignment.** Contractor shall not contract with any other entity to perform in whole or in part the services required hereunder without the express written approval of City. In addition, neither the Agreement nor any interest herein may be transferred, assigned, conveyed, hypothecated, or encumbered voluntarily or by operation of law, whether for the benefit of creditors or otherwise, without the prior written approval of City. In the event of any unapproved transfer, including any bankruptcy proceeding, City may void the Agreement at City's option in its sole and absolute discretion. No approved transfer shall release any surety of Contractor of any liability hereunder without the express written consent of City.

## SECTION TWO:    INSURANCE AND INDEMNIFICATION

**2.1    Insurance.** Without limiting Contractor's indemnification obligations, Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided below, against all claims for injuries against persons or damages to property which may arise from or in connection with the performance of the work hereunder by Contractor, its agents, representatives, employees, and/or subcontractors. In the event that Contractor subcontracts any portion of the work in compliance with Section 1.8 of this Agreement, the contract between the Contractor and such subcontractor shall require the subcontractor to maintain the same policies of insurance that the contractor is required to maintain pursuant to this Section 2.1.

**2.1.1    Insurance Coverage Required.** The policies and amounts of insurance required hereunder shall be as follows:

**A. Comprehensive General Liability Insurance** which affords coverage at least as broad as Insurance Services Office "occurrence" form CG 00 01 including completed operations and contractual liability, with limits of liability of not less than $1,000,000 per occurrence and $2,000,000 annual aggregate for liability arising out of Contractor's performance of this Agreement. The limits shall be provided by either a single primary policy or combination of policies. If limits are provided with excess and/or umbrella

4

coverage the limits combined with the primary will equal the minimum limits set forth above. If written with an aggregate, the aggregate shall be double the each occurrence limit. Such insurance shall be endorsed to:

(1) Name the City of Irvine and its employees, representatives, officers and agents (collectively hereinafter "City and City Personnel") as additional insured for claims arising out of Contractor's performance of this Agreement.

(2) Provide that the insurance is primary and non-contributing with any other valid and collectible insurance or self-insurance available to City.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement.*

**B. Automobile Liability Insurance** with a limit of liability of not less than $1,000,000 each occurrence and $1,000,000 annual aggregate. The limits shall be provided by either a single primary policy or combination of policies. If limits are provided with excess and/or umbrella coverage the limits combined with the primary will equal the minimum limits set above. Such insurance shall include coverage for all "owned," "hired" and "non-owned" vehicles, or coverage for "any auto." Such insurance shall be endorsed to:

(1) Name the City of Irvine and its employees, representatives, officers and agents as additional insured for claims arising out of Contractor's performance of this Agreement.

(2) Provide that the insurance is primary and non-contributing with any other valid and collectible insurance or self-insurance available to City.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement.*

**C. Workers' Compensation Insurance** in accordance with the Labor Code of California and covering all employees of the Contractor providing any service in the performance of this agreement. Such insurance shall be endorsed to:

(1) Waive the insurer's right of Subrogation against the City and City Personnel.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement unless your insurance carrier is the State of California Insurance Fund (SCIF) and the endorsement numbers 2570 and 2065 are referenced on the certificate of insurance.*

Contractor's completion of the form attached hereto as Exhibit 1 shall be a condition precedent to Contractor's rights under this Agreement. Should Contractor certify, pursuant to Exhibit 1, that, in the performance of the work under this Agreement, it shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, Contractor shall nonetheless maintain responsibility for requiring that any subcontractors performing work under this Agreement have and maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the work performed under this Agreement.

5

**D. Professional Liability Insurance** with minimum annual aggregate limits of $10,000,000. Covered professional services shall include all work performed under this Agreement and delete any exclusion that may potentially affect the work to be performed; Subcontractors and consultants to Contractor may also satisfy the insurance coverage requirements of this Agreement if they provide minimum limits of $3,000,000 each claim.

**E. Evidence of Insurance**: Contractor shall provide to City a Certificate(s) of Insurance evidencing such coverage together with copies of the required policy endorsements no later than five (5) business days prior to commencement of service and at least fifteen (15) business days prior to the expiration of any policy. Coverage shall not be suspended, voided, cancelled, reduced in coverage or in limits, non-renewed, or materially changed for any reason, without thirty (30) days prior written notice thereof given by the insurer to City by U.S. mail, or by personal delivery, except for nonpayment of premiums, in which case ten (10) days prior notice shall be provided.

Signed insurance certificates and endorsements must be **sent via email** from Contractor's insurance broker/agent to the City's insurance certificate tracking company at CertsOnly-Portland@Ebix.com

The City project title or description MUST be included in the "Description of Operations" box on the certificate.

**Certificate Holder:**
City of Irvine, California
c/o: CertsOnly-Portland@Ebix.com

**F. Endorsements**: A statement on an insurance certificate will not be accepted in lieu of the actual endorsement. Insurance policies shall not be in compliance if they include any limiting provision or endorsement that has not been submitted to the City for approval.

Additional Insured Endorsements shall not:

1. Be limited to "Ongoing Operations"
2. Exclude "Contractual Liability"
3. Restrict coverage to the "Sole" liability of Contractor
4. Contain any other exclusion contrary to the Agreement.

**G. Any Deductible in Excess of $50,000 and/or Self-Insured Retentions** must be approved in writing by the City.

**H. Acceptability of Insurers**. Each policy shall be from a company with current A.M. Best's rating of A- VII or higher and authorized to do business in the State of California, or otherwise allowed to place insurance through surplus lines brokers under applicable provisions of the California Insurance Code or any federal law. Any other rating must be approved in writing by the City.

**I. Insurance of Subcontractors**. Contractor shall be responsible for causing Subcontractors to maintain the same types and limits of coverage in compliance with this

Agreement, including naming the City as an additional insured to the Subcontractor's policies.

**2.2    Defense and Indemnification.** Contractor agrees to defend and indemnify City and its officers, agents and employees against, and to hold and save them harmless from, any and all actions, claims, damages to persons or property, penalties, obligations, or liabilities that may be asserted or claimed by any person, firm, entity, corporation, political subdivision or other organization arising out of the willful or negligent act, errors or omissions of Contractor, its agents, employees, or subcontractors, in performance of services under this Agreement, excepting claims of professional negligence or malpractice. Nothing herein shall be deemed to affect or waive City's rights to make or pursue claims of professional negligence or malpractice against Contractor.

## SECTION THREE:    LEGAL RELATIONS AND RESPONSIBILITIES

**3.1    Compliance with Laws.** Contractor shall keep itself fully informed of all existing and future state and federal laws and all county and city ordinances and regulations which in any manner affect those employed by it or in any way affect the performance of services pursuant to this Agreement. Contractor shall at all times observe and comply with all such laws, ordinances, and regulations and shall be responsible for the compliance of all work and services performed by or on behalf of Contractor. When applicable, Contractor shall not pay less than the prevailing wage, which rate is determined by the Director of Industrial Relations of the State of California.

**3.2    Licenses, Permits, Fees and Assessments.** Contractor shall obtain at its sole cost and expense all licenses, permits, and approvals that may be required by law for the performance of the services required by this Agreement. Contractor shall have the sole obligation to pay any fees, assessments, and taxes, plus applicable penalties and interest, which may be imposed by law and arise from or are necessary for Contractor's performance of the services required by this Agreement, and shall indemnify, defend, and hold harmless City against any such fees, assessments, taxes, penalties, or interest levied, assessed, or imposed against City thereunder.

**3.3    Covenant against Discrimination.** Contractor covenants for itself, its heirs, executors, assigns, and all persons claiming under or through it, that there shall be no discrimination against any person on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, in the performance of this Agreement. Contractor further covenants and agrees to comply with the terms of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101 et seq.) as the same may be amended from time to time.

**3.4    Independent Contractor.** Contractor shall perform all services required herein as an independent contractor of City and shall remain at all times as to City a wholly independent contractor. City shall not in any way or for any purpose become or be deemed to be a partner of Contractor in its business or otherwise, or a joint venturer, or a member of any joint enterprise with Contractor. Contractor shall not at any time or in any manner represent that it or any of its agents or employees are agents or employees of City. Neither Contractor nor any of Contractor's employees shall, at any time, or in any way, be entitled to any sick leave, vacation, retirement, or other fringe benefits from the City; and neither Contractor nor any of its employees shall be paid by City time and one-half for working in excess of forty (40) hours in any one week. City is under no obligation to withhold State and Federal tax deductions from Contractor's compensation. Neither

Contractor nor any of Contractor's employees shall be included in the competitive service, have any property right to any position, or any of the rights an employee may have in the event of termination of this Agreement.

**3.5    Covenant against Contingent Fees.** Contractor warrants that it has not employed or retained any company or person other than a bona fide employee working for Contractor, to solicit or secure this Agreement and that it has not paid or agreed to pay any company or person any fee, commission, percentage, brokerage fee, gift, or any other consideration contingent upon, or resulting from, the award or making of this Agreement. For breach or violation of this warranty, City shall have the right to annul this Agreement without liability or, in its discretion, to deduct from the Agreement price or consideration, or otherwise recover, the full amount of such fee, commission, percentage, brokerage fee, gift or contingent fee.

**3.6    Use of Patented Materials.** Contractor shall assume all costs arising from the use of patented or copyrighted materials, including but not limited to equipment, devices, processes, and software programs, used or incorporated in the services or work performed by Contractor under this Agreement. Contractor shall indemnify, defend, and save the City harmless from any and all suits, actions or proceedings of every nature for or on account of the use of any patented or copyrighted materials consistent with Section 2.2 herein.

**3.7    Proprietary Information.** All proprietary information developed specifically for City by Contractor in connection with, or resulting from, this Agreement, including but not limited to inventions, discoveries, improvements, copyrights, patents, maps, reports, textual material, or software programs, but not including Contractor's underlying materials, software, or know-how, shall be the sole and exclusive property of City, and are confidential and shall not be made available to any person or entity without the prior written approval of City. Contractor agrees that the compensation to be paid pursuant to this Agreement includes adequate and sufficient compensation for any proprietary information developed in connection with or resulting from the performance of Contractor's services under this Agreement. Contractor further understands and agrees that full disclosure of all proprietary information developed in connection with, or resulting from, the performance of services by Contractor under this Agreement shall be made to City, and that Contractor shall do all things necessary and proper to perfect and maintain ownership of such proprietary information by City.

**3.8    Retention of Funds.** Contractor hereby authorizes City to deduct from any amount payable to Contractor (whether arising out of this Agreement or otherwise) any amounts the payment of which may be in dispute hereunder or which are necessary to compensate City for any losses, costs, liabilities, or damages suffered by City, and all amounts for which City may be liable to third parties, by reason of Contractor's negligent acts, errors, or omissions, or willful misconduct, in performing or failing to perform Contractor's obligations under this Agreement. City in its sole and absolute discretion, may withhold from any payment due Contractor, without liability for interest, an amount sufficient to cover such claim or any resulting lien. The failure of City to exercise such right to deduct or withhold shall not act as a waiver of Contractor's obligation to pay City any sums Contractor owes City.

**3.9    Termination by City.** City reserves the right to terminate this Agreement at any time, with or without cause, upon written notice to Contractor. Upon receipt of any notice of termination from City, Contractor shall immediately cease all services hereunder except such as may be specifically approved in writing by City. Contractor shall be entitled to compensation for all services rendered prior to receipt of City's notice of termination and for any services authorized in writing by City thereafter. If termination is due to the failure of Contractor to fulfill its obligations

8

under this Agreement, City may take over the work and prosecute the same to completion by contract or otherwise, and Contractor shall be liable to the extent that the total cost for completion of the services required hereunder, including costs incurred by City in retaining a replacement contractor and similar expenses, exceeds the Budget. Contractor agrees that upon termination of this Agreement and of services in any manner, it will provide to City a closing report, including a brief description of the facts of the case, completed research, and calendar of any scheduled court appearances and deadlines, with respect to all pending litigation matters handled by Contractor.

      **3.10   Right to Stop Work; Termination by Contractor.** Contractor shall have the right to stop work and terminate only if City fails to timely make a payment required under the terms of the Budget. Contractor shall provide City thirty (30) day prior written notice of such claimed payment owed and City shall have an opportunity to remedy any such claimed breach during such time with no legal consequence to City. Contractor shall immediately cease all services hereunder following the thirty (30) day notice, except such services as may be specifically approved in writing by City. Contractor shall be entitled to compensation for all services rendered prior to termination and for any services authorized in writing by City thereafter. If Contractor terminates this Agreement because of an error, omission, or a fault of Contractor, or Contractor's willful misconduct, the terms of Section 3.9 relating to City's right to take over and finish the work and Contractor's liability shall apply. Contractor shall have the right to terminate this Agreement at any time, with or without cause, upon sixty (60) days' advance written notice to City.  Contractor agrees, consistent with its professional responsibilities, to allow for sufficient time and services to permit City to arrange for alternative representation. City and Contractor agree to cooperate in the transition of work and substitution of new counsel as counsel of record.

      **3.11   Waiver.** No delay or omission in the exercise of any right or remedy by a nondefaulting party with respect to any default shall impair such right or remedy or be construed as a waiver. A party's consent to or approval of any act by the other party requiring the party's consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent act. A waiver by either party of any default must be in writing.

      **3.12   Legal Actions.** Legal actions concerning any dispute, claim, or matter arising out of or in relation to this Agreement shall be instituted and maintained in the Superior Courts of the State of California in the County of Orange, or in any other appropriate court with jurisdiction in such County, and Contractor agrees to submit to the personal jurisdiction of such court.

      **3.13   Rights and Remedies are Cumulative.** Except as may be expressly set forth in this Agreement, the rights and remedies of the parties are cumulative and the exercise by either party of one or more of such rights or remedies or other rights or remedies as may be permitted by law or in equity shall not preclude the exercise by such party, at the same or different times, of any other rights or remedies to which such party may be entitled.

