PLANTE HUGUENIN LAUNI KAHN LLP
BRIAN C. PLANTE, State Bar No. 175585
  *bplante@phlklaw.com*
MELANIE S. WOODFIN, State Bar No. 245616
  *mwoodfin@phlklaw.com*
RAE RICHARDSON, State Bar No. 183932
  *rrichardson@phlklaw.com*
18100 Von Karman Ave., Suite 700
Irvine, California 92612
Telephone: (949) 271-8700
Facsimile: (949) 627-2611

Attorneys for Risewell Homes Inc.; The
New Home Company Southern California
LLC; and TNHC Realty and Construction
Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY GU,<br><br>             Plaintiff,<br><br>       v.<br><br>CITY OF IRVINE, et al.,<br><br>             Defendants. | CASE NO. 8:25-cv-02134-VBF-DSR<br><br>JUDGE:        Valerie Baker Fairbank<br><br>**DEFENDANTS RISEWELL HOMES INC., THE NEW HOME COMPANY SOUTHERN CALIFORNIA LLC, AND TNHC REALTY AND CONSTRUCTION INC.'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**Date:    August 18, 2026**<br>**Time:    10:00 a.m.**<br><br>**Magistrate Judge:  Daniel S. Roberts** |

/ / /

/ / /

1

DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................5

II.   ARGUMENT ............................................................................................7

 A.  TNHC Has Met Its Prima Facie Showing That The Cease-And-Desist Letters Are Protected Prelitigation Activity .........................................7

 B.  Plaintiff Has Not Met His Burden Of Success On The Merits...........10

  1.  The Litigation Privilege Applies To TNHC's Cease-And-Desist Letters Because They Are Prelitigation Communications Which Bear A Logical Relation To Contemplated Litigation .............10

  2.  TNHC's Cease-And-Desist Letters Do Not Contain False Allegations of Criminal Conduct And *Weinberg* Is Inapposite 13

 C.  Plaintiff Has Not And Cannot Establish The Elements For A Cause of Action Under The Ralph Act ...........................................................15

  1.  TNHC Did Not Violate Subsection (b)(2) Of The Ralph Act..15

  2.  Plaintiff Has Failed To Establish A Discriminatory Motive Based on His Political Affiliation............................................17

 D.  Plaintiff Has Not And Cannot Establish The Elements To Support A Bane Act Claim ..............................................................................19

III.  CONCLUSION ......................................................................................21

2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41 .......................................... 20

*Animal Protection & Rescue League, Inc. v. County of Riverside* (2025) 111 Cal.App.5th 914 ............................................................ 16, 17, 19, 20

*Austin B. v. Escondido Union Sch. Dist.* (2007) 149 Cal.App.4th 860 ..................... 17

*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924 .................................. 7

*Birkner v. Lam* (2007) 156 Cal.App.4th 275 .............................................................. 11

*Cabral v. Martins* (2009) 177 Cal.App.4th 471 ................................................... 11, 12

*Campbell v. Feld Entm't, Inc.* (N.D. Cal. 2014) 75 F.Supp.3d 1193 ........................ 17

*Center for Bio-Ethical Reform, Inc. v. The Irvine Co., LLC* (2019) 37 Cal.App.5th 97 .............................................................................................. 20

*Chabak v. Monroy* (2007) 154 Cal.App.4th 1502 ..................................................... 14

*Cornell v. City & County of San Francisco* (2017) 17 Cal.App.5th 766…...... 19, 21

*Doe v. Gangland Prods.* (9th Cir. 2013) 730 F.3d 946 .............................................. 8

*Doe v. Priyanka* (2026) 814 F.Supp.3d 1073 ............................................................ 16

*Doe v. State of California* (2017) 8 Cal.App.5th 832 ................................................. 20

*Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697 ................................................ 14

*Gay Law Students Ass'n v. Pac. Tel. & Tel. Co.* (1979) 24 Cal.3d 458 ................... 17

*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005 ..................................................... 11

*Keene v. Stennis* (2014) 230 Cal.App.4th 953 ........................................................... 14

*Leon v. County of Riverside* (2023) 14 Cal.5th 910 .................................................. 20

*Navellier v. Sletten* (2002) 29 Cal.4th 82 .................................................................. 8

*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255 .................................................. 9

*Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361 ............... 11

*Pacific Decision Sciences Corp. v. Superior Court* (2004) 121 Cal.App.4th 1100 . 12

*People ex rel. Fire Insurance Exchange v. Anapol* (2012) 211 Cal.App.4th 809 . 7,11

*Quezada v. City of Los Angeles* (2014) 222 Cal.App.4th 993…………………19, 20

3

DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

*RGC Gaslamp, LLC v. Ehmeke Sheet Metal Co.* (2020) 56 Cal.App.5th 413 .......................................................................................7, 8, 9, 10, 12

