**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JEFFERY GU,

          Plaintiff,

    v.

CITY OF IRVINE, et. al.,

        Defendants.

No. 8:25-cv-02134-VBF-DSR

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**1.    INTRODUCTION**

Before the Court is a Motion to Dismiss for lack of subject-matter jurisdiction brought by Defendants Toll Brothers Inc., TB Proprietary Corp., and Toll Southwest LLC (collectively "Toll Brothers Defendants"). See Doc. No. 149. The Court finds this motion appropriate for decision without oral argument. Fed R. Civ. P. 78; C.D. Cal. R. 7-15. After considering all papers filed in support of, and in opposition to, the motion, the Court finds that it lacks supplemental jurisdiction over Plaintiff Jeffrey Gu's sole state law claim against the Toll Brothers Defendants. Accordingly, the Court recommends that the Toll Brothers Defendants' Motion be **GRANTED** and that the Toll Brothers Defendants be **DISMISSED** from this action.

## 2.    PROCEDURAL BACKGROUND

### A.    Initiation of the Case

On September 19, 2025, Plaintiff Jeffrey Gu filed suit in this Court against the City of Irvine and its Police Department, one of its City Councilmembers and one of its staff members, two of its contract City Attorneys, a homebuilder and its affiliates selling homes in the City (collectively the "New Home Defendants"), and a home inspection company (Bert L. Howe and Associates).  See Compl. (Doc. No. 1). The original Complaint spanned 34 pages and alleged civil rights claims against the City and City Attorney Defendants under 42 U.S.C. § 1983 for violation of the First and Fourteenth Amendments, and a claim under California's Bane Act (California Civil Code § 52.1) against the City, the New Home Defendants, and the inspection company.  Id.  The Toll Brothers Defendants were not parties to this suit in the original Complaint.  Id.

At around the same time as Plaintiff initiated this case here, the Toll Brothers Defendants filed suit in Federal Court in Colorado against Plaintiff Gu for trademark infringement and unfair competition.  See Verified Compl. in Toll Brothers, Inc., et al. v. Jeffrey Gu, et al., No. 1:25-cv-02884-CYC (D. Colo. Sept. 12, 2025), attached to Pl's Opp'n to the instant Motion, Doc. No. 156-1.[1]  Mr. Gu (Plaintiff in this Court, Defendant in the Colorado action) filed an Answer to the trademark-infringement case and a Counterclaim on September 29, 2025.  See D. Colo. Court Docket, Case No. 1:25-cv-02884, Doc. No. 17.

### B.    The First Amended Complaint and Challenges Thereto

On October 8, 2025, before serving the original Complaint in this case on any of the then-existing Defendants, Plaintiff Gu filed a First Amended Complaint here

---

[1] The Court takes judicial notice of the court record in the Colorado federal lawsuit, specifically the fact that certain documents were filed there on certain dates, but not of the truth of the allegations in any of those documents. See Fed. R. Evid. 201; GemCap Lending, LLC v. Quarles & Brady, LLP, 269 F.Supp. 3d 1007, 1019 (C.D. Cal. 2017).

and added the Toll Brothers Defendants to this case.  See Doc. No. 11.  His pleading exploded from 34 pages in the original Complaint to 2,648 pages (110 pages for the pleading itself plus 274 exhibits comprising the rest).  Id.  The Toll Brothers Defendants were named only in the Bane Act claim.  See First Amended Complaint at ECF pp. 104-106.  On November 7, 2025, the Toll Brothers Defendants filed a Special Motion to Strike, or in the alternative, to Dismiss Plaintiff's First Amended Complaint.  See Doc. No. 47.[2]  This was one of a slew of motions by various Defendants challenging Plaintiff's First Amended Complaint.  See Doc. Nos. 64, 66, 76, 77.

