IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02884-PAB-CYC

TOLL BROTHERS, INC., a Delaware Corporation, et al.,

Plaintiffs,

v.

JEFFREY GU, an individual, et al.,

Defendants.

JEFFREY GU, an individual,

Counterclaim Plaintiff,

v.

TOLL BROTHERS, INC., a Delaware Corporation, et al.,

Counterclaim Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Cyrus Y. Chung, United States Magistrate Judge**.

In 2022, counterclaim plaintiff ("the plaintiff") Jeffrey Gu purchased a Toll Brothers townhome in Wheat Ridge, Colorado. He later raised concerns about alleged construction defects in the home. Finding Toll Brothers' responses unsatisfactory, he created a number of entities with names similar to Toll Brothers, their subsidiaries, and affiliated entities. Three Toll Brothers entities sued him for trademark infringement, ECF No. 1, and the plaintiff answered and counterclaimed, alleging nine causes of action against the three original Toll Brothers plaintiffs and ten third-party defendants (collectively, "the defendants"). ECF No. 17. The defendants collectively filed seven motions to dismiss, ECF Nos. 96, 106, 125, 129, 140, 142, 145, and one

motion to compel arbitration in the alternative, ECF No. 132. Because all of the plaintiff's causes of action are barred on jurisdictional grounds or fail to state a cognizable claim, the Court recommends **GRANTING** ECF Nos. 96, 106, 125, 129, 142, and 145, **DENYING** ECF Nos. 132 and 140 as moot, and **DISMISSING** the counterclaims.

## BACKGROUND

For the purposes of this motion, the Court accepts the plaintiff's well-pleaded factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. The plaintiff buys a Toll Brothers home

Toll Brothers is a publicly traded company that builds and sells luxury homes in twenty-four states. ECF No. 1 ¶¶ 24–25; ECF No. 17, Answer, ¶¶ 24–25.[1] Like many large companies, Toll Brothers consists of a parent company, defendant Toll Brothers, Inc., and numerous subsidiaries and affiliated entities. *See, e.g.*, ECF No. 17 ¶¶ 4, 26, 36, 48, 247, 258, 265, 267–69, 273–74; ECF No. 19-1 at 170–187, 255–260.[2] Defendant Toll Southwest LLC ("Toll Southwest"), incorporated in Delaware and registered as a foreign corporation in Colorado, is one such subsidiary. ECF No. 17 ¶¶ 37, 265, 267; ECF No. 18-1 at 44, 46. Defendant TB Proprietary Corp., which owns Toll Brothers' registered service marks, is another. ECF No. 17 ¶¶ 247, 251–53.

[1] ECF No. 17 includes the plaintiff's answer and counterclaim complaint ("the complaint"). When citing to the numbered paragraphs in the answer portion, this Recommendation specifically cites to "ECF No. 17, Answer." All other citations to numbered paragraphs in ECF No. 17 refer to the counterclaim complaint.

[2] The plaintiff appended 201 exhibits spanning 1,486 pages to his counterclaim complaint. ECF Nos. 18, 19, 20, 21. Throughout this Recommendation, citations to these exhibits are denoted by the ECF document number and corresponding page number that appears at the top of the page.

In early 2022, the plaintiff received emails advertising townhomes for a Toll Brothers development in Wheat Ridge. ECF No. 17 ¶¶ 1, 8; ECF No. 18-1 at 2–3, 15–19. These emails were sent from a domain name registered to Toll Brothers, Inc. and copied sales representatives employed by the same entity. ECF No. 17 ¶¶ 2–3, 8–11, 13, 17; ECF No. 18-1 at 2–3, 15–19. In response to these solicitations, the plaintiff submitted offers on two planned but as yet unbuilt townhomes in the development. ECF No. 17 ¶¶ 27–29; ECF No. 18-1 at 31–32.

On February 12, 2022, the plaintiff signed an agreement to purchase one townhome in the development from Toll Southwest, which is listed in the agreement as the "Seller." ECF No. 17 ¶¶ 34–35; ECF No. 18-1 at 34–42. The same day, the plaintiff paid $33,475 in earnest money to another Toll Brothers entity, Toll Bros., Inc. ECF No. 17 ¶ 46; ECF No. 18-1 at 57.

During construction, the plaintiff's independent inspector noted a number of deficiencies in a September 12, 2022 report, ECF No. 17 ¶¶ 74–75; ECF No. 18-1 at 134–65, and the plaintiff raised some of these concerns in an email with a Toll Brothers sales representative. ECF No. 18-1 at 167–183. A few weeks later, the plaintiff observed deficiencies in the electrical system and some of the wall studs, ECF No. 17 ¶¶ 96–110, 116–17; ECF No. 18-1 at 196, 198, 200, 202, 204, 210; however, there is no allegation that he communicated these concerns to Toll Brothers or defendant City of Wheat Ridge ("the City"). Inspectors for the City, and its subcontractor, defendant Charles Abbott & Associates ("CAA"), completed inspections for the home's electrical system, walls, and drywall without noting any deficiencies, ECF No. 17 ¶¶ 87–89, 94–95, 111–15, 118; ECF No. 18-1 at 192, 194, 209, and the City's Chief Building Official, defendant Renee Meriaux, a CAA employee, subsequently issued a certificate of occupancy for the home, certifying "that the building constructed . . . does comply with the Wheat Ridge

Building Code," and was approved for its intended use as a single-family residence. ECF No. 17 ¶ 123; ECF No. 18-1 at 206.

The plaintiff closed on the home on January 19, 2023. ECF No. 17 ¶ 119; ECF No. 18-1 at 212–18. As with the purchase agreement, the closing disclosure listed the "Seller" as Toll Southwest, ECF No. 17 ¶ 120; ECF No. 18-1 at 213, and Toll Southwest conveyed the property to the plaintiff in a special warranty deed. ECF No. 17 ¶¶ 142–43; ECF No. 18-1 at 230–31 .

**2. The plaintiff submits claims and investigates Toll Brothers**

In 2023 and 2024, the plaintiff sent multiple warranty requests to Toll Brothers regarding problems with his home. ECF No. 17 ¶¶ 162–168; ECF No. 19-1 at 11, 14, 18, 21. Toll Brothers denied some of these requests as "beyond the scope of the warranty," ECF No. 17 ¶ 166; ECF No. 19-1 at 16, 19; ECF No. 20-1 at 140–44, but at least on one occasion, offered to conduct an on-site inspection. ECF No. 19-1 at 22; ECF No. 20-1 at 140–44.

