**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JEFFREY GU,

Plaintiff,

v.

CITY OF IRVINE, et al.,

Defendants.

No. 8:25-cv-02134-VBF-DSR

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON DEFENDANTS SANDERS AND MELCHING'S MOTION TO DISMISS SECOND AMENDED COMPLAINT(DOC. NO. 174)**

This Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## 1. INTRODUCTION

Plaintiff Jeffrey Gu ("Plaintiff") brings the instant pro se civil rights action pursuant to 42 U.S.C. § 1983 against the City of Irvine ("City") and, among other parties, its contract City Attorneys Jessica Sanders and Jeffrey Melching. Before the Court is Defendants Sanders and Melching's Motion to Dismiss Plaintiff's operative Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). See Doc. No. 174. Plaintiff filed written Opposition to the Motion (Doc. No. 178) and Defendants filed Reply thereto (Doc. No. 187). The Court has read

and considered all papers filed by each side.[1] The Motion was heard on the Court's September 22, 2026, calendar and taken under submission. For the reasons discussed below, the Court recommends that the Motion be GRANTED IN PART AND DENIED IN PART.

## 2. BACKGROUND

### A. Procedural History

On September 19, 2025, Plaintiff Jeffrey Gu filed suit in this Court against the City of Irvine and its Police Department, one of its City Councilmembers and one of its staff members, contract City Attorneys Jeffrey Melching and Jessica Sanders, a homebuilder and its affiliates selling homes in the City (collectively the "Risewell Defendants"), and a home inspection company (Bert L. Howe & Associates). See Compl. (Doc. No. 1). The original Complaint spanned 34 pages and alleged civil rights claims against the City and City Attorney Defendants under 42 U.S.C. § 1983 for violation of the First and Fourteenth Amendments, and a claim under California's Bane Act (California Civil Code § 52.1) against the City, the Risewell Defendants, and the home inspection company. Id.

On October 8, 2025, before serving the original Complaint in this case on any of the then-existing Defendants, Plaintiff filed a First Amended Complaint and added as Defendants another home builder and its affiliates from whom he had purchased a home in Colorado (collectively the "Toll Brothers Defendants"). See Doc. No. 11. His pleading exploded from 34 pages in the original Complaint to 2,648 pages (110 pages for the pleading itself plus 274 exhibits comprising the

---

[1] Plaintiff filed with his Opposition a Request for Judicial Notice, seeking judicial notice of two responses from the City of Irvine to his Public Records Act requests. See Doc. No. 178-1. Plaintiff does not explain how either of those items are properly subject to judicial notice. More importantly, the Court does not find either item to be relevant to its analysis of the instant Motion to Dismiss. Therefore, Plaintiff's Request for Judicial Notice is denied.

rest). Id. Plaintiff amended his Bane Act claim to assert it against all defendants. See First Amend. Compl. at ECF No. 104-106.[2]

Before Plaintiff served process on Defendants Melching and Sanders, Plaintiff moved for leave to file a Second Amended Complaint. See Doc. Nos. 120, 126. The parties ultimately stipulated to leave for Plaintiff to file a Second Amended Complaint (which the Court approved) and Plaintiff filed his Second Amended Complaint on June 15, 2026. See Doc. No. 129, 130.

Plaintiff's Second Amended Complaint (hereinafter "SAC") now totals 3,103 pages (205 pages for the pleading itself plus 287 exhibits). The SAC names as Defendants the two home building companies and their affiliates, (the Toll Brothers Defendants and Risewell Defendants), the home-inspection company (Bert L. Howe & Associates, Inc.), the City of Irvine and several City employees (Police Officer Emma Olague, Chief of Staff Kalvin Alvarez, City Councilmember William Go, and Executive Assistant Trinity Pham), and the City's contract City Attorneys – Jeffrey Melching and Jessica Sanders. SAC at 9:3-12:7.[3]

Pertinent to resolution of the instant motion, the SAC attempts to plead claims for relief (or "counts") under 42 U.S.C. § 1983 against contract City Attorneys Melching and Sanders (together, the "City Attorney Defendants") for violation of the First Amendment and Fourteenth Amendment's Due Process Clause. Id. at 150-65. The SAC also attempts state-law claims for violation of California's Bane Act (Civil Code § 52.1) and Ralph Civil Rights Act of 1976 (Civil Code § 51.7) against the City Attorney Defendants. Id. at 166-79.

---

[2] The Court has recommended, by separate Reports and Recommendations (see Doc. Nos. 184, 197) that Plaintiff's claims against the Toll Brothers Defendants, the Risewell Defendants, and the home inspection company be dismissed for lack of subject-matter jurisdiction.

[3] Page citations herein are to the ECF page numbers printed in the header of the referenced document.

On July 22, 2026, the City Attorney Defendants filed their Motion to Dismiss the SAC. See Doc. No. 174. Plaintiff filed his Opposition on July 28, 2026, and the City Attorney Defendants filed their Reply on August 11th. See Doc. Nos. 178, 187.