      **3.14   Attorneys' Fees.** In any action between the parties hereto seeking enforcement of any of the terms or provisions of this Agreement or in connection with the performance of the work hereunder, the party prevailing in the final judgment in such action or proceeding, in addition to any other relief which may be granted, shall be entitled to have and recover from the other party its reasonable costs and expenses, including, but not limited to, reasonable attorney's fees, expert witness fees, and courts costs. If either party to this Agreement is required to initiate or defend litigation with a third party because of the violation of any term or provision of this Agreement by the other party, then the party so litigating shall be entitled to its reasonable attorney's fees and costs from the other party to this Agreement.

**3.15    Force Majeure.** The time period specified in this Agreement for performance of services shall be extended because of any delays due to unforeseeable causes beyond the control and without the fault or negligence of City or Contractor, including, but not restricted to, acts of nature or of the public enemy, unusually severe weather, fires, earthquakes, floods, epidemics, quarantine restrictions, riots, strikes, freight embargoes, wars, litigation, and/or acts of any governmental agency, including City, if the delaying party shall within ten (10) days of the commencement of such delay notify the other party in writing of the causes of the delay. If Contractor is the delaying party, City shall ascertain the facts and the extent of delay, and extend the time for performing the services for the period of the enforced delay when and if in the judgment of City such delay is justified. City's determination shall be final and conclusive upon the parties to this Agreement. In no event shall Contractor be entitled to recover damages against City for any delay in the performance of this Agreement, however caused. Contractor's sole remedy shall be extension of this Agreement pursuant to this Section 3.15.

**3.16    Non-liability of City Officers and Employees.** No officer, official, employee, agent, representative, or volunteer of City shall be personally liable to Contractor, or any successor in interest, in the event of any default or breach by City, or for any amount which may become due to Contractor or its successor, or for breach of any obligation of the terms of this Agreement.

**3.17    Conflicts of Interest.**

A.    No officer, official, employee, agent, representative or volunteer of City shall have any financial interest, direct or indirect, in this Agreement, or participate in any decision relating to this Agreement that affects his or her financial interest or the financial interest of any corporation, partnership, association or other entity in which he or she is interested, in violation of any federal, state or city statute, ordinance or regulation. Contractor shall not employ any such person while this Agreement is in effect.

B.    Contractor represents, warrants and covenants that he, she or it presently has no interest, direct or indirect, which would interfere with or impair in any manner or degree the performance of Contractor's obligations and responsibilities under this Agreement. Contractor further agrees that while this Agreement is in effect, Contractor shall not acquire or otherwise obtain any interest, direct or indirect, that would interfere with or impair in any manner or degree the performance of Contractor's obligations and responsibilities under this Agreement.

C.    Contractor acknowledges that pursuant to the provisions of the Political Reform Act (Government Code section 87100 *et seq.*), City may determine Contractor to be a "Consultant" as that term is defined by the Act. In the event City makes such a determination, Contractor agrees to complete and file a "Statement of Economic Interest" with the City Clerk to disclose such financial interests as required by City. In such event, Contractor further agrees to require any other person doing work under this Agreement to complete and file a "Statement of Economic Interest" to disclose such other person's financial interests as required by City.

D.    Contractor has disclosed all present and contemplated representation of other clients or third parties on any matter (either litigation or non-litigation) that may be adverse to City.

E.    Contractor agrees that Contractor, its officers, directors, partners and employees shall not represent any other client or party on any matter (either litigation or non-litigation) adverse to the City. Contractor further agrees that following the termination of this Agreement,

10

Contractor, its officers, directors, partners and employees shall not represent any other client or third party in any matter relating to the City, without first receiving a written release from the City. Contractor has also considered the potential applicability of the Political Reform Act of 1974 to Contractor's services pursuant to this Agreement and has concluded that no conflict of interest exists that would preclude Contractor from performing the services required of Contractor pursuant to this Agreement.

    **3.18** **Contractor Ethics.** Contractor represents and warrants that it has not provided or promised to provide any gift or other consideration, directly or indirectly, to any officer, employee, or agent of City to obtain City's approval of this Agreement. Contractor shall not, at any time, have any financial interest in this Agreement or the project that is the subject of this Agreement other than the compensation to be paid to Contractor as set forth in this Agreement. In the event the work and/or services to be performed hereunder relate to a project and/or application under consideration by or on file with the City, (i) Contractor shall not possess or maintain any business relationship with the applicant or any other person or entity which Contractor knows to have a personal stake in said project and/or application, (ii) other than performing its work and/or services to City in accordance with this Agreement Contractor shall not advocate either for or against said project and/or application, and (iii) Contractor shall immediately notify City in the event Contractor determines that Contractor has or acquires any such business relationship with the applicant or other person or entity which has a personal stake in said project and/or application. The provisions in this Section shall be applicable to all of Contractor's officers, directors, employees, and agents, and shall survive the termination of this Agreement.

    **3.19 Compliance with California Unemployment Insurance Code Section 1088.8.** If Contractor is a Sole Proprietor, then prior to signing the Agreement, Contractor shall provide to the City a completed and signed Form W-9, Request for Taxpayer Identification Number and Certification. Contractor understands that pursuant to California Unemployment Insurance Code Section 1088.8, the City will report the information from Form W-9 to the State of California Employment Development Department, and that the information may be used for the purposes of establishing, modifying, or enforcing child support obligations, including collections, or reported to the Franchise Tax Board for tax enforcement purposes.

    **3.20 CalPERS Annuitants.** If Contractor is a California Public Employees' Retirement System ("CalPERS") annuitant, Contractor must provide the City with written notification of such fact a minimum of 14 calendar days prior to commencement of services under this Agreement. Failure to provide such notification may result in termination of the Agreement, and any penalties or other costs relating thereto shall be borne by Contractor. If this Agreement remains in place, Contractor shall execute any amendment(s) to this Agreement requested by the City in order to comply with all laws and regulations applicable to CalPERS annuitants.

**SECTION FOUR:**     **MISCELLANEOUS PROVISIONS**

    **4.1**     **Records and Reports.** The City Manager of the City of Irvine or his/her designee reserves the right to perform such audits, performance reviews, and other evaluations (collectively 'audit') that relate to or concern this Agreement at any time. Contractor agrees to participate and cooperate in up to five (5) hours of meetings and interviews (at no additional cost to City), if the same are requested by the City in connection with such an audit. Further, provided that the City pays Contractor's commercially reasonable hourly rate for services, Contractor agrees to participate and cooperate in such additional meetings and interviews (in excess of five (5) hours), if the same are requested by the City in connection with such an audit.

Upon request by City, Contractor shall prepare and submit to City any reports concerning Contractor's performance of the services rendered under this Agreement. City shall have access, with 72 hours advance written notice delivered to Contractor, to the books and records of Contractor related to Contractor's performance of this Agreement in the event any audit is required. All drawings, documents, and other materials prepared by Contractor in the performance of this Agreement (i) shall be the property of City and shall be delivered at no cost to City upon request of City or upon the termination of this Agreement, and (ii) shall not be made available to any individual or entity without prior written approval of City. The obligations of this Section 4.1 shall survive the expiration (or earlier termination) of this Agreement for a period of three (3) years. During said three (3) year period, Contractor shall keep and maintain all records and reports related to this Agreement, and City shall have access to such records in the event any audit is required.

**4.2    Findings Confidential, Ownership, Reports and Information.** All reports, information, data and exhibits prepared or assembled by Contractor in connection with the performance of its services pursuant to this Agreement are confidential and Contractor agrees that they shall not be made available to any individual or organization without prior written consent of City, as applicable. All such reports, information, data and exhibits shall be the property of City, as applicable, and shall be delivered to City upon demand without additional cost or expense to City.

**4.3    Notices.** Unless otherwise provided herein, all notices required to be delivered under this Agreement or under applicable law shall be personally delivered, or delivered by United States mail, prepaid, certified, return receipt requested, or by reputable document delivery service that provides a receipt showing date and time of delivery. Notices personally delivered or delivered by a document delivery service shall be effective upon receipt. Notices delivered by mail shall be effective at 5:00 p.m. on the second calendar day following dispatch. Notices to the City shall be delivered to the following address, to the attention of the City Representative set forth in Paragraph D.1 of the Fundamental Terms of this Agreement:

<u>To City</u>:                     City of Irvine
                               One Civic Center Plaza (92606) (Hand Deliveries)
                               P. O. Box 19575
                               Irvine, CA 92623-9575

Notices to Contractor shall be delivered to the address set forth below Contractor's signature on Part I of this Agreement, to the attention of Contractor's Representative set forth in Paragraph D.2 of the Fundamental Terms of this Agreement. Changes in the address to be used for receipt of notices shall be effected in accordance with this Section 4.3.

**4.4    Construction and Amendment.** The terms of this Agreement shall be construed in accordance with the meaning of the language used and shall not be construed for or against either party by reason of the authorship of this Agreement or any other rule of construction which might otherwise apply. The headings of sections and paragraphs of this Agreement are for convenience or reference only, and shall not be construed to limit or extend the meaning of the terms, covenants and conditions of this Agreement. This Agreement may only be amended by the mutual consent of the parties by an instrument in writing.

**4.5    Severability.** Each provision of this Agreement shall be severable from the whole. If any provision of this Agreement shall be found contrary to law, the remainder of this Agreement shall continue in full force.

**4.6**    **Authority**. The person(s) executing this Agreement on behalf of the parties hereto warrant that (i) such party is duly organized and existing, (ii) they are duly authorized to execute and deliver this Agreement on behalf of said party, (iii) by so executing this Agreement, such party is formally bound to the provisions of this Agreement, and (iv) the entering into this Agreement does not violate any provision of any other Agreement to which said party is bound.

**4.7**    **Special Provisions**. Any additional or supplementary provisions or modifications or alterations of these General Provisions shall be set forth in Part III of this Agreement ("Special Provisions").

**4.8**    **Precedence**. In the event of any discrepancy between Part I ("Fundamental Terms"), Part II ("General Provisions"), Part III ("Special Provisions"), Part IV ("Scope of Services"), and/or Part V ("Budget") of this Agreement, the order of precedence shall be as follows.
Part III
Part II
Part IV
Part V
Part I

## PART III

## SPECIAL PROVISIONS

1) **Business License Requirement.**  Contractors who provide services for the City of Irvine within the city limits of Irvine shall obtain, within five (5) days of executing this Agreement and prior to commencing any work herein, a City of Irvine business license and shall maintain a current business license throughout the term of this Agreement.

## PART IV

## SCOPE OF SERVICES

Contractor shall perform City Attorney and general counsel services for the City of Irvine ("City") and the Orange County Great Park Corporation ("Great Park"); as directed by the City or Great Park, as applicable.

Jeffrey T. Melching shall serve as the City Attorney.

The City shall conduct a performance evaluation annually.

Contractor shall perform the services as set forth below.

1. Attend all City Council, Great Park Board of Directors and Planning Commission meetings.

2. Provide legal advice, counsel, services, consultation and opinions to City Council, Great Park, City Manager and City staff on a wide variety of municipal assignments.

3. Provide conflict of interest assistance to elected and appointed officials and staff, and assist officials and staff in seeking advice from the Fair Political Practices Commission.

4. Attend departmental meetings, staff meetings or committee meetings as deemed necessary and appropriate or as requested by the City Manager, City Council or Great Park Board of Directors.

5. Perform research and interpret laws, court decisions and other legal matters in order to prepare legal opinions and to advise the City Council, Great Park Board and management staff on legal matters pertaining to City operations.

6. Provide routine legal advice, telephone and personal consultations with City Council, Great Park Board, City Manager and City staff.

7. Review and/or prepare staff reports, ordinances, resolutions, orders, agreements, forms, notices, declarations, certificates, deeds, leases, and other documents required by the City or Great Park.

8. Render advice and assistance in the administration of the City's and Great Park's general liability and risk management programs to the extent that the same is not covered by the California Insurance Pool Authority (CIPA).

9. Serve as legal counsel to bodies as may be created and represented by or for the City and which meet regularly or periodically or on an as-needed basis.

15

10. Provide assistance to the City regarding election laws and assist in review of election forms, filings, and coordination with county, state and federal election officials.

11. Represent the City before other governmental bodies and agencies to promote the interests of the City.

12. Provide assistance to staff to monitor pending and current State and Federal legislation, regulations and case law. Conduct legislative analysis of proposed legislation and regulations to include impacts to the City, as directed.

13. Ensure that current and future City ordinances, policies, procedures and practices comply with state and federal law. Inform City Council and staff and recommend changes to City ordinances and practices, as needed.

14. Support enforcement of City codes, zoning regulations and building standards through administrative, quasi-judicial and judicial actions.

15. Provide assistance with issues related to land use and zoning ordinance, general plan and master plan updates.

16. Perform legal work pertaining to property acquisitions, condemnations, forfeiture activities, public improvements, public rights of ways, CEQA, and matters relating to special assessments and public utilities.

17. Provide City Council with guidance relative to Roberts Rules of Order, open meetings, Brown Act, and other related procedural matters.

18. Coordinate and monitor the work of special legal counsel as needed and directed by the City Council and/or City Manager.


**Non-Retainer Services/Special Counsel:**

Certain other legal services may also be required at the City's sole discretion including but not limited to the following:

1. Provide litigation support including monitoring matters involving litigation affecting the City and represent the City in actions, suits, or proceeding in which the City is a party or has a legal interest.

2. Commence and prosecute criminal actions necessary and appropriate to enforce municipal ordinances, including enforcement through administrative proceedings.