*Rusheen v. Cohen* (2006) 37 Cal.4th 1048 ................................................... 14

*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563 ....................................... 14

*Silberg v. Anderson* (1990) 50 Cal.3d 205 ................................................. 11

*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820 ................................. 19, 21

*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122......................................... 6, 13, 14

## STATUTES

California Civil Code § 47(b) ........................................................................ 10, 14

California Civil Code § 51.7......................................................................... 5, 15, 16

California Civil Code § 51.7(b)(2)…...…………………………………………...15, 16

California Civil Code § 52.1............................................................................. 5

California Civil Code § 52.1(k) ..................................................................... 7, 19, 20

California Civil Code § 910(a) ...................................................................... 12

California Code of Civil Procedure § 425.16....................................................... 8, 14

California Code of Civil Procedure § 425.16(c) ................................................. 21

California Code of Civil Procedure § 425.16(e) ................................................. 9

California Code of Civil Procedure § 425.16(e)(2).................................................. 9

California Code of Civil Procedure § 527(a) ...................................................... 12

Federal Rule of Civil Procedure 12(b)(6)............................................................ 21

Federal Rule of Civil Procedure 13 .................................................................. 8

Federal Rule of Civil Procedure 65 .................................................................. 8

## OTHER AUTHORITIES

AB 1775 (California Legislature).......................................................................... 15

SB 800 (California Legislature)................................................................. 5, 9, 10, 11

4

DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Defendants Risewell Homes Inc., The New Home Company Southern California LLC, and TNHC Realty and Construction Inc. (collectively, "TNHC"), by and through their undersigned counsel, hereby submit this Memorandum of Points and Authorities as their Reply in Support of their Motion to Strike, or in the Alternative, Motion to Dismiss ("Motion") Plaintiff Jeffrey Gu's ("Plaintiff") Second Amended Complaint for Violations of Civil Rights ("SAC") (ECF 130).

## I.   <u>INTRODUCTION</u>

Plaintiff's Opposition (ECF 158) fails to overcome the fact that no matter how he attempts to characterize TNHC's actions, Plaintiff cannot maintain a claim for violation of his civil rights under either the Tom Bane Civil Rights Act (the "Bane Act"), codified in California Civil Code section 52.1 and/or the Ralph Civil Rights Act of 1976 (the "Ralph Act") codified in Civil Code section 51.7.  Said claims arise from protected activity - the sending of cease-and-desist letters by TNHC to Plaintiff in connection with the SB800 statutory process and in contemplation of other litigation – and are absolutely protected by the litigation privilege.

In an effort to avoid dismissal, Plaintiff attempts to recharacterize TNHC's cease-and-desist letters as acts of "violence" or "coercion," omits relevant provisions of the applicable statutes, and attempts to apply decisional authority that is factually and legally inapposite.  First, TNHC's Motion clearly establishes that its cease-and-desist letters are protected activity under the first prong of the anti-SLAPP statute.  In Opposition, Plaintiff asserts that TNHC did not meet its prima facie burden because it did not seriously contemplate filing litigation.  This argument is completely without merit, as the first prong only asks whether a defendant's actions fall within a statutorily protected category, it does not scrutinize the lawfulness or legitimacy of the communications.  Moreover, the cease-and-desist letters were made in good faith in connection with the statutorily mandated

5

SB800 prelitigation procedure and in contemplation of seeking a TRO or injunction.  Thus, TNHC has clearly met its prima facie burden that the communications arise out of protected activity.

Second, TNHC's Motion clearly demonstrates that Plaintiff has not met his burden under the second prong of the anti-SLAPP statute by establishing a probability of success on the merits.  Here, the litigation privilege is an absolute defense to Plaintiff's claims and Plaintiff's contention that the cease-and-desist letters were not sent "under any official proceedings" is completely without merit.  The letters specifically reference the prelitigation process and were also required before TNHC could seek a TRO or preliminary injunction.  Plaintiff's argument to the contrary is disingenuous at best.  Moreover, Plaintiff's contention that the letters are required to be filed with a Court to obtain the protection of the litigation privilege is contrary to well established law.  Finally, Plaintiff's assertion that the cease-and-desist letters contain false allegations is unsupported by the facts.  But even if they did contain false allegations (which they do not), such communications are still protected by the litigation privilege.  In fact, *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, which is relied upon by Plaintiff, is legally and factually inapposite as that case involved communications that were admittedly entirely outside any litigation or quasi-litigation context.  Thus, the litigation privilege is an absolute bar to Plaintiff's claims.