After initially taking the Toll Brothers Defendants' Special Motion to Strike or to Dismiss the First Amended Complaint under submission, see Doc. No. 57, on December 29, 2025, the Court vacated that submission and requested further briefing on the question of whether the Court has subject-matter jurisdiction over Plaintiff's claim against the Toll Brothers Defendants.  See Doc. No. 83.  Both parties timely filed their supplemental briefs, and the Toll Brothers Defendants' Motion was resubmitted on January 13, 2026.  See Doc. Nos. 86, 91, 93, 96.

**C.     The Second Amended Complaint**

Before the Court could issue its Report and Recommendation on that Motion, Plaintiff moved for leave to file a Second Amended Complaint.  See Doc. No. 120.  In light of such motion, and the fact that a Second Amended Complaint would render challenges to the superseded First Amended Complaint moot, the Court vacated the submission of the Toll Brothers Defendants' Motion to Dismiss

---

[2]     Days earlier, on November 3rd, the Toll Brothers Defendants had filed a similar motion in response to the First Amended Complaint.  See Doc. No. 31.  They failed to notice a hearing date, however, in violation of the requirements for Judge Audero, to whom the case was then referred, and as a result it was stricken by Order entered November 7th.  See Doc. Nos. 41, 42.  Less than an hour after entry of that Order, Plaintiff began requesting entry of default against the Toll Brothers Defendants.  See Doc. Nos. 45, 46.  The Toll Brothers Defendants then re-filed their Motion, specifying a hearing date, though still noticing it for hearing before the District Judge rather than the assigned Magistrate Judge.  See Doc. No. 47.

the First Amended Complaint pending determination of whether amendment should be permitted.  See Doc. No. 121.  The parties ultimately stipulated to leave for Plaintiff to file a Second Amended Complaint, which the Court approved on June 15, 2026, and Plaintiff filed his Second Amended Complaint the same day.  See Doc. No. 129, 130.

Plaintiff's Second Amended Complaint (hereinafter "SAC") now totals 3,103 pages (205 pages for the pleading itself plus 287 exhibits).  In Plaintiff's telling, it "adds additional defendants and factual allegations, alters some claims, and adds the Ralph Civil Rights Act of 1976 as a cause of action relative to the First Amended Complaint."  SAC at ECF p. 4, lns. 22-24.[3]

The SAC names as Defendants two home building companies (the Toll Brothers Defendants and another builder, referred to in the SAC both as Risewell Homes and the New Home Company, and two of its related entities), a home-inspection company (Bert L. Howe & Associates, Inc.), the City of Irvine and several City employees (Police Officer Emma Olague, Chief of Staff Kalvin Alvarez, City Councilmember William Go, and Executive Assistant Trinity Pham), and the City's contract City Attorneys – Jeffrey Melching and Jessica Sanders.  SAC at 9:3-12:7.  Pertinent to resolution of the instant motion, it attempts to plead four claims for relief (or "counts") under 42 U.S.C. § 1983 (unreasonable seizure in violation of the Fourth Amendment against the City and its employees, violation of the First Amendment by the City, its employees, and the contract City Attorneys, violation of due process against the City, its employees, and the contract City Attorneys, and "denial of access to the Court" against the City) and a state-law claim for violation of California's Bane Act (Civil Code § 52.1) against all named Defendants.  Id. at

---

[3]     Because many of the paragraphs in the SAC are not numbered, when citing to that pleading in this Report and Recommendation, the Court will cite to page and line numbers, using the ECF page number printed in the header across the top of each page.

4

140:14-177:4.[4]  The Bane Act claim is the only cause of action alleged against the Toll Brothers Defendants.

Plaintiff invokes this Court's subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) based on his Section 1983 claims against the City and City Attorney Defendants.  SAC at 8:4-6.  As to his state-law claims, including the sole claim against the Toll Brothers Defendants under the Bane Act, he relies on supplemental jurisdiction pursuant to 28 U.S.C. 1367(a).  Id. at 8:6-9.

On July 6, 2026, the Toll Brothers Defendants moved to dismiss for lack of subject-matter jurisdiction.[5]  See Doc. Nos. 143, 149.  On July 17, 2026, Plaintiff filed his Opposition to the Motion.  See Doc. No. 156.  The Toll Brothers Defendants did not file a Reply.  See C.D. Cal. R. 7-10.  On August 5, 2026, the Court determined the Motion was appropriate for determination without oral argument, vacated the August 11, 2026, hearing, and took the Motion under submission for preparation of this Report and Recommendation.