In June 2025, pursuant to Colorado law, the plaintiff sent Toll Brothers, Inc. two formal notices of claim regarding structural defects in his townhome as precursors to a potential lawsuit. ECF No. 17 ¶¶ 169–173; ECF No. 19-1 at 27–28, 30–31; *see* Colo. Rev. Stat. § 13-20-803.5. Toll Brothers' in-house counsel responded in a letter reviewing some of the plaintiff's prior warranty requests and Toll Brothers' responses and, on behalf of Toll Brothers, "explicitly request[ing] permission to view any known issues in [the plaintiff's] home." ECF No. 19-1 at 66–67. It is unclear from the complaint whether the plaintiff thereafter allowed an inspection, but the defects were not resolved. ECF No. 17 ¶ 174.

Around this same time, the plaintiff began his own investigation of the Toll Brothers corporate structure. Among other activities, the plaintiff contacted numerous Toll Brothers executives and employees to ask for which particular entity they worked, ECF No. 17 ¶¶ 183–84,

199–201, 439–61, researched them through LinkedIn, Toll Brothers, Inc.'s annual reports, and other internet resources, *id.* ¶¶ 194, 409–16, 420, 422, 424, 427–28, 431, 434, 440, 466–70, obtained and reviewed filings made by Toll Brothers entities in various states, *id.* ¶¶ 4, 23–26, 36–38, 48, 146, 158, 245–74, and compared the licenses, certificates of insurance, and statements of authority for Toll Brothers on file with different Colorado counties, *id.* ¶¶ 275–293. He found, for instance, that defendant Marsh USA LLC ("Marsh USA") issued certificates of insurance naming different Toll Brothers entities as the insured and providing different policy limits under the same policy number. *Id.* ¶¶ 294–303; ECF No. 19-1 at 279–80; ECF No. 20-1 at 15–16, 18–19, 21–22, 24–25, 27–28, 30–31, 33–34.

As part of his investigative efforts, the plaintiff also contacted many outside entities to seek information about Toll Brothers. He contacted executives for defendant Felten Group, who served as the engineering firm on the project, but they declined to provide the structural plans or to indicate with which particular Toll Brothers entity Felten Group contracted. *Id.* ¶¶ 177–82; ECF No. 19-1 at 41–45. He also had numerous communications with City employees about Toll Brothers' contractor's license, certificate of insurance, and subdivision improvement agreement. ECF No. 17 ¶¶ 204–232; ECF No. 19-1 at 85–89, 93–95, 97–110, 112–23, 125–28. In an email, he requested that the City "[a]cknowledge" that the Toll Brothers license was improperly issued, "[c]larify" whether the City intended to "revoke, amend, or re-issue" related permits, and to "[p]rovide a written explanation of how this irregularity will be addressed" to protect homeowners. ECF No. 17 ¶ 229; ECF No. 19-1 at 125–28.

The City responded to a number of the plaintiff's communications, *see* ECF No. 19-1 at 86–89, 93–95, 97–107, but on July 1, 2025, Meriaux informed him that "the City is not required to assist" in his research of Toll Brothers, and that she would "not continue to follow up on [his]

questions as [he] pursue[s] his efforts vis-à-vis the contractor/builders." ECF No. 17 ¶¶ 204, 207; ECF No. 19-1 at 86. On July 10, 2025, the City Attorney, defendant Gerald Dahl, also told the plaintiff that "the City has no need to enquire" about the Toll Brothers corporate structure and "must decline to research on [his] behalf." ECF No. 17 ¶ 223; ECF No. 19-1 at 102. Dahl repeated this message upon continued inquiries from the plaintiff, *see* ECF No. 19-1 at 106, 112, 126, and on September 12, 2025, he sent the plaintiff a letter reiterating that the City would not "join in research, assist or take independent action with respect to the Toll Brothers entities," and informed him that, at Dahl's direction, City staff would request all his future communications be made in writing. ECF No. 19-1 at 134–35. Dahl added that "your contacts have become increasingly frequent and repetitive, and City staff have the right to be free from harassment." *Id.* at 135. Both Meriaux and Dahl emphasized that the City would continue to respond to open records requests as required by law, *id.* at 85, 135, and the City did so. *Id.* at 137–44, 269–73.

Meanwhile, the plaintiff filed a complaint against Toll Brothers with the Colorado Real Estate Commission ("the Commission"), claiming that Toll Southwest improperly sold him the home without a licensed real estate broker because that Toll Brothers entity did not construct the home or have its "officers, partners, or regularly salaried employees," as permitted under a statutory provision, sell him the home. ECF No. 17 ¶ 141; ECF No. 18-1 at 228; *see* Colo. Rev. Stat. § 12-10-201(6)(b)(X). The Commission responded that its "review of the information and materials provided does not suggest that a license law violation has taken place." ECF No. 18-1 at 228.

On July 22, 2025, the plaintiff registered seven entities with the Colorado Secretary of State using some iteration of the name "Toll," "TB," or "Toll Brothers," registered a limited liability company in Wisconsin named "Toll Southwest LLC," and filed articles of incorporation

in Florida for two similarly-named entities. ECF No. 1 at ¶¶ 31, 37–38; ECF No. 17, Answer, ¶¶ 31, 37–38. Two weeks later, Toll Brothers, Inc. sent the plaintiff a cease-and-desist letter demanding that he immediately "dissolve the entities." ECF No. 19-1 at 82; ECF No. 17 ¶ 203. The plaintiff did not do so, ECF No. 1 ¶ 54; ECF No. 17, Answer, ¶ 54, and on September 12, 2025, Toll Brothers filed suit against the plaintiff and the Colorado and Wisconsin entities for trademark infringement and related causes of action. ECF No. 1.

**3. The plaintiff has a dispute with another homebuilding company**

Around the same time as the plaintiff was investigating Toll Brothers, he was embroiled in another conflict with a different homebuilder, defendant Risewell Homes Inc., formerly known as The New Home Company ("TNHC"), and its independent contractor, defendant Bert L. Howe & Associates, Inc. ("BHA"). ECF No. 17 ¶¶ 351–78. Like Toll Brothers, TNHC is composed of a parent company and various subsidiaries and affiliated entities. *Id.* ¶¶ 471–73.