**B. Factual Background**

In brief summary of the factual background of the case involving the City and the City Attorney Defendants, and assuming the truth of Plaintiff's allegations in the SAC, Plaintiff became involved in disputes with two homebuilders over the quality of two homes, one he purchased in Colorado and the other that his parents purchased in Irvine, California. Plaintiff then requested information from the City of Irvine about building permits. See SAC at 95:2-18; Exs. 242-245, 254-55. Unsatisfied with the response by the first person he spoke with at the City, Plaintiff contacted the office of one of the City Councilmembers (Defendant Go) by telephone, and spoke with the executive assistant to the Council (Defendant Pham). Id. at 100:2-10. There is a dispute as to what was said, and what was meant in that call, but the matter was referred to the police department for investigation of a possible threat and an Irvine Police Officer (Defendant Olague). Id. at 100:13-101:10. That investigation ultimately determined no crime was committed. Id. at 120:2-121:10.

Plaintiff continued, however, to make numerous calls to City staff, and numerous public records requests to the City, to the extent that City staff ultimately believed his conduct was becoming harassing. Id. at 101:11-102:16; Ex. 217. Plaintiff disputes that he was harassing. Ultimately, the City Attorney's office became involved. SAC at 104:15-105:6. The City of Irvine contracts for City Attorney services with the law firm of Rutan and Tucker. SAC at Ex. 217. Defendant Jeffrey Melching, an attorney at the firm, is designated as the City Attorney for the City of Irvine. Id. at 9:9-11. Defendant Jessica Sanders, also an attorney at that firm, also represents the City as an assistant or deputy city attorney. Id. at 9:5-7.

On August 5, 2025, City Attorney Sanders sent Plaintiff a letter on behalf of the City demanding that Plaintiff cease and desist all contact with City staff and offices because of what the City deemed to be an excessive number of California Public Records Act ("CPRA") requests that were disrupting City business, as well as the alleged harassment of Ms. Pham. Id. at 104:15-105:6; Ex. 217. The letter demanded that Plaintiff "immediately cease all direct contact with City staff and offices" except for public meetings and emergency situations. Id. at Ex. 217. The letter also noted, however, that Plaintiff could continue to exercise his rights pursuant to the CPRA, provided all requests were directed to the City Attorney's Office. Id. The letter stated that "[t]hese measures are not taken to single you out or deny you any right to access City documents or meetings provided by applicable law, but rather to effectively manage the limited resources available to serve all City residents." Id. The letter cautioned that "[f]ailure to comply with this demand may result in further legal action to protect the safety and operations of the City and its employees." Id.

After Defendant Sanders did not respond to Plaintiff's follow-up email, Plaintiff proceeded to email Irvine's Mayor, City Manager, and every member of the City Council asking for a basis for the cease-and-desist letter. SAC at 105:16-106:1; Ex. 259. None of these individuals responded. SAC at 106:3. Plaintiff then filed a claim for damages against the City in the amount of $5.7 million, which was rejected. Id. at 106:4-7; 107:3-4. Plaintiff then sent an email to the Mayor and City Manager on August 20, 2025, "noting First Amendment harms," but neither official answered Plaintiff's email. Id. at 107:5-9.

On August 25, 2025, City Attorney Sanders sent Plaintiff a second cease-and-desist letter following Plaintiff's repeated attempts to contact City employees directly. SAC at 108:7-8. The letter stated Plaintiff's behavior was disruptive and threatening, and reiterated that further communications to the City should be sent only to the City Attorney, who would transmit Plaintiff's comments and requests

"to the relevant City parties as necessary and appropriate," though Plaintiff could continue to seek public records through the CPRA, submit emergency calls for service to the Police Department, and comment upon matters of public business (though the City Attorney's office), and attend public meetings. Id. at 108:9-14; Ex. 227. That letter also stated that "[f]ailure to comply with these directives will leave us with no choice but to consider further legal action to protect the City's interests, including instituting legal action against" Plaintiff. SAC at 108:15-17. Plaintiff promptly sent another email directly to the Mayor and City Manager about this August 25th cease-and-desist letter. Id. at 109:1-2; Ex. 228. He received no response, at least as of September 9, 2025. SAC at 109:4. In October 2025, Plaintiff also called the City's Human Resources Department, Officer Olague, Detective Blevins, and Officer Rakic directly, but received no response. Id. at 126:1-18.

Plaintiff continued to make several CPRA requests to the City –including requests for further information about the July 30th phone call and for police body worn camera footage from the investigation into it – which were denied by the City. SAC at 127:1-128:9.

**3. LEGAL STANDARD**

The City Attorney Defendants move to dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief can be granted. See Def.'s Not. of Mot. (Doc. No. 174) at 2:4-21. Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief. Fed. R. Civ. P.8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint – as well as any reasonable inferences to be drawn from them – as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC

Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court." Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

The Ninth Circuit has clarified that: (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of

public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

When a plaintiff appears pro se in a civil rights case, the Court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 623 (9th Cir. 1988). In giving liberal interpretation to a pro se complaint, however, the Court may not supply essential elements of a claim that were not initially pled. Pena v. Gardner, 976 F.2d 469, 471-72 (9th Cir. 1992).