3. Represent the City and Great Park in the administration of claims and litigation filed by or against them. Upon recommendation and City approval, special counsel may be retained to defend or prosecute actions under certain circumstances, including, but not limited to, matters assigned by CIPA for tort

16

defense and workers' compensation defense work. Prior to commencing any litigation services, Contractor shall notify and obtain approval from the City, as appropriate, and provide a case evaluation and plan -   which shall include a statement of known facts and legal issues, statement of known injuries or damages, statement of liability exposure, recommendations on case strategy, possibilities and recommendations regarding early settlement, and a budget of anticipated fees, costs, and expenses through pleadings, discovery, arbitration, trial, and any other identifiable stages.  Contractor shall advise the City in timely fashion and in writing of any material change in the factors identified in the case evaluation and plan, including any change in the estimated budget. Contractor shall provide the City, as appropriate, with a written status report of all pending litigation matters on a quarterly basis, or more frequently upon request.

4. Render advice and assistance to the City on labor relations matters, review memoranda of understanding or other labor agreements, draft implementing legislation or other pertinent documents, and represent the City on matters arising from memoranda of understanding of the City's personnel rules and regulations.

5. Provide services on legal matters subject to reimbursement and other specialized litigation, specialized transactions and representational matters as requested by the City.

6. As needed and directed by the City or Great Park, Contractor may perform work related to the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency and post-Redevelopment.

17

## PART V

## BUDGET

Pricing shall be as set forth below and as listed in the Cost Summary in Attachment A.

Included in the Budget are all ordinary and overhead expenses incurred by Contractor and its agents and employees, including meetings with City representatives, and incidental costs incurred in performing under this Agreement.

The City shall not reimburse Contractor for local travel-related expenses, so any such costs must be included in the hourly rates set forth herein. The City will, however, provide reimbursement for reasonable pre-approved travel out of the area to include airfare and hotel reimbursement only. Contractors submitting expense reimbursement requests to the City shall include on their invoices detailed information including description, date of the expense, business purpose and amount. Travel related expenses (including hotels) shall be reimbursed at direct cost, but not to exceed the federal per diem rate as established by the U.S. General Services Administration (www.gsa.gov/perdiem), plus applicable taxes. Contractor shall attach supporting documents substantiating all expenses such as itemized receipts, paid invoices or paid credit card statements (if description has sufficient detail). Any request for travel-related expense reimbursement must be pre-approved by the City.

Payment for services will be made monthly on invoices deemed satisfactory to the City, with payment terms of net 45 days upon receipt of invoice. Contractor shall submit invoices within fifteen (15) days from the end of each month in which services have been provided. Contractor shall provide invoices with sufficient detail to ensure compliance to pricing as set forth in this Agreement. The information required may include: date(s) of work, hours of work, hourly rate(s), and material costs.

Contractors shall provide invoicing in the format requested by City.

Payment by City under this Agreement shall not be deemed as a waiver of the City's right to claim at a later point that such payment was not due under the terms of this Agreement.

**No work shall be performed in connection with this Agreement until the receipt of a signed City of Irvine Purchase Order.**



**RUTAN**
RUTAN & TUCKER, LLP

# ATTACHMENT A

## COST SUMMARY

| Labor Rates | |
|---|---|
| City Attorney | $195 per hour |
| Assistant City Attorney | $195 per hour |
| Partner/Associate | $195 per hour |
| Law Clerk | $140 per hour |
| Paralegal | $110 per hour |
| Special Services | $225 per hour |

Rutan's minimum unit of time for billing is one-tenth of an hour (.1).

"Special Services" includes: cable television, telecommunications, solid waste and other franchise matters; water and wastewater utility issues; complex economic development and successor agency matters, including services to or for the benefit of the City's successor agency to the extent such services are not an enforceable obligation of the successor agency; advice on water quality, NPDES, hazardous materials and other complex environmental matters; and any non-routine item or matter added by the City Council. Furthermore, Special Services includes litigation and contested administrative matters. Litigation includes, in addition to formal litigation, contested administrative matters before other governmental agencies (e.g., Department of Industrial Relations, Regional Water Quality Control Board), and internal administrative proceedings such as employee disciplinary hearings and any resulting lawsuits, eminent domain matters, proceedings to revoke land use entitlements or City-issued licenses, and similar litigation-like proceedings.

Legal work performed relating to the Great Park will be charged at the same rate as regular City Attorney work, unless the nature of the work fits within the definition of "Special Services" detailed in the above paragraph.

In-service training costs are charged at the normal hourly rates. However, since Rutan gives such training repeatedly to its City clients (including ethics training, mandatory AB 1234 training, new Councilperson/Commissioner training, harassment training, ...), it already has prepared presentation materials.

19

On bond counsel matters, if contingent, one percent (1%) of the first $1 million executed and delivered; one-half percent (0.5%) of the next $4 million executed and delivered; one-quarter percent (0.25%) of the next $10 million executed and delivered; one-eighth percent (0.125%) of the next $5 million executed and delivered; and one-tenth percent (0.1%) of any amount over $20 million executed and delivered; all subject to a minimum fee of $25,000. Payment of fees is entirely contingent upon the successful execution and delivery of the bonds or notes to be payable on or after delivery except for out-of-pocket costs, which are payable in any event. If non-contingent, $300 per hour, together with out-of-pocket expenses. In the event that multiple series of bonds or notes are issued, the foregoing fee structure would be applied to each issue, subject to the $25,000 minimum fee per issue.

On projects for which the City is reimbursed by a third party or applicant, Rutan may charge its full design rate for the attorney performing the work.

## Exhibit 1

### WORKERS' COMPENSATION INSURANCE CERTIFICATION

Contract Services Description: City Attorney Services

### WORKERS' COMPENSATION DECLARATION

I hereby affirm under penalty of perjury one of the following declarations:

*(CHECK ONE APPLICABLE BOX BELOW)*

☒ **I have and will maintain workers' compensation insurance**, as required by Section 3700 of the Labor Code, for the performance of the work to be performed under this Agreement and shall submit insurance certificates evidencing such coverage as set forth herein.

☐ I certify that, in the performance of the work under this Agreement, **I shall not employ any person** in any manner so as to become subject to the workers' compensation laws of California, and I hereby agree to indemnify, defend, and hold harmless the City of Irvine and all of its officials, employees, and agents from and against any and all claims, liabilities, and losses relating to personal injury or death, economic losses, and property damage arising out of my failure to provide such worker's compensation insurance. I further agree that, **if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions and immediately furnish insurance certificates** evidencing such coverage as set forth herein.

WARNING: FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

| | |
|---|---|
| Dated: | 2/16/16 |
| Contracting Firm: | Rutan + Tucker, LLP |
| Signature: | *(signature)* |
| Title: | Partner |
| Address: | 611 Anton Blvd, Ste 1400, Costa Mesa, CA 92626 |

21

# CONTRACTS
# SCAN SHEET

CONTRACT NUMBER: **8101**

CONTRACT TYPE: **SERVICES**

DEPARTMENT:
Department initiating contract **CITY MANAGER**

CONTRACT DATE:
As stated in Terms section of Contract **8/13/2013**

EXPIRATION DATE:
As stated in Terms section of Contract **08/15/2014**

MEETING DATE:
Date of meeting where contract was approved

ITEM NUMBER:
Item number of meeting where contract was approved

CONTRACT AMOUNT:
As stated in Budget section of Contract

CONTRACT NAME:
As stated in 1st paragraph of contract **RUTAN & TUCKER, LLP**

CONTRACT SUBJECT:
As stated in Description of Services section of contract **GENERAL COUNSEL SERVICES FOR THE CITY OF IRVINE AS SUCCESSOR AGENCY TO THE DISSOLVED IRVINE REDEVELOPMENT AGENCY AS DIRECTED BY THE SUCCESSOR AGENCY**

# AGREEMENT FOR CONTRACT SERVICES    ORIGINAL

THIS AGREEMENT FOR CONTRACT SERVICES (the "Agreement") is made and entered into as of August 13, 2013, by and between the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency ("Successor Agency"), and Rutan & Tucker, LLP, a Limited Liability Partnership ("Contractor"). (The term Contractor includes professionals performing in a consulting capacity.)

## PART I
## FUNDAMENTAL TERMS

**A.    Location of Project:** The Successor Agency location(s) as set forth in PART IV, Scope of Services, included herein.

**B.    Description of Services/Goods to be Provided:** Legal Services in accordance with PART IV, Scope of Services, included herein.

**C.    Term:** Unless terminated earlier as set forth in this Agreement, the services shall commence on March 21, 2013 ("Commencement Date") and shall continue until August 15, 2014. The Successor Agency reserves the right to extend this Agreement for up to four (4) additional one (1) year periods. Such extension shall only be valid with Successor Agency approval.

**D.    Party Representatives:**

D.1.  The Successor Agency designates the following person/officer to act on Successor Agency's behalf:  Sean Joyce, Executive Director

D.2.  The Contractor designates the following person to act on Contractor's behalf: Dan Slater, Partner

**E.    Notices:** Contractor shall deliver all notices and other writings required to be delivered under this Agreement to Successor Agency at the address set forth in Part II ("General Provisions"). The Successor Agency shall deliver all notices and other writings required to be delivered to Contractor at the address set forth following Contractor's signature below.

**F.    Attachments:** This Agreement incorporates by reference the following Attachments to this Agreement:

| | | |
|---|---|---|
| F.1. | Part I: | Fundamental Terms |
| F.2. | Part II: | General Provisions |
| F.3. | Part III: | Special Provisions |
| F.4. | Part IV: | Scope of Services |
| F.5. | Part V: | Budget |

**G.    Integration:** This Agreement represents the entire understanding of Successor Agency and Contractor as to those matters contained herein. No prior oral or written understanding shall be of any force or effect with regard to those matters covered by this Agreement. This Agreement supersedes and cancels any and all previous negotiations, arrangements, agreements, and understandings, if any, between the parties, and none shall be used to interpret this Agreement.

1

8101

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the date first set forth above.

**CITY OF IRVINE AS SUCCESSOR AGENCY**        **RUTAN & TUCKER, LLP**
**TO THE DISSOLVED IRVINE**
**REDEVELOPMENT AGENCY**

By: _____        By: _____

Its:   Chair, Successor Agency                Its:   Partner


By: _____

Its: _____

Attest:


By: _____
Marie Macias
Interim Secretary, Successor
Agency

**Contractor Information**
**Address for Notices and Payments:**

Rutan & Tucker, LLP
PO Box 1950
Costa Mesa, CA 92628-1950
**Attn:** Dan Slater
**Telephone:** (714) 641-5100
**FAX:** (714) 546-9035
**Email:** dslater@rutan.com

2

**PART II**
**GENERAL PROVISIONS**

**SECTION ONE:  SERVICES OF CONTRACTOR**

    **1.1**    **Scope of Services.**  In compliance with all terms and conditions of this Agreement, Contractor shall provide the goods and/or services shown on Part IV hereto ("Scope of Services"), which may be referred to herein as the "services" or the "work."  If this Agreement is for the provision of goods, supplies, equipment or personal property, the terms "services" and "work" shall include the provision (and, if designated in the Scope of Services, the installation) of such goods, supplies, equipment or personal property.

    **1.2**    **Changes and Additions to Scope of Services**.  Successor Agency shall have the right at any time during the performance of the services, without invalidating this Agreement, to order extra work beyond that specified in the Scope of Services or make changes by altering, adding to, or deducting from said work.  No such work shall be undertaken unless a written order is first given by Successor Agency to Contractor, incorporating therein any adjustment in (i) the Budget, and/or (ii) the time to perform this Agreement, which adjustments are subject to the written approval of the Contractor.  Successor Agency approval and/or payment for work claimed by Contractor as changed or additional shall not act to prevent Successor Agency at any time to claim such work is covered by the Scope of Work and should be performed by Contractor without additional consideration due.  It is expressly understood by Contractor that the provisions of this Section 1.2 shall not apply to services specifically set forth in the Scope of Services or reasonably contemplated therein.  Contractor hereby acknowledges that it accepts the risk that the services to be provided pursuant to the Scope of Services may be more costly or time consuming than Contractor anticipates and that Contractor shall not be entitled to additional compensation therefor.

    **1.3**    **Standard of Performance.**  Contractor agrees that all services shall be performed in a competent, professional, and satisfactory manner in accordance with the standards prevalent in the industry, and that all goods, materials, equipment or personal property included within the services herein shall be of good quality, fit for the purpose intended.

    **1.4**    **Performance to Satisfaction of Successor Agency.**  Notwithstanding any other provision herein, Contractor agrees to perform all work to the satisfaction of Successor Agency within the time specified.  If Successor Agency reasonably determines that the work is not satisfactory, Successor Agency shall have the right to take appropriate action, including but not limited to:  (i) meeting with Contractor to review the quality of the work and resolve matters of concern; (ii) requiring Contractor to repeat unsatisfactory work at no additional charge until it is satisfactory; (iii) suspending the delivery of work to Contractor for an indefinite time; (iv) withholding payment; and (v) terminating this Agreement as hereinafter set forth.

    **1.5**    **Instructions from Successor Agency.**  In the performance of this Agreement, Contractor shall report to and receive instructions from the Successor Agency's Representative designated in Paragraph D.1 of Part I ("Fundamental Terms") of this Agreement.  Tasks or services other than those specifically described in the Scope of Services shall not be performed without the prior written approval of the Successor Agency's Representative.

    **1.6**    **Familiarity with Work.**  By executing this Agreement, Contractor warrants that Contractor (i) has thoroughly investigated and considered the scope of services to be performed, (ii) has carefully considered how the services should be performed, and (iii) fully understands the facilities, difficulties, and restrictions attending performance of the services under the Agreement.  If the services involve work upon any site, Contractor warrants that Contractor has or will investigate

3

the site and is or will be fully acquainted with the conditions there existing, prior to commencement of services hereunder. Should the Contractor discover any conditions, including any latent or unknown conditions, which will materially affect the performance of the services hereunder, Contractor shall immediately inform the Successor Agency of such fact in writing and shall not proceed except at Contractor's risk until written instructions are received from the Successor Agency's Representative.

### 1.7 Identity of Persons Performing Work.

(A)    Contractor represents that it employs or will employ at its own expense all personnel required for the satisfactory performance of any and all tasks and services required hereunder. Contractor shall not replace any of the principal members of the Project team, or any successors to any of such persons, without Successor Agency's prior written approval.