Third, Plaintiff has not and cannot establish the elements of his Ralph Act claim.  Plaintiff's contention that the statements in the cease-and-desist letters that "TNHC reserves the right to pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties" constitutes intimidation by threat of violence is absurd.  The letters do not even mention making a report to the police, only that TNHC reserves its rights to pursue all appropriate civil and criminal penalties.  Moreover, Plaintiff has not and cannot establish that the letters were sent because of his purported  "political affiliation,"

6

as they were sent in response to Plaintiff's conduct of trespassing and harassment and they only request that Plaintiff cease such trespassing and harassing conduct.

Finally, Plaintiff has not and cannot establish the elements of his Bane Act claim.  In fact, Plaintiff completely ignores the requirements of California Civil Code section 52.1(k), which expressly requires the speech itself to threaten violence against Plaintiff and that Plaintiff have a reasonable fear that violence will be committed against him.  The cease-and-desist letters, however, do not threaten any violence and do not constitute the "egregious interference" required by the statute as a matter of law.

Because TNHC has established its prima facie burden that the communications at issue were made in connection with litigation, are protected activity, and are absolutely privileged, and because Plaintiff cannot satisfy the elements of his claims, TNHC respectfully requests that the Court grant its Motion to strike Plaintiff's SAC with prejudice and award TNHC its attorneys' fees and costs in bringing this Motion.  Alternatively, TNHC respectfully requests that the Court grant its Motion and dismiss the SAC with prejudice.

## II.    ARGUMENT

### A.    TNHC Has Met Its Prima Facie Showing That The Cease-And-Desist Letters Are Protected Prelitigation Activity

As set forth in the Motion, "prong one [of the Anti-SLAPP statute] requires only a prima facie showing of protected activity."  (*RGC Gaslamp, LLC v. Ehmeke Sheet Metal Co.* (2020) 56 Cal.App.5th 413, 429.)  Moreover, as detailed in the Motion, prelitigation events, communications preparatory to bringing an action, and correspondence during mandatory prelitigation procedures all constitute protected prelitigation conduct.  (*Id*. at 428; *see also Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 940; *People ex rel. Fire Insurance Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824.)  Here, TNHC has clearly met its prima facie burden.

///

Plaintiff asserts that TNHC did not meet its prima facie showing of protected activity because TNHC "never seriously contemplated legal action."  (ECF 158, p. 8-10.)  Specifically, Plaintiff asserts that "the first prong is failed 'as a matter of law' where the record shows the conduct had 'no connection or logical relation to an action' and was not made 'to achieve the objects' of any litigation."  (ECF 158, p. 10, lns. 6-10.)  Plaintiff further asserts that in order for TNHC's cease-and-desist letters to fall within the protection of the anti-SLAPP statute, TNHC was required to take actual legal action against Plaintiff.  (ECF 158, p. 9, ln. 16 – p. 10, ln. 6.)  According to Plaintiff, this legal action consists of either filing for a preliminary injunction or a temporary restraining order pursuant to  Fed. R. Civ. P. 65, or asserting a counterclaim under Fed. R. Civ. P. 13.  (*Id*.)  This argument conflates the anti-SLAPP statute's two distinctive analytical prongs and finds no support in the governing law, as nothing in the anti-SLAPP statute, Civil Code, or case law requires a party to actually file suit or to pursue the remedy referenced in a pre-litigation communication in order to qualify for anti-SLAPP protection.

The first-prong inquiry under California Code of Civil Procedure section 425.16 asks only whether the defendant's activity falls within a statutorily protected category.  It does not scrutinize the "lawfulness" or "legitimacy" of the defendant's acts. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 95; *RGC Gaslamp, supra,* 56 Cal.App.5th at 426.)  "[A]ny claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the *second* step of the analysis." (*Doe v. Gangland Prods.* (9th Cir. 2013) 730 F.3d 946, 954 (*quoting Navellier, supra*, 29 Cal.4th at 92) (emphasis added); *see also RGC Gaslamp, supra*, 56 Cal.App.5th at 426.)  Thus, Plaintiff's argument regarding whether TNHC's cease-and-desist letters were made in good faith and in serious contemplation of litigation is directed to the wrong analytical step.

Moreover, the cease-and-desist letters were made in good faith in connection with the SB800 prelitigation procedure and in serious contemplation of seeking an

8

injunction or TRO.  Statements "preparatory to or in anticipation of" litigation are protected under section 425.16(e) without any requirement that litigation actually be filed.  (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 and fn. 8 ("a statement is 'in connection with' litigation [or contemplated litigation] under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation [or contemplated litigation] and is directed to persons having some interest in the litigation [or contemplated litigation]").)  Indeed, the California Legislature specifically enacted the anti-SLAPP statute to protect prelitigation communications that might otherwise be chilled by retaliatory lawsuits.  A rule requiring defendants to have actually filed a TRO or counterclaim to preserve the protection would eviscerate the statute's core purpose.