## 3.    FACTUAL BACKGROUND

Like the First Amended Complaint, Plaintiff's SAC details what seems to be three separate disputes: (1) a construction-defect dispute concerning the condition of a house Plaintiff purchased in Colorado from the Toll Brothers Defendants, (2) a construction-defect dispute concerning the condition of a house Plaintiff's parents

---

[4]    Plaintiff also pleads a claim for declaratory relief against the City (only) regarding alleged violations of the California Business and Professions Code, SAC at 134:2-140:13, and another state-law claim for violation of California's Ralph Civil Rights Act (Civil Code § 51.7) against all Defendants except the Toll Brothers Defendants and Officer Olague, SAC at 177:8-179:10.  Neither claim is relevant to this Motion because neither arises under federal law, nor are the Toll Brothers Defendants named Defendants in either claim.

[5]    On July 8, 2026, the Court struck the Toll Brothers Defendants July 6th Motion because it failed to specify a hearing date as required under Local Rule 6-1.  See Doc. No. 148.  The Toll Brothers Defendants corrected that error later that day and refiled the Motion, this time noticing a hearing date.  See Doc. No. 149.  Concurrently with his Opposition to the Toll Brothers Defendants' instant Motion to Dismiss, Plaintiff filed a Motion to Strike the Motion to Dismiss on the ground that it was filed two days late, and set that Motion to Strike for hearing on August 18, 2026.  See Doc. No. 155.  The Court is entering concurrently herewith a separate Order denying Plaintiff's Motion to Strike.

purchased in Irvine, California, from a different builder—Risewell Homes, Inc. / The New Home Company, and (3) Plaintiff's dispute with the City of Irvine (and its employees and contract City Attorneys) alleging violations of Plaintiff's civil rights by investigating him for possible verbal threats, interfering with his right to petition the government for redress by issuance of cease and desist letters, and failures to provide him public records.

Only the third of these disputes – Plaintiff's claims against the City employees and affiliates under Section 1983 – support Plaintiff's invocation of federal question jurisdiction.  Plaintiff relies on supplemental jurisdiction for his sole state-law claim against the Toll Brothers Defendants, arguing that the two disputes "form part of the same case or controversy under Article III of the United States Constitution."  SAC at 8:6-9.  The Court will therefore summarize Plaintiff's case first against the Toll Brothers Defendants and then his civil-rights claims against the City and its employees and attorneys.

A.    **Plaintiff's Dispute with the Toll Brothers Defendants**

Through approximately the first 72 pages of the SAC, Plaintiff sets forth a plethora of allegations concerning the Toll Brothers Defendants.  These include a detailed account of the corporate structure of the various "Toll Brothers" entities, their alleged non-compliance with licensing and permitting law with regards to construction projects performed in Colorado, the actions of a Colorado municipality in responding to that alleged non-compliance, the Toll Brothers Defendants' insurance coverage, consumer perception of their construction work, and their disclosures to the Securities and Exchange Commission.  Plaintiff even includes allegations about the tenure of various Toll Brothers employees and when the company's general counsel was licensed to practice law in Pennsylvania.  These allegations are seemingly copied from Plaintiff's responsive pleading in the ongoing litigation between Plaintiff and the Toll Brothers Defendants in the District of Colorado and pasted into his SAC here.  See, e.g., SAC at 12:10-14 ("All referenced

6

corporate registrations, recorded county documents, employee information, licenses and permits are matters of public record and can be judicially noticed.  If Plaintiffs dispute the accuracy of the attached copies, they are in possession of the true and correct versions and should provide them to the Court."); 13:13-14 ("According to the plaintiffs' complaint in Paragraph 25, this entity has received a number of accolades, stating that 'Toll Brothers has been listed among Fortune Magazine's Most Admired Companies in the World for eleven straight years.'").