In 2024, the plaintiffs' parents bought a TNHC home in Irvine, California. *Id.* ¶¶ 351-52; ECF No. 20-1 at 106–111. The next year, the plaintiff made numerous warranty requests to TNHC on their behalf and, subsequently, sent TNHC notice of claim letters for construction defects under California law. ECF No. 17 ¶¶ 360–62. He also submitted complaints against TNHC and its subsidiaries to the California Department of Real Estate, California State License Board, and TNHC's bond companies. *Id.* ¶¶ 372–73; ECF No. 20-1 at 120. TNHC hired BHA to investigate the plaintiff's construction defect claims, and the plaintiff also filed "various complaints" against BHA to California state agencies. ECF No. 17 ¶ 376. As with Toll Brothers, the plaintiff contacted TNHC employees to ask them for what entity they worked, *id.* ¶¶ 462–65; ECF No. 21-1 at 152, 154, researched TNHC officers online, ECF No. 17 ¶¶ 475–77, 492, 494; ECF No. 21-1 at 171–74, 177, 249, 253–56, and reviewed the companies' licenses, registrations,

and public disclosures. ECF No. 17 ¶¶ 471–74, 478–91, 493, 497–504; ECF No. 21-1 at 165, 167, 169, 179, 181–82, 184, 186, 188, 192–207, 209, 251, 258–72, 274–90, 292–557. He also went to a TNHC worksite and took pictures, ECF No. 17 ¶¶ 363–67; ECF No. 20-1 at 373, 375; ECF No. 21-1 at 2, and according to BHA, the plaintiff's brother tried to enter its closed corporate headquarters on one occasion "by attempting to defeat the key fob security features." ECF No. 20-1 at 137. Finally, on August 2, 2025, the plaintiff formed an entity in Colorado titled the "The New Home Company Inc." ECF No. 1 ¶ 47; ECF No. 17, Answer, ¶ 47.

Referencing these actions and others, TNHC sent the plaintiff four cease-and-desist letters, ECF No. 17 ¶¶ 364, 374; ECF No. 20-1 at 113–115, 122–23, 125–31, 133–34, and BHA sent him one, ECF No. 17 ¶ 377; ECF No. 20-1 at 136–38. The Toll Brothers entities' complaint against the plaintiff contains allegations regarding his conflict with TNHC and BHA although they were not originally parties to this action. ECF No. 1 ¶¶ 45–52. The plaintiff alleges, and for the purposes of this Recommendation, the Court accepts, that TNHC and BHA shared information with Toll Brothers regarding their conflict with the plaintiff. ECF No. 17 ¶ 514.

After the Toll Brothers entities filed their trademark suit, the plaintiff filed counterclaims against Toll Brothers, Inc., TB Proprietary Corp., Toll Southwest, the City, CAA, Meriaux, Dahl, TNHC, Felten Group, TNHC, BHA, Marsh USA, and its parent companies, Marsh & McLennan Companies, Inc. ("MMC") and Marsh LLC. The defendants' motions to dismiss followed.

## ANALYSIS

The plaintiff brings nine causes of action: (1) a claim for declaratory judgement against the Toll Brothers defendants; (2) "fraudulent inducement" against the Toll Brothers defendants; (3) "civil conspiracy" against all defendants; (4) "deceptive trade practices" against the Toll Brothers defendants; (5) "breach of statutory duty" against the City, Dahl, Meriaux, and CAA;

(6) "abuse of process" against the Toll Brothers defendants, TNHC, and BHA; (7) "negligence" against the City, Meriaux, and CAA; (8) violation of the First Amendment against the City, Dahl, Meriaux, and CAA; and (9) violation of the Fourteenth Amendment against the City, Dahl, Meriaux, and CAA. ECF No. 17 at 69–95.

For the reasons that follow, claims one, two, and four should be dismissed for lack of subject matter jurisdiction, as should claims three, five, and seven with respect to the City and Dahl; claim three should be dismissed as to defendants MMC and Marsh LLC on personal jurisdiction grounds; and all of the plaintiff's remaining claims against the remaining defendants should be dismissed for failure to state a claim.

The Court addresses each claim in turn.

**1. <u>Declaratory Judgment (Claim One)</u>**

The plaintiff brings his first claim under the Declaratory Judgment Act ("DJA"), which provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). He asks for declarations that: (1) the Commission's position statement ("CP-1"), ECF No. 18-1 at 226, exempting certain individuals or entities selling real property in Colorado without a real estate license from using Commission-Approved Forms does not apply to his home purchase, and (2) the Toll Brothers defendants "violated Colorado's real estate licensing statutes by marketing, contracting, and conveying the property without a licensed broker." ECF No. 17 at 70.

To bring a claim under the DJA, a plaintiff must clear two hurdles. "First, a declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy

requirement." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). Second, even if the case-or-controversy requirement is satisfied, "district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." *Id.* Here, the plaintiff's claim fails at the first step.

Although the defendants bring their motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, whether a request for declaratory judgment presents a "justiciable case or controversy" is also a question of subject matter jurisdiction. *United Fin. Cas. Co. v. Rocha*, 726 F. Supp. 3d 1295, 1300–01 (D.N.M. 2023). In every proceeding, a federal court "must . . . satisfy itself" that subject matter jurisdiction exists, even if it is not raised by the parties. *Tafoya v. U.S. Dep't of Just., Law Enf't Assistance Admin.*,748 F.2d 1389, 1390 (10th Cir. 1984). As a threshold matter, then, a party seeking "a declaratory judgment must demonstrate that it has met the predicate case-or-controversy requirements of Article III standing," which, in turn, consists of three criteria: (1) it has suffered "an injury in fact—an invasion of a legally protected interest" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Rocha*, 726 F. Supp. 3d at 1301; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (describing these three elements as "the irreducible constitutional minimum of standing").

The plaintiff has not satisfied these three elements, and accordingly, has not established the Article III standing necessary for a case or controversy capable of adjudication under the DJA. *See Russell v. Fin. Cap. Equities*, 158 F. App'x 953, 956 (10th Cir. 2005) (affirming dismissal of declaratory judgment claim where plaintiff lacked constitutional standing).