**4. DISCUSSION**

**A. Plaintiff's Official-Capacity Claims**

The SAC names Defendants Sanders and Melching in both their individual and official capacities. See SAC at 9:5-11. These Defendants first contend that Plaintiff's official-capacity claims against them are improperly duplicative of his claim against the City and must be dismissed. See Def.s' Mem. P. & A. (Doc. No. 174) at 13:25-14:13. Plaintiff does not address this argument in his Opposition. See generally Opp'n. (Doc. No. 178).

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Id. (emphasis in original). "If individuals are being sued in their official capacity as municipal officers and the municipal entity is also being sued, then the claims are duplicative and should be dismissed." Vance v. Cnty. of Santa Clara, 928 F.Supp. 993, 996 (N.D. Cal. 1996).

Plaintiff's official-capacity claims against the City Attorney Defendants are effectively claims against the City of Irvine. Because Plaintiff also separately named the City as a Defendant, see SAC at 9:3-4, it is recommended that the official-capacity claims against Defendants Sanders and Melching be dismissed. See e.g., Taylor v. Los Angeles Cnty. Sherrif's Dep't, No. CV 29-4398 SJO (AS), 2019 WL

8647732, at *3 (C.D. Cal. July 26, 2019); Rosas v. Baca, No. CV 12-00428 DDP SHX, 2012 WL 933609, at *2 (C.D. Cal. Mar. 20, 2012).

**B. Plaintiff's Section 1983 Claims Against the City Attorney Defendants in Their Individual Capacity**

Plaintiff also sues the City Attorney Defendants under 42 U.S.C. § 1983 in their individual capacity. Section 1983 does not itself confer substantive rights but rather only provides an avenue by which plaintiffs may seek relief for the deprivation of rights conferred elsewhere in federal law. See Graham v. Connor, 490 U.S. 386, 393-94 (1989). To state a viable Section 1983 action, a plaintiff must: (1) "allege that some person deprived him of a federal right," and (2) "allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980). The City Attorney Defendants do not contest the second, color-of-law, element on this Motion. See generally Def.s' Mot. (Doc. No. 174). The Court therefore focuses on whether the SAC alleges sufficient facts to support a claim for a deprivation of a federal right.

Plaintiff attempts two such claims: (1) deprivation of his First Amendment right to petition the government for grievances, see SAC at 150:3-155:13, and (2) deprivation of his due process rights under the Fourteenth Amendment, id. at 155:14-165:17.

**i. First Amendment Retaliation**

**a. Plaintiff's "Right to Petition" Claim is Best Understood as a Retaliation Claim**

Plaintiff's third claim for relief is stylized as "FIRST AMENDMENT (FREEDOM TO PETITION THE GOVERNMENT)." SAC at 150:3-4. Plaintiff alleges that "Defendants … deprived Plaintiff of his First Amendment right to petition the government for grievances." Id. at 150:11-12. Specifically as to the City Attorney Defendants, Plaintiff alleges that the August 5, 2025, and August 25, 2025, cease-and-desist letters "chilled, burdened, and effectively prohibited Plaintiff from

lawfully communicating with elected officials and public employees about matters involving permitting irregularities and building-code violations in hundreds of homes." Id. at 150:13-151:2.

The First Amendment, incorporated against the states through the Fourteenth Amendment, provides in relevant part that "Congress shall make no law … abridging the freedom of speech … or the right of the people … to petition the Government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has clarified that the Petition Clause and the Speech Clause, while not "identical in their mandate or their purpose and effect," nonetheless "share substantial common ground." Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 388 (2011). "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as the whole realm of ideas and human affairs." Id. "Both speech and petition are integral to the democratic process" and are "cognate rights." Id. (citation omitted).

Given the substantial overlap between the protections afforded under the Speech and Petitions Clauses, courts have generally analyzed claims alleging a violation of the right to petition under the framework of First Amendment retaliation rather than any freestanding Petition Clause doctrine. Id. (acknowledging this trend); see also Mirabella v. Villard, 853 F.3d 641, 654-55 (3d. Cir. 2017) (noting same trend and applying Speech Clause precedent to claim that the Township violated the right to petition by prohibiting communication to Township employees other its counsel); Ninth Circuit Model Jury Instruction 9.11 (recognizing right to petition government for grievances but laying out elements for First Amendment retaliation claim); Williams v. Fox, No. 1:16-cv-00143-DCN, 2022 WL 17659688, at *3 (D. Idaho Nov. 28, 2022), aff'd in part, vacated in part, No. 22-36014, 2025 WL 1419903 (9th Cir. May 16, 2025) ("[T]he law is not clearly

established whether a direct claim for violation of the right to petition the government for grievances exists or whether the only actionable right to petition a claim is an indirect claim that sounds in retaliation.").