(B)    Contractor represents that the tasks and services required hereunder will be performed by Contractor or under its direct supervision, and that all personnel engaged in such work shall be fully qualified and shall be authorized and permitted under applicable State and local law to perform such tasks and services. In carrying out such tasks and services, Contractor shall not employ any undocumented aliens (that is, persons who are not citizens or nationals of the United States).

(C)    This Agreement contemplates the personal services of Contractor and Contractor's employees, and it is recognized by the parties hereto that a substantial inducement to Successor Agency for entering into this Agreement was, and is, the professional reputation and competence of Contractor and Contractor's employees. Neither this Agreement nor any interest therein may be assigned by Contractor, except upon written consent of Successor Agency.

### 1.8 Prohibition Against Subcontracting or Assignment. Contractor shall not contract with any other entity to perform in whole or in part the services required hereunder without the express written approval of Successor Agency. In addition, neither the Agreement nor any interest herein may be transferred, assigned, conveyed, hypothecated, or encumbered voluntarily or by operation of law, whether for the benefit of creditors or otherwise, without the prior written approval of Successor Agency. In the event of any unapproved transfer, including any bankruptcy proceeding, Successor Agency may void the Agreement at Successor Agency's option in its sole and absolute discretion. No approved transfer shall release any surety of Contractor of any liability hereunder without the express written consent of Successor Agency.

## SECTION TWO:    INSURANCE AND INDEMNIFICATION

### 2.1 Insurance. Without limiting Contractor's indemnification obligations, Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided below, against all claims for injuries against persons or damages to property which may arise from or in connection with the performance of the work hereunder by Contractor, its agents, representatives, employees, and/or subcontractors. In the event that Contractor subcontracts any portion of the work in compliance with Section 1.8 of this Agreement, the contract between the Contractor and such subcontractor shall require the subcontractor to maintain the same policies of insurance that the contractor is required to maintain pursuant to this Section 2.1. Providing the insurance coverage required by this Agreement shall not relieve Contractor of any liability for any damages to City or any third party which is in excess of such insurance coverage or excluded from such insurance coverage but for which Contractor may be held legally responsible.

4

**2.1.1** <u>**Insurance Coverage Required.**</u>  The policies and amounts of insurance required hereunder shall be as follows:

**A. Comprehensive General Liability** Insurance which affords coverage at least as broad as Insurance Services Office "occurrence" form CG 00 01 including completed operations and contractual liability, with limits of liability of not less than $1,000,000 per occurrence and $2,000,000 annual aggregate for liability arising out of Contractor's performance of this Agreement. The limits shall be provided by either a single primary policy or combination of policies.  If limits are provided with excess and/or umbrella coverage the limits combined with the primary will equal the minimum limits set forth above.  If written with an aggregate, the aggregate shall be double the each occurrence limit.  Such insurance shall be endorsed to:

> (1) Name the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency and its employees, representatives, officers and agents (collectively hereinafter "Successor Agency and Successor Agency Personnel") as additional insured for claims arising out of Contractor's performance of this Agreement.

> (2) Provide that the insurance is primary and non-contributing with any other valid and collectible insurance or self-insurance available to Successor Agency.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement.*

**B. Automobile Liability Insurance** with a limit of liability of not less than $1,000,000 each occurrence and $1,000,000 annual aggregate.  The limits shall be provided by either a single primary policy or combination of policies.  If limits are provided with excess and/or umbrella coverage the limits combined with the primary will equal the minimum limits set above.  Such insurance shall include coverage for all "owned," "hired" and "non-owned" vehicles, or coverage for "any auto." Such insurance shall be endorsed to:

> (1) Name the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency and its employees, representatives, officers and agents as additional insured for claims arising out of Contractor's performance of this Agreement.

> (2) Provide that the insurance is primary and non-contributing with any other valid and collectible insurance or self-insurance available to Successor Agency.

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement.*

**C. Workers' Compensation Insurance** in accordance with the Labor Code of California and covering all employees of the Contractor providing any service in the performance of this agreement.  Such insurance shall be endorsed to:

> (1)   Waive the insurer's right of Subrogation against the Successor Agency and Successor Agency Personnel.

5

*A statement on an insurance certificate will not be accepted in lieu of the actual endorsement unless your insurance carrier is the State of California Insurance Fund (SCIF) and the endorsement numbers 2570 and 2065 are referenced on the certificate of insurance.*

**Contractor's completion of the form attached hereto as Exhibit 1 shall be a condition precedent to Contractor's rights under this Agreement.** Should Contractor certify, pursuant to Exhibit 1, that, in the performance of the work under this Agreement, it shall not employ any person in any manner so as to become subject to the workers' compensation laws of California, Contractor shall nonetheless maintain responsibility for requiring that any subcontractors performing work under this Agreement have and maintain workers' compensation insurance, as required by Section 3700 of the Labor Code, for the work performed under this Agreement.

**D. Professional Liability Insurance** with minimum limits of $1,000,000 each claim. Covered professional services shall include all work performed under this Agreement and delete any exclusion that may potentially affect the work to be performed.

**E. Evidence of Insurance:** Contractor shall provide to Successor Agency a Certificate(s) of Insurance evidencing such coverage together with copies of the required policy endorsements no later than five (5) business days prior to commencement of service and at least fifteen (15) business days prior to the expiration of any policy. Coverage shall not be suspended, voided, cancelled, reduced in coverage or in limits, non-renewed, or materially changed for any reason, without thirty (30) days prior written notice thereof given by the insurer to Successor Agency by U.S. mail, or by personal delivery, except for nonpayment of premiums, in which case ten (10) days prior notice shall be provided.

Signed insurance certificates and endorsements must be **sent via email** from Contractor's insurance broker/agent to purchasing@cityofirvine.org

The Successor Agency project title or description MUST be included in the "Description of Operations" box on the certificate.

**Certificate Holder:**
City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency
c/o:  City of Irvine
PO Box 19575
Irvine, CA 92623-9575

**F. Endorsements:**  A statement on an insurance certificate will not be accepted in lieu of the actual endorsement.  Insurance policies shall not be in compliance if they include any limiting provision or endorsement that has not been submitted to the Successor Agency for approval.

Additional Insured Endorsements shall not:

1.  Be limited to "Ongoing Operations"
2.  Exclude "Contractual Liability"
3.  Restrict coverage to the "Sole" liability of Contractor
4.  Contain any other exclusion contrary to the Agreement.

6

**G. Any Deductible in Excess of $50,000 and/or Self-Insured Retentions** must be approved in writing by the Successor Agency.

**H. Acceptability of Insurers.** Each policy shall be from a company with current A.M. Best's rating of A VII or higher and authorized to do business in the State of California, or otherwise allowed to place insurance through surplus lines brokers under applicable provisions of the California Insurance Code or any federal law. Any other rating must be approved in writing by the Successor Agency.

**I. Insurance of Subcontractors.** Contractor shall be responsible for causing Subcontractors to maintain the same types and limits of coverage in compliance with this Agreement, including naming the Successor Agency as an additional insured to the Subcontractor's policies.

**2.2    Indemnification.** Contractor shall indemnify, defend, and hold Successor Agency and Successor Agency Personnel harmless from and against any and all actions, suits, claims, demands, judgments, attorney's fees, costs, damages to persons or property, losses, penalties, obligations, expenses or liabilities (herein "claims" or "liabilities") that may be asserted or claimed by any person or entity arising out of the willful or negligent acts, errors or omissions of Contractor, its employees, agents, representatives or subcontractors which directly or indirectly relate to the work being performed or services being provided under this Agreement, whether or not there is concurrent active or passive negligence on the part of Successor Agency and/or Successor Agency Personnel, but excluding such claims or liabilities arising from the sole active negligence or willful misconduct of Successor Agency or Successor Agency Personnel in connection therewith:

**2.2.1**    Contractor shall defend any action or actions filed in connection with any such claims or liabilities, and shall pay all costs and expenses, including attorney's fees incurred in connection therewith.

**2.2.2**    Contractor shall promptly pay any judgment rendered against Successor Agency or any Successor Agency Personnel for any such claims or liabilities.

**2.2.3**    In the event Successor Agency and/or any Successor Agency Personnel is made a party to any action or proceeding filed or prosecuted for any such damages or other claims arising out of or in connection with the work being performed or services being provided under this Agreement, Contractor shall pay to Successor Agency any and all costs and expenses incurred by Successor Agency or Successor Agency Personnel in such action or proceeding, together with reasonable attorney's fees and expert witness fees.

## SECTION THREE:    LEGAL RELATIONS AND RESPONSIBILITIES

**3.1    Compliance with Laws.** Contractor shall keep itself fully informed of all existing and future state and federal laws and all county and city ordinances and regulations which in any manner affect those employed by it or in any way affect the performance of services pursuant to this Agreement. Contractor shall at all times observe and comply with all such laws, ordinances, and regulations and shall be responsible for the compliance of all work and services performed by or on behalf of Contractor. When applicable, Contractor shall not pay less than the prevailing wage, which rate is determined by the Director of Industrial Relations of the State of California.

**3.2    Licenses, Permits, Fees and Assessments.** Contractor shall obtain at its sole cost and expense all licenses, permits, and approvals that may be required by law for the

7

performance of the services required by this Agreement. Contractor shall have the sole obligation to pay any fees, assessments, and taxes, plus applicable penalties and interest, which may be imposed by law and arise from or are necessary for Contractor's performance of the services required by this Agreement, and shall indemnify, defend, and hold harmless Successor Agency against any such fees, assessments, taxes, penalties, or interest levied, assessed, or imposed against Successor Agency thereunder.

3.3 **Covenant against Discrimination.** Contractor covenants for itself, its heirs, executors, assigns, and all persons claiming under or through it, that there shall be no discrimination against any person on account of race, color, creed, religion, sex, marital status, national origin, or ancestry, in the performance of this Agreement. Contractor further covenants and agrees to comply with the terms of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101 et seq.) as the same may be amended from time to time.

3.4 **Independent Contractor.** Contractor shall perform all services required herein as an independent contractor of Successor Agency and shall remain at all times as to Successor Agency a wholly independent contractor. Successor Agency shall not in any way or for any purpose become or be deemed to be a partner of Contractor in its business or otherwise, or a joint venturer, or a member of any joint enterprise with Contractor. Contractor shall not at any time or in any manner represent that it or any of its agents or employees are agents or employees of Successor Agency. Neither Contractor nor any of Contractor's employees shall, at any time, or in any way, be entitled to any sick leave, vacation, retirement, or other fringe benefits from the Successor Agency; and neither Contractor nor any of its employees shall be paid by Successor Agency time and one-half for working in excess of forty (40) hours in any one week. Successor Agency is under no obligation to withhold State and Federal tax deductions from Contractor's compensation. Neither Contractor nor any of Contractor's employees shall be included in the competitive service, have any property right to any position, or any of the rights an employee may have in the event of termination of this Agreement.

3.5 **Covenant against Contingent Fees.** Contractor warrants that it has not employed or retained any company or person to solicit or secure this Agreement and that it has not paid or agreed to pay any company or person any fee or commission from the award or making of this Agreement. For breach or violation of this warranty, Successor Agency shall have the right to annul this Agreement without liability or, in its discretion, to deduct from the Agreement price or consideration, or otherwise recover, the full amount of such fee or commission.

3.6 **Use of Patented Materials.** Contractor shall assume all costs arising from the use of patented or copyrighted materials, including but not limited to equipment, devices, processes, and software programs, used or incorporated in the services or work performed by Contractor under this Agreement. Contractor shall indemnify, defend, and save the Successor Agency harmless from any and all suits, actions or proceedings of every nature for or on account of the use of any patented or copyrighted materials consistent with Section 2.2 herein.

3.7 **Proprietary Information.** All proprietary information developed specifically for Successor Agency by Contractor in connection with, or resulting from, this Agreement, including but not limited to inventions, discoveries, improvements, copyrights, patents, maps, reports, textual material, or software programs, but not including Contractor's underlying materials, software, or know-how, shall be the sole and exclusive property of Successor Agency, and are confidential and shall not be made available to any person or entity without the prior written approval of Successor Agency. Contractor agrees that the compensation to be paid pursuant to this Agreement includes adequate and sufficient compensation for any proprietary information developed in connection with or resulting from the performance of Contractor's services under this Agreement. Contractor further understands and agrees that full disclosure of all proprietary information developed in

8

connection with, or resulting from, the performance of services by Contractor under this Agreement shall be made to Successor Agency, and that Contractor shall do all things necessary and proper to perfect and maintain ownership of such proprietary information by Successor Agency.

      **3.8**    **Retention of Funds.** Contractor hereby authorizes Successor Agency to deduct from any amount payable to Contractor (whether arising out of this Agreement or otherwise) any amounts the payment of which may be in dispute hereunder or which are necessary to compensate Successor Agency for any losses, costs, liabilities, or damages suffered by Successor Agency, and all amounts for which Successor Agency may be liable to third parties, by reason of Contractor's negligent acts, errors, or omissions, or willful misconduct, in performing or failing to perform Contractor's obligations under this Agreement. Successor Agency in its sole and absolute discretion, may withhold from any payment due Contractor, without liability for interest, an amount sufficient to cover such claim or any resulting lien. The failure of Successor Agency to exercise such right to deduct or withhold shall not act as a waiver of Contractor's obligation to pay Successor Agency any sums Contractor owes Successor Agency.

      **3.9**    **Termination by Successor Agency.** Successor Agency reserves the right to terminate this Agreement at any time, with or without cause, upon written notice to Contractor. Upon receipt of any notice of termination from Successor Agency, Contractor shall immediately cease all services hereunder except such as may be specifically approved in writing by Successor Agency. Contractor shall be entitled to compensation for all services rendered prior to receipt of Successor Agency's notice of termination and for any services authorized in writing by Successor Agency thereafter. If termination is due to the failure of Contractor to fulfill its obligations under this Agreement, Successor Agency may take over the work and prosecute the same to completion by contract or otherwise, and Contractor shall be liable to the extent that the total cost for completion of the services required hereunder, including costs incurred by Successor Agency in retaining a replacement contractor and similar expenses, exceeds the Budget.