In fact, *RGC Gaslamp*, relied upon by Plaintiff in asserting this argument, specifically holds that a "defendant impliedly satisf[ies] the good faith and serious contemplation of litigation showing where 'it is necessary to serve or record a document prior to the commencement of litigation.'"  (*RGC Gaslamp, supra*, 56 Cal.App.5th at 429.)  And as discussed in the Motion and herein, the cease-and-desist letters were served in connection with the SB800 prelitigation procedure and were required before TNHC could seek a preliminary injunction or TRO, which TNHC was seriously contemplating pursuing at the time that the letters were served.  Thus, TNHC's cease-and-desist letters standing alone establish that TNHC was acting in good faith and was seriously considering taking legal action against Plaintiff.

Further, the fact that TNHC has actively participated in this case for over nine months and filed the instant Motion is further evidence of the manifestation of TNHC's good faith intentions to take legal action against Plaintiff, when appropriate, as needed, in whatever form TNHC chooses at TNHC's discretion. Plaintiff does not get to dictate when, and/or if TNHC takes legal action against him nor does Plaintiff get to dictate the form of legal action taken.  The fact that

9

TNHC has elected to defend itself against Plaintiff's claims rather than seeking a federal court injunction is a strategic litigation choice, not evidence that litigation was never seriously considered.  A party may choose to pursue alternative legal strategies without forfeiting anti-SLAPP protection.

**B.** **Plaintiff Has Not Met His Burden Of Success On The Merits**

**1.** **The Litigation Privilege Applies To TNHC's Cease-And-Desist Letters Because They Are Prelitigation Communications Which Bear A Logical Relation To Contemplated Litigation**

Under the anti-SLAPP statute, if a defendant establishes that the challenged claim arises from protected activity, the burden then shifts to the Plaintiff to demonstrate that his claims have merit.  The court must determine "whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (*RGC Gaslamp, supra*, 56 Cal.App.5th at 425.)  "If a plaintiff does not make that showing, a court will strike the claim." (*Ibid*.)  "To overcome any asserted defenses, [defendant] had to show that they were inapplicable as a matter of law or make a prima facie showing of facts that, if accepted, would negate such defenses." (*Id*. at 434.)  "The litigation privilege is one such defense that may be considered at prong two." (*Ibid*.)

Plaintiff argues that TNHC's cease-and-desist letters cannot be privileged because they are "factually distinct" from the SB800 communications, they "were not sent under any official proceedings," and because TNHC never "submitted" the letters to any court. (ECF 158, p. 11, lns. 1-7.)  This argument fundamentally misstates the scope of the litigation privilege and ignores the underlying facts and the substance of TNHC's cease-and-desist letters.

The litigation privilege under Civil Code section 47(b) is not limited to filings actually submitted to a court.  It "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or

10

afterwards." (*Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 376.)  The privilege covers any communication relating to "litigation that is contemplated in good faith and under serious consideration." (*Ibid*.)  Critically, the privilege is "absolute in nature, applying to all publications, irrespective of their maliciousness," and "any doubt as to whether the privilege applies is resolved in favor of applying it." (*Ibid*.)  The privilege applies "regardless of the existence of malice or intent to harm," extends to communications "relative to the defense of an action as well as those relative to its filing and prosecution," and has been applied even to communications "involv[ing] forgery or falsification of documents." (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 485.)  The relevant test is whether the communication has "some connection or logical relation to the action." (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1031, citing *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)

As set forth in Plaintiff's SAC, TNHC sent an SB800 response letter to Plaintiff on May 22, 2025.  (SAC, ECF 130, p. 89, ¶ 560; PE 132 at 130-4, pp.125-130.)  Five days later, on May 27, 2025, TNHC sent its first cease-and-desist letter. (SAC, ECF 130, p. 90, ¶571, PE 133 at ECF 130-4, pp. 131-134.)  The content of that letter, and each subsequent letter, specifically references Plaintiff's conduct during and arising out of the SB800 process including his unauthorized entries onto TNHC's construction sites, his harassment of TNHC's inspectors and subcontractors, and his demands for employee information.  (PE 205 at ECF 130-7, pp. 24-26 and PE 285 at ECF 130-10, pp. 72-74; PE 218 at ECF 130-7, pp. 167-169.)  These were not random communications unrelated to any proceeding.  They were communications that arose from the same dispute that generated the SB800 process.