None of the allegations over those dozens of pages have any relevance whatsoever to Plaintiff's claim against the Toll Brothers Defendants in this lawsuit. In summary, however, Plaintiff alleges that in February 2022, he entered into a contract to purchase a home in Wheat Ridge, Colorado from Toll Southwest LLC. Id. at 16:15-17:2.  After closing on that purchase, Plaintiff was unsatisfied with the quality of the construction and submitted warranty requests, letters under the Colorado Construction Defect Action Reform Act, and even a complaint to the Pennsylvania Bureau of Consumer Protection.  Id. at 32:9-34:11.  Without getting into further irrelevant (for purposes of this case) detail, suffice to say that Plaintiff was not satisfied with the responses he received to his construction-defect concerns.

None of that is what Plaintiff sues the Toll brothers Defendants for in this case.  When it comes to the actual claim Plaintiff brings against the Toll Brothers Defendants in this Court – for violation of California's Bane Act – Plaintiff alleges those Defendants did four things.  First, they sent Plaintiff a cease-and-desist letter on August 8, 2025, "regarding his entity registrations," which is the subject of the Colorado lawsuit between those Defendants and Plaintiff.  See SAC at 166:13-15; 38:6-8 (¶ 203); Ex. 73 (Doc. No. 130-3 at ECF p. 82).[6]  Second, they initiated the

---

[6]    Although Plaintiff alleges in his Bane Act claim, at page 166, lines 13-17 of the SAC, that "Beginning in May 2025 Defendants issued or orchestrated false and retaliatory accusations, including claims of trespass and harassment, resulting (cont'd . . .)

Colorado lawsuit, into which they incorporated details of "Plaintiff's California-based regulatory complaints against [the New Home Corporation] and Bert L. Howe & Associates, Inc."  SAC at 167:12-15.  Third, "Toll Brothers has previously retained the same outside counsel that represented [The New Home Company] in California, suggesting the exchange of information and alignment of strategy among related builder entities."  SAC at 168:4-6.  Finally, in the Colorado litigation, they alleged damages in excess of $75,000 in their Complaint but only sought less than $6,000 in costs against the nominal Defendants in that case, which Plaintiff alleges is indicative of a pattern of intimidation.  Id. at 169:9-15.

**B.      Plaintiff's Dispute with the City of Irvine and Associated Defendants**

In July 2025, Plaintiff contacted City of Irvine building official Jesse Cardoza to voice concerns over irregularities in construction permits issued to the Toll Brothers Defendants – including missing licensing information and the incorrect identification of what specific "Toll Brothers" entity was the permit holder.  See SAC at 95:2-18; Exs. 242-45, 254-55.  Unsatisfied with Mr. Cardoza's response that the inaccuracies were the product of clerical error, Plaintiff called the office of Irvine City Councilmember William Go on July 30, 2025.  See SAC at 100:2-3. Plaintiff spoke with Defendant Trinity Pham, an employee in the Councilmember's office, for approximately seven minutes concerning the alleged permitting violations and to voice his displeasure with the City's Building Department.  Id. at 100:2-10.

Later on July 30, 2025, Plaintiff received a phone call from Defendant Emma Olague, an Officer with the Irvine Police Department, concerning alleged

---

in at least eight cease-and-desist letters between May 27, 2025 and March 12, 2026," only the single August 8th letter regarding the alleged trademark registrations is alleged to have come from the Toll Brothers Defendants.  The rest of the letters referenced in that allegation were from other Defendants.  The cross-referenced allegations in paragraphs 563-591, 596, 703, and 868 each relate to the New Home Defendants.  Paragraphs 681 and 706 relate to the City Defendants and their attorneys.  And the cross-reference to paragraph 693 is to allegations against Defendant Bert L. Howe and Associates.

threatening remarks made by Plaintiff to Ms. Pham during the aforementioned phone call. Id. at 100:13-101:4. Plaintiff stated that he could not remember making such statements and insinuated that he felt intimidated by Officer Olague's telephone call to him. Id. at 101:5-8. The call ended shortly after and lasted approximately two minutes. Id. at 101:9-10. After further investigation, Officer Olague prepared a written report, which stated: "No crime could be substantiated. I notified IPD Intel via email and request that this incident report be forwarded to IPD Investigations for appropriate disposition." Id. at 120:4-121:13.