First, and most fundamentally, the plaintiff has not shown an injury-in-fact. He does not articulate how buying a home from a Toll Brothers subsidiary, Toll Southwest, as opposed to the parent company, has harmed him in any "concrete and particularized" way. *Lujan*, 504 U.S. at 560. He does not claim, for instance, that Toll Brothers refused to service his home's warranty or respond to his notice of defect claims as required under Colorado law. Indeed, he acknowledges that Toll Brothers requested permission to perform an inspection in response to his notices. ECF No. 17 ¶ 198. Although a court must construe a pro se plaintiff's pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)), it "will not supply additional factual allegations to round out" the complaint "or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). Under these standards, the plaintiff has failed to demonstrate an injury-in-fact.

Second, even if there were some injury, the plaintiff has not shown that it is "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560). Construed liberally, the gravamen of his declaratory judgment claim is that Toll Southwest could not sell his home under the "homebuilder" exception for real estate sales conducted by non-real estate brokers, *see* Colo. Rev. Stat. § 12-10-201(6)(b)(X), because it was not a "genuine builder[ ] acting through [its] own officers and employees." ECF No. 17 at 70. By the same token, he alleges that Toll Southwest was not exempt under CP-1 from using Commission-Approved Forms for the transaction. But even assuming the truth of these propositions, the plaintiff does not explain how buying a home from

an entity improperly relying on the "homebuilder" exception to brokered real estate transactions or using non-standard forms caused his injury. *Spokeo*, 578 U.S. at 338.

Third, and finally, the plaintiff has not shown that his injury is redressable by judgment in his favor. *See Lujan*, 504 U.S. at 556. "It is not the role of federal courts to resolve abstract issues of law. Rather, they are to review disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011). Thus, "Article III has long been interpreted as forbidding federal courts from rendering advisory opinions." *Id.* Here, the plaintiff's requested declarations would have no "practical consequences to the conduct of the parties." *Id.* The legislature expressly vested the Commission with the power to investigate and penalize violations of Colorado's real estate licensing law, Colo. Rev. Stat. § 12-10-217, and where "a statute expressly provides a remedy, courts must be chary of reading others into it." *Holer v. Moore & Co.*, 681 P.2d 962, 965 (Colo. App. 1983) (citing *Transam. Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979)). The plaintiff points to no authority that would permit the recission of his home purchase or provide any other remedy he seeks upon declarations that his transaction was not covered by CP-1 or Colo. Rev. Stat. § 12-10-201(6)(b).

Because the plaintiff has not shown the existence of a justiciable case or controversy, a jurisdictional issue, his DJA claim should be dismissed without prejudice. *See Butts v. Colorado*, 25-cv-00990-NYW-SBP, 2026 WL 878771, at *5 (D. Colo. Mar. 31, 2026) (citing *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006)). Nevertheless, the plaintiff may be precluded from relitigating the standing issue in a future action. *Brereton*, 434 F.3d at 1218–19.

**2. <u>Fraudulent Inducement (Claim Two)</u>**

For his second claim, the plaintiff alleges that the Toll Brothers defendants "knowingly misrepresented or concealed material facts . . . inducing [him] to enter into the Agreement of

Sale and close on the property under false pretenses and to his material detriment," ECF No. 17 at 71, and are therefore liable for false representation under state law.

As with his first claim, the plaintiff does not establish an injury-in-fact, a necessary element of jurisdictional standing. *See Tafoya*, 748 F.2d at 1390. Although the plaintiff states that "the physical problems" with his Toll Brothers home "are noteworthy," he specifically disclaims that this is a construction defect action or that he is "suing for damages for the structural issues cited in the instant litigation[.]" ECF No. 127 at 2–3. Instead, he frames the central harm as the fact that he entered into a contract to buy a Toll Brothers home in the first place. He asserts that "had [he] known that he was not truly contracting with Toll Brothers, Inc,—despite every outward indication to the contrary—he would not have proceeded with the Agreement of Sale under the same terms, or possibly at all," and "would have sought to negotiate different terms, exercised greater due diligence, and verified the licensing of the true counterparty." ECF No. 17 at 75.

Putting aside that the sale agreement, closing disclosure, and deed all clearly identify the home's "Seller" as "Toll Southwest LLC," ECF No. 18-1 at 34, 213, 230, whether the plaintiff would have bought the home and on what terms if he had greater insight into Toll Brothers' corporate structure, business practices, and licensing does not constitute a cognizable injury. "A concrete injury must be *de facto*; that is, it must actually exist; it must be real, not abstract." *Irvine v. I.C. Syst., Inc.*, 198 F. Supp. 3d 1232, 1236 (D. Colo. 2016) (quotation marks omitted). Because the plaintiff's asserted injury is fundamentally abstract—a claim about what he would have done differently rather than how he has been concretely and particularly harmed—he does not have constitutional standing. His second claim should be dismissed without prejudice for lack of subject matter jurisdiction. *Brereton*, 434 F.3d at 1216.

3. **<u>Civil Conspiracy (Claim Three)</u>**

The plaintiff next alleges that all defendants engaged in a civil conspiracy to "induce consumers, including [him], to enter into property transactions under false pretenses, while denying access to recourse mechanisms intentionally obscured by interlocking layers of legal and administrative deceit." ECF No. 17 at 75; *id.* at 75–83. This claim should be dismissed for lack of subject matter jurisdiction with respect to the City and Dahl, lack of personal jurisdiction with respect to MMC and Marsh LLC, and for failure to state a claim with respect to the remaining defendants.

a. **The City and Dahl are shielded by governmental immunity**

The Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-106(1), "provides immunity to public entities in claims for injuries that lie or could lie in tort but waives this immunity in certain limited circumstances." *Maphis v. City of Boulder*, 504 P.3d 287, 291 (Colo. 2022). Public employees are also immune from liability under the CGIA for torts which arise out of their official acts and omissions "unless the act or omission causing such injury was willful and wanton." Colo. Rev. Stat. § 24-10-118(2)(a). Immunity under the CGIA "deprives courts of subject matter jurisdiction over those claims," *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n*, 551 P.3d 655, 658 (Colo. 2024), and plaintiffs bear the burden of showing "that a defendant's actions fall outside" the CGIA's protections. *McKenzie v. City & Cnty. of Denver*, No. 21-cv-00833-PAB-STV, 2023 WL 5488465, at *8 (D. Colo. July 21, 2023).