The Supreme Court has cautioned that "[t]here may arise cases where the special concerns of the Petition Clause would provide a sound basis for a distinct analysis [from the Speech Clause][.]" Guarnieri, 564 U.S. at 379. The Court sees no reason in this case, however, to deviate from the prevailing analytical framework of First Amendment retaliation for what appears to be a garden-variety retaliation claim. The crux of Plaintiff's First Amendment claim does not appear to challenge any wholesale denial of Plaintiff to avenues by which to petition the government. Instead, Plaintiff appears to assert a First Amendment retaliation claim by arguing that the City Attorneys' cease-and-desist letters were intended to "suppress speech and avoid accountability" because "Plaintiff's protected petitioning activity became politically inconvenient and more systematic than initially believed." SAC at 151:13-16. Plaintiff's First Amendment claim thus appears to evoke the analytical framework for First Amendment retaliation claims. Plaintiff even uses the phrase "First Amendment Retaliation" as a heading describing the conduct of City staff under the same cause of action. Id. at 153:3-154:3. His First Amendment claim is therefore best understood and analyzed as a First Amendment retaliation claim.[4]

**b. Elements of a Retaliation Claim**

"[T]he First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." Houston Comm. Coll. Sys. v. Wilson, 595 U.S. 468, 474 (2022) (quoting Nieves v. Bartlett, 587 U.S. 391, 398 (2019)). To state a cognizable First Amendment retaliation claim, a Plaintiff must allege that "(1) it engaged in

---

[4] In fact, both Plaintiff and the City Attorney Defendants discuss Plaintiff's First Amendment claim in terms of alleged retaliation. See Def.'s Mem. P. & A. at 9:10; Pl.'s Opp'n at 11:1-13.

constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct – i.e., that there was a nexus between the defendant's actions and an intent to chill speech." Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 867 (9th Cir. 2016) (citing O'Brien v. Welty, 818 F.3d 920, 933-34 (9th Cir. 2016)).

With respect to the second element, "Plaintiff is not required to demonstrate that its speech was actually suppressed or inhibited." Ariz. Students' Ass'n, 824 F.3d at 867. "An objective standard governs the chilling inquiry" and thus a plaintiff "does not have to show that his speech was actually inhibited or suppressed, but rather that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities." Brodheim v. Cry, 548 F.3d 1262, 1271 (9th Cir. 2009) (citation omitted). "The Ninth Circuit takes an expansive view of the types of action that qualify as adverse action" for the purpose of supporting a First Amendment retaliation claim. Strecker v. Murrieta Valley Unified Sch. Dist., No. EDCV 20-22 JGB (SHKx), 2020 WL 5215297, at *6 (C.D. Cal. June 4, 2020).

With respect to the third element, "[a] plaintiff must show that the defendant's retaliatory animus was 'a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'" Capp v. Cnty. of San Diego, 940 F.3d 1046 (9th Cir. 2019) (quoting Hartman v. Moore, 547 U.S. 250, 260 (2006)). "At the pleading stage, the complaint must simply allege plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct[,] and motive may be shown with direct or circumstantial evidence." Koala v. Khosla, 931 F.3d 887, 905 (9th Cir. 2019) (internal quotations omitted). "Because direct evidence of retaliatory intent can rarely be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." Watison v.

Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Gilbert v. Fernald, No. CV 20-1269-SVW (KS), 2020 WL 6484789, at *7 (C.D. Cal. Oct. 16, 2020) ("On a motion to dismiss [] a plaintiff need only establish a prima facie case of retaliation, and the existence of a retaliatory motive can be inferred from the timing and circumstances of the defendant's adverse actions.").

**c. Constitutionally Protected Activity**

With respect to the first element of a retaliation claim, Plaintiff alleges that he was exercising his "First Amendment right to petition the government for redress of grievances" by "lawfully communicating with elected officials and public employees about matters involving permitting irregularities and building-code violations in hundreds of homes." See SAC at 150:11-151:2. The allegations of the SAC, and its attached exhibits, clearly reflect that Plaintiff was petitioning the City of Irvine for redress of his grievances concerning perceived permitting non-compliance and the City's acquiescence thereto. See generally SAC at 95-104. This conduct falls squarely within the protections of the First Amendment.

The City Attorney Defendants do not appear to contest that Plaintiff's communications with City employees constitutes protected First Amendment activity. They instead argue that the "stated basis for the directive [to cease direct communications with City employees] was the city's concerns regarding the safety of [City employees following allegations of harassment by Plaintiff] and undue burdens placed on staff time and resources in respond to Plaintiff's numerous communications." Def.'s Mem. P. & A. at 15:13-15. While Defendants argue that they proffered a content-neutral justification based on alleged harassment or the inundation of requests, they do not argue that the factual allegations set forth in the SAC establish Plaintiff's petitioning activity was, in fact, not constitutionally protected. Moreover, the SAC explicitly alleges that the allegations of harassment are false, and that Plaintiff never made threatening remarks to City employees. See SAC at 118:4. On a motion to dismiss, the Court must assume the truth of

Plaintiff's allegations, not the differing interpretation of Defendants. Accordingly, the allegations of the SAC reflect that Plaintiff was engaged in constitutionally protected activity.

**d. Adverse Action**

With respect to the second element of a retaliation claim, Plaintiff alleges that the August 5th and August 25th cease-and-desist letters issued by Defendant Sanders demanding that Plaintiff cease direct contact with City employees under threat of legal repercussions "chilled, burdened, and effectively prohibited Plaintiff from lawfully communicating with elected officials and employees about matters involving permitting irregularities and building-code violations in hundreds of homes." SAC at 150:13-151:2.