      **3.10**    **Right to Stop Work; Termination by Contractor.** Contractor shall have the right to stop work and terminate only if Successor Agency fails to timely make a payment required under the terms of the Budget. Contractor shall provide Successor Agency thirty (30) day prior written notice of such claimed payment owed and Successor Agency shall have an opportunity to remedy any such claimed breach during such time with no legal consequence to Successor Agency. Contractor shall immediately cease all services hereunder following the thirty (30) day notice, except such services as may be specifically approved in writing by Successor Agency. Contractor shall be entitled to compensation for all services rendered prior to termination and for any services authorized in writing by Successor Agency thereafter. If Contractor terminates this Agreement because of an error, omission, or a fault of Contractor, or Contractor's willful misconduct, the terms of Section 3.9 relating to Successor Agency's right to take over and finish the work and Contractor's liability, the thirty (30) day notice shall apply.

      **3.11**    **Waiver.** No delay or omission in the exercise of any right or remedy by a nondefaulting party on any default shall impair such right or remedy or be construed as a waiver. A party's consent to or approval of any act by the other party requiring the party's consent or approval shall not be deemed to waive or render unnecessary the other party's consent to or approval of any subsequent act. Any waiver by either party of any default must be in writing.

      **3.12**    **Legal Actions.** Legal actions concerning any dispute, claim, or matter arising out of or in relation to this Agreement shall be instituted and maintained in the Municipal and Superior Courts of the State of California in the County of Orange, or in any other appropriate court with jurisdiction in such County, and Contractor agrees to submit to the personal jurisdiction of such court.

9

**3.13    Rights and Remedies are Cumulative.** Except as may be expressly set forth in this Agreement, the rights and remedies of the parties are cumulative and the exercise by either party of one or more of such rights or remedies or other rights or remedies as may be permitted by law or in equity shall not preclude the exercise by such party, at the same or different times, of any other rights or remedies to which such party may be entitled.

**3.14    Attorneys' Fees.** In any action between the parties hereto seeking enforcement of any of the terms or provisions of this Agreement or in connection with the performance of the work hereunder, the party prevailing in the final judgment in such action or proceeding, in addition to any other relief which may be granted, shall be entitled to have and recover from the other party its reasonable costs and expenses, including, but not limited to, reasonable attorney's fees, expert witness fees, and courts costs. If either party to this Agreement is required to initiate or defend litigation with a third party because of the violation of any term or provision of this Agreement by the other party, then the party so litigating shall be entitled to its reasonable attorney's fees and costs from the other party to this Agreement.

**3.15    Force Majeure.** The time period specified in this Agreement for performance of services shall be extended because of any delays due to unforeseeable causes beyond the control and without the fault or negligence of Successor Agency or Contractor, including, but not restricted to, acts of nature or of the public enemy, unusually severe weather, fires, earthquakes, floods, epidemics, quarantine restrictions, riots, strikes, freight embargoes, wars, litigation, and/or acts of any governmental agency, including Successor Agency, if the delaying party shall within ten (10) days of the commencement of such delay notify the other party in writing of the causes of the delay. If Contractor is the delaying party, Successor Agency shall ascertain the facts and the extent of delay, and extend the time for performing the services for the period of the enforced delay when and if in the judgment of Successor Agency such delay is justified. Successor Agency's determination shall be final and conclusive upon the parties to this Agreement. In no event shall Contractor be entitled to recover damages against Successor Agency for any delay in the performance of this Agreement, however caused. Contractor's sole remedy shall be extension of this Agreement pursuant to this Section 3.13.

**3.16    Non-liability of Successor Agency Officers and Employees.** No officer, official, employee, agent, representative, or volunteer of Successor Agency shall be personally liable to Contractor, or any successor in interest, in the event of any default or breach by Successor Agency, or for any amount which may become due to Contractor or its successor, or for breach of any obligation of the terms of this Agreement.

**3.17    Conflicts of Interest.**

A.    No officer, official, employee, agent, representative or volunteer of Successor Agency shall have any financial interest, direct or indirect, in this Agreement, or participate in any decision relating to this Agreement that affects his or her financial interest or the financial interest of any corporation, partnership, association or other entity in which he or she is interested, in violation of any Federal, State or City statute, ordinance or regulation. Contractor shall not employ any such person while this Agreement is in effect.

B.    Contractor represents, warrants and covenants that he, she or it presently has no interest, direct or indirect, which would interfere with or impair in any manner or degree the performance of Contractor's obligations and responsibilities under this Agreement. Contractor further agrees that while this Agreement is in effect, Contractor shall not acquire or otherwise obtain any interest, direct or indirect, that would interfere with or impair in any manner or degree the performance of Contractor's obligations and responsibilities under this Agreement.

10

C.      Contractor represents and warrants that it has not provided or promised to provide any gift or other consideration, directly or indirectly, to any officer, employee, or agent of Successor Agency to obtain Successor Agency's approval of this Agreement. Contractor shall not, at any time, have any financial interest in this Agreement or the project that is the subject of this Agreement other than the compensation to be paid to Contractor as set forth in this Agreement. In the event the work and/or services to be performed hereunder relate to a project and/or application under consideration by or on file with the Successor Agency, (i) Contractor shall not possess or maintain any business relationship with the applicant or any other person or entity which Contractor knows to have a personal stake in said project and/or application, (ii) other than performing its work and/or services to Successor Agency in accordance with this Agreement Contractor shall not advocate either for or against said project and/or application, and (iii) Contractor shall immediately notify Successor Agency in the event Contractor determines that Contractor has or acquires any such business relationship with the applicant or other person or entity which has a personal stake in said project and/or application. The provisions in this Section shall be applicable to all of Contractor's officers, directors, employees, and agents, and shall survive the termination of this Agreement.

D.      Contractor acknowledges that pursuant to the provisions of the Political Reform Act (Government Code section 87100 *et seq.*), Successor Agency may determine Contractor to be a "Consultant" as that term is defined by the Act. In the event Successor Agency makes such a determination, Contractor agrees to complete and file a "Statement of Economic Interest" with the Secretary of the Successor Agency to disclose such financial interests as required by Successor Agency. In such event, Contractor further agrees to require any other person doing work under this Agreement to complete and file a "Statement of Economic Interest" to disclose such other person's financial interests as required by Successor Agency.

**3.18   Contractor Ethics.** Contractor represents and warrants that it has not provided or promised to provide any gift or other consideration, directly or indirectly, to any officer, employee, or agent of Successor Agency to obtain Successor Agency's approval of this Agreement. Contractor shall not, at any time, have any financial interest in this Agreement or the project that is the subject of this Agreement other than the compensation to be paid to Contractor as set forth in this Agreement. In the event the work and/or services to be performed hereunder relate to a project and/or application under consideration by or on file with the Successor Agency, (i) Contractor shall not possess or maintain any business relationship with the applicant or any other person or entity which Contractor knows to have a personal stake in said project and/or application, (ii) other than performing its work and/or services to Successor Agency in accordance with this Agreement Contractor shall not advocate either for or against said project and/or application, and (iii) Contractor shall immediately notify Successor Agency in the event Contractor determines that Contractor has or acquires any such business relationship with the applicant or other person or entity which has a personal stake in said project and/or application. The provisions in this Section shall be applicable to all of Contractor's officers, directors, employees, and agents, and shall survive the termination of this Agreement.

**3.19 Compliance with California Unemployment Insurance Code Section 1088.8.** If Contractor is a Sole Proprietor, then prior to signing the Agreement, Contractor shall provide to the Successor Agency a completed and signed Form W-9, Request for Taxpayer Identification Number and Certification. Contractor understands that pursuant to California Unemployment Insurance Code Section 1088.8, the Successor Agency will report the information from Form W-9 to the State of California Unemployment Development Department, and that the information may be used for the purposes of establishing, modifying, or enforcing child support obligations, including collections, or reported to the Franchise Tax Board for tax enforcement purposes.

11

**SECTION FOUR:    MISCELLANEOUS PROVISIONS**

**4.1    Records and Reports.** The Executive Director or his/her designee reserves the right to audit the Contractor's compliance with all of the terms and conditions of this Agreement at any time.    Upon request by Successor Agency, Contractor shall prepare and submit to Successor Agency any reports concerning Contractor's performance of the services rendered under this Agreement.    Successor Agency shall have access, with 72 hours advance written notice delivered to Contractor, to the books and records of Contractor related to Contractor's performance of this Agreement in the event any audit is required.    All drawings, documents, and other materials prepared by Contractor in the performance of this Agreement (i) shall be the property of Successor Agency and shall be delivered at no cost to Successor Agency upon request of Successor Agency or upon the termination of this Agreement, and (ii) are confidential and shall not be made available to any individual or entity without prior written approval of Successor Agency.    Contractor shall keep and maintain all records and reports related to this Agreement for a period of three (3) years following termination of this Agreement, and Successor Agency shall have access to such records in the event any audit is required.

**4.2    Notices.** Unless otherwise provided herein, all notices required to be delivered under this Agreement or under applicable law shall be personally delivered, or delivered by United States mail, prepaid, certified, return receipt requested, or by reputable document delivery service that provides a receipt showing date and time of delivery.    Notices personally delivered or delivered by a document delivery service shall be effective upon receipt.    Notices delivered by mail shall be effective at 5:00 p.m. on the second calendar day following dispatch.    Notices to the Successor Agency shall be delivered to the following address, to the attention of the Successor Agency Representative set forth in Paragraph D.1 of the Fundamental Terms of this Agreement:

> To Successor Agency:
> One Civic Center Plaza  (92606) (Hand Deliveries)
> P. O. Box 19575
> Irvine, CA  92623-9575
> ATTN: Sean Joyce, Executive Director

Notices to Contractor shall be delivered to the address set forth below Contractor's signature on Part I of this Agreement, to the attention of Contractor's Representative set forth in Paragraph D.2 of the Fundamental Terms of this Agreement.    Changes in the address to be used for receipt of notices shall be effected in accordance with this Section 4.2.

**4.3    Construction and Amendment.** The terms of this Agreement shall be construed in accordance with the meaning of the language used and shall not be construed for or against either party by reason of the authorship of this Agreement or any other rule of construction which might otherwise apply.    The headings of sections and paragraphs of this Agreement are for convenience or reference only, and shall not be construed to limit or extend the meaning of the terms, covenants and conditions of this Agreement.    This Agreement may only be amended by the mutual consent of the parties by an instrument in writing.

**4.4    Severability.** Each provision of this Agreement shall be severable from the whole. If any provision of this Agreement shall be found contrary to law, the remainder of this Agreement shall continue in full force.

12

**4.5** **Authority**. The person(s) executing this Agreement on behalf of the parties hereto warrant that (i) such party is duly organized and existing, (ii) they are duly authorized to execute and deliver this Agreement on behalf of said party, (iii) by so executing this Agreement, such party is formally bound to the provisions of this Agreement, and (iv) the entering into this Agreement does not violate any provision of any other Agreement to which said party is bound.

**4.6** **Special Provisions**. Any additional or supplementary provisions or modifications or alterations of these General Provisions shall be set forth in Part III of this Agreement ("Special Provisions").

**4.7** **Precedence**. In the event of any discrepancy between Part I ("Fundamental Terms"), Part II ("General Provisions"), Part III ("Special Provisions"), Part IV ("Scope of Services"), and/or Part V ("Budget"), Part III shall take precedence and prevail over Parts I, II, IV and V; Part II shall take precedence and prevail over Parts I, IV and V; Part IV shall take precedence and prevail over Parts I and V; and Part V shall take precedence over Part I.

13

**PART III**
**SPECIAL PROVISIONS**

1) **Business License Requirement.** Contractors who provide services for the Successor Agency within the city limits of the city of Irvine shall obtain, within five (5) days of executing this Agreement and prior to commencing any work herein, a City of Irvine business license and shall maintain a current business license throughout the term of this Agreement.

2) **Living Wage Ordinance.** The City of Irvine has adopted a Living Wage Ordinance (the "Ordinance") that requires contractors who enter into a contract with the Successor Agency to provide services with an estimated value of one hundred thousand dollars ($100,000) or more for any consecutive twelve-month period to comply with the requirements of the Ordinance (reference Appendix A). Contractor shall notify the Successor Agency in writing if the aggregate value of multiple contracts with the Successor Agency, including amendments to this Agreement, total $100,000 or more. Any subcontractor(s) performing work on the Agreement shall also be subject to the requirements of the Ordinance. The current living wage and benefit factor rates are posted on the City of Irvine's website at www.cityofirvine.org/purchasing. To view the rates, along with other living wage information, click on the "Living Wage Information" link.

**Contractors are required to submit a completed Declaration of Compliance - Living Wage Ordinance form (included herein as Appendix B) with their completed contract documents.**

The following Living Wage Ordinance information documents are also included: Living Wage Guide (Appendix C); Living Wage Comparable Benefits Summary (Appendix D); and the required Notice to Employees (Contractor Responsibility/Employee Rights) (Appendix E).

3) **PART II GENERAL PROVISIONS, Section 2.1.1 Insurance Coverage Required, Professional Liability Insurance, is replaced with the following:**

**Professional Liability Insurance** with minimum annual aggregate limits of $10,000,000. Covered professional services shall include all work performed under this Agreement and delete any exclusion that may potentially affect the work to be performed. Subcontractors and consultants to Contractor may also satisfy the insurance coverage requirements of this Agreement if they provide minimum limits of $3,000,000 each claim.