Under *Birkner v. Lam (2007)* 156 Cal.App.4th 275, 282 and *People ex rel. Fire Insurance Exchange v. Anapol, supra,* at 824, "satisfaction of the statutory prerequisite is considered to constitute protected prelitigation conduct." (*Id.* at

11

PLANTE HUGUENIN
LAUNIKAHN LLP
PH
LK

824.)  Further, Civil Code section 910(a) expressly declares that a notice of claim "shall have the same force and effect as a notice of commencement of a legal proceeding."  Clearly, TNHC's cease-and-desist letters were sent in connection with official proceedings.

The cease-and-desist letters also serve as a prerequisite to injunctive relief under California Code of Civil Procedure section 527(a), which requires prior notice before a court may issue a preliminary injunction or temporary restraining order.  (*Pacific Decision Sciences Corp. v. Superior Court* (2004) 121 Cal.App.4th 1100, 1110.)  TNHC's cease-and-desist letters expressly reference Plaintiff's SB800 Notices of Claim, his trespassing conduct at TNHC's construction sites, and TNHC's rights to pursue injunctive relief and restraining orders.  This language unambiguously establishes a "connection or logical relation" to contemplated litigation.  And as discussed above, *RGC Gaslamp* specifically holds that a "defendant impliedly satisf[ies] the good faith and serious contemplation of litigation showing where 'it is necessary to serve or record a document prior to the commencement of litigation.'"  (*RGC Gaslamp, supra*, 56 Cal.App.5th at 429.)

Plaintiff's demand that each individual letter be filed with a court to receive protection imposes a requirement that has been expressly rejected by every California court to address the issue.  Plaintiff's failure to engage with the privilege's "absolute" and malice-irrelevant character, or to cite any authority supporting his narrow reading, is telling.  If even forged documents can be privileged (*Cabral, supra,* 177 Cal.App.4th at 485), legitimate cease-and-desist correspondence from counsel is a fortiori privileged.  Thus, TNHC's cease-and-desist letters were made in good faith in serious contemplation of litigation, and the litigation privilege is an absolute bar to Plaintiff's claims.  Accordingly, TNHC respectfully requests that the Court grant its Motion to strike the SAC with prejudice under the anti-SLAPP statute.

/ / /

12

### 2. TNHC's Cease-And-Desist Letters Do Not Contain False Allegations of Criminal Conduct And *Weinberg* Is Inapposite

Plaintiff contends that TNHC's characterization of his conduct as "trespass" and "harassment" constitutes "false allegations of criminal conduct" that strip anti-SLAPP protection under *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122.  (ECF 158, p. 12-13.)  This argument fails for multiple reasons.

First, *Weinberg* is factually inapposite.  There, the defendant communicated accusations of theft privately to "a relatively small group of fellow collectors" at a collectibles show.  (*Weinberg, supra*, 110 Cal.App.4th at 1127, 1135.)  The court expressly found that "defendant did not report his suspicions to law enforcement, and there is no evidence that he intended to pursue civil charges against plaintiff." (*Id.* at 1126, 1134-1135.)  Rather, the defendant conducted "a private campaign ... to discredit plaintiff" entirely outside any litigation or quasi-judicial context.  (*Id*. at 1127, 1135.)  The defendant asserted that the communications related to criminal activity and therefore they constituted protected activity because they relate to a public issue.  (*Id*. at 1132-1133.)  The court, however, held that the communications related to a private matter and not a public issue.  (*Ibid*.)  By contrast, TNHC's letters were sent directly to Plaintiff, expressly reserved TNHC's right to "pursue all appropriate corrective actions, including injunctive relief, restraining orders, and both civil and criminal penalties," and were connected to the ongoing SB800 proceedings and contemplated civil litigation.  *Weinberg* is simply inapplicable to these circumstances.

Second, TNHC's characterization of Plaintiff's actions as "trespass" or "harassment"  is not fabricated.  Plaintiff's SAC and related exhibits document that he appeared at TNHC's closed construction site on multiple occasions without authorization where he photographed construction workers and noted their vehicle license plates (PE 133, ¶ 4 at ECF 130-4, p. 132-134), he questioned subcontractors

13

and interfered with their work (PE 205 at ECF 130-7, p. 24-26 and PE 285 at ECF 130-10, p. 72-74), he contacted TNHC employees demanding W-2 information (PE 218 at ECF 130-7, p. 167-169), and he continued these activities after being asked to stop.  (*Ibid*.)