Plaintiff proceeded to make numerous attempts to contact several City officials – outside City Attorneys Melching and Sanders and City Chief of Staff Alvarez – for information regarding Ms. Pham and the July 30th phone call. Id. at 101:11-102:16. Plaintiff was not provided the information he requested. Id. at 102:8-16.

On August 5, 2025, City Attorney Sanders sent Plaintiff a letter on behalf of the City demanding that Plaintiff cease and desist all contact with City staff and offices because of what the City deemed to be an excessive number of California Public Records Act ("CPRA") requests that were disrupting City business, as well as the alleged harassment of Ms. Pham. Id. at 104:15-105:6; Ex. 217. The letter demanded that Plaintiff "immediately cease all direct contact with City staff and offices" except for public meetings and emergency situations. Id. at Ex. 217. The letter also noted, however, that Plaintiff could continue to exercise his rights pursuant to the CPRA, provided all requests were directed to the City Attorney's Office. Id.

After Defendant Sanders did not respond to Plaintiff's follow-up email, Plaintiff proceeded to email Irvine's Mayor, City Manager, and every member of the City Council asking for a basis for the cease-and-desist letter. SAC at 105:16-106:1; Ex. 259. None of these individuals responded. SAC at 106:3. Plaintiff then filed a claim for damages against the City in the amount of $5.7 million, which was

9

rejected.  Id. at 106:4-7; 107:3-4.  Plaintiff then sent an email to the Mayor and City Manager on August 20, 2025, "noting First Amendment harms," but neither official answered Plaintiff's email.  Id. at 107:5-9.

On August 25, 2025, City Attorney Sanders sent Plaintiff a second cease-and-desist letter following Plaintiff's repeated attempts to contact City employees directly.  SAC at 108:7-8.  The letter stated Plaintiff's behavior was disruptive and threatening, and reiterated that further communications to the City should be sent only to the City Attorney, who would transmit Plaintiff's comments and requests "to the relevant City parties as necessary and appropriate," though Plaintiff could continue to seek public records through the CPRA, submit emergency calls for service to the Police Department, and comment upon matters of public business (though the City Attorney's office), and attend public meetings.  Id. at 108:9-14; Ex. 227.  That letter also stated that "[f]ailure to comply with these directives will leave us with no choice but to consider further legal action to protect the City's interests, including instituting legal action against" Plaintiff.  SAC at 108:15-17.  Plaintiff promptly sent another email directly to the Mayor and City Manager about this August 25th cease-and-desist letter.  Id. at 109:1-2; Ex. 228.  He received no response, at least as of September 9, 2025.  SAC at 109:4.  In October 2025, Plaintiff also called the City's Human Resources Department, Officer Olague, Detective Blevins, and Officer Rakic directly, but received no response.  Id. at 126:1-18.

Plaintiff continued to make several CPRA requests to the City –including requests for further information about the July 20th phone call and for police body worn camera footage from the investigation into it – which were denied by the City.  SAC at 127:1-128:9.

**4.     LEGAL STANDARD**

A party may move to dismiss a complaint for a lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited

jurisdiction, possessing "only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  "It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  Id.  (citations omitted).  In addition, "Federal courts are required sua sponte to examine jurisdictional issues …."  Bernhardt v. Cnty. of Los Angeles, 179 F.3d 862, 868 (9th Cir. 2002).  If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

The Constitution empowers Congress to give federal courts jurisdiction over different categories of subject matter, including cases arising under federal law. U.S. Const., art. III, § 2, cl. 1.  Congress has exercised this power by pronouncing that "[t]he district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; see also Louisville & Nashville R. Co v. Mottley, 211 U.S. 149, 152 (1908) (holding that a claim "arises under" federal law under Section 1331 "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]").