The City and Dahl are immune to suit on the civil conspiracy claim. Initially, the CGIA contains no statutory waiver for civil conspiracy, which "is undeniably a tort claim," and so the City is absolutely immune. *Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*, 474 P.3d 1231, 1237 (Colo. App. 2018). And even assuming the truth of the plaintiff's factual

allegations as to Dahl—in sum, that he signed an improper and inaccurate site approval agreement for the City, ECF No. 17 ¶¶ 215–222; ECF No. 101 at 4; that he did not issue a correction or otherwise address these discrepancies when the plaintiff brought them to his attention, ECF No. 17 ¶¶ 223–230; and that he required the plaintiff to make further inquiries in writing and noted that City employees have the right to be free from harassment, *Id.* ¶ 241—they fall well short of the "willful and wanton conduct" that could defeat his CGIA immunity as a public employee. *McKenzie*, 2023 WL 5488465, at *8 ("Under Colorado law, conduct is not willful or wanton unless it is done in conscious or reckless disregard of the rights of others." (citing *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994))).

Because the CGIA applies, there is no subject matter jurisdiction for these defendants, and the plaintiff's civil conspiracy claim should be dismissed as to them.

**b. There is no personal jurisdiction for MMC and Marsh LLC**

Two of the Marsh entities move for dismissal on personal jurisdiction grounds, which should be addressed before Rule 12(b)(6) dismissal. *Kilter, LLC v. Aurora Climbing, Inc.*, No. 25-cv-02256-PAB-KAS, 2026 WL 864443, at *3 (D. Colo. Mar. 30, 2026); *see also OMI Holdings, Inc. v. Royals Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

Although a plaintiff's burden to establish personal jurisdiction in the early phases of litigation is "light," *Kitler*, 2026 WL 864443 at *3, they still must allege facts showing either specific jurisdiction, meaning the "suit arises out of or relates to the defendant's contacts with the forum," or general jurisdiction, meaning the defendant's contacts "are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (alterations, quotation marks, and citations omitted).

Here, the plaintiff does neither. He does not allege that MMC or Marsh LLC conducted any business in Colorado, either as it relates to the events of this case or generally. Indeed, he does not make any allegations against MMC or Marsh LLC at all—all of the Toll Brothers certificates of insurance were issued by Marsh USA. ECF No. 17 ¶¶ 294–304; ECF No. 20-1 at 15, 18, 21, 24, 27, 30, 33. Instead, without expressly saying so, he appears to premise personal jurisdiction for MMC and Marsh LLC on the theory that they are "alter egos" of Marsh USA. *See Zayo Grp., LLC v. Sender*, No. 25-cv-00662-CNS-TPO, 2026 WL 657484, at *4 (D. Colo. Mar. 9, 2026). But the plaintiff's factual allegations that (1) Marsh USA is the subsidiary of Marsh LLC, who is the subsidiary of MMC, ECF No. 17 ¶¶ 306, 308, (2) the entities have the same New York corporate headquarters, *id.* ¶¶ 307, 309, 313, (3) they have branding overlap, *id.* ¶¶ 311–12, 314–15, 318, and (4) Marsh USA has issued certificates of insurance bearing the addresses of other MMC subsidiaries, *id.* ¶¶ 316–321, do little to overcome "the presumption of corporate separateness," which requires a showing that MMC and/or Marsh LLC "in fact controls" Marsh USA. *FDIC v. First Interstate Bank*, 937 F. Supp. 1461, 1466 (D. Colo. 1996); *see also Griffith v. SSC Pueblo Belmont Operating Co. LLC*, 381 P.3d 308, 313 (Colo. 2016) (listing factors for finding a subsidiary is "merely an alter ego" of the parent company).

Because there is no basis for personal jurisdiction, the plaintiff's civil conspiracy claim against MMC and Marsh LLC—the sole count against them—should be dismissed.

**c. The complaint does not sufficiently allege a claim for civil conspiracy**

Finally, with respect to the remaining defendants, the civil conspiracy claim should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at

678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged the claim across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Legal conclusions are not entitled to the assumption of truth, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Although the complaint does not indicate whether the civil conspiracy claim arises under federal or state law, *see* ECF No. 96 at 3, it fails to state a claim regardless. Civil conspiracy under federal law requires "specific facts" showing "an agreement" among defendants "upon a common, unconstitutional goal" and "concerted action taken to advance that goal." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (quotation marks and citation omitted). Civil conspiracy under Colorado law is "a derivative cause of action"; it depends on the existence of an underlying tort. *Fine v. Tumpkin*, 330 F. Supp. 3d 1246, 1257 (D. Colo. 2018). It requires "(1) two or more persons, (2) an object to be accomplished, (3) an agreement on the object or course of action, (4) one or more unlawful overt acts, and (5) damages as the proximate result." *Id.* (citing *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)).

In the instant matter, the plaintiff states five unconstitutional goals or unlawful objects of the conspiracy, but fails to support them with any non-conclusory factual allegations, which is fatal to his claim. ECF No. 17 at 83. They are addressed in turn below.

1. **"Misinform [the plaintiff] about the identity and legitimacy of his counterparty."**

The plaintiff does not allege that any of the defendants ever represented that he was purchasing his home from Toll Brothers, Inc. as opposed to Toll Southwest, a fact that was plainly disclosed in his agreement of sale, closing disclosure, and deed. The fact that different Toll Brothers entities were involved in different phases of the transaction and post-sale service does not permit "the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff's after-the-fact investigation of Toll Brothers, including his review of its statements of authority and corporate filings, and research on and attempted communications with employees and executives makes no difference.

2. **"Deflect liability through a maze of subsidiaries and recording false instruments."**

The plaintiff does not allege that he tried to sue Toll Brothers, TNHC, or any of the defendants for the construction defects in his or his parents' homes and that they were not amenable to suit due to their corporate structure or filings. This allegation is "not entitled to the assumption of truth because [it] [is] entirely conclusory[.]" *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

3. **"Leverage government actors to provide false credibility to improper work."**

Here, the plaintiff appears to be referencing CAA's issuance of inspection approvals despite construction defects, ECF No. 17 ¶¶ 64–118, Meriaux's issuance of a certificate of occupancy, *id.* ¶¶ 123–130, the City's issuance of a contractor's license for Toll Brothers, *id.* ¶¶ 275–85, and Dahl's and Meriaux's responses when the plaintiff contacted them about these and other Toll Brothers-related issues, *id.* ¶¶ 204–214. However, even accepting that the approvals, certificate, and license were erroneously issued or contained errors, the plaintiff does not plausibly allege that any defendant *intentionally* approved defective work or applications,

much less that they agreed to do so with any other defendant, as would be required for a civil conspiracy. Notably, the plaintiff does not claim that he or anyone else made the City, CAA, or Meriaux aware of any construction defects or licensing issues until after the home was built.