While the allegations of the SAC clearly show that Plaintiff himself was not deterred from his petitioning activity by the City Attorneys' cease-and-desist letters, that is not the relevant inquiry on this element. Rather, the question is whether a defendant's alleged conduct would clearly chill a person of ordinary firmness from further petitioning. Because the "objective standard governs the chilling inquiry," Plaintiff need not "show that his speech was actually inhibited or suppressed, but rather that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities. <u>See</u> <u>Brodheim</u>, 584 F.3d at 1271; <u>see also</u> <u>Mendocino Env't Ctr. v. Mendocino Cnty.</u>, 192 F.3d 1283, 1300 (9th Cir. 1999) (noting that "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity") (citations omitted); <u>Mirabella</u>, 853 F.3d at 650 (rejecting argument that second element of retaliation claim was not satisfied because plaintiff attended a public municipal meeting after the restriction was imposed).

The August 5th cease-and-desist letter "demand[ed] that [Plaintiff] immediately cease all direct contact with City staff and offices … regarding any of

[Plaintiff's] CPRA request or other City-related matters[.]" SAC, Ex. 217 at 1. The August 25th letter re-iterated this blanket restriction on communication, stating "all communications, regarding City matters, including those directed to City staff and contractors must be directed solely to [Defendant Sanders] via email … You are not to contact City staff and offices directly by either email or phone calls." Id., Ex. 227 at 1. Both letters threatened legal action in the event of non-compliance. Id., Exs. 217 at 2, 227 at 2.

While the Third Circuit's decision in Mirabella v. Villard, supra, is not binding on this Court, it presents similar factual circumstances and offers persuasive reasoning that guides this Court's analysis. There, the Third Circuit found that for the purposes of a motion to dismiss, an indefinite bar on communicating directly with a local government, except for government counsel, concerning any topic was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." 853 F.3d at 650. The cease-and-desist letters at issue in this case are directly analogous. The restriction imposed by the letters "encompasses, inter alia, 'normal conversation' and 'one-on-one communication' with government officials—forms of expression 'historically … closely associated with the transmission of ideas.'" Mirabella, 853 F.3d at 656 (quoting McCullen v. Coakley, 573 U.S. 464, 488-89 (2014)). And because no timeline was provided in the letters, and the Court must draw all reasonable inferences in favor of Plaintiff at this stage of the proceedings, this restriction appears to be indefinite. The Court finds that this indefinite and all-encompassing restriction on direct communication with the City of Irvine, under threat of legal consequence, would plausibly deter a person of ordinary firmness from continuing to petition.

The Court finds, therefore, that Plaintiff has adequately pled adverse action.

**e. Substantial Motivating Factor**

With respect to the third element of a retaliation claim, Plaintiff alleges that "the true purpose" of the cease-and-desist letters "was to suppress speech and

avoid accountability." See SAC at 151:13-16. At this stage of the proceedings, the Court must draw all reasonable inferences in favor of Plaintiff. In doing so, the Court finds that the SAC articulates sufficient factual allegations to support a reasonable inference that the cease-and-desist letter would not have been issued but for Plaintiff's exercise of his First Amendment rights. On a motion to dismiss, the existence of a retaliatory motive can be inferred from the "timing and circumstances" of a defendant's adverse actions. See Gilbert, 2020 WL 6484789, at *7. In June 2025, Plaintiff began to make numerous CPRA requests to the City concerning permits. On July 24, 2025, he began to directly raise his grievances to City employees concerning the City's acquiescence to permitting non-compliance. See SAC at 95:2-4. On August 5th – just 12 days later – the City Attorney directed him to cease such communication. See SAC at 104:15-17, Ex. 217. The close temporal proximity between Plaintiff's exercise of his First Amendment right to petition and the alleged retaliatory conduct are sufficient, at this stage in the proceedings, to infer reasonably that Plaintiff's exercise of his First Amendment Rights was a substantial motivating factor in the City Attorney Defendants' alleged conduct. See, e.g., Emeldi v. Univ. of Oregon, 698 F.3d 715, 726 (9th Cir. 2012).

Thus, the Court finds that Plaintiff has adequately pled causation, the final element of his First Amendment retaliation claim. Plaintiff has, therefore, adequately alleged a First Amendment retaliation claim.

**f. Content-Neutral Time, Place, and Manner Restriction**

Rather than analyzing Plaintiff's First Amendment claim as a retaliation claim, the City Attorney Defendants argue that the cease-and-desist letters constitute a content-neutral time, place, and manner restriction. See Def.'s Mem. P. & A. at 14:14-16:8. The Ninth Circuit has expressly rejected the contention that a content-neutral time, place, and manner restriction is incapable of serving as the basis of a First Amendment retaliation claim, however. In Ariz. Students' Ass'n, the Ninth Circuit held that "[o]therwise lawful government action may nonetheless be

unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." 824 F.3d at 869 (quoting O'Brien, 818 F.3d at 932). "Although officials may constitutionally impose time, place, and manner restrictions on [] expression, … they may not 'discriminate in the regulation of expression on the basis of the content of that expression.'" Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994) (citing Hudgens v. NLRB, 424 U.S. 507, 520 (1976)); see also Al & Sons Towing, Inc. v. City of Pomona, No. CV 21-8806-DMG-MBK, 2024 WL 607350, at *4 (C.D. Cal. Jan. 3, 2024) ("Retaliatory action can be clocked in neutral terms, yet still be actionable."). Thus, even if the Court assumes, arguendo, that the directive in the City Attorneys' cease-and-desist letters constitutes a content-neutral time, place, and manner restriction, Plaintiff has adequately alleged that such restriction was enacted with the intention of deterring his petitioning activity based on its content; thus, the directive nonetheless plausibly violates the First Amendment.