4) **PART II GENERAL PROVISIONS, Section 2.2 Indemnification, is replaced with the following:**

**Defense and Indemnification.** Contractor agrees to defend and indemnify Successor Agency and its officers, agents and employees against, and to hold and save them harmless from, any and all actions, claims, damages to persons or property, penalties, obligations, or liabilities that may be asserted or claimed by any person, firm, entity, corporation, political subdivision or other organization arising out of the willful or negligent act, errors or omissions of Contractor, its agents, employees, or subcontractors, in performance of services under this Agreement, excepting claims of

14

professional negligence or malpractice. Nothing herein shall be deemed to affect or waive City's rights to make or pursue claims of professional negligence or malpractice against Contractor.

5) **PART II GENERAL PROVISIONS, Section 3.9 Termination by Successor Agency, is replaced with the following:**

**Termination by Successor Agency.** Successor Agency reserves the right to terminate this Agreement at any time, with or without cause, upon written notice to Contractor. Upon receipt of any notice of termination from Successor Agency, Contractor shall immediately cease all services hereunder except such as may be specifically approved in writing by Successor Agency. Contractor shall be entitled to compensation for all services rendered prior to receipt of Successor Agency's notice of termination and for any services authorized in writing by Successor Agency thereafter. If termination is due to the failure of Contractor to fulfill its obligations under this Agreement, Successor Agency may take over the work and prosecute the same to completion by contract or otherwise, and Contractor shall be liable to the extent that the total cost for completion of the services required hereunder, including costs incurred by Successor Agency in retaining a replacement contractor and similar expenses, exceeds the Budget. Contractor agrees that upon termination of this Agreement and of services in any manner, it will provide to Successor Agency a closing report, including a brief description of the facts of the case, completed research, and calendar of any scheduled court appearances and deadlines, with respect to all pending litigation matters handled by Contractor.

6) **The following section is added to PART II GENERAL PROVISIONS, Section 3.10 Right to Stop Work; Termination by Contractor.**

Contractor shall have the right to terminate this Agreement at any time, with or without cause, upon sixty (60) days' advance written notice to City. Contractor agrees, consistent with its professional responsibilities, to allow for sufficient time and services to permit City to arrange for alternative representation. City and Contractor agree to cooperate in the transition of work and substitution of new counsel as counsel of record.

7) **The following section is added to PART II GENERAL PROVISIONS, Section 3.17 Conflicts of Interest:**

Contractor has disclosed all present and contemplated representation of other clients or third parties on any matter (either litigation or non-litigation) that may be adverse to Successor Agency.

Contractor agrees that Contractor, its officers, directors, partners and employees shall not represent any other client or party on any matter (either litigation or non-litigation) adverse to the Successor Agency. Contractor further agrees that following the termination of this Agreement, Contractor, its officers, directors, partners and employees shall not represent any other client or third party in any matter relating to the Successor Agency, without first receiving a written release from the Successor Agency. Contractor has also considered the potential applicability of the Political Reform Act of 1974 to Contractor's services pursuant to this Agreement and has concluded that no conflict of interest exists that would preclude Contractor from performing the services required of Contractor pursuant to this Agreement.

8) **The following section is added to PART II GENERAL PROVISIONS:**

15

**Findings Confidential, Ownership, Reports and Information.** All reports, information, data and exhibits prepared or assembled by Contractor in connection with the performance of its services pursuant to this Agreement are confidential and Contractor agrees that they shall not be made available to any individual or organization without prior written consent of Successor Agency, as applicable. All such reports, information, data and exhibits shall be the property of Successor Agency, as applicable, and shall be delivered to Successor Agency upon demand without additional cost or expense to Successor Agency.

**PART IV**

## Successor Agency Legal Services

## SCOPE OF SERVICES

Contractor shall perform general counsel services for the City of Irvine as Successor Agency to the Dissolved Irvine Redevelopment Agency ("Successor Agency") as directed by the Successor Agency.

Contractor shall perform the services as set forth below.

1. Attend all Successor Agency and Oversight Board meetings.

2. Provide legal advice, counsel, services, consultation and opinions to Successor Agency, Successor Agency Executive Director and City staff on a wide variety of Successor Agency related assignments.

3. Attend departmental meetings, staff meetings or committee meetings as deemed necessary and appropriate or as requested by the Successor Agency Executive Director or Successor Agency Board of Directors.

4. Perform research and interpret laws, court decisions and other legal matters in order to prepare legal opinions and to advise the Successor Agency Board and management staff on legal matters pertaining to Successor Agency operations.

5. Provide routine legal advice, telephone and personal consultations with Successor Agency Board, Successor Agency Executive Director and City staff.

6. Review and/or prepare staff reports, ordinances, resolutions, orders, agreements, forms, notices, declarations, certificates, deeds, leases, and other documents required by the Successor Agency.

7. Render advice and assistance in the administration of the Successor Agency's general liability and risk management programs to the extent that the same is not covered by the City of Irvine's California Insurance Pool Authority (CIPA).

8. Serve as legal counsel to bodies as may be created and represented by or for the Successor Agency and which meet regularly or periodically or on an as-needed basis.

9. Represent the Successor Agency before other governmental bodies and agencies to promote the interests of the Successor Agency.

10. Provide assistance to staff to monitor pending and current State and Federal legislation, regulations and case law. Conduct legislative analysis of proposed legislation and regulations to include impacts to the Successor Agency, as directed.

11. Ensure that current and future Successor Agency policies, procedures and practices comply with state and federal law. Inform Successor Agency Board and staff and recommend changes to practices, as needed.

12. Provide the Successor Agency Board and Oversight Board with guidance relative to Roberts Rules of Order, open meetings, Brown Act, and other related procedural matters.

13. Coordinate and monitor the work of special legal counsel as needed and directed by the Successor Agency Board and/or Successor Agency Executive Director.

14. Provide litigation support including monitoring matters involving litigation affecting the Successor Agency and represent the Successor Agency in actions, suits, or proceeding in which the Successor Agency is a party or has a legal interest.

15. Represent the Successor Agency in the administration of claims and litigation filed by or against them. Upon recommendation and Successor Agency approval, special counsel may be retained to defend or prosecute actions under certain circumstances, including, but not limited to, matters assigned by CIPA for tort defense and workers' compensation defense work. Prior to commencing any litigation services, Contractor shall notify and obtain approval from the Successor Agency, as appropriate, and provide a case evaluation and plan -  which shall include a statement of known facts and legal issues, statement of known injuries or damages, statement of liability exposure, recommendations on case strategy, possibilities and recommendations regarding early settlement, and a budget of anticipated fees, costs, and expenses through pleadings, discovery, arbitration, trial, and any other identifiable stages. Contractor shall advise the Successor Agency in a timely fashion and in writing of any material change in the factors identified in the case evaluation and plan, including any change in the estimated budget. Contractor shall provide the Successor Agency, as appropriate, with a written status report of all pending litigation matters on a quarterly basis, or more frequently upon request.

16. Provide services on legal matters subject to reimbursement and other specialized litigation, specialized transactions and representational matters as requested by the Successor Agency.

18

**PART V**

**BUDGET**

Pricing shall be as set forth below.

## COST SUMMARY – SUCCESSOR AGENCY

| | |
|---|---|
| General Counsel; Partner/Associate; and Special Services | $225 per hour |
| Law Clerk | $140 per hour |
| Paralegal | $110 per hour |
| Bond Counsel | See Below |

Contractor's minimum unit of time for billing is one-tenth of an hour (0.1).

"Special Services" includes successor agency matters, litigation and contested administrative matters.  Litigation includes, in addition to formal litigation, contested administrative matters before other governmental agencies.

In-service training costs are charged at the normal hourly rates.

On bond counsel matters, if contingent, one percent (1%) of the first $1 million executed and delivered; one-half percent (0.5%) of the next $4 million executed and delivered; one-quarter percent (0.25%) of the next $10 million executed and delivered; one-eighth percent (0.125%) of the next $5 million executed and delivered; and one-tenth percent (0.1%) of any amount over $20 million executed and delivered; all subject to a minimum fee of $25,000.  Payment of fees is entirely contingent upon the successful execution and delivery of the bonds or notes to be payable on or after delivery except for out-of-pocket costs, which are payable in any event.  If non-contingent, $300 per hour, together with out-of-pocket expenses.  In the event that multiple series of bonds or notes are issued, the foregoing fee structure would be applied to each issue, subject to the $25,000 minimum fee per issue.

On projects for which the Successor Agency is reimbursed by a third party or applicant, Contractor may charge its full design rate for the attorney performing the work.

Payment for services will be made monthly on invoices deemed satisfactory to the Successor Agency, with payment terms of net 45 days upon receipt of invoice. Contractor shall submit invoices within fifteen (15) days from the end of each month in which services have been provided. Contractor shall provide invoices with sufficient

19

detail to ensure compliance to pricing as set forth in this Agreement. The information required may include: date(s) of work, hours of work, hourly rate(s), and material costs.

Contractors shall provide invoicing in the format requested by Successor Agency.

Payment by Successor Agency under this Agreement shall not be deemed as a waiver of the Successor Agency's right to claim at a later point that such payment was not due under the terms of this Agreement.

Pricing shall remain firm for the entire initial contract term, as well as the next two years in the event of subsequent contract renewals. Thereafter, any proposed pricing adjustment for follow-on renewal periods shall be submitted to the Successor Agency Representative in writing at least ninety (90) days prior to the new Agreement term. Successor Agency reserves the right to negotiate any pricing adjustment not to exceed the Bureau of Labor Statistics Consumer Price Index (CPI) data as follows: Los Angeles-Riverside-Orange County, CA; All Items; Not Seasonally Adjusted; annualized change comparing the most recent month's reported data to the same month of the prior year. (This information may be found on the U.S. Department of Labor's website at www.bls.gov.)

**Exhibit 1**

**WORKERS' COMPENSATION INSURANCE CERTIFICATION**

Contract Services Description: *Legal Services for Successor Agency*

**WORKERS' COMPENSATION DECLARATION**

I hereby affirm under penalty of perjury one of the following declarations:

**(CHECK ONE APPLICABLE BOX BELOW)**

☒    **I have and will maintain workers' compensation insurance**, as required by Section 3700 of the Labor Code, for the performance of the work to be performed under this Agreement and shall submit insurance certificates evidencing such coverage as set forth herein.

☐    I certify that, in the performance of the work under this Agreement, **I shall not employ any person** in any manner so as to become subject to the workers' compensation laws of California, and I hereby agree to indemnify, defend, and hold harmless the Successor Agency and all of its officials, employees, and agents from and against any and all claims, liabilities, and losses relating to personal injury or death, economic losses, and property damage arising out of my failure to provide such worker's compensation insurance. I further agree that, **if I should become subject to the workers' compensation provisions of Section 3700 of the Labor Code, I shall forthwith comply with those provisions and immediately furnish insurance certificates** evidencing such coverage as set forth herein.

WARNING:    FAILURE TO SECURE WORKERS' COMPENSATION COVERAGE IS UNLAWFUL, AND SHALL SUBJECT AN EMPLOYER TO CRIMINAL PENALTIES AND CIVIL FINES UP TO ONE HUNDRED THOUSAND DOLLARS ($100,000), IN ADDITION TO THE COST OF COMPENSATION, DAMAGES AS PROVIDED FOR IN SECTION 3706 OF THE LABOR CODE, INTEREST, AND ATTORNEY'S FEES.

| | |
|---|---|
| **Dated:** | SEPTEMBER 3, 2013 |
| **Contracting Firm:** | RUTAN & TUCKER, LLP |
| **Signature:** | *Dan Slater* |
| **Title:** | PARTNER |
| **Address:** | 611 ANTON BLVD., SUITE 1400, COSTA MESA, CA 92626 |

21

# Appendix A

CITY COUNCIL ORDINANCE NO. 07-15

AN ORDINANCE OF THE CITY COUNCIL OF THE CITY
OF IRVINE, CALIFORNIA, ADDING DIVISION 6 TO TITLE
2 OF THE IRVINE MUNICIPAL CODE RELATING TO
LIVING WAGE REQUIREMENTS

The City Council of the City of Irvine DOES HEREBY ORDAIN AS FOLLOWS:

SECTION 1. Division 6, entitled "Living Wage Requirements," is hereby added to Title 2 ("Administrative Services") of the Irvine Municipal Code to read in its entirety as follows:

Division 6. Living Wage Requirements

Section 2-6-101. Title and Purpose.

A. This division shall be known and may be cited as the "City of Irvine Living Wage Ordinance."

B. The purpose of this division is to improve the quality of services to beneficiaries of City-contracted services and to ensure that employees of City service contractors earn an hourly wage that is sufficient to live with dignity and to achieve economic self-sufficiency. The City contracts with many businesses and organizations to provide services to the public. Such public expenditures should in accordance with a community economic standard that permits workers to live above the poverty level.

C. This division is intended to protect the public health, safety and welfare. It advances this Intent by requiring that public funds be expended in such a manner as to facilitate individual self-reliance by employees of City contractors.

Section 2-6-102. Findings.

A. As a charter city, the City has the power to set compensation and terms of employment for its employees as an exercise of its municipal powers.

B. The City awards contracts to private firms and other businesses to provide services to the public and to City government.

C. The use of City funds to create living wage jobs will decrease poverty, increase consumer income, invigorate community businesses and

reduce the need for taxpayer-funded social service programs.

D.    When City funds are used to contract for services, such contracts should demonstrate an effort to promote an employment environment that enhances the general quality of life within the community and maximizes the productive effect of the City's limited resources.

E.    The City's use of contractors that do not provide health insurance to their employees can result in imposing the costs of their medical care on the county, state and federal governments.

F.    Employees are more likely to be healthy if their employers provide reasonable health insurance to them and their dependents.

G.    The payment of a living wage as required by this division benefits the above-stated interests.

Section 2-6-103. Definitions.

For purposes of this division, the following definitions shall be applicable:

(a) "Benefit factor rate" means the rate established by the City to be the estimated cost of health benefits paid to a covered employee. If the Contractor does not provide comparable benefits equal to or exceeding this rate to the covered employee, the benefit factor rate must be added to the living wage rate to arrive at the total hourly rate that must be paid to the covered employee.