Even assuming, arguendo, that the legal characterization of "trespass" or "harassment" is disputed, good faith legal characterization of conduct in prelitigation communications is protected regardless of their accuracy.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 (litigation privilege applies broadly to communications in anticipation of litigation); *Keene v. Stennis* (2014) 230 Cal.App.4th 953, 965 (privilege applies even to "fraudulent" communications).) "When allegations of making false reports are controverted, they are insufficient to render that alleged conduct unlawful as a matter of law and outside the protection of section 425.16."  (*Keene, supra,* 230 Cal.App.4th at 967 and *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 712 ("mere allegation that [the defendant] engaged in unlawful…activities is insufficient to render [the defendant's] alleged actions unlawful as a matter of law and outside the protection of…section 425.16"); *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1512 (the defendant's allegedly false report to police that the plaintiff inappropriately touched her was deemed protected activity because there was no uncontroverted evidence showing the report to be false); *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569–1570 (defendant's allegedly false report to school official was protected activity, notwithstanding plaintiff's allegation of falsity, because no uncontroverted evidence showed that it was false).)  *Weinberg* does not purport to override or narrow the separately absolute litigation privilege under Civil Code section 47(b). Plaintiff's Opposition does not even attempt to reconcile his *Weinberg* argument with the litigation privilege's settled scope, which applies "regardless of the truth or falsity of the underlying claim motivating the communication."  (*Rusheen, supra*, 37 Cal.4th at 1058.)  Thus, even if TNHC's characterizations of trespass and

14

harassment were entirely unfounded (which they are not), the privilege still protects the communications.  The bottom line is that there is no uncontroverted evidence showing that TNHC's allegations are false, and TNHC's cease-and-desist letters are protected communications.  Because Plaintiff has not and cannot overcome the litigation privilege defense, he has failed to meet his burden of probability of success under the second prong of the anti-SLAPP statute.  TNHC therefore respectfully requests that the Court grant its Motion to strike Plaintiff's SAC with prejudice under the anti-SLAPP statute.

### C.    Plaintiff Has Not And Cannot Establish The Elements For A Cause of Action Under The Ralph Act

#### 1.    TNHC Did Not Violate Subsection (b)(2) Of The Ralph Act

Plaintiff asserts that TNHC violated subsection (b)(2) of the Ralph Act because "an individual threatened to call the police when Plaintiff appeared at TNHC's construction site on March 3, 2026 and because the cease-and-desist letters "threatened 'criminal penalties.'"  (ECF 158, p. 15, ln. 19 – p. 16, ln. 24.) According to Plaintiff, these actions establish that TNHC's acts fall squarely within the Ralph Act.

However, the statutory text in subsection (b)(2) is narrow and targeted. Section 51.7(b)(2) defines "intimidation by threat of violence" to include:

> Making or threatening to make a claim or report to a
> peace officer or law enforcement agency that falsely
> alleges that another person has engaged in unlawful
> activity or in an activity that requires law enforcement
> intervention, knowing that the claim or report is false, or
> with reckless disregard for the truth or falsity of the claim
> or report.

(Cal. Civ. Code § 51.7(b)(2).)  By its plain terms, the provision applies only to claims or *reports made to a peace officer or law enforcement agency*.  TNHC's

15

PLANTE HUGUENIN LAUNI KAHN LLP

cease-and-desist letters were sent to Plaintiff - not to any peace officer or law enforcement agency.  They reserved TNHC's right to pursue lawful civil remedies through the courts and informed Plaintiff that he may face civil or criminal penalties.  However, the cease-and-desist letters did not purport to make or threaten to make any false report to law enforcement alleging that Plaintiff engaged in unlawful activity.  The statutory text simply does not reach this conduct.

Moreover, the March 3, 2026 police-call statement is equally insufficient. The Opposition points to an employee's statement about calling the police when Plaintiff appeared at TNHC's active construction site.  (ECF 158, p. 15-16.)  But an employee responding to a person's actual presence at a non-public construction site by stating they will call the police is not a "false" report.  The statute requires "knowing that the claim or report is false, or with reckless disregard for the truth or falsity."  (Civ. Code § 51.7(b)(2). )  Plaintiff admits he was present at the site. Stating an intent to call police about that presence is not equivalent to falsely reporting unlawful activity to law enforcement.

Plaintiff also asserts that the pre-amendment law cited by TNHC in its Motion is "legally obsolete."  (SAC, ECF 158, p. 15, lns. 8-11.)  However, this contention is without merit.  In fact, *Animal Protection & Rescue League, Inc. v. County of Riverside* (2025) 111 Cal.App.5th 914, 919-921 was decided in 2025, well after Assembly Bill 1775's effective date, and it reflects the current interpretation of Civil Code section 51.7.  This case holds that "there can be no threat of violence for purposes of the Ralph Act without some expression of intent to injure or damage plaintiffs or their property" and that "an arrest or threat of arrest alone does not necessarily involve violence or a threat of violence for purposes of the Act."  (*Ibid*.)  Similarly, *Doe v. Priyanka* (2026) 814 F.Supp.3d 1073, 1090, also decided after the amendment, likewise holds that the Ralph Act requires "violence to involve 'some physical, destructive act,'" that "'economic coercion' and 'character assassination' do not constitute violence within the meaning of the

16

Ralph Act," and that "the threat of an arrest alone is not enough to constitute violence" citing *Animal Protection & Rescue League, supra,* at 919.