Congress has also given the federal district courts supplemental jurisdiction under 28 U.S.C. § 1367(a) over all claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  State-law claims "form part of the same case or controversy" as a federal claim "when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."  Kuba v. 1-A Agr. Ass'n, 387 F.3d 850, 855 (9th Cir. 2004) (quotation omitted).

11

**5.   DISCUSSION**

**A.   This Court Lacks Subject-Matter Jurisdiction Over Plaintiff's State-Law Claim Against the Toll Brothers Defendants**

There is no question that this Court has original jurisdiction over Plaintiff's Section 1983 claims under 28 U.S.C. § 1331, as those claims arise under federal law.  The Toll Brothers Defendants are not named in those federal claims, however.  The Toll Brothers Defendants are named only in Plaintiff's state-law claim for violation of California's Bane Act.  This Court thus has jurisdiction over Plaintiff's Bane Act claim against the Toll Brothers Defendants only if it is so related to the Section 1983 claims that it is part of the same case or controversy as those Section 1983 claims.  The Toll Brothers Defendants move to dismiss Plaintiff's claim against them, arguing that it "does not arise from a common nucleus of operative fact with Plaintiffs federal claims against the other defendants in this action, as required by 28 U.S.C. § 1367(a)."  Not. of Mot. to Dismiss (Doc. No. 149) at ECF 2:10-14.  Plaintiff, in response, argues that there is a "deep, interconnected nucleus of operative facts shared between the federal and state claims[.]"  Opp'n. (Doc. No. 156) at 9:6-12.

"While precedent requires the Court to evaluate whether the claims arise from the 'same case or controversy,' the Ninth Circuit does not provide a determinate definition of what constitutes a 'common nucleus of operative fact.'" iSpot.tv, Inc. v. Teyfukova, No. 2:21-cv-06815-MEMF (MARx), 2023 WL 1967958, at *6 (C.D. Cal. Jan. 25, 2023) (citing Virgina A. Phillips & Karen L. Stevenson, The Rutter Guide, Federal Civil Procedure, Calif. & 9th. Cir. Eds. (the "Rutter Guide") ¶¶ 2:860-2:863 (Apr. 2022 update)).  As a result, federal district courts in the Ninth Circuit have set forth a variety of different formulations and considerations.  See Carne v. Stanislaus Cnty. Animal Servs. Agency, 445 F.Supp.3d 772, 775 (E.D. Cal. 2020) (collecting cases summarizing how courts in the Ninth Circuit determine whether there is a common nucleus of operative fact).  Some courts consider:

"(1) when the facts are related in time, space, origin or motivations; (2) when the facts form a convenient trial unit; and (3) when treating the facts as a unit would conform to the parties' expectations." St. Paul Mercury Ins. Co. v. Del. Webb. Cal. Corp, No. CV 16-0209 PSG (SPx), 2017 WL 7661491, at *3 (C.D. Cal. Nov. 7, 2017) (citing Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 584 (1st Cir. 1995)).  Other courts consider more generally "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." Landy v. Pettigrew Crewing, Inc., No. 2:19-cv-07474-RGK-AFM, 2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019) (quoting Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996)).  For these courts, "[e]ven a 'loose factual connection between the claims is generally sufficient.'" U.S. Chess Fed'n, Inc. v. Polgar, No. C 08-05126 MHP, 2009 WL 981257, at *3 (N.D. Cal. Apr. 13, 2009) (quoting Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995)).  Additionally, some courts have found that "there is no common nucleus of operative fact if there is no evidentiary overlap between the claims." Lei v. City of Lynden, No. C14-0650-JCC, 2014 WL 6611382, at *4 (W.D. Wash. Nov. 20, 2014) (citation and internal quotation marks omitted).  "What remains true across all approaches, however, is that the Court is required to conduct an analysis of the plaintiff's alleged facts to determine whether there is sufficient overlap between the claims asserted, the facts alleged, and the potential evidence required to establish the need for supplemental jurisdiction." iSpot.tv, 2026 WL 1967958, at *6 (citing Rutter Guide ¶¶ 2:860-2:863).