**4. "Obscure material defects in engineering, permitting, construction, and insurance coverage."**

It is difficult to parse precisely which conduct by which defendants the plaintiff believes forms the basis for this goal or object of the conspiracy. As it is, "[s]uch general and amorphous allegations . . . don't suffice to state a claim[.]" *Phelps v. Kan.*, No. 23-2206-DDC-RES, 2026 WL 863783, at *20 (D. Kan. Mar. 30, 2026). Moreover, while the complaint "alleges boatloads of specific facts," it "never alleges specific facts showing an agreement" among any of the various defendants operating in their distinct spheres of government, engineering, construction, and insurance to achieve any common purpose, let alone an unlawful one. *Id.* at *35 (quotations marks omitted). While "an express agreement isn't essential," "parallel conduct alone can't suffice to support a plausible inference of conspiracy." *Id.* at *36. Given the generalized, disparate, and sweeping nature of the acts and omissions the plaintiff attributes to the various defendants, it is difficult to conclude that he has shown even so much as parallel conduct, let alone that he has alleged the requisite agreement or meeting of the minds necessary for a civil conspiracy.

**5. "Retaliate against those—such as Plaintiff—who challenged these arrangements."**

Again, it is hard to pinpoint exactly what conduct the plaintiff is referring to for this charge, but reading the complaint broadly, the plaintiff is likely relying on: (1) the written communications requirement imposed by Dahl, ECF No. 17 ¶¶ 231–41 (2) the Toll Brothers, TNHC, and BHA cease-and-desist letters, *id.* ¶¶ 203, 374, 377, and (3) the Toll Brothers lawsuit which discusses the TNHC/BHA dispute, *id.* ¶ 514. None of these allegations state a claim for

conspiracy. His complaint does not allege that Dahl entered into an agreement with any other defendant to require the plaintiff to make his future inquiries in writing. The fact that Toll Brothers, TNHC, and BHA separately sent the plaintiff cease-and-desist letters pertaining to their respective disputes is, at most, parallel conduct that, as a matter of law, "does not establish an actionable conspiracy." *Cloward v. Race*, No. 2:20-cv-00165-RJS-DBP, 2023 WL 2574316, at *5 (D. Utah Mar. 20, 2023). Finally, the Toll Brothers trademark lawsuit, even with the additional factual allegations supplied by TNHC/BHA, does not plausibly allege that any of the defendants "reached an agreement to retaliate against plaintiff" for his investigations or criticisms. *Phelps*, 2026 WL 863783, at *35. The plaintiff's contention that the defendants filed the lawsuit to silence him or get him to drop his claims is pure conjecture, which "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

The civil conspiracy claim should be dismissed with prejudice because "it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[3] *Baker v. Buckner*, No. 11-cv-01374-REB-KLM, 2012 WL 2524029, at *8 (D. Colo. May 15, 2012) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)). The counterclaim complaint is 87 pages long and contains 514 allegations of fact. ECF No. 17. As summarized in the background above, the plaintiff conducted a vast investigation into the defendants. It is abundantly clear that the plaintiff has already put everything he has and everything he can reasonably obtain into this counterclaim—and he still comes nowhere close to stating a facially plausible claim for civil conspiracy. While "[g]enerally, a court will not dismiss a pro se litigant's action without leave to amend," under the circumstances here, "it is patently

[3] The same reasoning might apply to Felten Group, as Claim 3 is the only one asserted against it. For reasons that are unclear, though, Felten Group has taken no action in this litigation other than to appear. *See* ECF Nos. 135, 136.

obvious" that the plaintiff cannot prevail on these accusations even with a reworking of his complaint, "and thus amendment would be futile." *Williams v. Carbajol*, No. 20-cv-02119-NYW, 2021 WL 5579114, at *17 (D. Colo. Nov. 30, 2021) (quotation marks and citation omitted).

**4. <u>Deceptive Trade Practices (Claim Four)</u>**

As with the plaintiff's claims for declaratory judgment and fraud, his claim against the Toll Brothers defendants under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105(1), should be dismissed on Article III standing grounds. ECF No. 17 at 83–85.

The plaintiff states that as a result of the defendants' violations of the CCPA, he has "suffered actual damages, including but not limited to loss of legal recourse, exposure to construction defects, and material misrepresentation of the nature and structure of the transaction." *Id.* at 85. But for the reasons discussed, he has not sufficiently alleged: (1) that he has been unable to pursue legal recourse against any responsible Toll Brothers entity; (2) that his exposure to construction defects has any connection to which entity played which role in the sale of his home; or (3) that any "material misrepresentation of the nature and structure of the transaction" is anything other than an abstract injury, not cognizable in federal court. *See Spokeo*, 578 U.S. at 340. Accordingly, the fourth claim should be dismissed without prejudice for lack of subject matter jurisdiction.

**5. <u>Breach of Statutory Duty (Claim Five)</u>**

The plaintiff alleges that the City, Dahl, Meriaux, and CAA violated "clear statutory duties" they owed "to the public under Colorado law and applicable building codes," causing him harm. ECF No. 17 at 86.

Here again, there is no subject matter jurisdiction as to the City and Dahl, who are immune under the CGIA. This cause of action clearly "lie[s] in tort or could lie in tort." Colo. Rev. Stat. § 24-10-106(1); *see Vanderloop v. Progressive Cas. Ins. Co.*, 769 F. Supp. 1172, 1175 (D. Colo. 1991) (stating that "the basic elements necessary to state any tort claim" are "(1) a duty, (2) breach of the duty, and (3) injury caused by the breach"). The plaintiff's protest that Dahl's signature on the site approval agreement, which incorrectly identifies Toll Southwest as a "Colorado Limited Liability Company," and contains other defects, constitutes "willful and wanton" misconduct is without merit. ECF No. 101 at 3–4.