Accordingly, because Plaintiff has adequately stated a First Amendment retaliation claim against the City Attorney Defendants, the Court recommends that their Motion to Dismiss Plaintiff's First Amendment claim be denied.

**ii. Fourteenth Amendment – Procedural Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. To state a procedural due process claim, a plaintiff must allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003); see Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972). Thus, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999); see also Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural

due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Once a court determines a protected interest is at stake, it applies the three-factor balancing test outlined in Matthews v. Eldridge, 424 U.S. 319 (1976), and weighs: (1) the private interest at stake; (2) the "risk of erroneous deprivation of such interest through the procedures used, and probable value, if any, of … substitute procedural safeguards"; and (3) the government's interest. Id. at 335.

The City Attorney Defendants challenge Plaintiff's due process claim only on the ground that Plaintiff has failed to plead adequately the deprivation of a liberty or property interest protected by the Fourteenth Amendment – in other words, only under the first prong of the two-pronged due process analysis outlined above. See Def.'s Mem. P. & A. at 16:9-18:10. They do not address the second prong of determining what process is due applying the Mathews factors.

Here, the SAC asserts two alleged protected interests which the City Attorney Defendants allegedly deprived him of: (1) his ability to contact City officials, departments, and staff, SAC at 158:10-16, 159:3-9; and (2) an adequate response to his California Public Records Act ("CPRA") requests, see SAC at 159:17-161:8. As articulated above, Plaintiff has a constitutionally protected liberty interest in petitioning the government for grievances without being retaliated against for doing so, of which he has plausibly alleged he was deprived of by Defendants Melching and Sanders. Thus, as to those Defendants' argument that he has failed to state a due process claim for lack of a constitutionally protected interest, such argument fails.

To the extent, however, that Plaintiff attempts to state a Fourteenth Amendment procedural due process claim based upon the adequacy of the City Attorney Defendants' response to Plaintiff's CPRA requests, Plaintiff has failed to state a cognizable claim. Plaintiff has not sufficiently articulated what constitutionally protected liberty interest he was deprived of by the City Attorney

Defendants' allegedly inadequate response to his CPRA requests, and no such liberty interest is apparent. The First Amendment right to petition the government "is uni-directional; it does not require government officials ... to respond, or even listen, to citizens." Rodriguez v. Newsom, 974 F.3d 998, 1010 (9th Cir. 2020). Although the CPRA confers certain rights to public records under state law, "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." Houchins v. KQED, Inc., 438 US. 1, 15 (1978); see also Cortland v. Myers, 498 F.App'x 733 (9th Cir. 2012) (affirming dismissal of § 1983 claim based on state public records act because state law did not create a federal right); Hammerlord v. Elliot, No. 23cv663-JO-KSC, 2023 WL 3940109 (S.D. Cal. June 9, 2023) (dismissing due process claim based on failure to fulfill CPRA requests). Plaintiff concedes in his Opposition that he has no constitutional right to a response from public officials to his communications. See Opp'n. at 17:8-11.

Thus, it is recommended that the City Attorney Defendants' Motion to Dismiss Plaintiff's due process claim be denied, with the caveat that Plaintiff's allegations of inadequacies in the City Attorneys' CPRA responses do not state a viable due process claim.

**iii. Qualified Immunity**

Because the Court has found that the SAC states cognizable Section 1983 claims against the City Attorney Defendants, it is necessary to address those Defendants' assertion of the defense of qualified immunity in their Motion to Dismiss. See Mem. P. & A. at 18:11-21:4.

**a. Legal Principles**

The qualified immunity defense shields state actors from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800. 818 (1982). The immunity balances two important public

interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The burden in a qualified immunity inquiry lies with the plaintiff, who must make two showings: (1) the state actor violated a constitutional right; and (2) that right was "clearly established." Kisela v. Hughes, 584 U.S. 100, 104 (2018). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. If a court finds that the plaintiff fails to meet its burden on one of the prongs, it need not address the other. Id.