(b)    "City" means the City of Irvine and all City agencies, departments and offices, including but not limited to the Irvine Redevelopment Agency and the Orange County Great Park Corporation.

(c) "Contractor" means any person or business that enters into a new service contract or any service contract with the City that is amended, renewed or extended after the effective date of this division except for those bids, RFP's and contracts that were in process at the time this division becomes effective. For the purposes of this division, the term "Contractor" shall include all subcontractors retained by a Contractor to perform any or all of the functions covered by the contract.

(d) "Covered employee" means (1) any employee whose services fulfill the Contractor's contractual obligations for contracts with the City that are subject to this division and (2) any other employee of the Contractor who performs a majority of his or her services within Orange County.    Additionally, bona fide volunteers shall not be considered

2                                    CC ORDINANCE 07-15

"covered employees."

(e) "Health benefits" means medical and dental benefits offered by the Contractor to its employees in which the employer pays at least the current benefit factor rate on behalf of its covered employees.

Section 2-6-104. Application of this Division.

Every Contractor that enters into a contract with the City to provide services with an estimated value of one hundred thousand dollars ($100,000) or more for any consecutive twelve-month period shall comply with the requirements of this division. As a condition of the contract, the Contractor shall notify the City in writing if the aggregate value of multiple contracts with the City is $100,000 or more.

Section 2-6-105. Duties of the Purchasing Agent.

The Purchasing Agent shall be responsible for ensuring that the requirements of this division are incorporated in all contracts, bid documents, requests for proposals (RFP's) and requests for qualifications (RFQ's) that may be subject to this division to ensure proper implementation of all requirements. In addition, the Purchasing Agent shall be responsible for developing and implementing rules and regulations for the effective administration of all requirements set forth in this division.

Section 2-6-106. Compensation Required to be Paid to Contractor's Employees.

A.    All Contractors subject to the requirements of this division shall pay its covered employees an hourly rate and comparable health benefits and paid time off (such as vacation, sick, holiday and jury duty) as set by the most current City Council Resolution establishing compensation policy for employees. The hourly rate shall be the minimum hourly rate of all salary classifications. An additional rate, defined as the benefit factor rate, shall be added to the hourly rate if comparable health benefits are not offered by the Contractor to the covered employee.

B.    Beginning July 1, 2007, the City shall provide notice to all covered Contractors by posting current living wage and benefit factor rates on the City's web site in the Bids & RFP's Purchasing section. In general, rates are subject to change each July; however, Contractors are responsible for monitoring and updating payroll records to accommodate rate changes where applicable. In addition, Contractors are responsible for notifying and ensuring compliance with these requirements by

3                    CC ORDINANCE 07-15

subcontractors retained by Contractor to perform any or all of the functions covered by the contract.

C.    A Declaration of Compliance must be signed by an authorized agent of the Contractor and will serve as part of the terms of the contract and/or amendments.

D.    In the event that collective bargaining agreements and/or prevailing wage requirements are higher than the current living wage rates as set forth in this division, collective bargaining and/or prevailing wage rates must be paid to covered employees.

Section 2-6-107. Exceptions.

A.    The City Council, by majority vote, may grant a whole or partial exception to the requirements of this division to a Contractor at the time of award of the contract if the City Council determines that imposition of the requirements of this division would violate State or Federal laws. A Contractor that desires such a determination by the City Council shall, at the time it submits its bid or proposal to the City, provide the City with a written request that it desires exemption from the requirements of this division, and a reference to the specific State or Federal laws, if applicable, that would be violated if the City imposed the requirements of this division on the Contractor.

B.    The City Council, by a four-fifths vote, may grant a whole or partial exception to the requirements of this division to a Contractor at the time of award of the contract if the City Council determines that the existence of an emergency or other extraordinary circumstances (such as the creation of training positions that will enable employees to advance into permanent living wage jobs or better) justifies an exemption from the requirements of this division. Exemptions pursuant to this subsection are disfavored and shall be granted only when a balancing of competing interests weighs clearly in favor of granting an exemption, in the sole and absolute discretion of the City Council. If an exemption is to be granted, a partial exemption is favored over a whole exemption, and limits on the duration of the exemption are favored as well.

Section 2-6-108. Duties of Director of Administrative Services.

A.    The Director of Administrative Services, or his or her designee, shall have the authority to perform the following acts for purposes of accomplishing the intent of this division and as deemed necessary or appropriate in the Director's judgment:

(1)    Review, investigate and/or maintain records of

complaints alleging that the Contractor has violated the requirements of this division.

(2) Perform random audits of the Contractor's and/or the Contractor's subcontractor's records to verify compliance with this division.

B.    Upon determining that a Contractor is operating in accordance with the requirements of this division, the Director of Administrative Services shall furnish the Contractor with a written recognition and acknowledgment of such compliance.

Section 2-6-109.  Contractor Notice Posting Requirements.

A.    A Contractor subject to the requirements of this division shall post in a conspicuous place, as required by State and Federal laws for other notices to employees, a copy of the notice referred to in this division, a sample of which is provided as part of the contract documents.  The Contractor is responsible for notifying and requiring compliance from any subcontractors retained by Contractor, to perform any or all functions covered by the contract.

B.    A Contractor subject to the requirements of this division shall post in a conspicuous place, as required by State and Federal laws for other notices to employees, a notice of potential Federal Earned Income Tax Credit (EITC) eligibility for covered employees.

Section 2-6-110.  Retaliation and Discrimination Prohibited.

No Contractor shall discharge, reduce the compensation of or otherwise discriminate or retaliate against any of its employees for making a complaint to the City, asserting the employee's rights or assisting another employee in making a complaint or asserting his or her rights under this division.

Section 2-6-111.  Complaint Process for Violations.

A.    Any covered employee may lodge a written complaint with the Director of Administrative Services or his/her designee that a Contractor or subcontractor has violated the requirements of this division.

B.    Upon receipt of such a complaint, the Director of Administrative Services, or his/her designee, shall review and investigate at his/her discretion, the complaint and determine if the Contractor should be issued a preliminary notice of violation, which shall also contain the corrective measures the Contractor is required to undertake and/or the

5                          CC ORDINANCE 07-15

remedies that are being imposed. If the Contractor does not file a timely and sufficient appeal to the preliminary notice of violation, it shall become final and conclusive.

C.    If a Contractor receives a notice of violation, the Contractor may request in writing an appeal hearing before the Director of Administrative Services, or his/her designee, to dispute the violation and/or corrective measures and/or remedies required. The request for an appeal hearing shall be filed with the City Clerk within fifteen (15) days of the date the Director of Administrative Services issued the preliminary notice of violation, and shall contain the reasons why the Contractor believes that a violation does not exist and/or that the corrective measures and or remedies are not appropriate. The Director of Administrative Services or his/her designee shall conduct the appeal hearing within forty-five (45) days of receipt of the appeal request. Within fifteen (15) days of the conclusion of the appeal hearing, the Director of Administrative Services shall issue his/her findings and final decision with respect to the appeal hearing

D.    A Contractor may appeal the final decision of the Director of Administrative Services to the City Council by filing a written notice of appeal within fifteen (15) days of the date of the Director's final written decision. The City Council shall conduct a hearing on the appeal within forty-five (45) days of its receipt of the appeal request and either uphold, overturn or modify the Director's final decision.

Section 2-6-112. Remedies of City for Violations.

A.    The City may impose any or all of the following corrective measures and/or remedies against a Contractor for violations of this division:

(1) Order the Contractor to comply with all regulations of this Section within sixty (60) days.

(2) Order payment to covered employees to compensate the employees up to the compensation level required by this division.

(3) Suspend payments for and/or suspend or cancel contracts between the City and the Contractor.

(4) Render the Contractor ineligible to enter into contracts with the City for a period of three (3) years or until all restitution to covered employees has been paid, whichever is longer.

B.    In addition to the above corrective measures and/or

6                    CC ORDINANCE 07-15

remedies, the City shall be entitled to seek any and all other equitable and legal rights it may have under Federal, State and local laws, including without limitation injunctive relief, for purposes of enforcing the remedies set forth above.

Section 2-6-113 . <u>Remedies of Covered Employees for Violations</u>.

A.    A covered employee shall have the right to seek the following remedies against a Contractor violating the provisions of this division in a court of competent jurisdiction:

(1) Restitution to compensate the employee for all amounts that should have been paid to the employee pursuant to this division.

(2) Reasonable attorneys' fees and costs.

(3) Any and all other legal and equitable remedies available under Federal, State and local laws.

<u>SECTION 2</u>. If any portion of this Ordinance, or the application of any such provision to any person or circumstances, shall be held invalid, the remainder of this Ordinance to the extent it can be given effect, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby, and to this extent the provisions of this Ordinance are severable.

<u>SECTION 3</u>. The City Council determines that pursuant to Title 14, California Code of Regulations Section 15061, this project is exempt from the California Environmental Quality Act because it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment.

<u>SECTION 4</u>. The City Clerk shall certify to the passage of this Ordinance and this Ordinance shall be published as required by law and shall take effect as provided by law.

CC ORDINANCE 07-15

PASSED AND ADOPTED by the City Council of the City of Irvine at a regular meeting held on the 12th day of June, 2007.

_____
MAYOR OF THE CITY OF IRVINE

ATTEST:

_____
CITY CLERK OF THE CITY OF IRVINE

STATE OF CALIFORNIA   )
COUNTY OF ORANGE      )       SS
CITY OF IRVINE        )

I, SHARIE APODACA, City Clerk of the City of Irvine, HEREBY DO CERTIFY that the foregoing Ordinance was introduced for first reading on May 22nd, 2007, and duly adopted at a regular meeting of the City Council of the City of Irvine held on the 12th day of June, 2007, by the following vote:

AYES:    3  COUNCILMEMBERS:   Agran, Kang, and Krom

NOES:    2  COUNCILMEMBERS:   Choi and Shea

ABSENT:  0  COUNCILMEMBERS:   None

_____
CITY CLERK OF THE CITY OF IRVINE

8                         CC ORDINANCE 07-15

## AFFIDAVIT OF POSTING

STATE OF CALIFORNIA)
COUNTY OF ORANGE  ) ss
CITY OF IRVINE        )


I, SHARIE APODACA, City Clerk of the City of Irvine, HEREBY DO CERTIFY that on the 22nd day of June 2007, I caused to have posted the foregoing true and correct copy of Ordinance No. 07-15 of the City of Irvine in the following public places in the City:


1)   Bulletin Board in Walnut Village Shopping Center, Culver and Walnut, Irvine.

2)   Bulletin Board in University Park Shopping Center, Culver at Michelson, Irvine.

3)   Bulletin Board in Northwood Shopping Center, Irvine Boulevard at Yale, Irvine.


IN WITNESS WHEREOF, I have hereunto set my hand and affixed the official seal of the City Council of the City of Irvine, California, the 22nd day of June 2007.


CITY CLERK OF THE CITY OF IRVINE

CC ORDINANCE 07-15

# Appendix B

**DECLARATION OF COMPLIANCE**
**Living Wage Ordinance**

Name of Contractor     *Rutan & Tucker, LLP*
Type of Service    *Legal Services to Irvine Successor Agency*

The above-named contractor hereby declares and agrees as follows:

1. I have read and understand the requirements set forth by the City's Living Wage Ordinance (the "Ordinance") that has been provided by the City of Irvine ("City") in connection with the City's request for proposals or other invitation or solicitation for the performance of services under a City contract.

2. As a condition of receiving the City contract, I agree to fully comply with all of the requirements specified in the Ordinance. As required by the Ordinance and while under any City contract subject to the Ordinance, I agree to pay no less than the minimum compensation, including the benefit factor rate as applicable, to all "covered employees" as that term is defined by the Ordinance.

3. If the amount of this City contract is less than one hundred thousand dollars ($100,000), then as a condition of receiving this contract, I agree to notify the City in writing if the aggregate value of multiple City contracts covered by the Ordinance, including amendments to this contract, is one hundred thousand dollars ($100,000) or more within any consecutive 12-month period.

4. I acknowledge and agree that the Ordinance, and this Declaration, shall constitute part of the City contract, and that these provisions shall govern in the event of any conflict with any other provisions of the contract.

5. I further acknowledge and agree that any violation of the Ordinance constitutes a material breach of City contract, and that if such a breach occurs, the City may avail itself of any or all of the remedies for violations that are provided by the Ordinance.

6. I acknowledge and understand that retaliation and/or discrimination against any employee making a complaint to the City, asserting his or her rights or assisting another employee in making a complaint, constitutes a violation of the Ordinance. In addition, I understand that violated employees may seek any or all of the remedies that are provided by the Ordinance.

7. If requested by the City, I agree to promptly submit certified payroll and/or benefits documents to the City for my firm and/or subcontractor(s) as requested by the City, and shall take any other steps as may be required by the City to ensure that my firm and my subcontractor(s) have complied with the Ordinance. The documents requested may include, but are not limited to, covered employee timesheets, gross pay calculations, pay registers, cancelled checks, medical and dental insurance invoices, paid time off policies, and other related payroll or benefit documents.

8. I agree to require all subcontractors who I retain to perform any or all of the work or services covered by this contract to comply with the requirements of the

Ordinance, and I shall include the requirements of the Ordinance in all subcontracts covered thereby.

9. I agree to post in a conspicuous place, as required by State and Federal laws for other notices to employees, a notice informing covered employees of their rights under the Ordinance and a notice of potential Federal Earned Income Tax Credit (EITC) eligibility for covered employees.

10. I have received the "Living Wage Guide" from the City, explaining the specific requirements of the Ordinance in detail.

11. I agree to defend, indemnify, and hold harmless the City, its officers and employees, against any claims, actions, damages, costs (including reasonable attorneys' fees) or other liabilities of any kind arising from any violation of the City's Living Wage Ordinance, by my firm or by any subcontractor retained by my firm to perform work or provide services under the City contract.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that I am authorized to bind the Contractor to the provisions of this Declaration.