TNHC's cease-and-desist letters, which express an intent to pursue lawful legal remedies, do not involve violence or a threat of violence, and constitute conduct that courts have uniformly held insufficient.  Plaintiff's reading of the amendment, if accepted, would mean that any cease-and-desist letter mentioning potential "criminal penalties" constitutes "intimidation by threat of violence" under the Ralph Act, effectively outlawing standard prelitigation practice throughout California.

### 2.    Plaintiff Has Failed To Establish A Discriminatory Motive Based on His Political Affiliation

Plaintiff argues that TNHC acted because of his political affiliation, which he defines as his regulatory complaints to Irvine officials and advocacy activities. (SAC, ECF 158, lns. 3-7.)  However, this argument is legally irrelevant because the Ralph Act's requirements are conjunctive.  A plaintiff must establish *both*: (1) that the defendant committed or threatened violent acts; *and* (2) that the defendant was motivated by its perception of the plaintiff's protected characteristic.  (*Campbell v. Feld Entm't, Inc.* (N.D. Cal. 2014) 75 F.Supp.3d 1193, 1205 (citing *Austin B. v. Escondido Union Sch. Dist.* (2007) 149 Cal.App.4th 860, 880-81) (listing four elements).)  Because Plaintiff cannot establish the threshold violence/threat of violence element for the reasons set forth above, the court need not reach the motive element at all.

Moreover, Plaintiff's activities do not constitute "political affiliation." Plaintiff argues that his activities relating to his investigation of TNHC constitute "political affiliation" relying on *Gay Law Students Ass'n v. Pac. Tel. & Tel. Co.,* (1979) 24 Cal.3d 458.  (ECF 158, p. 17, line 13 – pg. 18, line 10.)  However, *Gay Law Students Ass'n* involved employment discrimination based on sexual orientation under a different statutory framework.  It has no application to a

17

homebuilder's response to a homeowner's agent who entered its construction sites without authorization, harassed its employees, and filed duplicative claims.  In addition, Plaintiff's self-described "political affiliation" is really just his role as a litigant and complainant against TNHC.  Nowhere in the Ralph Act is the act of complaining about the activities of private homebuilders considered to be "political."

Furthermore, TNHC's cease-and-desist letters make no reference to Plaintiff's "political affiliation," advocacy, or any protected characteristic referenced in the Ralph Act.  TNHC's letters reference specific conduct: unauthorized entry onto construction sites, harassment of employees, and formation of a confusingly similar entity.  The absence of any reference to political activity in the letters undermines any reference to a discriminatory motive based on "political affiliations."

Finally, Plaintiff's reliance on the Colorado Action as evidence of a "coordinated campaign" is misplaced.  The Colorado Action was brought by different entities based on their own claims, and those factual allegations cannot be used to establish a discriminatory motive against TNHC in this case.  TNHC only became a party to the Colorado Action because Plaintiff filed a cross-claim against it.  At that point, TNHC had no choice but to take action to defend itself.  TNHC's response was not retaliatory; it was required by Plaintiff's actions.  The involvement of TNHC in separate litigation is not evidence of discriminatory motive by TNHC, especially when Plaintiff is the one who involved TNHC in that litigation.  Accordingly, Plaintiff cannot establish the elements of a claim under the Ralph Act as a matter of law.  Therefore, TNHC respectfully requests that the Court grant its Motion to dismiss the SAC with prejudice.

/ / /

/ / /

/ / /

DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

### D.    **Plaintiff Has Not And Cannot Establish The Elements To Support A Bane Act Claim**

Plaintiff asserts that the Bane Act requires only "threat, intimidation, or coercion," not actual violence, citing *Cornell v. City & County of San Francisco* (2017) 17 Cal.App.5th 766 and *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820.  (ECF 158, pp. 20-21.)  While these cases correctly state that the Bane Act does not categorically require physical violence and that no discriminatory animus is necessary, the statement of law in the Opposition is materially incomplete because it entirely omits the dispositive statutory limitation on speech-based claims.  Civil Code section 52.1(k) expressly provides:

> Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

(Civ. Code § 52.1(k); *see also Quezada v. City of Los Angeles* (2014) 222 Cal.App.4th 993, 1007-1008 (applying section 52.1(k)'s requirements); *Animal Protection & Rescue League, Inc., supra*, 111 Cal.App.5th at 921.)