Here, no common nucleus of operative facts exists between Plaintiff's Bane Act claim against the Toll Brothers Defendants on the one hand and his Section 1983 federal claims against the City, its employees, and attorneys on the other hand.  "The first and most obvious observation is that the two claims are different claims against different defendants.  This observation alone militates against supplemental jurisdiction, because the separateness of the sets of claims decreases the degree of commonality of operative facts." Bafford v. Northrop Grumman

13

Corp., No. 2:18-cv-10219-ODW (Ex), 2022 WL 1002350, at *7 (C.D. Cal. Apr. 4, 2022).  Plaintiff's federal claims all arise from the allegedly unconstitutional actions of the City of Irvine and its employees and outside counsel.  Plaintiff's Fourth Amendment claim is based on Officer Olague's alleged "constructive seizure" of him by calling him to investigate a possible criminal threat against Defendant Pham and subsequent investigative activities, as well as alleged "false statements" made by City employees as part of that investigation.  SAC at 140:17-150:2.  His First Amendment claim alleges a deprivation of Plaintiff's right to petition the government for redress of grievances by the City Attorneys' issuance of cease-and-desist letters directing that Plaintiff stop communicating directly with City staff, and instead direct communications to the City through the City Attorneys' office, as well as statements allegedly made in Officer Olague's investigation noted above. Id. at 150:6-155:13.  Plaintiff's due process claim is based on the same police investigation, cease-and-desist letters from the City Attorney, the City's responses (or failures to respond) to Plaintiff's requests for public records from the City, as well as the City's rejection of his claim for damages.  Id. at 155:17-165:17.  Finally, Plaintiff's Section 1983 claim for "Denial of Access to the Courts" is based on denials the City made in its Answer to Plaintiff's First Amended Complaint in this case, responses to his public-records requests, and alleged failure to preserve Officer Olague's body-worn camera video from the investigation he complains about.  Id. at 172:9-177:4.

By contrast, Plaintiff's state-law Bane Act claim against the Toll Brothers Defendants is based on (1) those the Toll Brothers Defendants' cease-and-desist letter about trademark infringement (SAC at 166:14-15, 38:6-8, and Ex. 73), (2) their initiation of the trademark-infringement lawsuit in the District of Colorado, into which they included allegations about Plaintiff's California-based regulatory complaints against the New Home Defendants and Bert L. Howe and Associates (SAC at 167:13-16), (3) their prior retention of outside counsel who also

14

represented TNHC in California (SAC at 1684-6), and (4) their allegation of damages in the Colorado lawsuit far in excess of what they subsequently sought in a default prove-up (SAC at 169:10-15).

None of these factual bases for Plaintiff's Bane Act claim against the Toll Brothers Defendants have anything to do with the factual bases of Plaintiff's federal Section 1983 claims in this case.  The prove-up of Plaintiff's federal claims will involve different facts and different witnesses, and will apply different law than the Bane Act claim against the Toll Brothers Defendants.  The evidentiary overlap, if there is any, does not pertain to operative facts for the respective legal claims, such that no convenient trial unit exists.  This is made abundantly clear the through hundreds, if not thousands, of pages and exhibits in the SAC setting forth countless facts indicating that Plaintiff's dispute with the Toll Brothers Defendants over the home he purchased from them (and the resulting tit-for-tat between them) predates and is separate from any dispute with the City based on the City's actions in response to Plaintiff's complaints and inquiries to the City.

Plaintiff attempts in his Opposition to identify a common nucleus of operative fact by arguing that "the Toll Brothers explicitly leveraged Plaintiff's regulatory and petitioning activities in California involving Risewell Homes, Inc. [formerly known as, and often referred to in the SAC as TNHC] … to form the baseline of their [Colorado] claims."  Opp'n. at 5:9-12.  Such argument fails to show the necessary link between Plaintiff's state-law claim against the Toll Brothers Defendants and his Section 1983 claims against the City Defendants and City Attorneys.  Any reference in the Colorado litigation to Plaintiff's interactions with Risewell/TNHC is immaterial to the question of whether the Bane Act claim arises from a common nucleus of facts as Plaintiff's Section 1983 claims which concern his interactions with the City of Irvine (of which the Colorado complaint makes no mention).  Moreover, Plaintiff fails to cite any legal authority supporting the proposition that merely mentioning an otherwise unrelated dispute in a pleading

15

creates a common nucleus of operative fact.  The Toll Brothers Defendants' reference in the Colorado litigation to Petitioner's unrelated dispute with Risewell/TNHC to buttress their contention that Plaintiff has exhibited a pattern of vexatious litigation does not mean that Petitioner's state-law claim here against the Toll Brothers Defendants arises from the same core set of facts as his federal Section 1983 claims against the City Defendants and City Attorneys.

Plaintiff's Bane Act case against the Toll Brothers Defendants is, quite simply, not the same "case or controversy" as his Section 1983 case against the City, its employees, and its outside counsel over which this Court has original jurisdiction under 28 U.S.C. § 1331.  Therefore, whatever the merits of Plaintiff's claim against the Toll Brothers Defendants, this Court lacks subject-matter jurisdiction to consider that claim.  Thus, Plaintiff's Bane Act claim against the Toll Brothers Defendants (the only claim alleged against them) must be dismissed.

## B.    Further Leave to Amend is Not Appropriate

The sole remaining issue on this motion to dismiss is whether it should be granted with, or without, leave to amend.  Where, as here, the defendant makes a facial attack on subject-matter jurisdiction via Rule 12(b)(1), a court can grant the plaintiff leave to amend to attempt to cure the defects in establishing jurisdiction. See Karen L. Stevenson & James E. Fitzgerald, Rutter Practice Guide – Fed. Civ. P. Before Trial ¶ 9:109.5 (Cal. and 9th Cir. Ed., Apr. 2025 update); see also 28 U.S.C. § 1653.  A Court must give a pro se litigant leave to amend the complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."  Karim-Panahi, 839 F.2d at 623 (internal quotation marks omitted); see also Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  (internal quotations omitted)).

16

Where a plaintiff has previously been granted leave to amend, however, and subsequently fails to remedy the deficiencies in his or her pleading in an amended complaint, the District Court's authority to deny further leave to amend is "particularly broad."  See Nguyen v. Endologix, Inc., 962 F.3d 405, 420 (9th Cir. 2020) (quoting Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009)).  That is the situation here.  The issue of this Court's subject-matter jurisdiction over Plaintiff's Bane Act claim against the Toll Brothers Defendants was at issue and fully briefed with those Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.  See Doc. Nos. 86, 91, 93, 96.  Before the Court could rule on that issue, Plaintiff sought and obtained leave to file a Second Amended Complaint. In preparing his Second Amended Complaint, Plaintiff knew what the arguments were against subject-matter jurisdiction over his claim against the Toll Brothers Defendants.  Plaintiff nevertheless failed to cure that defect in his Second Amended Complaint, for the reasons discussed above.  Tellingly, Plaintiff does not request in his Opposition to this Motion further leave to amend, or argue that there is anything he could do to cure the lack of subject-matter jurisdiction if given leave to file a Third Amended Complaint.  It is therefore clear that Plaintiff has made his best case as to subject-matter jurisdiction, albeit unsuccessfully. Accordingly, it is recommended that this dismissal be without further leave to amend.

**6.    RECOMMENDATION**

For the foregoing reasons, the Court recommends that the Toll Brothers Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Doc. No. 149) be **GRANTED** without further lave to amend in this Court, and that

///

///

///

///

17

Defendants Toll Brothers, Inc, Toll Southwest, LLC, and TB Proprietary Corp. therefore be **DISMISSED** from this case, without prejudice to Plaintiff's ability to pursue his claim against them in a court having subject-matter jurisdiction over it.

DATED: August 10, 2026    _____

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number.  Under Local Rule 72-3.4, any objection to this Report and Recommendation must be filed within fourteen (14) days.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.