With respect to the other defendants, the complaint fails to state a claim upon which relief can be granted. It is the plaintiff's burden to identify a particular statute that contains an implied private right of action, *see Colo. Ins. Guar. Ass'n v. Menor*, 166 P.3d 205, 210 (Colo. App. 2007), but he makes no effort to do so, instead gesturing broadly at the whole of Colorado's public safety statute, Colo. Rev. Stat. §§ 24-33.5-101 to 24-33.5-2810, international building codes, and the City's Municipal Code. ECF No. 17 at 86. It is not the role of the Court to "construct legal theories on behalf of a pro se litigant." *Spence v. Three Birds All.*, No. 25-cv-01988-SKC-STV, 2026 WL 2017172, at *2 (D. Colo. July 13, 2026) (citing *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009)). Nor does the plaintiff make any effort to distinguish *Bd. of Cnty. Com'rs v. Moreland*, 764 P.2d 812 (Colo. 1988), in which the Colorado Supreme Court held that there was "no private civil damage remedy" "for any nonfeasance or misfeasance" in administering the county's uniform building code. *Id.* at 821.

However, because it is not "patently obvious" that the plaintiff cannot "correct the defect in his pleading or state a claim for relief," dismissal of claim five should be granted without prejudice as to the non-immune defendants. *Carbajol*, 2021 WL 5579114, at *17.

**6. <u>Abuse of Process (Claim Six)</u>**

The plaintiff fails to state a claim for abuse of process against the Toll Brothers defendants, TNHC, and BHA. ECF No. 17 at 89–90. In order to state an abuse of process claim, "a plaintiff must plausibly allege: (1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process, that is, use of a legal proceeding in an improper manner; and (3) resulting damage." *Rasmussen v. Burnett*, 24-cv-01727-SKC-KAS, 2025 WL 605250, at *7 (D. Colo. Feb. 25, 2025) (quoting *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006)). The complaint does not establish any of these elements through non-conclusory allegations of fact.

As an initial matter, TNHC and BHA have not initiated any litigation against the plaintiff—he has sued them. Therefore, TNHC and BHA has not made "use of a judicial proceeding," let alone done so improperly. *Active Release Tech., LLC v. Xtomic, LLC*, 413 P.3d 210, 214 (Colo. App. 2017) (holding that pre-litigation letters "were not a legal proceeding or a court process"). To the extent that TNHC's and BHA's cease-and-desist letters may be considered, they do not reflect that the defendants' conduct was "aimed at an objective not legitimate in the use of the process." *Parks v. Edward Dale Parrish LLC*, 452 P.3d 141, 145 (Colo. App. 2019) (quotation marks and citation omitted). To the contrary, the letters are exclusively addressed to the plaintiff's filing of numerous prelitigation notices, complaints to bond companies and various regulatory agencies, demands for information, contacting employees, entry onto a construction site, and creation of a corporate entity—all of which the plaintiff admits—and his brother's alleged attempted entry into BHA's office. *See* ECF No. 20–1 at 113–15, 122–23, 125–27, 133–34, 136–37; ECF No. 17 ¶¶ 361, 373, 376, 462–65; ECF No. 17, Answer, ¶ 47. That the plaintiff does not believe his conduct was wrongful or some

allegations in the cease-and-desist letters are untrue is immaterial. His claim that the letters were sent for an improper purpose is entirely conclusory.

The same is true with respect to Toll Brothers, who sent a cease-and-desist letter regarding the entities he created, and then sued when he declined to dissolve them. *See* ECF No. 19-1 at 82; ECF No. 17 ¶ 203. When a plaintiff "asserts that a lawsuit's filing *is* the abuse of process, the plaintiff must also plausibly allege that the underlying lawsuit is devoid of factual support or, if supportable in fact, has no cognizable basis in law." *Rasmussen*, 2025 WL 605250, at *7. The plaintiff has not done so. While he denies legal liability, he admits creating the entities at the core of Toll Brothers' trademark infringement suit. *See* ECF No. 1 ¶¶ 31, 34–41; ECF No. 17, Answer, ¶¶ 31, 34-41. Finally, even assuming that TNHC and BHA shared information with Toll Brothers prior to the instant suit, this allegation does not establish any element of abuse of process.

Because it is clear that the plaintiff cannot prevail on the facts alleged and amendment would be futile, this claim should be dismissed with prejudice. *See Brereton*, 434 F.3d at 1219.

**7. Negligence (Claim Seven)**

The plaintiff's claim for negligence, an action in tort, should be dismissed against the City on subject matter jurisdiction grounds because of its CGIA immunity. *See, e.g., Medina v. State,* 35 P.3d 443, 462 (Colo. 2001).

The negligence claim against Meriaux and CAA should be dismissed for failure to state a claim. With respect to Meriaux, the plaintiff alleges that she improperly granted a contractor's license to "Toll Brothers," issued a certificate of occupancy certifying that the home complied with the City's building code and could be occupied as a single family residence, and stopped responding to his inquiries. *See* ECF No. 18-1 at 206; ECF No. 17 ¶¶ 123–30, 204–07, 211–14,

275–85. For CAA, the plaintiff alleges that a building inspector failed to note certain building code violations and construction defects in his approvals. *See id.* ¶¶ 94–118.

None of these facts, standing alone or taken together, states a plausible claim for common law negligence against either defendant. *See Connes v. Molalla Tans. Syst.*, 831 P.2d 1316, 1320 (Colo. 1992) (elements of negligence "consist of the existence of a legal duty by the defendant to the plaintiff, breach of that duty by the defendant, injury to the plaintiff, and a sufficient causal relationship between the defendant's breach and the plaintiff's injuries"). As it is not the duty of the Court to develop the plaintiff's legal theory, *see Spence*, 2026 WL 2017172, at *2, this claim should be dismissed as to Meriaux and CAA. However, because it is not "obviously" futile for the plaintiff to amend his complaint, dismissal should be without prejudice. *Ark.-Platte & Gulf P'ship v. Dow Chem. Co.*, 886 F. Supp. 762, 765 (D. Colo. 1995).

**8. First Amendment (Claim Eight)**

Without expressly saying so, the complaint alleges a First Amendment retaliation claim against the City, Dahl, Meriaux, and CAA. ECF No. 17 at 92–93; ECF No. 101 at 5–7. To state this claim, a plaintiff must allege that: (1) he was engaged in constitutionally protected activity; (2) the defendant's conduct caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Van Deelen v. Johnson*, 497 F.3d 1151, 1155 (10th Cir. 2007).

The complaint clearly falls short on the second element. At the outset, the plaintiff states no relevant facts with respect to CAA. Neither Meriaux's nor Dahl's polite declinations to continue responding to Toll Brothers-related inquiries and requests, *see* ECF No. 17 ¶¶ 207, 223, 230; ECF No. 19-1 at 85–89, 100–110, are actions that would chill a person of ordinary firmness

from continuing to engage in protected activity. *Cf. Van Deelen*, 497 F.3d at 1157 (finding that "allegations of physical and verbal intimidation, including a threat by a deputy sheriff to shoot [plaintiff] if he brought any more tax appeals" satisfied second element for retaliation claim). By the same token, Dahl's letter informing the plaintiff that: (1) he had instructed City employees to require communication from the plaintiff be made in writing; (2) his "contacts ha[d] become increasingly frequent and repetitive"; and (3) City employees "have the right to be free from harassment," does not constitute objectively chilling behavior. ECF No. 17 ¶¶ 240–41; ECF No. 19-1 at 134–35. Moreover, Meriaux and Dahl pledged that the City would continue to respond to open records requests as legally required, and in fact did so. The fact that the plaintiff disagreed with the scope of some of their responses, *see* ECF No. 17 ¶¶ 242–44, is of no moment. The plaintiff points to no authority that requires government employees to engage limitlessly with a citizen on whatever terms and topics he desires.

As it is clear that the plaintiff cannot prevail on this set of facts, and amendment would be futile, the First Amendment claim should be dismissed with prejudice as to all defendants.

**9. <u>Fourteenth Amendment (Claim Nine)</u>**

Finally, the plaintiff alleges due process and equal protection violations under the Fourteenth Amendment against the City, Dahl, Meriaux, and CAA. Both claims fail.

For his due process claim, the plaintiff must allege: (1) a protected property interest subject to due process protections, and (2) a failure to provide an appropriate level of process. *Al-Turki v. Tomsic*, 926 F.3d 610, 614 (10th Cir. 2019). The plaintiff alleges two separate property interests: his home and his interest in "the regulatory processes governing construction, permitting, and occupancy." ECF No. 17 at 94. But the defendant has not been deprived of his home and "it is well established that entitlement to nothing but procedure cannot be the basis for

a property interest." *Robbins v. U.S. Bureau of Land Mgmt.*, 428 F.3d 1074, 1085 (10th Cir. 2006) (quotation marks omitted). Accordingly, neither of his identified property interests can support a due process claim. Even if the plaintiff did satisfy the first element, he does not allege the constitutionally "appropriate level of process" to which he was entitled but did not receive. *Tomsic*, 926 F.3d at 614. He therefore has not stated a cognizable due process violation.

The plaintiff's equal protection claim is likewise flawed. He asserts a class-of-one theory, arguing that he was treated differently "from other homeowners and citizens who seek to raise legitimate safety and licensing concerns." ECF No. 17 at 94–95. But to succeed on this theory, he must show that he was treated differently from others similarly situated to him "in every material respect" and without a rational basis. *Kan. Penn*, 656 F.3d at 1216. The plaintiff alleges that his "neighbor and designer Ms. Thompson" was not directed to put her communications in writing when she called the City Building Department on one occasion, ECF No. 17 ¶ 238, but she is not similarly situated to the plaintiff because there is no allegation that she contacted City employees repeatedly even after being told that the City could no longer pursue her concerns. He therefore has failed to state a *prima facie* case for an equal protection violation.

The Fourteenth Amendment claim should be dismissed without prejudice because it is clear the plaintiff cannot prevail on the facts alleged and amendment would be futile.

## CONCLUSION

For the foregoing reasons, the Court hereby **RECOMMENDS**[4] the following:

[4] Three of the granted motions also request attorneys' fees under Colo. Rev. Stat. § 13-17-201. *See* ECF Nos. 106, 125, 129. Under the Local Rules for this District, a request for attorneys fees must be made by separate motion supported by affidavit. D.C.COLO.LCivR 54.3. A fee award is thus inappropriate at this juncture. *See Ramos v. Baltazar*, No. 26-cv-02812-NYW, 2026 WL 2253638, at *4 n. 2 (D. Colo. Aug. 5, 2026).

1. The City and Dahl's motion to dismiss, ECF No. 96, should be **GRANTED**. Claims three, five, and seven should be **DISMISSED** against the City and Dahl **without prejudice** for lack of subject matter jurisdiction (CGIA), and claims eight and nine should be **DISMISSED with prejudice** because amendment would be futile.
2. Meriaux and CAA's motion to dismiss, ECF No. 106, should be **GRANTED**. Claims three, eight, and nine should be **DISMISSED** against them **with prejudice** because amendment would be futile. Claims five and seven should be **DISMISSED without prejudice**.
3. The Toll Brothers defendants' motion to dismiss, ECF No. 125, should be **GRANTED**. Claims one, two, and four should be **DISMISSED** against them **without prejudice** for lack of subject matter jurisdiction (Article III standing), and claim six should be **DISMISSED with prejudice** because amendment would be futile.
4. Defendant Risewell Homes Inc.'s (formerly TNHC) motion to dismiss, ECF No. 129, should be **GRANTED** to the extent that claims three and six should be **DISMISSED** for failure to state a claim, and dismissal should be **with prejudice** because amendment would be futile. The motion should be **DENIED** as moot to the extent that it requests dismissal pursuant to Colo. Rev. Stat. § 13-20-1101. Defendant Risewell Homes Inc.'s motion to compel arbitration, ECF No. 132, should also be **DENIED** as moot.
5. Defendant BHA's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 142, is **GRANTED**. Claims three and six should be **DISMISSED with prejudice** because amendment would be futile. Defendant's BHA's special motion to dismiss pursuant to Colo. Rev. Stat. § 13-20-1101, ECF No. 140, should be **DENIED** as moot.

6. Defendants MMC, Marsh LLC, and Marsh USA's motion to dismiss, ECF No. 145, should be **GRANTED**. Claim three should be **DISMISSED** against MMC and Marsh LLC **without prejudice** for lack of personal jurisdiction, and against Marsh USA **with prejudice** for failure to state a claim because amendment would be futile.

Respectfully submitted this 12th day of August, 2026, at Denver, Colorado.[5]

BY THE COURT:



Cyrus Y. Chung
United States Magistrate Judge

[5] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.