"Clearly established means that, at the time of the [state actor's] conduct, the law was sufficiently clear that every reasonable [state actor] would understand that what he is doing is unlawful." District of Columbia v. Wesby, 583 U.S. 48. 63 (2018) (quotations and citation omitted). "[The] legal principle must have a sufficiently clear foundation in then-existing precedent" and be "settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." Id. (quotations and citations omitted). Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," the bar to show that a constitutional right is "clearly established" is high. Id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 194 (2001). "Plaintiffs must either explain why their case is obvious under existing general principles, or more commonly, show specific cases that control or reflect a consensus of non-binding authorities in similar situations." Waid v. Cnty. of Lyon, 87 F.4th 383, 388 (9th Cir. 2023). "[A] case directly on point" is not required to

show the right in question was clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

While the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation," Pearson, 555 U.S. at 232 (citations omitted), the Ninth Circuit has noted that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." Keates v. Koile, 883 F.3d 1228, 1234 (9th Cir. 2018) (citing Kwai Fun Wong v. United States, 373 F.3d 952, 956-57 (9th Cir. 2004)). Because "[t]he qualified immunity issue … cannot be resolved without first deciding the scope the constitutional rights at issue[,]" courts are put in the difficult position of having "to decide far-reaching constitutional questions on a nonexistent factual record, even where … discovery would readily reveal the plaintiff's claims to be factually baseless." Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004). Given that courts are required to accept as true all well-pleaded factual allegations in the complaint and must "deny a motion to dismiss on the basis of qualified immunity if the complaint alleges acts to which qualified immunity may not apply[,]" it is often "impossible to determine based on the complaint alone that qualified immunity is warranted." Hernandez v. City of San Jose, 241 F.Supp.3d 959, 975 (N.D. Cal. 2017) (internal quotation marks and citations omitted). In such circumstances, a court may deny a qualified immunity defense without prejudice and after further factual development a defendant may re-raise the qualified immunity issue 'at summary judgment or trial.'" Id. (quoting Morley v. Walker, 175 F.3d 756, 761 (9th Cir. 1999)).

**b. Analysis**

Defendants Sanders and Melching contend in their Motion that the even if an underlying constitutional violation is established, they are entitled to qualified immunity because their conduct does not violate Plaintiff's clearly established

rights. Plaintiff argues that Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc) and White v. Lee, 227 F.3d 1214 (9th Cir. 2000) place the unconstitutionality of Defendant's actions beyond debate. See Opp'n. at 18:18-19:5. The Court finds that resolution of these Defendants' entitlement to qualified immunity is not appropriate at this procedural stage.

The City Attorney Defendants contend that the "letters were sent as a consequence of stated concerns for the safety of both city officials and employees and the use of staff time to respond to repeated and intrusive requests for information." Def.'s Mem. P. & A. at 19:8-10. Plaintiff, however, argues the letters were sent in retaliation for his First Amendment activities, as discussed above. At the pleading stage, the Court must assume the truth of Plaintiff's allegations and draw all reasonable inferences in his favor, not in favor of the Defendants.

Defendants' entitlement to qualified immunity is dependent upon, at least in part, the intent behind the City Attorney Defendants' allegedly unlawful conduct. Without further factual development as to the intent of Defendants, the Court cannot, at this juncture, adequately define the right to determine qualified immunity. Consequently, whether the evidence will support Plaintiff's assertions – or whether Defendants Sanders and Melching may be entitled to qualified immunity – are questions that cannot be resolved at this point in the proceedings. It is therefore recommended that the Court deny Defendants Sanders and Melching's Motion to Dismiss Plaintiff's First and Fourteenth Amendment claims based on qualified immunity on the ground that resolution of this question is premature without the development of a factual record. "Once an evidentiary record has been developed through discovery," Defendants "will be free to move for summary judgment based on qualified immunity." See O'Brien, 818 F.3d at 936.

**C. Plaintiff's State Law Claims**

In addition to his Section 1983 claims discussed above, Plaintiff also attempts two claims against the City Attorney Defendants under California state law, one for violation of the Bane Act (Civil Code § 52.1) and one for violation of the Ralph Act (Civil Code § 51.7). Defendants move to dismiss each for failure to state a claim.

**i. Bane Act**

California's Bane Act provides a statutory cause of action against

> a person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California].

Cal. Civ. Code § 52.1.

Under that Act,

> [s]peech alone is not sufficient to support an action [under the Act] except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

Cal Civ. Code § 52.1(k).

The August 5th and August 25th cease-and-desist letters unquestionably constitute "speech." Aside from bare conclusions, Plaintiff alleges no other allegedly unlawful conduct committed by Defendants Sanders or Melching.

Therefore, Plaintiff's Bane Act claim against them is based on their speech alone. Even when drawing all reasonable inferences in favor of the Plaintiff, neither cease-and-desist letter carries an actual or implied threat of violence against a specific person or group of persons. Thus, Plaintiff has failed to set forth a cognizable Bane Act claim.

Plaintiff's conclusory characterization in the Opposition of the letters as "coercive interference, not 'speech alone'" is insufficient to allow him to bypass the requirements of the statute. Soo too is his contention that non-violent, but otherwise coercive or threatening speech, is actionable. Plaintiff's arguments completely ignore the text of Section 52.1(k), which carves out a narrow exception – claims predicated on speech alone are not actionable, unless the speech threatens violence. Plaintiff's Bane Act claim against Defendants Sanders and Melching is predicated on the cease-and-desist letters alone, and the letters carry no threat of violence. Thus, Plaintiff has failed to set forth a cognizable claim against these Defendants under California Civil Code Section 52.1.

**ii. Ralph Civil Rights Act**

California's Ralph Civil Rights Act of 1976 ("Ralph Act"), California Civil Code § 51.7, guarantees in pertinent part "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation[.]" To state a claim for violation of the Ralph Act, a plaintiff must prove: (1) the defendant committed or threatened violent acts against the plaintiff; (2) the defendant was motivated by his perception of the plaintiff's political affiliation; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. See Campbell v. Feld, 75 F.Supp. 1193, 1205 (N.D. Cal. 2014). The Ralph Act provides that "intimidation by threat of violence" includes, but is not limited to, "making or threatening to make a claim or report to a peace officer or law enforcement agency that falsely alleges that another person has engaged in unlawful activity

that requires law enforcement intervention, knowing that the claim or report is false, or with reckless disregard for the truth or falsity of the claim or report." Cal. Civ. Code § 51.7(b)(2).

In attempting to distinguish the authorities Defendants offer on in attacking this claim, Plaintiff relies on the 2020 amendment to Section 51.7. See Opp'n at 25:17-27:19. That amendment does not eliminate the primary element of a Ralph Act claim, however, that the defendant "intentionally threatened violence against" the plaintiff. See CACI Jury Instr. No. 3064 (2026 ed.). Rather, what the amendment did was to include in the definition of "intentionally threatened violence" a threat "to make a claim or report to a peace officer or law enforcement agency that falsely alleges that another person has engaged in unlawful activity that requires law enforcement intervention, knowing that the claim or report is false, or with reckless disregard for the truth or falsity of the claim or report." Cal. Civ. Code § 51.7.

Plaintiff argues that the August 5, 2025, cease-and-desist letter (Exhibit 217 to the SAC) meets this requirement. Nothing in that letter threatens to make a claim or report to any peace officer, however. To the extent that Plaintiff claims that the phrase in that letter "failure to comply with this demand may result in further legal action to protect the safety and operations of the City and its employees" constitutes a "threat" to make a report to a peace officer, it fails the statutory requirement of falsely alleging that "a person has engaged in unlawful activity." Civil Code § 51.7(b)(2) (emphasis added). That statement in the August 5th letter refers to potential future action – failure to comply with the terms in that very letter – which of course had not happened at the time the letter was sent to Plaintiff. Moreover, there would be no way for Defendant Sanders, in making any such "threat," to know that any such report of future activity would be false, because no such hypothetical activity had occurred.

As such, the SAC fails to state a cognizable claim against the City Attorney Defendants for violation of the Ralph Act, and the Court recommends Defendants' Motion to Dismiss that claim against them be granted.

**D. Leave to Amend**

As set forth above, while it is recommended that the City Attorney Defendants' Motion to Dismiss be denied as to Plaintiff's First Amendment and due process claims against them in their individual capacity, it should be granted as to Plaintiff's official-capacity claims as well as his claims under the Bane Act and Ralph Act. That raises the question, then, of whether Plaintiff should be granted leave to amend to attempt to cure the defects in those claims.

A Court must give a pro se litigant leave to amend the complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Karim-Panahi, 839 F.2d at 623 (internal quotation marks omitted); see also Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (internal quotations omitted)). Where a plaintiff has previously been granted leave to amend, however, and subsequently fails to remedy the deficiencies in his or her pleading in an amended complaint, the District Court's authority to deny further leave to amend is "particularly broad." See Nguyen v. Endologix, Inc., 962 F.3d 405, 420 (9th Cir. 2020) (quoting Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009)).

As to Plaintiff's official-capacity claims, it is "absolutely clear" that there is nothing Plaintiff could do in a potential Third Amended Complaint to change the fact that such claims are impermissibly duplicative of his claims against the City of Irvine. Therefore, it is recommended that the official capacity claims be dismissed without leave to amend.

As to the state-law claims for violation of the Bane Act and Ralph Act, however, while it may be unlikely that Plaintiff has any additional facts that he has not already included in his voluminous SAC that could cure the defects in those claims, the Court cannot say at this point it is "absolutely clear" that no amendment could save those claims. And although Plaintiff has already amended his complaint twice, unlike the situation with the homebuilder and inspection company Defendants where Plaintiff had the benefit of prior challenges to his earlier pleadings (and the Court's thoughts on the question of subject-matter jurisdiction via an earlier OSC on that question) in drafting his SAC, the instant Motion to Dismiss is the first attack by the City Attorney Defendants to Plaintiff's claims against them, so Plaintiff did not have an opportunity previously to address those claimed deficiencies in an amended complaint. Accordingly, it is recommended that Plaintiff be given leave to amend as to his Bane Act and Ralph Act claims against the City Attorney Defendants.

**5. RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation; (2) GRANTING Defendants Sanders and Melching's Motion to Dismiss as to all claims against them in their official capacity <u>without</u> leave to amend; (3) DENYING those Defendants' Motion to Dismiss Plaintiff's Section 1983 claims against them in their individual capacity; and (4) GRANTING those Defendants' Motion to Dismiss Plaintiff's Bane Act and Ralph Act claims, albeit <u>with</u> leave to amend.

DATED: October 13, 2026

Dan Roberts

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals. Either party may file objections to this Court's findings and recommendations under 28 U.S.C. § 636(b)(l)(C). Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b). The determination of this Motion to Dismiss, including the recommendation for leave to amend, is not final until ruled upon by the District Judge. Moreover, no notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.