_____
Signature of Authorized Representative

Date: 9-4-13 (Month/Day/Year)

Print Name: DAN SLATER

Title: PARTNER



| **Appendix C**<br>**City of Irvine**<br>**Living Wage Guide** |
| --- |

## Living Wage Description

### What is the City of Irvine's Living Wage Ordinance?

The Living Wage Ordinance requires a Contractor entering into City contracts subject to the Ordinance to pay its covered employees an hourly rate, comparable health benefits and paid time off (such as vacation, sick and holiday paid time off) as set by the most current City Council Resolution (Resolution) establishing compensation policy for employees. These benefits are summarized in the Living Wage Comparable Benefits Summary included with this document.

**Current hourly and benefit factor rates, along with other Living Wage Ordinance information, is available on the City of Irvine web site at www.cityofirvine.org. Click on the "Doing Business" tab at the top of the screen, and then select "Living Wage Info."**

The purpose of the Ordinance is to ensure that employees of City services Contractors can earn an hourly wage that is sufficient to live with dignity and to achieve economic self-sufficiency. The use of City funds to create living wage jobs is intended to decrease poverty, increase consumer income, invigorate community businesses and reduce the need for taxpayer-funded social service programs.

## Contractors and Contracts Subject to the Living Wage Ordinance

### Which Contractors are subject to the Living Wage Ordinance?

"Contractor" means any person or business that enters into a new service contract or any service contract with the City (including the Orange County Great Park Corporation) and all other City agencies, departments and offices) that is amended, renewed or extended after July 12, 2007 except for those bids, RFP's and contracts that were in process on that date.

The term "Contractor" shall include all subcontractors retained by a Contractor to perform any or all of the functions covered by the contract.

### Which contracts are subject to the Living Wage Ordinance?

All services contracts greater than $100,000 over a 12-month period are subject to the Living Wage Ordinance. A contract shall be subject to the Living Wage Ordinance if the aggregate value of multiple contracts with the City, including amendments to contracts, is $100,000 or more in a consecutive 12-month period.

## Employees Covered Under the Living Wage Ordinance

### Who is a "covered employee"?

"Covered employee" means (1) any employee whose services fulfill the Contractor's contractual obligations for contracts with the City that are subject to this Ordinance and (2) any other employee of the Contractor who performs a majority of his or her services within Orange County. Volunteers are not considered "covered employees" under the Ordinance.

### Are both part-time and full-time employees covered under the Living Wage Ordinance?

The City does not provide health benefits or paid time off for City employees working less than 30 hours per week on average. Accordingly, there is no current requirement for a Contractor to pay a "benefit factor rate" for its part-time employees who work less than 30 hours a week on average.

## Compensation Required Under the Ordinance

### What base hourly rate must I pay "covered employees"?

The current City Council Resolution sets the minimum hourly rate. This is the rate at which an employee must be paid if the Contractor also provides the employee with health benefits and paid time off that are equal to or exceeding those offered to City employees, as detailed in the current City Council Resolution. **Rates generally change in July of each year.** All rate changes will be posted on the City's web site and Contractors are responsible for monitoring all changes and for notifying their subcontractors of those changes.

### What if my employees are under a collective bargaining agreement or if I am paying my employees prevailing wages?

In the event that collective bargaining agreements and/or prevailing wage requirements are higher than the current living wage rates as set forth in the Ordinance, collective bargaining and/or prevailing wage rates must be paid to covered employees.

### What minimum health and paid time off benefits are offered to City employees?

The selection of benefits of all salary classifications is set forth by the most current City Council Resolution establishing compensation for City employees. Currently, minimum City health benefits include an option for employees to enroll in the City's indemnity medical insurance plan or the Health Maintenance Organization (HMO), and the option to enroll in a dental plan. City benefits also include pro-rata paid time off such as sick, vacation, and holiday pay. A summarization of these benefits is included in the Living Wage Comparable Benefit Summary.

### What if I don't offer my employees comparable health and paid time off benefits?

An additional "benefit factor" must be added to the base hourly rate if employees are not offered health and paid time off benefits equal to or exceeding those offered to City employees, as detailed in the current City Council Resolution and summarized in the Living Wage Comparable Benefit Summary. The current benefit factor must be added to the base minimum rate to reach the total minimum rate for covered employees.

If the cost of health and paid time off benefits provided to your employees cost you less than the current benefit factor, the difference between what you pay and the benefit factor must be added to the base minimum rate to achieve the total hourly compensation that must be paid to the covered employees.

All rate changes will be posted on the City's web site. Contractors are responsible for monitoring all changes and for notifying their subcontractors of the changes.

### How is the benefit factor calculated and how often is it updated?

The methodology for calculating the benefit factor is based on the actual cost to the City for providing those benefits to employees. **The rate is updated as benefit costs change, generally in July of each year.** All rate changes will be posted on the City's web site. Contractors are responsible for monitoring all changes and for notifying their subcontractors of the changes.

### How do I calculate the benefit factor I am currently paying my employees?

Take the total annual cost you pay, or offer to pay, as the employer for the benefits offered to your employees including health insurance and paid time off benefits, and then divide by 2,080 (the number of hours in a year).

### Where do I find the current rates?

Rates may be found on the City's web site, at www.cityofirvine.org. Click on the "Doing Business" tab at the top of the screen, and then select "Living Wage Info." You may also call the Purchasing Department at 949-724-6180.

Rates are subject to change and it is the Contractor's responsibility to monitor and update payroll records to accommodate rate changes when applicable. In addition, Contractors are responsible for notifying and ensuring compliance with these requirements by subcontractors retained by the Contractor to perform any or all functions covered by the contract.

2

## Other Requirements under the Ordinance

**What other requirements must I meet under the Ordinance?**

You are required under the Ordinance to:

- Post in a conspicuous place, as required by State and Federal laws for other notices to employees, a copy of the notice referred to in the Ordinance that informs covered employees of their rights under the Ordinance. A copy will be provided to you with your contract documents and is also available on the City's web site.
- Post in a conspicuous place, as required by State and Federal laws for other notices to employees, a copy of the notice referred to in the Ordinance that informs covered employees of their potential eligibility for Federal Earned Income Tax Credit (EITC). Provide notification of all of the requirements of the Ordinance to any subcontractors retained by you to perform any or all of the functions covered by the contract; and ensure compliance to the Ordinance.
- You are required to monitor and update your payroll records to accommodate Living Wage minimum wage and benefit factor rates when applicable.
- **You are required to contact the City in writing if you are awarded additional contracts and the aggregate value of your contract(s) with the City, including amendments to your contract(s), is $100,000 or more in a 12-month period. Such notification should be sent to: Purchasing Agent, City of Irvine, PO Box 19575, Irvine, CA 92623-9575**

You are **prohibited** under the Ordinance to discharge, reduce the compensation, discriminate or retaliate against any employee for making a complaint to the City, asserting his or her rights or assisting another employee in making a complaint or asserting his or her rights under the Ordinance.

## Compliance and Violations

**How is the Living Wage Ordinance enforced?**
Any covered employee may lodge a written complaint and/or the Director of Administrative Services may at any time review, investigate and/or perform random audits of the Contractor's records to verify compliance with the Ordinance.

**If I am audited what documents might I be asked to provide?**
Specific documents that may be reviewed include, but are not limited to, covered employee time cards, gross pay calculations, pay registers, canceled checks, medical and dental insurance invoices, paid time off policies, required postings and other related payroll or benefit documents.

**What happens if it is determined that I am not in compliance with the Ordinance?**
The City may impose any or all of the following corrective measures for violations of the Ordinance:

- Order Contractor to comply within 60 days
- Order payment to covered employees to compensate the employee for amounts that should have been paid under the contract
- Suspend payments to the Contractor for the contract in violation
- Cancel the City contract in violation
- Render the Contractor ineligible to enter into contracts with the City for a period of three years or until all restitution to covered employees has been paid, whichever is longer
- Seek all other equitable and legal rights under Federal, State and local laws, including injunctive relief

**Is there an appeal process?**
If it is determined that the Contractor is not in compliance, the Contractor will be issued a preliminary notice of violation that contains the corrective measures required by the Contractor. The Contractor may request in writing an appeal hearing before the Director of Administrative Services to dispute the violation and/or the corrective measures. The request for appeal hearing must be filed with the City Clerk within fifteen (15) days of the date of the preliminary notice of violation and must contain the reasons the Contractor believes that a violation does not exist and/or that the corrective measures or remedies are not appropriate.

3

The Director of Administrative Services will conduct the appeal hearing within forty-five (45) days of receipt of the appeal request.  Within fifteen (15) days of the conclusion of the appeal hearing, the Director of Administrative Services will issue his/her findings and final decision.

The final decision of the Director of Administrative Services may be appealed to the City Council by filing a written notice of appeal within fifteen (15) days of the date of the Director's final written decision.  The City Council shall conduct a hearing on the appeal within forty-five (45) days of its receipt of the appeal request and either uphold, overturn or modify the Director's final decision.

**How does a covered employee file a complaint if they believe that a Contractor or subcontractor is in violation of the Ordinance?**
A Covered employee who believes a Contractor or subcontractor has violated the requirements of the Ordinance may file a written complaint with the Director of Administrative Services.

**What remedies for violation do covered employees have under the Ordinance?**
A covered employee may seek the following remedies against a Contractor violating the Ordinance:
- Restitution to compensate the employee for amounts that should have been paid under the contract
- Reasonable attorneys' fees and costs
- Any and all other legal and equitable remedies available under Federal, State and local laws

## Exceptions

**Are there any circumstances in which an exception to the Ordinance will be granted?**
The City Council, by a majority vote, may grant a whole or partial exception at the time of award of the contract if it is determined that imposition of this Ordinance would violate State or Federal laws.  A Contractor that desires an exception must, at the time of the bid proposal, provide the City with a written request with a reference to the specific State or Federal law that would be violated.

The City Council, by a four-fifths vote, may grant a whole or partial exception if it is determined that an emergency or extraordinary circumstance justifies an exemption.

## More Information

**Where can I view more information about the Ordinance?**
More information may be found concerning the Living Wage Ordinance, including current rates, by visiting the City's web site at **www.cityofirvine.org**.  Click on the "Doing Business" tab at the top of the screen, and then select "Living Wage Info."

## Contact Information

To receive a copy of the Living Wage Guide, or to ask questions about the Living Wage Ordinance, please contact:

**Purchasing Department**          **Phone:  (949) 724-6180**
**City of Irvine**                 **FAX:    (949) 724-6187**
**PO Box 19575**
**Irvine, CA  92623-9575**

Employees registering a complaint against an employer should contact:

**Director of Administrative Services**    **Phone:  (949) 724-6255**
**City of Irvine**                         **FAX:    (949) 724-6030**
**PO Box 19575**
**Irvine, CA  92623-9575**

4

# Appendix D

## Living Wage Comparable Benefits Summary

The following benefits are offered to City of Irvine employees who work a minimum of 30 hours per week on average. Contractor employees must be offered benefits equal to or greater than the benefits detailed below or the Contractor is required to add a "benefit factor" to the minimum wage paid to the employee as defined in the Living Wage Ordinance.

### Medical Insurance:

a. **Health Insurance:**
   The City provides the option to employees to enroll in an indemnity medical insurance plan or Health Maintenance Organization (HMO).

b. The total cost to the City for medical insurance coverage for employee only shall not exceed 50% of the monthly premium. Employees are responsible for the cost of the remaining premium amount.

c. The City provides the option to employees, who have enrolled in the HMO plan, to purchase HMO medical insurance for their dependents. The total cost of the additional premium is borne by the employee.

d. The City provides the option to employees to enroll in a dental Health Maintenance Organization for employees only. The total cost is borne by the employee.

### Vacation:

Vacation benefits accrue on a monthly basis as follows:

| Years of Service | Annual Vacation Credits |
|---|---|
| 1 through 3 | 60 hours |
| after 3 through 10 | 90 hours |
| after 10 years or more | 120 hours |

### Personal Sick Leave:

Employees accrue personal sick leave credits at the rate of six (6) hours per month.

### Holidays:

Employees are paid for the hours they are regularly scheduled to work on holidays observed by the City.

# Exhibit E



## LIVING WAGE ORDINANCE
### Notice to Employees

This employer has one or more contracts with the City of Irvine. Terms of the contract(s) subject the employer to the City of Irvine Living Wage Ordinance No. 07-15. Under the Ordinance **you must be paid a "living wage"** by the employer if a majority of your work is performed in Orange County.

## THESE ARE YOUR RIGHTS

### You must be paid a minimum of:
- **$10.82** per hour

### If you work an average of 30 hours per week or more, you must be paid a minimum of:
- **$10.82** per hour
  - If health and paid time off benefits are offered to you
    **OR**
- **$13.23** per hour:
  - If no health or paid time off benefits are offered to you
  - If the cost of health and paid time off benefits provided to you cost your employer less than **$2.41** per hour, the difference is added to the minimum hourly wage listed above

- Rates are generally adjusted annually. Current rates are effective as of **July 1, 2013.**
- Retaliation by your employer is **prohibited**
- Employers may not fire, reduce pay, or discriminate against a worker for filing a complaint

### If your rights are violated you could receive:
- Restitution to compensate you for all amounts that should have been paid to you under the Ordinance
- Reasonable attorneys' fees and costs
- Any and all other legal and equitable remedies under Federal, State and local law

## FOR MORE INFORMATION

To obtain a confidential complaint form if you believe your rights are being violated, please contact:
**CITY OF IRVINE**
Director of Administrative Services
One Civic Center Plaza
Irvine, CA 92606
(949) 724-6255

For more information and to review the City Ordinance, Living Wage Guide (frequently asked questions) and updated rates, visit the City's website and access the Purchasing Department, Living Wage page at: **www.cityofirvine.org/purchasing**