Here, TNHC's cease-and-desist letters are, by definition, "speech."  Under section 52.1(k), Plaintiff must therefore demonstrate that: (1) the speech *itself* threatens violence against Plaintiff; (2) plaintiff *reasonably fears* that violence will be committed against him or his property; and (3) TNHC had the *apparent ability* to carry out the threat.  Plaintiff has not and cannot satisfy any of these requirements.  The cease-and-desist letters contain no language threatening

19

physical violence.  Rather, they only express an intent to pursue lawful civil and criminal *remedies through the courts*.  No reasonable person would fear physical violence from attorney correspondence reserving legal rights.

Plaintiff attempts to characterize TNHC's cease-and-desist letters as "coercive instruments."  (ECF 158, p. 21, lns. 8-11.)  However, this assertion is nothing more than a conclusory statement unsupported by any facts.  Nothing in TNHC's cease-and-desist letters threatens violence, and nowhere in his SAC or his Opposition does Plaintiff allege that he feared violence would be committed against him.  Stating one's legal rights does not constitute a threat of violence or intimidation.  (*See Animal Protection & Rescue League, Inc., supra*, 111 Cal.App.5th at 921 ("Communicating in writing or otherwise that a person will be treated as a trespasser and removed from property should they choose to engage in certain activities does not amount to the 'egregious interference[]' contemplated by the statute"); *Center for Bio-Ethical Reform, Inc. v. The Irvine Co., LLC* (2019) 37 Cal.App.5th 97, 115 (accord); *Quezada, supra,* 222 Cal.App.4th at 1007-1008 (applying section 52.1(k)'s requirements).)  Here, the cease-and-desist letters did exactly what *Animal Protection & Rescue League, Inc.* and *Center for Bio-Ethical Reform, Inc.* permits – warn Plaintiff that continued unauthorized entry would result in legal action.  This is the type of ordinary, prelitigation correspondence protected by the anti-SLAPP statute and the litigation privilege, and does not constitute a violation of the Bane Act as a matter of law.

Moreover, the Bane Act "requires a showing of threatening conduct independent from the alleged interference or violation of a civil right" and a wrongful arrest or detention, without more, does not satisfy the elements of the Bane Act. (*Animal Protection & Rescue League, Inc., supra*, 111 Cal.App.5th at 922-923 (*applying Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 66 and 69) and *quoting Doe v. State of California* (2017) 8 Cal.App.5th 832, 842-843 (overruled on other grounds in *Leon v. County of Riverside* (2023) 14 Cal.5th 910,

20

930-931).)  These cases hold that a bare threat to invoke lawful legal process, without independently threatening or coercive conduct, is categorically insufficient under the Bane Act.  Here, Plaintiff does not allege any independently threatening or coercive conduct.

Finally, *Cornell* and *Venegas* are inapposite and do not support Plaintiff's position.  *Cornell* concerned an unlawful arrest involving actual physical restraint by a police officer, and *Venegas* likewise involved police officer conduct and an alleged unlawful search and seizure.  (*Cornell, supra*, 17 Cal.App.5th at 801-802 and *Venegas, supra*, 32 Cal.4th at 820).  Neither case involves private correspondence, and neither case stands for the proposition that a private party's cease-and-desist letters can constitute the threat, intimidation or coercion required by the Bane Act.  Accordingly, for the reasons set forth herein, Plaintiff has not and cannot satisfy the elements of the Bane Act, and TNHC respectfully requests that the Court grant its Motion to dismiss with prejudice.

## III.    CONCLUSION

For the reasons set forth in the Motion and herein, TNHC respectfully requests that this Court grant its Motion to strike Plaintiff's SAC with prejudice as it relates to TNHC and award TNHC its costs and attorneys' fees incurred in bringing this Motion pursuant to section 425.16(c).  Alternatively, TNHC respectfully requests that this Court grant its Motion to dismiss Plaintiff's SAC

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

with prejudice as it relates to TNHC for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  August 4, 2026                    PLANTE HUGUENIN LAUNI KAHN LLP


By:  */s/ Rae Richardson*
     Brian C. Plante
     Melanie S. Woodfin
     Rae Richardson
Attorneys for Risewell Homes Inc.; The New Home Company Southern California LLC; and TNHC Realty and Construction Inc.

DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Risewell Homes Inc., The New Home Company Southern California LLC, and TNHC Realty and Construction Inc., certifies that this brief contains 5215 words, which:

☒ complies with the word limit of L.R. 11-6.1.

Dated:  August 4, 2026                    PLANTE HUGUENIN LAUNI KAHN LLP


By:  */s/ Rae Richardson*
     Melanie S. Woodfin
     Rae Richardson
Attorneys for Risewell Homes Inc.; The New Home Company Southern California LLC; and TNHC Realty and Construction Inc.

23

DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT